# TAB 6

CHARLES STANZIALE, Plaintiff, v. MORRIS NACHTOMI, et al.,Defendants.
Civil Action No. 01-403 KAJ

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 7375

April 20, 2004, Decided

SUBSEQUENT HISTORY: Motion denied by Stanziale v. Nachtomi, 2004 U.S. Dist. LEXIS 15664 (D. Del., Aug. 6, 2004)

DISPOSITION: [*1] Defendants' Motion granted.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff trustee of a debtor corporation alleged that defendants, directors and officers of the debtor corporation, breached their fiduciary duties of loyalty, care, and good faith, and that their acts or omissions to act constituted gross negligence, mismanagement, and corporate waste. The directors and officers sought to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief could be granted.

OVERVIEW: The debtor corporation maintained and operated a fleet of jet airliners consisting of 14 passenger aircraft and three cargo aircraft. The debtor corporation filed a voluntary petition for relief under Chapter 11. The case was converted to a proceeding under Chapter 7, and the trustee was appointed. The court found that the officers and directors' motion to dismiss the trustee's claim that they breached their fiduciary duties of loyalty, good faith, and due care by causing significant losses to the debtor corporation through the decision to lease or purchase new jet engines rather than repair and properly maintain the older jet engines should have been granted because the trustee did not sufficiently allege that their decision was the product of self dealing or improper motive, and the decisions did not constitute such egregiously bad decisions as to abrogate the business judgment rule. The officers' motion to dismiss the trustee's claims that their acts and omissions constituted gross mismanagement and gross negligence was granted because the trustee failed to present any evidence that the decisions of any of the officers were unintelligent, unadvised, or reckless.

OUTCOME: The officers and directors' motion to dismiss was granted.

CORE TERMS: engines, jet, business judgment rule, fiduciary duties, lease, repair, breached, older, loyalty, route, ticket, self-dealing, conclusory, mismanagement, omissions, airline, minutes, improper motive, self-interest, gross negligence, inform, waste, duty, decision to purchase, business judgment, inaction, legally responsible, corporate officer, unintelligent, unconsidered

LexisNexis(R) Headnotes

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
[HN1] In analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint. The moving party has the burden of persuasion.

Business & Corporate Entities: Corporations: Directors & Officers: Management Duties & Liabilities

-
.

[HN2] Under Delaware law, the business judgment rule operates as a presumption that directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest. A plaintiff may prevent the application of the business judgment rule within well-pleaded facts establishing that the directors acted out of self-interest. Directors act in self-interest if they appear on both sides of the transaction, or derive any personal financial benefit from it which did not devolve upon the corporation and the shareholders generally. Given that self-interest was not sufficiently alleged, in order to overcome the presumption of the business judgment rule, the plaintiffs must allege with particularity facts which establish that the contested decision was not a product of valid business judgment.

Business & Corporate Entities: Corporations: Directors & Officers: Management Duties & Liabilities
[HN3] In the absence of facts showing self-dealing or improper motive, a corporate officer or director is not legally responsible for losses that may be suffered as a result of a decision that an officer made or that directors authorized in good faith. A theoretical exception to the above-mention rule holds that some decisions may be so egregious that liability for losses they cause may follow even in the absence of proof of conflict of interest or improper motivation. An egregious, patently frivolous, or capricious act is one which no person of ordinary sound business judgment would believe to be rational and is an abuse of discretion not protected by the business judgment rule.

Business & Corporate Entities: Corporations: Directors & Officers: Management Duties & Liabilities
[HN4] The Delaware Supreme Court has stated that to allege that a corporation has suffered a loss as a result of a lawful transaction, within the corporation's powers, authorized by a corporate fiduciary acting in a good faith pursuit of corporate purposes, does not state a claim for relief against that fiduciary no matter how foolish the decision may appear in retrospect.

Business & Corporate Entities: Corporations: Directors & Officers: Management Duties & Liabilities
[HN5] A corporate officer is not legally responsible to the corporation for losses that are the result of a good faith decision. Conclusory allegations are not considered as expressly pleaded facts or factual inferences, sufficient to rebut the presumption of good faith inherent in the business judgment rule.

