# TAB 3

STEPHEN J. DiLORENZO, derivatively on behalf of dELiA*S CORP. and ALLOY, INC., Plaintiff, v. CHRISTOPHER EDGAR, GERALDINE KARESTKY, STEPHEN I. KAHN, EVAN GUILLEMIN, dELiA*S CORP., and ALLOY, INC., Defendants.

Civ. No. 03-841-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 4991

March 24, 2004, Decided

DISPOSITION: [*1] Defendants' motions to dismiss denied.

CASE SUMMARY:

PROCEDURAL POSTURE: Plaintiff stockholder filed a derivative action against defendants, two corporations and four former directors of one of the corporations, alleging violations of § 16(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C.S. § 78p(b). The stockholder sought to recover short-swing profits allegedly obtained by the directors. Defendants moved to dismiss the suit pursuant to Fed. R. Civ. P. 12(b)(1), (b)(6).

OVERVIEW: The directors of corporation one purchased a large number of shares of corporation one's stock shortly before they agreed to allow the corporation to be completely merged into corporation two. When the merger was completed, an indirect, wholly owned subsidiary of corporation two owned all of corporation one's stock. The directors received over $4 million in profits as the result of the transaction. The stockholder, who refused to tender his shares, was cashed-out. He filed suit before his shares in corporation one were canceled. Defendants contended that the stockholder lacked standing to maintain the suit because he was no longer a shareholder and because he had failed to make a demand upon the directors. In denying the motion, the court held that the stockholder had a financial interest, albeit a tenuous one, in the disgorgement of profits obtained by the directors; therefore, the involuntary change in his status, resulting from the merger, did not affect his standing to maintain the suit. The demand requirement found in Fed. R. Civ. P. 23.1 was inapplicable to the action. The stockholder's allegations of demand futility were sufficient to withstand the dismissal motion.

OUTCOME: The court denied the motions to dismiss.

CORE TERMS: shareholder, merger, issuer, motion to dismiss, derivative, futility, financial interest, stock, restructuring, ownership, cash-out, wholly owned subsidiary, motions to dismiss, derivative action, bring suit, acquisition, stock-exchange, short-swing, instituted, subsidiary, futile, double, standing to maintain, board of directors, present action, tender offer, per share, disgorgement, canceled

LexisNexis(R) Headnotes

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
Evidence: Procedural Considerations: Burdens of Proof
[HN1] In analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint. Claims may be dismissed pursuant to a R. 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. The moving party has the burden of persuasion.

Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
Evidence: Procedural Considerations: Judicial Notice

2004 U.S. Dist. LEXIS 4991, *

[HN2] In considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a court may consider Securities Exchange Commission documents that are expressly relied upon in the complaint. Further, on a motion to dismiss the court may take judicial notice of the contents of documents required by law to be filed, and actually filed, with federal or state officials.

Business & Corporate Entities: Corporations: Shareholders & Other Constituents: Shareholder Duties & Liabilities
Securities Law: Additional Offerings, Disclosure & the Securities Exchange Act of 1934: Directors, Officers & Principal Stockholders
Business & Corporate Entities: Corporations: Shareholders & Other Constituents: Actions Against Corporations
[HN3] Section 16(b) of the Securities Exchange Act of 1934, establishes strict liability for covered individuals who engage in the sale or purchase of a covered security. 15 U.S.C.S. § 78p(b). The right of recovery under § 16(b) is held, however, solely by the issuer of the security. A shareholder may bring a derivative action in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within 60 days after request or shall fail diligently to prosecute the same thereafter.

Securities Law: Additional Offerings, Disclosure & the Securities Exchange Act of 1934: Directors, Officers & Principal Stockholders
Civil Procedure: Justiciability: Standing
Constitutional Law: The Judiciary: Case or Controversy: Standing
[HN4] There are three requirements for shareholder standing to bring suit under § 16(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C.S. § 78p(b). First, the plaintiff must own a security within the meaning of the section. Second, the security held by the plaintiff must be a security of the issuer of the security traded by the covered individual. Third, the plaintiff must own a security of the issuer at the time the § 16(b) of the Securities Exchange Act of 1934 action is instituted. Unlike a typical shareholder derivative action, there is not a requirement that the plaintiff maintain continual ownership, only that he has some continuing financial stake in the litigation so as to satisfy minimum standing requirements imposed by the jurisdictional limitations of U.S. Const. art. III.

