IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM, INC., a Delaware Corporation, | : : : : : : : | |
|  | : | Case No. 04-1565-SLR |
| Plaintiff, | : : | |
| v. | : : | |
| DANIEL D. CROWLEY; DONALD J. AMARAL; WILLIAM J. CASEY; L. PETER SMITH; AND SANDRA L. SMOLEY, | : : : : : | |
| Defendants. | : : : | |

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER VENUE
TO THE DISTRICT OF COLORADO**

OF COUNSEL:

Barry E. Bressler
Wilbur L. Kipnes
Jennifer Nestle
Han Nguyen
SCHNADER HARRISON SEGAL
  & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA  19103
Phone:  (215) 751-2000
Fax:  (215) 751-2205

Dated:  March 8, 2005

Rolin P. Bissell (# 4478)
Glenn C. Mandalas (# 4432)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801
Phone:  (302) 571-5500
Fax:  (302) 571-1253

Attorneys for Plaintiff

# TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF PROCEEDINGS ............................................................. 1

SUMMARY OF ARGUMENT ............................................................................... 2

FACTS ........................................................................................................... 2

   A. The Trustee ............................................................................................. 2

   B. The Defendants ........................................................................................ 3

   C. Brief History of Crowley's Conflict .......................................................... 4

   D. The Bankruptcy Proceedings .................................................................... 6

ARGUMENT .................................................................................................... 8

   A. The Trustee's Original Forum Choice of Delaware is Entitled to Deference ............... 10

      1. Delaware is the Trustee's Home Forum. ................................................. 10

      2. The Trustee Had Ample Reason to Choose Delaware. ............................... 11

   B. The Relative Convenience of the Parties Weighs Against Transfer. ............... 14

   C. Key Events Occurred in Delaware ........................................................... 18

   D. Delaware is More Convenient for Third Party Witnesses. ........................... 19

   E. The Trustee Has Custody of Relevant Documents for this Litigation. ............ 20

   F. The Public Interest Factors Also Weigh in Favor of Venue in Delaware. ....... 21

CONCLUSION .................................................................................................. 22

WP3:1091813.2

# TABLE OF AUTHORITIES

Page

**Cases**

*3Com Corp. v. D-Link Sys.,*
No. 03-014-GMS, 2003 WL 1966438
(D. Del. April 25, 2003) ........................................................................................ 13

*Actrade Fin. Techs. v. Aharoni,*
No. 20168, 2003 Del. Ch. LEXIS 114
(Del. Ch. Oct. 17, 2003) ........................................................................................ 16

*APV N. Am., Inc. v. Sig Simonazzi N. Am., Inc.,*
295 F. Supp. 2d 393 (D. Del. 2002) ...................................................................... 14

*Armstrong v. Pomerance,*
423 A.2d 174 (1980) ....................................................................................... 13, 16

*BAE Systems Aircraft Controls Inc. v. Eclipse Aviation Corp.,*
224 F.R.D. 581 (D. Del. 2004) ............................................................................ 8, 9

*Brown v. C.D. Smith Drug Co.,*
No. 98-494-SLR, 1999 WL 709992
(D. Del. Aug. 18, 1999) ......................................................................................... 13

*Chrysler Capital Corp. v. Woehling,*
663 F. Supp. 478 (D. Del. 1987) ........................................................................... 14

*Cypress Semiconductor Corp v. Integrated Circuit Systems, Inc.,*
No. 01-199-SLR, 2001 U.S. Dist. LEXIS 20803
(D. Del. Nov. 28, 2001) ......................................................................................... 20

*Donaldson v. Bernstein,*
104 F.3d 547 (3d Cir. 1997) .................................................................................. 19

*Erbamont Inc., v. Cetus Corp.,*
720 F. Supp. 387 (D. Del. 1989) ............................................................................. 8

*Hoffman v. Blaski,*
363 U.S. 335 (1960) ............................................................................................... 15

*Ikos Sys. v. Cadence Design Sys.,*
No. 02-1335-GMS, 2002 U.S. Dist. LEXIS 20574
(D. Del. Oct. 21, 2002) .......................................................................................... 14

*In re M.L.-Lee Acquisition Fund II,*
816 F. Supp. 973 (D. Del. 1993) ........................................................................... 11

*Jones Pharma, Inc. v. KV Pharmaceutical Co.,*
No. 03-786-JJF, 2004 U.S. Dist. LEXIS 2333
(D. Del. Feb. 17, 2004) .......................................................................................... 13

*Jumara v. State Farm Ins. Co.*,
 55 F.3d 873 (3d Cir. 1995) ........................................................................... 9

*Kirschner Bros. Oil, Inc. v. Pennill*,
 697 F. Supp. 804 (D. Del. 1988) ................................................................... 10

*Kuck v. Veritas Software Corp.*,
 No. 04-831-SLR, 2005 U.S. Dist. LEXIS 823
 (D. Del. Jan. 14, 2005) ................................................................................. 11

*Original Creatine Patent Co., Ltd. v. Kaizen, Inc.*,
 No. 02-471-SLR, 2003 U.S. Dist. LEXIS 988
 (D. Del. Jan. 22, 2003) ................................................................................. 13

*Pacor, Inc. v. Higgins*,
 743 F.2d 984 (3d Cir. 1984) ......................................................................... 19

