# TAB 1



Not Reported in F.Supp.2d
2003 WL 1966438 (D.Del.)
(Cite as: 2003 WL 1966438 (D.Del.))

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
3COM CORPORATION, Plaintiff,
v.
D-LINK SYSTEMS, INC., Defendant.
**No. C.A. 03-014 GMS.**

April 25, 2003.

*MEMORANDUM AND ORDER*

SLEET, J.

I. INTRODUCTION

*1 On January 7, 2003, the plaintiff, 3Com Corporation ("3Com") filed the instant action alleging infringement of three patents relating to network interface adapters. The defendant, D-Link Systems, Inc. ("D-Link"), moves to transfer this case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) (D.I.11). For the following reasons, the court will grant the defendant's motion.

II. DISCUSSION

D-Link moves to transfer this action to the District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or convenience of [the] parties and witnesses, in the interest of justice," the court may transfer a civil action "to any other district ... where it might have been brought." 28 U.S.C. § 1404(a). It is the movant's burden to establish the need for transfer, and 'the plaintiff's choice of venue [will] not be lightly disturbed.' *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (citations omitted).

When considering a motion to transfer, the court must determine 'whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum.' *Id.*. This inquiry requires "a multi-factor balancing test" embracing not only the statutory criteria of convenience of the parties and the witnesses and the interest of justice, but all relevant factors, including certain private and public interests. *Id.* at 875, 879. These private interests include the plaintiff's choice of forum; the defendant's preference; whether the claim arose elsewhere; and the location of books and record, to the extent that they could not be produced in the alternative forum. [FN1] *Id.* at 879. Among the relevant public interests are: "[t]he enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; [and] the public policies of the fora." *Id.* at 879-80 (citations omitted).

> FN1. The first three of these private interest collapse into other portions of the *Jumara* analysis. The court, therefore, will consider them in the context of the entire inquiry only. *See Affymetrix, Inc. v. Synteni, Inc. and Incite Pharmaceuticals, Inc.,* 28 F.Supp.2d 192 (D.Del.1998).

Upon consideration of these factors, the court finds that D-Link has met its burden of demonstrating that transfer is appropriate. First, it is clear that this case could have been brought in the Northern District of California. Any federal district court possesses subject matter jurisdiction over federal patent law claims such as those at issue in the present action. 28 U.S.C. §§ 1331 and 1338. Further, venue is proper in the Northern District of California because the defendant is a California corporation with its sole place of business in that state. 28 U.S.C. § 1400(b) ("Any civil action for patent infringement may be brought in the judicial district where the defendant resides...").

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 1966438 (D.Del.)
(Cite as: 2003 WL 1966438 (D.Del.))

Page 2

Having determined that the case could be properly heard in the Northern District of California, the court now considers whether it would more conveniently proceed in that forum and whether the interest of justice supports a transfer to that district. Again, the court finds that these criteria are met. First, the court notes that although 3Com is a Delaware corporation, its principal place of business is in Santa Clara, California. D-Link is a California corporation with its sole place of business in Irvine, California. Although some of D-Link's products, including the accused products, are sold in Delaware, the connection to this forum ends there. Neither 3Com nor D-link maintains or owns any facility, property, or personnel in Delaware. Instead, the headquarters of both parties are located in California. Neither party has any books, records, or other documents in this district. Apparently, none of the acts related to the development of the accused products occurred in this district, while many, if not all, of these acts occurred in California. Clearly, litigating this case there would cause less disruption to business operations of each corporation, while eliminating the cost and time of cross-country transportation of persons and documents. In addition, D-Link was forced to retain local counsel for purposes of litigating in this district. Were the case transferred to California, this additional expense would not be required.

*2 In addition, none of the anticipated third-party witnesses is subject to compulsory process in Delaware, but they may be compelled to testify in the Northern District of California. These witnesses include individuals involved in the development of the accused products, such as employees of the manufacturers of the products, Realtek Semiconductor Corp. ("Realtek") and Via Technologies, Inc. ("Via"). Realtek and Via are Taiwanese companies with offices and/or agents in northern California. Futhermore, at least one of the inventors of the accused products and one of the prosecuting attorneys could not be compelled to testify in this court. By contrast, each appears to live in northern California, and would be subject to compulsory process there. Finally, at least two witnesses with knowledge of allegedly invalidating prior art are subject to compulsory process in northern California, but not Delaware. Even if these witnesses were willing to travel to Delaware to testify in this court, it is certainly very inconvenient for them to do so, especially compared to traveling to a court in the state of their residence and employment. Convenience, cost, and expediency, then, favor a transfer.

The remaining factors of court congestion, the enforceability of the judgment, and the public polices of the fora neither favor nor counsel against transfer. These factors remain neutral in the court's analysis.

III. CONCLUSION

In short, Delaware seems to have little interest in the present dispute between these parties, while justice, convenience, cost, and expediency favor a forum in California. The court recognizes that the Northern District of California is not the plaintiff's choice of forum for the present action; however, it is an exceedingly more convenient and appropriate forum than Delaware. In other words, the movant has shown that 'the litigation would more conveniently proceed and the interest of justice be better served by transfer' to California. *Jumara*, 55 F.3d at 879 (citations omitted). As such, transfer is appropriate.

For the aforementioned reasons, IT IS HEREBY ORDERED that:
  1. The defendant's Motion to Transfer the case to the United States District Court for the Northern District of California (D.I.11) is GRANTED.

2003 WL 1966438 (D.Del.)

**Motions, Pleadings and Filings (Back to top)**

. 1:03CV00014 (Docket)
(Jan. 07, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

TAB 2

ACTRADE FINANCIAL TECHNOLOGIES LTD. and ACTRADE COMMERCE, LTD., Plaintiffs, v. AMOS AHARONI, Defendant.

C.A. No. 20168

COURT OF CHANCERY OF DELAWARE, NEW CASTLE

2003 Del. Ch. LEXIS 114

July 31, 2003, Submitted
October 17, 2003, Decided

**DISPOSITION:** [*1] Defendant's motions to dismiss, to stay, and to strike denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant former corporate director filed a motion to dismiss an action by plaintiffs, a corporation and its wholly owned subsidiary, which alleged that the director, inter alia, breached his fiduciary duty and misappropriated monies. The director alternatively sought to stay the action pending the outcome of a foreign action, and filed a motion to strike certain allegations in the complaint.

**OVERVIEW:** Plaintiffs were involved in selling short-term financing agreements, and the director, an Israeli resident, was accused by plaintiffs of having engaged in misappropriation of corporate funds by fabricating loans. The court found that it had properly obtained jurisdiction over the director pursuant to the director service statute, *Del. Code Ann. tit. 10, § 3114*. As there was no need for service of process outside of the U.S. under § 3114 in order to obtain jurisdiction over the non-resident director, the requirements of the Hague Convention were found to be inapplicable. The court also concluded that the matters raised in the substance of the complaint, which were equitable in nature, were within its jurisdiction, and that there were no necessary parties to be joined. There was no reason to dismiss or stay the action in favor of a pending action in the Cayman Islands, which involved substantially different matter and did not involve a claim for breach of fiduciary party, nor did it name the director as a party. The court denied the director's motion to strike allegations in the complaint, as it found that they were relevant to the issue of the director's wrongdoing and bad faith.

**OUTCOME:** The court denied the director's motion to dismiss, his request to stay the action, and his motion to strike various allegations.

**CORE TERMS:** subsidiary, personal jurisdiction, breach of fiduciary duty, disputed, motion to dismiss, conveniens, registered, resident, subject matter jurisdiction, litigate, appointment, waste, fiduciary duty, misappropriation, proxy, lack of personal jurisdiction, necessary parties, convenient, service of process, mail-ing, serving, exercise jurisdiction, complete relief, duplicative, conversion, accounting, comparable, consented, entity, faxed

**LexisNexis(TM) Headnotes**

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1]In considering a motion to dismiss, a court views all facts in a light most favorable to the non-moving party.

