TAB 7

PAUL KUCK, Plaintiff, v. VERITAS SOFTWARE CORPORATION, EDWIN J. GILLIS and GARY L. BLOOM, Defendants.

Civ. No. 04-831-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2005 U.S. Dist. LEXIS 823

January 14, 2005, Decided

**DISPOSITION:** Motion to transfer was denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** In a putative class action, plaintiff investor sued defendants, a company and two corporate officers, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, *15 U.S.C.S. §§ 78j* and *§ 78t*. Defendants moved to transfer the case to another federal district court in which another securities class action suit was filed involving the same claims as the present case.

**OVERVIEW:** The company was incorporated in Delaware, and its corporate headquarters was in northern California. Defendants asserted that the convenience of the parties factor was the most compelling reason to transfer. All witnesses, parties, and the legal team were located within the United States District Court for the Northern District of California. Moreover, the principal documents regarding internal projections, forecasts and results as well as the Securities and Exchange Commission filings and press releases related to the investor's allegations were located at the company's headquarters. Defendants submitted that the expense of travel and shipping would be greatly reduced by moving the case to California. The investor argued that since the company was a Delaware corporation, enjoying all the benefits and protections of that state's laws, it could not credibly contend that litigation in the state was inconvenient. The asserted advantages of transferring the case were insufficient to warrant a transfer. The company enjoyed the benefits and protections of incorporation in Delaware and that state had an interest in litigation regarding companies incorporated within its jurisdiction.

**OUTCOME:** Defendants' motion to transfer was denied.

**CORE TERMS:** convenience, choice of forum, fora, motion to transfer, travel, balance of convenience, inconvenient, unavailable, deference, corporate headquarters, worldwide

### LexisNexis(TM) Headnotes

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1]Under *28 U.S.C.S. § 1404*(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice.

*Civil Procedure > Venue > Change of Venue Generally*

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2]The burden of establishing the need to transfer rests with the movant to establish that the balance of convenience of the parties and witnesses strongly favors the defendants. Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail.

*Civil Procedure > Venue > Change of Venue Generally*

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN3]The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN4]The analysis for transfer is very broad. Although there is no definitive formula or list of factors to consider, the United States Court of Appeals for the Third Circuit has identified potential factors it characterized as either private or public interests. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the con-

Page 69

  

venience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records, similarly limited to the extent that the files could not be produced in the alternative forum.

*Civil Procedure > Venue > Change of Venue Generally*

*Civil Procedure > Venue > Change of Venue in Federal Courts*

[HN5]In the context of deciding whether to transfer venue, the public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

COUNSEL: [*1] PAUL KUCK, ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED, Plaintiff: Carmella P. Keener Rosenthal, Monhait, Gross Goddess, Wilmington, DE.

For VERITAS SOFTWARE CORPORATION, EDWIN J. GILLIS, GARY L. BLOOM, Defendants: Erica L. Niezgoda, Potter Anderson & Corroon, LLP, Wilmington, DE.

JUDGES: Sue L. Robinson, United States District Judge.

OPINIONBY: Sue L. Robinson

OPINION: MEMORANDUM ORDER

At Wilmington this 14th day of January, 2005, having considered defendants' motion to transfer and the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I. 4) is denied, for the reasons that follow:

1. **Introduction.** On July 7, 2004, plaintiff Paul Kuck ("Kuck") filed this complaint against defendants Veritas Software Corporation ("Veritas"), Edwin Gillis ("Gillis") and Gary L. Bloom ("Bloom") alleging violations of *Sections 10(b)* and *20(a)* of the Securities Exchange Act of 1934, *15 U.S.C. § 78j* and *§ 78t*. n1 (D.I. 1) Plaintiff contends that the individual defendants caused Veritas to issue a materially false and misleading press release regarding expectations on revenue and earnings. (D.I. 1) On July 19, 2004, defendants [*2] moved to transfer to the Northern District of California. (D.I. 4, 5) Plaintiff opposes the motion (D.I. 13) and defendants have filed their reply. (D.I. 14)

- - - - - - - - - - - - - - Footnotes - - - - - - -

n1 There are two related cases: Bennet v. Veritas Software Corporation, Civ. No. 04-867-SLR; and Choon v. Veritas Software Corporation, Civ. No. 04-872-SLR. Although formal motions to transfer have not been filed in the related cases, the parties have agreed that the instant motion shall apply to all three cases. (D.I. 13) Additionally, a securities class action was filed on July 29, 2004 in the Northern District of California involving the same claims at bar. Malone v. Veritas Software Corp., 3:04-CV-3088-MJJ (N.D. Cal. 2004).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

2. **Background.** Veritas, a Delaware corporation, is a leading provider of software storage products and services. (D.I. 5, 13) Gillis is the Executive Vice President and Chief Financial Officer of Veritas. Bloom is the Chairman of the Board, President and Chief Executive Officer. (D.I. 7)

3. Veritas employs over [*3] 6,500 people worldwide, with approximately 3,800 employed in the United States. (Id.) About 1,061 employees work at the corporate headquarters in Mountain View, California. The remaining employees work at 120 offices worldwide, located in 28 states and 36 countries. Veritas does not have any offices, employees or documents in Delaware. Its legal, accounting, finance and marketing departments are located at the Mountain View corporate headquarters. General counsel is also located within the Northern District of California. Veritas' common stock is traded on the NASDAQ market. (D.I. 13 at 4)

