# TAB 10

PRAXAIR, INC. and PRAXAIR TECHNOLOGY, INC., Plaintiffs, v. ATMI, INC. and ADVANCED TECHNOLOGY MATERIALS, INC., Defendants.

Civ. No. 03-1158-SLR

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2004 U.S. Dist. LEXIS 7076

April 20, 2004, Decided

**DISPOSITION:** [*1] Defendants' motion to transfer denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs filed the instant action asserting that defendants infringed their patents. Defendants denied the claims of infringement. Both parties were Delaware corporations and were headquartered in Danbury, Connecticut. Defendants moved the instant court to transfer the matter pursuant to 28 U.S.C.S. § 1404(a) to the United States District Court for the Southern District of New York.

**OVERVIEW:** Defendants had to prove that litigating in Delaware posed a "unique or unusual burden" on their operations for a Delaware court to transfer venue. By availing themselves of the advantages of Delaware's corporate laws, defendants had voluntarily exposed themselves to the risk of suit in Delaware. Consequently, as a matter of law and contrary to defendants' assertions, Delaware was both parties' "home turf." The court was wholly unimpressed by defendants' contentions that Delaware was an inconvenient forum. Defendants' contention that proximity to defendants' headquarters was a factor for the court to consider was disingenuous at best. While the Southern District of New York was closer to the parties' respective headquarters in Danbury, Connecticut, the court took notice of the fact that there were four district courthouses in Connecticut, all of which were geographically closer to Danbury than the courthouse in Manhattan. If commuting time for the parties' employees was an issue, defendants' own choice of forum was not reflective of that concern. The court was also unpersuaded that Wilmington was a difficult place for defendants to litigate in.

**OUTCOME:** The motion to transfer was denied.

**CORE TERMS:** patent, venue, convenience, motion to transfer, infringement, courthouse, failed to demonstrate, defendants filed, choice of forum, public interest, present action, better served, conveniently, collectively, unavailable, litigating, infringing, litigate, fora, headquarters, unpersuaded, airport, travel, closer

### LexisNexis(TM) Headnotes

*Civil Procedure > Venue > Forum Non Conveniens*

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1]See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2]A plaintiff's choice of forum is to be accorded substantial weight and courts should only transfer venue if the defendant is truly regional in character.

*Civil Procedure > Venue > Change of Venue in Federal Courts*

*Evidence > Procedural Considerations > Burdens of Proof*
[HN3]A defendant has the burden of establishing that the balance of convenience of the parties and witnesses strongly favors transfer.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN4]A motion to transfer venue may be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN5]In reviewing a motion to transfer venue, courts have not limited their consideration to the three enumerated factors in 28 U.S.C.S. § 1404 (a). Rather, courts will consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN6]In Jumara, the Third Circuit provided a list of factors to assist district courts in determining whether, on balance, the litigation would more conveniently proceed and the interests of justice would be better served by a transfer to a different forum. These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as manifested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and finan-

Page 172





2004 U.S. Dist. LEXIS 7076

cial condition; (5) the convenience of the witnesses, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of the books and records. Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN7]In considering the private interest factors under Jumara, courts adhere to the notion that transfer is not to be liberally granted and plaintiffs' choice of forum is a paramount consideration.

**COUNSEL:** For PRAXAIR INC., PREXAIRPRAXAIR TECHNOLOGY INC., plaintiffs: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

For ATMI INC., ADVANCED TECHNOLOGY MATERIALS INC., defendants: Robert H. Richards, III, Richards, Layton & Finger, Wilmington, DE.

For ATMI INC., ADVANCED TECHNOLOGY MATERIALS INC., counter-claimants: Robert H. Richards, III, Richards, Layton & Finger, Wilmington, DE.

For PRAXAIR INC., PRAXAIR TECHNOLOGY INC., counter-defendants: Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

**JUDGES:** Sue L. Robinson, United States District Court.

**OPINIONBY:** Sue L. Robinson

**OPINION: MEMORANDUM ORDER**

At Wilmington, this 20th day of April, 2004, having reviewed the motion of defendants to transfer (D.I. 12), and the memoranda submitted therewith;

IT IS ORDERED that the motion to transfer (D.I. 12) is **denied** for the reasons that follow:

1. On January 9, 2004, plaintiffs filed the present action asserting that defendants infringe U.S. Patent Nos. *5,937,895*, *6,007,609*, and *6,045,115* (collectively the "Praxair patents"). (D.I. 1) On March 8, 2004, defendants filed their answer, denying plaintiffs' [*2] claims of infringement and counterclaiming for declaratory judgment of invalidity and noninfringement of the Praxair patents. (D.I. 10) A scheduling conference was held on April 8, 2004.

