# TAB 12

STRATOS LIGHTWAVE, INC., Plaintiff/Counterclaim Defendant, v. E2O COMMUNICATIONS, INC., Defendant/Counterclaim Plaintiff.

Civil Action No. 01-309-JJF

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 5653

March 26, 2002, Decided
March 26, 2002, Filed

**DISPOSITION:** [*1] Motion to transfer venue to Central District Of California denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff patent owner filed an action against defendant alleged patent infringer claiming infringement of several United States patents. The alleged infringer moved to transfer venue.

**OVERVIEW:** After a consideration of the relevant private interests, the court concluded that the balance of the factors did not weigh strongly in favor of transfer. The alleged infringer incorporated in Delaware and that was a rational and legitimate reason for choosing to sue the alleged infringer in Delaware. Therefore, the patent owner's forum preference, as well as the alleged infringer's Delaware incorporation, weighed in favor of maintaining the action in Delaware. None of the public interests weighed in favor of transfer. Patent rights are not local or state matters, and therefore, cannot give rise to a local controversy, or implicate local public policy. Similarly, the familiarity of the trial judge with the application of state law was not applicable because it was a patent infringement action.

**OUTCOME:** The alleged infringer's motion to transfer venue was denied.

**CORE TERMS:** stratos, weigh, choice of forum, convenience, motion to transfer, substantial deference, inconvenient forum, subpoena power, faster, turf, legitimate reason, civil action, incorporation, disturbed, choosing, lightly, local interest, headquarters, familiarity, non-party, litigate, unduly

### LexisNexis(TM) Headnotes

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1]Transfer of a civil action is governed by 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2]See 28 U.S.C.S. § 1404(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN3]When reviewing a motion to transfer under 28 U.S.C.S. § 1404(a) district courts must consider, among other things, private and public interests. When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. The burden is upon the movant to establish that the balance of the interests strongly weigh in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN4]The private interests considered in a 28 U.S.C.S. § 1404 motion are: (1) a plaintiff's choice of forum; (2) a defendant's preferred forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties due to their relative physical and financial conditions; (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum; and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN5]The public interests considered in a 28 U.S.C.S. § 1404 motion are: (1) the enforceability of the judgment; (2) practical considerations regarding the ease, speed, or expense of trial; (3) the administrative difficulty due to court congestion; (4) the local interest in deciding local controversies in the home forum; (5) the public policies of the two fora; and (6) the trial judge's familiarity with the applicable state law in diversity cases.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN6]The transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred. However, it is not appropriate to disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum.

  

*Patent Law > Jurisdiction & Review > Personal Jurisdiction & Venue > General Overview*

[HN7]Patent rights are not local or state matters, and therefore, cannot give rise to a local controversy, or implicate local public policy.

**COUNSEL:** Attorneys for the plaintiff, Stratos Lightwave, Inc.: Joseph N. Hosteny, III, Arthur A. Gasey, Paul C. Gibbons, Niro, Scavone, Haller & Niro, Chicago, Illinois. Donald F. Parsons, Jr., Morris, Nichols, Arsht & Tunnell, Wilmington, DE.

Attorneys for the defendant, E2O Communications, Inc.: David P. Enziminger, Brett J. Williamson, David E. Lederman, O'Melveny & Meyers LLP, Los Angeles, California. William J. Wade, Richards, Layton & Finger, Wilmington, Delaware.

**JUDGES:** Joseph J. Farnan, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Joseph J. Farnan

**OPINION: MEMORANDUM ORDER**

Presently before the court is a Motion To Transfer Venue To The Central District of California (D.I. 11) filed by Defendant E2O Communications, Inc. ("E2O"). For the reasons discussed, the motion will be denied.

## BACKGROUND

Stratos Lightwave, Inc. ("Stratos") and E2O both manufacture and sell optoelectronic transciever modules which are used in computer networks. (D.I. 8 at 1). Stratos is a Delaware corporation with its headquarters in Chicago, Illinois and facilities in California. (D.I. 17 at 1). E2O is also incorporated [*2] in Delaware, but maintains its headquarters in Calabasas, California. (D.I. 8 at 2). The design and development of E2O's accused products is conducted in California, where the majority of E2O's domestic employees are located. (D.I. 8 at 2). The accused products are manufactured internationally, in Asia. (D.I. 8 at 2).

