# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. **05 - WM - 335 (MK)**

GENESIS INSURANCE COMPANY, a Connecticut corporation,

      Plaintiff,

    vs.

DANIEL D. CROWLEY;
DONALD J. AMARAL;
WILLIAM J. CASEY;
L. PETER SMITH; and
SANDRA L. SMOLEY,

      Defendants.

---

## SUMMONS

---

To the above named Defendant(s): **WILLIAM J. CASEY**

You are hereby summoned and required to serve upon Leanne B. De Vos, Esq.

plaintiff's attorney, whose address is: Sherman & Howard L.L.C., 633 17th Street, Suite 3000, Denver, CO 80202

AND FILE WITH THE CLERK OF THE COURT

an answer to the complaint which is herewith served upon you, within __20__ days of service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

           Gregory C. Langham, Clerk

      By: _____

           Deputy Clerk

           (Seal of the Court)

Date:   **FEB 2 3 2005**

Clerk, U.S. District Court, C-145 U.S. Courthouse, Denver, Colorado 80294-3589

NOTE: This summons is issued pursuant to Rule 4 of the Federal Rules of Civil Procedure.

| RETURN OF SERVICE | |
|---|---|
| NAME OF SERVER: | TITLE: |

Check one box to indicate appropriate method of service.

☐ Served personally upon the defendant. Place were left:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion then residing therein.
Name of person with whom the summons and complaint where left:

☐ Returned unexecuted::

☐ Other (specify):

| STATEMENT OF SERVICE OF FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |

### DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service is true and correct.

Executed on:

_____
Date

_____
Signature of Server

_____
Address of Server

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. ___**05-WM-335 (PAC)**___

GENESIS INSURANCE COMPANY, a Connecticut corporation,

        Plaintiff,

    vs.

DANIEL D. CROWLEY;
DONALD J. AMARAL;
WILLIAM J. CASEY;
L. PETER SMITH; and
SANDRA L. SMOLEY,

        Defendants.

---

## SUMMONS

---

To the above named Defendant(s):  **SANDRA L. SMOLEY**

You are hereby summoned and required to serve upon Leanne B. De Vos, Esq.

plaintiff's attorney, whose address is: Sherman & Howard L.L.C., 633 17th Street, Suite 3000, Denver, CO 80202

AND FILE WITH THE CLERK OF THE COURT

an answer to the complaint which is herewith served upon you, within __20__ days of service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

        Gregory C. Langham, Clerk

        By: _____

        Deputy Clerk

        (Seal of the Court)

Date: FEB 2 3 2005

Clerk, U.S. District Court, C-145 U.S. Courthouse, Denver, Colorado 80294-3589

NOTE: This summons is issued pursuant to Rule 4 of the Federal Rules of Civil Procedure.

| RETURN OF SERVICE | |
|---|---|
| | |
| NAME OF SERVER: | TITLE: |

Check one box to indicate appropriate method of service.

☐ Served personally upon the defendant. Place were left:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion  then residing therein.
   Name of person with whom the summons and complaint where left:

☐ Returned unexecuted::

☐ Other (specify):

| STATEMENT OF SERVICE OF FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |
| | | |

### DECLARATION OF SERVER

        I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service is true and correct.

Executed on:

_____
          Date

_____
Signature of Server

_____
Address of Server

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____ **05 -WM - 335 (PAC)**

GENESIS INSURANCE COMPANY, a Connecticut corporation,

        Plaintiff,

   vs.

DANIEL D. CROWLEY;
DONALD J. AMARAL;
WILLIAM J. CASEY;
L. PETER SMITH; and
SANDRA L. SMOLEY,

        Defendants.

---

## SUMMONS

---

To the above named Defendant(s):  **L. PETER SMITH**

You are hereby summoned and required to serve upon Leanne B. De Vos, Esq.

plaintiff's attorney, whose address is: Sherman & Howard L.L.C., 633 17th Street, Suite 3000, Denver, CO 80202

AND FILE WITH THE CLERK OF THE COURT

an answer to the complaint which is herewith served upon you, within __20__ days of service of this summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

        Gregory C. Langham, Clerk

        By: _____

        Deputy Clerk
        (Seal of the Court)

Date:  **FEB 2 8 2005**

Clerk, U.S. District Court, C-145 U.S. Courthouse, Denver, Colorado 80294-3589

NOTE: This summons is issued pursuant to Rule 4 of the Federal Rules of Civil Procedure.

| RETURN OF SERVICE | |
|---|---|
| | |
| NAME OF SERVER: | TITLE: |
| Check one box to indicate appropriate method of service. | |

☐ Served personally upon the defendant.  Place were left:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and
discretion  then residing therein.
　　Name of person with whom the summons and complaint where left:

☐ Returned unexecuted::

☐ Other (specify):

| STATEMENT OF SERVICE OF FEES | | |
|---|---|---|
| TRAVEL | SERVICES | TOTAL |
| | | |

| DECLARATION OF SERVER |
|---|

　　　　I declare under penalty of perjury under the laws of the United States of America that the foregoing information
contained in the Return of Service and Statement of Service is true and correct.

Executed
on: _____

| Date | Signature of Server |
|---|---|
| | Address of Server |

2

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2005 FEB 23  PH 4:48

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO   GREGORY C. LANGHAM
                                        CLERK

Civil Action No.   **05 - WM - 335 (PAC)**   BY_____DEP. CLK

GENESIS INSURANCE COMPANY, a Connecticut corporation,

        Plaintiff,

    vs.

DANIEL D. CROWLEY;
DONALD J. AMARAL;
WILLIAM J. CASEY;
L. PETER SMITH; and
SANDRA L. SMOLEY,

        Defendants.

---

## PLAINTIFF'S CORPORATE DISCLOSURE STATEMENT

---

Pursuant to Fed. R. Civ. P. Rule 7.1 and D.C.COLO.LCivR 7.4, Plaintiff Genesis Insurance Company ("Genesis"), hereby submits the following Corporate Disclosure Statement:

1.    Genesis is a wholly owned subsidiary of General Reinsurance Corporation, which is a wholly-owned subsidiary of Berkshire Hathaway, Inc.  Berkshire Hathaway, Inc. is a publicly traded company.

2.    There is no publicly held corporation which owns 10% or more of Genesis stock.

DATED this 23rd day of February, 2005.

SHERMAN & HOWARD L.L.C.

By: _____

Leanne B. De Vos
633 Seventeenth Street, Suite 3000
Denver, Colorado 80202
(303) 299.8418
(303) 298.0940 (facsimile)
D.C. Box 12

and

OF COUNSEL:
Daniel J. Standish
Jason P. Cronic
Paul A. Dame
WILEY REIN & FIELDING LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
(202) 719-7049 (facsimile)

*Attorneys for Plaintiff Genesis*
*Insurance Company*

2

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2005 FEB 23   PM 4:48

GREGORY C. LANGHAM
CLERK

BY_____DEP. CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____ **05 -UM - 335 (PAK)**

GENESIS INSURANCE COMPANY, a Connecticut corporation,

     Plaintiff,

vs.

DANIEL D. CROWLEY;
DONALD J. AMARAL;
WILLIAM J. CASEY;
L. PETER SMITH; and
SANDRA L. SMOLEY,

     Defendants.

---

## COMPLAINT FOR DECLARATORY JUDGMENT

---

Genesis Insurance Company ("Genesis") brings this action for declaratory judgment against defendants Daniel D. Crowley, Donald J. Amaral, William J. Casey, L. Peter Smith, and Sandra L. Smoley, all of whom are former directors or officers of Coram Healthcare Corporation and/or its wholly-owed subsidiary Coram, Inc. (collectively, "Coram). Genesis seeks a determination that a directors and officers liability policy issued by Genesis to Coram does not provide coverage for the claim asserted against the defendants in the lawsuit captioned *Adams. v. Crowley, et al.*, No. 04-1565 (D. Del.) (the "Underlying Action"). In support of this Complaint, Genesis alleges as follows:

## NATURE OF ACTION

1.     This is an action by Genesis for a declaratory judgment concerning its rights and obligations under a policy of directors and officers liability insurance issued to Coram Healthcare Corporation.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  Genesis brings this action pursuant to 28 U.S.C. §§ 2201 and 2202.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).  A substantial part of the events giving rise to this dispute occurred in this district.  The Genesis insurance policy that is the subject of this dispute was issued here to non-party Coram, whose principal place of business is in this district.

## PARTIES

4.     Genesis is a corporation engaged in the business of providing liability insurance. Genesis is organized and exists pursuant to the laws of the state of Connecticut with its principal place of business in the state of Connecticut.

5.     Defendant Daniel D. Crowley ("Crowley") is a citizen of California.  He was Chairman and Chief Executive Officer of Coram from November 1999 until March 2003.

