# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, Chapter 11 Trustee of the
Post-Confirmation Bankruptcy Estates of
CORAM HEALTHCARE CORPORATION
and CORAM, INC.,

        Plaintiff,

        v.

DANIEL D. CROWLEY; DONALD J.
AMARAL; WILLIAM J. CASEY; L. PETER
SMITH; AND SANDRA L. SMOLEY,

        Defendants.

Case No. 04-1565-SLR

---

## PLAINTIFF'S ANSWERING BRIEF
## IN OPPOSITION TO THE OUTSIDE DIRECTOR DEFENDANTS'
## MOTION TO DISMISS

---

OF COUNSEL:

Barry E. Bressler
Wilbur L. Kipnes
Nancy Winkelman
Jennifer Nestle
Han Nguyen
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Phone: (215) 751-2000
Fax:    (215) 751-2205

Dated:  April 1, 2005

Rolin P. Bissell (# 4478)
Glenn C. Mandalas (# 4432)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Phone: (302) 571-6600
Fax:    (302) 571-1253
rbissell@ycst.com

*Attorneys for Arlin M. Adams*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ........................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS ............................................... 2

SUMMARY OF ARGUMENT ....................................................................... 3

STATEMENT OF FACTS .............................................................................. 5

      A.    The Parties ................................................................................... 5

      B.    Crowley's Conflict of Interest and the Outside Directors' "Don't Ask, Don't Tell" Approach ................................................................. 6

      C.    The Bankruptcy Proceedings ....................................................... 9

      D.    The Complaint ............................................................................. 12

ARGUMENT .................................................................................................. 14

I.    THE OUTSIDE DIRECTORS MISAPPLY THE RULE 12(b)(6) MOTION TO DISMISS STANDARD. ............................................... 14

II.   THE COMPLAINT ADEQUATELY ALLEGES THAT THE OUTSIDE DIRECTORS BREACHED THEIR FIDUCIARY DUTIES. ................. 17

      A.    The Outside Directors Misstate Delaware Breach of Fiduciary Duty Law. ....... 18

           1.    The Duty of Loyalty and Duty of Good Faith are Separate. ......... 19

           2.    A Complaint Will Be Dismissed Only if it Alleges Solely a Breach of the Duty of Care ............................................................... 21

      B.    The Outside Directors' Knowing Indifference to Crowley's Conflict of Interest States a Claim for Breach of Fiduciary Duty. ................................. 23

CONCLUSION ................................................................................................ 31

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Abbott Laboratories Derivative S'holders Litig.*,
    325 F.3d 795 (7th Cir. 2003) ............................................................................29

*In re Burlington Coat Factory Sec. Litig.*,
    114 F.3d 1410 (3d Cir. 1997)....................................................................16, 17

*California Public Employees' Retirement System v. Chubb Corp.*,
    394 F.3d 126 (3d Cir. 2004)..............................................................................15

*In re Cendant Corp. Derivative Action Litig.*,
    189 F.R.D. 117 (D.N.J. 1999)............................................................................22

*Continuing Creditors' Committee of Star Telecommunications, Inc. v. Edgecomb*,
    No. 03-278, 2004 U.S. Dist. LEXIS 25807
    (D. Del. Dec. 21, 2004) ......................................................................15, 20, 21

*Gomez v. Illinois State Bd. of Educ.*,
    811 F.2d 1030 (7th Cir. 1987) ..........................................................................17

*Hollinger International, Inc. v. Hollinger, Inc.*,
    No. 04-C-0698, 2005 WL 589000
    (N.D. Ill. March 11, 2005) ................................................................................30

*Leone v. Aetna Casualty & Surety Co.*,
    599 F.2d 566 (3d Cir. 1979)..............................................................................16

*The Litigation Trust of MDIP, Inc. v. Rapoport*,
    No. 03-779, 2004 WL 3101575
    (D. Del. Nov. 29, 2004) ....................................................................................30

*McCall v. Scott*,
    250 F.3d 997 (6th Cir. 2001) ............................................................................29

*In re Reliance Sec. Litig.*,
    91 F. Supp. 2d 706 (D. Del. 2000)....................................................................22

*Stanziale v. Nachtomi*,
    No. 01-403, 2004 U.S. Dist. LEXIS 7375
    (D. Del. Apr. 20, 2004) ......................................................................................21

*In re Trump Hotels S'holder Derivative Litig.*,
    Nos. 96-C-7820, 96-C-8527, 2000 U.S. Dist. LEXIS 13550
    (S.D.N.Y. Sept. 21, 2000) ................................................................................................22

*In re Warfarin Sodium Antitrust Litig.*,
    214 F.3d 395 (3d Cir. 2000) ...........................................................................................15

## STATE CASES

*Alidina v. Internet.com Corp.*,
    No. 17235, 2002 Del. Ch. LEXIS 156
    (Del. Ch. Nov. 6, 2002) ..............................................................................................21, 22

*Aronson v. Lewis*,
    473 A.2d 805 (Del. 1984) ................................................................................................15

*Blackmore Partners, LP v. Link Energy, LLC*,
    No. CV-454, 2004 Del. Ch. LEXIS 164
    (Del. Ch. Nov. 10, 2004) ................................................................................................22

*Cede & Co. v. Technicolor, Inc.*,
    634 A.2d 345 (Del. 1993) ...............................................................................................20

*Emerald Partners v. Berlin*,
    787 A.2d 85 (Del. 2001) .................................................................................................19

*In re Emerging Communications, Inc. S'holders Litig.*,
    No. CA-16415, 2004 WL 1305745
    (Del. Ch. June 4, 2004) ...................................................................................................20

*In re Lukens Inc. S'holders Litig.*,
    757 A.2d 720 (Del. Ch. 1999) ....................................................................................15, 22

*Malone v. Brincat*,
    722 A.2d 5 (Del. 1998) ...............................................................................................19, 20

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001) .............................................................................................22

*McMullin v. Beran*,
    765 A.2d 910 (Del. 2000) ...........................................................................................19, 20

*O'Reilly v. Transworld Healthcare, Inc.*,
    745 A.2d 902 (Del. Ch. 1999) ........................................................................................22

*Official Committee of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins*,
    No. 20228, 2004 Del. Ch. LEXIS 122
    (Del. Ch. Aug. 24, 2004).......................................................................................20, 30

*Orman v. Cullman*,
    794 A.2d 5 (Del. Ch. 2002)............................................................................................22

*Production Resources Group, LLC v. NCT Group, Inc.*,
    863 A.2d 772 (Del. Ch. 2004).......................................................................................22

*Sanders v. Wang*,
    No. 16640, 1999 WL 1044880
    (Del. Ch. Nov. 8, 1999).................................................................................................22

*In re Walt Disney Co. Derivative Litigation*,
    825 A.2d 275 (Del. Ch. 2003).................................................................................. *passim*

## FEDERAL RULES AND STATUTES

Fed. R. Civ. P. 12(b)(6)............................................................................................ *passim*

11 U.S.C. § 1129...................................................................................................................9

28 U.S.C. § 1404(a) ............................................................................................................2

## DELAWARE RULES AND STATUTES

Del. Ch. Ct. R. 23.1...........................................................................................................15

8 Del. Code § 102(b)(7) ................................................................................................ *passim*

## INTRODUCTION

Plaintiff, Arlin M. Adams, as Chapter 11 Trustee ("Trustee") of the Post-Confirmation Bankruptcy Estates of Coram Healthcare Corporation and its wholly-owned subsidiary Coram, Inc. (collectively, "Coram"), submits this answering brief in opposition to the motion to dismiss of defendants Donald J. Amaral, William J. Casey, L. Peter Smith, and Sandra L. Smoley (collectively, "the Outside Directors").

The Outside Directors assert that they have no liability under Delaware law for allowing Daniel Crowley to serve as Coram's Chairman, CEO and President while he had an employment contract with one of Coram's three lenders, Cerberus Partners, L.P., under which he was paid $1 million annually (more than his compensation from Coram) and was required to follow Cerberus' directions. The Trustee's complaint contains detailed factual allegations showing that the Outside Directors made no effort to comply with their fiduciary duties under Delaware law to protect Coram from Crowley's conflict of interest.

