2005 WL 589000 (N.D.Ill.)
**(Cite as: 2005 WL 589000 (N.D.Ill.))**

individual capacities as officers and directors of the Company." (Second Am. Complt. at ¶ 365.) Moreover, as detailed herein, International has made numerous allegations that Black and Radler conspired with Colson (and the other Defendant directors of International, many of whom were also officers of Inc. and Ravelston) to loot the Company for their own personal gain and that in doing so they acted outside the scope of their employment. Accordingly, this Court finds that International has sufficiently alleged an actionable conspiracy under Illinois law.

Colson's final contention against "conspiracy jurisdiction" is that Delaware law does not provide for a claim for "civil conspiracy," and therefore, International cannot allege "an actionable conspiracy." Even if this Court were to apply Delaware law, this contention likewise fails. Similar to Illinois, to allege a "civil conspiracy" under Delaware law "requires: (1) an agreement between two or more people; (2) an unlawful act done to further the conspiracy; and (3) damage to the plaintiff." *Capano Management Co. v. Transcontinental Ins. Co.,* 78 F.Supp.2d 320, 331 (D.Del.1999). *See also* Nicolet, Inc. v. Nutt, 525 A.2d 146, 149-50 (Del.1987) (same).

**\*17** Accordingly, this Court finds that this Court may exercise personal jurisdiction over Colson under "conspiracy theory of personal jurisdiction."

B. Due Process

In addition to finding that Colson and Perle fall within the scope of the Illinois long-arm statute, the Court must ensure that the exercise of personal jurisdiction comports with due process. To assert personal jurisdiction consistent with federal due process, the defendants must have: (A) "certain minimum contacts with the forum state" such that (B) the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." [FN17] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

FN17. With respect to due process under the Illinois Constitution, Illinois courts "have given little guidance as to how state due process protection differs from federal protection in the context of personal jurisdiction." *RAR, Inc. v. Turner Diesel Ltd.,* 107 F.3d 1272, 1276 (7th Cir.1997). *Id.* As a general rule, " 'jurisdiction [under the Illinois constitution] is to be asserted only when it is fair, just, and reasonable ... considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." ' *Id.* (quoting *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1316 (Ill.1990)). Without specific guidance from Illinois courts, federal courts sitting in diversity in Illinois focus on federal due process in determining if Illinois due process guarantees are satisfied. *See Mors v. Williams,* 791 F.Supp. 739, 743 (N.D.Ill.1992). Consequently, absent a clear indication that exercise of jurisdiction here violates the Illinois Constitution, this Court will rely on its federal analysis of jurisdiction to determine if personal jurisdiction comports with Illinois due process.

The court's assessment of minimum contacts depends on whether "general" or "specific" jurisdiction is at issue. *RAR,* 107 F.3d at 1277. Specific jurisdiction refers to jurisdiction over a defendant in a suit "arising out of or related to the defendant's contacts with the forum." *Id.* The court may exercise specific jurisdiction over defendants if they "purposefully established minimum contacts within the forum state" and those contacts "make personal jurisdiction fair and reasonable under the circumstances." *Id.* In examining a defendant's contacts with a particular state, the court must determine whether the defendant "purposefully availed itself of the privilege of conducting activities" in the forum state so that it "should reasonably anticipate being haled into court there." *Id.* In other words, the focus of the court's inquiry must be on the "relationship among the defendant, the forum, and the litigation." *Heritage House Rests., Inc. v. Cont'l Funding Group, Inc.,* 906 F.2d 276, 283 (7th Cir.1990). The main factor in specific jurisdiction analysis is foreseeability--was it reasonably foreseeable to the defendant that its action could result in litigation in the state in question. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472-74, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Contacts that are "random, fortuitous, or attenuated" are not sufficient to establish that a state's exercise of personal jurisdiction over the defendant was foreseeable. *Heritage House,* 906 F.2d at 283. Moreover, in examining the contacts in a specific jurisdiction analysis, the court cannot "simply aggregate all of the defendant's contacts with the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

state-- no matter how similar in terms of geography, time, or substance." *RAR,* 107 F.3d at 1277.

In contrast to specific jurisdiction, general jurisdiction is applicable when the lawsuit neither arose nor was related to the defendant's contacts with forum state. *Id.* Such jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the state. *Id.* The general jurisdiction standard is "a fairly high standard requiring a great amount of contacts." *Jamik, Inc. v. Days Inn of Mount Laurel,* 74 F.Supp.2d 818, 822 (N.D.Ill.1999). Factors courts examine in determining whether general jurisdiction exists include: (1) whether and to what extent the defendant conducts business in the forum state; (2) whether the defendant maintains an office or employees within the forum state; (3) whether the defendant sends agents into the forum state to conduct business; (4) whether the defendant advertises or solicits business in the forum state; and (5) whether the defendant has designated an agent for service of process in the forum state. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

  *\*18* If the court finds that it has either specific or general jurisdiction, the court must still ensure that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co.,* 326 U.S. at 316. Under this determination, the court examines: (1) the interest of the state in providing a forum to the plaintiff; (2) the interest of the state in regulating the activity involved; (3) the burden of defense in the forum on the defendant; (4) the relative burden of prosecution elsewhere on the plaintiff; (5) the extent to which the claim is related to the defendant's local activities; and (6) the avoidance of a multiplicity of suits on conflicting adjudications. *See Asahi Metal Inds. Co. v.Super. Ct. of Cal.,* 480 U.S. 102, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987); *Burger King,* 471 U.S. at 472-73, 476-77. Because no one factor is dispositive, this Court must balance all of the factors. *Euromarket Designs, Inc. v. Crate & Barrel Ltd.,* 96 F.Supp.2d 824, 840 (N.D.Ill.2000). However, the most important factors to consider are the interests of the forum and the relative convenience of the defendant in litigating in that forum. *Kohler Co. v. Kohler Int'l, Ltd.,* 196 F.Supp.2d 690, 700 (N.D.Ill.2002).

