# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, Chapter 11 Trustee of )
the Post-Confirmation Bankruptcy Estates of )
CORAM HEALTHCARE CORPORATION, )
a Delaware corporation, )
                                       )
        Plaintiffs, )
                                       )
   v. )      Case No. 04-1565
                                     )
DANIEL D. CROWLEY; DONALD J. )
AMARAL; WILLIAM J. CASEY; L. )
PETER SMITH; and SANDRA L. )
SMOLEY, )
                                       )
        Defendants. )

---

## REPLY BRIEF IN SUPPORT OF
## THE OUTSIDE DIRECTOR DEFENDANTS'
## MOTION TO DISMISS

---

OF COUNSEL:
Boris Feldman, Esquire
Peri B. Nielsen, Esquire
Shelby K. Pasarell, Esquire
WILSON SONSINI GOODRICH & ROSATI, PC
650 Page Mill Road
Palo Alto, California  94304-1050
Tel:  (650) 493-9300

Peter J. Walsh, Jr. (DSB ID No. 2437)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Post Office Box 951
Wilmington, Delaware  19899-0951
Tel:  (302) 984-6000
E-mail:  pwalsh@potteranderson.com

*Attorneys for Defendants*
*Donald J. Amaral, William J. Casey,*
*L. Peter Smith, and Sandra L. Smoley*

Dated  April 15, 2005

678341v1/28762

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................  1

ARGUMENT  ....................................................................................................  4

I.     MOTION TO DISMISS STANDARD...............................................  4

II.    PLAINTIFF FAILS TO ALLEGE FACTS TO OVERCOME THE
PROTECTION AFFORDED BY SECTION 102(b)(7)......................  6

     A.    Plaintiff Does Not Allege That the Outside Directors Breached
Their Duty of Loyalty or Good Faith........................................  6

     B.    The Complaint Alleges No Facts Showing the Outside Directors
Acted Intentionally or Knowingly Violated the Law ...............  8

         1.    The Decision to Approve Mr. Crowley's Retention....................  9

         2.    The Decision to Approve Mr. Crowley's Amended
Employment Agreement ...........................................  10

         3.    The Decision to Keep Mr. Crowley as CEO Post-Petition..........  11

CONCLUSION...................................................................................  16

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Abbott Labs. Deriv. S'holder Litig.*, 325 F.3d 795 (7th Cir. 2003) ......................... 6

*Alidina v. Internet.com Corp.*,
    No. 17235-NC, 2002 Del. Ch. LEXIS 156 (Del. Ch. Nov. 6, 2002) .................. 13

*Blackmore Partners, L.P. v. Link Energy LLC*, 864 A.2d 80 (Del. Ch. 2004) ...............5, 13

*In re Cendant Corp. Deriv. Litig.*, 189 F.R.D. 117 (D.N.J. 1999) ................................... 13

*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993),
    *modified on other grounds*, 636 A.2d 956 (Del. 1994) ........................................ 7

*Continuing Creditors' Committee of Star Telecommunications Inc. v. Edgecomb*,
    No. 03-278-KAJ, 2004 U.S. Dist. LEXIS 25807 (D. Del. Dec. 21, 2004) .... *passim*

*Damage Recovery Sys., Inc. v. Tucker*,
    No. 02-1647-SLR, 2005 WL 388597 (D. Del. Feb. 2, 2005) ............................. 12

*In re Emerging Communication, Inc. S'holder Litig.*,
    No. 16415, 2004 WL 1305745 (Del. Ch. June 4, 2004) ..................................... 7

*Guttman v. Huang*, 823 A.2d 492 (Del. Ch. 2003) .......................................................... 7

*Hollinger Int'l, Inc. v. Hollinger, Inc.*,
    No. 04-C-0698, 2005 WL 589000 (N.D. Ill. March 11, 2005) .................5, 14, 16

*In re Valley Park Group, Inc.*, 96 B.R. 16 (Bankr. N.D.N.Y. 1989) .............................. 12

*In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275 (Del. Ch. 2003) ......................... *passim*

*Leung v. Schuler*, No. 17089, 2000 Del. Ch. LEXIS 41 (Del. Ch. Feb. 29, 2000) .......... 5

*The Litigation Trust of MDIP, Inc. v. Rapoport*,
    No. 03-779, 2004 WL 3101575 (D. Del. Nov. 29, 2004) ................................... 15

*Malone v. Brincat*, 722 A.2d 5 (Del. 1998) .................................................................. 7

*McCall v. Scott*, 239 F.3d 808 (6th Cir. 2001),
    *modified*, 250 F.3d 997 (6th Cir. 2003) ................................................................ 16

