# EXHIBIT A

# THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| CORAM HEALTHCARE CORP. and | : | Case No. 00-3299 (MFW) |
| CORAM, INC., | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : |  |
|  | : |  |

---

## CHAPTER 11 TRUSTEE'S JOINT PLAN OF REORGANIZATION

---

SCHNADER HARRISON SEGAL
& LEWIS LLP
Barry E. Bressler
Wilbur L. Kipnes
Richard A. Barkasy
Michael J. Barrie
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-7286
(215) 751-2000

-and-

WEIR & PARTNERS LLP
Kenneth E. Aaron (#4043)
Salene R. Mazur
824 Market Street Mall, Suite 1001
P.O. Box 708
Wilmington, Delaware 19899
(302) 652-8181

Co-Counsel to Arlin M. Adams,
Chapter 11 Trustee

## TABLE OF CONTENTS

Page

ARTICLE 1

    Definitions ..................................................................................................... 1

ARTICLE 2

    Classification of Claims and Interests ..................................................... 10

ARTICLE 3

    Treatment of Unclassified Claims .......................................................... 11

ARTICLE 4

    Treatment of Classified Claims and Equity Interests ............................ 13

ARTICLE 5

    Implementation of the Plan..................................................................... 15

ARTICLE 6

    Procedure Relating to Disputed Claims.................................................. 21

ARTICLE 7

    Settlements............................................................................................... 22

ARTICLE 8

    Executory Contracts and Unexpired Leases .......................................... 23

ARTICLE 9

    Releases .................................................................................................. 24

ARTICLE 10

    Discharge ................................................................................................ 27

## TABLE OF CONTENTS CON'T

**Page**

ARTICLE 11

    Distributions ..............................................................................................28

ARTICLE 12

    Acceptance or Rejection of the Plan......................................................30

ARTICLE 13

    Confirmation and Effectiveness of the Plan...........................................31

ARTICLE 14

    Retention of Jurisdiction........................................................................33

ARTICLE 15

    Miscellaneous Provisions .......................................................................34

Arlin M. Adams, Chapter 11 Trustee (the "Trustee") of Coram Healthcare Corporation and Coram, Inc., hereby proposes the following Joint Chapter 11 Plan of Reorganization (the "Plan"), pursuant to Section 1123 of the Bankruptcy Code.

## ARTICLE 1

## <u>DEFINITIONS</u>

As used in this Plan, the following terms shall have the respective meanings specified below, unless the context requires otherwise:

1.1    **"Administrative Claim"** means any cost or expense of administration of the Chapter 11 Case under Section 503(b) of the Bankruptcy Code, including, without limitation, any and all expenses of preserving the Debtors' estates; any and all expenses of each Debtor, individually; any and all allowances of compensation or reimbursement of expenses, to the extent allowed by the Bankruptcy Court under Section 330 of the Bankruptcy Code; and any and all fees or charges assessed against the estate under Chapter 123 of Title 28 of the United States Code.

1.2    **"Allowed"** means a claim which is either scheduled pursuant to Section 521(1) of the Bankruptcy Code (other than a Claim scheduled as disputed, contingent or unliquidated) or which was filed pursuant to Section 501(a) of the Bankruptcy Code on or before the September 29, 2000 bar date established by the Bankruptcy Court, and with respect to which either no objection to the allowance thereof has been interposed within the period of limitation fixed by the Bankruptcy Court, or any such objection has been determined by an order of the Bankruptcy Court; and further means and includes any Administrative Claim, as approved by an order of the Bankruptcy Court.

1

1.3    "**Allowed Equity Interest**" means an Equity Interest as of the Record Date.

1.4    "**Amaral**" means Donald J. Amaral.

1.5    "**Bankruptcy Code**" means Title 1 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§101, *et seq.*

1.6    "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over this Chapter 11 Case.

1.7    "**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, Fed. R. Bankr. P. 1001, *et seq.*

1.8    "**Casey**" means William J. Casey.

1.9    "**Cash**" means legal tender of the United States or equivalents thereof.

1.10    "**Causes of Action**" means any claims, rights, causes of action of the Debtors, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date, based in whole or in part upon any act, omission or other occurrence having taken place on or prior to the Effective Date in any way relating to the Debtor, including, but not limited to: (a) any avoidance or recovery action under Sections 542, 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, whether or not previously commenced by the Trustee; (b) the Debtors' claims against PricewaterhouseCoopers LLP; and (c) any claims that the Debtors may have against Crowley, Amaral, Casey, Smith and/or Smoley, including the Proposed Derivative Claims.

1.11    "**Chapter 11**" means Chapter 11 of the Bankruptcy Code.

1.12   "**Chapter 11 Case**" means the above-captioned Chapter 11 cases commenced by Coram Healthcare Corp. and Coram Inc. on August 8, 2000.

