IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

**ORIGINAL**

---

ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION and CORAM, INC.,

    Plaintiff,

v.

DANIEL D. CROWLEY; DONALD J. AMARAL; WILLIAM J. CASEY; L. PETER SMITH; AND SANDRA L. SMOLEY,

    Defendants.

Case No. 04-1565-SLR

---

### PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DANIEL D. CROWLEY'S MOTION FOR SUMMARY JUDGMENT

---

OF COUNSEL:

Barry E. Bressler
Wilbur L. Kipnes
Nancy Winkelman
Jennifer Nestle
Han Nguyen
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Phone: (215) 751-2000
Fax:  (215) 751-2205

Dated: May 25, 2005

Rolin P. Bissell (# 4478)
Glenn C. Mandalas (# 4432)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Phone: (302) 571-6600
Fax:   (302) 571-1253
rbissell@ycst.com

*Attorneys for Arlin M. Adams*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .................................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ....................................................................2

SUMMARY OF ARGUMENT ............................................................................................2

STATEMENT OF FACTS ...................................................................................................3

ARGUMENT ........................................................................................................................7

I.   STANDARD OF REVIEW ........................................................................................7

II.  CROWLEY'S MOTION FOR SUMMARY JUDGMENT IS PREMATURE. ........8

III. THE TRUSTEE DID NOT WAIVE CLAIMS AGAINST CROWLEY AND, TO THE CONTRARY, SPECIFICALLY RESERVED THE RIGHT TO BRING THOSE CLAIMS. ......................................................................................................8

IV.  THE TRUSTEE IS NOT PRECLUDED FROM SEEKING DAMAGES FROM CROWLEY IN THIS ACTION. ...............................................................................16

CONCLUSION ...................................................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

*In re Burkey Lumber Co. of Grand Junction*, 149 B.R. 177 (Bankr. D. Col. 1993) .......15

*Cardenas v. Massey*, 269 F.3d 251 (3d Cir. 2001) ..........8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..........8

*Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300 (3d Cir. 1995) ..........7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) .......7, 8

*In re Momentum Manufacturing Corp.*, 25 F.3d 1132 (2d Cir. 1994) .......15

*In re Varat Enterprises, Inc.*, 81 F.3d 1310 (4th Cir. 1996) .......15

## STATE CASES

*Aeroglobal Capital Management, LLC v. Cirrus Industries, Inc.*, No. 101/266, 2004, 2005 Del. LEXIS 133 (Del. March 23, 2005) .......9

*Am. Family Mortgage Corp. v. Acierno*, No. 290, 1993, 1994 Del. LEXIS 105 (Del. March 28, 1994) .......9

*Baio v. Commercial Union Insurance Co.*, 410 A.2d 502 (Del. 1979) .......14

*George v. Frank A. Robino, Inc.*, 334 A.2d 223 (Del. 1975) .......9

*Kallop v. McAllister*, 678 A.2d 526 (Del. 1996) .......9

*Klein v. American Luggage Works, Inc.*, 158 A.2d 814 (1960) .......14, 15

*Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450 (Del. 1982) .......9, 12

*Roberts v. Edwards*, 810 A.2d 350 (Del. 2002) .......2, 9

*Rose v. Cadillac Fairview Shopping Center*, 668 A.2d 782 (Del. 1995) .......15

## FEDERAL RULES

Fed. R. Civ. P. 56(c) .......7

Fed. R. Evid. 408 .......5

## INTRODUCTION

Plaintiff, Arlin M. Adams, as Chapter 11 Trustee ("Trustee") of the Post-Confirmation Bankruptcy Estates of Coram Healthcare Corporation and its wholly-owned subsidiary Coram, Inc. (collectively, "Coram"), submits this answering brief in opposition to the motion for summary judgment of defendant Daniel D. Crowley.

