**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ARLIN M. ADAMS, *Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORP. and CORAM, INC.*, <br><br> Plaintiff, <br><br> v. <br><br> DANIEL D. CROWLEY, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civ. Action No. 04-cv-1565(SLR) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

---

**BRIEF IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER**

---

Dated:  April 13, 2007

Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)

SCHNADER HARRISON SEGAL & LEWIS LLP
824 N. Market Street, Suite 1001
Wilmington, DE  19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)

OF COUNSEL:

Nancy Winkelman (*pro hac vice admission pending*)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2400 (telephone)
(215) 751-2205 (facsimile)

*Counsel to Plaintiff,
Arlin M. Adams, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORP. and CORAM, INC.*

# TABLE OF CONTENTS

                                                                                        **Page**

TABLE OF AUTHORITIES .................................................................................................... ii

NATURE AND STAGE OF PROCEEDING ........................................................................... 1

SUMMARY OF ARGUMENT ................................................................................................. 1

CONCISE STATEMENT OF FACTS ..................................................................................... 3

    Background.......................................................................................................................... 3

    The Bankruptcy Court's Denial of Coram's First Reorganization Plan Due
    to Crowley's Conflict of Interest ......................................................................................... 4

    The Bankruptcy Court's Denial of Coram's Second Reorganization Plan Due
    to Crowley's Conflict of Interest ......................................................................................... 5

    The March 3, 2003 Hearing Related to Crowley's Continued Emloyment for a Transition
    Period ................................................................................................................................... 6

    The Bankruptcy Court's Approval of Coram's Third Reorganization Plan ............................. 8

    The Current Litigation ......................................................................................................... 8

ARGUMENT ............................................................................................................................. 9

I.    Depositions Of Opposing Trial Counsel Are Permitted Only In Extraordinary
       Circumstances. .................................................................................................................. 9

II.   No Information Sought By Crowley From The Trustee's Trial Counsel Is
       Relevant And Nonprivileged, Nor Is Any Such Information Crucial To The
       Preparation Of The Case. ................................................................................................ 11

III.  Crowley Cannot Show That No Other Means Exist To Obtain The
       Information Sought Other Than To Depose Opposing Counsel. ..................................... 13

IV.  Crowley's Delay In Raising This Issue Precludes Him From Taking The Depositions
       Even If He Could Otherwise Establish That The Depositions
       Were Necessary And Appropriate. .................................................................................. 14

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Allergan Inc. v. Pharmacia Corp.*, Civ. A. No. 01-141, 2002 WL 1268047 (D. Del. May 17, 2002) ...................................................................................... 10, 11

*Caruso v. Coleman Co.*, Civ. A. No. 93-6733, 1994 WL 613668 (E.D. Pa. Nov. 1, 1994) ................................................................................................................ 10

*Chrysler International Corp. v. Chemaly*, 280 F.3d 1358 (11th Cir. 2002) ...................... 14

*In re: Coram Healthcare Corp.,* 271 B.R. 228 (Bankr. D. Del 2001) ....................... *passim*

*In re: Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004) ....................... *passim*

*In re Linerboard Antitrust Litigation*, 237 F.R.D. 373 (E.D. Pa. 2006) ...................... 10, 12

*Shelton v. America Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987) ..................................... 10

*Smith ex rel. Smith v. United States*, 193 F.R.D. 201 (D. Del. 2000) ................................ 10

## STATE CASES

*Cole v. Mousavi*, Civ. A. No. 88C-MR6, 1990 WL 63945 (Del. Super. Ct. Jan. 18, 1990) ............................................................................................................. 10

## FEDERAL STATUTES AND RULES

11 U.S.C. § 327(a) .............................................................................................................. 13

Fed. R. Civ. P. 26(c) ....................................................................................................... 9, 10

## LOCAL RULES

D. Del. L.R. 30.2 ................................................................................................................ 10

ii

## NATURE AND STAGE OF PROCEEDING

Plaintiff, Arlin M. Adams, the Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc. (collectively "Coram"), filed this lawsuit on December 29, 2004, alleging that Defendant Daniel D. Crowley, the former Chairman and CEO of Coram, breached his fiduciary duties of care, loyalty, disclosure, and good faith to Coram.

