# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>DANIEL D. CROWLEY, DONALD J. AMARAL, WILLIAM J. CASEY, L. PETER SMITH, AND SANDRA L. SOMELY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 04-1565 |

## APPENDIX OF DOCUMENTS IN SUPPORT OF DEFENDANT DANIEL D. CROWLEY'S OPENING BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT (PART 1)

Jeffrey C. Wisler (No. 2795)
Christina M. Thompson (No. 3976)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141

-and-

Elliot R. Peters
R. James Slaughter
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

Dated: April 17, 2007                    *Attorneys for Daniel D. Crowley*

## **TABLE OF CONTENTS**

| **Document Description** | **Page** |
|---|---|
| Chapter 11 Trustee's Answers to Defendant Daniel D. Crowley's First Set of Interrogatories to Plaintiff Arlin M. Adams served 12/20/06 | A1 |
| Chapter 11 Trustee's Answers to Defendant Daniel D. Crowley's Second Set of Interrogatories to Plaintiff Arlin M. Adams served 3/27/07 | A18 |
| Certificate of Incorporation of CHM Holding Corporation dated 11/30/93 | A30 |
| Minutes of 4/22/99 Coram Board of Directors Meeting | A41 |
| S.E.C. Form 10-Q for period ending 6/30/99 | A53 |
| Letter dated 8/9/99 from Crowley to Feinberg | A82 |
| Minutes of 9/4/99 Coram Board of Directors Meeting | A86 |
| Deutsche Bank Engagement letter dated 9/16/99 | A88 |
| Minutes of 9/17/99 Coram Board of Directors Meeting | A95 |
| Letter dated 9/23/99 from Herrera to Kopta attaching Crowley/Coram Consultant Agreement | A98 |
| Minutes of 10/27/99 Coram Board of Directors Meeting | A113 |
| Letter dated 10/29/99 from Crowley to Amaral | A115 |
| Memorandum dated 11/2/99 titled "Coram Healthcare- Overview for Board of Directors" | A116 |
| S.E.C. Form 10-Q for period ending 9/30/99 | A118 |
| Letter dated 11/16/99 from Crowley to Feinberg | A173 |
| Letter dated 11/19/99 from Neporent attaching Crowley/Cerberus Employment Agreement | A177 |
| Crowley/Coram Employment Agreement (Amendment No. 1 also attached) dated 11/30/99 | A197 |
| Letter dated 12/7/99 from Crowley to Kahn and Coram Board of Directors | A209 |

| **Document Description** | **Page** |
| --- | --- |
| Fax dated 12/20/99 from Danitz to Crowley re: Board package Budget 2000 | A215 |
| Minutes of 12/21/99 Coram Board of Directors Meeting | A219 |
| Minutes of 2/10/00 Coram Board of Directors Meeting | A231 |
| Memorandum dated 2/11/00 from Stribling to Crowley, et al. re February 15, 2000 meeting | A235 |
| Letter dated 3/3/00 from CVS ProCare re bid | A299 |
| Minutes of 3/9/00 Coram Board of Directors Meeting | A302 |
| Letter dated 3/14/00 from Crowley to Coram Board of Directors | A305 |
| Minutes of 4/5/00 Coram Board of Directors Meeting | A315 |
| Second Amendment to Crowley/Coram Employment Agreement dated 4/6/00 | A324 |
| Minutes of 5/1700 Coram Board of Directors Meeting | A329 |
| Letter dated 6/1/00 from Levy to Crowley | A337 |
| Minutes of 6/7/00 Coram Board of Directors Meeting | A338 |
| Minutes of 6/9/00 Coram Board of Directors Meeting | A341 |
| Presentation titled "Project Caddy" dated 6/9/00 | A346 |
| Letter dated 6/9/00 from Deutsche Bank AlexBrown re fairness opinion | A370 |
| S.E.C. Schedule 13-D filed on 7/27/00 | A372 |
| Excerpts of Strategic Alternatives Presentation dated 7/31/00 | A426 |
| Chanin Valuation Report dated 7/31/00 | A433 |

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, as Chapter 11 Trustee of :    Case No. 04-1565(SLR)
the Bankruptcy Estates of Coram Healthcare :    (Jointly Administered)
Corp., a Delaware Corporation, and Coram, :
Inc., a Delaware Corporation, :
:
         Plaintiff, :
:
v. :
:
DANIEL D. CROWLEY, :
:
         Defendant. :

---

### THE CHAPTER 11 TRUSTEE'S ANSWERS TO DEFENDANT DANIEL D. CROWLEY'S FIRST SET OF INTERROGATORIES TO PLAINTIFF ARLIN M. ADAMS

---

Plaintiff Arlin M. Adams, the Chapter 11 Trustee (the "Trustee") of the

Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc. (collectively, "Coram"), hereby

responds to Defendant Daniel D. Crowley's ("Crowley") First Set of Interrogatories to Plaintiff

Arlin M. Adams, as follows:

#### GENERAL OBJECTIONS

The Trustee asserts the following general objections, all of which are incorporated

in his specific responses:

1.      The Trustee objects to each interrogatory, definition and instruction, to the

extent that it seeks to impose an obligation or burden beyond that required by the Federal Rules

of Civil Procedure.

CHDATA 38155_1

**A1**

2.    The Trustee objects to each interrogatory to the extent that it seeks information subject to the attorney client privilege, or the work product doctrine, or any other privilege or doctrine which precludes discovery.

3.    The Trustee objects to each interrogatory to the extent that responding would impose an undue burden on the Trustee.

4.    The Trustee objects to each interrogatory to the extent that the information requested is equally available to Crowley.

