December 7, 1999
Page 3

A myriad of other costs related to the un-integrated way we do business are also hurting Coram everyday. High cost, ineffective senior management commutes to work from one state to another at company expense (e.g. Joan Adler lives in L.A. and her office is in Illinois; Wendy Simpson lives in San Diego commutes to Denver; the CEO of Clinical lives in Florida but his staff is in Illinois and so forth). The field operations are loaded with excess layers of overhead and fixed costs of failing operations or under absorbed units. We will move as quickly as possible to consolidate, close, or restore profitability nationally.

Unwarranted and large expenses such as funding national meetings, useless travel, needless internal newsletters to cheer ourselves up, expenses for taking each other to lunch on Coram, and unjustified Coram expenditures for employee Christmas parties in nearly 100 locations are typical of management's callous use of capital. All funded by debt. All of these expense drains have been terminated immediately and the parties cancelled (I paid for the Denver party out of my own personal checkbook to set the tone).

Agreements to pay consultants a year's pay for not working. For example, (Julia Kopta, Special Counsel to Rick Smith) had a contract providing that "if the CEO" should no longer be the CEO, she could be paid $228,000 lump sum (she was responsible for selling CPS, and overseeing R Net) and be able to walk off the job and legally be entitled to the money anyway. Note, she walked off on my second day.

Loans to employees that are forgiven. And so forth.

Operations:

IT is floundering. It is characterized by historical false starts and of money squandered. Most sad, both the hardware and software platform is inadequate and this leaves operations ineffective and at high cost. (In my opinion, why Coram can't compete for business is that we cost too much and our prices have to be too high). While the previous direction was to outsource the IT mess, we have put this decision on hold and are attempting to understand what we can do to stabilize this very startling situation.

Mix of product's sold has been unmanaged and a "take anything as long as it's a sale attitude" because we have to cover our bloated overhead has resulted in Coram taking on substantially unprofitable business. Nearly $200,000,000 of Home Infusion's top line revenue is deep in the "red". Only about 55% of our top line contributes anything to the bottom line. We have not pushed our

December 7, 1999
Page 4

profitable products (TPN, Hemophiliac, Organ Transplant, etc), or our profitable offices or regions (Chicago, Minneapolis and Central Region). Instead we have spent our time, management focus, and money funding CPS, trying for a "grand slam" with US Healthcare through R Net, and are losing money every day in both the Eastern and Western Regions. We have already <u>put the stake in the ground and moved to shift the mix as fast as we can without destroying the entity. Product champions have been appointed to drive the three most profitable products, new incentive plans are in the mill, and we have communicated to senior management what we want to accomplish.</u>

Clinical is only generating $2-$3 Million in revenue and minimal profit. <u>We have directed management that we want not less than $10Million in Revenue with a $3Million EBITDA for 2000.</u>

<u>Legal:</u>

Coram is being pursued legally on many fronts. The R Net and US Healthcare matters are the most generally known. These lawsuits could be ***company killers*** if they go wrong. It was a tragic management error to bet the entire company on such a contract as we did with USHealthcare. To try to get these matters under better control, I have <u>engaged my own former General Counsel, Allen Marabito.</u> Scott Larsen is too young, inexperienced, and just not equipped to oversee these corporate critical matters.

<u>The Future:</u>

*There is a real question about whether Coram can survive.* We'll put the fixes in place, aggressively manage. But there is a ***serious meltdown*** underway here right now. The debt forbearance was and will be critical to buy the time to see if we can turn Coram. We should know in March or April whether our fixes can save this company. It will be close.

Here are the initiatives underway at this time:

1)  <u>Sell CPS</u>. Take the proceeds and pay down debt.

2)  <u>Shutdown R Net</u>. Eliminate all of the collateral expenses and cash drain ($1.5 Million a month in Q4).

December 7, 1999
Page 5

3) Collect the A/R down $25 to $50 Million and use the funds to pay down debt. Controls have been initiated to cut the level of budgets, spending, and eliminate all but "essential" expenditures everywhere, now. Meet with HCFA directly to try to fast track our MediCare collection.

4) Turn the faucet "off" hard on non-essential cash expenditures and postpone all but the most essential capital expenses until mid-year 2000.

5) Drive the mix into the profitable products and minimize sales of losers. Shut down offices that are unable to be quickly turned around. Use hub and spoke to cut costs (corporate and field overhead eat up over 10% of every dollar). Raise prices where we can and try to generate more margin.

6) Take steps to minimize bad debt. This is 3.5% of every dollar sold today.

7) Eliminate the 401 (k) match and Employee Stock Purchase Programs, cut consulting, and every other non-essential cash expenditure right away.

8) Reduce corporate overhead substantially from its present $32 Million per year. A layoff will be perfected for 15 December to cut $3-$4 Million out of the payroll.

9) Develop a go forward business plan and strategy to put the company on a more reliable IT Platform and business process.

10) Recruit a new CFO that can be a real leader in the turnaround promptly.

11) Submit a plan to the NYSE to attempt to persuade them that Coram should not be de-listed.

