*Other Named Executive Officers.* Effective June 30, 2000, Joseph D. Smith resigned his position as Chief Operating Officer with Coram, terminated his then existing employment agreement and entered into a consulting agreement with the company. Under the agreement, Mr. Smith provides sales consulting services on an independent contractor basis until June 30, 2001. Mr. Smith receives a consulting fee of $25,700 per month. As part of the agreement, Mr. Smith agreed that during the term of his consulting arrangement at the company, and for one year thereafter, he will not directly or indirectly own, manage, control, participate in, consult with, render services to, or in any manner engage in any business which competes the company's business in the company's geographical area. In addition, Mr. Smith may not solicit the company's employees, customers or suppliers during the term of his employment at the company and for one year thereafter.

Effective January 15, 2001, Scott T. Larson resigned his position with Coram. In connection therewith, an incentive/retention bonus of $100,000 was paid to Mr. Larson in January 2001. Pursuant to Mr. Larson's employment agreement dated April 26, 1999, Mr. Larson agreed that during the term of his employment with the company, and for one year thereafter, he will not directly or indirectly own, manage, control, participate in, consult with, render services to, or in any manner engage in any business which competes with the company's business in the company's geographical area. In addition, Mr. Larson may not solicit the company's employees, customers or suppliers during the term of his employment at the company and for one year thereafter.

Domenic A. Meffe served as the Vice President and General Manager of the company's Coram Prescription Services ("CPS") division from November 1997 through July 2000 and was appointed to serve as the division's President in January 1998. Mr. Meffe had a severance agreement which was to provide him with compensation equal to a minimum of two year's annual salary, a transaction bonus of $500,000 upon the closing of a sale of the CPS division and a retention payment of $72,500 in the event that Mr. Meffe remained employed through the consummation of any such sale. However, in conjunction with the sale of the CPS division to Curascript Pharmacy Services, Inc. and Curascript PBM Services, Inc., which are newly formed affiliates of GTCR Golder Rauner, L.L.C. and are led by certain members of the former CPS management team, including Mr. Meffe, all the aforementioned agreements were effectively rescinded and, as a result, no severance or bonus payments were made.

The Debtors' bankruptcy proceedings and the corresponding impact of the United States Bankruptcy Code could impose certain limitations on the amount of severance that the company would be permitted to pay under the aforementioned employment agreements and contracts.

For employment agreement purposes, a "change in control" is generally defined as (i) a merger or consolidation in which the company is not the surviving entity; (ii) the sale, transfer or other disposition of all or substantially all the assets of the company; (iii) any reverse merger in which the company is the surviving entity but in which securities possessing more than fifty percent of the total combined voting power of Coram's outstanding securities are transferred to a person or persons different from the persons holding those securities immediately prior to such merger. The term "change of control" has been defined in a way that would disqualify any change of control resulting from the conversion by Coram's current debtholders of their current convertible debt instruments into stock of Coram.

## ITEM 12. SECURITY OWNERSHIP OF PRINCIPAL STOCKHOLDERS AND MANAGEMENT

The following table sets forth, as of March 30, 2001 (unless otherwise noted below), the number of shares of outstanding Coram common stock beneficially owned by (i) each person known to Coram to be the owner of more than 5% of the its outstanding common stock, (ii) each of the executive officers of the company as of December 31, 2000, (iii) each of the members of the Board of Directors of the company as of December 31, 2000, and (iv) all members of the Board of Directors and executive officers of Coram as a group. All information is taken from or based upon ownership filings made by such persons with the Securities and Exchange Commission (the "Commission") or upon information provided by such persons to Coram.

| Name and Address of Beneficial Owner (1) | Number of Shares of Common Stock (2) | Percentage of Shares of Common Stock Outstanding |
|---|---|---|
| Donald J. Amaral | 2,624,296 | 5.0% |
| William J. Casey | 81,900 | * |
| Daniel D. Crowley | 333,333 | * |
| Scott R. Danitz | 52,984 | * |
| Scott T. Larson | 124,931 | * |
| Allen J. Marabito | 166,666 | * |
| Vito Ponzio, Jr. | 177,881 | * |

53

JSP 01852

**A721**

| | | |
|---|---|---|
| L. Peter Smith | 117,581 | * |
| Sandra R. Smoley | 75,000 | * |
| All executive officers and directors, as a group (9 Persons) | 3,734,572 | 7.1 |
| Reporting Persons (as defined herein), as a group (3) | 6,993,409 | 14.1 |
| Cerberus Entities (4) | 21,190,076 | 29.9 |
| Foothill (5) | 8,633,779 | 14.8 |
| Goldman, Sachs (6) | 21,017,092 | 29.7 |

\* Less than 1%

(1) Unless otherwise indicated, the address of each person named above is 1125 Seventeenth Street, Suite 2100, Denver, Colorado 80202.

(2) The aggregate ownership numbers presented in the table above include shares of common stock acquirable upon exercise of common stock subject to options within 60 days for the following persons: Mr. Amaral 2,500,000; Mr. Casey 80,000; Mr. Crowley 333,333; Mr. Danitz 50,207; Mr. Larson 117,707; Mr. Marabito 166,666; Mr. Ponzio 170,857; Mr. L. Peter Smith 87,500 and Ms. Smoley 75,000. Mr. Larson resigned his position with the company on January 15, 2001. In connection therewith, his options to purchase shares of common stock were outstanding as of March 30, 2001 and are included in the table above, but such options expired on or about April 15, 2001. Except as indicated by footnote, Coram has been advised that the persons and entities named in the table above have sole voting and investment power with respect to all shares of common stock shown as beneficially owned by them.

(3) On July 14, 2000, an investor group seeking representation on the Coram Healthcare Corporation Board of Directors filed a Schedule 13D pursuant to Rule 13d-1(k)(1) of Regulation 13D-G under the Securities Exchange Act of 1934. As stated in such filing, the investor group was concerned that management may consider a restructuring that, absent representation of their interests, would be materially detrimental to their equity holdings. To protect their interests in the company, the investor group may engage in actions directly or through agents such that they may be deemed to constitute a "group" within the meaning of Section 13(d) (3) of the Securities Exchange Act of 1934, and as such, each of the members of such group are deemed to beneficially own all shares of stock owned by the entire group; however, each member of the group has disclaimed beneficial ownership of the shares held by the group. The most recent Schedule 13D/A filing on December 19, 2000 was on behalf of Jerome Blank; Andrew Blank; AEOW '96, LLC, a California limited liability company; Harry Heller Falk; F. Philip Handy; Heller Family Limited Partnership, a Florida limited partnership; the Bernard Osher Trust UTA dated 3-8-88, a California trust; JB Capital Management, Inc., a Florida Corporation; Bernard Osher; the RHH Company, a Florida Corporation and Richard L. Haydon (collectively referred to as the "Reporting Persons").

(4) Information with respect to Cerberus Partners, L.P. ("Cerberus"), Cerberus International, Ltd. ("International"), Ultra Cerberus Fund, Ltd. ("Ultra") and certain private investment funds (the "Other Funds") (Cerberus, International, Ultra and the Other Funds are collectively referred to as the "Cerberus Entities") are based on the Schedule 13D, Amendment No. 1, Amendment No. 2 and Amendment No. 3 thereto, dated June 30, 1998, August 26, 1998, April 9, 1999 and July 16, 2000, respectively, filed with the Commission and Coram's records reflecting the Series B Senior Subordinated Convertible Notes (the "Series B Notes") issued to the Cerberus Entities. The Cerberus Entities hold $42,380,152 principal amount of the Series B Notes of the company as of March 30, 2001. The Series B Notes are convertible, at the option of the holder thereof, into 21,190,076 shares of common stock of Coram at the rate of $2.00 per share.

Pursuant to an agreement between Cerberus and Goldman Sachs Credit Partners, L.P. ("GSCP"), dated April 22, 1997 (the "GSCP Agreement"), GSCP has the right to receive the dividends from, and the proceeds from the sale of, $9,597,796 principal amount (the "GSCP Interest") of the $17,995,868 principal amount of the Series B Notes held by Cerberus and the shares of common stock into which such Series B Notes relating to the GSCP Interest are convertible. In addition, certain unaffiliated entities, in the aggregate, have the right to receive the dividends from, and the proceeds from the sale of, $671,846 principal amount of Series B Notes and the shares of common stock into which such Series B Notes are convertible. The address for the Cerberus Entities is 450 Park Avenue, 28th Floor, New York, New York 10022.

