MAR 11 2002 14:29 FR ---          9164456059 TO SCHREIBER          P.10

CORAM HEALTHCARE

1125 Seventeenth Street
Suite 2100
Denver, Colorado 80202
303.292.4973 / 800 CORAM HC
303.298.0043 FAX
www.coramhealthcare.com

March 5, 2002

CONFIDENTIAL

Board of Directors
Coram Healthcare Corporation

Dear Fellow Board Member,

This is a brief update of the activities at Coram.

Preliminary estimates indicate that in January 2002 Coram earned approximately $2.05 Million in EBITDA on approximately $34.97 Million in Net Revenue. Remember that this comes "after" the reduction in Vancomycin that caused an EBITDA offset of nearly $1.1 Million due to the unilateral price cut taken by Abbott last summer.

February's sales trend as indicated by "Revenue Per Day" is estimated at $1,605,719. This compares to $1,458,000 in February 2001 and is Coram's sixth (6th) month of net sales *gains* in a row. As was discussed in the last Board letter, it probably doesn't make any business sense to annualize this number (seasonality etc.) but that said, annualized this represents nearly $410 Million a year which would compare to the unaudited $390 Million for 2001. February's preliminary "Core" was at 71% which compares to 70.2 % in February 2001. So we made progress in changing Coram's book of business as well.

Coram's cash collection effort continues in earnest. We now have an agreement with Humana-Kansas City that will result in Coram receiving $1 Million (in the next several weeks) related to the aged billings we discussed with the Board. Similarly, United agreed to make a payment of $300,000.

Cash in Coram's checkbook as of this morning was $24.1 Million. Accounts Payable remain relatively current.

With regard to the SEC matter discussed with the Board, we have now been informed by Ernst & Young (E&Y) that the resolution to the 2001 de-consolidation that we proposed regarding voting rights will satisfactorily resolve this matter, subject to the SEC review of our response letter regarding primarily consolidation at December 31, 2000. Coram staff has been directed to get the matter documented. E&Y has also informed us that they will issue an opinion for 2001, but that it will include going concern language reflecting the uncertainty related to the appointment of a Trustee and any potential Plan that may be proposed by the Trustee, however the opinion will still be *unqualified*.

CRX 00045

Page 2 of 2 Pages
Letter dated March 5, 2002 to Board of Directors Coram Healthcare Corporation

Finally, the Equity Committee filed an objection to the Board's Motion for the KERP payments (only as they relate to myself). The US Trustee filed a "place holder" objection asking the Court to wait until a Trustee actually shows up at Coram in order to allow that person to weigh in on the matter. Copies of these objections are attached. I firmly believe that it is important to get a KERP approved to insure that we retain the management team during this period of uncertainty. As it relates to myself, I prefer to discuss that face to face with the Board at our March 14th meeting.

Sincerely,

Daniel D. Crowley
Chairman, President & CEO

Cc:    D. Friedman
       B. Feldman
       A. Marabito

CRX 00046

MAR 11 2002 14:30 FR ---          9164496659 TO SCHREIBER      P.12
                                                                P.02/08
    MAR-01-2002  18:11    KASOWITZ·BENSON
    MAR 01 2002  5:02 HN FR SAUL EWING      302 421 6801 TO 23400142750076538 P.02/12

# ORIGINAL

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| CORAM HEALTHCARE CORP., | ) | Case No. 00-3299 (MFW) |
| and CORAM, INC., | ) | and Case No. 00-3300 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | | Related to D.I. No. 1431 |

Objection Deadline: 2/28/02 at 4:00 p.m.
Hearing Date: 3/7/02 at 4:00 p.m.

### EQUITY COMMITTEE'S LIMITED OPPOSITION TO
### DEBTORS' MOTIONS FOR ORDERS (I) AUTHORIZING MODIFICATION
### OF KEY EMPLOYEE RETENTION PLAN FOR 2000 AND
### PERMITTING PAYMENTS THEREUNDER, AND (II) ENTERING
### INTO NEW KEY EMPLOYEE RETENTION PLAN FOR 2002

The Equity Committee, by its counsel, responds to Debtors' Motion seeking authorization to pay certain employees stay bonuses, to modify its 2000 "Key Employee Retention Plan" ("KERP") and to adopt and implement a new 2002 KERP as follows:

With Respect to the year 2000 KERP

1.    The Equity Committee strongly supports the notion that employees who were awarded retention bonuses in the year 2000, subject to confirmation of a Plan of Reorganization, should now receive the second half of their retention bonus, notwithstanding Debtors' inability to confirm either of its Plans because of the continuing conflict of interest Dan Crowley and Cerberus, a principal Noteholder.

