11.    No Rate Changes (11 U.S.C. § 1129(a)(6)). After confirmation of the Plan, Reorganized Coram's businesses will not involve rates established or approved by, or otherwise subject to, any governmental regulatory commission. Thus, Section 1129(a)(6) of the Bankruptcy Code is not applicable in the Bankruptcy Cases or with respect to the Plan.

12.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)). The Plan satisfies Section 1129(a)(7) of the Bankruptcy Code. Each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date.

13.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)). Classes 1 (Priority, Non-Tax Claim) and 2 (Secured Claim) of the Plan are Classes of unimpaired Claims that are conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code. Classes 3 (General Unsecured Claims) and 4 (Coram Preferred Stock) voted to accept the Plan in accordance with Sections 1126(c) and (d) of the Bankruptcy Code. Class 5 (Coram Equity Interests) is not entitled to receive or retain any property under the Plan and, therefore, is deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code. Class 6 (CHC Equity Interests) voted to reject the Plan. Although Section 1129(a)(8) has not been satisfied with respect to Classes 5 and 6, the Plan is confirmable because the Plan satisfies Section 1129(b) of the Bankruptcy Code with respect to such rejecting Classes.

14.    Treatment of Administrative and Priority Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Claims and Priority Claims pursuant to Articles 3 and 4 of the Plan satisfies the requirements of Sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the

7

PHDATA 1234490_1

SL 001663

**A1111**

treatment of Priority Tax Claims pursuant to Article 3 of the Plan satisfies the requirements of Section 1129(a)(9)(C) of the Bankruptcy Code.

15.    Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)). At least one Class of Claims against the Debtors that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of Section 1129(a)(10) of the Bankruptcy Code.

16.    Feasibility (11 U.S.C. § 1129(a)(11)). Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Reorganized Coram, thus satisfying the requirements of Section 1129(a)(11) of the Bankruptcy Code.

17.    Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees payable under Section 1930 of title 28 of the United States Code have been paid or will be paid pursuant to Article 13.2(c) of the Plan on or before the Effective Date.

18.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Article 5.12 of the Plan provides that pursuant to Section 1114 of the Bankruptcy Code, payments, if any, due to any person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents for medical, surgical or hospital care benefits, or benefits in the event of sickness, accident, disability or death under any plan, fund or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the Debtors prior to the Petition Date, shall be continued for the duration of the period the Debtors have obligated themselves to provide such benefit; provided, however, that Reorganized Coram retains any right to modify any and all such plans, funds and programs in accordance with the terms thereof. Thus, the requirements of Section 1129(a)(13) of the Bankruptcy Code are satisfied.

19.    Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). Class 5 is deemed to have rejected the Plan and Class 6 voted to reject the Plan (collectively, the

PHIDATA 1234490_1

SL 001664

"Rejecting Classes"). The Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by Section 1129(b)(1) and (2) of the Bankruptcy Code. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of the Rejecting Classes.

20.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, as amended.

21.     Modifications to the Plan.  The modifications of the Amended Plan set forth in the Second Amended Plan and the Plan Modification constitute technical changes and/or changes with respect to particular Claims and Equity Interests adversely affected thereby by agreement with and the consent of the holders of such Claims and Equity Interests, and do not materially adversely affect or change the treatment of any other Claims or Equity Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under Section 1125 of the Bankruptcy Code or resolicitation of votes under Section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Amended Plan.

22.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Bankruptcy Court in these Bankruptcy Cases, the Trustee, the Debtors, AlixPartners LLC, any Disbursing Agent, the Noteholders, the Equity Committee and their respective members, officers, directors, employees, agents, counsel or other professionals have acted in good faith within the meaning of Section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules in connection with all their respective activities described in Section 1125 of the Bankruptcy Code, and are entitled to the protections afforded by Section 1125(e) of the Bankruptcy Code and the exculpation provisions

9

PHDATA 1234490_1

SL 001665

set forth in Article 9 of the Second Amended Plan, as modified in conformity with the Opinion by the Plan Modification.

23.    Assumption of Executory Contracts and Unexpired Leases. Article 8 of the Plan governing the assumption and rejection of executory contracts and unexpired leases satisfies the requirements of Sections 365(a) and (b) of the Bankruptcy Code. The assumption of those executory contracts and unexpired leases to be assumed in accordance with the Plan is in the best interest of the Debtors, their estates, Reorganized Coram and all parties in interest in the Bankruptcy Cases. The assignment to Reorganized Coram of those assumed executory contracts and unexpired leases to which the Debtors are a party and of any executory contracts and unexpired leases heretofore assumed by the Debtors during the Bankruptcy Cases is in the best interest of the Debtors, their estates, Reorganized Coram and all parties in interest in the Bankruptcy Cases. The Plan and this Confirmation Order each adequately provides for the timely payment of cure amounts, if any, in Cash in accordance with Section 365(b)(1) of the Bankruptcy Code.

24.    Rejection of Executory Contracts and Unexpired Leases. The executory contracts or unexpired leases of the Debtors listed in the Plan Supplement as all executory contracts and unexpired leases to be rejected are burdensome and, as such, the rejection thereof is in the best interest of the Debtors, their estates, and all parties in interest in the Bankruptcy Cases.

25.    Substantive Consolidation. No creditor of any of the Debtors will be prejudiced by the limited substantive consolidation of the Bankruptcy Cases solely for Plan purposes; such substantive consolidation will benefit all creditors of the Debtors.

26.    R-Net Settlement. For the reasons and based upon the findings and conclusions set forth in the Opinion, the compromise and settlement between the Trustee and R-Net,

10                    PHDATA 1234490_1

SL 001666

incorporated in the Plan, is hereby approved pursuant to Bankruptcy Rule 9019 and is binding upon all entities affected thereby.

