1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

| | |
|---|---|
| In re | ) Jointly Administered |
| Coram Healthcare Corp. | ) Case Nos. 00-3299 (MFW) |
| and Coram, Inc., | ) and 00-3300 (MFW) |
| Debtors. | ) Chapter 11 |

The deposition of L. PETER SMITH, called for examination, taken pursuant to the Federal Rules of Civil Procedure of the United States Bankruptcy Courts pertaining to the taking of depositions, taken before JULIANA F. ZAJICEK, CSR No. 84-2604, a Notary Public within and for the County of Kane, State of Illinois, and a Certified Shorthand Reporter of said state, at Suite 4000, 10 South Wacker Drive, Chicago, Illinois, on the 24th day of September, A.D. 2001, at 2:08 p.m.

COPY



ESQUIRE™
DEPOSITION SERVICES

A RECORD OF EXCELLENCE
Chicago: 312.782.8087 • 800.708.8087 • Fax 312.704.4950

CH-11 TRUSTEE/
CrowleyAdmin006844

172

06:41 PM   1     A.     It must have been spring of 2001.

06:41 PM   2     Q.     Did you ever attempt to contact him

06:41 PM   3   after you learned about his payments of $80,000 a

06:41 PM   4   month to Mr. Crowley?

06:41 PM   5     A.     No.

06:41 PM   6     MR. CUNNINGHAM:  Objection.

7   BY MR. LEVY:

06:41 PM   8     Q.     Did you ever suggest to Crowley he

06:41 PM   9   ought to stop taking $80,000 a month from Cerberus

06:41 PM   10   as long as he continued as CEO?

06:41 PM   11     A.     No.

06:41 PM   12     Q.     Did anybody, to your knowledge?

06:41 PM   13     A.     I don't know.

06:42 PM   14     Q.     Did you ever ask Mr. Crowley what he

06:42 PM   15   does for Cerberus for that $80,000 a month?

06:42 PM   16     A.     I never asked him.  He did explain to

06:42 PM   17   the board that he evaluates companies and

06:42 PM   18   investments and so on, but it was not a detailed

06:42 PM   19   explanation, no.

06:42 PM   20     Q.     When did he make that explanation to

06:42 PM   21   you?

06:42 PM   22     A.     Sometime in the early part of the

06:42 PM   23   new -- of the year 2001 once this all came to

06:42 PM   24   light.

CH-11 TRUSTEE/
CrowleyAdmin007015

ESQUIRE™
DEPOSITION SERVICES

A RECORD OF EXCELLENCE

Chicago: 312.782.8087 • 800.708.8087 • Fax 312.704.4950

214

```
 1   STATE OF ILLINOIS )

 2                     )  SS:

 3   COUNTY OF K A N E )

 4            I, JULIANA F. ZAJICEK, a Notary Public

 5   within and for the County of Kane, State of

 6   Illinois, and a Certified Shorthand Reporter of

 7   said state, do hereby certify:

 8            That previous to the commencement of the

 9   examination of the witness herein, the witness was

10   duly sworn to testify the whole truth concerning

11   the matters herein;

12            That the foregoing deposition transcript

13   was reported stenographically by me, was

14   thereafter reduced to typewriting under my

15   personal direction and constitutes a true record

16   of the testimony given and the proceedings had;

17            That the said deposition was taken before

18   me at the time and place specified;

19            That I am not a relative or employee or

20   attorney or counsel, nor a relative or employee of

21   such attorney or counsel for any of the parties

22   hereto, nor interested directly or indirectly in

23   the outcome of this action.

24            IN WITNESS WHEREOF, I do hereunto set my
```

CH-11 TRUSTEE/
CrowleyAdmin007057



E S Q U I R E ™
DEPOSITION SERVICES

A RECORD OF EXCELLENCE

*Chicago:* 312.782.8087 • 800.708.8087 • Fax 312.704.4950

A1173

215

1    hand and affix my seal of office at Chicago,

2    Illinois, this 10th day of October, 2001.

3

4

5    Notary Public, Kane County, Illinois.

6    My commission expires 8/25/02.

7

8    C.S.R. Certificate No. 84-

```
"OFFICIAL SEAL"
JULIANA F. ZAJICEK
Notary Public, State of Illinois
My Commission Expires 08/25/02
```

