## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, *Chapter 11 Trustee of*
*the Post-Confirmation Bankruptcy Estates of*
*CORAM HEALTHCARE CORP. and CORAM,*
*INC.*,

              Plaintiff,

    v.

DANIEL D. CROWLEY, *et al.*,

              Defendants.

) 
) 
) 
) 
) Civ. Action No. 04-cv-1565(SLR)
) 
) 
) 
) 
) 
) 
)

---

## BRIEF IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT
## ON LIABILITY OR, IN THE
## ALTERNATIVE, FOR THE COURT TO
## DEEM CERTAIN FACTS ESTABLISHED

---

Dated:  April 17, 2007

Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)

SCHNADER HARRISON SEGAL & LEWIS LLP
824 N. Market Street, Suite 1001
Wilmington, DE  19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)

OF COUNSEL:
Barry E. Bressler (admitted *pro hac vice*)
Wilbur L. Kipnes (admitted *pro hac vice*)
Nancy Winkelman (*pro hac vice*
*admission pending*)

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2400 (telephone)
(215) 751-2205 (facsimile)

*Counsel to Plaintiff,*
*Arlin M. Adams, Chapter 11 Trustee of the Post-*
*Confirmation Bankruptcy Estates of CORAM*
*HEALTHCARE CORP. and CORAM, INC.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ....................................................1

SUMMARY OF ARGUMENT ............................................................................2

FACTS ..................................................................................................................3

A.    Background ................................................................................................3

B.    Crowley's Conflict Of Interest ..................................................................4

C.    The Bankruptcy Court's Denial Of Coram's First Plan Of Reorganization Because
      Of Crowley's Conflict Of Interest .............................................................6

D.    The Bankruptcy Court's Denial Of Coram's Second Plan Of Reorganization
      Because Of Crowley's Conflict Of Interest ...............................................8

E.    The Bankruptcy Court's Approval Of The Trustee's Proposed Plan Of
      Reorganization .........................................................................................12

F.    The Current Litigation .............................................................................13

ARGUMENT ......................................................................................................13

I.    STANDARD OF REVIEW ..............................................................13

II.   THIS COURT SHOULD GIVE COLLATERAL ESTOPPEL EFFECT TO
      THE BANKRUPTCY COURT'S FINDINGS. .................................14

      A.    Collateral Estoppel Applies To Crowley Because He Was A Party
            In The Bankruptcy Proceedings And Had A Full And Fair
            Opportunity To Litigate The Issues Sought To Be Precluded. ............... 16

      B.    The Issues Sought To Be Precluded Are The Same As The Issues
            In The Prior Bankruptcy Court Action. ................................................... 19

      C.    The Issues Sought To Be Precluded Were Actually Litigated In
            The Prior Bankruptcy Court Action. ....................................................... 20

      D.    The Bankruptcy Court's Decisions Are Valid And Final. ........................ 21

      E.    The Determination Of The Issues Sought To Be Precluded Were
            Essential To The Bankruptcy Court's Judgment. .................................... 22

III.   THE BANKRUPTCY COURT'S FINDINGS THAT ARE TO BE GIVEN
       PRECLUSIVE EFFECT ENTITLE THE TRUSTEE TO SUMMARY
       JUDGMENT ON LIABILITY. .................................................................................23

IV.    IN THE ALTERNATIVE, THIS COURT SHOULD DEEM THE FACTS
       THAT THE BANKRUPTCY COURT FOUND TO BE ESTABLISHED FOR
       PURPOSES OF THIS LITIGATION........................................................................25

CONCLUSION...................................................................................................................28

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amtrak v. Pa. Public Utility Committee*, 288 F.3d 519 (3d Cir. 2002)..................14, 15, 22

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)......................................................14

*Bruszewski v. United States*, 181 F.2d 419 (3d Cir. 1950) ...............................................18

*Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227 (3d
   Cir. 1995)................................................................................................................21

*Cohen v. Board Of Trustees of the University of Medical and Dentistry and
   Dentistry of N.J.*, 867 F.2d 1455 (3d Cir. 1989)........................................................26

*Corestates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187 (3d Cir. 1999).....................14

*Del. River Port Authority v. FOP, Penn-Jersey Lodge 30*, 290 F.3d 567 (3d Cir.
   2002)........................................................................................................................18

*Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980).......................................................21

*First Jersey Nat. Bank v. Brown (In re Brown)*, 951 F.2d 564, 569 (3d Cir. 1991) .........21

*Harper v. Del. Valley Broadcasters*, 743 F. Supp. 1076 (D. Del. 1990)...........................15

*Horwitz v. Alloy Automobile Co.*, 992 F.2d 100 (7th Cir. 1993) ......................................18

*In re Bowman*, 181 B.R. 836 (Bankr. D. Md. 1995)..........................................................24

*In re Hampton Hotel Investors, L.P.*, 270 B.R. 346 (Bankr. S.D.N.Y. 2001) ..................24

*In re Heritage Hotel Partnership I*, 160 B.R. 374 (B.A.P. 9th Cir. 1993) .......................18

*In re Insulfoams, Inc.*, 184 B.R. 694 (Bankr. W.D. Pa. 1995)...........................................24

*In re Integrated Health Services, Inc.*, 258 B.R. 96 (Bankr. D. Del. 2000) ......................24

*In re Kham & Nate's Shoes No. 2, Inc.*, 97 B.R. 420 (Bankr. N.D. Ill. 1989)...................15

*In re Performance Nutrition, Inc.*, 239 B.R. 93 (Bankr. N.D. Tex. 1999) ........................24

*In re Tel-Net Hawaii, Inc.*, 105 B.R. 594 (Bankr. D. Haw. 1989).....................................24

*In re Teltronics Services, Inc.*, 762 F.2d 185 (2d Cir. 1985) .............................................17

*Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244 (3d Cir. 2006) ...................................................................................................15, 22

*Katchen v. Landy*, 382 U.S. 323 (1966) ............................................................14

*McDowell v. Del. State Police*, Civ. A. No. 95-129, 1999 U.S. Dist. LEXIS 3105 (D. Del. Nov. 15, 1999) .........................................................15

*Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579 (3d Cir. 1992) .............14

*O'Shea v. Amoco Oil Co.*, 886 F.2d 584 (3d Cir. 1989) ....................................15

*Raytech Corp. v. White*, 54 F.3d 187 (3d Cir. 1995) .................................19, 22

*Studiengesellschaft Kohle, mbH v. USX Corp.*, 675 F. Supp. 182 (D. Del. 1987) .............15

*Suppan v. Dadonna*, 203 F.3d 228 (3d Cir. 2000) .............................................19

*United States v. Schnick*, 66 B.R. 491 (Bankr. W.D. Mo. 1986) .......................17

