1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE


In re:                           )
                                 )
CORAM RESOURCES NETWORK, INC.,)
and CORAM INDEPENDENT PRACTICE)  Case No. 99-2889
ASSOCIATION, INC.,               )        (MFW)
                                 )
          Debtors.       )


                         Bankruptcy Courtroom
                         No. 1, Sixth Floor
                         Marine Midland Plaza
                         824 Market Street
                         Wilmington, Delaware


                         Thursday, December 21, 2000
                         1:35 p.m.


BEFORE:  THE HONORABLE MARY F. WALRATH,
         United States Bankruptcy Judge


         -- Transcript of Proceedings --


             WILCOX & FETZER
   1330 King Street - Wilmington Delaware  19801

             (202) 655-0477

37

1   point with another plan or sale or some other vehicle

2   that I think there is no basis to conclude will result in

3   anything other than creditors getting less and the

4   equityholders still getting nothing.

5          So, Your Honor, if the issue is that

6   somebody did something wrong, and I'm not suggesting

7   that, and I'm certainly not endorsing that view, but if

8   that's the point, there is redress in the courts, but I

9   don't think that the answer is to put this company out of

10  business.

11         Thank you.

12         THE COURT:  Well, I'm in a difficult

13  situation.  I would like to sidestep my duties, but I

14  think I have to determine in deciding whether to confirm

15  this plan under 1129(a)(3).  I must conclude that it is

16  proposed in good faith and that the plan proponents have

17  acted in good faith.  I just do not want to be in a

18  position to conclude on this record that that is so.  I

19  cannot conclude on this record that that is so.

20         I think that the contractual relationship

21  between Cerberus and the CEO, Mr. Crowley, did taint the

22  process, and I think that, if anything, the ultimate

23  fairness of the process in bankruptcy is a paramount

24  principle to be protected by the Bankruptcy Court.

39

1      Maybe we would be at the same place today

2   if that contractual relationship had not been there, if

3   it had been disclosed to all parties, but I don't know

4   that and I don't think anybody will know that.

5      We are at a terrible place. The Equity

6   Committee, even on its numbers, which I agree with the

7   Creditors' Committee's counsel and their valuation expert

8   and the cross-examination of the Equity Committee expert

9   does point out the questionable nature of that valuation.

10      I think under any of the numbers the

11   company is insolvent today. But I don't think I can

12   confirm a plan based on that fact because I think that

13   because of the process being tainted by this relationship

14   which began in November of 1999, and perhaps in August of

15   1999, has so tainted the debtors' restructuring of its

16   debt, the debtors' negotiations towards a plan, even the

17   debtors' restructuring of its operations.

18      I think on that point I think it is a shame

19   that Mr. Crowley and perhaps Cerberus and the debtor

20   itself is tainted in this manner because I think there is

21   evidence that Mr. Crowley did do a good job operationally

22   in helping the debtor turn around. But I can't conclude

23   that the debtor might not have done even better had there

24   not been this relationship. I don't know. That's the

39

1   problem.  I don't know what would have happened without

2   this actual conflict of interest.  I do think it's an

3   actual conflict of interest.

4            I think that the actions of Mr. Crowley to

5   hide the relationship, and I think that EC-20 did show an

6   intent to hide the relationship and to hide his request

7   for additional compensation in Winterland in exchange for

8   his efforts here did at least evidence that he, himself,

9   believed that this relationship should not be disclosed

10  and, therefore, did, in fact, taint his ability to serve

11  as CEO of the debtor.

12           Whether it opens up a Pandora's box or

13  encourages other noteholders or other parties in future

14  bankruptcies to try the same thing, I'm not as concerned

15  about that, but I just do not want my name confirming a

16  plan where this type of activity occurred for a year

17  before the plan was proposed for confirmation.  I just

18  cannot conclude that it's proposed in good faith for

19  those reasons.

20           I do not have the ability to suggest a

21  different plan.  I do not have the ability to give an

22  exemption from Stark II.

23           So I leave it to the debtor to see where it

24  goes from here for now.  I'll look for a form of order if

90

```
1    someone wants to present me with one.
2                    MR. MINUTI:  We will, Your Honor.
3                    THE COURT:  We'll stand adjourned.
4                    MR. LEVY:  Thank you, Your Honor.
5                    (The hearing was then concluded at
6    3:35 p.m.)
7                         - - - - -
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

31

```
1    State of Delaware    )
                          )
2    County of New Castle )

3

4                    C E R T I F I C A T E

5

6         I, Kathleen E. White, Registered Professional
7    Reporter and Notary Public, do hereby certify that the
     foregoing record, pages 1 to 91, inclusive, is a true and
8    accurate transcript of my stenographic notes taken on
     Thursday, December 21, 2000, in the above-captioned
9    matter before the Federal Bankruptcy Court.

10        IN WITNESS WHEREOF, I have hereunto set my hand
     and seal this 24th day of December, 2000, in
11   New Castle County.

12

13                    KATHLEEN E. WHITE,
14                    Notary Public-Reporter

15

16

17

18

19

20

21

22

23

24
```