# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, Chapter 11 Trustee of
the Post-Confirmation Bankruptcy Estates of
CORAM HEALTHCARE CORPORATION,
a Delaware Corporation, and of CORAM
INC., a Delaware Corporation,

                      Plaintiffs,

    v.

DANIEL D. CROWLEY, DONALD J.
AMARAL, WILLIAM J. CASEY, L. PETER
SMITH, and SANDRA L. SMOLEY,

                   Defendants.

Case No. 04-1565 (SLR)

---

## ANSWERING BRIEF OF DANIEL CROWLEY IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER

---

Dated: April 30, 2007

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA  94111
(415) 391-5400

*Attorneys for Defendant DANIEL D. CROWLEY*

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS ...................................................2

III.    SUMMARY OF ARGUMENT ..........................................................................2

IV.     CONCISE STATEMENT OF FACTS ...............................................................3

       A.      The Complaint Focuses Exclusively on Pre-2002 Conduct ...................3

       B.      Bressler and Kipnes are Identified as Potential Witnesses in Crowley's Rule 26 Disclosures ................................................................................3

       C.      The Trustee's December 2006 Interrogatory Responses Change the Focus of his Claim .................................................................................4

       D.      The Trustee Deposes Crowley's Former Counsel Scott Schreiber ........6

       E.      The Trustee Focuses on New Allegations at his Deposition ..................7

V.      ARGUMENT .....................................................................................................8

       A.      The Federal Rules Permit the Discovery of Relevant, Non-Privileged Information from "Any" Witness—including Opposing Counsel ............8

       B.      The Trustee Cannot Establish Good Cause Justifying a Protective Order .......................................................................................................9

             1.      The Trustee has not identified specific examples of harm justifying a protective order ...............................................................10

             2.      Bressler and Kipnes possess relevant non-privileged information .......................................................................................10

             3.      The information sought is crucial to the preparation of Crowley's case and is not available from other sources ..................12

       C.      Crowley did not Delay in Seeking the Bressler and Kipnes Depositions ..............13

       D.      Concerns Regarding the Scope of a Deposition should be Handled with Appropriate Objections and Instructions Not to Answer, Not with a Protective Order Barring the Deposition ...........................................13

VI.     CONCLUSION ................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Allergan Inc. v. Pharmacia Corp.,*
2002 WL 1268047 (D. Del. 2002) ................................................................. 10, 12

*Caruso v. Coleman Co.,*
1994 WL 613668 1 (E.D. Pa. 1994) ............................................................. 10, 11

*Chrysler Int'l Corp. v. Chemaly,*
280 F.3d 1358 (11th Cir. 2002) ............................................................................ 13

*Cipollone v. Liggett Group, Inc.,*
785 F.2d 1108 (3d Cir. 1986) ................................................................................. 9

*Cole v. Mousavi,*
1990 WL 63945 (Del. Sup. Ct. 1990) .................................................................. 12

*Fried v. Sungard Recovery Services,*
164 F.R.D. 405 (E.D. Pa. 1996) .............................................................................. 9

*Harding v. Dana Transport, Inc.*
914 F.Supp. 1084 (D.N.J.1996) ............................................................................... 9

*Houston Bus. Journal, Inc. v. Office of Comptroller,*
86 F.3d 1208 (D.C. Cir. 1996) ................................................................................ 7

*In re Arthur Treacher's Franchise Litigation,*
92 F.R.D. 429 (E.D. Pa. 1981) ....................................................................... 8, 9, 14

*In re Linerboard Antitrust Litigation,*
237 F.R.D. 373 (E.D. Pa. 2006) ............................................................................ 12

*In re Madden,*
151 F.3d 125 (3d Cir. 1998) .................................................................................... 8

*Johnston Development Group, Inc. v. Carpenters Local Union No. 1578,*
130 F.R.D. 348 (D.N.J. 1990) ...................................................................... 9, 10, 13

*Pacitti v. Macy's,*
193 F.3d 766 (3d Cir. 1999) .................................................................................... 8

*Rainbow Investors Group, Inc. v. Fuji Trucolor Missouri, Inc.,*
168 F.R.D. 34 (1996) ............................................................................................... 9

*Shelton v. Am. Motors Corp.,*
805 F.2d 1323 (8th Cir. 1987) .............................................................................. 12

