# EXHIBIT B-3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, as Chapter 11 Trustee of          :    Case No. 04-1565(SLR)
the Bankruptcy Estates of Coram Healthcare        :    (Jointly Administered)
Corp., a Delaware Corporation, and Coram,         :
Inc., a Delaware Corporation,                     :
                                                  :
                    Plaintiff,                    :
                                                  :
v.                                                :
                                                  :
DANIEL D. CROWLEY,                                :
                                                  :
                    Defendant.                    :

---

THE CHAPTER 11 TRUSTEE'S ANSWERS TO
DEFENDANT DANIEL D. CROWLEY'S FIRST SET OF
INTERROGATORIES TO PLAINTIFF ARLIN M. ADAMS

Plaintiff Arlin M. Adams, the Chapter 11 Trustee (the "Trustee") of the

Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc. (collectively, "Coram"), hereby

responds to Defendant Daniel D. Crowley's ("Crowley") First Set of Interrogatories to Plaintiff

Arlin M. Adams, as follows:

## GENERAL OBJECTIONS

The Trustee asserts the following general objections, all of which are incorporated

in his specific responses:

1.      The Trustee objects to each interrogatory, definition and instruction, to the

extent that it seeks to impose an obligation or burden beyond that required by the Federal Rules

of Civil Procedure.

CHDATA 38155_1

2.     The Trustee objects to each interrogatory to the extent that it seeks information subject to the attorney client privilege, or the work product doctrine, or any other privilege or doctrine which precludes discovery.

3.     The Trustee objects to each interrogatory to the extent that responding would impose an undue burden on the Trustee.

4.     The Trustee objects to each interrogatory to the extent that the information requested is equally available to Crowley.

5.     The Trustee objects to each interrogatory to the extent it seeks information not relevant to this litigation and not reasonably calculated to lead to the discovery of admissible evidence.

## PRESERVATION OF RIGHTS

The Trustee's responses do not waive and do not intend to waive but, on the contrary, preserve and intend to preserve:

1.     All objections as to competency, relevancy, materiality, privilege and admissibility for any purpose in any subsequent proceeding or the trial of this or any other actions;

2.     The right to object on any ground to the use of any of these responses, or the subject matter thereof, in any subsequent proceeding or trial of this or any other actions;

3.     The right to object at any time to a demand for further responses to these or any other discovery requests involving or relating to the subject matter of these interrogatories; and

4.     The right at any time to revise, correct, supplement, clarify or amend the answers and responses set forth herein.

2

CHDATA 38155_1

## RESPONSES TO INTERROGATORIES

1.      Identify and describe each act or omission by Crowley that forms the basis for your allegations that Crowley had a conflict of interest with Coram.

**SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 1 on the grounds that it contains undefined terms, is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe every act Crowley undertook or failed to undertake over a several-year period that underlies the Trustee's allegations that he had a conflict of interest.  Subject to these objections, the Trustee will provide a combined response to Interrogatories 1 through 4.

2.      Identify and describe each act or omission by Crowley that forms the basis for your allegations that Crowley breached his duty to Coram to act in good faith.

**SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 2 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe every act Crowley undertook or failed to undertake over a several-year period that underlies the Trustee's allegations that he breached his duty to Coram to act in good faith.  Subject to these objections, the Trustee will provide a combined response to Interrogatories 1 through 4.

3.      Identify and describe each act or omission by Crowley that forms the basis for your allegations that Crowley breached his duty to Coram to act with due care.

**SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 3 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to

3

identify and describe every act Crowley undertook or failed to undertake over a several-year
period that underlies the Trustee's allegations that he breached his duty to Coram to act with due
care. Subject to these objections, the Trustee will provide a combined response to Interrogatories
1 through 4.

        4.     Identify and describe each act or omission by Crowley that forms the basis
for your allegations that Crowley breached his duty of loyalty to Coram.

        **SPECIFIC OBJECTIONS:** The Trustee objects to Interrogatory No. 4
on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to
identify and describe every act Crowley undertook or failed to undertake over a several-year
period that underlies the Trustee's allegations that he had a breached his duty of loyalty to
Coram. Subject to these objections, the Trustee will provide a combined response to
Interrogatories 1 through 4.

