# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM, INC., a Delaware Corporation,<br><br>                    Plaintiff,<br><br>    v.<br><br>DANIEL D. CROWLEY,<br><br>                    Defendant. | Case No. 04-1565 (SLR) |

---

## ANSWERING BRIEF OF DEFENDANT DANIEL CROWLEY IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY OR, IN THE ALTERNATIVE, FOR THE COURT TO DEEM CERTAIN FACTS ESTABLISHED

---

Dated: May 4, 2007

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

*Attorneys for Defendant DANIEL D. CROWLEY*

## TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS .................................................................1

II.    SUMMARY OF ARGUMENT .................................................................................1

III.    CONCISE STATEMENT OF FACTS .......................................................................3

    A.    Crowley Was Not A Party to the Bankruptcy Proceedings .....................................3

    B.    Crowley Was Not Represented in Coram's Bankruptcy Proceedings....................4

    C.    Crowley's Alleged Breach of Fiduciary Duty Was Not Litigated in the Bankruptcy Proceedings ...........................................................................4

IV.    ARGUMENT....................................................................................................6

    A.    Standard of Review................................................................................6

    B.    The Trustee Has Failed to Meet His Burden of Establishing that Collateral Estoppel Applies .................................................................7

        1.    Crowley was neither a party to the bankruptcy proceedings nor in privity with a party...............................................................8

        2.    The Bankruptcy Court's findings were made in deciding a different issue under a different legal standard with a different burden of proof ..............................................................12

        3.    Crowley's alleged breach of fiduciary duty was not "Actually Litigated" before the Bankruptcy Court ....................................15

        4.    Crowley lacked a full and fair opportunity to litigate, such that application of collateral estoppel would be inequitable and unfair....................................................................................17

            a.    Crowley was not a party or creditor and therefore had no right to appear in the bankruptcy proceedings..........................17

            b.    Crowley did not have an incentive to appear in the bankruptcy proceedings ..............................................18

        5.    The Bankruptcy Court did not issue a final judgment and Crowley's alleged breach of fiduciary duty was not essential to its rulings..............................................................................21

    C.    The Trustee is Not Entitled to Summary Judgment on his Alternative Motion that Certain Facts be Deemed Established because Each Fact is Substantially Controverted..............................................................21

V.    CONCLUSION.................................................................................................25

# TABLE OF AUTHORITIES

<u>Page(s)</u>

## FEDERAL CASES

*Allen v. McCurry,*
    449 U.S. 90 (1980)..................................................................................17

*Amtrak v. Pa. Public Utility Committee,*
    288 F.3d 519 (3d Cir. 2002) ...........................................................7, 18, 21

*Board of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc.*
    *Pension Fund v. Centra,*
    983 F.2d 495 (3d Cir. 1992) .....................................................................12

*Berner v. British Commonwealth Pac. Airlines, Ltd.,*
    346 F.2d 532 (2d Cir. 1965) .....................................................................19

*In re Braen,*
    900 F.2d 621 (3d Cir. 1990) .....................................................................12

*Bruszewski v. United States,*
    181 F.2d 419 (3d Cir. 1950) .....................................................................10

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)...................................................................................6

*Copeland v. Merrill Lynch & Co.,*
    47 F.3d 1415 (5th Cir. 1995) ....................................................................14

*In re Coram Healthcare Corp.,*
    271 B.R. 228 (Bkrtcy.D.Del. 2001) .....................................................6, 13

*Countryside Oil Co., Inc. v. Travelers Insurance Co.,*
    928 F. Supp. 474 (D.N.J. 1995) .................................................................6

*Dici v. Com. of Pa.,*
    91 F.3d at 542 (3d Cir. 1996)..................................................................6, 7

*Diplomat Electric Inc. v. Westinghouse Electric Supply Co.,*
    430 F.2d 38 (5th Cir. 1970) ......................................................................15

*Dudley v. Smith,*
    504 F.2d 979 (5th Cir. 1974) ..................................................................9, 10

*In re Graham,*
    973 F.2d 1089 (1992)................................................................................12

*Gruntal & Co. v. Steinberg,*
    854 F. Supp. 324 (D.N.J. 1994) ....................................................15, 16, 17

*Gulf Island-IV v. Blue Streak-Gulf Is Ops.,*
    24 F.3d 743 (5th Cir. 1994) ........................................................................9

*Hardy v. Johns-Manville Corp.,*
    681 F.2d 334 (5th Cir. 1982) ....................................................................17

*In re Heritage Hotel P'Ship I,*
    160 B.R. 374 (BA.P. 9th Cir. 1993) ..........................................................10

*Herrick v. Garvey,*
    298 F.3d 1184 (10th Cir. 2002) .................................................................22

## TABLE OF AUTHORITIES
### (cont'd)

Page(s)

Horwitz v. Alloy Automobile Co.,
992 F.2d 100 (7th Cir. 1993) ..................................................................................10

James Talcott Inc. v. Allahabad Bank, Ltd.,
444 F.2d 451 (5th Cir. 1971) ..................................................................................19

Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.,
458 F.3d 244 (3d Cir. 2006) ...........................................................................7, 15, 17

Kaiser Industrial Corp. v. Jones & Laughlin Steel Corp.,
515 F.2d 964 (3d Cir. 1975) ....................................................................................19

Lannett Co. v. Gratz,
1994 WL. 470344 (E.D. Pa. Aug. 30, 1994) ...........................................................19

Levin v. Tiber Holding Corp.,
277 F.3d 243 (2d Cir. 2001) ......................................................................................9

Liberty Mutual Insurance Co. v. Rotches Pork Packers, Inc.,
969 F.2d 1384 (2d Cir. 1992) ...................................................................................22

Looney v. City of Wilmington,
723 F. Supp. 1025 (D. Del. 1989)..............................................................................20

Nipper v. Snipes,
7 F.3d 415 (4th Cir. 1993) .................................................................................. 2, 22

O'Shea v. Amoco Oil Co.,
886 F.2d 584 (3d Cir. 1989) ...............................................................................14, 15

Otherson v. INS,
711 F.2d 267 (D.C. Cir. 1983)...................................................................................18

Pamintuan v. Nanticoke Mem. Hospital,
192 F.3d 378 (3rd Cir. 1999) ......................................................................................6

Parklane Hosiery Co. v. Shore,
439 U.S. 322 (1979)............................................................................................19, 20

Philbin v. Trans Union Corp.,
101 F.3d 957 (3d Cir. 1996) .....................................................................................21

Pollard v. Cockrell,
578 F.2d 1002 (5th Cir. 1978) ..................................................................................10

Raytech Corp. v. White,
54 F.3d 187 (3d Cir. 1995) .................................................................................12, 20

U.S. Steel, LLC v. Tieco, Inc.,
261 F.3d 1275 (11th Cir. 2001) .................................................................................22

Stonington Partners, Inc. v. Official Committee of Unsecured Creditors,
308 B.R. 672 (D. Del. 2004)......................................................................................13

Thompson v. Glenmede Trust Co.,
No. CIV. A. 92-5233, 1996 WL. 529693 (B.D. Pa. Sep. 17, 1996)................2, 21, 22

In re Teltronics,
762 F.2d 185 (2d Cir. 1985) .....................................................................................10

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page(s)**

*United States v. Schnick,*
    66 B.R. 491 (Bank. W.D. Mo. 1986)........................................................................10

*Witkowski v. Melchy,*
    173 F.3d 192 (3rd Cir. 1999) .................................................................................7

*Zenith Radio Corp. v. Hazeltine Research, Inc.,*
    395 U.S. 100 (1969)...............................................................................................9

*Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,*
    505 F. Supp. 1125 (B.D. Pa. 1980)........................................................................22

*Zhang v. Haven-Scott Associates, Inc.,*
    1996 WL. 355344 (E.D. Pa. June 21, 1996).........................................................15

**STATE CASES**

*Cinerama, Inc. v. Technicolor, Inc.,*
    663 A.2d 1156 (Del. 1995) ...................................................................................13

**FEDERAL STATUTES**

11 U.S.C. § 101(10) ......................................................................................................8

11 U.S.C. § 1109(b) ......................................................................................................9

11 U.S.C. § 1128(b) ......................................................................................................17

11 U.S.C. § 1129(a)(3)...................................................................................................15

11 U.S.C. 1129(a) ........................................................................................................13

Fed. R. Civ. P. 56(c) .....................................................................................................6

Fed. R. Civ. P. 56(d) .............................................................................................2, 21, 23

Fed. R. Evid. 901 .........................................................................................................18

**STATE STATUTES**

8 Del. Code § 144 .........................................................................................................13

**OTHER AUTHORITIES**

1 Collier Bankr. Manual (3d ed.)....................................................................................8

Miller & Cooper, Federal Practice & Procedure, § 4460 ..............................................9

18 Moore's Fed. Practice § 132.02[2][a]........................................................................12

## I.    NATURE AND STAGE OF PROCEEDINGS

The Bankruptcy Trustee for Coram Healthcare Corp. and Coram, Inc. (collectively, "Coram") has brought this action against Coram's former Chairman and Chief Executive Officer Daniel Crowley ("Crowley"), alleging one cause of action for breach of fiduciary duty. On April 17, 2007, Crowley moved for summary judgment on various grounds. Also on April 17, 2007, the Trustee moved for summary judgment, arguing that Bankruptcy Court rulings denying confirmation of Coram's First and Second Plans of Reorganization operate as collateral estoppel against Crowley in this case.

