IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM, INC., a Delaware Corporation, <br><br>                  Plaintiff, <br><br>v. <br><br>DANIEL D. CROWLEY, DONALD J. AMARAL, WILLIAM J. CASEY, L. PETER SMITH, AND SANDRA L. SOMELY, <br><br>                  Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 04-1565 |

**APPENDIX OF DOCUMENTS IN SUPPORT OF ANSWERING
BRIEF OF DEFENDANT DANIEL D. CROWLEY IN OPPOSITION
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON
LIABILITY OR, IN THE ALTERNATIVE, FOR THE COURT TO
DEEM CERTAIN FACTS ESTABLISHED (PART 1)**

Dated: May 4, 2007

Jeffrey C. Wisler (No. 2795)
Christina M. Thompson (No. 3976)
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street; P.O. Box 2207
Wilmington, Delaware 19899
(302) 658-9141

-and-

Elliot R. Peters
R. James Slaughter
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400
*Attorneys for Daniel D. Crowley*

## TABLE OF CONTENTS

| **Document Description** | **Page** |
|---|---|
| Fax dated 12/20/99 from Danitz to Crowley re: Board package- Budget 2000 | B1 |
| Minutes of 12/21/99 Coram Board of Directors Meeting | B5 |
| **Page numbers intentionally not used** | B17 |
| Letter dated 2/28/00 from Friedman to Crowley re: Proposal for Representation | B81 |
| Minutes of 4/5/00 Coram Board of Directors Meeting | B85 |
| Minutes of 8/7/00 Coram Board of Directors Meeting | B94 |
| Voluntary Bankruptcy Petition filed 8/8/00 | B98 |
| Consolidated List of All Creditors filed 8/8/00 | B117 |
| Notice of Appointment of Equity Committee filed 10/18/00 | B200 |
| Objections of the Official Committee of Equity Security Holders of Coram Healthcare Corp. to the Joint Plan of Reorganization Proposed by Debtors Coram Healthcare Corp. and Coram, Inc. filed 11/21/00 | B201 |
| Minutes of 12/28/00 Coram Board of Directors Meeting | B219 |
| 2000 Form 10-K for period ending 12/31/00 | B225 |
| Debtors' Objection to Equity Committee's Motion for Leave to File Adversary Proceeding filed 2/20/01 | B290 |

DEC 20 1999 13:54 FR CORAM HEALTHCARE EXEC303 672 8799 TO 919164496059    P.01/13

**CORAM HEALTHCARE**    1125 17th Street, Suite 2100, Denver, CO 80202

# FAX

Date: _12-20-_

Number of pages including cover sheet: _13_

To: _Dan Crowley_

Phone:

Fax phone: _916 - 449-6059_

From:  Scott Danitz

VP & Controller

Phone:    303/672-8640

Fax phone:    303/672-8799

---

REMARKS:    ☐ Urgent    ☐ For your review    ☐ Reply ASAP    ☐ Please comment

_Board Package_

_Budget 2000_

---

**Privileged and Confidential**

All information transmitted hereby is intended only for the use of the addressee(s) named above.  If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipients(s). Please note that any distribution or copying of this communication is strictly prohibited. Anyone who receives this communication in error should notify us immediately by telephone and return the original message to us at the above address.

CROWLEYKVN 016575

**Coram Healthcare Corporation**
**Board of Directors, Budget 2000**

| Contents Summary | Page |
|---|---|
| 2000 Key Initiatives | 1 |
| Forecast 1999 VS Budget 2000 - Annual | 3 |
| Forecast 1999 VS Budget 2000 - Quarterly | 4 |
| Budget 2000, Cash Flow | 5 |
| Budget 2000, Balance Sheet | 6 |
| Forecast 1999 VS Budget 2000 - Infusion | 7 |
| Forecast 1999 VS Budget 2000 - CTI | 8 |
| Forecast 1999 VS Budget 2000 - CPS | 10 |
| Forecast 1999 VS Budget 2000 - RNET | 11 |

12/20/99 1:30 PM

CROWLEYKVN 016576

DEC 20 1999 13:54 FR CORM HEALTHCARE EXEC303 672 8799 TO 919164966859     P. 02/13

Coram Healthcare Corporation
"Key Initiatives Drivers"
Board of Directors, Budget 2000

**New Revenue Growth – $29mm   7.4%**
- Generalist versus Specialist Sales force in 2000
- New Strategic Business Unit leadership driving new sales and marketing programs - Manage Care carve-outs.
- New Hemophilia sales and marketing program expected to grow $8.0mm (50%) in 2000.
- New national contract with United Healthcare (Q1) to replace projected Aetna lost business in (Q2) – 90% confidence level.

**Cost of Goods/Mix Improvement**
- Commissionable therapy growth of new revenue at 70-80% standard margins versus current mix standard margins of 59%.
- 2000 Sales Compensation only paying on commissionable therapies and EBITDA improvement.
- Target low margin accounts for price increase
- 2000 COS – from drug wholesaler, estimated annual savings $250,000.

**Nursing Cost Savings**
- 1% improvement versus 1999
- Primary Care Management Model (PCMM) rolled out to reduce current cost per visit by 10%.
- Standardize use of Home Healthcare Laboratory of America (HHLA) program in 2000
- Moving nurse staffing to more variable versus fixed cost via per Per Diems.
- Producing Monthly Management Reports to monitor Nurse Manager's performance under PCMM and HHLA.

**Cash Collection Performance**
- Reorganize reporting structure by moving Area Reimbursement Managers under AVP Operations to connect the front and back end process.
- All 2000 Bonus and Sales commission plans will be tied to cash collection results to gain total support from each team member to drive results.
- Dedicated individual to work with each Medicare DMERC location.
- Have begun legal communication with delinquent Payor Accounts.

**Sale of CPS Q2 –** $70 million generating $60 million cash and $45 million gain

**Company Wide Expense Management Control**
- Headcount management controls established – budget, performance, staffing model and Sr. Management approval.
- Individual Budget Monthly Accountability; Weekly reporting of new cost savings initiatives
- Elimination of discretionary spending; Micro Management by senior management

P. 1

CROWLEYKVN 016577

12/20/99; 1:00 PM

**CORAM HEALTHCARE CORPORATION**
**BOARD OF DIRECTORS, BUDGET 2000**
**FORECASTED BALANCE SHEET AND CASHFLOW ASSUMPTIONS**

|  |  | Q1 | Q2 | Q3 | Q4 |
|---|---|---|---|---|---|
| 1) | DSO | 80 | 78 | 76 | 74 |
| 2) | AP Aging | 50 | 39 | 37 | 40 |

3) **Summary of CPS Sale, April 1, 2000**

| | |
|---|---|
| Estimated cash proceeds | $ 70,000,000 |
| Estimated costs associated with sale | (5,000,000) |
| Net proceeds on sale | $ 65,000,000 |
| Net Book Value estimated | (14,200,000) |
| Reserves from sale | (5,800,000) |
| Estimated gain on sale of asset | $ 45,000,000 |
| | |
| Net proceeds on sale | $ 65,000,000 |
| Paydown portion of principle on Series B debt | (60,000,000) |
| Cash available for operations | $ 5,000,000 |

4) All interest payments due on Bank debt in 2000 are paid in cash (no PIKs).
$60 million reduction in Series B debt principle from the sale of CPS.
Senior Credit Facility line remains at $44m with a 1/2 % pt. increase in 7/00.

5) Credit facility borrowing base, using November 1999 A/R balances, without R-Net and CPS
is $52 million. With the credit facility at $44 million, Coram could be required to report
weekly financial data to the noteholders.

P. 2                                                    12/20/99; 11:55 AM

CROWLEYKVN 016578

MINUTES OF A TELEPHONIC MEETING

OF THE BOARD OF DIRECTORS OF

CORAM HEALTHCARE CORPORATION

December 21, 1999

A telephonic meeting of the Board of Directors of Coram Healthcare Corporation (the "Company") was convened at approximately 9:35 a.m. MST. Participating in the meeting were the following Directors: Daniel D. Crowley, Chairman of the Board, Chief Executive Officer and President; Donald J. Amaral; William J. Casey; and Richard A. Fink. Stephen A. Feinberg and L. Peter Smith participated in the meeting as indicated below. Allen J. Marabito, Executive Vice President; Wendy L. Simpson, the former Chief Financial Officer of the Company; Vito Ponzio, Senior Vice President, Human Resources; Scott Danitz, Vice President and Controller; and Scott T. Larson, Senior Vice President, General Counsel and Secretary, also participated in the meeting. Also in attendance as indicated below were Dan Smithson and Kurt Davis of Dynamic Healthcare Solutions; Christina Morrison of Deustche Banc.Alex Brown; Alan Kornberg of Paul, Weiss, Rifkind & Garrison; and Michael Kahn of Folger, Levin & Kahn. Mr. Crowley acted as Chairman of the meeting and Mr. Larson kept the minutes.

## REVIEW AND APPROVAL OF MINUTES FROM PRIOR MEETINGS

The first item of business was a review and consideration of the minutes from prior meetings of the Board of Directors that had been circulated to the Board. Upon a motion duly made and seconded, the minutes from the prior meetings of the Board dated October 22 and 27, 1999, and November 2 and 17, 1999, were unanimously approved as presented.

## FINANCIAL UPDATE

The first portion of the financial update was a report on the status of the sale of the Company's prescription services division, Coram Prescription Services ("CPS"). Christina Morrison outlined that actions that had been undertaken in connection with the sale and summarized the status of the auction process. This included a description of the numbers of parties that had expressed interest in CPS and the numbers of parties that had obtained offering memoranda describing CPS. Mr. Feinberg joined the meeting. Ms. Morrison responded to the questions of the Board and completed her status report. Ms. Morrison departed from the meeting. The Board continued to discuss the prospects for selling CPS and various alternatives such as reducing its costs and retaining its operation in the event no appropriate or reasonable bids were received for the division.

