IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARLIN M. ADAMS, *Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of* CORAM HEALTHCARE CORP. *and* CORAM, INC., <br><br> Plaintiff, <br><br> v. <br><br> DANIEL D. CROWLEY, *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) Civ. Action No. 04-cv-1565(SLR) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**REPLY BRIEF IN SUPPORT OF
MOTION FOR PROTECTIVE ORDER**

Dated: May 10, 2007

Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)

SCHNADER HARRISON SEGAL & LEWIS LLP
824 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)

OF COUNSEL:
Nancy Winkelman (admitted *pro hac vice*)

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2400 (telephone)
(215) 751-2205 (facsimile)

*Counsel to Plaintiff,
Arlin M. Adams, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM
HEALTHCARE CORP. and CORAM, INC.*

**TABLE OF CONTENTS**

Page

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | CROWLEY HAS THE BURDEN OF PROOF | 6 |
| III. | THE TRUSTEE'S POSITION HAS REMAINED CONSISTENT. | 8 |
| IV. | TRIAL COUNSEL'S OPINIONS ARE NOT ADMISSIBLE AND ARE NOT LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE. | 11 |
| V. | DEPOSING OPPOSING TRIAL COUNSEL IN THIS MATTER IS NOT ONLY UNNECESSARY BUT WOULD CAUSE HARM TO THE TRUSTEE. | 14 |
| VI. | CONCLUSION | 16 |

# TABLE OF AUTHORITIES

## CASES

*Allergan Inc. v. Pharmacia Corp.*, Civ. A. No. 01-141, 2002 WL 1268047
(D. Del. May 17, 2002) ..................................................................................................6

*In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429 (E.D. Pa. 1981) ..............8

*Caruso v. The Coleman Co.*, 157 F.R.D. 344 (E.D. Pa. 1994) ......................................13

*Caruso v. The Coleman Co.*, Civ. A. No. 93-6733, 1994 U.S. Dist. LEXIS 15824
(E.D. Pa. Oct. 25, 1994) ................................................................................................13

*Cipollone v. Liggett Group*, 785 F.2d 1108 (3d Cir. 1986) .............................................7

*Cole v. Mousavi*, 1990 WL 63945 (Del. Super. Ct. 1990) ........................................7, 15

*Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*,
130 F.R.D. 348 (D.N.J. 1990) .........................................................................................7

*In re Linerboard Antitrust Litigation*, 237 F.R.D. 373 (E.D. Pa. 2006) ........................11

*Nationwide Mutual Ins. Co. v. The Home Ins. Co.*, 278 F.3d 621 (6th Cir. 2002) ...........7

*Peerless Heater Co. v. Mestek, Inc.*, Civ. A. No. 98-6532, 2000
U.S. Dist. LEXIS 1409 (E.D. Pa. Feb. 7, 2000) .............................................................7

*Shelton v. American Motors Corporation*, 805 F.2d 1323 (8th Cir. 1986) ...............6, 15

*Slater v. Liberty Mutual Ins. Co.*, Civ. A. No. 98-1711, 1999 U.S. Dist. LEXIS 275
(E.D. Pa. 1999) ..............................................................................................................15

*Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431 (M.D.N.C. 2001) ............7

## FEDERAL RULE

Fed. R. Civ. P. 8(a) ..........................................................................................................10

I.  **INTRODUCTION**

On April 13, 2007, the Trustee filed a motion for a protective order seeking an Order precluding Crowley from deposing the Trustee's trial counsel. (D.I. 120, 121.) On April 30, 2007, Crowley filed his answering brief in opposition to the Trustee's motion. (D.I. 131.) The Trustee now files this reply brief. The parties also have each filed motions for summary judgment. (D.I. 122, 123; 128, 129.)

The Trustee filed this motion for a protective order because Crowley provided only conclusions and generalities in connection with his request to depose the Trustee's trial counsel. Crowley's answering brief suffers from the same infirmity. Crowley claims that the Trustee's trial counsel "authored relevant documents" – but does not specify what they are. (D.I. 131 at 10).[1] Crowley claims that trial counsel will give testimony inconsistent with the Trustee (D.I. 131 at 1) – but does not identify what testimony would be inconsistent. In fact, nowhere does Crowley identify a single document, a single topic, or a single piece of information that would be admissible and that he can obtain only from opposing counsel. The motion for a protective order should be granted because Crowley has not come close to meeting his burden of justifying the depositions of trial counsel.

