# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, Chapter 11 Trustee of
the Post-Confirmation Bankruptcy Estates of
CORAM HEALTHCARE CORPORATION,
a Delaware Corporation, and of CORAM
INC., a Delaware Corporation,

                      Plaintiffs,

    v.

DANIEL D. CROWLEY, DONALD J.
AMARAL, WILLIAM J. CASEY, L. PETER
SMITH, and SANDRA L. SMOLEY,

                     Defendants.

Case No. 04-1565 (SLR)

---

## REPLY BRIEF OF DANIEL CROWLEY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

---

May 15, 2007

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA  94111
(415) 391-5400

*Attorneys for Defendant DANIEL D. CROWLEY*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................1

II.    ARGUMENT.......................................................................................................3

      A.     Crowley Is Entitled to Partial Summary Judgment On Damages...........................3

           1.     The Court should grant partial summary judgment as to damages arising out of the preparation of the First Plan. ...........................4

           2.     The Court should grant partial summary judgment as to damages arising subsequent to the rejection of the Second Plan. ................4

      B.     The Trustee Cannot Establish Liability With Respect to Sale of CPS .................7

           1.     Crowley's undisputed facts confirm that there was no breach of fiduciary duty with respect to the sale of CPS............................................7

           2.     Crowley is protected by the business judgment rule ...................................8

           3.     Even if the business judgment rule does not apply, Crowley breached no duty because the transaction was fair to Coram...................10

           4.     Judicial estoppel precludes the Trustee from asserting any damages from the CPS sale .....................................................................11

      C.     This Case IS About Disclosure and Crowley Is Entitled to Summary Judgment Because The Trustee Cannot Prove Liability With Respect to Disclosure .......................................................................................................12

           1.     All material facts regarding Crowley's relationship with Cerberus were disclosed ..........................................................................13

           2.     The Trustee concedes that the alleged nondisclosure did not cause damages .........................................................................................15

           3.     The exculpatory provision shields Crowley from liability for nondisclosure .............................................................................................15

III.    CONCLUSION.................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*
    477 U.S. 242 (1986) ..................................................................................3

*Ryan Operations GP v. Santiam-Midwest Lumber Co.*
    81 F.3d 355 (3d Cir. 1996) ......................................................................11

*Securities and Exchange Commission v. Bonastia*
    614 F.2d 908 (3d Cir. 1980) ...................................................................3, 4

## STATE CASES

*Arnold v. Society for Sav. Bancorp., Inc.*
    650 A.2d 1270 (Del. 1994) ..................................................................16, 17

*Biddle v. Haldas Brothers*
    190 A. 588 (Del. 1937) .............................................................................5

*Blackmore Partners, L.P. v. Link Energy LLC*
    2005 WL. 2709639 (Del. Ch. 2005) ..........................................................9

*Canadian Commercial Workers Industrial Pension Plan v. Alden*
    2006 WL. 456786 (Del. Ch. 2006) ..........................................................16

*Cede & Co. v. Technicolor, Inc.*
    634 A.2d 345 (Del. 1994) .......................................................................10

*Chaplake Holdings, Ltd. Chrysler Corp.*
    2002 WL. 148088 (Del. Super. Ct. 2002) ................................................13

*Cinerama, Inc. v. Technicolor, Inc.*
    663 A.2d 1156 (Del. 1995) .....................................................................12

*Culver v. Bennett*
    588 A.2d 1094 (Del. 1991) ......................................................................4

*Duphily v. Delaware Electric Co-op, Inc.*
    662 A.2d 821 (Del. 1995) ......................................................................4, 6

*Emerald Partners v. Berlin*
    726 A.2d 1215 (Del. 1999) .....................................................................17

*Emerald Partners v. Berlin*
    787 A.2d 85 (Del. Super. 2001).............................................................16

*Gagliardi v. TriFoods International, Inc.*
    683 A.2d 1049 (Del. Ch. 1996) ............................................................8, 11

*Goodwin v. Live Entertainment, Inc.*
    1999 WL. 64265 (Del. Ch. 1999) ............................................................16

*In re HealthSouth Corp. Shareholder Litigation*
    845 A.2d 1096 (Del. Ch. 2003) ...............................................................13

*Holly v. Jackson*
    158 A.2d 803 (Del. Ch. 1959) .................................................................13

# TABLE OF AUTHORITIES
## (cont'd)

**Page(s)**

*Litt v. Wycoff*
  2003 WL. 1794724 (Del. Ch. 2003) ................................................................10

*O'Reilly v. Transworld Healthcare, Inc.*
  745 A.2d 902 (Del. 1999) ...............................................................................14

*Official Committee of Unsecured Creditors of Integrated Health Services,*
  *Inc. v. Elkins*
  2004 WL. 1949290 (Del. Ch. 2004) .................................................................9

*Rosenblatt v. Getty Oil Co.*
  493 A.2d 929 (Del. 1985) ..........................................................................14, 15

*Solash v. Telex Corp.*
  1988 WL. 3587 (Del. Ch. 1988) .......................................................................9

*Thompson v. Glenmede Trust Co., No. CIV. A. 92-5233*
  1996 WL. 529693 (E.D. Pa. Sep. 17, 1996) ...................................................14

*Torrack v. Corpamerica, Inc.*
  144 A.2d 703 (Del. Super. 1958) ......................................................................6

*Trenwick America Litigation Trust v. Ernst & Young, L.P.*
  906 A.2d 168 (Del. Ch. 2006) ........................................................................16

## FEDERAL STATUTES

Fed. R. Civ. P. 56(e) ...........................................................................................3

Fed. R. Evid. 802 ..............................................................................................14

## STATE STATUTES

8 Del. C. § 144 ............................................................................................12, 16

## OTHER AUTHORITIES

3 Fletcher Cyc. Corp. § 793 .............................................................................13

## I.    INTRODUCTION

The Trustee's Opposition to Daniel Crowley's Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment fails to meet head-on Crowley's arguments.  Since the Trustee raises no factual or evidentiary issues with respect to Crowley's motion regarding damages and the sale of the Coram Prescription Services ("CPS") business unit, those are plainly ripe for partial summary judgment, and we address them first in this Reply brief.  We then turn to the Trustee's core allegation that Crowley's relationship with Cerberus was "undisclosed" to Coram's Board members.

