**EXHIBIT A TO CROWLEY'S REPLY BRIEF
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

| Crowley's Undisputed Fact | Trustee's Alleged Facts in Dispute | Crowley's Response |
|---|---|---|
| "Coram's Board of directors knew of Crowley's financial relationship with Cerberus prior to the time that Crowley became CEO of Coram, and received all of the information regarding that relationship that they asked for."  (D.I. 123 at 18.) | • "The Bankruptcy Court determined that, '[n]either Crowley, nor Feinberg (who was a director of the Debtors at the time) disclosed the terms of the Consulting Agreement between Cerberus and Crowley to the Debtors.' 271 B.R. at 231." (D.I. 137 at 18.)<br><br>• "Crowley testified in Bankruptcy Court that the Board did not know that he was receiving $80,000 per month from Cerberus when it approved his Coram Employment Agreement.  (B211 [Dec. 13, Hrg. Tr. at 425:9-16]" (D.I. 137 at 18.)<br><br>• "Crowley testified in Bankruptcy Court that he did not inform the Coram Board of his compensation arrangements with Cerberus. (B148 [Dec. 15, 2000 Hrg. Tr.] at 120:2-8.)"  (D.I. 137 at 19.)<br><br>• "Amaral, who had negotiated Crowley's Employment Agreement with Coram, testified that he did not learn that Crowley was being paid $80,000 per month by Cerberus until his deposition a year later.  (B132 [December 8, 2000 Amaral Dep.] at 37:24-38:5.)"  (D.I. 137 at 19.) | The Trustee's facts are not responsive.  He does not dispute the core fact that the Board was aware that Crowley had a financial relationship with Cerberus. Instead, he argues only the irrelevant fact that some members of the Board may not have known the precise terms of the Cerberus agreement.  Nor does the Trustee dispute that the Board received all the information they asked for.  The statements from the Bankruptcy Court are inadmissible hearsay.<br><br>Therefore, these facts remain undisputed. |
| "Crowley did not purposefully withhold any information from Coram regarding his relationship with Cerberus." (D.I. 123 at 18.) | • "The Bankruptcy Court determined that, "the actions of Mr. Crowley . . . did show an intent to hide the relationship." (B152 [Dec. 21, 2000 Hrg. Tr.] at 89.)"  (D.I. 137 at 19.)<br><br>• "The Bankruptcy Court found that Crowley did not voluntarily disclose his Cerberus contract to Coram. 271 B.R. at 239." (D.I. | Statements from Bankruptcy Court rulings are inadmissible hearsay.<br><br>Moreover, contrary to the Trustee's assertion, Amaral did <u>not</u> testify that Crowley misled him.  Rather, the context of the testimony makes clear that Amaral believed that Feinberg had |

1

| Crowley's Undisputed Fact | Trustee's Alleged Facts in Dispute | Crowley's Response |
|---|---|---|
| | 137 at 19.)<br><br>• "The Bankruptcy Court determined that Crowley's 'failure to disclose was a violation of the Debtors' corporate policy.' 271 B.R. at 239." (D.I. 137 of 19.)<br><br>• "Amaral testified that Crowley misled the Coram Board. (B134 [Dec. 8, 2000 Amaral Dep.] at 53:1-6.)" (D.I. 137 at 19.) | not shared sufficient information. This does not call into question Crowley's fact that he did not withhold any information from Coram.<br><br>Therefore, this fact remains undisputed. |
| "Crowley's employment agreement with Coram expressly provided that he could serve as an officer of and consultant to other companies." (D.I. 123 at 18.) | • None | This fact remains undisputed. |
| "Coram's Board of directors decided to put CPS up for sale before Crowley became CEO." (D.I. 123 at 18.) | • None | This fact remains undisputed. |
| "Coram's Board, including Crowley, relied on DBAB's opinion that the [CPS] transaction was fair." (D.I. 123 at 18.) | • "DBAB's fairness opinion addressed the proposed sale price of CPS only, not the critical decision as to whether Coram would have been best served by retaining CPS. DBAB did not form an opinion about whether Coram should sell the CPS unit. (B467 [Mar. 26, 2007 Morrison Dep.] at 48:3-7.)" (D.I. 137 at 19.) | The Trustee's statement is not responsive to Crowley's undisputed fact, but instead is a speculative legal argument. The Trustee does not dispute the fact that DBAB opined that sale was procedurally and substantively fair. Nor does he dispute that Coram's Board relied on the fairness opinion in voting to sell CPS<br><br>Therefore, this fact remains undisputed. |
| "The Trustee previously argued that the CPS sale was fair." (D.I. 123 at 18.) | • None | This fact remains undisputed. |
| "In 2000, Coram's Board of directors approved payments to Noteholders in | • "The Bankruptcy Court determined that, "Crowley did not tell the board of directors, or | The Bankruptcy Court's statements are inadmissible hearsay. |

