IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM INC., a Delaware Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL D. CROWLEY, DONALD J. AMARAL, WILLIAM J. CASEY, L. PETER SMITH, and SANDRA L. SMOLEY,<br><br>Defendants. | Case No. 04-1565 (SLR) |

### APPENDIX OF DOCUMENTS IN SUPPORT OF DANIEL CROWLEY'S REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT

May 15, 2007

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA  94111
(415) 391-5400

*Attorneys for Defendant DANIEL D. CROWLEY*

395485.01

## TABLE OF CONTENTS

| Document Description | Page |
|---|---|
| Excerpts of deposition of David M. Friedman taken on March 16, 2007 | C1 |
| Excerpts of deposition of Christina Morrison taken on March 26, 2007 | C5 |

### Page 1

```
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELWARE
-----------------------------x
ARLIN M. ADAMS, Chapter 11
Trustee of the
Post-Confirmation
Bankruptcy Estates of
CORAM HEALTHCARE CORPORATION,
a Delaware Corporation,
and of CORAM INC.,
a Delaware Corporation,
              Plaintiff,
     vs.                    NO. 04-1565 (SLR)
DANIEL D. CROWLEY,
DONALD J. AMARAL,
WILLIAM J. CASEY,
L. PETER SMITH, and
SANDRA L. SMOLEY,
              Defendants.
-----------------------------x

    VIDEOTAPED DEPOSITION OF DAVID M. FRIEDMAN
              New York, New York
           Friday, March 16, 2007


Reported by:
Jennifer Ocampo-Guzman, RPR, CRR
```

### Page 2

                                  March 16, 2007
                                    9:31 a.m.


        Deposition of DAVID M. FRIEDMAN,
    held at the offices of Kasowitz, Benson,
    Torres & Friedman, LLP, 1633 Broadway,
    New York, New York, pursuant to subpoena,
    before Jennifer Ocampo-Guzman, a
    Registered Professional Reporter,
    Certified Real-Time Shorthand Reporter
    and a Notary Public of the State of New
    York.

### Page 3

1   A P P E A R A N C E S:
2
3       SCHNADER HARRISON SEGAL & LEWIS LLP
4       Attorneys for Plaintiffs
5           1600 Market Street, Suite 3600
6           Philadelphia, Pennsylvania 19103
7       BY:   BARRY E. BRESSLER, ESQ.
8             bbressler@schnader.com
9             RICHARD A. BARKASY, ESQ.
10            220 Lake Drive East, Suite 200
11            Cherry Hill, New Jersey 08002-1165
12            rbarkasy@schnader.com
13      KEKER & VAN NEST, LLP
14      Attorneys for Defendant
15          710 Sansome Street
16          San Francisco, California 94111
17      BY:   R. JAMES SLAUGHTER, ESQ.
18            rslaughter@kvn.com
19      KASOWITZ, BENSON, TORRES & FRIEDMAN
20      Attorneys for the Deponent
21          1633 Broadway
22          New York, New York 10019
23      BY:   ROBERT M. NOVICK, ESQ.
24            rnovick@kasowitz.com
25  ALSO PRESENT: JOSE RIJO, Videographer

### Page 4

THE VIDEOGRAPHER: Here begins the videotaped deposition of David Friedman, tape 1, volume I, in the matter of Adams versus Crowley in the United States District Court of the District of Delaware, case number 04-1565. Today is March 16, 2007 and the time on the video monitor is 9:31 a.m.

The video operator today is Jose Rijo representing LiveNote World Services located at 221 Main Street, suite 1250, San Francisco, California 94105, phone number (415) 321-2300.

The court reporter is Jennifer Ocampo of David Feldman Worldwide reporting on behalf of LiveNote World Services.

Today's deposition is being taken on behalf of defendant and is taking place at 1633 Broadway, New York, New York.

Will counsel please introduce themselves and whom they represent.

