## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, *Chapter 11 Trustee of*   )
*the Post-Confirmation Bankruptcy Estates of*   )
*CORAM HEALTHCARE CORP. and CORAM,*   )
*INC.*,   )
  )   Civ. Action No. 04-cv-1565(SLR)
           Plaintiff,   )
  )
     v.   )
  )
DANIEL D. CROWLEY, *et al.*,   )
  )
          Defendants.   )
  )

---

### REPLY BRIEF IN SUPPORT OF THE TRUSTEE'S
### MOTION FOR SUMMARY JUDGMENT
### ON LIABILITY OR, IN THE ALTERNATIVE,
### FOR THE COURT TO
### DEEM CERTAIN FACTS ESTABLISHED

---

Dated: May 15, 2007

Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)

SCHNADER HARRISON SEGAL & LEWIS LLP
824 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)

OF COUNSEL:
Barry E. Bressler (admitted *pro hac vice*)
Wilbur L. Kipnes (admitted *pro hac vice*)
Nancy Winkelman (admitted *pro hac vice*)

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2400 (telephone)
(215) 751-2205 (facsimile)

*Counsel to Plaintiff,*
*Arlin M. Adams, Chapter 11 Trustee of the Post-*
*Confirmation Bankruptcy Estates of CORAM*
*HEALTHCARE CORP. and CORAM, INC.*

## TABLE OF CONTENTS

                                                                                    **Page**

I.     INTRODUCTION ............................................................................................................... 1

II.    CROWLEY WAS BOTH A PARTY TO THE BANKRUPTCY
       PROCEEDINGS AND IN PRIVITY WITH CORAM. .......................................................... 1

  A.   Crowley Was A Party To The Bankruptcy Proceedings. ..................................................... 1

  B.   Crowley Was In Privity With Coram.................................................................................. 5

III.   THE HEARSAY RULE DOES NOT APPLY TO JUDICIAL OPINIONS
       SOUGHT TO BE USED FOR ISSUE PRECLUSION.......................................................... 7

IV.    THE ACTUAL LITIGATION OF CROWLEY'S CONFLICT IN THE
       BANKRUPTCY COURT WARRANTS SUMMARY JUDGMENT IN
       FAVOR OF THE TRUSTEE. .............................................................................................. 10

V.     CROWLEY'S ARGUMENT THAT THE FACTS ARE "HOTLY
       DISPUTED" IS FATAL TO HIS OWN SUMMARY JUDGMENT
       MOTION. ........................................................................................................................... 16

VI.    EVEN IF SUMMARY JUDGMENT IS NOT WARRANTED, RULE 56(d)
       ENTITLES THE TRUSTEE TO HAVE CERTAIN FACTS DEEMED
       ADMITTED......................................................................................................................... 17

VII.   CONCLUSION.................................................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*In re Am. Appliance*, 272 B.R. 587 (Bankr. D.N.J. 2002) .................................................3

*In re Amatex Corp.*, 755 F.2d 1034 (3d Cir. 1985).........................................................3

*Amtrak v. Pa. Publ. Util. Comm.*, 288 F.3d 519 (3d Cir. 2002) ...................................10

*In re Barnes*, 275 B.R. 889 (Bankr. E.D. Cal. 2002).......................................................3

*Burke v. Timothy's Rest.*, Civ. A. 03-1070, 2005 U.S. Dist LEXIS 15533
    (D. Del. July 29, 2005)..................................................................................................9

*In re Camden Ordinance Mfg. Co. of Ark., Inc.*, 245 B.R. 794 (E.D. Pa. 2000) .............3

*Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345 (Del. 1993) ..........................................13

*In re Combustion Eng'g, Inc.*, 391 F.3d 190 (3d Cir. 2004) ............................................3

*Connell v. Liberty Mut. Ins. Co.*, 841 F. Supp. 578 (D. Del. 1994).............................10

*In re Convertible Rowing Exerciser Patent Litig.*, 814 F. Supp. 1197
    (D. Del. 1993) ..............................................................................................................10

*Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415 (5th Cir. 1995)...................................14

*In re Evans*, 344 B.R. 440 (Bankr. W.D. Va. 2004) .......................................................3

*In re Exide Techs.*, 303 B.R. 48 (Bankr. D. Del. 2003) .................................................15

*Fernicola v. Specific Real Prop. in Possession, Custody & Control of Healthcare
    Underwriters Mutual Ins. Co.*, Civ. A. No. 00-5173, 2001 U.S. Dist.
    LEXIS 21724 (S.D.N.Y. Dec. 20, 2001) ......................................................................5

*First Options of Chicago, Inc. v. Kaplan*, 913 F. Supp. 377 (E.D. Pa. 1996) ................5

*Gulf Island-IV v. Blue Streak-Gulf Is Ops.*, 24 F.3d 743 (1994) ...................................4

*Guth v. Loft, Inc.*, 5 A.2d 503 (Del. 1939)....................................................................14

*In re Hechinger Inv. Co.*, 327 B.R. 537 (D. Del. 2005).................................................2

*Herrick v. Garvey*, 298 F.3d 1184 (10th Cir. 2002) ...................................................8, 9

