# THIRD AMENDMENT TO EMPLOYMENT AGREEMENT

THIS THIRD AMENDMENT TO EMPLOYMENT AGREEMENT (the "Amendment") is made as of _August 2_, 2000, by and between Coram Healthcare Corporation, a Delaware corporation (the "Company"), and Daniel D. Crowley ("Executive").

## RECITALS

A.    The parties previously made and executed that certain Employment Agreement, effective November 30, 1999, that was subsequently amended effective as of November 30, 1999 and as of April 6, 2000 (collectively, the "Employment Agreement").

B.    Each of the parties desires to amend the Employment Agreement as set forth herein.

NOW, THEREFORE, in consideration of the premises set forth above and the covenants contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Company and the Executive hereby agree as follows:

1.    Amendment.  Section 3(j) of the Employment Agreement is hereby amended by deleting such section in its entirety and replacing it with the following provision:

In addition to the Base Salary and any other bonuses payable under the Agreement, Executive shall also earn a success bonus in the amount of $1,800,000 (the "Success Bonus"), upon confirmation of a plan of reorganization of the Company and its subsidiary Coram, Inc. ("CI") that has been confirmed by this Board of Directors that includes a "Refinancing" (as that term is defined below) of the Company's "Principal Debt Instruments" (as that term is defined below).  Such Success Bonus shall be paid immediately upon the effective date of such plan of reorganization from Free Cash or any credit instrument to which the Company is a party and from which the Company may borrow funds as of the time such success bonus is due.

The term "Principal Debt Instruments" shall mean (a) the Revolving Credit Facility; and (b) that certain Securities Exchange Agreement, dated as of May 6, 1998, as amended, by and between the Company; Coram, Inc.; Cerberus Partners, L.P.; Goldman Sachs Credit Partners, L.P.; and Foothill Capital Corporation and the Series A and Series B Notes issued pursuant thereto.

The term "Refinancing" shall mean a transaction or series of related transactions approved by the Company's Board of Directors that provides for either: (a) the conversion of some or all of the Principal Debt Instruments into a combination of new debt instruments and shares of common or preferred stock issued by the Company or CI; or (b) the conversion of the Principal Debt Instruments into new debt instruments issued by the Company or CI.

2.    Counterparts.  This Amendment may be executed in separate counterparts, each of which is deemed to be an original and all of which taken together constitute one and the same instrument.

C1

3.    Miscellaneous.  Except as expressly amended by this Amendment, the Employment Agreement shall continue in full force and effect in accordance with the provisions thereof.  As used in the Employment Agreement, the terms "hereinafter," "hereto," hereof, and other words of similar import shall, unless the context otherwise requires, mean the Employment Agreement as amended by this Amendment.  In the event of any conflict or inconsistency between the terms and conditions of the Employment Agreement and the terms and conditions of this Amendment, the terms and conditions of this Amendment shall control.  All terms appearing in this Amendment with initial capitalization shall have the meanings ascribed to them in the Agreement, unless otherwise defined herein.

IN WITNESS WHEREOF, the parties hereto have executed this Amendment as of the date first above written.

CORAM HEALTHCARE CORPORATION          EXECUTIVE

By: _____         _____
Name: Scott T. Larson                 Daniel D. Crowley
Title: Senior Vice President
       and Secretary

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CORAM HEALTHCARE CORP. and | ) | Chapter 11 |
| CORAM, INC., | ) | |
| | ) | Case Nos. 00-___ ( ) |
| Debtors. | ) | through 00-___ ( ) |
| | ) | |
| | ) | Jointly Administered |
| | ) | |

## DEBTORS' JOINT PLAN PURSUANT TO
## CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Dated as of: August 8, 2000

KASOWITZ, BENSON, TORRES
  & FRIEDMAN LLP
David M. Friedman
Adam L. Shiff
Robert M. Novick
1301 Avenue of the Americas
New York, New York  10019
(212) 506-1700

– and –

PACHULSKI, STANG, ZIEHL,
  YOUNG & JONES, P.C.
Laura Davis Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100
*Co-counsel to the Debtors and*
*Debtors in Possession*

C3

## TABLE OF CONTENTS

ARTICLE I RULES OF CONSTRUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARTICLE II DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

| | | |
|---|---|---|
| 2.1. | Administrative Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| 2.2. | Aggregate Consideration Fund Claims . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| 2.3. | Allowed Administrative Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 2 |
| 2.4. | Allowed Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.5. | Allowed CHC Equity Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.6. | Allowed CHC General Unsecured Claim . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.7. | Allowed CHC Notes Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.8. | Allowed CHC Priority Non-Tax Claim . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.9. | Allowed CHC Secured Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.10. | Allowed Coram Equity Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.11. | Allowed Coram General Unsecured Claim . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.12. | Allowed Coram Priority Non-Tax Claim . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.13. | Allowed Coram Note Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.14. | Allowed Coram Secured Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.15. | Allowed Equity Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.16. | Allowed General Unsecured Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.17. | Allowed Secured Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.18. | Allowed Priority Tax Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.19. | Amended and Restated Certificate of Incorporation of Reorganized Coram . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.20. | Amended By-laws of Reorganized Coram . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.21. | Avoidance Actions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.22. | Ballot . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.23. | Bankruptcy Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.24. | Bankruptcy Court or Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.25. | Bankruptcy Rules . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 4 |
| 2.26. | Business Day . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.27. | Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.28. | Cash . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.29. | Certificate of Incorporation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.30. | Chapter 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.31. | CHC . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.32. | CHC General Unsecured Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.33. | CHC General Unsecured Consideration . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.34. | CHC Noteholder Consideration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.35. | CHC Notes Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.36. | CHC Secured Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.37. | Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.38. | Claimant . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.39. | Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 5 |

i

C4

| | | |
|---|---|---|
| 2.40. | Confirmation | 6 |
| 2.41. | Confirmation Date | 6 |
| 2.42. | Confirmation Hearing | 6 |
| 2.43. | Confirmation Order | 6 |
| 2.44. | Coram | 6 |
| 2.45. | Coram General Unsecured Claim | 6 |
| 2.46. | Coram Note Claims | 6 |
| 2.47. | Coram Secured Claim | 6 |
| 2.48. | Cure Claim | 6 |
| 2.49. | Debtors | 6 |
| 2.50. | Debtor-in-Possession | 6 |
| 2.51. | DIP Claims | 6 |
| 2.52. | DIP Facilities | 6 |
| 2.53. | DIP Lenders | 6 |
| 2.54. | DIP Order | 6 |
| 2.55. | Disbursing Agent | 7 |
| 2.56. | Disclosure Statement | 7 |
| 2.57. | Disputed Claim | 7 |
| 2.58. | Distribution | 7 |
| 2.59. | Effective Date | 7 |
| 2.60. | Estates | 7 |
| 2.61. | Equity Interest | 7 |
| 2.62. | Exit Financing Facility | 7 |
| 2.63. | Face Amount | 8 |
| 2.64. | Final Order | 8 |
| 2.65. | General Unsecured Claim | 8 |
| 2.66. | Most Recent Address | 9 |
| 2.67. | New Coram Stock | 9 |
| 2.68. | New Secured Notes | 9 |
| 2.69. | Noteholder Group | 9 |
| 2.70. | Notes | 9 |
| 2.71. | Old Coram Board of Directors | 9 |
| 2.72. | Person | 9 |
| 2.73. | Petition Date | 9 |
| 2.74. | Plan | 9 |
| 2.75. | Plan Administrator | 9 |
| 2.76. | Plan Administration Agreement | 10 |
| 2.77. | Plan Supplement | 10 |
| 2.78. | Priority Non-Tax Claim | 10 |
| 2.79. | Priority Tax Claim | 10 |
| 2.80. | Pro Rata | 10 |
| 2.81. | Record Date | 10 |
| 2.82. | Reinstated or Reinstatement | 10 |
| 2.83. | Rejection List | 10 |
| 2.84. | Reorganized Coram | 11 |
| 2.85. | Reorganized Coram Board of Directors | 11 |
| 2.86. | Secured Claim | 11 |

ii

C5

2.87.   Securities Exchange Agreement ............................... 11
2.88.   Series A Notes .............................................. 11
2.89.   Series B Notes .............................................. 11
2.90.   Schedules .................................................. 11
2.91.   Subsequent Distribution Date ............................... 11
2.92.   Tax Code ................................................... 11
2.93.   Tax Note ................................................... 11
2.94.   34 Act ..................................................... 12
2.95.   Unsecured Claims Reserve ................................... 12

ARTICLE III RULES OF CLASSIFICATION ............................... 12

3.1     General Rules of Classification ............................. 12
3.2     Undersecured Claims Against Any Debtor .................... 12
3.3     Separate Classifications ................................... 13

ARTICLE IV CLASSIFICATION OF CLAIMS AND ALLOWED INTERESTS .... 13

4.2     CHC ........................................................ 13
4.3     Coram ...................................................... 13

ARTICLE V IMPAIRMENT OF CLAIMS OR ALLOWED INTERESTS .......... 14

ARTICLE VI TREATMENT OF UNCLASSIFIED CLAIMS ................... 14

6.1     Administrative Claims. ..................................... 14
        6.1.1   DIP Claims ......................................... 15
        6.1.2   Compensation and Reimbursement Claims ............. 15
6.3     Priority Tax Claims ........................................ 15

ARTICLE VII TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ...... 16

7.2     Treatment of Class CHC 1 (Allowed CHC Secured Claims) ........ 16
7.3     Treatment of Class CHC 2 ................................... 16
7.4     Treatment of Class CHC 3 ................................... 17
7.5     Treatment of Class CHC 4 ................................... 17
7.6     Treatment of Class Coram P ................................. 18
7.7     Treatment of Class Coram 1 ................................. 18
7.8     Treatment of Class Coram 2 ................................. 18
7.9     Treatment of Class Coram 3 ................................. 18
7.10    Treatment of Class Coram 4 ................................. 19

ARTICLE VIII ACCEPTANCE OR REJECTION OF THE PLAN ............... 19

8.1.    Voting ..................................................... 19
8.2.    Classes Entitled to Vote ................................... 19
8.3.    Acceptance by Impaired Classes ............................. 19

8.4.   Reservation of Right to Withdraw Plan. . . . . . . . . . . . . . . . . . . . . . . . . 20
8.5.   Nonconsensual Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
8.6.   Elimination of Classes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

ARTICLE IX DISTRIBUTIONS UNDER THE PLAN . . . . . . . . . . . . . . . . . . . . . . . . . 20

9.1.   Distributions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
9.2.   Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
9.3.   Distribution of Cash . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
9.4.   Distributions of New Coram Stock and New Coram Secured Notes  . . . 21
9.5.   Setoffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
9.6.   Distribution of Unclaimed Property . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
9.7.   Compliance With Tax Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
9.8.   De Minimis Distributions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
9.9.   Fractional Interests.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
9.10.  Objections to and Estimation of Claims;
       Prosecution of Disputed Claims. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
9.11.  Payments and Distribution on Disputed Claims  . . . . . . . . . . . . . . . . . . 22
9.12.  Disallowance of Reimbursement or Contribution Claims . . . . . . . . . . . 23

ARTICLE X EXECUTORY CONTRACTS AND UNEXPIRED LEASES  . . . . . . . . . 24

10.1.  Assumption and Assignment of Executory
       Contracts and Unexpired Leases  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
10.2.  Cure of Defaults for Assumed Executory
       Contracts and Unexpired Leases  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
10.3.  Rejection of Executory Contracts or Unexpired Leases  . . . . . . . . . . . . . 24
10.4.  Indemnification Obligations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
10.5.  Compensation and Benefit Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

ARTICLE XI IMPLEMENTATION AND MEANS OF
CONSUMMATING THE PLAN  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

11.1.  Cancellation of Existing Securities and Agreements . . . . . . . . . . . . . . . . 25
11.2.  Surrender of Instruments  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
11.3.  Dissolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
11.4.  Cancellation of Capital Stock and Equity Interests . . . . . . . . . . . . . . . . . 26
11.5.  Charter . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
11.6.  Management of Reorganized Coram . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
11.7.  Issuance of New Coram Stock . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
11.8.  Issuance of New Secured Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
11.9.  Corporate Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
11.10. Exit Financing Facility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
11.11. Unsecured Claim Reserve  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
11.12. The Plan Administrator . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

ARTICLE XII EFFECTIVENESS OF THE PLAN  . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

C7

12.1.   Conditions Precedent to Confirmation . . . . . . . . . . . . . . . . . . . . . . . . . . 29
12.2.   Conditions Precedent to Effectiveness . . . . . . . . . . . . . . . . . . . . . . . . . 29

ARTICLE XIII EFFECTS OF CONFIRMATION OF THE PLAN . . . . . . . . . . . . . . . 30

13.1.   Vesting of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
13.2.   Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
13.3.   Injunctions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
13.4.   Exculpation and Releases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
13.5.   Rights of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

ARTICLE XIV RETENTION OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . 32

14.1.   Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
14.2.   Estimation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
14.3.   Assumption/Rejection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32
14.4.   Adversary Proceedings and Contested Matters . . . . . . . . . . . . . . . . . . . 33
14.5.   Modifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
14.6.   Dispute Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
14.7.   Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
14.8.   Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
14.9.   Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
14.10.  Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
14.11.  Taxes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
14.12.  Final Decree . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

ARTICLE XV MISCELLANEOUS PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . . 33

15.1.   Payment of Statutory Fees. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
15.2.   Plan Binding on All Persons . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
15.3.   Fees and Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
15.4.   Authorization of Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
15.5.   Exemption from Registration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
15.6.   Severability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
15.7.   Modification or Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
15.8.   Revocation or Withdrawal of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . 34
15.9.   Binding Effect . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
15.10.  Notices . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
15.11.  Governing Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
15.12.  Saturday, Sunday, or Legal Holiday . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
15.13.  Filing of Additional Documents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
15.14.  Plan Controls . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
15.15.  Section 1145 Exemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
15.16.  Section 1146 Exemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

v

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CORAM HEALTHCARE CORP. and | ) | Chapter 11 |
| CORAM, INC., | ) | |
| | ) | Case Nos. 00-___ ( ) |
| Debtors. | ) | through 00-___ ( ) |
| | ) | |
| | ) | Jointly Administered |

## DEBTORS' JOINT PLAN PURSUANT TO
## CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Coram Healthcare Corp. and Coram, Inc., the above-captioned debtors and debtors in possession, propose the following Joint Plan pursuant to sections 1121(a) and 1123 of title 11 of the United States Code.

