IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CORAM HEALTHCARE CORP. and | ) | Chapter 11 |
| CORAM, INC., | ) | |
| | ) | Case Nos. 00-3299 (MFW) |
| Debtors. | ) | through 00-3300 (MFW) |
| | ) | |
| | ) | Jointly Administered |

## DEBTORS' SECOND JOINT PLAN PURSUANT TO
## CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Dated as of: July 31, 2001

KASOWITZ, BENSON, TORRES
   & FRIEDMAN LLP
David M. Friedman
Adam L. Shiff
Robert M. Novick
1633 Broadway
New York, New York 10019
(212) 506-1700

– and –

PACHULSKI, STANG, ZIEHL,
   YOUNG & JONES, P.C.
Laura Davis Jones
Rachel Lowy
919 North Market Street
Wilmington, Delaware 19899-8705
(302) 652-4100
*Co-counsel to the Debtors and*



*Debtors in Possession*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| CORAM HEALTHCARE CORP. and | ) | Chapter 11 |
| CORAM, INC., | ) | |
| | ) | Case Nos. 00-3299 (MFW) |
| Debtors. | ) | through 00-3300 (MFW) |
| | ) | |
| | ) | Jointly Administered |

## DEBTORS' SECOND JOINT PLAN PURSUANT TO
## CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE

Coram Healthcare Corp. and Coram, Inc., the above-captioned debtors and debtors in possession, propose the following second joint Plan pursuant to sections 1121(a) and 1123 of title 11 of the United States Code.

## ARTICLE I
## RULES OF CONSTRUCTION

1.1    Unless otherwise provided or separately defined in this Plan, capitalized terms shall have the meanings set forth in Article II of this Plan.

1.2    Any capitalized term used in this Plan that is not defined in Article II of this Plan shall have the meaning ascribed to such term, if any, in the Bankruptcy Code.

1.3    The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.

1.4    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.5    The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan.

C147

1.6    Whenever it appears appropriate from the context, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter.

1.7    All exhibits are incorporated into and made a part of the Plan as if set forth in full herein, whether or not annexed hereto.  Copies of exhibits can be obtained upon written request to Kasowitz, Benson, Torres & Friedman LLP, Attn: Craig Hueneke, Chief Bankruptcy Paralegal, 1633 Broadway, New York, NY 10019.

1.8    Captions and headings to Articles and Sections of the Plan are inserted for convenience and reference only.  Captions and headings and are not intended to be a part, or to affect the interpretation, of the Plan.

## ARTICLE II
## DEFINITIONS

All of the following definitions are intended to be, and hereby are, part of the substantive provisions of this Plan and have the same force and effect as any other provision of this Plan.

2.1    "Absolute Priority Litigation" means the litigation that may be commenced in connection with the Confirmation Hearing if Class CHC 2 votes to reject the Plan, Class CHC 4 votes to accept the Plan, and the Creditors' Committee (or any other party in interest) objects to the Debtors' proposed distribution of the CHC Equity Interest Consideration to Class CHC 4, as more fully described in section III.A.3 of the Disclosure Statement.

2.2    "Administrative Claim" means any Claim constituting a cost or expense of administration of the Debtors' Chapter 11 cases incurred on or after the Petition Date and allowed by Final Order under section 503(b) of the Bankruptcy Code, including, without limitation: (a) any and all DIP Claims, (b) any actual and necessary costs and expenses incurred after the petition date of preserving the Estates of the Debtors and operating the businesses of the Debtors, any indebtedness or obligations incurred or assumed by the Debtors in connection with the conduct of their businesses or for the acquisition or lease of property or for the procurement of services, any costs and expenses of the Debtors and/or Reorganized Coram for the management, maintenance, preservation, sale or other disposition of any assets, the administration and implementation of the Plan, the administration, prosecution or defense of claims by or Claims against the Debtors and for distributions under the Plan, (c) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under section 330, 331, or 503(b) of the Bankruptcy Code to the extent incurred prior to the Effective Date, (d) all fees and charges assessed against the Debtors' Estates under section 1930, Chapter 123 of title 28 of the United States Code.

2.3    "Allowed Administrative Claim" means an Administrative Claim that is or becomes an Allowed Claim.

2.4    "Allowed CHC Equity Interest" means an Allowed Equity Interest in CHC.

2.5    "Allowed CHC General Unsecured Claim" means a CHC General Unsecured Claim to the extent it is or has become an Allowed Claim.

2.6    "Allowed CHC Notes Claims" means the CHC Notes Claims.

2.7    "Allowed CHC Priority Non-Tax Claim" means a Priority Non-Tax Claim that is or becomes an Allowed Claim against CHC.

2.8    "Allowed CHC Secured Claims" means a CHC Secured Claim to the extent it is or has become an Allowed Claim.

2.9    "Allowed Claim" means a Claim to the extent such Claim: (a)(i) is either: (A) scheduled by a Debtor pursuant to the Bankruptcy Code and Bankruptcy Rules in a liquidated amount and not listed as contingent, unliquidated or disputed; or (B) proof of which has been timely filed, or deemed timely filed, with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (ii) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court; or (b) has otherwise been allowed by a Final Order or pursuant to this Plan. An Allowed Claim: (A) includes a previously Disputed Claim to the extent such Disputed Claim becomes allowed; and (B) shall be net of any setoff amount of any claim that may be asserted by the Debtors against the holder of such claim, which shall be deemed to have been setoff in accordance with the provisions of this Plan. Without limiting the foregoing, no Claim shall be considered an Allowed Claim before the time that an objection has been or may be filed with regard to such Claim if: (x) the amount or classification of the Claim specified in the relevant proof of claim exceeds the amounts of or has a classification different from any corresponding Claim scheduled by a Debtor in its Schedules of Assets and Liabilities; (y) any corresponding Claim scheduled by a Debtor has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been scheduled by the Debtor in its Schedules of Assets and Liabilities.

2.10    "Allowed Coram Equity Interest" means an Allowed Equity Interest in Coram other than a Coram Preferred Stock Interest.

2.11    "Allowed Coram General Unsecured Claim" means a Coram General Unsecured Claim, to the extent it is or has become an Allowed Claim.

3

2.12 "<u>Allowed Coram Notes/Preferred Stock Claims</u>" means the Coram Notes/Preferred Stock Claims.

2.13 "<u>Allowed Coram Notes Claims</u>" means the Coram Notes/Preferred Stock Claims to the extent such Claims are based upon or evidenced by the Notes

2.14 "<u>Allowed Coram Preferred Stock Interests</u>" means the Coram Notes/Preferred Stock Claims to the extent such Claims are based upon or evidenced by the Coram Preferred Stock Interests.

2.15 "<u>Allowed Coram Priority Non-Tax Claim</u>" means a Priority Non-Tax Claim that is or becomes an Allowed Claim against Coram.

2.16 "<u>Allowed Coram Secured Claim</u>"  means a Coram Secured Claim to the extent it is or has become an Allowed Claim.

2.17 "<u>Allowed Equity Interest</u>" means an Equity Interest as of the Record Date.

2.18 "<u>Allowed General Unsecured Claim</u>" means a General Unsecured Claim that is or becomes an Allowed Claim.

2.19 "<u>Allowed Priority Tax Claim</u>" means a Priority Tax Claim that is or becomes an Allowed Claim.

2.20 "<u>Allowed Secured Claim</u>" means a Secured Claim that is or becomes an Allowed Claim.

2.21 "<u>Amended and Restated Certificate of Incorporation of Reorganized Coram</u>" means the certificate of incorporation of Reorganized Coram, as amended, which certificate shall be in substantially the form included in the Plan Supplement.

2.22 "<u>Amended By-laws of Reorganized Coram</u>" means the amended by-laws of Reorganized Coram, which amended by-laws shall be in substantially the form included in the Plan Supplement.

2.23 "<u>Avoidance Actions</u>" means all of the Debtors' preference and other avoidance power claims pursuant to sections 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable law.

2.24 "<u>Ballot</u>" means the form or forms distributed to each holder of an impaired claim on which the holder is to indicate acceptance or rejection of the Plan.

4

2.25    "Bankruptcy Code" means title 11 of the United States Code (11 U.S.C. §§ 101 et seq.) as in effect on the Petition Date and as amended after the Petition Date to the extent applicable to the Debtor's Chapter 11 Cases.

2.26    "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for the District of Delaware, including the United States Bankruptcy Judge presiding over the Debtors' Chapter 11 cases, and to the extent it is necessary and appropriate for jurisdiction to be exercised by the United States District Court for the District of Delaware, including the United States District Judges, or any other court with jurisdiction over the Debtors' Chapter 11 cases, this definition shall include same.

2.27    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure (Fed. R. Bankr. Proc. 1001 et seq.) as in effect on the Petition Date and as amended after the Petition Date to the extent applicable to the Debtor's Chapter 11Cases.

2.28    "Business Day" means any day other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

2.29    "Cases" means the cases under Chapter 11 of the Bankruptcy Code which were commenced on the Petition Date with respect to the Debtors.

2.30    "Cash" means legal tender of the United States of America and equivalents thereof, including but not limited to bank deposits, checks and similar items.

2.31    "Certificate of Incorporation" means the certificate of incorporation of Coram, as amended or restated prior to the Confirmation Date.

2.32    "Chapter 11" means Chapter 11 of the Bankruptcy Code (11 U.S.C. § 1101 et seq.), as in effect on the Petition Date, and as amended after the Petition Date and effective during the Debtors' Chapter 11 cases, to the extent applicable to the Debtors' cases.

2.33    "CHC" means Coram Healthcare Corporation, a Delaware corporation.

2.34    "CHC Equity Interest" means an Equity Interest in CHC.

2.35    "CHC Equity Interest Consideration" means Cash in the amount of $10 million.

2.36    "CHC Equity Reserve" means a reserve established in the event Class CHC 4 votes to accept this Plan by the applicable requisite majorities, to hold in one or more segregated accounts to be established by the Debtors or the Plan Administrator, the CHC Equity Interest Consideration, subject to the Absolute Priority Litigation, if any, and which will be maintained in trust for holders of Allowed Equity Interests in Class CHC 4.

5

C151

2.37   "CHC General Unsecured Claim" means a General Unsecured Claim against CHC.

2.38   "CHC General Unsecured Consideration" means cash in the amount of $2 million.

2.39   "CHC Noteholder Consideration" means cash in the amount of $1 million.

2.40   "CHC Notes Claims, means, collectively, any Claim against CHC based upon or evidenced by the Notes, which as of the Petition Date, aggregated approximately $252,007,000.

2.41   "CHC Secured Claim" means a Secured Claim against CHC.

2.42   "Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

2.43   "Claimant" means the holder of a Claim or an Allowed Equity Interest on the Confirmation Date.

2.44   "Class" means a category of holders of Claims or Equity Interests as established pursuant to Articles III and IV of the Plan.

2.45   "Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

2.46   "Confirmation Date" means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court.

2.47   "Confirmation Hearing" means the hearing before the Bankruptcy Court respecting the Confirmation of the Plan.

2.48   "Confirmation Order" means the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of the Bankruptcy Code.

2.49   "Coram" means Coram, Inc., a Delaware corporation.

2.50   "Coram General Unsecured Claim" means a General Unsecured Claim against Coram.

2.51   "Coram Notes/Preferred Stock Claims" means, collectively, any claim against Coram based upon or evidenced by (i) the Notes, which as of the Petition Date, aggregated approximately $252,007,000, and (ii) the Coram Preferred Stock Interests.

2.52   "Coram Preferred Stock Interests" means, collectively, any interest in and claim against Coram based upon or evidenced by the Preferred Stock, including, without limitation, any accrued dividends.

6

C152

2.53    "Coram Secured Claim" means a Secured Claim against Coram.

2.54    "Creditors' Committee" means the Official Committee of Unsecured Creditors designated by the United States Trustee on August 22, 2000.

2.55    "Cure Claim" means a Claim against the Debtors, or any of them, arising from an obligation to cure defaults within the meaning of section 365(b) of the Bankruptcy Code.

2.56    "Debtors" means CHC, the Debtor and Debtor in Possession in Chapter 11 Case No. 00-3299 (MFW) pending before the Bankruptcy Court, and Coram, the Debtor and Debtor in Possession in Chapter 11 Case No. 00-3300 (MFW) pending before the Bankruptcy Court.

2.57    "Debtors-in-Possession" means the Debtors as debtors in possession in the Cases.

2.58    "DIP Claims" means all Claims of DIP Lenders arising under the DIP Facilities.

2.59    "DIP Facilities" means the debtor-in-possession credit agreement and any related agreements between the Debtors and the DIP Lenders.

2.60    "DIP Lenders" means Madeleine LLC and any other lenders participating in the DIP Facilities.

2.61    "DIP Order" means all Final Orders authorizing, approving or amending the DIP Facilities.

2.62    "Disbursing Agent" means the bank, trust company, corporation, other organization or Person (including the Plan Administrator), if any, selected by the Debtors or Reorganized Coram to make distributions under and in accordance with the Plan.

2.63    "Disclosure Statement" means the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code, either in its present form or as it may be altered, amended, supplemented or modified from time.

