# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 05-cv-00335-WDM-PAC

GENESIS INSURANCE COMPANY,

        Plaintiff,

   v.

DANIEL D. CROWLEY, and
ARLIN M. ADAMS, Chapter 11 Trustee of the
Bankruptcy Estates of Coram Healthcare
Corporation and Coram, Inc.,

        Defendants.

---

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ARLIN
M. ADAMS, CHAPTER 11 TRUSTEE OF THE BANKRUPTCY ESTATES
OF CORAM HEALTHCARE CORPORATION AND CORAM, INC. FOR
CHANGE OF VENUE TO THE DISTRICT OF DELAWARE**

---

## INTRODUCTION

    Arlin M. Adams, the Chapter 11 Trustee (the "Trustee") of the bankruptcy estates

of Coram Healthcare Corporation ("CHC") and its wholly-owned subsidiary Coram, Inc. ("CI,"

and together with CHC, "Coram"), has settled claims he brought against Coram's former outside

directors[1] (the "Outside Directors") in the United States District Court for the District of

Delaware (the "Delaware District Court"). The United States Bankruptcy Court for the District

of Delaware (the "Delaware Bankruptcy Court") approved the settlement agreement, under

which the Outside Directors assigned to the Trustee all of their rights arising under and to the

---

[1] The former outside directors of Coram are Donald J. Amaral, William J. Casey, L. Peter Smith and
Sandra L. Smoley.

CHDATA 35084_1

directors' and officers' liability insurance policy issued to Coram by Genesis Insurance Company ("Genesis"). Consequently, on May 11, 2006, the Trustee filed a motion to substitute as a party for the Outside Directors, which was granted by Order entered on June 22, 2006. (Docket No. 87). Now that he is a party of record, the Trustee moves under 28 U.S.C. §1404(a) to transfer venue to the Delaware District Court, which presents a far more convenient forum for all of the parties.

The Trustee, who recently celebrated his 85th birthday and underwent quadruple heart bypass surgery, lives and works a short distance (approximately 30 miles) from the Delaware District Court in Wilmington, where the Trustee's law firm maintains an office. (Bressler Decl., ¶¶ 6-9).

Delaware is a more convenient venue for Genesis, which is a Connecticut corporation having its principal place of business in Connecticut (Complaint, ¶ 4), and whose lead counsel is located in Washington, D.C., approximately 100 miles from Wilmington. Both the Trustee and Genesis can readily get to Wilmington by automobile or train.

Delaware is also more convenient for the third-party defendant, National Union Fire Insurance Co. of Pittsburgh, Pa. ("National Union"), which is incorporated in neighboring Pennsylvania and has a principal place of business located in New York, *see National Union Fire Ins. Co. of Pittsburgh, Pa. v. LSB Industries, Inc.*, 296 F.3d 940, 943 (10th Cir. 2002), a short train ride to Wilmington.

The other party, Daniel D. Crowley ("Crowley") supports transfer of venue to Delaware.

The interests of justice also weigh heavily in favor of transfer to Delaware. The underlying breach of fiduciary duty action, for which Genesis contends in this action that it is not

required to provide insurance coverage, is pending in the Delaware District Court (the "Delaware D&O Action"). The Trustee has filed a separate action against Genesis in the Delaware District Court seeking payment of the settlement amount reached with the Outside Directors. Finally, as discussed in detail below, there are substantial connections between this matter and Delaware, which render Delaware the more appropriate forum.

