# EXHIBIT E

# In The Matter Of:

*In Re: Coram Healthcare - Chapter 11*

*Hon. Arlin Adams*
*February 25, 2003*

*Brusilow & Associates*
*1926 Arch Street*
*1st Floor West*
*Philadelphia, PA   19103-1404*
*(215) 977-9700     FAX: (215) 977-9773*

*Original File ADAM0225.V1, 268 Pages*
*Min-U-Script® File ID: 2731217649*

**Word Index included with this Min-U-Script®**

Page 215

[1] Q: Here we are on October 3rd and
[2] Schreiber says to Bressler, with a copy to
[3] you, let's discuss these things. What's
[4] the next thing that happened as far as you
[5] now recollect in these discussions about
[6] settlement?
[7] A: I think the next thing was that I
[8] told Mr. Bressler that this was a
[9] peculiarly good assignment for him to deal
[10] with Mr. Crowley's lawyer. He seemed to
[11] get along reasonably well with him, didn't
[12] always agree with him. He had many
[13] discussions with him and he got the work to
[14] try to hammer out the best deal possible
[15] and to bring it back to me.
[16] Q: That was performing a, largely, a
[17] business function rather than a legal
[18] function when he went out to hammer out a
[19] deal?
[20] A: Combination business/legal.
[21] Q: Next is a letter dated October 18
[22] from Mr. Schreiber to Mr. Bressler with a
[23] copy to Crowley. It's Trustee number 6512
[24] through 14 inclusive. It's dated

Page 216

[1] October 18. That would be number 23.
[2]    (Trustee-23, a letter dated
[3] October 18, marked for identification.)
[4] MR. KIPNES: The letter is
[5] from Mr. Steven K. Sims who, I believe,
[6] is a partner of Mr. Schreiber's.
[7] MR. LEVY: You are correct.
[8] MR. KIPNES: With a copy to
[9] Schreiber.
[10]                BY MR. LEVY
[11] Q: Do you recall receiving this letter
[12] or a copy of this letter?
[13] A: No.
[14] Q: Do you recall Barry Bressler
[15] discussing the contents of this letter with
[16] you?
[17] A: I think he came in and told me about
[18] it.
[19] Q: Did he tell you, for example, that
[20] Mr. Crowley asserted now a claim of 17.3
[21] million dollars against Coram?
[22] A: I heard that, yes. I heard that
[23] figure.
[24] Q: What was your reaction when you

Page 217

[1] heard that?
[2] A: I almost hit the roof.
[3] Q: Does that mean you got angry?
[4] A: No. I don't get angry.
[5] Q: Explain to me what "hit the roof"
[6] means in Adams jargan.
[7] A: It sounded pretty high to me.
[8] Q: Sounded ridiculous?
[9] MR. KIPNES: Objection to
[10] the form.
[11] A: It was awfully high.
[12] Q: What did you tell Barry about it?
[13] A: I hardly had to tell him anything.
[14] He knows me and my attitude about figures
[15] like that. I doubt if I had to tell him.
[16] He said, "I know that you will never even
[17] consider anything like that." I said, "You
[18] are absolutely right" or something to that
[19] effect.
[20] Q: Now, I notice in here in paragraph 9
[21] that you are being requested — this is,
[22] obviously, a request on behalf of Crowley
[23] for you to agree to use your best efforts
[24] to promptly seek dismissal of any

Page 218

[1] derivative claim.
[2] A: That's what he was asking.
[3] Q: Is that the first time in the
[4] negotiations you recall that he asked to
[5] get a release?
[6] A: I think so. I can't recall.
[7] Q: It's a fact, isn't it, that much
[8] later you offered formally a deal to
[9] Crowley in which you would not only use
[10] your best efforts, but you agreed in any
[11] plan that you would provide he would get a
[12] release?
[13] A: I don't recall that precisely.
[14] MR. KIPNES: Objection to
[15] the form.
[16] A: I would have to look at the document.
[17] Q: Did you consider that the claim,
[18] given Judge Walrath's opinion, everything
[19] she said, what you needed to consider, the
[20] claim against Crowley had any value at all?
[21] MR. KIPNES: Objection to
[22] the form of the question. I instruct
[23] the witness not to answer. Now, we are
[24] talking about the proposed resolution of

# EXHIBIT F

# Schnader
ATTORNEYS AT LAW

1600 MARKET STREET SUITE 3600
PHILADELPHIA, PA 19103-7213
215.751.2000 FAX 215.751.2205

BARRY E. BRESSLER
Direct Dial 215-751-2050
Direct Fax 215-751-2205
Internet Address: bbressler@schnader.com

