## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, *Chapter 11 Trustee of*  )
*the Post-Confirmation Bankruptcy Estates*  )
*of CORAM HEALTHCARE CORP. and*  )
*CORAM, INC.*,  )
                                       )  Civ. Action No. 04-cv-1565(SLR)
            Plaintiff,  )
      v.  )
                                    )
DANIEL D. CROWLEY, *et al.*,  )
                                    )
           Defendants.  )
                                    )

---

## BRIEF OF CHAPTER 11 TRUSTEE IN SUPPORT OF
## MOTION IN LIMINE TO ADMIT FINDINGS
## MADE IN THE PRIOR BANKRUPTCY COURT PROCEEDINGS
## FOR A LIMITED, NON-HEARSAY PURPOSE

---

Dated: August 20, 2007

Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)

SCHNADER HARRISON SEGAL & LEWIS LLP
824 N. Market Street, Suite 1001
Wilmington, DE 19801
(302) 888-4554 (telephone)
(302) 888-1696 (facsimile)

OF COUNSEL:
Barry E. Bressler (admitted *pro hac vice*)
Wilbur L. Kipnes (admitted *pro hac vice*)
Nancy Winkelman (admitted *pro hac vice*)

SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2400 (telephone)
(215) 751-2205 (facsimile)

*Counsel to Plaintiff,*
*Arlin M. Adams, Chapter 11 Trustee of the Post-*
*Confirmation Bankruptcy Estates of CORAM*
*HEALTHCARE CORP. and CORAM, INC.*

# TABLE OF CONTENTS

**Page**

I.    NATURE AND STAGE OF PROCEEDINGS ...................................................... 1

II.   SUMMARY OF ARGUMENT ............................................................................ 2

III.  FACTUAL BACKGROUND ............................................................................... 3

IV.   ARGUMENT ....................................................................................................... 5

    *A.*    *The Trustee Is Permitted To Use The Bankruptcy Court's Findings For A Non-Hearsay Purpose.* ....................................................................................................... 7

    *B.*    *Crowley Will Not Be Prejudiced If The Bankruptcy Court's Findings Are Admitted For A Limited, Non-Hearsay Purpose.* .............................................................. 11

V.    CONCLUSION .................................................................................................. 15

i

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201 (3d Cir. 2002) ..................................................................................................................7

*In re Coram Healthcare Corp.*, 271 B.R. 228 (Bankr. D. Del. 2001) ...........................3

*In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del. 2004) ...........................5

*Greycas, Inc. v. Proud*, 826 F.2d 1560 (7th Cir. 1987) .................................................9

*Herrick v. Garvey*, 298 F.3d 1184 (10th Cir. 2002) ......................................................7

*Liberty Mutual Insurance Company v. Rotches Pork Packers, Inc.*, 969 F.2d 1384 (2d Cir. 1992).......................................................................................................................7

*Marks v. Marina Dist. Dev. Co.*, App. A. No. 05-3619, 2007 U.S. App. LEXIS 479 (3d Cir. Jan. 10, 2007) .......................................................................................................7

*Nipper v. Snipes*, 7 F.3d 415 (4th Cir. 1993) ................................................................7

*Orthotec v. Reo Spineline, LLC*, 438 F. Supp. 2d 1122 (C.D. Cal. 2006) ....................8

*Thompson v. Glenmede Trust Co.*, Civ. A. No. 92-5233, 1996 U.S. Dist. LEXIS 13672 (E.D. Pa. Sept. 16, 1996) ..........................................................................................7

*United States v. Boulware*, 384 F.3d 794 (9th Cir. 2004)..............................................8

*United States v. Perry*, 857 F.2d 1346 (9th Cir. 1988) ................................................10

*United States v. Sine*, 483 F.3d 990 (9th Cir. 2007) .....................................................7

*United States v. Syme*, 276 F.3d 131 (3d Cir. 2002)....................................................13

## FEDERAL RULES

Fed. R. Evid. 403 ..........................................................................................................13

Fed. R. Evid. 801(c) ........................................................................................................7

## I.   NATURE AND STAGE OF PROCEEDINGS

Arlin M. Adams, the Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of Coram Healthcare Corp. and Coram, Inc. (collectively, "Coram"), filed this action on December 29, 2004, alleging that defendant Daniel D. Crowley, Coram's former CEO and President, breached his fiduciary duties to Coram.

