## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

ARLIN M. ADAMS, Chapter 11 Trustee of
the Post-Confirmation Bankruptcy Estates of
CORAM HEALTHCARE CORPORATION,
a Delaware Corporation, and of CORAM
INC., a Delaware Corporation,

        Case No. 04-1565 (SLR)

       Plaintiffs,

  v.

DANIEL D. CROWLEY, DONALD J.
AMARAL, WILLIAM J. CASEY, L. PETER
SMITH, and SANDRA L. SMOLEY,

       Defendants.

---

## DEFENDANT'S MOTION *IN LIMINE* NO. 2 TO EXCLUDE EXPERT TESTIMONY OF MICHAEL L. TEMIN AND J. SCOTT VICTOR

---

August 20, 2007

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
Marc J. Phillips - #4445
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

*Attorneys for Defendant DANIEL D. CROWLEY*

# I.    INTRODUCTION

Defendant Daniel Crowley hereby moves *in limine* for an order excluding the testimony of the Trustee's experts, Michael L. Temin and J. Scott Victor.  This motion addresses both witnesses because the Trustee proposes to have both Temin and Victor testify as to how United States Bankruptcy Court Judge Mary Walrath would have ruled on Coram's first bankruptcy plan in the absence of the relationship between Crowley and Cerberus.  This testimony is based on no more than Temin's and Victor's self-proclaimed expertise at predicting the behavior of Judge Walrath.  Accordingly, it relies entirely on speculation and subjective belief and fails to meet the basic standards of admissibility set forth in Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  It is not proper expert testimony and it should be excluded.

In addition, Victor proposes to testify about three other matters that similarly fail to meet the basic criteria of Rule 702 and *Daubert*: (1) that Coram's cash payments to its noteholders prior to entering bankruptcy were "highly unusual" and harmed Coram; (2) that companies generally do not perform as well under Chapter 11 bankruptcy, and bankruptcy was "particularly harmful" to Coram; and (3) that the Trustee's goals and intentions in his dealings with Crowley were reasonable.  All of this proposed testimony should be excluded.  None of it is proper expert testimony that will assist the jury in understanding the evidence or determining a fact in issue.

With respect to the first two topics, Victor employed no reliable principles or methods and performed no independent investigation or analysis of any kind in reaching these opinions. Rather, he merely recites "common knowledge" gleaned from his anecdotal experience as a bankruptcy lawyer without making any effort to apply or connect those principles to the specific facts of this case.  In fact, Victor admits that the specific facts in this case contradict this "common knowledge".  He admits that Coram suffered no identifiable harm from the pre-bankruptcy debt payments and that the company increased in value during the bankruptcy. Accordingly, Victor's testimony is entirely irrelevant and does not "fit" (and, in fact, is contradicted by) the specific facts in this case.  Further, if permitted, it will confuse and prejudice the jury in violation of Rule 403 of the Federal Rules of Evidence.

With respect to the third topic, Victor proposes to testify that the Trustee's intentions and goals were reasonable in conducting certain dealings with Crowley. This also is not proper expert testimony. Victor is not qualified to testify to the Trustee's state of mind – certainly the Trustee can testify to his own intentions and goals – and his opinion is not based upon any specialized knowledge or the application of any reliable methodology. It is speculative, subjective, and conclusory. It should be excluded.[1]

## II.    BACKGROUND OF WITNESSES

### A.    Michael Temin

Michael Temin is a bankruptcy lawyer in Philadelphia. He was retained to opine on one question: whether Judge Walrath would have confirmed Coram's first plan but for the relationship between Crowley and Cerberus. (Ex. A at p.1) He was not retained to and did not render an opinion with regard to Coram's second bankruptcy plan.