Torts: Negligence: Negligence Generally
Business & Corporate Entities: Corporations: Directors & Officers: Management Duties & Liabilities
[HN6] To state a claim of gross negligence, the plaintiffs must allege facts to support the conclusion that the board acted with so little information that their decision was unintelligent and unadvised, or outside of the bounds of reason and reckless. Gross negligence also applies to the decisions made by corporate officers.

Business & Corporate Entities: Corporations: Directors & Officers: Management Duties & Liabilities
[HN7] The Delaware law standard for pleading waste is stringent. Directors are only liable for waste when they authorize an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration. Conclusory allegations are not sufficient to overcome the protections of the business judgment rule.

COUNSEL: John L. Reed, Esq., Duane Morris LLP, Wilmington, Delaware, Counsel for Plaintiff.

Bruce E. Jameson, Esq., Prickett Jones & Elliott, Wilmington, Delaware. James E. Tolan, Esq., Rodney M. Zerbe, Esq., Dechert Price & Rhoads, New York, New York. P. Gregory Schwed, Esq., Loeb & Loeb LLP, New York, New York. Robert M. Kaplan, Esq., Robson Ferber Frost Chan & Eisner, New York, New York, Counsel for Defendants.

JUDGES: Kent A. Jordan, UNITED STATES DISTRICT JUDGE.

OPINIONBY: Kent A. Jordan

OPINION: MEMORANDUM OPINION

DATE: April 20, 2004
Wilmington, Delaware

JORDAN, District Judge

I. Introduction

   Presently before the court is a motion (Docket Item ["D.I."] 22; the "Motion") filed by defendants Morris K. Nachtomi ("Nachtomi"), Stephen L. Gelband ("Gelband"), Stephen A. Osborn ("Osborn"), Henry P. Baer ("Baer"), Leo-Arthur Kelmenso ("Kelmenso), Eli J. Segal ("Segal"), and Terry v. Hallcom ("Hallcom") (collectively the "Defendants"), seeking to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.

   The Complaint filed by Charles[*2] A. Stanziale, Jr. (the "Plaintiff"), in his capacity as Chapter 7 Trustee of Tower Air, Inc. (the "Debtor"), alleges that the Defendants, as directors and officers of the Debtor, breached their fiduciary duties of loyalty, care, and good faith, and that their acts or omissions to act constituted gross negligence, mismanagement and corporate waste. (D.I. 19.) The Plaintiff seeks compensatory damages, consequential damages, punitive damages, interest, and costs. (Id.)

   The court has jurisdiction over this case pursuant to 28 U.S.C. § 1334. For the reasons set forth herein, the Motion will be granted.

II. Background n1

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

   n1 The following rendition of the background information for my decision is cast in the light most favorable to the non-moving party, the Plaintiff.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

   Nachtomi founded the Debtor in 1982. (D.I. P18.) The Debtor began operations primarily as a charter airline offering chartered international flights for private, government, and military customers. (Id. at P19.) [*3] Eventually, the Debtor offered scheduled passenger service, and by 1998, scheduled passenger service accounted for approximately two-thirds of the Debtor's total revenue. (Id. at P20.) By 1999, the Debtor maintained and operated a fleet of jet airliners consisting of 14 passenger aircraft and three cargo aircraft, and had more than 1,700 employees worldwide. (Id. at PP23-24.)

   On February 29, 2000, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 et seq., in the Bankruptcy Court for the District of Delaware. (Id. at P7.) Plaintiff was appointed as the Chapter 11 Trustee for the Debtor's bankruptcy estate on or about May 5, 2000. ( Id. at P10.) On December 20, 2000, the case was converted to a proceeding under Chapter 7 of the Bankruptcy Code, 11 U.S.C. § 701 et seq. (Id. at P7), and the Plaintiff was appointed as Chapter 7 Trustee for the Debtor's bankruptcy estate.