Securities Law: Additional Offerings, Disclosure & the Securities Exchange Act of 1934: Directors, Officers & Principal Stockholders
Civil Procedure: Justiciability: Standing
Constitutional Law: The Judiciary: Case or Controversy: Standing
[HN5] The United States Supreme Court has considered the effect of a stock-exchange merger upon a plaintiff's previously filed § 16(b) of the Securities Exchange Act of 1934 action and has concluded that although the plaintiff is no longer a shareholder of the issuer, where his stock was exchanged for stock in the new corporation, he nonetheless has the minimal financial interest in the outcome of the litigation to satisfy constitutional concerns. Consequently, where a plaintiff has standing at the commencement of the suit, an involuntary change in his status as a security holder resulting from a restructuring will not affect his standing to maintain the suit so long as minimal constitutional requirements are satisfied through the presence of some financial interest in the outcome of the litigation.

Securities Law: Additional Offerings, Disclosure & the Securities Exchange Act of 1934: Directors, Officers & Principal Stockholders
Constitutional Law: The Judiciary: Case or Controversy: Standing
Business & Corporate Entities: Corporations: Shareholders & Other Constituents: Actions Against Corporations
[HN6] The United States District Court for the District of Delaware concludes that the remedial purpose of § 16(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C.S. § 78p(b), should not be truncated by the legal nuances of the corporate restructuring. A shareholder of a parent corporation has a financial interest, albeit tenuous, in the disgorgement of profits obtained by insiders of a corporate subsidiary. Although Congress did not provide statutory standing for such a party to institute a § 16(b) suit, a shareholder of a parent corporation has a cognizable interest for purposes of satisfying constitutional requirements.

Civil Procedure: Justiciability: Standing
Constitutional Law: The Judiciary: Case or Controversy: Standing
[HN7] To have standing, a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief..

2004 U.S. Dist. LEXIS 4991, *

Securities Law: Additional Offerings, Disclosure & the Securities Exchange Act of 1934: Directors, Officers & Principal Stockholders
Constitutional Law: The Judiciary: Case or Controversy: Standing
Business & Corporate Entities: Corporations: Shareholders & Other Constituents: Actions Against Corporations
[HN8] The United States Supreme Court has differentiated between standing to institute suit and a sufficient interest to maintain a suit under § 16(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C.S. § 78p(b).

Securities Law: Additional Offerings, Disclosure & the Securities Exchange Act of 1934: Directors, Officers & Principal Stockholders
Business & Corporate Entities: Corporations: Shareholders & Other Constituents: Actions Against Corporations
[HN9] Fed. R. Civ. P. 23.1 does not apply to actions brought pursuant to § 16(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C.S. § 78p(b). Unlike typical derivative actions, the decision to bring a § 78p(b) enforcement action does not enjoy protection of the business judgment rule. Similarly, there are no requirements of continuous ownership.

Securities Law: Additional Offerings, Disclosure & the Securities Exchange Act of 1934: Directors, Officers & Principal Stockholders
Civil Procedure: Pleading & Practice: Defenses, Objections & Demurrers: Failure to State a Cause of Action
Business & Corporate Entities: Corporations: Shareholders & Other Constituents: Actions Against Corporations
[HN10] On a motion to dismiss an action under § 16(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C.S. § 78p(b), for failure to state a claim, the court must accept as true the plaintiff's allegations of demand futility.

COUNSEL: For STEPHEN J. DILORENZO, plaintiff: Theodore J. Tacconelli, Ferry, Joseph & Pearce, P.A., Wilmington, DE.

For CHRISTOPHER EDGAR, GERALDINE KARETSKY, STEPHEN I. KAHN, EVAN GUILLEMIN, defendants: Allen M. Terrell, Jr., Richards, Layton & Finger, Wilmington, DE.

For DELIA*S CORP., ALLOY INC., defendants: Jon E. Abramczyk, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

JUDGES: Sue L. Robinson, United States District Judge.