*Padcom, Inc. v. NetMotion Wireless, Inc.*,
 No. 03-983-SLR, 2004 U.S. Dist. LEXIS 9658
 (D. Del. May 24, 2004) ................................................................................. 11

*Praxair, Inc. v. ATMI, Inc.*,
 No. 03-1158-SLR, 2004 U.S. Dist. LEXIS 7076
 (D. Del. April 20, 2004) ............................................................................... 18

*Reliance Ins. Co. v. Paschen Contractors, Inc.*,
 1990 U.S. Dist. LEXIS 858 (D. Del. 1990) ................................................... 10

*Shutte v. Armco Steel Corp.*,
 431 F.2d 22 (3d Cir. 1970) ............................................................................ 9

*Stratos Lightwave, Inc. v. E20 Communs., Inc.*,
 No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653
 (D. Del. Mar. 26, 2002) ................................................................................ 11

*Tsoukanelis v. Country Pure Foods, Inc.*,
 337 F. Supp. 2d 600 (D. Del. 2004) .............................................................. 9

*Tuff Torq Corp. v. Hydro-Gear Limited Partnership*,
 882 F. Supp. 359 (D. Del. 1994) ............................................................. 10, 11

*Unicredito Italiano v. JP Morgan Chase Bank*,
 No. 02-104-GMS, 2002 U.S. Dist. LEXIS 11535
 (D. Del. June 26, 2002) ................................................................................. 12

*Virgin Wireless, Inc. v. Virgin Enters., Ltd.*,
 201 F. Supp. 2d 294 (D. Del. 2002) .............................................................. 14

*Waste Distillation Technology, Inc. v. Pan American Resources, Inc.*,
 775 F. Supp. 759 (D. Del. 1991) ................................................................... 16

**Statutes**

10 *Del. C.* § 3114 .................................................................................... 10, 16

28 U.S.C. § 1404(a) ......................................................................................... 1

WP3:1091813.2                                                   063702.1002

28 U.S.C. § 157(c)(1)................................................................................................................ 19

61 Del. Laws, ch.119 (July 7, 1977)........................................................................................ 16

## NATURE AND STAGE OF PROCEEDINGS

Plaintiff, Arlin M. Adams, as Chapter 11 Trustee ("Trustee") of the Post-Confirmation Bankruptcy Estates of Coram Healthcare Corporation and its wholly-owned subsidiary Coram, Inc. (collectively "Coram"), submits this answering brief in opposition to the motion of defendants Donald J. Amaral, William J. Casey, L. Peter Smith, and Sandra L. Smoley (collectively "Outside Directors") to transfer venue to the District of Colorado pursuant to 28 U.S.C. § 1404(a).  On February 22, 2005, defendant Daniel D. Crowley ("Crowley"), Coram's former Chairman, President and CEO, joined in the Outside Directors' motion and adopted their supporting brief. (D.I. 15).

On December 29, 2004, the Trustee filed this action asserting that Crowley and the Outside Directors breached their fiduciary duties to Coram. (D.I. 1).  The Trustee asserts that Crowley breached his duty of loyalty to Coram when he entered into an employment agreement with Cerberus Partners L.L.P. ("Cerberus"), one of Coram's three major lenders, under which Cerberus paid him $80,000 per month, while at the same time entering into an agreement to serve as Chairman of the Board, CEO and President of Coram.  Crowley did not disclose to Coram's Board the existence of his Employment Agreement with Cerberus or the fact that Cerberus was to pay him $80,000 per month.  The Trustee asserts that the Outside Directors failed to exercise any business judgment or otherwise make any good faith attempt to fulfill their fiduciary duties to Coram and its stockholders in connection with Crowley's employment.  They made no inquiries and approved Crowley's employment agreement with Coram without in any way checking on what Crowley was doing for Cerberus or learning that Crowley was receiving $80,000 each month from Cerberus.  The Board's inaction continued even after the existence of the conflict was brought to their attention during Coram's bankruptcy.

063702.1002

On February 22, 2005, Crowley answered the complaint. (D.I. 16). On March 4, 2005, the Outside Directors moved to dismiss the complaint. (D.I. 17).

## SUMMARY OF ARGUMENT

The Trustee's choice of forum in the District of Delaware should be sustained because Delaware is his home forum and there are compelling reasons for breach of fiduciary duty claims against an officer and directors of a Delaware corporation arising under Delaware law to be litigated in a Delaware court. The Outside Directors and Crowley have failed to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer. Defendants have also failed to demonstrate any connection that Colorado has to the case or the principal parties. In contrast, the case and the Trustee have substantial connections to Delaware and the Trustee would be greatly inconvenienced by a transfer to Colorado. The public and private interest factors weigh heavily in favor of Delaware rather than Colorado as the appropriate forum for this action.

## FACTS

### A. The Trustee

On March 7, 2002, the United States Bankruptcy Court for the District of Delaware entered an order appointing plaintiff Chapter 11 Trustee of Coram. The Trustee resides in a suburb of Philadelphia. His law offices are in downtown Philadelphia, a distance of 30 miles to the federal courthouse in Wilmington, which are connected by a direct rail line that takes only 20 minutes. Coram was a publicly-traded company incorporated in Delaware. On October 27, 2004, the Bankruptcy Court entered an order confirming the Trustee's Plan of Reorganization. All appeals from the confirmation order were withdrawn, and the Trustee's plan

- 2 -

was implemented on December 1, 2004. Coram is now a private company owned by its former lenders. Under the Trustee's plan as approved by the Bankruptcy Court for the District of Delaware, the right to pursue causes of action against Coram's former directors was reserved to the Trustee for the benefit of Coram's former unsecured trade creditors and its former common shareholders.