*Civil Procedure > Pleading & Practice > Service of Process > Methods of Service*
[HN2]See *Del. Code Ann. tit. 10, § 3114(a)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods of Service*

*Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities*
[HN3]The Delaware Supreme Court has held that a director accepts his directorship of a Delaware corporation with explicit statutory notice, via *Del. Code Ann. tit. 10, § 3114* that he could be haled into a Delaware court to answer for the alleged breaches of the duties imposed on him by the very laws which empowered him to act in his corporate capacities.

*Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities*
[HN4]Wrongful diversions by a director from a foreign subsidiary are a breach of fiduciary duty to both the subsidiary and to its parent.

*Civil Procedure > Pleading & Practice > Service of Process > Methods of Service*
[HN5]See *Del. Code Ann. tit. 10, § 3114(b)*.

*Civil Procedure > Pleading & Practice > Service of Process > Methods of Service*

*Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities*
[HN6]"Service" under *Del. Code Ann. tit. 10, § 3114(b)* is described in the first sentence of § 3114(b) and is limited to "serving the registered agent." The





additional act of mailing is required to be made "within seven days of such service." This reading is consistent with the strong public policy of Delaware to provide a certain and easily accessible forum in which to litigate claims against those who choose to become directors of Delaware corporations. Delaware's interest in defining and enforcing these obligations is substantial and does not depend on or relate to the place of residence of the director. Delaware requires appointment of an in-state registered agent in order to effectuate service of foreign directors entirely in Delaware, hence avoiding the more difficult and time-consuming steps necessary to effect service of process on persons outside the state. The United States Supreme Court has ruled that the Hague Convention applies only to service effectuated outside the United States. For that reason, that treaty is irrelevant to § 3114(b) service in Delaware.

*Business & Corporate Entities > Corporations > Directors & Officers > Management Duties & Liabilities*

*Civil Procedure > Jurisdiction > Subject Matter Jurisdiction > Jurisdiction Over Action*
[HN7]The Court of Chancery of Delaware has subject matter jurisdiction over claims that are equitable in nature even if monetary damages are sought in relief. *Del. Code Ann. tit. 10, § 341.* Breach of fiduciary duty is a well-established equitable claim properly invoking the subject matter jurisdiction of the court.

*Civil Procedure > Jurisdiction > Equity Jurisdiction*

*Civil Procedure > Trials > Separate Trials*
[HN8]Once the Court of Chancery of Delaware finds equity jurisdiction over part of a case, it may, at its discretion, exercise jurisdiction over related legal claims: Factors that may cause the court to deny a motion to sever include: to resolve factual issues; to avoid multiplicity of suits; to promote judicial efficiency; to do full justice; to avoid great expense; to afford complete relief in one action; and to overcome insufficient modes of procedure at law.

*Civil Procedure > Venue > Forum Non Conveniens*
[HN9]An action will be dismissed for forum non conveniens only in the rare case where a dismissal of a complaint is appropriate because the chosen forum is overwhelmingly and unduly inconvenient. A mere preference for another forum is insufficient.

*Civil Procedure > Venue > Forum Non Conveniens*
[HN10]Factors measuring convenience in making a determination as to forum non conveniens include: (1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view of the premises; (4) whether the controversy is dependent upon the application of Delaware law which the courts of Delaware more properly should decide than those of another jurisdiction;

and (5) all other practical problems that would make the trial of the case easy, expeditious and inexpensive.

*Civil Procedure > Entry of Judgments > Stay of Proceedings & Supersedeas*
[HN11]Discretion should be freely exercised in favor of a stay when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same issues and the same parties.

*Civil Procedure > Joinder of Claims & Parties > Joinder of Necessary Parties*
[HN12]See Del. Ch. Ct. R. 19(a).

*Evidence > Relevance > Relevant Evidence*
[HN13]Del. R. Evid. 401 defines relevant evidence as having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable.

COUNSEL: Daniel A. Dreisbach, Esquire, Lisa A. Schmidt, Esquire, James H. McMackin, III, Esquire, RICHARDS, LAYTON & FINGER, Wilmington, Delaware; Daniel J. Lefell, Esquire, Stacey A. Shortall, Esquire, Ariel Cannon, Esquire, PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, New York, Attorneys for the Plaintiffs.

Neal J. Levitsky, Esquire, FOX ROTHSCHILD LLP, Wilmington, Delaware; Sigmund S. Wissner-Gross, Esquire, May Orenstein, Esquire, Clifford J. Bond, Esquire, HELLER, HOROWITZ & FEIT, P.C., New York, New York, Attorneys for the Defendant.

JUDGES: Stephen P. Lamb, Vice Chancellor.

OPINIONBY: Stephen P. Lamb

OPINION: *MEMORANDUM OPINION AND ORDER*

LAMB, Vice Chancellor.

I.

A Delaware corporation and its wholly owned foreign subsidiary sued their former Chairman and CEO, a non-US resident, for breach of fiduciary duty [*2] and misappropriation of monies. On a motion to dismiss, the court concludes that it has properly obtained jurisdiction over the non-resident defendant by means of the director service statute, *10 Del. C. § 3114.* The court also concludes that the use of that statute to obtain jurisdiction over a foreign resident does not involve the service of process outside the United States and, therefore, does not require compliance with the Hague Convention governing service abroad of judicial writs. The court also concludes that the matters asserted in the complaint are properly within its jurisdiction and that





the complaint should neither be dismissed nor stayed in favor of a substantially different action pending in the Cayman Islands.

## II.

### A. The Parties

The plaintiff, Actrade Financial Technologies Ltd. ("Actrade DE"), is a Delaware corporation. Actrade DE wholly owns several subsidiary companies whose business is selling short-term financing agreements. n1 Actrade Commerce Ltd. ("Actrade Commerce"), an Antiguan corporation, is one of these subsidiaries and is also a plaintiff in this action. Actrade DE and Actrade Commerce are sometimes hereinafter [*3] referred to as "Actrade" or "the plaintiff."

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Actrade DE wholly owns Actrade International, a New York corporation. Actrade International wholly owns Antiguan corporation Actrade S.A. Actrade S.A. wholly owns Bahamian corporation Actrade Resources and Antiguan corporation Actrade Commerce Ltd.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The defendant, Amos Aharoni, a resident of the State of Israel, was the Chairman of the Board of Actrade DE and one of the company's founders. He was also the sole director and officer of Actrade Commerce, as well as other directly and indirectly owned subsidiaries of Actrade DE.

### B. The Disputed Transfers

The complaint alleges that, on or about June 25, 2002, Aharoni faxed a wire transfer instruction to Banco Comercial Portuguese ("BCP") in the Cayman Islands directing BCP to transfer $ 10,009,200 from Actrade Commerce's account at BCP to International Clearing Corporation ("ICC"). The complaint further alleges that, on or about July 12, 2002, Aharoni faxed another wire transfer instruction from Israel to BCP [*4] in the Cayman Islands ordering it to transfer $ 21,656,700 from Actrade Commerce's account at BCP to the account of an entity called Fort. The total amount of these transfers ("disputed transfers.") is approximately $ 31.6 million.

On August 2, 2002, Actrade DE's board of directors instructed its Audit Committee to investigate alleged improprieties in the operations of Actrade DE and its subsidiaries. On August 8, 2002, counsel for the Audit Committee wrote to Aharoni seeking to interview him and obtain all Actrade documents under his control. On August 14, Actrade DE's Chief Financial Officer e-mailed Aharoni seeking access to all documents under Aharoni's control. On August 28, 2002, the Audit Committee faxed to Aharoni's U.S. and Israeli counsels copies of a document preservation letter that Actrade DE had received from the SEC and the U.S. Attorney's Office. On September 6, 2002, the Audit Committee again wrote Aharoni's U.S. counsel seeking all Actrade documents in Aharoni's control.