4. Plaintiff has moved on behalf of himself and of "all other persons similarly situated (the "Class") who purchased or acquired the publicly traded securities of Veritas between April 21, 2004 and July 6, 2004." (D.I. 13 at 4) To that end, motions for consolidation, appointment as lead plaintiff and approval of selection of lead counsel have been filed. (D.I. 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26,)

5. **Standard of Review.** [HN1]Under *28 U.S.C. § 1404(a)*, a district court may transfer any civil action to any other district where the action might have been brought [*4] for the convenience of parties and witnesses and in the interests of justice. Congress intended through § *1404* to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc.*

  

v. *Ricoh Corp.*, 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp.2d 192, 208 (D. Del. 1998).

6. [HN2]The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp.2d 565, 567 (D. Del. 2001); *Shutte*, 431 F.2d at 25.

7. [HN3]The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del 1998); [*5] *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, 2001 WL 1617186 (D. Del. Nov. 28, 2001); *Continental Cas. Co. v. American Home Assurance Co.*, 61 F. Supp.2d 128, 131 (D. Del. 1999). Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993).

8. The Third Circuit Court of Appeals has indicated that [HN4]the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as [*6] manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

9. [HN5]The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

10. **Discussion.** Defendants assert that the convenience of the parties factor is the most compelling reason to transfer. All witnesses, parties, and the legal team are located within the Northern District of California. [*7] Moreover, the principal documents regarding internal projections, forecasts and results as well as the SEC filings and press releases related to plaintiff's allegations are located at the Mountain View headquarters. Defendants submit that the expense of travel and shipping would be greatly reduced by moving the case to California.

11. Plaintiff contends his choice of forum should be afforded deference and that transfer should not be liberally granted. *Argos v. Orthotec LLC*, 304 F. Supp. 2d 591, 598 (D. Del. 2004). Further, since Veritas is a Delaware corporation enjoying all the benefits and protections of this state's laws, it cannot credibly contend that litigation in the state is inconvenient. (D.I. 13)

12. Weighing the arguments against the *Jumara* balancing test, the court finds that the asserted advantages of moving the case to the Northern District of California are insufficient to warrant a transfer. Defendants' complaints about litigating here are outweighed by the fact that Veritas has enjoyed the benefits and protections of incorporation in Delaware and that the state has an interest in litigation regarding companies incorporated within its jurisdiction. [*8] Moreover, defendants have not provided specific information about problems of certain witnesses being unavailable or unwilling to travel to Delaware for trial. Considering that discovery can be conducted at any location convenient to the parties and their employees, the only event that will take place in Delaware is the trial. The travel expenses and inconveniences incurred for that purpose, by a Delaware defendant conducting worldwide business, is not overly burdensome.

13. **Conclusion.** For the reasons stated, defendants' motion to transfer (D.I. 4) is denied.

Sue L. Robinson

United States District Judge





# TAB 8

THE ORIGINAL CREATINE PATENT COMPANY, LTD, Plaintiff, v. KAIZEN, INC., Defendant.

Civil Action No. 02-471-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2003 U.S. Dist. LEXIS 988

January 22, 2003, Decided

**DISPOSITION:** [*1] Defendant's motion to dismiss or, in the alternative, to transfer was granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff patentee filed an amended complaint for patent infringement against defendant corporation. The corporation filed an answer and asserted affirmative defenses, including inequitable conduct and bad faith and then moved to dismiss or to transfer. The patentee responded with a motion to strike and/or dismiss 15 of the corporation's affirmative defenses.

**OVERVIEW:** The court found the balance of private factors weighed in favor of transfer. The record reflected that neither litigant had ties to Delaware. Geographically, Delaware was inconvenient to everyone. All witnesses, documents and employees were located outside of the instant forum. Although the corporation described itself as a world-wide operation, there was nothing presented to corroborate this apparent embellishment. Turning to the public interests, the court found the practical considerations related to trial weighed in favor a transfer. The expense of trial in Delaware weighed more heavily on the corporation. Regardless of the forum, the patentee would incur travel expenses. A transfer to California would have eliminated rather than merely shifting the travel expense of one party. The court was likewise confident that the district court in California was well-equipped to decide the issues implicated, regardless of the pendency of the patentee's other infringement actions before the instant court. Further, considering the corporation was a California corporation conducting business therein, that forum had a more particular interest in the litigation than Delaware.

**OUTCOME:** The corporation's motion to dismiss or, in the alternative, to transfer was granted and the action was transferred.