2. Plaintiffs and defendants are Delaware corporations and all parties are headquartered in Danbury, Connecticut. (D.I. 1) The Praxair patents relate to a fluid storage and gas dispensing system for fabricating semiconductor devices. Prior to plaintiffs filing the present action, defendants brought suit in the Southern District of New York on defendants' patents, U.S. Patent Nos. *6,101,816* and *6,343,476* BI (collectively the "ATMI patents"). That suit, filed on July 11, 2003, has subsequently been amended to include state law claims relating to false advertising and unfair competition. Discovery began in the New York litigation in February 2004.

3. Defendants move the court to transfer this matter pursuant to *28 U.S.C. § 1404(a)* to the United States District Court for the Southern District of New York. *Section 1404(a)* provides: "[HN1]For the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district [*3] or division where it might have been brought." *28 U.S.C. § 1404 (a) (2003)*. [HN2]A plaintiff's choice of forum is to be accorded substantial weight and courts should only transfer venue if the defendant is truly regional in character. See *Bergman v. Brainin, 512 F. Supp. 972, 973 (D. Del. 1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970))*. [HN3]A defendant has the burden of establishing that "the balance of convenience of the parties and witnesses strongly favors" transfer. *Id.* Accordingly, "defendants brought into suit in Delaware must prove that litigating in Delaware would pose a 'unique or unusual burden' on their operations" for a Delaware court to transfer venue. See *Wesley-Jessen Corp. V. Pilkington Visioncare, Inc., 157 F.R.D. 215 (D. Del. 1993)*. [HN4]A motion to transfer venue may also be granted if there is a related case which has been first filed or otherwise is the more appropriate vehicle to litigate the issues between the parties. See *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc., 1999 U.S. Dist. LEXIS 12455, *18 (D. Del. 1999)*.

4. [HN5]In reviewing [*4] a motion to transfer venue, courts have not limited their consideration to the three enumerated factors in *§ 1404 (a)*. Rather, courts will consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)* (internal quotations and citations omitted). [HN6]In Jumara, the Third Circuit provided a list of factors to assist district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice [would] be better served by a transfer to a different forum." *Id.* These factors entail six private and five public interests. Private interests include: (1) the plaintiff's forum preference as mani-





fested by the plaintiff's original forum choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses -- but only to the extent that the witnesses may actually be unavailable for trial [*5] in one of the fora; and (6) the location of the books and records. *Id.* Public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; and (5) the familiarity of the trial judge with the applicable state law in diversity cases. *Id.*

5. [HN7]In considering the private interest factors under *Jumara,* the court, consistent with Third Circuit precedent, adheres to the notion that transfer is not to be liberally granted and plaintiffs' choice of forum is a paramount consideration. Venue is proper in Delaware as this is the situs of incorporation for all the parties. By availing themselves of the advantages of Delaware's corporate laws, defendants have voluntarily exposed themselves to the risk of suit in Delaware. Consequently, as a matter of law and contrary to defendants' assertions, Delaware is both parties' "home turf." (D.I. 13 at 2, 22)

6. The court is wholly unimpressed by defendants' contentions that Delaware is an inconvenient [*6] forum for the parties. First, defendants' contention that proximity to defendants' headquarters should be a factor for this court to consider is disingenuous at best. While the Southern District of New York is certainly closer to the parties' respective headquarters in Danbury, Connecticut, the court takes notice of the fact that there are four district courthouses in Connecticut, all of which are geographically closer to Danbury than the courthouse in Manhattan. If commuting time to court for the parties's employees were an issue, defendants' own choice of forum is not reflective of that concern. Second, the court is unpersuaded by defendants' myopic assertions that Wilmington would be a difficult place for defendants to litigate their case. The fact that New York City has three airports and a subway system are not compelling factors in the consideration of a motion to transfer venue. (D.I. 13 at 7-8, 22; D.I. 24 at 14-15,) Third, defendants' contentions regarding convenience of the witnesses is similarly unpersuasive. n1 The convenience of the witnesses is only relevant to the extent that they might be unavailable for trial, something which defendants have not shown to be the case [*7] here.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 Defendants' assert that for certain witnesses located in Florida and Texas, "travel to Wilmington would be less convenient than to New York City, as they would first have to fly into Philadelphia." (D.I. 13 at 22) Apparently, defendants' New York counsel is unfamiliar with the Philadelphia International Airport. Besides offering full international jet travel and operating as a hub for several large airlines, it is located a mere 23 miles from Wilmington. Unlike in Manhattan, travel time to the airport may be done in under a half hour from downtown Wilmington. The court also notes that the courthouse is located a few blocks from the Amtrak station. While not as glamorous as Manhattan, Wilmington also offers a variety of reasonably priced hotels within short walking distance of the court.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