On May 5, 2001, Stratos filed this action against E2O alleging infringement of U.S. Patent Nos. 5,717,533, 5,734,558, 5,864,468, 5,879,173, Re. 36,820, 6,201,704B1 and 6,320,878BI. (D.I. 1). E2O subsequently filed the instant motion to transfer.

## DISCUSSION

By its motion, E2O contends that Delaware is an inconvenient forum because its corporate offices, where all the relevant documents and knowledgeable fact witnesses are located, are in California. (D.I. 8 at 7). E2O contends that litigation in Delaware would be not only expensive, but disruptive to the corporation. (D.I. 8 at 7). E2O further contends that Delaware is an inconvenient forum for the witnesses, none of whom reside in Delaware, and further that several non-party witnesses exist who would be beyond the Court's subpoena power. (D.I. 8 at 8). Additionally, E2O contends that the Central District of [*3] California is more convenient because the median time to trial is faster. (D.I. 8 at 11). Finally, E2O contends that California, not Delaware, has a local interest in deciding this controversy because the majority of the allegedly infringing activity took place in California. (D.I. 8 at 11). n1

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n1 E2O continuously argues that Stratos' contacts with Delaware are "de minimis, at best;" however, the Court finds this argument to be immaterial in the context of a motion to transfer.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

In opposition, Stratos contends that its choice of forum is entitled to substantial deference. (D.I. 17 at 4). Stratos contends that although Delaware is not its home turf, it chose to sue E2O in Delaware because E2O is incorporated in this state. (D.I. 17 at 5). Stratos further contends that E2O, a successful international company, is capable of financing litigation in Delaware, and transferring this action to California would merely shift the burden of expense to Stratos. (D.I. 17 at 7). By E2O's failure to identify non-party witnesses [*4] beyond subpoena power, Stratos contends that the convenience of the witnesses does not weigh in favor of transfer. (D.I. 17 at 11-10). Stratos further contends that adjudication of this action, pursuant to the Court's Scheduling Order (D.I. 15), will be faster than in California, where a new scheduling order would be put in place. (D.I. 17 at 12).

[HN1]Transfer of a civil action is governed by *28 U.S.C. § 1404*(a) which provides, [HN2]"for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of § 1404(a) is "to prevent the waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)* (internal citations omitted). Because it is undisputed that Stratos could have brought the instant action in the Central District of California, the Court's only task is to determine whether the factors enumerated in § 1404(a) and by the United States Court of Appeals for the Third [*5] Circuit, warrant a transfer.





The Third Circuit has instructed that [HN3]when reviewing a motion to transfer under *28 U.S.C. § 1404*(a) district courts must consider, among other things, private n2 and public n3 interests. See *Jumara v. State Farm Ins. Co., 55 F.3d 873 (3d Cir. 1995)*. When determining whether or not transfer is warranted in the circumstances presented, district courts must balance all of the relevant factors and respect that a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Id. at 883;* see also *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1920)*. The burden is upon the movant to establish that the balance of the interests strongly weighs in favor of transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer. See *Continental Cas. Co. v. American Home Assurance Co., 61 F. Supp. 2d 128, 131 (D. Del. 1999)*.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n2 [HN4]The private interests are:

(1) the plaintiff's choice of forum, (2) the defendant's preferred forum, (3) whether the claim arose elsewhere, (4) the convenience of the parties due to their relative physical and financial conditions, (5) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (5) the location of books and records, to the extent that these books and records could not be produced in a certain forum.

*Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995).*

[*6]

n3 [HN5]The public interests are:(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

Id.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## I. Private Interests

After a consideration of the relevant private interests, the Court concludes that the balance of these factors does not weigh strongly in favor of transfer. As stated previously, a plaintiff's choice of forum is entitled to substantial deference and should not be lightly disturbed. *Shutte, 431 F.2d at 25*. In the instant case, stratos' preference for Delaware is not given as much deference because it, admittedly, has not chosen its home turf. See *Continental, 61 F. Supp. 2d at 131* (stating that [HN6]"the transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen [*7] its home turf or a forum where the alleged wrongful activity occurred"). However, it is not appropriate to disregard a plaintiff's choice of forum where it had a rational and legitimate reason for choosing the forum. See *Joint Stock Society v. Heublein, Inc., 936 F.Supp 177, 187 (D. Del. 1996)*. And the fact that E2O has incorporated in Delaware is a rational and legitimate reason for choosing to sue E2O in Delaware. In fact, E2O, having received the benefits of Delaware incorporation, should not now complain that another corporation has chosen to sue it here. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc., 821 F. Supp. 962, 965 (D. Del. 1993)*. Therefore, Stratos' forum preference, as well as E2O's Delaware incorporation, weigh in favor of maintaining this action in Delaware.