6.     Defendant Donald J. Amaral ("Amaral") is a citizen of Nevada.  He joined Coram's Board in 1995 and served as Chairman from September 1997 through November 30, 1999.  From October 1995 through April 23, 1999, and from October 22, 1999, through November 30, 1999, he also served as Coram's Chief Executive Officer.

7.     Defendant William J. Casey ("Casey") is a citizen of California.  He joined Coram's Board in 1997.

8.      Defendant L. Peter Smith ("Smith") is a citizen of Illinois.  He joined Coram's Board in 1994.

9.      Defendant Sandra L. Smoley ("Smoley") is a citizen of California.  She joined Coram's Board on February 10, 2000.

## FACTUAL ALLEGATIONS

### The Genesis Policy

10.     Directors and Officers Liability Insurance Policy  No. YXB001625A (the "Policy") (attached hereto as Exhibit A) was issued by Genesis to Coram Healthcare Corporation for the period from January 8, 1999, through January 27, 2001, as amended, with a discovery period for reporting Claims extending until January 27, 2002.  It has a limit of liability of $25,000,000.  It is a "claims-made" policy. *See* Exhibit A at p. 1.

11.     Subject to all of its terms and conditions, the Policy affords specified coverage to Coram's directors and officers for "Loss" arising out of "Claims" for "Wrongful Acts," as those terms are defined, first made during the Policy Period.  It also affords specified coverage for "Claims" for "Wrongful Acts" first made during the Discovery Period, but only for "Wrongful Acts" committed before January 27, 2001.  Policy, Sections I and Section III.A.

12.     The Policy contains the following exclusion:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim:

> *   *   *

> Arising out of, based upon or attributable to the Directors or Officers or the Company gaining in fact any profit or advantage to which they were not legally entitled.

Policy, Section IV.A.  This exclusion is referenced in this Complaint as the "Profit or Advantage Exclusion."

3

13.   The Policy contains the following provision:

> If either the Insurer or Insured Entity cancels this policy . . . or . . . chooses not to renew this Policy, for any reason other than the Company's nonpayment of premium or non-compliance with the terms of this Policy, then the Insured Entity shall have the right, upon payment of the additional premium . . . to an extension of the Policy Period for Claims first made during the period of one year after the effective date of such cancellation or nonrenewal *but only with respect to Wrongful Acts committed before such effective date* [January 27, 2001] and otherwise covered by this Policy.

Policy, Section III.A. (emphasis added).  This period is referred to in this Complaint as the

Discovery Period.

14.   The Policy also contains the following provision:

> If both Loss covered by this Policy and other loss are incurred, either because a Claim includes both covered and non-covered matters, or because a Claim is made against both covered and non-covered parties, then the Directors, Officers, the Company and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts.  In making such determination, the parties shall take into account the relative legal and financial exposures, and the relative benefits obtained in connection with the defense and/or settlement, of and between the covered and non-covered parties and matters involved in the Claim.  In the event the parties cannot agree to an appropriate allocation percentage for the Claim, then the Insurer shall be obligated to make an interim payment of the amount of Loss, including Defense Costs, which the parties agree is not in dispute until a final allocation is agreed upon or determined pursuant to the terms of this Policy.

Policy, Section V.G.

15.   The Policy contains the following definition of "Loss":

> "Loss" shall mean any amounts which the Directors or Officers are legally obligated to pay, such amounts which the Company is required to indemnify the Directors or Officers, or such amounts which the Company may legally indemnify the Directors or Officers, for Claims made against the Directors or Officers, or any amounts which the Company is legally obligated to pay for Securities Claims made against the Company, in excess of the applicable Retention, including damages, judgments, orders, Settlements, and Defense Costs; provided, however, Loss shall not

4

> include criminal or civil fines or penalties imposed by law,
> multiplied portions of damages in excess of actual damages, taxes,
> or any matter which may be deemed uninsurable under the law
> pursuant to which this Policy shall be construed.

Policy, Section II.F.

## The Underlying Action

16.     Coram is a provider of alternative-site infusion therapy.  Infusion therapy involves

the intravenous administration of drug therapies for nutrition, anti-infection, HIV, blood factor,

pain management, chemotherapy, and other purposes.

17.     Coram filed a voluntary petition for relief under Title 11 of the United States

Code in the United States Bankruptcy Court for the District of Delaware on August 8, 2000.  On

March 8, 2002, the Bankruptcy Court appointed Arlin Adams as Chapter 11 Trustee of Coram

(hereinafter, Adams is referred to as "Trustee").  The Bankruptcy Court entered an order

confirming the Trustee's Plan of Reorganization on November 1, 2004, and Coram is now a

private company.

18.     On December 29, 2004, pursuant to the approved Plan of Reorganization,

the Trustee brought suit against defendants Crowley, Amaral, Casey, Smith, and Smoley in the

United States District Court for the District of Delaware.  The Underlying Action is captioned

*Adams v. Crowley, et al.*, No. 04-1565 (D. Del. 2004).

19.     On February 7, 2005, defendants Amaral, Casey, Smith, and Smoley moved to

transfer the Underlying Action to the United States District Court for the District of Colorado.

20.     The complaint in the Underlying Action alleges that Crowley failed to disclose

properly an employment agreement he had with one of Coram's lenders, Cerberus Partners

L.L.P. ("Cerberus") prior to entering into a November 30, 1999, employment agreement with

Coram.  It further alleges that, when this assertedly incompletely-disclosed employment

relationship was revealed in connection with Coram's bankruptcy proceedings, the Bankruptcy Court refused to confirm Coram's first proposed plan of reorganization.

21.    The complaint in the Underlying Action further alleges that, after the proposed plan of reorganization was denied on December 21, 2000, Crowley continued to accept payments of $80,000 per month from Cerberus, despite his then position as Chairman and CEO of Coram. As a result of this continued relationship with Cerberus, the complaint asserts that the Bankruptcy Court again rejected Coram's second plan of reorganization on December 21, 2001, stating that Crowley's asserted conflict of interest and continued acceptance of payment from Cerberus breached "his duties of care, good faith and loyalty" to Coram.

22.    With respect to defendants Amaral, Casey, Smith, and Smoley (collectively hereinafter, the "Board Defendants"), the complaint alleges that those members of Coram's board failed to properly investigate Crowley's relationship with Coram's lender, failed to remedy the asserted conflict of interests once it was discovered, and, by doing so, "failed to act in good faith and meet even minimal standards of attention."

23.    The complaint further asserts that the foregoing alleged breaches of fiduciary duty caused Coram unspecified harm, and, as a result, the Trustee seeks "compensatory damages, disgorgement, punitive damages, costs, attorneys' fees, pre-judgment interests and such other relief as the Court may deem just and proper."

24.    Upon receiving notice of the Underlying Action, Board Defendants tendered the claim to Genesis under the Policy on December 31, 2004, almost four years after the expiration of the Policy and almost three years after the expiration of the Discovery Period. After receipt of the complaint in the Underlying Action, and after a review of the allegations contained therein, Genesis determined that there was no coverage available under the Policy for the Underlying

Action because the Policy Period and Discovery Period had expired. Even assuming the Policy was triggered, Genesis also advised the Defendants, *inter alia*, that the Policy's Profit or coverage was barred to the extend the Policy's Personal Profit or Advantage Exclusion applied, that the Policy provided no coverage for alleged Wrongful Acts occurring after January 27, 2001, and that there could be no indemnity for any amounts sought by the Trustee that did not satisfy the Policy's definition of "Loss."

25.    By letter dated February 23, 2005, Genesis informed the Defendants of its coverage determination and advised the Defendants that it would initiate the present declaratory judgment action to determine the rights and obligations of the parties. Genesis also reserved all rights under the Policy at that time.

## CONTROVERSY AND RIPENESS

26.    Genesis has identified numerous reasons why coverage is precluded and/or limited under the Policy.

27.    Upon information and belief, the Defendants take issue with Genesis's coverage position.

28.    These coverage issues will directly govern Genesis's obligations under the Policy. This matter is therefore ripe for adjudication.

## COUNT I

### DECLARATORY JUDGMENT THAT THE UNDERLYING CLAIM WAS MADE AFTER THE END OF THE POLICY PERIOD AND THE DISCOVERY PERIOD

29.    Genesis incorporates by reference each of the allegations in paragraphs 1 through 28 of this Complaint.

30.    The Underlying Action was commenced on December 29, 2004. The Policy provides specified coverage for coverage for Claims first made during the Policy Period and

7

during the Discovery Period, but only to the extent the Claim is based on Wrongful Acts occurring before January 27, 2001. Policy, Sections I. & Section III.A. The Policy Period was January 8, 1999, to January 27, 2001, as amended, and the Discovery Period extended reporting of Claims from January 27, 2001, to January 27, 2002. Policy, Declarations, Item 2. Accordingly, the Underlying Action does not constitute a Claim first made during the Policy Period or Discovery Period, and Genesis has no coverage obligation for the Underlying Action.