More specifically, the Outside Directors hired Crowley knowing that he had a relationship with Cerberus but asked no questions about that relationship. They then allowed the managing partner of Cerberus to negotiate an amendment to Crowley's employment agreement with Coram that was very beneficial to Crowley. Even after the specific nature of Crowley's conflict of interest was revealed in Coram's bankruptcy proceedings and the Bankruptcy Court denied Coram's first plan of reorganization because of that very conflict, the Outside Directors did nothing. As a result, the Bankruptcy Court denied Coram's second plan of reorganization, finding that "nothing had changed" since its ruling the year before and that the Outside Directors had breached their fiduciary duties to Coram.

If a federal court could (and did) conclude from these facts that the Outside Directors breached their fiduciary duties, then *a fortiorari*, a jury also certainly could so conclude. Indeed, the Outside Directors' brazen refusal to do anything about Crowley's conflict after the Bankruptcy Court denied Coram's first plan of reorganization can only be characterized as an intentional disregard of their obligations as directors. The Outside Directors breached their most fundamental duty – to exercise independent judgment – when they were mute in the face of the Crowley conflict.

Unable to show that their conduct could not give rise to a reasonable inference that they had breached their fiduciary duties, the Outside Directors' brief instead misstates the appropriate standard of review, rewrites the complaint to suit their argument, misstates applicable precedent, and then declares that the Trustee has failed to plead a viable cause of action. For the reasons that follow, the motion should be denied.

## NATURE AND STAGE OF PROCEEDINGS

The Trustee filed this action on December 29, 2004, asserting that defendant Daniel D. Crowley, Coram's former Chairman, President and CEO, and the Outside Directors breached their fiduciary duties to Coram. On February 22, 2005, Crowley answered the complaint. (D.I. 16). The Outside Directors filed a motion to dismiss the complaint on March 4, 2005. (D.I. 17).

Also pending is the Outside Directors' motion to transfer venue to the District of Colorado pursuant to 28 U.S.C. § 1404(a). (D.I. 3). The Trustee has opposed the motion to transfer (D.I. 22); the Outside Directors filed a reply brief on March 23, 2005 (D.I. 25); and on March 28, 2005, the Trustee sought leave to file a surreply brief. (D.I. 32).

## SUMMARY OF ARGUMENT

1.    The Outside Directors argue that the complaint should be dismissed because they are exculpated from personal liability under Delaware General Corporation Law section 102(b)(7). However, as the Outside Directors acknowledge, that statute does not protect directors when they breach their duty of loyalty or commit "acts or omissions not in good faith or which involve intentional misconduct...." Contrary to the Outside Directors' arguments (and as is apparent from the express terms of the statute), the duty of loyalty and the duty of good faith are separate duties; thus, the question is not whether the complaint alleges a breach of the duty of loyalty as to the Outside Directors, but whether it alleges a breach of their duty of good faith.

2.    Delaware law is clear that directors breach their duty of good faith when they abdicate their fiduciary responsibilities. The complaint alleges that the Outside Directors hired Crowley knowing that he had a relationship with one of Coram's three creditors, yet sought no information about that relationship; allowed that very creditor's managing partner to negotiate an amendment to Crowley's employment contract with Coram; and still did nothing even after they learned that Crowley's relationship with the creditor included the creditor paying him $1 million annually, and even after the Bankruptcy Court denied their first reorganization plan on the basis that it was not proposed in good faith due to Crowley's conflict of interest. In denying their second reorganization plan for the same reason, the Bankruptcy Court described the Outside Directors as having adopted a "don't ask, don't tell" approach to Crowley's conflict of interest that breached their fiduciary duties. Certainly a jury could infer from the same conduct that the Outside Directors had so abdicated their fiduciary duties as to breach their fiduciary duty of good faith.

3. In attempting to show why such allegations fail to state a claim, the Outside Directors in effect rewrite the complaint to allege facts that it does not allege, and so avoid addressing the facts that it does allege. Contrary to the Outside Directors' "spin," the complaint does not raise issues as to the amount of Crowley's compensation, as to Crowley's qualifications for the job, or as to the Outside Directors' general management of the company (apart from the Crowley issue). Rather, the complaint focuses on the fact that the Outside Directors turned their backs on Crowley's conflict of interest – even after they had actual knowledge that he was being paid $1 million a year by one of their three creditors – and, in so doing, abdicated their fiduciary duties. The Outside Directors fail to explain how a jury could not reasonably conclude that such conduct, if proven, constitutes a breach of their fiduciary duties, because, indeed, they cannot.

## STATEMENT OF FACTS

**A.**     **The Parties**

Coram is a Delaware Corporation with its principal place of business in Colorado. Compl. ¶ 2 (D.I. 1). It is a leading provider of alternative-site infusion therapy with branches throughout the United States. *Id.* Infusion therapy involves the intravenous administration of drug therapies for nutrition, anti-infection, HIV, blood factor, pain management, chemotherapy and other purposes. *Id.*

On March 7, 2002, the United States Bankruptcy Court for the District of Delaware entered an order appointing the plaintiff Chapter 11 Trustee of Coram. Compl. ¶ 1 (D.I. 1). The Bankruptcy Court thereafter confirmed the Trustee's reorganization plan. *Id.* All appeals from the confirmation order were withdrawn, and the Trustee's plan was implemented on December 1, 2004. Coram is now a private company owned by its former lenders. *Id.* Under the Trustee's plan as approved by the Bankruptcy Court, the right to pursue causes of action against Coram's former directors was reserved to the Trustee for the exclusive benefit of Coram's former unsecured trade creditors and its former common shareholders. *See* Order Confirming the Chapter 11 Trustee's Second Amended Joint Plan of Reorganization, *In re Coram Healthcare Corp. and Coram, Inc.*, Case Nos. 00-3299 (MFW) & 00-3300 (MFW) (filed October 27, 2004).

This is the Trustee's cause of action against Coram's former directors. The defendants are Daniel D. Crowley, who was Coram's Chairman and CEO from November 1999

until his resignation in March 2003, and Coram's four Outside Directors.  Compl. ¶¶ 3-7

(D.I. 1).[1]

## B.    Crowley's Conflict of Interest and the Outside Directors' "Don't Ask, Don't Tell" Approach[2]

From approximately 1997 on, Cerberus, together with Goldman Sachs Credit

Partners L.P., and Wells Fargo Foothill (collectively referred to as "the Noteholders") owned all

of Coram's debt.  Compl. ¶ 10 (D.I. 1).  Cerberus is a substantial investor in the debt of

numerous distressed companies; it alone owned approximately 38% of Coram's debt.  *Id.*  The

managing partner of Cerberus, Stephen Feinberg, sat on Coram's Board from 1998 until July

2000.  *Id.* ¶¶ 11, 32.[3]

In early 1999, Cerberus retained Crowley as a consultant in connection with its

investments in the health care field.  Compl. ¶ 13 (D.I. 1).  In July 1999, Crowley and Cerberus

entered into an oral agreement under which Crowley agreed to work exclusively for Cerberus for

three years at a salary of $80,000 per month plus expenses, with the possibility of substantial

---

[1]    The four moving defendants are the four outside directors who were on Coram's Board of Directors at the time that the Bankruptcy Court denied Coram's first reorganization plan in December 2000.  References in this brief to "the Board" or to "the directors" include each of these four outside directors, as well as other unnamed directors.  References to the "Outside Directors" mean the four moving defendant-directors alone.

[2]    As discussed *infra*, the Bankruptcy Court described the Outside Directors as having adopted a "don't ask, don't tell" approach to Crowley's conflict of interest.