  Courts which have found section 2-209(a)(12), or

similar statutes from other states, applicable have generally found that due process is not violated by the exercise of jurisdiction over non-resident directors of corporations incorporated in or having their principal place of business in that state. For example, in *International Business Machines Corp.,* 217 Ill.Dec. 197, 666 N.E.2d at 871, the court held that "[a]s a director and officer of an Illinois corporation, [the defendant] tacitly accepted both the duties and benefits conferred upon him by Illinois law." Thus, the defendant director had "fair warning ... that he may one day be [brought] into court here for his conduct as ... director." *Id.* "Any other conclusion would render ... section 2- 209(a)(12) "meaningless." *Id. See also People ex rel. Morse v. E & B Coal Co.,* 261 Ill.App.3d 738, 199 Ill.Dec. 597, 634 N.E.2d 436, 442-43 (Ill.App.Ct.1994) (finding no due process violation in exercising personal jurisdiction over director of an Illinois corporation); *Banwell v. Illinois College of Optometry,* 981 F.Supp. 1137, 1142 (N.D.Ill.1997) (same); *Florists' Transworld Delivery, Inc. v. Fleurop-Inerflora,* 261 F.Supp.2d 837, 844 (E.D.Mich.2003) (due process not violated by exercise of jurisdiction over defendant who fell under Michigan long-arm statute providing for jurisdiction for acts "arising out of" actions of a director of a company with its principal place of business in Michigan); *Simmons v. J.C. Templeton,* 684 So.2d 529, 534 (La.Ct.App.1997) (finding that directors "purposefully availed themselves of the privilege of conducting business in [the state] by receiving salaries from a corporation with its principal place of business in [the state] and by attending a special board meeting [there]"); *Martin v. Ju-Li Corp.,* 332 N.W.2d 871, 873 (Iowa 1983) (finding that "allegations of direct wrongdoing against a corporation in Iowa by its officers and directors," was enough to meet the requirements of the long-arm statute and due process).

  *\*19* Colson and Perle contend that *International Business Machines Corp* and *E & B Coal* are not applicable because: (1) these cases applied a "hybrid approach"--*e.g.,* combined all contacts without regard to specific or general jurisdiction and involved companies incorporated in Illinois; and (2) it was not "foreseeable" that Colson and Perle could be subject to jurisdiction in Illinois. The Court finds these contentions without support in either the law or the facts currently before the Court. While it is true that *International Business Machines Corp* and *E & B Coal* did not apply a separate analysis for general or specific jurisdiction, their holdings have never been

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

overruled let alone criticized. Also, it is completely reasonable to charge a non-resident director of a company incorporated in Illinois with the knowledge that by accepting the directorship he or she could one day be brought before a court in Illinois. Likewise, the fact that International was incorporated in Delaware, not Illinois, does not affect the foreseeability of International's directors being brought before an Illinois Court because 2-209(a)(12) specifically includes companies either incorporated in this state or with their principal place of business in Illinois.

Accordingly, under *International Business Machines Corp* and *E & B Coal* the exercise of jurisdiction over Colson and Perle comports with due process because they voluntarily accepted directorships with International, whose principal place of business at the time of the alleged looting was in Chicago, Illinois.

This finding aside, this Court concludes that International has set forth sufficient facts to meet the requirements for "specific jurisdiction"--*i e.,* Colson and Perle "purposefully established minimum contacts within the forum state" and those contacts "make personal jurisdiction fair and reasonable under the circumstances" so that they "should reasonably [have] anticipate[d] being haled into court here." *RAR,* 107 F.3d at 1277.

With respect to Colson, International alleges that he used his position with the Company to wrongfully obtain unauthorized bonuses and part of the excessive management fees paid to Ravelston. According to International, Colson conspired with Radler, who worked out of the Chicago office and annually presented the proposed management fees to the Board for approval. Once the unreasonable management fees were approved, the checks paying those fees (and the directors' compensation) were drawn on International's account at an Illinois bank. Likewise, International alleges that to hide the payment of unwarranted bonuses which were issued from International's Illinois bank, Colson sent misleading "corporate disclosure forms" to International's legal department in Chicago.

As for Perle, many of the improper transactions which he signed off on as a member of the Board and the audit and compensation committees were done through written consents, not voting at an actual meeting. Perle received the consents from International's general counsel in Chicago and returned the signed documents to International's legal department in Chicago.

*20 In sum, this Court finds that by accepting directorships with a company with its principal place of business in Illinois and exercising their duties as directors, both Colson and Perle had fair warning that they could be subject to suit in this state in connection with the performance of their duties as directors.

This Court also finds that exercise of jurisdiction over Colson and Perle will not "offend traditional notions of fair play and substantial justice." Illinois was, at the time of the looting, International's principal place of business, and thus, this state has an interest in litigating claims against International's directors. *See Builders Bank v. SWH Fnding Corp.,* 2004 WL 1699022, at *5 (N.D.Ill. July 29, 2004). In addition, International owns many newspapers in this state, including the *Sun-Times,* and employs thousands workers in Illinois. Moreover, neither Colson nor Perle have set forth any reasons as to why litigating this action in Illinois would be so inconvenient as to deprive them of due process.

Accordingly, because this Court finds that personal jurisdiction is proper under the Illinois long-arm statute and does not violate due process, the Rule 12(b)(2) motions to dismiss are DENIED.