*McMullin v. Beran*, 765 A.2d 910 (Del. 2000) .............................................................. 7

*O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902 (Del. Ch. 1999) ....................... 13

*Official Comm. Of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*,
    No. 20228-NC, 2004 Del. Ch. LEXIS 122 (Del. Ch. Aug. 24, 2004) ................ 14

*Orman v. Cullman*, 794 A.2d 5 (Del. Ch. 2002).......................................................... 6, 13

*Production Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772 (Del. Ch. 2004) ...... 13

*In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706 (D. Del. 2000) ......................................... 13

*Sanders v. Wang*, No. 16640, 1999 WL 1044880 (Del. Ch. Nov. 8, 1999) ................... 13

*Stanziale v. Nachtomi*,
    No 01-403 KAJ, 2004 U.S. Dist. LEXIS 7375  (D. Del. April 20, 2004) ........... 5

*In re Trump Hotels S'holder Deriv. Litig.*, Nos. 96-Civ-7820,
    96-Civ-8527, 2000 U.S. Dist. LEXIS 13550 (S.D.N.Y. Sept. 21, 2000) ............ 13

## STATUTES

8 DEL. CODE § 141(a) ..................................................................................................... 15

8 DEL. CODE § 141(e) ..................................................................................................... 14

## INTRODUCTION

The bulk of plaintiff's Answering Brief is devoted to the assertion that his allegations withstand dismissal under Section 102(b)(7) because he has alleged that the Outside Directors breached their duty of "good faith."  Plaintiff apparently believes that, by using the term "good faith," he is excused him from pleading facts to support a claim that the Outside Directors' business decisions were the product of intentional misconduct.  Plaintiff cannot substitute the Bankruptcy Court's ruling for factual allegations.

At the outset, plaintiff's argument ignores the substantial body of recent Delaware case law cited by the Outside Directors establishing that "good faith" is not a separate fiduciary duty.  It is merely a subset of the duty of loyalty, which plaintiff concedes he is not claiming the Outside Directors breached.  While the language of Section 102(b)(7) does not exculpate "acts or omissions not in good faith," Delaware courts have construed this language to mean acts or omissions evidencing disloyal behavior.  These holdings comport with the very purpose of Section 102(b)(7), which is intended to protect directors from personal liability for even grossly negligent breaches of the duty of care.  Thus, Section 102(b)(7) must require allegations of disloyalty or intentional misconduct to have any meaning at all.  To the extent plaintiff attempts to lower this standard by using the term "good faith," his efforts are unavailing.

Even plaintiff appears to acknowledge that he cannot escape pleading some level of intentionality on the part of the Outside Directors.  The rest of his Answering Brief is spent analyzing his claims under the theory articulated by the *Disney* court, namely whether the Outside Directors "*consciously* disregarded" their fiduciary duty.  To survive dismissal under this standard, however, plaintiff's allegations must

demonstrate that the Outside Directors "completely abdicated" their fiduciary obligations. Plaintiff's Complaint fails to satisfy this standard, and plaintiff fails to offer a single allegation in his Answering Brief to suggest otherwise.

Plaintiff accuses the Outside Directors of not asking enough questions about Mr. Crowley's "relationship" with Cerberus, one of Coram's lenders, prior to his retention as CEO. Plaintiff does not dispute that the onus was on Mr. Crowley to disclose, not on the Outside Directors to ferret out, potential conflicts of interest. Plaintiff argues that the Outside Directors should have viewed this relationship as a "red flag" requiring further inquiry. Plaintiff does not provide any basis for this assertion, other than the benefit of hindsight. In fact, his Complaint demonstrates just the opposite since he alleges Mr. Crowley was qualified and competent, and his compensation was tied to Coram's operational performance. Plaintiff fails to explain how these allegations raised "red flags," demonstrating that the Outside Directors "consciously disregarded" their fiduciary duty by approving Mr. Crowley's retention.

Plaintiff's allegations regarding the negotiation of Mr. Crowley's Amended Employment Agreement are even weaker. Plaintiff accuses the Outside Directors of breaching their fiduciary duty by allowing Mr. Feinberg to negotiate this arrangement on Coram's behalf. Yet, plaintiff does not challenge the terms of the Amended Employment Agreement or allege that they were detrimental to Coram in any way. Nowhere does plaintiff allege why Mr. Feinberg's "role" in the negotiation would matter if the terms of the arrangement were not questioned.