1.13   "**CHC**" means Coram Healthcare Corporation, a Delaware corporation.

1.14   "**Claim**" means any right to payment from the Debtors, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or any right to an equitable remedy for the breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured as defined in Section 101(5) of the Bankruptcy Code.

1.15   "**Confirmation**" means entry by the Bankruptcy Court of the Confirmation Order.

1.16   "**Confirmation Date**" means the date of entry by the Bankruptcy Court of the Confirmation Order in accordance with Chapter 11.

1.17   "**Confirmation Hearing**" means the hearing to consider Confirmation of the Plan under Section 1128 of the Bankruptcy Code.

1.18   "**Confirmation Order**" means the order entered by the Bankruptcy Court confirming the Plan.

1.19   "**Coram**" means Coram, Inc., a Delaware corporation.

3

1.20    **"Coram Preferred Stock"** means the Series A and Series B preferred stock with aggregate liquidation preferences in excess of $334 million as of December 31, 2002, issued by Coram to the Noteholders in accordance with orders of the Bankruptcy Court dated December 28, 2000, December 27, 2001 and December 27, 2002.

1.21    **"Creditor"** means any Person that has a Claim against the Debtors that arose on or before the Petition Date or any Person that has a Claim against the Debtors of any kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.22    **"Creditors' Committee"** means the Official Committee of Unsecured Creditors appointed by the United States Trustee on August 22, 2000, pursuant to Section 1102(a) of the Bankruptcy Code.

1.23    **"Crowley"** means Daniel D. Crowley.

1.24    **"Debtors"** means CHC and Coram.

1.25    **"Disbursing Agent"** means the Trustee or the Person designated by the Trustee to make Distributions under and in accordance with the Plan, which may include one or both of the Debtors.

1.26    **"Disclosure Statement"** means the Trustee's disclosure statement, accompanying the Plan, as amended, supplemented or modified from time to time.

1.27    **"Disputed Claim"** means any Claim (a) to the extent that allowance of such Claim is the subject of an objection or a motion to estimate that was interposed within the

period of limitation fixed by the Bankruptcy Court; (b) which is scheduled by the Debtors as disputed, contingent or unliquidated; or (c) was filed as unliquidated or contingent.

1.28    "**Distribution**" means a payment of Cash or other consideration to be made to holders of Allowed Claims or Allowed Equity Interests under the terms and conditions of the Plan.

1.29    "**Distribution Date**" means the first business day which is not more than 90 calendar days after the Effective Date.

1.30    "**Effective Date**" means the first business day that is not less than thirty (30) calendar days after the Confirmation Date, unless the time is shortened by order of the Bankruptcy Court.

1.31    "**Equity Committee**" means the Official Committee of Equity Security Holders of CHC appointed by the United States Trustee on October 18, 2000 pursuant to Section 1102(a) of the Bankruptcy Code.

1.32    "**Equity Interest**" means any interest in CHC represented by duly authorized, validly issued and outstanding shares of stock.

1.33    "**Exit Facility**" means the secured revolving line of credit to be provided by the Noteholders to Reorganized Coram and loans to be made thereunder on and after the Effective Date, as referenced in the Plan Funding Agreement. The loan documents relating to the Exit Facility shall be in the form included in the Plan Supplement.

1.34  **"Final Order"** means an order or a judgment which has not been reversed, stayed, modified or amended and as to which the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for review or rehearing is pending.

1.35  **"General Unsecured Claim"** means any Claim other than an Administrative Claim, a Priority Tax Claim, a Priority Non-Tax Claim or a Secured Claim.

1.36  **"IRS"** means the Internal Revenue Service.

1.37  **"Net Plan Funding Cash"** means the difference between Plan Funding Cash and the amounts necessary to (i) make payment in full of all Allowed Administrative Claims for Pre-Effective Date fees and/or expenses; (ii) make all payments due to be made on the Effective Date under the Plan to holders of Allowed Priority Tax claims; (iii) make payment in full of all Allowed Priority Non-Tax Claims; and (iv) make payment in full of all Allowed Secured Claims.

1.38  **"Noteholders"** means Cerberus Partners, L.P., Goldman Sachs Credit Partners, L.P., and Foothill Capital Corporation.

1.39  **"Noteholder Funding"** means the amounts to be contributed by the Noteholders pursuant to the Plan Funding Agreement to provide the financial wherewithal needed to consummate the Plan. Under the Plan Funding Agreement, the Noteholders have agreed to provide Reorganized Coram and the estate of CHC the aggregate sum of $56,000,000.00 by means of the Exit Facility. However, in the event that Reorganized Coram is entitled, by virtue of an agreement with the Internal Revenue Service IRS to defer payment of the Priority Tax Claims of the IRS or any portions thereof, the obligation of the Noteholders to provide funding for the Trustee's Plan shall be reduced, *pro tanto*, by the amount so deferred. In

6

such case, the Noteholders have irrevocably committed to make additional funding available to Reorganized Coram sufficient to enable Reorganized Coram to make any deferred payments on account of the IRS Claim on a timely basis.