In contravention of this Court's standard non-patent scheduling order, Crowley has filed a motion for summary judgment before the close of discovery without leave of court. He argues that by moving unsuccessfully in the Bankruptcy Court to extend Crowley's employment for a transition period, the Trustee waived the claims that Crowley's employment agreement with one of Coram's three lenders, Cerberus Partners, L.P., under which he was paid $1 million annually and was required to follow Cerberus' directions, while he served as Coram's Chairman and CEO, was a conflict of interest and a breach of his duty of loyalty to Coram.

The Trustee did not waive his claims against Crowley. To the contrary, he specifically preserved them at every juncture in the Bankruptcy Court proceedings. Chief Judge Mary Walrath denied the Trustee's motion to extend Crowley's employment through a transition period, in large part because of privileged documents Crowley produced in response to the Equity Committee's request. These documents, which Crowley had concealed from the Trustee, caused Chief Judge Walrath to conclude that Crowley is not honest. Following that ruling, Crowley resigned.

Crowley also argues that in settling with the Noteholders for $56 million as part of his Plan of Reorganization (the "Trustee's Plan"), the Trustee has recovered all of the damages Coram sustained by reason of Crowley's conflict of interest. The Noteholders paid $56

million for (1) a release of the claims asserted in the Equity Committee's proposed derivative complaint, which included RICO conspiracy claims; and (2) ownership of reorganized Coram. Crowley's argument is frivolous. First, he does not know what Coram's damages are. Second, it recognizes the possibility of an "offset" of an indeterminate amount, which is not appropriate for determination on a motion for summary judgment. This motion is patently without merit and should be rejected.

## NATURE AND STAGE OF PROCEEDINGS

The Trustee filed this action on December 29, 2004, asserting that defendant Crowley, Coram's former Chairman, President and CEO, and Donald J. Amaral, William J. Casey, L. Peter Smith, and Sandra L. Smoley (collectively "Outside Directors") breached their fiduciary duties to Coram. On February 22, 2005, Crowley answered the complaint. (D.I. 16). The Outside Directors filed a motion to dismiss the complaint on March 4, 2005. (D.I. 17). Crowley filed a motion for summary judgment on May 5, 2005. (D.I. 42). On May 11, 2005, Crowley filed an amended summary judgment brief and replaced one of his exhibits to delete an improperly filed settlement offer letter sent by the Trustee's counsel. (D.I. 44).

## SUMMARY OF ARGUMENT

1. Crowley's motion violates this Court's standing order that motions for summary judgment in non-patent cases may be filed before the close of discovery only with leave of court.

2. Delaware waiver law is exacting, requiring evidence of a voluntary and intentional relinquishment of a known right. *See Roberts v. Edwards*, 810 A.2d 350 (Del. 2002). The Trustee never stated or indicated that he would not pursue claims against Crowley if the

2

Bankruptcy Court did not grant his motion to extend Crowley's employment *and* a contemplated subsequent motion to settle with Crowley. Moreover, when the Trustee moved for the extension of six months for the period of reorganization, he was unaware that Crowley had concealed his ongoing negotiations with Cerberus relating to Coram. Evidence presented by the Equity Committee at the March 3, 2003 hearing demonstrated that Crowley's previous representations to the Trustee that he did not seek compensation from Cerberus for his work at Coram were false. On the basis of this evidence, the Bankruptcy Court denied the motion to extend Crowley's contract, finding that Crowley was not honest. The Trustee's Plan, which was confirmed, specifically set forth the Trustee's intent to file this action. Although a party in interest, Crowley did not file an objection to the Plan or the statement by the Trustee that he planned to file an action against Crowley.

       3.      The claim that the Trustee has recovered the damages caused by Crowley's conflict because he received $56 million from the Noteholders is wrong: (a) the Trustee has not presented damages at this early stage, but anticipates that the claim against Crowley will greatly exceed $56 million; (b) part of the $56 million was to settle RICO claims, for which there is no contribution; and (c) part of the $56 million was to acquire ownership of reorganized Coram.