Recently -- well over two years after the commencement of this lawsuit -- Crowley's counsel sought to depose opposing trial counsel in the matter. Although not conceding that these depositions were appropriate, counsel for the Trustee requested that formal subpoenas be issued for the depositions so that they could respond.

Accordingly, on March 28, 2007, Crowley issued subpoenas (for some reason, out of the Eastern District of Pennsylvania rather than out of this Court) to trial counsel for the Trustee, Wilbur L. Kipnes and Barry E. Bressler, commanding their appearances for depositions April 26 and April 27, 2007, respectively. (Ex. A-1.) The Trustee and Kipnes and Bressler file this Motion for a Protective Order seeking an Order prohibiting Crowley from deposing Trustee's trial counsel.

## SUMMARY OF ARGUMENT

Crowley cannot meet his burden of showing that the Court should permit him to take the extraordinary step of deposing opposing trial counsel in this matter because:

1.      Crowley cannot show that the information he seeks from opposing trial counsel is relevant and nonprivileged. To the contrary, the amorphous and conclusory "reasons" provided by Crowley demonstrate that the Trustee's trial counsel's depositions are irrelevant to the issues

before this Court. For example, the fact that Kipnes participated with Crowley's lawyers in preparing Crowley for his deposition regarding his continued employment at Coram in early 2003 has nothing to with this case.

2.     Crowley cannot show that the information he seeks from opposing trial counsel is crucial to the preparation of the case. Testimony from opposing counsel that might contradict that of the Trustee is not crucial to preparation of Crowley's case; in fact, the thoughts of opposing trial counsel are irrelevant here.

3.     Crowley cannot show that no other means exist to obtain the information sought. Obviously, Crowley was present (along with two of his lawyers) at his deposition preparation, at his deposition, and at the March 2003 hearing regarding his continued employment with Coram. Neither Kipnes nor Bressler is necessary for Crowley to have access to any information that he might seek on those topics.

4.     Crowley's delay in seeking these depositions despite his knowledge surrounding draft letters admitted into evidence at the March 2003 hearing raises serious questions about his motivation for seeking the depositions of opposing trial counsel. The draft letters were produced by Crowley's counsel, who now seeks the return of the letters, claiming privilege. The Trustee asserts that the privilege has been waived due to the purposeful disclosure and subsequent admission of the letters into evidence. Regardless, this issue is not of recent creation and has been known by Crowley's counsel for a significant period of time.

The Trustee and Kipnes and Bressler respectfully request that the Court enter a protective order prohibiting Crowley from deposing opposing trial counsel in this matter.

## **CONCISE STATEMENT OF FACTS**

*Background*

Coram was a publicly traded-traded home health care company. In April of 1997, Cerberus Partners, L.P., along with two other noteholders (collectively the "Noteholders"), purchased unsecured notes in the face amount of $250 million issued by Coram. *In re: Coram Healthcare Corp.*, 271 B.R. 228, 230 (Bankr. D. Del. 2001). In 1998, the Noteholders exercised their right under the applicable loan documents and designated Stephen Feinberg, General Partner of Cerberus, to sit on Coram's Board of Directors as their representative. *Id.*

In early 1999, Crowley joined Cerberus as a CEO consultant and worked for Cerberus on projects aimed at helping companies experiencing financial trouble. (*Id.*; *see also* D.I. 1 ¶ 13.) Feinberg and Crowley reached an oral agreement whereby Cerberus agreed to pay Crowley $80,000 a month plus expenses to serve as a consultant to distressed companies in which Cerberus had a stake. 271 B.R. at 230. On or about June 28, 1999, Feinberg requested that Crowley serve on Coram's Board as Cerberus' representative. (*See* June 28, 1999 Letter from Crowley to Feinberg, attached as Ex. A-2.) Crowley wanted to become involved with Coram because Feinberg was "very important" to Crowley. (*Id.*) Crowley's goal was for Feinberg and him "to work together over the remainder of [their] careers." (*Id.*) Crowley wanted to "turn a nice profit" for Feinberg. (*Id.*) Thereafter, at Feinberg's suggestion, Feinberg suggested that Coram hire Crowley as a consultant, which Coram did. 271 B.R. at 231. Then, in late 1999, Coram hired Crowley to be its Chairman and CEO. *Id.*

Meanwhile, while negotiating the conditions of his employment with Coram, Crowley wrote to Feinberg, seeking more money from Cerberus for the work he was doing for Cerberus

3

as chairman of another distressed company, Winterland.  271 B.R. at 231.  The additional money was to be paid in consideration for Crowley signing an employment agreement with Coram.  *Id*.