5.    The Trustee objects to each interrogatory to the extent it seeks information not relevant to this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

## **PRESERVATION OF RIGHTS**

The Trustee's responses do not waive and do not intend to waive but, on the contrary, preserve and intend to preserve:

1.    All objections as to competency, relevancy, materiality, privilege and admissibility for any purpose in any subsequent proceeding or the trial of this or any other actions;

2.    The right to object on any ground to the use of any of these responses, or the subject matter thereof, in any subsequent proceeding or trial of this or any other actions;

3.    The right to object at any time to a demand for further responses to these or any other discovery requests involving or relating to the subject matter of these interrogatories; and

4.    The right at any time to revise, correct, supplement, clarify or amend the answers and responses set forth herein.

2

CHDATA 38155_1

**A2**

## RESPONSES TO INTERROGATORIES

1. Identify and describe each act or omission by Crowley that forms the basis for your allegations that Crowley had a conflict of interest with Coram.

**SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 1 on the grounds that it contains undefined terms, is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe every act Crowley undertook or failed to undertake over a several-year period that underlies the Trustee's allegations that he had a conflict of interest. Subject to these objections, the Trustee will provide a combined response to Interrogatories 1 through 4.

2. Identify and describe each act or omission by Crowley that forms the basis for your allegations that Crowley breached his duty to Coram to act in good faith.

**SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 2 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe every act Crowley undertook or failed to undertake over a several-year period that underlies the Trustee's allegations that he breached his duty to Coram to act in good faith. Subject to these objections, the Trustee will provide a combined response to Interrogatories 1 through 4.

3. Identify and describe each act or omission by Crowley that forms the basis for your allegations that Crowley breached his duty to Coram to act with due care.

**SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 3 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to

CHDATA 38155_1

**A3**

identify and describe every act Crowley undertook or failed to undertake over a several-year period that underlies the Trustee's allegations that he breached his duty to Coram to act with due care. Subject to these objections, the Trustee will provide a combined response to Interrogatories 1 through 4.

4.    Identify and describe each act or omission by Crowley that forms the basis for your allegations that Crowley breached his duty of loyalty to Coram.

SPECIFIC OBJECTIONS: The Trustee objects to Interrogatory No. 4 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe every act Crowley undertook or failed to undertake over a several-year period that underlies the Trustee's allegations that he had a breached his duty of loyalty to Coram. Subject to these objections, the Trustee will provide a combined response to Interrogatories 1 through 4.

COMBINED RESPONSE TO INTERROGATORIES 1 THROUGH 4:

Subject to and without waiving the foregoing objections, the Trustee responds to Interrogatories 1 through 4 by setting forth this summary of facts, which form the basis of his allegations that Crowley had a conflict of interest and breached the triad of fiduciary duties that he owed to Coram as an officer and director:

From approximately 1997 on, Cerberus Partners, L.P. ("Cerberus"), together with Goldman Sachs Credit Partners L.P., and Wells Fargo Foothill (collectively, the "Noteholders"), owned substantially all of Coram's debt. Cerberus is a major investor in the debt of numerous distressed companies; it alone held approximately 36% of Coram's debt. The chairman of

4                    CHDATA 38155_1

**A4**

Cerberus, Stephen Feinberg ("Feinberg"), sat on Coram's Board from 1998 until July 2000, shortly before Coram filed for bankruptcy. Cerberus maintained a "bench" of CEO consultants, who were available to work for Cerberus with troubled companies on a project-by-project basis.

In early 1999, Cerberus retained Crowley as a turnaround consultant. In July 1999, Crowley and Cerberus entered into an oral agreement under which Crowley agreed to work exclusively for Cerberus for three years at a salary of $80,000 per month plus expenses, with the possibility of substantial bonuses.

In August 1999, after Crowley and Cerberus had entered into their oral agreement Feinberg recommended to Coram's Board of Directors (the "Board") that it hire Crowley as a consultant to work with Coram's newly-elevated CEO, Richard Smith ("Smith"). Feinberg disclosed to the directors that Crowley had a relationship with Cerberus, but provided no information about that relationship.

After Smith left Coram in October 1999, Crowley wrote to Coram Chairman Donald Amaral ("Amaral"), on October 26, 1999. In that letter, Crowley stated that he and Smith had a "six(6) month crisis management contract in place," and that he "would like to help you [Amaral] with this project and begin the restructuring process." Crowley and Amaral began negotiations on an employment agreement no later than early November 1999.

At the same time as he was negotiating with Amaral to be Coram's CEO, Crowley sent a "Personal & Confidential" letter dated November 12, 1999 to Feinberg stating that "[y]ou [Feinberg]have asked me to take over the Coram operations" and requesting additional compensation from Cerberus to induce him to become CEO of Coram.

5

The Noteholders offered Coram a six-month interest accrual holiday if Crowley was hired as CEO. On November 15, 1999, Amaral and the Noteholders agreed on the terms of the interest forbearance agreement.

On November 17, 1999, the Board approved a three-year employment agreement with Crowley, which he signed the next day (the "Crowley/Coram Employment Agreement"). The Crowley/Coram Employment Agreement provided for a base salary of $650,000, benefits, potential bonuses of between $390,000 and $1,950,000 depending on Coram's EBITDA, a minimum 24-month severance period, options to purchase one million shares of Coram stock at then market rates, and an acquisition bonus upon change in control.

The day after he signed the Crowley/Coram Employment Agreement, Crowley executed a written employment agreement with Cerberus, effective August 1, 1999, which memorialized the terms of their July oral agreement (the "Crowley/Cerberus Employment Agreement"). The Crowley/Cerberus Employment Agreement required Crowley to devote "his entire business time, attention, skill and energy exclusively to the business of [Cerberus]" by performing duties to be assigned by Feinberg. The Crowley/Cerberus Employment Agreement also provided that Cerberus could terminate Crowley for cause if Crowley did not follow Cerberus' reasonable instructions. Neither Crowley nor Feinberg disclosed to the Board the existence or terms of the Crowley/Cerberus Employment Agreement.