12) Submit a budget plan to the Board (by cost center, by line, by month) for 2000 that reflects our actions and hopes to save the company through a tight and well disciplined effort.

December 7, 1999
Page 6

# CONFIDENTIAL

13) Submit a new incentive plan to the Board to motivate management. This will include a "cost neutral" request to re-strike the incentive options and a cash incentive tied to financial performance of Coram that will be offset by higher earnings.

Clearly this list is not meant to be all-inclusive, but rather a quick "hit" list. We have only known Coram since September. A better list and sharper focus will come over more time.

Please forgive my intrusion into your work day with these matters. However, this company needs all of our immediate attention if it is to have a chance at improvement. I look forward to talking to you at your convenience, and to our first Board call.

Sincerely,

Daniel D. Crowley
Chairman, President & CEO

Attachment

DEC 20 1999 13:54 FR CORAM HEALTHCARE EXEC303 672 8799 TO 919164496059    P.01/13

 CORAM HEALTHCARE    1125 17th Street, Suite 2100, Denver, CO  80202

# FAX

Date: _12-20-_

Number of pages including cover sheet: _13_

To: Dan Crowley

Phone:

Fax phone: 916 - 449-6059

From: Scott Danitz

VP & Controller

Phone:    303/672-8640

Fax phone:    303/672-8799

REMARKS:    ☐ Urgent    ☐ For your review    ☐ Reply ASAP    ☐ Please comment

Board Package

Budget 2000

Privileged and Confidential

All information transmitted hereby is intended only for the use of the addressee(s) named above.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient(s). Please note that any distribution or copying of this communication is strictly prohibited.  Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address.

CROWLEYKVN 016575

DEC 20 1999 13:54 FR CORAM HEALTHCARE EXEC303 672 8799 TO 919164496059    P.02/13

CROWLEYKVN 016576

*Coram Healthcare Corporation*
*Board of Directors, Budget 2000*

| Contents Summary | |
|---|---|
| | *Page* |
| *2000 Key Initiatives* | *1* |
| *Forecast 1999  VS  Budget 2000 - Annual* | *3* |
| *Forecast 1999  VS  Budget 2000 - Quarterly* | *4* |
| *Budget 2000, Cash Flow* | *5* |
| *Budget 2000, Balance Sheet* | *6* |
| *Forecast 1999  VS  Budget 2000 - Infusion* | *7* |
| *Forecast 1999  VS  Budget 2000 - CTI* | *9* |
| *Forecast 1999  VS  Budget 2000 - CPS* | *10* |
| *Forecast 1999  VS  Budget 2000 - RNET* | *11* |

12/20/99 1:30 PM

DEC 28 1999 13:55 FR CORAM HEALTHCARE EXEC303 672 8799 TO 91916449_059     P.03/13

**Coram Healthcare Corporation**
**"Key Initiatives Drivers"**
**Board of Directors, Budget 2000**

- **New Revenue Growth – $29mm    7.4%**
  - ❖ Generalist versus Specialist Sales force in 2000
  - ❖ New Strategic Business Unit leadership driving new sales and marketing programs – Manage Care carve-outs.
  - ❖ New Hemophilia sales and marketing program expected to grow $8.0mm (50%) in 2000.
  - ❖ New national contract with United Healthcare (Q1) to replace projected Aetna lost business in (Q2) – 90% confidence level.

- **Cost of Goods/Mix Improvement**
  - ❖ Commissionable therapy growth of new revenue at 70-80% standard margins versus current mix standard margins of 59%.
  - ❖ 2000 Sales Compensation only paying on commissionable therapies and EBITDA improvement.
  - ❖ Target low margin accounts for price increase
  - ❖ 2000 COS – from drug wholesaler, estimated annual savings $250,000.

- **Nursing Cost Savings**
  - ❖ 1% improvement versus 1999
  - ❖ Primary Care Management Model (PCMM) rolled out to reduce current cost per visit by 10%.
  - ❖ Standardize use of Home Healthcare Laboratory of America (HHLA) program in 2000
  - ❖ Moving nurse staffing to more variable versus fixed cost via per Per Diems.
  - ❖ Producing Monthly Management Reports to monitor Nurse Manager's performance under PCMM and HHLA.

- **Cash Collection Performance**
  - ❖ Reorganize reporting structure by moving Area Reimbursement Managers under AVP Operations to connect the front and back end process.
  - ❖ All 2000 Bonus and Sales commission plans will be tied to cash collection results to gain total support from each team member to drive results.
  - ❖ Dedicated Individual to work with each Medicare DMERC location.
  - ❖ Have begun legal communication with delinquent Payor Accounts.