(5) Information with respect to Foothill Capital Corporation is based on the Schedule 13G, Amendment No. 1 and Amendment No. 2 thereto dated June 30, 1998, August 26, 1998 and April 9, 1999, respectively, filed with the Commission and Coram's records reflecting Series B Notes issued to Foothill Capital Corporation. Such filings with the Commission were on behalf of The Foothill Group, Inc., a Delaware Corporation ("Group"); Foothill Capital Corporation, a California corporation ("Capital"); Foothill Partners II, L.P., a Delaware limited partnership ("Partners"); Foothill Income Trust, L.P., a Delaware limited partnership ("Foothill Trust"); FIT GP, LLC, a Delaware limited liability company ("FIT") and M. Edward Stearns, Karen S. Sandler, Dennis

54

JSP 01853

**A722**

R. Ascher, Jeffrey T. Nikora, and John F. Nickoll (collectively, the "Managing Partners/Members") and Peter E. Schwab and David C. Hilton (the "Managing Partners") (Group, Capital, Partners, Foothill Trust, FIT, the Managing Partners/Members and the Managing Partners are collectively referred to as "Foothill"). Group, the Managing Partners/Members and the Managing Partners are the general partners of Partners. Capital is a wholly-owned subsidiary of Group. FIT is the general partner of Foothill Trust and the Managing Partners/Members are the managing members of FIT. Accordingly, (i) Group, the Managing Partners/Members and the Managing Partners may be deemed to beneficially own the shares of common stock held by Partners, as its general partners, (ii) the Managing Partners/Members may be deemed to beneficially own the shares of common stock held by Foothill Trust as the managing members of the general partner of Foothill Trust, (iii) FIT may be deemed to beneficially own the shares of common stock held by Foothill Trust, as its general partner, and (iv) Group may be deemed to beneficially own the shares held by Foothill Capital as its sole shareholder. Foothill has a beneficial interest in all or part of $17,267,557 principal amount of the company's Series B Notes, which are convertible into 8,633,779 shares of common stock at a conversion price of $2.00 per share. The address for Foothill is 2450 Colorado Avenue, Suite 3000W, Santa Monica, California 90404.

(6) Goldman, Sachs & Co. ("GS") is an indirect wholly-owned subsidiary of The Goldman Sachs Group, Inc. ("GSG"). GSG is the 99% owner of GS Global Holdings L.L.C. ("GSGH"). GSGH is the general partner of Goldman Sachs Credit Partners, L.P. ("GSCP").

As of March 30, 2000, GS, GSG and GSGH may be deemed to own beneficially and indirectly in the aggregate 21,017,092 shares of common stock by reason of the ownership by GSCP of (a) $32,436,389 principal amount of the Series B Notes of the company issued pursuant to the Securities Exchange Agreement dated May 6, 1998, as amended (the "Securities Exchange Agreement"), which are convertible into 16,218,194 shares of common stock and (b) $9,597,796 principal amount of the Series B Notes issued pursuant to the Securities Exchange Agreement with the company which are convertible into 4,798,898 shares of common stock and are deemed to be beneficially and indirectly owned through the GSCP Interest. Under the terms of the Series B Notes the company has the right, in lieu of payment of interest in cash, to pay interest on each interest payment date through the issuance of additional Series B Notes in a principal amount equal to the amount of interest then due and owing. GS, GSG and GSGH each disclaim beneficial ownership of the securities reported herein, except to the extent of their pecuniary interest therein.

GSCP may be deemed to own beneficially and directly $32,436,389 principal amount of the Series B Notes issued pursuant to the Securities Exchange Agreement which are convertible into 16,218,194 shares of common stock and beneficially and indirectly $9,597,796 principal amount of the Series B Notes which are convertible into 4,798,898 shares of common stock pursuant to the GSCP Agreement. GSCP disclaims beneficial ownership of the securities reported herein, except to the extent of its pecuniary interest therein.

GS, a National Association of Securities Dealers member, is an investment banking firm that regularly performs services such as acting as a financial advisor and serving as principal or agent in the purchase and sale of securities. The address for Goldman, Sachs & Co. is 85 Broad Street, New York, New York 10004.

## ITEM 13. CERTAIN RELATIONSHIPS AND RELATED TRANSACTIONS

L. Peter Smith previously served on the Board of Directors of Sabratek Corporation ("Sabratek"), a manufacturer of medical devices. In December 1998, Coram agreed to amend its agreement with Sabratek to make Sabratek the company's sole supplier of multi-therapy infusion pumps and related proprietary telemedicine technology during the next ten years. This agreement contains a provision that allows either party to cancel the agreement upon 90 days notice. The pricing schedule applicable to the infusion pumps and related technology to be purchased was negotiated by certain of Coram's management after proposals from other manufacturers for comparable equipment had been solicited. The company purchased approximately $2.8 and $7.8 million of multi-therapy infusion pumps and related proprietary telemedicine technology from Sabratek Corporation during the years ended December 31, 1999 and 1998, respectively. Sabratek filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court in Delaware on December 17, 1999 and, in connection therewith, Coram filed a $1.3 million proof of claim in Sabratek's bankruptcy proceedings for vendor rebates earned but not paid. In January 2000, the assets and certain liabilities of Sabratek's Device Business were acquired by Baxter Healthcare Corporation ("Baxter"). Baxter subsequently filed a proof claim of approximately $0.3 million in the Debtors' bankruptcy proceedings for products purchased from Sabratek. Management is currently evaluating the validity of Baxter's proof of claim. Notwithstanding the separate proofs of claim filings, Baxter and the company have an ongoing amicable business relationship involving drugs, supplies and pumps sold by Baxter to the company.

JSP 01854

**A723**

On July 31, 2000, Coram completed the sale of its Coram Prescription Services ("CPS") business to a management-led group financed by GTCR Golder Rauner, L.L.C. for a one-time payment of approximately $41.3 million. See Note 5 to the company's Consolidated Financial Statements.

Stephen A. Feinberg, a former director of the company, is the managing member of Cerberus Associates, L.L.C., which is the general partner of Cerberus Partners, L.P., a party to the company's debtor-in-possession financing agreement, Senior Credit Facility and Securities Exchange Agreement (collectively the "Cerberus Entities"). The Cerberus Entities are also the investment managers for each of the International, Ultra and Other Funds. As of April 9, 2001, the Cerberus Entities held $28.2 million and $42.4 million principal amount of the company's Series A Senior Subordinated Unsecured Notes and Series B Senior Subordinated Unsecured Convertible Notes, respectively. No amounts are outstanding under the Senior Credit Facility, which expired on February 6, 2001; however, with the proceeds from the disposition of the CPS division, the company paid approximately $14.6 million to the Cerberus Entities in satisfaction of the outstanding balance on the Senior Credit Facility and a partial payment on the Series A Senior Subordinated Unsecured Notes. Contemporaneous with the expiration of the Senior Credit Facility, warrants held by the Cerberus Entities to purchase 680,124 shares of the company's common stock also expired. In connection with the Debtors' bankruptcy proceedings, effective August 30, 2000, the Debtors entered into a secured debtor-in-possession financing agreement with Madeleine L.L.C., an affiliate of the Cerberus Entities. Although the company has not borrowed any amounts under the debtor-in-possession financing arrangement, approximately $0.4 million was paid to the Cerberus Entities as origination fees.

On December 28, 2000, the Debtors announced the Bankruptcy Court's approval of their request to convert a sufficient amount of debt and related accrued interest to equity in the form of Coram, Inc. Series A Cumulative Preferred Stock in order to maintain compliance with the physician ownership and referral provisions of the Omnibus Budget Reconciliation Act of 1993 (commonly referred to as "Stark II"). On December 29, 2000, the Securities Exchange Agreement was amended ("Amendment No. 4") and an Exchange Agreement was simultaneously executed. Pursuant to such arrangements, the Cerberus Entities agreed to exchange approximately $45.0 million aggregate principal amount of the Series A Senior Subordinated Unsecured Notes (the "Series A Notes") and $3.8 million of aggregate unpaid accrued contractual interest on the Series A Notes and the Series B Senior Subordinated Unsecured Convertible Notes (the "Series B Notes") as of December 29, 2000 for approximately 417 shares of Coram, Inc. Series A Cumulative Preferred Stock (see Note 11 to the Consolidated Financial Statements for further details regarding the preferred stock). Pursuant to Amendment No. 4, the per annum interest rate on both the Series A Notes and the Series B Notes has been adjusted to 9.0%. Moreover, the Series A Notes' and Series B Notes' original scheduled maturity dates of May 2001 and April 2008, respectively, have both been modified to June 30, 2001.