CRX 00047

2.    However, the Equity Committee strongly opposes the payment of any retention bonus to Mr. Crowley.

DKT. NO. 1468
DT. FILED 2/28/02

PAGE.02
MAR 01 2002 10:39 FR CORAM

303 298 0043 TO DAN CROWLEY      P.02/08

MAR 11 2002 14:30 FR ---                9164496059 TO SCHREIBER        P.13

MAR-01-2002  10:11    KASOWITZ.BENSON

3.   On February 27, 2002 (the day before these Objections were due) the Debtors provided the Equity Committee with details concerning the recipients of payments if the Motion is approved.  According to the documents received, Dan Crowley is to receive $800,000.

4.   The Committee believes that this Court's Findings of Fact and Conclusions of Law, set forth in its December 21, 2002 Opinion ("Opinion"), preclude a payment to Mr. Crowley.

5.   The decision to seek Court approval for payment of $800,000 to Crowley was apparently made at a Coram Healthcare Corporation directors meeting on January 10, 2002. No reason is offered in the minutes of that meeting that were provided to the Equity Committee as to why the outside directors, at that meeting (which was chaired by Mr. Crowley) did not take the findings of the Opinion into consideration.

With Respect to the Request To Enter Into a New KERP for the Year 2002.

6.   This motion was filed the day after the Court ordered the appointment of a Chapter 11 Trustee.  Any new KERP should be approved by the Trustee, who is likely to be appointed before the hearing date set for this Motion.

7.   If on the hearing date for this Motion, no Trustee has been appointed, then the Equity Committee will not object to the awarding of retention bonuses, as proposed, but subject to the condition that no amount be awarded or paid to Mr. Crowley.

8.   Board minutes provided to the Equity Committee on February 27, 2002, show that it is proposed that Mr. Crowley receive an additional $400,000 pursuant to the 2002 KERP.  As proposed, $200,000 of this would be paid on March 31, 2002.  Thus the total that

CRX 00048

2

MAR 11 2002 14:30 FR ---                9164496059 TO SCHREIBER        P.14
MAR-01-2002  10:11      KASOWITZ.BENSON    302 421 6001 TO 2340#14375#76530 P.04/12

would be paid to Mr. Crowley pursuant to the decisions of the "outside" directors, would be $1 million.

9.      The minutes also show that the suggestion to pay this $1 million to Mr. Crowley was delegated to management by the outside directors.  (January 10, 2002 Minutes, page 2). Once again, the outside directors have failed in their duty of care.

10.      The action of the outside directors in authorizing the filing of a motion approving the new KERP after the Court ordered the appointment of a trustee is improper, particularly in light of the Court's Findings, in the Opinion, concerning the conduct of these outside directors.

CRX 00049

3

MAR 11 2002 14:31 FR ---    9164496059 TO SCHREIBER    P.15

MAR-01-2002 10:11 .. .... KASOWITZ,BENSON    ... .-. .... .. .......... . P.05/12

**WHEREFORE,** the Equity Committee prays that the Court deny the KERP as proposed

and that the Court grant the Equity Committee such relief as is just and proper.

Mark Minuti (No. 2659)
Tara L. Lattomus (No. 3515)
SAUL EWING LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840/6847

-and-

Richard F. Levy (IL ARDC NO. 01645064)
Theodore J. Low (IL ARDC NO. 01696691)
Maria J. Minor (IL ARDC NO. 06256406)
ALTHEIMER & GRAY
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
(312) 715-4000

Counsel for the Official Committee of
of Equity Security Holders for Coram Healthcare
Corp. and Coram, Inc.

Dated: February 28, 2002

CRX 00050

[R05780.3 - 1/21/02 3:23 PM]
+34541535/6553

4

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

*In re*                                    :

                                           :        Chapter 11
Coram Healthcare Corp. and Coram, Inc.     :
*et al.*                                   :        Case Number 00-3299 (MFW)
                                           :    /   (Jointly Administered)
        Debtors                            :

                                    Hearing Date: March 7, 2002 @ 4:00 p.m. (LT)
                                    Objection Deadline: February 28, 2002 @ 4:00 p.m. (LT)

### THE UNITED STATES TRUSTEE'S OBJECTION TO MOTION FOR ORDER AUTHORIZING DEBTORS TO (I) MODIFY KEY EMPLOYEE RETENTION PLAN FOR THE YEAR 2000 AND MAKE REMAINING PAYMENTS THEREUNDER, AND (II) ENTER INTO NEW KEY EMPLOYEE RETENTION PLAN FOR THE YEAR 2002 (Re: Dkt #1431)

In support of his Objection to Motion for Order Authorizing Debtors to (I) Modify Key

Employee Retention Plan for the Year 2000 and Make Remaining Payments Thereunder, and (II)

Enter into New Key Employee Retention Plan for the Year 2002 (the "Motion"), Donald F. Walton,

the Acting United States Trustee for Region 3 ("UST"), by and through undersigned counsel,

herewith states:

    1.      Pursuant to 28 U.S.C. §§ 157(b)(2)(A) and ( L), this Court has jurisdiction to hear

the above-referenced Objection.