27.    The Plan Funding Agreement.  For the reasons and based upon the findings and conclusions set forth in the Opinion, the compromise and settlement between the Trustee and the Noteholders that is incorporated in the Plan, is hereby approved and is binding upon all entities affected thereby.

28.    Satisfaction of Confirmation Requirements.  As provided herein and in the Opinion, the Plan satisfies the requirements for confirmation set forth in Section 1129 of the Bankruptcy Code.

29.    Retention of Jurisdiction.  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article 11 of the Plan and Section 1142 of the Bankruptcy Code.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

30.    Confirmation.  The Plan (which consists of the Second Amended Plan as modified by the Plan Modification) is approved and confirmed under Section 1129 of the Bankruptcy Code.  The terms of the Plan and the Opinion are incorporated by reference into and are an integral part of this Confirmation Order.

31.    Technical Amendments.  The modifications and amendments to the Amended Plan reflected in the Second Amended Plan and Plan Modification, meet the requirements of Sections 1127 of the Bankruptcy Code, such modifications do not adversely change the treatment of any Creditor or any Equity Interest of which the holder has not consented thereto, and thus no further solicitation or voting is required.

11

PHDATA 1234490_1

SL 001667

A1115

32.    Objections.  Certain of the objections to the Plan by the Equity Committee are addressed in the Opinion.  All other objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits.

33.    Plan Supplement.  The documents contained in the Plan Supplement and any amendments, modifications, and supplements thereto are incorporated by reference into and are an integral part of the Plan, all documents and agreements related thereto or to consummation and implementation of the Plan, and the execution, delivery, and performance thereof by Reorganized Coram, are authorized and approved.  Without need for further order or authorization of the Bankruptcy Court, the Trustee, the Debtors and Reorganized Coram are each authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement that do not materially modify the terms of such documents and are consistent with the Plan.

34.    Restructuring Transactions.  The Trustee, the Debtors and Reorganized Coram are authorized to take all steps, and to execute and deliver all documents, necessary to implement and effectuate the Plan and the transactions contemplated by the Plan.

35.    Plan Classification Controlling.  The classifications of Claims and Equity Interests for purposes of the Distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors and equity security holders in connection with voting on the Amended Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes, and (c) shall not be binding on the Debtors or Reorganized Coram.

12                    PHDATA 1234490_1

SL 001668

36.    Binding Effect.  The Plan and its provisions shall be binding upon the Trustee, the Debtors, Reorganized Coram, the Disbursing Agent, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Equity Interest in the Debtors, including all governmental entities, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.

37.    Transmittal; Notice.  The transmittal and service of the Disclosure Statement, the Amended Plan, the Ballots, the Solicitation Order and the Confirmation Hearing Notice are hereby approved.  The publication of the Confirmation Hearing Notice is hereby approved.

38.    Vesting of Assets (11 U.S.C. § 1141(b), (c)).  Except as otherwise specifically provided in the Plan, in accordance with Article 5.9 of the Plan, upon the Effective Date, title to all assets and property of the Debtors' estates, including the Debtors' equity and other interests in non-debtor affiliates of the Debtors, shall pass to and revest in Reorganized Coram, free and clear of all Claims, Equity Interests, liens and other rights of creditors or holders of Equity Interests arising before the Effective Date.  On and after the Effective Date, Reorganized Coram may operate its business and may use, acquire, and dispose of its property free of any restrictions of the Bankruptcy Code, Bankruptcy Rules, or the Bankruptcy Court, except as otherwise specifically provided in the Plan.

39.    Dissolution of CHC.  Consistent with Article 5.1 of the Plan, on the Effective Date, or as soon thereafter as may be reasonably practicable, the Trustee shall cause CHC to be dissolved as a corporation under the laws of the State of Delaware, without the taking of any further action by the stockholders, officers and directors of CHC.

40.    Assumption of Executory Contracts and Unexpired Leases (11 U.S.C. §§ 365 and 1123(b)(2)).  Pursuant to Article 8 of the Plan and Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, the Trustee is authorized to assume, as of the Effective Date, those executory

13                          PHDATA 1234490_1

SL 001669

contracts or unexpired leases to which the Debtors are parties, unless such contract or lease (i) was previously assumed or rejected, (ii) previously expired or terminated pursuant to its own terms, or (iii) is on a list of executory contracts to be rejected contained in the Plan Supplement. Pursuant to Section 365(f) and 1123(b)(2) of the Bankruptcy Code, and in accordance with Article 8 of the Plan, the Trustee is authorized to assign to Reorganized Coram and Reorganized Coram is authorized to assume, any executory contracts and unexpired leases to which CHC is a party (and which has not been rejected).

41.     <u>Cure Amounts in Connection with Assumption</u>.  With respect to each executory contract or unexpired lease assumed by the Trustee or the Debtors, any monetary amounts required as cure payments shall be satisfied by Reorganized Coram's payment of the cure amount in Cash on the Effective Date, or upon such other terms the Bankruptcy Court may order or the parties to such executory contract or unexpired lease otherwise may agree.  In the event of a dispute regarding whether a default exists under the executory contract or unexpired lease or the amount of any cure payment, the cure of any default required by Section 365(b)(1) of the Bankruptcy Code shall occur after the entry of a Final Order of the Bankruptcy Court resolving the dispute.

42.     <u>Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. §§ 365(a) and 1123(b)(2))</u>.  The Trustee is authorized pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code to reject the executory contracts or unexpired leases of the Debtors listed in the Plan Supplement.  Reorganized Coram shall have no liability under such rejected contracts and leases except as specifically provided for in the Plan.

43.     <u>Bar Date for Rejection Damage Claims</u>.  If the rejection of any executory contract or unexpired lease listed as rejected in the Plan Supplement, results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall

14

SL 001670

not be enforceable against the Debtors, Reorganized Coram or the Debtors' estates, assets, properties or interests in properties unless a proof of claim is filed with the Bankruptcy Court and served upon the Trustee on or before thirty (30) days after the Effective Date.