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

CH-11 TRUSTEE/
CrowleyAdmin007058

ESQUIRE
DEPOSITION SERVICES

A RECORD OF EXCELLENCE
Chicago: 312.782.8087 • 800.708.8087 • Fax 312.704.4950

A1174

1

1

2    UNITED STATES BANKRUPTCY COURT

3    DISTRICT OF DELAWARE

COPY

4

5    In Re                    )
                              )
6    Coram Healthcare Corp.   )
                              )
7    and Coram, Inc.,         )
                              )        Chapter 11 Case Nos.
8            Debtors,         )        00-3299 (MFW) through
                              )        00-3300 (MFW)
9    _____  )

10

11

12

13    Deposition of

14    WILLIAM CASEY

15    Friday, September 28, 2001

16

17

18

19

20

21

22

23

24    Reported by:
      CARRIE STOTTLEMEYER, RPR, CM, CRR
      CSR No. 4373
25    Job No. 79613

ESQUIRE DEPOSITION SERVICES
CHICAGO, ILLINOIS                    (800) 708-8087

CH-11 TRUSTEE/
CrowleyAdmin002304

31

1  Q   Did you personally -- other than what Goldin

2  did, did you personally make any effort to find out

3  whether Mr. Crowley had done anything wrong?

4  MR. HARWOOD:   Object to the form.

5  THE WITNESS:  Mr. Crowley has been our CEO for

6  a medium amount of time and he's done an excellent job

7  for the company.

8  MR. LEVY:  Would you read the question again?

9  I think he didn't answer my question.  Perhaps you could

10 listen, sir, try and answer my question.

11 MR. HARWOOD:  Perhaps if you'd listen to the

12 answer, you might see that it is responsive.

13        (Record read.)

14 THE WITNESS:  "Done anything wrong"?

15 BY MR. LEVY:

16 Q   Would you answer the question again?

17 A   I don't understand "done anything wrong."  He

18 hasn't done anything wrong.

19 Q   Did you make any effort to find out, you

20 personally, whether he had done anything wrong?

21 MR. HARWOOD:  Object to the form.  In what

22 context?  Vague and ambiguous.

23 THE WITNESS:  I guess I don't know what I would

24 have done or what I'm doing to see if he's done

25 anything.  He hasn't done anything wrong.  He's managed

ESQUIRE DEPOSITION SERVICES
CHICAGO, ILLINOIS                    (800) 708-8087

CH-11 TRUSTEE/
CrowleyAdmin002334

32

1   the company brilliantly, he's done an excellent job that
2   we hired him for.
3   BY MR. LEVY:
4   Q   Did you personally make any investigation to
5   determine whether he had done anything wrong?
6   MR. HARWOOD:   Object to the form, vague and
7   ambiguous.
8   THE WITNESS:   I didn't investigate Dan Crowley,
9   no.
10  BY MR. LEVY:
11  Q   Thank you.  Let's move along.  It says "Had a
12  plan."  What does it say then?
13  A   Excuse me?
14  MR. CUNNINGHAM:   Mr. Levy said "Had a plan" and
15  then he said --
16  BY MR. LEVY:
17  Q   Do you see where it says "Two.  Had a plan"?
18  A   Yeah, "Had a plan."
19  Q   What does it say then?
20  A   Says "180."
21  Q   And then?
22  MR. CUNNINGHAM:   You've got to answer audibly,
23  you can't just gesture.
24  THE WITNESS:   I don't know.
25  BY MR. LEVY:

ESQUIRE DEPOSITION SERVICES
CHICAGO, ILLINOIS                    (800) 708-8087

CH-11 TRUSTEE/
CrowleyAdmin002335

A1177

49

```
 1   BY MR. LEVY:

 2   Q   Whatever "investigation" means to you,

 3   Mr. Casey.  You're smart.

 4   MR. HARWOOD:  Object to the form.

 5   THE WITNESS:  I didn't call the police, I

 6   didn't call the FBI.

 7   BY MR. LEVY:

 8   Q   Did you call Mr. Crowley and say -- and ask

 9   him?

10   A   I talked to Mr. Crowley frequently, yes.

11   Q   Did you call Mr. Crowley and ask him about how

12   much he was making -- how much he was being paid,

13   rather, by Cerberus?

14   MR. HARWOOD:  Object to the form.

15   THE WITNESS:  No.

16   BY MR. LEVY:

17   Q   Ever?

18   A   He told me.

19   MR. HARWOOD:  Object to the form.

20   BY MR. LEVY:

21   Q   Excuse me?

22   A   I didn't have to call and ask him.  He told me.

23   Q   When did he tell you?

24   A   After it became an issue.

25   Q   When it -- it became an issue, I take it, on
```