### STATE CASES

*ATR-Kim Eng. Finance Corp. v. Araneta*, Civ. A. No. 489-N, 2006 Del. Ch. LEXIS 215 (Del. Ch. Dec. 21, 2006) .........................................................24

*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993) .............................23

*Emerald Partners v. Berlin*, 787 A.2d 85 (Del. 2001) ......................................23

*Malone v. Brincat*, 722 A.2d 5 (Del. 1998) ......................................................23

*McMullin v. Beran*, 765 A.2d 910 (Del. 2000) .................................................23

*Weinberger v. UOP, Inc.*, 457 A.2d 701 (Del. 1983) ........................................24

### FEDERAL STATUTES

11 U.S.C. § 1109(b) ...........................................................................................17

11 U.S.C. § 1129(a)(3) ........................................................................................19

### FEDERAL RULES

Fed. R. Civ. P. 56(a)  ......................................................................................1, 13

Fed. R. Civ. P. 56(c) ...........................................................................................14

iv

FED. R. CIV. P. 56(d) ............................................................................................26

FED. R. CIV. P. 56(e) ............................................................................................14

## OTHER AUTHORITIES

18 CHARLES ALLAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4425 .............19

RESTATEMENT (SECOND) OF JUDGMENTS § 27 .................................................................14

## INTRODUCTION

Plaintiff, Arlin M. Adams, as Chapter 11 Trustee ("Trustee") of the Post-Confirmation Bankruptcy Estates of Coram Healthcare Corporation and its wholly-owned subsidiary Coram, Inc. (collectively, "Coram"), moves for summary judgment on liability under Federal Rule of Civil Procedure 56(a). The basis for the Trustee's motion is that in contested confirmation hearings involving Coram as a debtor-in-possession, the United States Bankruptcy Court for the District of Delaware made certain factual findings and resolved certain issues that should be given preclusive effect in this case, thereby entitling the Trustee to summary judgment on liability. In the alternative, the Trustee requests that this Court deem the Bankruptcy Court's factual findings as established under Rule 56(d), so limiting the factual issues to be tried.

## NATURE AND STAGE OF PROCEEDINGS

The Trustee filed this action on December 29, 2004, alleging that defendant Daniel D. Crowley, the former Chairman and CEO of Coram, breached his fiduciary duties of care, loyalty, disclosure, and good faith to Coram. Pursuant to the Court's April 25, 2006 Scheduling Order, the Trustee moves for summary judgment on liability or, in the alternative, to have certain facts deemed established.

## SUMMARY OF ARGUMENT

The Trustee is entitled to summary judgment on liability because:

1.    The Bankruptcy Court made a number of specific factual findings in prior opinions that have a preclusive effect on Crowley in this litigation.

2.    Specifically, the Bankruptcy Court twice found that Crowley's relationship with a major creditor of the debtor-in-possession created an actual conflict of interest.  The Bankruptcy Court further found that Crowley breached his fiduciary duty to Coram because of that actual conflict of interest.

3.    The issues in this litigation -- including whether Crowley had a conflict of interest and whether he breached his fiduciary duty to Coram -- were previously litigated in the Bankruptcy Court proceedings in which Crowley was a party and had a full and fair opportunity to litigate the issues.

4.    The issues sought to be precluded in this litigation are the same as the issues that were litigated in the prior Bankruptcy Court proceedings, and those issues were actually litigated in those proceedings.

5.    The decisions of the Bankruptcy Court are valid and final and the determinations made by the Bankruptcy Court that are sought to be precluded here were essential to its decisions.

6.    The Bankruptcy Court's Findings that are to be given preclusive effect -- including Crowley's actual conflict of interest and his breach of fiduciary duty -- entitle the Trustee to summary judgment on liability.

2

In the alternative, under Federal Rule of Civil Procedure 56(d), this Court may deem certain facts to be established and so limit the scope of matters to be contested. The Bankruptcy Court made a number of factual findings that are entitled to preclusive effect under the doctrine of collateral estoppel and so should be deemed established here.

## FACTS[1]

### A.    Background

Coram was a publicly-traded home health care company. As a result of acquisitions in the mid-1990s, Coram became a leading provider of alternative site infusion therapy services in the United States.[2] *In re: Coram Healthcare Corp.*, 271 B.R. 228, 230 (Bankr. D. Del. 2001).

Cerberus Partners, L.P., along with two other noteholders (collectively, "the Noteholders"), held unsecured notes issued by Coram in the face amount of approximately $250 million. *Id.* Cerberus owned approximately 36% of the Notes. *Id.* In 1998, the Noteholders exercised their right under the applicable loan documents and designated Stephen Feinberg, General Partner of Cerberus, to sit on Coram's Board of Directors as their representative. *See id.*

---

[1] For purposes of this summary judgment motion, the Trustee relies only upon facts from the Bankruptcy Court's findings in the two contested confirmation hearings brought while Coram was a debtor-in-possession. As set forth in this brief, those findings should be given collateral estoppel effect here and, therefore, are not and cannot be disputed.

[2] Infusion therapy involves the IV administration of nutrition, anti-infective therapy, HIV medications, blood factor therapies, pain management, chemotherapy, and other therapies.

**B.    Crowley's Conflict Of Interest**

In 1998, Crowley met Feinberg and became associated with Cerberus. *See* 271 B.R. at 230. In early 1999, Crowley joined Cerberus as one of the CEO consultants available to work for Cerberus with troubled companies on a project-by-project basis. *Id.*

In July 1999, Crowley and Feinberg struck an oral agreement by which Cerberus agreed to pay Crowley $80,000 a month plus expenses to serve as a consultant to distressed companies in which Cerberus had a stake. *Id.* at 230. On or about June 28, 1999, Feinberg requested that Crowley serve on Coram's Board of Directors as Cerberus' representative. Thereafter, at Feinberg's suggestion, Coram hired Crowley as a consultant. 271 B.R. at 230. Crowley served in that capacity until Coram's then-CEO, Richard Smith, resigned in October 1999. (A2-A3 [Dec. 1, 2000 Hrg. Tr.].)

On November 12, 1999, while Crowley was negotiating the terms of his employment at Coram with Donald Amaral, Coram's then-Chairman and interim CEO, he sent a "Personal & Confidential" letter to Feinberg, seeking additional compensation from Cerberus to induce Crowley to become CEO of Coram. 271 B.R. at 231. Crowley asked Feinberg to increase the bonus to which he would be entitled for his work as Chairman of Winterland, a private company in which Cerberus had a substantial ownership interest.