*Smith ex rel. Smith v. United States,*
193 F.R.D. 201 (D.Del. 2000) ............................................................................... 12

*United Phosphorus, Ltd. v. Midland Fumigant, Inc.,*
164 F.R.D. 245 (1995) ............................................................................................. 9

## Federal Rules

Fed. R. Civ. P. 26 .................................................................................................. 1, 4

Fed. R. Civ. P. 26(b) .................................................................................................. 8

Fed. R. Civ. P. 26(c) ...................................................................................... 2, 7, 9, 10

Fed. R. Civ. P. 30 ...................................................................................................... 1

**TABLE OF AUTHORITIES**
**(cont'd)**

Page(s)

Fed. R. Civ. P. 30(a) ................................................................................................................... 8

Fed. R. Civ. P. 30(b)(6) ............................................................................................................. 12

Fed. R. Civ. P. 45(a)(2)(B) .......................................................................................................... 7

## I.    INTRODUCTION

Trustee Arlin Adams has moved for a protective order to prevent the depositions of Barry Bressler and Wilbur Kipnes. Bressler and Kipnes are percipient witnesses to and participants in events put at issue by the Trustee. Under the Federal Rules of Civil Procedure, Crowley is permitted to take their depositions.

To the extent that the Trustee's motion relies on the factual record in this case, it misstates that record, and ignores critical facts. To the extent that the Trustee's motion relies on the law, it ignores the legal standards which define the broad permissible scope of discovery pursuant to Fed. R. Civ. P. 26 and 30, and the reams of cases which permit the depositions of counsel where a party has selected as trial counsel a person who also happens to be a percipient witness. A bar card does not provide immunity from the normal obligations of discovery.

Finally, the suggestion that Bressler and Kipnes have been subpoenaed for an improper purpose is baseless. Having recently injected into this case certain factual issues which occurred in 2002 and 2003, events in which both Bressler and Kipnes participated, they know perfectly well why they are appropriate witnesses. The awkwardness for them is that the documents that they have authored, and we believe the testimony they will give, are inconsistent with the position that the Trustee is now taking in this litigation. Crowley properly seeks discovery regarding events they witnessed and which will reveal the chasm between the positions these lawyers previously took on behalf of the Trustee, and those that they wish to take today. By this motion the Trustee seeks to hide that contradiction, but in fairness and under the relevant law, Crowley is entitled to develop this evidence through discovery.[1]

---

[1] This is not the only issue about which the Trustee has taken a position in this litigation inconsistent with a position he took in the bankruptcy. A number of the Trustee's other inconsistent positions are addressed in Crowley's Motion for Summary Judgment. (*See* D.I. 123 at 30-32; 35; 37).

Case 1:04-cv-01565-SLR    Document 131    Filed 04/30/2007    Page 6 of 18

## II.    NATURE AND STAGE OF PROCEEDINGS

Arlin Adams was appointed Chapter 11 Trustee of Coram Healthcare Corp. and Coram, Inc. (collectively, "Coram") in March 2002. Following confirmation of Coram's bankruptcy plan in October 2004, the Trustee filed this lawsuit against Daniel Crowley on December 29, 2004, alleging one cause of action for breach of fiduciary duty. The allegations in the Complaint exclusively relate to activities that occurred in 1999, 2000, and 2001.

Two years after he filed the Complaint and near the close of fact discovery, the Trustee for the first time alleged that conduct in 2002 and 2003—while he was Trustee—was relevant to the Trustee's claim against Crowley. Since Bressler and Kipnes are percipient witnesses to and participants in events that the Trustee now claims are relevant to this action, Crowley subpoenaed them for their testimony. On April 13, 2007, the Trustee moved for a protective order seeking to prevent Crowley from discovering factual, non-privileged information regarding the Trustee's claim.

## III.    SUMMARY OF ARGUMENT

The Trustee's motion for a protective order should be denied because:

1.     Crowley may discover any non-privileged information relevant to any claim or defense and may take the testimony of *any* person, including an attorney for a party, in order to do so. If an attorney of record possesses relevant, non-privileged information, that information is discoverable, just as it would be if possessed by a party or a non-party to the litigation.

2.     The Trustee, as the moving party, bears the burden of establishing good cause, including identification of specific harm absent protection, to justify a protective order. Broad allegations of harm, unsubstantiated by specific examples, do not satisfy Rule 26(c). The Trustee has not identified specific examples of harm that might result from the depositions of Messrs. Bressler and Kipnes.