        **COMBINED RESPONSE TO INTERROGATORIES 1 THROUGH 4:**

        Subject to and without waiving the foregoing objections, the Trustee responds to
Interrogatories 1 through 4 by setting forth this summary of facts, which form the basis of his
allegations that Crowley had a conflict of interest and breached the triad of fiduciary duties that
he owed to Coram as an officer and director:

        From approximately 1997 on, Cerberus Partners, L.P. ("Cerberus"), together with
Goldman Sachs Credit Partners L.P., and Wells Fargo Foothill (collectively, the "Noteholders"),
owned substantially all of Coram's debt. Cerberus is a major investor in the debt of numerous
distressed companies; it alone held approximately 36% of Coram's debt. The chairman of

4

Cerberus, Stephen Feinberg ("Feinberg"), sat on Coram's Board from 1998 until July 2000, shortly before Coram filed for bankruptcy. Cerberus maintained a "bench" of CEO consultants, who were available to work for Cerberus with troubled companies on a project-by-project basis.

In early 1999, Cerberus retained Crowley as a turnaround consultant. In July 1999, Crowley and Cerberus entered into an oral agreement under which Crowley agreed to work exclusively for Cerberus for three years at a salary of $80,000 per month plus expenses, with the possibility of substantial bonuses.

In August 1999, after Crowley and Cerberus had entered into their oral agreement Feinberg recommended to Coram's Board of Directors (the "Board") that it hire Crowley as a consultant to work with Coram's newly-elevated CEO, Richard Smith ("Smith"). Feinberg disclosed to the directors that Crowley had a relationship with Cerberus, but provided no information about that relationship.

After Smith left Coram in October 1999, Crowley wrote to Coram Chairman Donald Amaral ("Amaral"), on October 26, 1999. In that letter, Crowley stated that he and Smith had a "six(6) month crisis management contract in place," and that he "would like to help you [Amaral] with this project and begin the restructuring process." Crowley and Amaral began negotiations on an employment agreement no later than early November 1999.

At the same time as he was negotiating with Amaral to be Coram's CEO, Crowley sent a "Personal & Confidential" letter dated November 12, 1999 to Feinberg stating that "[y]ou [Feinberg] have asked me to take over the Coram operations" and requesting additional compensation from Cerberus to induce him to become CEO of Coram.

5

CHDATA 38155_1

The Noteholders offered Coram a six-month interest accrual holiday if Crowley was hired as CEO. On November 15, 1999, Amaral and the Noteholders agreed on the terms of the interest forbearance agreement.

On November 17, 1999, the Board approved a three-year employment agreement with Crowley, which he signed the next day (the "Crowley/Coram Employment Agreement"). The Crowley/Coram Employment Agreement provided for a base salary of $650,000, benefits, potential bonuses of between $390,000 and $1,950,000 depending on Coram's EBITDA, a minimum 24-month severance period, options to purchase one million shares of Coram stock at then market rates, and an acquisition bonus upon change in control.

The day after he signed the Crowley/Coram Employment Agreement, Crowley executed a written employment agreement with Cerberus, effective August 1, 1999, which memorialized the terms of their July oral agreement (the "Crowley/Cerberus Employment Agreement"). The Crowley/Cerberus Employment Agreement required Crowley to devote "his entire business time, attention, skill and energy exclusively to the business of [Cerberus]" by performing duties to be assigned by Feinberg. The Crowley/Cerberus Employment Agreement also provided that Cerberus could terminate Crowley for cause if Crowley did not follow Cerberus' reasonable instructions. Neither Crowley nor Feinberg disclosed to the Board the existence or terms of the Crowley/Cerberus Employment Agreement.

Coram's corporate policy provided that actual conflicts of interest must be avoided and that any action creating a potential conflict of interest must be disclosed and approved in advance. Crowley failed to seek Board approval of his employment contract with Cerberus.

6

Crowley signed the management letter to Coram's outside auditors for the year ending December 31, 1999, in which he stated that "[t]here are no instances where any officer or employee of [Coram] has an interest in a company, with which [Coram] does business that would be considered a 'conflict of interest,' that has not been disclosed or waived. Such an interest would be contrary to [Coram] policy."

Coram retained Crowley's wholly-owned consulting company, Dynamic ("Dynamic") Health Care Solutions, L.L.C. ("Dynamic"), to act as a consultant to Coram, which paid fees to Dynamic in excess of $1 million.

On February 28, 2000, Crowley wrote to the Board and demanded additional compensation from Coram, claiming that he was working 19-hour days, and that "Coram will take longer, involve more, and will need me to stay 'on task' for much longer than we envisioned when I said 'Yes.'" Crowley did not disclose to the Board that while he was allegedly working 19-hour days for Coram, Cerberus was paying him $80,000 per month.