Coram filed for bankruptcy in August 2000. Coram's First and Second Proposed Plans of Reorganization were rejected by the Bankruptcy Court after hearings in December 2000 and 2001, respectively. On each occasion, the Bankruptcy Court ruled that the plans had not been proposed in "good faith" as required by and interpreted under the United States Bankruptcy Code. Crowley was not a party to either confirmation hearing. The issues litigated in those federal bankruptcy proceedings were different than the issues presented by this action. As discussed more fully below, for myriad reasons, the Trustee's motion for summary judgment lacks merit and should be denied.

## II.    SUMMARY OF ARGUMENT

The Trustee's motion for summary judgment should be denied for any of the following reasons:

1.    Crowley was not a party to or in privity with a party to the confirmation hearings which gave rise to the Bankruptcy Court's confirmation rulings. Crowley had neither an opportunity nor a motive to litigate in the Bankruptcy Court the issues presented in this litigation. Under well-settled law, collateral estoppel only applies where the party against whom collateral estoppel is being asserted was a party, or in privity with a party, to the prior adjudication, and who had a full and fair opportunity to litigate the prior issues. The Trustee cannot meet that test here.

2.    The confirmation hearings in the Coram bankruptcy litigation required Coram to establish, under United States bankruptcy law, that its proposed Bankruptcy Plan had been

proposed in good faith and should be confirmed.  The Trustee here alleges one cause of action for breach of fiduciary duty against Crowley, based on Delaware common law.  The Bankruptcy Court made its determination pursuant to legal standards, criteria, and a burden of proof that are all distinct from those which apply to this proceeding.  However, collateral estoppel only bars litigation where the issue to be litigated in the subsequent action is identical to the issues litigated in the prior action, and that the issues at stake in the subsequent litigation were actually litigated previously.  The Trustee cannot satisfy that legal test here.

    3.    The Trustee's motion is improper in that it relies on inadmissible evidence, makes factual assertions unsupported by any evidence whatsoever, and relies on factual averments which are hotly contested, and therefore not subject to resolution via summary judgment.  The Trustee cites to no evidence in the record to support many of the predicate facts necessary to establish collateral estoppel.  For example, the Trustee claims that Crowley was a party to the bankruptcy confirmation proceedings, but does not cite to a single piece of evidence to support that proposition.  While the true reason is that there is no such evidence, the Trustee's failure to even cite to evidence for this proposition is fatal to his motion.  Equally troubling, where the Trustee does purport to rely on evidence, the evidence to which he cites is inadmissible.  For example, factual statements in a prior Court's ruling are inadmissible hearsay.  Nonetheless, the Trustee's motion explicitly "relies only upon facts from the Bankruptcy Court's findings." (Opening Brief at 3 n. 1) (emphasis added)  A summary judgment motion must rely on undisputed evidence admissible at trial.  In this respect, the Trustee's effort is an unmitigated failure.

    4.    The Trustee's alternative motion to deem certain facts established must be denied because the sources for all of the facts he seeks to have deemed established are statements in the Bankruptcy Court's rulings.  However, "(i)t is black letter law that a court decision is inadmissible as hearsay." *Thompson v. Glenmede Trust Co.*, No. CIV. A. 92-5233, 1996 WL 529693, at * 2 (E.D. Pa. Sep. 17, 1996) (citing *Nipper v. Snipes*, 7 F.3d 415, 417-18 (4th Cir. 1993)).  Moreover, the "facts" he seeks to establish are, in some cases, not facts at all but legal conclusions, and in the other cases substantially controverted, contrary to the requirements of

Fed. R. Civ. P. 56(d).

The Trustee's motion should be denied in all respects.

### III.    CONCISE STATEMENT OF FACTS

The facts relevant to furnish the background to this case are set forth in the Opening Brief

of Defendant Daniel Crowley in Support of his Motion for Summary Judgment (D.I. 123 at 2-

18). Below, Crowley describes the smaller set of facts relevant to the only issue presented by

this motion: whether the Trustee is entitled to bar Crowley from contesting that he breached his

fiduciary duty to Coram, based on the Bankruptcy Court's rulings denying confirmation of

Coram's First and Second Proposed Plans of Reorganization.

### A.    Crowley Was Not A Party to the Bankruptcy Proceedings

Coram filed for bankruptcy on August 8, 2000. (B98[1], Coram bankruptcy petition) The

debtors in the bankruptcy proceedings were Coram Healthcare Corp. and Coram, Inc. (*Id.*)

Crowley was not a debtor. (*Id.*) Crowley was not a shareholder. (Declaration of Daniel Crowley

in Opposition to Plaintiff's Motion for Summary Judgment ("Crowley Opposition Decl."), ¶ 1)

Moreover, contrary to the unsupported allegations in the Trustee's Brief In Support of Motion

for Summary Judgment on Liability or, in the Alternative, For the Court to Deem Certain Facts

Established ("Opening Brief"), Crowley was not a creditor of Coram. In connection with its

bankruptcy petition, Coram filed a Consolidated List of All Creditors. (B117, Consolidated List

of All Creditors) The Consolidated List of All Creditors detailed every creditor to whom Coram

owed money at the time of its petition for bankruptcy. Because Crowley was not a creditor of

Coram, his name is not among those listed. (*Id.*)[2] Indeed, that Crowley was not a party to the

---

[1] References to "B_" are to the Appendix of Documents in Opposition to Plaintiffs Motion for
Summary Judgment on Liability or, in the Alternative, For the Court to Deem Certain Facts
Established filed concurrently herewith.

[2] In December 2004, after confirmation of Coram's Third Proposed Plan of Reorganization and well
after he had left Coram, Crowley filed a Request for Payment of Administrative Expense in the
Bankruptcy Court seeking payment of nearly $17 million in bonuses he had earned at Coram but was
never paid. (B498) Crowley's Request for Payment of Administrative Expenses in December 2004
does not make him a creditor in December 2000 and December 2001 when the first two confirmation
plans were litigated.

bankruptcy is further evidenced by the fact that he was not served with any papers in either of the first two bankruptcy hearings. (B217-18; B441-48, proofs of service)

**B.    Crowley Was Not Represented in Coram's Bankruptcy Proceedings**

Coram was represented in the bankruptcy proceedings by David Friedman and his firm, Kasowitz, Benson, Torres, & Friedman. Friedman was retained by and represented Coram, not Crowley. (B81-84, Kasowitz-Coram retainer agreement; B89-90, April 5, 2000 board minutes) The transcripts of each confirmation hearing before the Bankruptcy Court in 2000 and 2001 show that Friedman and Kasowitz Benson appeared on behalf of Coram and that no one spoke on behalf of Crowley. (B506-623[3]) Crowley testified as a witness and had counsel exclusively in that capacity. Counsel for Crowley <u>never</u> offered arguments in either confirmation hearing and never filed any pleading on Crowley's behalf in connection with a confirmation hearing. (*Id.*)

**C.    Crowley's Alleged Breach of Fiduciary Duty Was Not Litigated in the Bankruptcy Proceedings**

The question presented to the Bankruptcy Court in each confirmation hearing was whether the plan met the requirements of the Bankruptcy Code such that it could be confirmed. The Equity Committee opposed each of Coram's reorganization plans (including those proposed by the Trustee after Crowley left Coram), arguing that Coram's bankruptcy plans did not satisfy the requirements of the Bankruptcy Code.