The next portion of the financial report consisted of a summary of Company operations during the fourth quarter of 1999 and the anticipated need for taking a restructuring charge in such quarter for a variety matters. A schedule outlining the proposed charge was included with

COR-SUB CON 0023876

Minutes of the Board of Directors
December 21, 1999
Page 2

the materials presented to the Board of Directors. The discussion that ensued included, among other items, certain cost cutting measures, such as head count reductions and related severance costs, liquidation of the Resource Network division, write downs of the Company's accounts receivable balances, and anticipated impairment of the goodwill that had been recorded on the Company's balance sheet. Upon a motion duly made and seconded, the Board unanimously approved the reporting of a proposed restructuring charge, subject to audit by the Company's independent auditors, that would be taken in the Company's financial statements for the fourth quarter of the year ended December 31, 1999.

Management then summarized the Company's financial performance during the fourth quarter of 1999. The discussion included a description of certain factors that impacted the Company's financial performance, including the mix of therapies provided by the Company, the use of per diem employees, write-offs of accounts receivable, and other factors. A discussion of the Company's cash collections and uses thereof then ensued.

Management then presented the budget for the upcoming year ending December 31, 2000. Copies of such budget had been distributed to the Board prior to the meeting. The presentation included a discussion of certain assumptions that were used in creating the budget, including the sale of CPS. Following a discussion and upon a motion duly made and seconded, the Company's Year 2000 Budget was unanimously adopted and approved as presented.

The next portion of the financial update was a discussion of the Company's listing status with the New York Stock Exchange (the "NYSE"). Ms. Simpson reported on the types of information that would be presented to the NYSE in response to their prior request for information regarding the Company's plans for bringing the Company back into compliance with the minimum listing requirements for the NYSE. The dialogue also included the strategies management was recommending in the event the NYSE commences de-listing procedures. The discussion then turned to the relative costs and benefits of maintaining the NYSE listing. Upon a motion duly made and seconded, the Board adopted the resolutions set forth on Exhibit 1 hereto regarding the Company's listing on the NYSE listing and moving to the Over the Counter Bulletin Board maintained by the National Association of Securities Dealers.

Mr. Feinberg reported on preliminary information regarding a debt to equity conversion. The conversations occurred pursuant to the discussions this Board had on December 17, 1999 regarding the Company's compliance with the "public company" exception to the Stark II Law. The Board then discussed a strategy for pursuing the conversion with the debtholders. Upon a motion duly made and seconded, the Board engaged Alan Kornberg to assist the Company in exploring a conversion of debt to raise the Company's stockholders' equity.

The Board then renewed its discussion of a special independent committee to negotiate, as needed, the terms of any such debt conversion. Upon a motion duly made and seconded, the

COR-SUB CON 0023876

Minutes of the Board of Directors
December 21, 1999
Page 3

Board unanimously adopted a resolution establishing a special independent committee comprised of Messrs. Casey, Fink and Smith to work as required with Mr. Kornberg in obtaining and negotiating the terms of an equity conversion as of December 31, 1999.

## LEGAL UPDATE

Mr. Kahn led a privileged and confidential discussion of the status of the litigation between the Company and Aetna U.S. Healthcare, Inc. ("Aetna"), including the procedural status of the case.

# REDACTED

Additional privileged and confidential reports regarding the status of the dispute involving the Internal Revenue Service and the litigation with PriceWaterhouseCoopers were then given. The Board requested an update at a later time.

Messrs. Kahn and Kornberg and Ms. Simpson departed from the meeting.

## COMPENSATION AND OTHER ISSUES

The Board then considered the management incentive compensation plan described in the materials previously distributed to the Board in connection with the meeting. After discussion and upon a motion duly made and seconded, the Board unanimously approved the management incentive compensation plan in the form presented.

The cost of the 401(k) match by the Company was discussed, and the Board considered a proposal to discontinue the Company's matching of employee contributions under the Company's 401(k) plan. Upon a motion duly made and seconded, the Board unanimously adopted the resolutions set forth on Exhibit 2 hereto regarding the discontinuance of employer matching contributions under the Company's 401(k) plan.

The Board considered the level of directors' and officers' liability insurance ("D&O Insurance") that the Company currently maintains. A recommendation was made to increase the level of D&O Insurance coverage to a total of $100 million through serial layers of coverage. The Board discussed the necessity of the increased D&O Insurance coverage given the challenges and uncertainties facing the Company and determined that it was in the best interests of the Company and its stockholders to obtain such coverage. Upon a motion duly made and

COR-SUB CON 0023877

Minutes of the Board of Directors
December 21, 1999
Page 4

seconded, the Board unanimously adopted the resolutions set forth on Exhibit 3 regarding the procurement of such D&O Insurance.

The discussion then turned to a proposal to settle a dispute between the Company and Julia Kopta, Esq., the former Special Counsel to the Chief Executive Officer. After a review of the proposed terms and the Board's questions having been responded to, the Board unanimously resolved to authorize management to settle the Company's dispute with Ms. Kopta on substantially the terms in the materials presented to the Board coupled with a general release from Ms. Kopta.

Next, the Board considered a proposal to retain the interim services of its former Chief Financial Officer, Wendy L. Simpson, on the terms distributed to the Board prior to the meeting. Upon a motion duly made and seconded, the Board unanimously resolved to authorize management to offer an engagement to Ms. Simpson on the terms presented to this Board.

Mr. Smith departed from the meeting.

A discussion then followed regarding the retention of Dynamic Healthcare Solutions, L.L.C., a consulting firm affiliated with Mr. Crowley. Mr. Crowley outlined the experience and credentials of the persons at Dynamic Healthcare Solutions that he expected would provide services to the Company on an as needed basis. After discussion and upon a motion duly made and seconded, the Board unanimously adopted the resolutions attached hereto as Exhibit 4 regarding the retention of Dynamic Healthcare Solutions.

The next item was the consideration of Sandra Smoley as a candidate who would join the Company's Board of Directors. Mr. Crowley reviewed with the Board materials describing Ms. Smoley's background and experience that were distributed to the Board prior to the meeting. The Board members expressed their interest in meeting and interviewing her regarding her candidacy as a potential member of the Board.

It was noted that February 10, 2000 was the next scheduled meeting of this Board. The Board agreed to hold the meeting telephonically on such date.

There being no further business, the meeting was adjourned at 11:15 a.m. MST.

Respectfully submitted,

Scott T. Larson
Secretary

COR-SUB CON Q023878

## EXHIBIT 1

CORAM HEALTHCARE CORPORATION

RESOLUTIONS OF THE BOARD OF DIRECTORS

December 21, 1999

WHEREAS, shares of the Company's $.001 par value common stock (the "Common Stock") have been listed and traded on the New York Stock Exchange (the "Exchange") since the Company's inception in 1994;

WHEREAS, the Company has received notice from the Exchange that the Company has fallen below the criteria required for continued listing on the Exchange and has requested that the Company develop a plan for addressing such non-compliance or have the Common Stock de-listed from the Exchange;

WHEREAS, listing the Common Stock on the Exchange not only requires compliance with the listing criteria, but also requires the Company to pay certain listing fees and to devote attention to complying with the rules and regulations of the Exchange;

WHEREAS, this Board of Directors has determined that the costs of maintaining the listing of Company Common Stock on the Exchange outweigh the benefits of continuing such listing and has concluded that Company management should focus its attention on operating the Company's business and should take steps to remove the Common Stock from listing on the Exchange in a way that would not be unduly disruptive to the business of the Company and the market for Common Stock; and

WHEREAS, Company management has learned that shares of the Common Stock may be traded through the over the counter electronic bulletin board operated by the National Association of Securities Dealers (the "OTCBB") if the Company is able to enlist two qualified securities firms that would make a market for Company Common Stock;

NOW, THEREFORE, BE IT RESOLVED, that the Chairman, Chief Executive Officer and President, any Executive Vice President, any Senior Vice President or the Secretary of the Company (the "Authorized Officers") are each hereby authorized, empowered and directed for and on behalf of the Company to execute and deliver all agreements, documents or certificates and take all steps, including, but not limited to, the identification and retention of market makers for Common Stock, as any such Authorized Officer may deem necessary, appropriate or expedient to facilitate the move of the vehicle for trading of shares of Company Common Stock from the Exchange to the OTCBB or another appropriate securities exchange; and

COR-SUB CON 0023879

FURTHER RESOLVED, that all prior actions taken by the Authorized Officers with respect to the foregoing are hereby authorized, ratified and confirmed as the acts and deeds of the Company; and

FURTHER RESOLVED, that the Authorized Officers of the Company are each hereby authorized, empowered and directed, for and on behalf of the Company, to take all such actions and execute all such documents, agreements and certificates as may be necessary, appropriate or expedient to carry out the intent of these resolutions as set forth above and all such future actions are hereby authorized, ratified and confirmed as the acts and deeds of the Company.

COR-SUB CON 0023880

**EXHIBIT 2**

CORAM HEALTHCARE CORPORATION

RESOLUTIONS OF THE BOARD OF DIRECTORS

December 21, 1999

WHEREAS, Coram Healthcare Corporation (the "Company") has established and adopted the Coram Healthcare Corporation 401(k) Plan, as amended (the "Plan") to serve as a benefit to attract and retain qualified employees;

WHEREAS, Article VI of the Plan contemplates that the Company would match a certain portion of the contribution made by qualifying employees participating in the Plan using shares of the $.001 par value common stock of the Company ("Company Shares"); and

WHEREAS, the Board has been provided with a summary of the financial condition of the Company and has determined that it is in the best interests of the Company and its stockholders, given the condition of the Company, to amend the Plan to cease providing the employer match contemplated by Article VI of the Plan;

NOW, THEREFORE, BE IT RESOLVED, that the Company, as administrator of the Plan, hereby adopts, approves and confirms the amendment to the Plan set forth on Exhibit A hereto to effect the elimination of the employer match component of the Plan as contemplated by such amendment;

FURTHER RESOLVED, that the officers of the Company are hereby authorized, empowered and directed, for and on behalf of the Company, to take all such actions and execute all such documents, amendments, agreements and certificates as such officers shall deem necessary, appropriate or expedient to carry out the intent of these resolutions.