Crowley's argument appears to stem primarily from the Trustee's position regarding two draft letters that Crowley's counsel produced and that were admitted into evidence in the Bankruptcy Court proceedings. The draft letters related to communications between

---

[1] The subpoenas served on trial counsel do not seek any documents, so presumably Crowley is already in possession of the documents that trial counsel allegedly authored (documents that he does not identify).

1

Crowley and Cerberus (one of Coram's three major creditors) in May 2002, after the appointment of the Trustee in March 2002. (*See* Draft Letters, attached as Ex. C-1.) The draft letters refer to the possible settlement of Crowley's claims against Cerberus. In order to place the letters in context, a brief background is necessary.

In February 2003, pursuant to a "transition agreement" between the Trustee and Crowley, the Trustee filed a motion to extend Crowley's employment for a short period through Coram's reorganization process. In addition, as part of his effort to propose a plan that would settle with as many constituencies as possible, the Trustee entered into a letter of intent with Crowley, subject to the negotiation of a formal, written agreement and Bankruptcy Court approval, to reduce Crowley's claim for compensation under his Coram Employment Agreement from more than $16 million to $2 million and to give Crowley a release. (Mar. 27, 2007 Adams Dep. at 84:13-25, 95:9-96:7, excerpts attached as Ex. C-2.) A week or so before the scheduled March 3, 2003 hearing on the Trustee's motion to extend Crowley's employment (and the Equity Committee's competing motion to terminate Crowley's employment), Crowley's counsel produced the draft letters in response to the Equity Committee's request for production.[2] The letters underscored the depth of Crowley's relationship with Cerberus.

At his recent deposition in this case, the Trustee testified that he first saw the draft letters about six days prior to the March 3, 2003 hearing. (Mar. 28, 2007 Adams Dep. at 132:16-19, excerpts attached as Ex. C-4.) The Trustee elected to go forward with the motion anyway

---

[2] Crowley has claimed that the draft letters were inadvertently produced and has requested that the Trustee return them. (*See* Correspondence regarding privilege, attached as Ex. C-3.) The Trustee has responded that Crowley waived any claim of privilege by not objecting to the admission of the letters into evidence at the March 3, 2003 hearing. (*Id.*) Crowley has not filed a motion to compel the return of the draft letters.

2

because he was concerned that terminating Crowley's employment could lead to significant departures of key employees and place in jeopardy Coram's ability to promptly reorganize, because he wanted to avoid litigation with Crowley, and because he thought it best that the Bankruptcy Court make the decision.[3] (Chapter 11 Trustee's Answers to Crowley First Set of Interrogs. to Pl. at 11, attached as Ex. C-5.)

The Trustee was the first witness at the March 3, 2003 hearing. He testified that on March 26, 2002, shortly after his appointment as Trustee, he met with Crowley. At that meeting, Crowley told the Trustee that he was no longer being paid by Cerberus, but that he had a claim against Cerberus for work that Crowley had done unrelated to Coram. (Mar. 3, 2003 Hrg. Tr. at 14-15, excerpts attached as Ex. C-6.) The Trustee also testified that he did not think

---

[3] As the Trustee recently explained:

> Q: Was there anything preventing you from withdrawing your motion prior to March 3?
>
> A: Yes, there was.
>
> Q: What was that?
>
> A: I gave that some thought. We had agreed in writing as part of the settlement with Crowley to use our best efforts to implement the settlement, the proposed settlement. So that I was then in the position that if I withdrew the settlement it would lead to more litigation from Crowley against me as the Trustee, and I thought that it was wiser to let the court decide the issue because then Crowley couldn't say, well, you reneged on your agreement. You owe me $17 million or whatever he was talking about. And, fortunately, I was right because what happened is that the court decided that Crowley's explanation was incredible, unbelievable, or whatever the words she used. That relieved me as the Trustee of any legal obligation to implement the proposed deal with Crowley.

(Ex. C-4 at 136:21- 37:18.)

3

the draft letters demonstrated that Crowley's statement to him on March 26, 2002 regarding current compensation from Cerberus was false. (*Id.* at 70.)