With respect to Crowley's Motion for Partial Summary Judgment limiting damages to the period between rejection by the Bankruptcy Court of Coram's First and Second Plans of Reorganization, the Trustee's response is bereft of evidence, applicable legal authorities, or logic.  There is simply no reason why Crowley could be held responsible for a plan crafted and proposed entirely by others after full disclosure of every fact regarding Crowley's relationship with Cerberus.  Crowley's utter lack of involvement in Coram's bankruptcy strategy after denial of the First Plan of Reorganization makes it legally and factually impossible to attribute damages after December 2001 to Crowley.  While this issue only leads to partial summary judgment, it will dramatically streamline expert discovery, the scope of any trial, and increase the likelihood that this case could be settled.

The Trustee's arguments with respect to Coram's sale of CPS present no impediment to granting partial summary judgment on that issue as well.  As with the damages issue described above, there are no factual disputes here.  The CPS sale was fully vetted by Coram's investment bankers and approved by Coram's Board.  There is absolutely nothing about that sale which suggests a breach of fiduciary duty.  It is precisely the type of event to which the business judgment rule is intended to, and does, apply.  Only by reference to the later sale of a materially different company can the Trustee raise even an eyebrow about the CPS sale.  However, the later sale is inadmissible, irrelevant, and sheds no light on the exercise of the business judgment of those approving the CPS sale at the time they made that decision.  Partial summary judgment should be granted with respect to the CPS sale.

While partial summary judgment on damages and the CPS sale are clear, a close look at the Trustee's opposition with respect to the core of his liability case reveals that it, too, is hollow. The undisputed facts establish that one Coram Board member, Stephen Feinberg, knew every fact about the Crowley-Cerberus relationship. Another, Donald Amaral, knew virtually all facts. And the others were fully aware that Crowley had a working relationship with Cerberus, and that Crowley's employment contract with Coram specifically permitted him to work for other companies; they lacked specific information about the amount Crowley was being paid by Cerberus only because they did not feel they needed to learn more. Moreover, even after full disclosure of every conceivably relevant fact regarding Crowley's relationship with Cerberus was made, neither the Coram Board, nor its lawyers, nor its independent restructuring advisor, nor the Bankruptcy Court, nor ultimately this Trustee, ever took steps to force Crowley to leave Coram. To the contrary, not only did they ask him to stay on as the company's CEO, but they furnished financial incentives for him to do so. The Trustee's accusation that Crowley breached a fiduciary duty by remaining at Coram is unsupported by evidence or common sense. In truth, and based on the undisputed facts, Crowley's relationship with Cerberus was both adequately disclosed, and not material to any decision that Coram or its stewards would later make with respect to Crowley.

Finally, the Trustee's last-ditch effort to save his case by arguing that Coram's exculpatory provision does not apply because Crowley has been sued solely as an officer, and not as a director, is an outright falsehood, revealed to be so merely be reading the Trustee's own Complaint, where the charging allegations consistently and explicitly refer to Crowley's conduct as both and officer and a director.[1] The exculpatory provision applies.

For all of the foregoing reasons, and as discussed more fully below, Crowley's Motion

---

[1] The Trustee's Opposition improperly characterizes Crowley's summary judgment motion, contending that Crowley's motion relies exclusively on the exculpatory provision and the business judgment rule. It does not. The exculpatory provision argument is just one of the four different reasons that Crowley could not be liable for breaching a fiduciary duty to disclose his relationship with Cerberus. (*See* D.I. 123 at 19-26) And the business judgment rule is one of three different reasons that Crowley could not be liable with respect to the CPS sale or payments to noteholders. (*Id*. at 26-35)

for Summary Judgment, or in the Alternative, Partial Summary Judgment should be granted.

## II.     ARGUMENT

In opposition to Crowley's motion for summary judgment, the Trustee was required to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Trustee cannot defeat Crowley's motion merely by criticizing Crowley's evidence or relying on allegations in the pleadings; he must produce admissible evidence demonstrating a material, factual dispute. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256-57 (1986). "Denials in the form of legal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment." *Sec. and Exchange Comm'n. v. Bonastia*, 614 F.2d 908, 914 (3d Cir. 1980). The Trustee's attempt to manufacture material facts, described in the table at pages 18-20 of his Opposition Brief, fails. As demonstrated by the chart attached hereto as Exhibit A, the undisputed facts described at page 18 of Crowley's Opening Brief (D.I. 123) remain undisputed.