2

| Crowley's Undisputed Fact | Trustee's Alleged Facts in Dispute | Crowley's Response |
|---|---|---|
| cash." (D.I. 123 at 18.) | bankruptcy counsel, about the [$6.3 million] cash payment to the Noteholders until after it had been made." 271 B.R. at 231." (D.I. 137 at 20.)<br><br>• "Amaral testified that the Board did not take action to ratify the $6.3 million payment. (B138 [Dec. 8, 200 Amaral Dep.] at 94:25-95:1.)" (D.I. 137 at 20.) | Moreover, contrary to the Trustee's characterization, Amaral testified that "he did not recall" whether the Board discussed making payments to noteholders in cash rather than in kind. The evidence submitted by Crowley's proves that it was. (B 138, Amaral Depo 94:18-21)<br><br>Therefore, this fact remains undisputed. |
| "Coram was obligated to use the proceeds of the sale of CPS to pay down the debt." (D.I. 123 at 18.) | • "Coram had a number of alternatives other than using the CPS sale proceeds to pay down the debt, including: (1) conditioning the sale of CPS on the Noteholders' consent to Coram's use of all or a portion of the proceeds for other purposes, such as satisfying the claims of Coram's other unsecured creditors; and (2) completing the sale of CPS in its Chapter 11 proceeding, which it filed a week later. Crowley did not explore either of these options. (B485, B487 – B489 [Apr. 6, 2007 Crowley Dep.] at 199:1-9; 212:22 – 213:3.)" (D.I. 137 at 20.) | The Trustee's statement is not responsive to Crowley's undisputed fact, but instead is a speculative legal argument. The Trustee does not dispute the fact that Coram was obligated to use the proceeds of the CPS sale to pay down debt.<br><br>Therefore, this fact remains undisputed. |
| "From the time Crowley became CEO, Coram did not borrow any additional money to fund operations." (D.I. 123 at 18.) | • None | This fact remains undisputed. |
| "Following denial of the first plan, Coram's Board and outside bankruptcy counsel were aware of Crowley's continuing relationship with Cerberus and never suggested that he resign from Coram or sever his relationship with Cerberus." (D.I. 123 at 18.) | • "Each of the four outside directors testified that Crowley did not tell them that he was continuing to receive payments of $80,000 per month from Cerberus. (B197 – B198 [Oct. 26, 2001 Amaral Dep.] at 17:22-18:10; B188 – B189 [Sept. 28, 2001 Casey Dep.] at 80:23-81:4; B184 [Sept. 24, 2001 Smith Dep.] | The Trustee mischaracterizes the testimony of the directors. None of the directors testified that Crowley did not tell them about his agreement with Cerberus. Indeed, in the pages cited by the Trustee, Amaral testified that "it was |

3

| Crowley's Undisputed Fact | Trustee's Alleged Facts in Dispute | Crowley's Response |
|---|---|---|
| | at 86:3-5; B191 [Sept. 29, 2001 Smoley Dep.] at 65:11-13.)" (D.I. 137 at 20.)<br><br>• "The Bankruptcy Court did not find Crowley's testimony on this point credible, explaining that, "[a]lthough Crowley testified that he told the Board of Directors that he continued to receive compensation from Cerberus, we do not credit that testimony." 271 B.R. 234." (D.I. 137 at 21.) | disclosed to us that he was receiving that compensation in – sometime after December 21st, 2000." (B198) Similarly, Casey testified in the pages excerpted by the Trustee that he knew Crowley was being paid $80,000. (B188) Smith and Smoley testified that they did not know or recall at the time of their depositions one way or the other if he was still receiving the compensation.<br><br>The evidence presented by Crowley—specifically Coram's 2000 10-K signed by all the directors that included all information regarding Crowley's agreement with Cerberus, including that it was a three year contract under which he was currently being paid $80,000 per month— proves they were aware of Crowley's continuing relationship with Cerberus. (A669)<br><br>The Bankruptcy Court statements are inadmissible hearsay.<br><br>Therefore, this fact remains undisputed. |
| "Crowley had no role in the preparation of Coram's second plan of reorganization." (D.I. 123 at 18.) | • "Crowley's decision to remain as Coram's Chairman and CEO was a key component of Coram's second plan. (B166 – B170 [Second Joint Disclosure Statement] at 62- 66].)" (D.I. 137 at 20.)<br><br>• "The second plan also reflected an agreement between Coram and | The Trustee's facts are not responsive. The fact that the Special Committee of Coram's Board asked Crowley to remain as Coram's CEO is not evidence that Crowley had any role in the preparation or presentation of the Second Plan. |

4

5

| Crowley's Undisputed Fact | Trustee's Alleged Facts in Dispute | Crowley's Response |
|---|---|---|
| | Crowley for a $7.5 million reduction in Crowley's claimed bonus compensation that Crowley agreed to. (B164 – B165 [Second Joint Disclosure Statement] at 31-32.)" (D.I. 137 at 20.) | There was no agreement between Crowley and Coram for a reduction of his bonus and the evidence cited by the Trustee does not prove one. To the contrary, while Goldin recommended such a reduction, the Special Committee only reluctantly agreed, specifically directing that a statement of their disagreement be included in the disclosure statement. (B164-65)<br><br>Therefore, this fact remains undisputed. |