MR. NOVICK: This is James

### Page 125

```
 1                  FRIEDMAN
 2      A.   Yes.
 3      Q.   Would you look under, on page 25,
 4  at the heading number 3, "The Business
 5  Relationship Between Mr. Crowley and
 6  Cerberus."
 7      A.   Yes.
 8      Q.   And the second paragraph there
 9  says, "Mr. Crowley and Cerberus are parties
10  to an agreement pursuant to which Mr. Crowley
11  receives a fee of $80,000 per month with a
12  potential for additional incentive bonuses
13  for services provided to Cerberus with
14  respect to its investments in companies other
15  than the Debtors. Mr. Crowley neither
16  receives a fee nor earns incentive bonuses
17  from Cerberus for any services he provides
18  respecting the Debtors." Do you see that?
19      A.   Yes.
20      Q.   Is that accurate as far as you knew
21  the facts at the time you submitted the
22  second disclosure statement?
23      A.   I believe so.
24      Q.   Now, at the time -- at the time
25  that the second disclosure statement was
```

### Page 126

```
 1                  FRIEDMAN
 2  submitted, which I think was the end of
 3  July 2001, the fact that Mr. Crowley was
 4  earning a fee from Cerberus was no secret?
 5      A.   That's correct.
 6      Q.   In fact it was the -- all of the
 7  interested parties, whether it be Coram, note
 8  holders, equity holders were -- were well
 9  aware of that fact by the time the second
10  disclosure statement was prepared; isn't that
11  right?
12      A.   When you say all equity holders,
13  the ones that we were represented by Mr. Levy
14  were aware, yes, as well as other creditors.
15      Q.   The equity committee?
16      A.   The equity committee was certainly
17  aware, yes.
18      Q.   And turning your attention to page
19  26, the paragraph beginning, "Although..."
20           "Although the CHC board of
21  directors" -- I think "CHC" there refers to
22  Coram Healthcare Corporation?
23      A.   Yes.
24      Q.   "Although the CHC board of
25  directors had been aware of a business
```

### Page 127

```
 1                  FRIEDMAN
 2  relationship between Mr. Crowley and
 3  Cerberus, the Court found that there was
 4  inadequate disclosure of the extent and
 5  details of the relationship, and that it
 6  could not make a finding that the Original
 7  Plan was proposed in good faith in accordance
 8  with section 1129(a)(3) of the Bankruptcy
 9  Code based upon the evidence in the record at
10  the time."
11           Do you see that?
12      A.   Yes.
13      Q.   That concern of the bankruptcy
14  court that caused it to deny the first plan
15  was absent with respect to the second plan;
16  is that right?
17      A.   The disclosure issue was certainly
18  not an issue in the second plan, I agree.
19      Q.   Nevertheless, the second plan was
20  rejected as well?
21      A.   It was not confirmed by the Court,
22  correct.
23      Q.   What was your reaction when the
24  plan was not confirmed by the Court?
25      A.   I was very surprised.
```

### Page 128

```
 1                  FRIEDMAN
 2      Q.   More surprised than when the first
 3  plan was not confirmed?
 4      A.   I was surprised the first time, and
 5  even more surprised the second time.
 6      Q.   Why were you even more surprised
 7  that the second plan was not confirmed?
 8      A.   I thought that the path that we had
 9  embarked upon beginning in January or
10  February of 2001, which had in essence the
11  plan of retaining the Goldin firm and being
12  guided by those independent recommendations
13  was one which was endorsed by the Court both
14  in terms of having approved the Goldin
15  retention, as well as -- and other actions
16  the Court had taken during the course of
17  2001, such as the continued approval of
18  Coram's exclusivity with respect to filing a
19  plan, which had been opposed by the equity
20  committee on at least one and perhaps
21  numerous occasions.
22           Mr. Levy had also, I believe,
23  during the course of 2001 sought the right to
24  bring litigation on behalf of the estate
25  against Mr. Crowley, and I think that that
```