*Higgins v. Walls*, 901 A.2d 122 (Del. Super. 2005) ........................................................5

*Huber v. Taylor*, Civ. A. No. 02-304, 2007 U.S. Dist LEXIS 31131
    (W.D. Pa. Apr. 27, 2007)...................................................................................5

*In the Matter of Embrace Sys. Corp.*, 178 B.R. 112 (Bankr. W.D. Mich. 1995) ............................3

*In re Lernout & Hauspie Speech Products*, 301 B.R. 651 (Bankr. D. Del. 2003)........................15

*Liberty Mut. Ins. Co. v. Rotches Pork Packers*, 969 F.2d 1384 (2d Cir. 1992)..............................8

*Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 855 F. Supp. 673 (D. Del. 1994) ......................10

*McDowell v. Del. State Police*, Civ. A. No. 95-129, 1999 U.S. Dist. LEXIS 3105
    (D. Del. Mar. 15, 1999).....................................................................................9

*Meade v. Simon Prop. Group (Delaware) Inc.*, Civ. A. No. 00-101,
    2001 U.S. Dist. LEXIS 25563 (D. Del. Sept. 28, 2001) ................................................9

*Melwani v. John*, Civ. A. No. 02-1224 2004 U.S. Dist. LEXIS 16867
    (S.D.N.Y. Aug. 23, 2004) ...................................................................................5

*NL Indus. v. GHR Energy Corp.*, 940 F.2d 957 (5th Cir. 1991).....................................................2

*Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993) ..................................................................8

*In re Pro Set, Inc.*, 193 B.R. 812 (Bankr. N.D. Tex. 1996) ...............................................2

*Robertson v. Bartels*, 148 F. Supp. 2d 443 (D. N. J. 2001) .............................................5

*Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840 (3d Cir. 1974)............................................9

*In re Silver Falls Petroleum Corp.*, 55 B.R. 495 (Bankr. S.D. Ohio 1985) ...................................2

*Thompson v. Glenmede Trust Co.*, Civ. A. No. 92-5233, 1996 WL 529693
    (E.D. Pa. Sept. 17, 1996) ...............................................................................7, 8

*Unofficial Comm. of Zero Coupon Noteholders*, 179 B.R. 56 (D. Del. 1995) ................................3

*Wellborn v. Mountain Accessories Corp.*, 23 F. Supp. 2d 1321 (D. Wyo. 1998) ...........................5

*Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969)............................................4

## FEDERAL STATUTES AND RULES

11 U.S.C. § 1109 ............................................................................................................................2, 3

FED. R. BANKR. P. 3003(c)(2) ...........................................................................................................1

FED. R. BANKR. P. 7052 ...................................................................................................................11

## I.    INTRODUCTION

On April 17, 2007, the Trustee filed a Motion for Summary Judgment on Liability or, in the Alternative, for the Court to Deem Certain Facts Established.[1]  The Trustee argued that the Bankruptcy Court's findings regarding Crowley's actual conflict of interest are entitled to preclusive effect.  Those findings entitle the Trustee to summary judgment on liability.  In the alternative, even if those findings do not entitle the Trustee to summary judgment on liability, this Court should deem the facts underlying the Bankruptcy Court's decisions established for purposes of this litigation.  On May 4, 2007, Crowley filed his answering brief and the Trustee now files this reply.

## II.    CROWLEY WAS BOTH A PARTY TO THE BANKRUPTCY PROCEEDINGS AND IN PRIVITY WITH CORAM.

### A.    Crowley Was A Party To The Bankruptcy Proceedings.

Crowley's brief misstates fundamental tenets of bankruptcy law.  Crowley asserts that he was not a "party in interest" in Coram's bankruptcy because he was not listed on the schedule of creditors filed by Coram.  Since Crowley filed proofs of claim, he is wrong.  And even had Crowley not filed proofs of claim, he still was a "party in interest" under the Bankruptcy Code, and, as such, a party in the bankruptcy proceedings for collateral estoppel purposes.

In a Chapter 11 case, a creditor whose claim is not scheduled may file a proof of claim.  FED. R. BANKR. P. 3003(c)(2).  This is precisely what Crowley chose to do.  On

---

[1] On that same day, Crowley filed his own motion for summary judgment, or in the alternative, partial summary judgment (D.I. 122, 123), to which the Trustee has responded.  (D.I. 137.)

September 27, 2000, long before the confirmation hearing began, Crowley filed proofs of claim against the Debtors' bankruptcy estates.  (C45-C47 [Proofs of Claim].)

Crowley's filing of proofs of claim had legal consequences.  The filing "triggered the process of allowance and disallowance of [his] claim[s], thereby subjecting [Crowley] to the bankruptcy court's equitable power."  *In re Hechinger Inv. Co.*, 327 B.R. 537, 545 (D. Del. 2005).  It also made him a party in interest under 11 U.S.C. § 1109, affording him the right to be heard with regard to Coram's plans of reorganization.  *See In re Silver Falls Petroleum Corp.*, 55 B.R. 495, 497 (Bankr. S.D. Ohio 1985) ("We hold that by filing his proof of claim, [the creditor] has established his standing to object to confirmation of the plan.").