## ARTICLE I
## RULES OF CONSTRUCTION

1.1.   Unless otherwise provided or separately defined in this Plan, capitalized terms shall have the meanings set forth in Article II of this Plan.

1.2.   Any capitalized term used in this Plan that is not defined in Article II of this Plan shall have the meaning ascribed to such term, if any, in the Bankruptcy Code.

1.3.   The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

1.4.   In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.5.   The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

1.6.     Whenever it appears appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

1.7.     All exhibits are incorporated into and made a part of the Plan as if set forth in full herein, whether or not annexed hereto.  Copies of Exhibits can be obtained upon written request to Kasowitz, Benson, Torres & Friedman LLP, Attn: Adam L. Shiff, Esq., 1301 Avenue of the Americas, New York, NY 10019.

1.8.     Captions and headings to Articles and Sections of the Plan are inserted for convenience and reference only.  Captions and headings and are not intended to be a part, or to affect the interpretation, of the Plan.

## ARTICLE II
## DEFINITIONS

All of the following definitions are intended to be, and hereby are, part of the substantive provisions of this Plan and have the same force and effect as any other provision of this Plan.

2.1.     "Administrative Claim" means any Claim constituting a cost or expense of administration of the Debtors' Chapter 11 cases incurred on or after the Petition Date and allowed by Final Order under section 503(b) of the Bankruptcy Code, including, without limitation: (a) any and all DIP Claims, (b) any actual and necessary costs and expenses incurred after the petition date of preserving the Estates of the Debtors and operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their businesses or for the acquisition or lease of property or for the procurement of services, any costs and expenses of the Debtors and/or Reorganized Coram for the management, maintenance, preservation, sale or other disposition of any assets, the administration and implementation of the Plan, the administration, prosecution or defense of claims by or Claims against the Debtors and for distributions under the Plan, (c) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under section 330, 331, or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date, (d) all fees and charges assessed against the Debtors' Estates under section 1930, Chapter 123 of title 28 of the United States Code.

2.2.     "Aggregate Consideration Fund Claims" means the sum of the aggregate amount of Allowed CHC Notes Claims and Allowed CHC General Unsecured Claims.

2.3.     "Allowed Administrative Claim" means an Administrative Claim that is or becomes an Allowed Claim.

2

2.4.  "Allowed Claim" means a Claim to the extent such Claim: (a)(i) is either:  (A) scheduled by a Debtor pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated or disputed; or (B) proof of which has been timely filed, or deemed timely filed, with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (ii) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court; or (b) has otherwise been allowed by a Final Order or pursuant to this Plan.  An Allowed Claim: (A) includes a previously Disputed Claim to the extent such Disputed Claim becomes allowed; and (B) shall be net of any setoff amount of any claim that may be asserted by the Debtors against the holder of such claim, which shall be deemed to have been setoff in accordance with the provisions of this Plan.  Without limiting the foregoing, no Claim shall be considered an Allowed Claim before the time that an objection has been or may be filed with regard to such Claim if: (x) the amount or classification of the Claim specified in the relevant proof of claim exceeds the amounts of or has a classification from any corresponding Claim scheduled by a Debtor in its Schedules of Assets and Liabilities; (y) any corresponding Claim scheduled by a Debtor has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been scheduled by the Debtor in its Schedules of Assets and Liabilities.

2.5.  "Allowed CHC Equity Interest" means an Allowed Equity Interest in CHC.

2.6.  "Allowed CHC General Unsecured Claim" means a CHC General Unsecured Claim to the extent it is or has become an Allowed Claim.

2.7.  "Allowed CHC Notes Claims" means the CHC Notes Claims.

2.8.  "Allowed CHC Priority Non-Tax Claim" means a Priority Non-Tax Claim that is or becomes an Allowed Claim against CHC.

2.9.  "Allowed CHC Secured Claims" means a CHC Secured Claim to the extent it is or has become an Allowed Claim.

2.10.  "Allowed Coram Equity Interest" means an Allowed Equity Interest in Coram.

2.11.  "Allowed Coram General Unsecured Claim" means a Coram General Unsecured Claim, to the extent it is or has become an Allowed Claim.

2.12.  "Allowed Coram Priority Non-Tax Claim" means a Priority Non-Tax Claim that is or becomes an Allowed Claim against Coram.

2.13.  "Allowed Coram Note Claims" means the Coram Note Claims.

3

C11

2.14.  "Allowed Coram Secured Claim" means a Coram Secured Claim to the extent it is or has become an Allowed Claim.

2.15.  "Allowed Equity Interest" means an Equity Interest as of the Record Date.

2.16.  "Allowed General Unsecured Claim" means a General Unsecured Claim that is or becomes an Allowed Claim.

2.17.  "Allowed Secured Claim" means a Secured Claim that is or becomes an Allowed Claim.

2.18.  "Allowed Priority Tax Claim" means a Priority Tax Claim that is or becomes an Allowed Claim.

2.19.  "Amended and Restated Certificate of Incorporation of Reorganized Coram" means the certificate of incorporation of Reorganized Coram, as amended, which certificate shall be in substantially the form included in the Plan Supplement.

2.20.  "Amended By-laws of Reorganized Coram" means the amended by-laws of Reorganized Coram, which amended by-laws shall be in substantially the form included in the Plan Supplement.

2.21.  "Avoidance Actions" means all of the Debtors' preference and other avoidance power claims pursuant to sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable law.

2.22.  "Ballot" means the form or forms distributed to each holder of an impaired claim on which the holder is to indicate acceptance or rejection of the Plan.

2.23.  "Bankruptcy Code" means title 11 of the United States Code (11 U.S.C. §§ 101 et seq.) as in effect on the Petition Date and as amended after the Petition Date to the extent applicable to the Debtor's Chapter 11 Cases.

2.24.  "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the District of Delaware, including the United States Bankruptcy Judge presiding over the Debtors' Chapter 11 cases, and to the extent it is necessary and appropriate for jurisdiction to be exercised by the United States District Court for the District of Delaware, including the United States District Judges, or any other court with jurisdiction over the Debtors' Chapter 11 cases, this definition shall include same.

2.25.  "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure (Fed. R. Bankr. Proc. 1001 et seq.) as in effect on the Petition Date and as amended after the Petition Date to the extent applicable to the Debtor's Chapter 11 Cases.

4

C12

2.26.   "<u>Business Day</u>" means any day other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

2.27.   "<u>Cases</u>" means the cases under Chapter 11 of the Bankruptcy Code which were commenced on the Petition Date with respect to the Debtors.

2.28.   "<u>Cash</u>" means legal tender of the United States of America and equivalents thereof, including but not limited to bank deposits, checks and similar items.

2.29.   "<u>Certificate of Incorporation</u>" means the certificate of incorporation of Coram, as amended or restated prior to the Petition Date.

2.30.   "<u>Chapter 11</u>" means Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 <u>et seq</u>.), as in effect on the Petition Date, and as amended after the Petition Date and effective during the Debtors' Chapter 11 cases, to the extent applicable to the Debtors' cases.

2.31.   "<u>CHC</u>" means Coram Healthcare Corporation, a Delaware Corporation.

2.32.   "<u>CHC General Unsecured Claim</u>" means a General Unsecured Claim against CHC.

2.33.   "<u>CHC General Unsecured Consideration</u>" means the result of: (A) (i) the aggregate amount of Allowed General Unsecured Claims, (ii) divided by the Aggregate Consideration Fund Claims, (B) multiplied by the value of the Unsecured Claims Reserve.

2.34.   "<u>CHC Noteholder Consideration</u>" means the result of: (A) (i) the aggregate amount of Allowed CHC Notes Claims, (ii) divided by the Aggregate Consideration Fund Claims, (B) multiplied by the value of the Unsecured Claims Reserve.

2.35.   "<u>CHC Notes Claims</u>, means, collectively, any Claim against CHC based upon or evidenced by the Notes, which as of the Petition Date, aggregate approximately $252,007,000.

2.36.   "<u>CHC Secured Claim</u>" means a Secured Claim against CHC.

2.37.   "<u>Claim</u>" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

2.38.   "<u>Claimant</u>" means the holder of a Claim or an Allowed Interest on the Confirmation Date.

2.39.   "<u>Class</u>" means a category of holders of Claims or Equity Interests as established pursuant to Articles III and IV of the Plan.

2.40.    "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

2.41.    "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

2.42.    "Confirmation Hearing" means the hearing before the Bankruptcy Court respecting the Confirmation of the Plan.

2.43.    "Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

2.44.    "Coram" means Coram, Inc., a Delaware Corporation.

2.45.    "Coram General Unsecured Claim" means a General Unsecured Claim against Coram.

2.46.    "Coram Note Claims, means, collectively, any claim against Coram based upon or evidenced by the Notes, which as of the Petition Date, aggregate approximately $252,007,000.

2.47.    "Coram Secured Claim" means a Secured Claim against Coram.

2.48.    "Cure Claim" means a Claim against the Debtors, or any of them, arising from an obligation to cure defaults within the meaning of section 365(b) of the Bankruptcy Code.

2.49.    "Debtors" means CHC, the Debtor and Debtor in Possession in Chapter 11 Case No. 00-_____ pending before the Bankruptcy Court, and Coram, the Debtor and Debtor in Possession in Chapter 11 Case No. 00-_____ pending before the Bankruptcy Court.

2.50.    "Debtor-in-Possession" means the Debtors as debtors in possession in the Cases.

2.51.    "DIP Claims" means all Claims of DIP Lenders arising under the DIP Facilities.

2.52.    "DIP Facilities" means the debtor-in-possession credit agreement and any related agreements between the Debtors and the DIP Lenders.

2.53.    "DIP Lenders" means Madeleine LLC and any other lenders participating in the DIP Facilities.

2.54.    "DIP Order" means all Final Orders authorizing, approving or amending the DIP Facilities.

6

2.55. "Disbursing Agent" means the bank, trust company, corporation, other organization or Person, if any, selected by the Debtors or Reorganized Coram to make distributions under and in accordance with the Plan.

2.56. "Disclosure Statement" means the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code, either in its present form or as it may be altered, amended, supplemented or modified from time.

2.57. "Disputed Claim" means (a) any Claim listed in any of the Schedules as contingent, unliquidated or disputed; (b) any Claim against any of the Debtors, proof of which is filed designating such Claim in any respect as contingent, unliquidated or disputed; (c) any Claim which, in whole or in part, is the subject of a timely objection interposed by the Debtors or any other party in interest; or (d) any Claim which is the subject of litigation as to amount or liability by any of the Debtors; provided, however, that the amount of a Disputed Claim shall mean the lesser of (x) the amount listed in the Schedules, (y) the amount stated in a proof of Claim as filed with the Bankruptcy Court or (z) the amount as estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code; and provided, further, however, that, in the event the Bankruptcy Court shall estimate the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code, such estimation shall constitute and represent the maximum amount in which such Claim may ultimately become an Allowed Claim.

2.58. "Distribution" means any consideration to be provided under this Plan to the holder of an Allowed Claim on account of such Claim.

2.59. "Effective Date" means the first business day on which all conditions to effectiveness of the Plan, as set forth in Section 12.2 hereof, have been satisfied or waived and on which no stay of the Confirmation Order is in effect.

2.60. "Estates" means the estates, created in the Debtors' Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

2.61. "Equity Interest" means any equity interest in a Debtor represented by duly authorized, validly issued, unissued or outstanding shares of stock, or any interest or right to convert into such an equity interest or acquire any equity interest, that was in existence immediately prior to the Petition Date, including, without limitation, any warrants, options, employee stock options or contract rights to acquire or purchase such interests at any time.

2.62. "Exit Financing Facility" means the financing facility in the approximate aggregate principal amount of $40 million between Reorganized Coram and one or more lenders, substantially in the form included in the Plan Supplement, pursuant to which such lender shall have agreed to provide financing to Reorganized Coram on terms and conditions satisfactory to Coram.

7

C15

2.63.   "Face Amount" means: (a) when used with reference to a Disputed Unsecured Claim, either (i) the full stated amount claimed by the holder of such Claim in any group of Claims filed by the Bar Date, or otherwise deemed timely filed under applicable law, if the proof of claim specifies only a liquidated amount; (ii) if no proof of Claim is filed by the Bar Date or otherwise deemed timely filed under applicable law, the full amount of the Claim listed on the Debtors' Schedules provided, that such amount is not listed as disputed, contingent or unliquidated; or (iii) the applicable deductible under the relevant insurance policy, minus any reimbursement obligations of the applicable Debtor to the insurance carrier for sums expended by the insurance carrier on account of such Claim (including defense costs) if such amount is less than the amount specified in (i) or (ii) above or the proof of Claims specifies an unliquidated amount (and) (b) when used with reference to a Disputed Uninsured Claim, either (i) the full stated amount claimed by the holder of such Claim and any proof of Claim filed by the Bar Date or otherwise deemed timely filed under applicable law, if the proof of claim specifies only a liquidated amount; or (ii) the amount of the Claim acknowledged by the applicable Debtor or Reorganized Debtor in any objection filed such Claim or in the Schedules as an undisputed, non-contingent and liquidated Claim, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, proposed by the Debtors or established by Reorganized Coram following the Effective Date, if no proof of Claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law or if the proof of Claim specifies an unliquidated amount.