2.64    "Disputed Claim" means (a) any Claim listed in any of the Schedules as contingent, unliquidated or disputed; (b) any Claim against any of the Debtors, proof of which is filed designating such Claim in any respect as contingent, unliquidated or disputed; (c) any Claim which, in whole or in part, is the subject of a timely objection interposed by the Debtors or any other party in interest; or (d) any Claim which is the subject of litigation as to amount or liability by any of the Debtors; provided, however, that the amount of a Disputed Claim shall mean the lesser of (x) the amount listed in the Schedules, (y) the amount stated in a proof of Claim as filed with the Bankruptcy Court or (z) the amount as estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code; and

7

provided, further, however, that, in the event the Bankruptcy Court shall estimate the amount of a Disputed Claim for purposes of allowance pursuant to section 502(c) of the Bankruptcy Code, such estimation shall constitute and represent the maximum amount in which such Claim may ultimately become an Allowed Claim.

2.65    "Distribution" means any consideration to be provided under this Plan to the holder of an Allowed Claim on account of such Claim or to the holder of an Allowed Equity Interest on account of such Equity Interest.

2.66    "Effective Date" means the first Business Day on which all conditions to effectiveness of the Plan, as set forth in Section 12.2 hereof, have been satisfied or waived and on which no stay of the Confirmation Order is in effect.

2.67    "Equity Committee" means the Official Committee of Equity Security Holders designated by the United States Trustee on October 18, 2000.

2.68    "Equity Interest" means the Preferred Stock and any equity interest in a Debtor represented by duly authorized, validly issued, unissued or outstanding shares of stock, or any interest or right to convert into such an equity interest or acquire any equity interest, or any Claims arising or deriving therefrom, that was in existence immediately prior to the Petition Date, including, without limitation, any warrants, options, employee stock options or contract rights to acquire or purchase such interests at any time.

2.69    "Estates" means the estates, created in the Debtors' Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

2.70    "Executive Employment Agreement" shall mean the agreement respecting the employment of the Debtors' Chief Executive Officer, Daniel D. Crowley, effective immediately prior to the Petition Date.

2.71    "Executive Compensation Waiver" shall mean the voluntary agreement of Daniel D. Crowley to waive his rights to receive bonus compensation in the amount of $7.5 million that Mr. Crowley has earned pursuant to Executive Employment Agreement effective upon, and only upon, the occurrence of the Effective Date of this Plan.

2.72    "Exit Financing Facility" means the financing facility in the approximate aggregate principal amount of $40 million between Reorganized Coram and one or more lenders, substantially in the form included in the Plan Supplement, pursuant to which such lender(s) shall have agreed to provide financing to Reorganized Coram on terms and conditions satisfactory to Coram.

8

2.73    "Face Amount" means: (a) when used with reference to a Disputed Unsecured Claim, either (i) the full stated amount claimed by the holder of such Claim in any group of Claims filed by the Bar Date, or otherwise deemed timely filed under applicable law, if the proof of claim specifies only a liquidated amount; (ii) if no proof of Claim is filed by the Bar Date or otherwise deemed timely filed under applicable law, the full amount of the Claim listed on the Debtors' Schedules provided, that such amount is not listed as disputed, contingent or unliquidated; or (iii) the applicable deductible under the relevant insurance policy, minus any reimbursement obligations of the applicable Debtor to the insurance carrier for sums expended by the insurance carrier on account of such Claim (including defense costs) if such amount is less than the amount specified in (i) or (ii) above or the proof of Claims specifies an unliquidated amount (and) (b) when used with reference to a Disputed Uninsured Claim, either (i) the full stated amount claimed by the holder of such Claim and any proof of Claim filed by the Bar Date or otherwise deemed timely filed under applicable law, if the proof of claim specifies only a liquidated amount; or (ii) the amount of the Claim acknowledged by the applicable Debtor or Reorganized Debtor in any objection filed such Claim or in the Schedules as an undisputed, non-contingent and liquidated Claim, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, proposed by the Debtors or established by Reorganized Coram following the Effective Date, if no proof of Claim has been filed by the Bar Date or has otherwise been deemed timely filed under applicable law or if the proof of Claim specifies an unliquidated amount.

2.74    "Final Order" means an order or judgment of a court as to which (a) any appeal that has been taken has been determined finally or dismissed and such order has not been reversed, stayed, modified or amended, (b) the time to appeal, petition for certiorari or request reargument or rehearing has expired and as to which no appeal, petition for certiorari, or request for reargument or rehearing is pending or as to which any right to appeal, petition for certiorari, or request reargument or rehearing has been waived or if an appeal, certiorari, reargument or rehearing thereof has been sought, the order or judgment of the Bankruptcy Court has been affirmed by the highest court to which the order was appealed or from which the reargument or rehearing was sought, or certiorari has been denied, or (c) the time to take any appeal or to seek certiorari or further reargument or rehearing has expired.

2.75    "General Unsecured Claim" means any Claim other than an Administrative Claim, a Secured Claim, a Priority Non-Tax Claim, a Priority Tax Claim, an Allowed Coram Notes/Preferred Stock Claim or an Allowed CHC Notes Claim.  The term "General Unsecured Claim" shall consist of, except as set forth above in this definition, all impaired unsecured claims not otherwise classified that are not cured, paid, released or waived pursuant to the Plan, assumed by a Debtor pursuant to the Plan or agreements incorporated into the Plan, or classified in any other class, including, without limitation, claims (a) for goods sold and/or services rendered, (b) for moneys lent, (c) based upon guarantees of performance or payment of the obligations or duties of any Person, (d) for tort liability, (e) for environmental remediation, (f) of governmental unites under any applicable unclaimed property or escheat laws, (g) of governmental units for taxes, assessments, penalties or charges which are not Priority Tax Claims, (h) for contribution, reimbursement or indemnity, (i) for fines, penalties or other assessments, (j) for the portion of any Claim supported directly or indirectly by a letter of credit issued

9

for the account of a Debtor in excess of the amount available under such letter of credit, and (k) representing the undersecured portion of any claim that is otherwise a Secured Claim.

2.76   "KERP Order" means that certain Order Pursuant to Section 363(b) of the Bankruptcy Code Authorizing and Approving Debtors' Adoption of Key Employee Retention Program, dated August 31, 2000.

2.77   "Most Recent Address" means as of any date, with respect to any holder of a Claim or its designee, its address set forth in the proof of claim or other writing most recently filed with the Bankruptcy Court or received by the Debtor and if no such proof of claim or writing has been filed or received, then the address set forth on the Debtors' Schedules.

2.78   "New Coram Stock" means ten million (10,000,000) shares of common stock, $0.01 par value, authorized by Reorganized Coram pursuant to this Plan, representing one hundred percent (100%) of the issued and outstanding voting common stock of Reorganized Coram on the Effective Date.

2.79   "New Secured Notes" means the new secured, interest-bearing promissory notes in the aggregate principal amount of $180 million to be issued to holders of Allowed Coram Notes Claims pursuant to sections 7.8 and 9.4 of the Plan, which notes shall be guaranteed and secured by a pledge of all stock and liens on all assets owned by each direct or indirect operating subsidiary of Coram, which shall be senior in priority to all other obligations of the Reorganized Coram except the Exit Financing Facility, which shall require payments of interest only during the first four years after their issuance, and which shall be in the form included in the Plan Supplement.

2.80   "Noteholder Group" means Cerberus Partners, L.P., Goldman Sachs Credit Partners L.P., and Foothill Capital Corporation.

2.81   "Notes" means the Series A Notes and the Series B Notes.

2.82   "Old Coram Board of Directors" means the board of directors of Coram that existed as of the Confirmation Date.

2.83   "Person" means a person as defined in section 101(41) of the Bankruptcy Code or an entity as defined in section 101(15) of the Bankruptcy Code.

2.84   "Petition Date" means August 8, 2000.

2.85   "Plan" means this Second Joint Plan Pursuant to Chapter 11 of the United States Bankruptcy Code (including all exhibits and schedules annexed hereto or included in the Plan

Supplement) either in its present form or as it may be altered, amended or modified from time to time by the Debtors.

2.86    "Plan Administrator" means the fiduciary responsible for, among other things, holding and distributing the Unsecured Claim Reserve and the CHC Equity Reserve pursuant to the Plan, the Plan Administration Agreement, the Confirmation Order, or such other order as may be entered by the Bankruptcy Court, the completion of the process of prosecution or settlement of disputed claims against CHC, and the completion of all other obligations pursuant to the Plan Administration Agreement.

2.87    "Plan Administration Agreement" means the agreement describing the powers, duties, and rights of the Plan Administrator in administering the Plan, in substantially the form included in the Plan Supplement.

2.88    "Plan Supplement" means a separate volume, to be filed with the Clerk of the Bankruptcy Court, containing, among other things, forms of the Amended By-Laws of Reorganized Coram, the Amended and Restated Certificate of Incorporation of Reorganized Coram, form of New Secured Notes, and a schedule of the names and information as to the business and professional backgrounds of all senior officers and directors of Reorganized Coram.

2.89    "Preferred Stock" means the preferred stock issued by Coram during the Cases pursuant to, *inter alia*, the Order Authorizing and Approving Issuance of Preferred Stock in Exchange for Debt of the Bankruptcy Court dated December 28, 2000, and having a liquidation preference when issued of $109,000,000 and bearing a cumulative compounding dividend at the rate of 15% per annum of the liquidation preference amount.

2.90    "Priority Non-Tax Claim" means that portion of any Claim entitled to priority in right of payment under sections 507(a)(2), (3), (4), or (6), of the Bankruptcy Code.

2.91    "Priority Tax Claim" means a Claim of a governmental unit of the kind specified in section 507(a)(8) of the Bankruptcy Code, but excludes that portion of a Claim to the extent it is a Secured Claim.

2.92    "Pro Rata" means: (i) in the case of a Class, the proportion that the amount of an Allowed Claim in a particular Class bears to the aggregate amount of all Allowed Claims in such Class and, (ii) in the case of a particular type of Claim or Equity Interest, the proportion the amount of an Allowed Claim or Allowed Equity Interest of a particular type bears to the aggregate amount of all Allowed Claims, or Allowed Equity Interests, as the case may be, of such type.

2.93    "Record Date" means the date the clerk of the Bankruptcy Court enters upon the docket an order approving the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code.

11

2.94    "Reinstated or Reinstatement" means (a) leaving unaltered the legal, equitable and contractual rights to which a Claim entitles the holder of such Claim in accordance with section 1124 of the Bankruptcy Code, or (b) if applicable under section 1124 of the Bankruptcy Code: (i) curing all prepetition and postpetition defaults other than defaults relating to the insolvency or financial condition of a Debtor or its status as a debtor under the Bankruptcy Code; (ii) reinstating the maturity date of the Claim; (iii) compensating the holder of such Claim for damages incurred as a result of its reasonable reliance on a provision allowing acceleration; and (iv) not otherwise altering the legal, equitable and contractual rights to which the Claim entitles the holder thereof.

2.95    "Rejection List" means a list, if any, filed by the Debtors not less than ten (10) business days prior to the Confirmation Hearing setting forth the leases and contracts the Debtors are rejecting under this Plan pursuant to section 365 of the Bankruptcy Code, which Rejection List shall be served upon the non-Debtor party to each lease or contract described therein

2.96    "Reorganized Coram" means Coram, Inc., a Delaware corporation, as reorganized and as successor to Coram, pursuant to the Plan and Confirmation Order.

2.97    "Reorganized Coram Board of Directors" means the board of directors of Reorganized Coram on and after the Effective Date.

2.98    "Schedules" means the schedules of assets and liabilities and the statement of affairs filed by the Debtors with the Bankruptcy Court as amended from time to time.

2.99    "Secured Claim" means, pursuant to section 506 of the Bankruptcy Code, that portion of a Claim that is secured by a valid, perfected and enforceable security interest, lien, mortgage or other encumbrance that is not subject to avoidance under applicable bankruptcy or non-bankruptcy law, in or upon any right, title or interest of the Debtors in and to property of the Estate, to the extent of the value of the holder's interest in such property as of the relevant determination date, and includes any Claim that is: (i) subject to an offset right under applicable law; and (ii) a secured claim against a Debtor pursuant to section 506(a) and 553 of the Bankruptcy Code.

2.100    "Securities Exchange Agreement" means the Securities Exchange Agreement dated as of May 6, 1998 between Coram and CHC, and Cerberus Partners, L.P., Goldman Sachs Credit Partners, L.P., and Foothill Capital Corporation, as subsequently amended.

2.101    "Series A Notes" means the Series A Senior Subordinated Notes issued by Coram and guaranteed by CHC pursuant to, among other documents, the Securities Exchange Agreement in the aggregate original principal amount of $150,000,000 and originally due May 2001.

12

C158

2.102  "Series B Notes" means Series B Subordinated Convertible Notes issued by Coram and guaranteed by CHC pursuant to, among other documents, the Securities Exchange Agreement in the aggregate original principal amount of $87,922,213 and subject to redemption .

2.103  "Service" means the Internal Revenue Service.

2.104  "Shareholder Agreement" means the Shareholder Agreement to be executed by the recipients of the New Coram Stock on the Effective Date, which shall limit transferring such stock in a manner that it would become held, directly or indirectly, by a physician or family member of a physician unless indirectly owned by a physician through a publicly traded company with stockholder equity in excess of $75 million, which shall be in the form set forth in the Plan Supplement.

2.105  "Sub-Class" means a category of holders of Claims that is a subset of a Class, as established pursuant to Sections III and IV of the Plan.

2.106  "Subsequent Distribution Date" means the dates beginning six (6) months after the Effective Date and on the same date (or if such date is not a Business Day, then the subsequent Business Day) of each month thereafter.

2.107  "Tax Code" means the Internal Revenue Code of 1986, as amended.