## PROCEDURAL HISTORY AND BACKGROUND

**A.    Rejection Of The First Plan By The**
**Delaware Bankruptcy Court.**

On August 8, 2000 (the "Petition Date"), CHC and CI, both Delaware corporations, filed voluntary petitions for relief in the Delaware Bankruptcy Court under Chapter 11 of Title 11 of the United States Code §§ 101, *et seq.* (the "Bankruptcy Code"). Coram filed a "pre-packaged" bankruptcy, meaning that Coram had already negotiated a plan of reorganization with its lenders, which it filed on the Petition Date (the "First Plan"). On December 21, 2000, after an extensive confirmation hearing, the Delaware Bankruptcy Court denied confirmation of the First Plan, finding that Crowley, Coram's CEO, had an actual conflict of interest because of a separate employment contract with one of Coram's largest creditors, Cerberus Partners, L.P. ("Cerberus"). That employment agreement, under which Crowley received compensation of $1 million per year, required Crowley to obey the instructions of Cerberus. Consequently, the Delaware Bankruptcy Court found that Coram had not proposed the First Plan in good faith, a requirement of plan confirmation under the Bankruptcy Code. A true and correct copy of the transcript of the Delaware Bankruptcy Court's decision is annexed as Exhibit A.

**B.**   **Rejection Of The Second Plan By The
         Delaware Bankruptcy Court.**

Following the failed First Plan, Coram's Board of Directors formed a special

committee of independent directors, consisting solely of the Outside Directors (the "Special

Committee"). With Bankruptcy Court approval, the Special Committee retained the financial

advisory firm Harrison J. Goldin Associates, L.L.C. ("Goldin") as an independent restructuring

advisor to advise it in connection with Crowley's relationship with Cerberus and potential

revisions to the rejected First Plan. Goldin issued a report containing recommendations for a

modified plan, which Coram adopted and incorporated into a second proposed plan of

reorganization (the "Second Plan").

On December 21, 2001, following another protracted confirmation hearing, the

Delaware Bankruptcy Court rejected the Second Plan. Issuing a written opinion, *In re Coram*

*Healthcare Corp.*, 271 B.R. 228 (Bankr. D. Del. 2001) (a true and correct copy of which is

annexed as Exhibit B), the Delaware Bankruptcy Court concluded:

> Nothing, in fact, has changed since the first confirmation hearing.
> Crowley continues to receive almost $1 million a year from one of
> the Debtors' largest creditors, while, serving as the Debtors' CEO
> and President. Under his agreement with Cerberus, he is required
> to obey its instructions or risk having the agreement terminated and
> losing his $1 million. This is an actual conflict of interest, as we
> concluded at the first confirmation hearing.

*Id* at 235.

The Delaware Bankruptcy Court rejected the argument that Crowley's conflict of

interest had caused no harm to Coram, finding to the contrary that:

> there is absolutely no evidence from which the Court can conclude
> that the Debtors have suffered no harm from Crowley's continued
> conflict of interest. Mr. Goldin's assertion that there must be no
> harm since the disclosure of the relationship because no harm was

caused by Crowley when the relationship was hidden is not logical,
nor is it borne out by the facts.  Crowley did cause harm to the
Debtors while his relationship with Cerberus was hidden and there
is no reason to assume he did not cause harm to the Debtors when
that relationship was disclosed.

*Id* at 238.

The Delaware Bankruptcy Court found the Special Committee had taken no

action in the wake of the rejection of the First Plan, other than hiring Goldin and reviewing his

report.  "Significantly, it did not conduct any investigation of Crowley's conflict of interest, did

not require that Crowley cease accepting any compensation from Cerberus and did not even ask

Crowley if the conflict persisted." *Id* at 234.  At the very least, Coram "should have required

that Crowley sever all agreements with Cerberus as a condition of continued employment." *Id* at

238.  After noting the testimony of one of the Outside Directors that "Goldin was hired to

'sprinkle holy water on the situation' and make everything all right," *Id* at 235, the Delaware

Bankruptcy Court concluded that the "don't ask, don't tell" approach adopted by the Special

Committee did not fulfill its fiduciary duty, *Id* at 238, and that the Special Committee's hiring of

Goldin neither cured the conflict nor evidenced good faith.  *Id* at 240.

**C.     Confirmation Of The Trustee's Plan By The
        Delaware Bankruptcy Court.**

At a hearing held on February 12, 2002, the Delaware Bankruptcy Court granted

two motions for appointment of a Chapter 11 trustee to assume control over the Debtors'

property and affairs pursuant to Section 1104 of the Bankruptcy Code.  The Office of the United

States Trustee appointed Arlin M. Adams as the Chapter 11 Trustee, which the Delaware

Bankruptcy Court approved on March 7, 2002.