January 7, 2003

<u>VIA FACSIMILE #312-621-1750</u>

Scott N. Schreiber, Esquire
Much Shelist Freed Denenberg Ament & Rubenstein
200 North LaSalle Street, Suite 2100
Chicago, IL 60601

Re:   In re: Coram Healthcare Corp., Debtor
      /Daniel D. Crowley

Dear Mr. Schreiber:

Per our additional discussions, Arlin M. Adams, the Chapter 11 Trustee for Coram Healthcare Corporation ("Coram") and Daniel D. Crowley ("Dan") have entered into a letter agreement (the "Transition Agreement") for terminating Dan's prior Employment Agreement and extending his employment. The Transition Agreement will be submitted to the Bankruptcy Court for approval.

This letter will serve to reflect the intent as to an additional settlement agreement ("Settlement Agreement") to be entered into between the Trustee and Dan, subject to a formal agreement being drawn and subject, of course, to approval of the Bankruptcy Court. The Settlement Agreement is being negotiated and finalized in connection with the Transition Agreement, and will include the following terms:

1. All of Dan's contractual and employment claims for performance bonuses, KERP, MIP, and otherwise, including any and all claims under his old Employment Agreement, not dealt with in the Transition Agreement, will be compromised and satisfied by an additional payment, upon final Plan confirmation, of $2,000,000 and the exchange of releases provided below.

2. Dan will release the Trustee and Debtors from any further claims as part of the Plan and the Trustee and Debtors will in turn release Dan from all proposed derivative claims and any other claims arising out of or related to such proposed derivative claims that the Trustee,

Schnader Harrison Segal & Lewis LLP

BOSTON,MA  NEW YORK,NY  PHILADELPHIA,PA  PITTSBURGH,PA  SAN FRANCISCO,CA  WASHINGTON,DC
CANONSBURG,PA  CHERRY HILL,NJ  HARRISBURG,PA

PHDATA 1068521_2



CH-11 TRUSTEE

**Schnader**
ATTORNEYS AT LAW

Scott N. Schreiber, Esq.
January 7, 2003
Page 2

Coram, any subsidiaries, or any committees or entities claiming through them, may have against Dan, to the fullest extent approved by the Bankruptcy Court.

3. The parties contemplate that the formal agreement reflecting the above will be finalized by January 31, 2003, and will be presented to the Bankruptcy Court for approval thereafter, but in any event before a Plan to be proposed by the Trustee on or before February 28, 2003.

4. If the Bankruptcy Court fails to approve the Settlement Agreement, all of the undertakings of the parties will be void and the parties will return to their previous positions, retaining all claims which exist and all defenses thereto. The parties will only be legally bound upon approval of the formal agreement by the Bankruptcy Court.

Sincerely,

BARRY E. BRESSLER

cc: Arlin M. Adams, Chapter 11 Trustee
Mr. Daniel D. Crowley

The Terms and Conditions above are hereby agreed to:

DANIEL D. CROWLEY

_____

ARLIN M. ADAMS, CHAPTER 11 TRUSTEE

_Arlin M. Adams_

Schnader Harrison Segal & Lewis LLP

PHDATA 1068521_2
CH-11 TRUSTEE

# EXHIBIT G

ProTEXT Transcript Condensing for Windows

SHEET 1   PAGE 1

VOLUME I

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - -

ARLIN M. ADAMS, Chapter 11  :
Trustee of the              :
Post-Confirmation Bankruptcy:
Estates of CORAM HEALTHCARE :
CORPORATION, a Delaware     :
Corporation and of CORAM,   :
INC., a Delaware Corporation,:
          Plaintiff         : CASE NO.
    vs.                     : 04-1565
DANIEL D. CROWLEY; DONALD J.:
AMARAL; WILLIAM J. CASEY;   :
L. PETER SMITH; AND SANDRA L.:
SMOLEY,                     :
          Defendants        :

- - -

Tuesday, March 27, 2007
9:34 a.m.

- - -

Videotaped deposition of ARLIN M. ADAMS, held at the law offices of Schnader Harrison Segal & Lewis, LLP, 1600 Market Street, Suite 3600, Philadelphia, Pennsylvania, 19103, pursuant to notice before Cynthia A. Whyte, Registered Professional Reporter and Notary Public.