Both parties have filed summary judgment and/or partial summary judgment motions. Those motions are fully briefed, with oral argument requested. (D.I. 122, 123, 128, 129, 133, 137, 143, 145, 148, 150, 151.) The Trustee sought summary judgment on liability only. The basis of the Trustee's motion was that certain findings that the Bankruptcy Court made following two contested confirmation hearings should be given collateral estoppel effect so as to either preclude Crowley from re-litigating them, or in the alternative, be deemed established under Federal Rule of Civil Procedure 56(d). (D.I. 128.)

In the course of the summary judgment briefing, Crowley filed a motion to strike from the summary judgment record all of the Trustee's references to the Bankruptcy Court's "statements from the bench, all orders or opinions in *In re Coram Healthcare*, and all references to the Bankruptcy Court's factual findings and legal conclusions." (D.I. 147 at 1.) This motion, too, is fully briefed with oral argument requested. (D.I. 147, 152, 153, 154.) One of the arguments that the Trustee made in opposition to Crowley's motion to strike was that the motion was premature because the issue of whether the Bankruptcy Court findings are to be given preclusive effect is a legal issue, distinct from the issue of whether those findings are admissible. The latter, of course, can and should be raised in the context of a motion in limine, not in the context of summary judgment proceedings.

1

A final pre-trial conference is scheduled for September 5, 2007 and trial is set to commence on September 17, 2007. This is the Trustee's motion in limine to have prior findings of the Bankruptcy Court admitted at trial for a limited, non-hearsay purpose.[1]

## II.    SUMMARY OF ARGUMENT

1.    The Bankruptcy Court's findings that the Trustee seeks to use are not hearsay because they will not be offered to prove the truth of the matter asserted. The Trustee seeks to have admitted only certain findings of the Bankruptcy Court for a non-hearsay purpose — namely, that the Court denied Coram's first and second plans of reorganization in 2000 and 2001 due to its finding that Crowley's dual employment with Coram and one of its largest noteholders created an actual conflict of interest. The significance of these Bankruptcy Court findings is that they exist, not whether or not they were correct. The Trustee will not seek to introduce the findings to prove that Crowley had a conflict or that he breached his fiduciary duties, but rather to show that Coram remained in bankruptcy longer than it would have had Crowley had no conflict of interest.

2.    The Bankruptcy Court's findings are relevant and admitting them for this limited purpose will not unduly prejudice Crowley. To the contrary, the Trustee will be greatly prejudiced if the opinions are *not* admitted. A significant focus of the Trustee's liability case is that, when the Bankruptcy Court denied Coram's first proposed plan of reorganization due to Crowley's dual employment relationship, Crowley should have conformed his conduct in the context of that fact. Moreover, the Trustee's damages theory is based on the expenses that

---

[1] This motion addresses only the use of the Bankruptcy Court's findings during the Trustee's affirmative case. The Trustee reserves the right to use the opinions as necessary to defend against the evidence put forth by Crowley in his case.

Coram incurred and the business losses that it sustained as a result of its continued stay in bankruptcy. If the jury does not know *why* the Bankruptcy Court twice denied confirmation, the Trustee will have no way to connect Crowley's conduct with Coram's damages and the wrongdoer will be rewarded. In addition, the Court can guard against any possible prejudice to Crowley by providing an appropriate instruction to make clear the limited purpose for which the jury can consider the findings.

## III.   FACTUAL BACKGROUND[2]

In November 1999, Crowley signed a three-year employment agreement with Coram to serve as Coram's CEO and President. At the time, Crowley had an employment relationship with Cerberus Partners, L.P., one of Coram's three Noteholders. (When Coram filed its bankruptcy petition, the three Noteholders held approximately $250 million in unsecured notes, of which Cerberus owned approximately 36%.) In fact, the day after he executed his employment agreement with Coram, Crowley entered into a written agreement with Cerberus under which he was to receive a base salary of $80,000 a month, plus performance-based bonuses, in exchange, *inter alia*, for devoting "his entire business time, attention, skill and energy exclusively to [Cerberus]" and for using "his best efforts to promote the success of [Cerberus]." *In re Coram Healthcare Corp.*, 271 B.R. 228, 231 (Bankr. D. Del. 2001).