To perform his assignment, Temin read Judge Walrath's first opinion, reviewed some pleadings and then wrote his report. (Ex. C at 135: 15-25) He did not review any depositions from this case. (*Id.* at 136:4-6) Temin testified at his deposition that he based this opinion on his expertise in predicting the behavior of Judge Mary Walrath. (*Id.* at 14:2-7, 15:14-19, 18:24-19:12; 20:4-21:13)

### B.    Scott Victor

Scott Victor is also a lawyer. He practiced bankruptcy law for a number of years and then left the law seven years ago to become an investment banker. He claims to be an expert in bankruptcy law and "special situation investment banking."

Victor was fist retained by the Trustee during the Coram bankruptcy to perform a valuation of Coram in connection with the Trustee's attempts to have his bankruptcy plan approved. The Trustee did <u>not</u> retain Victor to perform any valuation work in this case. Victor also testified in support of the Trustee's motion to extend Crowley's employment with Coram, pay him bonuses and salary of approximately $3.5 million, and release him of all liability in this

---

[1] For the Court's ease of reference, attached to this brief are the expert reports of Temin and Victor (Exs. A and B, respectively) as well as excerpts from their respective depositions (Exs. C and D).

case.

When questioned about what work he performed in preparing his report and reaching his opinions, Victor admitted that his work was limited to a brief meeting with the Trustee's counsel, a review of a handful of documents, and editing and revising the expert report issued in his name. (Ex. D at 204:2-205:16)  Victor testified that his younger colleague, Michael Goodman, who is in his mid-30's and is not a bankruptcy lawyer and does not possess a law or any other advanced degree, actually "reviewed all the documents that are referenced in the expert report and he did the first draft of the expert report." (*Id*. at 18:12-14, 19:6-24, 21:5-13)  Victor then only reviewed the documents and edited and revised the report. (*Id*. at 19:25-21:4)  Victor acknowledged that he did no more in forming his opinions. (*Id*. at 204:22-205:16)  A review of handwritten notes produced by Victor suggests strongly that his opinions about what is "common knowledge" were supplied to him in meetings by the Trustee's counsel. (Ex. E)

### III.   APPLICABLE LEGAL STANDARD

Federal Rules of Evidence 702 permits "an expert by knowledge, skill, experience, training, or education" to testify to "scientific, technical, or other specialized knowledge" only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702.

In *Daubert*, the United States Supreme Court clarified that the district court must act as a gatekeeper to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.  The Court in *Daubert* explained that expert testimony must comprise "scientific knowledge," and that "the adjective 'scientific' implies a grounding in the methods and procedures of science" and "the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Id*. at 590.  Thus, in order to qualify as "scientific knowledge" under *Daubert*, "an inference or assertion must be derived by the *scientific method*" and "[p]roposed testimony must be supported by appropriate validation." *Id*. "*Daubert's* general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony

3

based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

The Trustee bears the burden of proving that Temin's and Victor's proposed testimony meets the requirements of the Rule 702/*Daubert* test. *Daubert*, 509 U.S at 593 n.10. The Supreme Court has emphasized that the *Daubert* test for the reliability of expert evidence is "exacting." *Weisgram v. Marley Co.*, 528 U.S. 440, 455 (2000).

In fulfilling its gate-keeping function and applying the *Daubert* test, the court "must resist the temptation to answer objections to receipt of expert testimony with the shorthand remark that the jury will give it 'the weight it deserves.'" *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 569 (D.C. Cir. 1993) (internal quotation omitted), *modified on other grounds*, 40 F.3d 475 (D.C. Cir. 1994); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450, 459 (D.N.J. 1998). "[D]istrict courts must evaluate proffered expert evidence in the first instance rather than leaving the task for the jury to sort through." *Lithuanian Commerce Corp.*, 179 F.R.D. at 459; *see also Bell Helicopter*, 999 F.2d at 569 (reversing damages award on the grounds that "the decision to receive expert testimony was simply tossed off to the jury under a 'let it all in' philosophy").