   Nachtomi has been a director of the Debtor since 1982, the Debtor's President from 1986 until January 1998 and again since July 1998, and Chairman of the Board of Directors and Chief Executive[*4] Officer of the Debtor since 1989. (Id. at P11.) n2 Nachtomi and members of his family owned a majority of the outstanding common stock and a controlling interest in the Debtor at all times relevant to Plaintiff's Complaint. (Id.) Defendants Osborn, Baer, Kelmenson, and Segal were at all times directors of the Debtor. (Id. at PP13-16.) Osborn was a director from May 1993 until the bankruptcy; Baer was a director from 1997 until the bankruptcy; Kelmenson was a director from 1997 until the bankruptcy; and Segal was a director from 1998 until the bankruptcy. (Id.) Gelband was a director of the Debtor from 1985 until bankruptcy, as well as the Debtor's Secretary and General Counsel from 1988 until bankruptcy. (Id. at P12.) Hallcom was the Debtor's President and Executive Vice President for Operations and a director from January through July 1998. (Id. at P17.)

Case 1:04-cv-01565-SLR    Document 20-4    Filed 03/04/2005    Page 5 of 12

Page 27
2004 U.S. Dist. LEXIS 7375, *

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 There is no indication in the record of when Nachtomi's service as an officer and director may have ended.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

Plaintiff "brings this[*5] action in his capacity as the representative of the Debtor and of its estate and for the benefit of creditors of the Debtor and any other parties in interest." (Id. at P10.) In Count I, Plaintiff alleges that the Defendants, as directors of the debtor (collectively the "Directors"), breached their "fiduciary duties of loyalty, good faith and due care" by "leasing and/or financing the purchase of new jet engines rather than repairing and properly maintaining the Debtor's older engines." (Id. at P75.) In Count II, Plaintiff alleges that Nachtomi, Gelband, and Hallcom, as officers of the Debtor (collectively "the Officers"), breached their "fiduciary duties of loyalty, good faith and due care" by failing to fully inform the Board of Directors concerning the condition of the engines, the long-term financial ramifications of the failure to properly maintain the Debtor's older engines, the decision to lease and/or finance the purchase of new jet engines, and the problems with the Debtor's maintenance division, and by failing to maintain the engines and physical assets in good repair and condition. (Id. at P87.)

In Count III, Plaintiff claims that the Directors breached their[*6] "fiduciary duties of loyalty, good faith, and due care" by failing to adequately oversee and control the management and by failing to keep themselves informed. ( Id. at P97.) In Count IV, Plaintiff contends that the Officers breached their fiduciary duties of "loyalty, good faith, and due care" by, among other things, failing to process used airline tickets for payment, failing to implement and maintain the proper oversight and control of ticket processing and operations, reducing fairs to unprofitable levels, expanding the Debtor's international routes during financial hardships, and ceding all management responsibility to Nachtomi. (Id. at P107.) In Count V, Plaintiff asserts that the Officers' acts and omissions caused "significant losses," and constitute "gross mismanagement of the Debtor's business, gross negligence, and a gross violation of Defendants' duties of due care to the Debtor." (Id. at PP117-118.) In Counts VI and VII, Plaintiff alleges that the Directors and Officers "wasted corporate assets to the financial loss and detriment of the Debtor's estate." (Id. at PP125-132.) n3

- - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n3 Plaintiff does not state what specific actions by the Defendants constitute corporate waste. Presumably, the Plaintiff is relying on allegations in Counts I-V regarding the purchase and lease of new jet engines and the failure to repair old jet engines, the expansion of the Debtor's international routes, the reduction of fares, and the failure to process some of the airline tickets.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - -

[*7]

III. Standard of Review

[HN1] In analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12 (b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

IV. Discussion

The Defendants argue that the Plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because "Plaintiff has failed to plead any basis for overcoming the protections" of the business judgment rule. (D.I. 23 at 18.) [HN2] Under Delaware law, the business judgment rule operates as a presumption "that[*8] directors making a business decision, not involving self-interest, act on an informed basis, in good faith and in the honest belief that their actions are in the corporation's best interest." Grobow v. Perot, 539 A.2d 180, 187 (Del. 1988). "[A] Plaintiff[] may prevent the application of the business judgment rule within well-pleaded facts establishing that the directors acted out of self-interest." In re General Motors Class E Stock Buyout Sec. Litig., 694 F. Supp. 1119, 1132 (D. Del. 1988) (citing Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984)). Directors act in self-interest if they appear on "both sides of the transaction, or ... [derive] any personal financial benefit from it which did not devolve upon the corporation and the shareholders generally." In re General Motors, 694 F. Supp. at 1132.