OPINIONBY: Sue L. Robinson

OPINION: MEMORANDUM ORDER

At Wilmington, this 24th day of March, 2004, having reviewed the motions of defendants to dismiss (D.I. 10, 13), and the memoranda submitted therewith;

IT IS ORDERED that defendants' motions (D.I. 10, 13) to dismiss are denied for the reasons that follow:

1. Plaintiff filed this derivative action on August 27, 2003 alleging violations of § 16(b) of the Securities Exchange Act of 1934, codified at 15 U.S.C. § 78p(b). (D.I. 1) The suit is brought on behalf of dELiA*s Corporation ("dELiA*s") and Alloy, Inc. ("Alloy"), and seeks to recover short-swing profits obtained by defendants Christopher Edgar, Geraldine Karetsky, Stephen[*2] Kahn and Evan Guillemin ("Former Director defendants"). On October 16, 2003, the defendants filed motions to dismiss pursuant to Fed. R. Civ. P. 12(b) 1 and 12(b)(6). (D.I. 10, 13)

2. During the relevant time period, the Former Director defendants were directors of dELiA*s. Kahn was the Chief Executive Officer and Chairman of the Board. Edgar was the Executive Vice President and Vice Chairman. Guillemin was the Chief Financial Officer and Treasurer. On or about May 12, 2003, the Former Director defendants purchased in aggregate 7,297,298 shares of dELiA*s common stock at a price of $0.37 per share for a total of $2.7 million. (D.I. 1, P 12) Of this amount Kahn purchased 4,054,054 shares; Karetsky purchased 2,702,703 shares; Edgar purchased 337,838 shares; and Guillemin purchased 202,703 shares. Further, dELiA*s issued to the Former Director defendants a total of 600,000 warrants to purchase shares at $0.37 a share.

2004 U.S. Dist. LEXIS 4991, *

3. On July 30, 2003, dELiA*s entered into an agreement with Alloy to conduct a tender offer for all of the publicly held shares of dELiA*s. At that time, Karetsky and Kahn entered into an agreement to support the merger and tender [*3]their shares. Kahn, Edgar and Guillemin each received employment agreements with Alloy upon the effective date of the merger. (Id., P 10, 15)

4. On August 6, 2003, Dodger Acquisition Corp., a direct wholly owned subsidiary of Canal Park Trust and an indirect wholly owned subsidiary of Alloy, commenced a tender offer for 100% of dELiA*s shares at a price of $.0928 per share. (Id., P 25; D.I. 12, at ex. 1) Plaintiff contends that the Former Director defendants obtained short-swing profits in violation of § 16(b) as a result of an August 6, 2003 tender-offer by Alloy to dELiA*s shareholders for a cash-out merger between the corporations.

5. During the offer period, plaintiff commenced the present action but did not tender his shares. On September 7, 2003, the merger closed and plaintiff, along with other nontendering shareholders, was cashed-out and his shares canceled. Canal Park Trust is now the sole shareholder of dELiA*s stock. (D.I. 12)

6. Plaintiff was a dELiA*s shareholder at the time of the filing of the complaint. Plaintiff also contends that at the time of the transaction he was an Alloy shareholder and has maintained that interest. Plaintiff seeks a disgorgement[*4] of $4,071,892 in profits received by the Former Director defendants as a result of the transaction. Plaintiff also seeks $334,800 related to the acquisition of the 600,000 warrants.

7. Defendants' motions to dismiss contend that plaintiff's complaint fails for a lack of standing because he is no longer a shareholder of dELiA*s and because he failed to make demand upon the corporation's board of directors.

8. Standard of Review. [HN1] In analyzing a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all material allegations of the complaint and it must construe the complaint in favor of the plaintiff. See Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts, Inc., 140 F.3d 478, 483 (3d Cir. 1998). "A complaint should be dismissed only if, after accepting as true all of the facts alleged in the complaint, and drawing all reasonable inferences in the plaintiff's favor, no relief could be granted under any set of facts consistent with the allegations of the complaint." Id. Claims may be dismissed pursuant to a Rule 12(b)(6) motion only if the plaintiff cannot demonstrate any set of facts that would entitle him to relief. See Conley v. Gibson, 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).[*5] The moving party has the burden of persuasion. See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991).