Coram is a leading provider of alternative-site infusion therapy with branches throughout the United States. Compl. ¶ 1 (D.I. 1). Infusion therapy involves the intravenous administration of drug therapies for nutrition, anti-infection, HIV, blood factor, pain management, chemotherapy and other purposes. *Id.* Coram's corporate headquarters are located in Denver, Colorado, where only 101 employees of Coram's 3,100 employees are based. Declaration of Michael E. Dell ("Dell Decl.") (Ex. A, at ¶ 3).[1]

## B. The Defendants

Crowley was Coram's Chairman and CEO from November 1999 until the appointment of the Trustee. He continued to serve as CEO until his resignation in March 2003. Crowley resides in Sacramento, California. He is the Chairman, CEO and sole owner of Dynamic Health Care Solutions, LLC ("Dynamic"), a consulting firm located in Sacramento. While serving as Coram's Chairman, CEO and President, Crowley principally worked from Dynamic's office in Sacramento. Dell Decl. (Ex. A, at ¶ 5).

Defendant Donald J. Amaral, who joined Coram's Board in 1995 and served as Chairman from September 1997 through November 30, 1999, resides in Nevada. Compl. ¶ 4 (D.I. 1). Defendant William J. Casey joined Coram's Board in 1997 and resides in California.

---

[1] Exhibits to this answering brief are cited herein as "(Ex. __, at __)."

Compl. ¶ 5. Defendant L. Peter Smith joined Coram's Board in 1994. Compl. ¶ 6. Smith

resides in a suburb of Chicago, Illinois and spends approximately 30% of his time in Carnegie,

Pennsylvania at the offices of Medmark, Inc., of which he is the CEO. Declaration of Peter

Smith ¶¶ 3, 6, filed with Defendants' Motion to Transfer Venue (D.I. 7). Defendant Sandra L.

Smoley, who joined Coram's Board on February 10, 2000, resides in California. Compl. ¶ 7

(D.I. 1).

### C. Brief History of Crowley's Conflict

From approximately 1997 on, Cerberus, together with Goldman Sachs Credit

Partners L.P. ("Goldman Sachs") and Wells Fargo Foothill ("Foothill"), owned all of Coram's

debt and are collectively referred to as "the Noteholders." Compl. ¶ 10 (D.I. 1). Cerberus and

Goldman Sachs have their principal places of business in New York. Foothill has its principal

place of business in California. Cerberus owned approximately 38% of Coram's debt. *Id.* The

managing partner of Cerberus, Stephen Feinberg ("Feinberg"), sat on Coram's Board from 1998

until July 2000. *Id.* at ¶¶ 11, 32. Feinberg resides in New York.

In early 1999, Cerberus retained Crowley as a consultant in connection with its

investments in the health care field. Compl. ¶ 13 (D.I. 1). In July 1999, Crowley and Cerberus

entered into an oral agreement pursuant to which Crowley agreed to work exclusively for

Cerberus for three years at a salary of $80,000 per month plus expenses with the possibility of

substantial bonuses. *Id.* On November 19, 1999, Crowley in California executed a written

Employment Agreement with Cerberus in New York effective as of August 1, 1999, which

memorialized the financial terms of the earlier oral agreement. *Id.* at ¶ 22. The

Crowley/Cerberus Employment Agreement required Crowley to devote "his entire business time,

attention, skill and energy exclusively to the business of the Employer [Cerberus]" by

- 4 -

063702 1002

performing duties to be assigned by Feinberg. *Id.* The Employment Agreement also provided that Cerberus could terminate Crowley for cause if Crowley did not follow Cerberus' reasonable instructions. *Id.*

In August 1999, after Crowley and Cerberus had entered into their oral agreement, Feinberg recommended to the Board that Coram hire Crowley as a "consultant" or "CEO coach" to work with the newly-elevated CEO, Richard Smith. Compl. ¶ 14 (D.I. 1). Feinberg disclosed to the Board that Crowley had a relationship with Cerberus, but provided no information about that relationship. *Id.* at ¶ 15. Notwithstanding their knowledge that some "relationship" existed between Crowley and Cerberus, none of Coram's directors asked about Crowley's obligations to Cerberus, the nature of his work for Cerberus, or the terms of his compensation from Cerberus.

After Richard Smith left Coram in October 1999, Crowley wrote to Amaral asking that Amaral consider hiring him in connection with Coram's ongoing "restructuring process." Compl. ¶ 17 (D.I. 1). On November 12, 1999, while he was negotiating with Amaral to be Coram's CEO, Crowley sent a "Personal & Confidential" letter to Feinberg requesting additional compensation from Cerberus to induce him to become CEO of Coram. *Id.* at ¶ 19. On November 17, 1999, the Coram Board approved a three-year employment agreement with Crowley, which Crowley signed the next day. *Id.* at ¶ 21. In response to a demand by Crowley for additional compensation, Feinberg and Crowley negotiated an amendment to Crowley's November 30, 1999 Employment Agreement, which was executed as of April 6, 2000, and signed by directors Feinberg and L. Peter Smith. *Id.* at ¶ 28. Between November 30, 1999, when Crowley became CEO and July 31, 2000, Crowley caused Coram to pay the Noteholders approximately $60 million. *Id.* at ¶ 31.