Aharoni eventually gave Actrade five loan agreement documents dated July 10, 2002. n2 These agreements show Actrade Commerce loaning a total of $ 31.6 million to five foreign entities. n3 Aharoni [*5] contends that these loans explain the disputed transfers and that they have already been repaid with $ 6 million in interest. Actrade alleges that there was no legitimate business purpose for these loans and that neither Actrade DE nor any Actrade subsidiary has received any payment on them. Actrade further alleges that Aharoni controls ICC and Fort and that he fabricated the loan agreements after the disputed transfers to conceal his theft of $ 31.6 million from Actrade Commerce.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 Through counsel, Aharoni refused to be interviewed or provide substantive information to the Audit Committee. On August 21, 2002, Aharoni resigned all director and officer positions he had held for Actrade DE and its subsidiaries. In late September 2002, Aharoni made available a group of Actrade documents that were under his control. Among these were the five loan agreements.

n3 Onyx Holdings, Ltd., Garibaldi do Brazil Limitida, LLC, Vision Art Group, Manerfold Finance Corp., and LLC Setkomp.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

### C. The Interpleader Action [*6]

On September 26, 2002, BCP commenced an interpleader action in the Cayman Islands regarding the ICC and Fort accounts that had received the disputed transfers. BCP named Actrade DE, Actrade Commerce, Actrade Resources, Actrade S.A., ICC, Fort, Commercial Finance Institution ("CFI"), and BCP as claimants to the money in the accounts. By consent order, Actrade DE and its subsidiaries became plaintiffs





in that action on May 2, 2003, leaving the remaining parties as defendants. On May 5, 2003, Actrade filed a complaint seeking an accounting, a declaration that Fort and ICC hold the disputed funds as constructive trustees for Actrade, and payment of the amount the accounting determines to be owed. The Cayman Islands action does not include a claim for breach of fiduciary duty and does not name Aharoni as a party, although Aharoni argues that he expects to eventually be named as a third-party defendant.

D. The Motion To Dismiss

Actrade filed a complaint in this court on February 20, 2003, alleging breach of fiduciary duty, misappropriation and conversion of corporate assets, fraud, and corporate waste. Aharoni has moved to dismiss for lack of personal jurisdiction, lack of subject [*7] matter jurisdiction, *forum non conveniens,* failure to join necessary parties, and failure to state a claim for which relief can be granted. Alternatively, Aharoni moves for a stay of this action pending the outcome of the Cayman Islands action. Finally, Aharoni moves to strike the complaint's references to the document preservation letter from the SEC and the U.S. Attorney's office as immaterial and "scandalous." [HN1]In considering a motion to dismiss, this court views all facts in a light most favorable to the non-moving party. n4

- - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n4 *See e.g. Ramunno v. Cawley, 705 A.2d 1029, 1034 (Del. 1998).*

- - - - - - - - - - - - End Footnotes- - - - -
- - - - - - - -

**III.**

Aharoni challenges this court's personal jurisdiction on two grounds. First, Aharoni claims that this court cannot rely upon *10 Del. C. § 3114* to obtain personal jurisdiction over him because he did not commit his allegedly wrongful acts in his capacity as a director of a Delaware corporation (Actrade DE), but rather in his capacity as a director of wholly owned [*8] foreign subsidiary (Actrade Commerce). n5 Second, Aharoni argues that the attempt to serve process on him pursuant to *section 3114* violated the Hague Convention of 1963, a treaty of the United States, and therefore failed to confer jurisdiction. n6 For reasons expressed below, neither of these arguments has merit.

- - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n5 Memorandum of Law in Support of

Motion to Dismiss the Complaint of Defendant Amos Aharoni Based, *Inter, Alia,* Upon Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, *Forum Non Conveniens,* Prior Pending Proceeding, and Failure to Join Necessary Parties, ("Def. Op. Br.") p. 8.

n6 Def. Op. Br. p. 12.

- - - - - - - - - - - - End Footnotes- - - - -
- - - - - - - -

A. The Reach Of *10 Del. C. § 3114*

Actrade bases its claim of personal jurisdiction on Delaware's Director Consent statute, *10 Del. C. § 3114(a),* which reads:[HN2]Every nonresident of this State who after September 1, 1977, accepts election or appointment as a director, trustee or member of the governing [*9] body of a corporation organized under the laws of this State or who after June 30, 1978, serves in such capacity and every resident of this State who so accepts election or appointment or serves in such capacity and thereafter removes residence from this State shall, by such acceptance or by such service, be deemed thereby to have consented to the appointment of the registered agent of such corporation (or, if there is none, the Secretary of State) as an agent upon whom service of process may be made in all civil actions or proceedings brought in this State, by or on behalf of, or against such corporation, in which such director, trustee or member is a necessary or proper party, or in any action or proceeding against such director, trustee or member for violation of a duty in such capacity, whether or not the person continues to serve as such director, trustee or member at the time suit is commenced. Such acceptance or service as such director, trustee or member shall be a signification of the consent of such director, trustee or member that any process when so served shall be of the same legal force and validity as if served upon such director, trustee or member within this State [*10] and such appointment of the registered agent (or, if there is none, the Secretary of State) shall be irrevocable.

This court has personal jurisdiction over Aharoni because he consented to that jurisdiction by becoming the director of a Delaware corporation. As [HN3]the Delaware Supreme Court has held, a director "accept[s] [his] directorship [of a Delaware corporation] with explicit statutory notice, via § *3114* that [he] could be haled into a Delaware court to answer for the alleged breaches of the duties imposed on [him] by the very laws which empowered [him] to act in his corporate capacities." n7 Aharoni cannot escape personal juris-





diction under *section 3114* by mischaracterizing his alleged wrongful acts as having been done purely in the capacity of directorship of the foreign subsidiary. Actrade DE conducted all of its business through its foreign subsidiaries, "making oversight of subsidiaries a crucial aspect of the [parent] board's function." n8 Under *Grace*, Aharoni's oversight or lack thereof of the actions of Actrade Commerce can constitute a breach of fiduciary duty to Actrade DE.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 *See Armstrong v. Pomerance, 423 A.2d 174, 177 (Del. 1980)* (finding personal jurisdiction over foreign directors on a claim for breach of fiduciary duty to a Delaware corporation when directors had no contact with Delaware other than being directors of the Delaware corporation).

[*11]

n8 *See Grace Bros., Ltd. v. Uniholding Corp., 2000 Del. Ch. LEXIS 101, 2000 WL 982401,* at *12 (Del. Ch. July 12, 2000) (hereinafter *Grace*).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In *Grace*, the defendants who were directors of both a Delaware parent and foreign subsidiary company allowed the subsidiary to assume control over the parent's primary asset and thus become the owner of the parent, to the detriment of the parent's stockholders but to the benefit of the subsidiary. The *Grace* court rejected the defense that "a director of a parent board ... has no duty to stop himself from injuring the parent while wearing his subsidiary hat." n9 This court found personal jurisdiction even the defendants for the Delaware parent's claim even though the wrongful action occurred through a foreign subsidiary.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 *Id.* at *13.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Similarly in *Technicorp Int'l II v. Johnston,* n10 this court found personal jurisdiction over persons who were directors of both a Delaware [*12] parent and its foreign subsidiary for wrongful acts done in the name of the subsidiary. Under *Technicorp,* [HN4]wrongful diversions from a foreign subsidiary are a breach of

fiduciary duty to both the subsidiary and to its parent. n11

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 *2000 Del. Ch. LEXIS 81, 2000 WL 713750 (Del. Ch. May 31, 2000)* (hereinafter *Technicorp*).

n11 *Id.* at *4.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Aharoni argues that Delaware has little or no interest in hearing this case because the disputed acts took place in either Israel or the Caribbean, directly injured only an Antiguan subsidiary, and any injury to the Delaware company was indirect and incidental. On the contrary, Delaware has a significant interest in protecting Delaware companies from breaches of fiduciary duty by their directors, regardless of where that breach occurs. n12 That interest is magnified in this case because it seems Actrade DE has no other forum in which to litigate its breach of fiduciary duty claim. Aharoni has not submitted to the personal jurisdiction of the Cayman Islands court, nor is he [*13] named as a party in that action. Aharoni's implied consent to Delaware's personal jurisdiction through *section 3114* ensures that Actrade DE has a forum in which to litigate its injury.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n12 *Id.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Since this court has personal jurisdiction over Aharoni for Actrade DE's breach of fiduciary duty claim, that jurisdiction extends "to any and all relief that might be necessary to do justice between the parties." n13 This includes jurisdiction over Actrade Commerce's claims. Under very similar facts, the *Technicorp* court found personal jurisdiction over defendant directors for the claims of a foreign subsidiary because those claims "arise out of the same core facts as [the claims of the parent] and because it was therefore reasonably foreseeable that [the subsidiary] as well as [the parent] would seek to recover those diverted funds in the same lawsuit." n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 *Gans v. MDR Liquidating Corp., 1990*