**CORE TERMS:** patent, convenience, weigh, choice of forum, patents-in-suit, website, fora, motion to dismiss, creatine-containing, world-wide, reside, balance of convenience, deference, patent infringement, motion to strike, third party, store owner, declaration, implicated, embodying, nutrition, invention, internet, inventors, travel

**LexisNexis(TM) Headnotes**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1]Under 28 U.S.C.S. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2]The burden of establishing the need to transfer rests with the movant to establish that the balance of convenience of the parties and witnesses strongly favors the defendants. Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN3]Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN4]The United States Court of Appeals for the Third Circuit indicates the analysis for transfer is very broad. Although emphasizing that there is no definitive formula or list of factors to consider, it has identified potential factors it characterized as either private or public interests. The private interests include: (1) a plaintiff's forum preference as manifested in the original choice; (2) a defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location

Page 115

  

of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

**COUNSEL:** For ORIGINAL CREATINE PATENT COMPANY, LTD, plaintiff: Richard L. Horwitz, Potter Anderson & Corroon, LLP, Wilmington, DE.

For KAIZEN INC., defendant: David L. Finger, David L. Finger, Esq., Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION: MEMORANDUM ORDER**

At Wilmington this 22nd day of January, 2003, having reviewed defendant's motion to dismiss or, in the alternative, to transfer and the papers submitted in connection therewith;

IT IS ORDERED that said motion to transfer (D.I. 14) is granted, for the reasons that follow: n1

---------------- Footnotes --------
--------

n1 Because the court is transferring the action to California, Kaizen's motion to dismiss for lack of personal jurisdiction is denied as moot. Kaizen's motions for protective orders (D.I. 25, 31) and OCPC's motion to strike (D.I. 10) are denied without prejudice to renew.

------------ End Footnotes- ------
--------

1. **Introduction.** On July 11, 2002, plaintiff, The Original Creatine Patent [*2] Co., Ltd. ("OCPC"), filed an amended complaint for patent infringement against defendant Kaizen, Inc. ("Kaizen"). n2 (D.I. 7) The patents-in-suit are United States Patent Number 5,757,159 ("the '159 patent") and United States Patent Number 5,968,544 ("the '544 patent"). OCPC alleges that Kaizen has made, used, offered for sale, and continues to do the same, creatine-containing products embodying the invention patented in the '544 patent. OCPC further contends that Kaizen has marketed and sold creatine-containing products embodying the invention in the '159 patent. Kaizen filed an answer and asserted affirmative defenses, including inequitable conduct and bad faith. (D.I. 9) Kaizen then filed this motion to dismiss or transfer to the Central District of California. (D.I. 10) OCPC responded with a motion to strike and/ or dismiss fifteen of Kaizen's affirmative defenses. (D.I. 10)

---------------- Footnotes --------
--------

n2 CPC filed the original complaint incorrectly against Kaizen, Inc., a Delaware corporation unrelated to this action. (D.I. 1, 15)

------------ End Footnotes- ------
--------

[*3]
2. **Background.** OCPC is an English corporation with its principal place of business in Leeds, United Kingdom. (D.I. 7, P2) OCPC is the assignee of the two patents-in-suit, the '159 patent, issued to inventors Eric Hultman and Roger C. Harris, and the '544 patent, issued to inventors Alan N. Howard and Roger C. Harris. (Id. at PP5-6) While Hultman resides in Sweden, Howard and Harris reside in the United Kingdom. (D.I. 19, Ex. 1) The attorneys who prosecuted the patents are located in Washington, D.C. and Chicago, Illinois. OCPC has filed four other actions to enforce the patents-in-suit against different defendants, all of which are pending before this court.

3. Kaizen is a California corporation with only one office located in Los Angeles, California. (D.I. 15, Ex. A) Kaizen is a corporation involved in the advertising, distribution and sales of health food products. (Id. at P2) In 1998, Kaizen entered a licensing agreement to market, distribute and sell creatine-containing products from a German company under the trade-name Creapure <TM>. (Id. at P4) Kaizen claims that all its documents and employees are located in California. With the exception of two potential [*4] witnesses, n3 Kaizen indicates the remaining reside in California.

---------------- Footnotes --------
--------

n3 There are two witnesses located in Georgia and Canada. ( D.I. 15 P 9)

------------ End Footnotes- ------
--------

4. **Standard of Review.** [HN1]Under *28 U.S.C. § 1404*(a), a district court may transfer any civil ac-





tion to any other district where the action might have been brought for the convenience of parties and witnesses and in the interest of justice. Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp.2d 192, 208 (D. Del. 1998).

[HN2]The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin*, 512 F. Supp. 972, 973 (D. Del. 1981) [*5] (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp.2d 565, 567 (D. Del. 2001); *Shutte*, 431 F.2d at 25.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 562 (D. Del 1998); *Siemens Medical Systems, Inc. v. Fonar Corporation*, C.A. No. 95-261-SLR, 1995 U.S. Dist. LEXIS 22334, slip. op. at 8 (D. Del. Nov. 1, 1995); *Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.*, 2001 U.S. Dist. LEXIS 20803, 2001 WL 1617186 (D. Del. Nov. 28, 2001). [HN3]Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer. [*6] " *In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993).