7. In considering the public interest factors under *Jumara,* the court is similarly unpersuaded by defendants' arguments. First, defendants suggest that transfer would reduce duplicative litigation; this assertion [*8] does not bear scrutiny. While the patents may relate to the same technological field, they nonetheless involve different patents, claims, inventors, prosecution histories and a different set of alleged infringing activities. As a consequence, a finding of validity or infringement in the New York litigation is not relevant to the case before this court. Moreover, the fact that defendants filed their complaint related to the ATMI patents first has no bearing on the propriety of plaintiffs' decision to bring suit for infringement of the Praxair patents in this court.

8. Finally, the court does not find that New York state has a special interest in the outcome of the litigation. Patent cases are explicitly federal issues and the rights determined thereunder are national in scope. While the location of infringing activity provides a basis for venue under § *1400,* the residency of defendants is no less compelling. *28 U.S.C.* § *1400.* Consequently, defendants have failed to demonstrate that any of the public interest factors under *Jumara* weigh strongly toward transfer.

9. Therefore, the court concludes that defendants have failed to demonstrate that litigating [*9] the present case in Delaware presents a unique or undue burden and their motion is denied. (D.I 12)

Sue L. Robinson




# TAB 11

RELIANCE INSURANCE COMPANY, Plaintiff, v. PASCHEN CONTRACTORS, INC., Defendant

Civil Action No. 89-408 - CMW

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

1990 U.S. Dist. LEXIS 858

January 25, 1990, Decided

**CORE TERMS:** venture, travel, convenience, choice of forum, turf, motion to transfer, venue, convenient, collateral, assigned, present litigation, federal district, failed to meet, civil action, litigate, weighs, urges, tip, principal place of business, personal jurisdiction, joint venture, voluminous, trip

**COUNSEL:** [*1]

Richmond L. Williams, Esquire of Duane, Morris & Heckscher, Wilmington, Delaware. OF COUNSEL: Andrew J. Ruck, Esquire of Duane, Morris & Heckscher, Philadelphia, Pennsylvania. Attorneys for Plaintiff.

Donald E. Reid, Esquire of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware. OF COUNSEL: Richard S. Reizen, Esquire of Joyce and Kubasiak, Chicago, Illinois. Attorneys for Defendant.

**OPINIONBY:** WRIGHT

**OPINION:** OPINION

CALEB M. WRIGHT, SENIOR UNITED STATES DISTRICT JUDGE

Plaintiff Reliance Insurance Company ("Reliance"), a Pennsylvania Corporation having its principal place of business at Philadelphia, Pennsylvania, brought suit against defendant Paschen Contractors, Inc. ("Paschen") in this Court on August 2, 1989. Paschen is a Delaware corporation having its principal place of business at Chicago, Illinois. Reliance sought recovery from Paschen of the sum of $ 1,392,848 together with prejudgment interest, attorneys' fees, and costs of the suit. This action derives from a controversy over the monies Paschen allegedly owes Reliance with respect to Reliance's interest in proceeds from a joint venture between Paschen and John B. Pike & Son, Inc. ("Pike").

On September 6, 1989, Paschen filed a motion [*2] to transfer this action to the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to *28 U.S.C. § 1404*(a). This motion is now before the Court.

This Court has jurisdiction pursuant to *28 U.S.C. § 1332*(a). Venue is proper in this Court under *28 U.S.C. § 1391*(a). n1

> n1 Section 1391(a) provides the following:
> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.
> *28 U.S.C. § 1391*(a).
> As is obvious from Paschen's motion, this case also could have been brought in the United States District Court for the Northern District of Illinois pursuant to § 1391(c).

For the reasons stated herein, the Court denies Paschen's motion to transfer.

I. BACKGROUND

Based upon the allegations in the complaint and those allegations admitted in defendant's answer, it appears that the present controversy developed from the following circumstances.

On about December 23, 1980, Pike executed a Continuing Agreement of Indemnity in favor of Reliance by which Pike assigned to Reliance [*3] all of Pike's right, title, and interest in all monies due or to become due on any of Pike's construction projects. Paschen and Pike later entered into a joint venture agreement ("Venture I") on approximately August 30, 1982. Paschen and Pike formed another joint venture ("Venture II") on about April 5, 1984. These two joint ventures were formed to function as a general contractor on certain construction projects.