The Court cannot conclude that the balance of the remaining factors strongly weigh in favor of transfer. No witness, reluctant to testify, beyond the subpoena power of the Court, has been identified. The relevant documents, books, and records can be easily transported to Delaware. The financial burden on Defendants to litigate in Delaware is not unduly harsh. In sum, [*8] the private interests weigh in favor of maintaining this action in Delaware.

## II. Public Interests

In the Court's view, none of the public interests weigh in favor of transfer. [HN7]Patent rights are not local or state matters and therefore cannot give rise to a local controversy, or implicate local public policy. Similarly, because this is a patent infringement action, the familiarity of the trial judge with the application of state law is not applicable. Further, in light of the Scheduling Order already in place, the Court is not persuaded that this case would be adjudicated faster in the Central District of California. Finally, as discussed above, the Court concludes that Delaware is not an unduly inconvenient forum for E2O to litigate this action in. Accordingly, the motion to transfer will be denied. n4





2002 U.S. Dist. LEXIS 5653

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - -

n4 The Court is aware of *Methode Electronics & Stratos Lightwave, Inc. v. Finisar, 205 F.R.D. 552 (N.D.Ca. 2001)* (the "Methode Case"), and its resolution. It is the Court's view that the Methode Case is irrelevant to the instant case, and the presence or absence of that action is not material to the Court's decision to retain jurisdiction over the instant case.

- - - - - - - - - - - - - End Footnotes- - - - - - - - - -

[*9]

NOW THEREFORE IT IS HEREBY ORDERED this 26 day of March 2002 that E2O's Motion To Transfer Venue To The Central District Of California (D.I. 11) is **DENIED**.

Joseph J. Farnan

UNITED STATES DISTRICT JUDGE





TAB 13

UNICREDITO ITALIANO, et al., Plaintiffs, v. JPMORGAN CHASE BANK and CITIGROUP, INC., Defendants.

C.A. No. 02-104 GMS

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE

2002 U.S. Dist. LEXIS 11535

June 26, 2002, Decided

**SUBSEQUENT HISTORY:** *Transferred to Spa v. Jpmorgan Chase Bank, 2003 U.S. Dist. LEXIS 18262 (S.D.N.Y., Oct. 10, 2003)*

**DISPOSITION:** Defendants' Motions to Transfer Venue granted. Matter transferred.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiff lenders sued defendant loan administrators, alleging fraud, gross negligence, gross negligent misrepresentation, and breach of the implied covenant of good faith and fair dealing. Defendants moved to dismiss or, alternatively, to transfer venue.

**OVERVIEW:** The lenders alleged that the loan administrators failed to disclose the borrower's precarious financial situation until the loans were completed. The lenders also alleged that the loan administrators entered into off-shore partnerships operated through a trust corporation in Delaware. The contracts were executed in New York, and the notices of borrowing were sent to New York offices. The court determined that venue transfer was proper. New York was the most convenient forum for the action because each party was headquartered in New York and the majority of the documents and witnesses were located in New York. Also, Delaware had little connection to the action, the contract specified that it would be construed in accordance with New York law, and the activities that gave rise to the action took place in New York. In addition, the ease of litigation and the administrative concerns favored New York.

**OUTCOME:** The court granted the loan administrators' motions to transfer venue.

**CORE TERMS:** convenience, headquartered, facsimile, incorporation, weigh, venue, balance of convenience, lawsuit, giving rise, convenient forum, dispositive, financial condition, gross negligence, banking industry, public interest, choice of law, inexpensive, co-administrative, misrepresentation, transmission, transferring, headquarters, partnership, unavailable, rapidly, travel, faster, easier, paying

**LexisNexis(TM) Headnotes**

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN1] *28 U.S.C.S. § 1404*(a) provides that for the convenience of the parties and the witnesses, in the interest of justice, the court may transfer an action to any other district where it might have been brought. *28 U.S.C.S. § 1404*(a).