31.     Therefore, Genesis seeks a declaration that no coverage exists under the Policy for the Underlying Action.

## COUNT II

### DECLARATORY JUDGMENT THAT THE PROFIT OR ADVANTAGE EXCLUSION BARS COVERAGE FOR THE UNDERLYING ACTION

32.     Genesis incorporates by reference each of the allegations in paragraphs 1 through 31 of this Complaint.

33.     The Underlying Action alleges that Crowley wrongfully received remuneration from Cerberus during the course of his employment by Coram and that receipt of such remuneration constituted a breach of Crowley's fiduciary duties owed to Coram.

34.     The United States Bankruptcy Court for the District of Delaware has determined that, as a result of the profit or advantage resulting from his relationship with Cerberus, Crowley failed to fulfill his fiduciary duties to Coram.

35.     The Policy's Profit or Advantage Exclusion bars coverage for Claims arising out of Directors or Officers gaining in fact any profit or advantage to which the Directors or Officers are not legally entitled.

36.     Therefore, Genesis seeks a declaration that coverage for the Underlying Action is excluded under Section IV.A. of the Policy.

8

## COUNT III

### DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE UNDER THE POLICY FOR WRONGFUL ACTS OCCURRING AFTER JANUARY 27, 2001

37.    Genesis incorporates by reference each of the allegations in paragraphs 1 through 36 of this Complaint.

38.    The Policy provides no coverage for claims arising from Wrongful Acts committed after January 27, 2001. Policy, Section III.A. Accordingly, to the extent there is any coverage available under the Policy, such coverage is limited only to Claims arising from Wrongful Acts occurring prior to January 27, 2001.

39.    The Underlying Action is based on allegations that, after Crowley's asserted conflict of interest was revealed in December 2000, that conflict (and resulting breach of fiduciary duty) continued for over a year thereafter, well after January 27, 2001. Similarly, the alleged breach of fiduciary duties committed by the Board Defendants by failing to address the asserted conflict likewise continued through 2001 and thereafter.

40.    Policy Section V.G. provides that, should a Claim that includes both covered and non-covered matters result in Loss as defined by the Policy, coverage is limited to the amount allocated to the covered aspects of the Claim, including coverage for Defense Costs.

41.    Accordingly, Genesis seeks a declaration that, to the extent there is any coverage available for the Underlying Action, it is limited to coverage for Wrongful Acts occurring prior to January 27, 2001, and, accordingly, any Loss incurred in connection with the Underlying Action would be subject to an allocation pursuant to Policy Section V.G.

9

## COUNT IV

### DECLARATORY JUDGMENT THAT THERE IS NO COVERAGE UNDER THE POLICY FOR ANY AMOUNTS THAT DO NOT CONSTITUTE "LOSS"

42.    Genesis incorporates by reference each of the allegations in paragraphs 1 thorough 41 of this Complaint.

43.    To the extent there is any coverage available under the Policy for the Underlying Action, it is limited to coverage for Loss arising from Claims for a Wrongful Act. Policy, Section I.

44.    The complaint in the Underlying Action seeks to recover amounts that Crowley allegedly was not legally entitled to retain.

45.    The obligation to repay amounts wrongfully received does not constitute a "Loss," and such amounts are not insurable under applicable law.

46.    Accordingly, Genesis seeks a declaration that, to the extent any relief sought by the Trustee in the Underlying Action does not constitute a "Loss," there can be no coverage under the Policy for such amounts.

### OTHER COVERAGE DEFENSES

47.    Other Policy terms and conditions may ultimately be implicated even if coverage were available under the Policy. Nothing in this Complaint should be construed as a waiver by Genesis of any other coverage defenses under the Policy, and Genesis reserves the right to raise all other Policy terms and conditions as defenses to coverage as appropriate. Further, Genesis specifically adopts and incorporates herein its reservation of rights set forth in its letter of February 23, 2005.

WHEREFORE, Genesis requests that the Court enter a declaration and judgment in its favor:

A.    Declaring that, for the reasons set forth in Count I, the Underlying Action does not constitute a Claim made during the Policy Period or Discovery Period;

B.    Declaring that, for the reasons set forth in Count II, to the extent the Policy is implicated by the Underlying Action, no coverage exists based on the Profit or Advantage Exclusion;

C.    Declaring that, for the reasons set forth in Count III, to the extent the Policy is implicated by the Underlying Action, no coverage exists for Wrongful Acts occurring after January 27, 2001, and any coverage is subject to allocation pursuant to Policy Section V.G.;

D.    Declaring that, for the reasons set forth in Count IV, to the extent that the Policy is implicated, no coverage exists for amounts that do not constitute "Loss;"

E.    Awarding Genesis such additional declaratory and other relief as shall be found to be appropriate under the circumstances; and

F.    Awarding Genesis its fees and costs incurred in prosecuting this action.

11

DATED this 23rd day of February, 2005.

SHERMAN & HOWARD L.L.C.

By: Leanne B. De Vos
    633 Seventeenth Street, Suite 3000
    Denver, Colorado 80202
     (303) 299.8418
     (303) 298.0940  (facsimile)
     D.C. Box 12

and

OF COUNSEL:
Daniel J. Standish
Jason P. Cronic
Paul A. Dame
WILEY REIN & FIELDING LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
(202) 719-7049 (facsimile)

*Attorneys for Plaintiff Genesis*
*Insurance Company*

**Address of Plaintiff**
695 East Main, 4th Floor
Stamford, CT 06910

12



**GENESIS INSURANCE COMPANY**
STAMFORD, CONNECTICUT 06904

COMMERCIAL LINES POLICY

THIS POLICY JACKET WITH THE COMMON DECLARATIONS PAGE, COVERAGE PARTS,
AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETES THIS POLICY.



EXHIBIT

A

# GENESIS
### GENESIS INSURANCE COMPANY

DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY
DECLARATIONS PAGE

Policy Number: YXB001625A

NOTE:   THIS IS A CLAIMS MADE POLICY, PLEASE READ IT CAREFULLY. AMOUNTS INCURRED AS DEFENSE COSTS SHALL REDUCE THE LIMIT OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS AND SHALL ALSO BE APPLIED AGAINST THE RETENTION. THIS POLICY DOES NOT PROVIDE FOR ANY DUTY BY THE INSURER TO DEFEND THOSE INSURED UNDER THIS POLICY.

**THIS IS A CLAIMS MADE POLICY, PLEASE READ IT CAREFULLY**

**ITEM 1.**   Insured Entity.......:   **Coram Healthcare Corporation**
             Principal Office.....:   1125 Seventeenth Street, Suite 2100
             Denver, CO 80202

**ITEM 2.**   Policy Period........:   From: **January 8, 1999**        To: **January 8, 2001**
             (Both dates at 12:01 a.m. at the Principal Address of the Insured Entity)

**ITEM 3.**   Limit of Liability (Inclusive of Defense Costs):
             $ 25,000,000        Aggregate Limit of Liability

**ITEM 4.**   Retentions Applicable to Insuring Agreements:
             A.  For Securities Claims:
                 1.  Defense Costs:
                     $          0   Each Director or Officer for each single Securities Claim under Insuring Agreement Section I.A., and in no event exceeding
                     $          0   for all Directors and Officers under Insuring Agreement Section I.A. for each single Securities Claim; and
                     $   200,000   for each single Securities Claim to which Insuring Agreements Sections I.B. or I.C. apply.
                 2.  Settlements and Judgments:
                     NONE   for Settlements and Judgments in Securities Claims.

             B.  For Claims other than Securities Claims:
                     $          0   Each Director or Officer for each single Claim under Insuring Agreement Section I.A., and in no event exceeding
                     $          0   for all Directors and Officers under Insuring Agreement Section I.A. for each single Claim; and
                     $    75,000   for each single Claim to which Insuring Agreement Section I.B. applies.

**ITEM 5.**   Premium:
             $    586,000   Two year pre-paid premium.

**ITEM 6.**   Premium for Discovery Period:
             75% of the annualized premium, to be paid only if the eligibility requirements are met and the Discovery Period option is properly exercised

**ITEM 7.**   Endorsements:
             This Policy includes the following attached endorsements, and all other endorsements issued by the Insurer to be attached hereto after the issuance of this Policy: 7425.EP, 7425, 7425.RE, 7458.