[3]    In connection with the restructuring of Coram's debt in 1998, Coram and the Noteholders entered into an Amended and Restated Securities Exchange Agreement, pursuant to which the Noteholders had the right to designate a member of the Board.  Even though Cerberus did not hold the largest share of the notes (Goldman Sachs held approximately 45%), the Noteholders designated Stephen Feinberg, the managing partner of Cerberus, to be their representative on the Board.

bonuses. *Id.* (As explained below, that oral agreement was later formalized in a written employment agreement.)

In August 1999, after Crowley and Cerberus had entered into their agreement, Cerberus managing partner, Stephen Feinberg, recommended to Coram's Board of Directors that it hire Crowley as a "consultant" or "CEO coach" to work with Coram's newly-elevated CEO, Richard Smith. Compl. ¶ 14 (D.I. 1). Feinberg disclosed to the directors that Crowley had a relationship with Cerberus, but provided no information about that relationship. *Id.* ¶ 15.

Notwithstanding their knowledge that some relationship existed between Crowley, the person they were about to hire as Coram's "CEO coach," and Cerberus, one of Coram's major creditors, none of Coram's directors asked any questions or requested any information about the Crowley/Cerberus relationship. Compl. ¶ 15 (D.I. 1). Instead, the directors approved Crowley's retention as a consultant without asking or knowing anything about Crowley's obligations to Cerberus, the nature of his work for Cerberus, or the terms of his compensation from Cerberus. *Id.* Further, the Coram directors agreed to pay Crowley $40,000 a month for his consulting services at the same time as Cerberus was paying Crowley $80,000 a month – a fact unbeknownst to the directors, because they chose not to ask. *Id.* ¶¶ 13, 15.

Smith left Coram in October 1999. Compl. ¶ 16 (D.I. 1). Crowley then took the opportunity to write to Coram Board Chair Donald Amaral, asking that Amaral consider making Crowley CEO in connection with Coram's ongoing restructuring process. *Id.* ¶ 17. Cerberus and the other Noteholders offered Coram a six-month interest accrual holiday if the directors would make Crowley Coram's CEO, and so in November 1999, the directors hired Crowley to be Coram's CEO. *Id.* ¶¶ 18, 21.

At the same time that he was negotiating with Amaral to be Coram's CEO, Crowley sent a "Personal & Confidential" letter to Feinberg requesting additional compensation from Cerberus to induce him to become CEO of Coram. Compl. ¶ 19 (D.I. 1). And the day after he signed his agreement with Coram, Crowley executed a written agreement with Cerberus, effective August 1, 1999, which memorialized the terms of their July oral agreement. *Id.* ¶ 22. The Crowley/Cerberus Employment Agreement required Crowley to devote "his entire business time, attention, skill and energy exclusively to the business of the Employer [Cerberus]" by performing duties to be assigned by Feinberg. *Id.* The Employment Agreement also provided that Cerberus could terminate Crowley for cause if Crowley did not follow Cerberus' reasonable instructions. *Id.* ¶ 22.

A few months after he had entered into his agreement with Coram to be its CEO, Crowley demanded additional compensation from Coram. Compl. ¶ 27 (D.I. 1). No one other than Feinberg himself was dispatched to negotiate an amendment to Crowley's agreement. *Id.* ¶ 28. Even though the directors had been informed of Crowley's relationship with Cerberus, they still allowed Feinberg, alone, to conduct the negotiations, still asked no questions about Crowley's relationship with Cerberus, and still did not independently review the negotiations. *Id.*

As of the time that Crowley and Feinberg were negotiating the amendment to Crowley's employment agreement, Crowley anticipated that Coram would be restructured by filing a bankruptcy petition under Chapter 11 with a proposed plan of reorganization that would eliminate the public shareholders without any payment to them. Compl. ¶ 30 (D.I. 1). Nevertheless, between November 30, 1999, when Crowley became Coram's CEO and July 31,

2000, the week before Coram filed for Chapter 11 protection, Crowley caused Coram to pay the Noteholders approximately $60 million. *Id.* ¶ 31.

## C.    **The Bankruptcy Proceedings**

On August 8, 2000, Coram filed a Chapter 11 petition in the Bankruptcy Court for the District of Delaware, together with a plan of reorganization. Compl. ¶ 33 (D.I. 1). The proposed plan provided for the cancellation of *all* shareholders' interests and for the issuance of new Coram stock to the Noteholders. *Id.*

Coram was required to file a disclosure statement in connection with the bankruptcy proceedings. Coram's statement disclosed that Crowley was acting as a consultant to Cerberus, that he generally received a fee from Cerberus for such services, but that he "receives no fee from Cerberus for any services he provides respecting the Debtors." Compl. ¶ 34 (D.I. 1). Even with this actual, specific notice of the nature and extent of Crowley's relationship with one of its major lenders, still the Outside Directors did nothing. *Id.*

Contested confirmation hearings ensued in Bankruptcy Court. On December 21, 2000, the Bankruptcy Court (Walrath, J.) held that Coram had not proposed its reorganization plan in good faith under section 1129(a)(3) of the Bankruptcy Code and therefore denied confirmation. Compl. ¶ 36 and Op. 12/21/00, attached to Complaint as Exhibit H (D.I. 1). In its oral ruling, the Bankruptcy Court explained that the reason it could not confirm the plan was because Crowley "had an actual conflict of interest" by virtue of his contractual relationship with Cerberus. Op. 12/21/00 at 89 (D.I. 1). The Bankruptcy Court found that that actual conflict of interest "tainted the debtors' restructuring of its debt, the debtors' negotiations towards a Plan, even the debtors' restructuring of its operations." *Id.* at 88.

The Bankruptcy Court's ruling provided the Outside Directors with actual knowledge of Crowley's conflict of interest, the terms of the Crowley/Cerberus Employment Agreement, and the extent and nature of Crowley's conflict of interest. Compl. ¶ 37 (D.I. 1). Yet, rather than investigate the matter, the Board sought to avoid it. *Id.* ¶ 38.

After the denial of the First Plan of Reorganization, the Board formed a Special Committee (consisting of the four Outside Directors). The Special Committee in turn retained Harrison J. Goldin Associates, L.L.C., a financial advisory firm, as a restructuring advisor. *Id.* In describing the Special Committee's purpose in retaining Goldin, Amaral testified that the Board wanted Goldin "to sprinkle holy water on [the situation]." Amaral Dep. 10/26/01 at 35, attached to Complaint as Exhibit I (D.I. 1). Goldin limited the scope of his inquiry to events occurring prior to December 2000, and, for unexplained reasons, never asked either Crowley or Cerberus whether Crowley had continued to receive his $80,000/month salary from Cerberus after that date. Compl. ¶ 41 (D.I. 1). (In fact, Crowley continued to be paid $80,000/month by Cerberus throughout 2001.) Goldin prepared a report of his investigation which Coram converted into a second proposed reorganization plan. *Id.* ¶ 43.

On December 21, 2001, again following a contested confirmation hearing, the Bankruptcy Court issued a written opinion, once again denying confirmation. After reviewing the facts of the continuing Crowley/Cerberus Employment Agreement and Crowley's continuing conflict of interest, as well as the testimony of Goldin, Crowley, Amaral, and others concerning events since December 2000, the Bankruptcy Court concluded that Crowley's continued agreement with Cerberus continued to present an actual conflict of interest. Op. 12/21/01 at 13, attached to Complaint as Exhibit J (D.I. 1). As the Bankruptcy Court put it, "[n]othing, in fact, has changed since the first confirmation hearing." *Id.*

10

Moreover, and of most significance to this litigation, the Bankruptcy Court found

that:

> [T]he actual conflict of interest mandated that the Debtors do more
> than they did in this case.  Notwithstanding the fact that the
> Debtors learned in December, 2000, that Crowley had a conflict of
> interest, neither the Debtors nor their Special Committee required
> that Crowley disassociate himself from Cerberus.  In fact, they did
> not even ask whether he continued to be bound by the Consulting
> Agreement.  Given the fact that Crowley had not disclosed the
> agreement in the first place, the Debtors should have asked for full
> disclosure and required that Crowley sever all agreements with
> Cerberus as a condition of continued employment.