II. Motion to Dismiss for Failure to Join Indispensable Parties

Next, this Court turns to Defendants' Motion to Dismiss for Failure to Join Indispensable Parties under Rules 12(b)(7) and 19. In ruling on a motion to dismiss for failure to join an indispensable party, the court must accept the allegations of the complaint as true. *Davis Companies v. Emerald Casino, Inc.,* 268 F.3d 477, 479 (7th Cir.2001); *Pasco Int'l (London) Ltd. v. Stenography Corp.,* 637 F.2d 496, 499 (7th Cir.1980). The court may, however, look outside of the pleadings and consider extrinsic evidence. *Davis,* 268 F.3d at 480; *English v. Cowell,* 10 F.3d 434, 437 (7th Cir.1993); *Capitol Leasing Co. v. Fed. Dep. Ins. Corp.,* 999 F.2d 188, 191 (7th Cir.1993).

A motion to dismiss under Rule 19 requires a two-step analysis. First, the court must determine whether or not a party is necessary or, in Rule 19 nomenclature, a "person to be joined if feasible." Fed.R.Civ.P. 19(a); *U.S. ex rel Hall v. Tribal Dev. Corp.,* 100 F.3d 476, 478 (7th Cir.1996). To

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

determine if a party is necessary under Rule 19(a), courts examine whether: (1) complete relief can be accorded among the present parties to the lawsuit; (2) the absent party's ability to protect its interest will be impaired; and (3) any existing parties might be subjected to a substantial risk of multiple or inconsistent obligations unless the absent party is joined. *Thomas v. United States,* 189 F.3d 662, 667 (7th Cir.1999).

Second, if a party is found to be necessary under Rule 19(a) but cannot be joined, the court must then decide if the action can proceed in "equity and good conscience" without the necessary party, or whether it should be dismissed. [FN18] Fed.R.Civ.P. 19(b). In other words, the second step in the bifurcated Rule 19 analysis is to determine if the absent party is "indispensable." *Hall,* 100 F.3d at 479. Rule 19(b) provides four factors to be considered in determining whether a party is "indispensable." These factors include whether: (1) a judgment entered in the absence of the missing party will be prejudicial to the absent or existing party; (2) any such prejudice can be lessened or avoided by reshaping the judgment; (3) the judgment will be adequate; and (4) the plaintiff will have an adequate remedy if the action is dismissed. *Moore v. Ashland Oil, Inc.,* 901 F.2d 1445, 1447 (7th Cir.1990).

> FN18. The defendant bears the burden in a Rule 19 motion of "showing that [the missing parties] must be joined for just adjudication." *Florian v. Sequa Corp.,* 2002 WL 31844985, at *3 (N.D.Ill.Dec.18, 2002).

*\*21* Here, Defendants contend that Bradford and Horizon are necessary and indispensable parties because they have an interest in the subject matter of this action which will be prejudiced without their participation in this case.

A careful reading of the First and Second Amended Complaints reveals that Bradford and Horizon have an interest in this litigation, but that this interest will not be prejudiced to such an extent as to require dismissal under Rule 19. As explained in detail above, one of the major allegations in this action is that Black and Radler, who had an undisclosed controlling interest in Bradford and Horizon, used their positions with International to orchestrate the sale of International's assets to these companies at well below market value. In the First Amended Complaint, in which Bradford and Horizon were

named as Defendants, International sought to rescind the above sales. After this Court dismissed the RICO counts, International dropped Bradford and Horizon to ensure complete diversity but still seeks essentially the same relief as it did in the First Amended Complaint. In the Second Amended Complaint, International seeks "an order granting a constructive trust" on Black and Radler's ownership interests in Horizon and Bradford. Because Black and Radler own or control 80% of Horizon and at least 50% of Bradford, a constructive trust would give International a controlling interest in these companies. Accordingly, this Court finds that Bradford and Horizon have an interest in this action.

Having an interest in and of itself, however, is not sufficient under Rule 19. The interest must be one which is not adequately protected by the existing parties and which could be prejudiced by an adverse ruling. *Extra Equipamentos E Exportacao, LTDA v. Case Corp.,* 361 F.3d 359, 363-64 (7th Cir.2004). It is not enough that an absent party is "an indispensable witness," *Salton, Inc. v. Phillips Domestic Appliances and Personal Care,* 391 F.3d 871, 880 (7th Cir.2005), or a joint-tortfeasor, who could be subject to future litigation or bound by the judgment. *Pasco Int'l (London) Ltd. v. Stenography Corp.,* 637 F.2d 496, 505 (7th Cir.1980); *Cargo Pacific Logistics, Inc. v. Concord Express, Inc.,* 1996 WL 699649, at *5 (N.D.Ill. Nov.27, 1996); *Swana Bus. Creit Corp. v. Pilevsky,* 1991 WL 38713, at *2 (N.D.Ill. Mar.21, 1991).

In *Extra Equipamentos E Exportacao, LTDA,* 361 F.3d at 360-61, the plaintiff and the defendant's subsidiary entered into an agreement, which the subsidiary later disavowed. The plaintiff then brought an action for fraud against the defendant/parent company alleging that it misrepresented its authority to bind its subsidiary to the agreement. *Id.* The defendant then moved to dismiss under Rule 19 on the grounds that the subsidiary was a necessary and indispensable party. *Id.* The district court granted that motion after holding that the subsidiary's interests could be prejudiced by an adverse judgment against its parent. *Id.*

*\*22* On appeal, the Seventh Circuit vacated and remanded on the grounds that in analyzing "indispensability," the district court should have taken into account the fact that the absent party was a "100 percent subsidiary" of the defendant. *Id.* at 363-64. According to the Seventh Circuit, it is extremely

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                    Page 19
2005 WL 589000 (N.D.Ill.)
(Cite as: 2005 WL 589000 (N.D.Ill.))

unlikely that the absent party/subsidiary would be prejudiced if not a party to this action because the parent company would fully protect the subsidiary's interests. Indeed, the court stated that "we have great difficulty seeing how a 100 percent subsidiary could *ever* be an indispensable party." (Emphasis in original.)