Plaintiff also alleges that the Outside Directors breached their fiduciary duty when they allowed Mr. Crowley to manage Coram post-bankruptcy without

requiring Mr. Crowley to sever his relationship with Cerberus during this period. Yet, plaintiff does not dispute that the Outside Directors formed a Special Committee and hired a financial advisor to investigate Mr. Crowley's relationship with Cerberus. In fact, plaintiff concedes that it was the financial advisor – not the Outside Directors – who decided not to inquire of Mr. Crowley's post-bankruptcy relationship. There is no allegation that the Outside Directors failed to supervise Mr. Crowley adequately during this period. The Complaint's allegations demonstrate just the opposite since the Outside Directors are alleged to have taken on an active oversight role with respect to Mr. Crowley. It is inconceivable how hiring a financial advisor to investigate Mr. Crowley and continuing to actively oversee Coram's operations could demonstrate that the Outside Directors "completely abdicated" their fiduciary duty.

Plaintiff has no response, other than to repeat continually that the Bankruptcy Court found the Outside Directors did not act in "good faith" in proposing the Second Plan of Reorganization. The Bankruptcy Court, however, did not evaluate the Outside Directors' conduct under Section 102(b)(7) and did not render any finding with respect to the Outside Directors' intentionality. Thus, plaintiff cannot piggyback on this ruling to state a claim. None of the Outside Directors is alleged to have had a conflict of interest, to have profited financially from their decision-making on Coram's board, or to have been deliberately indifferent to the consequences of their actions. Quite the contrary – and in stark contrast to the allegations in the *Disney* case– they are alleged to have actively and deliberately involved themselves in making business decisions, with which plaintiff now disagrees.

3

Under these circumstances, the Outside Directors are entitled to the protections afforded by Section 102(b)(7), and this Complaint should be dismissed against them.

## ARGUMENT

### I.    MOTION TO DISMISS STANDARD

To plead a claim that survives a Rule 12(b)(6) motion to dismiss, plaintiff must plead particularized facts showing that the Outside Directors are not entitled to the protections afforded by Section 102(b)(7).  Def. Br. at 11-13.[1]  Plaintiff responds by contending that the Outside Directors are imposing a heightened pleading standard of Rule 23.1.  This is not the case.  As this Court has recognized, cases evaluating the pleading requirements of Rule 23.1 provide guidance in evaluating allegations under Section 102(b)(7) because such allegations typically occur in derivative cases.  *See Continuing Creditors' Committee of Star Telecommunications Inc. v. Edgecomb*, No. 03-278-KAJ, 2004 U.S. Dist. LEXIS 25807, at *19-20 (D. Del. Dec. 21, 2004) (hereinafter "Star") ("The 'demand excused' cases are essential precedent in reviewing the sufficiency of the Complaint because those cases embody and articulate the business judgment rule's impact on claims such as the Plaintiff seeks to assert.").

As the Outside Directors have demonstrated, the Complaint fails under Rule 12(b)(6).  Under Rule 12(b)(6), "neither inferences nor conclusions of fact unsupported by allegations of specific facts are accepted as true.  That is, a trial court

---

[1]    "Opening Brief" or "Def. Br." refers to the Opening Brief in Support of the Outside Directors Defendants' Motion to Dismiss (D.I. 18).  "Opposition Brief" and "Opp. Br." refers to Plaintiff's Answering Brief in Opposition to the Outside Director Defendants' Motion to Dismiss (D.I. 33).

need not blindly accept as true all allegations, nor must it draw all inferences from them in plaintiff's favor unless they are reasonable inferences." *Blackmore Partners, L.P. v. Link Energy LLC*, 864 A.2d 80, 84 (Del. Ch. 2004); *Leung v. Schuler*, No. 17089, 2000 Del. Ch. LEXIS 41, at *11 (Del. Ch. Feb. 29, 2000) ("All well-pleaded facts alleged in the complaint will be accepted as true, but inferences and conclusions that are unsupported by specific factual allegations will not be."); *Hollinger Int'l, Inc. v. Hollinger, Inc.*, No. 04-C-0698, 2005 WL 589000, at *23 (N.D. Ill. March 11, 2005) ("the court is neither bound by plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims").

In particular, a complaint must contain specific fact allegations to overcome the protections of Section 102(b)(7). As plaintiff's own case demonstrates, a complaint must contain "particularized facts" supporting the conclusion that the defendants acted in a manner not protected by Section 102(b)(7). *Blackmore Partners*, 864 A.2d at 85 (requiring complaint to allege *particularized facts* in the presence of an exculpatory clause). If a complaint does not contain such allegations, it will be dismissed. *Star*, 2004 U.S. Dist. LEXIS 25807, at *23 (dismissing complaint not containing "*specific allegations of fact*" establishing disloyalty) (emphasis added); *Stanziale v. Nachtomi*, No 01-403 KAJ, 2004 U.S. Dist. LEXIS 7375, at *8 (D. Del. April 20, 2004) (dismissing claim under Section 102(b)(7)).