1.40  "**Notes**" means the Series A Senior Subordinated Notes and the Series B Senior Subordinated Convertible Notes issued by Coram, guaranteed by CHC and held by the Noteholders.

1.41  "**Petition Date**" means August 8, 2000, the date on which the Debtors filed petitions for relief commencing the Chapter 11 Case.

1.42  "**Person**" means any individual, corporation, partnership, association, joint stock company, joint venture, estate, trust, unincorporated association or other organization, or government or political subdivision or agency thereof, or any other entity.

1.43  "**Plan**" means this Trustee's Joint Chapter 11 Plan of Reorganization, either in its present form or as it may be altered, amended or modified from time to time.

1.44  "**Plan Funding Agreement**" means the Plan Funding and Settlement Agreement by and between the Trustee and the Noteholders, which is incorporated herein by reference, a copy of which is attached hereto as Exhibit A.

1.45  "**Plan Funding Cash**" means the Noteholder Funding, together with the Cash and cash equivalents held by CHC and Coram on the Effective Date that have resulted from the operations of CHC and Coram in the ordinary course, net of amounts expended for operating expenditures and pursuant to orders of the Bankruptcy Court, less funds expended for capital expenditures. In computing Plan Funding Cash, there shall be taken into account as of the time

7

of the computation all checks that have been issued and have not been debited from the bank accounts of the Debtors and wire transfer instructions that have been issued by the Debtors, but not yet honored by the transferring institution.

     1.46   "**Plan Funding Cash Balance**" means the difference between Plan Funding Cash and the amounts necessary to (i) make payment in full of all Allowed Administrative Claims for Pre-Effective Date fees and/or expenses; (ii) make all payments due to be made on the Effective Date under the Plan to holders of Allowed Priority Tax Claims; (iii) make payment in full of all Allowed Priority Non-Tax Claims; (iv) make payment in full of all Allowed Secured Claims; (v) make payment in full of all Allowed General Unsecured Claims, except the General Unsecured Claims of the Noteholders; and (vi) leave Reorganized Coram with a working capital of $10 million to be used by the Reorganized Coram to operate its business in the ordinary course.

     1.47   "**Plan Supplement**" means a plan supplement(s) to be filed with the Bankruptcy Court at least ten (10) calendar days prior to the date fixed as the last day for voting to accept or reject the Plan that contain the documents identified in the Plan and Disclosure Statement.

     1.48   "**Post-Confirmation**" means after the Confirmation Date.

     1.49   "**Pre-Confirmation**" means up to, and including, the Confirmation Date.

     1.50   "**Priority Claim**" means any Claim (other than an Administrative Claim), entitled, and only to the extent entitled, to priority in payment under Section 507(a) of the Bankruptcy Code and includes Priority Tax Claims and Priority Non-Tax Claims.

     1.51   "**Priority Creditor**" means any Creditor that holds a Priority Claim.

8

1.52    "**Priority Non-Tax Claim**" means any Claim of a kind specified in Sections 507(a)(3), (4), (5), (6), or (7) of the Bankruptcy Code.

1.53    "**Priority Tax Claim**" means any Claim of a governmental unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

1.54    "**Proposed Derivative Claims**" means the claims contained within the Equity Committee's proposed derivative complaint, a copy of which is attached to the Equity Committee's Disclosure Statement as Exhibit L.

1.55    "**Record Date**" means the date the Clerk of the Bankruptcy Court enters upon the docket an order approving the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code.

1.56    "**Reorganized Coram**" means Coram, as reorganized, with the Noteholders or their designees as owners of one hundred percent (100%) of the common stock, as contemplated in this Plan.

1.57    "**Reorganized Coram Common Stock**" means ten million shares (10,000,000) of common stock, $0.01 par value, to be authorized by Reorganized Coram pursuant to this Plan, representing one hundred percent (100%) of the issued and outstanding voting common stock of Reorganized Coram on the Effective Date.

1.58    "**R-Net**" means Coram Resource Network, Inc. and Coram Independent Practice Association, Inc.

1.59    "R-Net Adversary Proceeding" means the adversary proceeding (Adv. Proc. No. 01-08795) filed by the R-Net Committee against CHC, Coram and other defendants which is pending in the United States District Court for the District of Delaware.