### STATEMENT OF FACTS

On March 7, 2002, the United States Bankruptcy Court for the District of Delaware entered an order appointing the plaintiff Chapter 11 Trustee of Coram. Compl. ¶ 1 (D.I. 1). After protracted confirmation hearings on competing plans of reorganization, the Bankruptcy Court confirmed the Trustee's Plan. *Id.* All appeals from the confirmation order

3

were withdrawn, and the Trustee's Plan was implemented on December 1, 2004. Coram is now a private company owned by its former lenders. *Id.* Under the Trustee's Plan as approved by the Bankruptcy Court, the right to pursue causes of action against Crowley and Coram's other former directors was specifically reserved to the Trustee for the exclusive benefit of Coram's former unsecured trade creditors and its former common shareholders. *See* Order Confirming the Chapter 11 Trustee's Second Amended Joint Plan of Reorganization, *In re Coram Healthcare Corp. and Coram, Inc.*, Case Nos. 00-3299 (MFW) & 00-3300 (MFW) (filed October 27, 2004), attached as Exhibit A.

As set forth in detail in the complaint, Crowley had an employment agreement with Cerberus at the same time he served as Coram's Chairman and CEO. Compl. ¶¶ 13-14, 19-23 (D.I. 1). As a result, the Bankruptcy Court found that Crowley had an actual conflict of interest and denied Coram's first proposed plan of reorganization, holding that it was not submitted in good faith under section 1129(a)(3) of the Bankruptcy Code. Compl. ¶ 36 and Op. 12/21/00, attached to Complaint as Exhibit H (D.I. 1).

On December 21, 2001, the Bankruptcy Court denied confirmation of Coram's second proposed plan or reorganization because Crowley continued to receive $80,000 per month from Cerberus. Op. 12/21/01 at 13, attached to Complaint as Exhibit J (D.I. 1). As the Bankruptcy Court put it, "[n]othing, in fact, has changed since the first confirmation hearing." *Id.* The Bankruptcy Court rejected Crowley's testimony that Cerberus was not paying him for his work at Coram, but for work on non-Coram matters. *Id.* at 16-17.

The Trustee was appointed on March 7, 2002. He elected to continue Crowley's employment with Coram only after Crowley assured him that he was no longer being paid by

Cerberus. Motion of the Chapter 11 Trustee for Authorization to Enter Into Termination and Employment Extension Agreement with Daniel D. Crowley ("Motion for Employment Extension") ¶ 17, attached as Exhibit B. Crowley's employment agreement with Coram expired on November 30, 2002. Compl. ¶ 21 (D.I. 1). Because Crowley was doing a good job operating Coram, on January 24, 2003, the Trustee filed a motion to extend his employment for a transition period through the earlier date of (a) confirmation of a plan, (b) substantial consummation of a plan, or (c) June 30, 2003. Motion for Employment Extension ¶ 13, attached as Exhibit B. The Equity Committee opposed the motion.

In the course of discussions between counsel regarding the extension of Crowley's employment, the Trustee also agreed in principle that if the Bankruptcy Court approved the extension, the Trustee would also settle the estate's claims against Crowley and Crowley's extensive claims against the estate for bonuses and additional compensation. That contemplated settlement would also be subject to the approval of the Bankruptcy Court. But the Trustee only filed the motion for extension of Crowley's employment. The settlement discussions came to light only because in response to document requests by the Equity Committee, Crowley produced unredacted versions of the correspondence between counsel even though they were plainly protected by FRE 408. That correspondence made clear that if the Bankruptcy Court did not approve the extension agreement *and* the settlement, the Trustee retained the right to bring an action against Crowley. Letter from Barry Bressler, Esq. to Scott D. Schreiber, Esq., attached as Exhibit C.