Crowley signed a three-year agreement with Coram on November 18, 1999.  *Id*.  One day later, he executed a written Employment Agreement with Cerberus whereby he was to receive a base salary of $80,000 a month and performance-based bonuses for his work on Winterland and other Cerberus portfolio companies.  *Id*.  The Employment Agreement with Cerberus also provided that Feinberg would assign or delegate duties to Crowley and that Crowley would devote "his entire business time, attention, skill and energy exclusively to the business of [Cerberus]" and that Crowley would use his best efforts to further the success of Cerberus.  (*Id*.; *see also* D.I. 1 ¶ 22.)  Cerberus also could terminate Crowley for cause, which included Crowley's failure to follow Feinberg's instructions.  (D.I. 1 ¶ 22.)  Crowley did not disclose the terms of his Employment Agreement with Cerberus to Coram. (*Id*. ¶ 23.)

***The Bankruptcy Court's Denial of Coram's First Plan of Reorganization Due to Crowley's Conflict of Interest***

Within a month of Crowley directing the payment of more than $40 million to the Noteholders, on August 8, 2000, Coram filed for relief under Chapter 11 of the Bankruptcy Code.  *See* 271 B.R. at 231.  On that date, Coram also filed its first plan for reorganization.  That plan called for the Noteholders to become Coram's new owners and the interests of Coram's shareholders to be extinguished without compensation.  *Id*. at 232.

After the bankruptcy was filed, the Bankruptcy Court appointed an Equity Committee to protect the interests of Coram's shareholders.  *Id*.  Because the reorganization plan proposed to extinguish the interests of the Coram's shareholders, the Equity Committee opposed it.  *See id*.

4

It was during discovery conducted by the Equity Committee in connection with its objections to this first plan that it was first revealed that Crowley had a consulting employment contract with Cerberus. *See id*.

The Bankruptcy Court (Honorable Mary F. Walrath) rejected Coram's proposed reorganization plan because Crowley's contract with Cerberus created an actual conflict of interest that tainted the entire restructuring process. (Dec. 21, 2000 Tr. at 87-90, attached as Ex. A-3.) Chief Judge Walrath explained:

> I think that the contractual relationship between Cerberus and the CEO, Mr. Crowley, did taint the process . . . I do think it's an actual conflict of interest.
>
> I think that the actions of Mr. Crowley to hide the relationship . . . did, in fact, taint his ability to serve as CEO of the debtor.

(Ex. A-3 at 87, 89.)

Subsequently, an independent committee of Coram's Board hired Goldin Associates as an independent restructuring advisor. 271 B.R. at 232-33. In its report, Goldin concluded that Crowley's relationship with Cerberus should have been disclosed, that Crowley had breached his fiduciary duty, and that Coram had suffered damages as a result of Crowley's conflict. Goldin made recommendations concerning a second plan of reorganization which included a $7.5 million reduction in Crowley's bonus compensation. *Id*. at 233.

***The Bankruptcy Court's Denial of Coram's Second Plan of Reorganization Due to Crowley's Conflict of Interest***

Following the issuance of the Goldin report, Coram filed a second plan of reorganization. 271 B.R. at 233. Chief Judge Walrath conducted hearings on the second plan and again

5

concluded that she could not confirm the plan because it was not submitted in good faith. *Id*. at 240. In Chief Judge Walrath's view, "[n]othing, in fact, has changed since the first confirmation hearing. Crowley continues to receive almost $1 million a year from one of the Debtors' largest creditors, while serving as the Debtors' CEO and President. Under this agreement with Cerberus, he is required to obey its instructions or risk having the agreement terminated and losing his $1 million. This is an actual conflict of interest, as we concluded at the first confirmation hearing." *Id*. at 235.