Coram's corporate policy provided that actual conflicts of interest must be avoided and that any action creating a potential conflict of interest must be disclosed and approved in advance. Crowley failed to seek Board approval of his employment contract with Cerberus.

6

CHDATA 38155_1

**A6**

Crowley signed the management letter to Coram's outside auditors for the year ending December 31, 1999, in which he stated that "[t]here are no instances where any officer or employee of [Coram] has an interest in a company, with which [Coram] does business that would be considered a 'conflict of interest,' that has not been disclosed or waived. Such an interest would be contrary to [Coram] policy."

Coram retained Crowley's wholly-owned consulting company, Dynamic ("Dynamic") Health Care Solutions, L.L.C. ("Dynamic"), to act as a consultant to Coram, which paid fees to Dynamic in excess of $1 million.

On February 28, 2000, Crowley wrote to the Board and demanded additional compensation from Coram, claiming that he was working 19-hour days, and that "Coram will take longer, involve more, and will need me to stay 'on task' for much longer than we envisioned when I said 'Yes.'" Crowley did not disclose to the Board that while he was allegedly working 19-hour days for Coram, Cerberus was paying him $80,000 per month.

In response to Crowley's demand for additional compensation from Coram, Feinberg and Crowley negotiated an amendment to the Crowley/Coram Employment Agreement with Coram, which was executed as of April 6, 2000. The amendment provided a new bonus structure that was far greater than the maximum $1.9 million bonus for which Crowley was eligible under the employment agreement that he had signed just four months earlier. Under the new arrangement, Crowley could claim a bonus of up to 25% of the amount by which Coram's EBITDA for 2000 exceeded $14 million and an additional $5 million bonus if EBITDA exceeded $35 million.

CHDATA 38155_1

At the time Crowley and Feinberg were negotiating the amendment to the Crowley/Coram Employment Agreement, Crowley anticipated that Coram would be restructured by filing a bankruptcy petition under Chapter 11 with a proposed plan of reorganization that would eliminate the public shareholders without any payment to them. Nevertheless, between November 30, 1999 and July 31, 2000, Crowley caused Coram to pay the Noteholders approximately $60 million. These payments included: (a) much of the proceeds from Coram's July 2000 sale of its specialty pharmacy division, Coram Prescription Services ("CPS") (nearly $40 million); and (b) an additional $6.3 million payment that Crowley made to the Noteholders just three weeks before Coram declared bankruptcy.

Although the CPS division was losing a small amount of money, it had excellent long-term profit potential. CPS had been valued in excess of $100 million by Coram's investment bankers, but was sold for approximately $40 million.

On August 8, 2000, Coram filed a Chapter 11 petition in the U.S. Bankruptcy Court for the District of Delaware, together with a proposed plan of reorganization (the "First Plan"). The First Plan provided for the cancellation of all of the shareholders' interests and for the issuance of all of the new Coram stock to the Noteholders. Coram's other unsecured creditors would receive $2 million and Coram's shareholders would receive nothing.

On October 18, 2000, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") to represent the interests of Coram's common shareholders. The Equity Committee obtained the Crowley/Cerberus Employment Agreement and other documents in discovery in connection with the First Plan, which the Equity Committee opposed.

CHDATA 38155_1

During the confirmation hearing, Crowley testified that the Crowley/Cerberus Employment Agreement -- which provided for payments significantly greater than did his agreement with Coram -- had nothing to do with Coram. The Court did not find Crowley's position credible. Rather, on December 21, 2000, the Bankruptcy Court denied confirmation, holding that Coram had not proposed its reorganization plan in good faith as required under the Bankruptcy Code. In its oral ruling, the Bankruptcy Court explained that it could not confirm the plan because Crowley "had an actual conflict of interest" by virtue of his contractual relationship with Cerberus. Op. 12/21/00, at 89. The Bankruptcy Court found that that actual conflict of interest "tainted the debtors' restructuring of its debt, the debtors' negotiations towards a plan, even the debtors' restructuring of its operations." *Id.* at 88. As a result of Crowley's relationship with Cerberus, Coram did not emerge from bankruptcy in December 2000.

Despite the Bankruptcy Court's ruling, Crowley did not terminate his relationship with Cerberus. In fact, Crowley continued to be paid $80,000 per month by Cerberus throughout 2001.

The Board formed a Special Committee, which retained Harrison J. Goldin Associates, L.L.C. ("Goldin"), as a restructuring advisor. In a report of its investigation, Goldin concluded that Crowley should have disclosed the full extent of his employment agreement with Cerberus and that his failure to do so was a breach of his fiduciary duties to Coram. Goldin also concluded that Crowley had advanced Cerberus' interests at Coram's expense by making cash payments to the Noteholders prior to Coram's filing for bankruptcy. In addition, Goldin determined that, as of the date of his report, Crowley's conflict had caused Coram to incur at least $12 to $15 million in business losses and professional fees in the bankruptcy proceedings.

9

Coram based its second proposed plan of reorganization (the "Second Plan") on Goldin's report. The Second Plan again provided for the cancellation of all shareholders' interests and for the issuance of new Coram stock to the Noteholders, including Cerberus. Coram's shareholders would receive $10 million if they voted to approve the plan. Coram's other unsecured creditors would receive $3 million, amounting to less than 40% of their claims. In addition, the Second Plan provided that Crowley's compensation be reduced by $7.5 million as recommended by Goldin.

During the confirmation hearing on the Second Plan, Crowley testified that Cerberus was not paying him for his work at Coram, but instead for his work on non-Coram matters. Again, the Bankruptcy Court rejected Crowley's testimony as not credible. Op. 12/21/01, at 16-17.