- **Sale of CPS Q2 – $70 million generating $60 million cash and $45 million gain**

- **Company Wide Expense Management Control**
  - ❖ Headcount management controls established – budget, performance, staffing model and Sr. Management approval.
  - ❖ Individual Budget Monthly Accountability; Weekly reporting of new cost savings initiatives
  - ❖ Elimination of discretionary spending; Micro Management by senior management

P. 1

CROWLEYKVN 016577

12/20/99; 1:00 PM

DEC 20 1999 13:55 FR CORAM HEALTHCARE EXEC383 672 8799 TO 919164496859    P.04/13

CROWLEYKVN 016578

**CORAM HEALTHCARE CORPORATION**
**BOARD OF DIRECTORS, BUDGET 2000**
**FORECASTED BALANCE SHEET AND CASHFLOW ASSUMPTIONS**

|     |         | Q1 | Q2 | Q3 | Q4 |
|-----|---------|----|----|----|----|
| 1)  | DSO     | 80 | 78 | 76 | 74 |
| 2)  | AP Aging| 50 | 39 | 37 | 40 |

3) **Summary of CPS Sale, April 1, 2000**

| | |
|---|---|
| Estimated cash proceeds | $ 70,000,000 |
| Estimated costs associated with sale | (5,000,000) |
| Net proceeds on sale | $ 65,000,000 |
| Net Book Value estimated | (14,200,000) |
| Reserves from sale | (5,800,000) |
| Estimated gain on sale of asset | $ 45,000,000 |

| | |
|---|---|
| Net proceeds on sale | $ 65,000,000 |
| Paydown portion of principle on Series B debt | (60,000,000) |
| Cash available for operations | $ 5,000,000 |

4) All interest payments due on Bank debt in 2000 are paid in cash (no PIKs).
   $60 million reduction in Series B debt principle from the sale of CPS.
   Senior Credit Facility line remains at $44m with a 1/2 % pt. increase in 7/00.

5) Credit facility borrowing base, using November 1999 A/R balances, without R-Net and CPS
   is $52 million. With the credit facility at $44 million, Coram could be required to report
   weekly financial data to the noteholders.

P. 2                                                                    12/20/99; 11:55 AM

# MINUTES OF A TELEPHONIC MEETING

## OF THE BOARD OF DIRECTORS OF

### CORAM HEALTHCARE CORPORATION

#### December 21, 1999

A telephonic meeting of the Board of Directors of Coram Healthcare Corporation (the "Company") was convened at approximately 9:35 a.m. MST. Participating in the meeting were the following Directors: Daniel D. Crowley, Chairman of the Board, Chief Executive Officer and President; Donald J. Amaral; William J. Casey; and Richard A. Fink. Stephen A. Feinberg and L. Peter Smith participated in the meeting as indicated below. Allen J. Marabito, Executive Vice President; Wendy L. Simpson, the former Chief Financial Officer of the Company; Vito Ponzio, Senior Vice President, Human Resources; Scott Danitz, Vice President and Controller; and Scott T. Larson, Senior Vice President, General Counsel and Secretary, also participated in the meeting. Also in attendance as indicated below were Dan Smithson and Kurt Davis of Dynamic Healthcare Solutions; Christina Morrison of Deustche Banc.Alex Brown; Alan Kornberg of Paul, Weiss, Rifkind & Garrison; and Michael Kahn of Folger, Levin & Kahn. Mr. Crowley acted as Chairman of the meeting and Mr. Larson kept the minutes.

## REVIEW AND APPROVAL OF MINUTES FROM PRIOR MEETINGS

The first item of business was a review and consideration of the minutes from prior meetings of the Board of Directors that had been circulated to the Board. Upon a motion duly made and seconded, the minutes from the prior meetings of the Board dated October 22 and 27, 1999, and November 2 and 17, 1999, were unanimously approved as presented.

## FINANCIAL UPDATE

The first portion of the financial update was a report on the status of the sale of the Company's prescription services division, Coram Prescription Services ("CPS"). Christina Morrison outlined actions that had been undertaken in connection with the sale and summarized the status of the auction process. This included a description of the numbers of parties that had expressed interest in CPS and the numbers of parties that had obtained offering memoranda describing CPS. Mr. Feinberg joined the meeting. Ms. Morrison responded to the questions of the Board and completed her status report. Ms. Morrison departed from the meeting. The Board continued to discuss the prospects for selling CPS and various alternatives such as reducing its costs and retaining its operation in the event no appropriate or reasonable bids were received for the division.

The next portion of the financial report consisted of a summary of Company operations during the fourth quarter of 1999 and the anticipated need for taking a restructuring charge in such quarter for a variety matters. A schedule outlining the proposed charge was included with

COR-SUB CON 0023875

Minutes of the Board of Directors
December 21, 1999
Page 2

the materials presented to the Board of Directors. The discussion that ensued included, among other items, certain cost cutting measures, such as head count reductions and related severance costs, liquidation of the Resource Network division, write downs of the Company's accounts receivable balances, and anticipated impairment of the goodwill that had been recorded on the Company's balance sheet. Upon a motion duly made and seconded, the Board unanimously approved the reporting of a proposed restructuring charge, subject to audit by the Company's independent auditors, that would be taken in the Company's financial statements for the fourth quarter of the year ended December 31, 1999.