Effective August 1, 1999, Mr. Crowley and Cerberus Capital Management, L.P. (an affiliate of the Cerberus Entities) executed a three-year employment agreement whereby Mr. Crowley provides certain services and is paid $960,000 per annum, plus the potential of performance related bonus opportunities. Additionally, Mr. Crowley is entitled to expense reimbursements and participation in the vacation, pension, profit sharing, life insurance, hospitalization, major medical and other employee benefit plans as may be offered by the Cerberus Entities. The bonuses contemplated under the agreement are predicated on a sophisticated set of financial criteria that principally relate to the fiscal performance, market value and disposition proceeds of the Cerberus Entities' equity investees. Moreover, Mr. Crowley maintains an option to purchase up to 3% of the capital stock in the Cerberus Entities' equity investees, exclusive of Coram. The employment agreement is subject to automatic one year extensions unless either party provides written notice within 60 days of the original expiration date or subsequent renewal dates. The Cerberus Entities may also unilaterally terminate the employment agreement with written notice; however, all unpaid salary and bonuses on the remaining term of the initial three-year agreement, as well as participation in employee benefit plans, would continue to be obligations of the Cerberus Entities pursuant to the terms and conditions of the employment agreement. Termination for cause, disability, death and breach of the employment contract result in varying degrees of severance and employee benefit plan participation. The services rendered by Mr. Crowley include, but are not limited to, business and strategic healthcare investment advice to executive management at the Cerberus Entities. Moreover, Mr. Crowley is the Chairman of the Board of Directors of Winterland Productions, Inc. ("Winterland"), a privately held affinity merchandise company, which is a portfolio investment of the Cerberus Entities. On January 2, 2001, Winterland voluntarily filed for protection under Chapter 11 of the United States Bankruptcy Code in the Northern District of California.

Mr. Crowley is the Chairman, Chief Executive Officer and President of Dynamic Healthcare Solutions, LLC ("DHS"), a privately held management consulting and investment firm. Coram utilized the consulting services of Mr. Crowley's company and made payments for these services and certain reimbursable expenses. For the year ended December 31, 2000, the company paid approximately $0.7 million to Mr. Crowley's consulting company for consulting services and reimbursable expenses. Effective with the Debtors' Chapter 11 filings in the Bankruptcy Court, DHS employees who were serving as consultants to Coram terminated their employment with DHS and became full time Coram employees. Coram continues to reimburse DHS for the actual overhead costs of

56

JSP 01855

A724

DHS' Sacramento, California location that are directly attributable to the duties Mr. Crowley performs on behalf of Coram. Such reimbursements do not include any element of profit for DHS.

PART IV

**ITEM 14. EXHIBITS, FINANCIAL STATEMENT SCHEDULES AND REPORTS ON FORM 8-K**

(a) The following documents are filed as part of this report:

1. *Financial Statements.* The following Consolidated Financial Statements of the registrant and Report of Independent Auditors are presented on pages F-1 and thereafter:

Report of Independent Auditors

Consolidated Balance Sheets -- December 31, 2000 and 1999

Consolidated Statements of Income -- Years ended December 31, 2000, 1999 and 1998

Consolidated Statements of Stockholders' Equity -- Years ended December 31, 2000, 1999 and 1998

Consolidated Statements of Cash Flows -- Years ended December 31, 2000, 1999 and 1998

Notes to Consolidated Financial Statements

2. *Financial Statement Schedule.* The following consolidated financial statement schedule of the registrant for the years ended December 31, 2000, 1999 and 1998 is presented following the Notes to Consolidated Financial Statements.

Schedule II -- Valuation and Qualifying Account

Schedules not listed above have been omitted because they are not applicable or are not required or the information required to be set forth therein is included in the Consolidated Financial Statements or notes thereto.

(b) Reports on Form 8-K.

On January 16, 2001, Coram Healthcare Corporation filed a report on Form 8-K regarding an order denying acceptance of the joint plan of reorganization of Coram Healthcare Corporation and its wholly-owned subsidiary, Coram, Inc., by the United States Bankruptcy Court for the District of Delaware.

On April 4, 2001, Coram Healthcare Corporation filed a report on Form 8-K relating to the settlement agreement entered into by and among Coram Resource Network, Inc., Coram Independent Practice Association, Inc., Coram Healthcare Corporation and Coram, Inc.

On April 4, 2001, Coram Healthcare Corporation filed a report on Form 8-K announcing the approval by the United States Bankruptcy Court for the District of Delaware of the company's request to exchange a sufficient amount of debt and related accrued interest for equity in the form of Coram, Inc. Series A Cumulative Preferred Stock.

(c) Exhibits

Included as exhibits are the items listed on the Exhibit Index. The registrant will furnish a copy of any of the exhibits listed below upon payment of $5.00 per exhibit to cover the costs to the registrant of furnishing such exhibit.

JSP 01856

| Exhibit Number | | Exhibit |
|---|---|---|
| 2.1 | -- | Agreement and Plan of Merger dated as of February 6, 1994, by and Among the registrant, T³, Curaflex, HealthInfusion, Medisys, T³ Acquisition company, CHS Acquisition company, HII Acquisition company and MI Acquisition company (Incorporated by reference to Exhibit 2.1 of Registration No. 33-53957 on Form S-4). |
| 2.2 | -- | First Amendment to Agreement and Plan of Merger dated as of May 25, 1994, by and among the registrant, T³ Curaflex, HealthInfusion, Medisys, T³ Acquisition company, CHS Acquisition company, HII Acquisition company and MI Acquisition company (Incorporated by reference to Exhibit 2.2 of Registration No. 33-53957 on Form S-4). |
| 2.3 | -- | Second Amendment to Agreement and Plan of Merger dated as of July 8, 1994 by and among the registrant, T³, Curaflex, HealthInfusion, Medisys, T³ Acquisition company, CHS Acquisition company, HII Acquisition company and MI Acquisition company (Incorporated by Reference to Exhibit 2.3 of the registrant's Current Report on Form 8-K dated as of July 15, 1994). |
| 2.4 | -- | Asset Sale and Note Purchase Agreement, (the "Asset Purchase Agreement") among the registrant, Caremark International Inc. and Caremark Inc. dated as of January 29, 1995 (Incorporated by reference to Exhibit C of the registrant's Current Report on Form 8-K dated April 6, 1995).(a) |
| 2.5 | -- | Agreement and Plan of Merger among the registrant, CHC Acquisition Corp. and Lincare Holdings Inc., (the "Lincare Merger Agreement") dated as of April 17, 1995 (Incorporated by reference to Exhibit B of The registrant's Current Report on Form 8-K dated May 2, 1995).(a) |
| 2.6 | -- | Agreement and Plan of Merger entered into as of October 19, 1996, Among Coram Healthcare Corporation, Integrated Health Services, Inc. and IHS Acquisition XIX, Inc. (Incorporated by reference to Exhibit 2.1 of the registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1996). |
| 2.7 | -- | Purchase Agreement by and between Integrated Health Services, Inc., T³ Medical, Inc., Coram Healthcare Corporation of Greater New York and Coram Healthcare Corporation. (Incorporated by reference to Exhibit 2 of the registrant's Current Report on Form 8-K dated as of August 20, 1997). |
| 2.8 | -- | Side Agreement dated as of September 30, 1997 among Coram Healthcare Corporation, T³ Medical, Inc., Coram Healthcare Corporation of Greater New York and Integrated Health Services, Inc. (Incorporated by reference to Exhibit 2.1 of the registrant's Current Report on Form 8-K dated as of September 30, 1997). |
| 2.9 | -- | Purchase Agreement by and between Curaflex Health Services, Inc., Coram Healthcare Corporation, Curascript Pharmacy, Inc., Curascript PBM Services, Inc. and GTCR Fund VI, L.P., dated July 31, 2000. (Incorporated by reference to Exhibit 2.1 of the registrant's Current Report on Form 8-K dated as of July 31, 2000). |
| 2.10 | -- | Debtor-In-Possession Financing Agreement dated August 30, 2000, by and among Coram Healthcare Corporation and Coram, Inc. and Madeleine L.L.C. (Incorporated by reference to Exhibit 2.1 of the registrant's Current Report on Form 8-K dated as of September 13, 2000). |
| 3.1 | -- | Certificate of Incorporation of registrant, as amended through May 1, 1994 (Incorporated by reference to Exhibit 3.1 of Registration No. 33-53957 on Form S-4). |
| 3.2 | -- | Bylaws of registrant (Incorporated by reference to Exhibit 3.2 of Registration No. 33-53957 on Form S-4). |