    2.      Pursuant to 28 U.S.C. §586, the UST is responsible for the supervision and

administration of all cases under Chapter 11, Title 11, United States Code.

    3.      Pursuant to 11 U.S.C. § 307, the UST has standing to be heard with regard to the

above-referenced Objection.

    4.      The UST objects to the Motion on the following grounds:

        a.      On February 12, 2002, this Court entered an Order directing the UST to

                                    1

CRX 00051

MAR-01-2002  10:12       KASOWITZ,BENSON _____                        P.07/08

appoint a Chapter 11 Trustee in this case.

b.      While no Chapter 11 Trustee has been appointed to date, the UST

anticipates that such appointment will be made in the very near future.

c.      Upon his or her appointment, the Chapter 11 Trustee will be solely

charged with operation of the Debtors' business, the administration of the estate

and all related matters.

d.      The Motion raises issues which, upon appointment of the Chapter 11

Trustee, may no longer be pursued by the Debtor acting at the direction of its

Board of Directors due to lack of standing.  The matters raised by the Motion are

solely within the discretion of Chapter 11 Trustee, to be exercised in a matter

consistent with the Chapter 11 Trustee's fiduciary duties to the estate, and may be

pursued by the Chapter 11 Trustee if deemed appropriate.

e.      The Motion should be denied without prejudice pending review by the

Chapter 11 Trustee.

5.      The UST leaves the Movant to its burden and reserves all discovery rights.

[Intentionally Left Blank]

2

CRX 00052

WHEREFORE, the UST respectfully requests that the Court enter an order denying the

Motion without prejudice and for such other and further relief as this Court deems just and

equitable.

Respectfully submitted,

DONALD F. WALTON
ACTING UNITED STATES TRUSTEE

BY: _____

Don A. Beskrone, Esq.
Trial Attorney
Office of the U.S. Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2313, Lockbox 35
Wilmington, DE 19801
Phone: (302) 573-6491
Fax: (302) 573-6497

Date: February 27, 2002

CRX 00053

3

A909

MAY 07 2002 12:29 FR CORAM HEALTHCARE      5164496259 TO CORAM EXECUTIVE  P.02/05

CORAM HEALTHCARE

1125 Seventeenth Street
Suite 2100
Denver, Colorado 80202
303.292.4973 / 800 CORAM HC
303.298.0043 FAX
www.coramhealthcare.com

May 6, 2002

Judge Arlin M. Adams
Chapter 11 Trustee, Coram Healthcare Corporation
Schnader Harrison Segal & Lewis, LLP
1600 Market Street, Suite 3600
Philadelphia, Pennsylvania 19103-728

Dear Judge Adams,

When we met in Denver you stressed that as Chapter 11 Trustee, your duties included maintaining close oversight of Coram's cash management. To that end, you requested that we report the detail of Coram's cash activities on a weekly basis. With the last several weekly reports now in hand, hopefully you can readily see that I have maintained a fairly disciplined and quite rigorous cash management program in this Company.

Prior to my joining Coram, Management took a deduction for tax purposes that has been subsequently disallowed, leaving a substantial tax and cash problem to be dealt with in the Chapter 11. The firm's cash resources were essentially uncontrolled. Coram's Accounts Receivables went uncollected, its Days Sales Outstanding ballooned, and Coram lived off of a steady diet of expensive *draws* until its Revolver was nearly exhausted. To fund its operations, Coram went from a zero Revolver balance on November 30, 1998 to ($44,000,000) prior to my arrival. The week before I joined Coram as CEO, the Company took a draw of $7,000,000 to fund payroll and get off "credit hold" with key vendors that refused to ship drugs needed in the field for infusion therapy. Not a pretty picture.

Immediately after I joined Coram, we went to a philosophy of "use it up, fix it up, wear it out, and do without". In essence, squeeze the buck. We set up goals to change the mix, to cut the costs, and to collect the cash. We began a thoughtful program targeted to collect our Accounts Receivable and to restore a real working relationship with Coram's vendors. In other words, we sought to restore Coram's ability to do business by improving cash flow, paying bills on time, and acting responsibly.

CH-11 TRUSTEE
004289

CH-11 TRUSTEE/
CrowleyAdmin015851

**A910**

Page 2 of 4 Pages.
Letter to Judge Adams, dated May 6, 2002

We believe that operations should generally be funded by properly managing the business. That's not what Coram had been doing. It was borrowing to fund Million Dollar sales meetings, fund its generous 401(k), and to pay for strategic forays that turned out to be serious Corporate mistakes. And, that's why we are quite proud of the fact that Coram has managed its affairs well enough not to need even one draw since January 22, 2000. In fact, we managed the Company well enough to not only completely pay back the revolver by August 2000, but to get Coram's bills paid current, improve its vendor relationships and eliminate all credit holds, and create a *reliable* positive daily operating cash balance, too.