44.    General Authorization.  The Trustee and each of the Debtors and Reorganized Coram are authorized to execute, deliver, file or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement and further evidence the terms and conditions of the Plan.  The Trustee, the Debtors and Reorganized Coram and their respective directors, officers, members, agents and attorneys, are authorized and empowered to issue, execute, deliver, file, or record any agreement, document or security, including without limitation the documents contained in the Plan Supplement, as modified, amended and supplemented, in substantially the form included therein, and to take any action necessary or appropriate to implement, effectuate and consummate the Plan in accordance with its terms and to take any or all corporate actions authorized to be taken pursuant to the Plan, and any release, amendment, or restatement of any bylaws, certificates of incorporation, or other organization documents of Reorganized Coram, whether or not specifically referred to in the Plan or the Plan Supplement, without further order of the Court or action by the holder of a Claim against or Equity Interest in either of the Debtors, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

45.    Corporate Action.  On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders or directors of and/or one or both of the Debtors or Reorganized Coram or their successors in interest under the Plan, including, without limitation, the authorization to issue or cause to be issued the Reorganized Coram

15

PHDATA 1234400_1

SL 001671

Common Stock, the Reorganized Coram Preference Stock and documents relating thereto, the adoption of the amended certificate of incorporation and amended bylaws of Reorganized Coram and the dissolution of CHC and the election or appointment, as the case may be, of directors and officers of the Debtors pursuant to the Plan, shall be in full force and effect from and after the Effective Date pursuant to Section 303 of the General Corporation Law of the State of Delaware without any requirement of further action by the stockholders or directors of the Debtors, the Trustee or Reorganized Coram. On the Effective Date, or as soon thereafter as is reasonably practicable, Reorganized Coram shall file its amended certificate of incorporation with the Secretary of State of the State of Delaware and the Trustee shall file the appropriate documents to effectuate the dissolution of CHC in accordance with applicable law. The amended certificate of incorporation and bylaws of Reorganized Coram shall be amended as necessary to satisfy the provisions of the Plan and the Bankruptcy Court and shall include, inter alia, a provision prohibiting the issuance of nonvoting equity securities, to the extent such a provision is required by Section 1123(a)(6) of the Bankruptcy Code.

46.    Reorganized Coram Management.  On the Effective Date, operation of Reorganized Coram shall become the general responsibility of the board of directors of Reorganized Coram, which shall, thereafter, continue to have the responsibilities for the management, control and operation of Reorganized Coram. As of the Effective Date, the Noteholders or their designees shall be the holders of all of the capital stock of Reorganized Coram and shall, consistent with the requirements of Delaware law, have the right to elect the board of directors of Reorganized Coram. However, as provided in Article 5.5 of the Plan, Daniel Crowley shall not be employed or otherwise affiliated with Reorganized Coram, or any subsidiary or affiliate of Reorganized Coram, for a period of one (1) year following the Effective Date.

16

PHIDATA 1234490_1

SL 001672

47.    <u>Annual Meeting of Shareholders</u>.  For purposes of Section 211 of the Delaware General Corporation Law Act, the first annual meeting of shareholders of Reorganized Coram shall be deemed to have taken place on the Effective Date.

48.    <u>Actions by Reorganized Coram; Issuance of New Securities</u>.  As of the Effective Date, Reorganized Coram is authorized, without further action under applicable law, regulation, rule or order, to:  (i) issue Reorganized Coram Common Stock and the Reorganized Coram Preferred Stock as contemplated by the Plan and (ii) execute, deliver, file or record any documents, and take any other actions as maybe necessary to effectuate the terms and provisions of the Plan.

49.    <u>Dissolution of Committee</u>.  As of the Effective Date, the Creditors' Committee and the Equity Committee shall be dissolved and have no further duties, authority or responsibility, and Reorganized Coram shall not have any responsibility for fees, costs and expenses of the Creditors' Committee and the Equity Committee, its individual members or its professionals, incurred on and after the Confirmation Date.

50.    <u>The Causes of Action</u>.  As set forth in Article 5.3 of the Plan, the Trustee shall retain the sole and exclusive right, from and after the Effective Date, to commence, prosecute, compromise and seek Bankruptcy Court approval of any settlement of any of the Causes of Action on behalf of the Debtors' estates; provided, however, that the Trustee shall not commence or maintain any action or cause of action released under Article 9 of the Plan.  Reorganized Coram shall be responsible for payment of all Post-Effective Date Administrative Claims related to the Causes of Action.  The proceeds of the Causes of Action, if any, shall be distributed as follows:  (i) first, to Reorganized Coram in an amount equal to the Post-Effective Date Administrative Claims relating to the Causes of Action; (ii) second, to the holders of Allowed General Unsecured Claims on a *pro rata* basis in an amount equal to the interest accruing (at the

17                    PHDATA 1234490_1

SL 001673

statutory judgment rate set forth in Section 1961 of Title 28 of the United States code) from the Petition Date through the Effective Date on account of such Allowed General Unsecured Claims until such interest has been paid in full; and (iii) third, on a *pro rata* basis to the holders of CHC Equity Interests.

51.    Securities Laws Exemption.  The offering, issuance, transfer, exchange, and/or distribution by Reorganized Coram of shares in Reorganized Coram are exempt from registration under the Securities Act of 1933, as amended, and any similar state or local laws by reason of Section 1145(a) of the Bankruptcy Code.