CH-11 TRUSTEE/
CrowleyAdmin002352

A1177.01

50

```
 1    December 21st when the judge refused to confirm the

 2    plan?

 3    MR. HARWOOD:  Object to the form.

 4    BY MR. LEVY:

 5    Q    How much after December 21st did Mr. Crowley

 6    tell you how much he was given?

 7    A    I guess I don't understand.  How much later?

 8    Q    Yes.  How much later?

 9    A    Shortly thereafter.  Within hours, days.  I

10    don't know.

11    Q    And tell me who was present in this

12    conversation you had with Crowley.

13    A    It could have been he and I, it could have been

14    he and I and other members of the board.

15    Q    Do you have any recollection?

16    A    As I say, we meet and confer --

17    Q    Do you have any recollection?

18    MR. HARWOOD:  Objection.  Let the witness

19    answer the question.

20    THE WITNESS:  I don't know the first time he

21    told me.

22    BY MR. LEVY:

23    Q    Could it have been as long as six months later?

24    A    I don't believe so.

25    Q    Were you surprised at the amount?
```

CH-11 TRUSTEE/
CrowleyAdmin002353

A1177.02

51

```
1    MR. CUNNINGHAM:  Objection.
2    THE WITNESS:  What amount?
3    BY MR. LEVY:
4    Q    The amount of money that Cerberus was paying
5    Crowley.
6    A    It's a very substantial amount.
7    Q    How much was it?  Do you recall?
8    A    80,000 a month.
9    Q    Did you ask Crowley what he was doing for that
10   80,000 a month?
11   A    I believe he told us what he was doing.
12   Q    What did he tell you?
13   A    He has a company in Sacramento, and he provides
14   healthcare consulting to Cerberus when they have issues
15   in the healthcare sector of their business.
16   Q    Did he tell you how much time he was spending
17   for that 80,000 a month?
18   A    I knew that he was spending full-time on Coram,
19   so I wasn't real interested in how much time he was
20   spending on that.
21   Q    Because it was pretty clear to you if he was
22   spending full-time on Coram, couldn't have been spending
23   any time on that, correct?
24   MR. HARWOOD:  Object to the form.
25   THE WITNESS:  Well, as an attorney, I'm sure
```

ESQUIRE DEPOSITION SERVICES
CHICAGO, ILLINOIS                    (800) 708-8087

CH-11 TRUSTEE/
CrowleyAdmin002354

A1178

140

1 could have simply added that interest to the note

2 without using cash?

3 A   Yes.

4 Q   Are you aware that Mr. Goldin's report

5 concludes that that was an imprudent thing to do?

6 MR. HARWOOD:  Object to the form.

7 THE WITNESS:  Mr. Goldin said that in a

8 bankruptcy situation it's very prudent to -- and I think

9 the term he used was "husband your cash," okay, and I

10 don't disagree with what he said.  That's not true --

11 BY MR. LEVY:

12 Q   Keep going.

13 A   In this particular instance, he felt it would

14 be -- since we would be renegotiating a DIP line of

15 credit, debtor in possession line of credit, that it

16 would be to our advantage to enter this situation in as

17 favorable a light as we could; therefore, we made the

18 payment.

19 Q   You approved the payment as a director?

20 A   I don't remember approving it specifically, but

21 we did review what happened and we did concur.

22 Q   Isn't it a fact that the Goldin report says it

23 was an imprudent thing to do?

24 MR. HARWOOD:  Object to the form.

25 THE WITNESS:  I believe I just answered that.

ESQUIRE DEPOSITION SERVICES
CHICAGO, ILLINOIS                    (800) 708-8087

CH-11 TRUSTEE/
CrowleyAdmin002443

A1179

144

1   imprudent?

2   MR. HARWOOD:  Object to the form.

3   MR. CUNNINGHAM:  I'd note that there's an

4   extended discussion elsewhere in the report.