Crowley signed a three-year agreement to serve as Coram's Chairman and CEO on November 18, 1999. *Id.* The very next day, he executed a written Employment Agreement with Cerberus under which he would receive a base salary of $80,000 a month and performance-based bonuses for his work on Winterland and other Cerberus portfolio companies. *Id.* The Employment Agreement increased Crowley's bonus compensation for Winterland, as he had

4

requested in his "Personal and Confidential" letter to Feinberg. *Id.* The Employment Agreement with Cerberus also provided that Feinberg would assign or delegate duties to Crowley, that Crowley would devote "his entire business time, attention, skill and energy exclusively to the business of [Cerberus]," and that Crowley would use "his best efforts to promote the success of [Cerberus]." *Id.* The Agreement further provided that Cerberus could terminate Crowley for cause, which included Crowley's failure to follow Feinberg's instructions. *Id.*

Crowley did not disclose the terms of his Employment Agreement with Cerberus to Coram. *Id.* Despite Coram's corporate policy that actual conflicts of interest were to be avoided and that any action creating a conflict of interest was to be disclosed and approved in advance, Crowley neither disclosed nor sought approval of his Cerberus agreement. *See id.* at 235 n.10. To the contrary, there was evidence presented at the Bankruptcy Court's hearing on Coram's proposed second plan of reorganization that Crowley's agreement with Cerberus constituted a violation of Coram's express corporate policy requiring that actual conflicts be avoided and that actions which might create a potential conflict of interest must be disclosed and approved in advance. *Id.*

In early July 2000, Crowley directed that Coram make a $6.3 million interest payment in cash to the Noteholders for their unsecured Notes. *Id.* at 231. "Under the terms of the Notes, Coram could have paid the interest payment 'in kind,' i.e., by adding it to the outstanding principal balance of the Notes." *Id.* Crowley did not disclose to the Coram Board, or to Coram's bankruptcy counsel, the $6.3 million cash payment to the Noteholders until after it had been made. *Id.*

Then, at the end of July 2000, Coram completed the sale of its specialty pharmacy division, generating approximately $38 million in net cash proceeds. *Id.* Crowley directed that approximately $28.5 million of those proceeds be used to pay down Coram's secured revolving line of credit, which had been provided by the Noteholders. The remaining $9.5 million was used to reduce the principal balance on the unsecured notes. *Id.*

On August 8, 2000, within weeks of Crowley having paid a total of more than $44 million to the Noteholders, Coram filed a petition under Chapter 11 of the Bankruptcy Code, together with a proposed plan of reorganization ("the First Plan"). *Id.* The First Plan provided for Coram to become a private company owned by the Noteholders. Under the First Plan, Coram's general unsecured creditors were to receive about 30 cents on the dollar and Coram's shareholders were to receive nothing. *Id.* at 232.

**C.    The Bankruptcy Court's Denial Of Coram's First Plan Of Reorganization Because Of Crowley's Conflict Of Interest**

The Bankruptcy Court (Honorable Mary F. Walrath) appointed an Equity Committee to protect the interests of Coram's shareholders. The Equity Committee opposed Coram's proposed plan. 271 B.R. at 232. Discovery conducted by the Equity Committee uncovered Crowley's Employment Agreement with Cerberus. *See id.*

In December 2000, the Bankruptcy Court conducted a confirmation hearing over a period of five days. Crowley's relationship with Cerberus was a central focus of the hearing. Crowley testified at length over a period of two days.

On the day when Crowley was cross-examined, he was personally represented by Philip Warden, Esquire, from the Pillsbury Madison firm in California. (A34-A35 [Dec. 15,

6

2000 Bankruptcy Court Sign-In Sheet].)  Warden also had defended Crowley at his deposition

prior to the hearing.  The issue of Crowley's conflict of interest due to his relationship with

Cerberus was explored at length in both his direct and cross-examination.

For example, Crowley testified about how his relationship with Cerberus began,

the provisions of his Cerberus employment contract, and his request for additional compensation

from Cerberus with respect to Winterland, as compensation to him for his work for Coram.  (A5-

A14; A17-A28; A29-30 [Dec. 15, 2000 Hrg. Tr.].)  He was questioned regarding the $6.3 million

cash payment that he had directed Coram to make to the Noteholders in July 2000.  (A31-A33

[Dec. 15, 2000 Hrg. Tr.].)  He also testified that he did not inform Coram's Board of Directors

that he was receiving a salary of nearly $1 million per year from Cerberus.  (A15-A16 [Dec. 15,

2000 Hrg. Tr.].)

After considering all the evidence, the Bankruptcy Court rejected Coram's

proposed plan of reorganization.  In the Court's view, Crowley's employment contract with

Cerberus "tainted the debtors' restructuring of its debt, the debtors' negotiations towards a plan,

even the debtors' restructuring of its operations."  (A38 [Dec. 21, 2000 Hrg. Tr.].)  Therefore, the

Court concluded that the plan had not been submitted in good faith as required by Section

1129(a)(3) of the Bankruptcy Code.  Moreover, the Court specifically found that Crowley had

"an actual conflict of interest."  (A39 [Dec. 21, 2000 Hrg. Tr.].)  As the Court explained:

> I think that the contractual relationship between Cerberus and the
> CEO, Mr. Crowley, did taint the process . . . I don't think I can
> confirm a plan based on that fact because I think that because of
> the process being tainted by this relationship which began in
> November of 1999, and perhaps in August of 1999, has so tainted
> the debtors' restructuring of its debt, the debtors' negotiations
> towards a plan, even the debtors' restructuring of its operations. . .

7

> . . . I think that the actions of Mr. Crowley to hide the relationship,
> and I think that [his November 12 Personal & Confidential letter to
> Feinberg] did show an intent to hide the relationship and to hide
> his request for additional compensation in Winterland in exchange
> for his efforts here did at least evidence that he, himself, believed
> that this relationship should not be disclosed and, therefore, did, in
> fact, taint his ability to serve as CEO of the debtor.

(A37, A39 [Dec. 21, 2000 Hrg. Tr.]. *See also* 271 B.R. at 232 ("At the conclusion of the

[December 2000] confirmation hearings, we found that Crowley's Consulting Agreement with

Cerberus created an actual conflict of interest on his part. . . . We concluded . . . that [the

bankruptcy process] had been tainted by Crowley's actual conflict of interest. As a result, we

concluded that we were unable to find that the Debtors had proposed their plan in good faith.").