3.     Messrs. Bressler and Kipnes are percipient witnesses to and participants in events the Trustee contends are relevant to claims in this case. They possess non-privileged information relevant to claims put at issue by the Trustee that is crucial to Crowley's preparation of the case. The information sought is not available from any other source.

## IV.   CONCISE STATEMENT OF FACTS

### A.   The Complaint Focuses Exclusively on Pre-2002 Conduct

Shortly after he was appointed Trustee in March 2002, Adams hired his law firm, Schnader Harrison Segal & Lewis and attorneys Bressler and Kipnes, to represent him in the bankruptcy, for which Schnader Harrison has been paid approximately $9 million. Bressler and Kipnes have assisted the Trustee in his role since the time of his appointment and have been involved in managing Coram through the bankruptcy. Indeed, according to the Trustee, Bressler and Kipnes "often" gave the Trustee "business advice" in connection with the bankruptcy, including business advice about whether to retain Crowley at Coram. (Adams Feb. 25, 2003 depo. at 42:9-45:2, 89:14-90:1, attached as Ex. B-1) Bressler and Kipnes met frequently with Crowley to discuss issues at Coram, participated in negotiations regarding the extension of Crowley's employment with Coram, and prepared and presented Crowley as a witness at the hearing at which the Court considered the Trustee's request to extend Crowley's employment.[2]

Despite their intimate familiarity with the events that took place in 2002 and 2003, when they filed the Complaint in this action on December 29, 2004, the Trustee's allegations focused solely on events taking place during 1999, 2000, and 2001. (D.I. 1) The Complaint makes no mention of any purportedly actionable conduct by Crowley having occurred in 2002 or 2003. (*Id.*)

### B.   Bressler and Kipnes are Identified as Potential Witnesses in Crowley's Rule 26 Disclosures

In light of their involvement with the Coram bankruptcy over two years, at the initiation of this case Bressler and Kipnes were well-steeped in the facts. In contrast, Crowley was originally represented in this case by Scott Schreiber at the Much Shelist firm. Current counsel from Keker & Van Nest, L.L.P. appeared in the case after the Complaint had been filed, in April 2006. (D.I. 64) Given the complex bankruptcy record and background facts that had to be

---

[2] Most of the facts presented in the Trustee's Opening Brief are irrelevant and/or incorrect. For instance, the unsupported allegation that Crowley "did not disclose the terms" of his agreement with Cerberus to Coram has nothing to do with whether Bressler and Kipnes are proper deponents and, moreover, is wrong. All the terms of Crowley's Cerberus relationship were disclosed to Coram prior to the time he was hired. (*See* D.I. 123 at 7-8; 19-22)

digested, it took several months for counsel to get fully up to speed with the facts of the case.

Notwithstanding this steep learning curve, however, Crowley listed Bressler and Kipnes as potential witnesses in his Rule 26 initial disclosures served on May 12, 2006. (Crowley's Initial Disclosures at p. 10, attached as Ex. B-2) Crowley was aware that they had participated in the activities of Coram during its bankruptcy and had consistently been laudatory in their descriptions of Crowley's performance at Coram. It was clear even then that they could potentially be percipient witnesses in the case. However, more recent events made that conclusion manifest.

**C.     The Trustee's December 2006 Interrogatory Responses Change the Focus of his Claim**

In the early phases of discovery, the parties focused on the Complaint's allegations regarding Crowley's alleged conduct in 1999, 2000, and 2001. Perhaps due to the weakness of the factual bases underlying those allegations, in late December 2006, the Trustee changed the focus of his case. In interrogatory responses served on December 20, 2006, the Trustee for the first time identified purported conduct by Crowley in 2002 and 2003 as part of the actionable conduct alleged in this case. (Trustee's Responses to First Set of Interrogatories at pp. 11-12, attached as Ex. B-3)

The Trustee's December 2006 interrogatory responses allege that Crowley lied to the Trustee in 2002 about the status of his relationship with Cerberus Partners L.P. (a Coram noteholder) and that therefore the Trustee may sue Crowley for conduct occurring in 2002 and 2003, in addition to the conduct alleged in the Complaint. (*Id.*) The basis for the Trustee's new allegations arises out of Crowley's discussions with the Trustee in March 2002 and the Trustee's motion to extend Crowley's employment in early 2003. (*Id.*) The Trustee's own conduct—and the conduct of Bressler and Kipnes—at that time, however, strongly undercuts his new claim that Crowley lied to him.