In response to Crowley's demand for additional compensation from Coram, Feinberg and Crowley negotiated an amendment to the Crowley/Coram Employment Agreement with Coram, which was executed as of April 6, 2000. The amendment provided a new bonus structure that was far greater than the maximum $1.9 million bonus for which Crowley was eligible under the employment agreement that he had signed just four months earlier. Under the new arrangement, Crowley could claim a bonus of up to 25% of the amount by which Coram's EBITDA for 2000 exceeded $14 million and an additional $5 million bonus if EBITDA exceeded $35 million.

CHDATA 38155_1

At the time Crowley and Feinberg were negotiating the amendment to the Crowley/Coram Employment Agreement, Crowley anticipated that Coram would be restructured by filing a bankruptcy petition under Chapter 11 with a proposed plan of reorganization that would eliminate the public shareholders without any payment to them. Nevertheless, between November 30, 1999 and July 31, 2000, Crowley caused Coram to pay the Noteholders approximately $60 million. These payments included: (a) much of the proceeds from Coram's July 2000 sale of its specialty pharmacy division, Coram Prescription Services ("CPS") (nearly $40 million); and (b) an additional $6.3 million payment that Crowley made to the Noteholders just three weeks before Coram declared bankruptcy.

Although the CPS division was losing a small amount of money, it had excellent long-term profit potential. CPS had been valued in excess of $100 million by Coram's investment bankers, but was sold for approximately $40 million.

On August 8, 2000, Coram filed a Chapter 11 petition in the U.S. Bankruptcy Court for the District of Delaware, together with a proposed plan of reorganization (the "First Plan"). The First Plan provided for the cancellation of all of the shareholders' interests and for the issuance of all of the new Coram stock to the Noteholders. Coram's other unsecured creditors would receive $2 million and Coram's shareholders would receive nothing.

On October 18, 2000, the United States Trustee appointed an Official Committee of Equity Security Holders (the "Equity Committee") to represent the interests of Coram's common shareholders. The Equity Committee obtained the Crowley/Cerberus Employment Agreement and other documents in discovery in connection with the First Plan, which the Equity Committee opposed.

8

CHDATA 38155_1

During the confirmation hearing, Crowley testified that the Crowley/Cerberus Employment Agreement -- which provided for payments significantly greater than did his agreement with Coram -- had nothing to do with Coram. The Court did not find Crowley's position credible. Rather, on December 21, 2000, the Bankruptcy Court denied confirmation, holding that Coram had not proposed its reorganization plan in good faith as required under the Bankruptcy Code. In its oral ruling, the Bankruptcy Court explained that it could not confirm the plan because Crowley "had an actual conflict of interest" by virtue of his contractual relationship with Cerberus. Op. 12/21/00, at 89. The Bankruptcy Court found that that actual conflict of interest "tainted the debtors' restructuring of its debt, the debtors' negotiations towards a plan, even the debtors' restructuring of its operations." *Id.* at 88. As a result of Crowley's relationship with Cerberus, Coram did not emerge from bankruptcy in December 2000.

Despite the Bankruptcy Court's ruling, Crowley did not terminate his relationship with Cerberus. In fact, Crowley continued to be paid $80,000 per month by Cerberus throughout 2001.

The Board formed a Special Committee, which retained Harrison J. Goldin Associates, L.L.C. ("Goldin"), as a restructuring advisor. In a report of its investigation, Goldin concluded that Crowley should have disclosed the full extent of his employment agreement with Cerberus and that his failure to do so was a breach of his fiduciary duties to Coram. Goldin also concluded that Crowley had advanced Cerberus' interests at Coram's expense by making cash payments to the Noteholders prior to Coram's filing for bankruptcy. In addition, Goldin determined that, as of the date of his report, Crowley's conflict had caused Coram to incur at least $12 to $15 million in business losses and professional fees in the bankruptcy proceedings.

CHDATA 38155_1

Coram based its second proposed plan of reorganization (the "Second Plan") on Goldin's report. The Second Plan again provided for the cancellation of all shareholders' interests and for the issuance of new Coram stock to the Noteholders, including Cerberus. Coram's shareholders would receive $10 million if they voted to approve the plan. Coram's other unsecured creditors would receive $3 million, amounting to less than 40% of their claims. In addition, the Second Plan provided that Crowley's compensation be reduced by $7.5 million as recommended by Goldin.

During the confirmation hearing on the Second Plan, Crowley testified that Cerberus was not paying him for his work at Coram, but instead for his work on non-Coram matters. Again, the Bankruptcy Court rejected Crowley's testimony as not credible. Op. 12/21/01, at 16-17.