The Equity Committee asserted multiple objections to Coram's First Proposed Plan of Reorganization ("First Plan"), arguing that Coram was not insolvent, that Coram was prospering, that the plan improperly released legal claims against Coram's Noteholders, and that Crowley's relationship with Cerberus created a conflict of interest that infected the plan's good faith. (B201-218, Equity Committee Objections to First Plan) In contesting the First Plan, the Equity Committee did not contend that Crowley had breached a duty of loyalty. (*Id.*) Even in closing argument, the Equity Committee's counsel never suggested that Crowley had breached a duty of

---

[3] B506-623 are excerpts from each day of Bankruptcy Court confirmation hearings showing each attorney who appeared and spoke on behalf of a party. No attorney representing Crowley ever addressed the Bankruptcy Court.

loyalty to Coram. (B546-71, Dec. 21, 2000 Hearing Tr. at 65-90) The Bankruptcy Court denied

Coram's First Plan because it found that the plan was not offered in good faith as required under

section 1129(a)(3) of the Bankruptcy Code. (D.I. 130 at A-37)

      Crowley played no role with respect to the preparation or presentation of Coram's

Second Plan of Reorganization ("Second Plan"), which was the responsibility of a Special

Committee of Coram's Board of Directors, consisting of all of the directors except Crowley.

(D.I. 1, Cmplt., ¶ 38; D.I. 127, Crowley Decl. in Support of Motion for Summary Judgment

("Crowley Summary Judgment Decl."), ¶ 11; B219, Dec. 28, 2000 board minutes; B343, Second

Plan Disclosure Statement at 27)[4] Moreover, Crowley's alleged breach of fiduciary duty was not

litigated with respect to Coram's Second Plan. As with the First Plan, the Equity Committee

opposed the Second Plan for numerous reasons, including that Coram was not insolvent, and that

the plan was not proposed in good faith. (B419-48, Equity Committee Objections to Second

Plan) As with the First Plan, the Equity Committee did not argue that Crowley breached his

fiduciary duty to Coram under Delaware common law. (Id.) The Equity Committee repeatedly

described Crowley's continuing relationship with Cerberus as a "conflict of interest" but did not

allege that this proved a breach of fiduciary duty. (B420-21) The Equity Committee certainly

knew how to so allege: it accused Coram's independent directors of not meeting their duties of

care by allowing Crowley to continue running the company. (B422) Not surprisingly, in

response to the Equity Committee's objections to Coram's Second Plan, Coram did not discuss

or argue whether Crowley had or had not breached a fiduciary duty. (B449-80, Debtors'

Response to Equity Committee's Objection to Second Plan) In fact, the crux of Coram's

Response to the Equity Committee's Objections was that Crowley had not been not involved in

---

[4] In the fact section of his brief, the Trustee purports to summarize findings of the report of
Harrison Goldin, who had been retained by the Special Committee to assist in the preparation of
the Second Plan. The Trustee, however, does not attach the report so it is not properly before
this Court. Moreover, the Trustee misrepresents Goldin's findings. In fact, Goldin found that
Crowley worked diligently and effectively to stabilize Coram's operations and improve their
financial performance, that there was no evidence that Crowley intended to advance Cerberus'
interest to the detriment of Coram, and that there was no evidence that Cerberus ever instructed
Crowley to take any action contrary to Coram's best interest. (B346)

the formation of the Second Pan, and that the Independent Committee had not breached its own fiduciary duties. (*Id.*) Coram argued that Crowley had fully disclosed his Cerberus relationship to the independent board members (B459), that the independent board members had indeed acted independently, and that Crowley's relationship with Cerberus was a "non-issue" (B465) and a "desperate attempt [by the Equity Committee] to confuse the current Plan with the First Plan." (B466). No one filed papers or argued on behalf of Crowley. Whether Crowley had a conflict that constituted a breach of fiduciary duty under Delaware corporations law was never litigated by either Coram or the Equity Committee.

The Bankruptcy Court rejected Coram's Second Plan because "we are unable to determine under all of the circumstances that the Debtors' Second Plan has been proposed in good faith under section 1129(a)(3)." *In re Coram Healthcare Corp.*, 271 B.R. 228, 237 (Bkrtcy.D.Del. 2001).

## IV.    ARGUMENT

### A.    Standard of Review

Summary judgment is only appropriate where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Trustee as the moving party bears the burden of establishing— through admissible evidence—that he is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Countryside Oil Co., Inc. v. Travelers Ins. Co.*, 928 F.Supp. 474, 482 (D.N.J. 1995) ("only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment"); see also *Pamintuan v. Nanticoke Mem. Hosp.*, 192 F.3d 378, 387 n. 13 (3rd Cir. 1999) (same). The Court must draw all factual inferences in favor of the nonmoving party, in this case Crowley. *Dici v. Com. of Pa*, 91 F.3d 542, 547 (3d Cir. 1996).

The Trustee claims that the Bankruptcy Court's confirmation rulings collaterally estop Crowley from disputing that he breached his fiduciary duty to Coram. The Bankruptcy Court's rulings are only binding on Crowley if the Trustee proves that the undisputed facts show all of the following: (1) the issue sought to be precluded is the same as that involved in the prior

action; (2) that issue was actually litigated; (3) it was determined by a final and valid judgment; (4) the determination was essential to the prior judgment; (5) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (6) the party against whom the bar is asserted had a "full and fair opportunity" to contest the findings. *Amtrak v. Pa. Pub. Util. Comm.*, 288 F.3d 519, 525 (3d Cir. 2002); *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006) (internal quotations omitted). The Trustee bears the burden of establishing that the undisputed facts show that collateral estoppel applies. *Dici*, 91 F.3d at 548 ("The party asserting issue preclusion . . . bears the burden of proving its applicability to the case at hand.")

Moreover, where a plaintiff offensively invokes collateral estoppel against a defendant, as is the case here, the court examines whether estoppel would create inequitable results. Because of the "unique potential for unfairness" in such situations, *Jean Alexander Cosmetics*, 458 F.3d at 248, a court should consider the series of equitable factors listed in the Restatement (Second) of Judgments, including whether the defendant lacked the same incentives to defend the first action vigorously, *id.*; *Amtrak*, 288 F.3d 525 & n.3. Given the harsh implications of collateral estoppel and the risks of inequity, the Third Circuit has therefore cautioned that the doctrine of collateral estoppel should be applied only with "extreme care" and that "doubts about its application should usually be resolved against its use." *Witkowski v. Melchy*, 173 F.3d 192, 206 (3rd Cir. 1999).

If the Trustee does not carry his burden with respect to any one of the six elements of collateral estoppel, the Court must deny his motion. As shown below, the Trustee cannot carry his burden with respect to <u>any</u> of the elements and therefore his motion must be denied.

**B.    The Trustee Has Failed to Meet His Burden of Establishing that Collateral Estoppel Applies**

The Trustee does not offer any evidence admissible at trial to support his summary judgment motion. Exhibit A to this Answering Brief details each fact relied upon by the Trustee to establish the predicate elements of collateral estoppel, the Trustee's citation to evidence (if any), and Crowley's objections and responses. Since the Trustee has not offered <u>any</u> admissible

evidence, his motion must be denied. Nevertheless, even were the Court to examine the individual elements of collateral estoppel, it will quickly conclude that the Trustee cannot meet his burden of establishing any of the six elements of collateral estoppel with undisputed, admissible facts.

      1.     **Crowley was neither a party to the bankruptcy proceedings nor in privity with a party**

      Crowley was not a party to the Coram bankruptcy. Coram Inc. and Coram Healthcare Corp. were the debtors. (B98, Bankruptcy Petition) Crowley was not a member of the Equity Committee. (B200, Order Appointing Equity Committee) Crowley was not a shareholder and was not a creditor. (Crowley Opposition Decl., ¶ 1; B117-99, Consolidated List of All Creditors) Indeed, the Trustee does not, in fact, contend that Crowley was a "party" to the bankruptcy. Rather, the Trustee argues (without citation to <u>any</u> evidence) that "Crowley was a 'party in interest'" to the bankruptcy and as a "party in interest" to the bankruptcy he was a "party" for collateral estoppel purposes. (Opening Brief at 16-17) The Trustee is incorrect on both fronts: (1) Crowley was not a "party in interest" in the bankruptcy, and (2) even if he was, a "party in interest" is not the same as a "party" for collateral estoppel purposes.