FURTHER RESOLVED, that all prior actions of the Authorized Officers with respect to the foregoing matters are hereby authorized, ratified and confirmed as the acts and deeds of the Company; and

FURTHER RESOLVED, that the Authorized Officers of the Company are each hereby authorized, empowered and directed, for and on behalf of the Company, to take all such actions and execute all such documents, agreements and certificates as may be necessary, appropriate or expedient to carry out the intent of these resolutions as set forth above and all such future actions are hereby authorized, ratified and confirmed as the acts and deeds of the Company.

COR-SUB CON 0023881

**EXHIBIT 3**

CORAM HEALTHCARE CORPORATION

RESOLUTIONS OF THE BOARD OF DIRECTORS

December 21, 1999

WHEREAS, this Board of Directors recognizes that the Company is facing a number of serious financial, litigation, operational and other challenges that may impair its ability to attract and retain qualified and experienced persons to serve on its Board of Directors and to serve as officers;

WHEREAS, this Board has previously authorized Company management to obtain insurance to cover the errors and omissions of its directors and officers in the course and scope of their employment and/or engagement with the Company and the Company currently maintains such coverage totaling $35 million; and

WHEREAS, this Board has determined that obtaining additional levels of insurance to cover such acts or omissions of its directors and officers would be in the best interests of the Company and its stakeholders;

NOW, THEREFORE BE IT RESOLVED, that the Chairman of the Board, Chief Executive Officer and President or any Executive Vice President, any Senior Vice President, any Vice President or the Secretary of the Company (the "Authorized Officers") are each hereby authorized, empowered and directed to obtain and expend Company funds to obtain additional insurance to cover certain acts or omissions of its directors and officers supplementing the Company's existing coverage to bring the overall coverage under such policies to an aggregate of $100,000,000 to be effective as of November 30, 1999;

FURTHER RESOLVED, that all prior actions taken by the Authorized Officers in searching for, negotiating, obtaining and binding the director and officer insurance coverages that were outlined at this meeting are hereby ratified, confirmed and approved as the acts and deed of the Company; and

FURTHER RESOLVED, that each Authorized Officer is hereby authorized, empowered and directed to take such further actions and make and execute as the act and deed of this Company any agreement, certificate or document as may be necessary, appropriate or expedient to carry out the intent of these resolutions as set forth above and all such future actions taken are hereby authorized, ratified and confirmed as the acts and deeds of the Company.

COR-SUB CON 0023882

## EXHIBIT 4

CORAM HEALTHCARE CORPORATION

RESOLUTIONS OF THE BOARD OF DIRECTORS

December 21, 1999

WHEREAS, this Board of Directors elected a new Chairman of the Board, Chief Executive Officer and President effective November 30, 1999, to lead the Company and its management team;

WHEREAS, the new Chairman of the Board, Chief Executive Officer and President has recommended that this Board consider continuing the use of his health care consulting firm, Dynamic Healthcare Solutions, L.L.C. ("Dynamic Healthcare"), so that the Company may continue to benefit from the consulting services offered by Dynamic Healthcare and its staff of professionals that are experienced in improving the performance of health care companies;

WHEREAS, the new Chairman of the Board, Chief Executive Officer and President has provided this Board with a summary of the experience and credentials of the Dynamic Healthcare staff and the role that he expects Dynamic Healthcare will play in consulting with the Company;

WHEREAS, the rates applicable to the engagement of Dynamic Healthcare are outlined on Exhibit A hereto and would be set forth in a Consulting Agreement that would be substantially similar to the Consulting Agreement previously negotiated between the Company and Dynamic Healthcare, recognizing that certain members of Dynamic Healthcare have become officers or employees of the Company; and

WHEREAS, this Board has determined that continuing the relationship with Dynamic Healthcare on the terms contemplated hereby would be in the bests interests of the Company and its stockholders due to, among other factors, the experience and credentials of the members of the team at Dynamic Healthcare and the established relationship they have with the Company's new Chairman of the Board, Chief Executive Officer and President;

NOW, THEREFORE BE IT RESOLVED, that the Chairman of the Board, Chief Executive Officer and President or any Executive Vice President, any Senior Vice President or the Secretary of the Company (the "Authorized Officers") are each hereby authorized, empowered and directed to execute and deliver, on behalf of the Company, a new consulting agreement with Dynamic Healthcare using the principal terms presented on Exhibit A with these resolutions and in substantially the form of the prior agreement

COR·SUB CON 0023883

negotiated between the Company and Dynamic Healthcare with such changes as such Authorized Officers may deem to be, in their discretion  in the best interests of the Company; and

FURTHER RESOLVED, each Authorized Officer is hereby authorized, empowered and directed, for and on behalf of the Company, to take all such other actions and execute all such documents, certificates and agreements, as may be necessary, appropriate or expedient to carry out the intent of these resolutions as set forth above.

COR-SUB CON 0023884

## EXHIBIT A

Coram services to be billed by Dynamic Healthcare Solutions, L.L.C. as follows

| Duties | Name | Rate |
|---|---|---|
| Investor Relations<br>Marketing Communications<br>Print Services | Kurt Davis | $500/day plus expenses |
| Software/Hardware Systems Consulting | Ron Mills | $1,000/day plus expenses |
| Organizational Planning<br>Business Plan Development<br>Human Resources<br>Management Incentive Plans | Dan Smithson | $750/day plus expenses |

COR-SUB CON 0023895

COR-SUB CON 0023886

Attachment 3

## KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

1301 AVENUE OF THE AMERICAS

NEW YORK, NEW YORK 10019-6022

ONE GATEWAY CENTER
SUITE 2600
NEWARK, NEW JERSEY 07102
973-645-9462

212-506-1700

FACSIMILE: 212-506-1800

700 LOUISIANA STREET
HOUSTON, TEXAS 77002
713-220-8800

DAVID M. FRIEDMAN
212-506-1740

February 28, 2000

VIA FACSIMILE

Mr. Daniel D. Crowley
Chairman, President and Chief Executive Officer
Coram Healthcare
1125 Seventeenth Street, Suite 2100
Denver, Colorado 80202

 Re: Proposal for Representation

Dear Mr. Crowley:

 Following up on our conversation of last week, we are pleased to present to you our proposal to act as special counsel to Coram Healthcare ("Coram") in connection with a possible financial restructuring.

Introduction

 Before discussing particular tasks and responsibilities, permit me to first summarize our understanding of the primary financial difficulties now confronting Coram:

- Coram has approximately $260 million in debt which is not being serviced. The lenders agreement to forebear with respect to such debt expires not later than May 15, 2000. Certain debt also matures next year. Coram's cash flow may be inadequate to service and/or repay this debt.

- Unless Coram shareholder equity exceeds a $75 million threshold (which it currently does not and will not absent a restructuring), Coram will lose a regulatory exemption under Stark II which is essential to its business.

CROWLEY107

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

- Coram is experiencing a contraction of its trade credit and needs to avoid any further restriction. This problem is exacerbated by Coram's limited access to working capital.

As we have discussed, each of these problems may be successfully addressed through a financial restructuring in which debtholders exchange their paper for a reduced amount of debt and new equity in the reorganized company. Typically, such a restructuring is most efficiently accomplished through a "pre-packaged" reorganization under Chapter 11 of the Federal Bankruptcy Code, although, as part of our due diligence, we would certainly give every consideration to alternative methods of accomplishing the same result.

## Implementation

A "pre-packaged" reorganization means essentially what it says: A comprehensive plan for restructuring Coram that is agreed to by the relevant parties before a Chapter 11 petition is ever filed. In a pre-packaged case, the steps proceeding bankruptcy are even more important than those which follow. Although every case is unique, set forth below is a general outline of the relevant steps to be taken:

STEP 1:    Determine enterprise value. (This enables the Board to determine which constituents are entitled to a recovery upon their claims/interests).

STEP 2:    Determine appropriate capital structure. (This enables the Board to determine the form of value to be distributed to parties who are "in the money").

STEP 3:    Solidify Management Team. (Resolve all issues relating to senior management).

STEP 4:    Negotiate with fulcrum creditors. (Reach an agreement with the Series A and Series B Notes).

STEP 5:    Bring other parties on board. (Negotiate with Aetna and parties to contracts proposed to be rejected).

STEP 6:    Develop "cram down" structure. (Create structure to impose plan on "out of the money" constituents).

STEP 7:    Resolve all legal issues. (Consider all corporate, tax and regulatory issues that may relate to transaction).

STEP 8:    Draft Plan of Reorganization and Disclosure Statement. (Finalize all documents necessary to consummate transaction).

-2-

CROWLEY108

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

STEP 9:     Presentation to Vendors/Providers. (Meet with trade to ensure smooth transition through Chapter 11 process).

STEP 10:     File for Chapter 11

STEP 11:     Disclosure Statement Approval and Solicitation of Votes on Plan.

STEP 12:     Confirmation and Consummation of Plan.

Responsibilities

    Steps 1 and 2 will be performed by an independent investment banking/valuation firm retained by Coram. Step 3 will be accomplished through discussions between senior management and the Board. Steps 4 through 8 will be performed by our firm with backup support from the investment bankers (on valuation issues), senior management (on business issues) and corporate, tax and regulatory counsel. Step 9 primarily will be the responsibility of senior management, with investment banking and legal support. Steps 10 through 12 primarily will be the responsibility of our firm.