The Trustee's counsel called Crowley as a witness, but asked no questions about the draft letters in the direct examination. Counsel for the Equity Committee then cross-examined Crowley extensively about the draft letters (*see* Ex. C-6 at 89-101); Crowley testified that they reflected his efforts to get Cerberus to pay him what he believed he was owed for work he performed for Cerberus unrelated to Coram. (*Id.* at 99, 110.)

The Bankruptcy Court denied the Trustee's motion to extend Crowley's employment. In its oral ruling, the Court stated that, contrary to Crowley's testimony, the draft letters evidenced that Crowley was seeking to get paid by Cerberus for his work at Coram. (*Id.* at 196.) Given the Bankruptcy Court's ruling, Crowley resigned. (Ex. C-5 at 12.) The letter of intent between Crowley and the Trustee became moot by reason of the Bankruptcy Court's decision.

In October 2006, in the course of this litigation, Crowley served a set of contention interrogatories calling for the Trustee to "Identify and describe each act or omission that forms the basis for your allegations that Crowley had a conflict of interest" and that Crowley had breached his fiduciary duties of care, loyalty, and good faith. (*See* Ex. C-5 at 3-4.) The Trustee responded with an eight-page narrative that included a reference to the draft letters. The Trustee's response stated that the draft letters were evidence that Crowley's March 26, 2002 representation to the Trustee that he was not seeking payment from Cerberus for his work at Coram was not true, and to the contrary, showed that Crowley was seeking payment from Cerberus for his work at Coram after the confirmation of the Trustee's plan of reorganization

4

when neither he nor Coram would be under the jurisdiction of the Bankruptcy Court. (*Id.* at 4-12.)

This is the "2002 and 2003 conduct" and the "change in position" that Crowley now claims entitle him to take the depositions of the Trustee's trial counsel. There are numerous problems with Crowley's argument. *First,* it proceeds from a false premise. This case is about Crowley's conflict of interest that caused the Bankruptcy Court to reject Coram's proposed plans of reorganization in 2000 and 2001. There are no "new allegations." Chief Judge Walrath found on two separate occasions that Crowley had an actual conflict of interest and found at the March 2003 hearing that the draft letters were additional evidence of that conflict. A reasonable trier of fact could also conclude that the draft letters demonstrate that Crowley had a conflict when he was Coram's CEO. The letters do not constitute a "new" breach. *Second,* the Trustee has no personal knowledge of these letters. He saw the letters prior to his testimony in March 2003, decided to leave the matter in the Bankruptcy Court's hands, listened to Crowley's explanation at the hearing, and formed a new opinion. He answered questions about the draft letters at his deposition because he was asked about them.

*Third,* and most importantly here, the Trustee's personal views of the evidence and/or his purported "change in position" have nothing whatsoever to do with the Trustee's counsel. It does not make them "percipient" witnesses and certainly does not justify the extraordinary step of taking their depositions.

Even assuming that the Trustee would be permitted to testify at trial about his personal views of the evidence, Crowley is free to cross-examine the Trustee about those personal views, as he did in the Trustee's recent deposition. Even assuming that whether

5

Crowley was completely forthcoming to the Trustee on March 26, 2002, is an issue at trial, Crowley is free to cross-examine the Trustee. But this motion is about Crowley's right to depose the Trustee's trial counsel – not about the Trustee's views of the case. Crowley's motion fails because he has not come close to carrying his burden – and it is his burden – to show that trial counsel has relevant, non-privileged information that he cannot obtain from another source.

## II.   CROWLEY HAS THE BURDEN OF PROOF.

Crowley's assertion that the Trustee, not he, has the burden on this motion ignores the context in which the Trustee seeks a protective order, instead relying on broad precepts related to discovery that are irrelevant here. Taking the deposition of opposing counsel is a highly-disfavored tactic. This Court has made clear that the burden is on the party seeking the deposition. *See Allergan Inc. v. Pharmacia Corp.*, Civ. A. No. 01-141, 2002 WL 1268047, at *1 (D. Del. May 17, 2002) ("The court concludes that *plaintiffs have not met their burden to demonstrate a compelling need for the requested discovery*.") (emphasis added). *See also Shelton v. Am. Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986) ("Those circumstances [in which opposing trial counsel can be deposed] should be limited to where *the party seeking to take the deposition has shown that* (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.") (emphasis added); *Cole v. Mousavi*, 1990 WL 63945, at *2 (Del. Super. Ct. 1990) (party seeking deposition of opposing counsel has the burden of demonstrating the *Shelton* factors); *Nationwide Mutual Ins. Co. v. The Home Ins. Co.*, 278 F.3d 621, 628 (6th Cir. 2002) (upholding denial of request to depose opposing counsel because party seeking deposition failed to make the requisite showing necessary); *Static Control*