## A.     Crowley Is Entitled to Partial Summary Judgment On Damages

Crowley's motion for partial summary judgment with respect to damages is particularly ripe for adjudication because the Trustee does not attempt to dispute the relevant facts. The Trustee concedes that the costs associated with Coram's first reorganization plan ("First Plan") would have been incurred with or without Crowley's alleged conflict. (D.I. 137 at 32) The Trustee further admits that Coram's Board of Directors prepared and presented the second reorganization plan ("Second Plan") without any involvement by Crowley and that the Board, while fully aware of the particulars of Crowley's relationship with Cerberus, did not ask Crowley to resign from Coram or sever his relationship with Cerberus. (*Id*. at 33) The same can also be said of the Bankruptcy Court. Therefore, Crowley cannot be responsible for the failure of the Second Plan or any resulting damages to Coram (which, according to the Trustee, include more than a year and a half of litigation expenses incurred *after* Crowley left Coram). On these undisputed facts, the Court should grant partial summary judgment as to the Trustee's claim for the costs of the preparing the First Plan and its claim for all damages occurring after the rejection of the Second Plan.

1.    **The Court should grant partial summary judgment as to damages arising out of the preparation of the First Plan.**

The Court should grant partial summary judgment as to Coram's costs incurred between August 2000 (when Coram first filed for bankruptcy) and December 2000 (when the Bankruptcy Court denied confirmation of the First Plan) because Crowley cannot be liable for expenses that would have been incurred regardless of his alleged wrongful conduct. *Culver v. Bennett*, 588 A.2d 1094, 1097 (Del. 1991) (citing Prosser & Keaton on Torts 266 (5th ed. 1984)). The Trustee does not dispute that Coram would have incurred costs in connection with the First Plan regardless of Crowley's alleged undisclosed conflict of interest. Indeed, the Trustee admits that "Coram still would have incurred costs in proving valuation and that its proposed plan was submitted in good faith." (D.I. 137 at 32)[2]

2.    **The Court should grant partial summary judgment as to damages arising subsequent to the rejection of the Second Plan.**

The Trustee claims that Crowley should be responsible for millions of dollars of attorneys fees paid to the Trustee's firm, Schnader Harrison, and to the Equity Committee's lawyers, as well as other professional fees and unspecified "business losses," which accrued after the rejection of the Second Plan (including 18 months of fees, costs, and "losses" that were incurred *after* Crowley left Coram). The Court should grant Crowley partial summary judgment as to these damages because Crowley did not cause the rejection of the Second Plan and had no control over the Trustee or the litigation of the third plan. To recover all of Coram's alleged damages that accrued after the rejection of the Second Plan, the Trustee must show that Crowley's conduct was a direct cause of the rejection of the Plan, *Duphily v. Del. Elec. Co-op, Inc.*, 662 A.2d 821, 829 (Del. 1995), and that there is "a natural and unbroken sequence" between Crowley's allegedly wrongful conduct and the costs to Coram. *Biddle v. Haldas Bros.*,

---

[2] The Trustee argues—without citation to any evidence—that "the additional expenses involved in litigating Crowley's conflict" prior to the denial of the First Plan "are directly attributable to Crowley's breach of fiduciary duties." (D.I. 137 at 32) However, "[d]enials in the form of legal conclusions, unsupported by documentation of specific facts, are insufficient to create issues of material fact that would preclude summary judgment." *Bonastia*, 614 F.2d at 914. The Trustee does not identify what additional expenses are directly attributable to Crowley's alleged breach of duty.

190 A. 588, 596 (Del. 1937).

Contrary to the Trustee's strawman argument, Crowley does not argue that the actions of others were a "superseding cause" of damages allegedly suffered by Coram.  Rather, the undisputed facts demonstrate that Crowley's conduct was not a proximate cause in the first place.  Far from directly causing the failure of Coram's Second Plan, Crowley had nothing to do with conceiving, preparing, or presenting the Second Plan.  The Trustee admits that no later than the end of December 2000, Coram's Board had "actual knowledge of the particulars of the Crowley/Cerberus relationship."  (D.I. 33 at 28 (Trustee's Answering Brief in Opposition to the Outside Directors Defendants' Motion to Dismiss); *see also* D.I. 1 ¶ 57 ("No later than … Dec. 27, 2000, the outside directors were fully aware of the material terms of the Crowley/Cerberus employment agreement."))  Moreover, the Trustee does not dispute that in response to the Court's rejection of the First Plan, Coram's Board and outside counsel decided to form a Special Committee of all directors excluding Crowley, whose sole purpose was to prepare and present the Second Plan without Crowley's input.  (D.I. 137 at 21, 33)[3]  The Trustee further does not dispute that no one—not Coram's Board, outside Counsel, Independent Restructuring Advisor, the Equity Committee, or the Bankruptcy Court—all of whom knew by that time of Crowley's relationship with Cerberus, suggested that Crowley resign from Coram or sever his Cerberus relationship.

After the rejection of Coram's First Plan, Coram's decision makers (the Board, outside counsel and Independent Restructuring Advisor) knew all there was to know about Crowley and Cerberus.  Rather than fire him or ask him to sever his Cerberus relationship, however, they chose to keep Crowley in place as Coram's CEO but exclude him from involvement in preparing and presenting the Second Plan.  Having had absolutely no involvement with the preparation or presentation of the Second Plan, Crowley simply cannot be held responsible for its failure, or the resulting costs to Coram.

Moreover, even were the Court to consider the Trustee's superseding cause argument, the

___
[3] *See also* D.I. 123 at 37; D.I. 127 ¶ 11 (Crowley Decl.); A1368-69 (Goldin depo.); A1291-94, 1297-1304 (Friedman depo).