Page 129

1        FRIEDMAN
2  was opposed by Coram on the basis of
3  Mr. Goldin's ongoing efforts, both to
4  investigate the circumstances and to propose
5  a recommended settlement, if you will, under
6  the plan.
7        So we thought -- and the Court
8  denied his request to bring that litigation,
9  and I think there were other steps along the
10 way that led us to think that we were on the
11 right path in terms of curing the defects
12 that the Court found to have been present the
13 first time around.
14       And so when the Court indicated
15 that it wouldn't confirm a second plan, I was
16 very surprised. I also was surprised that
17 the Court's basis for not confirming the
18 second plan was the ongoing retention of
19 Crowley by Coram while he simultaneously
20 worked for Cerberus, and that surprised me
21 that the Court found that to be a problem
22 because it was I believe well-known to
23 everybody during the course of 2001, that Mr.
24 Crowley was continuing to work for Coram,
25 because operationally that was in the best

Page 130

1        FRIEDMAN
2  interest of the company. And I think it was
3  no secret that he had not terminated his
4  relationship with Cerberus, and if that were
5  a gated of the type that the bankruptcy court
6  considered to be one that would preclude
7  confirmation, we thought we would have
8  learned of it much earlier in the year, as
9  opposed to finding it out for the first time
10 at the confirmation decision.
11      Q.   Let me unpack some of that answer,
12 because there was a lot there, Mr. Friedman.
13      Part of your reason that you say
14 you were surprised was because you thought
15 essentially, in broad strokes, that the Court
16 had endorsed the plan that you had embarked
17 upon in terms of hiring Goldin?
18      A.   Certainly the Court endorsed the
19 hiring of Goldin. I think the Court
20 considered the Goldin process to be one that
21 presented the promise of a successful
22 reorganization.
23      Q.   Another point that you made was the
24 extension of the exclusivity period?
25      A.   Yes.

Page 131

1        FRIEDMAN
2      Q.   Describe for me the significance of
3  the extension of the exclusivity period.
4      A.   I think in bankruptcy cases,
5  exclusivity is sort of the litmus test by
6  which one gauges whether a company is on the
7  right tract. Courts generally -- well, in
8  case you don't -- I don't know how much you
9  know about bankruptcy, but debtors typically
10 automatically have exclusivity for the first
11 120 days of the case, and then that period
12 can be extended for cause.
13      And the typical basis for cause to
14 extend exclusivity is that the debtors are
15 making appropriate progress towards a
16 reorganization based upon the complexity of
17 the case and the bona fides of the debtors'
18 efforts and so on.
19      And so when exclusivity is -- when
20 we sought to extend exclusivity in 2001 and
21 it was opposed by Mr. Levy, and this was
22 happening concurrently with the Goldin
23 retention, it seemed like that would have
24 been the appropriate time for the Court to
25 have said either you can keep exclusivity

Page 132

1        FRIEDMAN
2  because you are doing the right thing, or I
3  am going to lift exclusivity because you are
4  doing the wrong thing.
5      Now the Court elected to continue
6  exclusivity. In that context, I think we all
7  took some comfort that we were on the right
8  path.
9      Q.   Not only did you seek to extend
10 exclusivity, but the equity committee sought
11 to end exclusivity and gain permission to
12 file its own proposed plan; is that right?
13     A.   That's my recollection, yes.
14     Q.   And do you recall if they did that
15 on more than one occasion?
16     A.   I think they did it on more than
17 one occasion, yes.
18     Q.   And what was -- do you think they
19 did it on more than two occasions?
20     A.   My guess would that they did it --
21 I know they did it once. My guess is that
22 they did it twice.
23     Q.   And what was the Court's response
24 to the equity committee's request that it be
25 permitted to propose a plan?

### Page 201

```
PAGE LINE
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
____  ____   CHANGE FROM: _____
             CHANGE TO:   _____
             REASON:      _____
```

### Page 202

C E R T I F I C A T E

STATE OF NEW YORK   )
                    : ss.
COUNTY OF NEW YORK  )

I, JENNIFER OCAMPO-GUZMAN, a Shorthand Reporter and Notary Public within and for the State of New York, do hereby certify:

That DAVID M. FRIEDMAN, the witness whose deposition is hereinbefore set forth, was solemnly, sincerely affirmed and that such deposition is a true record of the testimony of such witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 16th day of March 2007.