Crowley contends that even though he filed proofs of claim, he was not a "creditor" within the meaning of Section 1109 because his claims for bonus compensation did not arise until after Coram filed its Chapter 11 petition.  This argument fails for two reasons. *First*, the proofs of claim do not assert claims for post-petition bonus compensation; rather, they are claims for "indemnification, reimbursement or contribution."  (C47 [Proofs of Claim].) Indeed, an application for payment of a post-petition administrative expense would not have been properly asserted in a proof of claim.  *NL Indus. v. GHR Energy Corp.*, 940 F.2d 957, 966 (5th Cir. 1991); *In re Pro Set, Inc.*, 193 B.R. 812, 815-16 (Bankr. N.D. Tex. 1996) (*quoting* Official Bankruptcy Proof of Claim Form (Form B10) ("This form should not be used to make a claim for an administrative expense arising after commencement of the case.  A request for payment may be filed pursuant to 11 U.S.C. § 503.")).

*Second*, even if Crowley's proofs of claim had asserted a post-petition claim, creditors whose claims arise post-petition are considered parties in interest under Section 1109:

2

> [T]he Code contemplates that a creditor is a party in
> interest for purposes of raising issues and objections in a
> bankruptcy case. The Code does not distinguish between
> creditors existing at the time of a bankruptcy case filing and
> those that attain creditor status post-petition.

*In the Matter of Embrace Sys. Corp.*, 178 B.R. 112, 120 (Bankr. W.D. Mich. 1995); *see also In re Evans*, 344 B.R. 440, 455 (Bankr. W.D. Va. 2004) (same); *In re Barnes*, 275 B.R. 889, 893 (Bankr. E.D. Cal. 2002) (same).

Moreover, even in the absence of filing proofs of claim, Crowley was a party in interest in the bankruptcy proceeding. The Bankruptcy Code defines "party in interest" to include "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder or indenture trustee." 11 U.S.C. § 1109(b). However, "[t]his list is not exhaustive." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004). The scope of the definition of "party" is "flexible and broad." *In re Camden Ordinance Mfg. Co. of Ark., Inc.*, 245 B.R. 794, 807 (E.D. Pa. 2000). The test "does not turn upon whether the party maintains a claim against the debtor." *In re Am. Appliance*, 272 B.R. 587, 595 (Bankr. D.N.J. 2002). Rather, a "party in interest" includes anyone who has a "stake in the proceedings." *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir. 1985). Even a "practical stake in the outcome" will suffice. *Unofficial Comm. of Zero Coupon Noteholders*, 179 B.R. 56, 59 (D. Del. 1995).

Crowley's direct economic interest in the confirmation of both the first and second plans was more than adequate to confer party in interest status. If the first plan had been confirmed, Crowley would have earned an additional $1.8 million "Success Bonus" under the Third Amendment to his Coram Employment Agreement. (C1 [Third Amendment to

Employment Agreement] § 1.) If the second plan had been confirmed, Crowley would have

been paid a $5.9 million bonus. 271 B.R. at 233.[2]

Crowley also had a less direct, but equally significant, stake in the confirmation of

the plans that rendered him a party in interest. The Equity Committee objected to the plans

based upon Crowley's relationship with Cerberus. Crowley had a critical interest in how that

issue was adjudicated; were the Bankruptcy Court to find that he had an actual conflict of

interest, he could face prosecution of claims against him in the future.[3] On the other hand, if

either the first or second plan had been confirmed, Crowley would have received a release from

any claims related to his Cerberus contract. (C38-C40 [Debtors' Joint Plan], Article XIII; C182-

C185 [Debtors' Second Joint Plan] Article XII.)

Crowley argues, without supporting authority,[4] that a party in interest under the

Bankruptcy Code is not the equivalent of a "party" for collateral estoppel purposes. This

argument should be rejected because the rights of a party in interest under Section 1109(b) of the

---

[2] Crowley later filed a Request for Payment of Administrative Claim seeking payment of bonus
compensation for the years 2000, 2001, and 2002, which he withdrew with prejudice shortly
before the scheduled hearing on the claim. (C247 [Request of Daniel Crowley for Payment of
Administrative Expense], ¶¶ 5-7; C259 [Stipulated Withdrawal of Request of Daniel Crowley for
Payment of Administrative Expense Claim]).)

[3] In February 2001, the Equity Committee filed a motion for leave to file an action against
Crowley for breach of fiduciary duty, which was denied without prejudice. (C77-C81 [Equity
Committee Motion for Leave to File Adversary Proceeding].)

[4] The cases Crowley cites on this point, *Gulf Island-IV v. Blue Streak-Gulf Is Ops.*, 24 F.3d 743
(5th Cir. 1994), and *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969), are
inapplicable because they were not bankruptcy matters and did not address party status in the
context of a Chapter 11 bankruptcy case.

Bankruptcy Code to "appear and be heard on any issue" in the case are the same as the rights held by any party to a lawsuit.

For all of these reasons, Crowley was a party to the Coram bankruptcy and, as such, is a "party" for purposes of collateral estoppel.