2.64.   "Final Order" means an order or judgment of a court as to which (a) any appeal that has been taken has been determined finally or dismissed and such order has not been reversed, stayed, modified or amended, (b) the time to appeal, petition for certiorari or request reargument or rehearing has expired and as to which no appeal, petition for certiorari, or request for reargument or rehearing is pending or as to which any right to appeal, petition for certiorari, or request reargument or rehearing has been waived or if an appeal, certiorari, reargument or rehearing thereof has been sought, the order or judgment of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, or (c) the time to take any appeal or to seek certiorari or further reargument or rehearing has expired.

2.65.   "General Unsecured Claim" means any Claim other than an Administrative Claim, a Secured Claim, a Priority Non-Tax Claim, a Priority Tax Claim, an Allowed Coram Note Claim or an Allowed CHC Notes Claim.  The term "General Unsecured Claim" shall consist of, except as set forth above in this definition, all impaired unsecured claims not otherwise classified that are not cured, paid, released or waived pursuant to the Plan, assumed by a Debtor pursuant to the Plan or agreements incorporated into the Plan, or classified in any other class, including, without limitation, claims (a) for goods sold and/or services rendered, (b) for moneys lent, (c) based upon guarantees of performance or payment of the obligations or duties of any Person, (d) for tort liability, (e) for environmental remediation, (f) of governmental unites under any applicable unclaimed property or escheat laws, (g) of governmental units for taxes, assessments, penalties or charges which are not Tax Claims, (h) for contribution, reimbursement

8

or indemnity, (i) for fines, penalties or other assessments, (j) for the portion of any Claim supported directly or indirectly by a letter of credit issued for the account of a Debtor in excess of the amount available under such letter of credit, and (k) representing the undersecured portion of any claim that is otherwise a Secured Claim.

2.66.   "Most Recent Address" means as of any date, with respect to any holder of a Claim or its designee, its address set forth in the proof of claim or other writing most recently filed with the Bankruptcy Court or received by the Debtor and if no such proof of claim or writing has been filed or received, then the address set forth on the Debtors' Schedules.

2.67.   "New Coram Stock" means ten million (10,000,000) shares of common stock, $0.01 par value, authorized by Reorganized Coram pursuant to this Plan, representing one hundred percent (100%) of the issued and outstanding voting common stock of Reorganized Coram on the Effective Date.

2.68.   "New Secured Notes" means the notes in the aggregate principal amount of $180 million to be issued to holders of Allowed Coram Notes Claims pursuant to sections 7.3 and 9.4 of the Plan, which notes shall be guaranteed by a pledge of all stock and liens on all assets owned by each direct or indirect operating subsidiary of Coram, and which shall be senior in priority to all other obligations of the Debtors except the Exit Financing Facility, and which shall require payments of interest only during the first four years after their issuance, and which shall be in the form included in the Plan Supplement.

2.69.   "Noteholder Group" means Cerberus Partners, L.P., Goldman Sachs Credit Partners L.P., and Foothill Capital Corporation.

2.70.   "Notes" means the Series A Notes and the Series B Notes.

2.71.   "Old Coram Board of Directors" means the board of directors of Coram that existed as of the Petition Date.

2.72.   "Person" means a person as defined in section 101(41) of the Bankruptcy Code or an entity as defined in section 101(15) of the Bankruptcy Code.

2.73.   "Petition Date" means August 8, 2000.

2.74.   "Plan" means this Joint Chapter 11 Plan Pursuant to Chapter 11 of the United States Bankruptcy Code (including all exhibits and schedules annexed hereto or included in the Plan Supplement) either in its present form or as it may be altered, amended or modified from time to time by the Debtors.

2.75.   "Plan Administrator" means the fiduciary responsible for, among other things, holding and distributing the Unsecured Claim Reserve pursuant to the Plan, the Plan Agreement,

the Confirmation Order, or such other order as may be entered by the Bankruptcy Court, the completion of the process of prosecution or settlement of disputed claims against CHC, and the completion of all other obligations pursuant to the Plan Administrator Agreement.

2.76. "Plan Administration Agreement" means the agreement describing the powers, duties, and rights of the Plan Administrator in administering the Plan, in substantially the form included in the Plan Supplement.

2.77. "Plan Supplement" means a separate volume, to be filed with the Clerk of the Bankruptcy Court, containing, among other things, forms of the Amended By-Laws of Reorganized Coram, the Amended and Restated Certificate of Incorporation of Reorganized Coram, form of New Secured Notes, and the schedule of officers and directors of Reorganized Coram.

2.78. "Priority Non-Tax Claim" means that portion of any Claim entitled to priority in right of payment under sections 507(a)(2), (3), (4), or (6), of the Bankruptcy Code.

2.79. "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, but excludes that portion of a Claim to the extent of a Secured Claim.

2.80. "Pro Rata" means: (i) in the case of a Class, the proportion the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class and, (ii) in the case of a particular type of Claim, the proportion the amount of an Allowed Claim of a particular type bears to the aggregate amount of all Allowed Claims of such type.

2.81. "Record Date" means the date the clerk of the Bankruptcy Court enters upon the docket an order approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

2.82. "Reinstated or Reinstatement" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the holder of such Claim in accordance with section 1124 of the Bankruptcy Code, or (b) if applicable under section 1124 of the Bankruptcy Code: (i) curing all prepetition and postpetition defaults other than defaults relating to the insolvency or financial condition of a Debtor or its status as a debtor under the Bankruptcy Code; (ii) reinstating the maturity date of the Claim; (iii) compensating the holder of such Claim for damages incurred as a result of its reasonable reliance on a provision allowing acceleration; and (iv) not otherwise altering the legal, equitable and contractual rights to which the Claim entitles the holder thereof.

2.83. "Rejection List" means a list, if any, filed by the Debtors not less than ten (10) business days prior to the Confirmation Hearing setting forth the leases and contracts the Debtors

10

C18

are rejecting under this Plan pursuant to section 365 of the Bankruptcy Code, which Rejection List shall be served upon the non-Debtor party to each lease or contract described therein

2.84. "Reorganized Coram" means Coram, Inc., a Delaware corporation, as reorganized and as successor to Coram, pursuant to the Plan and Confirmation Order.

2.85. "Reorganized Coram Board of Directors" means the board of directors of Reorganized Coram on and after the Effective Date.

2.86. "Secured Claim" means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date, and includes any Claim that is: (i) subject to an offset right under applicable Law; and (ii) a secured claim against a Debtor pursuant to section 506(a) and 553 of the Bankruptcy Code.

2.87. "Securities Exchange Agreement" means the Securities Exchange Agreement dated as of May 6, 1998 between Coram and CHC, and Cerberus Partners, L.P., Goldman Sachs Credit Partners, L.P., and Foothill Capital Corporation, as subsequently amended.

2.88. "Series A Notes" means the Series A Senior Subordinated Notes issued by Coram and guaranteed by CHC pursuant to, among other documents, the Securities Exchange Agreement in the aggregate original principal amount of $150,000,000 and due May 2001.

2.89. "Series B Notes" means Series B Subordinated Convertible Notes issued by Coram and guaranteed by CHC pursuant to, among other documents, the Securities Exchange Agreement in the aggregate original principal amount of $87,922,213.

2.90. "Schedules" means the schedules of assets and liabilities and the statement of affairs filed by the Debtors with the Bankruptcy Court as amended from time to time.

2.91. "Subsequent Distribution Date" means the dates beginning six (6) months after the Effective Date and on the same date (or if such date is not a Business Day, then the Subsequent Business Day) of each month thereafter.

2.92. "Tax Code" means the Internal Revenue Code of 1986, as amended.

2.93. "Tax Note" means a promissory note delivered to a holder of an Allowed Tax Claim providing for equal cash payments, made semi-annually, commencing on the first anniversary of the date of the assessment of such a Tax Claim over a period not exceeding six (6) years after the date of assessment of such Tax Claim which is the subject of the relevant Allowed

C19

Tax Claim. Each Tax Note shall include simple interest at the rate of 9 % per annum from the Effective Date.

2.94.   "34 Act" means the Securities Exchange Act of 1934, as amended.

2.95.   "Unsecured Claims Reserve" means a reserve established to hold, in one or more segregated accounts to be established by the Debtors or the Plan Administrator, cash contributed by Coram in an amount equal to $2 million, which will be maintained in trust for holders of Allowed Claims in Class CHC 2 and, to the extent applicable, Class CHC 3, and will not constitute property of Reorganized Coram and will be administered by the Plan Administrator.

## ARTICLE III

## RULES OF CLASSIFICATION

3.1    General Rules of Classification

3.1.1    All Claims and Interests, other than Administrative Claims and Tax Priority Claims, if any, have been classified in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Priority Claims are not impaired under the Plan and therefore, in accordance with section 1123(a)(3) of the Bankruptcy Code, have not been classified and thus are excluded from the Classes set forth below.

3.1.2.    A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Class(es) to the extent that any remainder of the Claim or Interest falls within the description of such other Class(es). Unless otherwise provided, to the extent a Claim qualifies for inclusion in a more specifically defined class and a more generally defined class, it shall be included in the more specifically defined class.

3.1.3    A Claim is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim: (a) is an Allowed Claim in that Class and (b) such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

3.2    Undersecured Claims Against Any Debtor    To the extent that the amount of an Allowed Claim is greater than the value of the collateral securing such Claim as of the applicable valuation date, subject to section 1111 (b) of the Bankruptcy Code, such Claim is classified in both a Secured Claim Class for the secured portion of such Claim and a General Unsecured Claim Class for the excess of such Claim over the value of the collateral.

3.3    Separate Classifications  The Claims and Interests against each Debtor are separately classified.

## ARTICLE IV

## CLASSIFICATION OF CLAIMS AND ALLOWED INTERESTS

4.1    All Claims and Allowed Interests, other than Administrative Claims and Tax Claims, are classified into the following Classes pursuant to section 1123(a) of the Bankruptcy Code:

4.2    **CHC**

| Class CHC P: | Class CHC P consists of all Allowed CHC Priority Non-Tax Claims |
| Class CHC 1: | Class CHC 1 consists of all Allowed CHC Secured Claims. |
| Class CHC 2: | Class CHC 2 consists of all Allowed CHC General Unsecured Claims. |
| Class CHC 3: | Class CHC 3 consists of all Allowed CHC Notes Claims. |
| Class CHC 4: | Class CHC 4 consists of all Allowed CHC Equity Interests. |

4.3    **Coram**

| Class Coram P: | Class Coram P consists of all Allowed Coram Priority Non-Tax Claims. |
| Class Coram 1: | Class Coram 1 consists of all Allowed Coram Secured Claims. |
| Class Coram 2: | Class Coram 2 consists of all Allowed Coram Note Claims. |
| Class Coram 3: | Class Coram 3 consists of all Allowed Coram General Unsecured Claims. |
| Class Coram 4: | Class Coram 4 consists of all Allowed Coram Equity Interests. |

13

C21

## ARTICLE V

## IMPAIRMENT OF CLAIMS OR ALLOWED INTERESTS

5.1    The Classes of Claims and Allowed Interests that are impaired under the provisions of this Plan are Classes CHC 2, CHC 3, CHC 4, Coram 2, and Coram 4. The Debtors are soliciting acceptances to the Plan from the Claimants in Classes CHC 2, CHC 3 and Coram 2. The Debtors are not soliciting acceptances from the holders of Claims in Classes CHC 4 and Coram 4 because those Classes will receive no distribution of property under the Plan and are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. The Debtors are not soliciting acceptances from the holders of Claims in Classes CHC P, CHC1, Coram P, Coram 1 and Coram 3 because those classes are unimpaired and are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

## ARTICLE VI

## TREATMENT OF UNCLASSIFIED CLAIMS

6.1    Administrative Claims.

Administrative Claims are not classified under the Plan. In accordance with section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed Administrative Claim shall receive the full amount of its unpaid Allowed Administrative Claim (i) in cash on the Effective Date or (ii) on such other terms as mutually agreed to by the holder of an Allowed Administrative Claim and the Debtors; provided, however, that Allowed Administrative Claims representing (a) post-Petition Date liabilities incurred in the ordinary course of business, or (b) post-Petition Date liabilities arising under loans or advances to any Debtor(s) whether or not incurred in the ordinary course of business, shall be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto; provided, further, however, that administrative claims of the United States Trustee for pursuant to 29 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees, provided, further, however, that interim and/or final payment of Allowed Administrative Claims approved by the Bankruptcy Court shall be paid in accordance with such Bankruptcy Court approval; provided, further, however, that notwithstanding any other provision contained in this section, DIP Claims shall be paid in accordance with the terms of the DIP Facility, the DIP Order, and section 6.1.1 of the Plan, and; provided, further, however, that compensation and reimbursement claims shall be paid in accordance with section 6.1.2 of the Plan.

C22

### 6.1.1  DIP Claims

DIP Claims shall be paid in accordance with the terms of the DIP Facility and the DIP Order, giving due regard and fully enforcing all priorities, "superpriorities," and liens granted in favor of the DIP Lenders. Upon payment in full of the DIP Claims, the DIP Lenders shall release any and all liens against and security interests in the Debtors' and the Estates' property, the DIP Facility shall be deemed terminated, and the obligations of the Debtors and Reorganized Coram thereunder shall be canceled.

### 6.1.2  Compensation and Reimbursement Claims

All persons or entities that are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with section 330 or 331 of the Bankruptcy Code, or entitled to the priorities established pursuant to section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court (a) on or as soon as practicable following the later to occur of (i) the Effective Date and (ii) the date upon which the Bankruptcy Court order allowing such Claim becomes a Final Order or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtors or Reorganized Coram.

### 6.2  Priority Tax Claims

Priority Tax Claims are not classified under the Plan. In full satisfaction, payment and discharge of its Priority Tax Claim, and in accordance with section 1129(c)(9)(C) of the Bankruptcy Code, each holder of an Allowed Priority Tax Claim shall receive (i) payment, in cash, of the full amount of such holder's Priority Tax Claim, (ii) a Tax Note equal to the full amount of such holder's Priority Tax Claim, or (iii) on such other terms as mutually agreed to by the holder of an Allowed Tax Claim and the Debtors or Reorganized Coram. Any claim or demand for fines or penalties relating to a Priority Tax Claim shall be disallowed, and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors or the Reorganized Coram.