2.108  "Tax Note" means a promissory note delivered to a holder of an Allowed Tax Claim providing for equal cash payments, made semi-annually, commencing on the first anniversary of the date of the assessment of such a Tax Claim over a period not exceeding six (6) years after the date of assessment of such Tax Claim which is the subject of the relevant Allowed Priority Tax Claim.  Each Tax Note shall include simple interest at the rate of 9 % per annum from the Effective Date.

2.109  "34 Act" means the Securities Exchange Act of 1934, as amended.

2.110  "Unsecured Claims Reserve" means a reserve established to hold, in one or more segregated accounts to be established by the Debtors or the Plan Administrator the CHC General Unsecured Consideration, which will be maintained in trust for holders of Allowed CHC General Unsecured Claims in Class CHC 2, plus, in the event Class CHC 2 votes to accept this Plan by the requisite majorities applicable, the CHC Noteholder Consideration (in such event creating an aggregate Unsecured Claims Reserve in the amount of $3 million), plus in the event the Debtors are unsuccessful in the Absolute Priority Litigation, the Equity Interest Consideration (in such event creating an aggregate Unsecured Claims Reserve in the amount of $12 million).

**ARTICLE III**

13

C159

## RULES OF CLASSIFICATION

3.1     General Rules of Classification

    3.1.1    All Claims and Equity Interests, other than Administrative Claims and Priority Tax Claims, if any, have been classified in the Classes set forth below. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Tax Priority Claims are not impaired under the Plan, and therefore, in accordance with section 1123(a)(3) of the Bankruptcy Code, have not been classified and thus are excluded from the Classes set forth below.

    3.1.2.   A Claim or Equity Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in other Class(es) to the extent that any remainder of the Claim or Equity Interest falls within the description of such other Class(es). Unless otherwise provided, to the extent a Claim or Equity Interest qualifies for inclusion in a more specifically defined class and a more generally defined class, it shall be included in the more specifically defined class.

    3.1.3   A Claim or Equity Interest is also classified in a particular Class for the purpose of receiving Distributions pursuant to the Plan only to the extent that such Claim, or Equity Interest: (a) is an Allowed Claim or an Allowed Equity Interest, as the case may be, in that Class and (b) such Claim or Equity Interest, as the case may be, has not been paid, released, or otherwise settled prior to the Effective Date.

3.2     Undersecured Claims Against Any Debtor        To the extent that the amount of an Allowed Claim is greater than the value of the collateral securing such Claim as of the applicable valuation date, subject to section 1111 (b) of the Bankruptcy Code, such Claim is classified in both a Secured Claim Class for the secured portion of such Claim and a General Unsecured Claim Class for the excess of such Claim over the value of the collateral.

14

      3.3    <u>Separate Classifications</u>  The Claims and Equity Interests against each Debtor are separately classified.

## ARTICLE IV

## <u>CLASSIFICATION OF CLAIMS AND ALLOWED EQUITY INTERESTS</u>

15

C161

4.1     All Claims and Allowed Interests, other than Administrative Claims and Priority Tax Claims, are classified into the following Classes pursuant to section 1123(a) of the Bankruptcy Code:

4.2     **CHC**

Class CHC P:          Class CHC P consists of all Allowed CHC Priority Non-Tax Claims

Class CHC 1:          Class CHC 1 consists of all Allowed CHC Secured Claims.

Class CHC 2:          Class CHC 2 consists of all Allowed CHC General Unsecured Claims.

Class CHC 3:          Class CHC 3 consists of all Allowed CHC Notes Claims.

Class CHC 4:          Class CHC 4 consists of all Allowed CHC Equity Interests.

4.3     **Coram**

Class Coram P:        Class Coram P consists of all Allowed Coram Priority Non-Tax Claims.

Class Coram 1:        Class Coram 1 consists of all Allowed Coram Secured Claims.

Class Coram 2:        Class Coram 2 consists of all Allowed Coram General Unsecured Claims

Class Coram 3:        Class Coram 3 consists of all Allowed Coram Note/Preferred Stock Claims.

Sub-class Coram 3A:   Sub-class Coram 3A
                      is a subset of Class Coram 3 and
                      consists of all Allowed Coram Notes Claims.

Sub-class Coram 3B:   Sub-class Coram 3B is
                      a subset of Class Coram 3 and
                      consists of all Allowed Coram Preferred Stock Interests.

Class Coram 4:        Class Coram 4 consists of all Allowed Coram Equity Interests.

16

# ARTICLE V

## IMPAIRMENT OF CLAIMS OR ALLOWED EQUITY INTERESTS

5.1    The Classes of Claims and Interests that are impaired under the provisions of this Plan are Classes CHC 2, CHC 3, CHC 4, Coram 3, and Coram 4.  The Debtors are soliciting acceptances to the Plan from the holders of Claims and Equity Interests in Classes CHC 2, CHC 3, CHC 4, and Coram 3.

The Debtors are not soliciting acceptances from the holders of Equity Interests in Class Coram 4 because that Class will receive no distribution of property under the Plan and is deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

The Debtors are not soliciting acceptances from the holders of Claims in Classes CHC P, CHC1, Coram P, Coram 1 and Coram 2 because those classes are unimpaired and are conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code.

# ARTICLE VI

## TREATMENT OF UNCLASSIFIED CLAIMS

6.1    Administrative Claims.

Administrative Claims are not classified under the Plan.  In accordance with section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed Administrative Claim shall receive the full amount of its unpaid Allowed Administrative Claim (i) in cash on the Effective Date or (ii) on such other terms as mutually agreed to by the holder of an Allowed Administrative Claim and the Debtors; provided, however, that Allowed Administrative Claims representing (a) post-Petition Date liabilities incurred in the ordinary course of business, or (b) post-Petition Date liabilities arising under loans or advances to any Debtor(s), whether or not incurred in the ordinary course of business, shall be paid in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto; provided, further, however, that administrative claims of the United States Trustee pursuant to 29 U.S.C. § 1930(a)(6) shall be paid in accordance with the applicable schedule for payment of such fees, provided, further, however, that interim and/or final payment of Allowed Administrative Claims approved by the Bankruptcy Court shall be paid in accordance with such Bankruptcy Court approval; provided, further, however, that notwithstanding any other provision contained in this section, DIP Claims shall be paid in accordance with the terms of the DIP Facility, the DIP Order, and section 6.1.1 of the Plan, and; provided, further, however, that compensation and reimbursement claims shall be paid in accordance with section 6.1.2 of the Plan.

17

### 6.1.1 DIP Claims

DIP Claims shall be paid in accordance with the terms of the DIP Facility and the DIP Order, giving due regard and fully enforcing all priorities, "superpriorities," and liens granted in favor of the DIP Lenders. Upon payment in full of the DIP Claims, the DIP Lenders shall release any and all liens against and security interests in the Debtors' and the Estates' property, the DIP Facility shall be deemed terminated, and the obligations of the Debtors and Reorganized Coram thereunder shall be canceled.

### 6.1.2 Compensation and Reimbursement Claims

All persons or entities that are awarded compensation or reimbursement of expenses by the Bankruptcy Court in accordance with section 330 or 331 of the Bankruptcy Code, or entitled to the priorities established pursuant to section 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code, shall be paid in full, in Cash, the amounts allowed by the Bankruptcy Court (a) on or as soon as practicable following the later to occur of (i) the Effective Date and (ii) the date upon which the Bankruptcy Court order allowing such Claim becomes a Final Order or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtors or Reorganized Coram.

### 6.2 Priority Tax Claims

Priority Tax Claims are not classified under the Plan. In full satisfaction, payment and discharge of its Priority Tax Claim, and in accordance with section 1129(c)(9)(C) of the Bankruptcy Code, each holder of an Allowed Priority Tax Claim shall receive (i) payment, in Cash, of the full amount of such holder's Priority Tax Claim, (ii) a Tax Note equal to the full amount of such holder's Priority Tax Claim, (iii) a combination of Cash and a Tax Note, or (iv) on such other terms as mutually agreed to by the holder of an Allowed Priority Tax Claim and the Debtors or Reorganized Coram. Any claim or demand for fines or penalties relating to a Priority Tax Claim shall be disallowed, and the holder of an Allowed Priority Tax Claim shall not assess or attempt to collect such penalty from the Debtors or the Reorganized Coram.

### 6.2.1 Pass-through of Internal Revenue Service Claims

Notwithstanding any other provision in the Plan, or Confirmation Order, any rights and claims (whether liquidated, or contingent) of the United States Internal Revenue Service shall not be discharged, impaired, or adversely affected by the Plan or Confirmation Order in these cases (except as set forth in this paragraph). Instead, except as otherwise agreed to by the Internal Revenue Service (the "Service") and Reorganized Coram, the Debtors' liabilities due the Service, (i) shall be determined and resolved in the same manner and by the same administrative process or judicial tribunals in which such rights or claims would have been determined, resolved or adjudicated had the Cases not been

18

commenced and (ii) shall be paid as if the Cases had not been commenced, other than with respect to any liabilities owing to the Service which would otherwise be classified as Priority Tax Claims under this Plan pursuant to 11 U.S.C. § 507(a)(8), which claims shall be paid in full over a period of six years from the date of assessment in equal quarterly installments for quarters ending (3/30, 6/30, 9/30, 12/31) at the rate of interest provided under 26 U.S.C. § 6621 (a), without regard to 26 U.S.C. § 6621(c). The first such quarterly installments shall be paid so as to be received on or before September 30, 2002, or at the close of the first quarter following assessment (whichever is later) and each installment thereafter shall be paid so as to be received at the close of each subsequent quarter.  In the event the Debtors or any successor in interest fails to make a timely installment payment, the Service shall make a written demand for such payment.  If the payment has not been received within 14 days from the date such demand is mailed (other than as a result of a good faith dispute as to liability), then the Debtors or the successors in interest shall be in default.  In the event of default, the entire deferred liability shall become due and payable immediately and the Service may make a written demand for payment and collect any such unpaid liabilities through the administrative collection provisions of the Tax Code.

## ARTICLE VII

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

7.1    Treatment of Class CHC P
       (Allowed CHC Priority Non-Tax Claims)

In full satisfaction, payment and discharge of its Priority Non-Tax Claim, and in accordance with section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed CHC Priority Non-Tax Claim shall receive payment in full, at the option of the Debtors, (i) in Cash on the Effective Date, or (ii) such other treatment as will render such Allowed CHC Priority Non-Tax Claim unimpaired.

Class CHC P is unimpaired under the provisions of the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class CHC P.

7.2    Treatment of Class CHC 1
       (Allowed CHC Secured Claims)

In full satisfaction, payment and discharge of its Allowed CHC Secured Claims, each holder of an Allowed CHC Secured Claim, if any, shall receive, at the option of the Debtors, (i) payment in full in Cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim, or (ii) such other treatment as will render such Allowed CHC Secured Claim unimpaired.

Class CHC 1 is unimpaired under the provisions of the Plan.

19

The Debtors are not soliciting acceptances from the holders of Claims in Class CHC 1.

7.3    Treatment of Class CHC 2
       (Allowed CHC General Unsecured Claims)

(a)    If Class CHC 2 votes to accept the Plan by the majorities required by section 1126(c) of the Bankruptcy Code, each holder of an Allowed CHC General Unsecured Claim, in full satisfaction, payment and discharge of its Allowed CHC General Unsecured Claim, shall receive its Pro Rata Share of (i) the CHC General Unsecured Consideration and (ii) the CHC Noteholder Consideration.

(b)    If Class CHC 2 fails to accept the Plan by the majorities set forth in section 1126(c) of the Bankruptcy Code, each holder of an Allowed CHC General Unsecured Claim shall receive, in full satisfaction, payment and discharge of its Allowed CHC General Unsecured Claim, its Pro Rata share of the CHC General Unsecured Consideration, provided however, if the Absolute Priority Litigation is commenced and the Court is unwilling to confirm the Plan unless the CHC Equity Interest Consideration is first made available to Class CHC 2, then each holder of an Allowed Claim in Class CHC 2 shall receive the lesser of (i) its Pro Rata share of $12 million in cash (the CHC General Unsecured Consideration plus the CHC Equity Interest Consideration), and (ii) an amount necessary to cause such holder to be paid in full.

(c)    In order to provide the distribution of the CHC General Unsecured Consideration and the CHC Noteholder Consideration afforded by subsections (a) and (b) above, (as applicable), the holders of Coram Notes/Preferred Stock Claims (Class Coram 3) and CHC Notes Claims (Class CHC 3) agree and shall be deemed to have authorized the Debtors to transfer and distribute the CHC Unsecured Consideration and/or the CHC Noteholder Consideration, to which the holders of Coram Notes/Preferred Stock Claims would have been legally entitled, to the Unsecured Claims Reserve for the benefit of Class CHC 2.

Class CHC 2 is impaired under the provisions of the Plan.

The Debtors are soliciting acceptances from the holders of Claims in Class CHC 2.

7.4    Treatment of Class CHC 3
       (Allowed CHC Notes Claims)

Each holder of an Allowed CHC Notes Claim, in full satisfaction, payment and discharge of its Allowed CHC Notes Claim, shall receive its Pro Rata share of the CHC Noteholder Consideration; provided, however, that if Class CHC 2 votes to accept the Plan by the majorities required by section 1126(c) of the Bankruptcy Code, then the holders of Allowed CHC Notes Claims shall be deemed to

20

have waived the right to receive the CHC Noteholder Consideration, and shall have authorized the Debtors to transfer and to distribute the CHC Noteholder Consideration to the holders of Class CHC 2 Claims in accordance with section 7.3(c) of the Plan, and the holders of Allowed CHC Notes Claims shall receive no distribution from CHC under the Plan.