On May 2, 2003, the Trustee filed a proposed plan of reorganization that provided

for, among other things, the prosecution by the Trustee of a breach of fiduciary duty action

against Crowley and the Outside Directors. In accordance with the Delaware Bankruptcy Court's order entered as of November 1, 2004, following a third lengthy confirmation hearing, the Court confirmed the Trustee's Second Amended Plan of Reorganization (the "Trustee's Plan"), which became effective on December 1, 2004 (the "Effective Date"). *See In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004), a true and correct copy of which is annexed as Exhibit C.

### D.    The Trustee's Claims Against The Outside Directors In The D&O Action.

On December 29, 2004, in accordance with the confirmed Trustee's Plan, the Trustee commenced the Delaware D&O Action in the Delaware District Court, Civil Action No. 04-1565 (SLR), against Crowley and the Outside Directors, alleging breaches of fiduciary duties to Coram. A true and correct copy of the Complaint in the Delaware Action annexed as Exhibit D. The complaint alleges that the Outside Directors breached their fiduciary duties by, *inter alia*: (a) making no inquiries and approving Crowley's employment as CEO without investigating Crowley's relationship with Cerberus or learning that Crowley was receiving nearly $1 million per year from Cerberus; (b) failing to take adequate remedial action after Coram's First Plan was rejected as a result of Crowley's conflict; (c) failing to inquire as to whether Crowley continued to receive payments from Cerberus after confirmation of the first plan was denied; and (d) hiring Goldin, not to give truly independent advice, but rather to "sprinkle holy water" on the situation. The Trustee seeks a recovery of more than $100 million in damages, including more than $40 million in reorganization expenses incurred by Coram after the Delaware Bankruptcy Court rejected the First Plan and the substantial diminution in Coram's value resulting from the delay in emerging from bankruptcy.

CHDATA 35084_1

E.    **The Genesis Directors' And Officers' Liability Insurance Policy.**

Coram purchased from Genesis a Directors' and Officers' Liability Policy (Policy No. YXB001625A) (the "Policy"), which, as amended, covered the period from January 8, 1999 through January 27, 2001, with a discovery period for reporting claims extending until January 27, 2002. Under the Policy, Genesis agreed to pay (a) claims made during the policy period based on wrongful acts of Coram's officers and directors, (b) claims made during the discovery period based on wrongful acts of Coram's officers and directors during the policy period, (c) claims made after the policy period that were based on potential claims of which notice was provided during the policy period, and (d) claims made after the policy period that were based on or arising out of the same acts that were already subject to claims made during the policy period. The Policy has an aggregate limit of liability of $25 million.

The Outside Directors and Crowley timely notified Genesis of the D&O Action and requested that Genesis defend their interests. Genesis declined. Instead, Genesis commenced this action to seek a declaratory judgment that the Policy does not provide coverage for the claims the Trustee asserted against Crowley and the Outside Directors in the Delaware D&O Action. (Docket No. 1).

Crowley filed a third-party complaint against National Union alleging that if the court were to determine that he was not covered under the Policy because certain of the alleged wrongful acts occurred after the expiration of the policy period, such wrongful acts are covered under a subsequent policy issued by National Union. (Docket No. 12).

7

CHDATA 35084_1

F.    **The Trustee's Settlement With The Outside
      Directors In The Delaware D&O Action.**

The Trustee, Genesis, Crowley and the Outside Directors agreed to conduct a

joint mediation of the Delaware D&O Action and this case before a private mediator. On August

30, 2005, the Court issued an order staying this matter pending the mediation (Docket No. 34),

which was held in Washington, D.C. on December 5 and December 6, 2005.  The mediation did

not result in a settlement.