- - -

PAGE 2

APPEARANCES:

SCHNADER HARRISON SEGAL & LEWIS LLP
Counsel for Plaintiff Arlin M. Adams, Trustee
    1600 Market Street
    Suite 3600
    Philadelphia, PA  19103
    (215) 751-2050
BY:   BARRY E. BRESSLER, ESQ.
      bbressler@schnader.com
AND:  RICHARD A. BARKASY, ESQ.
      rbarkasy@schnader.com

KEKER & VAN NEST LLP
Counsel for Defendant Daniel Crowley
    710 Sansome Street
    San Francisco, CA  94111-1704
    (415) 391-5400
BY:   ELLIOT R. PETERS, ESQ.
      epeters@kvn.com
AND:  WARREN A. BRAUNIG, ESQ.
      wbraunig@kvn.com

ALSO PRESENT:  VINCENZO PETULLA,
               Videographer

PAGE 3

IT IS HEREBY STIPULATED AND AGREED by and among counsel for the respective parties hereto that the filing, sealing and certification of the within deposition shall be and the same are hereby waived.

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial.

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the Court.

PAGE 4

INDEX

| WITNESS: | | PAGE |
|---|---|---|
| ARLIN M. ADAMS, ESQ. | | |
| By Mr. Peters | | 5 |

ADAMS EXHIBITS

| NO. | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 1 | Chronology | 7 |
| Exhibit 2 | Transcript, 2/25/03 | 52 |
| Exhibit 3 | Transcript, 3/3/03 | 52 |
| Exhibit 4 | Letter, 12/24/02, to Mr. Schreiber from Mr. Bressler | 80 |
| Exhibit 5 | Letter, 1/7/03, to Mr. Schreiber from Mr. Bressler | 81 |
| Exhibit 6 | Disclosure Statement | 111 |
| Exhibit 7 | E-mail string | 120 |
| Exhibit 8 | Employment Agreement | 122 |
| Exhibit 9 | Letter, 10/28/03, to Mr. Schepacarter from Mr. Barkasy | 130 |
| Exhibit 10 | Letter, 10/3/06, to Mr. Bressler from Mr. Temin | 142 |
| Exhibit 11 | Motion of Chapter 11 Trustee | 163 |
| Exhibit 12 | Updated Report of Goldin Associates | 170 |

SHEET 21  PAGE 81

**Page 81**

```
 1       appears to bear your signature.
 2               (Adams Exhibit 5 was marked for
 3       identification.)
 4       Q.   So the first question with respect
 5  to Adams 4 -- and if you want to take some
 6  time to review it, you go right ahead.
 7       A.   Go ahead. Ask me the question.
 8       Q.   Does Adams 4 bear your signature?
 9       A.   Is that my signature on the last
10  page?  Yes.
11       Q.   And was this an agreement that you
12  as trustee entered into with Dan Crowley?
13       A.   When you say "is this," the letter?
14       Q.   Correct.
15       A.   It was an agreement that was entered
16  into by Barry Bressler with Crowley's
17  attorney, Mr. Schreiber, which I saw and
18  approved as to terms and conditions. That's
19  what it says.
20       Q.   On whose behalf was Mr. Bressler
21  acting when he entered into that agreement?
22       A.   Say that again.
23       Q.   On whose behalf was Barry Bressler
24  acting when he entered into that agreement?
25       A.   The trustee.
```

**Page 82**

```
 1       Q.   Who is that?
 2       A.   Myself.
 3       Q.   So is it a fair statement that this
 4  is an agreement that you entered into with Dan
 5  Crowley?
 6       A.   The terms and conditions, yes. See
 7  that?  "Agreed as to terms and conditions."
 8  Do you see that on Page 4?
 9       Q.   Okay.
10            And that means that you agreed to
11  the terms and conditions --
12       A.   To the terms and conditions.
13       Q.   -- contained in this letter?
14       A.   Correct.
15       Q.   And, in doing so, did you understand
16  that you were acting as the Chapter 11 trustee
17  for Coram?
18       A.   That's the second time you have
19  asked that question in three minutes. The
20  answer is yes.
21       Q.   What were the terms and conditions
22  that you were agreeing to as you understand
23  them when you affixed your signature to this
24  document, Adams 4?
25       A.   The agreement speaks for itself.
```