In August 2000, Coram filed a petition under Chapter 11 of the Bankruptcy Code together with a proposed plan of reorganization (the "First Plan"). The First Plan provided for Coram to become a private company owned by the Noteholders, for Coram's general unsecured

---

[2] A fuller explanation of the factual background is set forth in the Trustee's briefing on his and Crowley's summary judgment motions. (D.I. 123, 129.) We provide here only an overview of the facts relevant to this motion.

creditors to receive approximately 30 cents on the dollar, and for Coram's shareholders to receive nothing. In the course of discovery, the Equity Committee discovered Crowley's employment relationship with Cerberus and opposed the First Plan.

In December 2000, the Bankruptcy Court conducted a confirmation hearing over five days. Crowley testified at length over a two-day period. His relationship with Cerberus was a central focus of the hearing. The Bankruptcy Court rejected Coram's proposed First Plan, holding that Coram had not submitted the plan in good faith as required by the Bankruptcy Code. This was because, in the Court's view, Crowley's dual employment with Coram and Cerberus created "an actual conflict of interest." (Ex. A [Dec. 21, 2000 Hrg. Tr.] at 89.)

Following the denial of the First Plan, a special committee of Coram's four outside directors retained Goldin Associates as an independent restructuring advisor. 271 B.R. at 232. Goldin concluded that: (1) the full extent of Crowley's relationship with Cerberus should have been disclosed to Coram's Board of Directors; (2) Crowley's failure to do so constituted a breach of his fiduciary duty to Coram; (3) Crowley advanced the interests of Cerberus at Coram's expense by making a $6.3 million cash payment to the Noteholders at a time when Coram was considering bankruptcy and should have been conserving cash resources; and (4) Coram suffered damages as a result of Crowley's conflict. *Id.* at 233. Coram incorporated Goldin's recommendations into Coram's second proposed plan of reorganization ("the Second Plan"), which the Equity Committee again opposed. Under the Second Plan, the Noteholders again would receive all of Coram's stock, the general unsecured creditors would receive approximately 40 cents on the dollar, and the shareholders would receive a $10 million cash distribution provided their class voted in favor of the Second Plan. *Id.* at 234.

In late 2001, the Bankruptcy Court conducted hearings on the Second Plan over a seven-day period. Once again, Crowley's dual employment and continuing conflict of interest was a critical issue. Once again, Crowley testified at length about that relationship. Once again, the Bankruptcy Court denied the proposed plan. As the Court explained:

> Nothing, in fact, has changed since the first confirmation hearing. Crowley continues to receive almost $1 million a year from one of the Debtors' largest creditors [Cerberus], while serving as the Debtors' CEO and President. Under this agreement with Cerberus, he is required to obey its instructions or risk having the agreement terminated and losing his $1 million. This is an actual conflict of interest, as we concluded at the first confirmation hearing.

*Id.* at 235. The Court continued: "Crowley's conflict of interest is a violation of his fiduciary duty to the Debtors and estate." *Id.* at 240. The Court further determined that Crowley's conflict caused harm to Coram, including, but not limited to the harm caused by continuing to remain in bankruptcy. *Id.* at 237.

The Bankruptcy Court subsequently appointed Arlin M. Adams as Chapter 11 Trustee to oversee Coram's operations and assist it through the reorganization process. *See In re Coram Healthcare Corp.*, 315 B.R. 321, 328 (Bankr. D. Del. 2004). Both the Equity Committee and the Trustee filed plans of reorganization. *Id.* In October 2004, the Bankruptcy Court confirmed the Trustee's plan. *Id.* at 327. The Trustee's plan included a preservation of his rights to file claims on behalf of Coram's estate against Crowley. This litigation ensued.