### IV.    ARGUMENT

**A.    The Court Should Exclude Temin's and Victor's Testimony that Judge Walrath Would Have Confirmed Coram's First Bankruptcy Plan in the Absence of the Relationship Between Crowley and Cerberus.**

**1.    The Proposed Testimony**

Temin proposes to opine that "the bankruptcy court would have confirmed the [first] Plan in the absence of the Crowley-Cerberus relationship." (Ex. A at p.1) When asked the basis for this "expertise", he stated only that "I have known her since she started practicing law and have observed her as a judge in the Bankruptcy Court in the District of Delaware." (Ex. C at 15:14-19, 16:13-18) He offered no more explanation.

Similarly, Victor opines that "[b]ut for the relationship between Mr. Crowley and Cerberus, the First Plan would have been confirmed." (Ex. B at p. 2) Victor testified at his deposition that he based his opinion solely on his ability to predict Judge Walrath's behavior.

(Ex. D at 173:17-175:17)  When asked the basis of this expertise, Victor testified that, "I know [Judge Walrath] well.  I think I can predict her well." (*Id.* at 174:15-16)  Further, Victor testified that, "I can predict what – I think I can predict what many bankruptcy judges do that I'm familiar with around the country, including Delaware," and that, if asked, he could predict the outcome of a matter before the District of Delaware.  (*Id.* at 174:25-175:17)

### 2.  Temin's and Victor's testimony that they can predict how Judge Walrath would rule is not admissible expert testimony

Temin's and Victor's proposed testimony fails to meet each prong of Rule 702.  It is not "based upon sufficient facts or data," it is not "the product of reliable principles and methods," and Temin and Victor did not apply the "principles and methods reliably to the facts of the case." Its most glaring deficiency is with respect to its lack of reliable principles and methods.

### a.  The proposed testimony is not the product of reliable principles and methods

Under the second prong of Rule 702, expert testimony must be the "product of reliable principles and methods."  Fed. R. Evid. 702.  An expert's opinion is reliable if it is "based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'"  *Izumi v. Koninklijke Philips Elec., N.V.*, 315 F.Supp.2d 589, 600 (D. Del. 2004) (Robinson, J.).  Under *Daubert*, testimony is not reliable if it is based upon a subjective, conclusory approach that cannot reasonably be assessed for reliability.  *Daubert*, 509 U.S. at 592-593.

Temin's and Victor's proposed testimony is the antithesis of "reliable principles or methods."  Temin claims that he can predict Judge Walrath because "[He has] known her since she started practicing law and [has] observed her as a judge in the Bankruptcy Court in the District of Delaware." (Ex. C at 15:14-19, 16:13-18)  Similarly, Victor claims that he can predict Judge Walrath because "I know [Judge Walrath] well.  I think I can predict her well." (Ex. D at 174:15-16)  That is not reliable principles or methods.  That is personal opinion.  A self-proclaimed ability to predict judicial outcomes given particular hypothetical scenarios is not proper expert testimony under Rule 702 and *Daubert* as it is not based upon any reliable or

objectively verifiable methodology or underlying reasoning.[2]

Temin's own deposition testimony conclusively demonstrates that he cannot predict how Judge Walrath would rule. Temin testified that had he been Coram's lawyer he could have gotten the first plan approved. (Ex. C at 154:21-155:16) In order to get the plan approved, Temin testified that he would have "removed the Crowley-Cerberus relationship" from the equation by "having the plan negotiated between people that did not involve Crowley and by having a disclosure of all of those facts, including Crowley's prior relationship." (*Id.*) That, of course, is precisely what Coram did with respect to the second plan. Following the rejection of the first plan, on the advice of bankruptcy counsel, Coram formed a special committee of its Board of Directors consisting of all the directors except Crowley. The Special Committee, again on the advice of bankruptcy counsel, retained an independent third party (Harrison Goldin) to help propose a second plan. Crowley was completely removed from negotiating the plan. When the second plan was proposed, it included disclosure of all facts regarding Crowley's relationship with Cerberus. In other words, Coram did <u>precisely</u> what Temin suggested he would have done to get the plan approved.[3] Nevertheless, Judge Walrath did not confirm the second plan. If Temin demonstrably cannot predict what Judge Walrath would do under circumstances he posits, he should not be permitted to testify about what Judge Walrath would have done under circumstances posited by the Trustee's lawyers. It conclusively demonstrates that the opinion is not based on reliable principles or methods and must be excluded.