In the Amended Complaint, Plaintiff alleges that the Defendants have acted in self-interest and engaged in self-dealing (D.I. 19 at PP97, 108), but has not alleged any facts to support this assertion. "Given that self-interest was not sufficiently alleged, in order to overcome the presumption of the business judgment[*9] rule, plaintiffs must allege with particularity facts which establish that the contested decision was not a product of valid business judgment." In re General Motors, 694 F. Supp. at 1132. See also Brehm v. Eisner, 746 A.2d 244, 255 (Del. 2000) (stating that "the issue is whether plaintiffs have alleged particularized facts creating a reasonable doubt that the actions of the defendants were protected by the business judgment rule").

A. Count I

In Count I of the Amended Complaint, Plaintiff has alleged that the business judgment rule is inapplicable because the Directors breached their fiduciary duties of loyalty, good faith, and due care by causing significant losses to the Debtor and to its estate through the decision to lease or purchase new jet engines rather than repair and properly maintain the Debtor's older jet engines. (D.I. 19 at PP75, 78-79). [HN3] "In the absence of facts showing self-dealing or improper motive, a corporate officer or director is not legally responsible ... for losses that may be suffered as a result of a decision that an officer made or that directors authorized in good faith." Gagliardi v. TriFoods Int'l, Inc., 683 A.2d 1049, 1051 (Del. Ch. 1996).[*10] As previously mentioned, Plaintiff does not sufficiently allege that the directors' decision was the product of self dealing or improper motive. A "theoretical exception" to the above-mention rule "holds that some decisions may be so 'egregious' that liability for losses they cause may follow even in the absence of proof of conflict of interest or improper motivation." Id. at 1051-1052. n4

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n4 The court went on to say that the "exception, however, has resulted in no awards of money judgments against corporate officers or directors in this jurisdiction." Gagliardi, 683 A.2d at 1052.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

Case 1:04-cv-01565-SLR  Document 20-4  Filed 03/04/2005  Page 7 of 12

Page 29
2004 U.S. Dist. LEXIS 7375, *

Plaintiff alleges that the Directors resolved to borrow millions of dollars for the purchase of new jet engines and authorized the lease of new jet engines, while the Debtor still had debt associated with its older engines, and at the same time that Nachtomi reported that the Debtor was suffering a severe cash flow problem. (D.I. 19 at PP61-68.) Plaintiff also asserts that because the older engines[*11] were not repaired, a "significant diminution in their value as assets of Debtor" resulted. (Id.) According to Plaintiff, these decisions caused the Debtor to incur "substantial additional debt" and led to "significant losses" (Id.; see also id. at P81). While the directors' may, indeed, have exercised poor business judgment in borrowing and authorizing the purchase and lease of new jet engines, the facts that Plaintiff alleges, taken in the light most favorable to the Plaintiff, do not constitute such egregiously bad decisions as to abrogate the business judgment rule. See Aronson, 473 A.2d at 812 (stating that an egregious, patently frivolous, or capricious act is one which "no person of ordinary sound business judgment would believe" to be rational and is an "abuse of discretion" not protected by the business judgment rule). A person of sound business judgment could have believed the decision to purchase or lease new engines was rational. Nor does that decision show that the directors did not act in good faith. n5 Therefore, Plaintiff's allegations do not fall into any exceptions to the general statement that an officer or director, absent self-dealing or[*12] improper motive, is not liable for business decisions made in good faith.



n5 See In re J.P. Stevens & Co. S'holders Litig., 542 A.2d 770, 780-81 (Del. 1998) ("A court may ... review the substance of a business decision made by an apparently well motivated board for the limited purpose of assessing whether that decision is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith"). Here, the decision to purchase or lease new engines is not "so far beyond the bounds of reasonable judgment" that bad faith is the only explanation.

- - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[HN4] The Delaware Supreme Court has also stated that "to allege that a corporation has suffered a loss as a result of a lawful transaction, within the corporation's powers, authorized by a corporate fiduciary acting in a good faith pursuit of corporate purposes, does not state a claim for relief against that fiduciary no matter how foolish the [the decision] may appear in retrospect." Gagliardi, 683 A.2d at 1052.[*13] Plaintiff has not alleged that the decision to lease or finance new engines instead of repair old engines was not the result of a lawful transaction, not within the Debtor's powers, and not made in a good faith pursuit of corporate purposes. Therefore, Plaintiff's claims in Count I of the Amended Complaint do not rebut the presumption that the Directors' decisions were the product of valid business judgment.

B. Count II

Plaintiff alleges in Count II of the Amended Complaint that the Officers "breached their fiduciary duties of loyalty, good faith and due care, and acted recklessly" by neglecting to repair and properly maintain the Debtor's older jet engines and by leasing or financing the purchase of new jet engines. (D.I. 19 at P86.) Furthermore, Plaintiff alleges that the Officers breached their fiduciary duties by failing to inform the Directors concerning the jet engines. (Id. at P87.) Specifically, Plaintiff states that the Director of Safety reported to "management ... at least as early as June 1998" that there were a lack of spare part for repairs, deficient quality assurance on repairs that were performed, deficient record keeping regarding needed repairs and the[*14] absence of any type of maintenance program. (D.I. 19 at P55; D.I. 26 at 27.) Plaintiff asserts that the Director of Safety called for additional staffing for the maintenance department as well as changes to the Debtor's management structure to address these and other deficiencies in the Debtor's maintenance department. (Id.) Plaintiff claims that the Officers "took no actions or steps to evaluate and/or remedy or to provide any substantive resolution" to those problems with the maintenance division and did not inform the directors of such problems because minutes of the Debtor's Board of Director meetings held after June 1998 "do not discuss, address and/or give any consideration" to them. (Id. at P56.) Plaintiff alleges that the Officers' breaches of their fiduciary duties

"caused significant losses" and that "the business judgment rule provides no protection and/or no defense" to his claims. (Id. at PP90-91.)

As previously discussed, even if the Officers' decision to lease or purchase new jet engines rather than repair older jet engines, or the Officers' decision to "cannibalize[] its own planes and older engines by taking them out of service and using them as sources[*15] of spare parts for other planes and engines" (Id. at PP58-60), caused loss to the Debtor, [HN5] a corporate officer is not legally responsible to the corporation for losses that are the result of a good faith decision. Gagliardi v. TriFoods Int'l, Inc., 683 A.2d at 1051. Plaintiff has not alleged any facts that the Officers' acted in bad faith, nor any facts that would characterize their actions as egregious. See id. at 1052. Plaintiff has merely alleged that the Officers acted in bad faith, and "conclusory allegations are not considered as expressly pleaded facts or factual inferences," sufficient to rebut the presumption of good faith inherent in the business judgment rule. Brehm v. Eisner, 746 A.2d 244, 255 (Del. 2000).

With respect to Plaintiff's claims that the Officers' failure to "inform and advise" the Directors concerning the jet engines was a breach of their fiduciary duties, and is therefore not protected by the judgment rule (D.I. 19 at PP87-88, 91), Plaintiff does not explain how this alleged failure by the Officers violates any of their fiduciary duties, nor does Plaintiff cite any legal authority is support of that theory. [*16] (See D.I. 26.) Plaintiff's claims are merely conclusory, and, once again, Plaintiff's conclusory allegations do not overcome the presumption that the Officers' acted in good faith and in the best interest of the Debtor. See Brehm, 746 A.2d at 255.

C. Count III

In Count III of the Amended Complaint, Plaintiff alleges that the directors breached their fiduciary duties of loyalty, good faith, and due care by:

allowing the mismanagement of the Debtor to continue and to persist to the detriment of the Debtor and its best interests, and ... failing adequately to oversee and to control the management of the Debtor and thereby allowing the specific instances of mismanagement set forth in Count II to occur. ... [and] failing to keep themselves fully and adequately informed concerning the daily management of the Debtor and thereby making or failing to make decisions on a fully informed basis.

(Id. at P97.)