9. [HN2] In considering a motion to dismiss, a court may consider Securities Exchange Commission documents that are expressly relied upon in the complaint. See In re Burlington Coat Factory Sec. Litig, 114 F.3d 1410, 1426 (3d Cir. 1997) ; Indeck Maine Energy, L.L.C. v. ISO New England Inc., 167 F. Supp. 2d 675 (D. Del. 2001). Further, on a motion to dismiss the court may take judicial notice of the contents of documents required by law to be filed, and actually filed, with federal or state officials. See Oran v. Stafford, 226 F.3d 275, 289 (3d Cir. 2000); Ieradi v. Mylan Lab, Inc., 230 F.3d 594, 600 n.3 (3d Cir. 2000) (citing Fed. R. Evid. 201).

10. Standing under Section 16(b). Section 16(b) [HN3] establishes strict liability for covered individuals who engage in the sale or purchase of a covered security. 15 U.S.C. § 78p(b). The right of recovery under § 16(b) is held, however, solely by the issuer of the security. [*6] Id. A shareholder may bring a derivative action "in the name and in behalf of the issuer if the issuer shall fail or refuse to bring such suit within sixty days after request or shall fail diligently to prosecute the same thereafter." Id.

11. [HN4] There are three requirements for shareholder standing to bring suit under § 16(b). See Gollust v. Mendell, 501 U.S. 115, 115 L. Ed. 2d 109, 111 S. Ct. 2173 (1991). First, the plaintiff must own a security within the meaning of the section. Second, the security held by the plaintiff must be a security of the issuer of the security traded by the covered individual. Third, the plaintiff must own a security of the issuer at the time the § 16(b) action is instituted. Id. at 123-24. Unlike a typical shareholder derivative action, there is not a requirement that the plaintiff maintain continual ownership, only that he has "some continuing financial stake in the litigation" so as to satisfy minimum standing requirements imposed by the jurisdictional limitations of Article III. See id. at 125.

12. In the present case, plaintiff's complaint alleges that he owned shares of stock issued by dELiA*s at the time he[*7] filed the present action. Consequently, plaintiff satisfied the statutory requirements for standing at the time the suit was

2004 U.S. Dist. LEXIS 4991, *

instituted. Defendants contend, however, that plaintiff is no longer a shareholder and lacks the requisite standing to maintain the suit. Plaintiff argues that his ownership of shares in Alloy provide a basis for his continuing financial interest in the outcome of the litigation.

13. In *Gollust*, [HN5] the Supreme Court considered the effect of a stock-exchange merger upon the plaintiff's previously filed § 16(b) action. The unanimous Court concluded that although plaintiff was no longer a shareholder of the issuer, as his stock was exchanged for stock in the new corporation, he nonetheless had the minimal financial interest in the outcome of the litigation to satisfy constitutional concerns. Id. at 126-28. Consequently, under *Gollust*, where a plaintiff has standing at the commencement of the suit, an involuntary change in his status as a security holder resulting from a restructuring will not affect his standing to maintain the suit so long as minimal constitutional requirements are satisfied through the presence of some financial interest [*8]in the outcome of the litigation.

14. In the present case, the major distinguishing factor is the form of restructuring. Instead of a stock-exchange merger, dELiA*s effectuated a cash-out merger. [HN6] The court concludes that § 16(b)'s remedial purpose should not be truncated by the legal nuances of the corporate restructuring. A shareholder of a parent corporation has a financial interest, albeit tenuous, in the disgorgement of profits obtained by insiders of a corporate subsidiary. Although Congress did not provide statutory standing for such a party to institute a § 16(b) suit, n1 a shareholder of a parent corporation has a cognizable interest for purposes of satisfying constitutional requirements. See *Allen v. Wright*, 468 U.S. 737, 751, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984) ( [HN7] "A plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."). Consequently, the court concludes that plaintiff satisfies the constitutional requirements to maintain the suit.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - - -

n1 Where a shareholder of a parent corporation brings a suit against a subsidiary of the parent under a derivative theory, the suit is referred to as double derivative in nature. Section 16(b) suits premised upon double derivative standing have been rejected by a majority of courts. See *Lewis v. McAdam*, 762 F.2d 800, 804 (9th Cir. 1985) (concluding that standing does not exist in a cash-stock merger); *Untermeyer v. Valhi, Inc.*, 665 F. Supp. 297, 300-01 (S.D.N.Y. 1987) (concluding that standing does not exist in a cash-out merger). These cases are distinguished, however, because [HN8] the Supreme Court in *Gollust* differentiated between standing to institute suit and a sufficient interest to maintain suit. See *Gollust*, 501 U.S. at 123-24.

- - - - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - - - -

[*9]

15. Demand. Defendants also contend that plaintiff does not have standing for failure to satisfy Fed. R. Civ. P. 23.1's requirements for demand. It is clear, however, that Rule 23.1 [HN9] does not apply to actions brought pursuant to § 16(b). For example, unlike typical derivative actions, the decision to bring a § 16(b) enforcement action does not enjoy protection of the business judgment rule. See *Cramer v. General Telephone & Elec. Corp.*, 582 F.2d 259, 276 (3d Cir. 1978). Similarly, as discussed above, there are no requirements of continuous ownership. See *Gollust*, 501 U.S. at 124-25.

16. Where demand would have been futile, courts have excused the requirement under § 16(b). See *Berkwich v. Mencher*, 239 F. Supp. 792, 793-94 (S.D.N.Y. 1965) ; *Grossman v. Young*, 72 F. Supp. 375 (S.D.N.Y. 1947). [HN10] On a motion to dismiss for failure to state a claim, the court must accept as true plaintiff's allegations of demand futility. Id. at 380.

17. In the present case, plaintiff pleads demand futility stating that he "has not made demand on dELiA*s Board of Directors[*10] because such demand would be futile in view of Alloy's acquisition of the company and defendants' control of dELiA*s Board." (D.I. 1, P 28) Plaintiff's allegations of control are supported by those documents submitted

2004 U.S. Dist. LEXIS 4991, *

by defendants in support of their motion to dismiss. n2 (D.I. 12) Further, had plaintiff made a demand, § 16(b) would preclude him from filing suit until either sixty days had passed or the board had rejected his demand. Due to the short timing of the merger, plaintiff's shares would be canceled before he would have been permitted to bring suit. The failure of the dELiA*s board to bring suit on its own behalf after becoming aware of plaintiff's suit also supports plaintiff's futility allegations. See Berkwich, 239 F. Supp. at 794. Consequently, for purposes of resolving the pending motion to dismiss the court finds that plaintiff has sufficiently alleged the existence of demand futility.

- - - - - - - - - - - - - - - - - -Footnotes- - - - - - - - - - - - - - - - -

n2 For example, the Former Director defendants represent four of the eleven members of the former dELiA*s and include three of the four former officers. (D.I. 12, ex. 2 at B-3) Collectively, the Former Director defendants owned 37.8% of the dELiA*s stock.

- - - - - - - - - - - - - - - -End Footnotes- - - - - - - - - - - - - - - -

[*11]

Sue L. Robinson

United States District Judge

# TAB 4

Slip Copy
2004 WL 2980734 (D.Del.)
(Cite as: 2004 WL 2980734 (D.Del.))

**H**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
MEDTRONIC VASCULAR, INC. and Medtronic
USA, Inc, Plaintiffs,
v.
ADVANCED CARDIOVASCULAR SYSTEMS, INC.
and Guidant Sales Corp., Defendants.
No. Civ.98-80-SLR.

Dec. 17, 2004.

Karen Jacobs Louden, Philip Bangle, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, for Plaintiffs Medtronic Vascular, Inc. and Medtronic USA, Inc. Raphael V. Lupo, Donna M. Tanguay, Mark G. Davis, James G. Rizzo, of McDermott Will & Emery, Washington D.C., of counsel.

Frederick L. Cottrell, III, Anne Shea Gaza, Richards Layton & Finger, Wilmington, Delaware, for Defendants Advanced Cardiovascular Systems, Inc. and Guidant Sales Corp. J. Michael Jakes, Gerald F. Ivey, Michael A. Morin, of Finnegan, Henderson, Farabow Garrett & Dunner, Washington, D.C., of counsel.