- 5 -

### D. The Bankruptcy Proceedings

On August 8, 2000, Coram filed a Chapter 11 petition in the Bankruptcy Court for the District of Delaware, together with a Plan of Reorganization. The proposed Plan provided for the cancellation of all shareholders' interests and for issuing new Coram stock to the Noteholders. Coram's bankruptcy counsel at the time were David Friedman and his colleagues of the New York City firm of Kasowitz, Benson, Torres & Friedman LLP ("Kasowitz").

On October 18, 2000, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") to represent the interests of Coram's common shareholders. Compl. ¶ 35 (D.I. 1). During discovery in connection with Coram's proposed Plan of Reorganization, the Equity Committee obtained the Crowley/Cerberus Employment Agreement and other documents related to Crowley's conflict. *Id.*

Following contested confirmation hearings in Wilmington, on December 21, 2000, the Bankruptcy Court, holding that Coram had not proposed its Plan in good faith under Section 1129(a)(3) of the United States Bankruptcy Code, denied confirmation of the Debtors' proposed Plan. In its oral ruling, the Bankruptcy Court concluded that Crowley "had an actual conflict of interest" by virtue of his contractual relationship with Cerberus. Op. 12/21/00 at 89, attached to Complaint as Exhibit H (D.I. 1). The Bankruptcy Court found that the actual conflict of interest "tainted the debtors' restructuring of its debt, the debtors' negotiations towards a Plan, even the debtors' restructuring of its operations." *Id.* at 88.

Even if the Outside Directors had not learned the terms of the Crowley/Cerberus Employment Agreement during the course of discovery, they did so upon being informed of the Bankruptcy Court's decision. Compl. ¶ 37 (D.I. 1). Rather than investigate the matter, the Board sought to avoid the issue of the conflict. After the denial of the first Plan of

Reorganization, the Outside Directors elected to retain Harrison J. Goldin Associates, L.L.C. ("Goldin"), a financial advisory firm in New York City, as an independent restructuring advisor. *Id.* at ¶ 38. In describing the Special Committee's purpose in retaining Goldin as independent restructuring advisor, Amaral testified that the Board wanted Goldin "to sprinkle holy water on [the situation]." Amaral Dep. 10/26/01 at 35, attached to Complaint as Exhibit I (D.I. 1).

The Bankruptcy Court approved Goldin's retention and Goldin's application to retain the New York firm of Kramer Levin Naftalis & Frankel LLP as counsel. Compl. ¶¶ 39-40 (D.I. 1). Goldin limited the scope of his inquiry to events occurring prior to December 2000, and, remarkably, never asked either Crowley or Cerberus whether Crowley continued to receive $80,000 per month from Cerberus. *Id.* at ¶ 41. Goldin prepared a report of his investigation, which Coram converted into a second proposed plan of confirmation. *Id.* at ¶ 43. The Equity Committee opposed the proposed plan.

On December 21, 2001, again following a contested confirmation hearing held in Wilmington, the Bankruptcy Court issued a written opinion denying confirmation. After reviewing the facts of the Crowley/Cerberus Employment Agreement and Crowley's conflict of interest as found at the hearing on the First Plan, and testimony by Goldin, Crowley, Amaral, and others concerning events since December 2000, the Bankruptcy Court concluded that "[n]othing, in fact, has changed since the first confirmation hearing," and that Crowley's agreement with Cerberus constituted an actual conflict of interest. Op. 12/21/01 at 13, attached to Complaint as Exhibit J (D.I. 1). The Bankruptcy Court found that other than hiring Goldin and reviewing his report, the Outside Directors did nothing in response to the Bankruptcy Court's order denying confirmation of the First Plan. *Id.* at 22.

- 7 -

Following his appointment, the Trustee submitted a proposed plan of reorganization and the Equity Committee submitted a competing plan. Following trial in Wilmington, the Bankruptcy Court approved the Trustee's plan.

## ARGUMENT

What is striking about the Outside Directors' brief is its failure to discuss in any meaningful way the interests of the Trustee - who was appointed by the United States Bankruptcy Court for the District of Delaware; who brings this lawsuit as a requirement of the reorganization plan approved by that court; and who must seek that court's approval of any proposed settlement. The Outside Directors dismiss the Trustee's interests out-of-hand by arguing, erroneously as we will show, that the Trustee's choice of forum is not entitled to deference because the Trustee is a citizen of Pennsylvania.

The applicable law governing transfer motions under 28 U.S.C. § 1404(a) is well established. "A district court may transfer any civil action to any other district or division where it may have been brought, if it is convenient for the parties and witnesses and in the interests of justice." *BAE Sys. Aircraft Controls Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 588 (D. Del. 2004). The parties moving for the transfer, the Outside Directors and Crowley, have the "burden of establishing that 'the balance of convenience of the parties and witnesses strongly favors the defendant[s].'" *Id.* In view of the deference given to plaintiff's choice of forum, transfer is denied when the factors are evenly balanced or slightly favor a transfer. *Erbamont Inc., v. Cetus Corp.*, 720 F. Supp. 387, 396 (D. Del. 1989). "To this end, 'defendants brought into suit in Delaware must prove that litigating in Delaware would pose a unique or unusual burden on their

063702.1002

operations for a Delaware court to transfer venue.'" *Tsoukanelis v. Country Pure Foods, Inc.*, 337 F. Supp. 2d 600, 604 (D. Del. 2004).