*Del. Ch. LEXIS 3, 1990 WL 2851, at \*10 (Del. Ch. Jan. 10, 1990).*

[\*14]

n14 *Technicorp at 2000 Del. Ch. LEXIS 81,\*5 n. 12.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

Aharoni's attempt to distinguish *Technicorp* is unpersuasive. He argues that Delaware has a greater interest in enforcing the fiduciary duty owed to a Delaware parent company when the subsidiary was a directly-owned buyout vehicle than when the subsidiary is indirectly owned and conducts ordinary business. n15 However, Aharoni offers no reason why this difference mandates a disparate result for the same act--breaching a fiduciary duty to a parent company by converting its subsidiary's money for personal use. Since the same core facts are at issue in both of Actrade's claims, the dual-plaintiff suit was entirely foreseeable and *Technicorp* applies. This court has personal jurisdiction over Aharoni for all of Actrade's claims.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 Def. Op, Br. p. 9.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

**B. Service Of Process And The Hague Convention**

Aharoni next contends that *10 Del. C. § 3114(b)*, as [\*15] applied to him, violates the Hague Convention. n16 Under Aharoni's interpretation of *section 3114(b)*, service is a two-step process that, in his case, included both (1) the service on Actrade's registered agent in Delaware, and (2) the mailing by the Register in Chancery of a copy of that process to him in Israel. Because the second part of this "service" was made on him overseas, he contends, the Hague Convention applies to invalidate the attempted service. n17 Actrade responds that for the purpose of the Hague Convention, service on Aharoni pursuant to *section 3114(b)* was accomplished by serving Actrade's registered agent. According to Actrade, the subsequent mailing by the Register in Chancery was not a necessary part of "service," but merely an additional form of notice. Therefore, Actrade argues, the Hague Convention has no application.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n16 The pertinent part of *§ 3114(b)* is as follows:

[HN5]Service of process shall be effected by serving the registered agent (or, if there is none, the Secretary of State) with 1 copy of such process in the manner provided by law for service of writs of summons. In addition, the Prothonotary or the Register in Chancery of the court in which the civil action or proceeding is pending shall, within 7 days of such service, deposit in the United States mails, by registered mail, postage prepaid, true and attested copies of the process, together with a statement that service is being made pursuant to this section, addressed to such director, trustee or member at the corporation's principal place of business and at the residence address as the same appears on the records of the Secretary of State, or, if no such residence address appears, at the address last known to the party desiring to make such service.

[\*16]

n17 Reply Memorandum of Law in Further Support of Motion to Dismiss the Complaint of Defendant Amos Ahoroni Based, *Inter Alia,* Upon Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, *Forum Non* Conveniens, Prior Pending Proceeding, and Failure to Join Necessary Parties, ("Def. Rep. Br.") p. 5. The Hague Convention, if it applied, would have required that any attempt to serve process on an Israeli resident be mailed to Israel's Directorate of the Courts, rather than directly to the resident. The Register in Chancery mailed Actrade's process directly to Aharoni.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - -

As a matter of textual interpretation, Actrade's reading of the statute is by far more compelling. [HN6]"Service" under the statute is described in the first sentence of the section and is limited to "serving the registered agent." The additional act of mailing is required to be made "within 7 days of such service." This reading is also consistent with the strong public policy of this State to provide a certain and easily accessible forum in which to litigate claims against those who choose to become directors of Delaware [\*17] corpo-





rations. n18 Delaware's interest in defining and en-forcing these obligations is substantial and does not depend on or relate to the place of residence of the director. n19 Delaware requires appointment of an in-state registered agent in order to effectuate service of foreign directors entirely in Delaware, hence avoiding the more difficult and time-consuming steps necessary to effect service of process on persons outside the state. n20 The United States Supreme Court has ruled that the Hague Convention applies only to service effectu-ated outside the United States. n21 For that reason, that treaty is irrelevant to *section 3114(b)* service in Delaware.

- - - - - - - - - - - - - - Footnotes - - - - - - - -
- - - - - - - -

n18 *See Pestolite, Inc. v. Cordura Corp., 449 A.2d 263 (Del. Super. 1982)*.

n19 *Id.*

n20 *Id.* at 266 (§ 3114 enacted specifi-cally to ensure jurisdiction over directors of Delaware corporations for the claims of those corporations in response to *Shaffer v. Heitner, 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977)*).

n21 *See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 701, 100 L. Ed. 2d 722, 108 S. Ct. 2104 (1988)*.

- - - - - - - - - - - - End Footnotes- - - - - -
- - - - - - - -

**[*18]**

For the foregoing reasons, Aharoni's motion to dis-miss for lack of personal jurisdiction and improper service of process will be denied. n22

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n22 Since the court has personal jurisdic-tion pursuant to § 3114, I decline to con-sider whether *10 Del. C.* § 366(a) (the sequestration statute) could provide an al-ternate basis for personal jurisdiction.

- - - - - - - - - - - - End Footnotes- - - - - -
- - - - - - - -

**IV.**

Aharoni challenges this court's subject matter jurisdic-tion by characterizing the disputed action as a simple conversion of Actrade funds that can be fully reme-died by damages. n23 Aharoni argues that Actrade may invoke equity jurisdiction only if damages can-

not adequately remedy Actrade's injury. He is simply wrong. [HN7]This court has subject matter jurisdic-tion over claims that are equitable in nature even if monetary damages are sought in relief. n24 Breach of fiduciary duty is a well-established equitable claim properly invoking the subject matter jurisdiction of this court. n25 Aharoni's motion to dismiss for lack of subject matter **[*19]** jurisdiction must be denied.

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n23 Def. Rep. Br. pp. 12-13.

n24 *See 10 Del. C.* § 3114; *see also Inter-national Business Machines v. Comdisco, 602 A.2d 74, 78 n.6 (Del. Ch. 1991)*.

n25 *See e.g. Clark v. Teeven Holding Co., Inc., 625 A.2d 869, 875 (Del. Ch. 1992)* ("This Court thus has jurisdiction to hear such traditional, equitable matters as trusts and fiduciary relations").

- - - - - - - - - - - - End Footnotes- - - - - -
- - - - - - - -

Aharoni next contends that even if Actrade has an eq-uitable claim, the court should refuse to exercise ju-risdiction over any related legal claims. Instead, he argues, the court should sever these claims to the Supe-rior Court where Aharoni may receive a jury trial. The facts of this case do not warrant severance of Actrade's legal claims from the central claim alleging breach of fiduciary duty. [HN8]Once this court finds equity ju-risdiction over part of a case, it may, at its discretion, exercise jurisdiction over related legal claims. n26 Factors that may cause this court **[*20]** to deny a mo-tion to sever include: "to resolve factual issues; to avoid multiplicity of suits; to promote judicial effi-ciency; to do full justice; to avoid great expense; to afford complete relief in one action; and to overcome insufficient modes of procedure at law." n27 Actrade bases all of its claims on two allegedly wrongful wire transfers ordered by Aharoni. Since the factual inquiry for Actrade's breach of fiduciary duty claim would be identical to that of the misappropriation, fraud, and waste claims, all the factors of the *Getty Refining* test weigh against the duplicative factual inquiry that sev-erance would cause. n28 The court will therefore ex-ercise jurisdiction over all of Actrade's claims.

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n26 *See Getty Refining & Marketing Co. v. Park Oil, Inc., 385 A.2d 147, 149 (Del. Ch. 1978)*.





n27 *Id. at 150.*

n28 *Id.*

- - - - - - - - - - - - End Footnotes- - - - - -
- - - - - - - -

## V.

Aharoni's motion further asserts a laundry list of reasons why this court should either dismiss or stay the complaint. The arguments **[*21]** made are insubstantial and will be discussed only briefly.

Aharoni's motion to dismiss under the doctrine of *forum non conveniens* fails for two reasons. First, Aharoni offers no persuasive reason why Delaware is an inconvenient forum for a director of a Delaware corporation to litigate a claim for breach of fiduciary duty. Second, Aharoni has failed to suggest a comparable action in a forum so much more convenient that this court should dismiss the present action in its favor.