[HN4]The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Although emphasizing that "there is no definitive formula or list of factors to consider," id., the Court has identified potential factors it characterized as either private or public interests. The private interests include: "(1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public interests include: "(1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; [*7] (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

5. **Discussion.** Kaizen argues the public and private interests weigh in favor of a transfer to the Central District of California. Specifically, Kaizen argues that OCPC has no parties, witnesses or evidence related to this action in Delaware. Kaizen avers that OCPC instituted this action in Delaware for the sole reason of accommodating the convenience of its lawyers, who practice in this state. Kaizen contends that the action actually emanates from Los Angeles, California, the location of its sales center. California is also the location of all events and evidence related to the litigation. (D.I. 15, Ex. A)

6. OCPC contends its choice of forum should be afforded deference. (D.I. 19) The Delaware forum was selected because Kaizen has committed patent infringement in this state, argues OCPC. Moreover, the evidence and witnesses necessary to defend against Kaizen's affirmative [*8] defenses are located in Sweden, the United Kingdom, Washington, D.C. and Illinois. Although all of these witnesses will have to travel for trial purposes, OCPC asserts that Delaware is a closer forum than California. Further, because there are three other cases involving the same patents pending before this court, judicial economy will be promoted by maintaining this action. (D.I. 19, Ex. 1) The risk of inconsistent results will be reduced by allowing one judge to become proficient in the patent technology and the relevant facts.

OCPC also raises another issue related to Kaizen's business, or lack thereof, in Delaware. On Kaizen's internet website, the company describes itself as maintaining offices "world-wide," in addition to the California office. (D.I. 19, Ex. 2) The Kaizen website does not accept orders for its products. However, the website does provide a link to an internet nutrition store which sells Kaizen products. According to the declaration of an OCPC attorney, she was able to place post-complaint orders for Kaizen products, including those alleged to infringe the patents-in-suit, from the linked nutrition store. (D.I. 19, Ex. 3) The orders were made from a Delaware computer [*9] and she received the products in Delaware. The attorney states that she was able to buy a nationally distributed magazine at a Delaware bookstore that contained ad-





vertisements for Kaizen products. She was also able to purchase, in person, noninfringing Kaizen products from a Delaware store. She states that the owner of the store told her that he has received solicitations to sell the entire line of Kaizen products. OCPC plans to call the Delaware store owner as a third party witness.

In response, Kaizen urges the court to strike the declaration as it contains impermissible double hearsay. (D.I. 20) However, even if it were considered, Kaizen contends it does not establish that Kaizen conducts business in Delaware or sells the accused products here. Moreover, the fact that Kaizen's website describes its operations as "world-wide" still does not establish any business relationship with anyone in Delaware. Kaizen also argues that any problems with having third party witness testifying in California, can be solved by taking the depositions elsewhere.

Since the parties do not dispute that this action could have been initiated in the Central District of California, an examination of the [*10] private issues implicated by a transfer is warranted. The court finds the balance of private factors weighs in favor of transfer. The record reflects that neither litigant has ties to Delaware. Geographically, Delaware is inconvenient to everyone. All witnesses, documents and employees are located outside of this forum. Although Kaizen may describe itself as a world-wide operation, there has been nothing presented to corroborate this apparent embellishment.

With regard to compulsory process problems, OCPC indicates that a Delaware store owner will be called as a trial witness. However, it has not established that this individual will be unwilling to testify outside of Delaware. Absent a demonstrable obstacle to obtaining personal jurisdiction over a third-party witness, the court declines to consider this as a problem.

Turning to the public interests, the court finds the practical considerations related to trial weigh in favor a transfer. As noted, the expense of trial in Delaware will weigh more heavily on Kaizen. Regardless of the forum, OCPC will incur travel expenses. A transfer to California would eliminate rather than merely shifting the travel expense of one party. See [*11] *Van Dusen v. Barrack, 376 U.S. 612, 646, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)*.

The court is likewise confident that the Central District of California is well-equipped to decide the issues implicated by this case, regardless of the pendency of OCPC's other infringement actions. Further, considering Kaizen is a California corporation conducting business therein, that forum has a more particular interest in the litigation than Delaware. Accordingly, for the reasons stated, this action is transferred to the Central District of California.

Sue L. Robinson

United States District Judge



Page 118


# TAB 9

PADCOM, INC., Plaintiff, v. NETMOTION WIRELESS, INC. and DATABASE SOLUTIONS, INC., Defendants.

Civ. No. 03-983-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 9658

May 24, 2004, Decided

**DISPOSITION:** [*1] Defendants' motion to dismiss and to transfer denied.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff patent holder sued defendant alleged patent infringers, claiming infringement of two patents and intentional and wrongful interference with contractual and business relations with potential customers. One infringer moved to dismiss the lawsuit for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). The other infringer moved to transfer the lawsuit under *28 U.S.C.S. § 1404*(a).

**OVERVIEW:** The holder developed, made, licensed, sold, and serviced software and hardware products to enhance connectivity for wireless network users. One infringer had its principal place of business in Washington and the other infringer had its principal place of business in New Jersey. The court denied both motions. The infringers had sufficient contacts for personal jurisdiction under the Delaware long-arm statute, Del. Code Ann. tit. 10, § 3104. The infringer repeatedly transacted and solicited business in Delaware. Trial versions of products were available. A computer company included the infringers' marketing information and a free trial version of its software with its products. The infringers also contacted Delaware businesses by a telemarketer and they mailed promotional materials to businesses in the state. Further, the exercise of jurisdiction comported with due process. Due to the web site and marketing, the infringers reasonably should have anticipated suit in this forum. The court also denied the motion to transfer. In addition to deferring to the holder's forum choice, the court held that the infringers failed to show that convenience or public interest warranted transfer.