On about October 29, 1985, Reliance executed on behalf of Pike to Chase Lincoln First Bank, N.A. ("Chase Bank"), an unconditional guarantee bond in the amount of $ 4,000,000, by which Chase Bank was guaranteed the repayment of Pike's indebtedness to Chase Bank as evidenced by an Operating Loan Note to Chase Bank from Pike in the amount of $ 4,000,000, dated October 29, 1985. Pike thereafter assigned to Chase Bank various assets as collateral for the loan. Part of Pike's collateral was an assignment by Pike of all its right, title, and interest in the proceeds from Ventures I and II. The parties dispute whether Paschen subsequently consented to the assignments to Reliance and Chase Bank by Pike of Pike's interest in the proceeds from Ventures I and II. The parties also dispute [*4] whether Paschen agreed to distribute, to Reliance, Pike's share

Page 58

  

of the capital of and/or Pike's share of the profits from Ventures I and II.

On or about July 1, 1988, Reliance paid to Chase Bank, pursuant to the terms of the guarantee agreement, $ 2,065,500 upon Chase Bank's declaring Pike to be in default of the loan obligation. As a result, Reliance became subrogated to the rights of Chase Bank with respect to the collateral held by Chase Bank, including the assignment of rights to the proceeds from Ventures I and II. Paschen currently possesses the sum of $ 1,392,848. Reliance contends, and Paschens disputes, that this sum represents Pike's share of the proceeds from Ventures I and II which Pike had assigned to Reliance.

Reliance, by letter dated March 10, 1989, made demand upon Paschen to remit the sum of $ 1,392,848 to Reliance. Reliance reiterated this demand by letter dated April 12, 1989. Paschen then wrote Reliance a letter dated April 20, 1989 regarding monies owed. Reliance responded to this letter with another dated May 3, 1989. In this letter, Reliance informed Paschen that Pike's audit, as reflected in financial reports prepared by Peat, Marwick, Main & Co., indicated [*5] that the amount that Pike was entitled from Ventures I and II (and to which Reliance was entitled by virtue of assignment) was $ 1,392,848.

Paschen has not paid any amount to Reliance, and thus Reliance commenced this suit on August 2, 1989.

II. DISCUSSION

The statutory provision governing transfer of venue from one federal district court to another is *28 U.S.C. § 1404*(a), which recites the following:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
*28 U.S.C. § 1404*(a).

Under section 1404(a), the movant (defendant) must demonstrate that a balancing of proper interests weighs in favor of the transfer. *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)*, cert. denied, *401 U.S. 910 (1971)*. Furthermore, unless the balance of convenience tips strongly in favor of the defendant, the plaintiff's choice of forum should prevail. Id. See also *Erbamont Inc. v. Cetus Corp., 720 F. Supp. 387, 396 (D.Del. 1989)* (noting deference given plaintiff's choice of forum requires denial of transfer request when relevant factors evenly balanced [*6] or only slightly favor transfer); *Magee v. Essex-Tec Corp., 704 F. Supp. 543, 547 (D.Del. 1988)* (plaintiff's choice of forum is paramount consideration and should not lightly be disturbed); *Ballard Medical Products v. Concord Laboratories, 700 F. Supp. 796, 800 (D.Del. 1988)* (defendant must show that factors strongly justify transfer to overcome plaintiff's choice of forum).

The Court notes as an additional point that the District of Delaware is plaintiff's "home turf" because it is the forum closest to the plaintiff's home (Pennsylvania) in which plaintiff could effect personal service over the defendant. n2 *Kirschner Brothers Oil v. Pannill, 697 F. Supp. 804, 806 (D.Del. 1988)*. See also *Mayer v. Development Corporation of America, 396 F. Supp. 917, 932 n.26 (D.Del. 1975)*. Thus, because plaintiff has chosen to bring this action on its home turf, defendant's burden to justify a transfer of venue is not diminished in any way. n3 See *Magee, 704 F. Supp. at 547* (defendant's burden is less difficult if plaintiff is not litigating on its home turf); *Ballard, 700 F. Supp. at 800* (burden on defendant to justify transfer is reduced when suit is not brought on plaintiff's [*7] home turf).