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN2]A list of factors is used to assist the district courts in determining whether, on balance, the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum. These factors include six private and five public interests which the court should consider. The private interests include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN3]In the context of venue, a party's incorporation in the forum state alone will not tip the "balance of convenience" in its favor.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN4]Witnesses that are employees of the parties to the suit are not to be considered in the convenience analysis. However, fact witnesses who possess firsthand knowledge of the events giving rise to the lawsuit traditionally weigh quite heavily in the "balance of convenience" analysis.

*Civil Procedure > Venue > Change of Venue in Federal Courts*
[HN5]In the context of venue and the convenience analysis, the location of records and documents is only relevant to the extent that the documents would be unavailable in one forum as opposed to the other.

**COUNSEL:** [*1] For UNICREDITO ITALIANO, plaintiff: Francis J. Trzuskowski, Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, DE. Grover C. Brown, Michael J. Maimone, Gordon, Fournaris & Mammarella,

  

Wilmington, DE.

For J P MORGAN CHASE INC, defendant: Stephen E. Jenkins, Ashby & Geddes, Wilmington, DE.

For CITIGROUP, defendant: Collins J. Seitz, Jr., Samuel David Brickley, II, Connolly, Bove, Lodge & Hutz, Wilmington, DE.

**JUDGES:** Gregory M. Sleet, UNITED STATES DISTRICT JUDGE.

**OPINIONBY:** Sleet

**OPINION: MEMORANDUM AND ORDER**

## I. INTRODUCTION

On February 7, 2002, the plaintiff, Unicredito Italiano ("Unicredito"), filed a complaint against JPMorgan Chase Bank ("JPMorgan") and Citigroup. n1 The complaint was later amended to add Bank Pekao, S.A. ("Pekao") as a plaintiff. The plaintiffs' claims against the defendants arise from loans made by the plaintiffs to the Enron Corporation ("Enron"), which the defendants were hired to facilitate or administrate. The plaintiffs allege that the defendants failed to disclose Enron's precarious financial situation until the loans were completed. As a result, Unicredito and Pekao accuse the defendants of fraud, gross negligence, gross negligent [*2] misrepresentation, and breach of the implied covenant of good faith and fair dealing. The defendants claim that the applicable contracts clearly state that they had no duty to investigate Enron's creditworthiness, and that any misrepresentations relied on by the plaintiffs were made by Enron.



n1 Some of the actions giving rise to the plaintiffs' claims were taken by Citibank, not Citigroup. For simplicity, the court will refer only to Citigroup.



Presently before the court are the defendants' motions to dismiss, or in the alternative, to transfer venue to the United States District Court for the Southern District of New York. For the reasons that follow, the court will grant the defendants' motions to transfer venue.

## II. BACKGROUND

Unicredito is an Italian bank that has its American headquarters in New York City. Pekan, a subsidiary of Unicredito, is a Polish bank that also has its American headquarters in New York City. The defendant JPMorgan is a Delaware corporation, as is the defendant Citigroup. [*3] n2 Both JPMorgan and Citigroup are headquartered in Manhattan in New York City.

n2 There is a dispute as to whether JPMorgan is a New York or a Delaware corporation. However, since the state of incorporation matters little to the court's analysis of the transfer issue, the court will accept the plaintiffs' representation as true at this time for the purposes of resolving this motion.

According to the plaintiffs, beginning in 1999, the defendants entered into a partnership with Enron in concealed off-shore partnerships known as "special purpose entities" ("SPEs") The plaintiffs allege that the defendants approved high-risk investments in the Enron SPEs. The plaintiffs further allege that the SPEs were operated through the Wilmington Trust Corporation in Wilmington, Delaware.

The plaintiffs note that by 2001, Enron's financial condition was rapidly deteriorating. Nevertheless, the plaintiffs, along with over fifty other banks, entered into two agreements to loan money to Enron. The agreements permitted the release [*4] of funds to Enron once Enron had made a "draw-down request" and provided certain assurances as to its financial condition. Under the agreements, Citigroup was to be the "paying agent" and both Citigroup and JPMorgan would serve as "co-administrative agents." The agreements disclaimed any fiduciary relationship between the paying agents or co-administrative agents and the banks, and specifically absolved the defendants of any duty to disclose Enron's financial status. The contracts were executed in New York and also specified that they were to be governed by New York law.