**ITEM 8.**   Notices and Information:
             All notices and information required to be provided to the Insurer under this Policy shall be addressed to: Genesis Insurance Company, 25550 Chagrin Boulevard, Suite 300, Beachwood, Ohio 44122.

These Declarations along with the Application, including all materials submitted therewith, and the Directors and Officers Liability Insurance Policy, shall constitute the entire contract between the Directors, Officers, the Company and the Insurer.
GENESIS INSURANCE COMPANY.

Date: January 8, 1999                          By: *Michael Zartman*

                                               Company Officer or Authorized Agent

FORM NO. GIC-7417 (5/97)

# GENESIS  GENESIS INSURANCE COMPANY

## DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY

### THIS IS A CLAIMS MADE POLICY, PLEASE READ IT CAREFULLY

In consideration of the premium paid and in reliance upon the information provided in and with the Application, and subject to the terms, conditions and limitations of this Policy, the Insurer, the Company and the Directors and Officers agree as follows:

## SECTION I.  INSURING AGREEMENTS

A. The Insurer will pay, on behalf of the Directors and Officers, Loss arising from Claims first made during the Policy (or Discovery) Period against the Directors or Officers, individually or collectively, for a Wrongful Act, except for such Loss which the Company pays to or on behalf of the Directors and Officers;

B. The Insurer will pay, on behalf of the Company, Loss which the Company is required to indemnify, or which the Company may legally indemnify, the Directors or Officers, arising from Claims first made during the Policy (or Discovery) Period against the Directors or Officers, individually or collectively, for a Wrongful Act; and

C. The Insurer will pay, on behalf of the Company, Loss arising from Securities Claims first made against the Company during the Policy (or Discovery) Period for a Wrongful Act.

## SECTION II.  DEFINITIONS

A. "Claim" shall mean the following proceedings initiated against a Director or Officer for money damages or other relief, whether brought within or outside of the United States:

   (1) any civil, arbitration or administrative proceeding commenced by: (a) service of a complaint or similar pleading, or (b) receipt of a notice of charges;
   (2) any criminal proceeding commenced by the return of an indictment or an information;
   (3) any appeal from the above proceedings; or
   (4) other written or verbal demand for money or services.

   "Claim" shall also mean any of the above-listed proceedings initiated against a Director, Officer or the Company which is a Securities Claim.

B. "Company" shall mean the Insured Entity and its Subsidiaries under Insuring Agreements Sections I.A. and I.B. Under Insuring Agreement Section I.C., "Company" shall mean the Insured Entity only.

C. "Defense Costs" shall mean reasonable and necessary legal fees and expenses incurred in the investigation and/or defense of any Claim, including costs of attachment or similar bonds; provided, however, Defense Costs shall not include salaries, wages, overhead or benefit expenses of or associated with Directors, Officers, employees of the Company, or the Company.

D. "Determination of No Liability" shall mean: (1) a final judgment of no liability in a Securities Claim in favor of all Directors and Officers and the Company, after the exhaustion of all appeals, or (2) a dismissal of a Securities Claim without prejudice, and without the payment of any consideration by the Directors, Officers, and/or the Company.

Form No. GIC-7418 (9/97)
page 1 of 8

E.  "Directors" and "Officers" shall mean:

   (1)  all past, current or prospective duly elected or appointed directors and officers of the Company, and their foreign equivalents for Company operations outside of the United States, including their estates, heirs, legal representatives or assigns in the event of their death, incapacity or bankruptcy;

   (2)  for Securities Claims only, all past, current and future employees of the Company; and

   (3)  spouses of duly elected or appointed directors and officers of the Company, but only for Claims

      (i)  which are based upon Wrongful Acts of the directors or officers, and not upon any alleged conduct of a spouse, and

      (ii)  which are based upon either the legal status as a spouse or the joint ownership of property between a spouse and a director or officer.

F.  "Loss" shall mean any amounts which the Directors or Officers are legally obligated to pay, such amounts which the Company is required to indemnify the Directors or Officers, or such amounts which the Company may legally indemnify the Directors or Officers, for Claims made against the Directors or Officers, or any amounts which the Company is legally obligated to pay for Securities Claims made against the Company, in excess of the applicable Retention, including damages, judgments, orders, Settlements, and Defense Costs; provided, however, Loss shall not include criminal or civil fines or penalties imposed by law, multiplied portions of damages in excess of actual damages, taxes, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

G.  "Outside Entity" shall mean any nonprofit entity under Section 501 (c)(3) of the Internal Revenue Code of 1986, as amended, for which any of the Directors or Officers serve as directors or officers with the consent of the Company.

H.  "Policy Period" shall mean the time period from the inception date of this Policy to the expiration date as stated in Item 2 of the Declarations, or to its earlier cancellation or termination date.

I.  "Securities Claim" means any Claim brought by any person or entity, directly or derivatively, based upon, arising out of, or attributable to, the purchase or sale, or offer to purchase or sell, any securities of the Company, brought by a securities holder of the Company in their capacity as a securities holder, or brought by the United States Securities and Exchange Commission.

J.  "Settlement" shall mean a compromise of any Claim to which the Insurer has given its written consent pursuant to Section VI.A.

K.  "Subsidiary" shall mean:

   (1)  any entity in which the Insured Entity owns or at any time owned more than fifty percent (50%) of the issued and outstanding voting securities, directly or indirectly, subject to clauses (2) and (3) below for acquisitions made by the Company during the Policy Period;

   (2)  any entity in which the Insured Entity acquires more than 50% of the issued and outstanding voting securities or substantially all of the assets, directly or indirectly, during the Policy Period, if such entity's total assets represent less than 20% of the Company's total assets prior to the acquisition; and

   (3)  for forty-five (45) days immediately following the acquisition date, any entity in which the Insured Entity acquires more than 50% of the issued and outstanding voting securities or substantially all of the assets, directly or indirectly, during the Policy Period, if such entity's total assets represent more than 20% of the Company's total assets prior to the acquisition: provided, however, such entity will not be considered a Subsidiary or included within the definition of Company beyond such automatic forty-five (45) day period unless the Insurer specifically agrees in writing to provide such coverage, subject to such additional information, coverage terms and premium as the Insurer may require.

   The term "Subsidiary" shall also include any subsidiary of a Subsidiary.

L.   "Wrongful Act" shall mean:

(1)  under Insuring Agreements Sections I.A. and B., any actual or alleged act, omission, misstatement, misleading statement, neglect, error or breach of duty by the Directors or Officers in their capacity as Directors or Officers of the Company or in their capacity as directors or officers of an Outside Entity, individually or collectively;

(2)  under Insuring Agreement Section I.C., any actual or alleged act, omission, misstatement, misleading statement, neglect, error or breach of duty by the Company, or by persons for whose actual or alleged conduct the Company is legally responsible.

## SECTION III.   DISCOVERY PERIOD

A.   If either the Insurer or Insured Entity cancels this Policy pursuant to Section VIII, or if either the Insurer or Insured Entity chooses to not renew this Policy, for any reason other than the Company's nonpayment of premium or non-compliance with the terms of this Policy, then the Insured Entity shall have the right, upon payment of the additional premium set forth in Item 6 of the Declarations, to an extension of the Policy Period for Claims first made during the period of one year after the effective date of such cancellation or nonrenewal, but only with respect to Wrongful Acts committed before such effective date and otherwise covered by this Policy. This one year extension period shall be referred to as the Discovery Period.

B.   The right to purchase the Discovery Period shall terminate unless a written request for the Discovery Period is provided to the Insurer within thirty (30) days after the effective date of cancellation or nonrenewal, together with full payment of the premium for the Discovery Period.

C.   Purchase of the Discovery Period shall not in any way increase the Limit of Liability.

D.   The additional premium paid for the Discovery Period shall be fully earned at its commencement.

## SECTION IV.  EXCLUSIONS

The Insurer shall not be liable to make any payment for Loss in connection with any Claim:

A.   Arising out of, based upon or attributable to the Directors or Officers or the Company gaining in fact any profit or advantage to which they were not legally entitled;

B.   Arising out of, based upon or attributable to the committing in fact of deliberate fraudulent, dishonest or criminal acts by the Directors or Officers, or by employees, agents or representatives of the Company;

C.   Which is insured in whole or in part by another valid policy or policies, including policies issued to an Outside Entity, regardless of whether or not any Loss arising from such Claim is collectible or recoverable under such other policy or policies; provided, however, this exclusion shall not apply to policies which are specifically excess of this Policy by reference hereto (including the Policy Number);

D.   Arising out of, based upon or in any way involving: (1) any Wrongful Act, or any fact, circumstance or situation which has been the subject of any notice given prior to the Policy Period under any insurance policy providing protection for the Directors or Officers or the Company, including any matter in any way related thereto; or (2) any other Wrongful Act which has as a common nexus any fact, circumstance, situation, event, or transaction with any fact, circumstance or situation which has been the subject of notice as described in clause (1) of this exclusion;

E.  For actual or alleged: (1) bodily injury, sickness, disease, or death of any person, assault, battery, mental anguish, emotional distress, loss of consortium; (2) damage to or destruction of any tangible property, including loss of use thereof; or (3) invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, defamation or false light, libel or slander;

F.  For actual or alleged violations of the Employee Retirement Income Security Act of 1974, as amended, and regulations promulgated thereunder;

G.  For any actual or alleged act, omission, misstatement, misleading statement, neglect, error or breach of duty committed in the capacity as a director or officer of any entity other than the Company or an **Outside Entity**;

H.  Arising out of, based upon, or in any way involving, directly or indirectly:

   (1)  the actual, alleged or threatened discharge, disposal, migration, dispersal, release or escape of pollutants, or

   (2)  any direction, order or request to test for, monitor, remediate, clean up, remove, contain, treat, detoxify or neutralize pollutants, or to pay for or contribute to the costs of undertaking such actions including claims alleging damage to the Company or its shareholders.