*Id.* at 21-22.  In the words of the Bankruptcy Court, the Outside Directors' "don't ask, don't tell"

approach "does not fulfill their fiduciary duty to these estates."  *Id*. at 22.[4]

Following the rejection of the second proposed reorganization plan, the

Bankruptcy Court appointed plaintiff as Chapter 11 Trustee of Coram.  While the Trustee

continued Crowley's employment for another year, *see* Opening Br., at 10 (D.I. 18), he did so

only on the condition that Crowley sever all contractual relations between himself and Cerberus.

*See* Motion of the Chapter 11 Trustee for Authorization to Enter Into Termination and

Employment Extension Agreement with Daniel D. Crowley, Ex. G. ¶ 17 to Declaration of Peter

---

[4]    The Outside Directors' argument that the Bankruptcy Court's findings have no preclusive
effect in this action is misplaced at this stage of the proceedings because the Trustee is
not now asserting that position.  *See* Opening Br., at 23-24 (D.I. 18).  As discussed *infra*,
the import of the Bankruptcy Court's findings and conclusions at this stage is not that
they are somehow binding on the Court as to the ultimate merits of this action, which, of
course, are not now before the Court, but rather, that they underscore what the Outside
Directors knew or should have known and what they did or should have done in the face
of that knowledge, and so buttress the Trustee's arguments as to why the Outside
Directors' motion to dismiss should be denied.  *See In re Walt Disney Co. Derivative
Litig.*, 825 A.2d 275, 289 (Del. Ch. 2003) ("the alleged facts need only give rise to a
reason to doubt business judgment protection, not 'a judicial finding that the directors'
actions are not protected by the business judgment rule.'") (citation omitted).

J. Walsh, Jr. in Support of the Outside Director Defendants' Motion to Dismiss (D.I. 19).  In addition, the Trustee was assured by Crowley that the conflict of interest was not continuing and that Crowley was not to receive any compensation from Cerberus in 2002.  *Id.*

In May 2003, the Trustee proposed a reorganization plan, which the Bankruptcy Court confirmed in October 2004.  The order confirming the plan of reorganization provided for the Trustee to retain the right to "commence, prosecute, compromise and seek Bankruptcy Court approval of any settlement of any of the Causes of Action on behalf of the Debtors' estates," including, specifically, the present action as set forth in the Trustee's plan.  Order Confirming the Chapter 11 Trustee's Second Amended Joint Plan of Reorganization ¶ 50, *In re Coram Healthcare Corp. and Coram, Inc.*, Case Nos. 00-3299 (MFW) & 00-3300 (MFW) (filed October 27, 2004).

## D.    **The Complaint**

This complaint followed.  Briefly, and as relevant here, the breach of fiduciary duty claims against the Outside Directors stem from three related sets of facts:  (1) despite their knowledge that Crowley had a relationship with Cerberus, the Outside Directors failed to make any inquiries whatsoever into the nature of that relationship before approving Crowley's retention as a consultant to Coram and then as its CEO, Compl. ¶¶ 15, 23, 53 (D.I. 1); (2) despite their knowledge of Crowley's relationship with Cerberus, the Outside Directors allowed Cerberus' managing partner, Feinberg, to negotiate an amendment to Crowley's employment agreement that was very beneficial to Crowley, *id.* ¶¶ 28, 29, 54; and (3) even once they had actual knowledge of the nature and extent of Crowley's relationship with Cerberus (after the Bankruptcy Court had denied confirmation of Coram's first plan because of Crowley's conflict

of interest), the Outside Directors continued to fail to do anything about it: they did not conduct any investigation of Crowley's conflict of interest; they did not require that Crowley cease accepting compensation from Cerberus; and they did not even ask Crowley or Cerberus if the conflicts or payments continued, *id.* ¶¶ 37, 38, 45, 55.

Based on these factual allegations, Count II of the Trustee's complaint asserts a cause of action against the Outside Directors for breach of fiduciary duty. (Count I is a breach of fiduciary duty claim against Crowley, which he has answered.) Count II states, in part:

> 53.    By allowing Coram to enter into an employment agreement with Crowley without first investigating Crowley's relationship with Cerberus, the Board members did not make an adequate investigation of material information reasonably available to them and breached their duties of good faith and due care.

> 54.    The Board members violated their fiduciary duties by allowing Feinberg, who also had a conflict of interest, to negotiate the terms of the Second Amendment to Crowley's employment agreement without any meaningful review by independent and unconflicted directors of the fairness of the Second Amendment to Coram and its shareholders.

> 55.    The Board members continued to breach their duties even after receiving actual knowledge of Crowley's conflict of interest. . . .

> 58.    The outside directors, either individually or as a Special Committee, never investigated: (a) whether Crowley's conflict of interest had damaged Coram or had influenced Coram's strategic direction; (b) whether all of Crowley's arrangements with Cerberus had been fully disclosed; or (c) whether Crowley continued to receive payments of $80,000 per month from Cerberus and continued to be bound by his Employment Agreement with Cerberus. By performing no investigation whatsoever, the outside directors failed to make any good faith attempt to fulfill their fiduciary duties to Coram. They simply abdicated their responsibilities. . . .

> 64.    The decision of the outside directors, individually and as
> the Special Committee, were made without adequate information
> and without adequate deliberation.

> 65.    The outside directors, individually and as the Special
> Committee, failed to exercise any business judgment with respect
> to their actions concerning Crowley's conflict of interest.

The Outside Directors have moved to dismiss under Fed. R. Civ. P. 12(b)(6) on the ground that the Trustee failed to allege facts to overcome the protection afforded by 8 Del. Code § 102(b)(7), which protects directors from personal liability for certain, but not all, breaches of fiduciary duty.  (D.I. 17).  As set forth in this answering brief, the Outside Directors' motion should be denied because the Trustee's complaint sufficiently alleges that the Outside Directors breached their fiduciary duties in adopting their "don't ask, don't tell" approach to Crowley's conflict of interest.  More specifically, the Outside Directors' knowing indifference to Crowley's conflict of interest constitutes such an abdication of their responsibilities as to raise a reasonable doubt whether the Outside Directors exercised any good faith business judgment.  As such, the complaint alleges wrongdoing sufficient to overcome the limited exculpation afforded by section 102(b)(7).

## ARGUMENT

## I.    THE OUTSIDE DIRECTORS MISAPPLY THE RULE 12(b)(6) MOTION TO DISMISS STANDARD.

The standard of review of a motion to dismiss under Rule 12(b)(6) is well-established:  "[A] motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) may be granted only if, accepting all well pleaded allegations in the complaint as true, and drawing all reasonable factual inferences in favor of the plaintiff, it appears beyond doubt that the plaintiff can prove no set of

facts in support of the claim that would warrant relief." *California Public Employees'*

*Retirement Sys. v. Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004).

While the Outside Directors pay lip service to the familiar standard, *see* Opening

Br., at 11 (D.I. 18), their actual arguments distort that standard.[5]  Specifically, the Outside

Directors repeatedly attempt to recast the allegations in the light most favorable to *them*.  This is,

of course, improper on a motion to dismiss.  "Rule 12(b)(6) instructs that the District Court draw

inferences in favor of plaintiffs, not the proponent of the motion."  *In re Warfarin Sodium*

*Antitrust Litig.*, 214 F.3d 395, 398 (3d Cir. 2000).  They further pervert the Rule 12(b)(6)

standard by arguing facts that are contrary (or at least irrelevant) to the allegations in the

Trustee's complaint.  Indeed, the Outside Directors' characterization of the Trustee's allegations

make clear that they seek to have the Court dismiss a complaint very different from the

complaint actually filed.