Although the parties in *Extra* had a complete identity of interest, other courts have found that for purposes of Rule 19(b) "precise alignment of interests" is not necessary for the court to find that the absent party is not indispensable. *Wyandotte Nation v. City of Kansas City, Kansas,* 200 F.Supp.2d 1279, 1292 (D.Kan.2002) (finding that absent party not indispensable because their interests "are substantially similar" and they both "seek the same outcome"). Courts have held that an absent party was not indispensable where: (1) its interests were "adequately represented by the parties who are present," *Sanwa Business Credit Corp. v. Pilevsky,* 1991 WL 38713, at *2 (N.D.Ill. March 21, 1991); (2) the "defendant has the incentive and the ability to litigate for its own as well as [the missing party's] interests," *North Shore Gas Co. v. Salomon, Inc.,* 896 F.Supp. 786, 791 (N.D.Ill.1995); and (3) both the absent and present parties "want the same thing." *Evangelical Lutheran Church in America v. Atlantic Mut. Ins. Co.,* 173 F.R.D. 507, 508-09 (N.D.Ill.1997).

Here, although not a complete identity of interest, this Court finds that Black and Radler dominate Bradford and Horizon to such an extent that their interests are almost completely aligned, so that Black and Radler will protect the absent parties' interests as if they were their own (which they essentially are). Through personal ownership and other companies that they control, Black and Radler, directly and indirectly, own or control up to 80% of Horizon and at least 50% of Bradford. [FN19] Black and Radler dispersed the remainder of the equity in these companies to individuals whom they controlled and/or dominated because the other owners were either their employees, friends, or business partners. In addition, Radler was the president, CEO, and a director at Horizon.

> FN19. Black and Radler allegedly went to great lengths to hide their control over Horizon and Bradford and failed to disclose their ownership interests to the Board or in International's public filings with the SEC.

Black and Radler formed Horizon in 1998 and Bradford in 2000, allegedly for the purpose of using them to loot International. As explained in detail above, they used these entities to purchase International's assets at below market value and then sold the assets to third parties at higher prices and personally pocketed the difference. International now seeks a "constructive trust" on Black and Radler's ownership interests in Horizon and Bradford, which would allow the Company to disgorge the improper profits that the companies received in the deals with International. Thus, Black and Radler will ultimately bear the brunt of any judgment against Horizon and Bradford and thus have a clear and certain motivation to defend the interests of Horizon and Bradford as if they were their own interests.

*23 This Court thus finds that, although not a complete identity of interests, Black and Radler have almost identical interests as Bradford and Horizon and will adequately protect those interests in their absence. [FN20] Accordingly, because Bradford and Horizon are not indispensable parties, this Court DENIES the motion to dismiss for failure to join indispensable parties.

> FN20. In addition to the prejudicial prong, this Court finds that none of the other three Rule 19(b) factors support a finding of indispensability. For example, any prejudice to Horizon and Bradford can be lessened by this Court fashioning a judgment to protect their minority investors' interests from a judgment in this case. Likewise, International can get complete relief for the improper sales to Horizon and Bradford from their owners--Black and Radler.

III. Motion to Dismiss for Failure to State a Claim

In addition to the Rule 12(b)(2) and (7) motions, Defendants Black, Inc., and Perle have moved to dismiss pursuant to Rule 12(b)(6). In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must assume the truth of all facts alleged in the pleadings, construing allegations liberally and viewing them in the light most favorable to the non-moving party. *See, e.g., McMath v. City of Gary,* 976 F.2d 1026, 1031 (7th Cir.1992); *Gillman v. Burlington N. R.R. Co.,* 878 F.2d 1020, 1022 (7th Cir.1989). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the

plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kunik v. Racine County, Wis.,* 946 F.2d 1574, 1579 (7th Cir.1991) (citing *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)).

The court will accept all well-pled factual allegations in the complaint as true. *Miree v. DeKalb County,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the court will construe the complaint liberally and will view the allegations in the light most favorable to the non-moving party. *Craigs, Inc. v. General Electric Capital Corp.,* 12 F.3d 686, 688 (7th Cir.1993). However, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992).

Defendants have set forth three separate grounds for dismissal. Black and Inc. contend that this action is barred by the doctrine of res judicata. Perle asserts that dismissal is proper because: (1) the statute of limitations bars the one claim against him (Count 24); and (2) International has failed to allege a claim for breach of fiduciary duty. The Court will discuss each of these contentions in turn.

A. Res Judicata

Black and Inc. assert that the claims in this case are precluded by the decision of the Delaware Chancery Court in *Hollinger International, Inc. v. Black,* 844 A.2d 1022 (Del.Ch.2004) and its "final judgment" granting summary judgment in favor of International on its claims that Black breached the Restructuring Proposal and his fiduciary duty of loyalty by failing to repay the non-compete payments as promised in the Restructuring Proposal and attempting to sell-off the *Telegraph* in a deal designed to benefit himself at the expense of the majority non-controlling shareholders. According to Defendants, International should have presented the claims in this case in the earlier filed Delaware Action. By failing to do so, Defendants contend that res judicata precludes International from bringing those claims in this action.