As discussed below, plaintiff fails to plead allegations from which this Court could reasonably infer that the Outside Directors "completely abdicated" their fiduciary responsibility to Coram and its shareholders.

## II.    PLAINTIFF FAILS TO ALLEGE FACTS TO OVERCOME THE PROTECTION AFFORDED BY SECTION 102(b)(7)

The Outside Directors established that plaintiff fails to allege facts demonstrating that they breached their duty of loyalty or committed acts or omissions of intentional wrongdoing. Plaintiff concedes as much since most of his Answering Brief is devoted to the unsupported assertion that there is a separate duty of "good faith" that the Outside Directors allegedly breached. Plaintiff mischaracterizes Delaware law, ignores the legislative purpose of Section 102(b)(7), and fails to allege facts that would demonstrate the Outside Directors acted in bad faith under his own definition of that term.

### A.    Plaintiff Does Not Allege That the Outside Directors Breached Their Duty of Loyalty or Good Faith

The Outside Directors established, and plaintiff concedes, that they are not alleged to have breached their duty of loyalty to Coram or its shareholders. Def. Br. at 14-15. Plaintiff's retort is that there is a duty of "good faith" separate from the duty of loyalty and that he has alleged adequately that the Outside Directors breached that duty. Opp. Br. at 19-20. His argument is misplaced.

The Outside Directors cited a substantial body of Delaware law in support of the proposition that the duty of good faith is a subset of the duty of loyalty. Def. Br. at 14-15; *see also Orman v. Cullman*, 794 A.2d 5, 14 (Del. Ch. 2002) ("the duty to act in 'good faith' is merely a subset of a director's duty of loyalty"). Plaintiff does not bother to distinguish any of this case law. Instead, plaintiff's argument seems to be based on his observation that Delaware courts often speak in terms of a "triad" of fiduciary duties (loyalty, due care and good faith). According to plaintiff, this must mean that the duty of good faith is separate from the duty of loyalty. Opp. Br. at 19-20. While superficially

appealing, plaintiff's argument ignores that Delaware courts have already disposed of this contention. *See, e.g., Guttman v. Huang*, 823 A.2d 492, 506 n.34 (Del. Ch. 2003) ("A director cannot act loyally towards the corporation unless she acts in the good faith belief that her actions are in the corporation's best interest. For this reason, the same case that invented the so-called 'triad[]' of fiduciary duty, also defined good faith as loyalty.").

Indeed, plaintiff fails to cite, and the Outside Directors are unaware of, any case where a Delaware court has considered an alleged breach of the duty of good faith separately. *See, e.g., McMullin v. Beran*, 765 A.2d 910, 921-23 (Del. 2000); *Cede & Co. v. Technicolor, Inc.* 634 A.2d 345, 361-71 (Del. 1993), *modified on other grounds*, 636 A.2d 956 (Del. 1994); *see also Malone v. Brincat*, 722 A.2d 5, 10 (Del. 1998). Plaintiff himself acknowledges that Delaware courts have drawn no meaningful distinction between the disloyal and bad faith conduct. Opp. Br. at 20 n.6 (citing *In re Emerging Communication, Inc. S'holder Litig.*, No. 16415, 2004 WL 1305745, at \*39 n.184 (Del. Ch. June 4, 2004)).

Plaintiff also submits that the language of Section 102(b)(7) supports his contention since it exempts "acts or omissions not in good faith or which involve intentional misconduct." Opp. Br. at 19. As Vice Chancellor Strine found in *Guttman*, Section 102(b)(7)'s reference to "good faith" is just another way of "illustrat[ing] conduct that is disloyal." *Guttman*, 823 A.2d at 506 n.34; *see also Star*, 2004 U.S. Dist. LEXIS 25807, at \*25 n.9 ("Although the Plaintiff also invokes the duty of good faith as separate from the duty of loyalty, Delaware case law states that the two duties are identical."). Since plaintiff admits that his claims against the Outside Directors do not implicate their duty of loyalty, he also must concede they do not implicate their good faith. This