1.60    "R-Net Committee" means the Official Committee of Unsecured Creditors appointed in R-Net's Chapter 11 bankruptcy case (Case No. 99-2889 (MFW)), pending in the United States Bankruptcy Court for the District of Delaware.

1.61    "R-Net Settlement Agreement" means the Settlement Agreement among the Trustee, R-Net and the R-Net Committee, a copy of which shall be included in the Plan Supplement.

1.62    "Secured Claim" means any Claim that is secured, and only to the extent secured, pursuant to Section 506 of the Bankruptcy Code.

1.63    "Smith" means Peter Smith.

1.64    "Smoley" means Sandra L. Smoley.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND INTERESTS

A.    **Unclassified Claims (Not Entitled to Vote on the Plan)**

    1.    Administrative Claims

    2.    Priority Tax Claims

B.    **Summary of Classified Claims and Interests**

| CLASS | STATUS |
|---|---|
| 1. Priority Non-Tax Claims | Unimpaired, not entitled to vote |

10

2. Secured Claims                          Unimpaired, not entitled to vote

3. General Unsecured Claims                Impaired, entitled to vote

4. Coram Preferred Stock                   Impaired, entitled to vote

5. Coram Equity Interests                  Impaired, deemed to have rejected Plan

6. Allowed CHC Equity Interests            Impaired, entitled to vote

## ARTICLE 3

## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a)(3) of the Bankruptcy Code, these claims have not been classified:

### 1.    Administrative Claims

(a)    Except to the extent that the Trustee and the holder of an Allowed Administrative Claim agree to a different treatment, each holder of an Allowed Administrative Claim shall be paid in full in Cash on the later of (i) the Effective Date, or (ii) fourteen (14) days after the date on which such claim becomes an Allowed Administrative Claim;

(b)    The holder of an Administrative Claim that arises before the Effective Date, other than an Administrative Claim of a professional employed under Sections 327 and 328 of the Bankruptcy Code, must file an application seeking allowance of such Administrative Claims on or before the thirtieth (30th) day after the Effective Date. Failure to seek timely approval any such Administrative Claim shall result in such Administrative Claim being forever barred and discharged;

(c)    The holder of an Administrative Claim of a professional employed under Sections 327 and 328 of the Bankruptcy Code that arises before the Effective Date must file an application for payment of such Administrative Claims under Section 330 of the Bankruptcy

11

Code on or before the thirtieth (30th) day after the Effective Date. Failure to seek timely approval any such Administrative Claim shall result in such Administrative Claim being forever barred and discharged

(d)    Allowed Administrative Claims that arise before the Effective Date shall be paid from Plan Funding Cash. Any Allowed Administrative Claims that arise after the Effective Date shall be paid by Reorganized Coram, but not with Plan Funding Cash; and

(e)    Notwithstanding the foregoing, Administrative Claims representing obligations incurred in the ordinary course of business shall not be paid with Plan Funding Cash and shall be paid in the ordinary course of business before the Effective Date by CHC and Coram, and after the Effective Date by Reorganized Coram, in accordance with the terms and conditions of the particular agreements from which such Administrative Claims arise.

### 2.    Priority Tax Claims

(a)    The Priority Tax Claim of the IRS in an amount in excess of $19 million, including interest accrued thereon, shall either be (i) paid in full in Cash on the Effective Date, or (ii) satisfied in accordance with the terms and conditions of an agreement by and between the Trustee and the IRS. Any payments required to be made to the IRS on or before the Effective Date shall be made with Plan Funding Cash. If an agreement with the IRS allows for deferred payments, all deferred payments shall be paid by Reorganized Coram, and to the extent necessary, the Noteholders have irrevocably committed to make additional funds available to Reorganized Coram to enable it to make such deferred payments on a timely basis; and

(b)    Each holder of an Allowed Priority Tax Claim, other than the claim of the IRS, shall be paid in full in Cash on the later of (i) the Effective Date, or (ii) fourteen (14) days after the date on which such Claim becomes an Allowed Priority Tax Claim. Allowed Priority Tax Claims shall be paid with Plan Funding Cash.

12

## ARTICLE 4

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Class 1.    **Priority Non-Tax Claims**

Each holder of an Allowed Priority Non-Tax Claim shall be paid in full in Cash on the later of (i) the Effective Date, or (ii) fourteen (14) days after the date on which such Claim becomes an Allowed Priority Non-Tax Claim.  Allowed Priority Non-Tax Claims shall be paid with Plan Funding Cash.

Class 1 is unimpaired under the Plan and is presumed to have accepted the Plan.

Class 2.    **Secured Claims**

Each holder of an Allowed Secured Claim shall either be reinstated and rendered unimpaired in accordance with Section 1124 of the Bankruptcy Code or receive payment in full in Cash on the later of (i) the Effective Date; and (ii) fourteen (14) days after the date on which such Claim becomes an Allowed Secured Claim.  Allowed Secured Claims shall be satisfied with Plan Funding Cash.