There never was a motion to approve any settlement because the Bankruptcy Court emphatically rejected the motion to extend Crowley's employment. In the course of discovery, Crowley produced privileged documents that made clear that his prior representations

5

to the Trustee were false. He was in fact continuing to ask Cerberus for millions of dollars to be paid after the confirmation, when neither he nor Coram would be under the jurisdiction of the Bankruptcy Court. Draft Letter from Daniel Crowley to Stephen Feinberg, attached as Exhibit D. Although Crowley once again testified that he was not seeking this money for his work at Coram, but for other consulting work for Cerberus, Judge Walrath rejected his testimony, stating "I do not believe he is honest." March 3, 2003 Hearing of Trustee's Motion for Authorization to Enter Into Termination and Employment Extension Agreement with Daniel D. Crowley ("March 3, 2003 Hearing") at 195-196, attached as Exhibit E.

Crowley resigned as of March 31, 2003. Contrary to the advice of his financial advisors and the Noteholders, the Trustee did not retain a crisis manager to replace Crowley, but rather took a greater role in overseeing Coram's operations. Coram did very well financially under the supervision of the Trustee and his advisors. December 11, 2003 Confirmation Hearing Transcript at 116, attached as Exhibit F. As one expert noted, Coram's financial performance was "pretty sensational." November 3, 2003 Confirmation Hearing Transcript at 238, attached as Exhibit G.

The Trustee proposed his Plan in May 2003. It was amended several times and eventually confirmed. Each version of the Trustee's Plan and disclosure statement clearly stated that the Trustee reserved the right to pursue Coram's claims against Crowley. *See* Chapter 11 Trustee's Joint Plan of Reorganization, attached as Exhibit A to Crowley's Brief in Support of his Motion for Summary Judgment at Art. 7.1 (D.I. 44); Disclosure Statement with Respect to the Chapter 11 Trustee's Joint Plan of Reorganization at 28, attached as Exhibit E to Crowley's Brief in Support of his Motion for Summary Judgment (D.I. 44); Chapter 11 Trustee's Second Amended Joint Plan of Reorganization at Art. 7.1, attached as Exhibit H; Second Amended

6

Disclosure Statement with Respect to the Chapter 11 Trustee's Joint Plan of Reorganization at 30, attached as Exhibit I.

The Trustee's Plan was funded in part by a $56 million settlement with the Noteholders, for which the Noteholders received releases and all of the equity of reorganized Coram. The confirmation order provided that the Trustee had the right to "commence, prosecute, compromise and seek Bankruptcy Court approval of any settlement of any of the Causes of Action on behalf of the Debtors' estates," including, specifically, claims against Crowley and Coram's former outside directors. Order Confirming the Chapter 11 Trustee's Second Amended Joint Plan of Reorganization ¶ 50, *In re Coram Healthcare Corp. and Coram, Inc.*, Case Nos. 00-3299 (MFW) & 00-3300 (MFW) (filed October 27, 2004), attached as Exhibit A.

## ARGUMENT

### I.   STANDARD OF REVIEW

The standard of review of a motion for summary judgment under Rule 56 is well-established. A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Facts that could alter the outcome are 'material,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 302 n.1 (3d Cir. 1995). The burden of proving that no genuine issue of material fact exists is on the moving party. *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In making this determination, a court is to draw all reasonable inferences in favor of the non-moving party." *Cardenas v. Massey*, 269 F.3d 251, 254 (3d Cir. 2001).

## II.   CROWLEY'S MOTION FOR SUMMARY JUDGMENT IS PREMATURE.

This Court's standard scheduling order for non-patent matters provides that summary judgment motions may be filed before the close of discovery only with leave of the Court. *See* Exhibit J ¶ 5, standard non-patent scheduling order found at the website for the District Court of Delaware at http://www.ded.uscourts.gov/SLRmain.htm. This Court's practice is completely in accord with Rule 56 and Supreme Court precedent. *Celotex*, 477 U.S. at 322 (Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party . . . "). Here, the parties have conducted no discovery, as the pleadings are not yet closed. This premature motion should be denied.

## III.   THE TRUSTEE DID NOT WAIVE CLAIMS AGAINST CROWLEY AND, TO THE CONTRARY, SPECIFICALLY RESERVED THE RIGHT TO BRING THOSE CLAIMS.