*The March 3, 2003 Hearing Related to Crowley's Continued Employment for a Transition Period*

After the rejection of Coram's second plan, on March 7, 2002, the Bankruptcy Court appointed Arlin M. Adams (the plaintiff in this case) as Chapter 11 Trustee to oversee Coram's operations and proceed through the reorganization process. *See In re: Coram Healthcare Corp.*, 315 B.R. 321, 328 (Bankr. D. Del. 2004). Subsequently, two plans for reorganization were filed, one by the Equity Committee and one by the Trustee. *Id*. Both plans were amended on several occasions. *Id*. at 328 n.2.

In early 2003, the Equity Committee filed a motion to terminate Crowley's employment; shortly thereafter, the Trustee filed a motion that would allow Crowley to remain employed by Coram under the Trustee's supervision for a short transition period during the confirmation hearing process. The Bankruptcy Court hearing on these issues related to Crowley's continued employment was to be held on March 3, 2003.

On February 27, 2003, Crowley was deposed by Richard Levy, counsel for the Equity Committee. Prior to his deposition, Crowley spent some time with his attorneys, John Ward and

6

Scott Schreiber, preparing for his deposition. (Feb. 27, 2003 Crowley Dep. at 7:2-8, portions attached as Ex. A-4.) Kipnes was also present during Crowley's preparation for his deposition. (*Id*. at 7:5-15.) Crowley testified that he spent a "couple of hours" with his lawyers and Kipnes preparing for the deposition. (*Id*. at 7:2-19.) Kipnes did not prepare Crowley on the draft letters and it was the idea of Crowley's counsel, not Kipnes, to discuss the draft letters. (*Id*. at 9:7-11, 100:14 - 103:5.) Bressler did not prepare Crowley for his deposition. During the deposition, Levy questioned Crowley extensively regarding two draft May 2002 letters from Crowley to Feinberg that Crowley's lawyers had produced in advance of Crowley's deposition. (*Id*. at 98:23 - 145:9.)

At the March 3, 2003 hearing, Kipnes presented Crowley as a witness in support of the Trustee's motion. During his direct examination, Kipnes focused on what Crowley believed would happen to Coram should he be fired and the status of Crowley's claim against Cerberus regarding payment for work done unrelated to Crowley's work at Coram. (Mar. 3, 2003 Hrg. Tr. at 73 - 84, portions attached as Ex. A-5.) Levy introduced the May 2002 draft letters at the hearing; and on redirect, Kipnes asked Crowley limited questions about a portion of one of the letters. Crowley was represented at the hearing by his own counsel and was determined by Chief Judge Walrath to be "a party." (*Id*. at 11.)

Upon the close of testimony, Chief Judge Walrath denied the motion to extend Crowley's employment because she "[did] not believe [Crowley] is honest" and because she did not "want [the Trustee's] reputation or [her reputation] sullied by approving continuing employment of an employee that [she] [did] not believe to be an honest person." (*Id*. at 196.) She found that the draft letters showed that Crowley had not cured his actual conflict of interest and that Crowley continued to seek monies from Cerberus for work he performed for Coram. (*Id*.) She therefore

7

refused to approve an extension of Crowley's employment because she believed it to be of the utmost importance that "the debtor, under the supervision of this Trustee, not be tainted by any suggestion that the senior executive has anything other than 100 percent dedication to this entity and to this entity alone." (*Id*. at 196-97.)

*The Bankruptcy Court's Approval of Coram's Third Reorganization Plan*

As noted above, the Trustee submitted a proposed reorganization plan. That plan provided for a settlement with the Noteholders whereby the Noteholders would relinquish all of their claims and interests and contribute $56 million to Coram's estate, in return for ownership of the company and a release from the Trustee of any claims that Coram may have against them. *Coram Healthcare Corp*., 315 B.R. at 328. On October 5, 2004, Chief Judge Walrath confirmed the Trustee's Second Amended Joint Plan of Reorganization. *Id*. at 327.

*The Current Litigation*

As part of the confirmed plan, the Trustee specifically preserved his right to file claims on behalf of Coram's estate (including the creditors and former shareholders) against Crowley. In accordance with the plan, on December 29, 2004, the Trustee filed this suit against Crowley for breaching his fiduciary duties.[1]

Discovery has been proceeding in the case; trial is set for September 17, 2007. In late March 2007 (fifteen months after this case was filed and almost a year after the commencement

---

[1] This lawsuit also alleged that Coram's outside directors had breached their fiduciary duties to Coram but on June 1, 2006, this Court entered an Order approving a joint stipulation and motion that entered judgment in favor of the Trustee and against the outside directors based on a settlement agreement that had been reached between the Trustee and the outside directors. (D.I. 72.)