On December 21, 2001, the Bankruptcy Court issued a written opinion denying confirmation. The Bankruptcy Court concluded that Crowley's agreement with Cerberus continued to present an actual conflict of interest. As the Bankruptcy Court put it, "[n]othing, in fact, has changed since the first confirmation hearing." Op.12/21/01, at 13. The Bankruptcy Court explained that:

> Crowley's actual conflict of interest goes beyond the mere appearance of impropriety. Crowley cannot serve the interests of both the Debtors and a large creditor, Cerberus. Under the Consulting Agreement, Cerberus has the discretion to fire Crowley if he fails to follow its instructions, resulting in the loss of $1 million per year in compensation to Crowley. That control over Crowley, and indirectly the Debtors, is simply not proper.

10                                      CHDATA 38155_1

**A10**

Op. 12/21/01, at 15.  The Bankruptcy Court concluded that "the conflict in this case transcends every single thing Crowley does on behalf of the Debtors."  Op. 12/21/01, at 24.  As a result of Crowley's relationship with Cerberus, Coram did not emerge from bankruptcy in December 2001.

Following the rejection of the Second Plan, the Bankruptcy Court entered an order appointing the plaintiff Arlin M. Adams as Coram's Chapter 11 Trustee.  Shortly after his appointment, the Trustee reviewed the Bankruptcy Court's two opinions denying confirmation of each of Coram's proposed plans of reorganization.  As a result, the Trustee required that Crowley have no continuing conflict of interest and that he not receive any further compensation from Cerberus.  The Trustee elected to continue Crowley's employment with Coram only after Crowley explicitly represented to the Trustee that he that he was no longer receiving any compensation from Cerberus.

Crowley's employment agreement with Coram expired on November 26, 2002.  Because the Trustee was concerned that terminating Crowley could possibly lead to substantial departures of key employees, thereby endangering Coram's ability to promptly reorganize, the Trustee filed a motion to extend his employment for a limited transition period (as well as a motion to reject his employment agreement).  The Equity Committee opposed the Trustee's motion and filed a motion to immediately terminate Crowley's employment.

In the course of discovery on the motions, Crowley produced documents that made clear that his prior representations to the Trustee were false.  These documents showed that Crowley was in fact continuing to ask Cerberus for millions of dollars to be paid after the confirmation, when neither he nor Coram would be under the jurisdiction of the Bankruptcy

11                                                          CHDATA 38155_1

**A11**

Court.   Specifically, an insert to a draft letter to Feinberg dated May 2, 2002 states: "I expect that you'll honor the commitment you made to me over dinner:  after Coram's plan is confirmed or its assets sold, I'll be reinstated with Cerberus and receive $5,000,000 from Cerberus.  Also, Cerberus will indemnify me for all of my legal fees, plus pay me the difference between what I ultimately receive from Coram by way of bonuses, and $11,200,000."  In another part of the letter, Crowley stated that he "didn't have to recite the answers that [Coram's bankruptcy lawyer] gave [him] to say in Court."

The Bankruptcy Court denied the Trustee's motion to extend Crowley's employment and rejected Crowley's testimony, stating that "I do not believe he is honest."  Tr. 3/3/03, at 195.  Referring to the draft letter from Crowley to Feinberg, the Bankruptcy Court concluded that the letter "after the appointment of the Trustee, continue[s] to show what I believe is a continuation of Mr. Crowley's continued efforts to continue to get reimbursement from Cerberus for efforts undertaken in this case."  *Id.* at 196.  Crowley resigned from Coram effective March 31, 2003.

The Trustee thereafter proposed a reorganization plan, as did the Equity Committee.   Following extensive discovery and a lengthy confirmation hearing, in October 2004, the Bankruptcy Court confirmed the Trustee's Plan and rejected the Equity Committee's Plan.  *See In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del 2004).

The Trustee reserves his right to amend or supplement his response as discovery continues.

12                                CHDATA 38155_1

**A12**

5.    Identify and describe any harm or damage to Coram caused by each act or omission by Crowley identified in response to Interrogatory No. 1, including but not limited to any valuation of any such harm or damage.

**SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 5 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe the harm or damage resulting from every act Crowley undertook or failed to undertake over a several-year period. Subject to these objections, the Trustee will provide a combined response to Interrogatories 5 through 8.

6.    Identify and describe any harm or damage to Coram caused by each act or omission by Crowley identified in response to Interrogatory No. 2 including but not limited to any valuation of any such harm or damage.

**SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 6 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe the harm or damage resulting from every act Crowley undertook or failed to undertake over a several-year period. Subject to these objections, the Trustee will provide a combined response to Interrogatories 5 through 8.

7.    Identify and describe any harm or damage to Coram caused by each act or omission by Crowley identified in response to Interrogatory No. 3 including but not limited to any valuation of any such harm or damage.

**SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 7 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to

13

CHDATA 38155_1

**A13**

identify and describe the harm or damage resulting from every act Crowley undertook or failed to undertake over a several-year period. Subject to these objections, the Trustee will provide a combined response to Interrogatories 5 through 8.

8.    Identify and describe any harm or damage to Coram caused by each act or omission by Crowley identified in response to Interrogatory No. 4, including but not limited to any valuation of any such harm or damage.

**SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 8 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe the harm or damage resulting from every act Crowley undertook or failed to undertake over a several-year period.

**COMBINED RESPONSE TO INTERROGATORIES 1 THROUGH 8:**

Subject to and without waiving the foregoing objections, the Trustee states that Coram's emergence from bankruptcy was delayed as a result of Crowley's conflict of interest and his breaches of his fiduciary duties, causing Coram to suffer damages. Coram incurred reorganization costs in excess of $36 million directly attributable to the delay in Coram's emergence from bankruptcy. Coram also sustained business losses as a result of remaining in bankruptcy. The calculation of such damages will be provided in expert report(s), which will be served in accordance with the current scheduling order, unless amended.