Management then summarized the Company's financial performance during the fourth quarter of 1999. The discussion included a description of certain factors that impacted the Company's financial performance, including the mix of therapies provided by the Company, the use of per diem employees, write-offs of accounts receivable, and other factors. A discussion of the Company's cash collections and uses thereof then ensued.

Management then presented the budget for the upcoming year ending December 31, 2000. Copies of such budget had been distributed to the Board prior to the meeting. The presentation included a discussion of certain assumptions that were used in creating the budget, including the sale of CPS. Following a discussion and upon a motion duly made and seconded, the Company's Year 2000 Budget was unanimously adopted and approved as presented.

The next portion of the financial update was a discussion of the Company's listing status with the New York Stock Exchange (the "NYSE"). Ms. Simpson reported on the types of information that would be presented to the NYSE in response to their prior request for information regarding the Company's plans for bringing the Company back into compliance with the minimum listing requirements for the NYSE. The dialogue also included the strategies management was recommending in the event the NYSE commences de-listing procedures. The discussion then turned to the relative costs and benefits of maintaining the NYSE listing. Upon a motion duly made and seconded, the Board adopted the resolutions set forth on Exhibit 1 hereto regarding the Company's listing on the NYSE listing and moving to the Over the Counter Bulletin Board maintained by the National Association of Securities Dealers.

Mr. Feinberg reported on preliminary information regarding a debt to equity conversion. The conversations occurred pursuant to the discussions this Board had on December 17, 1999 regarding the Company's compliance with the "public company" exception to the Stark II Law. The Board then discussed a strategy for pursuing the conversion with the debtholders. Upon a motion duly made and seconded, the Board engaged Alan Kornberg to assist the Company in exploring a conversion of debt to raise the Company's stockholders' equity.

The Board then renewed its discussion of a special independent committee to negotiate, as needed, the terms of any such debt conversion. Upon a motion duly made and seconded, the

COR-SUB CON 0023876

A220

Minutes of the Board of Directors
December 21, 1999
Page 3

Board unanimously adopted a resolution establishing a special independent committee comprised of Messrs. Casey, Fink and Smith to work as required with Mr. Kornberg in obtaining and negotiating the terms of an equity conversion as of December 31, 1999.

## LEGAL UPDATE

Mr. Kahn led a privileged and confidential discussion of the status of the litigation between the Company and Aetna U.S. Healthcare, Inc. ("Aetna"), including the procedural status of the case.

# REDACTED

Additional privileged and confidential reports regarding the status of the dispute involving the Internal Revenue Service and the litigation with PriceWaterhouseCoopers were then given. The Board requested an update at a later time.

Messrs. Kahn and Kornberg and Ms. Simpson departed from the meeting.

## COMPENSATION AND OTHER ISSUES

The Board then considered the management incentive compensation plan described in the materials previously distributed to the Board in connection with the meeting. After discussion and upon a motion duly made and seconded, the Board unanimously approved the management incentive compensation plan in the form presented.

The cost of the 401(k) match by the Company was discussed, and the Board considered a proposal to discontinue the Company's matching of employee contributions under the Company's 401(k) plan. Upon a motion duly made and seconded, the Board unanimously adopted the resolutions set forth on Exhibit 2 hereto regarding the discontinuance of employer matching contributions under the Company's 401(k) plan.

The Board considered the level of directors' and officers' liability insurance ("D&O Insurance") that the Company currently maintains. A recommendation was made to increase the level of D&O Insurance coverage to a total of $100 million through serial layers of coverage. The Board discussed the necessity of the increased D&O Insurance coverage given the challenges and uncertainties facing the Company and determined that it was in the best interests of the Company and its stockholders to obtain such coverage. Upon a motion duly made and

COR-SUB CON 0023877

Minutes of the Board of Directors
December 21, 1999
Page 4

seconded, the Board unanimously adopted the resolutions set forth on <u>Exhibit 3</u> regarding the procurement of such D&O Insurance.

The discussion then turned to a proposal to settle a dispute between the Company and Julia Kopta, Esq., the former Special Counsel to the Chief Executive Officer. After a review of the proposed terms and the Board's questions having been responded to, the Board unanimously resolved to authorize management to settle the Company's dispute with Ms. Kopta on substantially the terms in the materials presented to the Board coupled with a general release from Ms. Kopta.

Next, the Board considered a proposal to retain the interim services of its former Chief Financial Officer, Wendy L. Simpson, on the terms distributed to the Board prior to the meeting. Upon a motion duly made and seconded, the Board unanimously resolved to authorize management to offer an engagement to Ms. Simpson on the terms presented to this Board.

Mr. Smith departed from the meeting.

A discussion then followed regarding the retention of Dynamic Healthcare Solutions, L.L.C., a consulting firm affiliated with Mr. Crowley. Mr. Crowley outlined the experience and credentials of the persons at Dynamic Healthcare Solutions that he expected would provide services to the Company on an as needed basis. After discussion and upon a motion duly made and seconded, the Board unanimously adopted the resolutions attached hereto as <u>Exhibit 4</u> regarding the retention of Dynamic Healthcare Solutions.