JSP 01857

**A726**

| 3.3 | -- | Certificate of Amendment of the registrant's Certificate of Incorporation (Incorporated by reference to Exhibit 3.3 of the registrant's Annual Report on Form 10-K for the year ended December 31, 1997). |
| 4.1 | -- | Form of Common Stock Certificate for the registrant's common stock, $.001 par value per share. (Incorporated by reference to Exhibit 4.1 of the registrant's Annual Report on Form 10-K for the year ended December 31, 1994). |
| 4.2 | -- | Form of Common Stock Certificate for the registrant's common stock, par value $0.001, including legend thereon in respect of the Stockholder Rights Agreement which exhibit is hereby incorporated by reference thereto. |
| 4.3 | -- | Form of Certificate of Designation, Preferences and Rights of the registrant's Series X Participating Preferred Stock (filed as Exhibit A to the Stockholder Rights Agreement, which was filed as Exhibit 1 To the registrant's Current Report on Form 8-K dated as of June 25, 1997, and which exhibit is hereby incorporated by reference thereto). |
| 4.4 | -- | Form of Certificate of Designation, Preferences and Relative, Participating, Optional and Other Special rights of Preferred Stock and Qualifications, Limitations and Restrictions Thereof, dated December 29, 2000. (Incorporated by reference to Exhibit 4.1 of the registrant's Current Report on Form 8-K dated as of December 28, 2000). |
| 10.1 | -- | Amended and Restated Credit Agreement dated as of February 10, 1995, by and among Curaflex, $T^3$, HealthInfusion, Medisys, and HMSS as Co-Borrowers, Toronto Dominion (Texas), Inc., as Agent (the "Amended Credit Agreement") (Incorporated by reference to Exhibit 10.1 of the registrant's Annual Report on Form 10-K for the year ended December 31, 1994).(a) |
| 10.2 | -- | Form of Employment Agreement between the registrant and Charles A. Laverty (Incorporated by reference to Exhibit 10.1 of Registration No. 33-53957 on Form S-4). |
| 10.3 | -- | Form of Severance/Non-Compete Agreement between the registrant and Miles E. Gilman (Incorporated by reference to Exhibit 10.2 of Registration No. 33-53957 on Form S-4). |
| 10.4 | -- | Form of Severance/Non-Compete Agreement between the registrant and William J. Brummond (Incorporated by reference to Exhibit 10.3 of Registration No. 33-53957 on Form S-4). |
| 10.5 | -- | Form of Severance/Non-Compete Agreement between the registrant and Tommy H. Carter (Incorporated by reference to Exhibit 10.4 of Registration No. 33-53957 on Form S-4). |
| 10.6 | -- | Form of Indemnification Agreement between the registrant and each of the registrant's directors and certain executive officers. (Incorporated by reference to Exhibit 10.6 of the registrant's Form 10-K for the year ended December 31, 1994). Revised Incorporated by reference to Exhibit 10.7 of the registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1999. |
| 10.7 | -- | Registrant's 1994 Stock Option/Stock Issuance Plan and related Forms of agreements (Incorporated by reference to Exhibit 10.15 of Registration No. 33-53957 on Form S-4). |
| 10.8 | -- | Registrant's Employee Stock Purchase Plan (Incorporated by reference to Exhibit 10.16 of Registration No. 33-53957 on Form S-4). |
| 10.9 | -- | 401(k) Plan of $T^3$ Medical, Inc. dated December 8, 1989 (Incorporated by Reference to Exhibit 10(s) of $T^3$ Annual Report on Form 10-K for the fiscal year ended September 30, 1989, filed with the Commission on or about December 29, 1988.) |
| 10.10 | -- | 1988 Stock Option Plan of $T^3$ Medical, Inc., as amended and |

59

JSP 01858

restated as of July 31, 1990 and as further amended as of (i) August 20, 1991; (ii) November 12, 1991; and (iii) July 6, 1992 (Incorporated by reference to Exhibit 10.18 of Registration No. 33-53957 on Form S-4).

10.11 -- Curaflex 1989 Stock Option Plan (Incorporated by reference to Exhibit 10.53 of Registration No. 33-53957 on Form S-4).

10.12 -- Curaflex Amended 1990 Stock Option Plan (Incorporated by reference to Exhibit 10.54 of Registration No. 33-53957 on Form S-4).

10.13 -- Curaflex Directors' Nonqualified Stock Option Plan (Incorporated by reference to Exhibit 10.59 of Registration No. 33-53957 on Form S-4).

10.14 -- Clinical Homecare Ltd. 1990 Incentive Stock Option Plan, as amended (Incorporated by reference to Exhibit 10.61 of Registration No. 33-53957 on Form S-4).

10.15 -- Clinical Homecare Ltd. 1990 Stock Option Plan, as amended (Incorporated by reference to Exhibit 10.62 of Registration No. 33-53957 on Form S-4).

10.16 -- 1989 Stock Option Plan of Medisys (Incorporated by reference to Exhibit 10.85 of Registration No. 33-53957 on Form S-4).

10.17 -- Form of Non-Plan Option Agreement of Medisys (Incorporated by Reference to Exhibit 10.86 of Registration No. 33-53957 on Form S-4).

10.18 -- Credit Agreement among Coram Healthcare Corporation, Coram, Inc., the Lenders named therein and Chemical Bank, as Administrative Agent, Collateral Agent and Fronting Bank (the "Senior Credit Facility") dated as of April 6, 1995. (Incorporated by reference to Exhibit D of the registrant's Current Report on Form 8-K dated April 6, 1995).(a)

10.19 -- First Amendment and Waiver to the Credit Agreement, dated as of August 9, 1995, together with exhibits hereto, among the registrant, Coram Inc., each Subsidiary Guarantor (as defined therein), the Financial Institutions party thereto (as defined therein), and Chemical Bank as Agent. (Incorporated by reference to Exhibit 10.19 of the registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1995).(a)

10.20 -- Second Amendment to the Credit Agreement dated as of September 7, 1995, by and among the registrant, Coram Inc., each Subsidiary Guarantor (as defined therein), the Financial Institutions party thereto (as defined therein), and Chemical Bank as Agent. (Incorporated by reference to Exhibit 10.20 of the registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1995).(a)

10.21 -- Third Amendment and Limited Waiver to the Credit Agreement, dated as of September 29, 1995, by and among the registrant, Coram Inc., each Subsidiary Guarantor (as defined therein), the Financial Institutions party thereto (as defined therein), and Chemical Bank as Agent (Incorporated by reference to Exhibit 10.21 of the registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1995).(a)

10.22 -- Fourth Amendment and Limited Waiver to the Credit Agreement and First Amendment to Security Documents dated as of October 13, 1995, together with selected exhibits thereto, by and among the registrant, Coram Inc., each Subsidiary Guarantor (as defined therein), the Financial Institutions Party thereto (as defined therein) and Chemical Bank as Agent (Incorporated by reference to the company's Current Report on Form 8-K as filed October 24, 1995).

10.23 -- Warrant Agreement dated as of October 13, 1995, among the registrant, Coram Inc., and the other parties specified therein (Incorporated by reference to the company's Current

60

JSP 01859

Report on Form 8-K as filed October 24, 1995).

10.24 -- Amendment and Limited Waiver to Bridge Securities Purchase Agreement, dated as of October 13, 1995, by and among the registrant, Coram Inc., and Donaldson, Lufkin & Jenrette. (Incorporated by reference to Exhibit 10.24 of the registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1995).(a)

10.25 -- Form of Employment Agreement, Amendment No. 1 and Amendment No. 2 dated as of April 23, 1999, of Employment Agreement between the registrant and Donald J. Amaral. (Incorporated by reference to Exhibit 10.25 and 10.04 of the registrant's Quarterly Report on Form 10-Q for the quarters ended September 30, 1995, June 30, 1998, and September 30, 1999, respectively).

10.26 -- Securities Purchase Agreement ("Securities Purchase Agreement") and Form of Subordinated Bridge Note, dated as of April 6, 1995, among Coram Inc., Coram Funding, Inc. and the registrant (Incorporated by reference to Exhibit E of the registrant's Current report on Form 8-K dated April 6, 1995).(a)

10.27 -- Exclusive Distribution Agreement--Healthcare Products and Biomedical Equipment and Services Agreement between Medical Specialties Distributors, Inc. ("MSD") and Coram, dated as of June 1, 1996. (Incorporated by reference to Exhibit 10.1 of the registrant's Quarterly Report on Form 10-Q/A Amendment No. 1 for the quarter ended June 30, 1996).

10.28 -- Medical Specialties Master Service Agreement between MSD and Coram, dated as of June 1, 1996. (Incorporated by reference to Exhibit 10.2 of the registrant's Quarterly Report on Form 10-Q/A Amendment No. 1 for the quarter ended June 30, 1996).

10.29 -- Medical Specialties Master Rental Agreement between MSD and Coram, dated as of June 1, 1996. (Incorporated by reference to Exhibit 10.3 of the registrant's Quarterly Report on Form 10-Q/A Amendment No. 1 for the quarter ended June 30, 1996).

10.30 -- Coram Healthcare Litigation Memorandum of Understanding between all Parties to In re Coram Healthcare Corp. Securities Litigation, Master File No. 95-N-2074 and Shevde v. Sweeney et al., Civil Action No. 96-N-722, dated as of August 5, 1996. (Incorporated by reference to Exhibit 10.4 of the registrant's Quarterly Report on Form 10-Q/A Amendment No. 1 for the quarter ended June 30, 1996).