Unfortunately, Your Honor, based on the Caremark, Aetna, and R Net issues, significant losses were recorded from 1995 through 1999. In the end, Coram amassed over $304,000,000 in debt by the end of 1999. In essence, the reason for the insolvency was two-fold. 1) The fact that Coram was in violation of its covenants and could not repay the principal on loans that were due, and 2) because of its losses, Coram no longer met the $75,000,000 Minimum Net Equity required to qualify for the public company exception under Stark II.

Of course, by now you have learned that Stark II is a key regulation that relates to Coram's ability to reasonably accept Medicare and MediCaid referrals. These referrals matter greatly to Coram because the Company generates the majority of its *Total Gross Margin* from Medicare and MediCaid patients. In my professional opinion, if Coram lost the Stark II exception, it simply would up-end Coram's ability to retain its Medicare and MediCaid referrals as well as most of its *other* business. That is because, in many circumstances, the same doctors that refer Medicare and/or MediCaid patients also refer Commercial patients. Once a doctor stops referring Medicare and/or MediCaid patients, it is most likely that their referrals of Commercial patients would dry up, too. With Coram's average patient only staying "on service" for approximately twenty-one (21) days . . . if referrals dried up, Coram's business could go away fairly quickly. We believe that qualifying for Stark II and being able to efficiently take Medicare and MediCaid patients matters. We also believe that the Gross Margins coming from Medicare and MediCaid are significant. The point is that without these patients. . . . Coram would no longer be a viable Company.

CH-11 TRUSTEE
004290

CH-11 TRUSTEE/
CrowleyAdmin015852

Page 3 of 4 Pages
Letter to Judge Adams, dated May 6, 2002

From the table below you can easily see that Coram was "out of control" and made painful use of its Revolver to fund its insatiable appetite for cash. By their nature, revolvers are quite expensive. Coram's revolver was no exception in that it had a very high interest cost. Our view is that companies should manage their operations well enough to only borrow when it is necessary to fuel accretive and profitable growth.

Based upon your interest in Coram's cash situation, I thought you might like to see Coram's cash *history* both *before* and *after* I became CEO. Here is how Coram's cash situation developed from January 1, 1999 until August 1, 2000:

| Date | Borrowing On Revolver | Paydown | Revolver Balance Outstanding |
|------|------|------|------|
| 1/1/99 | | | 0 |
| 1/10/99 | $3,000,000 | | $ 3,000,000 |
| 1/14/99 | $5,000,000 | | $ 8,000,000 |
| 1/21/99 | $3,000,000 | | $11,000,000 |
| 1/25/99 | | ($1,000,000) | $10,000,000 |
| 1/26/99 | $1,000,000 | | $11,000,000 |
| 1/28/99 | | ($5,000,000) | $ 6,000,000 |
| 2/9/99 | $2,000,000 | | $ 8,000,000 |
| 2/18/99 | $1,000,000 | | $ 9,000,000 |
| 3/9/99 | $6,000,000 | | $15,000,000 |
| 4/14/99 | $7,500,000 | | $22,500,000 |
| 7/25/99 | $11,500,000 | | $34,000,000 |
| 7/26/99 | $3,000,000 | | $37,000,000 |
| 11/25/99* | $7,000,000 | | $44,000,000 |
| 1/5/00 | | ($3,000,000) | $41,000,000 |
| 1/22/00 | $1,500,000 | | $42,500,000 |
| 3/1/00 | | ($1,000,000) | $41,500,000 |
| 3/15/00 | | ($1,000,000) | $40,500,000 |
| 3/29/00 | | ($2,000,000) | $38,500,000 |
| 4/11/00 | | ($2,000,000) | $36,500,000 |
| 4/25/00 | | ($1,000,000) | $35,500,000 |
| 5/2/00 | | ($1,000,000) | $34,500,000 |
| 5/11/00 | | ($500,000) | $34,000,000 |
| 5/16/00 | | ($1,000,000) | $33,000,000 |
| 5/23/00 | | ($2,000,000) | $31,000,000 |
| 6/6/00 | | ($2,500,000) | $28,500,000 |
| 8/1/00 | | ($28,500,000) | 0 |

* Crowley was Appointed as CEO on 11/30/99.

CH-11 TRUSTEE
004291

CH-11 TRUSTEE/
CrowleyAdmin015853

Page 4 of 4 Pages
Letter to Judge Adams, dated May 6, 2002

Analytics prove that paying down the Revolver substantially improved Coram's situation. There really is an "ITDA" in Ebitda. The cost of those Revolver funds versus the return on the capital employed was *negative*. Every day the Revolver was drawn was a net loss for Coram. By selling the firm's Pharmacy unit, Coram Prescription Services (CPS), Coram was able to eliminate a unit that was draining cash and had inferior margins (13% versus 27-28% on Infusion). With the closer management of operations and cash and the sale of CPS . . . Coram paid back the Revolver saving Millions in net costs.