52.    Substantive Consolidation.  Upon the occurrence of the Effective Date, the Debtors' estates shall be deemed substantively consolidated, but only for the limited purpose of effectuating the settlements contemplated by, and making Distributions to the holders of Claims and Equity Interests under the Plan.  For such limited purposes, on the Effective Date:  (a) all guaranties of either Debtor for the payment, performance or collection of an obligation of the other Debtor with respect to any class of Claims or Equity Interests shall be deemed terminated and cancelled; (b) any obligation of one of the Debtors and all guarantees with respect to any class of Claims or Equity Interests executed by one of the Debtors and any joint obligation of the Debtors, and all multiple Claims against the Debtors on account of such joint obligation, shall be treated and allowed only as a single Claim against the consolidated estates of the Debtors; and (c) each Claim filed in the Chapter 11 Case of either of the Debtors shall be deemed filed against the consolidated Debtors and shall be deemed a Claim against and an obligation of the consolidated Debtors.  Except as set forth herein, such substantive consolidation will not (other than for purposes related to Distributions to be made under the Plan) (a) affect the legal entity and corporate structures of either of the Debtors or Reorganized Coram, subject to the right of the Debtors or Reorganized Coram to effect any transaction contemplated by the Plan; (b) render

18                                   PHDATA 1234490_1

SL 001674

A1122

valid and enforceable against either Debtor any Claim or Equity Interest under the Plan for which it is otherwise not liable, and the liability of the Debtors for any such Claim or Equity Interest will not be affected by such substantive consolidation other than to extinguish duplicate liability on account of such a Claim, and (c) affect interests in any non-debtor affiliates, except as otherwise may be required in connection with any transaction contemplated by the Plan.

53.    Governmental Approvals Not Required.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, the Plan Supplement, and any documents, instruments, or agreements and any amendments or modifications thereto.

54.    Exemption from Certain Taxes.  Pursuant to Section 1146(c) of the Bankruptcy Code, any transfer from the Debtors to Reorganized Coram or any other Person pursuant to the Plan shall not be subject to any recording or stamp tax, conveyance fee or similar tax, mortgage recording or other similar tax or governmental assessment.  This Confirmation Order hereby directs the appropriate state or local government officers to forego the collection of any such tax or governmental assessment and to accept for filing and recording any documents without payment of said tax or governmental assessment.

55.    Disputed Claims.  No Distribution shall be made to the holder of a disputed Claim or disputed Equity Interest until such Claim or Equity Interest is Allowed.  From and after the Effective Date, the Trustee shall have the authority to compromise, withdraw or otherwise resolve objections to Claims, subject to Bankruptcy Court approval.  The total amount of the Distribution attributable to a disputed Claim or disputed Equity Interest (or such lessor amount as

19                        PHDATA 1234490_1

SL 001675

the Bankruptcy Court may determine) shall be held in reserve from Plan Funding Cash by Reorganized Coram pending resolution by the Bankruptcy Court or agreement of the Trustee or holder of such Claim or Equity Interest that is in dispute. Any Distribution shall be made as soon as reasonably practicable after the date that the Bankruptcy Court enters a Final Order allowing such Claim. The holder of a disputed Claim or disputed Equity Interest shall not be entitled to receive or recover any amount in excess of the amount reserved to pay such Claim or Equity Interest. The Trustee may at any time request the Bankruptcy Court to estimate any contingent or unliquidated claim pursuant to Section 502(c) of the Bankruptcy Code or other applicable law.

56.     Disbursing Agent.  All Distributions under the Plan shall be made by Reorganized Coram and all monetary distributions shall be at the direction of the Disbursing Agent.  If the Disbursing Agent is an independent third party designated by the Trustee to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services by Reorganized Coram.  No Disbursing Agent shall be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.

57.     Equity Interests.  As set forth in Article 4 of the Plan, all CHC Equity Interests shall be deemed cancelled and extinguished as of the Effective Date.  In accordance with Article 4 of the Plan and as set forth in the Stipulation, the distributions to the members of Class 6 (CHC Equity Interests) provided for in Article 4 of the Plan shall be made to the current holder as of the Effective Date of each CHC Equity Interest that was in existence as of the Record Date.  In accordance with Article 1.55 of the Plan, the Record Date for the Purposes of the Plan is June 26,

20

PHDATA 1234490_1

SL 001676

2003, the date on which the order approving the Trustee's Disclosure Statement was entered upon the docket.

58.    The Plan Funding Agreement.  As of the Effective Date, the Noteholders shall be deemed to have agreed to the settlement terms set forth in Article 7.1 of the Plan and the Plan Funding Agreement.

59.    R-Net Settlement.  As of the Effective Date, R-Net shall be deemed to have agreed to the settlement set forth in Article 7.2 of the Plan and the R-Net Settlement Agreement.

60.    Administrative Bar Date.  Pursuant to Article 3.1(b) of the Plan, the holder of an Administrative Claim that arises before the Effective Date, other than an Administrative Claim of a professional employed under Section 327 and 328 of the Bankruptcy Code, or an Administrative Claim incurred by the Debtors in the ordinary course of the Debtors' business, must file an application seeking allowance of such Administrative Claim on or before the thirtieth (30th) day after the Effective Date.  Pursuant to Article 3.1(c) of the Plan, the holder of an Administrative Claim of a professional employed under Section 327 and 328 of the Bankruptcy Code that arises before the Effective Date must file an application for payment of such Administrative Claim under Section 330 of the Bankruptcy Code on or before the thirtieth (30th) day after the Effective Date.  As provided for in Article 3.1(d) of the Plan, Allowed Administrative Claims that arise before the Effective Date shall be paid from Plan Funding Cash. Any Allowed Administrative Claims that arise after the Effective Date shall be paid by Reorganized Coram, but not with the Plan Funding Cash.