5   MR. HARWOOD:  Exactly.

6   THE WITNESS:  There is an extended discussion

7   elsewhere in the report, and as I said before, it's a

8   judgment call.  Mr. Goldman (sic) does in fact say what

9   he said.  My feeling as a manager, as a board member is

10  that what we did is we made that payment to maintain our

11  relationship with the debt because we were going to have

12  to negotiate new lines of credit and we felt it was

13  prudent to do it.  There's a disagreement.  I believe

14  that he's entitled to his and we're entitled to ours.

15  BY MR. LEVY:

16  Q   Generally speaking, did you find yourself

17  relying on Goldin and the Goldin report?

18  MR. CUNNINGHAM:  Objection.

19  THE WITNESS:  I don't understand the question.

20  BY MR. LEVY:

21  Q   Did the directors of Coram rely on the Goldin

22  report in making their decision to file the second

23  amended plan?

24  A   As it states in the second amended plan, the

25  special committee of the board endorsed the Goldin plan.

CH-11 TRUSTEE/
CrowleyAdmin002447

A1180

```
 1   STATE OF CALIFORNIA      )
                              :ss
 2   COUNTY OF SACRAMENTO     )

 3

 4       I, the undersigned, a Certified Shorthand Reporter

 5   of the State of California, do hereby certify:

 6       That the foregoing proceedings were taken before me

 7   at the time and place herein set forth; that any

 8   witnesses in the foregoing proceedings, prior to

 9   testifying, were placed under oath; that a verbatim

10   record of the proceedings was made by me using machine

11   shorthand which was thereafter transcribed under my

12   direction; further, that the foregoing is an accurate

13   transcription thereof.

14       I further certify that I am neither financially

15   interested in the action nor a relative or employee of

16   any attorney of the parties.

17       IN WITNESS WHEREOF, I have this date subscribed my

18   name.

19

20   Dated:  Oct. 1, 2001

21

22
         CARRIE STOTTLEMEYER, RMR, CRR
23       CSR No. 4373

24

25
                                                    160
```

ESQUIRE DEPOSITION REPORTERS
1801 I STREET      SACRAMENTO, CA    (916) 448-0505

CH-11 TRUSTEE/
CrowleyAdmin002463

P5a-1

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

In Re                          )
                               )
Coram Healthcare Corp.         )        **CERTIFIED COPY**
                               )
and Coram, Inc.,               )
                               )        Chapter 11 Case Nos.
          Debtors,             )        00-3299 (MFW) through
                               )        00-3300 (MFW)
                               )
_____)

Deposition of

SANDRA R. SMOLEY

Saturday, September 29, 2001

CH-11 TRUSTEE/
CrowleyAdmin007348

Reported by:
CARRIE STOTTLEMEYER, RPR, CM, CRR        E S Q U I R E™
CSR No. 4373                             DEPOSITION SERVICES
Job No. 79663
                                         1801 I Street • First Floor • Sacramento, CA 95814
                                         916.448.0505 • Fax 916.448.8726 • 800.610.0505

1    really agree with that portion of her decision.

2        Q    Well, when did you become aware for the first

3    time that Dan Crowley was being paid by Cerberus?

4        A    You know, I'm trying to think of that, and I

5    really don't remember, but I do know -- I don't recall

6    the timing of that.

7        Q    Was it before or after the December 21st

8    opinion?

9        A    You know, I don't recall the sequence of how

10   that came down.  I don't recall which came first.

11       Q    Did they come in close sequence to each other?

12       A    Yes, yes, yes.

13       Q    Within a few days?

14       A    Maybe a month, but I just can't --

15       Q    Are you saying it's possible as early as, say,

16   Thanksgiving of the year 2000 you knew that Dan Crowley

17   was being paid separately by Cerberus?

18       A    I just can't say with -- specifically.  I mean

19   I just can't say.

20       Q    How did you learn it?

21       A    How'd I learn?

22       Q    That Crowley was being paid by Cerberus.

23       A    I think it came up in a board meeting, and we

24   asked questions of Dan, and he was very forthcoming,

25   didn't hide anything at all.

                                                        52

ESQUIRE DEPOSITION REPORTERS
1801 I STREET    SACRAMENTO, CA    (916) 448-0505    CH-11 TRUSTEE/
CrowleyAdmin007399

1    to pay Crowley is set forth in a written agreement or is

2    it just oral?

3        A    I don't know that.

4        Q    So I take it you have never seen the written

5    agreement between Cerberus and Crowley pursuant to which

6    he gets 80,000 a month?