## D.    The Bankruptcy Court's Denial Of Coram's Second Plan Of Reorganization Because Of Crowley's Conflict Of Interest

Following the denial of the First Plan, a committee consisting of Coram's four

outside directors retained Goldin Associates as an independent restructuring advisor. 271 B.R. at

232. In its report, Goldin concluded that: (1) the full extent of Crowley's relationship with

Cerberus should have been disclosed to the Coram Board; (2) Crowley's failure to do so

constituted a breach of his fiduciary duty to Coram; (3) Crowley advanced the interests of

Cerberus at Coram's expense by making the $6.3 million cash payment to the Noteholders at a

time when Coram was considering bankruptcy and should have been conserving cash resources;

and (4) Coram suffered damages as a result of Crowley's conflict. *Id.* at 233. Goldin made

recommendations concerning a second plan of reorganization, which included a $7.5 million

reduction in Crowley's bonus compensation. *Id.* Goldin's review did not, however, examine

whether Crowley's actual conflict continued after December 2000. *Id.* at 234. In fact, Crowley

continued to receive his compensation of almost $1 million per year under his Employment

Agreement with Cerberus in the year after the First Plan had been rejected -- a fact that he did not disclose to the Board members. *See id.*

Coram's outside directors decided to incorporate Goldin's recommendations into Coram's second proposed plan of reorganization ("the Second Plan"). Under the Second Plan, the Noteholders again would receive all of Coram's stock; the shareholders would receive a $10 million cash distribution provided their class voted in favor of the revised plan; and the general unsecured creditors would receive approximately 40 cents on the dollar. *Id.* at 234. The Equity Committee opposed the Second Plan, just as it had opposed the First Plan. *Id.*

In late 2001, the Bankruptcy Court conducted hearings on the Second Plan over a period of seven days. Once again, Crowley's conflict of interest was a critical issue explored at the hearing. Crowley again testified at length regarding his relationship with Cerberus. Crowley continued to be separately represented by the Pillsbury firm in connection with the Coram bankruptcy matter. Between January 2001 and December 2001, Crowley personally paid $203,595 in legal fees to the Pillsbury firm for its representation of him relating to Coram. (*See* A53 [Schedule of Attorneys' Fees].)

Crowley's conflict was also a central focus of his testimony during the second confirmation hearing. Crowley admitted that Coram's Board did not know that he was being paid $80,000 per month at the time it approved his Employment Agreement with Coram. (A52 [Dec. 13, 2001 Hrg. Tr.].) He further testified that he did not recall telling Goldin that he was continuing to receive $80,000 per month from Cerberus after confirmation of the First Plan was denied. (A51 [Sec. 13, 2000 Hrg. Tr.].) He was cross-examined at length concerning the stark contrast between the testimony of Coram's outside directors that they were not aware that

9

Crowley was continuing to be paid his salary by Cerberus until they were deposed by the Equity

Committee, on the one hand, and Crowley's testimony that he had informed the outside directors

that he was still being paid, on the other. (A43-A50 [Dec. 13, 2001 Hrg. Tr.].)  The Court

rejected Crowley's testimony.

After the conclusion of the confirmation hearing, the Bankruptcy Court again

concluded that it could not confirm the Second Plan because it was not submitted in good faith.

271 B.R. at 240. In the Court's view, "[n]othing, in fact, has changed since the first confirmation

hearing.  Crowley continues to receive almost $1 million a year from one of the Debtors' largest

creditors, while serving as the Debtors' CEO and President.  Under this agreement with

Cerberus, he is required to obey its instructions or risk having the agreement terminated and

losing his $1 million.  This is an actual conflict of interest, as we concluded at the first

confirmation hearing." *Id.* at 235.

In concluding that Crowley had an "actual conflict of interest," the Bankruptcy

Court made a number of specific factual findings that are relevant to this action:

- "Crowley, as Chief Executive Officer and President of the Debtors, has a fiduciary duty to the estate, which includes the duty of loyalty and an obligation to avoid any direct actual conflict of interest.  In this case, Crowley's actual conflict of interest goes beyond the mere appearance of impropriety.  Crowley cannot serve the interests of both the Debtors and a large creditor, Cerberus.  Under the Consulting Agreement, Cerberus has the discretion to fire Crowley if he fails to follow its instructions, resulting in the loss of $1 million per year in compensation to Crowley.  That control over Crowley, and indirectly the Debtors, is simply not proper." *Id.* at 236.

- "Crowley asserts . . . that the Consulting Agreement with Cerberus dealt not with his services as CEO of the Debtors but for work which he is performing for Cerberus in connection with another company, Winterland. We, quite simply, do not believe this.  Crowley testified that he is working 'more than full time' on the Debtors' affairs for a base compensation of

10

$650,000. This is in contrast to compensation of $1 million allegedly for serving only as chairman of the board of Winterland. We do not accept Crowley's assertion that his compensation from Cerberus under the Consulting Agreement is solely for his work for Winterland." *Id.*

- "Crowley himself demonstrated the insidious effect of [the] conflict when he caused the Debtors to pay in cash, rather than Notes, the $6.3 million interest payment due to the Noteholders immediately before the bankruptcy filing. Crowley's explanation that the payment was made to maintain the Noteholders' support is unconvincing." *Id.*

- "Although Crowley testified that he told the Board of Directors that he continued to receive compensation from Cerberus, we do not credit that testimony. All of the directors testified in their depositions that he did not tell them (nor did they ask him) whether he continued to receive that compensation." *Id.* at 234 n.10.

- "As we noted in the first confirmation hearing, given the actual conflict of interest, which the Debtors' CEO has, we are unable to conclude that any action taken by the Debtors which may impact on the rights of Cerberus were taken without any undue consideration of the interests of Cerberus." *Id.* at 237.

- "[T]here is really no evidence that there was no harm resulting from [Crowley's] conflict of interest. In fact, Mr. Goldin concluded that the Debtors did suffer harm as a result of Crowley's conflict because it caused a delay in confirmation of the Debtors' First Plan. . . . Furthermore, although Mr. Goldin concluded that the $6.3 million payment to the Noteholders on the eve of bankruptcy did not cause harm to the Debtors, we disagree. All reasonable advisors to companies contemplating a bankruptcy filing recommend that cash be conserved (not spent) on the eve of bankruptcy. . ." *Id.* at 237-38.

- "[T]here is absolutely no evidence from which the Court can conclude that the Debtors have suffered no harm from Crowley's continued conflict of interest. Mr. Goldin's assertion that there must be no harm since the disclosure of the relationship was caused by Crowley when the relationship was hidden was not logical, nor is it borne out by the facts. Crowley did cause harm to the Debtors while his relationship with Cerberus was hidden and there is no reason to assume he did not cause harm to the Debtors when that relationship was disclosed." *Id.* at 238.

Just as it had the year before, Crowley's conflict of interest led the Court to "easily conclude

from the totality of circumstances surrounding the Second Plan that a continuous conflict of

interest by the CEO of the Debtors precludes the Debtors from proposing a plan in good faith under 1129(a)(3)." *Id.* at 240.