In December 2002 and January 2003, the Trustee, in letters authored and signed by Bressler, agreed to pay Crowley $3.48 million and release him from liability for the exact claims now being asserted against him in exchange for Crowley's agreement to continue to work at

Coram for six more months. (Dec. 24, 2002 and Jan. 7, 2003 letter agreements, attached as Ex. B-4) The Trustee moved the Bankruptcy Court to approve the agreements he had reached with Crowley. (Trustee Motion to Extend Crowley Employment, attached as Ex. B-5) The Trustee argued to the Bankruptcy Court, in a brief authored by Bressler, that Crowley's outstanding performance as CEO justified the extension of his employment, the cash payments, and the release of liability. (*Id.* at 7-10)

The Equity Committee[3] opposed the Trustee's motion and took discovery prior to the hearing. On February 25, 2003, the Equity Committee deposed the Trustee, who was represented at the deposition by Bressler and Kipnes. (Adams Feb. 25, 2003 depo. at 2:17-20, attached as Ex. B-1) During the deposition, the Trustee was questioned extensively about draft correspondence between Crowley and Cerberus. (*Id.* at 174-192) The next day, February 26, 2003, Kipnes and Bressler met with Crowley and his counsel, Scott Schreiber, to prepare for Crowley's deposition. (Crowley Feb. 27, 2003 depo. at 7:2-17, attached as Ex. B-6) They discussed the draft letters at this preparation session. (*Id.* at 7:20-9:6) At Crowley's deposition the next day, February 27, 2003, Kipnes claimed that the discussions he had with Crowley to prepare for the deposition were protected by a joint privilege. (*Id.* at 9:19-10:22)

A week later, on March 3, 2003, the Bankruptcy Court held a hearing on the Trustee's motion. Kipnes and Bressler prepared Crowley for his testimony at that hearing and Kipnes presented Crowley as a witness. The Equity Committee argued that the draft correspondence supported their opposition to the Trustee's motion. Kipnes questioned Crowley regarding the draft correspondence and Crowley's discussions with the Trustee regarding Cerberus. (March 3, 2003 Tr. at 73-79; 109-110, attached as Ex. B-7) At the hearing, the Trustee testified in positive terms regarding Crowley. (*Id.* at 18-23) In testimony elicited by Bressler, the Trustee specifically testified that he was aware of the contents of the draft correspondence that the Equity

---

[3] In October 2000, the Bankruptcy Court appointed an Equity Committee to represent the interests of Coram's shareholders. The Equity Committee was represented by Richard Levy (first at Altheimer & Gray, then at Jenner & Block). The Equity Committee opposed every plan of reorganization proposed by Coram, including plans proposed by the Trustee after Crowley left Coram.

Committee claimed should preclude Bankruptcy Court approval but that nothing in the documents was inconsistent with any representations Crowley had previously made to the Trustee. (*Id.* at 70:10-15). The Trustee testified that if he had believed that Crowley had made misrepresentations regarding his relationship with Cerberus, "I would be upset about it and probably would take steps". (*Id.*) To the contrary, the Trustee testified that he believed Crowley had been "completely forthright and forthcoming" to him and that if the Trustee had believed otherwise "[he] would not be sitting here today." (*Id.* at 23) The Trustee now claims that the draft correspondence demonstrates that Crowley lied to the Trustee regarding his relationship with Cerberus. (Ex. B-3 at pp. 11-12)

When the Bankruptcy Court denied the Trustee's motion to extend Crowley's employment, pay him $3.48 million and release him from liability, Kipnes wrote to Crowley that he was "shocked and disappointed" by the Court's ruling. (Kipnes March 6, 2003 email to Crowley, attached as Ex. B-8)