On December 21, 2001, the Bankruptcy Court issued a written opinion denying confirmation. The Bankruptcy Court concluded that Crowley's agreement with Cerberus continued to present an actual conflict of interest. As the Bankruptcy Court put it, "[n]othing, in fact, has changed since the first confirmation hearing." Op.12/21/01, at 13. The Bankruptcy Court explained that:

> Crowley's actual conflict of interest goes beyond the mere appearance of impropriety. Crowley cannot serve the interests of both the Debtors and a large creditor, Cerberus. Under the Consulting Agreement, Cerberus has the discretion to fire Crowley if he fails to follow its instructions, resulting in the loss of $1 million per year in compensation to Crowley. That control over Crowley, and indirectly the Debtors, is simply not proper.

CHDATA 38155_1

Op. 12/21/01, at 15. The Bankruptcy Court concluded that "the conflict in this case transcends every single thing Crowley does on behalf of the Debtors." Op. 12/21/01, at 24. As a result of Crowley's relationship with Cerberus, Coram did not emerge from bankruptcy in December 2001.

Following the rejection of the Second Plan, the Bankruptcy Court entered an order appointing the plaintiff Arlin M. Adams as Coram's Chapter 11 Trustee. Shortly after his appointment, the Trustee reviewed the Bankruptcy Court's two opinions denying confirmation of each of Coram's proposed plans of reorganization. As a result, the Trustee required that Crowley have no continuing conflict of interest and that he not receive any further compensation from Cerberus. The Trustee elected to continue Crowley's employment with Coram only after Crowley explicitly represented to the Trustee that he that he was no longer receiving any compensation from Cerberus.

Crowley's employment agreement with Coram expired on November 26, 2002. Because the Trustee was concerned that terminating Crowley could possibly lead to substantial departures of key employees, thereby endangering Coram's ability to promptly reorganize, the Trustee filed a motion to extend his employment for a limited transition period (as well as a motion to reject his employment agreement). The Equity Committee opposed the Trustee's motion and filed a motion to immediately terminate Crowley's employment.

In the course of discovery on the motions, Crowley produced documents that made clear that his prior representations to the Trustee were false. These documents showed that Crowley was in fact continuing to ask Cerberus for millions of dollars to be paid after the confirmation, when neither he nor Coram would be under the jurisdiction of the Bankruptcy

CHDATA 38155_1

Court.  Specifically, an insert to a draft letter to Feinberg dated May 2, 2002 states: "I expect that you'll honor the commitment you made to me over dinner:  after Coram's plan is confirmed or its assets sold, I'll be reinstated with Cerberus and receive $5,000,000 from Cerberus.  Also, Cerberus will indemnify me for all of my legal fees, plus pay me the difference between what I ultimately receive from Coram by way of bonuses, and $11,200,000."  In another part of the letter, Crowley stated that he "didn't have to recite the answers that [Coram's bankruptcy lawyer] gave [him] to say in Court."

The Bankruptcy Court denied the Trustee's motion to extend Crowley's employment and rejected Crowley's testimony, stating that "I do not believe he is honest."  Tr. 3/3/03, at 195. Referring to the draft letter from Crowley to Feinberg, the Bankruptcy Court concluded that the letter "after the appointment of the Trustee, continue[s] to show what I believe is a continuation of Mr. Crowley's continued efforts to continue to get reimbursement from Cerberus for efforts undertaken in this case." *Id.* at 196.  Crowley resigned from Coram effective March 31, 2003.

The Trustee thereafter proposed a reorganization plan, as did the Equity Committee.   Following extensive discovery and a lengthy confirmation hearing, in October 2004, the Bankruptcy Court confirmed the Trustee's Plan and rejected the Equity Committee's Plan. *See In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del 2004).

The Trustee reserves his right to amend or supplement his response as discovery continues.

12                                                CHDATA 38155_1

5.    Identify and describe any harm or damage to Coram caused by each act or omission by Crowley identified in response to Interrogatory No. 1, including but not limited to any valuation of any such harm or damage.

**SPECIFIC OBJECTIONS:**  The Trustee objects to Interrogatory No. 5 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe the harm or damage resulting from every act Crowley undertook or failed to undertake over a several-year period.  Subject to these objections, the Trustee will provide a combined response to Interrogatories 5 through 8.

6.    Identify and describe any harm or damage to Coram caused by each act or omission by Crowley identified in response to Interrogatory No. 2 including but not limited to any valuation of any such harm or damage.