      The Trustee argues that Crowley was a "party in interest" because he filed proofs of claim making him a creditor of the estate. (Opening Brief at 16-17) The Trustee is wrong. Crowley was not a creditor of Coram. A "creditor" in a bankruptcy is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10); see also 1 Collier Bankr. Manual (3d ed.) 101-27 (explaining that, absent exceptions not applicable here, a creditor must hold "one or more *prepetition* claims against the debtor") (emphasis added). The Trustee presents no evidence that Crowley was a creditor of Coram at the time it filed for bankruptcy.[5] Indeed, the evidence from the record establishes just the opposite. Coram's Consolidated List of All Creditors, filed along with its bankruptcy

---

[5] The Trustee may not provide factual authority in connection with his Reply brief, when Crowley will no longer have the ability to answer it. *See* Local Rules of Civil Practice & Proc. of the U.S. Dist. Court for the Dist. of Delaware, Rule 7.1.3 (c)(2) ("The party filing the opening brief shall not reserve material for the reply brief which should have been included in a full and fair opening brief.").

petition, does not include Crowley. (B117-99)  Crowley was not a creditor of Coram at the time

it filed for bankruptcy. (*Id.*)  Crowley filed a Request for Payment of Administrative Expenses in

December 2004 seeking the $17 million in bonuses he had earned but was never paid. (B498-

505)  But, filing an Administrative Request for Payment four years *after* the proceedings on

which the Trustee relies in this motion does not make Crowley a creditor of Coram or a party in

interest during the relevant bankruptcy proceedings.

Moreover, a "party" for collateral estoppel purposes is a different and significantly

narrower concept than "party in interest" under the Bankruptcy Code.  A "party" for collateral

estoppel purposes must have actually been named as a party, served in the prior litigation, and

made an appearance.  *Gulf Island-IV v. Blue Streak-Gulf Is Ops.*, 24 F.3d 743, 747 (5th Cir.

1994) ("[B]ecause that entity never was properly before the court in the prior suit, the identity of

the parties requirement has not been satisfied."); see also *Zenith Radio Corp. v. Hazeltine*

*Research, Inc.*, 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment

in personam resulting from litigation in which he is not designated as a party or to which he has

not been made a party by service of process.").  Crowley was not named in the bankruptcy

proceedings nor did he make an appearance as a party in the confirmation hearings, but rather

only testified as a witness.  In contrast, a "party in interest" under the Bankruptcy Code includes

the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor,

an equity security holder, or any indenture trustee.  11 U.S.C. § 1109(b).  So, even if the Trustee

could prove that Crowley was a "party in interest" (which he has not and cannot) that would not

be sufficient to make Crowley a "party" for collateral estoppel purposes.

Nor was Crowley in privity with Coram.  The general rule is that an officer or director of

a company is not in privity with the corporation for whom he works.  *Dudley v. Smith*, 504 F.2d

979, 982 (5th Cir. 1974) ("[s]tockholders and officers are not in privity to and are not personally

bound by judgments against their corporations"); see also *Levin v. Tiber Holding Corp.*, 277 F.3d

243, 252 (2d Cir. 2001); 18 Wright, Miller & Cooper, Federal Practice & Procedure, § 4460, at

533 ("Corporations are treated as entities separate from their officers, directors or shareholders

for purposes of preclusion . . . .").  As the Trustee's own cases make clear, an officer or director

will only be in privity with a corporation for collateral estoppel purposes if the corporation is the
alter ego of the individual or if the individual controlled the prior litigation to advance his own
personal interests.

The Trustee relies on *United States v. Schnick*, 66 B.R. 491 (Bankr. W.D. Mo. 1986), for
the proposition that there may be privity between a public corporation and one of its officers, but
that case had nothing to do with a public corporation or its officers but rather concerned the
relationship between a bankruptcy trustee and a creditors committee. Moreover, *Schnick* relied
on *Pollard v. Cockrell*, 578 F.2d 1002 (5th Cir. 1978), which rejected a finding of privity.
*Pollard* listed contexts where privity might apply, none of which are present here: a parent-
subsidiary, sole shareholder, trustee beneficiary and trustee, and estate administrator and estate
beneficiary. *Id.* at 1008.

Cases finding privity between an officer and a corporation require effectively an alter ego
type relationship. For instance, in *Dudley v. Smith*, the court concluded that a company president
was in privity with his corporation because

> appellant owned or controlled Bayou [the corporation] in toto. He was president
> and chairman of the board. He shuttled over $200,000 between personal and
> corporate accounts without accepting promissory notes therefor. The other
> directors (appellant's daughters) testified that they took no active part in Bayou's
> operations, and left such responsibilities to appellant. Corporate formalities were
> seldom adhered to.

*Dudley*, 504 F.2d at 982; *see also Horwitz v. Alloy Auto Co.*, 992 F.2d 100, 103 (7th Cir. 1993)
(holding that privity existed between corporation and its "CEO and sole shareholder"). *In re
Teltronics*, 762 F.2d 185 (2d Cir. 1985), relied upon by the Trustee is in accord. In *Teltronics*,
the Second Circuit found not only that the plaintiff was the founder, president, chairman of the
board, and principal shareholder of the company, but that he played a day-to-day leadership role
in the prior litigation, which he had initiated to advance his own personal interest. *Id.* at 190-91
& n4.[6]

---

[6] The Trustee's remaining privity cases are also inapposite. *Bruszewski v. United States*, 181
F.2d 419, 423 (3d Cir. 1950), involved a plaintiff who was injured while working on a ship
owned by the government and serviced by a private company. It had nothing to do with the
question of privity between an officer and the corporation for whom he works. Similarly, *In re
Heritage Hotel P'Ship I*, 160 BR. 374 (B.A.P. 9th Cir. 1993), concerned the relationship between

Crowley's relationship to Coram and to the bankruptcy proceedings is completely different than those cases finding a privity relationship:

- Coram was a public company, with an independent Board of Directors. There is no allegation that corporate formalities were not followed, and Crowley served only at the Board's discretion.

- Crowley was never a shareholder in Coram. (Crowley Opposition Decl., ¶ 1)

- Crowley neither controlled nor guided Coram's bankruptcy litigation strategy. Coram's Board selected and oversaw the Kasowitz firm and the preparation of the First Plan. When that plan was rejected by the Bankruptcy Court, Coram formed an Independent Committee of Coram's independent directors, consisting of all the directors except Crowley. That Independent Committee, without Crowley's involvement, hired an Independent Bankruptcy Advisor, proposed a second Confirmation Plan and made all decisions regarding Coram's bankruptcy strategy.

Thus, Crowley and Coram did not stand in privity to each other.

Of equal importance, Crowley's interests were not aligned with those of Coram.[7] Coram took extensive measures to propose a Second Plan that was independent of Crowley. (D.I. 1, Cmplt., ¶ 38; D.I. 127, Crowley Summary Judgment Decl., ¶ 11; B219, Dec. 28, 2000 board minutes; B343-348 Second Disclosure Statement at 27-32)  Given the Bankruptcy Court's stated concerns about Crowley's relationship with Cerberus, Coram had every incentive to avoid litigating whether or not Crowley's relationship constituted a breach of fiduciary duty.  Indeed, Coram's brief to the Bankruptcy Court prior to the second confirmation hearing included a section entitled "The Crowley Non-Issue."  (B465, Coram Response to Equity Committee's Objections to Second Plan at 17).  The terms of Coram's Second Plan were also clearly at odds with Crowley's interest.  Following the guidance of the Goldin Report, Coram's Special Committee proposed a plan that would have required Crowley to forfeit $7.5 million in bonus

---

a debtor and an entity that was its general partner, not a question of privity between an officer and a publicly traded company.