Timing

    Although Steps 1 through 9 are presented in succession, many can be approached simultaneously. It would seem reasonable that Steps 1 and 2 can be performed in 30 days and Steps 3 through 9 can be achieved in 90 days or less. In other words, there is as much as a 4 month lead time to filing. Once filed, we should plan on another 90 days to achieve Steps 11 and 12.

Our Charges

    We charge on an hourly basis based upon the established hourly rates of our attorneys and paralegals. Most partners charge at rates between $350 and $450 per hour and most associates are between $200 and $300 per hour. My hourly rate is $525.

    We would ask for an advance retainer of $100,000 and would bill you monthly to maintain a positive retainer balance of $50,000. Prior to filing for Chapter 11, we will ask that our retainer be returned to $100,000. Of course, you may terminate our engagement at any time and we will refund to you the unused portion of our retainer.

    At this juncture, it is difficult to estimate what our charges will be in this matter. We would anticipate charges of at least $400,000 through the date of filing. Absent significant litigation in the Bankruptcy Court, we would expect post-filing charges to be approximately $200,000. Obviously, there will be additional charges from other professionals.

* * *

–3–

CROWLEY109

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

Please feel free to call me with any questions which you may have.

Sincerely,

David M. Friedman

– 4 –



MINUTES OF A MEETING

OF THE BOARD OF DIRECTORS OF

CORAM HEALTHCARE CORPORATION

**April 5, 2000**

A regular meeting of the Board of Directors of Coram Healthcare Corporation (the "Company") was held, pursuant to notice duly given, beginning at approximately 11:00 a.m. EST. In attendance at the meeting were the following Directors: Daniel D. Crowley, Chairman of the Board, Chief Executive Officer and President, Donald J. Amaral, William J. Casey, Steven A. Feinberg, L. Peter Smith (telephonically), and Sandra R. Smoley. Also participating in the meeting were Allen J. Marabito, Executive Vice President, Scott Danitz, Senior Vice President, Finance and Chief Accounting Officer, Kurt Davis, Dynamic Healthcare Solutions LLC, Michael J. Kahn, Esquire, Folger Levin & Kahn LLP, David Friedman, Esquire, Kasowitz, Benson, Torres & Friedman LLP, Charles Leonard, Partner, Chlopak Leonard Schechter and Associates, and Robert Mead, President and CEO, Gavin Anderson & Company.

Mr. Crowley, Chairman of the Board, convened the meeting and Mr. Marabito acted as secretary at the meeting.

<u>Review and Approval of Minutes from Prior Meetings</u>

Upon a motion duly made and seconded, the Minutes from the prior meetings of the Audit Committee dated March 9, 2000, and of the Board of Directors dated March 9, 2000, having been previously provided to the Board were unanimously approved as presented.

<u>Legal Update</u>

In a privileged and confidential communication, Mr. Kahn Esq., the lead trial counsel for the Company in the pending lawsuit, *Coram Healthcare vs. Aetna U.S. Healthcare*, advised and discussed with the Board the relevant procedural, substantive, mock trial and claim or damage issues that he and his firm were addressing in preparation for the trial that is scheduled to begin April 19, 2000. Mr. Kahn, after responding to the Board's questions, advised the Board of the process that would be utilized to keep Senior Management and the Board informed during the pendency of the trial.

TRUSTEE009454
USDC-DE #04-1565

Minutes of the Board of Directors
April 5, 2000
Page 2

## Coram Prescription Services Sale Update

Mr. Crowley led a discussion of the analysis of the offers and counteroffers in the Coram Prescription Services ("CPS") auction. Materials previously provided to the Board setting out the gain calculation, cost/benefit analysis, cash impact of the sale, management payments, financials, assumptions and sources and uses of cash were reviewed and discussed with the Board concerning the proposed purchase by GTCR Golder Rauner LLC ("GTCR") as an equity and debt sponsor of CPS management.

The Board addressed the potential sale, its timing, the comparison of CPS relative to the industry and other relevant information and analytics regarding the operational, financial and managerial strengths and weaknesses of this business unit and the progress of the auction process. Various alternatives were discussed and analyzed along with the management buy-out elements. Following the discussion, the Board unanimously resolved to proceed with the approximately $41.3 million bid proffered by GTCR, subject to usual and customary terms, conditions, due diligence and Board approval. As previously determined, the Board reserved, under certain circumstances, the possibility of retaining CPS rather than selling this business unit.

## Restructuring Discussion

Mr. Crowley addressed the financial issues facing the Company. Mr. Crowley presented financial and other information regarding various financial and operational components of the Company such as the level of recurring operating cash flow, disbursements analysis, trends in accounts receivable and accounts payable (reduced from $19.5 million to $7.3 million since November 1999), principal payments on the revolver ($4.5 million since November 1999), company wide cost reductions, average monthly operating expenses, average bi-weekly payroll, and aging cycles. Analysis and discussion also included comparisons of the present and historical financial and operational performance of the Company, including the impact of prior one-time occurrences and current business trends and operating strategies regarding the beginning and ending sales mix.

Mr. Crowley next presented information concerning the Company's ability to meet its financial and regulatory obligations under present circumstances. To this end, the Board discussed further the so-called "Stark II" law and the necessity of fulfilling the equity requirements imposed by the public company exception of Stark II by year end December 31, 2000; the potential financial default on the credit facility (revolver) of $38.5 million as of March 31, 2000, which becomes due on February 26, 2001; the potential financial default on the Series A notes of $168.4 million as of March 31, 2000, which becomes due on May 26, 2001; and the

TRUSTEE009455
USDC-DE #04-1565

Minutes of the Board of Directors
April 5, 2000
Page 3

potential financial default on the Series B notes of $92.1 million as of March 31, 2000, which may be called by the lenders on May 26, 2001.

Materials previously provided to the Board setting out the financial and regulatory obligations were reviewed and questioned. Also materials showing combinations of certain variables affecting the restructuring results (for example, CPS is sold or not sold, the debt is or is not restructured to a new revolver and a new loan is or is not entered into) were used for purposes of analysis. In the analysis several additional elements were considered, such as the amount of the CPS net book gain, interest rates, term, origination fees, and pay-out periods with differing operating and income assumptions. Additionally, the discussion included various recommendations of Management regarding an equity conversion in the amount of approximately $110 million, the establishment of a new revolver in the amount of $25 million and the establishment of a new term loan in the amount of $150 million.

Financial Update

Scott Danitz provided the Company's operating results for the month ended February 29, 2000, and the year to date for the two months ended February 29, 2000. The operating cash flow statement and the analysis of actual to budget variances along with the consolidated balance sheets at February 29, 2000, and December 31, 1999, were presented to the Board. Next, discussion focused on revenue growth, the revenue trends, the sales mix and the end mix, as well as the cash flow and float. Other items of discussion included the refund of $750,000 of the Cardinal deposit and the effect of the termination of Aetna's National Ancillary Services Agreement (to be effective April 12, 2000) on the Company's Northeast region.

Further, the Board addressed elements pertinent to the restructuring issues such as contract commitments, lease commitments, settlements, severance agreements and other matters such as goodwill, depreciation and amortization. Discussion addressed marketplace perceptions of a potential restructuring and the possible impact on physician referrals and vendor expectations.

Discussion Regarding Restructuring Rights, Responsibilities and Alternatives

In a privileged and confidential communication, David Friedman, Esq., Special Counsel, provided legal advice regarding the various aspects of the Company's restructure of its non-trade indebtedness and capital structure. Mr. Friedman advised the Board on his experience and his firm's expertise. Mr. Friedman responded to the questions of the Board, describing various approaches to restructuring along with the strengths and weaknesses of each approach.

TRUSTEE009456
USDC-DE #04-1565

Minutes of the Board of Directors
April 5, 2000
Page 4

     Mr. Friedman also discussed with the Board the legal issues attending the Company's need to obtain net equity of $75,000,000 by the end of 2000 and to address potential financial defaults. Mr. Friedman indicated that there will be situations that will be atypical and not easily generalized; however, Mr. Friedman described a process directed to maximize recovery by creditors and shareholders by preserving the Company as a viable entity with a going concern value.

     Mr. Friedman discussed the determination of the current value and the value of the entity following restructuring of the debt. Also discussed was the enterprise value of the Company, its debt capacity and the assets available for debt and equity interests. He also discussed with the Board disclosure requirements and financial and other legal reporting requirements along with overall business planning for debt restructuring and required financial information and responded to the Board's inquiries.

## Discussion of Public Relation Issues

     In response to the Board's inquiries regarding restructuring the debt and the perceived impact on employees, vendors, regulators, payors, and other constituents, Charlie Leonard, Partner, of Chlopack, Leonard, Schecter and Associates, and Robert Mead, President and CEO of Galvan Anderson and Company, addressed the Board. Messrs. Leonard and Mead discussed with the Board their background and firm capacity, the locations of their offices and the relationships of the two firms by way of partnership. They also provided their prior industry, association and healthcare representations. Mr. Leonard and Mr. Mead respectively discussed their prior experience in the R-Net bankruptcy and other related proceedings both within and without the healthcare industry.

     The Board discussed the Company's communication functions and the requirements of communicating with the Company's constituents pertaining to the business, its future prospects and, where applicable, compliance with various regulatory and other requirements. Messrs. Mead and Leonard advised on the means of managing communications and public relations in a referral driven business; maintaining and defending the integrity of the Company; procedures that provide documentation at all levels of the organization; the communication strategy to maintain and stabilize the business and curtail the loss of key personnel, employees or vendors; and to maintain the continuation of the ordinary business activity. They also discussed the present marketplace perceptions of the Company's performance and circumstances, including assuring the continuing availability of goods and services from creditors, retaining key employees, maintaining creditor relations and preserving referral sources.