6

*Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) (a request to take deposition of party's litigation attorney justified departure from general rule that party seeking protective order bears burden); *Peerless Heater Co. v. Mestek, Inc.*, Civ. A. No. 98-6532, 2000 U.S. Dist. LEXIS 1409, at *7 (E.D. Pa. Feb. 7, 2000) (noting that deposition of opposing counsel presents unique opportunity for harassment and possibility of disqualification and therefore party requesting deposition must show relevant and critical nature of information sought and that information cannot be obtained any other way).

Crowley cites no cases from this Court to support his position that the burden here rests with the persons to be deposed. Furthermore, the cases that he does cite are distinguishable. For example, *Cipollone v. Liggett Group*, 785 F.2d 1108 (3d Cir. 1986), does not involve a subpoena to trial counsel. Rather, *Cipollone* involves protective orders aimed at preventing the dissemination of documents produced during tobacco litigation. The Third Circuit thus had no need to consider the applicable standard for a deposition subpoena addressed to trial counsel.

In *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348 (D.N.J. 1990), although the court placed the burden on the party seeking the protective order, trial counsel unquestionably played a key role in meetings that were "highly relevant to plaintiffs' claims." *Id.* at 352, 354. Nonetheless, the court greatly limited the scope and time of the depositions. *Id.* at 356.

Here, although Crowley has tried to paint the involvement of Kipnes and Bressler as relevant to the underlying cause of action, their actions do not touch upon the central issue in this case – whether Crowley had an actual conflict of interest and whether he breached his fiduciary duties. Crowley is not seeking relevant and nonprivileged information. Even if there

7

were some sort of discrepancy between the Trustee's views and those of his attorneys, such a discrepancy has nothing to do with this case.

Finally, in *In re Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429 (E.D. Pa. 1981), a case decided before *Shelton*, the court precluded oral deposition but allowed a deposition upon written questions under Fed. R. Civ. P. 31. The court did not explicitly place the burden upon the party seeking the protective order, but balanced the need for the deposition and the dangers inherent in allowing the deposition to go forward. *Id.* at 437-440. The court was also mindful of the potential prejudice that could result from compelling trial counsel to testify, *id.* at 439, but ultimately concluded that good cause existed under Rule 26(c) to permit the deposition, but even then only upon written questions because an oral deposition would raise the possibility of disqualification of counsel and subsequent undue prejudice to the client. *Id.* at 439. Here, as discussed below, neither Kipnes nor Bressler possesses relevant, nonprivileged information and, therefore, their depositions are both unnecessary and inappropriate.

Accordingly, contrary to Crowley's assertion, it is not the Trustee's burden to establish that he would be harmed in the absence of a protective order; it is Crowley's burden to demonstrate the extraordinary circumstances justifying the depositions. He has not come even close to doing so.

## III.  THE TRUSTEE'S POSITION HAS REMAINED CONSISTENT.

Crowley claims that opposing counsel's depositions are necessary because the Trustee has "recently injected into this case certain factual issues" and that "in late December 2006, the Trustee changed the focus of his case." (D.I. 131 at 1, 4.) That is wrong. This case is

8

today, and always has been, about the actual conflict of interest Crowley had in 1999, 2000, and 2001 as a result of his dual employment agreements with Coram and with Cerberus. Crowley's "actionable conduct" took place during that period, and the damages the Trustee seeks arise directly from that "actionable conduct."

Crowley argues that by referring to the May 2002 draft letters in his answers to interrogatories, the Trustee is asserting a new claim based on new "actionable conduct." That is not so. The draft letters in and of themselves are not actionable. The Trustee's claim is based on Crowley's conduct – his conflict. The letters themselves do not constitute a cause of action or a conflict, but as the Bankruptcy Court found, they provide further evidence of Crowley's "actionable conduct," namely the conflict. The letters themselves caused no damage – they were never sent, and the Trustee's damage claim is the same whether or not the draft letters had ever been written. The letters are simply evidence that the trier of fact here could consider in determining whether Crowley is liable (as indeed, the Bankruptcy Court already did).