Trustee's admissions indisputably demonstrate that even if Crowley's earlier actions were a cause of the denial of the Second Plan, the actions of Coram's Board were a superseding cause of any damages that Coram incurred as a result of the rejection of the Second Plan. An unforeseen intentional tort of a third party is a superseding cause of any harm resulting therefrom. *Torrack v. Corpamerica, Inc.*, 144 A.2d 703, 704 (Del. Super. 1958). So too is an unforeseen "extraordinarily negligent" act. *Duphily*, 662 A.2d at 830 (quoting Restatement (Second) Torts § 447 (1965)).

The Trustee has argued in this litigation that the decision of the Board—made without Crowley's participation—to proceed with the Second Plan without asking for Crowley's resignation and without asking him to sever his relationship with Cerberus was "egregious," "an affirmative, conscious disregard of the actual facts," and "not simply a matter of bad faith" but "a matter of intentional misconduct." (D.I. 33 at 28-29) Indeed, the Trustee previously conceded that "[t]he Outside Directors are the appropriate defendants for the costs of the second and third confirmation hearings because they proposed the second plan." (A1065) Thus, under Delaware law, regardless of what occurred before, the Board's "intentional misconduct" is the legal cause of Coram's harm.

At bottom, the Trustee argues that Crowley is responsible for the failure of the Second Plan because he did not voluntarily resign from Coram or sever his ties to Cerberus following the rejection of the First Plan in order to "eliminate" the alleged conflict. (D.I. 137 at 33) But, Crowley had no affirmative obligation to abandon Coram or Cerberus, and his continued employment was not wrongful in any way. The undisputed facts demonstrate that, by December 2000, Crowley's relationship with Cerberus was fully disclosed to the Bankruptcy Court, to Coram's Board, to Coram's outside counsel, to the Equity Committee, and (once retained) to Coram's independent restructuring advisor, none of whom so much as intimated that Crowley should resign from Coram or sever ties with Cerberus. To the contrary, Coram's Board asked Crowley to stay on and run the business while it attended to the bankruptcy. Indeed, Coram's bankruptcy counsel advised Crowley and the Board that excluding Crowley from involvement in the Second Plan and fully disclosing the Cerberus relationship would address the Bankruptcy

Court's concerns. Coram's counsel was "very surprised" when the Second Plan was not confirmed. (C2,[4] Friedman depo., 127:23-130:10) Nevertheless, now, seven years later, the Trustee suggests that Crowley should have rejected the Board's request to stay on at Coram and taken it upon himself to make the <u>legal</u> judgment—despite the fact that doing so would have been contrary to the advice he received from Coram's own counsel—that his ongoing employment would cause the rejection of the Second Plan and that therefore he should have quit. The Trustee's argument is entirely bereft of logic, common sense, and (most significantly) legal authority. As a result, Crowley is entitled to partial summary judgment limiting potentially recoverable damages to those incurred between the denial of the First and Second Plans.

**B.    The Trustee Cannot Establish Liability With Respect to Sale of CPS**

The Trustee continues to assert a malformed theory of liability against Crowley for his participation, along with the rest of the Coram Board of Directors, in the sale of Coram's CPS business unit. The Trustee's handling of the CPS issue in his Opposition Brief is striking for two reasons: first, his failure to dispute <u>any</u> of the relevant facts with respect to CPS confirms that the issue is ripe for summary judgment; and second, he never explains why Crowley should be liable for the CPS sale. At the end of the day, the Trustee finds himself again relying on the subsequent sale of CPS three years later for $355 million, an assertion the Trustee has never supported, and cannot support, with admissible evidence, because any such evidence would be inadmissible under applicable law.

**1.    Crowley's undisputed facts confirm that there was no breach of fiduciary duty with respect to the sale of CPS**

The Trustee does not attempt to dispute any of the following facts:

- The decision to sell CPS was made by Rick Smith, Donald Amaral, and the Coram Board *prior* to Crowley's arrival at Coram. (D.I. 123 at 28)

- Coram's Board hired DBAB to auction the CPS unit before Crowley became CEO. (*Id.*)

- Crowley did not stand on opposite sides of the CPS transaction, nor did he stand

_____

[4] References to "C___" are to the Appendix of Documents in Support of Daniel Crowley's Reply Brief in Motion for Summary Judgment, or, in the Alternative, Partial Summary Judgment filed concurrently herewith.

to profit from it in any fashion. (*Id.* at 29 n.22)

- Crowley and the Board were prepared to retain the CPS unit when the initial prices were inadequate, and they only sold it after Crowley himself extracted a higher bid for CPS. (*Id.* at 29)

- DBAB opined that the transaction was both procedurally and financially fair. (*Id.* at 29)

- Coram's Board relied on DBAB opinion that the transaction was substantively and procedurally fair and unanimously approved the sale. (*Id.* at 29)

- The Trustee previously argued that the sale was fair.  (*Id.* at 31-32)

Not a single fact in the record supports the allegation that Crowley's participation in the CPS transaction was affected by a conflict of interest or was improper, and the Trustee does not attempt to argue otherwise.  The Trustee asserts only that, after CPS was sold, Crowley improperly used the proceeds to pay down Coram debt; but this does not implicate the decision to sell CPS and, besides, the Trustee acknowledges the undisputed fact that Coram was contractually required to use the proceeds of the CPS sale to pay down debt.[5]