_____
JENNIFER OCAMPO-GUZMAN

### Page 203

I N D E X

| WITNESS | PAGE |
|---|---|
| DAVID M. FRIEDMAN | |
| BY: MR. SLAUGHTER | 5 |
| BY: MR. BRESSLER | 187 |

E X H I B I T S

| DESCRIPTION | PAGE |
|---|---|
| Friedman 1, Printout from Kasowitz, Benson, Torres & Friedman website | 11 |
| Friedman 2, Letter dated 2/28/00, Bates Nos. CROWLEY107 through CROWLEY110 | 18 |
| Friedman 3, Document entitled, "David Friedman Interview (5/17/01)," Bates Nos. G 8667 through G 8676 | 24 |
| Friedman 4, Minutes of a Meeting of the Board of Directors of Coram Healthcare Corporation, April 5, 2000, Bates Nos. TRUSTEE009454 through TRUSTEE009462 | 26 |
| Friedman 5, Minutes of a Meeting of the Board of Directors of Coram Healthcare Corporation, August 7, 2000, Bates Nos. TRUSTEE009481 through TRUSTEE009484 | 42 |
| Friedman 6, Letter dated 6/1/00 | 72 |
| Friedman 7, Letter dated 6/7/00 | 72 |
| Friedman 8, Schedule 13D | 73 |
| Friedman 9, Minutes of a Telephonic Meeting of the Board of Directors of Coram Healthcare Corporation, December 28, 2000, Bates Nos. TRUSTEE009502 through TRUSTEE009507 | 90 |

### Page 204

EXHIBITS (Continued):

| DESCRIPTION | PAGE |
|---|---|
| Friedman 10, Motion for Order Appointing Goldin Associates, L.L.C. as Independent Restructuring Advisors | 97 |
| Friedman 11, Draft Minutes of a Meeting of the Board of Directors of Coram Healthcare Corporation, July 12, 2001 | 108 |
| Friedman 12, Letter dated 7/5/01, Bates Nos. COR-EQTY 009385 through COR-EQTY 009387 | 117 |
| Friedman 13, Second Joint Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code | 123 |
| Friedman 14, Minutes of a Meeting of the Board of Directors of Coram Healthcare Corporation, December 27, 2001, Bates Nos. TRUSTEE009565 through TRUSTEE009567 | 139 |
| Friedman 15, Motion for Leave to File Adversary Proceeding | 144 |
| Friedman 16, Debtors' Objection to Equity Committee's Motion for Leave to File Adversary Proceeding | 147 |
| Friedman 17, Amended Final Application of Kasowitz, Benson, Torres & Friedman LLP for Allowance of Compensation and Reimbursement of Expenses for the Period from August 8, 2000 through December 31, 2002 | 179 |
| Friedman 18, Draft letter dated 5/6/02, Bates Nos. CRX 00063 through CRX 00065 | 195 |

## Page 1

CONFIDENTIAL
IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
- - -

ARLIN M. ADAMS, Chapter 11  :
Trustee of the  :
Post-Confirmation Bankruptcy  :
Estates of CORAM HEALTHCARE  :
CORPORATION, a Delaware  :
Corporation and of CORAM,  :
INC., a Delaware Corporation,  :
        Plaintiff  : CASE NO.
   vs.  : 04-1565

DANIEL D. CROWLEY; DONALD J.  :
AMARAL; WILLIAM J. CASEY;  :
L. PETER SMITH; AND SANDRA L.  :
SMOLEY,  :
        Defendants  :
- - -