### B.    Crowley Was In Privity With Coram.

Crowley argues that he is not in privity with Coram because privity requires a finding of an "alter ego type relationship," which he did not have with Coram.  (D.I. 133 at 10.). The concept of privity is not so rigid.  "[T]he privity inquiry should be flexible enough to acknowledge the realities of parties' relationships." *First Options of Chicago, Inc. v. Kaplan*, 913 F. Supp. 377, 384 (E.D. Pa. 1996).  Privity exists when the one party adequately represents the other entity's interests in the prior proceeding. *Id.*; *see also Huber v. Taylor*, Civ. A. No. 02-304, 2007 U.S. Dist LEXIS 31131, at *66 (W.D. Pa. Apr.27, 2007); *Higgins v. Walls,* 901 A.2d 122, 138 (Del. Super. 2005).  "'[O]ne party 'adequately represents' the interests of another when the interests of the two parties are very closely aligned and the first party had a strong incentive to protect the interests of the second party.'" *Robertson v. Bartels*, 148 F. Supp. 2d 443, 450 (D.N.J. 2001) (*quoting Tyus v. Shoemehl*, 93 F.3d 449, 455-56 (8th Cir. 1996)).

Furthermore, the identity of interest between a corporate officer and the entity s/he leads is sufficient to establish privity. *See Fernicola v. Specific Real Prop. in Possession, Custody & Control of Healthcare Underwriters Mutual Ins. Co.*, Civ. A. No. 00-5173, 2001 U.S. Dist. LEXIS 21724, at *14 (S.D.N.Y. Dec. 20, 2001); *see also Melwani v. John,* Civ. A. No. 02-1224 2004 U.S. Dist. LEXIS 16867, at *7 n.3 & *8-*9 (S.D.N.Y. Aug. 23, 2004); *Wellborn v.*

*Mountain Accessories Corp.*, 23 F. Supp. 2d 1321, 1324 (D. Wyo. 1998) (when director is sued in his official capacity, the close relationship "will generally establish privity").

Contrary to Crowley's argument, Crowley's and Coram's interests were squarely aligned in the bankruptcy proceedings. Crowley and Coram shared the same goal -- to defeat the Equity Committee's objections (which were based upon Crowley's relationship with Cerberus). Crowley was not only Coram's CEO, President, and Chairman, but he also had a direct personal interest in the proceedings. If either of Coram's proposed plans had been confirmed, Crowley would have received millions of dollars in bonus compensation and would have been released from all derivative claims.

Not only were Crowley's and Coram's interests squarely aligned, but also Crowley's interests were adequately represented by Coram, which put up a vigorous defense to the Equity Committee's objections during the confirmation hearings. Crowley testified at length regarding his relationship with Cerberus in both hearings and had a full and fair opportunity to explain his position regarding his conflicted relationships to the Bankruptcy Court. Crowley's assertions in this case are the same as the assertions that Coram made at the confirmation hearings -- all of which the Bankruptcy Court flatly rejected. For example:

| Crowley's Assertions In This Case | Coram's Closing Arguments at the Confirmation Hearings that were Rejected by the Bankruptcy Court |
|---|---|
| "Crowley never took any action while at Coram that favored Cerberus to the detriment of Coram." (D.I. 133 at 23.) | "I don't think that anything was introduced that rebuts [Crowley's] basic statement which he stated: 'I am my own man. I'm no sycophant for Cerberus or anybody. I don't have any allegiance to Cerberus, Steve Feinberg, or anybody. My position at Coram is to do the best that I know for all of the stakeholders of |

6

| | Coram.  Your Honor, that is what I have tried to do.'"  (C68 [Dec. 21, 2000 Hrg. Tr.] at 25). |
|---|---|
| "Crowley was not paid for any work related to Coram after he became CEO." (D.I. 133 at 23.) | "Cerberus does not pay Mr. Crowley for any work which Mr. Crowley does [for] Coram." (C68 [Dec. 21, 2000 Hrg. Tr.] at 26). |
| "Crowley dramatically improved Coram's financial performance." (D.I. 133 at 23.) | "Mr. Crowley came in and the company was saved." (C69 [Dec. 21, 2000 Hrg. Tr.] at 48). |
| "Immediately following the rejection of Coram's First Plan, Crowley again disclosed to the board of directors and Friedman his relationship with Cerberus." (D.I. 133 at 24.) | "Mr. Crowley fully disclosed his relationship with Cerberus to his own board of directors after this Court's ruling as he testified last Thursday." (C244 [Dec. 17, 2001 Hrg. Tr.] at 704). |
| "Crowley's continuing relationship with Cerberus was also fully disclosed in Coram's 2000 SEC Form 10-K." (D.I. 133 at 24.) | "Mr. Crowley's relationship with Cerberus was fully disclosed on numerous occasions since this Court's decision.  It was disclosed in the 10-K." (C243 [Dec. 17, 2001 Hrg.Tr.] at 703). |

Crowley is not entitled to a third trial on these very same issues.

## III.    THE HEARSAY RULE DOES NOT APPLY TO JUDICIAL OPINIONS SOUGHT TO BE USED FOR ISSUE PRECLUSION.

Crowley argues that the Trustee is not entitled to summary judgment based on collateral estoppel because the Bankruptcy Court's statements are inadmissible hearsay.  If Crowley were correct, there could never be *res judicata* or issue preclusion at the summary judgment stage because the moving party never would be permitted to tell the court in the subsequent action what the earlier court had found.