# ARTICLE VII

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

7.1    Treatment of Class CHC P
       (Allowed CHC Priority Non-Tax Claims)

In full satisfaction, payment and discharge of its Priority Non-Tax Claim, and in accordance with section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed CHC Priority Non-Tax Claim shall receive payment in full (i) in cash on the Effective Date, or (ii) such other treatment as will render such Allowed CHC Priority Non-Tax Claim unimpaired.

Class CHC P is unimpaired under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class CHC P.

7.2    Treatment of Class CHC 1
       (Allowed CHC Secured Claims)

In full satisfaction, payment and discharge of its Allowed CHC Secured Claims, each holder of an Allowed CHC Secured Claim, if any, shall receive, at the option of the Debtors, (i) payment in full in Cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim, or (ii) such other treatment as will render such Allowed CHC Secured Claim unimpaired.

Class CHC 1 is unimpaired under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class CHC 1.

7.3    Treatment of Class CHC 2
       (Allowed CHC General Unsecured Claims)

(a)    If Class CHC 2 votes to accept the Plan by the majorities required by section 1126(c) of the Bankruptcy Code, each holder of an Allowed CHC General Unsecured Claim, in full satisfaction, payment and discharge of its Allowed CHC General Unsecured Claim, shall receive its Pro Rata share of (i) the CHC General Unsecured Consideration and (ii) the CHC Noteholder Consideration.

(b)    In order to provide the distribution of the CHC Noteholder Consideration afforded by subsection (a) above, if it should become applicable, the holders of CHC Notes

16

Claims (Class CHC 3) agree and shall be deemed to have authorized the Debtors to transfer and distribute the CHC Noteholder Consideration to the holders of Class CHC 2.

(c)     If Class CHC 2 fails to accept the Plan by the majorities set forth in section 1126(c) of the Bankruptcy Code, each holder of an Allowed CHC General Unsecured Claim shall receive, in full satisfaction, payment and discharge of its Allowed CHC General Unsecured Claim, its Pro Rata share of the CHC General Unsecured Consideration.

Class CHC 2 is impaired under the provisions of the Plan.

The Debtors are soliciting acceptances from the holders of Claims in Class CHC 2.

7.4     Treatment of Class CHC 3
        (Allowed CHC Notes Claims)

Each holder of an Allowed CHC Notes Claim, in full satisfaction, payment and discharge of its Allowed CHC Notes Claim, shall receive its Pro Rata share of the CHC Noteholder Consideration; provided, however, that if Class CHC 2 votes to accept the Plan by the majorities required by section 1126(c) of the Bankruptcy Code, then the holders of Allowed CHC Notes Claims shall be deemed to have authorized the Debtors to transfer and to distribute the CHC Noteholder Consideration to the holders of Class CHC 2 Claims in accordance with section 7.3 of the Plan, and the holders of Allowed CHC Notes Claims shall receive no distribution from CHC under the Plan.

Class CHC 3 is impaired under the provisions of the Plan.

The Debtors are soliciting acceptances from the holders of Claims in Class CHC 3.

7.5     Treatment of Class CHC 4
        (Allowed CHC Equity Interests)

Holders of Allowed CHC Equity Interests shall receive no distribution nor retain any legal, equitable, or contractual rights in respect of their CHC Equity Interests, which shall be deemed canceled and retired.

Class CHC 4 is impaired under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class CHC 4, which class is deemed to have rejected the Plan.

17

7.6    Treatment of Class Coram P
       (Allowed Coram Priority Non-Tax Claims)

In full satisfaction, payment and discharge of its Priority Claim, and in accordance with section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed Coram Priority Non-Tax Claim shall receive payment in full (i) in cash on the Effective Date, or (ii) such other treatment as will render such Allowed Coram Priority Non-Tax Claim unimpaired.

Class Coram P is unimpaired under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class CHC P.

7.7    Treatment of Class Coram 1
       (Allowed Coram Secured Claims)

In full satisfaction, payment and discharge of its Allowed Coram Secured Claim, each holder of an Allowed Coram Secured Claim, if any, shall receive, at the option of the Debtors, (i) payment in full in cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim, (ii) Reinstatement, or (iii) such other treatment as will render such Allowed Coram Secured Claim unimpaired.

Class Coram 1 is unimpaired under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class Coram 1.

7.8    Treatment of Class Coram 2
       (Allowed Coram Note Claims)

In full satisfaction, payment and discharge of its Allowed Coram Note Claim, each holder of an Allowed Coram Note Claim shall receive its Pro Rata share of: (i) the New Coram Stock, and (ii) the New Secured Notes.

Class Coram 2 is impaired under the provisions of the Plan.

The Debtors are soliciting acceptances from the holders of Claims in Class Coram 2.

7.9    Treatment of Class Coram 3
       (Allowed Coram General Unsecured Claims)

In full satisfaction, payment and discharge of its Allowed Coram General Unsecured Claim, each holder of an Allowed Coram General Unsecured Claim not otherwise

18

C26

paid prior to the Effective Date shall receive, at the option of Coram or Reorganized Coram, (i) payment in full in Cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim, (ii) Reinstatement, or (iii) such other treatment to render such Allowed Coram General Unsecured Claim unimpaired.

Class Coram 3 is <u>unimpaired</u> under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class Coram 3.

7.10    Treatment of Class Coram 4
        (Allowed Coram Equity Interests)

The holder of the Allowed Coram Equity Interests shall receive no distribution nor retain any of its legal, equitable, or contractual rights in respect of its Coram Equity Interests, which shall be deemed contributed to, and vest in, Reorganized Coram.

Class Coram 4 is <u>impaired</u> under the provisions of the Plan, which Class is deemed to have rejected the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class Coram 4.

## ARTICLE VIII
## ACCEPTANCE OR REJECTION OF THE PLAN

8.1.    <u>Voting</u>. Acceptance of the Plan by a Claimant shall be deemed to be a consent to all provisions of the Plan and to the treatment thereunder to such holder and to all other Claimants.

8.2.    <u>Classes Entitled to Vote</u>. Only holders of Claims that are Allowed Claims as of the Record Date, in impaired Classes receiving distributions under the Plan, are entitled to vote on the Plan. Accordingly, each Claimant in Classes CHC 2, CHC 3 and Coram 2 shall be entitled to vote to accept or to reject the Plan. All Claimants entitled to vote to accept or to reject the Plan shall vote by executing and returning a Ballot, in accordance with the solicitation materials approved by the Bankruptcy Court.

8.3.    <u>Acceptance by Impaired Classes</u>. Consistent with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, a class of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of holders of the Allowed Claims of such class that have timely and properly voted to accept or to reject this Plan.

19

C27

8.4.    Reservation of Right to Withdraw Plan. The Debtors reserve the right to modify or revoke and withdraw the Plan at any time before the Confirmation Date or, if the Debtors are for any reason unable to consummate the Plan after the Confirmation Date, at any time until the Effective date.

8.5.    Nonconsensual Confirmation. The Debtors request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code notwithstanding the deemed rejection of the Plan by Class CHC 4 and Class Coram 4. In the event that any other impaired class of Claims shall fail to accept this Plan in accordance with section 1126(a) of the Bankruptcy Code, the Debtors shall request the Bankruptcy Court to confirm this Plan in accordance with the "cram down" provisions of section 1129(b) of the Bankruptcy Code with respect to such rejections.

8.6.    Elimination of Classes. Any class of Claims that is not occupied as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or a Claim temporarily allowed under Bankruptcy Rule 3018 shall be deemed deleted from the Plan for purpose of voting on acceptance or rejection of the Plan by such Class under section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE IX

## DISTRIBUTIONS UNDER THE PLAN

9.1.    Distributions. Except as otherwise provided in the Plan, all Distributions under the Plan shall be made by the Debtors or a Disbursing Agent, if any, to holders of Allowed Claims or their designees at their Most Recent Address. The Debtors shall make an initial distribution on the Effective Date or as soon thereafter as is reasonably practicable to all holders of Allowed Claims as of the Effective Date. Thereafter, Distributions on account of Allowed Claims shall be made on the first Subsequent Distribution Date that is at least ten (10) Business Days after a Claim becomes an Allowed Claim.

9.2.    Disbursing Agent. Subject to approval by the Bankruptcy Court, an entity, if any, designated by the Debtors 10 days prior to the Confirmation Hearing, shall serve as Disbursing Agent and shall distribute to the holders of Allowed Claims property to be distributed under the Plan, in accordance with the provisions of the Plan, applicable Bankruptcy Rules and such other terms mutually agreed to by the Disbursing Agent and Reorganized Coram.

9.3.    Distribution of Cash. Distributions and transfers of cash called for under this Plan shall be made on the Effective Date, except that with respect to Claims that are Disputed Claims on the Effective Date, distributions shall be made on Subsequent Distribution Dates until there are no longer any Disputed Claims as to which cash payments are required under the Plan. All

20

distributions of cash under the Plan may be made either by check or by wire transfer, at the option of the Debtors or Reorganized Coram.

9.4.    Distributions of New Coram Stock and New Coram Secured Notes.  Distributions and transfers of New Coram Stock and New Coram Secured Notes under this Plan shall be made on the Effective Date.  Coram and Reorganized Coram reserve the right to delay any distribution of New Coram Stock or New Secured Notes to any holder of Allowed Coram Note Claims until it receives reasonable satisfaction that such distribution will not result in a violation of any statute or regulation applicable to Coram's business.

9.5.    Setoffs.  The Debtors and Reorganized Coram may, but shall not be required to, set off against any Claim and the payments or distributions to be made pursuant to the Plan in respect of such Claim, any claims of any nature whatsoever the Debtors or the Reorganized Coram may have against the holder thereof, but neither the failure to do so nor the allowance of any Claim hereunder, for voting purposes or otherwise, shall constitute a waiver or release by the Debtors or the Reorganized Coram of any such claim that any of such entities may have against any holder.

9.6.    Distribution of Unclaimed Property.  Any distribution of property (cash or otherwise) under the Plan which is unclaimed after two (2) years following the Effective Date shall be forfeited to, and vest in Reorganized Coram.  Any holder of an Allowed Claim that does not assert a claim pursuant to the Plan for an undelivered or undeliverable distribution to be made be a Disbursing Agent with this two (2) year period will be forever barred from asserting any such claim against the Debtors, Reorganized Coram or their respective property.

9.7.    Compliance With Tax Requirements.

9.7.1  In connection with the Plan, to the extent applicable, each disbursing agent will comply with all Tax reporting requirements imposed upon it by any governmental unit with respect to any and all distributions pursuant the Plan, and will be authorized to take any actions that may be necessary or appropriate to comply with such  reporting requirements.

9.7.2  Notwithstanding any other provision of the Plan, each entity receiving a distribution of cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax obligations imposed upon it by any governmental unit on account of such distribution.

9.7.3  To the extent (and only to the extent) required by applicable law, any applicable federal, state or local withholding taxes may be deducted by the Debtors or Reorganized Coram from any payments or other Distributions made in respect of Allowed Claims.

21

C29

9.8.    De Minimis Distributions.  No cash payment of less than $10.00 shall be made to any holder of an Allowed Claim unless such holder so requests in writing to the Debtors.  Absent a request, such funds shall be distributed as if they are Distributions of Unclaimed Property in accordance with the provisions of section 9.6 of the Plan.

9.9.    Fractional Interests.  Fractional interests in New Coram Stock shall not be distributed.  Notwithstanding any other provision in the Plan, only whole numbers of shares of New Coram Stock shall be issued to holders of Allowed Claims (who are otherwise entitled to receive New Coram Stock).  When any distribution on account of an Allowed Claim would result in the issuance of a number of shares of New Coram Stock that is not a whole number, the actual distribution of such New Coram Stock shall be rounded to the next lower whole number.  Any fractional interests in New Coram Stock that are allocated for distribution to holders of Allowed Claims shall be deemed contributed to the Reorganized Debtors.

9.10.    Objections to and Estimation of Claims; Prosecution of Disputed Claims.  The Debtors, Reorganized Coram and the Plan Administrator reserve the right to object to the allowance of all Claims including any Claims listed in the Schedules or filed with the Bankruptcy Court with respect to which they dispute liability in whole or in part and the characterization of a Claim as secured or unsecured; subject to further extension by the Bankruptcy Court with or without notice, all objections to the allowance of Claims shall be filed with the Bankruptcy Court on or before sixty (60) days after the Effective Date.  All objections shall be litigated to Final Order; provided however, that the Debtors, Reorganized Coram and the Plan Administrator may compromise, settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any such objections to Claims.  The Debtors, Reorganized Coram and the Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection.  The Bankruptcy Court shall retain jurisdiction to estimate any such contingent or unliquidated Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Bankruptcy Court, to the extent permissible under the Bankruptcy Code.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, Reorganized Coram or the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate payment or distribution on such Claim.

9.11.    Payments and Distribution on Disputed Claims.  Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until such Claim becomes an Allowed Claim, in whole or in part. On the first Subsequent Distribution Date that is at least ten (10) Business Days after a Disputed Claim (or portion thereof) becomes an Allowed Claim, the holder of such Allowed Claim shall receive all payments and/or distributions to which such holder is then entitled under the Plan.

22

C30

9.12.    <u>Disallowance of Reimbursement or Contribution Claims</u>.  Effective as of the Effective Date, in accordance with section 502(e)(1) of the Bankruptcy Code, all Claims or Administrative Claims for reimbursement or contribution of an entity that is liable with a Debtor shall be disallowed against that Debtor to the extent such Claim or Administrative Claim, as the case may be, is contingent as of the Effective Date.