Class CHC 3 is impaired under the provisions of the Plan.

The Debtors are soliciting acceptances from the holders of Claims in Class CHC 3.

7.5     Treatment of Class CHC 4
        (Allowed CHC Equity Interests)

(a)     If Class CHC 4 votes to accept the Plan by the majorities required by section 1126(d) of the Bankruptcy Code, each holder of an Allowed CHC Equity Interest, in full and complete satisfaction, redemption, and discharge of its Allowed CHC Equity Interest, which shall be deemed canceled and extinguished, shall receive its Pro Rata Share of the CHC Equity Interest Consideration, provided, however, if the Absolute Priority Litigation is commenced and the Bankruptcy Court rules with respect to the Absolute Priority Litigation that the proposed distribution of the CHC Equity Interest Consideration to Class CHC 4 otherwise would render the Plan unconfirmable, the CHC Equity Interest Consideration (and the CHC General Unsecured Consideration) shall be used to satisfy Allowed CHC General Unsecured Claims in accordance with section 7.3(b) of the Plan, with the balance, if any, used for distribution to the Allowed CHC Equity Interests.

(b)     In order to provide the distribution of the CHC Equity Interest Consideration afforded by subsection (a) above, if it should become applicable, the holders of the Coram Notes/Preferred Stock Claims (Class Coram 3) agree and shall be deemed to have authorized the Debtors to transfer and distribute the CHC Equity Interest Consideration, to which the holders of Coram Notes/Preferred Stock Claims would have been legally entitled to the holders of Allowed CHC Equity Interests, for the benefit of Class CHC 4.

(c)     If Class CHC 4 fails to accept the Plan by the majorities set forth in section 1126(d) of the Bankruptcy Code, holders of Allowed CHC Equity Interests shall receive no distribution nor retain any legal, equitable, or contractual rights in respect of their CHC Equity Interests, which shall be deemed canceled and extinguished.

*Pursuant to the foregoing, holders of Allowed CHC Equity Interests will not receive a distribution in respect of their interests if Class CHC 4 does not vote to accept the Plan.*

Class CHC 4 is impaired under the provisions of the Plan.

The Debtors are soliciting acceptances from the holders of Equity Interests in Class CHC 4.

21

7.6     Treatment of Class Coram P
        (Allowed Coram Priority Non-Tax Claims)

        In full satisfaction, payment and discharge of its Priority Claim, and in accordance with section 1129(a)(9) of the Bankruptcy Code, each holder of an Allowed Coram Priority Non-Tax Claim shall receive payment in full, at the option of the Debtors, (i) in cash on the Effective Date, or (ii) such other treatment as will render such Allowed Coram Priority Non-Tax Claim unimpaired.

        Class Coram P is unimpaired under the provisions of the Plan.

        The Debtors are not soliciting acceptances from the holders of Claims in Class CHC P.

7.7     Treatment of Class Coram 1
        (Allowed Coram Secured Claims)

        In full satisfaction, payment and discharge of its Allowed Coram Secured Claim, each holder of an Allowed Coram Secured Claim, if any, shall receive, at the option of the Debtors, (i) payment in full in Cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim, (ii) Reinstatement, or (iii) such other treatment as will render such Allowed Coram Secured Claim unimpaired.

        Class Coram 1 is unimpaired under the provisions of the Plan.

        The Debtors are not soliciting acceptances from the holders of Claims in Class Coram 1.

7.8     Treatment of Class Coram 2
        (Allowed Coram General Unsecured Claims)

        In full satisfaction, payment and discharge of its Allowed Coram General Unsecured Claim, each holder of an Allowed Coram General Unsecured Claim not otherwise paid prior to the Effective Date shall receive, at the option of Coram or Reorganized Coram, (i) payment in full in Cash on the later of the Effective Date or the date such Claim becomes an Allowed Claim, (ii) Reinstatement, or (iii) such other treatment to render such Allowed Coram General Unsecured Claim unimpaired.

        Class Coram 2 is unimpaired under the provisions of the Plan.

        The Debtors are not soliciting acceptances from the holders of Claims in Class Coram 2.

22

C168

7.9    <u>Treatment of Class Coram 3</u>
       (Allowed Coram Notes/Preferred Stock Claims)

In full satisfaction, payment and discharge of its Allowed Coram Notes/Preferred Stock Claims, each holder of an Allowed Coram Notes/Preferred Stock Claim shall receive its Pro Rata share of the New Coram Stock and/or the New Secured Notes, in accordance with its Sub-Class, as set forth below.

<u>Sub-Class Coram 3A</u>:   In full satisfaction, payment and discharge of its Allowed Coram Notes Claim, each holder of an Allowed Coram Notes Claim shall receive its Pro Rata share of New Secured Notes in an amount equal to the full amount of the Allowed Coram Notes Claim.

<u>Sub-Class Coram 3B</u>:   In full satisfaction, payment and discharge of its Allowed Coram Preferred Stock Interests, each holder of an Allowed Coram Preferred Stock Interest shall receive its Pro Rata share of (i) all New Secured Notes remaining after the distribution to Sub-Class Coram 3A, and (ii) the New Coram Stock.

Class Coram 3 is <u>impaired</u> under the provisions of the Plan

The Debtors are soliciting acceptances from the holders of Allowed Coram Notes/Preferred Stock Claims in Class Coram 3.

Class Coram 3 will be treated as a single Class for voting purposes, and the Debtors reserve the right to reallocate the treatment of the Sub-Classes within Class Coram 3.

7.10    <u>Treatment of Class Coram 4</u>
        (Allowed Coram Equity Interests)

The holder of the Allowed Coram Equity Interests shall receive no distribution nor retain any of its legal, equitable, or contractual rights in respect of its Coram Equity Interests,  which shall be deemed contributed to, and vest in, Reorganized Coram.

Class Coram 4 is <u>impaired</u> under the provisions of the Plan, which Class is deemed to have rejected the Plan.

The Debtors are not soliciting acceptances from the holders of Claims in Class Coram 4.

23

C169

**ARTICLE VIII**
**ACCEPTANCE OR REJECTION OF THE PLAN**

8.1    Voting. Acceptance of the Plan by a Claimant shall be deemed to be a consent to all provisions of the Plan and to the treatment thereunder for such holder and for all other Claimants.

8.2    Classes Entitled to Vote. Only holders of Allowed Claims and Equity Interests as of the Record Date, in impaired Classes receiving distributions under the Plan, are entitled to vote on the Plan. Accordingly, each Claimant holding an Allowed Claim in Classes CHC 2, CHC 3, CHC 4, and Coram 3 and Coram 4 shall be entitled to vote to accept or to reject the Plan. All Claimants entitled to vote to accept or to reject the Plan shall vote by properly executing and timely returning a Ballot, in accordance with the order of the Bankruptcy Court approving the solicitation materials and the balloting procedures approved by the Bankruptcy Court.

8.3    Acceptance by Impaired Classes. Consistent with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, a class of Claims shall have accepted this Plan if this Plan is accepted by at least two-thirds ($2/3$) in dollar amount and more than one-half ($1/2$) in number of holders of the Allowed Claims of such class that have timely and properly voted to accept or to reject this Plan. Consistent with section 1126(d) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, a class of Equity Interests shall have accepted this Plan if this Plan is accepted by at least two-thirds ($2/3$) in amount of the Allowed Equity Interests of such class that have timely and properly voted to accept or to reject this Plan.

8.4    Reservation of Right to Withdraw Plan. The Debtors reserve the right to modify or revoke and withdraw the Plan at any time before the Confirmation Date or, if the Debtors are for any reason unable to consummate the Plan after the Confirmation Date, at any time until the Effective Date. Each of the Debtors reserves the right to proceed to seek confirmation of the Plan with respect to it, notwithstanding that Confirmation is not sought nor granted with respect to the other Debtor.

8.5    Nonconsensual Confirmation. The Debtors request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code, notwithstanding the deemed rejection of the Plan by Class Coram 4. In the event that any other impaired class(es) of Claims or Equity Interests shall fail to accept this Plan in accordance with section 1126(a) of the Bankruptcy Code, the Debtors shall request that the Bankruptcy Court confirm this Plan in accordance with the "cram down" provisions of section 1129(b) of the Bankruptcy Code with respect to such rejecting impaired Class(es).

8.6    Elimination of Classes. Any Class in which there are not any allowed Claims or Claims temporarily Allowed for voting purposes as of the date of the commencement of the Confirmation Hearing shall be deemed deleted from the Plan for purpose of considering the acceptance or rejection of the Plan under section 1129(a)(8) of the Bankruptcy Code.

24

## ARTICLE IX

## DISTRIBUTIONS UNDER THE PLAN

9.1    Distributions.  Except as otherwise provided in the Plan, all Distributions under the Plan shall be made by the Debtors or a Disbursing Agent, if any, to holders of Allowed Claims and Allowed CHC Equity Interests, or their designees, at their Most Recent Addresses.  The Debtors shall make an initial distribution on the Effective Date or as soon thereafter as is reasonably practicable to all holders of Allowed Claims as of the Effective Date.  Thereafter, Distributions on account of Allowed Claims shall be made on the first Subsequent Distribution Date that is at least ten (10) Business Days after a Claim that was not an Allowed Claim becomes an Allowed Claim.

9.2    Disbursing Agent.  Subject to approval by the Bankruptcy Court, an entity, if any, designated by the Debtors 10 days prior to the Confirmation Hearing, shall serve as Disbursing Agent and shall distribute to the holders of Allowed Claims and Allowed CHC Equity Interests property to be distributed under the Plan, in accordance with the provisions of the Plan, applicable Bankruptcy Rules and such other terms mutually agreed to by the Disbursing Agent and Reorganized Coram.

9.3    Distribution of Cash.  Distributions and transfers of Cash called for under this Plan shall be made on the Effective Date, except that with respect to Claims that are Disputed Claims on the Effective Date, distributions shall be made on Subsequent Distribution Dates until there are no longer any Disputed Claims as to which Cash payments are required under the Plan.  All distributions of Cash under the Plan may be made either by check or by wire transfer, at the option of the Debtors, Reorganized Coram, or the Plan Administrator.

9.4    Distributions of New Coram Stock and New Coram Secured Notes.  Distributions and transfers of New Coram Stock and New Coram Secured Notes under this Plan shall be made on the Effective Date.  Coram and Reorganized Coram reserve the right to delay any distribution of New Coram Stock or New Secured Notes to any holder of Allowed Coram Notes/Preferred Stock Claims until it is reasonably satisfied that such distribution will not result in a violation of any statute or regulation applicable to Reorganized Coram's business.

9.5    Setoffs.  The Debtors and Reorganized Coram may, but shall not be required to, set off against any Claim or Equity Interest and the payments or distributions to be made pursuant to the Plan in respect of such Claim or Equity Interest, any claims of any nature whatsoever the Debtors or the Reorganized Coram may have against the holder thereof, but neither the failure to do so nor the allowance of any Claim hereunder, for voting purposes or otherwise, shall constitute a waiver or release by the Debtors or the Reorganized Coram of any such claim.

9.6    Distribution of Unclaimed Property.  Any distribution of property (cash or otherwise) under the Plan which is unclaimed after two (2) years following the Effective Date shall be forfeited to,

25

and vest in Reorganized Coram. Any holder of an Allowed Claim and Allowed Equity Interest that does not assert a claim pursuant to the Plan for an undelivered or undeliverable distribution to be made by a Disbursing Agent with this two (2) year period will be forever barred from asserting any such claim against the Debtors, Reorganized Coram or their respective property.

      9.7    <u>Compliance With Tax Requirements</u>.

      9.7.1 In connection with the Plan, to the extent applicable, each Disbursing Agent will comply with all Tax Code reporting requirements imposed upon it by any governmental unit with respect to any and all distributions pursuant the Plan, and will be authorized to take any actions that may be necessary or appropriate to comply with such reporting requirements.

      9.7.2 Notwithstanding any other provision of the Plan, each entity receiving a distribution of cash pursuant to the Plan will have sole and exclusive responsibility for the satisfaction and payment of any Tax Code obligations imposed upon it by any governmental unit on account of such distribution.

      9.7.3 To the extent (and only to the extent) required by applicable law, any applicable federal, state or local withholding taxes may be deducted by the Debtors, Reorganized Coram, or the Plan Administrator from any payments or other Distributions made in respect of Allowed Claims.

      9.8    <u>De Minimis Distributions</u>. No cash payment of less than $10.00 shall be made to any holder of an Allowed Claim or Allowed Equity Interest unless such holder so requests in writing to the Debtors. Absent a request, such funds shall be distributed as if they are Distributions of unclaimed property in accordance with the provisions of section 9.6 of the Plan.

      9.9    <u>Fractional Interests</u>. Fractional interests in New Coram Stock shall not be distributed. Notwithstanding any other provision in the Plan, only whole numbers of shares of New Coram Stock shall be issued to holders of Allowed Claims (who are otherwise entitled to receive New Coram Stock). When any distribution on account of an Allowed Claim would result in the issuance of a number of shares of New Coram Stock that is not a whole number, the actual distribution of such New Coram Stock shall be rounded to the next lower whole number. Any fractional interests in New Coram Stock that are allocated for distribution to holders of Allowed Claims shall be deemed contributed to the Reorganized Debtors.