Despite repeated requests from the Outside Directors, Genesis refused to engage

in meaningful settlement discussions with the Trustee.  After protracted negotiations, on or about

April 5, 2006, the Trustee and the Outside Directors entered into a written settlement agreement

(the "Settlement Agreement"), subject to approval by the Delaware Bankruptcy Court.  Pursuant

to the terms of the Settlement Agreement: (a) judgment shall be entered against the Outside

Directors in the amount of $9.55 million; and (b) the Outside Directors shall assign all of their

rights against Genesis to the Trustee.  A true and correct copy of the Settlement Agreement is

annexed as Exhibit D.  On April 24, 2006, after notice to all parties-in-interest, including

Genesis, and an opportunity for a hearing, the Delaware Bankruptcy Court entered an order

approving the Settlement Agreement, finding that the settlement was "fair" and "reasonable."  A

true and correct copy of the Delaware Bankruptcy Court's order approving the settlement is

annexed as Exhibit E.

Since the approval of the Settlement Agreement by the Delaware Bankruptcy

Court, the Trustee filed with the Court his motion to substitute as a party for the Outside

Directors in this matter under Rule 25 of the Federal Rules of Civil Procedure.  (Docket No. 63).

That motion was granted on June 22, 2006.  (Docket No. 87).

G.     **The Trustee's Complaint Against Genesis in the**
       **District of Delaware.**

      In violation of section VI.A. of the Policy, Genesis unreasonably withheld its

consent to the Settlement Agreement. Consequently, on May 31, 2006, the Trustee filed an

action against Genesis in the Delaware District Court to recover the $9.55 million settlement

amount (the "Delaware Insurance Action"). A true and correct copy of the Trustee's Complaint

in the Delaware Insurance Action is annexed as Exhibit F.[2]

H.     **Crowley's Motion for Change of Venue.**

      On March 24, 2006, Crowley moved to transfer this case to the District of

Delaware. On April 28, 2006, because of the Settlement Agreement among the Trustee and the

Outside Directors, Crowley moved the Court to hold his motion in abeyance. On May 4, 2006,

this Court granted Crowley's motion and directed the parties to inform the Court on or before

June 1, 2006, whether Crowley's motion to change venue remains at issue. A true and correct

copy of the Court's May 4, 2006 Order is annexed as Exhibit H.

      On June 1, 2006, after conferring with the parties, Crowley submitted a notice

advising the Court that: (1) the Trustee would be filing his own motion to transfer venue to

Delaware promptly after he became a party of record; (2) Crowley intended to join in the

Trustee's motion to change venue and his joinder in the Trustee's motion would make his own

motion moot; (3) the Outside Directors do not oppose change of venue to Delaware; and (4)

---

[2] There is another action between the Trustee and Genesis pending in Delaware. On April 26, 2006, the Trustee filed a complaint against Genesis in the Delaware Bankruptcy Court, seeking to recover $7.95 million under the Policy (the "R-Net Coverage Action"). This sum represents the amount paid by Coram's bankruptcy estate to the bankruptcy estates of CI's wholly-owned subsidiaries, Coram Resource Network, Inc. and Coram Independent Practice Association, Inc. (collectively "R-Net"), pursuant to a settlement of R-Net's unrelated claim against Coram of more than $40 million. The Delaware Bankruptcy Court approved that settlement in R-Net's Chapter 11 cases and in connection with confirmation of the Trustee's Plan. A true and correct copy of the Trustee's Complaint against Genesis in the Delaware Bankruptcy Court is annexed as Exhibit G.

CHDATA 35084_1

Genesis and National Union oppose any motion for change of venue. (Docket No. 73). Now that the Trustee's substitution motion has been granted, the Trustee moves for a change of venue to Delaware.

## ARGUMENT

The Court should transfer venue to the district of Delaware, a district more convenient for the parties and the current venue of related, pending litigation among the parties. Under 28 U.S.C. § 1404(a), a district court may transfer any civil action to any other district where the action might have been brought for the convenience of parties and witnesses and in the interests of justice. Congress enacted this statute "as a 'federal housekeeping measure,' allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 (1981), *quoting Van Dusen v. Barrack,* 376 U.S. 612, 613 (1964). Section 1404(a) confers upon the district court the discretion to adjudicate venue transfer motions according to an individualized, case-by-case consideration of convenience and fairness. *Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1515 (10th Cir. 1991).