**Page 83**

```
 1       Q.   Do you recall what the terms and
 2  conditions were?
 3       A.   I do not recall.
 4       Q.   Do you recall that one of the terms
 5  and conditions was that Dan Crowley would
 6  continue to render essentially the same
 7  services to Coram as he had before for a term
 8  of up to six months?
 9       A.   Correct.
10       Q.   And would he receive during that
11  period a salary, a base salary, of $80,000 a
12  month?
13       A.   Correct.
14       Q.   Was that a raise for him?
15       A.   I think it was an adjustment upward,
16  yeah.
17       Q.   Pursuant to this agreement, he was
18  going to be receiving more base monthly salary
19  than he had been receiving before that?
20       A.   Correct.
21       Q.   Was he also, pursuant to this
22  agreement, eligible for a stay in performance
23  payment, a stay bonus?
24       A.   That's what it says.
25       Q.   And how much was that stay bonus?
```

**Page 84**

```
 1       A.   I forget, but I think it was a
 2  million dollars. I may be wrong. That's my
 3  recollection.
 4       Q.   So under this agreement Crowley was
 5  going to receive $80,000 a month for up to six
 6  months and a million dollars' stay bonus,
 7  correct?
 8       A.   If he stayed.
 9       Q.   If he stayed, he was going to
10  receive about a million and a half dollars,
11  correct?
12       A.   Correct.
13       Q.   And that was agreeable to you on
14  December 24, 2002, correct?
15       A.   I was willing to go along with it in
16  order to get rid of the claim that he had in
17  the amount of $17 million. You don't always
18  sign contracts that are agreeable to you, as
19  you know.
20       Q.   Well, but in signing that contract,
21  you were agreeing to pay him that amount of
22  money if he stayed, correct?
23       A.   I was agreeing as the trustee in
24  consideration of what I was going to get as a
25  result as the trustee.
```

ProTEXT Transcript Condensing for Windows

SHEET 24 PAGE 93

**Page 93**

1  Q.  Was that your understanding of what
2  you were agreeing to when you put your
3  signature --
4  A.  Yes.
5  Q.  -- on Page 2 of Adams 5?
6      So had this agreement which you
7  signed been approved by the court, you would
8  not have been able to bring this lawsuit
9  against Dan Crowley, correct?
10          MR. BRESSLER:  I'll object to
11     the form.  This says it's a letter of
12     intent contemplating --
13  A.  I'm not so sure about that, and
14  that's a legal question.  Get an expert.
15  Q.  When you were testifying in court on
16  March 3 of 2003, were you intending to release
17  all claims Coram had against Dan Crowley as is
18  set forth in Adams Exhibit 5?
19          MR. BRESSLER:  I'll object to
20     the form.  He already said --
21  A.  If that's what it says, that's what
22  it says.
23  Q.  Do you have an understanding on that
24  issue one way or the other?
25  A.  I'm not sure what we would have

**Page 94**

1  done.
2  Q.  So if you look at Adams 4 and Adams
3  5 together, is it a fair statement that the
4  arrangement that you were a proponent of in
5  court on March 3, 2003 was to give Dan Crowley
6  approximately three and a half million dollars
7  and a release from future claims against him
8  by Coram or its trustee?
9          MR. BRESSLER:  I will object.
10  A.  Whatever the legal --
11          MR. BRESSLER:  I'll object to
12     the form.
13  A.  Whatever the legal connotations of
14  those documents are, they are.
15  Q.  But is that your understanding, sir?
16  A.  I wasn't sure about what would
17  happen.
18  Q.  So you went to court on March 3,
19  2003, with your three lawyers and you weren't
20  sure what was going to happen if your motion
21  was granted?
22          MR. BRESSLER:  I'll object to
23     the form.  He has already testified as to
24     it.  The documents speak for themselves
25     and --

**Page 95**

1  A.  Whatever it says.
2          MR. BRESSLER:  -- you are
3     trying to mislead him because only Adams
4     4 was the subject of the hearing that
5     day.
6  A.  That's another example of the harm
7  that was caused by the breach of the fiduciary
8  relationship.
9  Q.  Do you have a recollection of what
10  the effect was going to be if the bankruptcy
11  court granted your motion on March 3 of 2003?
12  A.  The effect was going to be?  It
13  would have eliminated Mr. Crowley's, quote,
14  claim, end quote, for this $17 million, and
15  that was very important to me because with the
16  existence of that claim it made it impossible
17  to sell this company, another defect brought
18  about by the fiduciary relationship.
19  Q.  And in exchange for that he was
20  going to get a release?
21  A.  In exchange for that, yes, that
22  was -- he extracted that.  He was able to
23  extract that from us.
24  Q.  You agreed that he was going to get
25  a release, right?