## IV.   ARGUMENT

Prior to turning to our argument, we address a few preliminary issues for clarity's sake. First, this Court need not reach the admissibility issue presented in this motion should it

5

grant the Trustee's summary judgment motion on liability and rule either that the Trustee is

entitled to summary judgment on the basis of the preclusive effect of the prior Bankruptcy Court

findings or, in the alternative, that certain facts should be deemed established as a result of those

findings.

Second, the briefing in the context of Crowley's motion to strike (D.I. 147, 152,

153) somewhat narrowed the parties' dispute about which of the Bankruptcy Court's findings

should and should not be admissible. For his part, the Trustee made clear that he does not (and

would not) seek to use the findings for their truth. (D.I. 152 at 5-6.) More specifically, the

Trustee stated previously, and reiterates here, that (other than in the collateral estoppel context

that formed the basis for his summary judgment motion), he does not seek to have the

Bankruptcy Court's findings that Crowley had an actual conflict admitted in order to establish

here that Crowley had an actual conflict of interest or that he breached his fiduciary duty. These

are matters that the Trustee is prepared to prove in this case under the relevant Delaware law.

For his part, Crowley stated in his briefing on the motion to strike that he is willing to stipulate to

the fact that the Bankruptcy Court denied Coram's First and Second Plans of reorganization and

that Arlin M. Adams was subsequently appointed Trustee. (D.I. 153 at 1.)

The point of dispute, then, is now a fairly narrow but important one: whether the

Bankruptcy Court's two findings as to why it denied the First and Second Plans — *i.e.*, because

Crowley's dual employment relationship with Coram and Cerberus created an actual conflict of

interest — are admissible. For the reasons set forth below, because the Trustee is not seeking to

use those findings to prove their truth, the findings are not hearsay. Further, the relevance of the

6

findings and the prejudice to the Trustee if they are not admitted greatly outweigh any possible prejudice to Crowley if they are admitted.

### A.    The Trustee Is Permitted To Use The Bankruptcy Court's Findings For A Non-Hearsay Purpose.

There is no *per se* rule holding that judicial opinions always are inadmissible as hearsay. *See United States v. Sine*, 483 F.3d 990, 1003, 1005 n.13 (9th Cir. 2007). Rather, the line is the usual hearsay line: is the party seeking to use the out-of-court statements to prove the truth of the matter asserted? It is not surprising, then, that in the cases upon which Crowley relied in his motion to strike, the court disallowed the opinion because the party was seeking to use it to prove the truth of the matter asserted. *See, e.g., Sine*, 483 F.3d at 1004; *Herrick v. Garvey*, 298 F.3d 1184, 1191 (10th Cir. 2002); *Nipper v. Snipes*, 7 F.3d 415, 417 (4th Cir. 1993); *Liberty Mutual Insurance Company v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992); *Thompson v. Glenmede Trust Co.*, Civ. A. No. 92-5233, 1996 U.S. Dist. LEXIS 13672, at *9 (E.D. Pa. Sept. 16, 1996).

On the other hand, as the Advisory Committee notes to Rule 801(c) make clear, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." FED. R. EVID. 801(c) Advisory Committee note. Accordingly, "verbal acts and verbal parts of acts, in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights," are not hearsay. *Id.* Statements offered to show the effects on the listener and statements that have relevance simply because they are made are not hearsay. *See Cloverland-Green Spring Dairies, Inc. v. Pa. Milk Mktg. Bd.*, 298 F.3d 201, 218 n.20 (3d Cir. 2002) (noting that "verbal act" is not hearsay because "the statement itself has legal effect"); *see*

*also Marks v. Marina Dist. Dev. Co.*, App. A. No. 05-3619, 2007 U.S. App. LEXIS 479, at *10-
*11 (3d Cir. Jan. 10, 2007); *Orthotec v. Reo Spineline, LLC*, 438 F. Supp. 2d 1122, 1129 n.9
(C.D. Cal. 2006).

 The Bankruptcy Court's findings that it could not confirm either the First or
Second Plans due to Crowley's conflict are just the sort of "legally operative" statements that are
not hearsay and so are admissible.