b. **Temin's and Victor's testimony is not based upon "sufficient facts or data" and it is not the product of applying reliable methods or principles to the facts of this case**

Temin's and Victor's proposed testimony also fails the first and third prongs of Rule 702 – it is not based upon "sufficient facts or data" and it is not the product of applying reliable methods or principles to the facts of this case. Even where an expert witness relies primarily on

---

[2] In fact, it is entirely improper for an attorney to even communicate or advertise that he possesses such a dubious expertise. *See* Model Rules of Prof'l Conduct R. 7.1. For example, in California, an attorney is subject to State Bar disciplinary action for any communication "which contains guarantees, warranties, or predictions regarding the result of the representation." *See* Cal. Rules of Prof'l Conduct R. 1-400(E)(1).

[3] Temin would have known this had he become familiar enough with the case to look into the

experience, rather than the application of scientific theory, he must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. Rule 702 and *Daubert* require more than simply "taking an expert's word for it." *Daubert v. Merrell Dow Pharm., Inc. ("Daubert II")*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.").

Temin's and Victor's proposed testimony is quintessential speculation and subjective belief, applied to a set of hypothetical facts not present in this case.[4] It is based solely on each witness's personal assurance that he knows Judge Walrath well and his unverifiable assurances that he can reliably predict what Judge Walrath would do under certain circumstances.[5] Neither witness applied any principle or method to reach his conclusion, performed any investigation or analysis to support his opinion, or offered any further explanation for the basis of his belief. Temin's and Victor's testimony asks just that the jury and Court take their word for it that they know what Judge Walrath would have done under different circumstances. This is not legitimate or reliable expert opinion and it should be excluded by the Court.[6]

**B.      The Court Should Exclude Victor's Testimony Regarding Coram's Debt Payments.**

**1.      The Proposed Testimony**

Victor proposes to testify generally that "it is normal operating procedure for companies to prepare for an anticipated bankruptcy filing by conserving as much cash as possible," and that

---

circumstances surrounding the preparation and presentation of the second plan.

[4] Notably, while Temin's testimony is based solely upon a hypothetical factual scenario given to him by the Trustee, Temin would not provide answers to alternative hypothetical scenarios similarly rooted in the facts of this case when questioned by counsel for Crowley. (Exhibit C at 83:17-84:7, 145:25-146:7, 148:21-150:11, 151:21-152:3)

[5] Despite their professed certainty about what Judge Walrath would have done under the alternative factual scenario supplied by the Trustee, neither witness says that she did not have "considerable discretion" to confirm the plan under the facts of this case, as Judge Walrath stated in her December 20, 2001 opinion, and neither testified that it would have been reversible error to have confirmed the plan. (Exhibit C at 144:10-145:8; Exhibit D at 178:2-12) Accordingly, their testimony that they can predict exactly what she would do under a hypothetical circumstance is even more questionable.

[6] Of course, it is inappropriate for a witness to testify on matters of law. *See Aguilar v. Int'l Longshoremen's Union Local 10*, 966 F.2d 443, 447 (9th Cir. 1996).

certain debt payments made by Coram prior to entering bankruptcy were "highly unusual" and harmed Coram to the benefit of the noteholders. (Ex. B at p. 1-2) Further, he proposes to testify that the payments "served to benefit only the noteholders while harming [Coram] by depleting it of much needed cash." (Ex. B at p. 2)

### 2.    Reasons it should be excluded

Expert testimony is inadmissible if it is not "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir. 1985), *quoted in Daubert*, 509 U.S. at 591 (citation omitted). Rule 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591. The Third Circuit refers to this requirement as one of "fit" between the proffered expert opinion and the issues in the case. *Downing*, 753 F.2d at 1242.