Specifically, Plaintiff asserts that the Directors, other than Nachtomi, "abdicated their responsibility over the management and business affairs of the Debtor" because the minutes of the special meeting in April 1998, at which the Directors[*17] resolved to borrow $50 million and authorized the purchase of eight new jet engines, "do not reflect that the Board engaged in any discussion concerning, or gave any consideration to, the need for such new engines, the status and/or state of repair of the older engines already owned or under lease by the Debtor, and/or the long term financial impact on the Debtor of the decision to incur additional debt to purchase such new engines." (Id. at P61.) Plaintiff also asserts that the minutes of the October 1998 meeting, at which the Directors authorized Nachtomi to negotiate the leasing of four new jet engines, did not "give any consideration to the need for the four ... new engines, the status and/or state of repair of the older engines already owned or under lease by the Debtor, and/or the long term financial impact on the Debtor." (Id. at P62.) Plaintiff further claims that the minutes of each Board meeting subsequent to June 1998 show that nothing was done by any of the Directors to address any of the issues identified the Debtor's Director of Safety, supra, which "is at best evidence of the Boards' failure to erect systems to gather such information and at worst evidence[*18] of the Board's reckless disregard of such deficiencies if they were, in fact, aware of any of the conditions covered by the Director of Safety's June 1990 report." (Id. at P56; D.I. 26 at 27-28.)

Plaintiff also claims that the Board, "completely abandoned its duties to monitor [the Debtor's] overall business" because the directors permitted Nachtomi to operate the Debtor's office in Tel Aviv n6 "independently of the Debtor's other offices and without any oversite or control." (D.I. 26 at 30; D.I. 19 at P43.) As evidence of this assertion, Plaintiff alleges that the Tel Aviv office maintained its financial records separate from the rest of the company, and opened its own bank account in Israel that only Nachtomi and two other members of management in that office had access to. (D.I. 19 at P44.) Plaintiff alleges that despite the large revenues of the Tel Aviv operation, the Debtor was eventually forced into liquidation proceedings in Israel. (Id. at P46.)

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n6 Plaintiff claims that the Debtor's 1998 Annual Report stated that the Tel Aviv service was "the largest United States carrier and second only to El Al, Israel's national flag carrier" in the passenger airline market between the United States and Israel. (D.I. 19 at P28.)

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*19]

Plaintiff further claims that the Board abdicated its responsibility for the business affairs of the Debtor by not conducting a feasibility, profitability, or other similar study, and by not seeking the advice of an outside consultant prior to opening the Santo Domingo route, a route that, according to Plaintiff, was never profitable. (Id. at PP34-35.) Plaintiff also alleges that there "was an absolute lack of any management controls or procedures to ensure that used passenger tickets were processed for payment," the value of which was at least one million dollars. (D.I. 26 at 32; D.I. 19 at PP40-41.) Finally, Plaintiff alleges that the directors failed to oversee the Debtor's operations department. (Id. at PP50-53.)

Plaintiff asserts that the business judgment rule does not apply to those alleged actions or omissions by the Directors because "unconsidered inaction," or the "failure of the Board to consider, or even be aware of conditions or activities within the corporation that cause the corporation harm," is an independent basis for liability. (D.I. 26 at 22-23.) In support of this theory, Plaintiff cites In re Caremark Int'l, Inc. Deriv. Litig., 698 A.2d 959 (Del. Ch. 1996).[*20] In Caremark, the claim was that "the directors allowed a situation to develop and continue which exposed the corporation to enormous legal liability and that in so doing they violated a duty to be active monitors of corporate performance." Id. at 967. Like the case at bar, the complaint in Caremark did not charge either director self-dealing or loyalty-type problems arising from cases of suspect director motivation. Id. The complaint asserted a theory of liability against the defendant directors based on their inaction, which Chancellor William T. Allen said "is possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." Id. Chancellor Allen went on to explain the theoretical basis for such liability, saying, "a director's obligation includes a duty to attempt in good faith to assure that a corporate information and reporting system, which the board concludes is adequate, exists, and that failure to do so under some circumstances may, in theory at least, render a director liable for losses cause by non-compliance with applicable legal standards." Id. at 970.