Josy W. Ingersoll, of Young Conaway Stargatt & Taylor, Wilmington, Delaware, for Defendants Boston Scientific Corp., Scimed Life Systems, Inc., Boston Scientific Scimed, Inc., and Medinol, Ltd. for Defendants Boston Scientific Corp., Scimed Life Systems, Inc., and Boston Scientific Scimed, Inc.: Albert Breneisen, of Kenyon and Kenyon, New York, New York, Douglas Ringel, of Kenyon and Kenyon, Washington, D.C., John M. Desmarais, Peter J. Armenio, of Kirkland & Ellis, New York, New York, for Defendant Medinol, Ltd.: Christopher A. Hughes, Richard C. Komson, Israel Blum, Steven F. Meyer, Dorothy R. Auth, of Morgan & Finnegan, New York, New York, of counsel.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

*1 Medtronic AVE ("Medtronic") filed suit against Advanced Cardiovascular Systems, Inc. ("ACS") on February 18, 1998, [FN1] alleging patent infringement of U.S. Patent Nos. 5,292,331 and 5,674,278 (the "Boneau patents"), breach of contract, trade secret misappropriation, unfair competition, restoration of property wrongfully acquired, conversion, declaratory relief, and equitable claims. (D.I.1) Specifically, Medtronic alleges that ACS infringes the Boneau patents by manufacturing, using, selling, offering for sale, and importing its Multi-Link stents in the United States. (Id. at ¶ 2) Medtronic also contends that ACS wrongfully acquired and is misusing the Boneau stent technology to develop and to patent balloon expandable stents. [FN2] In this regard, Medtronic seeks a declaratory judgment that its Micro Stent II and GFX Stent Delivery Systems do not infringe ACS's patents, which Medtronic argues are based on wrongfully acquired information about the Boneau technology.

FN1. On November 15, 2000, this case was stayed pending resolution of two different appeals to the Federal Circuit. The case was not reopened until March 20, 2003.

FN2. AVE holds U.S. Patent Nos. 5,421,955; 5,514,154; and 5,603,721 relating to balloon expandable stents. (Id. at ¶ 3)

On March 30, 1998, ACS answered the complaint denying Medtronic's allegation and asserting a variety of affirmative defenses, including the "first-to-file" rule, noninfringement, estoppel, invalidity, statute of limitations, laches, and federal preemption. (D.I.8) ACS amended its answer on June 15, 1998 to add an additional affirmative defense of inequitable conduct and to assert invalidity counterclaims as to the Boneau patents. (D.I. 24 at ¶¶ 5, 6, 113, 114)

Due to its similarity to other actions involving the Boneau patents, this case will be tried with Civil Actions Nos. 98-80-SLR and 98-478-SLR.

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1338(a) and 2201(a). Pending before this court is ACS's and Guidant's partial summary judgment motion based on the doctrine of collateral estoppel. (D.I.404) For the reasons stated this motion is denied.

II. BACKGROUND

The patents in suit claim various endovascular support devices that are generally used in the treatment of cardiovascular disease. Patents on stent technologies

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**(Cite as: 2004 WL 2980734, \*1 (D.Del.))**

are not an area of first impression for this court. In 1997, Cordis Corporation sued Medtronic for infringement of U.S. Patent No. 5,195,984 ("the '984 patent") by the Microstent II, GFX and GFX 2 stents. (D.I. 409 at 2; 464 at 2) In that case, "connector member" was construed to mean "a discrete structure disposed or particularly arranged between adjacent tubular members in order to join them together." (D.I. 409 at 3; 464 at 2) The court also construed "substantially parallel" to mean "the connector member must run in substantially the same direction as the longitudinal axis of the adjacent tubular members." *Id.* In its defense, Medtronic argued that the welds of the accused products were joints and not connector members and were not parallel to the longitudinal axis of the stent. (D.I. 409 at 4) The jury, however, returned a verdict for Cordis, finding that the welds of the accused products were connector members that ran parallel to the longitudinal axis of the stent. (*Id.* at 7; D.I. 464 at 3) Medtronic then filed a JMOL motion and a renewal motion based on grounds unrelated to its arguments regarding weld connections. (D.I. 409 at 7-8; D.I. 464 at 3) The court granted the JMOL, concluding that, due to prosecution history estoppel, Cordis was not entitled to assert some of the claims at issue. *See Cordis Corp. v. Medtronic AVE, Inc.,* 194 F.Supp.2d 323, 345 (D.Del.2002).