The Court of Appeals for the Third Circuit has recognized that "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request and that choice should not be lightly disturbed. . . . The decision to transfer is in the court's discretion, but a transfer is not to be liberally granted." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (citations omitted). In reviewing a motion to transfer, courts conduct a broad analysis of six private interest factors and five public interest factors. "Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claims arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records." *BAE Systems*, 224 F.R.D. at 588 (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). "Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.*

**A.    The Trustee's Original Forum Choice of Delaware is Entitled to Deference.**

### 1. Delaware is the Trustee's Home Forum.

The Trustee's choice of forum in Delaware is entitled to the same deference as though he were a citizen of Delaware. The Trustee could not have brought this suit in Pennsylvania because a Pennsylvania court could not exercise jurisdiction over four of the five defendants. The Trustee certainly had rational and legitimate reasons for choosing this forum. The Outside Directors' argument that Delaware cannot be the Trustee's "home turf" ignores clear Delaware precedent.

An analysis of what constitutes a plaintiff's home forum is not limited to the question of where the plaintiff resides. In *Tuff Torq Corp. v. Hydro-Gear Ltd. Partnership*, 882 F. Supp. 359, 362 (D. Del. 1994), the Court held that Delaware may be considered the "home turf" of a plaintiff *from Tennessee*. In *Kirschner Bros. Oil, Inc. v. Pennill*, 697 F. Supp. 804, 806 (D. Del. 1988), the Court defined "home turf" as the forum closest to [plaintiff's] home in which plaintiff could affect personal jurisdiction over the principle defendant. Delaware courts have recognized that for Philadelphia plaintiffs, located 30 miles from Wilmington, the District of Delaware is considered their home turf if personal jurisdiction over the defendants does not exist in the Eastern District of Pennsylvania. *Reliance Ins. Co. v. Paschen Contractors, Inc.*, No. 89-408-CMW, 1990 U.S. Dist. LEXIS 858 (D. Del. Jan. 25, 1990). The Outside Directors (with the possible exception of Smith) and Crowley would not be subject to personal jurisdiction in Pennsylvania, but they are plainly subject to jurisdiction in Delaware pursuant to the Delaware Courts and Judicial Procedure Law. 10 *Del. C.* § 3114. Because Delaware is the Trustee's home forum, the defendants must meet the heavy burden to show that the balance of interests weigh *strongly* in favor of transfer. The defendants simply cannot do so.

- 10 -

### 2. The Trustee Had Ample Reason to Choose Delaware.

Even if defendants' "home turf" argument were correct, their suggestion that the plaintiff's choice of forum is entitled to no deference is equally wrong. "Even if this forum were not the plaintiff's 'home turf,' its choice of forum is still paramount." *Tuff Torq Corp.*, 882 F. Supp. at 362. As this Court recently explained in *Kuck v. Veritas Software Corp.*, No. 04-831-SLR, 2005 U.S. Dist. LEXIS 823, *5 (D. Del. Jan. 14, 2005):

> Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interest of justice weigh strongly in favor of transfer.

(quoting *In re ML-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993)). *See also Padcom, Inc. v. NetMotion Wireless, Inc.*, No. 03-983-SLR, 2004 U.S. Dist. LEXIS 9658 (D. Del. May 24, 2004). Indeed, "it is not appropriate to disregard a plaintiff's choice of forum where [he] had a rational and legitimate reason for choosing the forum." *Stratos Lightwave, Inc. v. E20 Communs., Inc.*, No. 01-309-JJF, 2002 U.S. Dist. LEXIS 5653, *7 (D. Del. Mar. 26, 2002); *Kuck*, 2005 U.S. Dist. LEXIS 823, at *4 ("The deference afforded plaintiff's choice of forum will apply as long as plaintiff has selected the forum for some legitimate reason.").

There are significant and legitimate reasons for the Trustee's choice of Delaware:

1. Delaware is the closest forum to his place of residence and work that has jurisdiction over all of the defendants. Philadelphia is closer to Wilmington than many places within the District of Delaware.

- 11 -

2.  The Trustee was appointed by the Bankruptcy Court for the District of Delaware and remains under the jurisdiction of that Court. The Trustee will undoubtedly testify at trial regarding the bankruptcy.

3.  Virtually all of Coram's documents are at the Trustee's office in Philadelphia and can readily be transported to the office of the Trustee's Delaware counsel. Declaration of Wilbur L. Kipnes ("Kipnes Decl.") (Ex. B, at ¶ 3). Upon his appointment as operating Trustee on March 7, 2002, Coram's Board of Directors ceased to function. More than 161,000 pages of documents were produced in discovery during the bankruptcy proceedings. *Id.*

4.  A major focus of the current lawsuit is the defendants' handling of the bankruptcy proceedings in Delaware.

5.  Coram is a Delaware corporation, and this suit asserts claims of breach of fiduciary duty to that corporation. The home forum of a Delaware incorporated company includes Delaware.[2] A "corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state." *Jones Pharma, Inc. v. KV Pharm. Co.,*

---

[2]    Relying on *Unicredito Italiano v. JP Morgan Chase Bank,* No. 02-104-GMS, 2002 U.S. Dist. LEXIS 11535, *3, n.2 (D. Del. June 26, 2002), the Outside Directors argue that the place of incorporation matters little in considering a transfer motion. In *Unicredito,* the fact that some of the parties were incorporated in Delaware was not dispositive because New York substantive law applied, New York had an interest in the banking issues, all of the activities giving rise to the litigation took place in New York and all of the parties were headquartered in New York. The emphasis on the state law governing the action and the location of activities in *Unicredito* supports the Trustee's position here.