[HN9]An action will be dismissed for *forum non conveniens* only in "the rare case where a dismissal of a complaint is appropriate because this forum is overwhelmingly and unduly inconvenient ...." n29 A mere preference for another forum is insufficient: "While there is no doubt that [Aharoni] would prefer to litigate this case in his home [country], he cannot plausibly claim any undue inconvenience from having to defend himself against claims for breach of fiduciary duty in this court. [The defendant] voluntarily chose to serve as the director and principal operating officer of a Delaware corporation. He is an intelligent man who cannot have been ignorant of the possibility that he would face a suit **[*22]** in Delaware in the event of a dispute between himself and [the Delaware corporation he served]." n30

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n29 *See Caithness Resources, Inc. v. Ozdemir, 2000 Del. Ch. LEXIS 159, 2000 WL 1741941 at 1 (Del. Ch. Nov. 22, 2000).*

n30 *Id. at *5.*

- - - - - - - - - - - - End Footnotes- - - - - -
- - - - - - - -

Additionally, Aharoni does not offer a comparable, more convenient action to which this court should defer. The only other related action currently pending is the Cayman Islands action, which is both incomparable and less convenient than this action. The Cayman Islands action neither names Aharoni as a party nor involves a claim for breach of fiduciary duty. It is difficult to see how an action prosecuting a different claim against a different party would warrant dismissal for *forum non conveniens.*

Even if the Cayman Islands action were comparable, it would certainly be no more convenient than this action. [HN10]Factors measuring convenience include "(1) the relative ease of access to proof; (2) the availability of compulsory process for witnesses; (3) the possibility of the view **[*23]** of the premises; (4) whether the controversy is dependent upon the application of Delaware law which the courts of this state more properly should decide than those of another jurisdiction; ... and [5] all other practical problems that would make the trial of the case easy, expeditious and inexpensive. " n31 None of these factors weigh in favor of dismissal. The fact that this action may involve the laws of multiple jurisdictions or the compulsion of witnesses therefrom is not compelling because those problems would arise wherever this dispute is litigated. The central claim of this case is breach of fiduciary duty to a Delaware company. This claim requires application of Delaware law within the special expertise of this court. Finally, Aharoni has little cause to complain of inconvenience in defending an action properly before this court when he consented to its jurisdiction.

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n31 *Taylor v. LSI Logic Corp., 689 A.2d 1196, 1198-99 (Del. 1997).*

- - - - - - - - - - - - End Footnotes- - - - - -
- - - - - - - -

The court also declines to stay this action for the **[*24]** same reasons it declines to dismiss for *forum non conveniens.* Aharoni correctly argues that [HN11]"discretion should be freely exercised in favor of [a] stay when there is a prior action pending elsewhere, in a court capable of doing prompt and complete justice, involving the same issues and the same parties." n32 However, a stay in favor of the Cayman Islands action is inappropriate because that case does not involve the same parties or cause of action and that court may not be able to do complete justice for lack of personal jurisdiction over Aharoni.

- - - - - - - - - - - - - - Footnotes - - - - - - -
- - - - - - - -

n32 *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g. Co., 263 A.2d 281, 283 (Del. 1970).*

- - - - - - - - - - - - End Footnotes- - - - - -

  

- - - - - - - -

Aharoni is not a party to the Cayman Islands action as required by *McWane.* n33 He argues that since his alleged proxy companies are defendants there, his interests are adequately represented as well. Even if so, this argument entirely misses the point of director liability for breach of fiduciary duty. If Actrade's factual allegations are true, Aharoni [*25] is personally liable for breach of fiduciary duty, regardless of whether the proxy companies are liable. n34 Personal liability is especially important here because the Cayman Islands courts apparently do not have personal jurisdiction over Aharoni. Thus, if Aharoni removed the funds from the accounts of the proxy companies, Actrade would be left without an equitable remedy. Such a result is not the "prompt and complete justice" contemplated by *McWane.* n35

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n33 *Id.*

n34 *See e.g. Technicorp.*

n35 *263 A.2d at 283* (granting a stay because another action could afford the parties "all the discovery, pretrial, and trial advantages" they would have in Delaware and could grant a "speedy, just and complete disposition to the claims" of all parties before the court).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

The court also rejects Aharoni's contention that ICC, Fort, CFI, and various Actrade subsidiaries are indispensable parties without whom this court cannot do full and complete justice. Court of Chancery Rule 19(a) lists the [*26] factors making a party necessary:(1) [HN12]in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Aharoni argues that Fort, ICC and CFI are indispensable parties because they have a claim to the disputed $ 31.6 million. This does not affect this court's ability to grant complete relief to the parties before it. The central claim here is that Aharoni breached his fiduciary duty to Actrade by stealing from Actrade Commerce.

If Actrade is able to prove this claim, Aharoni will be personally liable for the $ 31.6 million he allegedly stole, whether or not some other person or entity might also be liable to Actrade.

There is also little risk that these companies will be unable to protect their interests or that Aharoni will be [*27] subject to duplicative obligations. If, as alleged, Aharoni controls ICC, Fort and CFI, then Aharoni can adequately defend their interests. If not, this case will only decide whether the disputed transfers were within the scope of Aharoni's authority as a director of Actrade. The alleged proxy companies' liability will not be at issue. The "one satisfaction" rule ensures that Actrade can actually recover the $ 31.6 million only once, regardless of the number of actions or defendants. n36 Since ICC, Fort, and CFI are not necessary parties under Rule 19(a), it is unnecessary for the court to consider Aharoni's Rule 19(b) analysis.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n36 See *47 Am. Jur.2d, Judgments § 1009.*

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Similarly, the other Actrade subsidiaries are not necessary parties to this action because the "one satisfaction" rule prevents duplicative recovery and because those subsidiaries are not otherwise interested. n37 Aharoni offers no legitimate reason why this case cannot go forward without these unrelated [*28] parties. n38

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n37 *Id.*

n38 Aharoni offers no basis for his contention that any court would force him to pay the same $ 31.6 million multiple times to each Actrade subsidiary. Nor does Aharoni show why this case requires joining Actrade International or Actrade S.A. when those companies had nothing to do with the disputed transfers. While Aharoni may have transferred money from Actrade Resources to Actrade Commerce prior to the disputed transfers, that act appears to have been within Aharoni's director authority and is unchallenged by Actrade. Aharoni suggests his discovery will be hampered without the subsidiary companies, but it is unclear why any information about the disputed transfers, especially payment on the loan agreements, would be outside the control of Actrade DE, owner of all the





companies at issue.

Finally, Aharoni worries that he will win here, be able to dismiss Actrade DE and Actrade Commerce from the Cayman Islands action, then be found liable to the other Actrade subsidiaries. This argument is wholly without merit since Aharoni is not a party to the Cayman Islands action and denies he controls the companies that are parties to that action.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

[*29]

Finally, the court will deny Aharoni's motion to the extent it seeks dismissal of the claims for misappropriation, n39 fraud n40 and waste n41 asserted in the complaint. Similarly, the court will deny the motion to strike references to the letter from the SEC and the subpoena from the U.S. Attorney's office. These allegations tend to prove a core element of Actrade's case: that Aharoni created the loan documents after the fact to hide his wrongdoing. Actrade alleges that Aharoni knew that Actrade was under government investigation and still refused to produce the allegedly exonerating loan agreements for several weeks. If true, this fact would tend to prove bad faith and is relevant. n42 The probative value of such evidence far outweighs any danger of unfair prejudice to Aharoni. n43

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n39 The motion to dismiss Actrade's conversion claim is premature. Neither party briefed the issue of whether Antiguan law recognizes a claim for conversion of a specific sum. Since the parties agree that Antiguan law controls, dismissal is inappropriate.

n40 According to Aharoni, "nowhere in their entire complaint do Plaintiffs allege that they were damaged from purported incorrect information contained in the financials." Def. Rep. Br. at 30. However, P97 of the complaint reads, "Aharoni's representations of fact contained in the purported loan agreements were false when made, were known to be false when made, and were made for purpose of inducing Actrade Commerce to rely on them to

their detriment, which Actrade Commerce did." Further, P98 reads, "as a direct result, Actrade Commerce suffered damages in an amount to be proved at trial." This is an adequate allegation of damage.