**OUTCOME:** The court denied the motion to dismiss and the motion to transfer.

**CORE TERMS:** site, web, forum state, software, jurisdictional, download, long-arm, marketing, wireless, residents, general jurisdiction, choice of forum, contacted, third party, discovery, exercise of personal jurisdiction, personal jurisdiction, cause of action, email, convenience, network, entity, user, knowingly, customers, shipped, solicit, summons, patent, reply

**LexisNexis(TM) Headnotes**

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

*Civil Procedure > Pleading & Practice > Defenses, Objections & Demurrers > Motions to Dismiss*
[HN1]Pursuant to Fed. R. Civ. P. 12(b)(2), a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant. The principle pronounced above is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

*Civil Procedure > Pleading & Practice > Service of Process > Methods of Service*
[HN2]Fed. R. Civ. P. 4(e)(1) states that service of a summons may be effected pursuant to the law of the state in which the district court is located.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*
[HN3]The Delaware long-arm statute, Del. Code Ann. tit. 10, § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

*Civil Procedure > State & Federal Interrelationships > Choice of Law*
[HN4]According to the Federal Circuit Court of Appeals, when the question before a court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the federal circuit, rather than that of the regional circuit in which the case arose, is applicable. The Federal Circuit Court of Appeals has instructed that, in interpreting the meaning of state long-arm statutes, it defers to the interpretations of the

Page 80

  

relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

*Evidence > Procedural Considerations > Burdens of Proof*

[HN5]Once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred with between the forum state and defendant to support jurisdiction. To meet this burden, the plaintiff must demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state. In contrast, general jurisdiction does not require that the defendant's connections be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN6]The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent: (1) Transacts any business or performs any character of work or service in the State; (2) Contracts to supply services or things in this State; (3) Causes tortious injury in the State by an act or omission in this State; (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State; (5) Has an interest in, uses or possesses real property in the State; or (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing. Del. Code Ann. tit. 10, § 3104(c). These provisions have been construed liberally so as to provide jurisdiction to the maximum extent possible in order to provide residents a means of redress against those not subject to personal service within the state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN7]The Delaware Supreme Court has interpreted Del. Code Ann. tit. 10, § 3104(c)(1) as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. Section 3104(c)(4) is a general jurisdiction provision that allows a defendant's contacts with a forum state to be unrelated to the cause of action. The Federal Circuit Court of Appeals has found that when a defendant has purposefully shipped the accused product into the forum state through an established distribution channel no more is usually required to establish specific jurisdiction.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*

[HN8]The traditional jurisdictional rules have to be adjusted to account for new factual scenarios created by the Internet. Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum. Beyond this basic nexus, for a finding of specific personal jurisdiction, the Due Process Clause of the Fifth Amendment requires (1) that the defendant have constitutionally sufficient minimum contacts with the forum, and (2) that subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice.

*Trademark Law > Conveyances > Franchises*

*Trademark Law > Infringement Actions > General Overview*

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN9]The United States Court of Appeals for the Third Circuit's test is whether the defendant intentionally and knowingly transacted business with residents of the forum state, and had significant other contacts with the forum besides those generated by its web site.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Personal Jurisdiction*

[HN10]Non-Internet factors that a district court should consider in determining if contacts are sufficient to support an exercise of personal jurisdiction are: business trips to the forum state, telephone and fax communications directed to the forum state, purchase contracts with forum state residents, contracts that apply the law of the forum state, and advertisements in local newspapers. Other relevant evidence that might support the exercise of personal jurisdiction is that the defendant purposely and knowingly conducted business in the forum state by directly targeting its web site to the state.

*Civil Procedure > Jurisdiction > Personal Jurisdiction & In Rem Actions > Constitutional Limits*

[HN11]Due process mandates that the defendant have certain minimum contacts with the forum state to ensure that the lawsuit does not offend traditional notions of fair play and substantial justice. In Burger King v. Rudzewicz, the United States Supreme Court added





the further requirement that the minimum contacts be "purposeful" contacts, noting that even a single act can support jurisdiction so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." Further, the Supreme Court has directed that courts consider: (1) whether the defendant reasonably could have anticipated being haled into the forum state's court, (2) the burden imposed on the defendant by litigating in that forum, and (3) plaintiff's interest in the forum state.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN12]See *28 U.S.C.S. § 1404*(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*

*Evidence > Procedural Considerations > Burdens of Proof*
[HN13]Congress intended through *28 U.S.C.S. § 1404* to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. The burden of establishing the need to transfer rests with the movant to establish that the balance of convenience of the parties and witnesses strongly favors the defendants. Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail. The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "home turf" or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the bur-

ilarly limited to the extent that the files could not be produced in the alternative forum. The public interests include: (1) the enforceability of the judgment, (2) practical considerations that could make the trial easy, expeditious, or inexpensive, (3) the relative administrative difficulty in the two fora resulting from court congestion, (4) the local interest in deciding local controversies at home, (5) the public policies of the fora, and (6) the familiarity of the trial judge with the applicable state law in diversity cases.