> n2 There is nothing in the record to indicate that plaintiff could obtain personal jurisdiction over defendant in Pennsylvania. This Court, however, has personal jurisdiction over defendant by virtue of defendant's incorporation under the laws of the State of Delaware.
>
> n3 Defendant urges that this standard is inapplicable to the present case because Delaware has no connection with the present litigation. Reply Brief of Paschen at 5-6 (citing *Burroughs Welcome Co. v. Giant Food, Inc., 392 F.Supp. 761, 763 (D.Del. 1975)*). The court in Burroughs Welcome, however, specifically commented that "it is difficult to see why it [plaintiff's choice of forum] should not also be given weight when the plaintiff lives in a neighboring state." The Court, in any event, will follow the definition of home turf as articulated in *Kirschner, 697 F.Supp. at 806*. Thus, plaintiff indeed has chosen to litigate on its home turf and defendant's burden is not reduced.

This district court traditionally has concentrated on the following three factors in deciding a motion to transfer venue:

1. The convenience of the parties;

2. The convenience of the witnesses; and

3. The interests [*8] of justice.





See, e.g., *Magee*, 704 F. Supp. at 547-50; *Ballard*, 700 F. Supp. at 800-802. An analysis of these pertinent factors mandates the conclusion that defendant has failed to meet its burden of proof. Consequently, transfer to the federal district court in Illinois is unwarranted.

A. Convenience of the Parties

Paschen initially urges that Reliance also has an office in Chicago from which it could conduct the present litigation so as to lessen any inconvenience it (Reliance) may suffer from a transfer of venue. This assertion alone, however, is not dispositive. A "court will not grant a transfer simply because the transferee court is more convenient for defendants." *Ballard*, 700 F. Supp. at 801.

Paschen's primary contention concerning convenience is that the relevant documents are located in the Chicago area, and thus it would be more convenient to litigate there. The Court agrees that the location of important documents is a proper factor to consider in a motion to transfer. n4 The Court, however, cannot conclude that this factor strongly weighs in favor of transfer. Defendant has not indicated that the relevant documents are extremely voluminous and that [*9] it would be an extremely expensive and onerous undertaking to have them present in the District of Delaware. n5

> n4 See *Ballard*, 700 F.Supp. at 801.
>
> n5 Reliance, in fact, has indicated that the number of relevant documents is not voluminous and ease of access to the documents is no obstacle. See Reliance Answering Brief at 11.

As to the relative expenses for witnesses to travel to testify at a possible trial or other proceeding, this factor is inconclusive. Paschen's witnesses would have to travel to Delaware from the Chicago area, whereas Reliance's witnesses would have to travel from New York and Pennsylvania to Delaware. Paschen has not shown that overall travel expenses would be significantly reduced by transfer of this case to Illinois, or that it would be a great financial hardship to pay for its witnesses to travel from Chicago to Delaware.

B. The Convenience of the Witnesses

Reliance has indicated that a key witness, a Mr. Stephen Shuckra of Webster, New York, former Chief Financial Office of Pike, will come voluntarily to Delaware to testify but will not travel to Chicago because of his physical health. This matter is largely irrelevant. The Court is unable [*10] to comprehend how his health precludes a trip to Chicago but would permit one to Delaware. The time spent on a plane trip would be substantially the same to both destinations from his location in New York; Reliance has not submitted any evidence that Mr. Shuckra cannot fly for health reasons. This witnesses, therefore, would not be inconvenienced by either forum.

All witnesses that Reliance has indicated it will call to testify live on the East Coast and trial in Delaware would likely be more convenient for them. Paschen notes that certain of its witnesses would have to travel to Delaware from Chicago. Paschen has stated that it will also call witnesses who are presently employees of Pike in New York. The Court can only conclude that no greater overall convenience to the witnesses would result from proceeding in Illinois.

Paschen further contends that litigation in Delaware would be particularly burdensome because John J. Paschen, a party witness and vice president of estimating of Paschen, and Robert L. O'Neil, president of Paschen, would have to travel to Delaware to testify. Based on affidavits submitted by these two men, Paschen argues that its daily operations will suffer from [*11] their absence. These affidavits and there allegations, however, are not sufficient to tip the balance in favor of transfer.

C. The Interests of Justice

The Court does not find any factors in the record before it which would justify transfer "in the interests of justice." The Court notes that there are no known non-party witnesses that the Illinois Court could obtain compulsory process over. n6 The conservation of judicial resources would not be furthered by transfer of this action. n7

> n6 See *Magee*, 704 F.Supp. at 550.
>
> n7 See *id.* at 549.

III. CONCLUSION

The Court concludes that defendant has simply failed to meet its burden of demonstrating that the relevant considerations favor transfer of this action. Accordingly, the Court is unwilling to disturb plaintiff's choice of forum to conduct this litigation. Defendant's motion to transfer, therefore, is denied.

An order shall issue in accordance with this opinion.