On October 25, 2001, Enron made a request for a loan. The notices of borrowing were sent to the New York offices of each of the parties. A conference call was held later that day, and at 4:06 p.m. on that date, a facsimile was sent from Citigroup's "back office" in New Castle, Delaware to the plaintiffs' New York offices. The plaintiffs contend that the facsimile contained mispresentations by Citigroup. The defendants respond that any misrepresentations were made by Enron, and that their employees merely forwarded the information that Enron had provided.



## III. DISCUSSION

The defendants seek to transfer [*5] venue pursuant to *28 U.S.C. § 1404*(a). [HN1]Section 1404(a) provides that "for the convenience of [the] parties and [the] witnesses, in the interest of justice," the court may transfer an action to "any other district where it might have been brought." *28 U.S.C. § 1404*(a). The parties agree that this action could have been filed in the Southern District of New York. The court will, therefore, move on with the inquiry as directed by the Third Circuit. *See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995)*.

In *Jumara*, the Court of Appeals provided [HN2]a list of factors to assist the district courts in determining "whether, on balance, the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum." *Id.* These factors include six private and five public interests which the court should consider. *See id.*

### A. The Private Interests

The private interests most relevant to this case include: (1) the convenience of the parties as indicated by their relative physical and financial position; (2) the convenience of the witnesses, but only to [*6] the extent that they may be unavailable for trial in one of the fora; and (3) the location of records and other documents, again, only to the extent these files cannot be produced in the alternate forum. n3 *See id.*

---------------- Footnotes --------------------

n3 For the reasons the court discussed in a previous opinion, it will not afford any weight to the first three *Jumara* factors, specifically, the plaintiff's initial choice of forum, the defendant's preferred venue, and whether the claim arose elsewhere. *See Affymetrix, Inc. v. Synteni, Inc., 28 F. Supp. 2d 192, 197-201 (D. Del. 1998)*. In not affording weight to these factors, the court avoids the risk of double-counting these interests and thereby throwing off the transfer analysis. *See id.* Instead, the court will consider whether the Southern District of New York is a more convenient forum for the parties and the witnesses, while also serving the interests of justice. *See 28 U.S.C. § 1404(a)*.

------------ End Footnotes----------

### 1. The convenience of the parties

New York [*7] is clearly the most convenient forum for this action. The plaintiffs note that each of defendants is a Delaware corporation. Nevertheless, to the extent that this fact is relevant to the convenience analysis, it is not dispositive. *See Corixa Corp. v. IDEC Pharms. Corp., 2002 U.S. Dist. LEXIS 2980*, No. CIV.A. 01-615- GMS, 2002 WL 265094, at *4 (D. Del. Feb. 25, 2002) (finding that [HN3]a party's incorporation in Delaware "alone will not tip the 'balance of convenience' in its favor."). Moreover, each of the plaintiffs and defendants is headquartered in New York. Thus, it would seem reasonable to conclude that this action should proceed in New York.

The plaintiffs also note that Delaware is a short distance away from New York, and it would therefore not be inconvenient for the litigation to proceed here. Although it is true that the parties would be able to travel to Delaware in a relatively short time, it seems unreasonable to require such travel when the business operations of the parties are headquartered in New York, the majority of the documents and witnesses are in New York, and no party is headquartered in Delaware or conducts business in Delaware that is as significant as the business it conducts [*8] in New York. Thus, the convenience factor weighs heavily in favor of transfer to New York.

### 2. The convenience of the witnesses

The court notes that [HN4]witnesses that are employees of the parties to the suit are not to be considered in the convenience analysis. *See 2002 U.S. Dist. LEXIS 2980, [WL] at *3*. However, "Fact witnesses who possess firsthand knowledge of the events giving rise to the lawsuit . . . have traditionally weighed quite heavily in the 'balance of convenience' analysis." *See id* (citations omitted).