   Pollutants include (but are not limited to) any solid, liquid, nuclear, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, organisms or other hazardous substances, and waste. Waste includes materials to be recycled, reconditioned or reclaimed;

I.  Brought by, at the behest of, or with the assistance or active participation of, the Insured Entity or a Subsidiary (or any affiliated person), or any Director or Officer of the Insured Entity or a Subsidiary; however, this exclusion shall not apply to wrongful termination of employment actions, shareholder derivative actions which are not brought by, at the behest of, or with the assistance or active participation of a Director or Officer of the Insured Entity or a Subsidiary, crossclaims, or to other claims for contribution or indemnity which are part of or arise directly from a Claim;

J.  Arising out of, based upon, or in any way involving actual or alleged conduct in the capacity as a director, officer or employee of any Subsidiary, which actual or alleged conduct occurred prior to or after the time period when such subject entity was a Subsidiary of the Insured Entity;

K.  Which is indemnified by an Outside Entity.

**NOTE: THE ACTUAL OR ALLEGED CONDUCT OF ANY DIRECTOR, OFFICER OR THE COMPANY SHALL NOT BE IMPUTED TO ANY OTHER DIRECTOR OR OFFICER FOR THE PURPOSE OF DETERMINING THE APPLICABILITY OF THE ABOVE EXCLUSIONS.**

**SECTION V.  LIMIT OF LIABILITY, RETENTIONS, ALLOCATION**

A.  The Insurer shall be liable to pay one hundred percent (100%) of covered Loss in excess of the applicable Retention up to the Limit of Liability stated in Item 3 of the Declarations. The Limit of Liability is the Insurer's maximum aggregate limit of liability for all Loss under all of the Insuring Agreements combined, arising out of all Claims first made during the Policy Period and Discovery Period (if applicable), regardless of the time of payment by the Insurer.

B.  Defense Costs shall be part of and not in addition to the Limit of Liability, and such Defense Costs shall reduce the Limit of Liability and shall also be applied against the Retention.

Form No. CIC-7418 (9/97)
page 4 of 8

C. More than one Claim based upon or arising out of the same Wrongful Act(s), or facts, circumstances or situations, or one or more series of similar, repeated or continuous Wrongful Acts, shall be considered a single Claim, and only one Retention shall be applicable to such single Claim. Such single Claim shall be deemed to be first made on the date when the earliest Claim is first made, or on the date within the Policy Period in which notice of a potential Claim pursuant to Section VII.B. is given.

D. One Retention amount shall apply to the covered portion of each and every single Claim. In the event a single Claim is covered under more than one Insuring Agreement, the Retentions stated in Item 4 of the Declarations shall be applied separately to the portion of the Claim covered by each Insuring Agreement, and the sum of the Retentions so applied shall constitute the Retention for each single Claim, which in total shall not exceed the largest of the applicable Retentions. Notwithstanding other Policy provisions, for purposes of determining the applicable Retention(s), the Retentions applicable to Insuring Agreement Section I.B. shall apply to Claims made against Directors or Officers, and indemnification (including advancement of defense costs) by the Company will be presumed to be required or permissible, whenever indemnification is legally permissible under the broadest applicable laws, regardless of whether the Company has agreed in its by-laws or otherwise to provide such indemnification, unless indemnification cannot be provided due to financial insolvency.

E. Notwithstanding the foregoing provisions of Section V, the Retention(s) applicable to Securities Claims shall apply only to Defense Costs. Further, no Retention shall apply in the event of a Determination of No Liability in a Securities Claim, in which event the Insurer shall reimburse any Defense Costs paid by the Directors and Officers or the Company within the Retention amount. Such reimbursement shall be made within sixty (60) days of the Determination of No Liability, only if:

   (1) the subject Securities Claim, or another Claim which would be treated as a single Claim with the subject Securities Claim under Section V.C., is not brought or refiled within such sixty (60) day period;

   (2) the Determination of No Liability is not challenged by motion or appeal within such sixty (60) day period; and

   (3) only with respect to a dismissal of or stipulation to dismiss a Securities Claim without prejudice, the Company provides a written undertaking satisfactory to the Insurer which states that such reimbursement shall be returned to the Insurer if the subject Securities Claim, or another Securities Claim which would be treated as a single Claim with the subject Securities Claim under Section V.C., is brought or refiled after the sixty (60) day period.

F. The Company is not covered under Insuring Agreement Section I.A.; the Company is covered, subject to the Policy's terms and conditions, only with respect to indemnification of Directors or Officers under Insuring Agreement Section I.B. for Claims made against the Directors and Officers; but the Company is covered, subject to the Policy's terms and conditions, under Insuring Agreement Section I. C. for Securities Claims made against the Company. Accordingly, the Insurer has no obligation under this Policy for defense fees and costs incurred by, judgments against or settlements by the Company arising out of any Claims or other actions in which the Company is a party other than a covered Securities Claim, nor any obligation to pay any amount arising out of any legal liability that the Company has except with respect to covered Securities Claims against the Company.

G. If both Loss covered by this Policy and other loss are incurred, either because a Claim includes both covered and non-covered matters, or because a Claim is made against both covered and non-covered parties, then the Directors, Officers, the Company and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts. In making such determination, the parties shall take into account the relative legal and financial exposures, and the relative benefits obtained in connection with the defense and/or settlement, of and between the covered and non-covered parties and matters involved in the Claim. In the event the parties cannot agree to an appropriate allocation percentage for the Claim, then the Insurer shall be obligated to make an interim payment of the amount of Loss, including Defense Costs, which the parties agree is not in dispute until a final allocation is agreed upon or determined pursuant to the terms of this Policy.

## SECTION VI.  DEFENSE COSTS AND SETTLEMENTS

A.  The Directors, Officers and the Company shall not admit liability for or settle any Claim, or incur Defense Costs in connection with any Claim, without the Insurer's prior written consent, which consent shall not be unreasonably withheld.  The Insurer shall be entitled to full information and all particulars it may request in order to reach a decision as to such consent.  Any Defense Costs incurred, and/or settlements or judgments agreed to prior to the Insurer's consent thereto shall not be covered by this Policy.

B.  The Insurer shall, upon request, advance Defense Costs prior to the final disposition of a Claim, subject to an allocation, if any, determined in accordance with Sections V.F. and V.G., and subject further to prior satisfaction of the applicable Retention.  Any agreement by the Insurer to advance Defense Costs shall be on the condition that the parties for whom the Defense Costs are advanced provide a written undertaking satisfactory to the Insurer which states that in the event it is finally established that the Insurer has no liability under the Policy to the Directors, Officers or the Company, or any of them separately, for such Claim, they agree to repay to the Insurer upon demand all Defense Costs advanced on their behalf.

C.  It shall be the duty of the Directors, Officers and the Company and not the duty of the Insurer to defend Claims, and the Directors, Officers and the Company shall obtain the consent of the Insurer as to the choice of defense counsel, which consent shall not be unreasonably withheld.  The Insurer shall at all times have the right, but not the duty, to associate in the investigation, defense or Settlement of any Claim that appears reasonably likely to involve the Insurer.

D.  The Directors, Officers and the Company shall give the Insurer such information, assistance and cooperation as the Insurer reasonably requests, including furnishing the Insurer with copies of reports, investigations, pleadings and any other information requested by the Insurer in connection therewith.

E.  The Insurer shall have the right but not the obligation to make any investigation it deems expedient with respect to a Claim and, with the consent of the Company or the person(s) against whom the Claim is made, make Settlement within the available Limit of Liability (whether above or below the applicable Retention).