As set forth in the following chart, a comparison of some of the allegations of the

Trustee's complaint with the Outside Directors' "spin" reveals the most glaring examples of this

perversion of the Rule 12(b)(6) standard:

---

[5]    The Outside Directors' citation to *Aronson v. Lewis,* 473 A.2d 805, 814-15 (Del. 1984),
and *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 734 (Del. Ch. 1999), is misleading.
*See* Opening Br., at 11, 13 (D.I. 18).  *Aronson* and *Lukens* were derivative cases and so
the plaintiffs were required to satisfy the heightened pleading standard of Del. Ch. Ct. R.
23.1, as well as the Rule 12(b)(6) standard.  Here, because the Bankruptcy Court
specifically authorized this action, Rule 23.1 is not at issue.  *See Continuing Creditors'*
*Committee of Star Telecommunications, Inc. v. Edgecomb*, No. 03-278, 2004 U.S. Dist.
LEXIS 25807, at *17-18 (D. Del. Dec. 21, 2004).  Thus, the Outside Directors' attempt to
import the Rule 23.1 standard should be rejected; the sufficiency of the Trustee's
Complaint is to be assessed only under the "less stringent" Rule 12(b)(6) standard.
*Disney*, 825 A.2d at 285, 290.

| *Allegations of Complaint* | *Outside Directors' "Spin"* |
|---|---|
| "Notwithstanding their knowledge that 'a relationship' existed between Crowley and Cerberus, none of Coram's directors asked any questions or requested any materials about that relationship." Compl. ¶ 15 (D.I. 1). | "[S]ince both Mr. Crowley's Cerberus compensation and his Coram compensation were tied to *Coram's* profitability, it is not even clear from plaintiff's allegations that the outside directors would have chosen *not* to approve Mr. Crowley's retention had they conducted an investigation." Opening Br., at 19 (emphasis in original) (D.I. 18). |
| "[N]o member of the Board of Coram made any inquiry about the terms of the Crowley/Cerberus relationship." Compl. ¶ 23 (D.I. 1). | "[W]hile the Outside Directors may be faulted for not inquiring into Mr. Crowley's alleged relationship, their actions hardly constitute a 'complete abdication' of fiduciary responsibility given the dire financial and management crisis that Coram faced at the time." Opening Br., at 19 (D.I. 18). |
| Despite the notice in the Bankruptcy Disclosure Statement of "a relationship between Crowley and Cerberus, the outside directors still asked no questions and made no inquiry about this relationship." Compl. ¶ 34 (D.I. 1) | "Far from 'blindly' allowing Mr. Crowley to continue in his role, plaintiff's allegations make clear that the outside directors took affirmative steps to address the issues raised by the Bankruptcy Court and engaged in active oversight of Mr. Crowley during this period." Opening Br., at 21 (D.I. 18). |
| The Bankruptcy Court found that, even after the denial of the first plan, "the outside directors did not conduct any investigation of Crowley's conflict of interest, did not require that Crowley cease accepting any compensation from Cerberus, and did not even ask Crowley or Cerberus if the conflict or payments persisted." Compl. ¶ 45 (D.I. 1). | "After the [first] plan's denial, the Outside Directors . . . segregated Mr. Crowley from any decisions regarding Coram's proposed bankruptcy plan and limited his role to the day-to-day management of Coram." Opening Br., at 3 (D.I. 18). <br><br> "[T]he full context [of the deposition testimony] amply demonstrates that – far from 'not caring' – the Outside Directors had concluded Mr. Crowley was serving Coram's best interests, notwithstanding his relationship with Cerberus." Opening Br., at 23 (D.I. 18). |

Of course, such fact questions are not to be decided on motions to dismiss.

Instead, if any set of facts alleged can support the claim, "the plaintiff must be given an

opportunity to attempt to establish a fact question on [the] issue." *Leone v. Aetna Casualty &*

*Surety Co.*, 599 F.2d 566, 567-69 (3d Cir. 1979). "The issue [on a motion to dismiss] is not

whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997).

As one court put it, in terms particularly apt here: "the defendant cannot, in presenting its 12(b)(6) challenge, attempt to refute the complaint or to present a different set of allegations. The attack is on the sufficiency of the complaint, and the defendant cannot set or alter the terms of the dispute, but must demonstrate that the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Illinois State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987).

As discussed below, the Trustee's complaint adequately alleges that the Outside Directors breached their fiduciary duties.

## II.     THE COMPLAINT ADEQUATELY ALLEGES THAT THE OUTSIDE DIRECTORS BREACHED THEIR FIDUCIARY DUTIES.

The complaint alleges that in the face of their knowledge of Crowley's relationship with Cerberus and then of his actual conflict of interest, the Outside Directors did nothing. It is difficult to imagine more compelling allegations of "deliberate indifference" and "intentional disregard." Indeed, based on its review of the facts, the Bankruptcy Court expressly determined that the Outside Directors had adopted a "don't ask, don't tell" approach that "does not fulfill their fiduciary duty to these estates." Op. 12/21/01 at 22, attached to Complaint as Exhibit J (D.I. 1).

Yet, even in the face of the Bankruptcy Court's express findings, the Outside Directors argue that no jury reasonably could conclude that the Outside Directors had breached

their fiduciary duties, and that the Trustee's complaint fails to allege facts sufficient to overcome the protection afforded them by the section 102(b)(7) exculpatory provision. They advance two assertions in support of that argument: (1) the duty of good faith is a subset of the duty of loyalty and because the Trustee does not plead a breach of the duty of loyalty, he necessarily fails to plead a breach of the duty of good faith, *see* Opening Br., at 14-15 (D.I. 18); and (2) the Trustee fails to allege facts showing that the Outside Directors engaged in intentional misconduct or knowing violations of the law, *id.* at 15-25.

As discussed below, on the first point, the Outside Directors misstate the applicable law and, therefore, the conclusion they advance as to the second point simply does not follow. Whether the duty of good faith is a separate duty or part of the duty of loyalty is for the purposes of this motion largely of academic interest. Under any formulation, the complaint states a claim. Moreover, as to the second point, the Outside Directors distort the allegations of the complaint in their effort to avoid clear Delaware law holding that an abdication of responsibility such as that alleged here constitutes a breach of fiduciary duty.

A.    **The Outside Directors Misstate Delaware Breach of Fiduciary Duty Law.**

As a threshold matter, the Outside Directors are correct that the Trustee's case against the Outside Directors does not involve allegations that they (as opposed to Crowley) had a conflict of interest. But as we will show, the Outside Directors are mistaken when they argue that the duty of good faith is "merely a subset" of the duty of loyalty, and even if it were, Delaware law recognizes that directors who are deliberately indifferent to their fiduciary duties are not entitled to the protection of section 102(b)(7). Moreover, the Outside Directors' position that the Trustee must plead "intentional misconduct" or "knowing violations of the law" in order

18

to survive a Rule 12(b)(6) motion in the face of section 102(b)(7), Opening Br., at 15-16

(D.I. 18), is incorrect.  Rather, only where a complaint alleges *solely* a breach of the duty of due

care is dismissal proper under Rule 12(b)(6).

### 1.    The Duty of Loyalty and Duty of Good Faith are Separate.

The statute upon which the Outside Directors rely makes clear that the duty of

good faith is separate and distinct from the duty of loyalty.  Section 102(b)(7) of the Delaware

Code provides directors with a layer of insulation from liability for duty of care violations by

permitting corporations to include in their certificate of incorporation:

> A provision eliminating or limiting the personal liability of a
> director to the corporation or its stockholders for monetary
> damages for breach of fiduciary duty as a director, provided that
> such a provision shall not eliminate or limit the liability of a
> director: (i) for any breach of the director's *duty of loyalty* to the
> corporation or its stockholders; (ii) for acts or omissions *not in
> good faith* or which involve intentional misconduct or a knowing
> violation of the law; (iii) under §174 of this title; or (iv) for any
> transaction from which the director derived an improper personal
> benefit.

8 Del. Code § 102(b)(7) (emphasis added).  By its clear and unambiguous terms, section

102(b)(7) expressly distinguishes between the duty of loyalty and the duty of good faith; the

legislature's parsing of the two could not be more clear.