*24 Under Delaware law, res judicata "bars litigation between the same parties if the claims in the later litigation arose from the same transaction that forms the basis of the previous adjudication." *Kossol v. Ashton Condominium Assoc., Inc.,* 637 A.2d 827,

1994 WL 10861, at *2 (Del.1994). [FN21] In determining if res judicata applies, courts examine whether the claims from both cases are based on the same "underlying transaction." *Maldonado v. Flynn,* 417 A.2d 378, 381-82 (Del.Ch.1980). If the same transaction or "identical" set of facts form the basis of the prior and current actions then the court should dismiss the later filed action. *Id.; Kossol,* 1994 WL 10861, at *2. "In other words, a plaintiff [is] not permitted, after [bringing] a case on one theory, to pursue a different theory *based on the same proof.*" *Trans World Airlines, Inc. v. Hughes,* 317 A.2d 114, 119 (Del.Ch.1974) (emphasis added). The policy underlying this rule is that "it is fairer to require a plaintiff to present in one action all of his theories of recovery relating to a transaction, and all evidence relating to those theories, than to permit him to prosecute overlapping or repetitive actions in different courts [ ] at different times." *Maldonado,* 417 A.2d at 382.

> FN21. In accordance with the Full Faith and Credit Act, 28 U.S.C. § 1738, to determine the res judicata effect of a state court decision in a subsequent federal action, the federal court should apply the res judicata law of the state where the initial decision arose. *Marrese v. American Academy of Othopedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).

Here, after carefully comparing the Second Amended Complaint in this case and the complaint, the decision, and the judgment from the Delaware Litigation, this Court finds that the present litigation and the Delaware Action arose out of a different set of operative facts (*i.e.,* separate transactions). [FN22] As detailed above, the Delaware Action arose out of: (1) the Special Committee's investigation, which began in May 2003, into certain non-compete payments; (2) the Restructuring Proposal and Strategic Process, which International entered into with Black in late November of 2003; and (3) Black's violation of these agreements immediately after executing them. The Delaware court found that Black breached his fiduciary duty of loyalty, the Restructuring Proposal, and the Strategic Process by: (1) attempting to sell the *Telegraph* to the Barclays for his own benefit at the expense of the other shareholders and using confidential inside corporate information in this attempt; (2) misleading the Board about his actions; and (3) failing to repay certain non-compete payments in violation of his promise to do so

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in the Restructuring Proposal. In a "final judgment," the Delaware awarded International $21,154,025 against Black and Inc. jointly and $8,693,053 against Black individually. These amounts include non-compete payments received by Black and Inc. that Black promised to repay in the Restructuring Proposal.

> FN22. The Court notes that in a related case filed in Delaware, Defendant Ravelston stated, in a submission to the Canadian court, that "[t]he Delaware action had nothing to do with the dispute" of the management fees paid by International. "Instead, [the Delaware action] was focused entirely on the Restructuring Proposal." (International's Motion to Supplement its Opposition Brief, Ex. A at 9 [Docket No. 225-1].)

In contrast, in the present action, which was filed shortly after the Delaware Litigation, International alleges state law claims for breach of fiduciary duty, unjust enrichment, and civil conspiracy against Defendants (including Black and Inc., the lone defendants in the Delaware Litigation), for allegedly using their positions as officers, directors, and controlling shareholders of International to "loot" over $425 million from the Company. This looting took place from 1994 to April 2003 and was completed before Black committed the breaches alleged in the Delaware Action.

*25 Although both actions concern the non-compete payments made in the CNHI II Transaction, only this action alleges any wrongdoing in relation to those payments. Indeed, the proof needed to succeed in each action is different. The Delaware Action arose out of Black's conduct in November 2003 to January 2004, when he attempted to sell the *Telegraph* and failed to repay certain non-compete payments in breach of the Restructuring Proposal and the Strategic Process. The Delaware Action did not allege that the non-compete payments were improper, only that Black breached his commitment to repay those monies as promised in the Restructuring Proposal.

In contrast, the present action, as detailed fully above, alleges that from 1994 to April 2003 Black (and other Defendants) looted International by causing it to: (1) sell valuable newspaper assets to companies controlled by Defendants at below market prices; (2) pay them "sham non-compete payments"

in connection with these sales; (3) award them other unwarranted, excessive, and unauthorized payments, including management fees and salaries; and (4) make low interest loans to Inc.

Accordingly, this Court finds that res judicata does not apply because the two actions did not arise out of the same transaction and the proof underlying the claims in each action involve separate conduct which occurred at different times. [FN23]

> FN23. Although not argued in their opening briefs, in their joint reply brief, Black and Inc. contend that this action is precluded by the "accord and satisfaction" doctrine in addition to res judicata. Under this theory, Black and Inc. contend that the Restructuring Proposal was actually a settlement agreement (the accord) which resolved the parties' dispute over the non-compete payments. Therefore, because International sued on the Restructuring Agreement in the Delaware Action, it cannot now sue on the underlying breach of duty. This contention likewise fails because, as explained above, the Restructuring Proposal only covered a small portion of the alleged improper non-compete payments ($32.15 million out of over $88 million) and the agreement specifically allowed for the Special Committee to continue its investigation.

In the alternative to dismissal under res judicata, Black and Inc. contend that this Court should abstain from hearing this case under the *Colorado River* abstention doctrine until the Delaware Supreme Court issues a decision in the appeal of the Delaware Action. Under *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 818, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), a district court may abstain from hearing a case when considerations of "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," support abstention in favor of a pending parallel state court case. Abstention under *Colorado River* is "appropriate only in exceptional circumstances." *AXA Corporate Solutions v. Underwriters Reins, Corp.,* 347 F.3d 272, 278 (7th Cir.2003). Before a court can consider whether exceptional circumstances justify a stay under *Colorado River,* it must first consider whether the federal action is "parallel" to the state proceeding.

*Id.* Two suites are "parallel" only if "substantially the same parties are contemporancously litigating *substantially the same issues* in another forum." *Id.* (emphasis added). Here, as explained above, this action and the Delaware Litigation do not involve "substantially the same issues." Thus, abstention is not appropriate under *Colorado River.*

Accordingly, this Court DENIES the motions to dismiss brought by Black and Inc.