7

conclusion is also supported by the legislative purpose of Section 102(b)(7), which is intended to insulate directors from liability for even grossly negligent breaches of the duty of care. Thus, the term "good faith" must mean either disloyal conduct or intentional misconduct to give the statute any meaning. Plaintiff cannot try to lower the standard with semantics.[2]

Plaintiff eventually concedes this point because both he and the Outside Directors agree on the standard under which the Complaint must be evaluated. Opp. Br. at 23 ("[T]he Outside Directors proceed properly to describe the applicable substantive standard."). The Complaint must allege facts demonstrating a degree of intentionality on the part of the Outside Directors. In this respect, plaintiff must allege that the Outside Directors "*consciously* disregarded" their fiduciary duty. Def. Br. at 14-15; Opp. Br. at 23. Plaintiff fails to satisfy this standard.

**B.    The Complaint Alleges No Facts Showing the Outside Directors Acted Intentionally or Knowingly Violated the Law**

Plaintiff does not argue that his allegations demonstrate the Outside Directors knowingly violated the law. Rather, plaintiff seeks to bring a claim under the relatively novel theory that directors can be held personally liable where they "consciously disregarded" or "completely abdicated" their fiduciary obligations. Opp. Br. at 23; *In re Walt Disney Co. Deriv. Litig.*, 825 A.2d 275, 289 (Del. Ch. 2003). Nothing in the Complaint comes close to the factual allegations required to state a claim under this theory.

---

[2]    Plaintiff tacitly admits that "bad faith" is a lesser standard of conduct. Opp. Br. at 29 ("As such, the conduct is not simply a matter of bad faith; it is a matter of intentional misconduct.").

1.     **The Decision to Approve Mr. Crowley's Retention**

The Outside Directors established that plaintiff's allegations do not demonstrate "deliberate indifference" in the decision to approve Mr. Crowley's retention. Open. Br. at 17-19. Plaintiff argues that he has alleged this claim sufficiently because the Outside Directors "asked no questions" regarding Mr. Crowley's alleged "relationship" with Cerberus. Opp. Mem. at 26-27. Plaintiff's contention is an unwarranted, if not an extreme, departure from the standard of care imposed on directors of a public company.

As a starting matter, the Outside Directors established that Delaware law does not impose on them an obligation to ferret out whether a company officer has a conflict of interest. The law imposes on the officer an affirmative duty to disclose such a conflict. Def. Br. at 18. Plaintiff does not contest this point. Rather, he asserts that the Outside Directors were under a duty to investigate Mr. Crowley because they were aware of his "relationship" with Cerberus, which relationship plaintiff contends was a "red flag." Opp. Br. at 26. Plaintiff offers no basis for this contention, other than the benefit of hindsight.

Plaintiff alleges no facts of which the Outside Directors were aware when they decided to approve Mr. Crowley's retention that would cause them to believe that the interests of Coram, its lenders and its shareholders were anything but perfectly aligned. To the contrary, plaintiff's allegations demonstrate just the opposite. Plaintiff alleges Mr. Crowley was an expert in the healthcare field. Compl. ¶13. Plaintiff also alleges that the terms of Mr. Crowley's employment contract tied his compensation to Coram's operational performance. *Id.* ¶ 21. Consequently, by all accounts, Mr. Crowley and his proposed arrangement appeared to be in Coram's best interests. Nowhere in his

Answering Brief does plaintiff explain how his allegations, if accepted as true, would demonstrate that the Outside Directors were ignoring a "red flag" at the time they made their decision.

The allegations in the *Disney* case offer a stark contrast. Disney's directors approved the retention of Mr. Ovitz as President based solely on the CEO's (Mr. Eisner) recommendation. Not only did these directors know Messrs. Ovitz and Eisner had been friends for over 25 years, but also they knew Mr. Ovitz had no prior experience as an officer of a public entertainment company. They also decided to approve his retention prior to the finalization of his employment contract, which ultimately contained terms that were very detrimental to Disney. Here, the Outside Directors are alleged to have personally witnessed Mr. Crowley's qualifications for the job and to have personally negotiated the terms of his employment agreement, which are not alleged to have contained any terms detrimental to Coram. There can be no question these allegations fail to raise an inference of "deliberate indifference" to Coram's best interests.

## 2. The Decision to Approve Mr. Crowley's Amended Employment Agreement

The Outside Directors established their decision to approve Mr. Crowley's Amended Employment Agreement did not demonstrate a "complete abdication" of their fiduciary obligations notwithstanding their having allegedly allowed Mr. Feinberg to negotiate its terms. Open. Br. at 20. Not only was Mr. Feinberg the head of the Compensation Committee, but the Amended Employment Agreement's terms were even more favorable to Coram than the prior agreement since it raised the performance targets at which Mr. Crowley could receive bonuses. *Id.* at 18 n.8.