Class 2 is unimpaired under the Plan and is presumed to have accepted the Plan.

Class 3.    **General Unsecured Claims**

Allowed General Unsecured Claims shall be satisfied from Net Plan Funding Cash.  Each holder of an Allowed General Unsecured Claim, except for the Noteholders, shall be paid in full in Cash (without post-petition interest) from the Net Plan Funding Cash on the later of: (i) the Distribution Date, or (ii) fourteen (14) days after the date on which such Claim becomes an Allowed General Unsecured Claim.

In addition, the holders of Allowed General Unsecured Claims shall receive, on a *pro rata* basis from the net proceeds of the Causes of Action (if any), a distribution for interest

accruing (at the statutory judgment rate set forth in Section 1961 of Title 28 of the United States Code) from the Petition Date through the Effective Date on account of such Allowed General Unsecured Claims. The net proceeds of the Causes of Action shall be the sole source of the payment of post-petition interest to holders of Allowed General Unsecured Claims.

Class 3 is impaired under the provisions of the Plan and is entitled to vote to accept or reject the Plan.

**Class 4.**      <u>Coram Preferred Stock</u>

The Noteholders are holders of Coram Preferred Stock with an aggregate liquidation preference in excess of $334 million as a result of debt exchanges approved by the Bankruptcy Court and, in addition, the Noteholders have a General Unsecured Claim that totals approximately $9 million on account of the Notes.

On the Effective Date, each Noteholder shall receive its *pro rata* share of Reorganized Coram Common Stock in exchange for and in full and final satisfaction of both their Claims against CHC and Coram and Coram Preferred Stock.

Class 4 is impaired under the provisions of the Plan and is entitled to vote to accept or reject the Plan.

**Class 5.**      <u>Coram Equity Interests</u>

CHC is the holder of all of the outstanding voting common stock of Coram. CHC shall neither receive a Distribution nor retain any legal, equitable or contractual rights with regard to its Equity Interests in Coram, which Equity Interests shall be deemed cancelled and extinguished as of the Effective Date as part of this Plan.

Class 5 is impaired under the provisions of the Plan and is deemed to have rejected the Plan.

Class 6.    **CHC Equity Interests**

On or before the Distribution Date, each holder of an Allowed CHC Equity Interest shall receive a Distribution equal to its *pro rata* share of the Plan Funding Cash Balance.

All CHC Equity Interests shall be deemed cancelled and extinguished as of the Effective Date.

Class 6 is impaired under the provisions of the Plan and is entitled to vote to accept or reject the Plan.

## ARTICLE 5

## IMPLEMENTATION OF THE PLAN

5.1    **Dissolution of CHC**.  On the Effective Date, or as soon thereafter as may be reasonably practicable, the Trustee shall cause CHC to be dissolved as a corporation under the laws of the State of Delaware, without the taking of any further action by the stockholders, officers or directors of CHC.

5.2    **Surrender of Instruments**.  Each holder of an instrument evidencing an Equity Interest shall surrender such instrument to the Disbursing Agent as a condition to receipt of any Distribution under the Plan to such holder on account thereof.  No Distribution under the Plan shall be made to or on behalf of any holder of such an Equity Interest unless and until such instrument is received or the unavailability of such instrument is reasonably established to the satisfaction of the Disbursing Agent.  In accordance with Section 1143 of the Bankruptcy Code, any holder of an Equity Interest that (i) fails to surrender or cause to be surrendered such instrument, or (ii) fails to execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance and amount reasonably satisfactory to the Disbursing Agent, in each case within one (1) year after the

15

Effective Date, shall be deemed to have forfeited forever all rights, claims, and interests in respect of said Distribution and shall not thereafter have any right to participate in any Distribution under the Plan.

    5.3    **The Causes of Action**. The Trustee shall retain the sole and exclusive right, from and after the Effective Date, to commence, prosecute and compromise on behalf of the Debtors' estates, the Causes of Action; provided, however, that no action or cause of action shall be commenced or maintained against any Person to be released as provided in Article 9 of this Plan. Reorganized Coram shall be responsible for payment of all Post-Effective Date Administrative Claims related to the Causes of Action. The proceeds of the Causes of Action, if any, shall be distributed as follows: (a) First, to Reorganized Coram in an amount equal to the Post-Effective Date Administrative Claims relating to the Causes of Action; (b) Second, to the holders of Allowed General Unsecured Claims on a *pro rata* basis in an amount equal to the interest accruing (at the statutory judgment rate set forth in Section 1961 of Title 28 of the United States Code) from the Petition Date through the Effective Date on account of such Allowed General Unsecured Claims until such interest has been paid in full; and (c) Third, to Reorganized Coram.