The Trustee did not waive his breach of the duty of loyalty claims against Crowley by continuing to retain Crowley during the bankruptcy, by seeking to extend his employment agreement, or by discussing a settlement of Crowley's claim that Coram owed him approximately $16 million. To the contrary, from the Trustee's first proposed Plan filed in May

2003, it was clear that the Trustee intended to bring this breach of the duty of loyalty claim against Crowley if the Trustee's Plan were confirmed.

"Waiver is the voluntary and intentional relinquishment of a known right. It implies knowledge of all material facts and intent to waive." *Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982) (citations omitted). "The standard for finding waiver in Delaware is quite exacting." *Roberts v. Edwards*, 810 A.2d 350 (Del. 2002) (order) (citing *Am. Family Mortgage Corp. v. Acierno*, No. 290, 1993, 1994 Del. LEXIS 105, at * 13 (Del. March 28, 1994)). Moreover, the "facts relied upon for proof must be unequivocal in character." *Realty Growth*, 453 A.2d at 456 (citing 28 Am.Jur.2d, *Estoppel and Waiver*, § 173 (1966)). Waiver "requires more than mere inaction," and requires proof of intentional relinquishment of the right. *Kallop v. McAllister*, 678 A.2d 526, 532 (Del. 1996).

Therefore, "[i]ntention forms the foundation of the doctrine of waiver, and an intention to waive must appear clear from the record evidence before summary judgment is granted on this issue." *Aeroglobal Capital Management, LLC v. Cirrus Industries, Inc.*, No. 101/266, 2004, 2005 Del. LEXIS 133, at * 46 (Del. March 23, 2005); *see also George v. Frank A. Robino, Inc.*, 334 A.2d 223, 224 (Del. 1975). The trier of fact decides whether the conduct "under the circumstances of [the] case evidenced an intentional, conscious and voluntary abandonment of its claim or right." *Id.* at *48. "Summary judgment is inappropriate where . . . the inference or ultimate fact to be established concerns intent or other subjective reactions." *George*, 334 A.2d at 224 (citing 6 Moore, Federal Practice (2d Ed.) § 56.17); *see also Aeroglobal*, 2005 Del. LEXIS 133, at * 48.

9

Crowley has not met this exacting standard. He has not advanced any evidence to show that the Trustee intended to give up his rights to pursue this action if the contract extension and settlement of Crowley's claims were not approved by the Bankruptcy Court. Crowley's brief appears to recognize this fundamental problem, arguing that the Trustee's conduct "warrant[s] *at least an inference* of a voluntary relinquishment of the right not only to terminate Crowley but to file suit against him," Opening Br. at 13 (D.I. 44), and that the Trustee's "affirmative acts can *reasonably be interpreted* as a voluntary waiver of any right to sue Crowley." *Id.* at 15. The inference and interpretation Crowley seeks are unreasonable, but for present purposes it is enough that summary judgment cannot be granted if the interpretation of evidence is necessary.

Crowley alleges that the Trustee "waived his right to file suit against Crowley by virtue of Plaintiff's affirmative acts (a) by not immediately removing Crowley from his position after being appointed Trustee; (b) engaging Crowley's services; (c) reaping the benefits of Crowley's services; and (d) by filing the Trustee's Motion seeking permission to pay Crowley a $3,000,000.00 bonus." Opening Br. at 11 (D.I. 44). (The last item is just wrong. As explained above, the Trustee never filed a motion seeking to pay Crowley a $3 million bonus.) Crowley also argues that waiver can be shown by the Trustee publicly complimenting Crowley's job performance. *Id.* at 15. None of these acts constitute a voluntary waiver, as a matter of law, of the Trustee's right to sue Crowley.

As a threshold matter, the Trustee's case against Crowley does not involve any allegations that Crowley lacked the qualifications to be CEO of Coram or performed poorly operationally. Instead, the Trustee's case concerns Crowley's breach of his duty of loyalty, which has nothing to do with Crowley's abilities.