8

of discovery), Crowley's counsel notified the Trustee's counsel, Kipnes and Bressler, that Crowley wanted to depose them, apparently on the basis that Crowley may seek to have the Trustee's counsel be fact witnesses at trial, and/or that they may take or have taken positions that are allegedly inconsistent with those of their client (the Trustee), and/or that one of them (Bressler) also served as the Trustee's "business advisor," and not just his lawyer.  As noted, Crowley's counsel subsequently issued subpoenas out of the Eastern District of Pennsylvania for those depositions.  (Ex. A-1.)

Since that time, the Trustee's counsel has engaged in a series of communications with Crowley's counsel in an attempt to understand more specifically why Crowley needs to take their depositions, but to date has been unsuccessful in doing so.  (The series of correspondence on this matter between Crowley's counsel and the Trustee's counsel is attached as Exhibit A-6.)  Rather, it appears that Crowley's request to take the extraordinary step of deposing opposing trial counsel -- particularly advanced as it is so late in the proceedings -- is not only unnecessary and inappropriate, but also vexatious and ill-motivated.  It is for these reasons that the Trustee and his trial counsel file this motion seeking the protection of the Court.

**ARGUMENT**

I.  **Depositions Of Opposing Trial Counsel Are Permitted Only In Extraordinary Circumstances.**

Rule 26(c) of the Federal Rules of Civil Procedure provides that a party or a person from whom discovery is sought may move for a court order that protects the party of person "from annoyance, embarrassment, oppression, or undue burden or expense."  The court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  *Id*.  Among the options available, the court may order

9

that the discovery not be had or may be had only on specified terms and conditions, or that the scope of discovery be limited or certain matters not be inquired into. FED. R. CIV. P. 26(c)(1), (2) & (4).[2]

As noted, Kipnes and Bressler serve as trial counsel in this matter. Taking the deposition of trial counsel is a highly disfavored tactic. *See, e.g., In re Linerboard Antitrust Litig.*, 237 F.R.D. 373, 385 (E.D. Pa. 2006) (noting that depositions of opposing counsel are discouraged and "typically permitted only where a clear need is shown"); *Caruso v. Coleman Co.*, Civ. A. No. 93-6733, 1994 WL 613668, at *1 (E.D. Pa. Nov. 1, 1994) (same). Furthermore, "[a]bsent an attorney's advice being made an issue in the case, courts should exercise great care before permitting the deposition of an attorney." *Linerboard*, 237 F.R.D. at 385.

This Court has emphasized that the depositions of opposing counsel should be limited to those circumstances "where 'the party seeking to take the deposition has shown that (1) no other means exist to obtain the information other than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to preparation of the case.'" *Allergan Inc. v. Pharmacia Corp.*, Civ. A. No. 01-141, 2002 WL 1268047, at *1 (D. Del. May 17, 2002) (*citing Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987)); *see also Smith ex rel. Smith v. United States*, 193 F.R.D. 201, 215 (D. Del. 2000); *Cole v. Mousavi*,

---

[2] Pending resolution of this motion, Crowley is not entitled to take the depositions of Kipnes or Bressler. *See* Del. L.R. 30.2 ("[p]ending resolution of any motion under Fed. R. Civ. P. 26(c) . . . neither the objecting party, witness, nor any attorney is required to appear at the deposition to which the motion is directed until the motion is ruled upon. The timely filing of a motion under [Rule 26(c)] shall stay the discovery to which the motion is directed pending further order of the Court."). Moreover, in view of the fact that Crowley chose to issue the subpoenas out of the Eastern District of Pennsylvania (even though Kipnes and Bressler have at all times been within geographical subpoena power of this Court), the Trustee has on this day, out of an abundance of caution, filed a motion to stay the taking of depositions in the Eastern District of Pennsylvania pending this Court's disposition of this motion.

Civ. A. No. 88C-MR6, 1990 WL 63945 (Del. Super. Ct. Jan. 18, 1990). The burden rests with the party seeking to depose trial counsel to show a compelling need for the requested deposition. *See Allergan*, 2002 WL 1268047, at *1.