The sale of CPS deprived Coram of the increase in value CPS enjoyed following the sale. CPS was sold to a management-led buy out group for $40 million and was sold three years later for $335 million.

14

Coram is also entitled to disgorgement of the compensation that it paid Crowley

while he served as a conflicted CEO.

The Trustee reserves his right to amend or supplement his answer to this

interrogatory as discovery continues.

As to objections:

Dated: December 20, 2006

SCHNADER HARRISON SEGAL
& LEWIS LLP

By: /s/ Richard A. Barkasy
Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)
824 Market Street Mall, Suite 1001
Wilmington, DE 19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)

-and-

Wilbur L. Kipnes
Barry E. Bressler
1600 Market Street, Suite 3600
Philadelphia, PA 19103-7286
(215) 751-2000 (telephone)
(215) 751-2205 (facsimile)

Counsel to Arlin M. Adams,
Chapter 11 Trustee

15

CHDATA 38155_1

**A15**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARLIN M. ADAMS, as Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corp., a Delaware Corporation, and Coram, Inc., a Delaware Corporation, | : : : : | Case No. 04-1565(SLR) (Jointly Administered) |
| Plaintiff, | : : | |
| v. | : : | |
| DANIEL D. CROWLEY, | : : | |
| Defendant. | : : | |

### CERTIFICATE OF SERVICE

I, Michael J. Barrie, certify that I am not less than 18 years of age and that service of the **Chapter 11 Trustee's Answers to Defendant Daniel D. Crowley's First Set of Interrogatories to Plaintiff Arlin M. Adams**, was made on December 20, 2006 upon the persons listed below via Electronic Mail and United States First Class Mail.

I certify the foregoing to be true and correct under penalty of perjury.

/s/ Michael J. Barrie
Michael J. Barrie

Dated: December 20, 2006

### Parties Served:

Jeffrey C. Wisler, Esquire
Christina M. Thompson, Esquire
1007 N. Orange St., P.O. Box 2207
Wilmington, DE 19899
Email: jwisler@cblh.com
Email: cthompson@cblh.com

Elliot R. Peters, Esquire
Garrett A. Lynch, Esquire
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
Email: epeters@kvn.com
Email: glynch@kvn.com

16

CHDATA 38155_1

## **CERTIFICATION**

I hereby certify that the facts set forth in the foregoing interrogatory answers are true and correct to the best of my knowledge, information and belief.

_Arlin M. Adams_
Arlin M. Adams, Ch. 11 Trustee

Dated: December 20, 2006

17

CHDATA 38155_1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARLIN M. ADAMS, as Chapter 11 Trustee of The Bankruptcy Estates of Coram Healthcare Corp., a Delaware Corporation, and Coram, Inc., a Delaware Corporation, | : : : : | Case No. 04-1565 (SLR) (Jointly Administered) |
| Plaintiff, | : | |
| v. | : : | |
| DANIEL D. CROWLEY, | : : | |
| Defendant. | : | |

## THE CHAPTER 11 TRUSTEE'S ANSWERS TO DEFENDANT DANIEL D. CROWLEY'S SECOND SET OF INTERROGATORIES TO PLAINTIFF ARLIN M. ADAMS

Plaintiff Arlin M. Adams, the Chapter 11 Trustee (the "Trustee") of the Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc. (collectively, "Coram"), hereby responds to Defendant Daniel D. Crowley's ("Crowley") Second Set of Interrogatories to Plaintiff Arlin M. Adams, as follows:

### GENERAL OBJECTIONS

The Trustee asserts the following general objections, all of which are incorporated in his specific responses:

1.      The Trustee objects to each interrogatory, definition and instruction, to the extent that it seeks to impose an obligation or burden beyond that required by the Federal Rules of Civil Procedure.

2.      The Trustee objects to each interrogatory to the extent that it seeks information subject to the attorney client privilege, or the work product doctrine, or any other privilege or doctrine which precludes discovery.

3.      The Trustee objects to each interrogatory to the extent that responding would impose an undue burden on the Trustee.

4.    The Trustee objects to each interrogatory to the extent that the information requested is equally available to Crowley.

5.    The Trustee objects to each interrogatory to the extent it seeks information not relevant to this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

6.    The Trustee objects to each interrogatory to the extent that it is duplicative of interrogatories contained in Crowley's First Set of Interrogatories.

## PRESERVATION OF RIGHTS

The Trustee's responses do not waive and do not intend to waive but, on the contrary, preserve and intend to preserve:

1.    All objections as to competency, relevancy, materiality, privilege and admissibility for any purpose in any subsequent proceeding or the trial of this or any other actions;

2.    The right to object on any ground to the use of any of these responses, or the subject matter thereof, in any subsequent proceeding or trial of this or any other actions;

3.    The right to object at any time to a demand for further responses to these or any other discovery requests involving or relating to the subject matter of these interrogatories; and

4.    The right at any time to revise, correct, supplement, clarify or amend the answers and responses set forth herein.

## RESPONSES TO INTERROGATORIES

1.    Do you agree that Coram's original proposed plan of reorganization, submitted on or about August 8, 2000, was fair to both the debtholders and shareholders of Coram? If not, please identify all documents and describe all facts that serve as a basis for your disagreement.
**Response:**

The Trustee objects to Interrogatory No. 1 on the grounds that it contains undefined terms and is vague and ambiguous. Subject to this objection, the Trustee does not agree that the original plan of reorganization as proposed by Coram while Daniel Crowley ("Crowley") was its Chairman and CEO was "fair" to the "debtholders" and shareholders of

2

Coram because the Bankruptcy Court determined that the plan was not submitted in good faith in accordance with 11 U.S.C. 1129 (a)(3). The Bankruptcy Court found that Crowley's employment agreement with Cerberus created an actual conflict of interest on his part that "tainted the Debtors' restructuring of its debt, the Debtors' negotiations towards a plan, even the Debtors' restructuring of its operations." (12/21/00 Tr. at 88). By way of further response, the Trustee states that it is his position that the proposed plan would have been confirmed if Mr. Crowley did not have a conflict of interest.