The next item was the consideration of Sandra Smoley as a candidate who would join the Company's Board of Directors. Mr. Crowley reviewed with the Board materials describing Ms. Smoley's background and experience that were distributed to the Board prior to the meeting. The Board members expressed their interest in meeting and interviewing her regarding her candidacy as a potential member of the Board.

It was noted that February 10, 2000 was the next scheduled meeting of this Board. The Board agreed to hold the meeting telephonically on such date.

There being no further business, the meeting was adjourned at 11:15 a.m. MST.

Respectfully submitted,

Scott T. Larson
Secretary

COR-SUB CON 0023678

**EXHIBIT 1**

CORAM HEALTHCARE CORPORATION

RESOLUTIONS OF THE BOARD OF DIRECTORS

December 21, 1999

WHEREAS, shares of the Company's $.001 par value common stock (the "Common Stock") have been listed and traded on the New York Stock Exchange (the "Exchange") since the Company's inception in 1994;

WHEREAS, the Company has received notice from the Exchange that the Company has fallen below the criteria required for continued listing on the Exchange and has requested that the Company develop a plan for addressing such non-compliance or have the Common Stock de-listed from the Exchange;

WHEREAS, listing the Common Stock on the Exchange not only requires compliance with the listing criteria, but also requires the Company to pay certain listing fees and to devote attention to complying with the rules and regulations of the Exchange;

WHEREAS, this Board of Directors has determined that the costs of maintaining the listing of Company Common Stock on the Exchange outweigh the benefits of continuing such listing and has concluded that Company management should focus its attention on operating the Company's business and should take steps to remove the Common Stock from listing on the Exchange in a way that would not be unduly disruptive to the business of the Company and the market for Common Stock; and

WHEREAS, Company management has learned that shares of the Common Stock may be traded through the over the counter electronic bulletin board operated by the National Association of Securities Dealers (the "OTCBB") if the Company is able to enlist two qualified securities firms that would make a market for Company Common Stock;

NOW, THEREFORE, BE IT RESOLVED, that the Chairman, Chief Executive Officer and President, any Executive Vice President, any Senior Vice President or the Secretary of the Company (the "Authorized Officers") are each hereby authorized, empowered and directed for and on behalf of the Company to execute and deliver all agreements, documents or certificates and take all steps, including, but not limited to, the identification and retention of market makers for Common Stock, as any such Authorized Officer may deem necessary, appropriate or expedient to facilitate the move of the vehicle for trading of shares of Company Common Stock from the Exchange to the OTCBB or another appropriate securities exchange; and

COR-SUB CON 0023879

·FURTHER RESOLVED, that all prior actions taken by the Authorized Officers with respect to the foregoing are hereby authorized, ratified and confirmed as the acts and deeds of the Company; and

FURTHER RESOLVED, that the Authorized Officers of the Company are each hereby authorized, empowered and directed, for and on behalf of the Company, to take all such actions and execute all such documents, agreements and certificates as may be necessary, appropriate or expedient to carry out the intent of these resolutions as set forth above and all such future actions are hereby authorized, ratified and confirmed as the acts and deeds of the Company.

COR·SUB CON .0023880

## EXHIBIT 2

CORAM HEALTHCARE CORPORATION

RESOLUTIONS OF THE BOARD OF DIRECTORS

December 21, 1999

WHEREAS, Coram Healthcare Corporation (the "Company") has established and adopted the Coram Healthcare Corporation 401(k) Plan, as amended (the "Plan") to serve as a benefit to attract and retain qualified employees;

WHEREAS, Article VI of the Plan contemplates that the Company would match a certain portion of the contribution made by qualifying employees participating in the Plan using shares of the $.001 par value common stock of the Company ("Company Shares"); and

WHEREAS, the Board has been provided with a summary of the financial condition of the Company and has determined that it is in the best interests of the Company and its stockholders, given the condition of the Company, to amend the Plan to cease providing the employer match contemplated by Article VI of the Plan;

NOW, THEREFORE, BE IT RESOLVED, that the Company, as administrator of the Plan, hereby adopts, approves and confirms the amendment to the Plan set forth on Exhibit A hereto to effect the elimination of the employer match component of the Plan as contemplated by such amendment;

FURTHER RESOLVED, that the officers of the Company are hereby authorized, empowered and directed, for and on behalf of the Company, to take all such actions and execute all such documents, amendments, agreements and certificates as such officers shall deem necessary, appropriate or expedient to carry out the intent of these resolutions.

FURTHER RESOLVED, that all prior actions of the Authorized Officers with respect to the foregoing matters are hereby authorized, ratified and confirmed as the acts and deeds of the Company; and

FURTHER RESOLVED, that the Authorized Officers of the Company are each hereby authorized, empowered and directed, for and on behalf of the Company, to take all such actions and execute all such documents, agreements and certificates as may be necessary, appropriate or expedient to carry out the intent of these resolutions as set forth above and all such future actions are hereby authorized, ratified and confirmed as the acts and deeds of the Company.