10.31 -- Fifth Amendment to the Credit Agreement dated as of February 6, 1996, by and among the registrant, Coram Inc., each Subsidiary Guarantor (as defined therein), the Financial Institutions party thereto (as described therein), and Chemical Bank as Agent. (Incorporated by reference to Exhibit 99.1 of the registrant's Quarterly Report on Form 10-Q for the quarter ended March 31, 1996).(a)

10.32 -- Sixth Amendment to Credit Agreement dated as of April 19, 1996, by and among the registrant, Coram Inc., each Subsidiary Guarantor (as defined therein), the Financial Institutions party thereto (as described therein), and Chemical Bank as Agent. (Incorporated by reference to Exhibit 99.2 of the registrant's Quarterly Report on Form 10-Q for the quarter ended March 31, 1996)(a)

10.33 -- Seventh Amendment to Credit Agreement dated as of July 3, 1996, by and among the registrant, Coram Inc., each Subsidiary Guarantor (as defined therein), the Financial Institutions party thereto (as described therein), and Chemical Bank as Agent. (Incorporated by reference to Exhibit 99.1 of the registrant's Quarterly Report on Form 10-Q/A Amendment No. 1 for the quarter ended June 30, 1996).(a)

10.34 -- Eighth Amendment to Credit Agreement dated as of December 3, 1996, By and among the registrant, Coram Inc., each Subsidiary

61

JSP 01860

Guarantor as defined therein), the Financial Institutions party thereto (as described therein), and Chase Manhattan Bank as Agent.(a)

10.35 — Ninth Amendment and Limited Waiver to the Credit Agreement dated as of March 14, 1997, by and among the registrant, Coram Inc., each Subsidiary Guarantor (as defined therein), the Financial Institutions party thereto (as described therein), and Chase Manhattan Bank as Agent.(a)

10.36 — Amended Agreement, dated as of March 28, 1997 by and among the registrant, Coram Inc., and Donaldson, Lufkin & Jenrette.(a)

10.37 — Sabratek Corporation and Coram Healthcare Exclusive Supply Agreement for IV Infusion Pumps, IV Disposable Sets and Related Items, dated as of February 26, 1997.

10.38 — Amendment to 9% Subordinated Convertible Debenture and Notice of Conversion dated as of June 30, 1996, by and among the registrant, Coram Inc., and the other parties specified therein (Incorporated by reference to the company's report on Form 8-K as filed on July 12, 1996).

10.39 — Tenth Amendment to Credit Agreement dated June 2, 1997, by and Among the registrant, Goldman Sachs Credit Partners L.P., Coram, Inc., each Subsidiary Guarantor (as defined therein) and The Chase Manhattan Bank, as administrative agent and collateral agent for the Lenders named therein, to that certain Credit Agreement dated as of April 6, 1995, by and among the registrant, Coram, Inc, each Subsidiary Guarantor (as defined therein), the Financial Institutions named therein and the Chase Manhattan Bank, as collateral agent for the Lenders named therein (Incorporated by reference to Exhibit 99 of the registrant's Current Report on Form 8-K dated as of June 2, 1997).(a)

10.40 — Letter Agreement of March 29, 1998 by and among Cerberus Partners, L.P., Goldman Sachs Credit Partners, L.P. and Foothill Capital Corporation on the one hand, and Coram Healthcare Corporation, on the other, deferring the payment of interest and fees pursuant to (i) the Securities Purchase Agreement dated as of April 6, 1995 and (ii) the Letter Agreement dated March 28, 1997 between Coram Funding, Inc. and Coram Healthcare Corporation. (Incorporated by reference to Exhibit 10.40 of the registrant's Annual Report on Form 10-K for the year ended December 31, 1997).

10.41 — Prime Vendor Agreement and Letter Amendment, dated October 14, 1999, between Coram Healthcare Corporation and Cardinal Health, Inc. Certain portions of the Prime Vendor Agreement have been omitted pursuant to a request for confidential treatment. The entire Prime Vendor Agreement has been filed confidentially with the Securities Exchange Commission. (Incorporated by reference to Exhibit 10.1 of the registrant's Quarterly Report on Form 10-Q for the quarters ended September 30, 1998 and 1999, respectively).

10.42 — Amendment No. 1 and Waiver to the Securities Exchange Agreement among the registrant, Cerberus Partners, L.P., Goldman Sachs Credit Partners L.P., and Foothill Capital Corporation. (Incorporated by reference to Exhibit 10.01 of the registrant's Quarterly Report on Form 10-Q for the quarter ended June 30, 1998).

10.43 — Promissory Notes and Security Agreement dated July 21, 1998 among the registrant and Foothill Capital Corporation, as collateral agent for Cerberus Partners, L.P., Goldman Sachs Credit Partners L.P. and Foothill Partners III, L.P. and their respective successors and assigns. (Incorporated by reference to Exhibit 10.02 of the registrant's Quarterly Report on Form 10-Q for the quarter ended June 30, 1998).

10.44 — Request for Deferral of Interest Payment under the Series B Convertible Subordinated Notes due 2008 and the related Securities Exchange Agreement, dated May 6, 1998, by and

JSP 01861

**A730**

|  |  | between Coram, Inc., Coram Healthcare Corporation, Cerberus Partners, L.P., Goldman SachsCredit Partners, L.P. and Foothill Capital Corporation, as amended (Incorporated by reference to Exhibit 10.03 of the registrant's Quarterly Report on Form 10-Q for the quarter ended June 30, 1998). |
| 10.45 | -- | Securities Exchange Agreement among the company, Cerberus Partners, L.P., Goldman Sachs Credit Partners, L.P., and Foothill Capital Corporation. (Incorporated by reference to Exhibit 10.01 of the registrant's Quarterly Report on Form 10-Q for the quarter ended March 31, 1998).(a) |
| 10.46 | -- | Form of Letter of Credit required by the Master Agreement by and between the registrant and its applicable affiliates and Aetna U.S.Healthcare, Inc. and its applicable affiliates (Incorporated by reference to Exhibit 10.02 of the registrant's Quarterly Report on Form 10-Q for the quarter ended March 31, 1998). |
| 10.47 | -- | Addendum amendment to Sabratek Corporation and Coram Healthcare for IV Infusion pumps, IV Disposable Sets and Related Items, dated as of February 26, 1997, as of December 7, 1998. |
| 10.48 | -- | Employment Agreement and Agreement between the company and Richard M. Smith, dated as of April 26, 1999 and November 11, 1999, respectively. (Incorporated by reference to Exhibits 10.4 and 10.2, respectively of the registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1999). |
| 10.49 | -- | Employment Agreement, between the company and Wendy L. Simpson, dated as of April 26, 1999. (Incorporated by reference to Exhibit 10.5 of the registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1999). |
| 10.50 | -- | Employment Agreement, between the company and Joseph D. Smith, dated as of April 26, 1999. (Incorporated by reference to Exhibit 10.6 of the registrant's Quarterly Report on Form 10-Q for the quarter ended September 30, 1999). |
| 10.51 | -- | Employment Agreement, between the company and Daniel D. Crowley, dated as of November 30, 1999, together with Amendment No. 1 thereto. |
| 10.52 | -- | Employment Agreement, between the company and Allen J. Marabito, dated as of November 30, 1999, together with amendment No. 1 thereto. |
| 10.53 | -- | First Amendment to Prime Vendor Agreement, dated as of January 1, 2000 by and between the company and Cardinal Health, Inc. |
| 10.54 | -- | Second Amendment to Employment Agreement, between the company and Daniel D. Crowley, dated as of April 6, 2000. (Incorporated by reference to Exhibit 10.1 of the registrant's Quarterly Report on Form 10-Q for the quarter ended March 31, 2000). |
| 10.55 | -- | Settlement agreement entered into by and among Coram Resource Network, Inc., Coram Independent Practice Association, Inc., Coram Healthcare Corporation and Coram, Inc. (Incorporated by reference to Exhibit 10.1 of the registrant's Current Report on Form 8-K dated as of November 17, 2000). |
| 10.56 | -- | Amendment No. 4, dated December 29, 2000, in respect of the Securities Exchange Agreement dated as of May 6, 1998, among Coram Healthcare Corporation, Coram, Inc., Cerberus Partners, L.P., Goldman Sachs Credit Partners, L.P. and Foothill Capital Corporation. (Incorporated by reference to Exhibit 10.1 of the registrant's Current Report on Form 8-K dated as of December 28, 2000). |
| 10.57 | -- | Exchange Agreement, dated December 29, 2000, among Coram, Inc., Goldman Sachs Credit Partners, L.P., Cerberus Partners, L.P. and Foothill Capital Corporation. (Incorporated by reference to Exhibit 10.2 of the registrant's Current Report |

JSP 01862

**A731**

on Form 8-K dated as of December 28, 2000).