Of course, Coram has not been paying interest on its debts since filing for Chapter 11. In large measure, that's why Coram has been able to accumulate $30,374,290.18 in its checkbook. Month to date Coram is cash flow positive (Receipts of $6,899,693.83 less Disbursements of $6,227,642.23). If the firm had to make the interest payment on the total debt outstanding (roughly a quarter of a Billion Dollars), it would have serious difficulty. It could not make the payments nor could it find the funds for working capital. Infusion companies buy their drugs and supplies, make payroll, and fund operations with cash needs in 0 to 30 days, while payors actually make their payments for services in 80-90 days. The debt is unmanageable, the Stark II issue remains, and Coram has a basic need for capital to fund its operations. Therein lies the need for a Reorganization.

Because Coram has the IRS liability and has a Balance Sheet loaded with Debt it cannot service or re-pay, absent a Plan of Reorganization, it is illogical to compare Coram to any *solvent* healthcare provider that does not have a quarter of a Billion Dollars of pre-petition debt on Net Revenue(s) of $400 Million, with Coram's Debt/Equity ratio, with Coram's Stark II reality, and Coram's need for working capital.

Your Honor, I recognize that you are still early in the fact gathering phase of your work. Hopefully, this paper will provide some useful detail about Coram, its history, and its day-to-day issue(s). If I can provide any other information that you feel is important please let me know and we will gather the data for you.

Sincerely,

Daniel D. Crowley
Chairman, President & CEO

CH-11 TRUSTEE
004292

CH-11 TRUSTEE/
CrowleyAdmin015854

** TOTAL PAGE.05 **

CORAM HEALTHCARE

1675 Broadway
Suite 980
Denver, Colorado 80202
303.292.4973 / 800 CORAM HC
303.298.0043 FAX
www.coramhc.com

**VIA FEDERAL EXPRESS**

November 6, 2002

Mr. Keith W. Mumford
Ewing Monroe Bemiss & Co.
Riverfront Plaza, West Tower
901 East Byrd Street, Suite 1650
Richmond, VA 23219

RE:    Coram Data Request

Dear Keith:

Enclosed please find communications from Mr. Crowley to Judge Arlin M. Adams regarding Coram's operations. A listing of the enclosures immediately follows this letter. Please note that a few communications between Mr. Crowley and Judge Adams were excluded from this package as the memorandums were non-operating in nature.

Should you have any questions, please do not hesitate to give me a call.

Sincerely,

Scott R. Danitz
Senior Vice President, Chief Financial Officer & Treasurer

Enclosures

cc:    Joseph J. Devine, Esq., including all enclosures

EXHIBIT
Adams 32
CW 3/28/07

ACHC

CH-11 TRUSTEE
003163

## INDEX OF CORRESPONDENCE FROM DANIEL D. CROWLEY TO JUDGE ARLIN M. ADAMS, CHAPTER 11 TRUSTEE FOR CORAM HEALTHCARE CORPORATION FROM MARCH 11, 2002 THROUGH NOVEMBER 4, 2002

| Date of Correspondence | Subject |
| --- | --- |
| March 11, 2002 | Overview, History, Letter to the BOD attached |
| March 18, 2002 | Update, Letter to BOD attached |
| March 26, 2002 | Approval Authority |
| March 29, 2002 | Seventh Month Sales Increase & KERP |
| April 9, 2002 | Update of Activities at Coram |
| April 10, 2002 | Daily Cash Report |
| April 15, 2002 | Weekly Report |
| April 16, 2002 | Daily Cash Report |
| April 22, 2002 | Weekly Report |
| April 24, 2002 | EBITDA Report |
| April 29, 2002 | Weekly Report |
| May 6, 2002 | Weekly Report |
| May 6, 2002 | List of Borrowed Money and Payments |
| May 9, 2002 | Sales Up in May |
| May 13, 2002 | Weekly Report |
| May 14, 2002 | Daily Cash Report |
| May 16, 2002 | Coram Prescription Services ("CPS") |
| May 20, 2002 | Weekly Report |
| May 28, 2002 | Weekly Report |
| May 30, 2002 | Interim Report |
| June 3, 2002 | Weekly Report |
| June 10, 2002 | Weekly Report |
| June 14, 2002 | Inventory Key Performance Indicators |
| June 17, 2002 | Weekly Report |
| June 20, 2002 | Preliminary EBITDA |
| June 24, 2002 | Weekly Report |
| July 1, 2002 | Weekly Report |
| July 8, 2002 | Weekly Report |
| July 15, 2002 | Weekly Report |
| July 22, 2002 | Weekly Report |
| July 29, 2002 | Weekly Report |
| August 5, 2002 | Weekly Report |
| August 12, 2002 | Weekly Report |
| August 13, 2002 | Daily Net Revenue |
| August 19, 2002 | Weekly Report |
| August 26, 2002 | Weekly Report |
| September 3, 2002 | Weekly Report |
| September 4, 2002 | Weekly Report |
| September 9, 2002 | Weekly Report |
| September 16, 2002 | Weekly Report |