61.    Discharge and Injunction.  Pursuant to Articles 10.1 and 10.2 of the Plan, the consideration to be distributed to holders of Allowed Claims or Allowed Equity Interests under the Plan shall completely satisfy, discharge and release all Claims and Equity Interests of any nature whatsoever against or in the Debtors or any assets, property or interests in property of the

21                                    PHDATA 1234490_1

SL 001677

**A1125**

Debtors to the fullest extent permitted by Section 1141 of the Bankruptcy Code. The Debtors shall be discharged from any and all Claims, including Claims that arose before the Confirmation Date, and all debts of the kind specified in Sections 502(g), (h) and (i) of the Bankruptcy Code whether or not a proof of Claim based upon such debt is filed or deem filed under Section 501 of the Bankruptcy Code, a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code, or the holder of a claim based upon such debt has accepted the Plan or any Distribution under the Plan. The discharge shall act as a permanent injunction against, among other things, the taking of any of the following actions against the Debtors, Reorganized Coram, and/or assets or property of the Debtors' estates. (i) the commencement or continuation of any action or other proceeding of any kind to enforce a Claim against or Equity Interests in either of the Debtors; (ii) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors; (iii) the creation, perfection or enforcement of any encumbrance of any kind against the Debtors, Reorganized Coram or any of their or its property; and/or (iv) the assertion of any right of setoff, subrogation or recoupment of any kind against any obligation.

62.    Releases, Exculpations, and Injunctions.  The release, exculpation, and injunction provisions contained in the Plan, which incorporates the modifications to the Second Amended Plan made in accordance with the Opinion and set forth in the Plan Modification, are approved and such provisions shall be effective and binding upon all persons and entities.

63.    Termination of Injunctions and Automatic Stay.  Except as otherwise provided in the Plan or this Confirmation Order, all injunctions or stays arising under or entered during the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

22

SL 001678

64.    _Termination of Existing Securities_.  Except for purposes of evidencing a right to Distributions under the Plan, on the Effective Date all agreements and other documents evidencing Claims or rights of any holder of a Claim against or Equity Interests in any of the Debtors, including all stock, indentures and notes, shall be canceled and deemed null and void and of no force and effect as against the Debtors and Reorganized Coram.

65.    _Non-occurrence of Effective Date_.  If each condition to the Effective Date specified in Article 13, Section 2 of the Plan has not been satisfied or duly waived within ninety (90) days after the Confirmation Date, then (unless the period of waiver or satisfaction of such conditions has been extended with the consent of the Trustee and the Noteholders) the Confirmation Order will be vacated by the Bankruptcy Court.

66.    _Notice of Entry of Confirmation Order_.  On or before the tenth (10th) Business Day following the date of entry of this Confirmation Order, the Trustee shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c) on all creditors and interest holders, the United States Trustee, and other parties in interest, by causing notice of entry of the Confirmation Order (the "Notice of Confirmation"), to be delivered to such parties by first-class mail, postage prepaid.  The Trustee also shall cause the Notice of Confirmation to be published as promptly as practicable after the entry of this Confirmation Order once in _The New York Times_ (National Edition).  The notice described herein is adequate under the particular circumstances and no other or further notice is necessary.

67.    _Notice of Effective Date_.  Within five (5) Business Days following the occurrence of the Effective Date, the Trustee shall file notice of the occurrence of the Effective Date and shall serve a copy of same on those entities which have filed a notice of appearance and request for service of pleadings in the Bankruptcy Cases.

23

PHDATA 1234490_1

SL 001679

**A1127**

68.    <u>Binding Effect</u>.  Pursuant to Sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan, the Plan Documents and the Plan Supplement shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

69.    <u>Conflicts Between Confirmation Order and Plan</u>.  To the extent of any inconsistency between the provisions of the Plan and this Confirmation Order, the terms and conditions contained in this Confirmation Order shall govern.  The provisions of this Confirmation Order are integrated with each other and are nonseverable and mutually dependent unless expressly stated by further order of this Bankruptcy Court.  The failure to reference or discuss all or part of any particular provision of the Plan herein shall have no effect on the validity, binding effect and enforceability of such provision, and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan.

70.    <u>Modification/Reversal</u>.  If any provision of this Confirmation Order is hereafter modified, vacated or reversed by subsequent order of this Bankruptcy Court or any other court, such reversal, modification or vacation shall not affect the validity or enforceability of the obligations incurred or undertaken under or in connection with the Plan prior to the Trustee or Reorganized Coram's receipt of written notice of any such order unless such order specifically provides otherwise.

71.    <u>Effective Date</u>.  This Order shall be deemed entered as of November 1, 2004 and the Effective Date of the Plan shall be December 1, 2004.  Plan Ending Cash under the Plan shall be computed as of the close of business on the business day immediately preceding the Effective Date.

_Mary F. Walrath_    10/27/04
HONORABLE MARY F. WALRATH,
UNITED STATES BANKRUPTCY JUDGE

24                    PHDATA 3234490_1

SL 001680

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE:<br><br>CORAM HEALTHCARE CORP. and<br>CORAM, INC.,<br>      Debtors. | **Chapter 11**<br>**Case No. 00-3299 (MFW)**<br>**and Case No. 00-3300 (MFW)**<br><br>**Jointly Administered** |

## REQUEST OF DANIEL CROWLEY FOR PAYMENT OF ADMINISTRATIVE EXPENSE

Daniel Crowley, by his attorneys, hereby submits this, his Request for Payment of Administrative Expense (the "Request"). In support of the Request, Crowley states as follows:

### FACTUAL BACKGROUND

**A.    The Bankruptcy Filing and Chapter 11 Trustee**

1.    On or about August 8, 2000 (the "Petition Date"), Coram and Coram, Inc. (collectively, the "Debtors") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors' chapter 11 cases have been consolidated for procedural purposes only.