7        A    No.

8        Q    You've never asked to see it?

9        A    No, because it was outside of Coram, he was

10   doing a great job for our company.  I didn't care what

11   he was doing outside.

12       Q    Do you think he might have done better for

13   Coram if there had been no conflict?

14       A    Oh, I don't think there is a conflict, I told

15   you I disagreed with that portion of the judge's

16   decision, but all I saw was Dan Crowley performing in an

17   exemplary manner doing great things for the company,

18   holding the company afloat, and we as a board were

19   extremely pleased with his -- what he was doing for the

20   company.

21       Q    Did you consider the fact that he might have

22   done better if he hadn't been receiving this money from

23   a note holder?

24       A    Well, in my mind, I don't see how he could have

25   done any better.  We were very pleased in all aspects of

                                                        54

CH-11 TRUSTEE/
CrowleyAdmin007401

1  praise for what he's done, and the Goldin report showed

2  that also.

3      Q   The Goldin report just said he breached his

4  fiduciary duty.  Are you aware of that?

5          MR. HARWOOD:  Objection.

6          MR. CUNNINGHAM:  Objection.

7          MR. LEVY:  Withdraw it.

8  BY MR. LEVY:

9      Q   Are you aware of the fact that the Goldin

10  report said he breached his fiduciary duty?

11         MR. HARWOOD:  Object to the form.

12         MR. CUNNINGHAM:  You can answer.

13         THE WITNESS:  Yes.

14  BY MR. LEVY:

15     Q   Thank you.  Going on with Judge Walrath's

16  opinion, you can read it to yourself, but read the next

17  paragraph from lines four to 11.

18     A   Okay.

19     Q   What's your reaction to that?

20     A   I don't agree with that because in my opinion

21  Mr. Crowley was very forthcoming, did not try to hide

22  the relationship.  When we asked him, he was very candid

23  and open about his relationship with Cerberus, so I

24  don't agree with that.

25     Q   Apart from -- well, strike that, please.

                                                      56

ESQUIRE DEPOSITION REPORTERS
1801 I STREET      SACRAMENTO, CA   (916) 448-0505

CH-11 TRUSTEE/
CrowleyAdmin007403

1          Did you ever ask Crowley whether he intended to

2    hide the relationship?

3          A    I don't believe that I asked him in those

4    terms, no, but it was my feeling he did not because he

5    was very forthcoming.

6          Q    Did you ever ask Mr. Feinberg why he was paying

7    him 80,000 dollars a month?

8          A    No.  That was outside of Coram.

9          Q    Did you think the fact that Mr. Feinberg's

10   company was owed hundreds of millions of dollars by

11   Coram coupled with the fact that Mr. Feinberg's company

12   was paying Dan Crowley 80,000, million bucks a year

13   almost, presented an apparent conflict of interest?

14          MR. HARWOOD:  Object to the form.

15          THE WITNESS:  No.

16   BY MR. LEVY:

17          Q    You're familiar, of course, with Coram's

18   written policies on conflict of interest?

19          A    Yes, I'm aware of those.

20          Q    And do you feel that there was any violation by

21   Crowley of those policies?

22          A    No, I do not.

23          Q    Do you think they apply to him?

24          A    They apply to all of us.

25          Q    Do you know what services Mr. Crowley was

CH-11 TRUSTEE/
CrowleyAdmin007404

57

1    BY MR. LEVY:

2         Q    Did you take that into account?

3              MR. HARWOOD:   Objection.

4              THE WITNESS:   I told you that I had a basic

5    disagreement with the judge's decision.   I accepted the

6    judge's decision.   I did not agree with it in that.

7    BY MR. LEVY:

8         Q    Therefore is it fair to say you did not take

9    into account, perhaps because you didn't agree with it,

10   the judge's conclusion that Crowley's ability to serve

11   as CEO of Coram was tainted?   And I'm referring to line

12   ten on page 89.

13             MR. HARWOOD:   Object to the form.

14             THE WITNESS:   I did not agree with that.

15   BY MR. LEVY:

16        Q    I know you didn't agree with it, but did you

17   take it into consideration in determining whether you

18   would permit this man who the judge said is tainted to

19   continue to be CEO?

20             MR. HARWOOD:   Object to the form.

21             THE WITNESS:   We, because of how he was

22   performing as CEO, felt that he was in fact able to

23   continue running the company.