Finally, the Court determined that "Crowley's conflict of interest is a violation of his fiduciary duty to the Debtors and estate and is so pervasive as to taint the 'Debtor's restructuring of its debt, the Debtors' negotiations of its debt, the Debtors' negotiations towards a plan, even the Debtors' restructuring of its operation,'" and that Coram's "hiring of Goldin to 'sprinkle holy water on the situation' failed to cure the conflict or show good faith." *Id.* (*quoting* Hrg. Tr. at 88, Dec. 21, 2000).

**E.    *The Bankruptcy Court's Approval Of The Trustee's Proposed Plan Of Reorganization***

After it rejected Coram's Second Plan, the Bankruptcy Court granted a motion to appoint Arlin M. Adams as Chapter 11 Trustee to oversee Coram's operations and assist the company in proceeding through the reorganization process. *See In re: Coram Healthcare Corp.*, 315 B.R. 321, 328 (Bankr. D. Del. 2004). Subsequently, both the Equity Committee and the Trustee filed reorganization plans. *Id.*

The Trustee's plan provided for a settlement with the Noteholders under which they would agree to relinquish all of their claims and interests and contribute $56 million to Coram's estate in return for ownership of the company and a release from the Trustee of any claims that Coram may have against them. *Id.* at 328. Crowley had by that time resigned as Coram's CEO, so the problem of his conflict that had precluded confirmation of the prior plans was not present. In October 2004, the Bankruptcy Court confirmed the Trustee's reorganization plan. *Id.* at 327. As part of the confirmed plan, the Trustee specifically preserved his right to file

claims on behalf of Coram's estate (including the general unsecured creditors and former

shareholders) against Crowley. *Id.* at 337.

### F.    The Current Litigation

In accordance with the confirmed plan, the Trustee filed this suit against Crowley

for breach of his fiduciary duties.[3]  As alleged in the Complaint, Crowley owed Coram fiduciary

duties of care, loyalty, disclosure, and good faith, including the duty to avoid conflicts of interest

and to disclose actual and potential conflicts of interest.  This action seeks damages for those

breaches.

Because the Bankruptcy Court's findings have preclusive effect and establish that

Crowley breached his fiduciary duties to Coram under Delaware law, the Trustee now moves for

summary judgment on liability.  In the alternative, should the Court conclude that the preclusive

effect of the Bankruptcy Court's findings do not entitle him to judgment on liability against

Crowley, the Trustee requests that this Court deem the Bankruptcy Court's specific findings of

fact to be established, so limiting the issues to be tried.

### ARGUMENT

### I.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides: "A party seeking to recover upon

a claim . . . may . . . move with or without supporting affidavits for a summary judgment in the

---

[3]  This lawsuit also alleged that Coram's outside directors had breached their fiduciary duties to
Coram. On June 1, 2006, this Court entered an Order approving a joint stipulation and motion
that entered judgment in favor of the Trustee and against the outside directors for $9.5 million
based on a settlement agreement that had been reached between the Trustee and the outside
directors.  (D.I. 72.)

party's favor upon all or any part thereof." To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When the moving party bears the burden of persuasion at trial, the moving party must point to evidence in the record that supports the movant's version of all material facts and demonstrates the absence of any genuine issue of material fact. *Nat'l State Bank v. Fed. Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir. 1992). If the movant has produced evidence in support of summary judgment, then the opponent may not rest on the allegations set forth in its pleadings but must counter with evidence that demonstrates a genuine issue of fact. FED. R. CIV. P. 56(e). This, in turn, requires the opponent to "set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, an opponent may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986).

## II.    THIS COURT SHOULD GIVE COLLATERAL ESTOPPEL EFFECT TO THE BANKRUPTCY COURT'S FINDINGS.

The standards for the application of collateral estoppel are well-established. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Amtrak v. Pa. Pub. Util. Comm.*, 288 F.3d 519, 525 (3d Cir. 2002) (*quoting* RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1980)). The doctrine applies equally to a prior judgment arising from a bankruptcy court proceeding as it does to any other proceeding, *Katchen v. Landy*, 382 U.S 323, 334 (1966); *Corestates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 194-95 (3d Cir. 1999), and

14

specifically applies to issues that were litigated in confirmation hearings. *In re Kham & Nate's Shoes No. 2, Inc.*, 97 B.R. 420, 426 (Bankr. N.D. Ill. 1989).[4] The primary purpose of collateral estoppel is to avoid relitigation of issues already adequately determined. *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 593 (3d Cir. 1989).

The requirements for application of collateral estoppel are: "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment." *Amtrak*, 288 F.3d at 525 (citations omitted). In addition, the party against whom the doctrine is to be applied must have had a "full and fair opportunity" to litigate the issues sought to be precluded. *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006); *see also Studiengesellschaft Kohle, mbH v. USX Corp.*, 675 F. Supp. 182, 186 (D. Del. 1987).

As discussed above, on two separate occasions, the Bankruptcy Court ruled on a number of the issues currently pending before this Court and made a number of factual findings with respect to those issues. Under the principles of collateral estoppel, Crowley cannot relitigate the issues that already were resolved in Bankruptcy Court. The Bankruptcy Court's 2000 and 2001 opinions are discussed and summarized above. Based on those opinions, the specific findings and issues that are entitled to collateral estoppel effect here are:

---

[4] Collateral estoppel is an appropriate basis for granting summary judgment. *See, e.g., McDowell v. Del. State Police*, Civ. A. No. 95-129, 1999 U.S. Dist. LEXIS 3105 (D. Del. Nov. 15, 1999). Because the prior judgment here arises from a bankruptcy court proceeding, the federal law of collateral estoppel applies. *See Harper v. Del. Valley Broadcasters*, 743 F. Supp. 1076, 1082 (D. Del. 1990). However, the Delaware test for collateral estoppel is "substantially the same as the federal standard." *Id.* at 1082 n.3.

1.   The employment agreement between Crowley and Cerberus whereby Crowley received almost $1 million a year from one of Coram's largest creditors created an actual conflict on Crowley's part. (A37-A39 [Dec. 21, 2000 Hrg. Tr.]); 271 B.R. at 235.

2.   Crowley's actual conflict of interest tainted Coram's restructuring of its debt, its negotiations of a plan, and the restructuring of its operations. (A37-A39 [Dec. 21, 2000 Hrg. Tr.]); 271 B.R. at 240.

3.   Crowley did not disclose to Coram the terms of his agreement with Cerberus. (A37-A39 [Dec. 21, 2000 Hrg. Tr.]); 271 B.R. at 231.