**D.    The Trustee Deposes Crowley's Former Counsel Scott Schreiber**

In order to try to justify the Trustee's apparent about-face in this litigation concerning Crowley's performance at Coram, and to explain his prior agreement to give Crowley millions of dollars and a general release, the Trustee's counsel in March 2007 took the deposition of Crowley's former lawyer, Scott Schreiber. In that deposition, the Trustee's counsel questioned Schreiber about communications with the Trustee, including communications between Schreiber and Bressler, and Schreiber and Kipnes. (Schreiber March 21, 2007 depo. at 54:12-21; 114:16-115:8; 139:12-140:7; 148:18-150:6; 151:24-152:9; 156:9-157:16; 159:10-160:15, attached as Ex. B-9) Moreover, the Trustee's counsel questioned Schreiber extensively about the draft correspondence that had been a focus of the March 2003 hearing.[4] (*Id.* at 73-85) Schreiber testified that during the February and March 2003 time period, he was working closely with Bressler and Kipnes, that they were making tactical decisions in furtherance of the joint objective

---

[4] There were significant skirmishes during the Schreiber deposition about whether the draft correspondence between Crowley and Cerberus were privileged and Mr. Schreiber was instructed by counsel for Mr. Crowley not to answer several questions based upon privilege.

of the Trustee and Crowley to obtain Bankruptcy Court approval for the agreements that

Crowley had entered into with Bressler and the Trustee. (*Id.* at 173:17-24) Indeed, Schreiber

testified that the Trustee's counsel recommended that Schreiber not move the Bankruptcy Court

for an order returning the draft documents as inadvertently produced. (*Id.* at 174:2-175:1)

E.    **The Trustee Focuses on New Allegations at his Deposition**

On March 27 and 28, 2007, Crowley took the Trustee's deposition. When asked to

define his claim in this case, the Trustee's answer bore little resemblance to the allegations

contained in the Complaint, but instead focused heavily on the events of 2002 and 2003

described above. (Adams March 2007 depo. at 20:12-23:18, attached as Ex. B-10) The Trustee

tried to distance himself from the agreement that he and Bressler had entered into with Crowley

in 2002 and 2003, by arguing that he had been lied to in February 2003. (*Id.* at 97:18-99:10)

However, this assertion is flatly contradicted by the Trustee's sworn testimony in March 2003,

well after he claims to have learned that Crowley had lied to him, in which the Trustee describes

Crowley's performance and ethics in glowing terms. Both Bressler and Kipnes authored

documents during this period which undercut and indeed contradict the Trustee's assertion that

he was in any way displeased with Crowley.

It was only during this period of time in late 2006 and early 2007, in which the Trustee

began to focus on the interaction between Crowley's former lawyer and the Trustee and his

lawyers during 2002 and 2003, that Crowley began to focus on the need to take the depositions

of Bressler and Kipnes. Crowley promptly informed Bressler and Kipnes of the need to take

their depositions. (March 21, 2007 letter to Kipnes, attached as Ex. B-11) Bressler and Kipnes

asked that Crowley issue subpoenas for their testimony, which Crowley did on March 28, 2007.

(Ex. B-12) Bressler and Kipnes do not dispute that the subpoenas were properly issued and

served.[5]

---

[5] The subpoenas were issued out of the Eastern District of Pennsylvania because that is the "district where the deposition is to be taken." Fed. R. Civ. P. 45(a)(2)(B). The Eastern District of Pennsylvania is the proper court to hear and decide this motion. *See* Fed. R. Civ. P. 26(c) and 45(c)(3)(A); *Houston Bus. Journal, Inc. v. Office of Comptroller*, 86 F.3d 1208, 1212 (D.C. Cir. 1996). Nevertheless, Crowley has agreed to have the Trustee's motion decided by this Court.

Having opened this avenue of discovery—by putting new events to which his attorneys are witnesses at issue and deposing Schreiber about those events—the Trustee now acts shocked when Crowley seeks to depose Schreiber's counterparts, Kipnes and Bressler. The recent correspondence between counsel on this topic make clear both that Bressler and Kipnes are legitimate percipient witnesses, that Crowley does not seek privileged information, and that Crowley is not involved in any sort of tactical gambit to seek the removal of the Trustee's trial counsel.[6] To the contrary, it is not Crowley's intention to seek the disqualification of Bressler, Kipnes or the Schnader firm. However, the Trustee has selected as his trial counsel persons who are percipient witnesses to issues that he has placed squarely at issue in this litigation. Crowley is entitled to question those witnesses. The Trustee's motion for a protective should be denied.