**SPECIFIC OBJECTIONS:**  The Trustee objects to Interrogatory No. 6 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe the harm or damage resulting from every act Crowley undertook or failed to undertake over a several-year period.  Subject to these objections, the Trustee will provide a combined response to Interrogatories 5 through 8.

7.    Identify and describe any harm or damage to Coram caused by each act or omission by Crowley identified in response to Interrogatory No. 3 including but not limited to any valuation of any such harm or damage.

**SPECIFIC OBJECTIONS:**  The Trustee objects to Interrogatory No. 7 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to

13

CHDATA 38155_1

identify and describe the harm or damage resulting from every act Crowley undertook or failed to undertake over a several-year period. Subject to these objections, the Trustee will provide a combined response to Interrogatories 5 through 8.

8.    Identify and describe any harm or damage to Coram caused by each act or omission by Crowley identified in response to Interrogatory No. 4, including but not limited to any valuation of any such harm or damage.

SPECIFIC OBJECTIONS: The Trustee objects to Interrogatory No. 8 on the grounds that it is overly broad, vague and ambiguous, and it is overly burdensome to identify and describe the harm or damage resulting from every act Crowley undertook or failed to undertake over a several-year period.

COMBINED RESPONSE TO INTERROGATORIES 1 THROUGH 8:

Subject to and without waiving the foregoing objections, the Trustee states that Coram's emergence from bankruptcy was delayed as a result of Crowley's conflict of interest and his breaches of his fiduciary duties, causing Coram to suffer damages. Coram incurred reorganization costs in excess of $36 million directly attributable to the delay in Coram's emergence from bankruptcy. Coram also sustained business losses as a result of remaining in bankruptcy. The calculation of such damages will be provided in expert report(s), which will be served in accordance with the current scheduling order, unless amended.

The sale of CPS deprived Coram of the increase in value CPS enjoyed following the sale. CPS was sold to a management-led buy out group for $40 million and was sold three years later for $335 million.

14    CHDATA 38155_1

Coram is also entitled to disgorgement of the compensation that it paid Crowley while he served as a conflicted CEO.

The Trustee reserves his right to amend or supplement his answer to this interrogatory as discovery continues.

As to objections:

Dated:  December 20, 2006

SCHNADER HARRISON SEGAL
& LEWIS LLP

By:  /s/ Richard A. Barkasy
     Richard A. Barkasy (#4683)
     Michael J. Barrie (#4684)
     824 Market Street Mall, Suite 1001
     Wilmington, DE 19801
     (302) 888-4554 (telephone)
     (302) 888-1696 (facsimile)

     -and-

     Wilbur L. Kipnes
     Barry E. Bressler
     1600 Market Street, Suite 3600
     Philadelphia, PA  19103-7286
     (215) 751-2000 (telephone)
     (215) 751-2205 (facsimile)

     Counsel to Arlin M. Adams,
     Chapter 11 Trustee

CHDATA 38155_1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARLIN M. ADAMS, as Chapter 11 Trustee of the Bankruptcy Estates of Coram Healthcare Corp., a Delaware Corporation, and Coram, Inc., a Delaware Corporation, | : Case No. 04-1565(SLR)<br>: (Jointly Administered)<br>:<br>: |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| DANIEL D. CROWLEY, | : |
| | : |
| Defendant. | : |

## CERTIFICATE OF SERVICE

I, Michael J. Barrie, certify that I am not less than 18 years of age and that service of the **Chapter 11 Trustee's Answers to Defendant Daniel D. Crowley's First Set of Interrogatories to Plaintiff Arlin M. Adams,** was made on December 20, 2006 upon the persons listed below via Electronic Mail and United States First Class Mail.

I certify the foregoing to be true and correct under penalty of perjury.

/s/ Michael J. Barrie
Michael J. Barrie

Dated: December 20, 2006

### Parties Served:

Jeffrey C. Wisler, Esquire
Christina M. Thompson, Esquire
1007 N. Orange St., P.O. Box 2207
Wilmington, DE 19899
Email: jwisler@cblh.com
Email: cthompson@cblh.com

Elliot R. Peters, Esquire
Garrett A. Lynch, Esquire
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
Email: epeters@kvn.com
Email: glynch@kvn.com

16

CHDATA 38155_1

## **CERTIFICATION**

I hereby certify that the facts set forth in the foregoing interrogatory answers are true and correct to the best of my knowledge, information and belief.

_Arlin M. Adams_
Arlin M. Adams, Ch. 11 Trustee

Dated:  December 20, 2006

17