[7] Without citation to any evidence, the Trustee claims that Crowley was "the sponsor of both the First Plan and the Second Plan" and therefore had interests that were aligned with Coram. (Opening Brief at 16)  Crowley never sponsored any Plan.  The First Plan was proposed by Coram after a vote by Coram's Board of Directors, of which Crowley was but one member. (B94-97, Aug. 7, 2000 board minutes)  The Second Plan was prepared and presented by a Special Committee of Coram's Board of Directors, from which Crowley was explicitly excluded. (D.I. 1, Cmplt., ¶ 38; D.I. 127, Crowley Summary Judgment Decl. ¶ 11; B219, Dec. 28, 2000 board minutes; B343-48 Second Disclosure Statement at 27-32)

compensation the Independent Committee acknowledged Crowley was due. (B347, Second Plan Disclosure Statement at 31)

Because Crowley was not a party to the bankruptcy nor in privity with Coram, and because Coram's and Crowley's interests were not aligned, he cannot be estopped by the Bankruptcy Court's rulings on confirmation.

> **2.    The Bankruptcy Court's findings were made in deciding a different issue under a different legal standard with a different burden of proof**

The Trustee's motion must be denied for the independent reason that Crowley's breach of fiduciary duty was not litigated in the bankruptcy proceedings. It is fundamental to a finding of collateral estoppel that the issue litigated in the prior action be the same as that issue before the court in the pending litigation. Indeed, the issue must be not just similar, but must be "identical." *Bd. of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. Pension Fund v. Centra*, 983 F.2d 495, 505 (3d Cir. 1992); 18 Moore's Fed. Practice § 132.02[2][a], at 132-18-22 ("Issue preclusion does not apply when the issues in the prior and current litigation are not identical, even though similar."). Issues are not identical if the two proceedings involve "different legal standards" or if the burden of proof falls on a different party. *See Raytech Corp. v. White*, 54 F.3d 187, 191 (3d Cir. 1995); *In re Braen*, 900 F.2d 621, 624 (3d Cir. 1990), *abrogated on other grounds, In re Graham*, 973 F.2d 1089 (1992). The Trustee's Complaint against Crowley for breach of fiduciary duty under Delaware common law is not identical (or even similar) to Coram's efforts to have its proposed bankruptcy plans confirmed under federal bankruptcy law. The Trustee cannot establish sufficient similarity for at least three reasons:

*First*, the issues presented and litigated in the bankruptcy confirmation hearing are substantially different than those at issue here. The question presented in the bankruptcy proceeding was whether Coram's bankruptcy plans were confirmable. The question presented in this litigation is whether Crowley breached his fiduciary duty to Coram. The closest that the Trustee comes to establishing a link between the confirmation hearings and this litigation is the notion that Crowley's alleged conflict of interest was one of the issues discussed during the

bankruptcy. Despite the fact that the Trustee repeatedly conflates the two,[8] a conflict of interest is <u>not</u> the equivalent of a breach of fiduciary duty. Under Delaware law, conflicts of interest are not illegal or even necessarily bad: they can be cured by proper disclosure and/or approval by an independent Board of Directors. See *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1170 (Del. 1995) ("The fact that some interested transactions are permitted under our corporate law demonstrates that they are not inherently detrimental to a corporation") (quoting *Oberly v. Kirby*, 592 A.2d 445, 467 (Del. 1991)); *see also* 8 Del. Code § 144 (interested transactions are permitted where director's interest is disclosed and transaction is approved by a majority of disinterested directors). Whether Crowley had a conflict of interest might have been one "issue" in the confirmation hearing, but Crowley's personal liability for a breach of fiduciary duty, to the tune of millions of dollars in damages, most certainly was not.

  ***Second***, the issues presented to the Bankruptcy Court involved different legal standards than those that will be used here to determine if Crowley breached any fiduciary duty. In order to confirm a proposed bankruptcy plan, the debtor must satisfy thirteen separate criteria. 11 U.S.C. 1129(a). Each of the thirteen criteria, in turn, has a different standard. Coram, as the debtor, was required to satisfy each of the thirteen criteria. The Equity Committee challenged each proposed plan on numerous grounds, including that the plans were not proposed in "good faith" as required by section 1129(a)(3). "Good faith" is not defined in the Bankruptcy Code, but turns in large part on the Court's subjective interpretation of the "honesty and good intentions" of the Debtor. *Stonington Partners, Inc. v. Official Comm. of Unsecured Creditors*, 308 B.R. 672, 675 (D. Del. 2004). As the Bankruptcy Court: explained, the "good faith" determination requires a review of that "totality of circumstances" for which the court has "considerable judicial discretion." *In re Coram Healthcare Corp.*, 271 B.R. 228, 234 (Bkrtcy.D.Del. 2001).

  Even after evaluating at length the nature of Crowley's supposed conflict of interest, the

---

[8] *See e.g.* Opening Brief at 18 ("Coram vigorously litigated its position that Crowley did not have a conflict through testimony, briefing and argument."); *id.* at 20 ("[W]hether Crowley had a conflict of interest was actually litigated in the Bankruptcy Court. . . ."); *id.* at 22 ("In denying the Debtor's Second Plan, the Court again emphasized that it was Crowley's conflict of interest that prevented confirmation.").

Court concluded not by deciding an issue of *liability* under Delaware law, one that might impose millions of dollars of liability on a non-party to the bankruptcy, but rather with reference to the "good faith" test of the Bankruptcy Code: "[W]e must once again deny confirmation of the Debtors' Plan because we are unable to determine under all of the circumstances that the Debtors' Second Plan has been proposed in good faith under section 1129(a)(3)." *In re Coram Healthcare Corp.*, 271 B.R. 228, 237 (Bkrtcy.D.Del. 2001).

The Fifth Circuit addressed a similar situation in *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415 (5th Cir. 1995). In that case, the plaintiff, owner of the Popeye's Chicken chain, had sued Merrill Lynch, one of Popeye's creditors, for breach of an agreement to submit a joint plan of bankruptcy reorganization hammered out by Copeland and Merrill Lynch. In deciding whether to accept a reorganization plan submitted by a different creditor, an earlier bankruptcy court had held that both Copeland individual and his company had a viable claim for breach of contract against Merrill Lynch. *Id.* at 1420. Copeland then sought damages for that breach in federal court, arguing that Merrill Lynch was collaterally estopped from arguing the existence of the agreement or the fact of the breach. The Fifth Circuit held that collateral estoppel did not apply because the legal standards employed by the Bankruptcy Court were different: "The objective of the confirmation hearing was to determine the confirmability of (the creditor's) proposed plan for reorganization," whereas "Copeland's individual claim. . . is governed by the ordinary principles of contract law." *Id.* at 1422. The same is true here. Because the Bankruptcy Court evaluated Crowley's conduct only through the lens of a different bankruptcy inquiry, the Bankruptcy Court's conclusions cannot be binding on Crowley in a direct suit against him under different law.

*Third*, because the burden relating to Crowley's conflict has shifted, the Trustee may not use collateral estoppel against Crowley. As the Third Circuit has explained: it is a "black letter proposition that *issue* preclusion does not attach when [t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action [or] the burden has shifted to his adversary." *O'Shea v. Amoco Oil Co.*, 886 F.2d 584, 593 (3d Cir. 1989) (emphasis in original) (citing Restatement (2d)

of Judgments §28(4), at 273 (1982)) (holding same rule did not apply to claim preclusion).  The

principle behind the Restatement rule is that one party's failure to persuade the court on a given

fact does not mean that the other party could have persuaded the court of the opposite: "Since

the process by which the issue was adjudicated cannot be reconstructed on the basis of a new and

different burden, preclusive effect is properly denied."  Restatement (2d) of Judgments, § 28,

cmt. f, at 281; see also *Zhang v. Haven-Scott Assocs., Inc.*, 1996 WL 355344, at *9 n.9 (E.D. Pa.

June 21, 1996) (noting that even if waiver issue had been litigated, issue preclusion would not

apply if the burden of persuasion had shifted).  Therefore, the Third Circuit has concluded that in

cases where the burden has shifted between the two cases, "it would be both unfair and illogical

for issue preclusion to attach."  *O'Shea*, 886 F.2d at 594.