TRUSTEE009457
USDC-DE #04-1565

Minutes of the Board of Directors
April 5, 2000
Page 5

Subsequent to the advice of Management and the outside advisors, the Members of the Board having their inquiries responded to, upon a motion duly made and seconded, unanimously approved the following resolution:

Restructuring Resolution

WHEREAS, this Board of Directors recognizes that there are numerous financial difficulties and contingencies impacting the Company, any or all of which may require the Company to undertake a restructuring of its non-trade indebtedness and capital structure (the "Restructuring");

WHEREAS, in the judgment of the Board of Directors, it is desirable and in the best interests of this Company, its creditors, stockholders, employees and other interested parties, that the Company explore alternatives relating to the Restructuring;

WHEREAS, Company management has recommended that the Company engage special counsel to assist the Company in considering its Restructuring alternatives;

WHEREAS, management has identified David M. Friedman, Esq. of the firm of Kasowitz, Benson, Torres & Friedman LLP ("KBT&F.") to serve in the role of special counsel for the Company relating to the Restructuring;

WHEREAS, management has recommended that the Company engage an independent financial advisor to assist the Company in considering its Restructuring alternatives;

WHEREAS, management has recommended that the Company engage a public relations firm to assist the Company in preserving its business relationships preceding, during and following the implementation of any Restructuring;

WHEREAS, the Board of Directors has also been advised that it may be appropriate, given the legal and other issues associated with the review and implementation of Restructuring alternatives to retain special legal counsel to represent and counsel the directors of the Company that are not employees of the Company (the "Outside Directors") to assist them in carrying out their duties to the Company and its creditors, stockholders, employees and other interested parties; and

TRUSTEE009458
USDC-DE #04-1565

Minutes of the Board of Directors
April 5, 2000
Page 6

WHEREAS, this Board has determined that engaging such legal, financial and public relations advisors experienced in representing and counseling companies with debt or equity restructuring needs would be in the best interests of the Company and its creditors, stockholders, employees and other interested parties;

NOW, THEREFORE BE IT RESOLVED, that the Chairman of the Board, Chief Executive Officer and President or its Executive Vice President, any Senior Vice President or the Secretary of the Company (the "Authorized Officers") are each hereby authorized, empowered and directed to engage KBT&F as special counsel to the Company in connection with the Restructuring substantially under the terms and conditions set forth in the draft retention agreement between the Company and KBT&F attached hereto;

FURTHER RESOLVED, that the Authorized Officers are each hereby authorized, empowered and directed to engage an independent financial advisor deemed qualified by them to advise and counsel the Company in connection with the Restructuring on such terms as may be negotiated by the Authorized Officers on behalf of the Company;

FURTHER RESOLVED, that the Authorized Officers are each hereby authorized, empowered and directed to assist the Outside Directors in identifying and engaging appropriate legal counsel to represent and counsel them in connection with their service to the Company in connection with the Restructuring;

FURTHER RESOLVED, that the Authorized Officers are each hereby authorized, empowered and directed to engage a public relations firm deemed qualified by them to advise and counsel the Company in connection with the Restructuring on such terms as may be negotiated by the Authorized Officers on behalf of the Company;

FURTHER RESOLVED, that the Authorized Officers of the Company are, and each one of them hereby is, authorized, empowered and directed, for and on behalf of the Company to negotiate the terms of the Restructuring including to negotiate the terms of any and all necessary documents and instruments related thereto, all subject to further review and approval of the Board of Directors; and

FURTHER RESOLVED, that each Authorized Officer of the Company be, and each of them hereby is, authorized, empowered and directed, for and on

TRUSTEE009459
USDC-DE #04-1565

B90

Minutes of the Board of Directors
April 5, 2000
Page 7

behalf of the Company, to do and perform, or cause to be done and performed, all such acts, deeds and things, and to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, amendments, undertakings, documents, instruments or certificates as any such Authorized Officer of the Company may deem necessary, advisable or appropriate to effectuate, execute and carry out fully the foregoing resolutions, and that all such action taken by any Authorized Officer prior to the date of these resolutions having heretofore been taken is hereby, ratified, confirmed and approved.

Compensation Committee Report

Stock Options

The Board next considered Mr. Crowley's request to approve additional stock option grants to certain members of senior management. After review and consideration of the recommendations as set forth on Exhibit A attached, upon a motion duly made and seconded, the Board unanimously approved the following resolution:

WHEREAS, the Company maintains the 1994 Coram Healthcare Corporation Stock Option/Stock Issuance Plan, as amended (the "Option Plan"), for the purpose, among others, of providing management and the Board of Directors with a compensation tool designed to align the interests of Company officers, employees and certain others with the interests of the Company's stockholders;

WHEREAS, the Chairman of the Board, Chief Executive Officer and President has submitted a recommendation to the Compensation Committee of this Board of Directors that provides for the grant of options to purchase shares of the Company's $.001 par value common stock (the "Common Stock") pursuant to the Option Plan to certain persons whose names are set forth on the list attached hereto as Exhibit A; and

WHEREAS, the Compensation Committee had accepted the recommendation of the Company's Chairman, Chief Executive Officer and President and has approved the grant of such options to the persons listed on Exhibit A under the terms and conditions described on Exhibit A (the "Recommended Options");

NOW, THEREFORE BE IT RESOLVED, that the issuance of all Recommended Options to purchase shares of Company Common Stock under the

TRUSTEE009460
USDC-DE #04-1565

Minutes of the Board of Directors
April 5, 2000
Page 8

Option Plan that are listed on Exhibit A hereto is hereby authorized, ratified, confirmed and adopted; and

FURTHER RESOLVED, that the Chairman, Chief Executive Officer and President, any Executive Vice President, any Senior Vice President or the Secretary of the Company (the "Authorized Officers") is each hereby authorized, empowered and directed to make, execute and deliver on behalf of the Company all stock option agreements and all other agreements, documents or certificates deemed necessary, appropriate or expedient to effect the issuance of the Recommended Options; and

FURTHER RESOLVED, that each of the Authorized Officers of the Company is hereby authorized, empowered and directed, for and on behalf of the Company, to take all such other actions and execute all such other documents, agreements and certificates as may be necessary, appropriate or expedient to carry out the intent of the foregoing resolutions.

## Employment Agreement Amendment

In a closed session without the presence of management, the Compensation Committee reviewed with the Board the proposed amendment to Mr. Crowley's Employment Agreement.

There being no further business, the regular meeting of the Board was adjourned at approximately 2:45 p.m. EST.

Respectfully submitted,

Allen Marabito

Allen J. Marabito, Secretary of the Meeting

TRUSTEE009461
USDC-DE #04-1565

EXHIBIT A

Board of Director's
Compensation Committee


New Hire Stock Option Request


As part of the long-term incentive program used to attract qualified individuals to Coram, stock options are used as part of an individual's total compensation package.

This letter is to request the Coram Healthcare Board of Director's Compensation Committee grant options to the following newly employed individuals. Vesting would be per the 1994 Stock Option Plan.

| Name | Position | Options |
|------|----------|---------|
| Frank Geiger | Senior Vice President, Purchasing | 50,000 |
| Gerald Reynolds | Vice President, Controller | 25,000 |
| Alex Schott | Director, Accounting | 5,000 |

*Plan Summary:*

| | |
|---|---|
| Available as of May 15, 2000 | 528,965 |
| Grants requested | ( 80,000) |
| Remaining available | 448,965 |

Please indicate your approval by signing below:


_____     _____     _____     _____
Stephen Feinberg                      Date                     Peter Smith                               Date

TRUSTEE009462
USDC-DE #04-1565

MINUTES OF A TELEPHONIC MEETING

OF THE BOARD OF DIRECTORS OF

CORAM HEALTHCARE CORPORATION

August 7, 2000

A telephonic meeting of the Board of Directors of Coram Healthcare Corporation (the "Company") was convened at 3:05 p.m. MDT. Participating in the meeting were the following Directors: Daniel D. Crowley, Chairman of the Board, Chief Executive Officer and President; Donald J. Amaral; William J. Casey; and Sandra R. Smoley. L. Peter Smith was absent. Participating telephonically were Allen J. Marabito, Executive Vice President; Scott R. Danitz, Senior Vice President, Finance and Chief Accounting Officer; and Scott T. Larson, Senior Vice President, General Counsel and Secretary. Robert Stobo, Eric Scroggins and Russ Belinsky of Chanin Capital Partners and David Friedman, Esq. and Adam Shiff, Esq. of Kasowitz, Benson, Torres & Friedman, LLP also participated in the meeting. Mr. Crowley acted as Chairman of the meeting and Mr. Larson kept the minutes.

The first item of business was a review and discussion of the proposed resolutions set forth on Exhibit A hereto that had been distributed to the Board of Directors prior to the meeting. It was confirmed that all of the members of the Board had received copies of the proposed resolutions and the proposed plan of reorganization and disclosure statement that had been discussed at the August 4, 2000, meeting. David Friedman was invited to discuss and explain each of the proposed resolutions. Prior to such discussion, Mr. Crowley inquired whether Mr. Amaral or any of the other members of the special committee that had been established at the July 31, 2000, meeting of the Board of Directors ("Committee") had received any word regarding the Committee's request for the debt holders to provide value to the Company's stockholders as part of the plan of reorganization. Mr. Amaral confirmed that no word had been received by the Committee.

As an extension of the management retention program, a motion was made to approve a retention bonus for Mr. Crowley, fifty percent of which would be paid on December 31, 2000; and fifty percent of which be paid on December 31, 2001. The total amount of the bonus would be $800,000, Chanin Capital Partners having opined that the bonus amount was reasonable. After the motion was seconded, and after discussion, Messrs. Amaral and Casey and Ms. Smoley voted in favor of providing such bonus for Mr. Crowley. Mr. Crowley abstained from the voting.