Crowley's allegation that the Trustee's deposition testimony "bore little resemblance to the allegations in the Complaint, but instead focused heavily on the events of 2002 and 2003" is inaccurate and misleading, as well as irrelevant to the determination of this motion. (D.I. 131 at 7.) Crowley states that the complaint did not address 2002 and 2003 "facts." The Trustee was not required in his complaint to put forth every piece of evidence that might support his claim. *See* FED. R. CIV. P. 8(a). And, as stated above, there is no "new" issue.[4]

---

[4] Crowley claims that the Trustee's recent deposition testimony contradicts his testimony at the March 3, 2003 hearing (D.I. 131 at 5-6), but the Trustee's testimony at the hearing was much narrower. On redirect, the Trustee was asked whether anything in the documents and unsent drafts that he had been shown on cross-examination "is not consistent with Mr. Crowley's

9

Finally, and most important for this motion, there is no connection between the Trustee's alleged change of position and the need for the testimony of Kipnes and Bressler. The Trustee has not, as Crowley states, made an "about-face in this litigation concerning Crowley's performance at Coram." (D.I. 131 at 6.) The issue is not whether the Trustee was "displeased with Crowley" (*id.* at 7); it is whether Crowley had a conflict. Even if the Trustee had changed his position in the litigation (which he did not), that would not justify deposing the Trustee's counsel. Deposing the Trustee's trial counsel will uncover no relevant information; the thoughts and opinions of Bressler and Kipnes do not tend to make a material fact in issue more or less likely and are privileged in any event. Further, Crowley can explore the issues within the scope of permissible cross-examination of the Trustee.

Crowley makes no effort to explain what relevant information trial counsel has that he cannot obtain elsewhere. To the extent Crowley seeks testimony and information related to the documents counsel authored, the attorney-client privilege would prevent Kipnes and Bressler from revealing conversations they had with the Trustee. Other than his conclusory mantra of the "percipient witness," Crowley offers no explanation how the Trustee's lawyers' thoughts on a particular subject are at all relevant. Despite his protest to the contrary, the absence of specifics can only mean that Crowley seeks deposition testimony from the Trustee's

---

representation to you that he's no longer getting paid by Cerberus?" and he answered "I have seen nothing. If I did, I would be upset about it and probably take steps." (Ex. C-6 at 70.) In fact, Crowley was not getting paid by Cerberus in 2002. After later hearing Crowley's explanation, the Trustee came to the view that Crowley was trying to get paid by Cerberus for his efforts at Coram, but that is not what he was asked at the March 3, 2003 hearing. As discussed above, the Trustee came to view the draft letters as evidence of Crowley's conflict, but those letters are not evidence that in fact Cerberus was paying Crowley anything in 2002.

10

lawyers in the hope that they may contradict their client. That is inappropriate. *See In re Linerboard Antitrust Litigation*, 237 F.R.D. 373, 385 (E.D. Pa. 2006).

In short, if Crowley believes that the Trustee has changed his stance on Crowley's performance or his honesty (or any other topic for that matter), Crowley's remedy is to cross-examine the Trustee, as he did in the Trustee's recent deposition. Even assuming that the Trustee had changed his position regarding Crowley, the depositions of Kipnes and Bressler are unnecessary. Contrary to Crowley's argument, there is simply no nexus between the Trustee's views and the need for the depositions of trial counsel.

IV. **TRIAL COUNSEL'S OPINIONS ARE NOT ADMISSIBLE AND ARE NOT LIKELY TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

No matter how Crowley attempts to spin the events surrounding the motion to continue his employment and the subsequent statement by the Bankruptcy Court that Crowley was dishonest, the thoughts and actions of Kipnes and Bressler cannot serve as a basis for deposing either attorney in this matter. Kipnes and Bressler dispute Crowley's position "that they are percipient witnesses and participants in events that the Trustee claims are relevant to his claim against Crowley." (D.I. 131 at 10.) As discussed above, Crowley's brief is very cryptic about (in fact, it is virtually silent on) just what "events . . . the Trustee claims are relevant." The Trustee, of course, is not the arbiter of relevance.