**2.      Crowley is protected by the business judgment rule**

The Trustee incorrectly asserts that Crowley's conduct falls outside the business judgment rule because he was an officer, as well as a director, of Coram.  This defies logic.  First and foremost, the Trustee sued Crowley "as an officer *and* director."  (D.I. 1 ¶ 49) (emphasis added).  And all of Crowley's activities in relation to the CPS sale that could possibly constitute breaches were in his role as a director of Coram or in a dual role.  Second, while the Delaware Supreme Court has never specifically addressed the question whether a non-director officer is protected by the business judgment rule, the Delaware courts have routinely applied the business judgment rule to officer/directors like Crowley.  *See Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1051 (Del. Ch. 1996) (reciting the "elementary precept of corporation law" that "in the absence of self-dealing or improper motive, *a corporate officer or director* is not legally responsible to the corporation for losses that may be suffered as a result of a decision that *an*

---

[5] All the Trustee can muster is the non-responsive, speculative argument that the CPS sale might have been structured or timed differently.  (D.I. 137 at 20)  But such speculation does not satisfy the Trustee's burden of coming forward with admissible evidence to dispute Crowley's

*officer made or that directors authorized* in good faith") (emphasis added); *see also Blackmore Partners, L.P. v. Link Energy LLC*, 2005 WL 2709639 (Del. Ch. 2005) (granting summary judgment to CEO/director Matthews on numerous claims of breach of fiduciary duty, and rejecting argument that presence of a noteholder on the Board of Directors infected a sale transaction).[6]  Third, as one leading treatise explained: "The rationale and justification for the business judgment rule suggests that the rule should apply to both directors and officers." 1 Knepper & Bailey, Liability of Corp. Officers & Directors §2.03, at 2-10 (2006).  If the goal of the business judgment rule is to discourage second-guessing of corporate decisions and provide room for risk-taking, as the Delaware Chancery Court has explained, *Solash v. Telex Corp.*, 1988 WL 3587, at *8 (Del. Ch. 1988), it is hard to imagine why the presumption should be afforded only to directors and not to officers.[7]

Nor is there any merit to the Trustee's suggestion that the business judgment rule does not apply here because Crowley's breach was one of good faith and loyalty.  It is undisputed that Crowley had no financial stake in the decision to sell CPS; the duties of good faith and loyalty are not implicated by any record evidence. (D.I. 123 at 29 n.22).  Crowley and the Coram Board evaluated all available information and reasonably relied on the fairness opinion of DBAB, points the Trustee never argues.  (*Id*. at 28-30).  Under these circumstances, Crowley, as both an officer and director, exercised reasonable business judgment that is protected under law.[8]

---

undisputed facts.

[6] Like the case at bar, in *Blackmore Partners*, the Plaintiffs sought damages based on a sale transaction that they argued was tainted because of the conflict of a board member.  The Court held that, even to the extent that the board member's participation might create a conflict of interest with respect to the challenged transaction, the lack of evidence that that any other potential transaction was available to the Board refuted the alleged breach of fiduciary duty. 2005 WL 2709639, at *6-7.

[7] Of course, it remains undisputed that Coram's Board of Directors was disinterested and that they approved the CPS transaction.  Therefore, even if Crowley had a conflict with respect to CPS, the approval of Coram's independent and disinterested board preserves the business judgment standard with respect to the transaction.  *See Blackmore Partners*, 2005 WL 2709639, at *7; *Official Comm. of Unsecured Creditors of Integrated Health Servs., Inc. v. Elkins*, 2004 WL 1949290, at *10 (Del. Ch. 2004).

[8] The business judgment rule applies with equal force to the unsupported allegations that Crowley wrongfully made debt payments to Coram's Noteholders in cash rather than in kind in the months before Coram filed for bankruptcy.  As identified with cites to record evidence by

**3.    Even if the business judgment rule does not apply, Crowley breached no duty because the transaction was fair to Coram**

Even should the Court decide the business judgment rule is rebutted or does not apply, Crowley need only establish that "the transaction was the product of both fair dealing and fair price" to avoid liability. *Cede & Co. v. Technicolor, Inc.,* 634 A.2d 345, 361 (Del. 1994). The undisputed facts confirm that the CPS transaction meets that test. Crowley and the Coram Board made every possible effort to achieve the highest possible price for Coram, including hiring an investment banker to conduct an auction, evaluating the financials of selling versus retaining CPS, locating a superior bid from GTCR when the first bid was considered insufficient, and negotiating an even higher bid from GTCR before the transaction closed. DBAB provided a formal written opinion that the transaction was both procedurally and financially fair to Coram, (A370-71; A346-69), and DBAB's Christina Morrison testified that she had no doubt whatsoever about the fairness of the transaction. (C6, Morrison March 26, 2007, depo. at 125:10-126:2). Indeed, the Trustee does not dispute that he previously argued that the transaction was fair.[9]

The Trustee's only explanation for why the transaction was not fair to Coram (and for his change of position) is his claim that CPS was sold years later by GTCR, its acquirer, for $335 million. However, the Trustee has never provided any admissible evidentiary foundation for this assertion. Moreover, it is black letter corporations law that the later sale of a company for a higher value cannot be used to punish officers or directors, so long as they exercised appropriate

---

Crowley in his Opening Brief, and never refuted at all by the Trustee in his Opposition Brief, the payments to the Noteholders were contractually obligated, the decision to pay in cash rather than in-kind was approved by Coram's Board, and the payments caused no harm to Coram because the company did not have liquidity issues and the Noteholders owned the company either way. (D.I. 123 at 33-35). By failing to argue these points, the Trustee concedes them, and Crowley may not be held liable for these payments.