Monday, March 26, 2007
9:46 a.m.
- - -

Videotaped deposition of
CHRISTINA MORRISON, held at the law
offices of Ballard Spahr Andrews &
Ingersoll, LLP, 1735 Market Street, 51st
Floor, Philadelphia, Pennsylvania, 19103,
pursuant to notice before Cynthia A.
Whyte, Registered Professional Reporter
and Notary Public.
- - -

## Page 2

1    A P P E A R A N C E S:
2    SCHNADER HARRISON SEGAL & LEWIS LLP
     Counsel for Plaintiff Arlin Adams,
3    Trustee
          1600 Market Street
4         Suite 3600
          Philadelphia, PA 19103
5         (215) 751-2336
6    BY:    WILBUR L. KIPNES, ESQ.
          wkipnes@schnader.com
7
8    KEKER & VAN NEST LLP
     Counsel for Defendant Daniel Crowley
9        710 Sansome Street
          San Francisco, CA 94111-1704
10        (415) 391-5400
11    BY:    WARREN A. BRAUNIG, ESQ.
          wbraunig@kvn.com
12
     AND:   ELLIOT R. PETERS, ESQ.
13        epeters@kvn.com
14
     DEUTSCHE BANK
15    Counsel for Witness Christina Morrison
          Deutsche Bank AG New York
16       Legal Department
          60 Wall Street
17       New York, NY 10005-2858
          (212) 250-7332
18
     BY:    CHARLIE GAMBINO, ESQ.
19       charlie.gambino@db.com
20
21    ALSO PRESENT:   VINCENZO PETULLA,
22                  Videographer

## Page 3

1         IT IS HEREBY STIPULATED AND
2   AGREED by and among counsel for the
3   respective parties hereto that the
4   filing, sealing and certification of the
5   within deposition shall be and the same
6   are hereby waived.
7         IT IS FURTHER STIPULATED
8   AND AGREED that all objections,
9   except as to the form of the
10 question, shall be reserved to the
11 time of the trial.
12        IT IS FURTHER STIPULATED AND
13 AGREED that the within deposition may be
14 signed before any Notary Public with the
15 same force and effect as if signed and
16 sworn to before the Court.

## Page 4

               I N D E X
WITNESS:                             PAGE
CHRISTINA MORRISON
       By Mr. Braunig         7, 181
       By Mr. Kipnes            136
       MORRISON EXHIBITS
NO.                DESCRIPTION            PAGE
Exhibit 1    Memo, 6/5/01, to List
            from Ms. Gould              25

Exhibit 2    Letter, 1/16/99, to
            Mr. Smith from Ms.
            Morrison                     29

Exhibit 3    Excerpt of Transcript,
            10/26/01                     39
Exhibit 4    Letter, 7/12/99, to
            Mr. Kahn from Mr.
            Crowley                      43
Exhibit 5    Memo, 9/20/99, to Mr.
            Meffe and Ms. Kopta from
            Ms. Morrison and Mr.
            Guthner                      54

Exhibit 6    Offering Memorandum       62

Exhibit 7    "Project Caddy,
            Confidentiality
            Agreements Proposal
            Packets Distributed
            December 1999"              71

Exhibit 8    Second round bid letters    74
Exhibit 9    "Buyer Due Diligence
            Questions 1-31-00.doc      82

Exhibit 10   Minutes, 2/10/00          84

### Page 125

1  This was the process we were hired to
2  undertake and that was the process we
3  undertook.
4      Q.  But you did your very best to help
5  them get the best deal they could get,
6  correct?
7      A.  We -- yeah; we went through every
8  part of the process, as we were requested to
9  do so, and rendered a fairness opinion.
10     Q.  And your opinion, the opinion of
11 Deutsche Bank, when the entire process was
12 reviewed and you went through the financial
13 terms and you went through the procedural
14 elements associated with this transaction, did
15 you have any -- did you have any doubt that
16 this transaction was fair?
17         MR. KIPNES:  Object to the form
18 of the question.
19     A.  We rendered a fairness opinion, so
20 felt between the fairness and committee and
21 the review with the board that this was a fair
22 transaction.
23     Q.  Did you have any doubt that this
24 transaction was fair?
25         MR. KIPNES:  Object to the form