That Crowley's position is nonsensical is made clear by *Thompson v. Glenmede Trust Co.*, Civ. A. No. 92-5233, 1996 WL 529693 (E.D. Pa. Sept. 17, 1996), the primary case

upon which Crowley relies for this point. In *Thompson*, while the court rejected plaintiff's effort to have a prior judicial decision admitted under the public records exception to the hearsay rule, it expressly based its decision on the undisputed fact that the plaintiff was "not offering the opinion for res judicata purposes." *Id.* at *9. Here, of course, the Trustee seeks to use the Bankruptcy Court's findings precisely for their preclusive effect. Thus, *Thompson* does not support Crowley's position.

Nor do any of the other cases that Crowley cites support his argument. In *Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993), the trial court admitted an order from another case involving the same parties (but different facts). It did so as evidence of a civil conspiracy -- not for purposes of collateral estoppel. The Fourth Circuit reversed on hearsay grounds. In *Liberty Mutual Insurance Co. v. Rotches Pork Packers*, 969 F.2d 1384 (2d Cir. 1992), the court reversed a decision to take judicial notice of a bankruptcy court order, but explicitly noted without further explanation, "the doctrine of collateral estoppel cannot be invoked [because the defendant] was not a party to the bankruptcy proceeding." Therefore, the court in *Liberty Mutual* was not faced with the issue here, the preclusive effect of a bankruptcy opinion in a subsequent case that involves the same parties. Similarly, in *Herrick v. Garvey*, 298 F.3d 1184 (10th Cir. 2002), the court held that the public records exception to the hearsay rule did not apply to judicial findings of fact in a prior, *unrelated* case. *Id.* at 1192 (emphasis added). *Herrick* thus has nothing to do

with the situation in this case involving the collateral estoppel effect of a prior decision in a case from which the subsequent case actually arose.[5]

The obvious reason why Crowley can find no support for his argument is because it makes no sense. The Trustee's motion does not require a ruling on the admissibility of the Bankruptcy Court's opinions at this time, nor does his argument depend on the truth of the statements in the opinions. Rather, the Trustee's argument is based only on the fact that the statements were made.

Moreover, taken to its logical conclusion, Crowley's argument would mean that a prior decision can never be used as a basis for summary judgment on preclusion grounds. Yet we know that is not the law. As the Third Circuit has explained, "[T]he use of the summary judgment device by a party asserting collateral estoppel is not uncommon. Provided that there is no genuine factual dispute as to the identity of the parties, the nature of the prior judgment, or the similarity of the issues, summary judgment is available to establish the collateral estoppel defense." *Scooper Dooper, Inc. v. Kraftco Corp.*, 494 F.2d 840, 847 (3d Cir. 1974). It is for this reason that courts in this District have not hesitated to grant summary judgment on the basis of collateral estoppel. *See, e.g., Burke v. Timothy's Rest.*, Civ. A. 03-1070, 2005 U.S. Dist LEXIS 15533 (D. Del. July 29, 2005); *Meade v. Simon Prop. Group (Delaware) Inc.*, Civ. A. No. 00-101, 2001 U.S. Dist. LEXIS 25563 (D. Del. Sept. 28, 2001); *McDowell v. Del. State Police*, Civ.

---

[5] The plaintiff in *Herrick* sought to show that the defendant did not own a set of documents by relying on a finding of fact that had been made more than a decade before in an unrelated case. *Id.* at 1191. Furthermore, the finding of fact the plaintiff claimed had been previously determined did not even address the issue of the ownership of the documents.

A. No. 95-129, 1999 U.S. Dist. LEXIS 3105 (D. Del. Mar. 15, 1999); *Connell v. Liberty Mut. Ins. Co.*, 841 F. Supp. 578 (D. Del. 1994); *Mars, Inc. v. Nippon Conlux Kabushiki-Kaisha*, 855 F. Supp. 673 (D. Del. 1994); *In re Convertible Rowing Exerciser Patent Litig.* 814 F. Supp. 1197 (D. Del. 1993).

The chart that Crowley includes at pages 23-25 of his answering brief actually illustrates the Trustee's very point. Crowley argues that summary judgment is inappropriate because the Bankruptcy Court's findings "are either legal conclusions (rather than facts), or hotly disputed." (D.I. 133 at 22.) Yet collateral estoppel applies regardless of how the Bankruptcy Court's conclusions are defined. *See Amtrak v. Pa. Publ. Util. Comm.*, 288 F.3d 519, 525 (3d Cir. 2002) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.") Further, Crowley's "dispute" with the Bankruptcy Court's findings begs the question. It is the Bankruptcy Court's very decision that precludes Crowley as a matter of law from now asserting that those findings are disputed. That is the purpose of collateral estoppel -- to prevent a party (in this case, Crowley) from re-litigating an issue that already has been decided. Crowley's current disagreement with the Bankruptcy Court's findings is wholly irrelevant.