23

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1.    Assumption and Assignment of Executory Contracts and Unexpired Leases. Except as otherwise provided in the Plan, on the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code, any executory contracts or unexpired leases which have not expired by their own terms on or prior to the Effective Date, which have not been assumed and assigned or rejected with the approval of the Bankruptcy Court, or which are not the subject of a motion to reject the same pending as of the Effective Date or set forth on the Rejection List shall be deemed assumed by the Debtors on the Effective Date and in the case of CHC, assigned to Reorganized Coram, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and/or assignments pursuant to sections 365(a) and 1123 of the Bankruptcy Code. An order of the Bankruptcy Court entered on or prior to the Confirmation Date will specify the procedures for providing notice to each party whose executory contract or lease is being assumed or assumed and assigned pursuant to the Plan of: (a) the contract or lease being assumed or assumed and assigned; (b) the Cure Amount Claim, if any, that the Debtors believe it would be obligated to pay in connection with such assumption; and (c) the procedures for such party to object to the assumption or the assumption and assignment of the applicable contract or lease of the amount of the proposed cure amount claim.

10.2.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases: Any monetary amounts required as cure payments on each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by Reorganized Coram's payment of the cure amount in Cash on the Effective Date or upon such other terms and dates as the parties to such executory contracts or unexpired leases otherwise may agree. In the event of a dispute regarding (a) the amount of any cure payment, or (b) the ability of Reorganized Coram to provide "adequate assurance of future performance" (within the meaning of section 365(b)(1) of the Bankruptcy Code), to the extent necessary, shall be made following the entry of a Final Order resolving such dispute.

10.3.    Rejection of Executory Contracts or Unexpired Leases. No later than ten (10) days prior to the Confirmation Date, the Debtors shall file with the Bankruptcy Court the Rejection List, and such executory contracts and unexpired leases shall be deemed rejected as of the Effective Date. If the rejection of an executory contract or unexpired lease by the Debtor results in damages to the other party of parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before the date that is thirty (30) days after the later of (a) the Confirmation Date and (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or lease. Unless otherwise ordered by Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured

24

Claims subject to the provisions of the Plan. Nothing herein shall obligate any of the Debtors to file any list of assumed or rejected executory contracts or unexpired leases.

10.4.   Indemnification Obligations.   Notwithstanding section 9.12 hereof, for purposes of the Plan, the obligations of the Debtors to indemnify their respective present and former directors or officers, and employees in such capacity or as plan administrators or trustees to any employee benefit plan, or any person serving at the request of any of the Debtors as a director, officer of any other entity pursuant to the Debtors' certificates of incorporation or by-laws or pursuant to applicable state law or specific agreement, or any combination of the foregoing, shall be deemed to be executory contracts, shall be assumed by the Debtors or Reorganized Coram, effective as of the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code and shall survive confirmation of the Plan, remain unaffected thereby, shall not be discharged, and shall pass unaltered to the Reorganized Debtors irrespective of whether such indemnification is owed in connection with an event occurring before, on, or after the Petition Date.

10.5.   Compensation and Benefit Programs.   All employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors, in effect as of the Confirmation Date and applicable generally to the respective active officers and/or employees of the Debtors, including, without limitation, all then-effective retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, compensative plans, employment contracts and life, accidental death, and dismemberment insurance plans are deemed to be executory contracts under the Plan and, as of and on the Effective Date, shall be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, unless previously (i) terminated, modified or rejected in accordance with the Bankruptcy Code, (ii) subject to a pending motion or application before the Bankruptcy Court to terminate, modify or reject or (iii) identified to be rejected on a list that is filed with the Bankruptcy Court on or before the Confirmation Date.

## ARTICLE XI
## IMPLEMENTATION AND MEANS OF CONSUMMATING THE PLAN

11.1.   Cancellation of Existing Securities and Agreements.   On the Effective Date, except as otherwise provided in the Plan, all securities, instruments, instruments of indebtedness, guarantees and agreements governing any claims impaired hereby, including the Notes, shall be deemed canceled and terminated and the obligations of the Debtors and each of their subsidiaries, affiliates, and agents relating to, arising under, in respect of, or in connection with such securities, instruments or agreements shall be discharged. The holder of any such documents canceled pursuant to this provision shall have no rights against the Debtors or Coram arising from or relating to such documents, except the right to receive distributions, if any, provided for in the Plan.

11.2.  <u>Surrender of Instruments</u>. Each holder of an instrument evidencing a Claim shall surrender such instrument to the Debtors as a condition to the receipt of any distribution under the Plan to such holder on account thereof. Unless otherwise agreed by the Debtors, no distribution under the Plan shall be made to or on behalf of any holder of such Claim unless and until such instrument is received or the unavailability of such instrument is reasonably established to the satisfaction of the Debtors. In accordance with section 1143 of the Bankruptcy Code, any holder of a Claim that (i) fails to surrender or cause to be surrendered such instrument or (ii) fails to execute and to deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Debtors and furnish a bond in form, substance and amount reasonably satisfactory to the Debtors, in each case within two (2) years after the Effective Date, shall be deemed to have forfeited forever all rights, claims, and interests in respect of said distribution and shall not thereafter have any right to participate in any distribution under the Plan.

11.3.  <u>Dissolution</u>. On the Effective Date or as soon thereafter as is practicable, CHC shall dissolve as a corporation, pursuant to the laws of the State of Delaware.

11.4.  <u>Cancellation of Capital Stock and Equity Interests</u>. As of the Effective Date, by virtue of the Plan and in all events without any action on the part of the holders thereof, all CHC Equity Interests, whether issued and outstanding or held in treasury, shall be deemed canceled and retired and no consideration will be paid or delivered with respect thereto.

11.5.  <u>Charter</u>. On the Effective Date, the certificate of incorporation and the by-laws of Reorganized Coram will be substantially in the form of the Amended and Restated Certificate of Incorporation of Reorganized Coram and Amended By-laws of Reorganized Coram included in the Plan Supplement. On the Effective Date, or as soon thereafter as practicable, Reorganized Coram shall file its Amended and Restated Certificate of Incorporation of Reorganized Coram. Among other things, the Amended and Restated Certificate of Incorporation of Reorganized Coram shall: (a) prohibit the issuance of non-voting equity securities to the extent required by section 1123(a) of the Bankruptcy Code; (b) provide for the authorization of the New Coram Stock in amounts not less that the amounts necessary to permit distributions thereof required or contemplated by the Plan; and (c) shall comply with section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, Reorganized Coram may amend and restate its certificates of incorporation or by-laws as permitted by the Delaware General Corporation Law, subject to the terms and conditions of such documents.

11.6.  <u>Management of Reorganized Coram</u>. On the Effective Date, the operation of Reorganized Coram shall become the general responsibility of the Reorganized Coram Board of Directors, which shall, thereafter, continue to have the responsibility for the management, control, and operation of Reorganized Coram. The Reorganized Coram Board of Directors shall be comprised of the persons identified in the Plan Supplement. The officers of Reorganized Coram shall consist of those individuals set forth in the Disclosure Statement and in the Plan Supplement. All existing directors and officers who become officers or directors of Reorganized Coram shall be deemed re-elected, and all other directors and officers shall be deemed newly

26

elected pursuant to the Confirmation Order. Those officers and directors not continuing in office, if any, shall be deemed removed therefrom (without cause) pursuant to the Confirmation Order.

11.7.  Issuance of New Coram Stock. On the Effective Date, in accordance with the Plan, the Amended and Restated Certificate of Incorporation of Reorganized Coram, and the Amended By-laws of Reorganized Coram, Reorganized Coram shall issue the New Coram Stock in amounts necessary to permit distributions thereof required or contemplated by the Plan.

11.8.  Issuance of New Secured Notes. On the Effective Date, in accordance with the Plan, Reorganized Coram shall issue the New Secured Notes and cause the distribution thereof required by the Plan, subject to the provisions of section 9.4 of the Plan.

11.9.  Corporate Action. On the Effective Date, authorization of the New Coram Stock, the election of directors and officers, the adoption of the Amended and Restated Certificate of Incorporation or Reorganized Coram, the Amended By-laws of Reorganized Coram, and any and all other matters provided for under the Plan involving the corporate structure of Reorganized Coram, or involving corporate action by the directors and/or stockholders of Reorganized Coram, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to section 303 of the Delaware General Corporation Law, section 422A of the Tax Code, the rules and regulations issued thereunder, section 16 of the 34 Act, the rules and regulations issued thereunder and any other applicable law, without any requirement of further action by the stockholders and/or directors of the Debtors or Reorganized Coram. On the Effective Date, all agreements entered into pursuant to the Plan shall be valid, binding and in full force and effect.

11.10.  Exit Financing Facility. On the Effective Date, Reorganized Coram is authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Financing Facility. All cash necessary for the Reorganized Debtors to make payments to the Plan will be obtained from the Reorganized Debtors' cash balances and operations and/or the Exit Financing Facility.

11.11.  Unsecured Claim Reserve. On the Effective Date, the Unsecured Claims Reserve shall be established to fund all payments under the Plan to holders of Allowed CHC General Unsecured Claims and Allowed CHC Note Claims.

11.12.  The Plan Administrator. On the Effective Date, the officers and board of directors of CHC shall be deemed removed from office pursuant to the Confirmation Order, CHC shall be dissolved in accordance with section 11.3 of the Plan and the operation of the Unsecured Claims Reserve shall become the general responsibility of the Plan Administrator pursuant to and in accordance with the provision of the Plan and the Plan Administration Agreement.

27

1. *Responsibilities.* The responsibilities of the Plan Administrator shall include maintaining the Unsecured Claims Reserve; liquidating remaining assets; prosecuting objections to and estimations of Claims against CHC; calculating and implementing all distributions from the Unsecured Claims Reserve in accordance with the Plan; filing all required tax returns and paying taxes and all other obligations on behalf of the Unsecured Claims Reserve from funds therein; and such other responsibilities as may be vested in the Plan Administrator pursuant to the Plan, the Plan Administration Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

2. *Powers.* The Powers of the Plan Administrator shall include, without Bankruptcy Court approval in each of the following cases, the power to invest funds in, and withdraw, make distributions and pay taxes and other obligation owed by the Unsecured Claims Reserve, from funds therein in accordance with the Plan; the powers to engage employees and professional persons to assist the Plan Administrator with respect to its responsibilities; the power to dispose of, and deliver title to others of, remaining assets on behalf of or against the Reorganized CHC; and such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or the Plan Administration Agreement.

3. *Certain Tax Obligations.* Absent definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Plan Administrator of a private letter riling if the Plan Administrator requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Plan Administrator), and except as otherwise provided in the Plan, the Plan Administrator shall:

(i)     treat the escrowed funds as a discreet trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Claim respecting the Unsecured Claim Reserve, in accordance with the trust provisions of the Internal Revenue Code (sections 641, *et seq.*), and

(ii)     to the extent permitted by applicable law, report consistently for state and local income tax purposes.

4. *Compensation.* In addition to reimbursement for the actual out-of-pocket expenses incurred, the Plan Administrator shall be entitled to reasonable compensation for services rendered on behalf of the Unsecured Claims Reserve in an amount and on such terms as may be agreed to by the Debtors and as reflected in the Plan Administration Agreement. Any dispute with respect to such compensation shall be resolved by agreement among the parties or, if the parties are unable to agree, determined by the Bankruptcy Court.

28

## ARTICLE XII
## EFFECTIVENESS OF THE PLAN

12.1.  Conditions Precedent to Confirmation.  The Plan shall not be confirmed unless and until the following conditions shall have been satisfied or waived by the Debtors:

(1)    The Confirmation Order will be reasonably acceptable in form and substance to the Debtors and the Noteholder Group.

(2)    Coram shall have received a binding commitment for the Exit Financing Facility.

(3)    All exhibits to the Plan are in form and substance reasonably satisfactory to the Debtors and the Noteholder Group.

12.2.  Conditions Precedent to Effectiveness.  The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived in writing by the Debtors:

(1)    The Bankruptcy Court shall have entered the Confirmation Order;

(2)    Reorganized Coram shall have, or immediately upon the effectiveness of the Plan shall have, sufficient cash to make all cash payments required to be made on the Effective Date pursuant to the terms of the Plan;

(3)    All conditions necessary to effectuate Reorganized Coram's Exit Financing Facility shall have been satisfied or waived.

(4)    Any statutory fees owing the U.S. Trustee shall have been provided for or paid in full.

(5)    All other actions and documents necessary to implement the provisions of the Plan shall have been effected or executed or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

(6)    The Plan Administrator shall have executed the Plan Administration Agreement evidencing the Plan Administrator's agreement to serve in that capacity.

(7)    The Unsecured Claims Reserve shall have been fully funded in accordance with the Plan and any applicable orders of the Bankruptcy Court with respect thereto.

29

C37

(8)    Any person who is to receive a distribution of New Coram Shares pursuant to the Plan shall have executed the Shareholder Agreement contained in the Plan Supplement.

(9)    The Effective Date shall have occurred on or before December 29, 2000.

**ARTICLE XIII**
**EFFECTS OF CONFIRMATION OF THE PLAN**

13.1.    <u>Vesting of Assets</u>. Consistent with sections 1123(a)(5)(A) and 1141 of the Bankruptcy Code, on the Effective Date, except as otherwise provided in the Plan, title to all assets and property of the Estates, including without limitation all shares of and equity interests in Coram and Coram International Holdings Ltd. that are property of the Estate of CHC, shall pass to and vest in Reorganized Coram, free and clear of all Claims, Allowed Interests, liens, charges and other rights of creditors or equity holders arising prior to the Effective Date. On and after the Effective Date, Reorganized Coram may operate its business, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court, except as otherwise provided in the Plan or in the Confirmation Order. Without limiting the foregoing, Reorganized Coram may pay the charges that it incurs on or after the Effective Date for professionals' fees, disbursements, and expenses without application to the Bankruptcy Court.

13.2.    <u>Discharge</u>. Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and treatment of Claims and Interests under the plan will be in exchange for an and in complete satisfaction, discharge and release of all Claims and termination of all Interests arising on or before the Effective Date, including any interest accrued on Claims from the Petition Date. Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date and immediately after cancellation of the Equity Interests: (a) discharge the Debtors from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (ii) and Claim based on such debt as allowed pursuant to section 502 of the Bankruptcy Code, or (iii) the holder of a Claim based on such debt as accepted the Plan; and (b) terminate all Interests and other rights of equity security holders in the Debtors. In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date and immediately after the cancellation of the Equity Interests and the issuance of the New Coram Stock, of a discharge of all Claims and other debts and liabilities against the Debtors and a termination all Equity Interests and other rights of equity security holders in the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained

30

C38

against a Debtor at any time, to the extent that such judgment relates to a discharge of the Claim or terminated Interest.