      9.10    <u>Objections to and Estimation of Claims; Prosecution of Disputed Claims</u>. The Debtors, Reorganized Coram and the Plan Administrator reserve the right to object to the allowance of all Claims and Equity Interests, including any Claims listed in the Schedules or filed with the Bankruptcy Court with respect to which they dispute liability in whole or in part and the characterization of a Claim as secured or unsecured; subject to further extension by the Bankruptcy Court with or without notice, all objections to the allowance of Claims shall be filed with the Bankruptcy Court on or before the date

that is sixty (60) days after the Effective Date. All objections shall be litigated to Final Order; provided however, that the Debtors and Reorganized Coram and the Plan Administrator may compromise, settle, withdraw or resolve by other method approved by the Bankruptcy Court, any such objections to Claims provided, however, that only the Debtors and Reorganized Coram shall have the right to compromise, settle, withdraw or resolve objections to Administrative Claims, Priority Non-Tax Claims, Priority Tax Claims and Secured Claims. The Debtors, Reorganized Coram and the Plan Administrator may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code, regardless of whether the Debtors previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any such contingent or unliquidated Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the amount of such Claim or a maximum limitation on the amount of such Claim, as determined by the Bankruptcy Court, to the extent permissible under the Bankruptcy Code. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors, Reorganized Coram or the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate payment or distribution on such Claim.

     9.11   Payments and Distribution on Disputed Claims. Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial distributions shall be made with respect to a Disputed Claim until such Claim becomes an Allowed Claim, in whole or in part. On the first Subsequent Distribution Date that is at least ten (10) Business Days after a Disputed Claim (or portion thereof) becomes an Allowed Claim, the holder of such Allowed Claim shall receive all payments and/or distributions to which such holder is then entitled under the Plan.

     9.11.1  If Disputed Claims exist in Class CHC 2, the Disbursing Agent or the Plan Administrator shall hold in reserve, for the benefit of each such holder of a Disputed Claim, Cash in an amount equal to the distributions which would have been made to the holder of such Disputed Claim, if it were an Allowed Claim on the Effective Date, in an amount equal to the lesser of (i) the amount of the Claim filed with the Bankruptcy Court or, if no Claim was filed, the amount listed by the Debtors in the Schedules as not disputed, contingent or unliquidated, or (ii) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, provided that in connection with such estimation, the Bankruptcy Court enters a final order setting such estimate as the maximum amount of such Claim for purposes of this Plan. If a Disputed Claim in such a Class becomes an Allowed Claim, on the first Subsequent Distribution Date that is at least ten (10) Business Days after such allowance, the Disbursing Agent shall issue to the holder thereof the amount of Cash to which such holder is entitled under the provisions of this Plan had such Claim been an Allowed Claim as of the Effective Date. If a Disputed Claim in any such Class is disallowed, in whole or in part, pursuant to a final order, on the first Subsequent Distribution Date that is at least ten (10) Business Days after such disallowance, Reorganized Coram shall (a) first, reallocate Cash that had been reserved on account of

27

such disallowed Disputed Claim to the holders of then Allowed and Disputed Claims in such Class, and (b) second, distribute to each holder of an Allowed Claim in each such Class and allocate to the reserves established for remaining Disputed Claims in such Class, Pro Rata, the Cash that has been so reallocated to such Class in accordance with clause (a) of this section.

       9.11.2  In the event that a CHC Equity Reserve is created pursuant to the Plan, and subject to the determination of the Absolute Priority Litigation, if disputed Equity Interests exist in Class CHC 4, the Disbursing Agent or the Plan Administrator shall hold in reserve, for the benefit of each such holder of such disputed Equity Interests, Cash in an amount equal to the distributions which would have been made to the holder of such disputed Equity Interests, if it were an Allowed CHC Equity Interest on the Effective Date, in an amount equal to the amount of the CHC Equity Interest on the Record Date. If a disputed Equity Interest in Class CHC 4 becomes an Allowed CHC Equity Interest, on the first Subsequent Distribution Date that is at least ten (10) Business Days after such allowance, the Disbursing Agent shall issue to the holder thereof the amount of Cash to which such holder is entitled under the provisions of this Plan had such Equity Interest been an Allowed CHC Equity Interest as of the Effective Date. If a disputed Equity Interest in Class CHC 4 is disallowed, in whole or in part, pursuant to a final order, on the first Subsequent Distribution Date that is at least ten (10) Business Days after such disallowance, Reorganized Coram shall (a) first, reallocate Cash that had been reserved on account of such disallowed disputed Equity Interest to the holders of then Allowed and disputed CHC Equity Interests, and (b) second, distribute to each holder of an Allowed CHC Equity Interest and allocate to the reserves established for remaining disputed Equity Interests in Class CHC 4, Pro Rata, the Cash that has been so reallocated to Class CHC 4 in accordance with clause (a) of this section.

      9.12    Disallowance of Reimbursement or Contribution Claims.  Except for Claims of the type described in Section 10.4 hereof, effective as of the Effective Date, in accordance with section 502(e)(1) of the Bankruptcy Code, all Claims or Administrative Claims for reimbursement or contribution of an entity that is liable with a Debtor shall be disallowed against that Debtor to the extent such Claim or Administrative Claim, as the case may be, is contingent as of the Effective Date.

      9.13    Allocations of Distributions to Allowed Claims.  Any distributions received by a holder of an Allowed Claim shall be allocated first to the principal portion of such Claim (as determined for federal income tax purposes) to the extent thereof, and thereafter to the remaining portion of such Claim, if any.

C174

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1    <u>Assumption and Assignment of Executory Contracts and Unexpired Leases</u>. Except as otherwise provided in the Plan, on the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code, any executory contracts or unexpired leases (including the Executive Employment Agreement, which on the Effective Date shall be assumed by Reorganized Coram in its totality subject to the Executive Compensation Waiver) that have not expired by their own terms on or prior to the Effective Date, that have not been assumed, assumed and assigned or rejected with the approval of the Bankruptcy Court, or that are not the subject of a motion to reject the same pending as of the Effective Date or set forth on the Rejection List shall be deemed assumed by the Debtors on the Effective Date and in the case of CHC, assigned to Reorganized Coram, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions and/or assignments pursuant to sections 365(a) and 1123 of the Bankruptcy Code. An order of the Bankruptcy Court entered on or prior to the Confirmation Date will specify the procedures for providing notice to each party whose executory contract or lease is being assumed or assumed and assigned pursuant to the Plan of: (a) the contract or lease being assumed or assumed and assigned; (b) the Cure Claim, if any, that the Debtors believe it would be obligated to pay in connection with such assumption; and (c) the procedures for such party to object to the assumption or the assumption and assignment of the applicable contract or lease and the amount of the proposed Cure Claim.

10.2    <u>Cure of Defaults for Assumed Executory Contracts and Unexpired Leases</u>. Any monetary amounts required as cure payments on each executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by Reorganized Coram's payment of the cure amount in Cash on the Effective Date or upon such other terms and on such dates as the parties to such executory contracts or unexpired leases otherwise may agree. In the event of a dispute regarding (a) the amount of any cure payment, or (b) the ability of Reorganized Coram to provide "adequate assurance of future performance" (within the meaning of section 365(b)(1) of the Bankruptcy Code), to the extent necessary, shall be made following the entry of a Final Order resolving such dispute.

10.3    <u>Rejection of Executory Contracts or Unexpired Leases</u>. No later than ten (10) days prior to the Confirmation Date, the Debtors shall file with the Bankruptcy Court the Rejection List, and the executory contracts and unexpired leases listed thereon shall be deemed rejected as of the Effective Date. If the rejection of an executory contract or unexpired lease by the Debtors results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their properties or agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date that is thirty (30) days after the later of (a) the Confirmation Date and (b) the date of entry of an order by the Bankruptcy Court authorizing rejection of a particular executory contract or lease. Unless otherwise ordered by

Bankruptcy Court or provided in the Plan, all such Claims for which proofs of claim are timely filed will be treated as General Unsecured Claims subject to the provisions of the Plan. Nothing herein shall obligate any of the Debtors to file any list of assumed or rejected executory contracts or unexpired leases.

10.4    <u>Indemnification Obligations</u>. Notwithstanding section 9.12 hereof, for purposes of the Plan, the obligations of the Debtors to indemnify their respective present and former directors or officers, and employees in such capacity or as plan administrators or trustees to any employee benefit plan, or any person serving at the request of any of the Debtors as a director, officer of any other entity pursuant to the Debtors' certificates of incorporation or by-laws or pursuant to applicable state law or specific agreement, or any combination of the foregoing, shall be deemed to be executory contracts, shall be assumed by the Debtors or Reorganized Coram, effective as of the Effective Date, in accordance with the provisions of sections 365 and 1123 of the Bankruptcy Code and shall survive confirmation of the Plan, remain unaffected thereby, shall not be discharged, and shall pass unaltered to Reorganized Coram irrespective of whether such indemnification is owed in connection with an event occurring before, on, or after the Petition Date.

10.5    <u>Compensation and Benefit Programs</u>. All employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors, in effect as of the Confirmation Date and applicable generally to the respective active officers and/or employees of the Debtors, including, without limitation, all then-effective retirement plans, health care plans, disability plans, severance benefit plans, incentive plans, compensative plans, employment contracts and life, accidental death, and dismemberment insurance plans are deemed to be executory contracts under the Plan and, as of and on the Effective Date, shall be assumed pursuant to the provisions of sections 365 and 1123 of the Bankruptcy Code, unless previously (i) terminated, modified or rejected in accordance with the Bankruptcy Code (and, in the case of CHC, assumed and assigned to Reorganized Coram), (ii) subject to a pending motion or application before the Bankruptcy Court to terminate, modify or reject, (iii) identified to be rejected on the Rejection List, or (iv) assumed and subject to the Executive Compensation Waiver.

10.5.1  Certain Key Employee Retention Program Payments

Upon entry of the Confirmation Order, the Debtors shall be authorized to pay all outstanding obligations incurred pursuant to those certain key employee retention agreements previously authorized and approved by the KERP Order (i) in accordance with the terms of the KERP Order and (ii) so long as such key employee retention agreements have not expired under their own terms or by order of the Court.

C176

**ARTICLE XI**
**IMPLEMENTATION AND MEANS OF CONSUMMATING THE PLAN**

11.1    Cancellation of Existing Securities and Agreements. On the Effective Date, except as otherwise provided in the Plan, all securities, instruments, instruments of indebtedness, guarantees and agreements governing any claims and interests impaired hereby, including the Notes, the Preferred Stock, and CHC Equity Interests, shall be deemed canceled and terminated and the obligations of the Debtors and each of their subsidiaries, affiliates, and agents relating to, arising under, in respect of, or in connection with such securities, instruments or agreements shall be discharged. The holder of any such documents canceled pursuant to this provision shall have no rights against the Debtors or Reorganized Coram arising from or relating to such documents, except the right to receive distributions, if any, provided for in the Plan.

11.2    Surrender of Instruments. Each holder of an instrument evidencing a Claim or Equity Interest shall surrender such instrument to the Debtors as a condition to the receipt of any distribution under the Plan to such holder on account thereof. Unless otherwise agreed by the Debtors, no distribution under the Plan shall be made to or on behalf of any holder of such Claim or Equity Interest unless and until such instrument is received or the unavailability of such instrument is reasonably established to the satisfaction of the Debtors. In accordance with section 1143 of the Bankruptcy Code, any holder of a Claim or Equity Interest that (i) fails to surrender or cause to be surrendered such instrument or (ii) fails to execute and to deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Debtors and furnish a bond in form, substance and amount reasonably satisfactory to the Debtors, in each case within two (2) years after the Effective Date, shall be deemed to have forfeited forever all rights, claims, and interests in respect of said distribution and shall not thereafter have any right to participate in any distribution under the Plan.

11.3    Dissolution. On the Effective Date or as soon thereafter as is practicable, CHC shall dissolve as a corporation, pursuant to the laws of the State of Delaware.

11.4    Cancellation of Capital Stock and Equity Interests. As of the Effective Date, by virtue of the Plan and in all events without any action on the part of the holders thereof, all CHC Equity Interests, whether issued and outstanding or held in treasury, shall be deemed canceled and extinguished.

11.5    Charter. On the Effective Date, the certificate of incorporation and the by-laws of Reorganized Coram will be substantially in the form of the Amended and Restated Certificate of Incorporation of Reorganized Coram and Amended By-laws of Reorganized Coram included in the Plan Supplement. On the Effective Date, or as soon thereafter as practicable, Reorganized Coram shall file its Amended and Restated Certificate of Incorporation of Reorganized Coram. Among other things, the Amended and Restated Certificate of Incorporation of Reorganized Coram shall: (a) prohibit the issuance of non-voting equity securities to the extent required by section 1123(a) of the Bankruptcy

31

Code; (b) provide for the authorization of the New Coram Stock in amounts not less that the amounts necessary to permit distributions thereof required or contemplated by the Plan; and (c) shall comply with section 1123(a)(6) of the Bankruptcy Code. After the Effective Date, Reorganized Coram may amend and restate its certificates of incorporation or by-laws as permitted by the Delaware General Corporation Law, subject to the terms and conditions of such documents.

11.6     Management of Reorganized Coram. On the Effective Date, the operation of Reorganized Coram shall become the general responsibility of the Reorganized Coram Board of Directors, which shall, thereafter, continue to have the responsibility for the management, control, and operation of Reorganized Coram. The Reorganized Coram Board of Directors shall be comprised of the persons identified in the Plan Supplement. The officers of Reorganized Coram shall consist of those individuals set forth in the Disclosure Statement and in the Plan Supplement. All existing directors and officers who become officers or directors of Reorganized Coram shall be deemed re-elected, and all other directors and officers shall be deemed newly elected pursuant to the Confirmation Order. Those officers and directors not continuing in office, if any, shall be deemed removed therefrom (without cause) pursuant to the Confirmation Order.