Because Genesis decided to file this action in Colorado, thousands of miles from its corporate residence and principal place of business, its choice of forum is entitled to little weight. "Although the plaintiff's choice of forum is generally accorded due deference, where the plaintiff's choice of forum is not his residence, it is given much less weight in a ruling on a discretionary transfer motion." *Ervin & Assoc., Inc. v. Cisneros,* 939 F.Supp. 793, 799 (D. Colo. 1996). *See also Gunhall Pharmaceuticals, Inc. v. Discus Dental, Inc.,* 1997 U.S. D. LEXIS 21182 at *6-7 (D. Colo. 1997) (the quantum of inconvenience to defendant needed to tip the balance in favor of transfer necessarily will be less where a plaintiff chooses to litigate away from its principal place of business).

CHDATA 35084_1

## A.    DELAWARE IS A MORE CONVENIENT FORUM.

The District of Delaware is more convenient for the parties and the witnesses. The Trustee's age and the burden upon him to travel to Denver are appropriate factors in considering a change of venue. *Central States Southeast and Southwest Areas Pension Fund v. LaCasse,* 254 F.Supp.2d 1069 (N.D. Ill. 2003). In *LaCasse,* the district court granted the defendants' motion to transfer venue from the Northern District of Illinois to the District of Minnesota, noting:

> [t]he defendants argue that as they are in their eighties, it is especially inconvenient for them to travel to this district to litigate the case. I recognize that travel is a special challenge for older people; the convenience of the parties weighs in favor of transfer.

*Id.* at 1073. *See also Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 882 (3d Cir. 1995) (relative physical condition of the parties among the relevant Section 1404(a) considerations). The Trustee is eighty five years old and recently had heart bypass surgery. He resides in the suburbs of Philadelphia and works in downtown Philadelphia approximately 30 miles from the federal courthouse in Wilmington, Delaware, where his law firm also maintains an office. Wilmington is easily accessible from Philadelphia by automobile or train.

A Delaware forum is just as convenient for Genesis. Genesis is a Connecticut corporation with its principal place of business in Connecticut. (Complaint ¶ 4). Transferring this action to Delaware will diminish by thousands of miles the distance Genesis must travel to litigate this matter. Moreover, given that lead counsel for Genesis has its office in Washington, D.C., a relatively short drive or two or three-stop train ride from Wilmington, a Delaware venue will be far less expensive for Genesis.

11

Delaware is similarly convenient for National Union. National Union is a Pennsylvania corporation with its principal place of business located in New York and transfer of this matter to Delaware will reduce National Union's travel burden.

In Genesis' initial disclosures, a true and correct copy of which is annexed as Exhibit I, Genesis identified five witnesses with discoverable information: Crowley and each of the Outside Directors. Crowley, who is outside the subpoena power of this Court, filed his own motion for a change of venue to Delaware. With respect to the Outside Directors, none reside in Colorado (Complaint, ¶¶ 6-9), none are within this Court's subpoena power, and all support transferring venue of this action to Delaware. (Feldman Decl., ¶¶ 4-6).

Delaware also proves more convenient in terms of the location of evidence. Most, if not all, of Coram's documents related to this action, the Delaware D&O Action, the Delaware Insurance Action (and the R-Net Insurance Action), and the bankruptcy cases, are at the Trustee's Philadelphia office. The more than 161,000 pages of documents produced in discovery during the bankruptcy cases are housed in the Trustee's office and can be readily transported to his law firm's office in Wilmington, Delaware. (Bressler Decl., ¶¶ 10-11).

In terms of convenience to the parties, in terms of convenience to the witnesses, and in terms of the location of the evidence, Delaware is clearly a more convenient forum for this action than Colorado.