**Page 96**

1  A.  Yeah.  Well, we all agree with
2  extractions.  I go to a dentist.  I agree to
3  the extraction, but it hurts.
4  Q.  And you also agreed to pay him three
5  and a half million dollars, right?
6  A.  Agreed in order to get rid of the
7  17.5 claim.
8  Q.  Were you aware in January, February
9  and March of 2003 that Coram paid Mr. Crowley
10  $80,000 a month pursuant to the agreement
11  which was Adams Exhibit 4?
12  A.  I imagine I was.
13  Q.  And did you agree to that?
14  A.  Well, that's what the document says.
15  Q.  Did you agree that he could keep
16  that money that he had already been paid after
17  the court did not grant your motion to approve
18  that agreement?
19  A.  No.
20          MR. BRESSLER:  I will object to
21     the form.
22  A.  No, I never agreed to that.
23  Q.  Did you ask him to give back that
24  money to Coram?
25  A.  I think we did, but I never agreed

# EXHIBIT H

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

IN RE:                              . Case No. 00-3299
                                    .
CORAM HEALTHCARE,                   . 824 Market Street
                                    . Wilmington, DE 19801
                                    .
         Debtor,                    . March 3, 2003
. . . . . . . . . . . . . . . . . . . 9:30 A.M.

TRANSCRIPT OF TRUSTEE'S MOTION FOR AUTHORIZATION TO REJECT
THE EXECUTORY CONTRACT OF DANIEL CROWLEY
BEFORE THE HONORABLE MARY F. WALRATH
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Trustee:            Schnader Harrison Segal & Lewis,
                            LLP
                            By: BARRY E. BRESSLER, ESQ.
                                WILBUR KIPNES, ESQ.
                                RICHARD BARKASY, ESQ.
                            1600 Market Street, Suite 3600
                            Philadelphia, PA 19103

                            Weir & Partners
                            By: JOHN B. YORK, ESQ.
                            824 Market Street Mall, Suite 101
                            P.O. Box 708
                            Wilmington, DE 19899

                            Office of the U.S. Trustee
                            By: RICHARD SCHEPACARTER, ESQ.
                            J. Caleb Boggs Federal Building
                            844 King Street, Lockbox 35
                            Wilmington, DE 19801

Audio Operator:             Jennifer M. Patone


           Proceedings recorded by electronic sound
    recording, transcript produced by transcription service.

              J&J COURT TRANSCRIBERS, INC.
                  268 Evergreen Avenue
                Hamilton, New Jersey 08619
              E-mail: jjcourt@optonline.net

          (609)586-2311    Fax No. (609)587-3599

2

APPEARANCES:  (continued)

| | |
|---|---|
| For Daniel Crowley: | RICHARD H. CROSS, JR., ESQ.<br>1201 North Orange Street, St. 610<br>P.O. Box 1380<br>Wilmington, DE  19899<br><br>Much Shelis Freed Denenberg Ament<br>& Rubenstein<br>By:  SCOTT N. SCHREIBER, ESQ.<br>200 North LaSalle St., Suite 2100<br>Chicago, IL  60601 |
| For Unsecured Creditors: | Richards, Layton & Finger, P.A.<br>By:  ETTA WOLFE, ESQ.<br>One Rodney Square<br>P.O. Box 551<br>Wilmington, DE  19899 |
| For Equity Committee: | Saul, Ewing, Remick & Saul, LLP<br>By:  MARK MINUTI, ESQ.<br>222 Delaware Avenue, Suite 1200<br>Wilmington, DE  19899<br><br>Jenner & Block, LLC<br>By:  RICHARD F. LEVY, ESQ.<br>     STEVE TOMASHEFSKY, ESQ.<br>One IBM Plaza<br>Chicago, IL  60611 |
| For Senior Noteholders: | Weil, Gotshal & Manges, LLP<br>By:  ALAN B. MILLER, ESQ.<br>767 Fifth Avenue<br>New York, NY  10153 |
| For Cerberus Partners, LP | Klett Rooney Lieber & Schorling<br>By:  ADAM G. LANDIS, ESQ.<br>1000 West Street, 14th Floor<br>Wilmington, DE  19801<br><br>Schulte Roth & Zabel LLP<br>By:  HOWARD O. GODNICK, ESQ.<br>     MICHAEL L. COOK, ESQ.<br>919 Third Avenue<br>New York, NY  10022 |