 The Ninth Circuit's opinion in *United States v. Boulware*, 384 F.3d 794, 805-06
(9th Cir. 2004), is instructive. Boulware owned all of the shares in a vending machine company.
The government claimed that he had diverted funds from his company to support his extravagant
lifestyle and charged him with tax fraud, tax evasion, and conspiracy. During trial, the district
court excluded evidence of a state court civil judgment that had determined that Boulware's
company, as opposed to Boulware personally, owned some of the funds at issue. Boulware was
convicted.

 The Ninth Circuit reversed the convictions, holding that the district court erred in
excluding the state court civil judgment. This was because, *inter alia*, Boulware had offered the
state court judgment not to prove whether he (personally) or his company actually owned the
funds, but rather simply for the legal effect of the state court's judgment. As the Court
explained, "[a] prior judgment is not hearsay . . . to the extent that it is offered as legally
operative verbal conduct that determined the rights and duties of the parties." *Id.* at 805-06.
Applying that principle to the facts before it, the Court concluded that, "[Boulware] was offering
the judgment not for the truth of the matters asserted in the judgment, but rather to establish the
judgment's legal effect. . . . this is a nonhearsay purpose." *Id.* at 807.

To similar effect is the Seventh Circuit's opinion in *Greycas, Inc. v. Proud*, 826 F.2d 1560 (7th Cir. 1987). Proud was a lawyer. His brother-in-law, Crawford, owned a failing farm. Crawford applied for a loan from Graycas. Graycas agreed to extend the loan subject to Crawford providing a letter that there were no prior liens on the farm machinery that was being used to secure the loan. Proud sent Greycas such a letter, stating that he had conducted an independent search and concluded that there were no liens. As it turned out, that was doubly false — Proud had not conducted any independent investigation and, in fact, Crawford already had pledged most of the machinery to other lenders. Greycas made the loan. Crawford defaulted. The machinery was sold at auction. A state court ruled that Greycas' loan was subordinate to the prior liens.

Greycas sued Proud for negligent misrepresentation. The district court allowed Greycas to offer into evidence the state court findings regarding the priority of the various liens. Based on the state court findings, the district court concluded that if Proud's representation had been accurate (*i.e.,* if there had been no prior liens), Greycas would have recovered $833,760 on its collateral, which was significantly more than it was able to recover at the auction of the machinery. The court entered judgment in favor of Greycas in that amount.

The Seventh Circuit affirmed, holding that the district court did not err in relying on the state court findings as to the priority of the liens. The Court advanced several different reasons for its conclusion. Of particular relevance here was the Court's view that the state court judgment was not hearsay at all because "it should make no difference to Greycas' rights against Proud whether the state court judgment is erroneous." *Id.* at 1567. Proud could have put on whatever evidence he wished to challenge the state court's findings as to the priority of the liens,

9

yet still the state court judgment was admissible "as evidence of the status of Greycas's liens." *Id. See also United States v. Perry*, 857 F.2d 1346, 1351-52 (9th Cir. 1988) (not error to admit during defendant's mail and wire fraud trial prior bankruptcy court finding that certain property transfers to defendant's relative were fraudulent conveyances because finding not offered as substantive proof but only to show that defendant was true owner of property).

It is for these same reasons that the Bankruptcy Court's findings that the plans could not be confirmed due to Crowley's conflict are not hearsay. The Trustee can prove liability, and he can prove damages, just as Greycas could prove liability and damages. But just as Greycas could not prove — without evidence of the state court's finding on the priority of the competing liens — that Proud's misconduct was the reason it recovered so little, so the Trustee cannot prove — without evidence of the Bankruptcy Court's finding that it was denying the plans due to Crowley's conflict — that it was Crowley's conflict that caused Coram to remain in bankruptcy for the protracted period that it did.

In short, the Trustee does not seek to use the Bankruptcy Court's findings to prove their truth, *i.e.*, that Crowley actually had a conflict. In fact, just as in *Boulware* and *Greycas,* whether the Bankruptcy Court was right or wrong is irrelevant: it is only the existence of the Court's findings that matters. The Trustee will use the findings to demonstrate *why* the Bankruptcy Court refused to confirm Coram's first two proposed plans for reorganization. Crowley will be free to argue that he did not have a conflict; that if he had a conflict, he adequately disclosed it; that he did not breach his fiduciary duties; and that his conduct did not harm Coram. (And, as discussed below, the Court can also fashion an appropriate instruction to ensure against any possible confusion.) But what Crowley should not be allowed to dispute is

10

the legally operative fact that the Bankruptcy Court twice denied confirmation because of the

conflict of interest that his ongoing relationship with Cerberus created.