Victor's opinion utterly fails this test. His opinion is admittedly divorced entirely from the facts present in this case. Victor posits that prior to bankruptcy companies generally should conserve cash. But Victor does no analysis whatsoever to determine whether *Coram* needed to conserve cash; he just assumes it. But the facts are just the opposite, as Victor ultimately concedes. He performed no independent investigation into or analysis of the facts surrounding the debt payments (e.g., why the payments were made, why they were made in cash, who approved them, and how they affected Coram's overall cash position). Rather, he relied on the Court's opinion and the Goldin report and nothing else. (Ex. D at 132:6-19, 132:11-16, 141:20-23, 162:9-21) The fact, as Victor concedes, is that Coram had sufficient cash to fund its operations before and after it filed for bankruptcy. (Ex. D at 134:3-10) Prior to filing for bankruptcy it negotiated a debtor in possession financing facility that would be available to it if it needed cash, but it never drew on that financing because it had sufficient cash to fund its operations. (*Id.* at 134:23-135:12) Victor's opinion that Coram was depleted of "much needed" cash is therefore belied by the facts. Accordingly, his testimony has no foundation in the facts of this case.

Victor's testimony on this point should be excluded for the independent reason that it is not based on anything more than what he describes as common knowledge. *See United States v. Gibbs*, 190 F.3d 188, 212-13 (3d Cir. 1999) (held that it is proper to uphold the exclusion of expert testimony when that testimony ventures into areas in which the jury needs no aid or illumination); *see also United States v. Finley*, 301 F.3d 100, 108 (9th Cir. 2002) ("Expert testimony assists the trier of fact when it provides information beyond the common knowledge of the trier of fact.")   It is hornbook law that experts may not testify as to matters within the common knowledge of jurors. *See* 31 Am. Jur. 2d § 30 ("Where the subject is one of common knowledge, as to which the facts can be intelligently described to the jury and understood by them and they can form a reasonable opinion for themselves, the opinion of an expert will be rejected").  Federal Rule of Evidence 702 states that a court may permit expert testimony if it "will assist the trier of fact to understand the evidence or to determine a fact in issue."  An expert cannot assist the trier of fact if the subject of the testimony is within the common knowledge of the trier of fact.  Here, Victor testified that "anybody should know that you need to preserve cash before bankruptcy." (Ex. D at 162:10-11)  Issues that "anybody should know about" are precisely the types of issues that are not appropriate for expert testimony.

## C.    The Court Should Exclude Victor's Testimony Regarding the Performance of Companies in Chapter 11 Bankruptcy.

### 1.    The Proposed Testimony

Victor proposes to testify generally that "[c]ompanies that are in Chapter 11 typically do not perform as well as those not in Chapter 11" and that "[t]he impact of the bankruptcy was particularly harmful in the case of Coram as it lasted for an unusually long period of time, over four years." (Ex. B at p. 3)

### 2.    Reasons it should be excluded

As with his opinion that companies should generally conserve cash before bankruptcy (despite the fact that *Coram* had sufficient cash), Victor's opinion regarding the performance of companies in bankruptcy in general ignores the facts with respect to Coram.  As a result, it is not "sufficiently tied to the facts of the case" and should be excluded. *Downing*, 753 F.2d at 1242.

Victor confirmed at his deposition that Coram's value actually *increased* during bankruptcy, and that the only drop in revenue occurred early in the bankruptcy, which would have happened even if Coram's first plan were confirmed in December 2000. (Exhibit D at 203:15-18, 208:22-209:2) Additionally, Victor admits that, while he believes Coram was harmed by being in bankruptcy, he made no effort to and cannot identify a single vendor, customer, or referring physician who failed to do business with Coram because it was in bankruptcy, and is not aware of any revenue that Coram lost as a result of being in bankruptcy. (Exhibit D at 207:16-208:9)

Victor's opinion in this regard should be excluded for the independent reason, once again, that it requires no specialized expertise that could assist the trier of fact but, instead, is based on common knowledge. *See Gibbs*, 190 F.3d at 212-213; *Finlay*, 301 F.3d at 1008. Victor testified as follows:

Q: Turning to page 3 of your report you say: Companies in Chapter 11 typically do not perform as well as those not in Chapter 11.