Caremark is inapposite[*21] to the present case because there is no claim, nor evidence, that the directors' alleged failure to assure an adequate reporting system resulted in a violation of the law. However, Plaintiff's theory of "unconsidered inaction" does find some support in In re Walt Disney Co. Deriv. Litig., 825 A.2d 275 (Del. Ch. 2003). In that case, the plaintiffs alleged that the defendant directors breached their fiduciary duties by blindly approving an employment agreement with the company's president and then, again without any review or deliberation, ignored the chief executive officer's dealings with that officer regarding his termination. Id. at 277. Similar to Plaintiff in the case at bar, the plaintiffs alleged that the directors "failed to exercise any business judgment and failed to make any good faith attempt to fulfill their fiduciary duties" to the corporation. Id. at 278 (emphasis in the original). "In short, that ... complaint," like this complaint "alleged facts implying that the ... directors failed to 'act in good faith and meet minimal proceduralist standards of attention." Id. (citing Gagliardi v. TriFoods Int'l, Inc., 683 A.2d 1049, 1052 (Del. Ch. 1996).[*22]

In holding that the business judgment rule didn't apply, the court in In re Walt Disney Co. stated that "the facts alleged ... suggest that the defendant directors consciously and intentionally disregarded their responsibilities, adopting a 'we don't care about the risks' attitude concerning a material corporate decision." Id. at 289. "Put differently, all of the alleged facts, if true, imply that the defendant directors knew that they were making material decisions without adequate deliberation, and that they simply did not care if the decisions caused the corporation and its stockholders to suffer injury or loss." Id. While Plaintiff asserts in the Amended Complaint that the directors "blindly" approved Nachtomi's decision to purchase or lease new jet engines, this case is distinguishable from In re Walt Disney Co., because Plaintiff

Case 1:04-cv-01565-SLR   Document 20-4   Filed 03/04/2005   Page 10 of 12

Page 32
2004 U.S. Dist. LEXIS 7375, *

has not alleged facts that show that the directors "consciously and intentionally" disregarded their responsibilities, nor do they show that the directors didn't care about the effect their decision would have on the Debtor. The Plaintiff has only alleged that minutes of various board meetings do not reflect a discussion about the need[*23] for new engines or the repair of the old engines.

With respect to the Tel Aviv office, Plaintiff argues that the directors "ceded all responsibility" to Nachtomi, and that the office eventually was forced into liquidation proceedings (D.I. 26 at 30-31), but once again, the facts that Plaintiff has alleged do not show deliberate indifference on the part of the directors. Moreover, Plaintiff does not allege facts that show the deliberate indifference with respect to the Santo Domingo route, the processing of tickets, the operations department of the Debtor, or the report by the Director of Safety. Accordingly, Plaintiff has not alleged facts with sufficient particularity to overcome the protections of the business judgment rule.

D. Count IV

Plaintiff alleges in Count IV of the Amended Complaint that the Officers breached their fiduciary duties of loyalty, good faith and due care by failing to process used airline tickets for payment, failing to implement and maintain the proper oversight and control of ticket processing and operations, reducing fairs to unprofitable levels, expanding the Debtor's international routes during financial hardships, failing to implement and maintain[*24] the proper oversight and control over the Debtor's Tel Aviv operations, establishing and continuing to service the New York to Santo Domingo routes when there was no evidence that such route could be profitable, ceding all responsibility to manage and control the affairs of the Debtor to Nachtomi, failing to address problems with the debtor's operations department and maintenance division, failing to maintain the Debtor's jet engines in good repair, and failing to inform the Directors of mismanagement and the financial ramifications of such acts or omissions. (Id. at P107.) Plaintiff asserts that the Officers' breaches of their fiduciary duties "caused significant losses to the Debtor and to its estate."

As previously discussed, a corporate officer is not legally responsible for losses that result from a good faith decision if there are not any facts showing self-dealing or improper motive. See Gagliardi, 683 A.2d at 1051. In Count IV, Plaintiff has not alleged self-dealing or improper motive, and the allegations Plaintiff has made are not supported by facts showing that the Officers acted in bad faith or that there was an abuse of discretion that would void the[*25] protections of the business judgment rule. See id. at 1052, Aronson, 473 A.2d at 812. Finally, to the extent that Plaintiff alleges Officer liability for "unconsidered inaction" in this Court, Plaintiff has not cited any authority that the Delaware courts have applied this theory to corporate officers.