**\*2** The Federal Circuit reversed the court's JMOL decision and remanded the case. *See Cordis Corp. v. Medtronic AVE, Inc.,* 339 F.3d 1352 (Fed.Cir.2003). The Federal Circuit refused to overturn the jury verdict with respect to the parallel limitation. *See id.* at 1363. Instead the Federal Circuit held that a reasonable jury could have concluded that Medtronic's welds were parallel to the longitudinal axis of the stent. *See id.* The Federal Circuit did not address whether the welds of the devices met the "connector member" limitation itself.

Medtronic's motions for rehearing, rehearing en banc and its appeal to the Supreme Court were denied. *See Cordis Corp. v. Medtronic AVE,* 2003 U.S.App. LEXIS 22508 (Fed.Cir.2003); *Medtronic Vascular, Inc. v. Cordis Corp.,* 124 S.Ct. 1426 (2004).

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party

bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10 (1986). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.,* 57 F.3d 300, 302 n. 1 (3d Cir.1995) (internal citations omitted). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita,* 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e)). The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Pa. Coal Ass'n v. Babbitt,* 63 F.3d 231, 236 (3d Cir.1995). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

ACS and Guidant assert that Medtronic should be estopped from arguing that the welds of its patents are not connecting elements that are parallel to the longitudinal axis of the stent because Medtronic did not prevail on these arguments in *Cordis v. Medtronic.* (D.I.409) To prevail on their motion for collateral estoppel, ACS and Guidant must demonstrate that four factors are met: (1) the issue to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) it was a valid and final judgment; and (4) the determination was essential to the prior judgment. *Burlington Northern Railroad Co. v. Hyundai Merchant Marine Co., Ltd.,* 63 F.3d 1227, 1231 (3d Cir.1995) (quoting *In re Graham,* 973 F.2d 1089, 1097 (3d Cir.1992)).

**\*3** Even if all the criteria are satisfied, application of the doctrine is "subject to an overriding fairness determination by the trial judge." *Burlington,* 63 F.3d at 1231. The party resisting collateral estoppel should be "permitted to demonstrate ... that he did not have 'a fair opportunity procedurally, substantively and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
(Cite as: 2004 WL 2980734, *3 (D.Del.))

evidentially to pursue his claim the first time." '
*Blonder-Tongue Laboratories, Inc. v. University of
Illinois Foundation,* 402 U.S. 313, 333 (1971) (quoting
*Eisel v. Columbia Packing Co.,* 181 F.Supp. 298, 301
(D.Mass.1960)).

As applied here, the court finds that ACS and Guidant
have not proved that the issue in this case is identical to
the issue in *Cordis.* The patent that was at issue in
*Cordis* is not at issue in this case, and none of the
patents at issue in this case were at issue in *Cordis.*
Thus, an identical issue has not been litigated in a
previous trial. *See generally Kearns v. General Motors
Corp.,* 94 F.3d 1553, 1556 (Fed.Cir.1999) ("it is not
possible to show that the identical issue was presented
in the sixteen patents that were not before the ... court
..., for each patent, by law, covers a independent and
distinct invention"); *Suntiger, Inc. v. Scientific
Research Funding Group,* 189 F.3d 1327, 1333
(Fed.Cir.1999) (holding that collateral estoppel did not
apply to appeals concerning different patents).

ACS and Guidant argue that the issue is identical

because the issue of whether Medtronic's weld
connections are discrete structures, that are parallel to a
longitudinal axis, is a factual one that has already been
decided. However, these categorizations of the weld
connections were based on the claim construction of a
different patent. It goes without saying that the court's
construction of the claims of the '984 patent do not
necessarily affect its construction of the patents in suit.
Therefore, Medtronic is entitled to argue that its weld
connections do not meet the limitations of the asserted
claims at issue, despite the fact that it can no longer
argue that the weld connections do not meet the
limitations of the '984 patent.

## V. CONCLUSION

For the reasons stated, ACS's and Guidant's motion for
partial summary judgment is denied. An order
consistent with this memorandum opinion shall issue.

2004 WL 2980734 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.