WP3:1091813 2          063702.1002

No. 03-786-JJF, 2004 U.S. Dist. LEXIS 2333, *4 (D. Del. Feb. 17, 2004).

6.  As the Outside Directors' brief concedes, the claims are governed by Delaware corporate law. Delaware courts have a strong interest in having claims against directors and officers for their actions as directors and officers litigated in Delaware. *See Armstrong v. Pomerance*, 423 A.2d 174, 176-77 (Del. 1980).

The fact that Delaware law governs this case distinguishes it from those upon which the Outside Directors base their argument. Moreover, defendants' principal case, *Brown v. C.D. Smith Drug Co.*, No. 98-494-SLR, 1999 WL 709992 (D. Del. Aug. 18, 1999), is distinguishable for two other reasons in addition to the fact that Missouri law governed. First, the bankruptcy trustee in *Brown* was from Kentucky and, therefore, could not demonstrate that Delaware was more convenient for him. Second, in *Brown*, no underlying activity took place in Delaware.

took place in California); *Ikos Sys. v. Cadence Design Sys.*, No. 02-1335-GMS, 2002 U.S. Dist.
LEXIS 20574 (D. Del. Oct. 21, 2002) (patent action transferred to California where most of the
witnesses and the headquarters of both parties were located); *APV N. Am., Inc. v. Sig Simonazzi
N. Am., Inc.*, 295 F. Supp. 2d 393 (D. Del. 2002) (patent infringement action transferred to Texas
where patents related to machines manufactured in Texas with no infringement in Delaware
alleged by a New York plaintiff); *Virgin Wireless, Inc. v. Virgin Enters., Ltd.*, 201 F. Supp. 2d
294, 300 (D. Del. 2002) (trademark action transferred to New York where an action was already
pending, activities related to the litigation had taken place and it was plaintiffs' home forum
based on incorporation and their principal place of business).  In *Chrysler Capital Corp. v.
Woehling*, 663 F. Supp. 478 (D. Del. 1987), there was a provision in the promissory note
providing for the application of Delaware law, but Chrysler's claim had nothing to do with
Delaware and was but a small part of a larger, more complicated action already pending in New
Jersey.

**B.      The Relative Convenience of the Parties Weighs Against Transfer.**

The second and fourth private interest factors require consideration of the
defendants' forum preference and the relative convenience of the parties.  Although the
defendants seek a transfer to the District of Colorado, they have virtually no connection to that
forum.  Their argument is reduced to the geographic fact that Denver is closer to Nevada and
California than is Wilmington (but that is not so for Illinois), making it easier to fly to Denver

063702.1002

than to Wilmington. But they concede they have to board a plane in either situation. In contrast, the Trustee has only a short drive or train ride to Wilmington.[3]

The Outside Directors assert that "[a]ll of the defendants are accustomed to traveling to Colorado" as members of Coram's Board of Directors. Defs.' Br. at 12 (D.I. 3). This statement is demonstrably false. Coram has no records of the Outside Directors having been in Colorado on Coram business from January 2000 through 2002. Dell Decl. (Ex. A, at ¶ 6). Directors Smoley and Smith did not travel to Colorado at all between August 1999 and March 7, 2002. *Id.* at ¶ 7. The vast majority of the Coram Board meetings that were held in that period were conducted telephonically. There was only one in-person meeting held in Colorado – on August 5, 1999 – throughout this period, and Mr. Smith was absent and Ms. Smoley was not yet a member of the Coram Board. *Id.* at ¶ 7. During this same time period, several board meetings were held in Sacramento, California, where Crowley lived and where his consulting company was located. *Id.* at ¶¶ 5, 8. There were two in-person board meetings in 2000 and both were in New York City. The April meeting was held at Cerberus' headquarters in New York and the July meeting at the New York office of the Kasowitz firm, Coram's bankruptcy counsel. *Id.* at ¶ 9. As a convenience to Mr. Smith, Coram held a board meeting in Chicago on March 21, 2001, but Mr. Smith failed to attend. *Id.* at ¶ 10.

As directors and as an officer, the Outside Directors and Crowley are subject to the fiduciary duties established by Delaware state law. Because Coram was and is a Delaware

---

[3]    In their Opening Brief (D.I. 3, at 11, n.4), Defendants request an alternative forum, the Northern District of California. Defendants ignore the language of § 1404(a). This case cannot be transferred to the Northern District of California because that court does not have personal jurisdiction and proper venue. *See Hoffman v. Blaski*, 363 U.S. 335, 343-44 (1960).

corporation, they "must anticipate the possibility of being hauled into court here." *Waste*

*Distillation Technology, Inc. v. Pan American Resources, Inc.*, 775 F. Supp. 759, 766 (D. Del.