[*30]

n41 In support of his motion to dismiss the waste claim, Aharoni argues that the loan agreements on their face are evidence that Actrade received reasonable consideration. Of course, the complaint alleges facts that cast doubt on the regularity of those documents. Aharoni's argument that this court is helpless to look beyond the four corners of an allegedly fraudulent document to address allegations of self-dealing waste (Def. Rep. Br. p. 31) is simply wrong.

n42 Delaware Uniform Rule of Evidence 401 [HN13](defining relevant evidence as "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable").

n43 In passing, the court notes that the parties vigorously argue over remedies that might be available, including accounting, sequestration of stock, and constructive trusts. This discussion is premature and unnecessary to the present motion and I decline to make any ruling on it.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## VI.

For all of the foregoing reasons, Aharoni's motion to dismiss for lack of personal jurisdiction, lack of subject matter jurisdiction, [*31] and *forum non conveniens* is denied. Aharoni's motion to stay or dismiss this action in favor of the Cayman Islands action is denied. Aharoni's motion to dismiss for failure to state a claim and for failure to join necessary parties is denied. Aharoni's motion to strike is denied. IT IS SO ORDERED.

Stephen P. Lamb

Vice Chancellor

  

# TAB 3



Not Reported in F.Supp.2d
1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

Page 1

C

**Motions, Pleadings and Filings**

United States District Court, D. Delaware.
Bart A. BROWN, Jr., as Chapter 7 Trustee for
Foxmeyer Drug Company, Plaintiff,
v.
C.D. SMITH DRUG COMPANY, William D.
Bonds, Robert C. Farley, Anthony P.
Denicola, Kenneth A. Trant, John C. Thompson,
and Richard Meehan, Defendants.
**No. Civ.A. 98-494-SLR.**

Aug. 18, 1999.

Norman L. Pernick, Mark Minuti, and Scott J.
Jensen, of Saul, Ewing, Remick & Saul LLP,
Wilmington, Delaware, Daniel B. Goldman, Mark
W. Smith, and Joseph E. Gehring, Jr., of Kasowitz,
Benson, Torres & Friedman LLP, New York, New
York, for Plaintiff, of counsel.

Alan J. Stone, and David J. Teklits, of Morris,
Nichols, Arsht & Tunnell, Wilmington, Delaware,
Floyd R. Finch, Jr., Peter T. Niosi, and George A.
Hanson, of Blackwell, Sanders, Peper, Martin LLP,
Kansas City, Missouri, for Defendants, of counsel.

MEMORANDUM OPINION

ROBINSON, J.

I. INTRODUCTION

**\*1** Currently before the court are a motion to
dismiss and a motion for transfer of venue filed by
defendants C.D. Smith Drug Company ("CDS") and
its corporate directors William D. Bonds, Robert C.
Farley, Anthony P. DeNicola, Kenneth A. Trant,
John C. Thompson, and Richard Meehan. These
motions arise out of a suit filed in this court by
plaintiff Bart A. Brown, Jr., the Chapter 7 Trustee
of FoxMeyer Drug Company ("FoxMeyer").
Plaintiff's complaint asserts several Missouri state
law claims against defendants, none of whom are

residents of Delaware. Defendants seek dismissal
for lack of personal jurisdiction or, in the
alternative, a transfer of venue to the Western
District of Missouri. Because the court has personal
jurisdiction over defendants by virtue of
Bankruptcy Rule ("BR") 7004(d), the court shall
deny defendants' motion to dismiss; however,
because the convenience of the parties and the
interests of justice favor transfer, the court shall
grant defendants' motion to transfer venue to the
Western District of Missouri.

II. BACKGROUND

This suit has its genesis in FoxMeyer's August 27,
1997 filing for Chapter 11 reorganization in the
District of Delaware. At the time of its filing,
FoxMeyer was organized under the laws of
Delaware, but had its principal place of business in
Carrollton, Texas. Shortly after filing for
reorganization, the bankruptcy court ordered
FoxMeyer's Chapter 11 case converted to a Chapter
7 liquidation proceeding. The bankruptcy court then
appointed plaintiff as Chapter 7 Trustee.

Thereafter, plaintiff filed the present suit alleging
unfair competition, breach of fiduciary duty, and
other Missouri state law causes of action against
defendants. Plaintiff seeks $50 million in damages
arising out of defendant William D. Bonds'
organization of a mass "defection" of FoxMeyer's
sales representatives to CDS--FoxMeyer's chief
competitor in the wholesale pharmaceutical
business. According to the complaint, Bonds was a
ranking executive in FoxMeyer's Kansas City
regional sales office. During late 1993 to early
1994, Bonds allegedly became dissatisfied with
FoxMeyer and began surreptitious employment
negotiations with defendant Meehan, a CDS
corporate director. It is alleged that Bonds met with
defendants and offered to organize a mass defection
of FoxMeyer's Kansas City sales staff to CDS in
return for valuable consideration and other benefits.
Defendants allegedly agreed to conspire with and
assist Bonds in his efforts. According to plaintiff,
Bonds also agreed to assist CDS in acquiring

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
(Cite as: 1999 WL 709992 (D.Del.))

FoxMeyer's credit manager, who possessed valuable and confidential information about the credit worthiness and payment histories of FoxMeyer's customers. (D.I.1, ¶¶ 23-24)

During this time, FoxMeyer was formulating a secret strategic reorganization plan designed to improve FoxMeyer's competitive edge in the pharmaceutical wholesaling market. Plaintiff claims that Bonds helped draft the reorganization plan for FoxMeyer's Kansas City regional office and that he understood that the premature or inaccurate disclosure of the plan to FoxMeyer's sales staff, or to competitors, would irreparably injure FoxMeyer. Bonds allegedly agreed to keep the plan secret pending its formal authorized announcement by FoxMeyer in early 1994.

*2 In violation of his fiduciary duties, Bonds allegedly disclosed portions of the reorganization plan to FoxMeyer sales representatives and to defendants. According to plaintiff, he misled FoxMeyer sales representatives about the plan's effects on their sales territories and salaries in an effort to foment ill-will against FoxMeyer and thus encourage a mass defection of sales staff to CDS. (D.I.1, ¶¶ 19-20) Plaintiff asserts that Bonds also gave CDS other FoxMeyer proprietary information including the gross sales figures of FoxMeyer's Kansas City division and the compensation levels of FoxMeyer sales representatives--the latter allegedly designed to assist CDS in formulating job offers for these representatives. (D.I.1, ¶ 29)

On or about January 28, 1994, Bonds (while still employed at FoxMeyer) and several of defendants met with numerous FoxMeyer sales representatives and solicited each to join CDS and to take with them their sales volume, customer contacts, and proprietary information. Defendant Farley allegedly prepared the employment agreements offered to the FoxMeyer sales representatives using confidential FoxMeyer information procured by Bonds. On or about February 7, 1994, Bonds and substantially all of FoxMeyer's Kansas City sales department resigned with no prior notice and joined CDS in accordance with the alleged conspiracy plotted by Bonds and the other defendants. Shortly thereafter, several of FoxMeyer's longstanding customers transferred their business to CDS. Plaintiff claims that the actions of Bonds and the other defendants

unlawfully stripped FoxMeyer of its vital resources and prevented it from competing in the marketplace, servicing its remaining clients, or marketing for new business.

Before filing for bankruptcy, FoxMeyer sued defendants in the Circuit Court of Jackson County, Missouri. That complaint alleged the same facts and sought the same relief as the complaint at bar. Following FoxMeyers' bankruptcy filing, the Missouri Circuit Court dismissed the action without prejudice. Plaintiff later re-filed the action in this court as a proceeding "related to" the FoxMeyer bankruptcy.