**COUNSEL:** Josy W. Ingersoll, Esquire, John W. Shaw, Esquire, and Adam W. Poff, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware. Of Counsel: Neil F. Greenblum, Esquire, Van C. Ernest, Esquire and Jill M. Browning, Esquire of Greenblum & Bernstein, P.L.C., Reston, Virginia.

Mary B. Graham, Esquire and James W. Parrett, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. Of Counsel: John Allcock, Esquire, M. Elizabeth Day, Esquire, William G. Goldman, Esquire and Michael G. Schwartz, Esquire of Gray, Cary Ware & Freidenrich, LLP, Palo Alto, California.

**JUDGES:** Sue L. Robinson, United States District Judge.

**OPINIONBY:** Sue L. Robinson

**OPINION:** MEMORANDUM OPINION

Wilmington, Delaware

**ROBINSON, Chief Judge**

**I. INTRODUCTION**

On October 26, 2003, plaintiff Redcom, Inc. ("Red-

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n1 On November 7, 2003, NetMotion and DSI filed a declaratory action in the Northern District of California mirroring the issues raised in this action. By order and stipulation dated December 10, 2003, the California action was stayed pending resolution of this first-filed action. NetMotion Wireless, Inc. v. Padcom, Inc., 03-cv-04963-MMC, (N.D. Ca. 2003)(D.I. 12). A case management conference is scheduled for June 18, 2004. (Id., D.I. 19)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*3]

## II. BACKGROUND

### A. The parties

Padcom is a Pennsylvania corporation with its principal place of business in Bethlehem, Pennsylvania. Founded in 1989, Padcom is in the business of developing, making, licensing, selling and servicing software and hardware products that enhance connectivity for wireless network uses. (D.I. 1) The patent-in-suit relate to wireless communications and data transfers between remote devises and host systems. (D.I. 10)

NetMotion is a corporation organized under the laws of Washington with a principal place of business in Seattle, Washington. (D.I. 11) NetMotion is in the business of designing, developing and selling mobility software. Mobility software is client/server based software that extends the enterprise network to the mobile environment and allows mobile users on both wide area and local area networks secure access to the enterprise application and information. (D.I. 10) NetMotion's corporate office, research and development facility, and engineering, sales, marketing and manufacturing facilities are all located in Seattle. Of NetMotion's 53 employees, 46 reside in Washington. The other seven employees reside in Ohio, Pennsylvania, Florida, [*4] Georgia, Texas, California and Illinois.

agreement with DSI. (D.I. 11, Ex. A) DSI is a Delaware corporation with its principal place of business in Cherry Hill, New Jersey. (D.I. 13) DSI does not have an office in Delaware. DSI is in the business of providing integrated enterprise applications, databases and network solutions. DSI is a reseller of NetMotion products, however, DSI has never used, manufactured, sold or offered for sale any NetMotion product in Delaware or elsewhere. D.I. 13 P 6) Pursuant to the VAR agreement, NetMotion has agreed to indemnify DSI.

## III. STANDARD OF REVIEW

[HN1]Pursuant to *Rule 12(b)(2) of the Federal Rules of Civil Procedure*, a court [*5] may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court, before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l v. Rudolf Wolff & Co., 484 U.S. 97, 104, 98 L. Ed. 2d 415, 108 S. Ct. 404 (1987).* The principle pronounced above is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

*Rule 4(e)(1) of the Federal Rules of Civil Procedure* [HN2]states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." [HN3]The Delaware long-arm statute, *10 Del. C. § 3104(c)*, has been construed broadly to confer jurisdiction to the maximum extent possible under the due [*6] process clause. n2 *LaNuova D & B S.p.A. v. Bowe Co. Inc., 513 A.2d 764, 768 (Del. 1986).*

- - - - - - - - - - - - - - Footnotes - - - - - - - - -

n2 [HN4]According to the Federal Circuit, when the question before the court is the

terminations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386 (Fed. Cir. 1998)*. The court acknowledges that the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[*7]

However, since the Delaware Supreme Court has not determined that § *3104(c)* is coextensive with federal due process, the court must determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process. *Intel Corp. v. Silicon Storage Tech., Inc., 20 F. Supp. 2d 690, 694 (D. Del. 1998)*; see generally, *Int'l Shoe Co. v. Washington, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154 (1945)*.

[HN5]Once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred with between the forum state and defendant to support jurisdiction. n3 *Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987)*. To meet this burden, the plaintiff must demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state. In contrast, general ju-

who, in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;
(2) Contracts to supply services or things in this State;
(3) Causes tortious injury in the State by an act or omission in this State;
(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the [*9] State;
(5) Has an interest in, uses or possesses real property in the State; or
(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

*10 Del. C. § 3104(c)*. The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-57 (Del. Super. 1997)*.