As previously noted, although only four banks are present in the case at bar, over fifty banks participated in the Enron loans. The defendants have represented that employees or representatives of these banks may be called as fact witness to testify as to their understanding of the events that occurred on October 25, 2001. Although the court agrees with the plaintiffs' contention that the need for and the number of such witnesses has not yet been clearly established, the plaintiffs do not dispute that the witnesses are located in New York. There is, however, no clear evidence that these parties would be unable to attend trial in Delaware. Since the witnesses could be produced in either [*9] forum, this factor must remain neutral.

### 3. The location of records and documents

[HN5]This factor is only relevant to the extent that the documents would be unavailable in one forum as opposed to the other. *See 2002 U.S. Dist. LEXIS 2980, [WL] at *4*. Recent technological innovations





have made it possible to move documents from one location to the other quite rapidly. No party has argued that the relevant documents could not be produced just as easily in New York as in Delaware. Therefore, this factor is also neutral.

### B. The Public Factors

As other courts have noted, depending on the circumstances of the case, some of the "public interest" factors listed in *Jumara* may play no role in the "balance of convenience." *See id.* at 205. The court thus elects to discuss only the three factors which the parties deem relevant to the pending case.

#### 1. Interests in the Controversy

Initially, the court acknowledges that to the extent the parties are incorporated in Delaware, Delaware has some interest in the resolution of the actions involving its corporate citizens. However, as previously noted, this fact is not dispositive. *See Dippold-Harmon Enterprises, Inc. v. Lowe's Companies, Inc., 2001 U.S. Dist. LEXIS 18547,* No. **[*10]** 01-532- GMS, 2001 WL 1414868, at *7 (D.Del. Nov. 13, 2001) (noting that incorporation alone will not give rise to an interest in the controversy). Other than incorporation, Delaware has little connection to this action. On these facts, New York clearly has a greater interest in the outcome of this action for several reasons.

First, as previously noted, all of the parties are headquartered in New York. Second, the contract specifies that it will be construed in accordance with New York law. Third, the activities that gave rise to this action took place in New York. The contracts that were the impetus for the loans were executed in New York. The plaintiffs argue that the October 25 facsimile transmission was sent from Delaware, thus creating a connection between this case and Delaware. The court is not persuaded. The sending of the facsimile was a purely administrative act. Moreover, the facsimile, while generated in Delaware, was being *sent* to New York where it was apparently received and used. The fact that the transmission was used in New York further leads the court to conclude that the majority of the activity giving rise to this lawsuit occurred in New York. Additionally, **[*11]** to the extent the plaintiffs argue that events occurring at the Wilmington Trust Corporation cause Delaware to have an interest in this action, the court notes that the plaintiffs have failed to allege any wrongdoing on the part of Wilmington Trust which might heighten Delaware's interest in the case. They merely allege that the defendants conducted business through that company. As the court has previously noted, if the plaintiffs wish to produce documents or witnesses from Wilmington Trust that will establish the defendants' knowledge on certain topics, these documents and witnesses can be made available in New York.

Finally, the plaintiffs have failed to show that the interests involved are unique to Delaware. *See id.* (noting that where claims at issue are not unique to Delaware, the state's interest is lessened). To the contrary, the primary public interest raised by this case - the ethics of the banking profession - is more appropriately addressed in New York. With deference to Delaware's significant role in the banking industry, New York City remains the financial center of the United States, if not the world. Therefore, the impact of this case might be expected to be felt **[*12]** more acutely in that jurisdiction.

To that end, the court notes that the defendants moved to dismiss this action by arguing that the provisions of the contract disclaiming any fiduciary duty and other similar clauses insulate them from the plaintiffs' claims. However, the plaintiff has raised at least a question as to whether New York law as interpreted by its state and federal courts will permit the plaintiffs to circumvent those provisions. n4 Certainly, the court would be able to familiarize itself with the relevant New York law. However, the court's diligence and research abilities notwithstanding, the New York courts are simply better equipped to answer a question which arises under and involves New York law. n5 Additionally, due to the number of banks that are located in New York and the number of financial transactions that occur in New York, it is highly probable that the Southern District of New York has previously addressed similar issues. Given the strong connection New York has with the banking industry and the impact that the questions raised by this case will have on that industry, this action should proceed in the Southern District of New York.

- - - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -

n4 *See* D.I. 23 at 15-18. The court notes that the plaintiffs rely heavily, but not solely, upon New York State, Southern District of New York, and Second Circuit cases in support of its contentions.