## SECTION VII.  NOTICE OF CLAIMS AND POTENTIAL CLAIMS

A.  The Directors, Officers and/or the Company shall give the Insurer written notice as soon as practicable of any Claim first made during the Policy (or Discovery) Period, and in no event later than thirty (30) days after the expiration of the Policy (or Discovery) Period, and, for Claims deemed to be first made during the Policy Period under Section VII.B., within sixty (60) days from when such Claims are made.

B.  If, prior to the effective date of the expiration of the Policy Period, the Directors, Officers or the Company first become aware of circumstances which may subsequently give rise to a Claim, and the Directors, Officers or the Company as soon as practicable during the Policy Period give written notice to the Insurer of the circumstances and the reasons for anticipating a Claim, then any Claim subsequently made based upon such circumstances (of which the Insurer receives proper notice under Section VII.A.) shall be deemed for the purposes of this Policy to have been first made during the Policy Period; provided, however, as a condition precedent for any coverage to arise hereunder, such notice must be specific and contain full particulars as to the facts and circumstances potentially giving rise to the Claim, including a narrative setting forth dates, names of the potential plaintiffs and affected Directors or Officers, names of other parties involved, the nature and scope of the anticipated Claim, and all reasons why such a Claim is reasonably to be anticipated.

## SECTION VIII.  GENERAL CONDITIONS

**A.  CANCELLATION OR NON-RENEWAL**

(1)  By acceptance of this Policy, the Company and the Directors and Officers hereby confer the exclusive power and authority to cancel this Policy to the Insured Entity.  The Insured Entity may cancel this Policy by surrender thereof to the Insurer, or by mailing to the Insurer written notice stating when thereafter such cancellation shall be effective.  The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period.  Delivery of such written notice shall be equivalent to mailing.

(2)  This Policy may be canceled by the Insurer by mailing to the Insured Entity written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective.  The mailing of such notice shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period.  Delivery of such written notice by the Insurer shall be equivalent to mailing.

(3)  If this Policy is canceled by the Insured Entity, the Insurer shall retain the customary short rate portion of the premium.  If this Policy is canceled by or on behalf of the Insurer, the Insurer shall retain the pro-rata portion of the premium.  Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

(4)  If the Insurer elects not to renew this Policy, the Insurer shall provide the Insured Entity with no less than sixty (60) days advance notice thereof, unless any of the events described in Section VIII.B. occur.

**B.  SUBSEQUENT MAJOR EVENTS**

If in the event of:

(1)  the acquisition by another entity or persons of the Insured Entity, a majority of its voting securities, or substantially all of its assets;

(2)  the merger or consolidation of the Insured Entity into or with another entity such that the Insured Entity is not the surviving entity; or

(3)  the appointment of a receiver, liquidator, conservator, trustee or similar official with respect to the Insured Entity;

then the Policy will remain in effect until the end of the Policy Period as stated in Item 2 of the Declarations, but only with respect to Wrongful Acts occurring prior to such acquisition, merger, consolidation or appointment.  Further, the premium will be considered fully earned upon the occurrence of any of the above events in consideration of the coverage extended.

**C.  REPRESENTATIONS**

It is agreed that the information and statements contained in the Application for this Policy, a copy of which is attached hereto, and any materials submitted therewith (which are on file with the Insurer and shall be deemed to be attached to and part of the Application as if physically attached hereto), are the basis of this Policy and are to be considered as incorporated into and constituting a part of this Policy.

By acceptance of this Policy the Directors and Officers and the Company agree:

(1)  That the statements in the Application and in any materials submitted therewith are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Insurer under this Policy, and that this Policy is issued in reliance upon the truth of such representations; and

Form No. GIC-7418 (9/97)
page 7 of 8

(2) That in the event that the Application, including materials submitted therewith, contains misrepresentations made with the actual intent to deceive, or contain misrepresentations which materially affect either the acceptance of the risk or the hazard assumed by the Insurer under this Policy, no coverage shall be afforded under this Policy (including under Insuring Agreement Section I.B.) for any Director or Officer who did not sign the Application but who knew on the inception date of this Policy the facts that were so misrepresented, and this Policy in its entirety shall be void and of no effect whatsoever if such misrepresentations were known to be untrue on the inception date of the Policy by one or more of the individuals who signed the Application.

D. ACTION AGAINST THE INSURER

(1) No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all terms of this Policy, and until the Directors', Officers' or the Company's obligation to pay shall have been finally determined, either by an adjudication or by written agreement of the Directors, Officers, and/or the Company, and the Insurer.

(2) No persons or entities shall have any right under this Policy to join the Insurer as a party to any Claim, nor shall the Insurer be impleaded by the Directors, Officers, or the Company or their legal representatives in any Claim

E. SUBROGATION

In the event of any payment under this Policy, the Insurer shall be subrogated to any of the Directors', Officers' and the Company's rights to recovery thereof. The Directors or Officers and the Company shall execute all papers required and shall do everything that may be necessary to secure or transfer such rights, including the execution of such documents as may be necessary to enable the Insurer to effectively bring suit in the name of any Director, Officer or the Company. The Insurer shall not exercise these rights of subrogation against a Director or Officer with respect to Loss excluded by Section IV.B., however, unless such individual has been judicially determined to have committed deliberate fraudulent, dishonest or criminal acts.

F. ASSIGNMENT

Assignment of interest under this Policy shall not bind the Insurer unless its consent is endorsed hereon.

G. CONFORMITY TO STATUTE

Any terms of this Policy which are in conflict with the terms of any applicable laws construing this Policy, including any endorsement to this Policy which is required by any state Department of Insurance (or equivalent authority) ("State Amendatory Endorsement"), are hereby amended to conform to such laws. Nothing herein shall be construed to restrict the terms of any State Amendatory Endorsement. In addition, to the extent permissible by law, nothing in any State Amendatory Endorsement shall be construed to restrict the terms of this Policy.

H. ENTIRE AGREEMENT

By acceptance of this Policy, the Directors, Officers and the Company and the Insurer agree that this Policy (including the Application and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties.

I. CHANGES

Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Insurer shall not effect a waiver or a change in any part of this Policy or stop the Insurer from asserting any right under the terms of this Policy. This Policy cannot be waived or changed, except by written endorsement issued to form a part of this Policy.

Form No. GIC-7418 (9/97)
page 8 of 8

 GENESIS INSURANCE COMPANY

### ADDITION TO SECTION VIII
### GENERAL CONDITIONS

Policy Number: YXB001625A

It is understood and agreed that Section VIII. of the Policy is hereby amended by the addition of the following paragraph J to said Section:

**J.  EMPLOYMENT PRACTICES EXTENSION**

It is hereby understood and agreed that coverage as is afforded by this Policy is extended to Employment Practices Claims against an INSURED (whether such claims are brought by a past, present or prospective employee or employees, whether directly or by class action, or by the Equal Employment Opportunity Commission [EEOC] or any other state or federal governmental authority regulating employment practices, or by any other person or entity) subject to a $5,000,000 sublimit of liability for all Employment Practices Claims made in the aggregate during the Policy Period, the terms, conditions and exclusions of this endorsement and to the other terms, conditions and exclusions of the Policy.

It is further understood and agreed that for the purposes of this endorsement only, the following definitions shall apply:

(1)  "Employment Practices Claim" shall mean any Claim relating to a past, present or prospective employee of the Company for or arising out of any actual or alleged wrongful dismissal, discharge or termination, either actual or constructive, of employment, employment-related misrepresentation, wrongful failure to employ or promote, wrongful deprivation of career opportunity, wrongful discipline; failure to grant tenure or negligent employee evaluation, or sexual or workplace harassment of any kind (including the alleged creation of a harassing workplace environment); or unlawful discrimination, whether direct, indirect, intentional or unintentional, or failure to provide adequate employee policies and procedures.

Employment Practices Claims shall include claims brought under state, local or federal law (whether common or statutory) and shall include but not be limited to allegations of violations of the following federal laws (as amended) including regulations promulgated thereunder:

(a)  Americans with Disabilities Act of 1992 (ADA),

(b)  Civil Rights Act of 1991,

(c)  Age Discrimination in Employment Act of 1967 (ADEA), including the Older Workers Benefit Protection Act of 1990,

(d)  Title VII of the Civil Rights Law of 1964, as amended (1983), including the Pregnancy Discrimination Act of 1978,

(e)  Civil Rights Act of 1866, Section 1981, and

(f)  Fifth and Fourteenth Amendments of the U.S. Constitution.

(2)  "INSURED" shall include for the purposes of Employment Practices Claims only, any Director, Officer or employee of the Company whether such individual is in a supervisory, co-worker or subordinate position or otherwise.  Coverage shall automatically apply to all new Directors, Officers or employees after the inception date of Policy.