Moreover, the Delaware Supreme Court repeatedly has stated over the past

decade that a board of directors' fiduciary obligations are composed of a *triad* of duties:  due

care, loyalty, and good faith.  *See Emerald Partners v. Berlin*, 787 A.2d 85, 90 (Del. 2001) ("The

directors of Delaware corporations have a triad of primary fiduciary duties:  due care, loyalty,

and good faith."); *see also McMullin v. Beran*, 765 A.2d 910, 917 (Del. 2000); *Malone v.*

*Brincat*, 722 A.2d 5, 10 (Del. 1998); *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993). Moreover, as *McMullin and Technicolor* show, directors will be liable if the plaintiff can establish that a director has breached any "one" of "the triad." These decisions belie the Outside Directors' argument that good faith is a mere sub-species of the duty of loyalty and not a separate duty.[6]

The Outside Directors' reliance on *Star*, 2004 U.S. Dist. LEXIS 25807, is misplaced. The plaintiffs in *Star* alleged breach of duty of care claims against the directors for approving business transactions proposed by the company's CEO. The plaintiffs claimed that the CEO's decision to obtain financing from Gotel Investments Ltd. was a poor decision because it required the company to give up too much in return for financing. *Id.* at *13. Although the CEO was affiliated with Gotel, that fact was of no significance with respect to the plaintiffs' challenge to the financing deal. The plaintiffs also challenged the directors' approval of the

---

[6]    The Court of Chancery cases that the Outside Directors say support the proposition that "the duty of good faith is a subset of the duty of loyalty," Opening Br., at 14 (D.I. 18), do not provide a basis for departing from a decade worth of precedents from the Delaware Supreme Court. By relying on footnotes from earlier opinions, the Outside Directors seek to divert this Court from Chancellor Chandler's more recent decision in *In re Walt Disney Co. Derivative Litig.*, 825 A.2d 275, 289-90 (Del. Ch. 2003), that clearly sustained a complaint setting forth a claim of the breach of duty of good faith. The more recent cases show that although the duty of loyalty and the duty of good faith may bear some family resemblance, they are nonetheless distinct. *See, e.g., In re Emerging Communications, Inc. S'holders Litig.*, No. CA-16415, 2004 WL 1305745, at *38 n.184 (Del. Ch. June 4, 2004) (Justice Jacobs sitting by designation) ("The Court employs the 'and/or' phraseology because the Delaware Supreme Court has yet to articulate the precise differentiation between the duties of loyalty and of good faith."), and *Official Committee of Unsecured Creditors of Integrated Health Services, Inc. v. Elkins*, No. 20228, 2004 Del. Ch. LEXIS 122, at *44 (Del. Ch. Aug. 24, 2004) (Noble, V.C.) (analyzing breach of good faith claims under what the Court called the "*Disney* Standard").

CEO's decision to sell its subsidiary to a purchaser at a price that the plaintiffs believed was too low.

Thus, as the Court concluded, the allegations in *Star* challenged the directors' business decisions. Significantly, the plaintiffs in *Star* did not allege that the directors abdicated their corporate responsibilities; that they consciously and intentionally disregarded their duties; or that they approved the challenged transactions knowing that they lacked crucial information. Rather, in stark contrast to the allegations here, the complaint revealed that the directors actively evaluated the situation and promptly held a special meeting to discuss the CEO's proposal, but "had no choice but to take whatever financing was available." *Id.* at *43. Thus, in contrast to the complaint in this case, the plaintiffs in *Star* did not plead any facts to support director liability based on conscious disregard of fiduciary duties.[7]

### 2.    A Complaint Will Be Dismissed Only if it Alleges Solely a Breach of The Duty of Care.

In addition to the duty of loyalty and the duty of good faith being separate, the other important point about Delaware fiduciary duty law is that a motion to dismiss based on section 102(b)(7) will be granted only if the allegations are solely and unambiguously duty of care claims and do not implicate any inferences of the specifically-enumerated duties as to which liability is preserved, including the duty of good faith. *Compare Alidina v. Internet.com Corp.*,

---

[7]    *Stanziale v. Nachtomi*, No. 01-403, 2004 U.S. Dist. LEXIS 7375 (D. Del. Apr. 20, 2004), another case on which the Outside Directors rely, illustrates the point. The plaintiff asserted that the directors breached the duties of care, loyalty, and good faith, but the opinion makes clear that the complaint was wholly conclusory. The *Stanziale* Court measured the complaint against the *Disney* standard and held that it fell (apparently woefully) short. The allegations in *Star* and *Stanziale* stand in sharp contrast to the detailed allegations in this complaint and the reasonable inferences to be drawn from those facts.

No. 17235, 2002 Del. Ch. LEXIS 156, at *28 (Del. Ch. Nov. 6, 2002) (denying 12(b)(6) motion because allegations were not "exclusively" duty of care claims); *Sanders v. Wang*, No. 16640, 1999 WL 1044880, at *11 (Del. Ch. Nov. 8, 1999) (denying 12(b)(6) motion because "the nature of defendants' breach of fiduciary duty claims remain unclear at this time"); *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 914-16 (Del. Ch. 1999) (denying 12(b)(6) motion because allegations implicated duty of loyalty), *with Malpiede v. Townson*, 780 A.2d 1075, 1093-94 (Del. 2001) (granting 12(b)(6) motion because claims were "solely" breach of duty of care); *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 734 (Del. Ch. 1999) (same).

Indeed, courts will allow the claims to proceed even where the allegations are ambiguous and the court must *infer* breaches of loyalty and/or good faith from the complaint. *See, e.g., Production Resources Group, LLC v. NCT Group, Inc.*, 863 A.2d 772, 799-800 (Del. Ch. 2004); *Blackmore Partners, LP v. Link Energy, LLC*, No. CV-454, 2004 Del. Ch. LEXIS 164, at *15-18 (Del. Ch. Nov. 10, 2004); *Orman v. Cullman*, 794 A.2d 5, 41 (Del. Ch. 2002); *In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 732 (D. Del. 2000). *See also In re Trump Hotels S'holder Derivative Litig.*, Nos. 96-C-7820, 96-C-8527, 2000 U.S. Dist. LEXIS 13550, at *53-54 (S.D.N.Y. Sept. 21, 2000) (interpreting Delaware law and denying motion to dismiss); *In re Cendant Corp. Derivative Action Litig.*, 189 F.R.D. 117, 132-33 (D.N.J. 1999) (same).

\*   \*   \*

In short, Delaware law recognizes that directors' conscious disregard of their duties to the corporation constitutes a breach of fiduciary duty; and a complaint will overcome section 102(7)(b) protection if it adequately pleads that the director did not act in good faith. Accordingly, the question here is whether the complaint adequately alleges that the Outside

22

Directors' "don't ask, don't tell" approach to Crowley's relationship with one of Coram's major

lenders sufficiently alleges a breach of the Outside Directors' duty of good faith.  As set forth

below, it does.

**B.    The Outside Directors' Knowing Indifference to Crowley's Conflict of**
**Interest States a Claim for Breach of Fiduciary Duty.**

Once they get past their erroneous duty of loyalty/duty of good faith argument

discussed above, the Outside Directors proceed properly to describe the applicable substantive

standard.  That standard is key; indeed, the Outside Directors' own recitation captures the heart

of the Trustee's allegations precisely:

> A plaintiff must allege facts demonstrating that a director made
> material decisions *knowing* he or she did not have adequate
> information or deliberation and *not caring* about the effects of
> these decisions on the corporation.

Opening Br., at 15 (emphasis in original) (D.I. 18) (citing *In re Walt Disney Co. Derivative*

*Litig.*, 825 A.2d 275, 289 (Del. Ch. 2003)).  A brief comparison of the facts pled here with those

pled in *Disney* shows why, if anything, it is even clearer here than in *Disney* that these Outside

Directors made material decisions about Crowley's employment *knowing* that they did not have

adequate information and not *caring* about the consequences of their decisions.