B. Statute of Limitations

Perle contends that under the Illinois Borrowing Statute the Delaware three-year statute of limitations bars this action. In response, International contends that the Illinois five-year statute of limitations governs this action, and even if Delaware's statute of limitations applied, the statute was tolled. The Court will address each of these contentions in turn.

*26 Under the Illinois Borrowing Statute, 735 ILCS 5/13-210, "[w]hen a cause of action has arisen in a state or territory out of this State ... and, by the laws thereof, an action thereon cannot be maintained by reason of lapse of time, an action thereon shall not be maintained in this State." Courts interpreting this statute hold that the foreign statute of limitations is applicable where: (1) none of the litigants are Illinois residents; and (2) the cause of action "arose outside of Illinois." *Caraluzzi v. Prudential Sec., Inc., 824 F.Supp. 1206, 1213 (N.D.Ill.1993).* For purposes of the borrowing statute, a corporation is a resident of the state where it is incorporated. *Tellular Corp. v. Mentor Graphics Corp., 282 F.Supp.2d 869, 872 (N.D.Ill.2003).*

Because International is incorporated in Delaware and none of the Defendants are Illinois residents, the only question is whether this action "arose" in Delaware. In the context of the Illinois Borrowing Statute, in determining where the action arose, courts apply the "most significant relationship test" as adopted from the Second Restatement. *Tellular Corp., 282 F.Supp.2d at 872.* Under section 145 of the Restatement (Second) Conflict of Laws, to determine where a tort claim arose, Illinois courts examine:

(a) the place where the injury occurred;
(b) the place where the conduct causing the injury occurred;
(c) the domicile, residence, nationality, place of incorporation and place of business of the parties;

and
(d) the place where the relationship, if any, between the parties [was] centered.

In *Caraluzzi, 824 F.Supp. at 1209-11,* the plaintiff sued his former securities broker for breach of fiduciary duty, fraud, and negligent misrepresentation. The crux of the plaintiff's claim was that the defendant sent him monthly statements detailing his investments which misrepresented their true value. *Id. at 1211.* In determining that the breach of fiduciary claim "arose" in Connecticut for purposes of applying the Illinois Borrowing Statute, the court noted that the defendant mailed the fraudulent statements to the plaintiff's Connecticut address from Connecticut where the defendant was located. *Id. at 1213-14.*

Here, other than the fact that International is incorporated in Delaware, Perle has not put forth any other reasons as to why the breach of fiduciary claim arose in Delaware. While this Court does not hold at this time that Illinois has the "most significant relationship" to this action, Illinois certainly has more of a relationship to the breach of fiduciary claim against Perle than Delaware. Many of the consents which underlie the breach of fiduciary claim against Perle were mailed or faxed from International's corporate headquarters in Chicago to Perle in Maryland and were returned to Chicago by Perle. Likewise, most of International's bank accounts upon which the alleged improper payments were drawn were located in Chicago. Accordingly, this Court finds that the Illinois Borrowing Statute does not require that this Court apply Delaware's three-year statute of limitations.

*27 Moreover, even if the Delaware three-year statute applied, this Court finds that it was tolled under Delaware's doctrine of equitable tolling. Under Delaware law, the statute of limitations is tolled in "claims against directors" alleged to have breached their fiduciary duties by approving a self dealing transaction, where the directors "are controlled by, or are not independent of, the controlling shareholder" that engaged in the self dealing. *In re Maxxam, Inc., 1997 WL 187317, at *12 (Del.Ch. April 4, 1997). See also Litman v. Prudential-Bache Properties, Inc., 1994 WL 30529, at *3-4 (Del.Ch. Jan.14, 1994).* Under this doctrine, the statute is tolled until the plaintiff learned of or should have reasonably learned of its injury. *Id.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Here, International alleges that Perle was not a completely independent director. While sitting on the Board and on its audit, compensation, and executive committees, Perle served, via an appointment from Black, as CEO of Digital. During his tenure with Digital, despite losing over $68 million on its investments managed by Digital, International paid Perle over $3.1 million in "incentive payments" for his performance as Digital's CEO. Accordingly, this Court finds that Perle was not an independent director for purposes of determining when he breached his fiduciary duty by approving Black's self-dealing transactions because he was beholden to Black for, among other things, his compensation at Digital.

As for when International knew or should have known of its injuries, as explained in detail above, International alleges that Black and Radler used their authority as the controlling shareholders to loot International from 1994 to April 2003. Black and Radler apparently kept their conduct secret from the majority non-controlling shareholders until May of 2003, when one of International's largest non-controlling stockholders demanded that the Board initiate an investigation into certain non-compete payments. In response, the Board created the Special Committee, which in late October 2003, concluded that $32.15 million in non-compete payments had wrongly been paid to Black, Radler, Boultbee, and Inc. Thus, this Court finds that the Delaware three-year statute of limitations began to run at the earliest in May of 2003. Therefore, even if this Court were to apply Delaware's statute of limitations, it does not bar the breach of fiduciary duty claim against Perle.

C. Breach of Fiduciary Duty

Perle has also moved to dismiss the sole claim against him (breach of fiduciary duty) on the grounds that International has failed to allege and cannot allege that he breached his duties of loyalty, good faith, or care while serving as a director. The Court will address each of these duties in order.