10

Plaintiff has virtually no response to these points other than to assert that the terms of the Amended Employment Agreement are "irrelevant" to his claims. Opp. Br. at 28. Towards this end, he states, "[i]t is Feinberg's role at Cerberus that caused harm to Coram in these negotiations." *Id.* Plaintiff does not explain how Coram could have been harmed by Mr. Feinberg's alleged "role" in the negotiations if the terms he ultimately negotiated were not detrimental to Coram. Again, plaintiff's claim stands in contrast to the actions at issue in *Disney*, where Mr. Ovitz's employment agreement gave him stock options "far beyond the normal standards" and a sizeable bonus that Disney would have to pay immediately, even if Mr. Ovitz left Disney's employ.

### 3. The Decision to Keep Mr. Crowley as CEO Post-Petition

The Outside Directors established that plaintiff's allegations do not demonstrate they "consciously disregarded" their fiduciary duty when they decided to allow Mr. Crowley to remain as Coram's CEO post-bankruptcy petition. At the time of this decision, the Outside Directors allegedly established and joined a Special Committee and hired a independent financial advisor to investigate Mr. Crowley's relationship with Cerberus, all while they continued to oversee Mr. Crowley's management of Coram. Def. Br. at 21-22; Comp. ¶¶ 38-40, 43. It defies reason how these affirmative actions could demonstrate a "complete abdication" of their fiduciary responsibilities.

Plaintiff's response is quite simply to ignore his own allegations and focus, instead, on the language of the Bankruptcy Court, which characterized the approach taken with respect to Mr. Crowley's continued relationship as "don't ask, don't tell" (a statement plaintiff repeats at least 10 times in his Answering Brief). Opp. Br. at 28-30. Plaintiff also declares repeatedly that, if the Bankruptcy Court could conclude as much, so can a reasonable jury. This argument is entirely irrelevant since there is no

11

right to a jury trial here. *Damage Recovery Sys., Inc. v. Tucker*, No. 02-1647-SLR, 2005 WL 388597, at *2 (D. Del. Feb. 2, 2005).

The Bankruptcy Court did not evaluate whether the Outside Directors should be subject to personal liability given the protections of Section 102(b)(7). Def. Mem. at 21-22. It answered a very different question: whether the proposed plan of reorganization had been proposed in good faith. To answer this question, Coram had to demonstrate that it completely and honestly disclosed all relevant facts. *See In re Valley Park Group, Inc.*, 96 B.R. 16, 23 (Bankr. N.D.N.Y. 1989). The Bankruptcy Court found Coram had not answered this question satisfactorily because of the alleged conflict suffered by Mr. Crowley still existed, notwithstanding its disclosure. *See* Compl. Ex. J. at 12-18. Coram additionally argued that Mr. Crowley's conflict had not harmed Coram, but the Bankruptcy Court rejected this contention. *Id.* at 18-20. Notably, the Bankruptcy Court held that, in a bankruptcy setting, when a fiduciary suffers from a conflict of interest, "liability may be imposed, notwithstanding lack of fraudulent intent or harm." *Id.* at 20-21. Under this standard, the existence of Mr. Crowley's conflict alone required the court to deny confirmation of the proposed plan. The Bankruptcy Court found that the Outside Directors should have "required that Crowley sever all agreement with Cerberus as a condition of continued employment." *Id.* at 22. The Bankruptcy Court, however, did not examine, much less conclude, that the Outside Directors' failure to affect this severance was the product of intentional misconduct.

If anything, the Bankruptcy Court's ruling implicates the Outside Director's duty of care, not their duty of loyalty. The decision in *Star* supports this conclusion. In *Star*, the Court held that the complaint alleged, at most, that the directors

breached their duty of care when they approved a financing transaction notwithstanding that the CEO was affiliated with the financier. 2004 U.S. Dist. LEXIS 25807, at *37-38; *see also* Opp. Br. at 20-21. The Court noted that:

> Even without the exculpation clause, this claim could not stand. There is no denying that Star faced dire financial circumstances. In light of Star's desperate need for capital, the most damning conclusion that can be drawn from the facts pleaded in the Complaint is that the directors, when confronted with the difficult decision of whether to accept the Gotel financing, may have made a poor decision. *But that does not amount to an abdication of responsibility by the Board.*

*Star*, 2004 U.S. Dist. LEXIS 25807, at *44 n.14 (emphasis added). It is hard to imagine a case more on point. In contrast, plaintiff relies on a variety of cases where there were specific factual allegations establishing disloyalty by the defendants.[3]