    5.4    **Certificate of Incorporation and Bylaws**. As of the Effective Date, the certificate of incorporation and bylaws of Reorganized Coram shall be amended as necessary to satisfy the provisions of this Plan and the Bankruptcy Code and shall include, *inter alia*, a provision prohibiting the issuance of nonvoting equity securities, to the extent such a provision is required by Section 1123(a)(6) of the Bankruptcy Code. The proposed amended certificate of incorporation and bylaws will be included in the Plan Supplement.

5.5    **Reorganized Coram Management.**  On the Effective Date, operation of Reorganized Coram shall become the general responsibility of the Board of Directors of Reorganized Coram, which shall, thereafter, continue to have the responsibility for the management, control, and operation of Reorganized Coram.  On the Effective Date, the Noteholders or their designees shall be the holders of one hundred percent (100%) of all capital stock of Reorganized Coram and shall, consistent with the requirements of Delaware law, have the right to elect the Board of Directors of Reorganized Coram.  The directors and officers of Reorganized Coram proposed by the Noteholders shall be identified in the Plan Supplement. Crowley shall not be employed or otherwise affiliated with Reorganized Coram, or any subsidiary or affiliate of Reorganized Coram, for a period of at least one (1) year following the Effective Date.

5.6    **Actions by Reorganized Coram.**  As of the Effective Date, Reorganized Coram is authorized to: (i) issue the Reorganized Coram Common Stock to the holders of Coram Preferred Stock as contemplated by the Plan; (ii) execute and deliver those documents necessary to obtain the Exit Facility contemplated by the Plan; and (iii) execute, deliver, file or record any documents, and take any other actions as may be necessary to implement and to effectuate the terms and provisions of the Plan.

5.7    **Corporate Action.**  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of and/or one or both of the Debtors or Reorganized Coram or their successors in interest under the Plan, including, without limitation, the authorization to issue or cause to be issued the Reorganized Coram Common Stock, the Exit Facility and documents relating thereto, the adoption of the amended certificate of incorporation and amended bylaws of Reorganized Coram and the

17

dissolution of CHC to be effectuated pursuant to the Plan and the election or appointment, as the case may be, of directors and officers of the Debtors pursuant to the Plan, shall be deemed to have occurred and shall be in full force and effect from and after the Effective Date pursuant to Section 303 of the General Corporation Law of the State of Delaware without any requirement of further action by the stockholders or directors of the Debtors, the Trustee or Reorganized Coram. On the Effective Date, or as soon thereafter as is practicable, Reorganized Coram shall file its amended certificate of incorporation with the Secretary of State of the State of Delaware and the Trustee shall file the appropriate documents to effectuate the dissolution of CHC in accordance with the applicable law.

      5.8    **Committees**.  As of the Effective Date, the Creditors' Committee and the Equity Committee shall be dissolved and shall have no further duties, authority or responsibility, and Reorganized Coram shall not have any responsibility for fees, costs and expenses of the Creditors' Committee and the Equity Committee, its individual members or its professionals, incurred from and after the Confirmation Date.

      5.9    **Vesting of Assets.**  On the Effective Date, unless otherwise specifically provided in the Plan, title to all assets and property of the Debtors' estates, including the Debtors' equity and other interests in non-debtor affiliates of the Debtors, shall pass to and revest in Reorganized Coram, free and clear of all Claims, Equity Interests, liens and other rights of Creditors or holders of Equity Interests arising before the Effective Date.  On and after the Effective Date, Reorganized Coram may operate its business and may use, acquire and dispose of its property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Court, except as otherwise provided in this Plan.

18

5.10    **Substantive Consolidation.**  The Debtors' estates shall be substantively consolidated, but only for the limited purpose of effectuating the settlements contemplated by, and making Distributions to the holders of Claims under the Plan, including for voting purposes. For such limited purposes, on the Effective Date (a) all guaranties of either Debtor for the payment, performance, or collection of an obligation of the other Debtor with respect to any class of Claims or Equity Interests shall be deemed terminated and cancelled; (b) any obligation of one of the Debtors and all guaranties with respect to any class of Claims or Interests executed by one of the Debtors and any joint or several liability of one of the Debtors shall be treated as a single obligation, and any joint obligation of the Debtors, and all multiple Claims against the Debtors on account of such joint obligation, shall be treated and Allowed only as a single Claim against the consolidated estates of the Debtors; and (c) each Claim filed in the Chapter 11 Case of either of the Debtors shall be deemed filed against the consolidated Debtors and shall be deemed a Claim against and an obligation of the consolidated Debtors.  Except as set forth in this section, such substantive consolidation will not (other than for purposes related to Distributions to be made under the Plan) (a) affect the legal entity and corporate structures of the Debtors or Reorganized Coram, subject to the right of the Debtors or Reorganized Coram to effect any transaction contemplated by the Plan; (b) render valid and enforceable against either Debtor any Claim or Equity Interest under the Plan for which it is otherwise not liable, and the liability of the Debtors for any such Claim or Equity Interest will not be affected by such substantive consolidation other than to extinguish duplicate liability on account of such a Claim, and (c) affect interests in any non-Debtor affiliates except as otherwise may be required in connection with any transaction contemplated by the Plan.  This Plan shall constitute and be deemed to be a motion requesting that the Bankruptcy Court approve this limited substantive consolidation.