10

Shortly after his appointment, the Trustee reviewed Judge Walrath's two opinions and understood her concern and findings that the Outside Directors failed to investigate the conflict, failed to "ask whether [Crowley] continued to be bound by the Consulting Agreement," and did not require that "Crowley sever all agreements with Cerberus as a condition of continued employment." Op. 12/21/01 at 21-22, attached to Complaint as Exhibit J; *see also* Compl. ¶ 45 (D.I. 1). Therefore, the Trustee required that Crowley have no continuing conflict of interest, sever his contractual relations with Cerberus and not receive any compensation from Cerberus. Motion for Employment Extension ¶¶ 16-17, attached as Exhibit B.

Believing that Crowley was honestly holding up his end of that commitment, the Trustee filed the motion to extend Crowley's employment on January 24, 2003. Documents that were protected by the attorney-client privilege, but nevertheless produced by Crowley, revealed that he had not been truthful to the Trustee. On May 6, 2002, Crowley drafted a letter to Stephen Feinberg, managing partner of Cerberus, regarding compensation from Cerberus for his work at Coram. An insert, which Crowley's counsel claims to have written, states: "I expect that you'll honor the commitment you made to me over dinner: after Coram's plan is confirmed or its assets sold, I'll be reinstated with Cerberus and receive $5,000,000 from Cerberus. Also, Cerberus will indemnify me for all of my legal fees, plus pay me the difference between what I ultimately receive from Coram by way of bonuses, and $11,200,000." Exhibit D at CRX 00065. The letter also stated that he "didn't have to recite the answers that [Coram's bankruptcy lawyer] gave [him] to say in Court." *Id.* at CRX 00064.

The Trustee seriously considered withdrawing the motion and terminating Crowley's employment immediately but decided to allow Crowley to explain to the Court his position that the millions of dollars he was seeking from Cerberus did not concern Coram and

11

then to abide by the Bankruptcy Court's decision. Judge Walrath denied the Trustee's motion to extend Crowley's employment, stating that "I do not believe he is honest." March 3, 2003 Hearing at 195, attached as Exhibit E. Referring to the May 6, 2002 letter, Judge Walrath concluded that the documents "after the appointment of the Trustee, continue to show what I believe is a continuation of Mr. Crowley's continued efforts to continue to get reimbursement from Cerberus for efforts undertaken *in this case*." *Id.* at 196 (emphasis added).

Without the critical knowledge that Crowley was continuing to seek compensation from Cerberus for his activities at Coram after the Trustee's appointment, the Trustee did not have "all material facts" and therefore could not demonstrate an intent to waive his right to sue Crowley by retaining Crowley and moving to extend his employment for a transition period. *See Realty Growth Investors v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982).

The proposed settlement of Crowley's compensation claims against Coram and the Trustee's claims against Crowley does not demonstrate a waiver of the Trustee's claims. That issue was never even submitted to the Bankruptcy Court. During discovery on the motion to extend Crowley's employment, Crowley's attorney produced correspondence with the Trustee's counsel without redacting privileged settlement negotiations.[1] Nevertheless, in a letter dated January 7, 2003, the Trustee's counsel made clear that any agreement was subject to approval by the Bankruptcy Court and that "[i]f the Bankruptcy Court fails to approve the

---

[1] In a disturbing pattern, in the original brief to this motion for summary judgment, Crowley's same counsel inappropriately attached a settlement letter in this case from undersigned counsel to the defendants. After the Trustee's counsel objected to the use of the settlement letter, Crowley filed an amended brief omitting the letter as an exhibit.

Settlement Agreement, all of the undertakings of the parties will be void and the parties will return to their previous positions, retaining all claims which exist and all defenses thereto. The parties will only be legally bound upon approval of the formal agreement by the Bankruptcy Court." Exhibit C at 2. This letter does not in any way evidence an intent to waive any and all claims against Crowley and instead specifically retains the Trustee's claims if the Bankruptcy Court did not approve the agreement and the settlement with Crowley.