The back-and-forth between counsel for the Trustee and counsel for Crowley (*see* Exhibit A-6) demonstrates that none of these circumstances exists here, much less all of them. Not only are the depositions unnecessary, but Crowley's counsel appears to be grasping at straws and engaging in litigation tactics aimed at something other than furthering the resolution of this case. Moreover, Crowley's unwarranted delay in seeking these depositions underscores the gamesmanship that appears to be behind the requests.

II.     **No Information Sought By Crowley From The Trustee's Trial Counsel Is Relevant And Nonprivileged, Nor Is Any Such Information Crucial To The Preparation Of The Case.**

Although, as noted, the Trustee and his counsel have been unsuccessful in having Crowley identify the specific reasons as to why he needs to depose Kipnes and Bressler, to the extent that the Trustee and his counsel can ascertain, Crowley appears to be asserting three general reasons: (1) the Trustee's counsel might be fact witnesses at trial; (2) the Trustee's counsel may take or have taken positions that are inconsistent with those of their client; and (3) one of the Trustee's counsel (Bressler) allegedly served as the Trustee's "business advisor." None of these has any merit whatsoever.

*First*, Crowley's counsel makes much of the fact Kipnes and Bressler have communicated with numerous persons involved in this litigation. But that is irrelevant. Indeed, it should come as no surprise that counsel for the Trustee have participated in many conversations with many persons on behalf of the Trustee and that counsel "have personal

11

knowledge" of numerous matters. Trial counsel in every litigation has personal knowledge of numerous matters, and so they should. This is particularly pronounced here, given that the litigation (including the underlying bankruptcy proceedings) has been proceeding for more than five years, with the countless negotiations, pleadings, meetings, court hearings, and so forth attendant to bringing a troubled company out of bankruptcy.

In short, the fact that counsel for the Trustee has engaged in communications on behalf of the Trustee is irrelevant and cannot serve as the basis for the drastic tactic of taking the deposition of opposing trial counsel.

*Second*, deposing trial counsel in an effort to seek out contradictory statements is impermissible. *See Linerboard*, 237 F.R.D. at 385. And Crowley has put forth no reason why, even assuming *arguendo* that a discrepancy may exist between some of the Trustee's views and those of his attorneys, that discrepancy is of any relevance to the case currently pending before this Court. The personal opinions of a trial counsel on the issues in a case are simply irrelevant. And, of course, any communications between the Trustee and his counsel are privileged.

In the correspondence surrounding seeking the Kipnes/Bressler depositions (Exhibit A-6), Crowley makes much of Kipnes' involvement in the production of the May 2002 letters, the preparation of Crowley for his deposition, and the March 2003 Bankruptcy Court hearing on Crowley's continued employment at Coram. This is a red herring. The current litigation is about Crowley's breach of his fiduciary duties arising from his actual conflict of interest. Crowley set forth his position regarding the draft letters both during his deposition and in his testimony in court before Chief Judge Walrath. It is of no moment that Kipnes was present at Crowley's preparation session, or that he questioned Crowley about the letters at the hearing. Nor do

12

Kipnes' personal views about either the letters or Chief Judge Walrath's ruling have any bearing whatsoever on any issue in the case.

*Third*, Crowley's contention that Bressler served as the Trustee's "business advisor" is without merit. The Bankruptcy Court appointed Bressler's firm, Schnader Harrison Segal & Lewis LLP, to act as the Trustee's attorneys.[3] The Trustee was not free to simply appoint business advisors; all professional advisors must be approved by the Bankruptcy Court. 11 U.S.C. § 327(a) (2005). As the Trustee recently testified, Bressler served as the Trustee's bankruptcy attorney, not as anything else. (*See* Mar. 28, 2007 Adams Dep. at 183:19 - 184:6, portions attached as Ex. A-7.) And, as this Court is well aware, bankruptcy proceedings involve many business matters; the very role of a bankruptcy lawyer is often to consider ancillary business issues in the context of rendering legal advice under the Bankruptcy Code. The fact that Bressler considered such issues does not alter the fact that Bressler was -- pursuant to Court appointment -- always serving as the Trustee's lawyer.

### III. Crowley Cannot Show That No Other Means Exist To Obtain The Information Sought Other Than To Depose Opposing Counsel.