2.    Do you agree with the conclusion of Goldin Associates, L.L.C. at page 11 of the Goldin Report that "Other than the $6.3 million interest payment – which, as it turned out, did not cause the company any harm – there is no evidence suggesting that had he had no conflict Crowley would have managed Coram's operations or finances more effectively or that he would have identified (let alone consummated) any merger, sale or financing transaction that might have enabled Coram to avoid bankruptcy"? If not, please identify all documents and describe all facts that serve as a basis for your disagreement.

**Response:**

The Trustee objects to Interrogatory No. 2 on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Subject to this objection, the Trustee states that he does not agree with the conclusions of Goldin Associates, LLC ("Goldin") at page 11 of the Goldin Report, which were rejected by the Bankruptcy Court in its December 21, 2001 Opinion. The Bankruptcy Court found, *inter alia*, that Crowley's conflict "transcends every single thing that Crowley does on behalf of the Debtors" and that "given the actual conflict of interest which the Debtors' CEO has, we are unable to conclude that any action taken by the Debtors which may impact on the rights of Cerberus were taken without any undue consideration of the interests of Cerberus." (12/21/01 Opinion at 18; 24). The plainly improper $6.3 million interest payment, shortly before filing bankruptcy, reflects a mind set to pay the Noteholders without any consideration of other constituencies such as general unsecured creditors and common shareholders. The record in this case consists of thousands of pages of testimony and hundreds of thousands of pages of documents, and it would be unduly burdensome, expensive and time-consuming to identify every document and every fact that supports the assertion that the conflict influenced Crowley's management of Coram. The Bankruptcy Court's December 21, 2001

3

CHDATA 39006_2

opinion states the Trustee's position. By way of further answer, the Trustee incorporates by reference his Combined Response to Interrogatories 1 through 4 of Crowley's first set of interrogatories.

3.    Do you agree with the conclusion of Goldin Associates, L.L.C. at page 11 of the Goldin Report that "the 6.3 million cash interest payment to the Noteholders...turned out...not to cause Coram any harm"? If not, please identify all documents and describe all facts that serve as a basis for your disagreement.

**Response:**

The Trustee objects to Interrogatory No. 3 on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Subject to this objection, the Bankruptcy Court rejected Goldin's conclusion, finding as follows: "Furthermore, although Mr. Goldin concluded that the $6.3 Million payment to the Noteholders on the eve of bankruptcy did not Cause harm to the Debtors, we disagree. All responsible advisors to companies contemplating a bankruptcy filing recommend that cash be conserved (not spent) on the eve of bankruptcy. Having cash gives the debtor the ability to continue to operate and a position of strength in negotiations with creditors. That position of strength was eroded by Crowley's directing the Debtors to pay the Noteholders in cash, when they could have paid in Notes." (12/21/01 Opinion at 19). The Trustee also incorporates his response to Interrogatory 2 above.

4.    Do you deny that Mr. Crowley was uninvolved and had no decision-making authority with regard to the proposing and filing of Coram's Second Plan of Reorganization on July 31, 2001? If so, please describe the basis for your denial.

**Response:**

The Trustee objects to Interrogatory No. 4 on the grounds that it contains undefined terms and is vague and ambiguous. Subject to this objection, the Trustee denies that Crowley was "uninvolved" and had "no decision-making authority" with regard to the proposing and filing of Coram's Second Plan of Reorganization (the "Second Plan"). Crowley was an important part of Coram's Second Plan. The Second Plan called for Crowley to remain employed as Coram's Chairman and CEO while he continued to receive a base salary of $80,000 per month from Cerberus. Crowley's decision to continue his employment agreements with both

CHDATA 39006_2

Coram and Cerberus dictated the terms of the Plan. Had Crowley resigned from Coram or severed his relationship with Cerberus, the terms of the Plan would have been different. The Second Plan also reflected an agreement between Coram and Crowley for a reduction in Crowley's claimed bonus compensation.

5.    Describe the basis for your decision to retain Mr. Crowley as CEO of Coram after you were appointed as Chapter 11 Trustee of Coram.

**Response:**

The Trustee objects to Interrogatory No. 5 on the grounds that it is overly broad, vague and ambiguous. Subject to this objection, the Trustee incorporates by reference his Combined Response to Interrogatories 1 through 4 of Crowley's first set of interrogatories and his deposition and hearing testimony during Coram's Chapter 11 bankruptcy case.

6.    Identify all documents and describe all facts supporting your contention in your responses to Mr. Crowley's First Set of Interrogatories that "The Noteholders offered Coram a six-month interest accrual holiday if Crowley was hired as CEO."

**Response:**

The Trustee objects to Interrogatory No. 6 on the grounds that it is overly broad, vague and ambiguous. Subject to this objection, the Trustee's contention is supported by the timing of the execution of the agreements. The forbearance agreement is dated November 15, 1999 and Crowley's employment contract with Coram was signed on November 18, 1999. Further supporting the Trustee's contention are the statements in the Goldin report that: (1) Rick Smith was told that the Noteholders would agree to forgive $11 million in debt if the board brought Crowley in to run the company as co-CEO; and (2) then director Richard Fink recalled that the interest/accrual holiday was conditioned upon Crowley taking over.

7.    Do you agree with the conclusion of Goldin Associates, L.L.C. at page 107 of the Goldin Report that "Coram had no alternative but to use the CPS sale proceeds to pay down the revolver in full and to partially pay down the Series A Notes"? If not, please identify all documents and describe all facts that serve as a basis for your disagreement.