COR-SUB CON 0023881

## EXHIBIT 3

CORAM HEALTHCARE CORPORATION

RESOLUTIONS OF THE BOARD OF DIRECTORS

December 21, 1999

WHEREAS, this Board of Directors recognizes that the Company is facing a number of serious financial, litigation, operational and other challenges that may impair its ability to attract and retain qualified and experienced persons to serve on its Board of Directors and to serve as officers;

WHEREAS, this Board has previously authorized Company management to obtain insurance to cover the errors and omissions of its directors and officers in the course and scope of their employment and/or engagement with the Company and the Company currently maintains such coverage totaling $35 million; and

WHEREAS, this Board has determined that obtaining additional levels of insurance to cover such acts or omissions of its directors and officers would be in the best interests of the Company and its stakeholders;

NOW, THEREFORE BE IT RESOLVED, that the Chairman of the Board, Chief Executive Officer and President or any Executive Vice President, any Senior Vice President, any Vice President or the Secretary of the Company (the "Authorized Officers") are each hereby authorized, empowered and directed to obtain and expend Company funds to obtain additional insurance to cover certain acts or omissions of its directors and officers supplementing the Company's existing coverage to bring the overall coverage under such policies to an aggregate of $100,000,000 to be effective as of November 30, 1999;

FURTHER RESOLVED, that all prior actions taken by the Authorized Officers in searching for, negotiating, obtaining and binding the director and officer insurance coverages that were outlined at this meeting are hereby ratified, confirmed and approved as the acts and deed of the Company; and

FURTHER RESOLVED, that each Authorized Officer is hereby authorized, empowered and directed to take such further actions and make and execute as the act and deed of this Company any agreement, certificate or document as may be necessary, appropriate or expedient to carry out the intent of these resolutions as set forth above and all such future actions taken are hereby authorized, ratified and confirmed as the acts and deeds of the Company.

COR-SUB CON 0023882

## EXHIBIT 4

CORAM HEALTHCARE CORPORATION

RESOLUTIONS OF THE BOARD OF DIRECTORS

December 21, 1999

WHEREAS, this Board of Directors elected a new Chairman of the Board, Chief Executive Officer and President effective November 30, 1999, to lead the Company and its management team;

WHEREAS, the new Chairman of the Board, Chief Executive Officer and President has recommended that this Board consider continuing the use of his health care consulting firm, Dynamic Healthcare Solutions, L.L.C. ("Dynamic Healthcare"), so that the Company may continue to benefit from the consulting services offered by Dynamic Healthcare and its staff of professionals that are experienced in improving the performance of health care companies;

WHEREAS, the new Chairman of the Board, Chief Executive Officer and President has provided this Board with a summary of the experience and credentials of the Dynamic Healthcare staff and the role that he expects Dynamic Healthcare will play in consulting with the Company;

WHEREAS, the rates applicable to the engagement of Dynamic Healthcare are outlined on Exhibit A hereto and would be set forth in a Consulting Agreement that would be substantially similar to the Consulting Agreement previously negotiated between the Company and Dynamic Healthcare, recognizing that certain members of Dynamic Healthcare have become officers or employees of the Company; and

WHEREAS, this Board has determined that continuing the relationship with Dynamic Healthcare on the terms contemplated hereby would be in the bests interests of the Company and its stockholders due to, among other factors, the experience and credentials of the members of the team at Dynamic Healthcare and the established relationship they have with the Company's new Chairman of the Board, Chief Executive Officer and President;

NOW, THEREFORE BE IT RESOLVED, that the Chairman of the Board, Chief Executive Officer and President or any Executive Vice President, any Senior Vice President or the Secretary of the Company (the "Authorized Officers") are each hereby authorized, empowered and directed to execute and deliver, on behalf of the Company, a new consulting agreement with Dynamic Healthcare using the principal terms presented on Exhibit A with these resolutions and in substantially the form of the prior agreement

COR-SUB CON 0023883

negotiated between the Company and Dynamic Healthcare with such changes as such Authorized Officers may deem to be, in their discretion  in the best interests of the Company; and

FURTHER RESOLVED, each Authorized Officer is hereby authorized, empowered and directed, for and on behalf of the Company, to take all such other actions and execute all such documents, certificates and agreements, as may be necessary, appropriate or expedient to carry out the intent of these resolutions as set forth above.