| 10.58 | -- | Third Amendment to Employment Agreement, between the company and Daniel D. Crowley, dated August 2, 2000.* |
|-------|----|------|
| 10.59 | -- | Employment Agreement, between the company and Scott R. Danitz, dated August 1, 2000.* |
| 10.60 | -- | Employment Agreement, between the company and Vito Ponzio, Jr, dated April 26, 1999.* |
| 10.61 | -- | Consulting Services Agreement, between the company and Joseph D. Smith, dated June 30, 2000.* |
| 10.62 | -- | Consulting Services Agreement, between the company and Donald J. Amaral, dated May 16, 2000.* |
| 20.1 | -- | Stockholder Rights Agreement (the "Stockholder Rights Agreement"), dated as of June 25, 1997, between Coram Healthcare Corporation and BankBoston, N.A., which includes the form of Certificate of Designation, Preferences and Rights setting forth the terms of the Series X Participating Preferred Stock, par value $0.001 per share, as Exhibit A, the Summary of Stockholder Rights Agreement as Exhibit B and the form of Right Certificate as Exhibit C. Pursuant to the Stockholder Rights Agreement, printed Right Certificates will not be mailed until as soon as practicable after the earlier of the tenth business day after public announcement that a person or group has become an Acquiring Person or the tenth business day after a person commences, or announces its intention to commence, a tender offer or exchange offer the consummation of which would result in such person becoming an Acquiring Person. (Incorporated by reference Exhibit 1 of the registrant's Current Report on Form 8-K dated as of June 25, 1997). |
| 21.1 | -- | Subsidiaries of the registrant.* |
| 23.1 | -- | Consent of Ernst & Young LLP.* |

(a) Certain exhibits and schedules of this Exhibit have been omitted. The registrant agrees to furnish supplementally any omitted schedule or exhibit to the Securities and Exchange Commission.

*    Filed herewith.

JSP 01863

## SIGNATURES

Pursuant to the requirements of Section 13 or 15(d) of the Securities Exchange Act of 1934, as amended, the registrant has duly caused this report to be signed on its behalf by the undersigned, thereunto duly authorized, on April 16, 2001.

CORAM HEALTHCARE CORPORATION

By: _____/s/ DANIEL D. CROWLEY_____
Daniel D. Crowley
*Chairman of the Board of Directors,*
*Chief Executive Officer and President*

By: _____/s/ SCOTT R. DANITZ_____
Scott R. Danitz
*Senior Vice President, Chief Financial Officer*
*and Treasurer*

Pursuant to the requirements of the Securities Exchange Act of 1934, this report has been signed below by the following persons on behalf of the registrant and in the capacities on the dates indicated.

| | | |
|---|---|---|
| /s/ DANIEL D. CROWLEY<br>Daniel D. Crowley | Chairman of the Board<br>of Directors, Chief<br>Executive Officer and<br>President | April 16, 2001 |
| /s/ DONALD J. AMARAL<br>Donald J. Amaral | Director | April 16, 2001 |
| /s/ WILLIAM J. CASEY<br>William J. Casey | Director | April 16, 2001 |
| /s/ L. PETER SMITH<br>L. Peter Smith | Director | April 16, 2001 |
| /s/ SANDRA R. SMOLEY<br>Sandra R. Smoley | Director | April 16, 2001 |

JSP 01864

A733

FEB 09 2001 16:45 FR CORHM LEGAL    503 298 0047 TO 15506953654    P.02/21

## CORAM HEALTHCARE CORPORATION

## RESOLUTIONS OF THE INDEPENDENT COMMITTEE/MEMBERS OF THE BOARD OF DIRECTORS

### February 9, 2001

EXHIBIT *Goldin 3*

MAR 2 1 2007

Danielle Grant

### INDEPENDENT RESTRUCTURING ADVISOR

WHEREAS, following the denial of approval of the Plan of Reorganization for the company in December 2000, the Company's independent Board members have sought an independent advisor to review and ascertain an appropriate course of action as to the plan of reorganization;

AND WHEREAS, the Independent Members of the Board of Directors, after due consideration, deems it advisable and in the best interest of Coram Healthcare Corporation ("Corporation") and its shareholders to retain and employ an Independent Restructuring Advisor in connection with the Corporation's Plan of Reorganization.

AND WHEREAS, after due diligence in reviewing the credentials and availability of several groups of advisors specializing in bankruptcy and reorganization matters, the Independent Members of the Board of Directors desire to engage the firm of Goldin Associates, L.L.C. as Independent restructuring Advisor to the Company;

NOW, THEREFORE, BE IT:

RESOLVED, that the firm of Goldin Associates, L.L.C. 28th Floor, 767 Fifth Avenue, New York, New York 10159 be, and hereby are, employed by the Corporation as Independent Restructuring Advisors in connection with the Corporation's Plan of Reorganization in the Chapter 11 case and in all proceedings.

NOW, THEREFORE, that, effective as of this date, Goldin Associates, L.L.C. are hereby retained and employed as Independent Restructuring Advisors pursuant to the terms and conditions set forth in the attached Exhibit A.

IN WITNESS WHEREOF, the undersigned have executed this Unanimous Written Consent as of this _____ day of February 2001.

| | |
|---|---|
| _____ | _____ |
| Donald J. Amaral | William J. Casey |
| | |
| _____ | _____ |
| Sandra R. Smoley | L. Peter Smith |

h:\legal\erik\board resolutions\goldin resolution.doc

## CORAM HEALTHCARE CORPORATION

## RESOLUTIONS OF THE INDEPENDENT COMMITTEE/MEMBERS OF THE BOARD OF DIRECTORS

### February 9, 2001

#### INDEPENDENT RESTRUCTURING ADVISOR

WHEREAS, following the denial of approval of the Plan of Reorganization for the company in December 2000, the Company's independent Board members have sought an independent advisor to review and ascertain an appropriate course of action as to the plan of reorganization;

AND WHEREAS, the Independent Members of the Board of Directors, after due consideration, deems it advisable and in the best interest of Coram Healthcare Corporation ("Corporation") and its shareholders to retain and employ an Independent Restructuring Advisor in connection with the Corporation's Plan of Reorganization.

AND WHEREAS, after due diligence in reviewing the credentials and availability of several groups of advisors specializing in bankruptcy and reorganization matters, the Independent Members of the Board of Directors desire to engage the firm of Goldin Associates, L.L.C. as Independent restructuring Advisor to the Company;

NOW, THEREFORE, BE IT:

RESOLVED, that the firm of Goldin Associates, L.L.C. 28th Floor, 767 Fifth Avenue, New York, New York 10159 be, and hereby are, employed by the Corporation as Independent Restructuring Advisors in connection with the Corporation's Plan of Reorganization in the Chapter 11 case and in all proceedings.

NOW, THEREFORE, that, effective as of this date, Goldin Associates, L.L.C. are hereby retained and employed as Independent Restructuring Advisors pursuant to the terms and conditions set forth in the attached Exhibit A.

IN WITNESS WHEREOF, the undersigned have executed this Unanimous Written Consent as of this _____ day of February 2001.


_____
Donald J. Amaral


_____
Sandra R. Smoley

_____
William J. Casey


_____
L. Peter Smith


h:\legal\erik\board resolutions\goldin resolution.doc

## CORAM HEALTHCARE CORPORATION

## RESOLUTIONS OF THE INDEPENDENT COMMITTEE/MEMBERS OF THE BOARD OF DIRECTORS

### February 9, 2001

### INDEPENDENT RESTRUCTURING ADVISOR

WHEREAS, following the denial of approval of the Plan of Reorganization for the company in December 2000, the Company's independent Board members have sought an independent advisor to review and ascertain an appropriate course of action as to the plan of reorganization;

AND WHEREAS, the Independent Members of the Board of Directors, after due consideration, deems it advisable and in the best interest of Coram Healthcare Corporation ("Corporation") and its shareholders to retain and employ an Independent Restructuring Advisor in connection with the Corporation's Plan of Reorganization.

AND WHEREAS, after due diligence in reviewing the credentials and availability of several groups of advisors specializing in bankruptcy and reorganization matters, the Independent Members of the Board of Directors desire to engage the firm of Goldin Associates, L.L.C. as Independent restructuring Advisor to the Company;

NOW, THEREFORE, BE IT:

RESOLVED, that the firm of Goldin Associates, L.L.C. 28th Floor, 767 Fifth Avenue, New York, New York 10159 be, and hereby are, employed by the Corporation as Independent Restructuring Advisors in connection with the Corporation's Plan of Reorganization in the Chapter 11 case and in all proceedings.

NOW, THEREFORE, that, effective as of this date, Goldin Associates, L.L.C. are hereby retained and employed as Independent Restructuring Advisors pursuant to the terms and conditions set forth in the attached Exhibit A.

IN WITNESS WHEREOF, the undersigned have executed this Unanimous Written Consent as of this _____ day of February 2001.