1

CH-11 TRUSTEE 003164

| September 23, 2002 | Weekly Report |
|---|---|
| September 30, 2002 | Weekly Report |
| October 7, 2002 | Weekly Report |
| October 8, 2002 | Daily Cash Report |
| October 14, 2002 | Weekly Report |
| October 17, 2002 | Weekly Report |
| October 21, 2002 | Weekly Report |
| October 28, 2002 | Weekly Report |
| October 30, 2002 | September Financial Results |
| November 4, 2002 | Weekly Report |

2

CH-11 TRUSTEE
003165

# Schnader
### ATTORNEYS AT LAW

1600 MARKET STREET   SUITE 3600
PHILADELPHIA, PA 19103-7213
215.751.2000   FAX 215.751.2205   schnader.com

December 24, 2002

BARRY E. BRESSLER
Direct Dial 215-751-2050
Direct Fax 215-751-2205
Internet Address: bbressler@schnader.com

**VIA FACSIMILE #312-621-1750**

Scott N. Schreiber, Esquire
Much Shelist Freed Denenberg Ament & Rubenstein
200 North LaSalle Street, Suite 2100
Chicago, IL 60601



EXHIBIT
#12
Schreiber
3-2-07

Re:    **In re: Coram Healthcare Corp., Debtor**
       **/Daniel D. Crowley**

Dear Mr. Schreiber:

        Per our additional discussions, Arlin M. Adams, the Chapter 11 Trustee for Coram Healthcare Corporation ("Coram") has modified the proposed terms for a termination agreement and extension of employment with Daniel D. Crowley ("Dan"), subject to approval of the Bankruptcy Court, to include the following terms:

        1.    Dan has terminated his prior Employment Agreement, as amended ("Employment Agreement") and the Trustee has filed a "placeholder" motion to reject Dan's old Employment Agreement.

        2.    Under the proposed termination and employment extension agreement ("Transition Agreement"), the Trustee and Dan agree that commencing January 1, 2003 Dan will continue to render essentially the same services to Coram as he has heretofore for a term not to exceed the earlier of (a) six (6) months from January 1, 2003; (b) the date on which a Plan is confirmed by final order of a court having jurisdiction in the Coram Bankruptcy ("final order"); or (c) the substantial consummation of a Plan in the Coram Bankruptcy. The term could be extended once for up to an additional sixty (60) days, if a final order has not been entered on or before June 30, 2003, unless either party terminates the arrangement on thirty (30) days' prior written notice.

Schnader Harrison Segal & Lewis LLP

BOSTON,MA   NEW YORK,NY   PHILADELPHIA,PA   PITTSBURGH,PA   SAN FRANCISCO,CA   WASHINGTON,DC
CANONSBURG,PA   CHERRY HILL,NJ   HARRISBURG,PA

PHDATA 1026985_1

# Schnader
ATTORNEYS AT LAW

Scott N. Schreiber, Esq.
December 24, 2002
Page 2

3.    Dan's current at will employment will continue until December 31, 2002 on the same terms and conditions as under the old Employment Agreement, while we finalize the Transition Agreement and submit it to the Bankruptcy Court. Through December 31, 2002, Dan will receive the same monthly salary and benefits as under the Employment Agreement.

4.    Under the Transition Agreement, beginning January 1, 2003, Coram will pay Dan a base monthly salary of $80,000.00 ("Monthly Salary") payable as heretofore and continue to reimburse direct costs and expenses incurred by Dan or Dynamic Healthcare Solutions ("Dynamic") on behalf of Coram or Coram's employees occupying space in Sacramento, California on the same basis as heretofore during Coram's bankruptcy proceedings. If during the six months of the Transition Agreement the Trustee terminates Dan without cause, Dan would still be entitled to be paid his Monthly Salary for the balance of the six month period. If during that period Dan is terminated for cause, Dan would not be paid the Monthly Salary for the balance of the six month period.