2.    On February 12, 2002, this Court granted the motion to appoint a chapter 11 trustee (the "Trustee") to assume control over the Debtors' property and affairs pursuant to section 1104 of the Bankruptcy Code. On March 7, 2002 the Court approved the appointment of the Hon. Arlin M. Adams as Trustee.

**B.    Crowley's Employment under the Employment Agreement and KERPs**

3.    Prior to the Petition Date, on or about November 30, 1999, Crowley entered into an Employment Agreement (as amended from time to time, the "Employment Agreement")[1] with Coram Healthcare Corporation ("Coram"), whereby Coram agreed, among other things, to employ Crowley as its Chairman of the Board, President and Chief Executive Officer.

---

[1] A copy of the Employment Agreement and its amendments is attached hereto as Group Exhibit A

4.      Coram, and subsequently the Trustee, continued to employ Crowley after the Petition Date pursuant to the terms of the Employment Agreement through its expiration on November 30, 2002.  Even after the Employment Agreement expired, the Trustee continued Crowley's employment through March, 2003.

5.      Over the course of Crowley's employment, the Employment Agreement was amended from time to time to provide, among other things, for the payment of certain bonuses (the "Bonuses") to Crowley including without limitation the following:  (1) for Fiscal Year 2000, a bonus payment of 25 percent of Coram's EBITDA above $14,000,000 with a one-time payment of $5,000,000 if EBITDA exceeded $35,000,000; (2) for Fiscal Year(s) 2001, and 2002, a bonus of up to three (3) times his then base salary of $650,000 depending upon Coram's EBITDA; and a bonus payment of $1,800,000 if Coram obtained a successful refinancing.  Based upon Coram's EBITDA Crowley is due $10,842,000 for Fiscal Year 2000, $996,840 for Fiscal Year 2001, and $1,950,000 for Fiscal Year 2002.  Because Coram successfully obtained refinancing, Crowley is further entitled to the $1,800,000 bonus.

6.      Coram also provided for additional compensation to be payable to Crowley, among others, under certain Key Employee Retention Programs ("KERPs").  Pursuant to those KERPs, Crowley was to receive $400,000 for each year ended December 31, 2000, 2001, and 2002.  Because Crowley remained employed by Coram at each of those years' end, Crowley is further entitled to an additional $1,200,000 under the KERPs (the "KERP Amounts").

7.      In addition to performance bonuses and KERP payments, Crowley was entitled to receive additional compensation for any unused vacation, and certain other Board-approved payments (the "Additional Compensation").

8.      To date, neither the Debtors nor the Trustee have paid Crowley the Bonuses, the

540480-1                                    2

**A1131**

KERP Amounts, or the Additional Compensation in an aggregate amount of nearly $16,800,000[2] (the "Administrative Request Amount") to which Crowley is entitled. Therefore, Crowley hereby requests that this Court allow the Administrative Request Amount as an administrative expense of the Debtors and direct the Debtors and the Trustee to pay him that amount.

**C.    Crowley's Contributions to the Debtors' Estates**

9.    By all accounts, Crowley did more than stabilize and maintain the Debtors' businesses: he significantly contributed to the Debtors' estates by significantly improving them, even during the most trying of bankruptcy conditions. As noted by Harrison J. Goldin:

> Crowley moved quickly to stabilize Coram's finances and turn the company around. Among other changes, he centralized the purchasing process; brought inventory levels down; increased working capital; paid off some of Coram's debt; reduced accounts receivable from $130 million to about $77 million; and emphasized Coram's core therapy focus. According to Wendy Simpson, who was CFO at the time, Crowley "focused immediately on cash out." She said he literally "went through stacks of invoices and questioned each one."

Update Report of Independent Restructuring Advisor Goldin Associates, L.L.C. dated September 4, 2001, at 43

10.    After the Court denied Coram's Second Plan of Reorganization, Judge Adams was appointed chapter 11 Trustee. At the Trustee's request, Crowley stayed on as Coram's CEO. Judge Adams respected the value that Crowley brought to the Debtors, notwithstanding the circumstances and Crowley's conflict that prompted the Trustee's appointment. As the Trustee himself stated:

> 19.    Since the Appointment Date, the Trustee has independently examined the actions undertaken by Crowley as the Debtors' chief executive officer. The Trustee has visited the corporate offices in Denver and has had several meetings and discussions with Crowley, CHC's senior executives and other employees of CHC. In addition, the Trustee has considered numerous reports regarding the

---

[2] This amount represents an estimate of the bonuses Crowley is entitled to be paid and includes $1,950,000 that was reserved per direction of the Trustee Counsel for 2002 Management Incentive Plan. The Actual amount of Crowley's Additional Compensation which he claims is subject to payment as an administrative expense is subject to further investigation and a more complete review of the Debtors' books and records.

540480-1                                          3

financial performance of the Debtors and has reviewed the Debtors' performance under Crowley with the investment bankers retained by the Trustee.

20.     *The Trustee's evaluation is that Crowley has operated the company profitably and efficiently. Under Crowley, notwithstanding being in these bankruptcy proceedings, the Debtors have experienced positive operating margins and EBITDA [footnote deleted], reduced cost of services, reduced operating costs, improved inventory management, improved information systems, improved management tools, and maintained a stable cash position with no net borrowing to fund post-petition operations.*

21.     EBITDA has substantially increased during the period of Crowley's stewardship of the company. From 1995 through 1999, a time prior to Crowley's employment, the Debtors' EBITDA was a negative $37 million. *From January 2000 through September 2002, the Debtors experienced $83 million in positive EBITDA, a $120 million improvement under Crowley's management.* For the first nine months of 2002 (including the six months after the Trustee was appointed), EBITDA was a positive $21 million; by contrast, EBITDA was negative $54 million for the year ended December 31, 1999.