24   BY MR. LEVY:

CH-11 TRUSTEE/
CrowleyAdmin007420

25        Q    Did you ask Crowley to end the conflict by

                                                        73

1    refusing to take anything further from Cerberus?

2        A    We did not.

3        Q    Did you consider doing that?

4        A    No.

5        Q    Did you consider hiring an outside person who

6    could come in during the interim until you got the

7    Goldin report and kind of look over Crowley's shoulder

8    or his day-to-day decisions to be sure the company was

9    protected against a man who the judge said was tainted

10   in his ability to serve as CEO of the debtor?

11            MR. HARWOOD:  Object to the form.

12            THE WITNESS:  We did not.

13            (Recess taken.)

14            MR. LEVY:  We're now going to mark as Smoley

15   Exhibit 4 the final version of the Coram's First Amended

16   Second Joint Disclosure Statement in the form that

17   Mr. Harwood advises me was actually sent to all the

18   creditors and the stockholders within the last few days,

19   and it includes a copy of the Goldin report beginning at

20   an unnumbered page.

21            MR. HARWOOD:  It's an appendix.

22   BY MR. LEVY:

23        Q    It's an appendix and we'll have to look at

24   that.  So you want to mark that?

25            (Exhibit No. 4 was marked.)

CH-11 TRUSTEE/
CrowleyAdmin007421

74

A1188

STATE OF CALIFORNIA      )
                         :ss
COUNTY OF SACRAMENTO     )


    I, the undersigned, a Certified Shorthand Reporter

of the State of California, do hereby certify:

    That the foregoing proceedings were taken before me

at the time and place herein set forth; that any

witnesses in the foregoing proceedings, prior to

testifying, were placed under oath; that a verbatim

record of the proceedings was made by me using machine

shorthand which was thereafter transcribed under my

direction; further, that the foregoing is an accurate

transcription thereof.

    I further certify that I am neither financially

interested in the action nor a relative or employee of

any attorney of the parties.

    IN WITNESS WHEREOF, I have this date subscribed my

name.


Dated: Oct. 2, 2001


                    CARRIE STOTTLEMEYER, RMR, CRR
                    CSR No. 4373

CH-11 TRUSTEE/
CrowleyAdmin007447

100

ESQUIRE DEPOSITION REPORTERS
1801 I STREET    SACRAMENTO, CA    (916) 448-0505


A1189

1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

COPY

```
------------------------------x
In re,                        ) Chapter 11

CORAM HEALTHCARE CORP.        ) Case Nos.

and CORAM, INC.,              ) 00-3299 through

                             ) 00-3300 (MFW)

            Debtors,          ) Jointly Admin.

------------------------------x
```

DEPOSITION OF HARRISON JAY GOLDIN

New York, New York

Thursday, October 4, 2001

ESQUIRE
DEPOSITION SERVICES

216 East 45th Street, 8th Floor
New York, NY 10017-3304
212.687.8010 • 800.944.9454
Fax 212.557.5972

Reported by:
David Henry
JOB NO. 126137

72

1                         Goldin

2    revenues.  They had had extensive opportunity

3    to observe him in his performance of his

4    duties as CEO.

5         Q.    And that, to your knowledge, is the

6    extent of the investigation they did?

7         A.    I am not aware that the independent

8    directors conducted a full investigation of

9    the kind and nature of the investigation that

10   was conducted by Goldin Associates.

11        Q.    Do you know whether the independent

12   directors after learning of the conflict took

13   any steps to guard against the potential for

14   abuse that the conflict posed?

15             MR. BENTLEY:    Objection to form.

16             MR. HARWOOD:    Objection.

17        A.    Again, Mr. Levy, the independent

18   directors expressed to me during the

19   interviews that we conducted with them in

20   connection with our investigation that gave

21   rise to our report and then in conversations

22   that I held with the independent directors in

23   the aftermath of the issuance of our interim

24   report, that they held Mr. Crowley in very

25   high regard on the basis of the record of his

73

1                    Goldin

2  performance as CEO.  As one of the directors

3  put it, as I recollect, getting somebody of

4  Dan Crowley's caliber was the equivalent of

5  St. Francis High School getting Wilt

6  Chamberlain on its basketball team.  That

7  formulation captured well the general and

8  overall enthusiasm of the independent

9  directors for Mr. Crowley's achievements and

10  performance as CEO.