4.   Crowley did not disclose to the Board of Directors the $6.3 million cash payment to the Noteholders until after it had been made. 271 B.R. at 231.

5.   After denial of the first plan, Crowley continued to receive compensation from Cerberus. *Id.* at 234 n.7.

6.   After denial of the first plan, Crowley did not inform the Board of Directors that he continued to receive compensation from Cerberus. *Id.*

7.   Crowley's agreement with Cerberus required that Crowley obey the instructions of Cerberus and Feinberg. *Id.* at 234-35.

8.   Cerberus paid Crowley for his work for Coram. *Id.* at 236.

9.   Crowley's conflict of interest was a violation of his fiduciary duties to Coram. *Id.* at 240.

## A.   Collateral Estoppel Applies To Crowley Because He Was A Party In The Bankruptcy Proceedings And Had A Full And Fair Opportunity To Litigate The Issues Sought To Be Precluded.

As a threshold matter, the principles of collateral estoppel apply to Crowley for two reasons. First, he was a "party in interest" to both the 2000 and 2001 confirmation hearings. Second, as Coram's CEO and the sponsor of both the First Plan and the Second Plan, Crowley's interests were totally aligned with Coram's interests. Therefore, Crowley was in privity with Coram. In order to pursue its proposed plans of reorganization, Coram had to -- and did -- litigate the issue of Crowley's conflict.

The Bankruptcy Code defines a "party in interest" to include "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. § 1109(b) (2005). A party in interest "may raise and may appear and be heard on any issue in a case under this chapter." *Id.*

Crowley was a "party in interest" because, having filed proofs of claim in the Coram bankruptcies, he was a creditor of the bankruptcy estate. Therefore, he had the right to participate in the proceedings to the extent he wished. (By way of example, the Noteholders -- who were also creditors -- were represented by counsel and participated fully in both confirmation hearings.) As noted, Crowley's personal counsel was in the courtroom when Crowley testified on cross-examination during the confirmation hearings on the First Plan. Crowley could have had his counsel participate in all of the proceedings, much as the Noteholders did. That is precisely the opportunity to litigate an issue that is required by the collateral estoppel doctrine.

In order for collateral estoppel to apply, it was not necessary that Crowley have his personal counsel attend each and every moment of the hearings, which would have just duplicated the efforts of Coram's counsel. Crowley testified for two days at the first confirmation hearing and for one day at the second confirmation hearing. He literally took extensive advantage of the opportunity to advocate his position that he did not have a conflict of interest and that he was not paid by Cerberus for his work at Coram. The fact that he lost -- twice -- does not mean that he was deprived of the opportunity to prevail.

Moreover, as CEO, Crowley sponsored both plans and his interests were completely aligned with Coram's. Therefore, he stood in privity with Coram. Coram as debtor-

17

in-possession would be estopped from contesting the findings of the Bankruptcy Court. Because Crowley's interests were identical with Coram's, he is also estopped -- even putting aside the fact that he was a party himself. *See Bruszewski v. United States*, 181 F.2d 419, 423 (3d Cir. 1950). In a bankruptcy proceeding, the debtor's president is deemed to be adequately represented by the company. *United States v. Schnick*, 66 B.R. 491, 494 (Bankr. W.D. Mo. 1986) (*citing Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978)).

Collateral estoppel prevents not only parties from relitigating issues adjudicated in a prior action, but also those who stand in privity with a party. *See Del. River Port Auth. v. FOP, Penn-Jersey Lodge 30*, 290 F.3d 567, 572 (3d Cir. 2002) ("Under the doctrine of issue preclusion, a determination by a court of competent jurisdiction on an issue necessary to support its judgment is conclusive in subsequent suits based on a cause of action involving a party or one in privity."). *See Horwitz v. Alloy Auto. Co.*, 992 F.2d 100, 103 (7th Cir. 1993); *see also In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985) (finding founder, president, chairman and shareholder of Chapter 11 company to be in privity, and therefore barred from litigating previously-litigated claims); *In re Heritage Hotel P'ship I*, 160 B.R. 374, 377 n.4 (B.A.P. 9th Cir. 1993) (recognizing that parties subject to the *res judicata* effect of a Chapter 11 plan include creditors, equity holders, principals of the debtor, and parties in privity or successors in interest).

Coram's objective was to have its plans of reorganization confirmed. In order for those plans to be confirmed, Coram had to persuade the Bankruptcy Court that Crowley's relationship with Cerberus did not preclude a finding that the plans had been submitted in good faith. Coram vigorously litigated its position that Crowley did not have a conflict through testimony, briefing, and argument. Coram lost. Crowley is now estopped from relitigating the question because he was in privity with Coram.

18

**B.    The Issues Sought To Be Precluded Are The Same As The Issues In The Prior Bankruptcy Court Action.**

The issues that were litigated before the Bankruptcy Court are the same as the issues now before this Court. "Identity of issues is established by showing that the same general legal rules govern both cases and that the facts of both cases are indistinguishable as measured by those rules." *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (*quoting* 18 CHARLES ALLAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4425, at 253 (1981)). A slight difference in legal standards is not sufficient. To defeat a finding of identity of the issues for preclusion purposes, the difference in the applicable legal standards must be substantial. *Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995).

At both confirmation hearings, the most critical legal issue before the Bankruptcy Court was whether Coram had proposed its plans of reorganization in good faith as required by 11 U.S.C. § 1129(a)(3). In order to make that determination, the Bankruptcy Court had to ensure that the plan was "proposed with honesty, good intentions and a basis for expecting that a reorganization can be effected with results consistent with the objectives and purposes of the Bankruptcy Code." 271 B.R. at 234 (internal citations and quotations omitted).

The Bankruptcy Court denied confirmation of both plans because the Court found that Crowley's relationship with Cerberus constituted an impermissible conflict of interest that precluded the Court from concluding that Coram's proposed plans of reorganization had been submitted in good faith. In reaching the conclusion that Crowley had an actual conflict of interest, the Bankruptcy Court considered the very same facts and evidence upon which the Trustee would rely, should there be a need for trial here.

C.    **The Issues Sought To Be Precluded Were Actually Litigated In The Prior Bankruptcy Court Action.**

As discussed above, whether Crowley had a conflict of interest was actually litigated in the Bankruptcy Court in connection with the confirmation hearings on both the First Plan and the Second Plan. At the conclusion of the hearing on the Debtor's First Plan, the Bankruptcy Court concluded that Crowley had an actual conflict of interest "by virtue of the fact that he had a separate employment contract with one of the Debtors' largest creditors under which he was being paid almost $1 million per year." 271 B.R. at 234-35. Because the Cerberus Employment Agreement required that Crowley obey the instructions of Cerberus and because the compensation being paid him under that Agreement was not insubstantial, the Court concluded that the Agreement created an "actual conflict of interest." *Id.* at 235.