## V.    ARGUMENT

### A.    The Federal Rules Permit the Discovery of Relevant, Non-Privileged Information from "Any" Witness—including Opposing Counsel

A party may discover any non-privileged information relevant to the claim or defense of any other party. Fed. R. Civ. P. 26(b). "A party may take the testimony of *any* person, including a party, by deposition upon oral examination without leave of court." Fed. R. Civ. P. 30(a) (emphasis added). *See also Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999) ("It is well recognized that the federal rules allow broad and liberal discovery."); *In re Madden*, 151 F.3d 125, 128 (3d Cir. 1998) ("Pretrial discovery is . . . 'accorded a broad and liberal treatment.'" (citing *Hickman v. Taylor*, 329 U.S. 495, 507 (1947)).

The Federal Rules do not distinguish between attorneys and non-attorneys in defining the scope of discovery and the fact that the proposed deponent is an attorney for one of the parties is not enough, by itself, to justify a protective order precluding the deposition. "If an attorney of record possesses relevant, non-privileged information, that information ought to be discoverable, just as it would be if possessed by a party or a non-party to the litigation." *In re Arthur Treacher's Franchise Litigation*, 92 F.R.D. 429, 438 (E.D. Pa. 1981). To the contrary, the fact

---

[6] The correspondence between Elliot R. Peters, Esq. and Wilbur Kipnes, Esq. regarding the Bressler and Kipnes depositions is attached as Ex. B-11.

that a witness is an attorney does not limit his obligations to provide information. "There is no general prohibition against obtaining the deposition of adverse counsel regarding relevant, non-privileged information." *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J. 1990). "'It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error.'" *Treacher*, 92 F.R.D. at 437 (quoting *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979)).[7]

## B. The Trustee Cannot Establish Good Cause Justifying a Protective Order

Under Federal Rule of Civil Procedure 26(c), a court "for good cause shown" may, in certain limited circumstances, enter an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c). The party seeking the protective order bears the burden of establishing the good cause justifying the order. *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). "To overcome the presumption [that discovery is permitted], the party seeking the protective order must show good cause by demonstrating a particular need for protection. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test." *Id.* That harm must be "significant, not a mere trifle." *Id.* Percipient witnesses who happen to be attorneys are not treated differently when considering a request for a protective order. The "preclusion of attorney depositions is to be analyzed with the same standards as any other protective order motion, with the movant bearing the burden of persuasion under Rule 26(c)." *Johnston*, 130 F.R.D. at 352-53.[8]

---

[7] *See also Harding v. Dana Transport, Inc.* 914 F.Supp. 1084, 1102 (D.N.J.1996) (holding that there is no general prohibition against deposing opposing counsel regarding relevant, non-privileged information); *Rainbow Investors Group, Inc. v. Fuji Trucolor Missouri, Inc.*, 168 F.R.D. 34, 36 (1996) (deposition of opposing counsel may be both necessary and appropriate where attorney is fact witness); *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 164 F.R.D. 245, 248 (1995) (attorneys with discoverable facts are not exempt from being a source for discovery); *Fried v. Sungard Recovery Services*, 164 F.R.D. 405, 406 (E.D. Pa. 1996) (an attorney fact witness present during "any of the actual events that gave rise to the litigation," with "first hand information relevant to the action" may be deposed).

[8] The Trustee incorrectly asserts that the "burden rests with the party seeking to depose trial counsel to show a compelling need for the requested deposition." Opening Brief at 11. That is

In the context of a motion to preclude or limit the deposition of an attorney, good cause is measured by (1) whether the information sought is relevant and non-privileged; (2) the availability of the information from other sources; and (3) whether the information is crucial to the preparation of the case. *Johnston*, 130 F.R.D. at 352; *Allergan Inc. v. Pharmacia Corp.*, 2002 WL 1268047 (D. Del. 2002). The Trustee cannot meet his burden of establishing that these factors, individually or together, establish good cause justifying a protective order.

### 1.    The Trustee has not identified specific examples of harm justifying a protective order

The Trustee does not identify <u>any</u> harm, much less specific examples that demonstrate harm that is "significant, not a mere trifle" to justify his request for a protective order. Absent such a showing, the Trustee has not met his burden of establishing good cause. The closest the Trustee comes to identifying harm are unsubstantiated allegations that the deposition requests are "vexatious and ill-motivated." (Opening Brief at 9, D.I. 121) The Trustee, however, does not explain how the depositions would be vexatious or ill-motivated. The fact that Bressler's and Kipnes's testimony regarding their recollection of events may be inconsistent with positions the Trustee is taking in this litigation may be uncomfortable for them, but it is not justification for a protective order.