At the confirmation hearing, the burden fell on Coram (and by the Trustee's transitive

logic, Crowley) to prove that the plan was proposed in good faith. 11 U.S.C. § 1129(a)(3).  Even

though Coram failed to prove the irrelevance of Crowley's Cerberus relationship under the

"good faith" standard for confirmation, before this Court, it is the Trustee who bears the burden

of proving, by a preponderance of the evidence, that Crowley actually breached his fiduciary

duty.  Even if Crowley was a party to the bankruptcy, which he was not, the Trustee may not use

Coram's failure to prove good faith as preclusive evidence that Crowley violated Delaware law.

The lack of identity of issues between the two cases means Crowley may not be estopped

from litigating the alleged breach of fiduciary duty.

### 3.    Crowley's alleged breach of fiduciary duty was not "Actually Litigated" before the Bankruptcy Court

The Trustee's motion also fails because Crowley's breach of fiduciary duty was not

actually litigated in the bankruptcy case.  To determine whether a prior issue was "actually

litigated," a court looks at the pleadings and evidence submitted in the prior litigation.  *Jean

Alexander Cosmetics*, 458 F.3d at 254; see also *Diplomat Elec. Inc. v. Westinghouse Elec. Supply

Co.*, 430 F.2d 38, 45 (5th Cir. 1970) (noting that if the parties do not contest the issue in their

pleadings or in the evidence, there should be no collateral estoppel).  The Trustee bears the

burden to "introduce a sufficient record of the prior proceeding beyond merely the decision of

the prior court] to enable the trial court to pinpoint the exact issues previously litigated."
*Gruntal & Co. v. Steinberg*, 854 F. Supp. 324, 337 (D.N.J. 1994), *aff'd* 46 F.3d 1116 (3d Cir.
1994) (internal quotations omitted). "'Reasonable doubts as to what was decided by a prior
judgment should be resolved against using it as estoppel.'", *Id.* (quoting *Kauffman v. Moss*, 420
F.2d 1270, 1274 (3d Cir. 1970)).

As described above, the issue presented to the Bankruptcy Court was whether Coram's
bankruptcy plans were confirmable. The Trustee, by citing no evidence other than the
Bankruptcy Court's order denying confirmation, has wholly failed to meet his burden of
demonstrating that Crowley's breach of fiduciary duty was actually litigated. (*See* Opening Brief
at 20) Indeed, the Trustee does not actually attempt to argue otherwise. Rather, the Trustee
argues that "whether Crowley had a conflict of interest was actually litigated in the Bankruptcy
Court," not whether Crowley breached any fiduciary duty. (*Id.*) The Trustee does not offer any
evidence (in the form of pleadings or otherwise) that any of the parties to the bankruptcy
proceedings ever argued to the Court that Crowley had breached his fiduciary duties.

Of course, the reason the Trustee does not argue that Crowley's alleged breach of
fiduciary duty was actually litigated is because a review of the pleadings and the hearing
transcripts makes clear that, while Coram and the Equity Committee disputed whether Crowley's
relationship with Cerberus precluded confirmation of Coram's First Plan, neither cast the issue in
terms of Crowley's potential liability for breach of fiduciary duty. Nor, at any point in its
closing arguments, did the Equity Committee suggest that Crowley had breached his duty of
loyalty to Coram. (B546-71, Dec. 21, 2000 Hearing Tr. at 65-90)

Nor was Crowley's alleged breach of fiduciary duty actually litigated with respect to the
Second Plan. As with the First Plan, the Equity Committee argued that Crowley's alleged
conflict precluded the necessary finding of "good faith." (B419-48, Equity Objections to Second
Plan) The Equity Committee did not argue that Crowley breached a fiduciary duty owed to
Coram. (*Id.*) Coram's Special Committee, in defending the Second Plan, similarly focused on
the Special Committee's actions and argued the issue as one of "good faith." (B451-65, Coram
Response to Equity Committee Objections to Second Plan at 3-17) Indeed, the Special

Committee argued that Crowley's relationship with Cerberus was a "non-issue." (B465)

Coram's failure to argue the obvious defenses available to Crowley further confirms that the company did not understand itself to be litigating Crowley's breach of fiduciary duty. The arguments Crowley makes in his Motion for Summary Judgment in this Court—that his relationship with Cerberus was fully disclosed; that knowledge of the Cerberus relationship by certain directors should be imputed to the entire Board that his disclosure was legally adequate under corporations law; that the Board's decision to retain Crowley after full disclosure cured any breach; and that the exculpatory provisions in Coram's articles of incorporation relieved him of liability—were never mentioned, much less "litigated," in the bankruptcy proceeding.

Since Crowley's alleged breach of fiduciary duty was not actually litigated in connection with either the First or Second Plan, collateral estoppel cannot attach.

### 4. Crowley lacked a full and fair opportunity to litigate, such that application of collateral estoppel would be inequitable and unfair

Collateral does not apply here for the separate and independent reason that Crowley lacked a "full and fair opportunity to litigate" in the bankruptcy proceeding, an essential element of collateral estoppel. *Allen v. McCurry*, 449 U.S. 90, 95 (1980); *Jean Alexander Cosmetics*, 458 F.3d at 249. The "full and fair opportunity" requirement sounds in fundamental notions of fairness and due process. *Hardy v. Johns-Manville Corp.*, 681 F.2d 334, 338 (5th Cir. 1982).

### a. Crowley was not a party or creditor and therefore had no right to appear in the bankruptcy proceedings

Once again, the Trustee does not cite to any evidence in the record to support his allegation that Crowley had the opportunity to litigate this breach of fiduciary duty claim during the bankruptcy proceedings. (*See* Opening Brief at 17) Indeed, the Trustee's entire argument why Crowley had a full and fair opportunity to litigate is based on the demonstrably false premise that Crowley was a creditor of Coram at the time Coram filed for bankruptcy and therefore had standing to appear. (*Id.*) As described above, Crowley was neither a party to the bankruptcy nor a creditor of Coram. As the Trustee concedes, only "parties in interest" may object to or participate in a confirmation plan. (Opening Brief at 17) Because he was not a 'party in interest', Crowley could not file briefs, present witnesses or request hearings in his own

right, factors that strongly indicate a party did not have a full and fair opportunity to litigate. 11

U.S.C. § 1128(b); *Gruntal & Co.*, 854 F. Supp. at 338. The Trustee's argument also fails

because it depends on the similarly foundationless arguments that Crowley was a party to the

bankruptcy proceedings because he was represented by counsel at the time. The closest that the

Trustee comes to establishing that Crowley was represented in connection with Coram's

bankruptcy are two inadmissible documents, one purporting to show that someone representing

Crowley signed in at one day of the many days of confirmation hearing and the other purporting

to show that Crowley paid fees to lawyers in connection with the Coram bankruptcy. As

described in Exhibit A, those documents lack foundation and are inadmissible.[9] Even if they

were admissible, however, they prove nothing. Crowley testified as a witness. A lawyer

purporting to represent Crowley was present at one day of a multi-day hearing. Courtrooms are

public places. He did not argue on behalf of Crowley or file any documents on behalf of

Crowley. There is no evidence he was present at any other hearings. Being present, or having a

lawyer present as a spectator, does not transform a non-party witness into a party and does not

create the full and fair opportunity to litigate where one did not exist before.

Moreover, Crowley was explicitly precluded by Coram from participating in the

preparation or presentation of Coram's Second Plan. Holding Crowley liable for serious

fiduciary breaches based on findings from a hearing in which Crowley was expressly excluded

from participating would be fundamentally inconsistent with the collateral estoppel doctrine.

### b.    Crowley did not have an incentive to appear in the bankruptcy proceedings

In addition, Crowley lacked an incentive to vigorously litigate the conflict of interest or

breach of fiduciary duty issue in the confirmation hearing. *See Amtrak*, 288 F.3d at 525 n.3;

Restatement (2d) of Judgments, § 28 (listing as one of the "Exceptions to the General Rule of

Issue Preclusion" those situations in which the "party sought to be precluded. . . did not have

---

[9] Crowley objects pursuant to pursuant to Fed. R. Evid. 901 to exhibits A34-35 and A53, each
offered by the Trustee in support of his motion. The Trustee has not and cannot lay a foundation
for either document. Both were only mentioned in one deposition, Crowley's, and he could not
identify either. (B645-47, Crowley April 6, 2007 depo. at 235:8-236:20; 254:8-18).

adequate opportunity or incentive to obtain a full and fair adjudication in the initial action").
"Fears that a party might have litigated less than fully because the stakes in the first action were
low in relation to those in the second inhere in the justification for not preclusively establishing
issues not actually litigated." *Otherson v. INS*, 711 F.2d 267, 275 (D.C. Cir. 1983).