Mr. Friedman then proceeded with a privileged and confidential summary and explanation of the proposed resolutions and plan of reorganization. A copy of such resolutions is set forth on Exhibit A hereto. Mr. Friedman explained that if the resolutions were adopted, that he and members of his firm and local counsel would go to the bankruptcy court, file the petition and first day motions and otherwise take the actions necessary to commence the Chapter 11 case as it has been discussed with this Board. A discussion occurred regarding the contents of the

TRUSTEE009481
USDC-DE #04-1565

Minutes of the Board of Directors
August 7, 2000
Page 2

first day motions, the related press release, the debtor in possession financing agreement and the time frame that was expected for these matters. It was also stated that the filings should occur without interrupting the day-to-day operations of the Company's subsidiaries.

A discussion ensued regarding, among other things, whether the Company's directors and officers liability coverage would remain in force. Mr. Friedman responded that he believed such coverage would remain in force. He also confirmed that the necessary papers would be ready in time to commence the filing on the following day. Upon a motion duly made and seconded, the resolutions set forth on Exhibit A were unanimously adopted and confirmed.

Mr. Friedman confirmed that, with the adoption of such resolutions, he would make the necessary arrangements to cause the filing to be made in Delaware on the following day. It was explained that a press release would be issued on such day. The text of the press release was reviewed by the Board. After discussion and questions, the press release was unanimously approved by the Board.

There being no further business, the meeting was adjourned at approximately 4:15 p.m. MDT.

Respectfully submitted,

Scott T. Larson
Secretary of the Meeting

TRUSTEE009482
USDC-DE #04-1565

## EXHIBIT A

RESOLVED, that in the judgment of the Board of Directors, it is desirable and in the best interest of this Company, its creditors, stockholders, employees and other interested parties, that a petition be filed by the Company seeking relief under the provisions of chapter 11, Title 11, United States Code, (the "Bankruptcy Code"); and it is further

RESOLVED, that the Officers of the Company be, and each one of them hereby is, authorized and directed, on behalf of and in the name of the Company, to execute and verify a petition under chapter 11 of the Bankruptcy Code in such appropriate form and to cause the same to be filed with the United States Bankruptcy Court for the District of Delaware at such time as the Officer executing said petition on behalf of this Company shall determine; and it is further

RESOLVED, that the law firms of Kasowitz, Benson, Torres & Friedman, LLP, 1301 Avenue of the Americas, New York, New York 10019; and Pachulski, Stang, Ziehl, Young & Jones, P.C., 919 North Market Street, Suite 1600, Wilmington, Delaware 19801 be, and they hereby are, employed under general retainers as attorneys for the Company in connection with the preparation of the petition, the commencement and pursuit of the chapter 11 case through final determination and in all related proceedings; and it is further

RESOLVED, that the law firm of Reed Smith Shaw & McClay, LLP, 1301 K Street, N.W., Washington, D.C. 20005, be, and it hereby is, employed under a general retainer as special regulatory counsel for the Company in the chapter 11 case and in all related proceedings; and it is further

RESOLVED, that the consulting firm of Chanin Capital Partners, 11100 Santa Monica Blvd., Suite 830 Los Angeles, CA 90025 be, and it hereby is, employed as financial consultants for the Company in the chapter 11 case and in all related proceedings; and it is further

RESOLVED, that the communications consulting firms Gavin Anderson & Company, 220 East 42nd Street, New York, New York, 10017, and Chlopak, Leonard, Schechter & Associates, 1850 M Street NW, Suite 550, Washington, D.C. 20036 be, and they hereby are, employed under a general retainer as communications consultants for the Company in the chapter 11 case and in all related proceedings; and it is further

RESOLVED, that the accounting firm Ernst & Young LLP, 1285 Avenue of the Americas, New York, New York 10036, be, and it hereby is, employed as accountants for the Company in the chapter 11 case and in all related proceedings; and it is further

RESOLVED, that the Officers of this Company or any one of them be, and each of them hereby is, authorized to execute and file all petitions, schedules, motions, lists, applications, pleadings and other papers for and on behalf of the Company, as debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code, and in that connection to employ and retain all assistance by legal counsel, accountants or other professionals and to take any and all action which they deem necessary and proper in connection with the chapter 11 case, with a view

TRUSTEE009483
USDC-DE #04-1565

to the appropriate pursuit and conclusion of such case, their authority thereunto to be evidenced by the taking of such actions; and it is further

RESOLVED, that the Company, as debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code, shall be, and hereby is, authorized (a) to borrow funds in such amounts, from such lenders and on such terms as may be approved by any one or more of the Officers as reasonably necessary for the continuing conduct of the affairs of the Company, (b) to open and maintain such bank accounts, to enter into agreements in connection with any such bank accounts and to effect funds transfers to and withdrawals from any such accounts as may be approved by any one or more of the Officers as reasonably necessary to the conduct of the affairs of the Company and (c) to grant security interests in and liens upon all or substantially all of the Company's assets as may be deemed reasonably necessary by any one or more of the Officers in connection with such borrowings or in connection with obtaining authority to use collateral, cash or otherwise; and it is further

RESOLVED, that the Officers shall be, and each of them hereby is, authorized and empowered to execute, deliver, certify, file and/or record, and perform, for and on behalf of the Company, as debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code, agreements, instruments, motions, affidavits, applications, and any and all other documents necessary or appropriate to facilitate the transactions contemplated by the foregoing resolution (the "Financing Documents"), and that Financing Documents containing such provisions, terms, conditions, covenants, warranties and representations as may be deemed reasonable necessary or appropriate by the Officer or Officers so acting be, and hereby are authorized and approved; and it is further

RESOLVED, that the Officers are hereby authorized to execute and to cause to be filed the Plan of Reorganization (the "Plan") for the Company in substantially the form presented to the Board of Directors, together with a related Disclosure Statement and any and all necessary ancillary documents, including any and all modifications, supplements and amendments thereto, and to take all appropriate actions to obtain Bankruptcy Court approval of the Plan and the successful conclusion of the Company's reorganization; and it is further

RESOLVED, that any and all past actions heretofore taken by officers and directors of the Company in the name of and on behalf of the Company in furtherance of any or all of the preceding resolutions or actions contemplated thereby be, and the same hereby are, ratified, confirmed and approved.

TRUSTEE009484
USDC-DE #04-1565

00 - 3290

| FORM B1 | United States Bankruptcy Court<br>District of  Delaware | Voluntary Petition |
|---|---|---|

| Name and Debtors *(if individual, enter Last, First, Middle)*:<br>CORAM HEALTHCARE CORPORATION | Name of Joint Debtor *(Spouse) (Last, First, Middle)*: |
|---|---|
| All Other Names used by this Debtor in the last 6 years *(include married, maiden, and trade names)*:<br><br>CORAM HEALTHCARE<br>CORAM | All Other Names used by the Joint Debtor in the last 6 years *(include married, maiden, and trade names)*: |
| Soc. Sec./Tax I.D. No. *(if more than one, state all)*:<br>33-0615337 | Soc. Sec./Tax I.D. No. *(if more than one, state all)*: |
| Street Address of Debtor *(No. & Street, City, State & Zip Code)*:<br>1125 Seventeenth Street– Suite 2100<br>Denver, Colorado 80202 | Street Address of Joint Debtor *(No. & Street, City, State & Zip Code)*: |
| County of Residence or of the<br>Principal Place of Business:    SAME | County of Residence or of the<br>Principal Place of Business: |
| Mailing Address of Debtor *(if different from street address)*:   SAME | Mailing Address of Joint Debtor *(if different from street address)*: |
| Location of Principal Assets of Business Debtor<br>*(if different from street address above)*:    Delaware | |

### Information Regarding the Debtor (Check the Applicable Boxes)

**Venue** *(Check any applicable box)*
☒ Debtor has been domiciled or has had a residence, principle place of business, or principal assets in this District for 180 days immediately proceeding the date of this petition or for a longer part of such 180 days than in any other District
☒ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

| **Type of Debtor** *(Check all boxes that apply)* | **Chapter or Section of Bankruptcy Code Under Which the Petition is Filed** *(Check one box)* |
|---|---|
| ☐ Individual     ☐ Railroad<br>☒ Corporation     ☐ Stockbroker<br>☐ Partnership     ☐ Commodity Broker<br>☐ Other _____ | ☐ Chapter 7     ☒ Chapter 11     ☐ Chapter 13<br>☐ Chapter 9     ☐ Chapter 12<br>☐ Sec. 304 - Case ancillary to foreign proceeding |

| **Nature of Debts** *(Check one box)* | |
|---|---|
| ☐ Consumer/Non-Business     ☒ Business | **Filing Fee** *(Check one box)* |

| **Chapter 11 Small Business** *(Check all boxes that apply)*<br>☐ Debtor is a small business as defined in 11 U.S.C. § 101<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | ☒ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (Applicable to individuals only)<br>    Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments.<br>    Rule 1006(b).  See Official Form No. 3. |
|---|---|

**Statistical/Administrative Information** *(Estimates only)*
☒ Debtor estimates that funds will be available for distribution to unsecured creditors
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

| Estimated Number of Creditors: | 1-15 | 16-49 | 50-98 | 100-200 | 200-999 | 1,000 over |
|---|---|---|---|---|---|---|
| | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| Estimated Assets: | | | | | | | |
|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000 | $50,000 to<br>$100,000 | $100,000 to<br>$500,000 | $500,000 to<br>$1,000,000 | $1,000,000 to<br>$10 million | $10,000,000 to<br>$50 million | $50,000,000 to<br>$100 million | More than<br>$100 million |
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| Estimated Debts: | | | | | | | |
|---|---|---|---|---|---|---|---|
| $0 to<br>$50,000<br>million | $50,000 to<br>$100,000 | $100,000 to<br>$500,000 | $500,000 to<br>$1,000,000 | $1,000,000 to<br>$10 million | $10,000,000 to<br>$50 million | $50,000,000 to<br>$100 million | More than<br>$100 |
| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |



| **Voluntary Petition** *(This page must be completed and filed in every case)* | **Name of Debtor(s):** CORAM HEALTHCARE CORPORATION | FORM B1, Page 2 |
|---|---|---|