A review of counsel's participation in the "2002 and 2003" events shows that there is no need for their depositions. As Crowley testified, Kipnes did *not* prepare him for his deposition in connection with the March 3, 2003 hearing with respect to the draft letters. (Feb. 27, 2003 Crowley Dep. at 9:7-11, 100:14 – 103:5, except attached as Ex. C-7.) Kipnes asked

11

only limited questions on redirect examination of Crowley about one of the letters. None of the facts surrounding the motion to extend Crowley's employment renders the depositions of Kipnes and Bressler necessary. Neither attorney was involved in the underlying claims regarding Crowley's conflict. Neither attorney had anything to do with the preparation of the draft letters. Neither discussed them with Crowley at the time. Crowley points out that Kipnes was present at Crowley's deposition preparation when *Crowley's lawyers* showed him the draft letters. Kipnes questioned Crowley about a portion of one of the draft letters at the hearing, a matter of public record. Bressler authored the Trustee's brief in support of his motion to continue Crowley's employment for a limited period of time, also a matter of public record. Crowley does not explain how these ordinary actions between lawyers and their client justify taking the depositions of opposing trial counsel.

Crowley repeatedly asserts that Bressler and Kipnes are "percipient witnesses," but does not identify what they are percipient witnesses to. Rather, Crowley relies solely on the fact that they served as the Trustee's counsel. For example, Crowley makes much of the fact that Bressler negotiated the conditional letter of intent regarding settlement with Crowley's lawyer. There is no dispute about that, nor about the back and forth between Bressler and Schreiber (Crowley's counsel) – their negotiations are documented and Schreiber has authenticated the documents. What is there to ask Bressler except questions invading the privilege?

Crowley's position is that because Kipnes and Bressler engaged in conduct such as having conversations with opposing counsel and witnesses and preparing pleadings, they somehow become fact witnesses. If Crowley were right, then *every* lawyer would be a fact witness. Any viewpoints asserted by Kipnes and Bressler both during the current litigation and

12

the bankruptcy proceedings are irrelevant. Kipnes and Bressler represent the Trustee; their thoughts and opinions regarding decisions made throughout the litigation have no bearing on any issues in this case. And again, the Trustee's reasons for taking certain actions is a matter for the Trustee to speak on, not his lawyers.

The only case upon which Crowley relies for his argument that he is entitled to depose the Trustee's lawyers – *Caruso v. The Coleman Co.*, Civ. A. No. 93-6733, 1994 U.S. Dist. LEXIS 15824 (E.D. Pa. Oct. 25, 1994) – actually proves the Trustee's point. As set forth in an earlier opinion, *Caruso* was a wrongful death action. *Caruso v. The Coleman Co.*, 157 F.R.D. 344, 346 (E.D. Pa. 1994). The decedents were found inside a camper, with Coleman lanterns and propane cylinders. *Id.* Plaintiff noticed the deposition of Coleman pursuant to Rule 30(b)(6). Coleman's sole corporate designee was unable to provide information on many of the subjects listed in the deposition notice. The corporate designee testified that defendant's trial counsel "played a significant role" in relevant matters surrounding the litigation. *Caruso*, 1994 U.S. Dist. LEXIS 15824, at *3. The court allowed the deposition of opposing counsel because he had personal knowledge and documents reflecting other incidents of carbon monoxide related injuries or death, "played a significant role in designing the warnings" at issue, had possession of a relevant file, attended at least one meeting about the problem of carbon monoxide and portable camping equipment, and had personal knowledge about whether the defendant considered using carbon monoxide detectors on its products. *Id.* at *3-*4. Therefore, if the court did not allow the deposition of counsel, the plaintiff would be left without any way to obtain this critical information. The court also found that trial counsel "has the best knowledge" of "many matters relevant to the issues in this case," *id.* at *5, and had acted in both a business and legal capacity for Coleman. *Id.* at *7-*8.