[9] Even if the Trustee's reliance on principles of agency law were appropriate, which it is not, Crowley's conduct is still not actionable. The approval by Coram's Board of the CPS sale, the payments in cash to the Noteholders, Crowley's contract that explicitly allowed him to continue working for third parties, and his continued employment after December 2000, relieves Crowley of any liability. Restatement (3d) of Agency, § 8.06. Moreover, it is plain that an agent can only be liable for harm he proximately caused the principal. *Id.* § 7.01, cmt. a. Because Crowley did not cause any harm to Coram, as discussed above, he cannot be liable.

judgment at the time of the sale.[10]  *See Litt v. Wycoff*, 2003 WL 1794724, at \*10 (Del. Ch. 2003) ("The exercise of business judgment cannot be evaluated . . . by looking at the results of that business judgment. . . .  [T]he simple fact that the business decision caused significant loss does not dictate how that decision should be classified or evaluated."); *Gagliardi*, 683 A.2d at 1052 (explaining that directors would be overly risk averse if they faced personal liability from "*ex post facto* claims of derivative liability for any resulting corporate loss").  For that reason, even if the Trustee had properly established foundation, this evidence cannot establish a triable issue in this case.

### 4.  Judicial estoppel precludes the Trustee from asserting any damages from the CPS sale

Following a now-familiar pattern, the Trustee does not dispute the factual issue that his own litigation expert, Jerome Shestack, testified that the CPS sale decision "would pass the business judgment rule" and that Coram realized "the best price they could get."  (D.I. 123 at 31; A1237-38, 1241).  Instead, he proffers the purely legal arguments that his positions were not *irreconcilably* inconsistent or made in bad faith.  Where only legal questions are at issue, summary judgment is appropriate.

On the law, the Trustee is once again incorrect.  When the Trustee wanted his reorganization plan for Coram confirmed, it was in his best interest to minimize and downplay the damages caused by Crowley.  As the Trustee himself testified at the time:  "The problem in the claim against Dan Crowley is . . . damages."  (A1239.03, Adams Jan. 21, 2004 depo. at 11:9-10)  The testimony of the Trustee's expert Shestack made the point even more convincingly, explicitly stating that there was no evidence to indicate that Crowley's Cerberus relationship affected the CPS sale. (A1238)  Indeed, the Trustee was so unimpressed with the damages theory against Crowley that he signed a written agreement to release Crowley from all claims against him <u>and</u> pay Crowley $3.48 million in extra salary and bonuses.  (A917-20; A921-22)  Now, the

---

[10] The Trustee does not dispute that GTCR invested significant capital in the CPS business over that three-year period and acquired complementary businesses.  (D.I. 123 at 32).  Indeed the Trustee himself has previously argued that "[d]amages cannot be calculated by simply subtracting the sale price of CPS in 2000 from the sale price of Curascript in 2004."  (A1095)

tables have turned, and the Trustee acts as if every breath Crowley took as CEO was an affront to Coram that caused millions in damages. The Trustee is undoubtedly playing "fast and loose" with the courts, *Ryan Operations GP v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996), and his self-righteous charade should not be allowed to continue.

**C.     This Case IS About Disclosure and Crowley Is Entitled to Summary Judgment Because The Trustee Cannot Prove Liability With Respect to Disclosure**

A fundamental flaw in the Trustee's Opposition Brief is the assumption that a conflict of interest and a breach of fiduciary duty are the same thing. They are not. Under Delaware law, conflicts of interest are not illegal or even necessarily bad: they can be cured by proper disclosure and/or approval by an independent Board of Directors. *See Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1170 (Del. 1995) ("The fact that some interested transactions are permitted under our corporate law demonstrates that they are not inherently detrimental to a corporation") (quoting *Oberly v. Kirby*, 592 A.2d 445, 467 (Del. 1991)); *see also* 8 Del. C. § 144 (interested transactions are permitted where director's interest is disclosed and transaction is approved by a majority of disinterested directors).

This flaw causes the Trustee to fundamentally mischaracterize his allegations against Crowley. The Trustee claims in his Opposition Brief that the essence of his complaint against Crowley is not his failure to disclose but rather his alleged conflict of interest. (D.I. 137 at 1) But, as described above, even if Crowley's relationship with Cerberus could be considered a conflict of interest, that in and of itself does not constitute a breach of fiduciary duty. The Trustee must allege specific <u>conduct</u> that amounts to a breach of fiduciary duty. The Trustee attempts to do so by alleging that Crowley failed adequately to disclose to Coram's Board his relationship with Cerberus. (D.I. 1 at ¶¶ 15, 23, 28, 49; D.I. 137 at 6-9, 18, 20, 26; *see also* A6-7, Trustee's Responses to Interrogatories)[11] <u>All</u> of the Trustee's other allegations fall by the

---

[11] The Trustee also suggests that, because of his alleged divided loyalties, Crowley caused Coram to make improper payments to Noteholders, specifically using the proceeds of the sale of CPS to pay down debt and making a $6.3 million interest payment in cash rather than in kind. (D.I. 1 ¶ 31; A8) As addressed above and in Crowley's Opening Brief (D.I. 123 at 26-34), the undisputed facts show the decisions to make those payments were contractually required and entirely proper.

wayside if—as the undisputed evidence shows—Crowley's relationship with Cerberus was adequately disclosed at the time he became Coram's CEO. The Trustee's entire case depends on his claim that Crowley's relationship with Cerberus was not known by Coram and its Board. If Crowley's relationship with Cerberus was known by Coram's Board at the time they hired him as CEO, any allegation that a breach of the duty of loyalty affected the sale of CPS or payments to noteholders is irrelevant. In other words, the Trustee's case against Crowley fails entirely if Coram's Board knew of Crowley's relationship with Cerberus at the time they hired him.