### Page 126

1  of the question.
2      A.  Did I have any?  No.
3          MR. BRAUNIG:  Why don't we take
4  a break for lunch right now and we can
5  reconvene.  It is 12:46 right now.
6          VIDEO TECHNICIAN:  We are now
7  off the record at 12:44.
8          (Luncheon recess.)
9          VIDEO TECHNICIAN:  We are now
10 on the record at 1:22.
11 BY MR. BRAUNIG:
12     Q.  Let's return to the June 9
13 presentation in the fairness opinion that
14 Deutsche Bank created.
15         You said that you presented this to
16 Coram's board of directors?
17     A.  Yes.
18     Q.  And this was over the phone?
19     A.  Correct.
20     Q.  Do you recall who was on the phone
21 at the time?
22     A.  I don't.
23         MR. BRAUNIG:  Why don't we go
24 ahead and mark Exhibit 19, Morrison 19.
25         (Morrison Exhibit 19 was marked

### Page 127

1  for identification.)
2      Q.  There is a -- why don't you read the
3  first paragraph, please.  This is Morrison 19.
4          Does this refresh your recollection
5  as to -- this is the minutes of a telephonic
6  meeting of the board of directors of Coram
7  Healthcare Corporation dated June 9, 2000.
8          Does this refresh your recollection
9  as to who the participants were on this call?
10     A.  I don't recall that I was introduced
11 to everybody that was on the call, so all I
12 know is from what is on this document.
13     Q.  And did you -- what did you -- what
14 was the discussion that was had about the
15 presentation that you made?
16     A.  I went through the fairness opinion
17 documents and stated that Deutsche Bank was
18 prepared to render a fairness opinion as to
19 the transaction.
20     Q.  Did they ask questions about the
21 fairness opinion?
22     A.  I don't recall anything specific.
23     Q.  Do you recall if there was
24 discussion among the board of directors about
25 the transaction?

### Page 128

1      A.  I do not recall.
2      Q.  Were you on the call when the board
3  of directors decided whether or not to approve
4  the transaction?
5      A.  I don't recall if I was or not.
6      Q.  Do you know whether the board
7  ultimately approved the transaction?
8      A.  Yes, they did.
9      Q.  Do you know whether that approval
10 was unanimous?
11     A.  I don't know.
12     Q.  Did you do any additional work for
13 Coram after June 9, 2000?
14     A.  Dan called and asked if I would be
15 interested in talking to them about some
16 potential financing alternatives, which I did
17 in sort of the context of a pitch to see if
18 there was anything additional that could --
19 any additional work that could be done.  So it
20 wasn't -- I wasn't hired to do anything.  It
21 was really in the context of a pitch, an
22 investigation.
23     Q.  Did Dan tell you why he was
24 interested in this pitch, in this sort of
25 early stage investigation?

Page 185

```
1         I have read the foregoing
2    transcript of my deposition given on
3    Monday, March 26, 2007, and it is true,
4    correct and complete to the best of my
5    knowledge, recollection and belief except
6    for the corrections noted hereon and/or
7    the list of corrections, if any, attached
8    on a separate sheet herewith.
9
10
11
12              _____
13                   CHRISTINA MORRISON
14
15
16
17   Subscribed and sworn before
18   me this ____day of_____, 2007
19
20
21
22
23
24
25
```

Page 186

```
1                 CERTIFICATE
2         I HEREBY CERTIFY that the
3    proceedings, evidence and objections are
4    contained fully and accurately in the
5    stenographic notes taken by me on Monday,
6    March 26, 2007, and that this is a true and
7    correct transcript of same.
8
9
10
11
12              _____
13
14                 Cynthia A. Whyte, RPR
15
16
17         (The foregoing certification of
18   this transcript does not apply to any
19   reproduction of the same by any means,
20   unless under the direct control and/or
21   supervision of the certifying reporter.)
22
23
24
25
```

SLIP SHEET