## IV.  THE ACTUAL LITIGATION OF CROWLEY'S CONFLICT IN THE BANKRUPTCY COURT WARRANTS SUMMARY JUDGMENT IN FAVOR OF THE TRUSTEE.

Crowley argues that collateral estoppel is inappropriate because the issues presented in the Bankruptcy Court proceedings are substantially different from the issues presented here. His first argument in that regard is that, "[t]he closest that the Trustee comes to

establishing a link between the confirmation hearings and this litigation is the notion that

Crowley's alleged conflict of interest was *one of the issues* discussed during the bankruptcy."

(D.I. 133 at 12-13.) (emphasis added). That is quite an understatement.

The Bankruptcy Court's determination that Crowley had an actual conflict of

interest, not merely an "alleged conflict," was its central finding -- on two occasions. That

finding was the very reason that the Bankruptcy Court twice denied confirmation of Coram's

proposed plan. After holding extensive hearings and making express findings of fact and

conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052,[6] the

Bankruptcy Court rejected the first proposed plan "because the process was tainted by the

relationship between Crowley and Cerberus." (A38 [Dec. 21, 2000 Hrg. Tr.] at 88.)[7] The

Bankruptcy Court rejected the second proposed plan because Crowley's actual conflict continued

and because "a continuous conflict of interest by the CEO of the Debtor precludes the Debtors

from proposing a plan in good faith under 1129(a)(3)." 271 B.R. at 240.

While the ultimate issue presented to the Bankruptcy Court was whether the plan

was submitted in good faith under Section 1129(a)(3) of the Bankruptcy Code, in making that

determination , the Court focused solely on Crowley's conflict. Crowley emphasizes a quote

from the second opinion denying confirmation: "[W]e must once again deny confirmation of the

---

[6] Federal Rule of Bankruptcy Procedure 7052 makes Federal Rule of Civil Procedure 52, relating to findings of fact and conclusions of law, applicable to adversary proceedings. Federal Rule of Bankruptcy Procedure 9014 makes Rule 7052 applicable to "contested matters."

[7] To avoid repetition, this reply brief will cite to the Appendix filed with the Trustee's opening brief in support of his motion for summary judgment to reference documents already filed with the Court.

Debtors' Plan because we are unable to determine under all of the circumstance that the Debtors'

Second Plan has been proposed in good faith under section 1129(a)(3)." (D.I. 133 at 14 (*quoting*

271 B.R. at 237).) But Crowley conveniently neglects to set forth the entire quote, which makes

clear that the very reason the Court found that the second plan was not proposed in good faith

(just as the Court had found with respect to the first plan) was because of Crowley's conflict:

> As we noted in the first confirmation hearing, *given the actual
> conflict of interest which the Debtors' CEO has*, we are unable to
> conclude that any action taken by the Debtors which may impact
> on the rights of Cerberus were taken without any undue
> consideration of the interests of Cerberus. *Consequently, we must
> once again deny confirmation of the Debtors' Plan* because we are
> unable to determine under all of the circumstances that the
> Debtors' Second Plan has been proposed in good faith under
> section 1129(a)(3).

271 B.R. at 237 (emphases added).

Thus, not only was Crowley's conflict of interest actually litigated in the

Bankruptcy Court proceedings, it was the *raison d'etre* for that Court's denial of Coram's first

two plans of reorganization.

Crowley next argues that the Trustee improperly conflates the concepts of conflict

of interest and breach of fiduciary duty. Crowley is wrong. The Bankruptcy Court addressed

that very question and expressly held that "Crowley's conflict of interest is a violation of his

fiduciary duty to the Debtors and the estate." 271 B.R. at 240. But even had the Bankruptcy

Court not expressly so determined, the Court's findings that Crowley had an actual conflict that

he failed adequately to disclose justify summary judgment. Crowley argues that not every

conflict of interest in and of itself necessarily constitutes a breach of fiduciary duty because

conflicts can be "cured by proper disclosure and/or approval by an independent Board of

Directors." (D.I. 133 at 13.). Yet, the Bankruptcy Court expressly found not only that Crowley

had an "actual conflict," 271 B.R. at 235, but also that he failed adequately to disclose that actual

conflict:

> • "[T]he actions of Mr. Crowley to hide the relationship [with
> Cerberus] . . . did at least evidence that he, himself, believed that
> this relationship should not be disclosed and, therefore, did, in fact,
> taint his ability to serve as Coram's CEO" (A39 [Dec. 21. Hrg. Tr.
> at 89]);
>
> • "[A]lthough Crowley testified that he told the Board of
> Directors that he continued to receive compensation from
> Cerberus, we do not credit that testimony" 271 B.R. at 234 n.7; and
>
> • "[N]either Cerberus nor Crowley voluntarily disclosed the
> agreement to the Debtors or to the Court . . . [f]urther, even
> disclosure of the conflict may not be sufficient to permit approval
> of a transaction involving an actual conflict of interest." *Id.* at 239.