13.3.    Injunctions.

13.3.1  Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following actions on account of any such discharged claims, debts or liabilities or terminated Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtors, reorganized Coram, or their respective property other than to enforce any right to a distribution pursuant to the Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, Reorganized Coram, or their respective property, other than as permitted as pursuant to (a) above; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtors, Reorganized Coram or their respective property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or Reorganized Coram; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

13.3.2  As of the Effective Date, all entities that have held, currently hold or may hold any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that are released pursuant to the plan will be permanently enjoined from taking any of the following actions against any released entity or its property on account of such release claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities: (a) commencing or continuing in any manner or other proceedings; (b) enforcing, attaching, collecting or recovering in any manner, any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released entity; and (e) commencing or continuing any action, in any manner, in any place that does not comply with this section 13.3 or is inconsistent with the provisions of the Plan.

13.3.3  By accepting distributions pursuant to the Plan, each holder of an Allowed Claim receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this section 13.3.

13.4.    Exculpation and Releases.  In consideration for, among other things, the promises and obligations of the Debtors and Reorganized Coram under the Plan:

(a)    As of and on the Effective Date, the Debtors, their Estates, and all Persons or entities claiming through them and any of their successors, assigns or representatives shall be deemed to have waived, released and discharged all rights or claims, whether based upon

31

C39

tort, fraud, contract or otherwise, and whether arising out of the Debtors' restructuring, DIP Facility, the Exit Financing Facility or otherwise in connection with the Debtors' Cases, which they possessed or may possess prior to the Effective Date against the Debtors, their present directors, officers, employees, agents, representatives and attorneys and any of their successors or assigns, except as otherwise provided in the Plan or the Confirmation Order. This release will be in addition to the discharge of Claims and termination of Interests provided herein and under the Confirmation Order and the Bankruptcy Code.

(b)    The Debtors, Reorganized Coram, and their respective members, officers, directors, employees, representatives, attorneys and agents shall be deemed released by each of them against the other and by the holders of Claims or Allowed Interests of or from any and all claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of, the Debtors' Chapter 11 cases, including without limiting the generality of the foregoing, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, except for willful misconduct, and all such persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.

13.5.    <u>Rights of Action</u>.  Any rights or causes of action accruing to the Debtors or Reorganized Coram, including without limitation those arising under or pursuant to the Bankruptcy Code, shall remain assets of, or vest in, Reorganized Coram. Reorganized Coram may pursue, abandon, settle or release all reserved rights of action, as appropriate, in accordance with what is in the best interests, and for the benefit of, Reorganized Coram. Any distributions provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan is and shall be without prejudice to the rights of Reorganized Coram to pursue and prosecute any reserved rights of action including, without limitation, those arising under or pursuant to the Bankruptcy Code.

## ARTICLE XIV
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain and shall have exclusive jurisdiction over the Case and any and all proceedings therein including, without limitation, in respect of the following:

14.1.    <u>Claims</u>.  To determine any and all objections to the allowance of Claims.

14.2.    <u>Estimation</u>.  To determine any and all motions to estimate Claims.

14.3.    <u>Assumption/Rejection</u>.  To determine any and all pending applications for the rejection or assumption and/or assignment of executory contracts or unexpired leases to which a Debtor or Reorganized Coram is a party or with respect to which a Debtor or Reorganized Coram

32

may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom.

14.4.  Adversary Proceedings and Contested Matters.  To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on or commenced after the Effective Date.

14.5.  Modifications.  To consider and approve any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in, or to clarify the Plan or any order of the Bankruptcy Court.

14.6.  Dispute Resolution.  To determine all controversies, suits and disputes that may arise in connection with the interpretation or consummation of the Plan or the obligations under the Plan of the Debtors or Reorganized Coram.

14.7.  Plan.  To hear and determine other issues presented or arising under the Plan, to issue any appropriate injunctions and orders and take all other actions in aid of execution, implementation or enforcement of the Plan and to enforce the Confirmation Order and/or the discharge, or the effect of such discharge.

14.8.  Compensation.  To determine any and all applications for allowance of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan.

14.9.  Distributions.  To ensure that distributions to holders of Allowed Claims are accomplished as provided herein.

14.10.  Assets.  To recover assets of the Debtors and property of their Estates, wherever located.

14.11.  Taxes.  To hear and to determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

14.12.  Final Decree.  To enter final decrees closing the Cases.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

15.1.  Payment of Statutory Fees.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in cash on or before the Effective Date.

33

C41

15.2.    Plan Binding on All Persons.  Upon Confirmation, the Plan shall be binding upon and inure to the benefit of the Debtors and their successors and assigns, and the holders of Claims and Equity Interests and their respective successors and assigns whether or not such holders voted to accept the Plan.  The rights afforded in the Plan and the treatment of all Claims and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever as provided in this Plan.

15.3.    Fees and Expenses.  The reasonable and necessary operating expenses and professional fees and expenses incurred by the Debtors from and after the Effective Date in connection with the consummation and implementation of the Plan shall be paid by Reorganized Coram in the ordinary course of business without further order of the Bankruptcy Court; provided however, that any unresolved dispute as to the payment of such fees and expenses shall be submitted to (and resolved by) the Bankruptcy Court.

15.4.    Authorization of Action.  The entry of the Confirmation Order shall constitute direction to the Debtors to take or cause to be taken any action necessary or appropriate to consummate the provisions of this Plan prior to and through the Effective Date and all such actions taken or caused to be taken shall be deemed to be authorized and approved by the Bankruptcy Court.

15.5.    Exemption from Registration.  To the extent any of the Distributions or rights arising under the Plan constitute securities under applicable law, they shall be exempt from registration under applicable securities law pursuant to section 1145 of the Bankruptcy Code as securities issued under the Plan.

15.6.    Severability.  Should any provision in the Plan be determined to be unenforceable following the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

15.7.    Modification or Amendment.  This Plan may be altered, amended or modified by the Debtors before or after the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

15.8.    Revocation or Withdrawal of the Plan.  The Debtors reserves the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

15.9.    Binding Effect.  The Plan shall be binding upon and inure to the benefit of the Debtors, the holders of Claims, and their respective successors and assigns.

34

15.10. Notices. Any notice required or permitted to be provided under the Plan to any Person shall be in writing and served by either (a) certified mail, return receipt requested, postage pre-paid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, and except as otherwise provided in the Plan to be addressed to such Person at the address most recently given by such Person to the Debtor or recorded by the Debtor on its Schedules or if to the Debtors at:

> Coram, Inc.
> 1125 Seventeenth Street, Suite 2100
> Denver, Colorado 80202
> Attn: Allen Marabito, Esq.

with a copy to:

> Kasowitz, Benson, Torres & Friedman LLP
> 1301 Avenue of the Americas
> New York, New York 10019
> Attn: David M. Friedman, Esq.
>       Adam L. Shiff, Esq.

15.11. Governing Law. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or a specific agreement, document or instrument, the laws of the State of Delaware shall govern the construction and implementation of the Plan and, unless otherwise stated therein, any agreements, documents, and instruments executed in connection with the Plan.

15.12. Saturday, Sunday, or Legal Holiday. If any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment, distribution or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

15.13. Filing of Additional Documents. On or before consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.14. Plan Controls. To the extent the Plan is inconsistent with the Disclosure Statement or any other document, agreement, pleading or understanding, the provisions of the Plan shall be controlling.

15.15. Section 1145 Exemption. Pursuant to section 1145(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by

the Plan, shall not be exempt from registration under the Securities Act of 1933, as amended, and under State securities laws.

15.16. <u>Section 1146 Exemption</u>. Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the re-vesting, transfer or sale of any real property of the Debtors pursuant to, in implementation of or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

Dated: August __, 2000

CORAM HEALTHCARE CORP.

By:_____
Name:  Allen J. Marabito
Its:     Executive Vice President

CORAM INC

By:_____
Name:  Allen J. Marabito
Its:     President

Counsel:
KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
Counsel to the Debtors and Debtors in Possession
1301 Avenue of the Americas
New York, New York 10019
(212) 506-1700

By: _____
       David M. Friedman
       Adam L. Shiff
       Robert M. Novick

PACHULSKI, STANG, ZIEHL,
YOUNG & JONES, P.C.
Laura Davis Jones
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, Delaware 19899-8705
(302) 652-4100

C44

FORM B10 (Official Form 10)(Rev. 4/98)

| United States Bankruptcy Court District of Delaware | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| Name of Debtor<br>**Coram, Inc.** | Case Number: 00-3500(MFW) |

| | This space Is for Court Use Only |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property): Daniel D. Crowley<br><br>Name and address where notices should be sent:<br>Daniel D. Crowley<br>400 Capitol Mall, #1250<br>Sacramento, CA 95814<br><br>Telephone number:<br>(916) 449-6056 | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim.<br>Attach copy of statement giving particulars.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |

| Account or other number by which creditor identifies debtor: | Check here<br>If this claim ☐ replaces<br>☐ amends      a previously filed claim, dated: |
|---|---|

| | |
|---|---|
| 1. Basis for Claim<br>☐ Goods sold<br>☒ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☐ Asset-backed security<br>☒ Other ___See Appendix___ | ☐ Retiree benefits as defined in 11 U.S.C. § 114(a)<br>☐ Wages, salaries, and compensation (Fill out below)<br>Your SS# _____<br>Unpaid compensation for services performed<br>from _____ to _____<br>        (date)        (date) |
| 2. Date debt was incurred: VARIOUS | 3. If court judgment, date obtained: |

| 4. Total Amount of Claim at Time Case Filed: | $ CONTINGENT AND UNLIQUIDATED |
|---|---|
| If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.<br>☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all Interest or additional charges. | |

| 5. Secured Claim.<br>☐ Check this box if your claim is secured by collateral (including a right to setoff).<br><br>Brief Description of Collateral:<br>☐ Real Estate _____ ☐ Motor Vehicle<br>☐ Other _____<br><br>Value of Collateral: $ _____<br><br>Amount of arrearage and other charges at time case filed included in secured claim above, if any $ _____ | 6. Unsecured Priority Claim.<br>☐ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $ _____<br>Specify the priority of claim:<br>☐ Wages, salaries, or commissions (up to $4,300)*, Earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever if earlier - 11 U.S.C. § 507 (a)(3)<br>☐ Contributions to an employee benefit plan - 11 U.S.C. § 507 (a)(4)<br>☐ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507 (a)(6)<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507 (a)(7)<br>☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507 (a)(6)<br>☐ Other - Specify applicable paragraph of 11 U.S.C. § 507 (a-___ ).<br>* Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment |
|---|---|

| | This Space is for Court Use Only |
|---|---|
| 7. CREDITS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>8. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien.<br>DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br>9. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclosed a stamped, self-addressed envelope and a copy of this proof of claim. | US BANKRUPTCY COURT<br>DISTRICT OF DELAWARE<br>2000 SEP 27 A 10: 0<br>**FILED** |
| Date<br>9-26-00 | Sign and Print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>_Daniel D. Crowley_ | |

| Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§152 and 3571. |
|---|

CROWLEYKVN 001633

JUL 09 2003 16:33 FR DYNAMIC HEALTHCARE    9164496059 TO SCHREIBER    P.05/08

FORM B10 (Official Form 10)(Rev 4/93)

| United States Bankruptcy Court District of Delaware | **PROOF OF CLAIM** |
|---|---|

| | Case Number: 00-3299(MFW) | |
|---|---|---|
| Name of Debtor<br>**Coram Healthcare Corp.** | | |

| Name of Creditor (The person or other entity to whom the debtor owes money or property): Daniel D. Crowley<br><br>Name and address where notices should be sent:<br>Daniel D. Crowley<br>400 Capitol Mall, #1250<br>Sacramento, CA 95814<br><br>Telephone number:<br>(916) 449-6056 | ◻ Check box if you are aware that anyone else has filed a proof of claim relating to your claim.<br>Attach copy of statement giving particulars.<br><br>◻ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>◻ Check box if the address differs from the address on the envelope sent to you by the court. | This space is for Court Use Only |

| Account or other number by which creditor identifies debtor: | Check here<br><br>If this claim ◻ replaces<br>◻ amends    a previously filed claim, dated:_____ |
|---|---|

| 1. Basis for Claim<br>◻ Goods sold<br>☒ Services performed<br>◻ Money loaned<br>◻ Personal injury/wrongful death<br>◻ Taxes<br>◻ Asset-banked security<br>☒ Other ___See Appendix___ | ◻ Relative benefits as defined in 11 U.S.C. § 114(a)<br>◻ Wages, salaries, and compensation (Fill out below)<br>Your SS# _____-___-___<br>Unpaid compensation for services performed<br>from _____    to _____<br>　　　(date)　　　　　　(date) |
|---|---|

| 2. Date debt was incurred: VARIOUS | 3. If court judgment, date obtained: |
|---|---|

| 4. Total Amount of Claim at Time Case Filed: | $ CONTINGENT AND UNLIQUIDATED |
|---|---|

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
◻ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

| 5. Secured Claim.<br>◻ Check this box if your claim is secured by collateral (including a right to setoff).<br><br>Brief Description of Collateral:<br>◻ Real Estate　　　　◻ Motor Vehicle<br>◻ Other_____<br><br>Value of Collateral:　$_____<br><br>Amount of arrearage and other charges at time case filed included in secured claim above, if any　$_____ | 6. Unsecured Priority Claim.<br>◻ Check this box if you have an unsecured priority claim<br>Amount entitled to priority $_____<br>Specify the priority of claim:<br>◻ Wages, salaries, or commissions (up to $4,300)*. Earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507 (a)(3)<br>◻ Contributions to any employee benefit plan - 11 U.S.C. § 507 (a)(4)<br>◻ Up to $1,950* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507 (a)(6)<br>◻ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507 (a)(7)<br>◻ Taxes or penalties owed to governmental units - 11 U.S.C. § 507 (a)(6)<br>◻ Other - Specify applicable paragraph of 11 U.S.C. § 507 (a____).<br>* Amounts are subject to adjustment on 4/1/98 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |
|---|---|

| 7. CREDITS: The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br><br>8. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements and evidence of perfection of lien.<br>DO NOT SEND ORIGINAL DOCUMENTS. If the documents are not available, explain. If the documents are voluminous, attach a summary.<br><br>9. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclosed a stamped, self-addressed envelope and a copy of this proof of claim. | This Space is for Court Use Only<br><br>FILED<br>2000 SEP 27 A 10:01<br>US BANKRUPTCY COURT<br>DISTRICT OF DE<br>CLERK |
|---|---|

| Date<br><br>9-26-00 | Sign and Print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br><br>_Daniel D Crowley_<br><br>Daniel D. Crowley | |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§152 and 3571.