11.7     Issuance of New Coram Stock. On the Effective Date, in accordance with the Plan, the Amended and Restated Certificate of Incorporation of Reorganized Coram, and the Amended By-laws of Reorganized Coram, Reorganized Coram shall issue the New Coram Stock in amounts necessary to permit distributions thereof required or contemplated by the Plan.

11.8     Issuance of New Secured Notes. On the Effective Date, in accordance with the Plan, Reorganized Coram shall issue the New Secured Notes and cause the distribution thereof required by the Plan, subject to the provisions of section 9.4 of the Plan.

11.9     Corporate Action. On the Effective Date, authorization of the New Coram Stock, the election of directors and officers, the adoption of the Amended and Restated Certificate of Incorporation of Reorganized Coram, the Amended By-laws of Reorganized Coram, and any and all other matters provided for under the Plan involving the corporate structure of Reorganized Coram, or involving corporate action by the directors and/or stockholders of Reorganized Coram, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to section 303 of the Delaware General Corporation Law, section 422A of the Tax Code, the rules and regulations issued thereunder, section 16 of the 34 Act, the rules and regulations issued thereunder and any other applicable law, without any requirement of further action by the stockholders and/or directors of the Debtors or Reorganized Coram. On the Effective Date, all agreements entered into pursuant to the Plan shall be valid, binding and in full force and effect.

11.10     Exit Financing Facility. On the Effective Date, Reorganized Coram is authorized to execute and deliver those documents necessary or appropriate to obtain the Exit Financing Facility. All

32

Cash necessary for Reorganized Coram to make payments under the Plan will be obtained from Reorganized Coram's cash balances and operations and/or the Exit Financing Facility.

11.11    Funding of the Unsecured Claims Reserve and the CHC Equity Reserve.  On or before the Effective Date, Coram shall transfer the CHC Noteholder Consideration and the CHC Equity Interest Consideration to the Plan Administrator to fund the Unsecured Claims Reserve and/or the CHC Equity Interest Reserve as set forth in, and required by, Article IV of the Plan.

11.12    The Plan Administrator.  On the Effective Date, the officers and board of directors of CHC shall be deemed removed from office pursuant to the Confirmation Order, CHC shall be dissolved in accordance with section 11.3 of the Plan and the operation of the Unsecured Claims Reserve and the CHC Equity Interest Reserve and liquidation of CHC shall become the general responsibility of the Plan Administrator pursuant to and in accordance with the provision of the Plan and the Plan Administration Agreement.

1. *Responsibilities.*  The responsibilities of the Plan Administrator shall include maintaining the Unsecured Claims Reserve and the CHC Equity Interest Reserve; liquidating remaining assets; prosecuting objections to and estimations of Claims against CHC; calculating and implementing all distributions from the Unsecured Claims Reserve and the CHC Equity Interest Reserve in accordance with the Plan; filing all required tax returns and paying taxes and all other obligations on behalf of the Unsecured Claims Reserve and the CHC Equity Interest Reserve from funds therein; and such other responsibilities as may be vested in the Plan Administrator pursuant to the Plan, the Plan Administration Agreement or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

2. *Powers.*  The Powers of the Plan Administrator shall include, without Bankruptcy Court approval in each of the following cases, the power to invest funds in, and withdraw, make distributions and pay taxes and other obligation owed by the Unsecured Claims Reserve and the Equity Interest Reserve, from funds therein in accordance with the Plan; the powers to engage employees and professional persons to assist the Plan Administrator with respect to its responsibilities; the power to dispose of, and deliver title to others of, remaining assets on behalf of or against CHC; and such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or the Plan Administration Agreement.

3. *Certain Tax Obligations relating to the Unsecured Claim Reserve.*  Absent definitive guidance from the Service or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Plan Administrator of a private letter ruling if the Plan Administrator requests one, or the receipt of an adverse determination by the Service upon audit if not contested by the Plan Administrator), and except as otherwise provided in the Plan, the Plan Administrator shall, as to amounts retained in the Unsecured Claims Reserve in respect of Disputed Claims.:

33

(i)    treat the escrowed funds as a discreet trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim, in accordance with the trust provisions of the Tax Code (sections 641 *et seq.*), and

(ii)    to the extent permitted by applicable law, report consistently for state and local income tax purposes.

All parties (including holders of Allowed CHC General Unsecured Claims and holders of CHC General Unsecured Claims which are Disputed Claims) are required to report consistent with such treatment.

4. *Certain Tax Obligations relating to the CHC Equity Reserve.*  Absent definitive guidance from the Service or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt by the Plan Administrator of a private letter ruling if the Plan Administrator requests one, or the receipt of an adverse determination by the Service upon audit if not contested by the Plan Administrator), and except as otherwise provided in the Plan, the Plan Administrator shall, as to amounts retained in the CHC Equity Reserve:

(i)    treat the escrowed funds as a discreet trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each CHC Equity Interest, in accordance with the trust provisions of the Tax Code (sections 641 *et seq.*), and

(ii)    to the extent permitted by applicable law, report consistently for state and local income tax purposes.

All parties (including holders of Allowed CHC General Unsecured Claims, holders of CHC General Unsecured Claims which are Disputed Claims, and holders of Equity Interests) are required to report consistent with such treatment.

5. *Compensation.*  In addition to reimbursement for the actual out-of-pocket expenses incurred, the Plan Administrator shall be entitled to reasonable compensation for services rendered on behalf of the Unsecured Claims Reserve and the CHC Equity Interest Reserve in an amount and on such terms as may be agreed to by the Debtors and as reflected in the Plan Administration Agreement. Any dispute with respect to such compensation shall be resolved by agreement among the parties or, if the parties are unable to agree, determined by the Bankruptcy Court.

34

# ARTICLE XII
## EFFECTIVENESS OF THE PLAN

12.1    <u>Conditions Precedent to Confirmation</u>. The Plan shall not be confirmed unless and until the following conditions shall have been satisfied or waived by the Debtors and the Noteholder Group:

      (1)    The Confirmation Order will be reasonably acceptable in form and substance to the Debtors and the Noteholder Group.

      (2)    Coram shall have received a binding commitment for the Exit Financing Facility.

      (3)    All exhibits to the Plan are in form and substance reasonably satisfactory to the Debtors and the Noteholder Group.

12.2    <u>Conditions Precedent to Effectiveness</u>. The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived in writing by the Debtors and the Noteholder Group:

      (1)    The Bankruptcy Court shall have entered the Confirmation Order and no stay or injunctions against the consummation of the Plan shall have been issued by a court of competent jurisdiction.

      (2)    Reorganized Coram shall have, or immediately upon the effectiveness of the Plan shall have, sufficient Cash to make all Cash payments required to be made on the Effective Date pursuant to the terms of the Plan;

      (3)    All conditions necessary to effectuate Reorganized Coram's Exit Financing Facility shall have been satisfied or waived.

      (4)    Any statutory fees owing the U.S. Trustee shall have been provided for or paid in full.

      (5)    All other actions and documents necessary to implement the provisions of the Plan shall have been effected or executed or, if waivable, waived by the Person or Persons entitled to the benefit thereof.

      (6)    The Plan Administrator shall have executed the Plan Administration Agreement evidencing the Plan Administrator's agreement to serve in that capacity.

35

(7)    The Unsecured Claims Reserve and the CHC Equity Interest Reserve shall have been fully funded in accordance with the Plan and any applicable orders of the Bankruptcy Court with respect thereto.

(8)    Any Person who is to receive a distribution of New Coram Stock pursuant to the Plan shall have executed the Shareholder Agreement contained in the Plan Supplement.

(9)    The Effective Date shall have occurred on or before November 30, 2001.

## ARTICLE XII
## EFFECTS OF CONFIRMATION OF THE PLAN

13.1    <u>Vesting of Assets</u>.  Consistent with sections 1123(a)(5)(A) and 1141 of the Bankruptcy Code, on the Effective Date, except as otherwise provided in the Plan, title to all assets and property of the Estates, including without limitation all shares of and equity interests in Coram and Coram International Holdings Ltd. that are property of the Estate of CHC, shall pass to and vest in Reorganized Coram, free and clear of all Claims, Equity Interests, liens, charges and other rights of creditors or equity holders arising prior to the Effective Date.  On and after the Effective Date, Reorganized Coram may operate its business, and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court, except as otherwise provided in the Plan or in the Confirmation Order.  Without limiting the foregoing, Reorganized Coram may pay the charges that it incurs on or after the Effective Date for professionals' fees, disbursements, and expenses without application to the Bankruptcy Court.

13.2    <u>Discharge</u>.  Except as provided in the Plan or in the Confirmation Order, the rights afforded under the Plan and treatment of Claims and Equity Interests under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims and termination of all Equity Interests arising on or before the Effective Date, including any interest accrued thereon from the Petition Date.  Except as provided in the Plan or in the Confirmation Order, Confirmation will, as of the Effective Date and immediately after cancellation of the Equity Interests:  (a) discharge the Debtors from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in section 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (i) a proof of Claim based on such debt is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (ii) a Claim based on such debt is allowed pursuant to section 502 of the Bankruptcy Code, or (iii) the holder of a Claim based on such debt has accepted the Plan; and (b) terminate all Equity Interests and other rights of equity security holders in the Debtors.  In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date and immediately after the cancellation of the Equity Interests and the issuance of the New Coram Stock, of a discharge of all Claims and other debts and liabilities against the Debtors

36

and a termination of all Equity Interests and other rights of equity security holders in the Debtors, pursuant to sections 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against a Debtor at any time, to the extent that such judgment relates to a discharge of the Claim or terminated Equity Interest.

13.3    Injunctions.

13.3.1 Except as otherwise provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a Claim or other debt or liability that is discharged or an Equity Interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan will be permanently enjoined from taking any of the following actions on account of any such discharged claims, debts or liabilities or terminated Equity Interests or rights: (a) commencing or continuing in any manner any action or other proceeding against the Debtors, Reorganized Coram, or their respective property other than to enforce any right to a distribution pursuant to the Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtors, Reorganized Coram, or their respective property, other than as permitted as pursuant to (a) above; (c) creating, perfecting, or enforcing any lien or encumbrance against the Debtors,  Reorganized Coram or their respective property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors or Reorganized Coram; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan.

13.3.2 As of the Effective Date, all entities that have held, currently hold or may hold any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that are released pursuant to the Plan will be permanently enjoined from taking any of the following actions against any released entity or its property on account of such release claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities: (a) commencing or continuing in any manner or other proceedings; (b) enforcing, attaching, collecting or recovering in any manner, any judgment, award, decree or order; (c) creating, perfecting or enforcing any lien or encumbrance; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any released entity; and (e) commencing or continuing any action, in any manner, in any place that does not comply with this section 13.3 or is inconsistent with the provisions of the Plan.

13.3.3 By accepting distributions pursuant to the Plan, each holder of an Allowed Claim or Equity Interest receiving distributions pursuant to the Plan will be deemed to have specifically consented to the injunctions set forth in this section 13.3.

13.4    Releases by the Estate and its Representatives.  In consideration of the promises and obligations of the Debtors, Reorganized Coram hereunder, and Mr. Crowley as embodied in the Executive Compensation Waiver, as of and on the Effective Date, the Debtors, the Estates, the Creditors' Committee, the Equity Committee, the Noteholder Group, and any and all Persons claiming

37

through any of the foregoing entities whether directly or indirectly, and any of their successors, assigns or representatives whether directly or indirectly, to the fullest and broadest extent permitted by law, be deemed to have waived, released and discharged all rights or claims, whether based upon tort, fraud, contract or otherwise, whether known or unknown, which they possessed or may possess prior to the Effective Date against the Debtors, their present and former directors, officers, employees, agents, representatives and attorneys and any successors or assigns of the foregoing, whether directly or indirectly, except as otherwise provided in the Plan, the Bankruptcy Code, or the Confirmation Order.

13.5    Exculpation.  The Debtors, their Estates, Reorganized Coram, the Creditors' Committee, the Noteholder Group, and their respective members, officers, directors, employees, representatives, attorneys and agents, shall, to the fullest and broadest extent permitted by law, be deemed released by each of them against the other and by the holders of Claims or Interests and all persons claiming through any of the foregoing entities, directly or indirectly or derivatively, of or from any and all claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of, the Debtors' chapter 11 Cases, including without limiting the generality of the foregoing, the commencement of the Cases, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the DIP Facility, the Exit Financing Facility, the pursuit of Confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan, or otherwise in connection with the Cases, and all such persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and under the Bankruptcy Code.

13.6    Third-Party Releases.  In consideration of the promises, obligations, and waivers of rights to receive funds by Mr. Crowley and the members of the Noteholder Group, as embodied in the Plan and the Executive Compensation Waiver, as of and on the Effective Date, any party that votes in favor of the Plan and any and all Persons claiming through any such party, whether directly or indirectly, and any such party's successors, assigns or representatives (collectively, "Releasors") shall, to the fullest and broadest extent permitted by law, be deemed to have waived, released and discharged all rights or claims, whether based upon tort, fraud, contract or otherwise, whether known or unknown, which they possessed or may possess prior to the Effective Date against the Debtors and all of their present and former directors, officers, employees, agents, representatives and attorneys and any successors or assigns, and against the members of the Noteholder Group and all of their present and former directors, officers, employees, agents, representatives and attorneys and any successors or assigns, whether directly or indirectly, except as otherwise explicitly provided in the Plan, the Bankruptcy Code, or the Confirmation Order.  The release described in the preceding sentence shall be enforceable as a matter of contract against any Releasor pursuant to the Plan and/or the Confirmation Order.