**B.**     **THIS MATTER SHOULD BE TRANSFERRED TO DELAWARE WHERE CLOSELY RELATED LITIGATION IS PENDING.**

Transferring venue to Delaware also serves the interests of justice because the underlying Delaware D&O Action is pending in the Delaware District Court. "It is particularly efficient to have insurance coverage claims litigated in the same forum as the underlying action, since the judge litigating the underlying case will be familiar with the facts of the coverage

CHDATA 35084_1

dispute." *The Spring Air Co. v. The Continental Ins. Co.,* 1995 U.S. Dist. LEXIS 4920 at \*10 (N.D. Ill. 1995). *See also The Carolina Casualty Co. v. Data Broadcasting Co.,* 158 F.Supp. 2d 1044 (N.D. Cal. 2001) (transferring D&O insurer's declaratory judgment action to district where underlying breach of fiduciary duty lawsuit was filed); *Progressive Northwestern Ins. Co. v. Velt McCoy,* 1996 U.S. Dist LEXIS 16544 (W.D. Va. 1996) (transferring insurer's declaratory judgment action to Southern District of West Virginia where underlying tort action was pending); *Zurich Ins. Co. v. Raymark Indus., Inc.,* 672 F. Supp 1102, 1104 (N.D. Ill. 1987) (noting that "[t]he presence of such an integrally related case in the transferee jurisdiction weighs heavily in favor of transfer" when it transferred an insurer's declaratory judgment action to the district where the underlying environmental claims were being litigated).

This case is also closely related to the Delaware Insurance Action. Genesis will raise the same coverage defenses to the Trustee's claim for recovery of his $9.55 million settlement that it asserts in this declaratory judgment case, which Genesis commenced to avoid providing a defense to the Outside Directors and Crowley in the Delaware D&O Action.

Even though this matter and the Delaware Insurance Action are related, absent a transfer of venue, they will continue as separate lawsuits on parallel tracks. Under the "first-filed" rule, a district court may enjoin the plaintiff from proceeding in a more recently commenced case if the claims presented in the second action should have been interposed as compulsory counterclaims in an earlier action. *Computer Assoc. Int'l v. Altai,* 893 F.2d 26, 28-9 (2d Cir. 1990). Where a defendant acquires a claim after his answer has been filed, it is not a compulsory counterclaim even if it arises from the same transaction. *Arch Mineral Corp. v. Lujan,* 911 F.2d 408, 413 (10th Cir. 1990); *Imperial Casualty & Indemnity Co. v. Town of Ayer,* 139 F.R.D. 569 (D. Mass. 1991). The claims of the Outside Directors against Genesis for

13

indemnification under the Policy which they have assigned to the Trustee did not accrue until the

claim against them was fixed by the Settlement Agreement and the Settlement Agreement was

approved by the Delaware Bankruptcy Court. *See People's Mortgage Corp. v. Kansas Bankers

Surety Trust Co.*, 2002 U.S. Dist. LEXIS 684 at *15 (D. Kan 2002); *Daugherty v. Allstate Ins.

Co.*, 55 P.3d 224 (Colo. App. 2002); *Flatiron Paving Co. of Boulder v. Southwest Fire Ins. Co.*,

812 P.2d 668, 670 (Colo. App. 1990); *Oliver B. Cannon and Son, Inc. v. Fidelity and Casualty

Co. of New York*, 484 F. Supp 1375 (D. Del. 1980). Consequently, the Trustee's claim in the

Delaware Insurance Action was not a compulsory counterclaim in this lawsuit and the first-filed

rule does not preclude the Trustee from proceeding with his lawsuit against Genesis in the

Delaware District Court.[3]

   "The pendency of a related case in the proposed transferee forum is a powerful

reason to grant a motion for change of venue." *Supco Automotive Parts, Inc. v. Triangle Spring

Co.*, 538 F. Supp. 1187, 1192 (E.D. Pa. 1982).  Transfer in such circumstances has a number of

benefits:

> Cases can be consolidated before one judge thereby promoting
> judicial efficiency; pretrial discovery can be conducted in a more
> orderly manner; witnesses can be saved the time and expense of
> appearing at trial in more than one court; and duplicative litigation
> involving the filing of records in both courts is avoided, thereby
> eliminating unnecessary expense and the possibility of inconsistent
> results.