Decision                                                          195

1  and has kept out of whatever monetary claim Mr. Crowley may
2  have against Cerberus.
3        MR. LEVY:  Mr. Schreiber said we ought to stick with
4  him.  Merely resonance of what the director's witness, Mr.
5  Emeral said, "Well, he's doing a good job, let's stick with
6  him."
7        And the cases that Mr. Bressler talks about do talk
8  about people who in the past have a conflict.  I certainly
9  think his past conflict twice colors what happened here today,
10 but it is the ongoing relationship that troubles us so.
11       Thanks.
12       THE COURT:  Well, I'm going to deal with the
13 Trustee's motion for approval of the extension.  And in doing
14 so, I agree that it is the business judgment rule that I just
15 consider.
16       To express my feelings I'm going to paraphrase
17 someone I think epitomizes the business judgment rule, and that
18 is Warren Buffet.  And he has said that the ideal employee is
19 someone who's smart, hard-working and honest.  But if the
20 employee isn't honest, you darn well better hope he's stupid
21 and lazy, because otherwise you're in trouble.
22       There is no question in this case that Mr. Crowley is
23 smart, hard-working, a brilliant businessman.  But I do not
24 believe he is honest.  And his testimony today has not
25 convinced me that he has changed since the last time he

Decision                                                                 196

1  testified.
2          Judge Adams has an impeccable reputation for
3  integrity. Quite frankly, I don't want his reputation or mine
4  sullied by approving continuing employment of an employee that
5  I do not believe to be an honest person. I think being asked
6  today to trust that Mr. Crowley is complying with the Trustee's
7  request simply because there is no proof that he has not
8  complied with the requirements imposed upon him by the Trustee
9  goes too far, given the fact that he has previously failed to
10 disclose relevant information. And quite frankly, the draft
11 documents that were produced continue to show at least in May
12 of 2002, after the appointment of the Trustee, continue to show
13 what I believe is a continuation of Mr. Crowley's continued
14 efforts to continue to get reimbursement from Cerberus for
15 efforts undertaken in this case.
16         It's a belief I have. There is no evidence that an
17 agreement was reached with Cerberus or that Cerberus
18 participated in it, but I think that the drafts show that Mr.
19 Crowley sought to have that continuation, sought to be paid,
20 albeit after confirmation, that is after he was no longer
21 subject to the jurisdiction of this court, sought to get
22 remuneration for efforts taken in this case, which quite
23 frankly is not permissible.
24         And given that belief, I will not approve any
25 extension of employment. I've said before that fortunately or

```
                         Decision                          197
```

1  unfortunately I'm in the position where principles can guide
2  me, even though it may result in financial harm to others. But
3  even saying that, I do take into consideration that my decision
4  will have or may have some adverse effect on the business
5  operations.
6       But I am satisfied that the employees that were put
7  in place before and by Mr. Crowley, the systems that were put
8  in place can survive Mr. Crowley leaving. There are plenty of
9  other competent, in fact, brilliant businessmen who can step
10 in, whether from within this organization or from without.
11      And I think it's more important that the debtor,
12 under the supervision of this Trustee, not be tainted by any
13 suggestion that the senior executive has anything other than
14 100 percent dedication to this entity and to this entity alone.
15      So, I will deny the motion.
16      I'll look for a form of order, Mr. Levy?
17      Need we go any further?
18      UNIDENTIFIED ATTORNEY: I think Mr. Levy has a
19 motion.
20      MR. LEVY: Your Honor, we have a motion, and that
21 motion calls for the termination of Mr. Crowley and an
22 instruction to the Trustee to pursue disgorgement of
23 compensation collected.
24      THE COURT: I'm going to hold that under advisement.
25      MR. LEVY: Thank you.

```
                         Decision                        198
 1        THE COURT:  Because the ramifications of my decision
 2   may have an impact on that.
 3        MR. LEVY:  Thank you very much, Your Honor.
 4        THE COURT:  All right?
 5        We'll stand adjourned.
 6        UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.
 7        (Recording ends)
 8                    *         *         *
 9                    C E R T I F I C A T I O N
10        I, Betsy Wolfe, certify that the foregoing is a
11   correct transcript from the electronic sound recording of the
12   proceedings in the above-entitled matter.
13
14   [signature: Betsy Wolfe]                March 9, 2003
15   Betsy Wolfe                              Date
16   J&J COURT TRANSCRIBERS, INC.
```