**B.    *Crowley Will Not Be Prejudiced If The Bankruptcy Court's Findings Are Admitted For A Limited, Non-Hearsay Purpose.***

Crowley argued in the briefing on his motion to strike that, even if the Bankruptcy

Court's findings are not hearsay (which they are not), they still should not be admitted because

they are unduly prejudicial. (D.I. 147 at 5-6.) This argument is a nonstarter for a number of

reasons.

First, Crowley's Rule 403 argument relies largely on the incorrect premise that

the Trustee will offer the findings for their truth. As set forth above, that is not so.

Second, the courts have made clear that simply because facts within a judicial

opinion will sometimes unfairly prejudice a party "does not mean that admission of such facts

will *always* fail the balancing test of Rule 403. Such a holding would be inconsistent with

courts' increasing reluctance to reject *in toto* the validity of the law's factfinding processes

outside the confines of res judicata and collateral estoppel." *Sine*, 483 F.3d at 1003 (internal

quotation and citation omitted). Accordingly, the relevance of the findings and the prejudice to

the Trustee if they are not admitted must be considered alongside any possible prejudice to

Crowley if they are admitted.

The findings are highly relevant to both liability and damages. As to liability,

without being able to use the Bankruptcy Court's findings that the plans could not be confirmed

due to Crowley's conflict, it will be virtually impossible for the Trustee to demonstrate why

Crowley's conduct following the Bankruptcy Court's denial of confirmation of Coram's first proposed plan constituted a breach of the several fiduciary duties he owed to Coram. The evidence of Coram's decisions regarding the preparation of its Second Plan — the formation of the Special Committee, the retention of Goldin as restructuring advisor, the adoption of Goldin's recommendations — would be meaningless if not presented in the context of Crowley's decision to maintain his dual employment relationship not withstanding the Bankruptcy Court's findings.

As to causation, the Bankruptcy Court's findings are integral — indeed, essential — to the Trustee's case. The Trustee asserts that Coram was damaged because it was forced to remain in bankruptcy for longer than it otherwise would have due to the Bankruptcy Court's denial of Coram's two plans. The reason why the Bankruptcy Court denied both plans was because of Crowley's conflict. There is no way for the Trustee to prove why Coram faced an extended stay in bankruptcy other than by showing what the Bankruptcy Court did and why it did it. Moreover, the Trustee would suffer undue prejudice if this Court does not admit the findings for the limited purpose that the Trustee seeks to use them. Without knowing why the Bankruptcy Court rejected the first two plans, the jury will be left to speculate why Coram was forced to remain in bankruptcy for so long. The Trustee can show that Crowley had a conflict of interest, that Coram remained in bankruptcy, and that Coram was damaged by its extended stay in bankruptcy, but will be handcuffed in connecting these points. In fact, the jury may be led to believe that Coram was to blame for remaining in bankruptcy, which is factually incorrect, highly misleading, and prejudicial to the Trustee. There is no reason to leave the jury befuddled and wondering why the plans were not confirmed and why the Trustee commenced this litigation in the first place.

Last, Crowley wholly ignores the curative instructions the Court could give, and provides no reason why a curative instruction would not cure any potential prejudice to him, given the limited use for which the Trustee seeks to use the findings. *See* FED. R. EVID. 403, advisory committee notes ("In reaching a decision whether to exclude on grounds of unfair prejudice, consideration should be given to the probable effectiveness of a limiting instruction."); *see also Boulware.* 384 F.3d at 808 ("Any danger that the jury would have given undue weight to the state court judgment could have been dealt with by a cautionary instruction."). And, of course, a court presumes that a jury will follow its instructions. *United States v. Syme*, 276 F.3d 131, 155 (3d Cir. 2002).