A. Generally.

Q: Does it take an expert to figure that one out?

A: No. It's pretty common knowledge.

(Ex. D at 194:6-13)

**D.    The Court Should Exclude Victor's Testimony Regarding the Reasonableness of the Trustee's Dealings With Crowley.**

**1.    The Proposed Testimony**

Victor proposes to testify that the Trustee's actions were reasonable in deciding to extend Crowley's employment and settle his administrative claim by paying him more than $3 million and releasing all claims against him. (Exhibit B at p. 4) But this opinion relies solely on Victor's testimony about what the Trustee's goals and intentions were in taking certain actions, and is not the product of having applied any reliable principle or method. (*Id.*)

**2.    Reasons it should be excluded**

This is improper expert testimony under Rule 702 as it is based upon Victor's testimony as to the Trustee's state of mind, intentions, and goals, and is subjective and speculative. The

Trustee will have the opportunity to testify at trial and explain his own intentions and goals and the jury will be able to draw its own conclusions about his conduct without requiring the assistance of "expert" testimony. *See Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 883 (8th Cir. 1998) (where jurors are capable of drawing their own inferences from the available evidence, expert opinion testimony is not helpful to the trier of fact). Further, Victor offers no explanation for how his personal experience qualifies him to testify as an expert on the Trustee's behavior, or why that experience is a sufficient basis for his opinion and is reliably applied to the facts. This is another instance where the Court must "take the expert's word for it." *Daubert II*, 43 F.3d at 1319. This testimony should be excluded.

**E.    The Court Should Exclude Victor's Testimony Because it is Likely to Confuse and Mislead the Jury and Unfairly Prejudice Crowley.**

Even if expert testimony satisfies Rule 702, the Court may still exclude it if warranted under Rule 403. *Downing*, 753 F.2d at 1243. Under that rule, the Court may exclude *any* evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. "The aura of special reliability and trustworthiness surrounding expert testimony makes this balancing test even more important to ensure a fair trial." *United States v. Anderson*, 584 F.2d 849, 852 (6th Cir. 1978).

In addition to the arguments stated above, the Court should exclude Victor's expert testimony because it will confuse and prejudice the jury, in violation of the Federal Rules of Evidence. *See* Fed. R. Evid. 403. The circumstances surrounding Coram's decision to enter Chapter 11 bankruptcy were unusual and complicated, dictated largely by federal Stark II regulatory requirements rather than an inability to fund its ongoing operations without a capital restructuring. Presenting Victor's testimony, in which he opines about conventional wisdom in bankruptcy and concludes, based upon that conventional wisdom alone and no analysis of Coram's specific circumstances, that Coram was harmed by making cash payments prior to entering bankruptcy and by remaining in bankruptcy until 2004 will mislead and prejudice the jury. By Victor's own admission, Coram suffered no harm from the cash payments, the company increased in value during the bankruptcy, and Crowley did a good job as CEO.

11

Accordingly, Victor's opinions and testimony are self-contradictory, irrelevant and will only lead to jury confusion and unfair prejudice. The Court should exclude Victor's testimony under Rule 403.

## V.    CONCLUSION

For the reasons set forth above, the Court should grant this motion *in limine* and exclude the expert testimony of Michael Temin and Scott Victor.

Dated: August 20, 2007                          CONNOLLY BOVE LODGE & HUTZ LLP

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
Marc J. Phillips - #4445
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

Attorneys for Defendant
DANIEL D. CROWLEY

#559489v1

12