E. Count V

In Count V, Plaintiff claims that the Officers' acts and omissions, as previously stated, "constitute gross mismanagement of the Debtor's business, gross negligence, and a gross violation of Defendants' duties of due care to the Debtor," and that the Debtor and its estate has suffered significant losses as a result. (D.I. 19 at PP117-118.) [HN6] "To state a claim of gross negligence, plaintiffs must allege facts to support the conclusion that the Board acted with so little information that their decision was 'unintelligent and unadvised,' or outside of the 'bounds of reason and reckless[].'" In re General Motors, 694 F. Supp. at 1133. Gross negligence also applies to the decisions made by corporate officers. See Kaufman v. Beal, 1983 Del. Ch. LEXIS 391, CIV. A. Nos. 6485, 6526, 1983 WL 20295 at *3 (Del. Ch. Feb. 25, 1983). As[*26] discussed, other than to allege that the minutes of various Board meetings in 1998 do not reflect any discussion about the purchase or lease of new jet engines, or the repair of old jet engines, which, by itself, does not support a conclusion that the decisions of any of the Officers or Directors were unintelligent, unadvised, or reckless, Plaintiff does not allege any facts that any of the other decisions, acts, or omissions of the Officers were unintelligent, unadvised, or reckless. Accordingly, Plaintiff's conclusory allegations of gross negligence do not overcome the protections of the business judgment rule. See Brehm, 746 A.2d at 255.

F. Counts VI and VII

Plaintiff alleges in Counts VI and VII that the Directors and Officers "wasted corporate assets to the financial loss and detriment of the debtor's estate." (D.I. 19 at PP125, 132. [HN7] The Delaware law standard for pleading waste is stringent. "Directors are only liable for waste when they authorize an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration." In re Walt Disney Co. Derivative Litig. 731 A.2d 342, 362. [*27]Here, the Debtor has not alleged facts that the Debtor did

Case 1:04-cv-01565-SLR    Document 20-4    Filed 03/04/2005    Page 11 of 12

Page 33
2004 U.S. Dist. LEXIS 7375, *

not receive adequate consideration for the transactions entered into and approved by the Officers and Directors, such as the decision to purchase or lease new engines and not repair the older engines, the decision to reduce fares, the decision to expand the Debtor's international routes, and the failure to process some airline tickets. Therefore, Plaintiff's corporate waste claim is conclusory, and conclusory allegations are not sufficient to overcome the protections of the business judgment rule. See Brehm, 746 A.2d at 255.

V. Conclusion

For the reasons set forth herein, the Defendants' Motion will be granted. An appropriate order will issue.

ORDER

For the reasons stated in the Memorandum Opinion issued today,

IT IS HEREBY ORDERED that the Defendants' Motion to Dismiss (D.I. 22) is GRANTED.

Kent A. Jordan

UNITED STATES DISTRICT JUDGE

April 20, 2004
Wilmington, Delaware

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

## CERTIFICATE OF SERVICE

I, Peter J. Walsh, Jr., hereby certify that on March 4, 2005, I electronically filed the foregoing COMPENDIUM OF UNREPORTED CASES IN SUPPORT OF OPENING BRIEF IN SUPPORT OF THE OUTSIDE DIRECTORS' MOTION TO DISMISS with the Clerk of the Court using CM/ECF which will send notification of such filing to the following counsel of record:

> Rolin P. Bissell, Esquire (DSB ID No. 4478)
> YOUNG CONAWAY STARGATT & TAYLOR
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> Tel: (302) 571-6560
> E-mail: rbissell@ycst.com
>
> Jeffrey C. Wisler, Esquire (DSB ID No. 2795)
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building
> 1007 North Orange Street
> Wilmington, Delaware 19801
> Tel: (302) 888-6258
> E-mail: jwisler@cblh.com

                                                   _/s/ Peter J. Walsh, Jr._
                                                   Peter J. Walsh, Jr. (DSB ID No. 2437)
                                                   POTTER ANDERSON & CORROON LLP
                                                   Hercules Plaza, 6th Floor
                                                   1313 North Market Street
                                                   Post Office Box 951
                                                   Wilmington, Delaware 19899-0951
                                                   Tel: (302) 984-6000
                                                   E-mail: pwalsh@potteranderson.com

672548v1/28762