1991). Delaware law provides for jurisdiction for directors of companies incorporated in

Delaware, 10 *Del. C.* § 3114, the rationale for which has been explained by the Delaware

Supreme Court:

> The instant litigation seeks to hold the defendants accountable to the
> Company for their actions as directors of a Delaware corporation. Their
> status as directors and their power to act in that capacity arise exclusively
> under the Delaware corporation statutes. The defendants accepted their
> directorships with explicit statutory notice, via § 3114, that they could be
> haled into the Delaware Courts to answer for alleged breaches of the
> duties imposed on them by the very laws which empowered them to act in
> their corporate capacities. Moreover, the defendants, by purposefully
> availing themselves of the privilege of becoming directors of a Delaware
> corporation, have thereby accepted significant benefits and protections
> under the laws of this State.

*Armstrong,* 423 A.2d at 176-77. "Delaware has a substantial interest in defining, regulating and

enforcing the fiduciary obligations which directors of Delaware corporations owe to such

corporations and the shareholders who elected them." *Id.* at 180 n.8 (quoting 61 Del. Laws,

ch.119 (July 7, 1977)). Another Delaware court explained that directors "cannot plausibly claim

any undue inconvenience from having to defend [themselves] against claims for breach of

fiduciary duty in this court. [They] voluntarily chose to serve as [directors] of a Delaware

corporation." *Actrade Fin. Techs. v. Aharoni*, No. 20168, 2003 Del. Ch. LEXIS 114, *21 (Del.

Ch. Oct. 17, 2003). The defendants cannot claim ignorance of the possibility that they would

face a suit in Delaware in the event of a dispute involving their actions as directors of a Delaware

corporation. *Id.* at *21-22.

- 16 -

Significantly, the Outside Directors and Crowley voted to file Coram's bankruptcy in Delaware. Dell Decl. (Ex. A, at ¶ 11). They could have filed the bankruptcy petition in Colorado but because that would have been inconvenient for Coram's New York counsel, the Noteholders and the Noteholders' New York counsel, Coram filed in Delaware. The Outside Directors and Crowley participated in the bankruptcy proceedings in Delaware. Amaral testified in the second confirmation hearing in 2001. Crowley testified on numerous occasions during the bankruptcy proceedings in Delaware and attended the proceedings. On December 30, 2004, Crowley filed an Administrative Claim in the Bankruptcy Court, which is pending. *In re Coram Healthcare Corp. and Coram, Inc.*, Case Nos. 00-3299 (MFW) & 00-3300 (MFW).

Depositions of the Outside Directors and Crowley were taken in discovery in connection with the first two plans of reorganization. Additional depositions for this action will be conducted in locations chosen by the Outside Directors and Crowley – it will not be necessary for them to travel to Delaware until trial. A trial in Colorado will not be less disruptive to the professional and personal obligations of the Outside Directors and Crowley than a trial in Wilmington; flights are required in either case. Surely, flight times for one event cannot be dispositive. In contrast, the Trustee does not need to board a plane at all for a trial in Wilmington. In addition, for Mr. Smith, who lives in Chicago and spends 30% of his working time in Pennsylvania, Delaware is clearly more convenient than Colorado. While he complains that there are no direct flights to Wilmington from Chicago, Smith Decl. ¶ 8 (D.I. 7), there are at least 29 direct flights from Chicago to Philadelphia every day. *See* Expedia.com, *at* http://www.expedia.com (last visited March 3, 2005); Southwest.com, *at* http://www.southwest.com (last visited March 3, 2005). As this Court has noted, the

Philadelphia International Airport is a hub for several large airlines and "is located a mere 23 miles from Wilmington." *Praxair, Inc. v. ATMI, Inc.*, No. 03-1158-SLR, 2004 U.S. Dist. LEXIS 7076, *7 n.1 (D. Del. Apr. 20, 2004).

Delaware is the most convenient forum for the Trustee. The Trustee would be greatly inconvenienced if the case is transferred to Colorado. In contrast, the inconvenience and costs for the Outside Directors and Crowley will be similar whether this case is litigated in Colorado or Delaware. Under these circumstances, a transfer does not simply shift inconvenience, it increases the burden on plaintiff with no corresponding decrease of the burden on defendants. Defendants have not come close to meeting their burden of establishing factors which strongly favor transfer.

## C.    Key Events Occurred in Delaware

The breach of fiduciary duty claims against the Outside Directors and Crowley arise in part out of events in Delaware. The claims do not arise out of any actions by the Outside Directors in Colorado. Only one Coram board meeting took place in Colorado and that meeting (in August 1999) predates Crowley becoming Chairman and CEO. Most of the board meetings took place telephonically. The Crowley/Cerberus contract was negotiated and signed in California and New York. Crowley signed his contract with Coram in Sacramento, California. The lack of oversight by the Outside Directors of Crowley and the bankruptcy proceedings did not take place in Colorado, but in Delaware, where the Outside Directors breached their fiduciary duty by failing to act in good faith and failing to exercise any judgment at all.