III. DISCUSSION

A. Defendants' Motion to Dismiss for Lack of Personal Jurisdiction

The court first must determine whether it has personal jurisdiction [FN1] over the defendants, even though none of defendants are citizens of Delaware and none of the alleged wrongs occurred in Delaware. Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied. *See Omni Capital Int'l v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987). In the absence of consent to suit in the forum (and none was given in the present case), there must be some authorization for service of summons on the defendant. In the present case, plaintiff served defendants pursuant to Bankruptcy Rule ("BR") 7004(d). Rule 7004(d) permits nationwide service of process in adversary proceedings. [FN2] At issue is whether the nationwide service of summons authorized by BR 7004(d) provides a constitutional basis for personal jurisdiction over defendants who were not served in Delaware and who claim to have had no contacts with Delaware.

> FN1. The court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1334(b), which provides district courts with "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." This action unquestionably is "related to" the FoxMeyer bankruptcy proceeding because

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
(Cite as: 1999 WL 709992 (D.Del.))

Page 3

plaintiff's suit "could conceivably have any effect on the estate being administered in bankruptcy." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), *overruled on other grounds by Things Remembered, Inc. v.. Petrarca,* 516 U.S. 124, 134-35 (1995). As an action "related to" the FoxMeyer bankruptcy, the Federal Rules of Bankruptcy control, among other things, service of process. *See Phar-Mor, Inc. v. Coopers & Lybrand,* 22 F.3d 1228, 1237-38 (3d Cir.1994).

FN2. BR 7004(d) states that, "[t]he summons and complaint and all other process except a subpoena may be served anywhere in the United States."

*3 Defendants argue that personal jurisdiction founded on BR 7004(d) is unconstitutional because they lack "minimum contacts" with the State of Delaware and because answering suit in Delaware would be onerous and unfair. While defendants concede that BR 7004(d) provides for nationwide service of process, they argue that service of process and personal jurisdiction are two distinct concepts. The latter, defendants suggest, does not follow necessarily from the former; instead, defendants assert that a court has personal jurisdiction over out-of-state defendants only where that jurisdiction comports with notions of substantial justice and fair play. In essence, defendants urge the court to adopt a fairness test akin to that articulated by the Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny. In those cases, the Supreme Court adopted a two-part test to assess the constitutionality of *in personam* jurisdiction over out-of-state defendants haled into federal court pursuant to a state long-arm statute. [FN3] The two-part test asks whether the defendants have minimum contacts with the forum state and whether exercising jurisdiction over defendants would comport with notions of substantial justice and fair play. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985); *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 292 (1980); *Shaffer v. Heitner,* 433 U.S. 186, 207 (1977); *International Shoe,* 326 U.S. at 316.

FN3. Where subject matter jurisdiction is founded on diversity or on a federal statute that does not provide for national service of process, Fed.R.Civ.P. 4(e) incorporates the forum state's long-arm statute as means for obtaining personal jurisdiction over the defendants.

That test, though, applies only to jurisdictional issues arising under the 14th Amendment. Because the present case is "related to" a bankruptcy proceeding and because service of process was effected pursuant to a federal rule having the force of federal law, [FN4] it is the Fifth, not the Fourteenth, Amendment that is at issue. The Supreme Court has not addressed whether the Due Process Clause of the Fifth Amendment also requires personal jurisdiction over out-of-state defendants to comport with notions of fairness and substantial justice; [FN5] however, the majority of lower federal courts to have considered the issue have concluded that out-of-state defendants need only have minimum contacts with the United States in order to satisfy Fifth Amendment due process. In reaching this conclusion, courts have reasoned that the fairness requirement imposed by the Fifth Amendment relates only to whether the sovereign has the power to exercise jurisdiction, not to the fairness of suit in a particular forum provided by the sovereign. *See, e.g., In re Federal Fountain, Inc.,* 165 F.3d 600, 601-02 (8th Cir.1999) (explaining that, because BR 7004(d) provides for national service of process, fairness of suit in a particular state is not at issue; due process is satisfied where defendant has sufficient contacts with the United States); *Hogue v. Milodon Eng'g, Inc.,* 736 F.2d 989, 991 (4th Cir.1984) (finding that Virginia bankruptcy court had personal jurisdiction over California defendant under former BR 704 and that defendant must look to federal venue requirement for relief from onerous litigation); *In re Outlet Department Stores, Inc.,* 82 B.R. 694, 699 (Bankr.S.D.N.Y.1988) (holding that where out-of-state defendant was properly served under BR 7004(d), minimum contacts test for personal jurisdiction does not apply; Fifth Amendment requires only that service be reasonably calculated to inform defendant of pendency of proceedings); *In re Trim-Lean Meat Prods., Inc.,* 11 B.R. 1010, 1011-13 (Bankr.D.Del.1981) (finding that personal jurisdiction founded on former BR 704 required only minimum contacts with the United States).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
(Cite as: 1999 WL 709992 (D.Del.))

FN4. The Federal Rules of Bankruptcy Procedure have the force of law. *See* 1 *Collier on Bankruptcy* § 1.04, at 1-55 (15th ed. rev.1999). As such, BR 7004(d) has the same force and effect as other nationwide service of process provisions provided by federal statute. *See, e.g.,* The Securities Act of 1934, 15 U.S.C. § 78aa; ERISA, 29 U.S.C. § 1132(e)(2); The Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1965(d).

FN5. *See Omni Capital,* 484 U.S. at 102 n. 5; *Asahi Metal Indus Co. v. Superior Court,* 480 U.S. 102, 113 n.* (1987) (explaining that, "[w]e have no occasion here to determine whether Congress could, consistent with the Due Process Clause of the Fifth Amendment, authorize federal court personal jurisdiction over alien defendants based on the aggregate of national contacts, rather than on the contacts between the defendant and the State in which the federal court sits.").

*4 The Second Circuit reached such a conclusion in a case involving service of out-of-state defendants under the nationwide service of process provision of the Securities Act of 1934. [FN6] *See Mariash v. Morrill,* 496 F.2d 1138 (2d Cir.1974). Writing for the court, Judge Kaufman explained that the Massachusetts defendants need not have had minimum contacts with the State of New York to justify personal jurisdiction over them because "[i]t is not the State of New York but the United States 'which would exercise its jurisdiction over [the defendants] .... [a]nd plainly, where, as here, the defendants reside within the United States, the 'minimal' contacts,' required to justify the federal government's exercise of power over them, are present." *Id.* at 1143 (footnotes and citations omitted). Similarly, in an ERISA suit brought in Texas against a Michigan insurer, the Fifth Circuit explained that

FN6. 15 U.S.C. § 78aa ("process ... may be served in any other district of which the defendant is an inhabitant or wherever the defendant may be found").

when a federal court is attempting to exercise

personal jurisdiction over a defendant in a suit based upon a federal statute providing for service of process, the relevant inquiry is whether the defendant has had minimum contacts with the United States.

*Bellaire Gen. Hosp. v. Blue Cross Blue Shield of Mich.,* 97 F.3d 822, 826 (5th Cir.1996) (quoting *Busch v. Buchman, Buchman & O'Brien, Law Firm,* 11 F.3d 1255, 1258 (5th Cir.1994)); *see also ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 626-27 (4th Cir.1997) (finding *in personam* jurisdiction where service effected on out-of-state defendants under nationwide service of process provision provided by civil RICO statute).

Defendants insist, however, that these courts have focused erroneously on the sovereign's power to provide for jurisdiction, instead of on the fairness of suit in a particular forum. [FN7] Citing *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,* 456 U.S. 694 (1982), defendants argue that the Supreme Court has shifted its focus from a sovereign's power to exercise personal jurisdiction to whether the exercise of personal jurisdiction infringes upon an individual's liberty interest. Specifically, defendants point to a single passage in that opinion where Justice White, writing for the Court, remarked that:

FN7. At least two circuit court panels have expressed similar reservations. *See Republic of Panama v. BCCI Holdings (Luxembourg) S.A.,* 119 F.3d 935, 943-48 (8th Cir.1997) (applying 14th Amendment personal jurisdiction analysis to national service of process case); *Bellaire,* 97 F.3d at 826 (explaining, in dicta, the panel's reluctance in following *Busch* and its belief that jurisdiction premised on national service of process must satisfy the two-part test articulated by the Supreme Court); *Busch,* 11 F .3d at 1259 (Garza, J., dissenting) (arguing that courts should focus on "an individual's liberty interest in avoiding the burdens of litigating in a distant or inconvenient forum"). *See also* Jeffrey T. Ferriell, *The Perils of Nationwide Service of Process in a Bankruptcy Context,* 48 Wash. & Lee L.Rev. 1199 (1991) (advocating that state boundaries be used to establish limitations

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

Page 5

on a federal court's personal jurisdiction in bankruptcy cases; *but see* Jay Tidmarsh & Roger H. Transgrud, *Complex Litigation and The Adversary System* 706 (1998) (noting that district courts sitting in bankruptcy need not worry about territorial limits on personal jurisdiction).