IV. DISCUSSION

NetMotion argues that its contacts with Delaware are too attenuated to establish either specific or general jurisdiction under Delaware's long-arm statute. (D.I. 10)

Padcom asserts that NetMotion is subject to jurisdiction under three sections of the Delaware long-arm statute: § *3104(c)(1), (c)(4) and (c)(3)*. Padcom ar-

company in Delaware to download a free trial version of NetMotion's software. NetMotion is aware of one trial download of its software from an entity in Delaware - the Wilmington Police Department. This download was not the result of any targeted or direct marketing on the part of NetMotion. Instead, the Wilmington Police Department was directed to NetMotion's web site through an offer [*11] that Hewlett-Packard included in the purchase of certain models of their iPAQ products. In particular, Hewlett-Packard included marketing information on a number of third party products on the installation CD for the iPAC. NetMotion was one of the wireless companies that Hewlett-Packard chose to include product information about, with a link to NetMotion's web site for a free trial version of the software. At no time prior to or after this download has any employee contacted the Wilmington Police Department. NetMotion's advertising strategy is national in nature. It is not directed to any particular region, state or company. On occasion, NetMotion has utilized the services of a third party telemarketing organization to obtain information regarding potential customers. Prospective customers in Delaware may have been contacted by this third party organization.(D.I. 12) He states further that NetMotion has never used, sold, manufactured or offered for sale an accused product in Delaware. In his reply declaration, however, Colliton does acknowledge that by consumers located anywhere. There is no evidence of any restrictions on location of the download. NetMotion likewise placed its products into the stream of commerce by allowing Hewlett-Packard to include marketing information about NetMotion with a link to a free trial version of its software and a link NetMotion couches the relationship with Hewlett-Packward as one-sided, i.e., "Hewlett-Packward chose to include product information", the court interprets this as a mutually beneficial agreement.

The Third Circuit Court of Appeals recently explored the contacts necessary for a court to have specific jurisdiction over a defendant based on the operation of a web site. *Toys "R" Us, Inc., v. Step Two, S.A., 318 F.3d 446 (3d Cir. 2003)*. In so doing, the Court acknowledged [HN8]the traditional jurisdictional rules have to be adjusted to account for new factual scenarios created by the Internet.

Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the "plaintiff's cause of action is related to or arises out [*14] of the defendant's contacts with the forum." Beyond this basic nexus, for a finding of specific personal jurisdiction, the *Due Process Clause of the Fifth Amendment* requires (1) that the "defendant have constitutionally sufficient minimum contacts with the forum," and (2)

Spanish pesetas and Euros and goods ordered from the site could only be shipped within Spain. The electronic newsletter could be received by anyone with the only requirement being name and email address. In reversing and remanding to the district court on the issue of jurisdictional discovery, n4 the Third Circuit recognized that the record was too limited to provide an "occasion to spell out the exact mix of Internet and non-Internet contacts required to support an exercise of personal jurisdiction [,instead,] that determination should be made on a case-by-case basis by assessing the 'nature and quality of the contacts.'" *Id. at 453*; (quoting [*16] *Zippo, 952 F. Supp. at 1127*). [HN10]Non-Internet factors that a district court should consider are: business trips to the forum state; telephone and fax communications directed to the forum state; purchase contracts with forum state residents; contracts that apply the law of the forum state; and advertisements in local newspapers. *Toys "R" Us, 318 F.3d at 453-454*. Other relevant evidence that might support the exercise of personal jurisdiction is that the defendant purposely and knowingly conducted business in the forum state by directly targeting its web site to the state. *Id. at 454*.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 The district court denied plaintiff the opportunity to conduct jurisdictional discovery to address the defendant's motion attacking jurisdiction.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

In light of this authority, the court finds that NetMotion knowingly conducted business with Delaware residents. Discovery has revealed that the Wilmington Police Department at least tried to use the free trial download of NetMotion's mobility [*17] software. (D.I. 24, Ex. G) The emails between the Wilmington Police Department reflect correspondence directed to correct problems associated with the use of the trial program in order to persuade the user to purchase the alleged infringing product. (Id.)

Using a third party telemarketer, NetMotion contacted Delaware businesses to solicit business and purchases. NetMotion selected seven Delaware entities n5 for contact by a third party telemarketer in the summer of 2003. (D.I. 24, Ex. A, pgs. 61-64) Additionally, NetMotion specifically targeted Delaware health care facilities. n6 NetMotion also mailed promotional materials to a targeted market of public safety organizations. n7 The documents were mailed to provide information about the products to encourage purchase. (D.I. 24, Ex. A, pgs. 44-45) If NetMotion did not intend to have Delaware residents as clients, it could have specifically excluded them from tele-marketers and their direct calling list. The fact that the marketing program did not generate sales belie the fact that attempts were made in Delaware, with knowledge and purpose, to do business.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n5 The entities were: Dover Police Department, Industrial Affairs Division, Laurel Volunteer Fire Department, New Castle County Police Department, Newark Police-Traffic Division, Delaware State Police, Wilmington Police Department. (D.I. 24, Ex. A p. 61, Ex. K)

[*18]

n6 Alfred I. Dupont Hospital, Bayhealth Medical Center at Kent, Beebe Medical Center, Christiana Hospital, Delaware Hospital-Chronically Ill, Delaware Psychiatric Center, Milford Memorial Hospital, Nanticoke Memorial Hospital, Riverside Health Care Center, Saint Francis Hospital, Stockley Center, and the Wilmington VA Medical Center. (D.I. 24, Ex. A, p. 89, Ex. M)

n7 These agencies were identified as: Delaware State Police (Dover), Kent County Emergency Communications, Sussex County Emergency Medical Services, New Castle County Police Department, Wilmington Public Safety, Wilmington Police Department, Delaware State Police (Odessa), Delaware State Police (Wilmington), Newark Police Department. (D.I. 24, Ex. A)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