**[*13]**

n5 Without attempting to fully reject the contract's choice of law provisions and without asking the court to engage in a choice of law analysis, the plaintiffs appear to assert that their claims do not necessarily have to be construed under New York law because they extend beyond the contract. This argument is undercut by the plaintiffs very reliance on New York law. Moreover, the plaintiff relies on the contract when it al-





leges that the clauses do not bar recovery for gross negligence or willful acts. Thus, the court believes that the plaintiffs' "argument" on this point is disingenuous at best.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - -

### 2. Practical Considerations Making Trial Easy, Expeditious, or Inexpensive

As previously noted, all of the parties to this action are headquartered in New York and a majority of the potential witnesses are located in New York. Thus, it would be easier to allow the action to proceed there. The court agrees with the plaintiff that New York City is just a brief and relatively inexpensive train ride away from Wilmington. Nonetheless, this only increases, rather than reduces, the expense associated [*14] with this matter. For this reasons and all reasons previously discussed by the court, it would be easier and more efficient for this litigation to take place in the Southern District of New York.

### 3. Administrative Difficulties

Administrative difficulties also weigh in favor of transfer. The plaintiffs note that they filed this lawsuit in Delaware to obtain a faster resolution of the case. They rely on the fact that the District of Delaware has 10,000 fewer cases than the Southern District of New York. However, as the defendants point out, despite the higher caseload, cases in the Southern District of New York are resolved an average of five months faster than cases filed in the District of Delaware. This fact cuts against the plaintiffs' arguments and in favor of transfer.

Moreover, the plaintiffs fail to realize that this court is currently understaffed. What is normally a four judge court has been temporarily reduced to a three judge court as we await the confirmation of a new judge to replace the Honorable Roderick R. McKelvie. The court will not engage in the folly of attempting to predict when Judge McKelvie's replacement will arrive. Given this unique situation, administrative [*15] concerns weigh in favor of transferring this case to the Southern District of New York.

### V. CONCLUSION

For all of the foregoing reasons, the court concludes that both private and public interests weigh heavily in favor of transferring this action to the Southern District of New York.

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:1. The Defendant Citigroup's Motion to Transfer Venue (D.I. 8) is GRANTED.

2. The Defendant J. P. Morgan's Motion to Transfer Venue (D.I. 12) is GRANTED.

3. The above-captioned matter is hereby TRANSFERRED to the United States District Court for the Southern District of New York.

4. The Plaintiffs' Motion for Leave to File a Surreply (D.I. 29) is DISMISSED as MOOT.Dated: June 26, 2002

Gregory M. Sleet

UNITED STATES DISTRICT JUDGE





## CERTIFICATE OF SERVICE

I, Glenn C. Mandalas, hereby certify that on March 8, 2005, I caused to be electronically filed a true and correct copy of Compendium of Unreported Cases in Support of Plaintiff's Memorandum in Opposition to Defendants' Motion to Transfer Venue to the District Of Colorado with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Peter J. Walsh, Jr., Esquire
>Potter, Anderson & Corroon, LLP
>Hercules Plaza, 6th Floor,
>1313 North Market Street
>P.O. Box 951
>Wilmington, DE  19801


>Jeffery C. Wisler, Esquire
>Connolly Bove Lodge & Hutz, LLP
>1007 North Orange Street
>P.O. Box 2207
>Wilmington, DE  19899

I further certify that on March 8, 2005, I caused a copy of Compendium of Unreported Cases in Support of Plaintiff's Memorandum in Opposition to Defendants' Motion to Transfer Venue to the District Of Colorado to be served on the following counsel of record in the manner indicated:

### BY HAND DELIVERY

>Peter J. Walsh, Jr., Esquire
>Potter, Anderson & Corroon, LLP
>Hercules Plaza, 6th Floor,
>1313 North Market Street
>P.O. Box 951
>Wilmington, DE  19801

WP3:1087954.1

Jeffery C. Wisler, Esquire
Connolly Bove Lodge & Hutz, LLP
1007 North Orange Street
P.O. Box 2207
Wilmington, DE 19899

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

/s/ Glenn C. Mandalas
_____
Glenn C. Mandalas (# 4432)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6600
gmand@ycst.com

*Attorneys for Plaintiff*

WP3:1087954.1