It is further understood and agreed that additional coverage is hereby granted for Employment Practices Claims only by amending Exclusions IV. E. and IV. I. of the Policy as follows:

(E)   for bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property, including the loss of use thereof;

(I)   which are brought by any Director or Officer or the Company; or which are brought by any security holder of the Company, whether directly or derivatively, unless such Claim (s) is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any Director or Officer or the Company, provided, however, this exclusion shall not apply to Employment Practices Claims;

Exclusions IV. E. and IV. I. of the Policy remain in effect for Claims other than Employment Practices Claims.

It is further understood and agreed that Item 4. of the Declarations Page is amended for Employment Practices Claims only as follows:

ITEM 4.   Retentions Applicable to Insuring Agreements

$         0   Each INSURED for each Employment Practices Claim, but in no event exceeding

$         0   Each Employment Practices Claim for all INSUREDS under Insuring Agreement Section I.A.; and

$ 150,000   Each Employment Practices Claim under Company Reimbursement Insuring Agreement Section I. B.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Date:  January 8, 1999                     By:  *Michael Zartman*

                                                Company Officer or Authorized Agent

Form No. GIC-7425.EP  (08/93)

# GENESIS    GENESIS INSURANCE COMPANY

**ADDITION TO SECTION VIII**
**GENERAL CONDITIONS**

Policy Number: YXB001625A

It is understood and agreed that the Policy is amended as follows:

**CHANGES TO SECTION II:**

Section II is hereby amended as follows:

A.  "Claim" shall mean the following proceedings initiated against a Director or Officer for money damages or other relief, whether brought within or outside of the United States:

  (1)  any civil, arbitration or administrative proceeding commenced by: (a) service of a complaint or similar pleading, or (b) receipt of a notice of charges;
  (2)  any criminal proceeding commenced by the return of an indictment or an information;
  (3)  any administrative or regulatory investigation commenced by a formal order of investigation;
  (4)  any appeal from the above proceedings; or
  (5)  other written or verbal demand for money or services.

  "Claim" shall also mean any of the above-listed proceedings initiated against a Director, Officer or the Company which is a Securities Claim.

B.  "Company" shall mean the Insured Entity and its Subsidiaries under Insuring Agreements Sections I.A. and Under Insuring Agreement Section I.C., "Company" shall mean the Insured Entity only. "Company" shall also include the Insured Entity as a debtor-in-possession in the event of bankruptcy.

K.  "Subsidiary" shall mean:

  (1)  any entity in which the Insured Entity owns or at any time owned fifty percent (50%) or more of the issued and outstanding voting securities, directly or indirectly, subject to clauses (2) and (3) below for acquisitions made by the Company during the Policy Period;
  (2)  any entity in which the Insured Entity acquires 50% or more of the issued and outstanding voting securities or substantially all of the assets, directly or indirectly, during the Policy Period, if such entity's total assets represent less than 25% of the Company's total assets prior to the acquisition; and
  (3)  for forty-five (45) days immediately following the acquisition date, any entity in which the Insured Entity acquires 50% or more of the issued and outstanding voting securities or substantially all of the assets, directly or indirectly, during the Policy Period, if such entity's total assets represent more than 25% of the Company's total assets prior to the acquisition; provided, however, such entity will not be considered a Subsidiary or included within the definition of Company beyond such automatic forty-five (45) day period unless the Insurer specifically agrees in writing to provide such coverage, subject to such additional information, coverage terms and premium as the Insurer may require.

  The term "Subsidiary" shall also include any subsidiary of a Subsidiary.

**CHANGES TO SECTION VII:**

Section VII is hereby amended as follows:

A. The Directors, Officers and/or the Company shall give the Insurer written notice as soon as practicable of any Claim first made during the Policy (or Discovery) Period, and in no event later than sixty (60) days after the expiration of the Policy (or Discovery) Period, and, for Claims deemed to be first made during the Policy Period under Section VII.B., within sixty (60) days from when such Claims are made.

**CHANGES TO SECTION VIII:**

Section VIII is hereby amended as follows:

A.(2) This Policy shall not be canceled by the Insurer except for nonpayment of the premium.

A.(4) If the Insurer elects not to renew this Policy, the Insurer shall provide the Insured Entity with no less than sixty (60) days advance notice thereof, unless any of the events described in Section VIII.B. occur.

B. SUBSEQUENT MAJOR EVENTS

If in the event of:

(1) the acquisition by another entity or persons of the Insured Entity, a majority of its voting securities, or substantially all of its assets; or
(2) the merger or consolidation of the Insured Entity into or with another entity such that the Insured Entity is not the surviving entity;

then the Policy will remain in effect until the end of the Policy Period as stated in Item 2 of the Declarations, but only with respect to Wrongful Acts occurring prior to such acquisition, merger, consolidation or appointment. Further, the premium will be considered fully earned upon the occurrence of any of the above events in consideration of the coverage extended. The Company will have the right, upon the events described in (1) and (2) above to purchase a six (6) year "run-off" policy to replace this Policy, under the same terms and conditions, for no more than 1.1 times the annual premium, less any unearned premium remaining under this Policy if it is canceled and so replaced.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy other than as above stated.

Date: _January 8, 1998_                    By: _Michael Zartman_

                                        Company Officer or Authorized Agent

Form No. GIC-7425  (08/93)



**GENESIS INSURANCE COMPANY**

REINSTATEMENT OF EXCESS LIMIT ENDORSEMENT

Policy Number: YXB001625A

It is understood and agreed that Section V. of the Policy is hereby amended by the addition of the following paragraph (H):

H.    In the event a Claim is first made after during the Policy Period and reported to the Insurer pursuant to Section VII. A. of the Policy, then, upon the Company's written request to the Insurer, and upon payment of an additional premium of one hundred percent (120%) of the then unearned Premium, the Limit of Liability as stated in Item 3 of the Declarations shall be amended to consist of both a **First Limit** and a **Reinstated Excess Limit** as follows:

(1)    The Limit of Liability shall include a "Reinstated Excess Limit" equal to the Limit of Liability as stated in Item 3 of the Declarations for all Loss in the aggregate arising out of Claims first made during the part of the Policy Period beginning at 12:01 a.m. on the Effective Date of the Reinstated Excess Limit and ending on the expiration of the Policy Period or the Discovery Period (if applicable). The Reinstated Excess Limit shall be separate from and in addition to the First Limit.

(2)    The Limit of Liability shall also include a "First Limit" equal to the Limit of Liability as stated in Item 3 of the Declarations for all Loss in the aggregate arising out of Claims first made and reported during the Policy Period.

(3)

(a)    The Reinstated Excess Limit shall not apply to Claims made after the Effective Date of the Reinstated Excess Limit which are considered a single Claim (under Section V.C. above) with any Claim first made prior to the Effective Date of the Reinstated Limit, regardless of when or whether the prior Claim is reported to the Insurer.

(b)    The Reinstated Excess Limit shall not apply to Claims based upon or arising out of any Wrongful Acts if any Directors or Officers knew or could have reasonably foreseen, prior to or on the Effective Date of the Reinstated Limit, that such Wrongful Acts might give rise to a Claim.

(c)    The Reinstated Excess Limit shall be excess of (and not available until after full exhaustion of) the First Limit and all limits of liability provided by other insurance policies which are specifically excess of this Policy by reference hereto (including reference to the Policy Number).

(4)    The "Effective Date of the Reinstated Excess Limit" is the date upon which the Insurer is in receipt of both the written request and additional premium as set forth herein.

(5)    Under no circumstances may the covered Loss for any single Claim (under Section V.C.) exceed $25,000,000, whether applied from the First Limit or the Reinstated Excess Limit, or a combination thereof.

(6) There may be one and only one Reinstated Excess Limit, and one and only one Effective Date of the Reinstated Excess Limit, under this Policy.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Date: <u>January 8, 1996</u>                    By: _____

                                                          Company Officer or Authorized Agent

Form No. GIC-7425.RE (08/93)

# GENESIS    GENESIS INSURANCE COMPANY

## DIRECTORS AND OFFICERS LIABILITY INSURANCE
## COLORADO DISCLOSURE FORM CLAIMS MADE POLICY

Policy Number: YXB001625A

### IMPORTANT NOTICE TO POLICYHOLDERS

THIS DISCLOSURE FORM IS NOT YOUR POLICY. IT MERELY DESCRIBES SOME OF THE MAJOR FEATURES OF OUR CLAIMS MADE POLICY FORM. READ YOUR POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, AND WHAT IS AND IS NOT COVERED. ONLY THE PROVISIONS OF YOUR POLICY DETERMINE THE SCOPE OF YOUR INSURANCE PROTECTION.