One preliminary note:  the Outside Directors criticize the Trustee for paying

"homage" to the Chancery Court's decision in *Disney*.  *See* Opening Br., at 20 (D.I. 18).  If by

"homage" the Outside Directors intend to mean that the Trustee scrupulously followed Delaware

law in bringing this action, then the Trustee would be culpable.  Despite the Outside Directors'

attempt to avoid the import of the *Disney* decision, *Disney* in fact makes clear that the Directors'

"don't ask, don't tell" approach is precisely the type of abdication of directors' fiduciary duties that is actionable under Delaware law.

*Disney* involved a derivative action against directors of the Walt Disney Company. Disney's CEO, Michael Eisner, unilaterally hired his long-time friend, Michael Ovitz, to be Disney's president. Plaintiffs alleged that the directors had breached their fiduciary duties by blindly approving Ovitz's employment agreement without conducting an appropriate level of inquiry. The plaintiffs also alleged that the directors ignored the dealings between Ovitz and Eisner regarding Ovitz's non-fault termination. Eisner and Ovitz negotiated an agreement under which Ovitz was able to receive $140,000,000 after barely one year of employment. *Disney*, 825 A.2d at 277-79.

Based on these allegations, the Chancery Court denied the directors' motion to dismiss the complaint. While noting that it was "hesitant to second-guess the business judgment of a disinterested and independent board of directors," the Court emphasized that, "the facts belie any assertion that the [director defendants] exercised *any* business judgment or made *any* good faith attempt to fulfill the fiduciary duties they owed to Disney and its shareholders." *Id.* at 287 (emphasis in original). Thus, the Court continued:

> Allegations that Disney's directors abdicated all responsibility to consider appropriately an action of material importance to the corporation puts directly in question whether the board's decision-making processes were employed in a good faith effort to advance corporate interests.

*Id.* at 278.

The Court concluded that plaintiffs' fiduciary duty claims withstood a motion to dismiss because "the facts alleged in the new complaint suggest that the defendant directors

24

*consciously and intentionally disregarded their responsibilities*, adopting a 'we don't care about the risks' attitude concerning a material corporate decision." *Id.* at 289 (emphasis in original). The court added, "all of the alleged facts, if true, imply that the defendant directors *knew* that they were making material decisions without adequate information and without adequate deliberation, and that they simply did not care if the decisions caused the corporation and its stockholders to suffer injury or loss." *Id.* (emphasis in original); *see also id.* ("[k]nowing or deliberate indifference by a director to his or her duty to act faithfully and with appropriate care is conduct, in my opinion, that may not have been taken honestly and in good faith to advance the best interests of the company.")

What *Disney* teaches, therefore, is that directors can be held liable for a breach of their fiduciary duties if they *know* that they are making material decisions without adequate information and fail to seek out that information. That aptly describes the Trustee's allegations in this case.[8]

The Outside Directors retained Crowley as a consultant and hired him to be Coram's CEO *knowing* that he had a relationship with one of Coram's primary lenders, but never even inquired into the nature of that relationship, much less did anything about it. *See* Compl. ¶¶

---

[8]    The Outside Directors attempt to limit *Disney* to cases concerning the amount of executive compensation and then assert that the Trustee's claim does not complain about the amount of Crowley's compensation. Opening Br., at 17-18, 20-21 (D.I. 18). Crowley has brought an administrative claim in the Bankruptcy Court regarding his compensation. Disputes about the amount of compensation, if any, Crowley is to receive based on the amendment to his employment agreement that he negotiated with Feinberg, will be decided in that forum. *See* Request of Daniel Crowley for Payment of Administrative Expense, *In re Coram Healthcare Corp. and Coram, Inc.*, Case Nos. 00-3299 (MFW) & 00-3300 (MFW) (filed December 30, 2004). More importantly, there is nothing in *Disney* or the post-*Disney* cases that limits the application of its principles to a board's decisions about the amount of executive compensation.

15, 23 (D.I. 1).  The Outside Directors had every reason to be suspicious of Crowley from the very outset of Crowley's relationship with Coram when they learned of his relationship with Cerberus.  The disclosure of this relationship was a "red flag" that the Outside Directors failed to investigate or, indeed, do anything about it at all.

Instead of explaining why the Trustee's allegations regarding the retention of a CEO with a conflict of interest do not state a claim, the Outside Directors make numerous factual statements about Crowley's retention completely irrelevant to Crowley's conflict.  The following are just a few of these statements:

- "[P]laintiff does not allege that Mr. Crowley was unqualified or incapable of acting as a consultant or as Coram's CEO."

- "Mr. Amaral represented Coram in the negotiations over Mr. Crowley's Original Employment Agreement, which negotiations he described as 'very difficult.'"

- Crowley's base salary of $650,000 was "the same amount Mr. Amaral had received when he was CEO."

- The "Complaint makes clear that the Outside Directors played an active role in overseeing Mr. Crowley and Coram's operations.  The Outside Directors reviewed numerous reports summarizing Coram's financial situation and management efforts."

Opening Br., at 17-18, 22 (D.I. 18).  But the Trustee's claims have nothing to do with Crowley's qualifications, the negotiation of Crowley's Original Employment Agreement with Amaral (not Feinberg), the amount of Crowley's base salary, or how the Outside Directors generally managed the company (apart from the Crowley issue).[9]  Instead, the Trustee's claim is that given their

---

[9]    The Outside Directors also allege that the conflict did not matter because the $1 million per year that Cerberus paid to Crowley was "tied to Coram's profitability."  Judge Walrath concluded that Cerberus was paying Crowley for his work at Coram.  Op.

*Continued…*

*knowledge* of Crowley's relationship with Cerberus, the Outside Directors – like the *Disney*

directors – took no steps whatsoever to investigate the nature of the relationship (which was, in

fact, an actual conflict of interest) and made "material decisions without adequate information

and without adequate deliberation." *Disney,* 825 A.2d at 289. Again in the words of the *Disney*

Court, such facts "suggest that the defendant directors *consciously and intentionally disregarded*

*their responsibilities.*" *Id.* at 289 (emphasis in original).

        In addition, the Outside Directors here – like the *Disney* directors – permitted the

very person who had the relationship to Crowley (Feinberg) to conduct the negotiations with

respect to the amendment to Crowley's employment contract with Coram. Compl. ¶ 28 (D.I. 1).

And, like the *Disney* directors, the Outside Directors failed to retain a compensation expert or an

independent expert of any kind in evaluating Crowley's Employment Agreement. *Id.*

        On this point too, instead of addressing the facts in the complaint, the Outside

Directors ignore the actual allegations and instead assert that there is no breach of fiduciary duty

because Feinberg was the Chairman of Coram's Compensation Committee and the terms of the

amended employment contract were reasonable. Opening Br., at 20-21 (D.I. 18). As mentioned

previously, the reasonableness of the compensation in the amended employment agreement will

be determined by the Bankruptcy Court as part of Crowley's administrative claim. *See* p.25 n.8,

---

*...Continued*

    12/21/01 at 16-17, attached to Complaint as Exhibit J; Compl. ¶ 45 (D.I. 1). However,
Crowley has consistently asserted that his compensation from Cerberus was for non-
Coram work, *id.*, and the Outside Directors argue that collateral estoppel does not apply.
Whether Crowley was paid by Cerberus for his work at Coram is yet another factual
dispute raised by the Outside Directors as part of their rewrite of the allegations of the
complaint. Resolution of this factual issue and others is not appropriate on a motion to
dismiss.

*supra.* It is not relevant to the breach of fiduciary duty claims against the Outside Directors here. Moreover, Feinberg's role at Coram is irrelevant to the Trustee's claims. It is Feinberg's role at Cerberus that caused harm to Coram in these negotiations.

Finally, the allegations regarding the Outside Directors' abdication of their fiduciary duties during Coram's bankruptcy are, if anything, even more egregious than the allegations in *Disney*. *See* Compl. ¶¶ 56-66 (D.I. 1). This is because, even after the December 2000 *express judicial finding of Crowley's conflict* and the Outside Directors' concomitant actual knowledge of the particulars of the Crowley/Cerberus relationship, the Outside Directors still did nothing (other than retaining Goldin to "sprinkle holy water" on the situation). *Id.* ¶¶ 58, 59. At that point, the Outside Directors' conduct was not simply a matter of their hiding their heads in the sand and not asking questions (as was the case in *Disney*); it became an affirmative, conscious disregard of the actual facts.