Under Delaware's business judgment rule, there is a presumption that directors make decisions "on an informed basis, in good faith and in the honest belief that the [decision] was taken in the best interests of the company." *Orman v. Cullman,* 794 A.2d 5, 19-20 (Del.Ch.2002). To overcome this presumption and to allege that a director breached his duty of loyalty in voting to approve a corporate transaction which benefitted the controlling shareholder at the expense

of the corporation and the other shareholders, the plaintiff must allege: (1) the director was "interested in the outcome" of the alleged self dealing transaction; or (2) "lacked independence to consider objectively whether the transaction was in the best interest of the company and all its shareholders." *Id.* at 22.

\*28 Here, International alleges that Perle breached his fiduciary duty of loyalty by consenting to the alleged improper self dealing transactions without reading, discussing, or evaluating the underlying details. International, however, has not alleged that Perle had a direct financial interest in any of the transactions at issue. The question thus is whether he "lacked independence" from Black and Radler--the controlling shareholders, who pushed through and personally benefitted from the disputed transactions.

To sufficiently plead "lack of independence," the plaintiff must allege "particularized facts" supporting a "reasonable inference" that the director was "beholden" to the controlling shareholder through a close personal, family, or business relationship. *Id.* at 24, 25 n. 50. A director is "considered beholden to (and thus controlled by) another when the allegedly controlling entity has the unilateral power (whether direct or indirect through control over other decision makers), to decide whether the director continues to receive a benefit, financial or otherwise," which is of material importance to the director. *Id.* at 25 n. 50, 30. This control has also been held to apply to past benefits which the controlling shareholder conferred upon the director. *In re Ply Gem Indus. Inc. Shareholders Lit.,* 2001 WL 1192206, at * 1 (Del.Ch. Oct.3, 2001).

Applying this standard, Delaware courts have held that directors who provide services (outside of their role as directors) for "material benefits" to the company, or another company dominated by the controlling shareholder, lack independence and thus may not assert the protections of the business judgment rule. For example, in *Orman,* 794 A.2d at 30, the court held that a director, who provided consulting services to the company, was beholden to the controlling shareholder because the continuation of his consulting contract (which was worth $75,000) rested upon the discretion of the controlling shareholder. Similarly, in *In re Emerging Com. Shareholders Lit.,* 2004 WL 1305745, at *33 (Del.Ch. June 4, 2004), the court found that a director, whose outside legal practice derived much

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                  Page 24
2005 WL 589000 (N.D.Ill.)
**(Cite as: 2005 WL 589000 (N.D.Ill.))**

of its business through the controlling shareholder, was not an independent director. *See also Telxon Corp. v. Meyerson,* 802 A.2d 257, 265 (Del.2002) (director not independent because his law firm received "a substantial portion of its revenue" from the controlling shareholder and businesses he controlled).

Here, International alleges that during the time Perle sat on the Board and approved the disputed self-dealing transactions, Black had Perle appointed CEO of Digital Management, which as explained above, was a subsidiary of International whose sole function was to manage investments for International. Despite losing over $68 million on its investments managed by Digital, International paid Perle over $3.1 million in "incentive payments" for his performance as Digital's CEO. International alleges that Black personally dictated Perle's compensation (which this Court finds to be "material") with Digital. Consequently, at this time, this Court finds that International has alleged "particularized facts" supporting a "reasonable inference" that Perle was "beholden" to Black and thus not independent.

**\*29** Additionally, Perle contends that International has failed to allege a claim for breach of duty of good faith. To allege a claim against corporate directors for breach of their duty to act in good faith, the plaintiff must allege that the directors "consciously and intentionally disregarded their responsibilities, adopting a we don't care attitude about the risks concerning a material corporate decision." *In re Emerging Com. Shareholders Lit.,* 2004 WL 1305745, at \*43. In other words, directors violate their duty of good faith if "they knew that they were making material decisions without adequate information and without adequate deliberation." *Id* at 43 n. 192 (*quoting In re Walt Disney,* 825 A.2d 275, 289 (Del.Ch.2003)).

Here, International alleges that Perle breached his fiduciary duty of good faith by consenting to the alleged improper self-dealing transactions without reading, discussing, or evaluating the underlying details or asking any questions or that the deals be reviewed by the audit committee or an independent third party. Perle's failure to even question these transactions is particularly troubling if, as International alleges, he knew that they were related-party transactions in which Black stood on both sides of the deal. Instead, he simply signed off on them without giving thought to whether the transactions

would be detrimental to International and its majority non-controlling shareholders. Accordingly, at this time, the Court finds that International has sufficiently alleged that Perle breached his duty of good faith.

Perle also asserts that International has failed to allege a claim for breach of his duty of care because such a claim is barred by section 102(b)(7) of the Delaware General Corporate Code, which allows Delaware corporations to insert a provision in their certificate of incorporation which shields directors for liability for breaches of the duty of care. [FN24] *Orman,* 794 A.2d at 39. Under this provision, "absent cause for suspicion," directors are not liable for their decisions if they based their decisions on information provided by corporate management. *In re Caremark Int'l Inc. Derivative Litig.,* 698 A.2d 959, 969 (Del.Ch.1996)

> FN24. The parties do not dispute that International's certificate of incorporation contains a provision shielding its directors from liability for breaches of the duty of care.

Here, International alleges that Perle did not even read the information provided by management when he consented to the disputed transactions. Such an omission would be grossly negligent if, as alleged, he knew that the transactions he was approving involved entities directly or indirectly controlled by Black. Such knowledge would be "cause for suspicion" and at a minimum require Perle to at least read the information provided on the transactions. Therefore, this Court holds that International has properly alleged a cause of action for breach of the duty of care.