The Bankruptcy Court's ruling is simply not a substitute for particularized facts demonstrating that the Outside Directors "completely abdicated" their fiduciary

---

[3] *In re Trump Hotels S'holder Deriv. Litig.*, Nos. 96-Civ-7820, 96-Civ-8527, 2000 U.S. Dist. LEXIS 13550, at *29-30 (S.D.N.Y. Sept. 21, 2000) (alleging two directors stood to personally profit and controlled another director by their long history of serving together as directors of related companies); *In re Cendant Corp. Deriv. Litig.*, 189 F.R.D. 117, 132 (D.N.J. 1999) (alleging directors approved a merger to benefit themselves at the expense of the company); *Blackmore Partners*, 864 A.2d at 85-86 (alleging directors approved transaction that wiped out all shareholder equity when the company was neither insolvent nor on the brink of bankruptcy); *Production Res. Group, L.L.C. v. NCT Group, Inc.*, 863 A.2d 772, 799-800 (Del. Ch. 2004) (alleging a series of funding transactions between corporation and controlling shareholder suggestive of self-interest); *Alidina v. Internet.com Corp.*, No. 17235-NC, 2002 Del. Ch. LEXIS 156, at *11-20, 28 (Del. Ch. Nov. 6, 2002) (alleging approval of unfairly negotiated transaction that benefited CEO, who was also the controlling shareholder); *Orman*, 794 A.2d at 41 (pleading facts showing a merger gave some directors benefits not shared by other shareholders); *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 915 (Del. Ch. 1999) (alleging controlling shareholder dictated merger terms beneficial to it and not other shareholders); *see also In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 732 (D. Del. 2000) (alleging sufficient facts showing directors knowingly withheld material information); *Sanders v. Wang*, No. 16640, 1999 WL 1044880, at *6-9 (Del. Ch. Nov. 8, 1999) (ruling that defendants acted without proper authority in awarding shares to top management).

obligations. Plaintiff not only fails to allege such facts but also alleges facts compelling the opposite inference. Plaintiff alleges the Outside Directors retained a financial advisor to investigate Mr. Crowley's relationship with Cerberus. Opp. Br. at 28; Compl. ¶¶ 38-39. The decision to retain and rely upon a financial advisor cannot be construed as deliberately indifferent since that decision reflects the conscious exercise of a director's fiduciary obligation. *Official Comm. Of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, No. 20228-NC, 2004 Del. Ch. LEXIS 122, at *50 (Del. Ch. Aug. 24, 2004) (hereinafter "*Elkins*") (finding that allegations did not meet standard of disloyal or bad faith conduct where directors hired a consultant, reviewed the consultant's report, and implemented a program based on that program).

Plaintiff acknowledges as much by noting that it was not the Outside Directors' decision not to inquire about Mr. Crowley's continued relationship. It was their financial advisor's decision. Opp. Br. at 10 ("Goldin limited the scope of his inquiry to events occurring prior to December 2000, and, for unexplained reasons, never asked either Crowley or Cerberus whether Crowley had continued to receive his $80,000/month salary from Cerberus after that date."). Moreover, while plaintiff repeatedly argues that Goldin was hired "to sprinkle holy water" on the situation, he fails to allege a single fact demonstrating that Goldin lacked either independence or experience such that the Outside Directors' reliance on him could be questioned under Delaware law. 8 Del. Code § 141(e); *also compare Elkins*, 2004 Del. Ch. LEXIS 122, at *50 (dismissing case where directors relied on expert) *with Hollinger*, 2005 WL 589000, at *29 (finding valid claim when failed to employ expert); *Disney*, 825 A.2d at 280-81, 287-88 (same).

14

Plaintiff also alleges the Outside Directors actively supervised Mr. Crowley's management of Coram during the post-bankruptcy period. Def. Br. at 22; Compl. Ex. I. It is hard to conceive how the Outside Directors can be found to have "completely abdicated" their fiduciary roles at the same time they are alleged to have been active overseers of Coram's management. Plaintiff does not respond to this point, other than to make the remarkable assertion that his claims have "nothing to do with . . . how the Outside Directors generally managed the company (apart from the Crowley issue)." Opp. Br. at 26. Yet, Delaware law charges the Outside Directors with the task of managing the corporation. 8 Del. Code § 141(a) ("The business and affairs of every corporation organized under this chapter shall be managed by or under the direction of a board of directors..."). Thus, their management must, by definition, be at issue. The truth is that plaintiff simply chooses not to focus on the Outside Directors' management of Coram since their management cannot conceivably demonstrate a "conscious disregard" of their duty.