5.11    **Compensation and Benefit Programs.**  All employment and severance practices and policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their directors, officers, and employees, other than Crowley, who served as directors, officers and employees, respectively, on or after the Commencement Date, including, without limitation, all savings plans, retirements plans, health care plans, severance benefit plans, incentive plans, workers' compensation programs and life, disability and other insurance plans, are treated as executory contracts under the Plan and are hereby assumed pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code; provided, however, that Reorganized Coram retains any right to modify any and all such compensation and benefit practices, plans, policies, and programs in accordance with the terms thereof.

5.12    **Retiree Benefits.**  Pursuant to Section 1114 of the Bankruptcy Code, payments, if any, due to any person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the Debtors prior to the Commencement Date, shall be continued for the duration of the period the Debtors have obligated themselves to provide such benefits; provided, however, that the Reorganized Coram retains any right to modify any and all such plans, funds and programs in accordance with the terms thereof.

20

## ARTICLE 6

## PROCEDURE RELATING TO DISPUTED CLAIMS

6.1    **Objections.**  The Trustee reserves the right to object to any Claim or Equity Interest that has not been specifically Allowed by an order of the Bankruptcy Court; provided, however, that any objections to Claims or Equity Interests not yet filed shall be filed with the Bankruptcy Court and served not later than thirty (30) days after the Confirmation Date, unless such date is otherwise extended by the Bankruptcy Court.

6.2    **Disputed Claims.**  No Distribution shall be made to the holder of a Disputed Claim or disputed Equity Interest until such Claim or Equity Interest is Allowed. Following the Effective Date, the Trustee shall have the authority to compromise, withdraw or otherwise resolve objections to Claims subject to Bankruptcy Court approval.  The total amount of the Distribution attributable to a Disputed Claim or disputed Equity Interest (or such lesser amount that the Bankruptcy Court may determine) shall be held in reserve from Plan Funding Cash by Reorganized Coram pending resolution of the Claim by the Bankruptcy Court or agreement of the Trustee and the holder of such Claim.  The holder of a Disputed Claim or disputed Equity Interest shall not be entitled to receive or recover any amount in excess of the amount reserved to pay such Claim or Equity Interest.  Nothing in the Plan or Disclosure Statement shall be deemed to entitle any holder of a Disputed Claim or disputed Equity Interest to post-petition interest on account of such Claim or Equity Interest.  Distributions to each holder of a Disputed Claim or Equity Interest that ultimately becomes an Allowed Claim or Allowed Equity Interest shall be in accordance with the provisions of this Plan with respect to the class in which the respective Allowed Claim or Allowed Equity Interest is a member without interest

21

accruing after the Effective Date. Any such Distributions shall be made as soon as reasonably practicable after the date that the Bankruptcy Court enters a Final Order allowing such Claim.

    6.3    **Estimation of Claims.** The Trustee may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code or other applicable law.

## ARTICLE 7

## SETTLEMENTS

    This Plan provides for the compromise and settlement of certain claims and causes of action of, and against, the Debtors. To the extent that Rule 9019 of the Bankruptcy Rules is applicable to the settlements, this Plan shall be deemed a properly served motion by the Trustee pursuant to Rule 9019(a) of the Bankruptcy Rules for approval of the settlements. The following settlements relating to the Plan shall be deemed approved by the Bankruptcy Court upon entry of the Confirmation Order:

    7.1    **Plan Funding Agreement.** The Trustee has entered into the Plan Funding Agreement with the Noteholders. Under the Plan Funding Agreement, the Noteholders have agreed to provide Reorganized Coram and the estate of CHC with up to $56 million to be used in funding payments to be made under the Plan. In return, the Noteholders and all present and former officers, directors, members or employees of the Noteholders and their respective affiliates, agents, representatives and counsel (collectively, "Releasees"), shall be provided with a full and complete general release from any and all claims arising out of or related to the relationship between the Debtors and the Releasees, including the Proposed Derivative Claims.

22

The release shall not include any of the Debtors' claims against Crowley, Amaral, Casey, Smith and Smoley, including the Proposed Derivative Claims.