From the very first confirmation plan filed by the Trustee in May 2003 to the amended Plan ultimately approved by the Bankruptcy Court, the Trustee stated that he intended to file this action against Crowley. Specifically, Article 7.1 of the Chapter 11 Trustee's Joint Plan of Reorganization dated May 2, 2003, provided that: "The release [of the Noteholders and Stephen Feinberg] shall not include any of the Debtors' claims against Crowley, Amaral, Casey, Smith and Smoley, including the Proposed Derivative Claims." Exhibit A to Crowley's Brief in Support of his Motion for Summary Judgment (D.I. 44). The Trustee's Disclosure Statement also specified that the release did not include the proposed derivative claims against Crowley. Exhibit E to Crowley's Brief in Support of his Motion for Summary Judgment at 28 (D.I. 44). Despite his ability to do so, Crowley did not object to the Trustee's proposed plan for any reason, including the now belatedly asserted claim of waiver. The Trustee's Plan as confirmed by the Bankruptcy Court included the same language, that the Noteholders' release did not apply to claims against Crowley and the outside directors. Exhibit H at Art. 7.1. In addition, the Bankruptcy Court's opinion confirming the Trustee's Plan stated that the Trustee retained the ability to sue Crowley and the outside directors. October 5, 2004 Op. at 12, attached as Exhibit K. In sum, there is no evidence that the Trustee intended to waive claims against Crowley and substantial evidence that, to the contrary, the Trustee had no such intent.

13

The cases cited by Crowley do not compel summary judgment but rather support the Trustee's arguments that summary judgment is not appropriate here. Crowley relies extensively on the Delaware Supreme Court's decision in *Baio v. Commercial Union Insurance Co.*, 410 A.2d 502 (Del. 1979). In *Baio*, a worker's compensation carrier paid $8,200 to an employee and was subrogated to that extent to the employee's rights against third parties. *Id.* at 504. The employee then brought a tort suit against two defendants seeking $350,000. The carrier joined as a plaintiff to protect its subrogation rights. It turned out the carrier provided liability insurance for one of the two defendants. Since $350,000 is far in excess of $8,200, the carrier "switched sides." The defendant insured by the subrogated carrier prevailed, but the employee recovered from the other defendant. *Id.* at 504-505. The insurance company then sought to subrogate against the employee's recovery from the co-defendant. *Id.* at 505.

The Delaware Supreme Court held that waiver is an equitable principle and that the insurance company had not acted equitably in having opposed the plaintiff in the tort suit. *Id.* at 507-508. The court recognized that the insurance company was aware of the facts. *Id.* at 508 n.5. In contrast, the Trustee was not aware of the true facts here when negotiating with Crowley because Crowley had concealed them. The Trustee always acted in an equitable manner towards Crowley and the estate. On the other hand, evidence shows that Crowley was not being honest with the Trustee and clearly did not act in an equitable manner. It is Crowley who fails to have "clean hands" and should not be permitted to seek an equitable remedy.

Similarly, in another case relied upon by Crowley, the Delaware Supreme Court affirmed the trial court's refusal to find waiver of notice of a breach of a requirements contract because "[i]t is obvious that one cannot waive that of which he had no knowledge at the time of the alleged waiver." *Klein v. American Luggage Works, Inc.*, 158 A.2d 814, 818 (1960). In

*Rose v. Cadillac Fairview Shopping Center*, 668 A.2d 782, 785 n.1 (Del. 1995), the Delaware Supreme Court refused to find waiver of an exclusivity defense because the plaintiff had not put forth facts establishing intent or knowledge. The court explained that the test for ascertaining knowledge included both what the party knew and what the party could have known by reasonable diligence but the "intent to waive will not be implied from slight circumstances." *Id.* As explained above, the same reasoning in the *Klein* and *Rose* cases cited by Crowley applies here where the Trustee was unaware that Crowley was not being forthright with him after the Trustee's appointment.