Not only do Kipnes and Bressler have no relevant nonprivileged information, but also any information that they do have could be (and, in fact, has been) obtained elsewhere.

As to the role that Bressler was serving, not only are the Bankruptcy Court provisions preclusive on this point, but also the Trustee is in the best position to testify on the subjects in

---

[3] Separately, the Bankruptcy Court appointed SSG Capital Advisors, LLP and Ewing Bemis and Co. as financial advisors and investment bankers for the Trustee and Barry Hartzel, CPA, as the Trustee's business and audit advisors. *See Coram Healthcare Corp.*, 315 B.R. at 337.

13

question. And so he has done numerous times, both in multi-day depositions and hearing testimony in the bankruptcy case, and in a more than seven-hour deposition in this case.

As to the May 2002 letters, the preparation of Crowley for his 2003 deposition, and his testimony before Chief Judge Walrath at the March, 2003 hearing, clearly, Crowley can find that information elsewhere. Crowley was obviously present at both his deposition and during the hearing; he is in the best position to speak on those matters. He was also present during the preparation for his deposition, as were his attorneys. Apparently, Crowley claims that only recently has the importance of the draft letters come into focus. But, as Crowley testified at his deposition, Kipnes did not prepare him on the draft letters. (Ex. A-4 at 100:2 - 103:5.) Kipnes therefore, has nothing to add regarding the letters. Accordingly, there is no basis for taking the extraordinary step of deposing Kipnes (or Bressler) on any of those topics.

**IV.    Crowley's Delay In Raising This Issue Precludes Him From Taking The Depositions Even If He Could Otherwise Establish That The Depositions Were Necessary And Appropriate.**

Finally, despite the protests of counsel for Crowley, any issues surrounding the May 2002 draft letters or his March 2003 testimony are not new. The draft letters were produced over four years ago, Crowley was deposed regarding the letters over four years ago, and the hearing before Chief Judge Walrath occurred over four years ago. Although made a party to the proceedings, Crowley took no appeal from Chief Judge Walrath's ruling. There is no basis for Crowley's current argument (as set forth in his counsel's March 30, 2007 letter, attached as part of Exhibit A-6) that these "issues [ ] have only recently come into focus" and the "preeminence of this issue in this case has only recently come to our attention" – when, in fact, nothing whatsoever has changed regarding these issues over the past four years. *See Chrysler Int'l Corp. v. Chemaly*,

14

280 F.3d 1358, 1360-62 (11th Cir. 2002) (holding that because of the wide latitude afforded district courts in managing their cases, it was not an abuse of discretion for district court to issue protective order based on delay in seeking deposition).

Crowley is simply mistaken that these issues have only recently come into focus. The draft letters were known to Crowley, his counsel (who produced them and represented him at the March 3, 2003 hearing), and the Trustee before this lawsuit was filed. Although counsel for Crowley seems to indicate that the Trustee focused on a 1999 conflict, the conflict that serves as the basis for this lawsuit remained the same; there are not multiple conflicts at issue here. Moreover, the Trustee always reserved the right to sue Crowley for his breach of fiduciary duty; it was provided for in the Trustee's reorganization plan and addressed at the confirmation hearing. Crowley, as a creditor, was a party in interest in those proceedings. Accordingly, the reason behind the filing of this lawsuit should hardly have come as a surprise to Crowley. The argument that this issue recently came into focus is not credible.

## CONCLUSION

For all of the above stated reasons, the Trustee and his counsel respectfully request that the Court enter an Order prohibiting Crowley from deposing the Trustee's trial counsel, Wilbur L. Kipnes and Barry E. Bressler.

Respectfully submitted,

Dated: April 13, 2007

/s/ Michael J. Barrie
Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)
SCHNADER HARRISON SEGAL & LEWIS LLP
824 Market Street Mall, Suite 1001
Wilmington, DE 19801

15

(302) 888-4554 (telephone)
(302) 888-1696 (telecopier)
mbarrie@schnader.com

OF COUNSEL:

Nancy Winkelman (*pro hac vice admission pending*)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2400 (telephone)
(215) 751-2205 (facsimile)

*Counsel to Plaintiff,*
*Arlin M. Adams, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORP. and CORAM, INC.*