5

CHDATA 39006_2

**Response:**

The Trustee objects to Interrogatory No. 7 on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Subject to this objection, the Trustee does not agree with Goldin's conclusion that Coram had no alternative but to use the CPS sale proceeds to pay down the revolver in full and to partially pay down the Series A Notes. Coram had a number of other options, including, but not limited to the following: (1) declining to sell CPS; (2) conditioning the sale of CPS on the Noteholders' consent to Coram's use of all or a portion of the proceeds for other purposes; (3) sale of less than 100% of CPS or the sale of CPS with retention of an equity or upside interest; and (4) completing the sale of CPS in its Chapter 11 proceeding, which it filed a week later.

8.      Do you agree with the June 9, 2000 conclusion of Coram's investment bankers Deutsche Bank Alex Brown that the CPS sale was a fair transaction for Coram from a financial perspective? If not, please identify all documents and describe all facts that serve as a basis for your disagreement.

**Response:**

The Trustee objects to Interrogatory No. 8 on the grounds that it contains undefined terms, is overly broad, unduly burdensome vague and ambiguous. Whether the transaction was "fair" from a financial point of view means only that the sales price fell within the very broad range of values generated by the investment bankers. A fairness opinion suggests only that the sales price was above the lowest value generated by the three valuation methodologies, with a major component (the projections) having been provided by Coram. Coram's investment bankers did not state that the transaction was wise or that it fairly balanced the competing interests of Coram's various constituencies.

9.      Identify all documents and describe all facts supporting your contention in your responses to Mr. Crowley's First Set of Interrogatories that the harm caused by Mr. Crowley's alleged breach of fiduciary duties includes "[t]he sale of CPS deprive[ing] Coram of the increase in value CPS enjoyed following the sale."

CHDATA 39006_2

**Response:**

The Trustee objects to Interrogatory No. 9 on the grounds that it is overly broad, unduly burdensome and duplicative of interrogatories contained in Crowley's First Set of Interrogatories. Subject to this objection, the Trustee incorporates by reference his Combined Response to Interrogatories 5 through 8 of Crowley's First Set of Interrogatories. Mr. Crowley was under no obligation to sell CPS. A non-conflicted CEO who did not have a mindset of paying the Noteholders would not have sold a specialty pharmacy company with tremendous growth potential at a time when the market for the sale of health care companies was depressed and before CPS had the opportunity to demonstrate that its growth projections were accurate.

10. Do you deny that Crowley and the Board of Directors exercised business judgment in selling Coram Prescription Services? If so, please describe the basis for your denial.

**Response:**

The Trustee objects to Interrogatory No. 10 on the grounds that it contains undefined terms and is vague and ambiguous. The Trustee admits that Coram's conflicted CEO and grossly negligent Board made a "business judgment" to sell CPS.

11. Identify and describe any fact, relationship, communication, document or contract that you contend Mr. Crowley failed adequately to disclose to Coram's Board of Directors.

**Response:**

The Trustee objects to Interrogatory No. 11 on the grounds that it is overly broad, unduly burdensome, vague, ambiguous and duplicative of interrogatories contained in Crowley's First Set of Interrogatories. Subject to this objection, the Trustee incorporates by reference his Combined Response to Interrogatories 1 through 4 of Crowley's first set of interrogatories.

12. Identify and describe any fact, relationship, communication, document or contract that you contend Mr. Crowley failed adequately to disclose to Coram's bankruptcy counsel.

**Response:**

The Trustee objects to Interrogatory No. 12 on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Subject to this objection, as David Friedman

7

CHDATA 39006_2

testified during his deposition in this matter, Crowley failed to disclose to Coram's bankruptcy counsel the nature and terms of his employment agreement with Cerberus.

13.    Identify all documents and describe all facts supporting your contention that Mr. Crowley's acts or omissions, rather than those of others including but not limited to the independent board members of Coram, Goldin Associates, L.L.C. and counsel for Coram, caused Coram not to emerge from bankruptcy in December 2001.

**Response:**

The Trustee objects to Interrogatory No. 13 on the grounds that it is overly broad, unduly burdensome, vague and ambiguous. Subject to this objection, the Bankruptcy Court determined that Crowley's continuing conflict of interest precluded Coram from proposing its second plan in good faith as required by 11 U.S.C. 1129 (a)(3). Crowley should have eliminated the continuing conflict by resigning from Coram or by severing his relationship with Cerberus. Goldin Associates did not consider the continuing conflict; the independent Board members were grossly negligent and conflicted and breached their own fiduciary duties; and Coram's bankruptcy counsel testified that Mr. Crowley made clear that he was not resigning from Cerberus. Mr. Crowley was Chairman and CEO of Coram at the time and it was his responsibility to eliminate the conflict.

14.    Identify all documents and describe all facts supporting your contention that "Coram incurred reorganization costs in excess of $36 million directly attributable to the delay in Coram's emergence from bankruptcy." In particular, identify each such cost or expense and describe its nature, when it was incurred, and when it was paid.

**Response:**

The Trustee objects to Interrogatory No. 14 on the grounds that it is overly broad, unduly burdensome, vague, ambiguous and duplicative of interrogatories contained in Crowley's First Set of Interrogatories. Subject to this objection, the Trustee incorporates by reference his Combined Response to Interrogatories 5 through 8 of Crowley's First Set of Interrogatories. The reorganization costs incurred by Coram are set forth in fee applications filed with the Bankruptcy Court and the Bankruptcy Court's Orders approving such fee applications, which are publicly available.

8

15.    Describe how any proceeds of this litigation would be distributed pursuant to the Trustee's plan of reorganization, which was confirmed by the bankruptcy court in *In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr.D.Del.2004).