COR-SUB CON 0023884

## EXHIBIT A

Coram services to be billed by Dynamic Healthcare Solutions, L.L.C. as follows

| Duties | Name | Rate |
|---|---|---|
| Investor Relations<br>Marketing Communications<br>Print Services | Kurt Davis | $500/day plus expenses |
| Software/Hardware Systems Consulting | Ron Mills | $1,000/day plus expenses |
| Organizational Planning<br>Business Plan Development<br>Human Resources<br>Management Incentive Plans | Dan Smithson | $750/day plus expenses |

COR-SUB CON 0023885

COR-SUB CON 0023886

### MINUTES OF A TELEPHONIC MEETING

### OF THE BOARD OF DIRECTORS OF

### CORAM HEALTHCARE CORPORATION

#### February 10, 2000

A telephonic meeting of the Board of Directors of Coram Healthcare Corporation (the "Company") was convened at approximately 9:30 a.m. MST. Participating in the meeting were the following Directors: Daniel D. Crowley, Chairman of the Board, Chief Executive Officer and President; Donald J. Amaral; William J. Casey; Stephen A. Feinberg; and Richard A. Fink. Allen J. Marabito, Executive Vice President; Wendy L. Simpson, the former Chief Financial Officer of the Company; Vito Ponzio, Senior Vice President, Human Resources; Scott R. Danitz, Vice President and Controller; and Scott T. Larson, Senior Vice President, General Counsel and Secretary, also participated in the meeting. Also in attendance as indicated below were Sandra L. Smoley who was elected to the Board during the meeting and Christina Morrison of Deutsche Banc.Alex Brown. Mr. Crowley acted as Chairman of the meeting and Mr. Larson kept the minutes.

#### REVIEW AND APPROVAL OF MINUTES FROM PRIOR MEETINGS

The first item of business was a review and consideration of the minutes from prior meetings of the Board of Directors that had been circulated to the Board. Upon a motion duly made and seconded, the minutes from the prior meetings of the Board dated December 10 and 17, 1999, were unanimously approved as presented.

#### RATIFICATION AND APPROVAL OF STOCK OPTION GRANTS

The next item of business was the consideration of certain grants of options to purchase shares of the $.001 par value common stock of the Company pursuant to the Company's 1994 Stock Option/Stock Issuance Plan (the "Option Plan"). Two lists of stock option grants had been distributed to the Board prior to the meeting. One was a list of grants that had been authorized by the Compensation Committee of the Board. The other was a list of new grants that had not yet been considered and approved by the Compensation Committee. The names of the persons receiving grants, the numbers of shares each grant represented and the general terms of the grants were included in the materials to the Board prior to the meeting and are attached hereto as Exhibit A. The lists included persons who were newly hired and others that were recently promoted. It was noted that one recipient, the Vice President of Clinical Services had refused to accept her grant. After a discussion of the grants and the numbers of shares available for options under the Option Plan, the Board unanimously ratified, approved and adopted the grants of the options under the Option Plan that had been authorized by the Compensation Committee and approved the other proposed option grants under the Option Plan, all of which are set forth on Exhibit A hereto, with the exception noted above.

COR-EQTY 0014711

EXHIBIT

Morrison 10
CW  3/26/07

Minutes of the Board of Directors
February 10, 2000
Page 2

FINANCIAL UPDATE

The next item of business was an update on the progress of the closing of the Company's books for the year ended December 31, 1999. The Board discussed the scheduling of the next meeting of the Audit Committee and agreed that such meeting would occur on or about March 9, 2000.

Mr. Danitz was invited to provide a report on the timetable for the completion of the audit of the Company's financial statements by the Company's independent auditors, Ernst & Young. A discussion ensued regarding the proposed restructuring charge that was distributed to the Board, including questions and answers regarding the elements of the charge, the reasons therefor and whether the increased charge would result in an equity level that would remove the Company from compliance with the public company exception of the Stark II law. It was reported that the charge and resulting decrease in equity would not jeopardize the Company's compliance with the requirements of the Stark II law at the end of calendar year 1999. Upon a motion duly made and seconded, the Board unanimously resolved to accept the recommended restructuring charge.

A discussion followed regarding the initiatives that management was pursing regarding changing the mix of therapies delivered by the Company, collection of the Company's accounts receivable and the reduction of the Company's operating costs.

Sandra Smoley and Christina Morrison joined the meeting.

BOARD NOMINATION

The Board next addressed the candidacy of Sandra L. Smoley as a new member of the Board of Directors who would replace Mr. Fink who had notified the Chairman of his intent to resign from the Board following the identification of a person to fill his place on the Board. After discussion and upon a motion duly made and seconded, the Board unanimously adopted the resolutions attached hereto as Exhibit B electing Ms. Smoley to the Board.

CPS AUCTION UPDATE

Ms. Morrison was then invited to report on the status of the sale of the Company's prescription services division, Coram Prescription Services ("CPS"). Ms. Morrison described the actions that had been taken since her last report to the Board, identified the parties that were continuing to pursue the acquisition of the CPS division and outlined the upcoming deadlines that were put in place for the bidding process. Ms. Morrison responded to the questions of the Board and completed her status report. Ms. Morrison departed from the meeting. The Board

COR-EQTY 0014712

Minutes of the Board of Directors
February 10, 2000
Page 3

continued to discuss the prospects for selling CPS and various alternatives that would be available if no appropriate or reasonable bids were received for the division.

## LEGAL UPDATE

A privileged and confidential discussion lead by Mr. Marabito of the status of the bankruptcy proceedings involving the Company's subsidiaries, Coram Resource Network, Inc. and Coram Independent Practice Association, Inc. followed.