_____                    _____
Donald J. Amaral                               William J. Casey


*Sandra R. Smoley*
_____                    _____
Sandra R. Smoley                               L. Peter Smith


h:\legal\erik\board resolutions\goldin resolution.doc

MAR-01-01 16:22    FROM-

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

In re:                                          )
                                                )    Chapter 11
CORAM HEALTHCARE CORP. and                      )
CORAM, INC.,                                     )
                                                )    Case No. 00-3299 (MFW)
                        Debtors.                 )    (Jointly Administered)
                                                )

### ORDER APPOINTING GOLDIN ASSOCIATES, L.L.C.
### AS INDEPENDENT RESTRUCTURING ADVISORS

Upon the annexed Motion (the "Motion") of Coram Healthcare Corp. and Coram,

Inc. (the "Debtors") for entry of an order pursuant to section 105 of title 11, United States Code

(the "Bankruptcy Code"), appointing Goldin Associates, L.L.C. ("Goldin") as independent

restructuring advisors in these chapter 11 cases; and upon the affidavit of Harrison J. Goldin,

Senior Managing Director of Goldin (the "Goldin Affidavit"); and the Court being satisfied

based on the representations made in the Application and the Goldin Affidavit that Goldin is a

disinterested person as that term is defined in section 101(14) of the Bankruptcy Code, and that

its employment is necessary and would be in the best interests of the estates herein; and it

appearing that due notice of the Motion has been given and that no other notice need be given;

and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted; and it is further

ORDERED that Goldin is hereby appointed independent restructuring advisors on

the terms and conditions set forth in the Motion and the Goldin Affidavit (including the exhibits

thereto); and it is further

15570-001\DOCS_DE:16691.2
02/01/01 4:57 PM

EXHIBIT

MAR 2 1 2007

Danielle Grant

PAGE.02

**A737**

MAR-01-01  16:22    FROM-

ORDERED that the compensation structure set forth in the Motion and the Goldin

Affidavit is hereby approved.

Dated: Wilmington, Delaware
       February 28, 2001

_____
United States Bankruptcy Judge

CC: duruo | UST  3\1\01

15570-001\DOCS_DE:16691.2
02/01/01 4:57 PM

2

Movant to send copies to all
parties and file certificate
of service with the court.

PAGE.03

MINUTES OF A MEETING

OF THE BOARD OF DIRECTORS OF

CORAM HEALTHCARE CORPORATION

July 12, 2001



EXHIBIT
Friedman - 11
ID 3/16/07

A telephonic meeting of the Board of Directors (the "Board") of Coram Healthcare Corporation (the "Company" or "Corporation") was convened at approximately 11:00 a.m. PDT on Thursday, July 12, 2001, pursuant to notice duly given. Participating in the meeting were the following Directors: Daniel D. Crowley, Chairman of the Board, Chief Executive Officer and President; Donald J. Amaral; William J. Casey; and Sandra R. Smoley. Allen J. Marabito, Executive Vice President participated in the meeting. David Friedman, Esq. of Kasowitz, Benson, Torres & Friedman, LLP and Boris Feldman, Esq. of Wilson Sonsini Goodrich & Rosati joined the meeting. Mr. Crowley acted as Chairman of the meeting and Mr. Marabito kept the minutes.

## GOLDIN ASSOCIATES, L.L.C. ("GOLDIN") REPORT

David Friedman, Esq. led the privileged and confidential discussion with the Board members regarding the findings and recommendations of the Goldin Report of July 12, 2001.

Mr. Friedman advised of the exclusivity period within which the Company and Coram, Inc. (collectively, the "Debtors") could file an amended plan of reorganization with the Bankruptcy Court. Mr. Friedman discussed and advised on the duties of the Directors stating that he was seeking input from the independent Board members as the Special Committee.

The opinion of the Directors was to obtain effectively and consensually, if possible, confirmation of a refiled Joint Plan of Reorganization, believing that this result would be in the best interests of the Company, its creditors, shareholders and other parties-in-interest.

TRUSTEE009553
USDC-DE #04-1565

Minutes of Meeting of Board of Directors
July 12, 2001
Page 2

Next considered were the specific recommendations, findings and other content of the Goldin Report. In particular, to obtain a consensual resolution, Goldin recommended an increased distribution from $2 million to $3 million to the Company's general unsecured creditors, and up to a $10 million distribution to the Company's equity interests, provided that each group, as a class, voted in favor of the Second Joint Disclosure Statement and Second Joint Plan of Reorganization (collectively, the "Plan"). A separate recommendation was to reduce Mr. Crowley's bonus compensation from $13.4 million to $5.9 million. Further discussion was had concerning voting rights and the features and results of class acceptance or rejection.

Mr. Crowley informed the other Board members that he believes it is in the best interests of the Company that he address the bonus compensation reduction recommended in the Goldin Report. Mr. Crowley explained, although not personally in agreement with the Goldin Report in this regard, if it enables the efficient and consensual reorganization of the Debtors, he is prepared to take steps to achieve the recommendation.

The Board inquired as to the previously filed joint plan of reorganization (the "First Plan"). Discussion ensued as to the sufficiency of the First Plan under the present circumstances. The Board was addressed of those aspects of the First Plan that would be different by way of proposed amendments and in light of the Goldin Report (the Second Plan).

The Board discussed the need to update the Debtors' projections and the Chanin Capital Partners evaluation as part of the Second Plan. The Board requested, among other things, that the Debtors' financial information and projections be updated and reviewed with the Debtors' legal and financial advisors and the Board before finalizing the proposed amendments to the First Plan. Following the discussion, Mr. Friedman requested authorization from the independent Board members, who comprised the Special Committee to amend the First Plan.

TRUSTEE009554
USDC-DE #04-1565

A740

Minutes of Meeting of Board of Directors
July 12, 2001
Page 3

## AUTHORIZATION TO AMEND THE FIRST PLAN

The independent Board members, after further analysis, were in agreement that a proposed Second Plan in substantial conformity with the Goldin Report be prepared along with an amended Disclosure Statement that attached the Goldin Report in its entirety.

Mr. Friedman responded to the Board's questions concerning various components of the proposed Second Plan. The Board inquired as to counsel's views of the sufficiency and completeness of Goldin's services and investigations including, among other things, the contemplated classification and treatment of claims and interests under the proposed Second Plan.

Thereafter, their inquiries being responded to, each Member of the Special Committee was polled and each Member voted in favor of proceeding with the filing of the proposed Second Plan adopting substantially the recommendations of the Goldin Report.

## CONSENSUS OF THE BOARD AND EXPRESSION OF BELIEF

The independent Board members comprising the Special Committee, with Mr. Crowley not present, discussed with Mr. Friedman the Goldin recommendations regarding the reduction in Mr. Crowley's compensation.

The independent Board members believed that Mr. Crowley has made a material and positive difference in the value and prospects of the Company. On the other hand, the independent Board members believed adoption the recommendation would promote the efficient and consensual confirmation of the proposed Second Plan as it was in the best interests of the Company. The independent Board members also believed that further litigation or disputes would be detrimental to the Company. Rather, their goal was to efficiently and consensually seek confirmation of the proposed Second Plan. The independent Board members also recognized that Mr. Crowley's proposed concession is for the good of the Company and, although not in personal agreement, Mr.

TRUSTEE009555
USDC-DE #04-1565

Minutes of Meeting of Board of Directors
July 12, 2001
Page 4

Crowley would voluntarily waive the significant bonus compensation called for if it resulted in confirmation of the proposed Second Plan.

Consequently, the independent Board members sought advice of counsel whether to indicate in the proposed Second Plan, the views of the Special Committee. Mindful that the independent Board members were not intending to be confrontational and being advised that it would not jeopardize the proposed Second Plan, the Special Committee directed Mr. Friedman to find expression for their views. Mr. Friedman posed a separate resolution to express the desires of the independent Directors of the Special Committee.

Upon motion, the Special Committee, Mr. Crowley not participating, requested that Mr. Friedman assist them in preparing a relevant statement of the Special Committee regarding the waiver of Mr. Crowley's compensation. They requested an expression that Mr. Crowley accepts the waiver of $7.5 million voluntarily; that in their view they respectfully believe such waiver is not warranted based on their assessment of Mr. Crowley's performance and his contributions to the Company; that adoption of Goldin recommendations is nevertheless in the best interests of the Company and its creditors and shareholders; and that they noted that more disclosure would have been best, but also believe that Mr. Crowley did not compromise the Company. The Special Committee members requested that a draft be prepared and reviewed with each of them.

## STARK II IMPLICATIONS

The next item addressed concerned the Company's continuing obligations under the Stark II law. It was noted that Mr. Goldin suggested use of warrants as a possible alternative to cash for the proposed equity-related distribution. Mr. Friedman reviewed with the Board his previous Stark II analysis and legal opinion regarding the use of warrants. Mr. Friedman advised that Stark II precludes the use of warrants under the Debtor's circumstances. Mr. Friedman explained his recommendation to use cash for the proposed equity distribution. Further, to use warrants and

TRUSTEE009556
USDC-DE #04-1565

Minutes of Meeting of Board of Directors
July 12, 2001
Page 5

remain public was not efficient and did not justify the SEC and other administrative processes. Additionally, the Company would again be non-compliant at year-end.