5.    Under the Transition Agreement, Coram will continue to provide the other perquisites and benefits that Coram currently provides to Dan under the old Employment Agreement, including health, dental and disability insurance on the same basis as made available to senior executives of Coram, $1,000,000.00 of whole life coverage, an $1,800.00 transportation allowance, corporate housing in Denver on the same basis as heretofore, gross up for taxes on certain benefits on the same basis as heretofore, reasonable expenses incurred in the course of Dan's rendering services for Coram and tax preparation costs of $10,000.00 for the six months of the Transition Agreement. As heretofore, Dan may maintain his interest in Dynamic and during the term of the Transition Agreement, Dan agrees on behalf of Dynamic that it may consult with other companies not in direct competition with Coram, except for the Noteholders/preferred stockholders or their affiliates for which neither Dynamic nor Dan shall consult, so long as such consulting does not substantially detract from Dan rendering the necessary time and effort to continue to guide Coram on the same basis as heretofore.

6.    During the Transition Agreement, Coram would continue to maintain D&O coverage covering Dan to the same extent available to all Coram officers and directors.

7.    In consideration of Dan's agreement to forego other opportunities during the Transition Period and in partial recognition of his efforts over the past nine (9) months, the Trustee will pay Dan a stay and performance payment totaling $1,000,000.00 ("Stay Bonus"). This will be accomplished by reimbursement for counsel fees (not to exceed $200,000.00) paid on approval of the Transition Agreement by the Court, with the balance of $800,000.00 paid as a stay bonus paid at the end of the six month period or upon a final confirmation order, whichever first occurs. Dan will be entitled to the Stay Bonus whether or not a final confirmation order is entered.

**Schnader**
ATTORNEYS AT LAW

Scott N. Schreiber, Esq.
December 24, 2002
Page 3

8.    The Transition Agreement will be governed by Colorado law, as was Dan's old Employment Agreement, and will be enforceable by either party in the Bankruptcy Court.

9.    The Transition Agreement will be subject to approval of the Bankruptcy Court. The Transition Agreement will have an effective date of, and the Trustee will request the Bankruptcy Court to approve it as of, January 1, 2003.

10.    The Trustee will agree, after consultation with Dan, on an appropriate job title during the Transition Agreement, which tentatively will be Chief Transition and Restructuring Officer.

Sincerely,

BARRY E. BRESSLER

BEB/sh
Cc:    Arlin M. Adams, Chapter 11 Trustee
       Mr. Daniel D. Crowley

Agreed as to Terms and Conditions

DANIEL D. CROWLEY

_____

ARLIN M. ADAMS, CHAPTER 11 TRUSTEE

_____

PHDATA 1026985_1

DEC-24-2002  14:32    MUCH SHELIST FDA                                    561121    P.04/04
12/24/2002  13:19                                                        NO.818

**Schnader**
ATTORNEYS AT LAW

Scott N. Schreiber, Esq.
December 24, 2002
Page 3

8.    The Transition Agreement will be governed by Colorado law, as was Dan's old Employment Agreement, and will be enforceable by either party in the Bankruptcy Court.

9.    The Transition Agreement will be subject to approval of the Bankruptcy Court. The Transition Agreement will have an effective date of, and the Trustee will request the Bankruptcy Court to approve it as of, January 1, 2003.

10.    The Trustee will agree, after consultation with Dan, on an appropriate job title during the Transition Agreement, which tentatively will be Chief Transition and Restructuring Officer.

Sincerely,

*Barry E. Bressler*

BARRY E. BRESSLER

BEB/ah
Cc:    Arlin M. Adams, Chapter 11 Trustee
       Mr. Daniel D. Crowley

Agreed as to Terms and Conditions

DANIEL D. CROWLEY

*Daniel D. Crowley*    24 Dec 02

ARLIN M. ADAMS, CHAPTER 11 TRUSTEE

*Arlin M. Adams*

Schnader Harrison Segal & Lewis LLP                        PHDATA 1026985_1

TOTAL P.04
DEC.24.2002   3:39PM    MUCH SHELIST FDARR    FROM : MAIL BOXES ETC. #1514
PHONE NO. : 916 852 0641
NO.361   P.1/1
DEC. 24 2002 02:29PM P2

# Schnader
## ATTORNEYS AT LAW

1600 MARKET STREET  SUITE 2903
PHILADELPHIA, PA 19103-7213
215.751 2000  FAX 215.751 2205  schnader.com

January 7, 2003

BARRY E. BRESSLER
Direct Dial 215-751-2050
Direct Fax 215-751-2205
Internet Address: bbressler@schnader.com



**VIA FACSIMILE #312-621-1750**

Scott N. Schreiber, Esquire
Much Shelist Freed Denenberg Ament & Rubenstein
200 North LaSalle Street, Suite 2100
Chicago, IL 60601

Re:    In re: Coram Healthcare Corp., Debtor
       /Daniel D. Crowley

Dear Mr. Schreiber:

Per our additional discussions, Arlin M. Adams, the Chapter 11 Trustee for Coram Healthcare Corporation ("Coram") and Daniel D. Crowley ("Dan") have entered into a letter agreement (the "Transition Agreement") for terminating Dan's prior Employment Agreement and extending his employment. The Transition Agreement will be submitted to the Bankruptcy Court for approval.