22.     Revenue and gross profit are also increasing. For the nine-month period ended September 30, 2002, the Debtors' revenue rose $31 million, or 11 percent, from the same period the year before, resulting in an increased gross profit of $9 million. Indeed, revenue was higher during each month of 2002 than during the same month in 2001.

23.     Under Crowley, CHC has improved its financial performance by identifying and focusing the business on its most profitable core therapies. When Crowley was named CEO, non-core therapies accounted for approximately 38 percent of infusion therapy revenues for the quarter ended December 31, 1999; by the third quarter of 2002, non-core therapies represented only approximately 27 percent of infusion therapy revenues. In addition, daily average revenue per patient for core therapies rose 3% to $151 per pay during the nine months ended September 30, 2002 when compared with the same period from the prior year.

24.     The most profitable type of business for CHC is the treatment of patients with chronic disorders. *With Crowley at the helm under the Trustee's stewardship, CHC refined its marketing strategy to target chronic patients. As a result of these efforts, revenue from the treatment of hemophilia patients grew by 55 percent ($15 million) during the nine months ended September 30, 2002 when compared with the same period from the prior year.* The treatment of hemophilia patients now represents 13 percent of total revenue, up from 9 percent during the nine months ended September 30, 2001. Similarly, revenues from nutrition patients were increased 6 percent during the same time frame.

25.     *Furthermore, during Crowley's tenure, CHC has also cut costs by, inter alia, leveraging volume to purchase drugs and supplies more effectively.* Cost of services for infusion, exclusive of depreciation and amortization expense, as

540480-1                                     4

a percentage of net revenue has been reduced from 76 percent for the year ended December 31, 1999 to 71 percent for the nine months ended September 30, 2002.

26.    *Under Crowley, the Debtors have neither required post-petition borrowings to fund operations nor utilized their debtor-in-possession facility.*

27.    *Finally, the evaluation conducted by the Trustee's advisors has revealed improved employee productivity, increased employee morale and reduced employee turnover since Crowley became CEO of the Debtors.* Company statistics show that the branch employee turnover rate was reduced by approximately six percent in 2002 when compared to 2001. It is apparent to the Trustee that many of CHC's employees are loyal to Crowley and that they remain confident of his ability to transition the Debtors' through an effective reorganization.

Motion of the Chapter 11 Trustee For Authorization To Enter Into Termination and Employment Extension Agreement with Daniel D. Crowley. (Emphasis added).

11.    Crowley's remarkable achievements at Coram speak for themselves.

### Jurisdiction

12.    This Court has jurisdiction over the Request, which is a core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A), (B), and (O).

### Law and Argument

13.    As the Third Circuit and this Court have recognized, compensation, including bonuses, for debtors' employees are entitled to administrative priority status for services rendered post-petition. *See, e.g., In re Hechinger Inv. Co.*, 298 F.3d 219 (3d Cir. 2002) and *In re Lason, Inc.*, 309 B.R. 441 (Bankr.D.Del. 2001). *Accord, In re Pre-Press Graphics Company, Inc.*, 287 B.R. 726 (Bankr. N.D. Ill 2003).

14.    Here, there is no question that Crowley's services were performed for the Debtors post-petition, resulting from negotiations with the Debtor in Possession and the Trustee. Crowley's post-petition services were performed at the Debtors' and Trustee's request, and pursuant to an agreement entered into by the Debtors and Crowley. Indeed on October 3, 2002, Crowley gave the Trustee notice that he intended on terminating his relationship with Coram at

540480-1                                              5

**A1134**

the expiration of the Employment Agreement. *At the Trustee's request*, however, Crowley

continued to serve as Coram's CEO while the Trustee and Crowley negotiated a Transition

Agreement and the Trustee sought approval to enter into a Transition Agreement with Crowley.

Consequently, the amounts to be paid pursuant to the Employment Agreement and the amounts

earned by Crowley during the holdover period are entitled to be paid as an administrative claim

pursuant to Section 503(b)(1).

15.     Furthermore, although this alone is sufficient grounds to grant an administrative

priority status for those payments, Crowley is entitled to these payments under this Court's

general test for administrative expense claims:

> Whether someone is entitled to an administrative claim is
> determined by a two-part test:  (1) there must be a post-petition
> transaction between the creditor and the debtor; and (2) the estate
> must receive a benefit from the transaction.

*In re Waste Sys. Int'l, Inc.*, 280 B.R. 824, 826 (Bankr. D. Del. 2002).  As shown above, by

continuing to provide services to the Debtors, and then to the Trustee following his appointment,

and then to the Trustee during the holdover period after the Employment Agreement terminated,

Crowley's request easily satisfies this test.

16.     Again, it is unquestionable that Crowley's services were part of a transaction

between him and the Debtors and, subsequently, the Trustee on behalf of the Debtors' estates.

Crowley's services were rendered as part of his employment as CEO of the Debtors pursuant to

an agreement that was never rejected.  Indeed, the Trustee waited until November 26, 2002 –

four days before the employment Agreement expired on its own terms – to file a motion to reject

the Employment Agreements (docket #1972).  The Trustee since abandoned prosecution of that

motion.

17.     Second, as amply described above, in pleadings filed by the Trustee, by the

Trustee in his deposition, and in the Goldin Report, the Debtors' estates received substantial

540480-1                                    6

benefits from Crowley's services.[3] In addition to all of the Trustee's findings of Crowley's

exemplary performance are the following successes brought by Crowley's efforts: successful

resolution of potentially costly litigation with Aetna; material improvement in the mix of

therapies sold by Coram that was followed by fifteen months of consecutive net growth;

establishment of a Strategic Business Unit concept that rapidly turned Coram into a viable

competitor in its marketplace; a material improvement in costs; assembling a first-class

management team; implementation of a crisp Information Technology strategy that brought

clarity to this vital area for the first time since Coram's formation; and a multitude of operational

improvements ranging from inventory to nursing visits to pricing to contracting. The value of

those benefits are appropriately measured by the amounts agreed to by the parties under the

Employment Agreement and the KERPs.