11      Q.    Did you perform any investigation

12  to determine whether those independent

13  directors had a sufficient basis for coming to

14  the conclusions they did?

15      A.    During the course of our

16  investigation, we examined carefully the

17  company's performance over the relevant time

18  frame and reported in some detail on the

19  company's performance in various respects

20  during the period covered by our

21  investigation.

22      Q.    My question to you was whether, did

23  your investigation include a determination of

24  whether the independent directors had a

25  sufficient basis for their conclusions, not

179

1

2                    C E R T I F I C A T E

3    STATE OF NEW YORK        )

4                            : ss.

5    COUNTY OF NEW YORK       )

6

7            I, David Henry, a Notary Public

8    within and for the State of New York, do

9    hereby certify:

10           That HARRISON J. GOLDIN, the witness

11   whose deposition is hereinbefore set forth,

12   was duly sworn by me and that such

13   deposition is a true record of the testimony

14   given by the witness.

15           I further certify that I am not

16   related to any of the parties to this action

17   by blood or marriage, and that I am in no

18   way interested in the outcome of this

19   matter.

20           IN WITNESS WHEREOF, I have hereunto

21   set my hand this 8th day of October, 2001.

22

23

24   _____

25                    David Henry

A1193

UNITED STATES BANKRUPTCY COURT

DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In Re | ) | |
| | ) | |
| Coram Healthcare Corp. | ) | |
| | ) | |
| and Coram, Inc., | ) | |
| | ) | Chapter 11 Case Nos. |
| Debtors, | ) | 00-3299 (MFW) through |
| | ) | 00-3300 (MFW) |
| | ) | |
| _____ | ) | |

**CERTIFIED COPY**

Deposition of

DANIEL D. CROWLEY

Thursday, October 25, 2001

Reported by:
CARRIE STOTTLEMEYER, RPR, CM, CRR
CSR No. 4373
Job No. 80965



E S Q U I R E
DEPOSITION SERVICES

1801 I Street • First Floor • Sacramento, CA 95814
916.448.0505 • Fax 916.448.8726 • 800.610.0505

CH-11 TRUSTEE/
CrowleyAdmin002717

1    of interest and it's an actual conflict of interest."

2        A    Be speculative on my part as to what the judge

3    is thinking.  Are you wishing me to speculate?

4        Q    That's a good answer.  Have you ever discussed

5    with anyone what she meant when she said that there was

6    an actual conflict of interest?

7            MR. FELDMAN:  You can answer that for anyone

8    other than your lawyers.

9    BY MR. LEVY:

10       Q    Well, no.  If you discussed it with your

11   lawyer, you can tell me you discussed it with your

12   lawyer.  I'm not going to ask what was discussed, okay.

13           MR. FELDMAN:  You can answer it yes or no.

14           THE WITNESS:  Yes.

15   BY MR. LEVY:

16       Q    Have you ever discussed that with anyone other

17   than your lawyer?

18       A    No.

19       Q    Have you ever discussed that with any member of

20   the board of directors of Coram?

21           MR. FELDMAN:  The meaning of those words?

22   BY MR. LEVY:

23       Q    The meaning of those words.

24       A    No.

25       Q    Have you ever discussed with any member of the

                                                    12

CH-11 TRUSTEE/
CrowleyAdmin002727

1    board of directors of Coram the question of whether your

2    relationship with Cerberus was an actual conflict of

3    interest?

4         A    Would you ask that again?

5         MR. FELDMAN:  I'm sorry, I'm getting

6    distracted.  I don't mean to be difficult, but all the

7    movement and the stuff -- if we need to break for you to

8    hook up your gear, I'm happy to do that, but it's hard

9    to focus when there's a lot of mechanical stuff going

10   on.

11        MR. LEVY:  Let's hold it a second.

12        (Recess taken.)

13        MR. LEVY:  Why don't you read the last question

14   then.

15        (Record read.)

16        THE WITNESS:  Yes.

17   BY MR. LEVY:

18        Q    With which members of the board of directors of

19   Coram have you discussed that?

20        A    The full board.

21        Q    When was the first time you had such a

22   discussion?