As to the Debtor's Second Plan, the Bankruptcy Court published a detailed opinion setting forth numerous specific factual findings that are at issue in this litigation. The Bankruptcy Court considered that Crowley, as CEO and Chairman of Coram, had a fiduciary duty to the estate, which included the duty of loyalty and an obligation to avoid any direct actual conflict of interest. *Id.* at 236. It considered testimony from Crowley on his actual conflict and his relationship with Cerberus. *See id.* at 235-236. It specifically restated its position that the relationship between Crowley and Cerberus is an actual conflict and "is simply not proper." *Id.* at 236. And the Bankruptcy Court specifically found that "Crowley's conflict of interest is a violation of his fiduciary duty to the Debtors and estate." *Id.* While Crowley may not agree with the findings of the Bankruptcy Court, he cannot argue that the issues related to his actual conflict were not litigated and considered by that Court.

D.    **The Bankruptcy Court's Decisions Are Valid And Final.**

The "concept of finality for purposes of 'collateral estoppel does not require the entry of a judgment final in the sense of being appealable'; rather, collateral estoppel applies 'whenever an action is sufficiently firm to be accorded conclusive effect.'" *Burlington N. R.R. Co. v. Hyundai Merchant Marine Co., Ltd.*, 63 F.3d 1227, 1233 n.8 (3d Cir. 1995) (*quoting In re Brown*, 951 F.2d 564, 569 (3d Cir. 1991)). The requirement of finality, for purposes of collateral estoppel, is a more "pliant" concept than it is in other contexts. *First Jersey Nat. Bank v. Brown (In re Brown)*, 951 F.2d 564, 569 (3d Cir. 1991) (citing *Dyndul v. Dyndul*, 620 F.2d 409, 412 (3d Cir. 1980)). "Finality 'may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again.'" *Dyndul*, 620 F.2d at 412 (quoting *Lummus Co. v. Commonwealth Oil Refinery Co.*, 297 F.2d 80, 89 (2d Cir. 1961)).

The Bankruptcy Court's 2000 and 2001 decisions are sufficiently firm to be given preclusive effect. In 2000, the Court denied confirmation, after making extensive findings on the record. In 2001, the Court again denied confirmation, issuing a twenty-five page written opinion that provided detailed reasons for its decisions. The Bankruptcy Court then confirmed the Trustee's proposed plan of reorganization in October 2004. The Equity Committee appealed the Bankruptcy Court's ruling and unsuccessfully sought to stay implementation of the plan in both the District Court and the Third Circuit. (After the Third Circuit denied the Equity Committee's stay request, it withdrew its appeal.) Accordingly, the Bankruptcy Court's 2000 and 2001 decisions clearly are final decisions for purposes of collateral estoppel.

E.    **The Determination Of The Issues Sought To Be Precluded Were Essential To The Bankruptcy Court's Judgment.**

An issue deemed necessary to the resolution of the case is one that is vigorously

contested by the parties and, therefore, it is fair to give preclusive effect to such issues. *See Jean*

*Alexander Cosmetics*, 458 F.3d at 250. The necessity rule ensures that collateral estoppel is

applied only to those issues that receive the court's close attention. *Id.* A fact is considered

necessary to a judgment when, without the fact, the judgment would lack sufficient factual

support to sustain the judgment. *Raytech Corp. v. White*, 54 F.3d 187, 193 (3d Cir. 1995). A

court faced with collateral estoppel issues should look to whether the issue decided by the first

court was critical to the judgment or merely dicta. *See Amtrak*, 288 F.3d at 527.

As discussed above, the issue of Crowley's conflict of interest was essential to the

Bankruptcy Court's denial of Coram's proposed reorganization plans in both 2000 and 2001;

indeed, it was the sole reason for the Court's denial of the plans. In denying confirmation of the

First Plan, the Bankruptcy Court found that it could not conclude that the plan had been

submitted in good faith because "I think that the contractual relationship between Cerberus and

the CEO, Mr. Crowley, did taint the process, and I think that, if anything, the ultimate fairness of

the process in bankruptcy is a paramount principle to be protected by the Bankruptcy Court."

(A37 [Dec. 21, 2000 Hrg. Tr.].) In denying the Debtor's Second Plan, the Court again

emphasized that it was Crowley's conflict of interest that prevented confirmation:

> As we noted in the first confirmation hearing, given the actual
> conflict of interest which the Debtors' CEO has, we are unable to
> conclude that any action taken by the Debtors which may impact
> on the rights of Cerberus were taken without any undue
> consideration of the interests of Cerberus. Consequently, we must
> once again deny confirmation of the Debtors' Plan because we are

> unable to determine under all of the circumstances that the
> Debtors' Second Plan has been proposed in good faith.

271 B.R. at 237; *see also id.* at 240 ("We easily conclude from the totality of the circumstances

surrounding the Second Plan that a continuous conflict of interest by the CEO of the Debtor

preclude the Debtors from proposing a plan in good faith under 1129(a)(3).").

Clearly, the reason that the Bankruptcy Court concluded that the proposed plans

of reorganization were not submitted in good faith -- the question before it -- was because

Crowley had an actual conflict of interest. The Court's determination that Crowley had a

conflict of interest was essential to its determination that both plans failed to meet the

requirements of Section 1129(a)(3) of the Bankruptcy Code.

### III.  THE BANKRUPTCY COURT'S FINDINGS THAT ARE TO BE GIVEN PRECLUSIVE EFFECT ENTITLE THE TRUSTEE TO SUMMARY JUDGMENT ON LIABILITY.

As detailed above, the Bankruptcy Court's findings related to Crowley's conflict

of interest and breach of fiduciary duty are binding here. Those findings establish that the

Trustee is entitled to summary judgment on liability.

Under Delaware law, corporate directors and officers "are charged with an

unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests

of its shareholders." *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 360 (Del. 1993). The

Delaware Supreme Court has articulated a "triad" of these fiduciary duties: due care, loyalty,

and good faith. *Emerald Partners v. Berlin ("Emerald Partners II")*, 787 A.2d 85, 90 (Del.

2001); *see also McMullin v. Beran*, 765 A.2d 910, 917 (Del. 2000); *Malone v. Brincat*, 722 A.2d

5, 10 (Del. 1998); *Cede*, 634 A.2d at 361.