### 2.    Bressler and Kipnes possess relevant non-privileged information

Bressler and Kipnes do not dispute that they are percipient witnesses to and participants in events that the Trustee claims are relevant to his claim against Crowley. Nor could they. Bressler and Kipnes were the Trustee's representatives with respect to Coram for nearly three years prior to the time the Complaint was filed. In that role, they had numerous conversations with Crowley, Crowley's former counsel, representative of Cerberus, and representatives of the Equity Committee. They authored relevant documents. They provided the Trustee business

---

wrong. "The plaintiffs, as the parties seeking the protective order to preclude their attorneys' depositions, bear the burden under Rule 26(c), Fed. R. Civ. P., of demonstrating good cause to preclude or limit the testimony." *Johnston*, 130 F.R.D. at 352 (citing *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). Indeed, the *Caruso* case, citied by the Trustee, is in accord. *Caruso v. Coleman Co.*, 1994 WL 613668 (E.D. Pa. 1994).

advice. They negotiated with Crowley and his representatives regarding the extension of Crowley's employment. They participated in Crowley's deposition preparation and prepared and presented Crowley for hearing at which the Trustee now claims Crowley was not telling the truth. As such, the Trustee does not argue that Bressler and Kipnes lack relevant, first-hand knowledge of key events.

Rather, the Trustee argues, without citation to legal authority, that "the fact that counsel for the Trustee has engaged in communications on behalf of the Trustee is irrelevant" and that "trial counsel in every litigation has personal knowledge of numerous matters." (Opening Brief at 12, D.I. 121). The Trustee completely misses the point. The issue is whether Bressler and Kipnes are percipient witnesses to the underlying events that the Trustee alleges form the basis for his claim. They are. It is not every case – indeed, it is the rare case – that trial counsel are also a percipient witness to and participants in events that form the basis of the claim and that occurred years before the Complaint was filed. Litigation counsel are normally engaged after the events in dispute have concluded. Indeed, only one case cited by the Trustee considered the propriety of the deposition of an attorney who was a percipient witness to underlying events and in that case the Court concluded that taking the deposition was proper and denied the attorney's motion for a protective order. *See Caruso v. Coleman Co.*, 1994 WL 613668 at * 1 (E.D. Pa. 1994) (holding that attorney who "participated in pre-litigation events which at least may relate to significant issues raised in this litigation" may be deposed). Crowley cannot be precluded from discovering information crucial to the preparation of his case simply because the Trustee has chosen as trial counsel individuals who also are witnesses to and players in the events the Trustee claims are relevant.

Moreover, Crowley is not seeking privileged information. As percipient witnesses, Crowley is seeking Bressler's and Kipnes's testimony about events they witnessed and participated in, discussions they had with Crowley, Schreiber, and others, and non-privileged documents they authored. As such, privilege concerns are non-existent and the Trustee does not contend otherwise. But, while the Trustee does not argue that privilege concerns justify a protective order, the cases he relies upon that conclude an attorney ought not be deposed are

exclusively driven by attorney-client privilege and attorney work product concerns. For instance, in *In re Linerboard Antitrust Litigation*, 237 F.R.D. 373 (E.D. Pa. 2006), the Court denied a request for a deposition because the party seeking the deposition was attempting to "circumvent the work product doctrine through the mechanism of a Rule 30(b)(6) deposition." *Id.* at 376. Similarly, in *Allergan*, this Court granted a motion for a protective order in a patent case in which defendant was seeking to depose plaintiff's trial counsel regarding his work product knowledge to support inequitable conduct claims. *See Allergan*, 2002 WL 1268047 at *1 (holding that an allegation of inequitable conduct "does not vitiate the attorney-client privilege or the protections of the work product doctrine."). Finally, in *Shelton v. Am. Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987), the Eighth Circuit held that an attorney was correct to refuse to answer certain questions at a deposition because "the record demonstrates that the information sought is privileged" and that "the district court erred in holding that the information sought by the plaintiffs was not protected as work product." *Id.* at 1328, 1329.[9]