Even if he could have, Crowley's failure to interpose himself personally in Coram's
bankruptcy proceedings in order to force the issue of his liability should come as no surprise.
Crowley was not sued in his personal capacity, was not informed by the pleadings or the
Bankruptcy Court that his personal liability was at issue, had no pecuniary interest in the matter,
and had no reason to believe that the result of Coram's confirmation hearing might expose him to
hundreds of millions of dollars in damages. The worst case scenario for Crowley was that the
Court would again reject Coram's reorganization plan and he might lose his job. Numerous
courts have found that, where the disparities in risk or damages between the first and second
suits would have inhibited the party's incentive to litigate vigorously, collateral estoppel would
be unfair. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330 (1979); *James Talcott Inc. v.
Allahabad Bank, Ltd.*, 444 F.2d 451, 461-62 (5th Cir. 1971) ; *Berner v. British Commonwealth
Pac. Airlines, Ltd.*, 346 F.2d 532 (2d Cir. 1965).

For example, in *Berner*, the Second Circuit evaluated whether an airline that had chosen
not to appeal trial court errors after it was assessed a $35,000 verdict for willful misconduct
associated with a plane crash should be collaterally estopped from re-litigating the issue of
willful conduct in a suit brought by a different passenger. The airline chose not to appeal
because if the verdict were reversed and a new trial held, BCPA could face the full $500,000 in
damages sought by the plaintiff. However, following the non-appeal, the Second Circuit
reversed prior precedent and held that a non-party could offensively use collateral estoppel to
bind a defendant from a previous suit. Subsequently, a new plaintiff sued BCPA for $7,300,000
in damages. The court rejected collateral estoppel against BCPA because it concluded that the
airline would have appealed the verdict had it known "that that judgment would govern the
[second] action in which far more [money] was sought in damages." *Id.* at 540-41. The Third
Circuit has similarly held that collateral estoppel should issue only when the potential risk

exposure of the first suit provided an ample incentive to litigate. *See, e.g., Kaiser Indus. Corp. v. Jones & Laughlin Steel Corp.*, 515 F.2d 964, 977 (3d Cir. 1975) (finding adequate incentive to litigate where the first suit "involved very substantial amounts of money" and the party to be estopped, recognizing this, had been prepared to litigate the first case "to the finish"); *Lannett Co. v. Gratz*, 1994 WL 470344, at *2 (E.D. Pa. Aug. 30, 1994) (finding adequate incentive to litigate in a first suit that exposed party to a potential prison term and heavy fines); *Looney v. City of Wilmington*, 723 F. Supp. 1025, 1034 (D. Del. 1989) (risk of six months' imprisonment created adequate incentive to litigate).

Crowley had far less incentive to litigate breach of fiduciary duty issues in the bankruptcy litigation than the parties in the above cases. It was not clear at the time that he faced any risk whatsoever of personal liability based on the ruling of the Bankruptcy Court, other than possibly losing the right to receive some bonus money. In fact, at the time, Coram was arguing that the Equity Committee's proposed derivative suit against Crowley would be fruitless, (B290-314, Debtors' Objection to Equity Committee's Motion for Leave to File Adversary Proceeding), a position echoed by the Trustee's December 2002 and January 2003 agreements with Crowley to release him from any liability suits and pay him $3.48 million. (B481-86, Dec. 24, 2002 and Jan. 7, 2003 letter agreements). To estop Crowley in such circumstances would be patently unfair and would provide perverse incentives for non-parties to inject themselves into and over-litigate issues that are not even properly before a court.

At the end of the day, collateral estoppel is an equitable doctrine, and a "finding of fairness to the defendant is thus a necessary premise to the application of offensive collateral estoppel." *Raytech*, 54 F.3d at 195 & n. 8; *see also Parklane Hosiery*, 439 U.S. at 327 n. 7. It would be fundamentally unfair to preclude Crowley from contesting that he breached any duty to Coram. Coram consistently argued—with knowledge of Crowley's relationship with Cerberus—its proposed confirmation plans should nevertheless be confirmed. Now, Coram—through its bankruptcy Trustee—argues exactly the opposite and seeks collateral estoppel based on a ruling adverse to Coram. While Crowley technically is not entitled to judicially estop the Trustee from taking these inconsistent positions, it would be fundamentally unfair—and contrary to the

394840.01
20

purpose of the equitable collateral estoppel doctrine—to permit it.

### 5.    The Bankruptcy Court did not issue a final judgment and Crowley's alleged breach of fiduciary duty was not essential to its rulings

Finally, the Trustee's collateral estoppel claim fails because the Bankruptcy Court did not issue a final judgment regarding Crowley's breach of fiduciary duty nor was the issue essential to the Court's rulings. *Amtrak*, 288 F.3d at 525. Once again, a careful reading of the Trustee's Opening Brief reveals that he does not in fact contend otherwise. Rather, the Trustee argues that "the issue of Crowley's conflict of interest was essential" to the Bankruptcy Court's rulings. (Opening Brief at 22). But, the Trustee has sued Crowley for breach of fiduciary duty, and by this instant motion seeks summary judgment as to liability regarding that claim—a claim that simply was never adjudicated by the Bankruptcy Court.

### C.    The Trustee is Not Entitled to Summary Judgment on his Alternative Motion that Certain Facts be Deemed Established because Each Fact is Substantially Controverted

The Trustee moves this Court, in the alternative, to "deem the facts that the bankruptcy court found to be established for purposes of this litigation." (Opening Brief at 25) The Trustee suggests that the Court do so pursuant to Rule 56( d), which allows a Court to deem established "facts that appear without substantial controversy." Fed. R. Civ. P. 56(d). To quote that language—"without substantial controversy"—in this context, in this case, makes its nonapplicability self-evident.[10]

The Trustee's alternative motion is nothing less than an attempt to get a second bite at the collateral estoppel apple. It should fail for the same reasons that the Trustee's summary judgment motion should fail—because the legal conclusion the Trustee would use to bind Crowley in this proceeding was reached in a hearing to which he was not a party or in privity to a party; because Crowley was not provided a full and fair opportunity to litigate that issue; because Crowley's fiduciary duty was not an "issue," for collateral estoppel purposes, in the bankruptcy

---

[10] Just as with any other Rule 56 motion, a motion under Rule 56(d) must be based on evidence admissible at trial. Fed. R. Civ. P. 56(e); *Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996).

hearings; and because Crowley's alleged breach was not actually litigated by the entities that actually were parties to the bankruptcy.

The Trustee's Rule 56(d) motion also fails because all the "facts" that he seeks to have deemed established are statements taken from Bankruptcy Court rulings and are thus inadmissible hearsay. "It is black letter law that a court decision is inadmissible hearsay." *Thompson v. Glenmede Trust Co.*, No. CIV. A. 92-5233, 1996 WL 529693, at * 2 (E.D. Pa. Sept. 17, 1996) (citing *Nipper v. Snipes*, 7 F.3d 415, 417-18 (4th Cir. 1993)); see also *Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 505 F. Supp. 1125, 1185-86 (B.D. Pa. 1980), *aff'd in part, rev'd in part*, 723 F.2d 238 (3d. Cir. 1983).[11]

In *Thompson*, the court granted the defendants' motion *in limine* to preclude the plaintiffs from introducing into evidence the factual findings contained in a decision of the Pennsylvania Supreme Court. *Thompson*, 1996 WL 529693, at *3. The court held that "these judicial findings ... are not admissible because they are hearsay." *Id.*

Similarly, in the *Zenith* case, the court held that factual findings made by a different court in a prior, related matter were inadmissible hearsay under Federal Rule of Evidence 802. *Zenith Radio*, 505 F. Supp. at 1185. Moreover, the *Zenith* court also held that the prior court's findings were inadmissible under Rule 403 because "such findings would present a rare case where, by virtue of their having been made by a judge, they would likely be given undue weight by the jury, thus creating a serious danger of unfair prejudice." *Id.* at 1186.