**Prior Bankruptcy Case Filed Within Last 6 Years** *(If more than one, attach additional sheet)*

| Location: Where Filed: | NONE | Case Number: | Date Filed: |
|---|---|---|---|

**Pending Bankruptcy Case Filed by an Spouse, Partner, Affiliate of this Debtor** *(If more than one, attach additional sheet)*

| Name of Debtor: CORAM INC. * SEE ALSO ATTACHMENT I | Case Number: 00-_____ | Date Filed: AUGUST ___, 2000 |
|---|---|---|
| District: DELAWARE | Relationship: SUBSIDIARY | Judge: UNASSIGNED |

**Signatures**

| Signature(s) of Debtor(s) *(Individual/Joint)* | Signature of Debtor *(Corporation/Partnership)* |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct. *(If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7)* I am sworn that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States code, understand the relief available under each such chapter, and choose to proceed under chapter 7. I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br> Signature of Debtor<br><br>X _____<br> Signature of Joint Debtor<br><br>_____<br> Telephone Number *(If not, represented by attorney)*<br><br>_____<br> Date | I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the Debtor.<br><br>The debtor requests relief in accordance with the chapter of title 11, United States, Code, specified in this petition.<br><br>X *Allen J. Marabito*<br> Signature of Authorized Individual<br><br>Allen J. Marabito<br> Printed Name of Authorized Individual<br><br>Executive Vice President<br> Title of Authorized Individual<br><br>August 8, 2000<br> Date |

| Signature of Attorney | Signature of Non-Attorney Petition Preparer |
|---|---|
| X *Laura Davis Jones*<br> Signature of Attorney for Debtor(s)<br><br>David M. Friedman, Esq.        Laura Davis Jones, Esq.<br> Printed Name of Attorney for Debtor(s)<br><br>Kasowitz, Benson, Torres &        Pachulski, Stang, Ziehl,<br>& Friedman, LLP        Young & Jones, PC<br> Firm Name<br><br>1301 Avenue of the Americas        919 North Market Street<br>New York, New York 10019        Wilmington, DE 19801<br> Firm Address<br><br>(212) 506-1700        (302) 652-4100<br> Telephone Number<br><br>August 8, 2000        August 8, 2000<br> Date | I certify that I am a bankruptcy petition preparer as defined in 11 U.S.C. 110, that I prepared this document for compensation, and that I have provided the debtor with a copy of this document.<br><br>X _____<br> Printed Name of Bankruptcy Petition Preparer<br><br>_____<br> Social Security Number<br><br>_____<br> Address<br><br>_____<br> Name and Social Security Numbers of all other individuals who prepared or assisted in preparing this document<br><br>If more that one person prepared this document, attach additional sheets conforming to the appropriate official forms for each person. |

| **Exhibit A** *(To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11)*<br>☒ Exhibit A is attached and made a part of this petition. | X _____<br> Signature of Bankruptcy Preparer<br><br>_____<br> Date |
|---|---|
| **Exhibit B** *(To be completed if debtor is an individual whose debts are primarily consumer debts)*<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11,12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter.<br><br>X _____<br> Signature of Attorney for Debtor(s)        Date | A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of the Bankruptcy Procedure may result in fines or imprisonment of both 11 U.S.C. § 110; 18 U.S.C. § 156. |

<u>ATTACHMENT 1</u>

### Pending Bankruptcy Cases Filed By Any
<u>Spouse, Partner Or Affiliate Of The Debtor</u>

1. Name:              Coram Resource Network, Inc.

   Case No.:          99-2889.

   Date:              Filed August 19, 1999.

   Relationship:      Indirect Subsidiary

   District:          Delaware

   Judge:             Mary F. Walrath

2. Name:              Coram Independent Practice Association, Inc.

   Case No.:          99-04176.

   Date:              Filed November 12, 1999.

   Relationship:      Indirect Subsidiary

   District:          Delaware

   Judge:             Mary F. Walrath

EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CORAM HEALTHCARE CORP. and | ) | Chapter 11 |
| CORAM, INC. | ) | |
| | ) | Case Nos. 00-___ ( ) |
| Debtors. | ) | through 00-___ ( ) |
| | ) | |
| | ) | Jointly Administered |

## EXHIBIT A TO VOLUNTARY PETITION

1.    Coram Healthcare Corporation's ("CHC") employer identification number is 33-0615337.

Its SEC file number is 1-11343.

2.    The following financial data is the latest available information and refers to CHC's condition on March 31, 2000 on a consolidated basis:

   a.   Total Assets:          approximately $389,875,000
   b.   Total Liabilities:     approximately $416,457,000

   c.   Debt securities held by more than 500 holders: None.

| | Number of Shares | Holders | Value |
|---|---|---|---|
| d. Preferred Stock (Issued & Outstanding): | None | | |
| e. Common Stock (Issued and Outstanding): | _____ | _____ | Undetermined |

3.    Brief description of debtor's business:

CHC is a leader in providing comprehensive infusion care and related services to high acuity and often chronically ill patients. Its debtor and non-debtor direct and indirect operating subsidiaries provide the following services, among others: administering to patients in their homes injectable and intravenous antibiotic and antiviral therapies, intravenous life sustaining nutrients, blood products for immune deficiencies and Hemophilia, chemotherapy, and blood transfusions.

4.    List the name of any person who directly or indirectly owns, controls, or holds with power to vote, 20% or more of the voting securities of debtor:

| Name | | Percentage Ownership |
|------|------|------|
| a.   An investor group consisting of the following people: | | |
| Mark Slezak | | 1.2% |
| Ann & Robert H. Lurie Foundation | | 8.1% |
| Samstock, L.L.C. | | 0.9% |
| Jeanmarie Weinstein | | |
| Jackson Square Partners, L.P. | | 4.0% |
| Jackson Square Management, LLP | | 4.0% |
| Will K. Weinstein Revocable Trust UTA (2/27/90) | | 4.1% |
| Will K. Weinstein | | 4.1% |
| Peter Imber | | 4.0% |
| Scott Dalton | | 4.0% |
| Michiko D. Baldridge | | 4.0% |
| Jerome Blank | | 0.8% |
| AEOW '96, L.L.C. | | 0.1% |
| Andrew Blank | | 0.4% |
| Harry Heller Falk | Less than | 0.1% |
| F. Philip Handy | | 2.0% |
| Heller Family Limited Partnership | | 0.3% |
| Bernard Osher Trust UTA (3/8/88) | | 1.9% |
| JB Capital Management, Inc. | | 0.1% |
| Bernard Osher | | 1.9% |
| RHH Company | | 1.8% |
| Richard L. Haydon | | 3.5% |
| b.   Cerberus Partners, L.P. | | 30.8% |
| c.   Goldman Sachs Credit Partners, L.P. | | 30.5% |
| d.   Stephen Feinberg | | 30.8% |

*[Handwritten annotations: "→ Jackson employee" next to Peter Imber; "→ Weinstein's Adm" next to Michiko D. Baldridge]*

5.   List the names of all corporations, 20% or more of the outstanding voting securities of which are directly or indirectly owned, controlled, or held, with power to vote, by debtor:

| Name | Percentage Ownership |
|------|------|
| See Attachment 2 attached hereto. | |

## ATTACHMENT 2

Corporations, 20% or more of the outstanding voting securities of which are directly or indirectly owned, controlled, or held, with power to vote, by the Debtors.

# EXHIBIT B

CERTIFICATE OF RESOLUTIONS

I, Allen J. Marabito, Executive Vice President of Coram Healthcare Corporation ("CHC"), a Delaware corporation, hereby certify that at a special meeting of the Board of Directors of CHC, duly called and held on August 7, 2000, the following resolutions were duly adopted in accordance with the requirements of the Delaware General Corporation Law and that said resolutions have not been modified or rescinded and are still in full force and effect on the date hereof:

following resolutions were adopted and recorded in the minute book of the Company, and they have not been modified or rescinded, and are still in full force and effect:

RESOLVED, that in the judgment of the Board of Directors, it is desirable and in the best interest of this Company, its creditors, stockholders, employees and other interested parties, that a petition be filed by the Company seeking relief under the provisions of chapter 11, Title 11, United States Code, (the "Bankruptcy Code"); and it is further

RESOLVED, that the Officers of the Company be, and each one of them hereby is, authorized and directed, on behalf of and in the name of the Company, to execute and verify a petition under chapter 11 of the Bankruptcy Code in such appropriate form and to cause the same to be filed with the United States Bankruptcy Court for the District of Delaware at such time as the Officer executing said petition on behalf of this Company shall determine; and it is further

RESOLVED, the law firms of Kasowitz, Benson, Torres & Friedman, LLP, 1301 Avenue of the Americas, New York, New York 10019; and Pachulski, Stang, Ziehl, Young & Jones, P.C., 919 North Market Street, Suite 1600, Wilmington, Delaware 19801 be, and they hereby are, employed under general retainers as attorneys for the Company in connection with the preparation

of the petition, the commencement and prosecution of the chapter 11 case and in all related proceedings; and it is further

RESOLVED, that the law firm of Reed Smith Shaw & McClay, LLP, 1301 K Street, N.W., Washington, D.C. 20005, be, and it hereby is, employed under a general retainer as special regulatory counsel for the Company in the chapter 11 case and in all related proceedings; and it is further

RESOLVED, that the consulting firm of Chanin Capital Partners, 11100 Santa Monica Blvd., Suite 830 Los Angeles, CA 90025 be, and it hereby is, employed as financial consultants for the Company in the chapter 11 case and in all related proceedings; and it is further