13

The facts that warranted the deposition of opposing counsel in *Caruso* are not present here. First, nobody has testified (or even suggested) that Kipnes or Bressler is the best source of relevant information. Second, Crowley can get the information he appears to be seeking elsewhere; the Trustee can testify (indeed, he has done so at length) about the motion and his interactions with Crowley. Furthermore, Crowley can obviously testify regarding the draft letters, as he already did in the Bankruptcy Court proceedings. Kipnes and Bressler, on the other hand, who neither authored the letters nor counseled Crowley on them, have no relevant nonprivileged information about them. And Kipnes and Bressler have acted only as counsel to the Trustee, never in a business advisory capacity.[5] Crowley cites the tasks Kipnes and Bressler have performed during the course of this litigation such as writing briefs, questioning witnesses and composing letters, but this adds nothing to his argument. Kipnes and Bressler performed the tasks that litigators perform in every case.

## V.  DEPOSING OPPOSING TRIAL COUNSEL IN THIS MATTER IS NOT ONLY UNNECESSARY BUT WOULD CAUSE HARM TO THE TRUSTEE.

Although, as set forth above, it is not the Trustee's burden to show that he would be harmed if the depositions of his lawyer are permitted to go forward, in fact such is the case. Deposing opposing trial counsel is a tactic fraught with the potential for abuse. For that reason, "[t]he practice of forcing trial counsel to testify as a witness [ ] has long been discouraged and recognized as disrupting the adversarial nature of our judicial system." *Shelton*, 805 F.2d at

---

[5] The Trustee on one occasion testified that his lawyers provided "business" advice, but that was in the context of describing advice that bankruptcy lawyers do routinely provide. He has otherwise consistently testified that Bressler and Kipnes were his lawyers, not his business advisors. The other witnesses who testified on this subject stated that Bressler and Kipnes acted as lawyers, not business advisors. (*See* Apr. 6, 2007 Danitz Dep. at 188:12-15, excerpts attached as Ex. C-8; *see also* Apr. 5, 2007 Marabito Dep. at 167:3-168:24, excerpts attached as Ex. C-9.)

14

1327. Such depositions are "inherently annoying, oppressive, disruptive and burdensome." *Slater v. Liberty Mutual Ins. Co.*, Civ. A. No. 98-1711, 1999 U.S. Dist. LEXIS 275, at *2 (E.D. Pa. 1999). They present a unique opportunity for harassment and detract from time spent preparing for trial. *Id.* Additionally, deposing opposing counsel "lowers the standards of the profession" and "adds to the already burdensome time and costs of litigation . . . the practice of deposing opposing counsel detracts from the quality of client representation." *Shelton*, 805 F.2d at 1327. The practice also opens up the possibility that opposing counsel must be disqualified, further delaying the disposition of the case and increasing costs. *Cole*, 1990 WL 63945, at *2.

## VI. CONCLUSION

For all of the above stated reasons, the Trustee respectfully requests that the Court grant the Trustee's motion for a protective order and prohibit Crowley from deposing the Trustee's trial counsel, Wilbur L. Kipnes and Barry E. Bressler.

Dated: May 10, 2007                               Respectfully submitted,

/s/ Michael J. Barrie
Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)

SCHNADER HARRISON SEGAL & LEWIS LLP
824 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)

OF COUNSEL:
Nancy Winkelman (admitted *pro hac vice*)

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2400 (telephone)
(215) 751-2205 (facsimile)

*Counsel to Plaintiff,*
*Arlin M. Adams, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORP. and CORAM, INC.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARLIN M. ADAMS, *Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of* CORAM HEALTHCARE CORP. *and* CORAM, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>DANIEL D. CROWLEY, *et al.*,<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>) Case No. 04-1565 (SLR)<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

I, Michael J. Barrie, hereby certify that I am at least eighteen years of age and that on May 10, 2007, I caused a true and correct copy of the Reply Brief in Support of the Motion for Protective Order, to be served upon the following:

Jeffrey C. Wisler, Esquire
Christina M. Thompson, Esquire
Connolly Bove Lodge & Hutz LLP
1007 N. Orange St., P.O. Box 2207
Wilmington, DE 19899
(*via CM/ECF and hand delivery*)

Elliot R. Peters, Esquire
Laurie Carr Mims, Esquire
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(*via CM/ECF, email and overnight mail*)

Dated: May 10, 2007

SCHNADER HARRISON SEGAL & LEWIS LLP

By: /s/ Michael J. Barrie
    Richard A. Barkasy (#4683)
    Michael J. Barrie (#4684)
    824 N. Market Street, Suite 1001
    Wilmington, DE 19801
    Telephone: (302) 888-4554
    Facsimile: (302) 888-1696