> **1.      All material facts regarding Crowley's relationship with Cerberus were disclosed**

The Trustee cannot and does not dispute that <u>every</u> detail about Crowley's relationship with Cerberus was known by Stephen Feinberg, a member of Coram's board and chair of its compensation committee. Similarly, the Trustee does not dispute that Coram Board member Donald Amaral knew that Crowley was being paid by Cerberus, but instead makes the irrelevant claim that Amaral did not know the specific amount of the compensation. The knowledge of these Board members is imputed to the rest of the board. *Chaplake Holdings, Ltd. Chrysler Corp*. 2002 WL 148088, at *32 (Del. Super. Ct. 2002); 3 Fletcher Cyc. Corp. § 793. In a footnote (D.I. 137 at 20 n. 4), the Trustee attempts to shunt aside this basic principle, but his cases are inapposite. In *In re HealthSouth Corp. Shareholder Litigation.*, 845 A.2d 1096 (Del. Ch. 2003), the former CEO of HealthSouth, Richard Scrushy, attempted to impute the knowledge of non-board member managers regarding HealthSouth's financial statements to outside board members—knowledge Scrushy claims he did not have. *Id*. at 1108 n.22 ("[I]f Scrushy himself claims ignorance of wrongdoing by those directly reporting to him, on what logical basis should HealthSouth be imputed to have knowledge of that wrongdoing in an action between itself and Scrushy?"). Here, Crowley alleges that the undisputed knowledge of two Board members regarding an arms-length transaction between the Board and a then-outsider (Crowley) is imputed to the rest of the Board. Crowley cannot be blamed for those Board members' decision not to share additional information with the rest of the Board.[12]

---

[12] *Holly v. Jackson*, 158 A.2d 803 (Del. Ch. 1959), also relied upon by the Trustee, is even less

Nor does the Trustee raise genuine issues of material fact regarding the Board's knowledge in the table on page 18 of his Opposition Brief.  Indeed, the Trustee fails even to address the undisputed fact that Crowley's agreement with Coram expressly provided that he could serve as a consultant or officer to other companies, a provision expressly included so that Crowley could continue to work for Cerberus.  The Trustee attempts to create a fact issue by citing to statements in the Bankruptcy Court's ruling, but factual statements in those rulings are inadmissible hearsay.  Fed. R. Evid. 802; *Thompson v. Glenmede Trust Co*., No. CIV. A. 92-5233, 1996 WL 529693, at * 2 (E.D. Pa. Sep. 17, 1996) ("It is black letter law that a court decision is inadmissible as hearsay.").  Finally, the Trustee cites to testimony of Amaral and Crowley for the irrelevant proposition that some Board members did not know the specific amount that Crowley was being compensated by Cerberus.  None of the evidence cited by the Trustee contradicts the three basic undisputed facts:  Board member Feinberg knew all the details of the Cerberus agreement; Board member Amaral knew that Crowley was being paid by Cerberus (though he did not know how much); and all the Board members knew Crowley had a working relationship with Cerberus (D.I. 1 ¶ 15).

Finally, the Trustee fails to dispute the facts and argument that even if some Board members were not aware of every fact about Crowley's agreement with Cerberus, they were aware of all *material* facts.  (D.I. 123 at 22-23)  Facts are "material" when there is a substantial likelihood that a reasonable person would consider them important in making decisions. *O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 916 (Del. 1999) (*citing Rosenblatt v. Getty Oil Co.*, 493 A.2d 929, 944 (Del. 1985)).  The amount of Crowley's compensation from Cerberus was not important to the decision makers:  the Board members testified that the specific amount of Crowley's compensation did not matter them.  (A1184, A1201, A1178; *see also*

applicable.  There, an attorney was counsel to both parties of a real estate transaction *and* was—unbeknownst to the plaintiffs—the owner of a real estate company in line to make a commission if the transaction was completed.  In a suit to rescind the transaction, the court rejected the attorney's argument that since he was their agent, his knowledge of liens related to the property (information that he had intentionally concealed) should be imputed to the plaintiffs.  *Id*. at 808.  The Court reasoned that since the attorney was the "common agent" for both parties and since he had an interest adverse to the plaintiff due to the interest of his wholly owned real estate

B198, Amaral Oct. 26, 2001 depo. 18:7-25; B184, Smith Sept. 24, 2001 depo. at 86:3-15; B191, Smoley Sept. 29, 2001 depo. at 65:11-18)  Moreover, as the Trustee alleges in the Complaint, by the end of December 2000 at the latest, the entire board was "fully aware of the material terms of the Crowley/Cerberus agreement."  (D.I. 1 ¶ 57)  Yet, possessed with all this information, the Board decided to do exactly the same thing they did in November 1999—have Crowley run Coram.  Plainly then, the details of Crowley's relationship with Cerberus were not important to the Board's decision to hire hiring Crowley and thus were not material.

2.     **The Trustee concedes that the alleged nondisclosure did not cause damages**

The Trustee also fails to dispute that Crowley is entitled to summary judgment for the additional and independent reason that the Trustee cannot establish a connection between the nondisclosure and specific damages.  As described in Crowley's Opening Brief (D.I. 123 at 25-26), the law requires that the Trustee show that nondisclosure itself, rather than the matter that was not disclosed (in this case, the details of Crowley's relationship with Cerberus) caused specific damages.  The undisputed facts show that following full disclosure of the Cereberus relationship in December 2000, the Coram Board kept Crowley on and, nevertheless, the Bankruptcy Court did not confirm the Second Plan.  The fact that the Second Plan was not confirmed in the face of repeated disclosure establishes that the First Plan would have met the same fate even if additional terms of the Cerberus agreement had been specifically disclosed to the Coram Board members (who, incidentally, did not care about the information and have testified that they would have done the same thing—hired and kept Crowley—even if they had possessed it).  The Trustee does not offer a single fact or legal argument in opposition and thus concedes this argument.