Finally, the Bankruptcy Court found that Crowley's undisclosed actual conflict

harmed Coram. As the Court explained, Crowley's conflict "has [ ] tainted the debtors'

restructuring of its debt, the debtors' negotiations towards a plan, even the debtors' restructuring

of its operations." (A38 [Dec. 21, 2000 Hrg. Tr.] at 88.) Additionally, the Court held that

Crowley had an "obligation to avoid any direct actual conflict of interest." 271 B.R. at 236. It

also found that Crowley's actions regarding the $6.3 million interest payment to the Noteholders

showed how harmful Crowley's actual conflict was to Coram. *Id.*

Accordingly – and contrary to Crowley's assertion -- the Bankruptcy Court

determined that Crowley had an actual conflict of interest that he failed adequately to disclose

and that Coram had been harmed as a result. If those findings are accepted, Crowley has

breached his fiduciary duties to Coram under Delaware law. *See, e.g., Cede & Co. v.*

*Technicolor, Inc.*, 634 A.2d 345, 361 (Del. 1993) (duty of loyalty demands that corporate officer place best interests of corporation and shareholders over officer's own interests); *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939) (duty of loyalty "requires an undivided and unselfish loyalty to the corporation [and] demands that there shall be no conflict between duty and self-interest.").

Crowley's reliance on *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415 (5th Cir. 1995), is misplaced. Copeland, the founder of Popeye's Famous Fried Chicken, acquired a competitor, Church's Fried Chicken. The emerging company, Al Copeland Enterprises, Inc. ("ACE"), was soon forced into bankruptcy. Copeland sued Merrill Lynch and the Canadian Imperial Bank of Commerce, Inc. ("CIBC") in federal district court, alleging that defendants had breached their agreement with him to submit a joint plan of reorganization on behalf of ACE. CIBC had submitted its own proposed plan of reorganization, to which the plaintiff objected. CIBC and Merrill Lynch denied that any such agreement existed. Copeland had earlier filed an adversary action in the bankruptcy court based on defendants' breach of the alleged agreement to submit a joint plan. The bankruptcy court stated that the plaintiff "may have had a claim" for breach of contract, but that it was in the estate's best interests to confirm CIBC's plan. In the district court action, Copeland moved for summary judgment, arguing that the bankruptcy court's statement should be accorded collateral estoppel effect. The district court denied the motion.

The Fifth Circuit affirmed, holding that the bankruptcy court's statement was not entitled to preclusive effect because the bankruptcy court had not addressed the merits of Copeland's breach of contract claim. Rather, the bankruptcy court had considered the valuation of the company and ACE's proposed settlement of its claims against Merrill Lynch and CIBC, and stated only that Copeland "may have had" causes of action in his own right. Copeland's

14

causes of action were not a "critical and necessary part" of the bankruptcy court's decision. *Id.* at 1423; *see also id.* at 1422 ("Copeland's individual claim did not impact the bankruptcy court's consideration of the CIBC plan.").

This case stands in sharp contrast to *Copeland.* Here, the very reason that the Bankruptcy Court determined that the plans were not submitted in good faith was Crowley's actual conflict. Hence, the actual conflict was a "critical and necessary" part of the Bankruptcy Court's decisions.

Finally, Crowley's assertion that the burden has shifted from Crowley to the Trustee misconstrues the bankruptcy court proceedings. The Equity Committee filed objections to each of Coram's proposed plans, asserting that Crowley had an actionable conflict of interest that precluded confirmation. (C48-C63; C203-C224 [Equity Committee Objections].) The burden was on the Equity Committee to produce evidence in support of its objections. *See In re Exide Techs.*, 303 B.R. 48, 58 (Bankr. D. Del. 2003) ("[T]he objecting parties bear the burden of producing evidence to support their objections"); *see also In re Lernout & Hauspie Speech Products,* 301 B.R. 651, 656 (Bankr. D. Del. 2003) ("Creditors objecting to the proposed plan bear the burden of producing evidence to support their objections"). The Equity Committee satisfied its burden, and the Bankruptcy Court twice concluded that Crowley had an impermissible conflict of interest that caused harm to Coram. It was because the Equity Committee proved its objection that the Bankruptcy Court denied confirmation. This is the same burden that the Trustee has here -- to prove the existence of Crowley's conflict. It is sophistry to argue as Crowley does that he had the burden of proving the absence of a conflict.

## V.    CROWLEY'S ARGUMENT THAT THE FACTS ARE "HOTLY DISPUTED" IS FATAL TO HIS OWN SUMMARY JUDGMENT MOTION.

Crowley's chart (D.I. 133 at 23-25) of "hotly disputed" facts demonstrates why his own motion for summary judgment must fail.   If Crowley is correct that the issues really are "hotly disputed," then his position that there are no genuine issues of material fact cannot be correct.  Crowley claims that no genuine issues of material fact exist for purposes of his summary judgment motion, but then simultaneously asserts in opposition to the Trustee's motion that the Bankruptcy Court's findings are not entitled to preclusive effect because they are disputed.

Although the facts to which Crowley points in his chart were at one time subject to dispute, the Bankruptcy Court explicitly decided all of them against Crowley.  The Trustee's motion asserts that these facts are entitled to preclusive effect against Crowley.  Should this Court disagree with that conclusion, the Court will deny the Trustee's summary judgment motion, and will return the parties to their previous position -- disputing the facts.  Put another way, the Trustee's summary judgment motion is entirely based on the premise that the issues have already been litigated by the parties.  Therefore, should the Court determine that collateral estoppel is inapplicable here, that decision would simply leave the parties to litigate before a jury the issues decided by the Bankruptcy Court.