CROWLEYKVN 001631

## APPENDIX TO PROOF OF CLAIM

1.    The Claimant submits this proof of claim by virtue of its position as a director, officer, employee and agent of the Debtor.

2.    This claim arises pursuant to that certain agreement dated as of November 30, 1999 (as subsequently amended) between the Debtor and Claimant, a copy of which is maintained by the Debtor.

3.    This claim arises pursuant to the Debtor's certificate of incorporation and by-laws and under the laws of the Debtor's state of incorporation in connection with all rights of indemnification, reimbursement or contribution thereunder.

4.    Claimant reserves the right to amend this proof of claim.

CROWLEYKVN 001634

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **IN RE:** | ) | **Chapter 11** |
| | ) | |
| **CORAM HEALTHCARE CORP.** | ) | **Case Nos. 00-3299 (MFW)** |
| **and CORAM, INC.,** | ) | **and Case No. 00-3300 (MFW)** |
| | ) | |
| **Debtors.** | ) | **Jointly Administered** |

## OBJECTIONS OF THE OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS OF CORAM HEALTHCARE CORP. TO THE JOINT PLAN OF REORGANIZATION PROPOSED BY DEBTORS CORAM HEALTHCARE CORP. AND CORAM, INC.

The Official Committee of Equity Security Holders of Coram Healthcare Corp. (the "Equity Committee"), by its attorneys, hereby objects to the confirmation of the Joint Plan of Reorganization proposed by debtors Coram Healthcare Corp. and Coram, Inc. (collectively "Coram") on August 8, 2000 (the "Plan").

## SUMMARY OF OBJECTIONS

Coram Healthcare Corp., a healthcare home infusion business with more than 49 million outstanding publicly traded shares, is a financially sound company, whose prospects are extremely bright:

- According to financial forecasts produced by Coram, cash flow from continuing operations (EBITDA) *in this year 2000* will be more than $50 million (excluding an extraordinary $16.5 million payment Coram wants to pay management);

- Coram has no difficulty in paying debts incurred in operations as they come due, now or in the foreseeable future; the Chapter 11 Plan for which they seek confirmation will not affect these creditors (Disclosure Statement p. 13-14);

*387*

- Two days after the filing of these petitions, Daniel Crowley, the chief executive officer of Coram told thousands of listeners:

  > "This company is dynamite. We are perfectly positioned to do really big, exciting things." (Crowley teleconference August 10, 2000);

- The principal amount due to Coram's Noteholders[1] does not mature until May, 2001.

Moreover, Coram's business is not being reorganized. "Reorganized Coram" will continue to operate its business, will retain its existing management, and will assume the existing employment contracts.

Notwithstanding the plain success of its business, Coram asks this Court to confirm a Plan that would *wipe out the existing shareholders* and award all of the equity – which is believed to have substantial value – to the Noteholders. The only substantive change sought in these reorganization proceedings is to have 100% of the ownership of Coram pass from thousands of shareholders to the three Noteholders.

While such a result is not conceptually impossible in a Chapter 11, it is entirely inappropriate here – and is therefore objected to – for the following reasons:

> First Objection: Coram's enterprise value is greater than the amount of the debt due to all creditors, even assuming the Noteholders have a valid claim for 100% of the amount of the Notes (but see Objection 3, below); *accordingly, the Plan cannot be confirmed under the cramdown provisions of Section 1129(b) of the Bankruptcy Code.*
>
> Second Objection: The Plan has not been proposed in good faith and is not fair; evidence will show that the Plan was conceived, negotiated, and proposed by Coram's directors and management in violation of their

---

[1] The noteholders are Cerberus Partners, L.P., Goldman Sachs Credit Partners, L.P., and Foothill Capital Corporation (collectively, the "Noteholders").

fiduciary duties and in collusion with Coram's former principal, Stephen Feinberg, with the intent of depriving shareholders of the value of their interests; *accordingly, the Plan fails to comply with the requirements of Section 1129(a)(3).*

Third Objection:   The conduct of Cerberus and certain of Coram's directors and management was improper and inequitable and caused significant damage to the Company[2]; a *claim against the persons causing such injury is an asset of the estates, or, alternatively, the improper conduct of Cerberus will require that the claim of Cerberus be recharacterized as equity.*  In either event the value of the estate available to equity holders will increase.

Fourth Objection:  The proposed releases of shareholder claims against non-debtor parties renders the Plan not confirmable.

## FACTS AND ALLEGATIONS COMMON TO ALL OBJECTIONS

### The Relationship Between Daniel Crowley (Chairman, CEO and Director of Coram) and Stephen Feinberg (Until Recently Director of Coram and Principal of Cerberus)

1.     In September 1999, Daniel Crowley was retained by Coram as a consultant.  On November 30, 1999, an employment agreement designating Crowley as Chief Executive Officer was executed.

2.     Prior to his employment by Coram, Crowley and his consulting company, Dynamic Healthcare Solutions, L.L.C., received compensation from Cerberus for services as a paid consultant to Cerberus.  (Disclosure Statement p. 48).

3.     Cerberus holds a larger amount of the Notes than any other Noteholder.  Stephen Feinberg is a principal of Cerberus, with senior responsibility for its investment in Coram.

---

[2]     It is not presently possible to state whether the other Noteholders, Goldman Sachs Credit Partners, L.P. and Foothill Capital Corporation, participated in such conduct; investigation by counsel continues.

C50

4.    Crowley's employment agreement was amended in November 1999, and again in April 2000. The second amendment provided that Crowley was to receive as much as $14 million for one year's work, if the Plan now under consideration by this Court is confirmed and the Coram' projected levels of EBITDA are achieved.

5.    The second amendment to Crowley's employment agreement was negotiated between Crowley and Feinberg and was executed on behalf of Coram by Feinberg.

6.    During the period when Crowley was negotiating his three employment agreements with Feinberg (who was ostensibly negotiating for Coram), Crowley and his consulting company, Dynamic Healthcare Solutions, L.L.C., received compensation from Feinberg's company, Cerberus. (Disclosure Statement p. 48).

7.    To this day, as disclosed in Coram' s publicly available documents, Crowley and his consulting company, Dynamic Healthcare Solutions, L.L.C., continue to receive compensation from Feinberg's company, Cerberus.

8.    Feinberg remained a member of Coram's boards of directors until very shortly prior to the bankruptcy filings. Feinberg was also Chairman of Coram's Compensation Committee. It is believed that Feinberg remains active in the affairs of Coram to this day.

**The Plan, and Why Coram and Cerberus Want to Wipe Out Equity Now.**

9.    The Plan provides that the Noteholders receive *100%* of the equity of Coram. Existing equity interests, consisting of more than 49 million publicly traded shares, would be completely eliminated. Specifically, the Plan would convert approximately $72 million of the $252 million debt owed to the Noteholders into 100% of the equity of the Reorganized Coram and would cancel all existing equity interests in Coram. The Noteholders would receive New Secured

C51

Notes in the principal amount of $180 million in addition to 100% of the equity in Reorganized Coram.

10.     When it filed the Plan on August 8, 2000, Coram insisted on a super fast confirmation, claiming that the Plan must be confirmed – and equity must be wiped out – by December 31st of this year. Coram did this even though it faced no liquidity problems, did not need or seek operational reorganization, and Coram's debt to the Noteholders does not mature until May 2001.

11.     Coram's attempts to justify the December 31st deadline on two grounds:

> First, that it will be unable to pay the Notes to the Noteholders when the Notes become due in May 2001 – five months after the supposed deadline.

> Second, it must by that date either be a privately held company or have $75 million of shareholder equity in order to avoid problems of compliance with a federal statute that governs Medicare and Medicaid physician referrals (called "Stark II").

However, neither the debt to the Noteholders nor the Stark II issue – if it is an issue – came as a surprise to Coram. The evidence, some of which is described in the following paragraphs of these Objections, shows that Coram's directors and management failed to take even rudimentary steps to address these problems in a way that would have preserved equity value while there was time to do so. Instead, Coram ignored alternatives and waited nearly a year after being aware of the supposed problems. Then when they hoped it would be too late for equity holders to do anything about it, Coram filed a Plan that would wipe out all equity in favor of the Noteholders. In an attempt to insure the success of their schemes, Coram then asked for confirmation on a fast

C52

track and opposed the appointment of an Equity Committee to challenge Coram's valuation and the process by which it was determined.

12.    The Equity Committee alleges that this was a deliberate and strategic decision by Coram's management to favor the Noteholders, the most significant of which is Cerberus, over the interests of the public shareholders. At minimum, the raw and ugly conflicts between:

> Crowley's fiduciary obligations as a manager and director of Coram on the one hand, and as a very well paid consultant to Cerberus, the principal Noteholder, on the other; and

> Feinberg's conflict between his fiduciary obligations as a director and head of the Compensation Committee of Coram on the one hand and as principal of the largest Noteholder, Cerberus, on the other,

raise grave inferences regarding the *unfairness* of Coram's Plan.

13.    Beginning as early as June 1999, representatives of certain large shareholders of Coram sought discussions, on a confidential basis, with its management, in order to begin to address the poor performance of the Company and to determine how these stockholders could assist the Company. In January 2000, a large shareholder (now a member of the Equity Committee) had a conversation with Crowley during which Crowley indicated that his interests were aligned with the shareholders, rather that the Noteholders. Crowley did not mention his then existing alignment with Cerberus. Crowley did say that if the Aetna settlement went through (as it later did), the shareholders' interests would be "o.k.". Crowley did not mention any Stark II problems, even though he knew at that time that Coram would not qualify for an exemption at the end of the year 2000. Apart from this discussion, telephone calls were, for the most part, not

C53

returned, and when they were, Coram's spokesman said no more in substance than "we are working to enhance shareholder value."

14.    It appears from publicly available records and informal discussions that Coram never discussed capital market solutions, sale of the company or restructuring with *anybody at all* other than the Noteholders between June 1999 and today.

15.    Thus, between June 1999 and today, Coram, directed by the Noteholders and Cerberus through Crowley (the conflicted Chairman of Coram and consultant to Cerberus) made no attempt to refinance or extend the maturity of the Notes, notwithstanding that during at least the first half of this year the market for high yield debt was extraordinarily strong.

16.    Further, with respect to the alleged Stark II problem, Coram contends that as of December 31st of this year it will not qualify for an exemption under this law. It further contends that without such an exemption, Medicare and Medicaid referrals to Coram will dry up and it will be at risk for penalties for even inadvertent violations of Stark II by accepting referrals from physicians not known to be shareholders or related to shareholders. The Disclosure Statement, however, does not disclose the extent, if any, to which referrals of Medicare and Medicaid patients would be lost if the exemptions became unavailable, or whether any such loss of business would adversely affect Debtors' profitability. In fact, the scant evidence made available to the Equity Committee counsel at this point suggests that Medicare and Medicaid business carries a very low margin (because of constraints on the amount that may be charged) and that the elimination of this business may be favorable to the business of Coram.

17.    Until August 8th, 2000, Coram, directed by the Noteholders and Cerberus through Crowley, never took action to address the Stark II issue, notwithstanding that Coram, and

C54

Crowley particularly, knew at least as early as December 1999 that Coram would not qualify for a public company exemption under Stark II as of the end of 2000.

### Coram's Attempt To Silence the Voice of Equity.

18.     Coram has not and cannot explain its delay in addressing its May 2001 Note maturity and its alleged December 31st Stark II problem.  But when Coram finally filed these proceedings on August 8th – long after the problems were known to it – Coram accelerated its efforts to unfairly deprive stockholders of the value of their interests.  The Equity Committee believes that the evidence will show that Coram, apparently under the *de facto* control of Cerberus, has consistently and insistently opposed all efforts by the shareholders to be heard, in pursuance of their scheme to declare an emergency and railroad their unfair Plan to confirmation.

19.     On August 9, 2000, *one day after Debtors filed their Chapter 11 petitions,* stockholders holding between 25% and 30% of the outstanding shares of Coram Healthcare Corp., requested, in writing, that the U.S. Trustee appoint a committee of equity security holders. Coram strongly opposed this request, in telephone conferences, and in at least two letters dated August 21, 2000, and August 23, 2000.  The Noteholders also strongly opposed the appointment of an equity committee, in a letter dated August 23, 2000.  In large measure as a result of this opposition, the Equity Committee was not appointed until October 19, 2000.

### OBJECTIONS

I.     **The Plan Cannot be Confirmed Under the Cramdown Provisions Set Forth in Section 1129(b) of the Bankruptcy Code.**

20.     Coram's only justification for wiping out existing equity is an appraisal of the enterprise value of its business done as of July 31, 2000, by Chanin Capital Partners ("Chanin"). This appraisal, which the Equity Committee asserts is fundamentally flawed, suggests an

enterprise value of $207 million as of the valuation date, or about 82% of the amount of the notes held by the Noteholders due next May. Chanin was retained solely for the purposes of providing an appraisal. Neither Chanin nor any other financial advisor was ever retained to explore sale of the business or any other strategic alternatives.