13.7    Rights of Action.  Any rights or causes of action accruing to the Debtors or Reorganized Coram, including without limitation those arising under or pursuant to the Bankruptcy Code, shall remain assets of, or vest in, Reorganized Coram.  Reorganized Coram may pursue, abandon, settle or release all reserved rights of action, as appropriate, in accordance with what is in the

38

best interests, and for the benefit of, Reorganized Coram. Any distributions provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan is and shall be without prejudice to the rights of Reorganized Coram to pursue and prosecute any reserved rights of action including, without limitation, those arising under or pursuant to the Bankruptcy Code.

## ARTICLE XIV
## RETENTION OF JURISDICTION

The Bankruptcy Court shall retain and shall have exclusive jurisdiction over the Case and any and all proceedings therein including, without limitation, in respect of the following:

14.1    Claims. To determine any and all objections to the allowance of Claims.

14.2    Estimation. To determine any and all motions to estimate Claims and to estimate such Claims.

14.3    Assumption/Rejection. To determine any and all pending applications for the rejection or assumption and/or assignment of executory contracts or unexpired leases to which a Debtor or Reorganized Coram is a party or with respect to which a Debtor or Reorganized Coram may be liable, and to hear and determine, and if need be to liquidate, any and all Claims arising therefrom.

14.4    Adversary Proceedings and Contested Matters. To determine any and all applications, adversary proceedings and contested or litigated matters that may be pending on or commenced after the Effective Date.

14.5    Modifications. To consider and approve any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in, or to clarify the Plan or any order of the Bankruptcy Court.

14.6    Dispute Resolution. To determine all controversies, suits and disputes that may arise in connection with the interpretation or consummation of the Plan or the obligations under the Plan or the Plan Administration Agreement of the Debtors, the Plan Administrator or Reorganized Coram.

14.7    Plan. To hear and determine other issues presented or arising under the Plan, to issue any appropriate injunctions and orders and take all other actions in aid of execution, implementation or enforcement of the Plan and to enforce the Confirmation Order and/or the discharge, or the effect of such discharge.

14.8    Compensation. To determine any and all applications for allowance of compensation and reimbursement of expenses and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan.

C185

14.9    Distributions. To ensure that distributions to holders of Allowed Claims and Allowed Equity Interests are accomplished as provided herein.

14.10    Assets. To recover assets of the Debtors and property of their Estates, wherever located.

14.11    Taxes. To hear and to determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

14.12    Final Decree. To enter final decrees closing the Cases.

## ARTICLE XV
## MISCELLANEOUS PROVISIONS

15.1    Payment of Statutory Fees. All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid in cash on or before the Effective Date.

15.2    Plan Binding on All Persons. Upon Confirmation, and subject to the occurrence of the Effective Date, where applicable, the Plan shall be binding upon and inure to the benefit of the Debtors and their successors and assigns, and the holders of Claims and Equity Interests and their respective successors and assigns whether or not such holders voted to accept the Plan. The rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction of all Claims and Equity Interests of any nature whatsoever as provided in this Plan.

15.3    Fees and Expenses. The reasonable and necessary operating expenses and professional fees and expenses incurred by the Debtors from and after the Effective Date in connection with the consummation and implementation of the Plan shall be paid by Reorganized Coram in the ordinary course of business without further order of the Bankruptcy Court; provided however, that any unresolved dispute as to the payment of such fees and expenses shall be submitted to (and resolved by) the Bankruptcy Court.

15.4    Authorization of Action. The entry of the Confirmation Order shall constitute direction to the Debtors to take or cause to be taken any action necessary or appropriate to consummate the provisions of this Plan prior to and through the Effective Date and all such actions taken or caused to be taken shall be deemed to be authorized and approved by the Bankruptcy Court.

15.5    Exemption from Registration. Pursuant to section 1145(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, shall be exempt from registration under the Securities Act of 1933, as amended, and under State securities laws.

40

15.6    Severability. Should any provision in the Plan be determined to be unenforceable following the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

15.7    Modification or Amendment. This Plan may be altered, amended or modified by the Debtors before or after the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

15.8    Revocation or Withdrawal of the Plan. The Debtors reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors.

15.9    Notices. Any notice required or permitted to be provided under the Plan to any Person shall be in writing and served by either (a) certified mail, return receipt requested, postage pre-paid, (b) hand delivery, or (c) reputable overnight delivery service, freight prepaid, and except as otherwise provided in the Plan to be addressed to such Person at the address most recently given by such Person to the Debtor or recorded by the Debtor on its Schedules or if to the Debtors at:

> Coram, Inc.
> 1125 Seventeenth Street, Suite 2100
> Denver, Colorado 80202
> Attn: Allen J. Marabito

with a copy to:

> Kasowitz, Benson, Torres & Friedman LLP
> 1633 Broadway
> New York, New York 10019
> Attn: David M. Friedman, Esq.

15.10    Governing Law. Unless a rule of law or procedure is supplied or specified by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or a specific agreement, document or instrument, the laws of the State of Delaware shall govern the construction and implementation of the Plan and, unless otherwise stated therein, any agreements, documents, and instruments executed in connection with the Plan.

C187

15.11    Saturday, Sunday, or Legal Holiday.  If any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment, distribution or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

15.12    Filing of Additional Documents.  On or before consummation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

15.13    Plan Controls.  To the extent the Plan is inconsistent with the Disclosure Statement or any other document, agreement, pleading or understanding, the provisions of the Plan shall be controlling.

15.14    Section 1146 Exemption.  Pursuant to section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by the Plan, or the re-vesting, transfer or sale of any real property of the Debtors pursuant to, in implementation of or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

C188

Dated:  July 31, 2001

                       CORAM HEALTHCARE CORP.

By: *Allen Marabito*

Name:  Allen J. Marabito
Its:   Executive Vice President

                       CORAM, INC

By: *Allen Marabito*

Name:  Allen J. Marabito
Its:   President

Counsel:

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP
David M. Friedman
Adam L. Shiff
Robert M. Novick
1633 Broadway
New York, New York 10019
(212) 506-1700

     – and –

PACHULSKI, STANG, ZIEHL,
YOUNG & JONES, P.C.
Laura Davis Jones
Rachel Lowy
919 North Market Street
Wilmington, Delaware 19899-8705
(302) 652-4100



**TABLE OF CONTENTS**

i

<u>CERTIFICATE OF SERVICE</u>

I, Rachel Lowy, hereby certify that a copy of the foregoing documents was served upon the persons on the attached service list in the manner indicated on this 31st day of July, 2001:

**DEBTORS SECOND JOINT PLAN PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUTPCY CODE**

_____

Rachel S. Lowy (DE Bar No. 3753)
PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel:   (302) 652-4100
Fax:   (302) 652-4400

<u>CERTIFICATE OF SERVICE</u>

I, Rachel Lowy, hereby certify that a copy of the foregoing documents was served upon the persons on the attached service list in the manner indicated on this 31st day of July, 2001:

**DEBTORS SECOND JOINT PLAN PURSUANT TO CHAPTER 11 OF THE UNITED STATES BANKRUTPCY CODE**

---

Rachel S. Lowy (DE Bar No. 3753)
PACHULSKI, STANG, ZIEHL, YOUNG & JONES P.C.
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Tel:    (302) 652-4100
Fax:    (302) 652-4400

Coram Healthcare Corp. 2002 Service List
Case No. 00-3299
July 31, 2001
Doc. # 8018
**10 - *Hand Delivery***
**03 - *Federal Express***
**60 - *First Class Mail***

***Hand Delivery***
**(Counsel to the Debtors)**
Pachulski Stang Ziehl Young & Jones
Laura Davis Jones, Esquire
Rachel S. Lowy, Esquire
Christopher J. Lhulier, Esquire
919 North Market Street, 16th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

***Hand Delivery***
**(Copy Service)**
Parcels, Inc.
Vito I. DiMaio
10th & King Streets
Wilmington, DE  19801

***Hand Delivery***
**(Counsel for Committee)**
Deborah E. Spivack, Esquire
Mark D. Collins, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
P.O. Box 551
Wilmington, DE  19899

***Hand Delivery***
**(Proposed Counsel to Equity Committee)**
Mark Minuti, Esquire
Saul, Ewing, Remick & Saul, LLP
222 Delaware Avenue, Suite 1200
P.O. Box 1266
Wilmington, DE  19899

***Hand Delivery***
**(Counsel to Coram Resources Network, Inc., Coram Independent Practice Association, Inc.)**
Richard H. Morse, Esquire
Edwin J. Harron, Esquire
Edmon L. Morton, Esquire
Pauline K. Morgan, Esquire
Young Conaway Stargatt & Taylor LLP
11th Floor Rodney Square North
P.O. Box 391
Wilmington, DE  19899-0391

***Hand Delivery***
**(Counsel to Pacific Insurance Comp)**
Carl N. Kunz, III, Esquire
Murphy, Spadaro & Landon
824 Market Street, Suite 700
P.O. Box 8989
Wilmington, DE  19899

***Hand Delivery***
**(Counsel to Brooklyn Respiratory Home Care)**
Kevin J. Mangan, Esquire
Walsh, Monzack and Monaco, P.A.
1201 Orange Street, Suite 400
Wilmington, DE  19801

***Hand Delivery***
)
Ellen W. Slights, Esquire
Assistant United States Attorney
Chase Manhattan Centre
1201 N. Market Street, Suite 1100
P.O. Box 2046
Wilmington, DE  19899-2046

*Hand Delivery*
(Counsel to Lancaster County School
District 0001, a/k/a Lincoln Public Schools)
William D. Sullivan, Esquire
Kathryn Mayer, Esquire
Elzufon Austin Reardon Tarlov & Mondell,
P.A.
300 Delaware Avenue, Suite 1700
P.O. Box 1630
Wilmington, DE  19899-1630

*Hand Delivery*
*(Counsel for Brooklyn Respiratory Home
Care)*
Frederick B. Rosner, Esquire
Walsh, Monzack and Monaco, P.A.
1201 N. Orange Street, Suite 400
Wilmington, DE  19801

*Federal Express*
*(Debtor)*
Scott R. Danitz, Senior Vice President,
Finance and Chief Accounting Officer
Coram Healthcare
1125 Seventeenth Street, Suite 2100
Denver, CO  80202

*Federal Express*
*(DIP Lender)*
Carol Morrison, Esquire
Schulte Roth & Zabel, LLP
900 Third Avenue
New York, NY  10022

*Federal Express*
*(Counsel for Committee of Unsecured
Creditors)*
Chaim J. Fortgang, Esquire
Wachtell, Lipton, Rosen & Katz
51 West 52nd Street
New York, NY  10019-6150

*First Class Mail*
*(U.S. Trustee)*
Maria Giannirakis, Esquire
Office of the U.S. Trustee
601 Walnut Street
Curtis Center, Suite 950 West
Philadelphia, PA  19106

*First Class Mail*
*(Representing U.S. Trustee)*
Daniel Astin, Esquire
Office of the U.S. Trustee
601 Walnut Street
Curtis Center, Suite 950 West
Philadelphia, PA  19106

*First Class Mail*
*(Special Counsel)*
Eugene Tillman, Esquire
Reed Smith Shaw & McClay, LLP
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C.  20005-3317

*First Class Mail*
*)*
David M. Friedman, Esquire
Athena Foley, Esquire
Adam L. Shiff, Esquire
Kasowitz, Benson, Torres & Friedman, LLP
1301 Avenue of the Americas
New York, NY  10019-6022

*First Class Mail*
*)*
Thomas M. Antone, IV, Esquire
Mintz, Levin, Cohn, Ferris, Glovsky &
Popeo, P.C.
1704 Hunting Ridge Road
Raleigh, NC  27615

*First Class Mail*
)
John T. Morrier, Esquire
Mintz, Levin, Cohn, Ferris, Glovsky &
Popeo, P.C.
One Financial Center
Boston, MA 02111

*First Class Mail*
*(Counsel to Harris County, Houston ISD,*
*City of Houston)*
John P. Dillman, Esquire
Linebarger Heard Goggan Blair Graham
Pena & Sampson, LLP
P.O. Box 3064
Houston, TX 77253-3064

*First Class Mail*
)
Securities & Exchange Commission
15th & Pennsylvania Avenue, N.W.
Washington, D.C. 20020

*First Class Mail*
)
District Director
IRS
409 Silverside Road
Wilmington, DE 19809

*First Class Mail*
)
Securities & Exchange Commission
Atlanta Regional Office
Branch of Reorganization
3475 Lenox Road, N.E., Suite 100
Atlanta, GA 30326-1232

*First Class Mail*
)
Secretary of Treasury
P.O. Box 7040
Dover, DE 19903

*First Class Mail*
)
Secretary of State
Division of Corporations
Franchise Tax Section
P.O. Box 7040
Dover, DE 19903

*First Class Mail*
*(Counsel to Mark W. Pasmantier, M.D.,*
*Morton Coleman, M.D., Thomas W. Nash,*
*M.D. and Barry J. Hartman, M.D.)*
Attn: Frederick A. Nicoll, Esquire
East 80 Route 4
Sutie 220
Paramus, NJ 07652