---

[3] Furthermore, even if the Trustee's claims in the Delaware Insurance Action were compulsory
counterclaims, the first-filed case is not given priority where the balance of the inconvenience favors
transfer or there are special circumstances which justify giving priority to the second suit. *Affinity
Memory & Micro, Inc. v. K&Q Enterprises, Inc.*, 20 F.Supp. 2d 948, 954 (E.D.Va. 1998); *Ricoh Co., Ltd.
v. Honeywell, Inc.*, 817 F.Supp. 473, 487 (D.N.J. 1993). The convenience of the parties and witnesses, the
location of the evidence, the pendency of the underlying litigation in the Delaware District Court, and the
other substantial connections of this case to Delaware clearly show that Delaware is the most appropriate
forum.

CHDATA 35084_1

*Honeywell*, 817 F.Supp. 473 at 487. Considerations of judicial economy and the elimination of

the possibility of inconsistent rulings strongly support transfer of this action to Delaware, where

it could be consolidated with the Delaware Insurance Action.

In addition, Delaware has numerous other links to this action making it the most

appropriate forum:

- CHC was a Delaware corporation prior to dissolution under the Trustee's Plan;

- CI is a Delaware corporation;

- Coram commenced its bankruptcy cases in the Delaware Bankruptcy Court;

- The Delaware Bankruptcy Court appointed the Trustee, who remains under the jurisdiction of that court;

- Any settlement of this action by the Trustee is subject to approval by the Delaware Bankruptcy Court;

- There is an important nexus between this action and Coram's Delaware bankruptcy case because any amounts recovered by the Trustee under the Policy will be distributed in accordance with the Trustee's Plan;

- The Trustee's breach of fiduciary duty claims against Crowley and the Outside Directors arise from decisions of the Delaware Bankruptcy Court rendered after lengthy evidentiary hearings;

- Genesis is seeking to avoid insurance coverage for damages resulting from breaches of fiduciary duty imposed upon Crowley and the Outside Directors under Delaware law as directors and officers of Delaware corporations

Because of the substantial connection between this matter and Delaware, the

Delaware courts have a greater interest in adjudicating this dispute. *Tischio v. Bontex, Inc.*, 16

F.Supp. 2d 511, 526 (D.N.J. 1998) ("the forum with the more significant contacts with the events

resulting" in the litigation "has a strong public interest in adjudicating" the dispute). *See Martin*

*Trigona v. Meister*, 668 F.Supp. 1, 7 (D.D.C. 1987) (the interests of justice served by transfer of

CHDATA 35084_1

15

case to District of Connecticut where bankruptcy proceedings "involving similar facts and players" had "long been pending").

****

Accordingly, the Trustee's motion to transfer venue pursuant to 28 U.S.C. §1404(a) should be granted.

**CONCLUSION**

For the foregoing reasons, the Trustee's motion for change of venue should be granted.

Respectfully submitted this 30th day of June, 2006.

> /s/ Michael J. Hofmann
> Matthew J. Rita
> Michael J. Hofmann
> HOLME ROBERTS & OWEN LLP
> 1700 Lincoln, Suite 4100
> Denver, Colorado 80203
> Telephone: 303-866-0536
> Facsimile: 303-866-0200
> Email: matt.rita@hro.com
> Email: michael.hofmann@hro.com
> **D.C. Box No. 07**
>
> Wilbur L. Kipnes
> Barry E. Bressler
> SCHNADER HARRISON SEGAL & LEWIS LLP
> 1600 Market Street, Suite 3600
> Philadelphia, PA 19103-7286
> Telephone: 215-751-2000
> Facsimile: 215-751-2205
> E-mail: wkipnes@schnader.com
>
> *Attorneys for Arlin M. Adams,*
> *Chapter 11 Trustee of the Bankruptcy*
> *Estates of Coram Healthcare Corporation*
> *and Coram, Inc.*

CHDATA 35084_1