A final note bears mention. If there were any doubt that the reasons why the Bankruptcy Court denied both plans is a relevant fact, both interwoven with and inseparable from this litigation, expert discovery has highlighted the essential nature of the Bankruptcy Court's findings to this case. For example, one of Crowley's experts, Joseph A. Dworetzky, makes repeated references in his report to the Bankruptcy Court opinions, stating that:

> the Bankruptcy Court denied confirmation of the First Plan on the basis that the debtor, as the plan proponent, had not met its burden of proving that the plan had been proposed in good faith. Important to the Bankruptcy Court's conclusion was its determination that Crowley, the Chairman of the Board and CEO of Coram, had an employment contract with [Cerberus], the largest of the three Noteholders that were to be restructured under the First Plan, which had not been adequately disclosed in the Disclosure Statement.

(Ex. B [Dworetzky Expert Report] at 2.) *See also* (Ex. C [Dworetzky Dep.] at 186:20-23) ("I think that Crowley's relationship with Cerberus definitely was one of the factors that made this a tough bankruptcy."); (Ex. B at 13) ("[i]n rejecting the Second Plan, the Court took the view that .

13

. . the contractual relationship between Cerberus and Crowley created such a continuing conflict that the plan could not be confirmed.").

Dworetzky opines that the Trustee's causation theory is unreasonable, yet, for the reasons set forth above, the Trustee will be unable to rebut that point unless the jury knows the reason behind the Bankruptcy Court's decisions. Finally, although his opinion as a whole is that, "[a]s a general matter, business bankruptcies under Chapter 11 do not come with any guarantee of success" and are "highly uncertain" and so it is unfair to blame Crowley alone, Dworetzky's opinion cannot be understood except in the context of what the Bankruptcy Court actually did and the reasons why it did so. (Ex. B at 4.)

By way of further example, one of the Trustee's experts, Scott Victor, also focused on the Bankruptcy Court's opinions, stating that only two material issues existed during the confirmation hearings for the first plan: Crowley's conflict and valuation. (Ex. D [Victor Expert Report] at 2.) But, as Victor notes, "[t]he ultimate valuation that was accepted by the Court when the Trustee's plan was confirmed was consistent with the Debtor's original valuation put forth at the time of the First Plan. Therefore, the competing valuation testimony would not have prevented confirmation of the First Plan since the very same valuation dispute did not prevent confirmation of the Trustee's plan." (*Id.*) He therefore concludes that without the taint of the conflict, Coram would have emerged from bankruptcy three earlier than it did. (*Id.*) Victor further opines that Crowley's conflict, which was the reason Coram remained in bankruptcy, presented an additional obstacle. (*Id.* at 3.) If the jury cannot be told of the reason behind the denial of the plans, Victor will be unable to testify as to the key piece of the puzzle behind Coram's damages.

14

## V.    **CONCLUSION**

For all of these reasons, the Trustee respectfully requests that the Court admit the prior findings of the Bankruptcy Court that the reason it rejected Coram's first two plans of reorganization was because Crowley's dual employment relationships with Coram and Cerberus created a conflict of interest.

Dated:  August 20, 2007

Respectfully submitted,

_/s/ Michael J. Barrie_____

Richard A. Barkasy (#4683)
Michael J. Barrie (#4684)
SCHNADER HARRISON SEGAL & LEWIS LLP
824 Market Street Mall, Suite 1001
Wilmington, DE  19801
(302) 888-4554 (telephone)
(302) 888-1696 (telecopier)
mbarrie@schnader.com

OF COUNSEL:

Barry E. Bressler (admitted *pro hac vice*)
Wilbur L. Kipnes (admitted *pro hac vice*)
Nancy Winkelman (admitted *pro hac vice*)
SCHNADER HARRISON SEGAL & LEWIS LLP
1600 Market Street, Suite 3600
Philadelphia, PA 19103
(215) 751-2400 (telephone)
(215) 751-2205 (facsimile)

*Counsel to Plaintiff,*
*Arlin M. Adams, Chapter 11 Trustee of the Post-*
*Confirmation Bankruptcy Estates of CORAM*
*HEALTHCARE CORP. and CORAM, INC.*

15