The Trustee was authorized to bring this suit in the Bankruptcy Court in Delaware because his claims are closely related to the administration of the approved plan of

- 18 -

reorganization.  Bankruptcy courts have jurisdiction over non-core proceedings that are "related to" Title 11 cases.  *See* 28 U.S.C. § 157(c)(1).  A proceeding is "related to" a bankruptcy case if its outcome could conceivably have any effect on the estate being administered in bankruptcy or impact the handling and administration of the estate.  *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).  There is a substantial nexus between this suit and the bankruptcy proceeding.  The net proceeds of this litigation will be distributed first to the trade creditors (*i.e.*, not the Noteholders) to pay interest on their pre-petition bankruptcy claims, with the remainder distributed to Coram's former shareholders.  In short, this litigation is not collateral to the bankruptcy proceeding because the outcome of this case has a direct effect on payment of pre-petition claims as well as payments to equity holders.  *See Donaldson v. Bernstein*, 104 F.3d 547, 553 (3d Cir. 1997).[4]

**D.    Delaware is More Convenient for Third Party Witnesses.**

The fifth private interest factor also supports denial of the motion to transfer because Delaware is more convenient for third party witnesses.  It is puzzling why the Outside Directors argue that Delaware is inconvenient for Coram's employees and that these employees could not be compelled to testify in Delaware.  The Trustee brought suit on behalf of the post-confirmation bankruptcy estates and will make Coram employees available.  In addition, two of Coram's senior operational officers are located in Coram's branch in Totowa, New Jersey.  Dell Decl. (Ex. A at ¶ 4).  The relevant question is whether witnesses may be unavailable in Delaware

---

[4]    The Trustee did not file this action in the Bankruptcy Court because he assumed Crowley would move to withdraw the reference.  It is unlikely that Crowley would have wished to ascertain whether Judge Walrath, having found him lacking in credibility on three previous occasions, would now have a different view.

and there is no basis on which to conclude that Coram employees would be unavailable for trial in Delaware.

In addition, the key third party witnesses in this case are located in New York City:  (1) Stephen Feinberg, CEO of Cerberus who negotiated the first (and most significant) amendment to Crowley's employment contract with Coram; (2) Harrison Goldin, who performed his investigation as part of the second confirmation hearing; (3) Coram's bankruptcy counsel; (4) Goldin's counsel; and (5) Cerberus' counsel who negotiated the Crowley/Cerberus Employment Agreement.  For these witnesses from New York City, Delaware is significantly more convenient than Colorado.  Although they could rely on the "100-mile rule," it is obviously easier to persuade someone to take a 90-minute train ride from New York to Wilmington, than the six hours a door-to-door trip to Denver would take.

documents can be delivered to and stored at the offices of the Trustee's Delaware counsel, as they were during the pendency of the Bankruptcy proceedings.  Kipnes Decl. (Ex. B at ¶ 3).

**F.    The Public Interest Factors Also Weigh in Favor of Venue in Delaware.**

In reviewing the public interest factors, courts recognize the importance of having diversity actions handled by federal courts familiar with the applicable state law.  The breaches of fiduciary duty the Trustee has asserted are governed by Delaware state law.  Clearly, this Court is more familiar with Delaware corporate law than is a federal court in Colorado.  The Delaware legislature and Delaware courts have shown an interest in having Delaware courts decide cases against Delaware directors for breaches of their fiduciary duties to Delaware corporations.  In addition, this Court's familiarity with the Coram bankruptcy proceedings will make the litigation progress more expeditiously.

Finally, it may be that it takes slightly longer in Delaware to bring the average case to resolution than in Colorado, but that is not meaningful, particularly without a comparison of the complexity of the cases in the two districts.  The median time from commencement to trial is the more significant statistic for a motion to transfer.  As of March 31, 2004, it took 26.4 months to reach trial in Delaware and 28.7 months in Colorado.  *See* Administrative Office of the United States Courts, *Federal Judicial Caseload Statistics*, Table C-5, March 31, 2004.  This case presents issues of Delaware corporate law on both liability and damages, and would certainly not be an "average" case for a Colorado court.

## CONCLUSION

For the reasons discussed above, the Trustee requests that this Court deny

defendants' motion to transfer this action to the District Court for the District of Colorado.

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Rolin P. Bissell (# 4478)
Glenn C. Mandalas (# 4432)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
Phone: (302) 571-6600
Fax:    (302) 571-1253

Attorneys for Plaintiff

OF COUNSEL:

Barry E. Bressler, Esquire
Wilbur L. Kipnes, Esquire
Jennifer Nestle, Esquire
Han Nguyen, Esquire
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Phone: (215) 751-2000
Fax:    (215) 751-2205

Dated: March 8, 2005.

- 22 -

## CERTIFICATE OF SERVICE

I, Glenn C. Mandalas, hereby certify that on March 8, 2005, I caused to be electronically

filed a true and correct copy of Plaintiff's Memorandum in Opposition to Defendants' Motion to

Transfer Venue to the District Of Colorado with the Clerk of the Court using CM/ECF, which

will send notification that such filing is available for viewing and downloading to the following

counsel of record:

Peter J. Walsh, Jr., Esquire
Potter, Anderson & Corroon, LLP
Hercules Plaza, 6th Floor,
1313 North Market Street
P.O. Box 951
Wilmington, DE  19801


Jeffery C. Wisler, Esquire
Connolly Bove Lodge & Hutz, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899


I further certify that on March 8, 2005,  I caused a copy of Plaintiff's Memorandum in

Opposition to Defendants' Motion to Transfer Venue to the District Of Colorado to be served on

the following counsel of record in the manner indicated:


### BY HAND DELIVERY

Peter J. Walsh, Jr., Esquire
Potter, Anderson & Corroon, LLP
Hercules Plaza, 6th Floor,
1313 North Market Street
P.O. Box 951
Wilmington, DE  19801

Jeffery C. Wisler, Esquire
Connolly Bove Lodge & Hutz, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899


YOUNG CONAWAY STARGATT
& TAYLOR, LLP

_____
Glenn C. Mandalas (# 4432)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600
gmand@ycst.com

*Attorneys for Plaintiff*