The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause. The personal jurisdiction requirement recognizes and protects an individual liberty interest. It represents a restriction on judicial power not as a matter of sovereignty, but as a matter of individual liberty.
*Id.* at 702-03. Defendants assert that this passage reveals a new commitment by the Court to protect defendants from "unfair" assertions of personal jurisdiction in distant and inconvenient fora. This is a dubious claim. First, read in context, the above quoted passage characterizes personal jurisdiction as a matter of individual liberty merely to distinguish it as a right "waivable" by defendant's conduct. Second, defendants' characterization of the Court's commitment to "fairness" as the touchstone of personal jurisdiction is questionable in light of the Court's more recent decision in *Burnham v. Superior Court,* 495 U.S. 604 (1990). There, the court upheld personal jurisdiction over an out-of-state defendant based solely on the defendant's physical presence in the forum at the time of service. [FN8] Writing for the court, Justice Scalia reasoned that "the short of the matter is that jurisdiction based on physical presence alone constitutes due process because it is one of the continuing traditions of our legal system that define the due process standard of 'traditional notions of fair play and substantial justice." ' *Id.* at 619. Thus, the Supreme Court still attaches great significance to a sovereign's power to exercise personal jurisdiction over those within its territory.

> FN8. Burnham, a New Jersey resident, was on vacation in California when served with a California court summons and a petition for divorce.

**\*5** Here, the relevant sovereign is the United States, and Congress unquestionably has the power to enact laws which provide for national service of process. Where it has not done so, the court

normally must rely on Fed.R.Ci v.P. 4(e)'s incorporation of the relevant state's long-arm statute to acquire personal jurisdiction. Only then do a defendant's contacts with the forum state and considerations of fairness and convenience to out-of-state defendants become significant to the court's jurisdictional analysis. This is sensible because in such cases the court "borrows" the forum state's jurisdictional statute to assert personal jurisdiction over residents of another state--thereby implicating state sovereignty issues. The Supreme Court's two-step test keeps a state's jurisdictional powers in check by limiting the reach of that state's long-arm statute to those defendants who have purposefully maintained contacts with that jurisdiction. The test also protects a defendant's freedom from answering suit in a forum solely as a result of random or attenuated contacts with that forum. *See Burger King,* 471 U.S. at 475.

In the present case, however, the relevant forum is the nation as a whole, and Congress has provided a jurisdictional mechanism in the form of national service of process. The sovereignty of individual states is not implicated, and personal jurisdiction over those defendants who have availed themselves of the United States can hardly constitute a due process violation. Thus, the court need only satisfy itself that defendants have minimum contacts with the United States. Because defendants have such contacts, the court concludes that it has personal jurisdiction over them. Accordingly, defendants' motion to dismiss is denied. Whether or not Delaware is a convenient location for suit is a matter best left to a motion for transfer of venue. It is to this motion that the court now turns.

B. Defendants' Motion to Transfer

Defendants move the court to transfer this matter, pursuant to 28 U.S.C. § 1404(a), to the Western District of Missouri. Section 1404(a) provides:
> For the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

Because courts accord plaintiff's choice of forum substantial weight, defendants have the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin,* 512 F.Supp. 972,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

Page 6

973 (D.Del.1981) (citing *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir.1970)). In reviewing a motion to transfer venue, courts must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *See Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995) (internal quotations and citation omitted). Courts have considered "many variants of the public and private interests protected by the language of § 1404(a)." *Id.* The private interests considered by courts have included

> *6 plaintiff's forum preference as manifested by the original choice ... the defendant's preference ... whether the claim arose elsewhere ... the convenience of the parties as indicated by their relative physical and financial condition ... the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora ... and the location of the books and records ... [where] the files could not be produced in the alternative forum....

*Id.* The public interests considered by courts have included

> the enforceability of the judgment ... practical considerations that could make the trial easy, expeditious, or inexpensive ... the relative administrative difficulty in the two fora resulting from court congestion ... the local interest in deciding local controversies at home ... the familiarity of the trial judge with the applicable state law in diversity cases....

*Id.* Most of these factors weigh in favor of transfer to the Western District of Missouri.

As an initial matter, the court notes that this action could be brought in the Western District of Missouri under that court's diversity jurisdiction. There is more than $75,000 in controversy and complete diversity exists between the parties. [FN9] Although plaintiff's decision to bring suit in Delaware carries great weight, plaintiff's choice of venue is not, in light of all the circumstances, convenient to the parties and witnesses or in the interests of justice.

> FN9. Plaintiff is incorporated under Delaware law and has its principal place of business in Texas while defendants appear to be citizens either of Kansas or Missouri.

The inconvenience to defendants of litigating in Delaware is of chief concern to the court. None of defendants reside in or near Delaware. In fact, most live near Kansas City, Missouri. Moreover, defendants are the corporate officers of CDS. Although technological advances have reduced the burden of having to litigate in a distant forum, *see Wesley-Jessen Corp. v. Pilkington Visioncare, Inc.,* 157 F.R.D. 215, 218 (D.Del.1993), forcing individual defendants, as well as the corporate defendant's essential employees, to travel hundreds of miles to testify when there is a local alternative weighs heavily in favor of transfer. Moreover, defendants have produced several affidavits of third-party witnesses who have indicated that they will not travel to Delaware to testify. (D.I.31, Ex. B) Some of these witnesses have personal knowledge of FoxMeyer's drug wholesaling practices and, presumably, will testify as to why they did business with CDS rather than FoxMeyer. Unlike the Western District of Missouri, this court has no power to compel the presence of these witnesses. Although defendants could present the deposition testimony of these witnesses at trial, the Supreme Court has noted that "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 511 (1947); *see also Sunds Defibrator, Inc. v. Durametal Corp.,* No. CIV.A. 96- 483-MMS, 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997) (noting the importance of hearing live testimony). Finally, trial in Delaware would require the shipment of voluminous materials from Missouri to Delaware. Although the court has noted in other cases that transportation of documents does not alone justify transfer, *see Brinn v. McCracken Fin. Servs., Inc.,* No. Civ. A. 95-542- SLR, 1996 WL 79377, at *6-7 (D.Del. Feb. 20, 1996), in the present case this burden is simply one more factor in favor of transfer.

*7 Also supporting transfer is the tenuous relationship of this case to the District of Delaware. The only connection to this court is FoxMeyer's decision to file for bankruptcy in Delaware, thus giving the district court subject matter jurisdiction over "related" proceedings. *See* 28 U.S.C. § 1334(a) . None of the allegedly unlawful acts giving rise to plaintiff's complaints occurred in Delaware.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
1999 WL 709992 (D.Del.), 42 Collier Bankr.Cas.2d 1722
**(Cite as: 1999 WL 709992 (D.Del.))**

Page 7

Moreover, the complaint lacks any federal questions and rests entirely on Missouri common law. While the court has both the jurisdiction and the competence to address these Missouri causes of action, it nonetheless feels that a member of the Missouri bar ought to decide issues affecting the development of Missouri common law.

In sum, the only factor weighing against transfer is plaintiff's choice of venue while, on the other hand, there are several compelling reasons to transfer this matter to the Western District of Missouri. As such, the court finds that defendants have met their burden of showing that the convenience of the parties and the interests of justice merit transfer. The court, therefore, shall grant plaintiff's motion to transfer.

IV. CONCLUSION

For the aforementioned reasons, the court shall deny defendant's motion to dismiss and grant its motion to transfer venue to the Western District of Missouri. An appropriate order shall issue.

1999   WL   709992   (D.Del.),   42   Collier Bankr.Cas.2d 1722

**Motions, Pleadings and Filings (Back to top)**

. 1:98CV00494  (Docket)

(Aug. 19, 1998)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.