Having found jurisdiction proper under the Delaware long-arm statute, the analysis becomes whether the exercise of jurisdiction comports with the *Due Process Clause of the United States Constitution*. See *Int'l Shoe Co. v. Washington, 326 U.S. at 310*. [HN11]Due process mandates that the defendant have certain minimum contacts with the forum state to ensure that the lawsuit [*19] does not offend "traditional notions of fair play and substantial justice." *Id. at 316*. In *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*, the Supreme Court added the further requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates

Page 86





a "substantial connection" with the forum, in contrast to an "attenuated affiliation." *Id. at 475 n.18*. Further, the Court has directed that courts consider: 1) whether the defendant reasonably could have anticipated being haled into the forum state's court, *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-293, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980)*; 2) the burden imposed on the defendant by litigating in that forum, *Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987)*; and 3) plaintiff's interest in the forum state, id.; see also, *Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d at 437* (Third Circuit held that plaintiff must show significantly more than mere minimum contacts to establish [*20] general jurisdiction).

As discussed above, the record reflects NetMotion's web site and the marketing promotion by Hewlett-Packward enabled users to download the accused products anywhere, but importantly in Delaware. By targeting businesses in the state, NetMotion knew that its conduct and connections with Delaware were such that they reasonably should have anticipated being brought to this forum.

## V. MOTION TO TRANSFER

DSI has moved to transfer venue from this district to the United States District Court for the Northern District of California pursuant to *28 U.S.C. § 1404(a)*, n8 arguing that the declaratory judgment action there provides a more convenient forum for the litigation. Padcom counters that a plaintiff's choice of forum is the paramount consideration in determining a transfer request. *Wesley-Jessen Corp. v. Pilkington Visioncare Inc., 157 F.R.D. 215 (D. Del. 1993)*. NetMotion n9 argues that the court should transfer the case to the United States District Court for the District of Washington.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - -

   n8 Title 28, Section § *1404(a)* provides:[HN12]For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

[*21]

   n9 NetMotion filed a third action in the Superior Court of the State of Washington, King County, alleging that Padcom has tortiously interfered with NetMotion's contracts and business expectancies. NetMotion Wireless Inc. v. Padcom, Inc., 04-cv-622-JCC (W.D. Wa 2004). Padcom removed the matter to the United States District Court for the Western District of Washington on March 24, 2004. (Id., D.I. 1) On April 27, 2004, Padcom moved to transfer to the case to the United States District Court for the District of Delaware or to stay pending resolution of the instant case. (Id., D.I. 8) NetMotion has filed opposition to the transfer motion, to which Padcom has filed a reply. (Id., D.I. 11, 12) On May 4, 2004, Padcom, in the instant action, moved to enjoin prosecution of the subsequently filed action in the Western District of Washington and has requested that the court schedule a *Rule 16* Conference. (D.I. 33)

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

[HN13]Congress intended through *§ 1404* to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience [*22] and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29, 101 L. Ed. 2d 22, 108 S. Ct. 2239 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 208 (D. Del. 1998)*. The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)*, cert. denied, *401 U.S. 910, 27 L. Ed. 2d 808, 91 S. Ct. 871 (1971)*). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F. Supp. 2d 565, 567 (D. Del. 2001); Shutte, 431 F.2d at 25*.

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R Bard, Inc. v. Guidant Corp., 997 F. Supp. 556, 562 (D. Del. 1998); Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc., 2001 U.S. Dist. LEXIS 20803, Civ. No. 01-199-SLR, 2001 WL 1617186 (D. Del. 2001)*. [*23] Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its "'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Ac-*





quisition Fund II, L.P., 816 F. Supp. 973, 976 (D. Del. 1993).

[HN14]The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*. Although emphasizing that "there is no definitive formula or list of factors to consider," id., the court has identified potential factors it characterized as either private or public interest. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only [*24] to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." Id. (citations omitted).

The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." Id. (citations omitted).

The court is unpersuaded that the private or public interests warrant a transfer. Both plaintiff and defendant DSI are located within close proximity to this court, in Pennsylvania and New Jersey, respectively. Although defendant NetMotion is located in Seattle, Washington, it is a company trying to conduct business on a nationwide basis, including Delaware. Therefore, consistent with the deference afforded a plaintiff's choice of forum as well as the record established [*25] on the jurisdictional discovery issue, the court is satisfied that this litigation can be maintained without undue burden to the parties.

## VI. CONCLUSION

For the reasons stated, defendants' motion to dismiss and to transfer (D.I. 9) is denied. An order consistent with this memorandum opinion shall issue.

## ORDER

At Wilmington this 24th day of May, 2004, consistent with the memorandum opinion issued concomitantly,

IT IS ORDERED that:

1. Defendants' motion to dismiss and to transfer is denied. (D.I. 9)

2. Defendants shall file their Answer on or before June 11, 2004.

Sue L. Robinson

United States District Judge

  

Page 88