Your Policy is a claims made policy. It applies only to Claims made against you after the inception date and before the end of the Policy Period involving injury or damage that occurs after the Policy's Past Acts Date. Upon termination of your Policy, a Discovery Period may be available.

### OCCURRENCE VS. CLAIMS-MADE

There is no difference in the kinds of injury and damage covered by either an "occurrence" policy or a "claims made" policy. Claims for damages may be assigned to different policy periods, however, depending on which policy you have purchased.

In an "occurrence" policy, coverage is provided for liability because of bodily injury and property damage that occurs during the policy period, no matter when the claim is made.

In your "claims made" policy, coverage is provided for a Wrongful Act if the Claim is first made during the Policy Period. The Claim must be a demand for damages by an injured party but it does not have to be in writing. Under most circumstances, a Claim is considered made when it is received and recorded by you or by us; but sometimes, a Claim may be deemed made at an earlier time. This can happen when another Claim for the same injury or damage has already been made, or when the Claim is received and recorded during the Discovery Period.

### PRINCIPAL BENEFITS

This Policy provides coverage for Loss resulting from Claims first made during the Policy Period against Officers and Directors for a Wrongful Act up to the maximum dollar limit specified in the Policy.

The principal benefits and coverage are explained in detail in your claims made policy. Please read it carefully.

### EXCEPTION, REDUCTION AND LIMITATIONS

Your claims made policy contains certain exceptions, reductions and limitations. Please read it carefully.

### RENEWALS, TAILS AND DISCOVERY PERIODS

Your claims made policy has some unique features relating to renewal, Discovery Period, and coverage of occurrences with long periods of exposure. These special claims made provisions are described below:

### Special "Claims Made" Provisions

Two concepts relating to continuity of coverage under the "claims made" policy are especially important to understand. These involve the "Past Acts Date" and the "Discovery Period."

### Retroactive Date

When you have a "Past Acts Date", there is no coverage for a Wrongful Act that occurred before that Past Acts Date, even if the Claim is first made during the Policy Period.

If there is no Past Acts Date, the Policy will respond only to Claims first made during the Policy Period for covered damage, no matter when the damage occurred. But if previous "occurrence" type insurance also applies to the injury or damage, your "claims made" policy will be excess; that is, it will apply only after that previous insurance is used up.

If there is a Past Acts Date, it cannot be moved ahead in time, except under certain circumstances. e.g., you changed insurers; there is substantial change in your operations that increases your exposure to loss; you failed to provide us with information you knew about the nature of your business or premise, and then only with your written consent. It is important to understand how the "claims made" policy's Discovery Period guarantees continuity of coverage if you are offered a renewal or replacement policy with a later Past Acts Date than the one in your current Policy.

### DISCOVERY PERIOD or "Tails"

### WARNING

If a Claim is made after the termination of your claims made policy, you may not have coverage for that Claim unless you purchase a Discovery Period or "tail" endorsement, which must be offered to you for at least one year, at a premium not to exceed 200% of your terminated policy premium.

Carefully review the policy provisions regarding the available Discovery Period, especially the length of coverage and price, and the time during which you must purchase or accept any offered Discovery Period.

Date:  January 8, 1999          By: _Michael Zartman_
                                    _____
                                    Company Officer or Authorized Agent

FORM NO. GIC-7473 (08/93)  CO



**GENESIS INSURANCE COMPANY**

DIRECTORS AND OFFICERS LIABILITY INSURANCE
COLORADO FRAUD STATEMENT

IMPORTANT NOTICE TO APPLICANTS

Policy Number: YXB001625A

THE STATE OF COLORADO REQUIRES THAT THIS STATEMENT BE ATTACHED TO EVERY DIRECTORS
AND OFFICERS LIABILITY INSURANCE POLICY APPLICATION. PLEASE READ THE STATEMENT
CAREFULLY.

IT IS UNLAWFUL TO KNOWINGLY PROVIDE FALSE, INCOMPLETE,
OR MISLEADING FACTS OR INFORMATION TO AN INSURANCE
COMPANY FOR THE PURPOSE OR DEFRAUDING OR ATTEMPTING
TO DEFRAUD THE COMPANY. PENALTIES MAY INCLUDE
IMPRISONMENT, FINES, DENIAL OR INSURANCE, AND CIVIL
DAMAGES. ANY INSURANCE COMPANY OR AGENT OF AN
INSURANCE COMPANY WHO KNOWINGLY PROVIDES FALSE
INCOMPLETE, OR MISLEADING FACTS OR INFORMATION TO A
POLICY HOLDER OR CLAIMANT FOR THE PURPOSE OF
DEFRAUDING OR ATTEMPTING TO DEFRAUD THE POLICY
HOLDER OR CLAIMANT WITH REGARD TO A SETTLEMENT OR
AWARD PAYABLE FROM INSURANCE PROCEEDS SHALL BE
REPORTED TO THE COLORADO DIVISION OF INSURANCE WITHIN
THE DEPARTMENT OF REGULATORY AGENCIES.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions,
agreements or limitations of any policy issued by the Insurer.

Date: <u>January 8, 1999</u>                         By: _Michael Zartman_ _____
                                                              Company Officer or Authorized Agent

FORM NO. GIC-7474.CO (06/96)

# GENESIS    GENESIS INSURANCE COMPANY

### DIRECTORS AND OFFICERS LIABILITY INSURANCE
### COLORADO AMENDATORY ENDORSEMENT

Policy Number: YXB001625A

Section III. is hereby amended as follows:

### SECTION III. DISCOVERY PERIOD

E. [additional provision]
In the event of renewal on terms and conditions different from those in effect during the Policy Period, the Company shall have the right, upon payment of an additional premium to be determined by the Insurer, to an extension of the original terms and conditions with respect to any Claim first made during the period of one year after the effective date of renewal, but only with respect to any Wrongful Act committed prior to the effective date of the renewal. This right of extension shall terminate unless written notice of such election is received by the Insurer within thirty (30) days after the effective date of renewal.

B. [replacement]
The right to purchase the Discovery Period shall terminate unless a written request for the Discovery Period is given to the Insurer within sixty (60) days after the effective date of cancellation, or, in the event of a refusal to renew, within sixty (60) days after the Policy Period ends, together with payment of the appropriate premium for the Discovery Period. In the event that such written request and premium paid is not so given to the Insurer, there shall be no right to purchase the Discovery Period at any later date.

All other provisions of the Policy remain unchanged.

Date: January 8, 1999                    By: *Michael Zartman*

                                         Company Officer or Authorized Agent

FORM NO. GIC-7480 (09/97)  CO

# GENESIS    GENESIS INSURANCE COMPANY

### DIRECTORS AND OFFICERS LIABILITY INSURANCE
### COLORADO AMENDATORY ENDORSEMENT

Policy Number: YXB001625A

Section VIII. is hereby amended as follows:

X.    [additional provision]
      LOSS INFORMATION

The Insurer must furnish to the Insured Entity, upon its request and within thirty (30) days thereafter, sufficient information about closed or paid Claims, Claims for which the Insurer has established reserves, and claims for which the Insurer has received notices of occurrences which could give rise to Claims, to allow the Insured Entity to determine how much of its aggregate coverage remains available under the Policy.

All other provisions of the Policy remain unchanged.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above-mentioned policy other than as above stated.

Date:  January 8, 1999                        By:  _Michael Zartman_
                                                   _____
                                                   Company Officer or Authorized Agent

FORM No. GIC-7461 (9/97) CO

# GENESIS    GENESIS INSURANCE COMPANY

## OUTSIDE DIRECTORSHIP COVERAGE
### (WITH EQUITY INTEREST)

Policy Number: YXB001625A

It is hereby understood and agreed that the insurance provided by this Policy is extended to include coverage for the Directors and Officers of the Company as Directors or Officers of _____ (hereinafter called "Other Entity"), as part of their regularly assigned duties with the Company subject to the Policy terms and conditions, provided that coverage shall not apply to any Loss in connection with any Claim made against such Directors or Officers, unless the Directors or Officers are entitled to indemnification by the Company pursuant to applicable laws and regulations. It is further understood and agreed that:

1.  Coverage provided by this Endorsement is available only to the extent that the serving Directors or Officers are not indemnified by the Other Entity; and

2.  This extension of coverage is to be excess of any other insurance, including but not limited to, Directors and Officers Liability Insurance and/or Directors and Officers Reimbursement Insurance provided for, to, or by the Other Entity.

Nothing herein contained shall be held to vary, alter, waive, or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Date: January 8, 1999                    By: *Michael Zartman*

                                         Company Officer or Authorized Agent

Form No. GIC-7456 (08/93)

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

_Charles Barr_

Secretary

_H. Roger Steiner_

President

GIC-12-8J