Again, the Outside Directors attempt to rewrite this portion of the complaint by stating the Trustee's claim challenges the decision to "allow Mr. Crowley to remain as Coram's CEO" after the terms of his Cerberus agreement were disclosed and the Bankruptcy Court denied confirmation. Opening Br., at 21 (D.I. 18).[10] Instead, the Trustee's complaint is based on the same concerns expressed by Judge Walrath, that the Outside Directors failed to investigate the conflict, failed to "ask whether [Crowley] continued to be bound by the Consulting Agreement," and did not require that "Crowley sever all agreements with Cerberus as a condition of continued employment." Op. 12/21/01 at 21-22, attached to Complaint as Exhibit J; *see also* Compl. ¶ 45

---

[10]    The Outside Directors further argue they were responsible in overseeing Crowley and Coram's operations. Opening Br., at 22 (D.I. 18). This too is completely irrelevant to whether the Outside Directors appropriately responded to Crowley's conflict of interest.

(D.I. 1).  As such, the conduct is not simply a matter of bad faith:  it is a matter of intentional

misconduct.  *See* 8 Del. C. § 102(b)(7)(ii); *see also Disney*, 825 A.2d at 290 ("[w]here a director

consciously ignores his or her duties to the corporation, thereby causing economic injury to its

stockholders, the director's actions are either 'not in good faith' or 'involve intentional

misconduct.'").  Moreover, when reviewing these facts, Judge Walrath concluded that the

Outside Directors did not "fulfill their fiduciary duty to these estates."  Op. 12/21/01 at 22,

attached to Complaint as Exhibit J; *see also* Compl. ¶ 45 (D.I. 1).  Certainly, a reasonable jury

could also find based on these allegations that the Outside Directors breached their fiduciary

duties and are not entitled to the limited protection of section 102(b)(7).

       In short, as the *Disney* court put it, "plaintiffs' claims are based on an alleged

knowing and deliberate indifference to a potential risk of harm to the corporation.  Where a

director consciously ignores his or her duties to the corporation, thereby causing economic injury

to its stockholders, the directors' actions are either 'not in good faith' or 'involve intentional

misconduct.'"  825 A.2d at 290.  *See also In re: Abbott Laboratories Derivative S'holders Litig.*,

325 F.3d 795, 811 (7th Cir. 2003) (applying Delaware law and reversing district court's grant of

motion to dismiss because of the numerous warning signs and "red flags" that the directors

consciously disregarded); *McCall v. Scott*, 250 F.3d 997, 1001 (6th Cir. 2001) (applying

Delaware law and concluding that when plaintiffs accuse directors not merely of "'sustained

inattention' to their management obligations," but rather of intentional ignorance of and willful

blindness to "red flags" signaling potential harms to the company, "regardless of how plaintiffs

style their duty of care claims, we find that they have alleged a conscious disregard of known

risks, which conduct, if proven, cannot have been undertaken in good faith.").

Post-*Disney* decisions confirm that the Trustee's allegations concerning the Outside Directors "don't ask, don't tell" approach state a breach of fiduciary duty claim. In a case similar to *Disney* in terms of a board's blind approval of executive compensation for its CEO, the Court in *Elkins*, 2004 Del. Ch. LEXIS 122, at *46, denied a motion to dismiss fiduciary duty claims because the plaintiff alleged sufficient facts that the directors consciously and intentionally disregarded their corporate responsibilities. The Court held that the "allegations, if true, would imply knowing and deliberate indifference to the Board's duties to act 'faithfully and with appropriate care.'" *Id.*

Similarly, in *The Litigation Trust of MDIP, Inc. v. Rapoport*, No. 03-779, 2004 WL 3101575 (D. Del. Nov. 29, 2004), plaintiffs alleged that the board of directors approved the hiring of a new CEO with no discussion at board meetings or any consideration of alternative candidates and then ignored signs of his mismanagement. Applying *Disney* and *Elkins*, the *Rapoport* Court denied the directors' motion to dismiss. While acknowledging that an ordinary duty of care claim is dismissed in the face of a section 102(b)(7) exculpatory provision, "where a director consciously ignores his or her duties to the corporation, thereby causing economic injury to its stockholders, the director's actions are either 'not in good faith' or involve 'intentional misconduct.'" *Id.* at *4 (quoting *Disney*, 825 A.2d at 290). *See also Hollinger International, Inc. v. Hollinger, Inc.*, No. 04-C-0698, 2005 WL 589000, at *29 (N.D. Ill. March 11, 2005) (applying Delaware law and permitting plaintiff's breach of duty of good faith claim to proceed against director-defendant despite exculpatory clause because the allegations showed that director-defendant "consent[ed] to the alleged improper self-dealing transactions without reading, discussing, or evaluating the underlying details or asking any questions or that the deals be reviewed by the audit committee or an independent third party").

**CONCLUSION**

For all the above reasons, the Trustee's complaint states a claim for breach of fiduciary duty against the Outside Directors. Delaware law makes clear that directors of a corporation breach their fiduciary duties when they abdicate their responsibilities by knowingly allowing material decisions to be made without adequate information or investigation. The complaint alleges that the Outside Directors hired a CEO whom they *knew* had a relationship with a major creditor, yet failed to ask any questions at all about the nature of that relationship before they hired him; then permitted the creditor's managing partner (who also sat on their Board) to negotiate an amendment to the CEO's employment agreement that substantially increased the CEO's compensation; and finally failed to act even *after* they knew that the relationship between their CEO and their creditor included the CEO being paid $1 million annually by the creditor and even *after* the Bankruptcy Court had denied their reorganization plan for the very reason that the CEO had a serious conflict of interest. The Outside Directors'

"don't ask, don't tell" approach (as the Bankruptcy Court put it) is at least comparable to the

*Disney* directors' "we don't care about the risks" attitude, if not more egregious.  The motion to

dismiss should be denied.

Respectfully submitted,

By: _____

Rolin P. Bissell (# 4478)
Glenn C. Mandalas (# 4432)
YOUNG CONAWAY STARGATT
   & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Phone: (302) 571-6600
Fax:    (302) 571-1253
rbissell@ycst.com

OF COUNSEL:

Barry E. Bressler
Wilbur L. Kipnes                              *Attorneys for Arlin M. Adams*
Nancy Winkelman
Jennifer Nestle
Han Nguyen
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Phone: (215) 751-2000
Fax:    (215) 751-2205

Dated: April 1, 2005

## CERTIFICATE OF SERVICE

I, Glenn C. Mandalas, hereby certify that on April 1, 2005, I caused to be electronically

filed a true and correct copy of the foregoing document with the Clerk of the Court using

CM/ECF, which will send notification that such filing is available for viewing and downloading

to the following counsel of record:

> Peter J. Walsh, Jr., Esquire
> Potter, Anderson & Corroon, LLP
> Hercules Plaza, 6th Floor,
> 1313 North Market Street
> P.O. Box 951
> Wilmington, DE  19801

> Jeffery C. Wisler, Esquire
> Connolly Bove Lodge & Hutz, LLP
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE  19899

I further certify that on April 1, 2005,  I caused a copy of  the foregoing document to be

served on the following counsel of record in the manner indicated:

### BY HAND DELIVERY

> Peter J. Walsh, Jr., Esquire
> Potter, Anderson & Corroon, LLP
> Hercules Plaza, 6th Floor,
> 1313 North Market Street
> P.O. Box 951
> Wilmington, DE  19801

> Jeffery C. Wisler, Esquire
> Connolly Bove Lodge & Hutz, LLP
> 1007 North Orange Street
> P.O. Box 2207
> Wilmington, DE  19899

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

_____

Glenn C. Mandalas (# 4432)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6600
gmand@ycst.com

*Attorneys for Plaintiff*