In conclusion, this Court DENIES Perle's motion to dismiss under Rule 12(b)(6). [FN25]

> FN25. Perle also contends that even if International properly alleged a claim for breach of fiduciary duty, International's request for disgorgement should be stricken because Delaware law does not recognize a faithless fiduciary doctrine, and thus, International has no right to the compensation it paid Perle. This contention likewise fails because at least one Delaware court has held that corporate officers may be required to forfeit their compensation if their

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 589000 (N.D.Ill.)
**(Cite as: 2005 WL 589000 (N.D.Ill.))**

breach of fiduciary duty was of "some detriment to the corporation or conflict of interest on the part of the officer." *Criton v. Merritt-Chapman & Scott Corp.,* 409 A.2d 607, 611 (Del.Ch.1977). Because International has alleged a detriment and a conflict of interest, the Court denies Perle's request at this time.

## CONCLUSION

For the reasons set forth above, this Court DENIES: (1) Defendant Colson's Motion to Dismiss for Lack of Personal Jurisdiction [185-1]; (2) Defendant Perle's Motion to Dismiss, pursuant to Rules 12(b)(2) and (6) [188-1 and 193-1]; (3) Defendants' Motion to Dismiss for Failure to Join an Indispensable Party [178-1, 194-1 and 195-1]; and (4) Defendants Black and Inc.'s Motions to Dismiss under Rule 12(b)(6) [184-1 and 182-1]. It is so ordered.

2005 WL 589000 (N.D.Ill.)

**Motions, Pleadings and Filings (Back to top)**

. 2004 WL 2815114 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of Dan Colson's Motion for Entry of A Protective Order (Sep. 29, 2004)

. 2004 WL 2815121 (Trial Motion, Memorandum and Affidavit) Reply Memorandum in Further Support of Daniel W. Colson's Motion to Dismiss the First Amended Complaint (Sep. 29, 2004)

. 2004 WL 2815110 (Trial Motion, Memorandum and Affidavit) The Horizon Defendants' Reply to Plaintiff's Opposition to Supplemental Motion to Dismiss (Aug. 13, 2004)

. 2004 WL 2815101 (Trial Motion, Memorandum and Affidavit) Defendant Bradford Publishing Company's Reply to Plaintiff Hollinger's Corrected Opposition to Supplemental Motions to Dismiss the Complaint by Horizon and Bradford Defendants (Aug. 10, 2004)

. 2004 WL 2815091 (Trial Motion, Memorandum and Affidavit) Barbara Amiel Black's Reply in Further Support of Motion to Dismiss Counts XIII and XXVIII for Lack of Subject Matter Jurisdiction (Aug. 06, 2004)

. 2004 WL 2815095 (Trial Motion, Memorandum

and Affidavit) Defendants' Reply Memorandum in Further Support of Their Motion to Dismiss the First Amended Complaint (Aug. 06, 2004)

. 2004 WL 2815106 (Trial Motion, Memorandum and Affidavit) Defendant Conrad M. Black's Reply Memorandum in Support of His Supplemental Motion to Dismiss the Complaint (Aug. 06, 2004)

. 2004 WL 2815087 (Trial Motion, Memorandum and Affidavit) Defendant Bradford Publishing Company's Supplemental Memorandum in Support of Motion to Dismiss (Jul. 07, 2004)

. 2004 WL 2815080 (Trial Motion, Memorandum and Affidavit) Defendants, Horizon Publications Inc., Horizon Illinois Publications Inc., Horizon Hawaii Publications Inc., Horizon Publications U.S.A., Inc., and Horizon California Publishing Inc.'s Response to Plaintiff Hollinger International Inc.'s Motion for Entry of Default Order Pursuant to Rule 55. (Jun. 21, 2004)

. 2004 WL 2815068 (Trial Motion, Memorandum and Affidavit) Defendant Hollinger International Inc.'s Response to Local Rule 40.4 Motion of Conrad M. Black for Reassignment of Black V. Hollinger International Inc. to Judge Manning as Related to Hollinger International Inc. v. Black, et al (May. 10, 2004)

. 2004 WL 2815060 (Trial Pleading) First Amended Complaint (May. 07, 2004)

. 2004 WL 2815073 (Trial Motion, Memorandum and Affidavit) Memorandum of Conrad M. Black in Support of Lr 40.4 Motion for Reassignment of Black V. Hollinger International Inc. to Judge Manning as Related to Hollinger International Inc, V. Black, et al. (May. 04, 2004)

. 2004 WL 2815852 (Trial Motion, Memorandum and Affidavit) Memorandum of Plaintiff Hollinger International, Inc. in Response to Joint Memorandum of Non-Party Class Plaintiffs in Further Support of Motion by Defendant Hollinger Inc. for Finding of Relatedness and Reassignment of Actions (Apr. 28, 2004)

. 2004 WL 2815862 (Trial Motion, Memorandum and Affidavit) Hollinger Inc.'s Reply in Support of Its Motion for a Finding of Relatedness and Reassignment of Actions (Apr. 26, 2004)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 589000 (N.D.Ill.)
**(Cite as: 2005 WL 589000 (N.D.Ill.))**

. 2004 WL 2815838 (Trial Motion, Memorandum and Affidavit) Joint Memorandum of Teachers' Retirement System of Louisiana, Kenneth Mozingo and Washington Area Carpenters Retirement and Pension Fund in Further Support of the Motion For Finding of Relatedness and Reassignment of Actions Submitted By Hollinger, I nc. (Apr. 23, 2004)

. 2004 WL 2815824 (Trial Motion, Memorandum and Affidavit) Memorandum of Plaintiff Hollinger International, Inc. in Opposition to Motion of Defendant Hollinger, Inc. for Finding of Relatedness and Reassignment of Actions (Apr. 13, 2004)

. 2004 WL 2815814 (Trial Pleading) Complaint (Jan. 28, 2004)

.              1:04CV00698              (Docket) (Jan. 28, 2004)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2005 WL 589000 (N.D.Ill.)
**(Cite as: 2005 WL 589000 (N.D.Ill.))**

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.