This case is not only a contrast to the facts alleged in *Disney* but also to every other case plaintiff cites in support of his claim. In *The Litigation Trust of MDIP, Inc. v. Rapoport*, No. 03-779, 2004 WL 3101575 (D. Del. Nov. 29, 2004), for example, the board was accused of ignoring continuous and obvious mismanagement by an inexperienced CEO. The board received complaints from key management, official warnings from its outside auditors, and financial statements showing a rapid deterioration and conflicts with publicly reported numbers. In the face of all of this, the board members did even less than nothing; they actively tried to prevent complaints and warnings from reaching them. *Id.* at *2-3.

In another case, a board received numerous warnings from government regulators that a key manufacturing plant was failing to comply with applicable regulations. *In re Abbott Labs. Deriv. S'holder Litig.*, 325 F.3d 795 (7th Cir. 2003). These warnings were given over a six-year period. Government regulators even shut the plant for a short time, and the *Wall Street Journal* published an article about the lack of compliance. Although the board knew that any unrectified violations would have a serious impact on the company's performance, it did nothing to address the problems or ensure that they were being addressed. *Id.* at 808-09 (applying Illinois law but looking to Delaware law for guidance); *see also McCall v. Scott*, 239 F.3d 808, 819-20 (6th Cir. 2001) (finding the board took no corrective actions despite being informed of massive billing problems by audits, a *qui tam* action, an extensive federal investigation, and an expose by the New York Times), *modified*, 250 F.3d 997 (6th Cir. 2003); *Hollinger*, 2005 WL 589000, at *28-29 (allowing claim against director when he approved a transaction without consulting outside experts to review the terms of the deal and knowing that the CEO arranged the transaction, stood to profit from it, and personally dictated that the director receive more than $3 million in compensation from a related company). The allegations in this case bear no resemblance to the unique facts present in the cases relied upon by plaintiff.

## CONCLUSION

The Outside Directors in this case are not alleged to have engaged in self-dealing, to have profited personally, or to have engaged in conduct demonstrating a "complete abdication" of their fiduciary obligations. Under these circumstances, plaintiff fails to plead facts overcoming the protections of Section 102(b)(7). The Outside

Directors respectfully request that the Complaint be dismissed against them with prejudice.

POTTER ANDERSON & CORROON LLP

By: _____

OF COUNSEL:
Boris Feldman, Esquire
Peri B. Nielsen, Esquire
Shelby K. Pasarell, Esquire
WILSON SONSINI
  GOODRICH & ROSATI, PC
650 Page Mill Road
Palo Alto, California  94304-1050
Tel:  (650) 493-9300

Peter J. Walsh, Jr. (DSB ID No. 2437)
Hercules Plaza, 6th Floor
1313 North Market Street
Post Office Box 951
Wilmington, Delaware  19899-0951
Tel:  (302) 984-6000
E-mail:  pwalsh@potteranderson.com

*Attorneys for Defendants
Donald J. Amaral, William J. Casey,
L. Peter Smith, and Sandra L. Smoley*

Dated:  April 15, 2005

678341v1/28762

17

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

## <u>CERTIFICATE OF SERVICE</u>

I, Peter J. Walsh, Jr., hereby certify that on April 15, 2005, I electronically filed the foregoing REPLY BRIEF IN SUPPORT OF THE OUTSIDE DIRECTOR DEFENDANTS' MOTION TO DISMISS with the Clerk of the Court using CM/ECF, which is available for public viewing and downloading, and which will send notification of such filing to the following counsel of record:

> Rolin P. Bissell, Esquire (DSB ID No. 4478)
> YOUNG CONAWAY STARGATT & TAYLOR
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> Tel: (302) 571-6560
> E-mail: rbissell@ycst.com

> Jeffrey C. Wisler, Esquire (DSB ID No. 2795)
> CONNOLLY BOVE LODGE & HUTZ LLP
> The Nemours Building
> 1007 North Orange Street
> Wilmington, Delaware 19801
> Tel: (302) 888-6258
> E-mail: jwisler@cblh.com

> Peter J. Walsh, Jr. (DSB ID No. 2437)
> POTTER ANDERSON & CORROON LLP
> Hercules Plaza, 6th Floor
> 1313 North Market Street
> Post Office Box 951
> Wilmington, Delaware 19899-0951
> Tel: (302) 984-6000
> E-mail: pwalsh@potteranderson.com

678341v1/28762