7.2    **R-Net Settlement.** The Trustee has entered into the R-Net Settlement Agreement to settle the R-Net Adversary Proceeding and all Claims asserted by R-Net against the Debtors. Pursuant to the R-Net Settlement Agreement, R-Net's General Unsecured Claim against the Debtors shall be reduced from more than $41,000,000.00 to $7,950,000.00 and the claim filed by CHC in R-Net's bankruptcy case shall be reduced to $1,000.00.

## ARTICLE 8

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

Except as otherwise provided in the Plan, as of the Effective Date, CHC and Coram shall be deemed to have assumed each executory contract and unexpired lease to which they are parties, unless such contract or lease (i) was previously assumed or rejected; (ii) previously expired or terminated pursuant to its own terms; or (iii) is on a list of executory contracts to be rejected that is on a list contained in the Plan Supplement. Any executory contract and unexpired lease to which CHC is a party (and which has not been rejected) shall be, as of the Effective Date, deemed to be assigned to, and assumed by, Reorganized Coram. The Confirmation Order shall constitute an order of the Bankruptcy Court under Section 365 of the Bankruptcy Code approving the contract and lease assumptions and assignments described above, as of the Effective Date.

Any monetary amounts required as cure payments with respect to any executory contracts or unexpired leases to be assumed pursuant to the Plan shall be satisfied by Reorganized Coram's payment of the cure amount in Cash on the Effective Date, or upon such

23

other terms as the Bankruptcy Court may order or the parties to such executory contract or unexpired lease otherwise may agree. In the event of a dispute regarding whether a default exists under the executory contract or unexpired lease or the amount of any cure payment, the cure of any default shall occur after the entry of a Final Order of the Bankruptcy Court resolving the dispute.

**ARTICLE 9**

**RELEASES**

9.1    **CHC and Coram.** As of the Effective Date, all Persons who have held, hold or may hold any Claim against or Equity Interest in CHC and/or Coram, and/or their predecessors, successors, affiliates, parents, subsidiaries and assigns, and/or their officers, directors, shareholders, employees, agents, advisors, representatives, attorneys, accountants or other professionals, except Crowley, Amaral, Casey, Smith and Smoley shall be deemed to have released CHC and/or Coram, and/or their predecessors, successors, affiliates, parents, subsidiaries and assigns, and/or their officers, directors, shareholders, employees, agents, advisors, representatives, attorneys, accountants and other professionals, but not Crowley, Amaral, Casey, Smith and Smoley of and from any and all Claims, obligations, rights, causes of action and liabilities which such holder may be entitled to assert, whether known or unknown, foreseen or unforeseen, then existing or thereafter arising, based in whole or in part upon any act, omission or other occurrence having taken place on or prior to the Effective Date in any way relating to the Debtors, this Plan or the Chapter 11 Case, including the Proposed Derivative Claims.

9.2    **The Trustee.** As of the Effective Date, all Persons who have held, hold or may hold any claim against the Trustee, and/or his agents, advisors, representatives, attorneys,

24

accountants or other professionals, shall be deemed to have released the Trustee, and his agents, advisors, representatives, attorneys, accountants and other professionals, of and from any and all claims, obligations, rights, causes of action and liabilities which such holder may be entitled to assert, whether known or unknown, foreseen or unforeseen, then existing or thereafter arising, based in whole or in part upon any act, omission or other occurrence having taken place on or prior to the Effective Date and in any way relating to the Debtors, this Plan or the Chapter 11 Case.

9.3    **The Noteholders**.  As of the Effective Date, all Persons who have held, hold or may hold any Claim against the Noteholders, and/or their predecessors, successors, affiliates, parents, subsidiaries and assigns, and/or all of their present and former officers (including Feinberg), directors, shareholders, employees, agents, advisors, representatives, attorneys, accountants or other professionals, shall be deemed to have released the Noteholders, and their respective predecessors, successors, affiliates, parents, subsidiaries and assigns, and their present and former officers (including Feinberg), directors, shareholders, partners, members, employees, agents, advisors, representatives, attorneys, accountants and other professionals, of and from any and all claims, obligations, rights, causes of action and liabilities which such holder may be entitled to assert, whether known or unknown, foreseen or unforeseen, then existing or thereafter arising, based in whole or in part upon any act, omission or other occurrence having taken place on or prior to the Effective Date and in any way relating to the Debtors, this Plan or the Chapter 11 Case, including all of the Proposed Derivative Claims.

9.4    **The Equity Committee.**  As of the Effective Date, all Persons who have held, hold or may hold any claim against the Equity Committee and/or its individual members, and/or their predecessors, successors, affiliates, parents, subsidiaries and assigns, and/or their

25