The bankruptcy cases cited by Crowley are also unavailing. Unlike the debtor in *In re Momentum Manufacturing Corp.*, 25 F.3d 1132 (2d Cir. 1994), who "engaged in deception rather than disclosure" in its disclosure statements, the Trustee has been clear that he was not releasing Crowley from the breach of the duty of loyalty claims against him. In *In re Burkey Lumber Co. of Grand Junction*, 149 B.R. 177, 181 (Bankr. D. Col. 1993), equitable estoppel applied against the debtor because the creditor was "entitled to rely on express, explicit, and specific representations of a debtor in its disclosure statement as to that particular creditor's claim." Here, Crowley received no such explicit assurances that the Trustee would not bring suit if the Bankruptcy Court denied the extension of his contract and their proposed settlement agreement. To the contrary, the Trustee stated clearly in his plans and disclosure statements that Crowley was not released from potential claims against him. In *In re Varat Enterprises, Inc.*, 81 F.3d 1310, 1317 (4th Cir. 1996), the Court concluded that the failure of a party in interest to object to a claim prior to confirmation acts as a waiver barring an objection later. Under this case cited by Crowley, his failure to object to the Trustee's Plan should act as a waiver of Crowley's rights to object to this lawsuit.

15

IV.   **THE TRUSTEE IS NOT PRECLUDED FROM SEEKING DAMAGES FROM CROWLEY IN THIS ACTION.**

Citing only the Trustee's Disclosure Statement, Crowley alleges that the Trustee "admits that the Debtors have recovered more than the amount of damages that the estate allegedly sustained." Opening Br. at 15 (D.I. 44). The Disclosure Statement refers to the $56 million settlement with the Noteholders but says nothing about the damages in this case. Summary judgment is inappropriate because there is no evidence to support the allegation. To the contrary, the Trustee believes the estate has a substantial damages claim against Crowley.

Coram's damages caused by Crowley's conflict include bankruptcy reorganization costs that would not have been incurred (in excess of $30 million) and the loss of profits Coram sustained. The Trustee has not yet engaged experts to calculate lost profits. In the bankruptcy proceedings, the Equity Committee's expert testified that Coram's lost profits attributable to Crowley's conflict were approximately $137 million. The Trustee challenged certain components of that expert's methodology, but not its basic concept.

Moreover, it is not appropriate, and certainly not at this early stage, to apply the full amount of the Noteholders' settlement as a setoff. Coram recovered $56 million from the Noteholders, but as the Bankruptcy Court recognized in its opinion confirming the Plan, "that $56 million is being contributed by the Noteholders for more than the releases (for 100% of the equity of Reorganized Coram for instance)." October 5, 2004 Op. at 40, attached as Exhibit K. Therefore, in determining the amount of a setoff, the factual question of how much the Noteholders paid for the releases and how much they paid for the equity of reorganized Coram must be decided. Moreover, the releases also included RICO claims. Since there is no contribution under RICO, any amount the Noteholders paid for the release of the proposed RICO

16

claims cannot be a setoff in this action. The only part of the settlement that arguably could be applied as a setoff is the value of the settlement of the breach of fiduciary duty claim against Feinberg, head of Cerberus.

While the Trustee recognizes that setoff arguably may be a potential issue in this litigation, it is not an issue that should be decided on a premature summary judgment motion filed before any discovery has been conducted. Moreover, Crowley has presented no facts whatsoever that support a claim that Coram has already fully recovered its damages.

## CONCLUSION

For all the above reasons, Crowley's motion for summary judgment should be denied and the Trustee should be granted its fees for responding to this untimely frivolous motion.

Respectfully submitted,

By: /s/ Rolin P. Bissell

Rolin P. Bissell (# 4478)
Glenn C. Mandalas (# 4432)
YOUNG CONAWAY STARGATT
  & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Phone: (302) 571-6600
Fax:   (302) 571-1253
rbissell@ycst.com

*Attorneys for Arlin M. Adams*

OF COUNSEL:

Barry E. Bressler
Wilbur L. Kipnes
Nancy Winkelman
Jennifer Nestle
Han Nguyen
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103
Phone: (215) 751-2000
Fax:   (215) 751-2205

Dated: May 25, 2005