**Response:**

The proceeds of the litigation will be distributed in accordance with the terms of the Trustee's Second Amended Plan of Reorganization (the "Plan") and the Bankruptcy Court's Order Confirming the Trustee's Plan (the "Confirmation Order"), which are incorporated by reference. As set forth in Article 5.3 of the Plan, and paragraph 50 of the Confirmation Order, the proceeds, if any, of the Causes of Action, as defined in the Plan, including the Trustee's action against Crowley, shall be distributed as follows:  (i) first, to Reorganized Coram in an amount equal to the Post-Effective Date Administrative Claims relating to the Causes of Action; (ii) second, to the holders of Allowed General Unsecured Claims on a *pro rata* basis in an amount equal to the interest accruing (at the statutory judgment rate set forth in Section 1961 of Title 28 of the United States code) from the Petition Date through the Effective Date on account of such Allowed General Unsecured Claims until such interest has been paid in full; and (iii) third, on a *pro rata* basis to the holders of CHC Equity Interests.

9

CHDATA 39006_2

**A26**

The Trustee reserves his right to amend or supplement his answer to this interrogatory as discovery continues.

As to objections:

Dated:  March 27, 2007

SCHNADER HARRISON SEGAL
    & LEWIS LLP

By:  /s/ Richard A. Barkasy
    Richard A. Barkasy (#4683)
    Michael J. Barrie (#4684)
    824 Market Street Mall, Suite 1001
    Wilmington, DE 19801
    (302) 888-4554 (telephone)
    (302) 888-1696 (facsimile)

    -and-

    Wilbur L. Kipnes
    Barry E. Bressler
    1600 Market Street, Suite 3600
    Philadelphia, PA  19103-7286
    (215) 751-2000 (telephone)
    (215) 751-2205 (facsimile)

    Counsel to Arlin M. Adams,
        Chapter 11 Trustee

10

CHDATA 39006_2

A27

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARLIN M. ADAMS, as Chapter 11 Trustee of | : | Case No. 04-1565 (SLR) |
| The Bankruptcy Estates of Coram Healthcare | : | (Jointly Administered) |
| Corp., a Delaware Corporation, and Coram, Inc., a | : | |
| Delaware Corporation, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| DANIEL D. CROWLEY, | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I, Richard A. Barkasy, certify that I am not less than 18 years of age and that service of the **Chapter 11 Trustee's Answers to Defendant Daniel D. Crowley's Second Set of Interrogatories to Plaintiff Arlin M. Adams**, was made on March 27, 2007 upon the persons listed below via Electronic Mail and United States First Class Mail.

I certify the foregoing to be true and correct under penalty of perjury.

/s/ Richard A. Barkasy
Richard A. Barkasy

Dated: March 27, 2007

## Parties Served:

Jeffrey C. Wisler, Esquire
Christina M. Thompson, Esquire
1007 N. Orange St., P.O. Box 2207
Wilmington, DE 19899
Email: jwisler@cblh.com
Email: cthompson@cblh.com

Elliot R. Peters, Esquire
Warren A. Braunig, Esquire
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
Email: epeters@kvn.com
Email: wbraunig@kvn.com

11                                                CHDATA 39006_2

## **CERTIFICATION**

I hereby certify that the facts set forth in the foregoing interrogatory answers are true and correct to the best of my knowledge, information and belief.

Dated: __3|21__, 2007

Arlin M. Adams, Ch. 11 Trustee

12                                              CHDATA 39006_2

**A29**

## CERTIFICATE OF INCORPORATION
### OF
### CHM HOLDING CORPORATION

### FIRST

The name of the Corporation is CHM Holding Corporation.

### SECOND

The address of the Corporation's registered office in the State of Delaware is Corporation Trust Center, 1209 Orange Street, in the City of Wilmington, County of New Castle. The name of the Corporation's registered agent at that office is The Corporation Trust Company.

### THIRD

The purpose of the Corporation is to engage in any lawful act or activity for which a corporation may be organized under the General Corporation Law of Delaware as presently in effect or as it may hereafter be amended.

### FOURTH

A. AUTHORIZED CAPITAL STOCK. The total number of shares which the Corporation shall have the authority to issue shall be 60,000,000 shares, of which 50,000,000 shares shall be Common Stock, $.001 par value, and 10,000,000 shares shall be Preferred Stock, $.001 par value.

B. COMMON STOCK. The Board of Directors is hereby authorized to cause shares of Common Stock to be issued from time to time for such consideration as may be fixed from time to time by the Board of Directors, or by way of stock split pro rata to the holders of the Common Stock. The Board of Directors may also determine the proportion of the proceeds received from the sale of such stock which shall be credited upon the books of the Corporation to capital or capital surplus.

Each share of the Common Stock shall be equal in all respects to every other share of the Common Stock. Subject to any special voting rights of the holders of Preferred Stock fixed by or pursuant to the provisions of Paragraph C of this Article Fourth, the shares of Common Stock shall entitle the holders thereof to one vote for each share upon all matters upon which stockholders have the right to vote.

No holder of shares of Common Stock shall be entitled as such as a matter of right to subscribe for or purchase any part of any new or additional issues of stock, or securities convertible into stock, of any class whatsoever, whether now or hereafter authorized, and whether issued for cash, property, services or otherwise.

After the requirements with respect to preferential dividends on Preferred Stock (fixed by or pursuant to the provisions of Paragraph C of this Article Fourth), if any, shall have been met and after the Corporation shall have complied with all the requirements, if any, with respect to the setting aside of sums as sinking funds or redemption or purchase accounts (fixed by or pursuant to the provisions of Paragraph C of this Article Fourth) and subject further to any other conditions which may be fixed by or pursuant to the provisions of Paragraph C of this Article Fourth, then, but not otherwise, the holders of