## DIRECTOR AND OFFICER INSURANCE UPDATE

Mr. Marabito was then requested to report on the status of the additional layers of directors and officers liability insurance that this Board had previously authorized. A review of a chart outlining the various layers of liability insurance coverage (copy distributed prior to the meeting) that had been obtained and bound by the Company followed.

## OTHER BUSINESS: ANNUAL RETAINER

The next matter discussed was the amount the Company pays its directors for their service on the Board. Mr. Crowley recommended that the Board consider following the lead of other struggling companies and provide each non-employee director with an annual retainer for their service on the Board in addition to the per meeting fees currently paid by the Company to each such Board member. After a discussion and upon a motion duly made and seconded, the Board unanimously resolved to direct the Company to provide each of its non-employee directors with an annual retainer in the amount of $12,000 in addition to the per meeting fees currently paid by the Company, subject to a formal legal opinion of outside counsel confirming that no stockholder vote would be required to implement such compensation program which will be attached when received.

Mr. Fink was then provided with the opportunity to address the Board regarding his resignation from the Board and regarding a proposal with respect to certain options to purchase shares of the Company's common stock held by him. He reported on his positive and eventful five and one half years of service on the Board and was resigning from the Board without any disagreements with the Company and intending to assist in any way for a smooth transition for the incoming director.

The Board then discussed Mr. Fink's service on the Board and his departure from the Board. Thereafter, upon a motion duly made and seconded, the Board unanimously resolved to accept Mr. Fink's resignation. Mr. Fink departed from the meeting.

COR-EQTY 0014713

Minutes of the Board of Directors
February 10, 2000
Page 4

Mr. Ponzio was then asked to summarize the proposal that Mr. Fink had raised with respect to extending the vesting and exercise period for the stock options that had been granted to him on September 9, 1998. A summary of his proposal was distributed to the Board prior to the meeting. A discussion of the proposal then followed. Upon a motion duly made and seconded, the Board duly adopted (Mr. Crowley and Ms. Smoley abstained) a non-precedent setting resolution approving Mr. Fink's proposal and authorizing management to prepare, execute and deliver, on behalf of the Company, an amendment to Mr. Fink's stock option agreement to effect such proposal.

It was noted that March 9, 2000 was the next scheduled meeting of this Board. The Chairman requested that the Board members attend the meeting in person in New York, New York, if possible.

There being no further business, the meeting was adjourned at 10:20 a.m. MST.

Respectfully submitted,

Scott T. Larson
Secretary

COR-EQTY 0014714

A234

 CORAM HEALTHCARE

# MEMORANDUM

**VIA FACSIMILE**

TO:      Dan Crowley          Steve Feinberg
            Wendy Simpson     Ed Mule
            Allen Marabito       Ed Stearns

FROM:    Shaunna Stribling

DATE:     February 11, 2000

RE:       February 15, 2000 Meeting

This memo is to confirm the above referenced meeting. The meeting will be held on Tuesday, February 15, 2000 at 9:00 a.m. at Steve Feinberg's (Cerberus) located at 450 Park Avenue, 28th floor. The phone number to his office is (212) 891-2150.

Please feel free to contact me at (303) 672-8744 should you have any questions.



COR.-EQTY0002727



CORAM HEALTHCARE

COR.-EQTY0002728

# CORAM HEALTHCARE CORPORATION
## Meeting with Cerberus Partners,
## Goldman Sachs Credit Partners & Foothill Capital
### February 15, 2000

### INDEX

A.  STRATEGIC OVERVIEW

B.  DEBT HISTORY--Schedule of Debt History

C.  YEAR-END CHARGES--Schedule of Fiscal 1999 Year-End Charges

D.  OPERATING RESULTS--Fiscal 1999 Unaudited Operating Results

E.  BOARD BUDGET--Board Approved Budget for Fiscal 2000

F.  "STRETCH" BUDGET--Operating "Stretch" Budget for Fiscal 2000

G.  CASH FLOW--Cash Flow Schedules

H.  CASH COVERAGE—Cash Coverage of Interest Expense

I.  A/R & A/P--Summary of Accounts Receivable and Accounts Payable

J.  STARK II--Schedule of STARK II Compliance for Fiscal 1999 and Projected for Fiscal 2000

K.  HISTORICAL RESULTS--Comparative Historical Operating Results – Unusual Adjustments Identified

### OTHER DISCUSSION POINTS:

1.  Unresolved Tax Issue
2.  Status of CPS and Canadian Sales
3.  Litigation Fees and Expenses
4.  Litigation Contingencies
5.  New Computer System

COR.-EQTY0002730

Strategic Overview

COR.-EQTY0002731

# Strategic Initiatives



- Back to basics
  - Focus on core infusion business
    - Sell CPS
    - Liquidation of R-Net
  - Manage for cash flow, profitability
  - Strategic focus, planning, accountability, incentives

COR.-EQTY0002732

# Coram Strengths



- National leader in home infusion, a growing industry
- Strong name recognition among patient referral sources
- Reputation for quality and service
- Solid core of experienced management and field personnel
- New leadership and focus

COR.-EQTY0002733

A240