Mr. Friedman concluded by advising on the next steps to be taken and the expected timetable for review and completion of the proposed Second Plan. A Board meeting was scheduled for July 27, 2001 at 11:00 a.m. PDT to receive comments on the draft of the proposed Second Plan.

There being no further business, the meeting was adjourned at 11:30 a.m. Pacific Daylight Time.

Respectfully submitted,

_____

Allen J. Marabito, Executive Vice President

DRAFT

TRUSTEE009557
USDC-DE #04-1565

*Goldin 13*

EXHIBIT

MAR 2 1 2007

Danielle Grant

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ——————————————— x | |
| In re | : Chapter 11 |
| CORAM HEALTHCARE CORP. and CORAM, INC., | : Case Nos. 00-3299 (MFW) through 00-3300 (MFW) |
| Debtors. | : Jointly Administered |
| ——————————————— x | |

## UPDATED REPORT OF INDEPENDENT RESTRUCTURING ADVISOR
## GOLDIN ASSOCIATES, L.L.C.

GOLDIN ASSOCIATES, L.L.C.
400 Madison Avenue
New York, New York 10017
(212) 593-2255

OF COUNSEL:
KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue
New York, NY 10022
(212) 715-9100

KL2:2101873.7

# TABLE OF CONTENTS

Page

I.   THE NATURE AND SCOPE OF THE EXAMINATION ...................................1

    A.   Background ................................................................1

    B.   Scope of the Examination .................................................4

    C.   Methodology of the Examination ..........................................6

II.  CONCLUSIONS AND RECOMMENDATIONS ...............................10

III. FACTUAL FINDINGS ............................................................14

    A.   Background ...............................................................14

    B.   The Noteholders ..........................................................18

    C.   The Aetna Contract .......................................................21

    D.   The Smith Era ............................................................23

    E.   Crowley's Arrival ........................................................28

        1.   The Relationship Between Crowley and Cerberus ....................28

        2.   Crowley's Role as Consultant ....................................32

        3.   Coram's Outside Directors .......................................35

    F.   The Crowley Era ..........................................................37

        1.   Crowley's Compensation ..........................................37

        2.   Coram's Financial Condition at Year End 1999 .....................40

        3.   Crowley's Performance as CEO ....................................43

    G.   Events Leading up to the Bankruptcy Filing ...............................48

IV.  FINANCIAL ANALYSIS ..........................................................53

    A.   Coram's Enterprise Value .................................................53

        1.   Comparable Public Company Market Analysis ........................55

            a.   Selection of Comparable Companies .........................56

KL2:2108873.7

b.     Calculation of Multiples ................................................................57

c.     Application of Multiples – Coram Valuation ..................................59

2.     Comparable Company Transaction Analysis ........................................61

a.     Selection of Comparable Transactions .........................................61

b.     Calculation of Multiples ................................................................63

c.     Application of Multiples – Coram Valuation ..................................63

3.     Discounted Cash Flow Analysis ...........................................................64

a.     Industry Fundamentals and Coram's Circumstances.....................65

b.     Projections – Initial Period...........................................................68

c.     Perpetual Period Projection.........................................................72

d.     Discount Rate – Weighted Average Cost of Capital .....................72

e.     DCF Valuation ..............................................................................74

4.     Adjustments to Enterprise Value Considered .........................................75

a.     Excess Cash ..................................................................................75

b.     Internal Revenue Service Claim .....................................................76

c.     SabraTek Pump Replacement .........................................................76

d.     Net Operating Tax Loss Carryforward .........................................77

e.     Clinical Trials, Inc. .......................................................................77

f.     PricewaterhouseCoopers Litigation .............................................77

5.     Conclusions............................................................................................78

B.     The Integrity and Accuracy of Coram's Financial Records ...................79

1.     Reliability of Financial Statements........................................................80

a.     In General......................................................................................80

b.     Interviews......................................................................................81

c.     Analytical Procedures ...................................................................82

-ii-

|   |   | 2. | Issues Raised Regarding Potentially Managed Results | 83 |
|   |   |   | a. | The Chanin Valuation | 83 |
|   |   |   | b. | Gross Revenue, Contractual Allowances and Net Revenue | 84 |
|   |   |   | c. | Deferral of Revenue | 86 |
|   |   |   | d. | Deferral of Cost-Cutting Initiatives | 87 |
|   |   |   | e. | A Question of Managed 2000 EBITDA | 87 |
|   |   | 3. | Conclusions | 90 |
| V. | | | LEGAL ANALYSIS | 91 |
|   | A. | | The Equity Committee's Proposed Complaint | 91 |
|   |   | 1. | The Allegations | 92 |
|   |   |   | a. | The "Conspiracy" Allegations | 92 |
|   |   |   | b. | The "Mismanagement" Allegations | 98 |
|   |   |   |   | i. | The alleged scheme to oust Smith | 98 |
|   |   |   |   | ii. | The alleged failure to explore options other than Chapter 11 | 101 |
|   |   |   |   |   | (A) | Merger or Sale Opportunities | 102 |
|   |   |   |   |   | (B) | Capital-Raising Opportunities | 103 |
|   |   |   |   | iii. | The allegedly improper CPS sale | 104 |
|   |   |   |   | iv. | The challenged July 2000 payments to the Noteholders | 106 |
|   |   |   |   | v. | The allegation that Coram delayed filing as long as possible | 108 |
|   |   | 2. | The Asserted Causes of Action | 110 |
|   |   |   | a. | Crowley and Feinberg | 110 |
|   |   |   | b. | Cerberus | 114 |
|   | B. | | The Equity Committee's Objections to Confirmation | 114 |

KL2:2108873.7

1.    The "Fair and Equitable" Requirement.............................................115

2.    The "Good Faith" Requirement .....................................................115

3.    The Validity of Cerberus' Claim ...................................................117

APPENDICES 1 - 12

KL2:2108873.7

-iv-

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

---

|  |  |
|---|---|
| | ———— x |
| In re | : Chapter 11 |
| CORAM HEALTHCARE CORP. and CORAM, INC., | : Case Nos. 00-3299 (MFW) : through 00-3300 (MFW) |
| Debtors. | : Jointly Administered . |
| | ———— x |

---

## UPDATED REPORT OF INDEPENDENT RESTRUCTURING ADVISOR, GOLDIN ASSOCIATES, L.L.C.

This report (the "Updated Report") of the independent restructuring advisor,

Goldin Associates, L.L.C. ("Goldin"), sets forth Goldin's findings of fact, financial analysis and

legal conclusions, as well as its recommendations concerning potential amendments to the

Debtors' plan of reorganization. The Updated Report begins with a description of the

circumstances that gave rise to Goldin's appointment, the objectives and scope of its

investigation and the methodology it used (Section I). The Updated Report then presents a

summary of Goldin's conclusions and recommendations to Coram's independent directors

(Section II), before turning to a detailed discussion of Goldin's findings of fact (Section III),

valuation of the Debtors and assessment of the integrity and accuracy of the Debtors' financial

records (Section IV) and analysis of the Equity Committee's proposed complaint and objections

to confirmation of the Debtors' plan of reorganization (Section V).

## I.    THE NATURE AND SCOPE OF THE EXAMINATION

A.    Background

On August 8, 2000 (the "Petition Date") Coram Healthcare Corp. ("Coram

Healthcare") and its wholly-owned subsidiary Coram, Inc. (together, "Coram" or "the Debtors")

KL2:2108873.7

A749

filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. Pursuant to sections 1107 and 1108 of the Code, the Debtors are continuing to operate their businesses and manage their properties and assets as debtors-in-possession.

On August 22, 2000 the United States Trustee designated an Official Committee of Unsecured Creditors (the "Creditors' Committee"). On October 18, 2000 the United States Trustee designated an Official Committee of Equity Security Holders (the "Equity Committee") to represent the interests of the holders of Coram Healthcare's common stock.

The Debtors filed a joint plan of reorganization and a disclosure statement on the Petition Date and filed an amended joint plan of reorganization (the "Plan of Reorganization" or "Plan") and an accompanying disclosure statement (the "Disclosure Statement") on or about October 10, 2000. The Bankruptcy Court approved the Disclosure Statement in October 2000. All classes entitled to vote on the Plan voted to accept the Plan.

The Plan provided, among other things, for Coram Healthcare's stock to be extinguished and for its shareholders to receive no distributions. The Plan also provided for Coram's Noteholders, who were owed approximately $252.6 million of principal and accrued interest, to receive $180 million of secured notes and 100% of the equity of Reorganized Coram, consideration with an aggregate value estimated at approximately 83% of the amounts owed the Noteholders. Finally, the Plan provided for a $2 million cash payment to Coram Healthcare's general unsecured creditors (whose claims totaled approximately $7.66 million) and for the claims of Coram Inc.'s general unsecured creditors (which totaled less than $100,000) to pass through the bankruptcy unimpaired.

KL2:2108873.7