This letter will serve to reflect the intent as to an additional settlement agreement ("Settlement Agreement") to be entered into between the Trustee and Dan, subject to a formal agreement being drawn and subject, of course, to approval of the Bankruptcy Court. The Settlement Agreement is being negotiated and finalized in connection with the Transition Agreement, and will include the following terms:

1. All of Dan's contractual and employment claims for performance bonuses, KERP, MIP, and otherwise, including any and all claims under his old Employment Agreement, not dealt with in the Transition Agreement, will be compromised and satisfied by an additional payment, upon final Plan confirmation, of $2,000,000 and the exchange of releases provided below.

2. Dan will release the Trustee and Debtors from any further claims as part of the Plan and the Trustee and Debtors will in turn release Dan from all proposed derivative claims and any other claims arising out of or related to such proposed derivative claims that the Trustee.

Schnader Harrison Segal & Lewis LLP
BOSTON,MA  NEW YORK,NY  PHILADELPHIA,PA  PITTSBURGH,PA  SAN FRANCISCO,CA  WASHINGTON,DC
CARSONBURG,PA  CHERRY HILL,NJ  HARRISBURG,PA

CH-11 TRUSTEE

Schnader
ATTORNEYS AT LAW

Scott N. Schreiber, Esq.
January 7, 2003
Page 2

Coram, any subsidiaries, or any committees or entities claiming through them, may have against Dan, to the fullest extent approved by the Bankruptcy Court.

3.  The parties contemplate that the formal agreement reflecting the above will be finalized by January 31, 2003, and will be presented to the Bankruptcy Court for approval thereafter, but in any event before a Plan to be proposed by the Trustee on or before February 28, 2003.

4.  If the Bankruptcy Court fails to approve the Settlement Agreement, all of the undertakings of the parties will be void and the parties will return to their previous positions, retaining all claims which exist and all defenses thereto.  The parties will only be legally bound upon approval of the formal agreement by the Bankruptcy Court.

Sincerely,

BARRY E. BRESSLER

cc:    Arlin M. Adams, Chapter 11 Trustee
       Mr. Daniel D. Crowley

The Terms and Conditions above are hereby agreed to:

DANIEL D. CROWLEY

_____

ARLIN M. ADAMS, CHAPTER 11 TRUSTEE

_____

Schnader Harrison Segal & Lewis LLP

PHDATA 1068121_2
CH-11 TRUSTEE

**A922**



# Update of Coram Healthcare and Management Initiatives

Daniel D. Crowley

January 9, 2003

CONFIDENTIAL
EMB 001697

CH-11 TRUSTEE/
CrowleyAdmin006198

# Highlights

- Three years of positive operating and EBITDA margins
  - Overcame significant Vancomycin hit
- Higher infusion revenues than in 1999 when the collapse of Aetna/R-net contract started to destroy the top line
- 16 months of increased sales
- Improved mix of profitable therapies

CONFIDENTIAL
EMB 001698

CH-11 TRUSTEE/
CrowleyAdmin006199



# Highlights (cont.)

- Reduced purchasing and operating costs
- Improved inventory management
- Improved information systems and management tools
- Stable cash position
- No net borrowings to fund operations under the current management team

CONFIDENTIAL
EMB 001699

CH-11 TRUSTEE/
CrowleyAdmin006200



## Highlights (cont.)

- Motivated, focused management team
  - Improved employee productivity
  - Better employee morale, reduced turnover
  - Overcame significant challenges
- ACHC accreditation *with commendation*

CONFIDENTIAL
EMB 001700

CH-11 TRUSTEE/
CrowleyAdmin006201



CONFIDENTIAL
EMB 001701

CH-11 TRUSTEE/
CrowleyAdmin006202

# Changing the Mix

- Identified profitable "core" therapies
  - Instituted "admission grids"
  - Adding viable therapies as costs decline
    - Enteral, IVIG
- Developed focused marketing initiatives
  - SBU product champions and sales specialists
    - Corporate focus on blood products and nutrition
  - Refined sales efforts to target *chronic* patients
    - Realizing greater revenues per sale

CONFIDENTIAL
EMB 001702

CH-11 TRUSTEE/
CrowleyAdmin006203



Revenue Growth

Navigating the Shoals – thru Dec. 2002 (est.)

(in millions)

CONFIDENTIAL
EMB 001703

CH-11 TRUSTEE/
CrowleyAdmin006204



# Quality Revenue Growth
## Quarterly Infusion Revenues – thru Dec 2002 (est.)

(in millions)

CONFIDENTIAL
EMB 001704

CH-11 TRUSTEE/
CrowleyAdmin006205