    **WHEREFORE**, Crowley respectfully requests this Court enter an order (i) granting him

an administrative priority expense in an amount to be determined; (ii) directing the Debtors and

the Trustee to pay Crowley that amount upon the entry of the order, and (iii) for such other and

further relief as may be just.


Date: December 30, 2004

                                 Respectfully submitted,
                                   **DANIEL CROWLEY, Movant**

                                 **By:**
                                 **One of His Attorneys**

Richard H. Cross, Jr.
Donna L. Harris
Cross & Simon, LLC
913 North Market Street
Wilmington, DE 19899

---

[3] As even this Court has recently observed, in the context of discussing the merits of the Equity Committee's draft complaint "...the evidence suggests that Crowley actually improved the financial position of Coram by reducing debt and increasing earnings [citation omitted]." *In re Coram Healthcare Corp.*, 315 B.R. 321, 333 (Bankr. D. Del. 2004)

540480-1
                                 7

Scott N. Schreiber
Anthony C. Valiulis #2883007
John H. Ward #2939924
**MUCH SHELIST FREED DENENBERG
 AMENT & RUBENSTEIN, P.C.**
191 North Wacker Drive
Suite 1800
Chicago, Illinois 60606
(312) 521-2691

**A1137**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Settlement Agreement") is made and entered into this fifth

day of April, 2006, by and between ARLIN M. ADAMS (the "Trustee"), in his capacity as

CHAPTER 11 TRUSTEE TO THE BANKRUPTCY ESTATES OF CORAM HEALTHCARE

CORPORATION ("CHC") and CORAM, INC. ("CI" and together with CHC, collectively

"Coram") and the following former members of the Coram Board of Directors:  DONALD J.

AMARAL, a citizen of the State of Nevada, WILLIAM J. CASEY, a citizen of the State of

California, L. PETER SMITH, a citizen of the State of Illinois, and SANDRA L. SMOLEY, a

citizen of the State of California (collectively the "Outside Directors").

WHEREAS, on December 29, 2004, the Trustee commenced an action against

defendant Daniel J. Crowley, Coram's former Chairman, President and CEO, and the Outside

Directors, in the United States District Court for the District of Delaware at Case No. 04-1565-

SLR (the "Delaware Action");

WHEREAS, the Delaware Action alleges that Crowley and the Outside Directors

breached their fiduciary duties to Coram;

WHEREAS, the Outside Directors notified Genesis Insurance Company

("Genesis") of the Delaware Action but Genesis has refused to defend them;

WHEREAS, the Trustee and the Outside Directors, without any admission of

liability, desire to avoid the expense and uncertainty of further litigation and to resolve any and

all disputes that have been raised or could be raised in the Delaware Action by entering into this

Settlement Agreement; and

1

PHDATA 1354393_2

**WHEREAS**, this Settlement Agreement is subject to approval by the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

**NOW, THEREFORE**, in consideration of the promises set forth in this Settlement Agreement, which the parties agree constitute good and sufficient consideration, and subject to the terms and conditions set forth below, and intending to be legally bound, the Trustee and the Outside Directors agree as follows:

1.     The Outside Directors consent to the entry of judgment in the Delaware Action against them in favor of the Trustee in the amount of $9,550,000 (the "Judgment").

2.     Within five business days of the execution of this Settlement Agreement and receipt by the Trustee of the financial information from the Outside Directors as set forth below, the Trustee will file a motion with the Bankruptcy Court to approve this Settlement Agreement.

3.     The Outside Directors hereby assign to the Trustee all of their rights and any and all causes of action any or all of them may have arising out of, or under, any of the directors' and officers' liability insurance policies obtained by Coram for their benefit, including but not limited to the primary policy issued by Genesis (Policy No. YXB001625A), for the period January 8, 1999 through January 27, 2001 (the "D&O Policy"), and any further causes of action based on the handling of the Outside Directors' claims under such policies.

4.     The Trustee agrees that he will not seek to execute on the Judgment on any assets of the Outside Directors other than the claims assigned in paragraph 3 above and the directors' and officers' liability insurance policies, including the D&O Policy.

2

PHDATA 1354393_2

5.    This settlement is contingent upon the Outside Directors providing the Trustee in writing with accurate and complete information substantiating their representations regarding the Outside Directors' executable assets, which the Trustee has reasonably relied upon in negotiating this Settlement Agreement.

6.    Any financial information provided by the Outside Directors that is marked "Confidential" by the Outside Directors shall not be disclosed by the Trustee or his attorneys to any third party without the consent of the Outside Directors except that:  (a) the Trustee may, if necessary, submit such financial information to the Bankruptcy Court in support of his motion to approve this Settlement Agreement, but shall request that he be permitted to do so under seal; and (b) the Trustee may comply with any order or direction of the Bankruptcy Court regarding such information.

7.    The Outside Directors shall continue to defend the action for a declaratory judgment filed against them by Genesis in the U.S. District Court for the District of Colorado (Civil Action No. 05-cv-335) (the "Coverage Action") and to prosecute their counterclaim for breach of the D&O Policy in the Coverage Action until this Settlement Agreement is approved by the Bankruptcy Court. Thereafter, the parties shall use their best efforts to have the Trustee substituted as a party-in-interest for the Outside Directors in the Coverage Action.

8.    The Trustee shall make reasonable efforts to prosecute in the Coverage Action the Outside Directors' claims under the D&O Policy for attorneys' fees and costs incurred in the Delaware Action and the Coverage Action. The Trustee shall not be required to appeal any ruling of the trial court in the Coverage Action relating to the Outside Directors' claim for attorneys'

3

PHDATA 1354393_2