23        A    I don't recall the exact date.

24        Q    Approximate date.

25        A    Couple days after this.  December 21st.

CH-11 TRUSTEE/
CrowleyAdmin002728

                                                      13

ESQUIRE DEPOSITION REPORTERS
1801 I STREET      SACRAMENTO, CA    (916) 448-0505

1    Q    And was that at a formal meeting of the board?

2    A    I don't recall. I think so.

3    Q    What did you say and what did the members of

4    the board respond on that subject to the best of your

5    recollection?  Just give me the substance.

6    A    That I had run the company for the company

7    very, very well and that I believe that I saved the

8    company from rather certain extinction and that I had

9    earned the respect in the company outside the company

10    from every conceivable constituency and that I had

11    complete respect for the judge's decision and understood

12    how she may have been uncomfortable by the relationship

13    between Cerberus and myself but that my duties for

14    Cerberus and my relationship with Cerberus had nothing

15    to do with Coram and that I was disappointed in the

16    outcome, that I believed that the board members knew of

17    my relationship with Cerberus, and I discussed again

18    that I was being paid 80,000 dollars a month to provide

19    services to Cerberus, that would continue, and that the

20    duties at Cerberus had no impact on my activities at

21    Coram and that there was no conflict in that Cerberus

22    had never asked me to do anything at Coram; that's the

23    substance of it, and the board's substance in response

24    was that their feeling was I had conducted myself above

25    and beyond, that I had never acted other than in Coram's

                                                        14

CH-11 TRUSTEE/
CrowleyAdmin002729

1  best interests and that they and I wished that I had

2  simply given them my contract and disclosed the amount

3  of pay with Cerberus because it would have provided

4  Judge Walrath with ostensibly more comfort.

5      Q   Anything else you recall from that meeting?

6      A   No.

7      Q   Now you said, I believe, at the beginning of

8  that answer that you had earned the respect of every

9  conceivable constituency; is that right?  I don't recall

10  those exact words, but it's in the transcript.  In

11  substance?

12      A   Yes.

13      Q   Do you believe you earned the respect of the

14  equity holders as a result of your conduct?

15          MR. FELDMAN:  Mischaracterizes the testimony.

16  BY MR. LEVY:

17      Q   Do you believe that the equity holders are a

18  constituency?

19      A   Yes.

20      Q   Do you believe you earned their respect?

21      A   I believe that the equity holders respect the

22  work that I did and have done at Coram and the results

23  that I have achieved at Coram and are disappointed that

24  Coram's insolvent, and I believe they respect the work.

25      Q   What is the basis of your belief that they

                                                    15

CH-11 TRUSTEE/
CrowleyAdmin002730

REPORTER'S CERTIFICATE


I certify that the witness in the foregoing

deposition,

DANIEL D. CROWLEY,

was by me duly sworn to testify in the within-entitled

cause; that said deposition was taken at the time and

place therein named; that the testimony of said witness

was reported by me, a duly Certified Shorthand Reporter

of the State of California authorized to administer

oaths and affirmations, and said testimony was

thereafter transcribed into typewriting.

I further certify that I am not of counsel or

attorney for either or any of the parties to said

deposition nor in any way interested in the outcome of

the cause named in said deposition.

IN WITNESS WHEREOF, I have hereunto set my hand

this 3 day of 3, 2001.




CARRIE STOTTLEMEYER
Certified Shorthand Reporter
Certificate No. 4373

CH-11 TRUSTEE/
CrowleyAdmin002842

127

ESQUIRE DEPOSITION SERVICES
1801 I STREET    SACRAMENTO, CA    (916) 448-0505

1

1    UNITED STATES BANKRUPTCY COURT

2    DISTRICT OF DELAWARE

3

4    In Re                              )
                                        )
5    CORAM HEALTHCARE CORPORATION       )   Chapter 11 Case Nos.
     and CORAM, INC.,                   )   00-3299 (MFW) through
6                                       )   00-3300 (MFW)
                Debtors.                )
7    _____)

8

9                                    COPY

10

11

12

13

14              DEPOSITION OF DON AMARAL

15                Palo Alto, California

16              Friday, October 26, 2001

17

18

19

20

21

22

23    Reported by:
24    RACHEL FERRIER
      CSR No. 6948
25    Job No. 28956

CH-11 TRUSTEE/
CrowleyAdmin001761

ESQUIRE™
DEPOSITION SERVICES

A RECORD OF EXCELLENCE
Chicago: 312.782.8087 • 800.708.8087 • Fax 312.704.4950

A1200