Crowley had a duty of loyalty "to act in the best interests of the corporation and its shareholders and in a manner such that there would be 'no conflict between [his] duty and [his] self interest.'" *ATR-Kim Eng. Fin. Corp. v. Araneta*, Civ. A. No. 489-N, 2006 Del. Ch. LEXIS 215, at *57 (Del. Ch. Dec. 21, 2006) (*quoting Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939)). "[T]he duty of loyalty precludes [a fiduciary] from accepting any position in actual conflict with the interests of the corporation." *In re Integrated Health Servs., Inc.*, 258 B.R. 96, 102 (Bankr. D. Del. 2000). "There is no 'safe harbor' for such divided loyalties in Delaware." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 710 (Del. 1983).

Furthermore, the officers and directors of a debtor in possession in a Chapter 11 case owe the same fiduciary duties as a trustee, including a duty of loyalty to the bankruptcy estate. *In re Performance Nutrition, Inc.*, 239 B.R. 93, 111 (Bankr. N.D. Tex. 1999); *In re Insulfoams, Inc.*, 184 B.R. 694, 703 (Bankr. W.D. Pa. 1995). The duty of loyalty includes an obligation to "avoid self-dealing, conflicts of interest and the appearance of impropriety." *In re Bowman*, 181 B.R. 836, 843 (Bankr. D. Md. 1995); *see also In re Hampton Hotel Investors, L.P.*, 270 B.R. 346, 362 (Bankr. S.D.N.Y. 2001). The insider of a debtor in possession "cannot adequately serve two masters." *In re Tel-Net Hawaii, Inc.*, 105 B.R. 594, 595 (Bankr. D. Haw. 1989).

The Bankruptcy Court determined that "Crowley's conflict of interest is a violation of his fiduciary duty to the Debtors." 271 B.R. at 240. As set forth above, that finding is binding in this case and entitles the Trustee to summary judgment on liability.

Even if the Bankruptcy Court had not made the specific determination that Crowley had breached his fiduciary duty, the underlying factual findings of the Bankruptcy

24

Court -- which are preclusive and so cannot be contested here -- clearly demonstrate that

Crowley breached his fiduciary duties to Coram. Crowley had an actual conflict of interest

because he: (1) was employed by Cerberus, one of Coram's largest creditors; (2) was

contractually obligated to devote his entire business time, attention, skill and energy, to

Cerberus, not Coram; (3) could be terminated by Cerberus if he disobeyed its instructions; and

(4) was compensated by Cerberus for services that he rendered to Coram. As the Bankruptcy

Court found, Crowley's conflict necessarily tainted every action that Crowley took or did not

take at Coram, every decision he made, every step of the way. The Bankruptcy Court further

determined that Crowley intentionally failed to disclose the conflict. Consequently, summary

judgment should be entered against Crowley on the issue of liability.[5]

## IV.    IN THE ALTERNATIVE, THIS COURT SHOULD DEEM THE FACTS THAT THE BANKRUPTCY COURT FOUND TO BE ESTABLISHED FOR PURPOSES OF THIS LITIGATION.

As set forth above, the Bankruptcy Court ruled on two occasions on a number of

the issues that are currently pending before this Court, and made a number of factual findings

that are identical to facts that the jury would have to find here. It is for those reasons that the

Trustee believes he is entitled to summary judgment on liability. However, should this Court

disagree with the Trustee that the preclusive effect of the Bankruptcy Court's findings entitle him

to judgment, then, at the least and in the alternative, the Court should deem the Bankruptcy

Court's factual findings to be conclusively established for purposes of this action.

---

[5] As noted above, the Trustee's Complaint also asserts that Crowley breached other fiduciary duties in addition to the duty of loyalty, but does not seek summary judgment for those other breaches.

Federal Rule of Civil Procedure 56(d) provides the procedural mechanism by which this Court can so limit the issues to be tried. That rule provides that a court may "make an order specifying the facts that appear without substantial controversy. . . . Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly." FED. R. CIV. P. 56(d).[6] The rule "empowers the court to withdraw some issues from the case and to specify those facts that really cannot be controverted." *Cohen v. Bd. Of Trustees of the Univ. of Med. and Dentistry and Dentistry of N.J.*, 867 F.2d 1455, 1463 (3d Cir. 1989).

The specific facts that this Court should deem established pursuant to its authority under Rule 56(d) are (as set forth also *supra* at pages 16):

1.  The employment agreement between Crowley and Cerberus whereby Crowley received almost $1 million a year from one of Coram's largest

---

[6] Federal Rule of Civil Procedure 56(d) provides in full:

> If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted.

> It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

creditors created an actual conflict on Crowley's part. (A37-A39 [Dec. 21, 2000 Hrg. Tr.]); 271 B.R. at 235.

2. Crowley's actual conflict of interest tainted Coram's restructuring of its debt, its negotiations of a plan, and the restructuring of its operations. (A37-A39 [Dec. 21, 2000 Hrg. Tr.]); 271 B.R. at 240.

3. Crowley did not disclose to Coram the terms of his agreement with Cerberus. (A37-A39 [Dec. 21, 2000 Hrg. Tr.]); 271 B.R. at 231.

4. Crowley did not disclose to the Board of Directors the $6.3 million cash payment to the Noteholders until after it had been made. 271 B.R. at 231.

5. After denial of the first plan, Crowley continued to receive compensation from Cerberus. *Id.* at 234 n.7.

6. After denial of the first plan, Crowley did not inform the Board of Directors that he continued to receive compensation from Cerberus. *Id.*

7. Crowley's agreement with Cerberus required that Crowley obey the instructions of Cerberus and Feinberg. *Id.* at 234-35.

8. Cerberus paid Crowley for his work for Coram. *Id.* at 236.

9. Crowley's conflict of interest was a violation of his fiduciary duties to Coram. *Id.* at 240.

## CONCLUSION

For all of the reasons set forth above, the Trustee respectfully requests that summary judgment be entered in his favor and against Defendant Crowley on the issue of liability. In the alternative, the Trustee respectfully requests that the specific facts found by the Bankruptcy Court and outlined above be deemed established for purposes of this litigation.

Respectfully submitted,

Dated: April 17, 2007

/s/ Michael J. Barrie
Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)
SCHNADER HARRISON SEGAL & LEWIS LLP
824 Market Street Mall, Suite 1001
Wilmington, DE 19801
(302) 888-4554 (telephone)
(302) 888-1696 (telecopier)
mbarrie@schnader.com

OF COUNSEL:

Barry E. Bressler (admitted *pro hac vice*)
Wilbur L. Kipnes (admitted *pro hac vice*)
Nancy Winkelman (*pro hac vice admission pending*)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2400 (telephone)
(215) 751-2205 (facsimile)

*Counsel to Plaintiff,*
*Arlin M. Adams, Chapter 11 Trustee of the Post-*
*Confirmation Bankruptcy Estates of CORAM*
*HEALTHCARE CORP. and CORAM, INC.*