### 3. The information sought is crucial to the preparation of Crowley's case and is not available from other sources

The information Crowley seeks from Bressler and Kipnes is crucial to Crowley's case, and is not available from other sources. The Trustee has accused Crowley of lying to him regarding his relationship with Cerberus and that the Trustee did not discover the untruths until the hearing on the Trustee's motion to extend Crowley's employment. Obviously, Crowley denies that he in any way lied to or misled the Trustee. In order to oppose the Trustee's new accusations, Crowley has deposed the Trustee on the events and while the Trustee's testimony is inconsistent with much of his 2003 testimony, but Crowley is also entitled to discover testimony that contradicts or supplements the Trustee's testimony in this time period and that relates to the Trustee's new allegations against Crowley. Bressler and Kipnes were the Trustee's agents their knowledge and statements are admissible as party admissions. Indeed, since they (along with other attorneys at Schnader Harrison) appear to be the Trustee's only agents with first-hand

---

[9] *Smith ex rel. Smith v. United States*, 193 F.R.D. 201 (D.Del. 2000) and *Cole v. Mousavi*, 1990 WL 63945 (Del. Sup. Ct. 1990), the only other cases cited by the Trustee, are likewise unhelpful. Both rely on *Shelton*, which, as described above, is a privilege case.

knowledge of the facts, they are the only sources for the information that Crowley needs for the preparation of his case.

**C.    Crowley did not Delay in Seeking the Bressler and Kipnes Depositions**

The Trustee makes the specious argument that Crowley delayed in seeking these depositions and that this delay justifies a protective order. Not only does the Trustee not cite a single case to support the legal proposition that delay without more might justify a protective order, but he is flat incorrect to suggest that Crowley delayed in seeking the depositions.[10] The Complaint contains no allegations regarding events occurring in 2002-2003. Until the Trustee served his interrogatory responses at the end of December 2006, and subsequently deposed Schreiber in March 2007, Crowley had no reason to believe that any events from the 2002-2003 timeframe were part of the Trustee's case. The preeminence of the 2002-2003 timeframe from the Trustee's perspective was not revealed until his deposition at the end of March where he testified at length about alleged improper conduct by Crowley in 2002 and 2003. When this new focus of the Trustee's case became evident, Crowley expeditiously moved to discover information from two individuals who participated in the events. Crowley did not delay.

**D.    Concerns Regarding the Scope of a Deposition should be Handled with Appropriate Objections and Instructions Not to Answer, Not with a Protective Order Barring the Deposition**

Even were the Court concerned about the scope of the depositions, the proper way to address the issue is to lodge the appropriate objections at the time of the depositions, not to preclude the depositions entirely. "Rather than permitting the mere risk of attorney misconduct to bar this discovery, the court will entrust to counsel their obligations to conduct this deposition fairly and quickly. If questioning is seen as improper or harassing, objections can be made and ruled on." *Johnston*, 130 F.R.D. at 354. If the deposition "delve[s] into privileged areas then

---

[10] The only case the Trustee cites for this proposition, *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1360-62 (11th Cir. 2002), does not support the Trustee. In *Chrysler* the Eleventh Circuit held that without agreement, a party could not take a depositions after the discovery cutoff. The court made its ruling based not on any concern about prejudicial delay but, rather, on an attempt to make an end-run around the discovery cutoff. Here, the Trustee does not claim that the discovery cutoff precludes these deposition since they were noticed prior to the cutoff, and, regardless, the parties have agreed among themselves to take certain, limited depositions after the fact discovery deadline.

[Adams'] recourse will be to object and refuse to answer. Such an objection and refusal to answer should of course be predicated upon a sufficient demonstration that the matter inquired into is privileged." *Treacher*, 92 F.R.D. at 437-38. The Court should not "rule in a vacuum, prior to the deposition, that every question to be asked will seek to elicit privileged information." *Id.* at 438.

## VI.    CONCLUSION

The Trustee, not Crowley, put events in 2002 and 2003 at issue and subpoenaed Crowley's former counsel for testimony. Having done so, Crowley is entitled to discover non-privileged information related to the Trustee's new accusations. For these and the reasons stated above, Crowley respectfully requests that Court deny the Trustee's motion for a protective order.

Dated:  April 30, 2007                              CONNOLLY BOVE LODGE & HUTZ LLP

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA  94111
(415) 391-5400

Attorneys for Defendant
DANIEL D. CROWLEY