Because the evidence offered by the Trustee is inadmissible hearsay, the Court should deny his Rule 56(d) motion. Fed. R. Civ. P. 56(e) (Rule 56 motions must be based on "facts as would be admissible in evidence"). Moreover, the Court should not deem the "facts" established because, contrary to the requirements of Rule 56(d), they are either legal conclusions (rather than facts), or hotly disputed:

---

[11] While there is no reported Third Circuit decision, at least three other Circuit Courts have joined the Fourth Circuit in holding that judicial opinions are inadmissible hearsay. *See Herrick v. Garvey*, 298 F.3d 1184, 1191-92 (10th Cir. 2002); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1287-88 (11th Cir. 2001); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992). No Circuit has held otherwise.

| Trustee's Alleged "Fact" that is "without substantial controversy" | Crowley's Response |
|---|---|
| "The employment agreement between Crowley and Cerberus … created an actual conflict of interest on Crowley's part." (Opening Brief at 27) | This is a legal conclusion and not a fact. It is also disputed.<br><br>Crowley's relationship with Cerberus was not a conflict. Crowley was not paid by Cerberus for any work related to Coram after he became CEO. (D.I. 127, Crowley Summary Judgment Decl., ¶ 8; B642, Feinberg Depo. at 157:17-24). Crowley never took any action while at Coram that favored Cerberus to the detriment of Coram. (D.I. 123) |
| "Crowley's actual conflict of interest tainted Coram's restructuring of its debt, its negotiations of a plan, and the restructuring of its operations." (Opening Brief at 27) | This is a legal conclusion and not a fact. It is also disputed.<br><br>Crowley's relationship with Cerberus was not a conflict. Crowley was not paid by Cerberus for any work related to Coram after he became CEO. (D.I. 127, Crowley Summary Judgment Decl., ¶ B642, Feinberg Depo. at 156:17-24). Indeed, Crowley never took any action at Coram that favored Cerberus to the detriment of Coram. (D.I. 123)<br><br>Moreover, this "fact" is inconsistent with the Trustee's own prior position that the First Plan's cancellation of equity was appropriate that Crowley dramatically improved Coram's financial performance [B493-96, Motion to Retain Crowley at 7-10), and that Crowley never did anything deleterious to Coram (B639, Adams Jan 21, 2004 depo. at 11:4-18). |
| "Crowley did not disclose to the Coram Board, or to Coram's bankruptcy counsel, the $6.3 million cash payment to the Noteholders until after it had been made." (Opening Brief at 27) | Disputed.<br><br>Crowley informed Coram's board that Coram would be making contractually obligated interest payments in cash and not in kind and Coram's approved the payments. In December 1999, Crowley presented to the Coram Board of directors a target budget for the year 2000 that projected paying interest and other debt payments in cash rather than in kind in order to stop increasing Coram's debt and the Board approved it. (B4, Coram 2000 budget; B650-52, Danitz April 6, 2007 Depo. at 115:22-117:1; B5-16, Dec. 21, 1999 board minutes)[12] |

---

[12] Director Casey testified with respect to the $6.3 million interest payment in cash rather than in kind, that the Board "did review what happened and we did concur." (B628-629, Casey Sept. 28, 2001 depo. at 140:19-21, 144:9-13)

| Trustee's Alleged "Fact" that is "without substantial controversy" | Crowley's Response |
|---|---|
| "The employment agreement between Crowley and Cerberus … created an actual conflict of interest on Crowley's part." (Opening Brief at 27) | This is a legal conclusion and not a fact. It is also disputed.<br><br>Crowley's relationship with Cerberus was not a conflict. Crowley was not paid by Cerberus for any work related to Coram after he became CEO. (D.I. 127, Crowley Summary Judgment Decl., ¶ 8; B642, Feinberg Depo. at 157:17-24). Crowley never took any action while at Coram that favored Cerberus to the detriment of Coram. (D.I. 123) |
| "After denial of the first plan, Crowley continued to receive compensation from Cerberus." (Opening Brief at 27) | This is true but wholly irrelevant because the evidence is crystal clear that Crowley disclosed this fact to the full Coram board in December 2000 and that the ongoing nature of the relationship was publicly reported in Coram's 2001 10-K, signed by all of Coram's board members, as well as in Coram's second Disclosure Statement. (see fact immediately below) |
| "After denial of the first plan, Crowley did not inform the Board of Directors that he continued to receive compensation from Cerberus." (Opening Brief at 16) | Disputed.<br><br>Immediately following the rejection of Coram's First Plan, Crowley again disclosed to the Board of directors and Friedman his relationship with Cerberus. (D.I. 127, Crowley Summary Judgment Decl., ¶ 10) Crowley told the Board and Friedman that he was continuing to receive $80,000 per month from Cerberus for services unrelated to Coram. (*Id.*; B632-35, Crowley Oct. 25, 2001 depo. at 12:25-15:06; B611-12, Dec. 13, 2001 Hearing Tr. at 457:16-458:8; B590, Nov. 7, 2001 Hearing Tr. at 412:13-22; B625-27, Casey Sept. 28, 2001 depo. at 49:11-51:15) Crowley's continuing relationship with Cerberus was also fully disclosed in Coram's 2000 SEC Form 10-K, which was signed by each member of Coram's Board. (B269, 289, Coram 2000 10-K at 45, 65). |
| "Crowley's agreement with Cerberus required that Crowley obey the instructions of Cerberus and Feinberg." (Opening Brief at 27) | Disputed.<br><br>Crowley's agreement with Cerberus was unrelated to Coram. (D.I. 123) Crowley was not paid by Cerberus for any work related to Coram after he became CEO. (D.I. 127, Crowley Summary Judgment Decl., ¶ 8; B642, Feinberg depo. at 157:17-24) Crowley never took any action while at Coram that favored Cerberus to the detriment of Coram. (D.I. 123) |

| Trustee's Alleged "Fact" that is "without substantial controversy" | Crowley's Response |
|---|---|
| "The employment agreement between Crowley and Cerberus ... created an actual conflict of interest on Crowley's part." (Opening Brief at 27) | This is a legal conclusion and not a fact. It is also disputed.<br><br>Crowley's relationship with Cerberus was not a conflict. Crowley was not paid by Cerberus for any work related to Coram after he became CEO. (D.I. 127, Crowley Summary Judgment Decl., ¶ 8; B642, Feinberg Depo. at 157:17-24). Crowley never took any action while at Coram that favored Cerberus to the detriment of Coram. (D.I. 123) |
| "Cerberus paid Crowley for his work at Coram." (Opening Brief at 16) | Disputed.<br><br>Crowley was not paid by Cerberus for any work related to Coram after he became CEO. (D.I. 127, Crowley Summary Judgment Decl., ¶ 8; B642, Feinberg depo at 157:17-24) |
| "Crowley's conflict of interest was a violation of his fiduciary duties to Coram." (Opening Brief at 16) | This is a legal conclusion and not a fact. It is also disputed.<br><br>Crowley's relationship with Cerberus was not a conflict of interest and Crowley did not breach any fiduciary duty he owed to Coram. Indeed, just the opposite is true. As the *facts* (rather than legal conclusions) detailed in Crowley's motion for summary judgment demonstrate (D.I. 123), he is entitled to summary judgment that he did not breach any fiduciary duty owed to Coram. |

Of course, the Trustee cited no additional record evidence that backs up any of these facts. The evidence submitted by Crowley makes clear that all of these "facts" are either contrary to the truth, or factually in dispute. A Rule 56(d) narrowing of the issues along the lines requested by the Trustee would be highly inappropriate.

## V.    CONCLUSION

The Trustee's Complaint against Crowley for breach of fiduciary duty under Delaware law is a different claim, subject to different legal standards, than Coram's efforts to have its bankruptcy plans confirmed under the Bankruptcy Code. Crowley was not a party to the bankruptcy proceedings and did not have an opportunity to litigate the issue presented in this litigation. It would be manifestly inequitable for the Court preclude him from doing so now. For

these reasons, and as more fully described above, Crowley respectfully requests that the Court deny the Trustee's Motion for Summary Judgment, and deny his alternative motion deeming certain facts established.

Dated:  May 4, 2007

CONNOLLY BOVE LODGE & HUTZ LLP

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA  94111
(415) 391-5400

Attorneys for Defendant
DANIEL D. CROWLEY

#537386