RESOLVED, that the communications consulting firms Gavin Anderson & Company, 220 East 42nd Street, New York, New York, 10017, and Chlopak, Leonard, Schechter & Associates, 1850 M Street NW, Suite 550, Washington, D.C. 20036 be, and they hereby are, employed under a general retainer as communications consultants for the Company in the chapter 11 case and in all related proceedings; and it is further

RESOLVED, that the accounting firm Ernst & Young LLP, 1285 Avenue of the Americas, New York, New York 10036, be, and it hereby is, employed as accountants for the Company in the chapter 11 case and in all related proceedings; and it is further

RESOLVED, that the Officers of this Company or any one of them be, and each of them hereby is, authorized to execute and file all petitions, schedules, motions, lists, applications, pleadings and other papers for and on behalf of the Company, as debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code, and in that connection to employ and retain all assistance by legal counsel, accountants or other professionals and to take any and all action which they deem

necessary and proper in connection with the chapter 11 case, with a view to the successful litigation of such case, their authority thereunto to be evidenced by the taking of such actions; and it is further

RESOLVED, that the Company, as debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code, shall be, and hereby is, authorized (a) to borrow funds in such amounts, from such lenders and on such terms as may be approved by any one or more of the Officers as reasonably necessary for the continuing conduct of the affairs of the Company, (b) to open and maintain such bank accounts, to enter into agreements in connection with any such bank accounts and to effect funds transfers to and withdrawals from any such accounts as may be approved by any one or more of the Officers as reasonably necessary to the conduct of the affairs of the Company and (c) to grant security interests in and liens upon all or substantially all of the Company's assets as may be deemed reasonably necessary by any one or more of the Officers in connection with such borrowings or in connection with obtaining authority to use collateral, cash or otherwise; and it is further

RESOLVED, that the Officers shall be, and each of them hereby is, authorized and empowered to execute, deliver, certify, file and/or record, and perform, for and on behalf of the Company, as debtor and debtor-in-possession under chapter 11 of the Bankruptcy Code, agreements, instruments, motions, affidavits, applications, and any and all other documents necessary or appropriate to facilitate the transactions contemplated by the foregoing resolution (the "Financing Documents"), and that Financing Documents containing such provisions, terms, conditions, covenants, warranties and representations as may be deemed reasonable necessary or appropriate by the Officer or Officers so acting be, and hereby are authorized and approved; and it is further

RESOLVED, that the Officers are hereby authorized to execute and to cause to be filed the Plan of Reorganization (the "Plan") for the Company in substantially the form presented to the

Board of Directors, together with a related Disclosure Statement and any and all necessary ancillary documents, including any and all modifications, supplements and amendments thereto, and to take all appropriate actions to obtain Bankruptcy Court approval of the Plan and the successful conclusion of the Company's reorganization; and it is further

      **RESOLVED,** that any and all past actions heretofore taken by officers and directors of the Company in the name of and on behalf of the Company in furtherance of any or all of the preceding resolutions or actions contemplated thereby be, and the same hereby are, ratified, confirmed and approved.

      IN WITNESS WHEREOF, I have hereunto set my hand this 7 day of August, 2000.

                  Coram Healthcare Corporation

                  By: *Allen J. Marabito*

                  Name:    Allen J. Marabito

                  Title: *Executive Vice President*

# EXHIBIT C

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CORAM HEALTHCARE CORP. and | ) | Chapter 11 |
| CORAM, INC. | ) | |
| | ) | Case Nos. 00-___ ( ) |
| Debtors. | ) | through 00-___ ( ) |
| | ) | |
| | ) | Jointly Administered |

## LIST OF CREDITORS HOLDING THE 20 LARGEST UNSECURED CLAIMS

Debtor's Employer's Tax Identification No.: 33-0615337.

Following is the list of CHC's creditors holding the 20 largest unsecured claims. The list is prepared in accordance with Fed. R. Bankr. P. 1007(d) for filing in this Chapter 11 case. This list does not include (1) persons who come within the definition of insider set forth in 11 U.S.C. § 101(31), or (2) secured creditors unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 20 largest unsecured claims.

| | Name of Creditor and complete mailing address | Name, telephone number and complete mailing address of person familiar with claim who may be contacted | Amount of claim | Nature of Claim | Value of Security | Indicate if claim is contingent (C) unliquidated (U) disputed (D) or subject to staff (S) |
|---|---|---|---|---|---|---|
| 1. | Cerberus Partners, L.P. | 450 Park Avenue 28th Floor Attn: Mr. Stephen Feinberg New York, NY 10022 | $116,243,168.43 | Unsecured | None | |
| 2. | Goldman Sachs Credit Partners L.P. | 85 Broad Street 6th Floor Attn: Mr. Ed Mule New York, NY 10004 | $88,968,736.75 | Unsecured | None | |
| 3. | Foothill Capital Corporation | 11111 Santa Monica #1500 Attn: Mr. Ed Stearns Los Angeles, CA 90025 | $47,362,633.17 | Unsecured | None | |
| 4. | Cardinal Health | 7000 Cardinal Place Attn: Mr. John Grimm Dublin, OH 43017 614-757-7762 | $2,259,272.19 | Under Review | None | |
| 5. | Aetna U.S. Healthcare | 980 Lolly Road Attn: Mr. J. Edward Neugebauer Blue Bell, PA 19422 | $2,000,000.00 | Unsecured | None | |

| | Name of Creditor and Complete mailing address | Name, telephone number, and complete mailing address of person familiar with claim who may be contacted | Amount of Claim | Nature of Claim | Value of Security | Indicate if claim is contingent (C) unliquidated (U) disputed (D) or subject to claim (S) |
|---|---|---|---|---|---|---|
| 6. | Baxter Healthcare Corporation | Route 120 & Wilson Road Technology Building RLT-06 Attn: Mr. Gregory C. Neier Round Lake, IL 60073-0490 847-270-5235 | $1,417,109.51 | Unsecured | None | |
| 7. | Tbob Enterprises, Inc. | 12738 Davenport Plaza Attn: Mr. Bob Dudziuski Omaha, NE 68154 | $1,267,394.00 | Unsecured | None | |
| 8. | Medical Specialties Co. Inc. | 58 Norfolk Ave. Attn: Mr. John Sills south Easton, MA 02375-0600 800-967-6400 | $874,247.16 | Unsecured | None | |
| 9. | Farmers Insurance Group of Companies | Truck Insurance Exchange 4601 Wilshire Blvd. Ste 2508 Los Angeles, CA 90010 | $616,748.60 | Unsecured | None | |
| 10. | Baxter/Sabratek | Route 120 & Wilson Road Technology Building RLT-06 Attn: Mr. Gregory C. Neier Round Lake, IL 60073-0490 847-270-5235 | $495,869.34 | Unsecured | None | |

| | Name of Creditor and Complete mailing address | Name, telephone number and complete mailing address of person familiar with claim who may be contacted | Amount of Claim | Nature of Claim | Value of Security | Indicate if claim is contingent (C), unliquidated (U), disputed (D) or subject to setoff (S) |
|---|---|---|---|---|---|---|
| 11. | Richard M. Smith | 571 Silver Oak Grove<br>Colorado Springs, CO 80906<br>Attn: Richard M. Smith<br>719-226-1020 | $433,076.80 | Unsecured | None | |
| 12. | B. Braun Medical/McGaw, Inc. | 6021 South Syracuse Way<br>Suite 190A<br>Attn: Mr. William C. Warner<br>Englewood, CO 80111<br>303-220-7111 | $356,019.26 | Unsecured | None | |
| 13. | Thomas Nash, et. Al. | 250 Park Avenue<br>Suite 1500<br>Attn: Mr. Frederick A. Nicoll, Esq.<br>New York, NY 10177 | $250,000.00 | Unsecured | None | |
| 14. | Joseph Smith | 1726 Victoria Circle<br>Allentown, PA 18103<br>Attn: Joseph Smith<br>610-432-3006 | $245,000.00 | Unsecured | None | |
| 15. | Genetics Institute, Inc. | 87 Cambridge Park Drive<br>Attn: Mr. Brian Duda<br>Cambridge, MA      -2140<br>617-876-1170 | $242,050.00 | Unsecured | None | |

| | Name of Creditor and Complete mailing address | Name, telephone number and complete mailing address of person familiar with claim who may be contacted | Amount of Claim | Nature of Claim | Value of Security | Indicate if claim is contingent (C), unliquidated (U), disputed (D) or subject to setoff (S) |
|---|---|---|---|---|---|---|
| 16. | McGaw–Los Angeles | 6021 South Syracuse Way Suite 190 A Attn: Mr. William C. Warner Englewood, CO 80111 303-220-7111 | $217,464.22 | Unsecured | None | |
| 17. | Federal Express | 2650 Thousand Oaks Blvd. Suite 3100 Attn: EDI Payment Attn: Robert F. Carter Memphis, TN 38118 303-220-3947 | $145,9980.00 | Unsecured | None | |
| 18. | Resource Realty of Northern New Jersey | 55 Lane Road Attn: Tom Cougiglio Fairfield, NJ 07004-1011 | $129,176.28 | Unsecured | None | |
| 19. | Novo Nordisk Pharmaceuticals | 100 Overlook Center Attn: Ms. Joanne L. Sadowsky Princeton, NJ         -8540 | $104,976.00 | Unsecured | None | |
| 20. | Metrix Company, The | 4400 Chavenelle Road Attn: Dave Wagner Dubuque, IA 52002 847-362-3689 | $86,583.56 | Unsecured | None | |

## DECLARATION

I, Allen J. Marabito, Executive Vice President of Coram Healthcare Corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing List of Creditors Holding 20 Largest Unsecured Claims, consisting of 4 sheets, and that it is true and correct to the best of my information and belief.

Signature: _Allen J. Marabito_

Allen J. Marabito
Position: Executive Vice President

Dated: August 8, 2000