3.     **The exculpatory provision shields Crowley from liability for nondisclosure**

Finally, the exculpatory provision of Coram's Certificate of Incorporation shields Crowley from personal liability even if the Trustee were able to show that Crowley failed adequately to disclose material information to the Board.  The Trustee contends that Crowley is not entitled to the protection of the exculpatory provision because the provision protects only

---

company, he could not impute his uncommunicated knowledge to the plaintiff.

directors and "the Trustee's claims are based on Crowley's conflict as CEO." (D.I. 137 at 23)
This argument fails because it is directly contradicted by the clear language of the Trustee's
Complaint. The first sentence of the Trustee's Complaint alleges that "Plaintiff, Arlin M.
Adams, as Chapter 11 Trustee . . . brings this action for breaches of fiduciary duty against Daniel
D. Crowley, *the former Chairman and CEO of Coram and a member of its Board of Directors . .
. .*" (D.I. 1 at 1) (emphasis added) Count 1 of the Complaint charges that "Crowley, *as an
officer and director*, owed Coram fiduciary duties . . ." which the Trustee alleges Crowley
breached. (*Id.* ¶ 49) (emphasis added) Thus, it could not be clearer that the Trustee's claim
against Crowley is based on his conduct as an officer *and* director. The Trustee cannot now
escape the exculpatory provision by ignoring the Complaint and recasting his claim against
Crowley as one based *solely* on Crowley's conduct as an officer of Coram.

Moreover, the Trustee misreads the relevant case law, which indisputably provides that
an exculpatory provision modeled on 8 Del.C. § 102(b)(7) applies to individuals who serve as
*both* officers and directors. *Arnold v. Soc'y for Sav. Bancorp., Inc.*, 650 A.2d 1270 (Del. 1994);
*cf. Trenwick Am. Litig. Trust v. Ernst & Young, L.P.*, 906 A.2d 168, 192 (Del. Ch. 2006);
*Canadian Commercial Workers Indus. Pension Plan v. Alden*, 2006 WL 456786 (Del. Ch. 2006).
In *Arnold,* the Court held that where a defendant is both a director and officer, a plaintiff must
distinguish between the defendant's conduct as a director and officer and identify specific
actions taken by the defendant as an officer (as distinct from actions taken as a director) that fall
outside the protection of section 102(b)(7). *Id.* at 1288 ("[O]nly those actions taken solely in the
defendant's capacity as an officer are outside the purview of Section 102(b)(7)."); *see also
Goodwin v. Live Entm't, Inc.*, 1999 WL 64265 at *6, n.3 (Del. Ch. 1999). Other than the belated
and cursory assertion that "the Trustee's claims are based on Crowley's conflict as CEO," the
Trustee has failed to allege that Crowley's breach of fiduciary duty was committed solely in his
capacity as an officer and not as a director or Chairman of the Board of Coram.

In an effort to conceal this deficiency, the Trustee inverts the holding of *Arnold* and
asserts that Crowley's failure affirmatively to demonstrate that the conduct at issue related to his
role as *both* a director and officer "dooms" his reliance on the exclusionary provision. (D.I. 137

at 23.)  This is precisely backwards.  While "the *exculpation* afforded by a Section 102(b)(7) charter provision must be affirmatively raised," it is not the defendant's burden to parse his own conduct as both officer and director.  *See Emerald Partners v. Berlin*, 787 A.2d 85, 91 (Del. Super. 2001) (emphasis added).  Rather, a Section 102(b)(7) provision *bars* claims where the plaintiff fails to distinguish between the defendant's acts as director and officer.  *Goodwin*, 1999 WL 64265, at *6 n.3 (citing *Arnold*, 650 A.2d at 1288).  Accordingly, because Crowley properly has raised the defense and the Trustee has failed to make the necessary showing that Crowley's disclosure violations were committed solely in his capacity as an officer, the exculpatory provision applies to the Trustee's duty of disclosure claim against Crowley.

The Trustee's only other argument is that the exculpatory provision does not protect Crowley because it applies only to breaches of the duty of care, not to breaches of the duties of loyalty and good faith, and Crowley has failed to meet his burden of showing that this case involves solely allegations of a breach of the duty of care.  The Trustee misses the point.  Crowley established in his Opening Brief that any nondisclosure violation he might have committed was based on a good faith mistake and, therefore, implicates only the duty of care.  D.I. 123 at 24-25; *see Arnold*, 650 A.2d at 1288.  The Trustee does not address that point.  Accordingly, because Crowley has satisfied his burden of raising the exculpatory provision and establishing good faith, and because any shortcoming in his initial disclosure implicates only the duty of care, the protections of the exculpatory provision apply.  *Emerald Partners v. Berlin*, 726 A.2d 1215, 1225 (Del. 1999).  That is the case here.

## III.    CONCLUSION

For the foregoing reasons, and the reasons described in Crowley's Opening Brief, Crowley respectfully requests that the Court enter judgment in his favor or, in the alternative, partial summary judgment as described above.

Dated:  May 15, 2007                                CONNOLLY BOVE LODGE & HUTZ LLP

**/s/ Christina M. Thompson**
Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
(302) 658-9141

                    -and-

John W. Keker
Elliott R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA  94111
(415) 391-5400
Attorneys for Defendant
DANIEL D. CROWLEY

#539381