One further point in this regard bears emphasis.  Examining a record similar to that presented to this Court, the Bankruptcy Court explicitly found the above facts -- against Crowley.  Crowley's summary judgment depends on this Court determining that a reasonable factfinder (Chief Judge Walrath) -- who has already rejected Crowley's position, not just once, but on two separate occasions – was wrong.  In other words, Crowley would be entitled to

16

summary judgment only if this Court were to conclude that no reasonable factfinder possible could find precisely what the Bankruptcy Court already has found -- two times.  To state the proposition is to rebut it.[8]

## VI.    EVEN IF SUMMARY JUDGMENT IS NOT WARRANTED, RULE 56(d) ENTITLES THE TRUSTEE TO HAVE CERTAIN FACTS DEEMED ADMITTED.

Crowley asserts that the Trustee is not entitled to partial summary judgment under Rule 56(d) because the Bankruptcy Court's opinions are hearsay and collateral estoppel does not apply to any of its findings.

But, as set forth in Section III of this brief, the Bankruptcy Court's opinions are being used for their preclusive effect and therefore hearsay is not an issue here.  Furthermore, even if the Court concludes that the Bankruptcy Court did not actually decide the ultimate issue of Crowley's breach of fiduciary duty, the Trustee respectfully requests that this Court give preclusive effect to the Bankruptcy Court's underlying factual findings (as set forth at pages 16, 26-27 of the Trustee's opening brief).

---

[8] Crowley also argues that it would be inequitable to apply collateral estoppel because, "[i]t is not clear at the time that he faced any risk whatsoever of personal liability based on the ruling of the Bankruptcy Court, other than possibly losing the right to receive some bonus money." (D.I. 133 at 20.)  Crowley's contention is disingenuous.  As he notes in the very next sentence of his brief, "In fact, at the time, Coram was arguing that the Equity Committee's proposed derivative suit against Crowley would be fruitless . . ." (*Id.*)  Clearly, at that time, Crowley was aware that Coram's argument could fail and that the Equity Committee, even then, might be permitted to bring its proposed derivative suit against Crowley personally.  As CEO and President of a publicly-traded corporation, Crowley had every incentive to litigate whether or not his conflict of interest was a bar to Coram confirming a bankruptcy plan and his right to receive millions of dollars in bonuses upon confirmation of a plan.

## VII.  <u>CONCLUSION</u>

For the above cited reasons, as well as those set forth in the Trustee's opening brief, the Trustee respectfully requests that summary judgment be entered in his favor and against Crowley on the issue of liability.  In the alternative, the Trustee respectfully requests that the specific facts found by the Bankruptcy Court, and set forth in the Trustee's opening brief at pages 16, 26-27, be deemed established for purposes of this litigation.

Dated:  May 15, 2007

Respectfully submitted,

/s/ Michael J. Barrie
Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)

SCHNADER HARRISON SEGAL & LEWIS LLP
824 N. Market Street, Suite 1001
Wilmington, DE  19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)

OF COUNSEL:
Barry E. Bressler (admitted *pro hac vice*)
Wilbur L. Kipnes (admitted *pro hac vice*)
Nancy Winkelman (admitted *pro hac vice*)

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2400 (telephone)
(215) 751-2205 (facsimile)

*Counsel to Plaintiff,*
*Arlin M. Adams, Chapter 11 Trustee of the Post-*
*Confirmation Bankruptcy Estates of CORAM*
*HEALTHCARE CORP. and CORAM, INC.*

18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| ARLIN M. ADAMS, *Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORP. and CORAM, INC.,* | ) ) ) ) |  |
| Plaintiff, | ) ) | Case No. 04-1565 (SLR) |
| v. | ) ) |  |
| DANIEL D. CROWLEY, *et al.,* | ) ) |  |
| Defendants. | ) |  |

### CERTIFICATE OF SERVICE

I, Michael J. Barrie, hereby certify that I am at least eighteen years of age and that on May 15, 2007, I caused a true and correct copy of the Reply Brief in Support of the Motion for Summary Judgment on Liability, or in the Alternative, for the Court to Deem Certain Facts Established, as well as the Appendix of Documents in Support, to be served upon the following:

Jeffrey C. Wisler, Esquire
Christina M. Thompson, Esquire
Connolly Bove Lodge & Hutz LLP
1007 N. Orange St., P.O. Box 2207
Wilmington, DE 19899
(*via CM/ECF and hand delivery*)

Elliot R. Peters, Esquire
Laurie Carr Mims, Esquire
Keker & Van Nest, LLP
710 Sansome Street
San Francisco, CA 94111
(*via CM/ECF, email and overnight mail*)

Dated: May 15, 2007

SCHNADER HARRISON SEGAL & LEWIS LLP

By: /s/ Michael J. Barrie
    Richard A. Barkasy (#4683)
    Michael J. Barrie (#4684)
    824 N. Market Street, Suite 1001
    Wilmington, DE 19801
    Telephone: (302) 888-4554
    Facsimile: (302) 888-1696