21.    Under the Plan, the equity security holders of Coram will receive no distributions and the class of equity security interests (Class CHC 4) is deemed to have rejected the Plan. (Plan, p. 17). Accordingly, to confirm the Plan, Coram must carry the burden of proving that the Plan satisfies, in full, the requirements of Section 1129(b) that the Plan is "fair and equitable" with respect to the class of equity interests.

22.    The requirements of Section 1129(b) preclude confirmation of a plan of reorganization which eliminates stockholder interests if a senior class of creditors is provided for more than in full. **In re MCorp**, 137 B.R. 219, 234 (Bankr. S.D. Tex. 1992) ("[F]or a plan to be confirmed when stockholder interests are eliminated, creditors must not be provided for more than in full."); **In re Evans Products Co.**, 65 B.R. 31, 33 (Bankr. S.D. Fla. 1986); **In re Future Energy Corp.**, 83 B.R. 470, 494, n.39 (Bankr. S.D. Ohio 1988).

As stated in 7 Collier on Bankruptcy ¶1129.04[4][a] (15th ed. rev. 1997):

> The second major component of the "fair and equitable" requirements is that no creditor or interest holder be paid a "premium" over the allowed amount of its claim. Once the participant receives or retains property equal to its claim, it may receive no more.

23.    Under the Plan, the value of the distributions to be received by the creditors, including the New Secured Notes and 100% of the equity in Reorganized Coram, will exceed the full amount of their claims. Therefore, the Plan cannot be confirmed under Section 1129(b).

C56

24.     Coram relies on a valuation by Chanin Capital Partners to satisfy their burden of proof under Section 1129(b). This appraisal has a valuation date of July 31, 2000, not January 1, 2001, as represented in the Disclosure Statement.

25.     The Chanin appraisal is flawed in numerous respects and significantly undervalues Coram. The Chanin appraisal determined an enterprise value by a weighted average calculation of valuations based on three different valuation approaches: the discounted cash flow approach ("DCF"), the public company comparable multiples approach, and the comparable transactions approach. Although these approaches may be appropriate in general, the specific methodology and application of those approaches, as used by Chanin to estimate an enterprise value, were seriously flawed in numerous respects, including, not limited to the following:

(A)     The weighted average cost of capital used by Chanin in the DCF approach was indefensibly high and resulted in a significant undervaluing of the enterprise value.

(B)     Chanin did not use four years of projections in the DCF approach to determine a value. Instead, they used a projection for only one year, 2001, and then used "extrapolations" for the following three years. The extrapolations were indefensibly low and significantly undervalued the enterprise value.

(C)     Coram's projected fiscal year 2000 EBITDA, which was used for calculating values under the public company comparable approach and the comparable transaction approach, was significantly understated because it included a very large non-recurring cost (Crowley's extraordinary $14 million bonus) and thus resulted in significant undervaluation of an enterprise value.

(D)     Chanin failed to consider the significant value that would be provided by Coram's $200 million plus net operating loss. Chanin also gave no consideration to a lawsuit filed by Coram against a major accounting firm seeking $165 million in damages, nor to Coram's claim against Crowley and Cerberus.   (See paragraphs 37 and 38.)

C57

(E)    The Chanin appraisal improperly reduced the calculated
enterprise value because of Chanin's opinion that the
marketplace undervalues entities in reorganization.

This last approach, which results in an undervaluation that hits junior interests hardest, is contrary

to established precedents that define the appropriate standards to determine whether the treatment

provided to the various parties is "fair and equitable." <u>Consolidated Rock Products Co. v. Du</u>

<u>Bois</u>, 312 U.S. 510, 526, 61 S.Ct. 675, 684-85, 84 L.Ed. 982, 991 (1941); <u>In re Penn Central</u>

<u>Transportation Co.</u>, 596 F.2d 1102, 1115-16 (3d Cir. 1979); <u>see also</u> 7 Collier on Bankruptcy

¶1129.06[2][a] (15th ed. rev. 1997).

II.    **The Plan Was Not Proposed in Good Faith and Fails to Comply
With the Requirements of Section 1129(a)(3) of the Code.**

26.    The Equity Committee objects to the Plan on the ground that the Plan fails to

comply with the requirements of Section 1129(a)(3) of the Bankruptcy Code that a plan of

reorganization "be proposed in good faith and not by means forbidden by law." As this court

recognized in <u>In re Zenith Electronics Corp.</u>, 241 B.R. 92, 107 (Bankr. Del. 1999), this requires

that the plan be proposed with honesty and good intentions and with for the purpose of realizing

the objectives of the Bankruptcy Code.

27.    The central and most critical fact in these proceedings is that the management of

Coram and strategic decisions concerning its capital structure have been essentially controlled by

the Noteholders and not by an independent board discharging its fiduciary duty to shareholders.

28.    Coram has conceded that the motivating factor for its petitions and the Plan (and

for the manner and timing in which the Plan was filed and confirmation was sought) is to use the

bankruptcy process to alleviate a purported, potential regulatory problem pertaining to referrals

11

of Medicare and Medicaid patients. It is not, however, an objective of the Bankruptcy Code to resolve regulatory problems of healthcare companies arising out of their furnishing services to Medicare and Medicaid patients. Coram seeks to use the Bankruptcy Code as a simple expedient to eliminate any potential problem regarding physician referrals of Medicare or Medicaid patients by simply eliminating all shareholder interests. Coram could not do this outside of bankruptcy and it is not good faith for it to use the bankruptcy process to do so.

29. Further, the manner in which Coram and the Noteholders seek to achieve this result also demonstrates a lack of good faith. Coram hid its intent to wipe out equity until August 8, 2000, when the Petitions were filed. (Public statements of Coram prior to the filing of the petitions referred to a possible conversion of debt to equity that would "dilute" existing equity; but never mentioned the prospect of complete elimination of equity.) Coram did not explore other alternatives before filing their petitions. Instead, it allowed all other potential opportunities and alternatives to disappear or be severely limited due to the passage of time. Coram then surprised the existing shareholders -- to whom its officers and directors owe a fiduciary duty -- with a Plan of Reorganization that completely wipes out their interests and hands the future value of this "dynamite" enterprise to a group of Noteholders. Viewed in light of the severe conflict caused by Crowley's relationship with Cerberus and Feinberg, and the $14 million bonus he gets if this Plan is confirmed and all the equity goes to the Noteholders -- the Plan is manifestly unfair.

30. Moreover, Coram seeks to exploit both the exclusivity provisions of Section 1121 of the Bankruptcy Code and the obvious tactical advantages gained through a first strike attack coupled with an assertion of the need for a hurried resolution.

31. Coram has structured these proceedings so that the shareholders' interests are dependent solely on the imperfect and uncertain process of evaluating an enterprise value based

on opinion testimony of appraisers. In this case the insufficiency of such a process is exacerbated by a lack of time, caused largely by Coram delaying tactics, objections to appointment of an equity committee, and lack of cooperation in discovery.

32.    This situation, created by Coram and the Noteholders, presents an equivalent burden on Coram's shareholders as that which the Supreme Court concluded was improperly thrust upon the creditor in **Bank of America v. 203 North LaSalle Street Partnership**, 526 U.S. 434, 119 S.Ct. 1411, 143 L.Ed.2d 607 (1999). In both situations, the persons in control of the debtor-in-possession, while holding the exclusive right to propose a plan of reorganization, sought to require that the rights and interests of another party in interest be conclusively determined by opinion testimony as to the value of the enterprise. Coram's efforts to compel that process are not in good faith.

33.    Additionally, the proposed transaction does not comply with Delaware corporate law. As this Court recognized in **Zenith**, Section 1129(a)(3) "does incorporate Delaware law" and, thus, a plan of reorganization "must meet the standards for approval of such a transaction under Delaware corporate law." 241 B.R. at 107.

34.    Here, the Noteholders effectively control Coram. The proposed transaction under which the Noteholders will acquire full and complete ownership is thus one that involves self-dealing and therefore requires a showing that the transaction is "entirely fair." **Jedwab v. MGM Grand Hotels, Inc.**, 509 A.2d 584, 594 (Del. Ch. 1983) (*citing* **Weinberger v. UOP, Inc.**, 457 A.2d 701 (Del. 1983) and **Gottlieb v. Heyden Chemical Corp.**, 91 A.2d 57 (Del. 1952)). The transaction proposed by Coram and the Noteholders that wipes out equity in favor of the Noteholders is not only not "entirely fair," it is blatantly *unfair*. It cannot be sustained under the

C60

"entire fairness" doctrine, which "requires a determination that both the process and the price was fair." **Zenith**, 241 B.R. at 107. Delaware law expresses it this way:

> The concept of fairness has two basic aspects: fair dealing and fair price. The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the shareholders were obtained. The latter aspect of fairness relates to the economics and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock.

**Weinberger v. UOP, Inc.**, 457 A.2d 701, 711 (Del. 1983).

35.    As noted, the proposed transaction, based upon a flawed appraisal valuation, is not for a fair price. Moreover, the timing, negotiation, and approval of the proposed reorganization have none of the indicia of fair dealing, but instead smack of a backroom deal cut between the Noteholders and their handpicked, handsomely compensated confederates and presented to the equity as a *fait accompli* and to this Court on a rushed basis for rubber stamp confirmation.

36.    Certainly the timing of the filing, months after the problem that supposedly dictated the filing had been known to the Coram, coupled with a request for fast track proceedings, its opposition to the appointment of an equity committee, and delay in discovery, all demonstrate a lack of fairness in the process employed by Coram here.

### III.    Cerberus' Conduct Was Inequitable and Requires That its Claim Be Recharacterized as Equity, or That a Claim Be Pursued On Behalf of Coram Against Cerberus.

37.    The evidence will show that Cerberus is guilty of the type of inequitable conduct described by this Court in **Zenith**: "[t]o recharacterize debt as equity or to equitably subordinate a claim, the creditor must have done something inequitable." 241 B.R. at 106.

C61

38.    Alternatively, if, as we believe, the evidence at trial shows that Cerberus caused management, by the payment of substantial consulting fees and more than $16 million in extraordinary bonuses, to violate their fiduciary duties to the shareholders by (i) ignoring all potential means of preserving shareholder values, (ii) exaggerating and/or delaying addressing a supposed regulatory problem in order to create a pretext for a fast track bankruptcy reorganization and (iii) proposing a Plan based on a flawed valuation that wiped out equity in favor of the Noteholders, then Coram likely has a cause of action against Cerberus. That claim is an asset of the estate and must be taken into account in determining equity value. See **Weinberger v. Rio Grande Industries, Inc.**, 519 A.2d 116, 131 (Del. 1986) (delineating the requirements for a civil action for aiding and abetting the breach of a fiduciary duty).

## IV.    The Releases of Shareholder Claims Against Non-Debtor Parties Renders the Plan Non-Confirmable.

39.    The Equity Committee objects to any release of claims that shareholders have or may have against non-debtor parties. This court ruled in **Zenith** that releases by third parties of claims held against non-debtors "cannot be accomplished without the affirmative agreement of the creditor affected." 241 B.R. at 111. The Plan provides no distribution to the shareholders; hence they are deemed to have rejected the Plan and will be voting on the Plan. Accordingly, any claim that the shareholders may have against non-debtors cannot be released.

C62

(666305.6)

## CONCLUSION

For the reasons set forth above, The Equity Committee respectfully submits that confirmation

of Coram's Joint Plan of Reorganization should be denied.

Mark Minuti (No. 2659)
Tara L. Lattomus (No. 3515)
SAUL EWING LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE 19899
(302) 421-6840/6847

PROPOSED LOCAL COUNSEL TO THE
OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

-and-

Richard F. Levy (IL ARDC NO. 01645064)
Theodore J. Low (IL ARDC NO. 01696491)
Benjamin D. Schwartz (IL ARDC NO. 0252276)
Brandy A. Sargent (IL ARDC NO. 06270551)
Andrea Harmon (IL ARDC NO. pending )
ALTHEIMER & GRAY
10 South Wacker Drive, Suite 4000
Chicago, IL 60606
(312) 715-4000 (phone)
(312) 715-4800 (FAX)

Attorneys for The Official Committee of Equity
Security Holders of Coram Healthcare Corp.

Dated:  November 21, 2000

C63

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| CORAM HEALTHCARE CORP. | ) | Case Nos. 00-3299 (MFW) |
| and CORAM, INC., | ) | and Case No. 00-3300 (MFW) |
| | ) | |
| Debtors. | ) | Jointly Administered |

### CERTIFICATE OF SERVICE

I, Mark Minuti, Esquire, of Saul Ewing LLP, hereby certify that on November 21, 2000, a true and correct copy of the foregoing **Objections Of The Official Committee Of Equity Security Holders Of Coram Healthcare Corp. To The Joint Plan Of Reorganization Proposed By Debtors Coram Healthcare Corp. And Coram, Inc.** was served on the parties on the attached service list in the manner indicated thereon.

Mark Minuti (No. 2659)
SAUL EWING LLP
222 Delaware Avenue, Suite 1200
P. O. Box 1266
Wilmington, DE 19899
(302) 421-6840

420731.1 11/21/00

**CORAM HEALTHCARE CORP., et al.**
Service List

**Via Hand Delivery:**
Laura Davis Jones, Esquire
Rachel S. Lowy, Esquire
Pachulski, Stang, Ziehl, Young
  & Jones P.C.
919 Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

Deborah E. Spivack, Esquire
Mark D. Collins, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

**Via Telecopy:**
Richard Schepacarter, Esquire
Office of the United States Trustee
601 Walnut Street
Curtis Center, Suite 950-West
Philadelphia, PA  19106

David M. Friedman, Esquire
Athena Foley, Esquire
Adam L. Shiff, Esquire
Kasowitz, Benson, Torres & Friedman
1633 Broadway
New York, NY 10019-6022

Chaim Fortgang, Esquire
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY  10019

Alan B. Miller, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153

C65