*First Class Mail*
*(Counsel to Invacare Corporation and*
*Suburban Ostomy Supply Co.; Counsel to*
*B. Braun Medical, Inc.)*
Francis J. Lawall, Esquire
Pepper Hamilton LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799

*First Class Mail*
*(Counsel to Invacare Corporation and*
*Suburban Ostomy Supply Co.)*
Craig W. Relman, Esquire
Craig W. Relman Co., LPA
23875 Commerce Park Road
Suite 105
Beachwood, OH 44122

*First Class Mail*
*(Counsel to B. Braun Medical, Inc.)*
Cathy L. Codrea, Esquire
Assistant General Counsel
B. Braun Medical, Inc.
824 Twelfth Avenue
Bethlehem, PA 18018

*First Class Mail*
*(Counsel to Aetna US Healthcare, Inc.)*
Kevin S. Anderson, Esquire
Eric P. Wilenzik, Esquire
Elliott Reihner Siedzikowski & Egan, P.C.
Union Meeting Corporate Center V
925 Harvest Drive
Blue Bell, PA  19422

*First Class Mail*
*(Pro Se)*
Mr. Bill Angelowitz
Daily Insights
JAF Box 3127
New York, NY  10116

*First Class Mail*
*(Pro Se)*
Mr. Peter A. Chapman
24 Perdicaris Place
Trenton, NJ  08618

*First Class Mail*
*(Pro Se)*
Christopher Beard, Esquire
Beard & Beard
4601 North Park Avenue
Chevy Chase, MD  20815

*First Class Mail*
*)*
Lori Obernauf, Esquire
Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road
P.O. Box 13708
Macon, GA  31208-3708

*First Class Mail*
*(Counsel to Trammell Crow Company)*
Sarah A. Hall, Esquire
Mock, Schwabe, Waldo, Elder, Reeves
& Bryant
Fourteenth Floor, #2 Leadership Square
211 North Robinson
Oklahoma City, OK  73102

*First Class Mail*
*(Counsel to Safeco Life Insurance*
*Company)*
Mark E. Felger, Esquire
Cozen and O'Connor
Chase Manhattan Centre
1201 N. Market Street, Suite 1400
Wilmington, DE  19801

*First Class Mail*
*(Counsel to Home Health Corporation of*
*America, Inc.)*
Robert J. Lenahan, Esquire
Adelman Lavine Gold and Levin
1900 Two Penn Center Plaza
Philadelphia, PA  19102-1799

*First Class Mail*
*(Counsel to PCD Brandt, Ltd.)*
Clyde A. Pine, Jr., Esquire
Mounce, Green, Myers, Safi & Galatzan
P.O. Drawer 1977
El Paso, TX  79950-1977

*First Class Mail*
*(Pro Se)*
Margaret A. Holland
Deputy Attorney General
Office of the Attorney General
R. J. Hughes Justice Complex
P.O. Box 106
Trenton, NJ  08625

*First Class Mail*
*(Counsel to Mancini Properties, Inc.)*
Peter A. Kline, Esquire
Joan R. Kester, Esquire
Miller, Morton, Caillat & Nevis, LLP
50 W. San Fernando Street, #1300
San Jose, CA  95113

*First Class Mail*
*(Counsel to Richard M. Smith)*
Joseph A. Eisenberg P.C.
Jeffer, Mangels, Butler & Marmaro, LLP
2121 Avenue of the Stars, 10th Floor
Los Angeles, CA 90067

*First Class Mail*
*(Counsel to 45 South Service Road*
*Associates, LLC)*
Leslie H. Scharaf, Esquire
Certilman, Balin, Adler & Hyman, LLP
90 Merrick Avenue
East Meadow, NY 11554

*First Class Mail*
*(Counsel to North Western Mutual Life*
*Insurance Company)*
Glen Dresser, Esquire
Law Offices of Glen Dresser
12650 Riverside Drive, Suite 100
N. Hollywood, CA 91607

*First Class Mail*
*(Pro Se)*
Blue Cross Blue Shield of Michigan
Attn: Latonya McGrier
Office of the General Counsel
600 Lafayette East, MB 1925
Detroit, MI 48226

*First Class Mail*
*(Counsel to Resource Realty of Northern*
*New Jersey, Inc.)*
Merrill M. O'Brien, Esquire
Dollinger & Dollinger, P.A.
Mack-Cali Centre II
One Mack Centre Drive
Paramus, NJ 07652-3906

*First Class Mail*
*(Counsel to Spieker Properties, L.P.)*
Howard J. Weg, Esquire
David B. Shemano, Esquire
Peitzman, Glassman & Weg LLP
1900 Avenue of the Stars, Suite 650
Los Angeles, CA 90067

*First Class Mail*
*(Counsel to Highwoods Realty Limited*
*Partnership)*
M. Joseph Allman, Esquire
Allman Spry Leggett & Crumpler, P.A.
380 Knollwood Street, Suite 700
P.O. Drawer 5129
Winston-Salem, NC 27113-5129

*First Class Mail*
*(Counsel to Empire Blue Cross Blue*
*Shield)*
Michael B. Guss, Esquire
Morrison Cohen Singer & Weinstein, LLP
750 Lexington Avenue
New York, NY 10022

*First Class Mail*
*(Counsel to Ray McCaslin)*
Michael A. Becker, Esquire
Helfrey Simon & Jones P.C.
120 S. Central, Suite 1500
St. Louis, MO 63105

*First Class Mail*
*(The Travelers Property Casualty*
*Company)*
The Travelers Indemnity Company
Commercial Lines
Attn: Cathy A. Davis, Litigation
Management & Special Collections
1 Tower Square – 9GS
Hartford, CT 06183-4044

*First Class Mail*
*(Counsel to Locust Court Associates, L.P.)*
Peter A. Lesser, Esquire
Sirlin Gallogly & Lesser, P.C.
1529 Walnut Street, Suite 600
Philadelphia, PA  19102

*First Class Mail*
*)*
Jeffrey D. Chansler, Esquire
Empire Blue Cross & Blue Shield
1 World Trade Center, 28th Floor
New York, NY  10048-0682

*First Class Mail*
*(proposed Counsel to Equity Committee)*
Richard F. Levy, Esquire
Theodore J. Low, Esquire
Benjamin D. Schwartz, Esquire
Brandy A. Sargent, Esquire
Altheimer & Gray
10 South Wacker Drive, Suite 4000
Chicago, IL  60606

*First Class Mail*
*(Counsel to Cirquit.com.)*
Steven C. Delinko, Esquire
Dollinger & Dollinger, P.A.
Mack-Cali Centre II
One Mack Centre Drive
Paramus, NJ  07652-3906

*First Class Mail*
*(Counsel to Summit Health Care, Inc.)*
Steven J. Gutter, Esquire
Kahn & Gutter
Paine Webber Plaza – PH4
8211 W. Broward Blvd.
Plantation, FL  33324

*First Class Mail*
*(Pro Se)*
Attn:  Vladimir Jelisavcic
Longacre Management, LLC
1700 Broadway, Suite 1403
New York, NY  10019

*First Class Mail*
*(Pro Se)*
Attn:  Jim Flood, CFO
The Broadmoor Hotel
P.O. Box 1439
Colorado Springs, CO 80901

*First Class Mail*
*(Counsel to The Broadmoor Hotel, Inc.)*
Steven M. Rudner, Esquire
Law Offices of Steven M. Rudner
P.O. Box 12121
Dallas, TX  75225

*First Class Mail*
*(Counsel to Lancaster County School District 0001, a/k/a Lincoln Public Schools)*
John M. Guthery, Esquire
Perry, Guthery, Haase & Gessford, P.C., L.L.O.
233 South 13th Street, Suite 1400
Lincoln, NE  68508

*First Class Mail*
*(Counsel to Broward County Revenue Collection Division)*
Lance D. Lyons, Assistant County Attorney
Broward County Revenue Collection Division
Litigation Section
Government Center Annex
115 S. Andrews Avenue
Fort Lauderdale, FL  33301

*First Class Mail*
*(Counsel to Pharmerica, Inc.)*
Alan W. Forsley, Esquire
Johnson Henrichs & McHugh LLP
290 S. Beverly Drive, Penthouse
Beverly Hills, CA  90212

C198

*First Class Mail*

)

John Cogan
Office of the General Counsel, DHHS
The Public Ledger Building
150 South Independence Mall West, Suite 418
Philadelphia, PA 19106

*First Class Mail*

)

Wendy S. Tien
United States Department of Justice
Civil Division
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044-0875

*First Class Mail*
*(Counsel to James F. Spriggs)*
Deborah Sterling-Scott
UAW Chrysler Legal Services Plan
10820 Sunset Office Drive
Suite 141
St. Louis, MO 63127

*First Class Mail*
*(Counsel to The University of Texas System on behalf of The University of Texas M.D. Anderson Cancer Center)*
Traci L. Cotton, Esquire
The University of Texas System
Office of General Counsel
201 West Seventh Street
Austin, TX 78701

*First Class Mail*
*(Counsel to Open Terrace Associates, LLC)*
Mary R. Pigorsh, Esquire
Day & Sawdey, P.C.
825 Parchment Drive, SE
Grand Rapids, MI 49546

*First Class Mail*
*(Counsel to HCA – The Healthcare Company; Health Services (Delaware), Inc.)*
John Tishler, Esquire
Waller Lansden Dortch & Davis
511 Union Street, Suite 2100
P.O. Box 198966
Nashville, TN 37219-8966

*First Class Mail*

)

Thomas K.F. and Vivian A. Wong
420 N. Pleasantburg Drive
Greenville, SC 29607

*First Class Mail*
*(Counsel to Senior Noteholders)*
Alan B. Miller, Esquire
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153

*First Class Mail*
*(Counsel to Cranberry Corporate Center Partnership)*
Eric J. Zagrocki, Esquire
Grogan Graffam McGinley, P.C.
Three Gateway Center, 22nd Floor
Pittsburgh, PA 15222-1009

*First Class Mail*

)

Lawrence J. Tabas, Esquire
Obermayer, Rebmann, Maxwell & Hippel LLP
One Penn Center
1617 John F. Kennedy Blvd., 19th Floor
Philadelphia, PA 19103-1895

*First Class Mail*
*(Counsel to General Electric Capital*
*Corporation, Vendor Financial Services)*
Adam M. Spence, Esquire
K. Donald Proctor, P.A.
102 W. Pennsylvania Avenue, Suite 505
Towson, MD  21204

*First Class Mail*
*(Counsel to Regen Capital I, Inc.)*
Elliot H. Herskowitz
Regen Capital I, Inc.
P.O. Box 626
Planetarium Station
New York, NY  10024-0540

*First Class Mail*
*(Agent for Avaya Communications f/k/a*
*Lucent Technologies)*
Avaya Communications f/k/a Lucent
Technologies
c/o Dun & Bradstreet Bankruptcy Recovery
Services
P.O. Box 5126
Timonium, MD  21094

**Rachel Lowy**

**From:** BKECFLIVEDB@deb.uscourts.gov
**Sent:** Tuesday, July 31, 2001 2:30 PM
**Subject:** Activity in Case 00-03299-MFW CORAM HEALTHCARE CORPORATION "Chapter 11 Plan"

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\*You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

Notice of Electronic Filing

The following transaction was received from Lowy, Rachel Sarah on 7/31/2001 at 2:30 PM EDT

**Case Name:**      CORAM HEALTHCARE CORPORATION
**Case Number:**    00-03299-MFW
**Document Number:** 962

**Docket Text:**
Chapter 11 Plan of Reorganization *Second Joint Plan of Reorganization* Filed by CORAM HEALTHCARE CORPORATION. (Attachments: # (1) Certificate of Service Second Joint Plan# (2) Service List 2002 Service List)(Lowy, Rachel)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:**//Pszy1_de/data/EFileDocuments/Coram/7-31-01/RSL/Plan of Liquidation/Plan.PDF
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=7/31/2001] [FileNumber=1309-0] [4
e24632cde6b9517b83eb414ecc1e67e665b25a07703283d7818210ee06eb6e2bb4c753
7d730efe597f2516ba2a0ecbc3a64bc5dcd57ab233ba526c5f6ce04c9]]
**Document description:** Certificate of Service Second Joint Plan
**Original filename:**//Pszy1_de/data/EFileDocuments/Coram/7-31-01/RSL/Plan of
Liquidation/Certificate of Service.PDF
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=7/31/2001] [FileNumber=1309-1] [4
731865ef9660259eeaa43eb6953b5123060b5576c73031265f8ce8715c53aab1f45192
4df137b7cc828cb0236d6f14070303c4bd2a7dba29f1b76abdcc22851]]
**Document description:** Service List 2002 Service List
**Original filename:**//Pszy1_de/data/EFileDocuments/Coram/7-31-01/RSL/Plan of Liquidation/2002
service list.PDF
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=983460418 [Date=7/31/2001] [FileNumber=1309-2] [7
6e62aa3d023b49512e94f924a01d6d869eb89130c64d61c573e2d01c2d04cb641efe09
3b485a44faa03ea3285b404832a0c35ac636672ba58f58443d7f53aa6]]

**00-03299-MFW Notice will be electronically mailed to:**

Laura Davis Jones    ljones@pszyj.com

Christopher James Lhulier    clhulier@pszyj.com,

Rachel Sarah Lowy     rlowy@pszyj.com,

**00-03299-MFW Notice will not be electronically mailed to:**

NOT YET APPOINTED

,