# Exhibit A



1650 Arch Street, 22nd Floor, Philadelphia, PA 19103-2097
Tel: (215) 977-2000 ■ Fax: (215) 977-2740 ■ www.WolfBlock.com

Michael L. Temin
Direct Dial:      (215) 977-2256
Direct Fax:      (215) 405-3856
E-mail:   mtemin@wolfblock.com

June 5, 2007

Barry E. Bressler, Esquire
Schnader, Harrison, Segal & Lewis, LLP
1600 Market Street - Suite 3600
Philadelphia, PA  19103-7213

Re:    Arlin M. Adams, Chapter 11 Trustee vs. Daniel D. Crowley, et al.
       Case No. 04-1565, United States District Court District of Delaware

Dear Mr. Bressler:

You have asked my opinion as to whether the United States Bankruptcy Court for the District of Delaware would have confirmed the Debtors' First Amended and Restated Joint Plan ("Plan") in the bankruptcy cases of Coram Healthcare Corporation and Coram, Inc., Case Nos. 00-3299 and 00-3300 in the United States Bankruptcy Court for the District of Delaware but for the relationship between Daniel D. Crowley ("Crowley") and Cerberus Partners, L.P. ("Cerberus").

In my opinion, the bankruptcy court would have confirmed the Plan in the absence of a Crowley-Cerberus relationship although it might have required a modification of the Plan releases.

1.      Information reviewed

I have reviewed the documents and notes of testimony listed on Schedule A.

2.      Coram bankruptcy

Coram Healthcare Corporation ("CHC") and Coram, Inc. (collectively, "debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the United States

Barry E. Bressler, Esquire
June 5, 2007
Page 2

Bankruptcy Court for the District of Delaware as Case Nos. 00-3299 and 00-3300 on August 8, 2000. The debtors filed a Joint Plan of Reorganization and a Disclosure Statement contemporaneously with the commencement of the cases.

On October 10, 2000 the bankruptcy court approved the Debtors' Disclosure Statement, authorized the solicitation of votes on the Plan and scheduled a confirmation hearing to begin on December 1, 2000. On October 11, 2000 a First Amended and Restated Joint Plan and a First Amended and Restated Disclosure Statement were filed. The Debtors retained plan exclusivity so that no competing plan could be filed then.

The Plan provided for cancellation of all shareholder interests, issuance of 100% of the equity to the Noteholders who held all of the Debtor's outstanding unsecured notes in the approximate amount of $252 million and payment of $2 million to other general unsecured creditors.

On December 19, 2000, the Affidavit of Meade Monger Certifying the Ballots Accepting or Rejecting Debtors' Plan Reorganization certified that 100% of those creditors voting in Class CHC 2 (CHC general unsecured claims), Class CHC 3 (CHC Notes Claims) and Class Coram 2 (Coram Notes Claims) had accepted the Plan.

In December 2000 the bankruptcy court heard testimony in support of the confirmation of the Plan. On December 21, 2000, the bankruptcy court concluded that the Plan could not be confirmed based upon the relationship between Crowley and Cerberus. It stated:

> . . . I think I have to determine in deciding whether to confirm this plan under 1129(a)(3), I must conclude that it is proposed in good faith and that the plan proponents have acted in good faith. I just do not want to be in a position to conclude on this record that that is so. I cannot conclude on this record that that is so.
>
> I think that the contractual relationship between Cerberus and the CEO, Mr. Crowley, did taint the process, and I think that, if anything, the ultimate fairness of the process in bankruptcy is a paramount principle to be protected by the Bankruptcy Court.
>
> . . .
>
> We are at a terrible place. The Equity Committee, even on its numbers, which I agree with the Creditors' Committee's counsel and their valuation expert and the cross-examination of the Equity Committee expert does point out the questionable nature of that valuation.
>
> I think under any of the numbers the company is insolvent today.

Barry E. Bressler, Esquire
June 5, 2007
Page 3

In 2001 the Debtors filed a Second Joint Plan. After hearings the bankruptcy court denied confirmation of the Second Plan under section 1129(a)(3) of the Bankruptcy Code on the basis of lack of good faith.

In February 2002 the bankruptcy court granted motions requesting the appointment of a Chapter 11 trustee. The Trustee's Amended Joint Plan of Reorganization was the subject of hearings between September 30, 2003 and April 20, 2004. On October 5, 2004 the court issued an opinion stating it would confirm the Trustee's Plan. Two issues discussed by the court in that opinion are significant to my opinion:

      (a)    Valuation of the debtor was discussed in detail. The court accepted the going concern valuation of the Trustee's experts of $220 million. Opinion October 5, 2004 at 35.

      (b)    The Trustee's Plan contained third party releases of the Noteholders and third party claims against the Trustee, the Equity Committee and their respective agents and professionals which the court found could not be approved under Third Circuit law. The court, however, concluded its opinion by stating that the Trustee's Plan was otherwise confirmable and that it would confirm the Plan if it was modified in accordance with its opinion. In other words, the invalidity of certain of the Plan releases was not an impediment to confirmation.

3.    <u>Discussion</u>

Bankruptcy judges like to confirm plans of reorganization in Chapter 11 cases. Failure to do so frequently is a precursor to conversion to Chapter 7 and liquidation. The bankruptcy court was told on December 21, 2000 that "the failure by this Court to confirm this plan leaves us [the Debtors] with no solutions. . . . So the ultimate effect of not confirming the plan is we'll go into next year, we'll have incredibly serious problems. . . ."

Section 1129 of the Bankruptcy Code is entitled "Confirmation of Plan". Subsection (a) provided 13 requirements for confirmation of a plan of reorganization. Section 1129(a) states:

The court shall confirm a plan only if all of the following requirements are met:

      (1)    The plan complies with the applicable provisions of this title.

      (2)    The proponent of the plan complies with the applicable provisions of this title.

      (3)    The plan has been proposed in good faith and not by any means forbidden by law.

      (4)    Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the

Barry E. Bressler, Esquire
June 5, 2007
Page 4

plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

(5)    The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and

        (ii)    the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

    (B)    the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

(6)    Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

(7)    With respect to each impaired class of claims or interests—

    (A)    each holder of a claim or interest of such class—

        (i)  has accepted the plan; or

        (ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

    (B)    if section 1111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

Barry E. Bressler, Esquire
June 5, 2007
Page 5

(8)   With respect to each class of claims or interests—

     (A)   such class has accepted the plan; or

     (B)   such class is not impaired under the plan.

(9)   Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that —

     (A)   with respect to a claim of a kind specified in section 507(a)(1) or 507(a)(2) of this title, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

     (B)   with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of this title, each holder of a claim of such class will receive—

        (i)  if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

        (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

     (C)   with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

(10)  If a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider.

(11)  Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

(12)  All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid

Barry E. Bressler, Esquire
June 5, 2007
Page 6

                or the plan provides for the payment of all such fees on the
                effective date of the plan.

    (13)    The plan provides for the continuation after its effective date of
                payment of all retiree benefits, as that term is defined in section
                1114 of this title, at the level established pursuant to subsection
                (e)(1)(B) or (g) if section 1114 of this title, at any time prior to
                confirmation of the plan, for the duration of the period the debtor
                has obligated itself to provide such benefits.

Among the requirements for Plan confirmation is section 1129(a)(8) which requires that each class of claims or interests either be not impaired or accept the plan. If all of the requirements of section 1129(a) were met except for the requirements of subparagraph 8, a plan could be confirmed pursuant to section 1129(b) which provides for "cram down."

I have analyzed the Plan against the confirmation standards to determine if the Plan met the confirmation standards.

### Section 1129(a)(1) - The Plan Complied with the Applicable Provisions of the Bankruptcy Code

The applicable provisions of the Bankruptcy Code are those governing the Plan's internal structure and drafting. 7 Collier on Bankruptcy ¶ 1129.03[1] (15th ed. rev. 2004).

As required by section 1122(a) of the Bankruptcy Code, Article IV of the Plan classified each claim against and equity interest in the debtors into a class containing only substantially similar claims or equity interests. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Article IV of the Plan designated classes of claims against the Debtors and classes of equity interests.

Pursuant to section 1123(a)(2) of the Bankruptcy Code, Article V of the Plan specified each class of claims that was not impaired under the Plan.

Pursuant to section 1123(a)(3) of the Bankruptcy Code, sections 7.3, 7.4, 7.5, 7.8 and 7.10 of the Plan specified the treatment of each class of claims and equity interests that was impaired under the Plan

Pursuant to section 1123(a)(4) of the Bankruptcy Code, the Plan provided the same treatment for each claim or equity interest in a particular class.

Pursuant to section 1123(a)(5) of the Bankruptcy Code, Articles IX and XI of the Plan provided adequate means for its implementation, including, without limitation, the cancellation of all CHC equity interests, the dissolution of CHC, the operation and management of Reorganized Coram, the issuance of new Coram stock and New Secured Notes, the distributions

Barry E. Bressler, Esquire
June 5, 2007
Page 7

to be made to holders of allowed claims and the means for making such distributions, and the operation and administration of the Plan Administration Agreement.

Pursuant to section 1123(a)(6) of the Bankruptcy Code, the Plan provided in section 11.5 that the Amended and Restated Certificate of Incorporation of Reorganized Coram would prohibit the issuance of non-voting equity securities to the extent required by section 1123(a) of the Bankruptcy Code.

In accordance with section 1123(a)(7) of the Bankruptcy Code, the provisions of the Plan were consistent with the interests of creditors and equity security holders and with public policy with respect to the manner of selection of officers and directors of Reorganized Coram.

Pursuant to section 1123(b)(1) of the Bankruptcy Code, the Plan impaired or left unimpaired classes of claims, secured or unsecured, and of interests.

Pursuant to section 1123(b)(2) of the Bankruptcy Code, the Plan in Article X provided for the assumption of any unexpired lease or executory contract which had not expired by its terms on or prior to the Effective Date, which had not been assumed or rejected with the court's approval or which was the subject of a motion to reject or set forth in a Rejection List.

Section 13.4 of the Debtors' Plan contained releases. The Debtors and all entities claiming through them released claims against the Debtors and the Official Committee of Unsecured Creditors ("Creditors Committee") and their constituents. The Debtors, Reorganized Coram and the Creditors Committee and their constituents released each other from claims arising from the bankruptcy case, except for willful misconduct. In *PWS Holding Corp.*, 228 F.3d 224 (3d Cir. 2000), the court held that the release of professional and members of the creditors' committees for their actions during the chapter 11 case were permissible except for gross negligence or willful misconduct.

In its 2004 opinion confirming the Trustee's Plan the bankruptcy court disapproved the release of third party claims against a non-debtor and other third party claims. Nevertheless, it confirmed the Trustee's Plan subject to modification of these provisions. Even if the bankruptcy court disapproved some of the release provisions in the Plan, this would not have prevented confirmation of the Plan as modified.

## Section 1129(a)(2) - The Proponents of the Plan Complied with the Applicable Provisions of the Bankruptcy Code

The primary concern is compliance by the plan proponents with the disclosure and solicitation requirements of sections 1125 and 1126. 7 Collier on Bankruptcy ¶ 1129.03[2] (15th ed. rev. 2004).

In connection with the solicitation of votes on the Plan, the proponents disclosed to the holders of impaired claims "adequate information" as required by section 1125(a) of the Bankruptcy Code as evidenced by the court's approval of the Disclosure Statement.

Barry E. Bressler, Esquire
June 5, 2007
Page 8

**Section 1129(a)(3) - The Proposed Plan was Proposed in Good Faith and Not by any Means Forbidden by Law**

On the assumption that Crowley had no relationship with Cerberus the circumstances surrounding the proposal of the Plan demonstrated that the Plan was proposed in good faith and not by any means forbidden by law.

In its opinions of December 21, 2000 and 2001, the court discussed the good faith standard. Only the relationship between Crowley and Cerberus was discussed.

The "good faith" objection filed by the Official Committee of Equity Security Holders focused on allegations that management of Coram and strategic decisions concerning the capital structure had been controlled by the Noteholders, that Coram surprised its shareholders by the filing of its bankruptcy petition, that Coram exploited the exclusivity provisions of section 1121 of the Bankruptcy Code and that the Plan was not based on a fair appraisal. Except for the relationship between Crowley and Cerberus and its possible effect on the process — which was the subject of testimony at the confirmation hearings and the basis on which the court twice denied confirmation — the other complaints are typical of complaints by holders of equity interests which are wiped out by a plan of reorganization and would not have prevented confirmation.

The Plan was proposed to reorganize the capital structure of the Debtors and to comply with Stark II. The Plan would have achieved the goal of reorganization of debtors envisaged by the Bankruptcy Code.

**Section 1129(a)(4) - Payments to be Made for Services in connection with the Case were Subject to Court approval**

All payments to be made from the debtors for services or costs in connection with the debtors' chapter 11 case, or in connection with the Plan and incident to the chapter 11 case, to professionals and others, the approval of which is required under the Bankruptcy Code, were subject to approval by the bankruptcy court.

**Section 1129(a)(5) - Plan Proponent Disclosed the Identity and Affiliations of Reorganized Coram Management**

The plan proponents disclosed the identity and affiliations of the proposed directors and officers of Reorganized Coram in the Disclosure Statement and the Plan Supplement. The appointment or continuance of the proposed directors and officers of Reorganized Coram was consistent with the interests of the creditors and with public policy (absent the Crowley-Cerberus relationship).

Barry E. Bressler, Esquire
June 5, 2007
Page 9

### Section 1129(a)(6) - Approval of Rate Changes by Applicable Governmental Regulatory Commission

Coram's business did not involve the establishment of rates over which any regulatory commission had jurisdiction.

### Section 1129(a)(7) - "Best Interests" of Holders of Claims and Equity Interests

The liquidation analysis attached to the Disclosure Statement as Exhibit E demonstrated that the holders of impaired claims against the debtors who did not accept the Plan would receive less in a chapter 7 liquidation than the value that was to be realized by the holders of such claims under the Plan. It also demonstrated that equity interests would receive no distribution in a chapter 7 liquidation.

### Section 1129(a)(8) - Acceptance of the Plan by Each Class Entitled to Vote for the Plan

Classes CHC P, CHC 1, Coram P, Coram 1 and Coram 3 were unimpaired under the Plan and were deemed to have accepted the Plan without voting. Bankruptcy Code § 1126(f).

Classes CHC 2, CHC 3, and Coram 2, each of which was impaired, accepted the Plan, i.e., creditors that held at least two-thirds in amount and more than one-half in number of the claims voting in each such class accepted the Plan.

Classes CHC 4 and Coram 4 (Equity Interests) were deemed to have rejected the Plan by operation of law without voting. § 1126(g). Nevertheless, the Plan was confirmable because the court would have concluded that it satisfied section 1129(b)(1) of the Bankruptcy Code with respect to such non-accepting classes of interests. See discussion below.

### Section 1129(a)(9) - Treatment of Priority Claims

The Plan provided in sections 6.1, 6.2, 7.1 and 7.6 for the treatment of administrative expense claims, priority tax claims and claims entitled to priority pursuant to sections 507(a)(3)-(8) of the Bankruptcy Code in the manner required by section 1129(a)(9) of the Bankruptcy Code.

### Section 1129(a)(10) - Acceptance of the Plan by Each Impaired Class

The Plan was accepted by Classes CHC 2, CHC 3 and Coram 3 determined without including any acceptance of the Plan by any insider. Each of those accepting classes was impaired under the Plan.

Barry E. Bressler, Esquire
June 5, 2007
Page 10

### Section 1129(a)(11) - Feasibility of the Plan

Confirmation of the Plan was not likely to be followed by the liquidation or the need for further financial reorganization of Reorganized Coram. See the discussion at pages 80-81, sections V111.c and XVII of the Disclosure Statement and testimony at the confirmation hearing.

### Section 1129(a)(12) - Payment of Statutory Fees

The Plan provided in section 15.1 that on or before the Effective Date all fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6), as determined at the Confirmation Hearing, were to be paid in cash.

### Section 1129(a)(13) - Payment of Retiree Benefits

The Plan provided in section 10.5 that as of and on the Effective Date, all retiree benefits were to be assumed unless previously terminated, modified or rejected, or subject to a motion to terminate, modify or reject, or identified as to be rejected on list filed before the Confirmation Date.

### Section 1129(d) - Principal Purpose Was Not Tax Avoidance

No governmental unit or taxing authority requested the court to deny confirmation of the Plan on grounds that the principal purpose of the Plan was the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933.

### Cram-Down - Section 1129(b)

Section 1129(b) of the Bankruptcy Code states:

> (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

Barry E. Bressler, Esquire
June 5, 2007
Page 11

    (2)    For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:

    . . .

    (C)    With respect to a class of interests—

    . . .

    (ii)    the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property

See 7 Collier on Bankruptcy ¶ ¶ 1129.04, 1129.05 (15th ed. rev. 2004). Here there is no discrimination since no equity class was to receive anything. Id. at ¶ 1129.04[3]. The key components of "fair and equitable" are the absolute priority rule and the rule that no creditor be paid more than it is owed. Id. at ¶ 1129.04[4][a].

The absolute priority rule does not permit any junior class to participate in any way in a reorganization so long as any senior class dissents and is not paid in full. Id. at ¶ 1129.04[4][a][i]. The second component of "fair and equitable" is that no creditor can be paid a "premium" over the allowed amount of its claim. Id. at ¶ 1129.04[4][a][ii].

There were no classes of interests junior to Classes CHC 4 and Coram 4. Accordingly, the Plan could be crammed-down upon Classes CHC 4 and Coram 4. Therefore, the Plan was "fair and equitable" with respect to Classes CHC 4 and Coram 4 provided that no senior class was receiving more than it was owed. This determination is a function of the enterprise value of the Debtors.

The court heard conflicting valuation testimony. The debtors' testimony was that the debtors were insolvent and equity had no economic interest in Coram. Eric Scroggins of Chanin Capital Partners testified for the Debtors that the enterprise value of Coram was approximately $207 million. William McGahan of UBS Warburg testified that the enterprise value of Coram as a going concern was in the range of $170 million to $221.5 million. Equity's expert testimony was to the contrary. Daniel Lynn of Deloitte and Touche testified for the Equity Committee that Coram's going concern value was $283 million.

The various experts retained by the parties were consistent in their valuations over time. The proponents' (Debtors and Trustee's) experts valued the debtors from a low of $150 million to a high of $246 million. The Equity Committee's experts Deloitte and Touche valued the Debtors from a low of $283 million to a high of $376 million. See Schedule B. The major differences between the valuations of the debtors and the Trustee, on the one hand, and the Equity Committee, on the other, were (i) the utilization by the debtors of the debtors' projections while the Equity Committee's experts felt management's projections were too conservative and (ii) a

Barry E. Bressler, Esquire
June 5, 2007
Page 12

disagreement between the experts as to the peer companies to be used for valuation purposes. In 2004 the court resolved these issues in favor of the Trustee's experts. Since the same issues were presented in 2000, in my opinion the court would have resolved them in 2000 the same way it did in 2004.

It is reasonable to conclude that if the bankruptcy court had to choose between competing valuations after the hearings in December 2000 that it would have accepted the debtors' valuation with modifications similar to those which it made in 2004. On that basis, the creditors would not have received under the debtor's Plan more than 100% of their claims or, to put it another way, equity had no value and was not treated unfairly by receiving nothing under the Plan.

     4.    <u>Curriculum Vitae</u>

I am Of Counsel to Wolf, Block, Schorr and Solis-Cohen LLP where I was a partner for 40 years. I have been practicing bankruptcy law since 1970. I am an Adjunct Professor at the University of Pennsylvania Law School teaching a course in Chapter 11. I am the Scholar in Residence of the American College of Bankruptcy. Schedule C is a expanded Curriculum Vitae.

     5.    <u>Compensation</u>

I am being compensated at my regular hourly rate of $625 for time spent on this engagement.

     6.    <u>Testimony</u>

In the past four years I testified as an expert in April 2004 in the Court of Common Pleas of Montgomery County, Pennsylvania in the case of *Steerman v. Steerman;* I was deposed in January 2004 in the case of *Eitan v. Ravin, Sarasohn.* Superior Court of New Jersey, Law Division, Bergen County. Docket No. BER L-003362-02 and in February 2004 in the case of *Edwards v. Duane, Morris & Heckscher, LLP.,* Civil Action No. 01-cv-4798, United States District Court for the Eastern District of Pennsylvania.

I reserve the right to supplement or amend this opinion should additional information be made available to me or to respond to any expert report proffered by or on behalf of the defendant.

Very truly yours,

Michael L. Temin

MLT/aec

# SCHEDULE A

Coram Health Corp. – 12/21/2000 Hearing Transcript

Judge Walrath's 12/21/2001 Opinion & Order <u>In Re Coram Healthcare</u>, Case No. 00-3299

Judge Walrath's 10/5/2004 Opinion <u>In Re Coram Healthcare</u>, Case No. 00-3299

Debtor's First Amended & Restated Joint Plan Pursuant to Chapter 11 of the
U.S. Bankrutpcy Code dated 10/10/2000

Chapter 11 Trustee's Second Amended Joint Plan of Reorganization

Second Amended Disclosure Statement with Respect to the Chapter 11 Trustee's
Amended Joint Plan of Reorganization|

Chapter 11 Trustee's Amended Joint Plan of Reorganization

Certification of Counsel (Schnader) Regarding Modification of Chapter 11 Trustee's Second
Amended Joint Plan of Reorganization in Accordance with Opinion & Order dated 10/5/2004

Second Amended Plan of Reorganization of the Official Committee of Equity Security
Holders of Coram Healthcare Corporation and Coram, Inc.

Third Amended Disclosure Statement of the Equity Committee of Coram Healthcare
Corporation in Connection with the Second Amended Plan of Reorganization of Coram
Healthcare Corporation and Coram, Inc.

Complaint (Trustee v. former Directors & Officers of Coram)

Complaint for Declaratory Judgment (Genesis v. former Directors & Officers of Coram)

Order dated 4/24/2006 Granting Motion of the Chapter 11 Trustee for Approval of
Settlement with Outside Directors

Settlement Agreement dated 4/5/2006 between Trustee and Outside Directors

Report of Justice Joseph T. Walsh, Retired, Expert Witness for Plaintiff Genesis Ins. Co.

Debtors' Joint Plan Pursuant to Chapter 11 of the United States Bankruptcy Code.

Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code

Objection of the United States Trustee to the Disclosure Statement and Plan of Reorganization

Objection of Coram Resource Network, Inc., and Coram Independent Practice Association, Inc., to the Disclosure Statement in Support of Plan of Reorganization of Debtors and Debtors in Possession

Debtors' Reply to Objections to Adequacy of Debtors' Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code

Order (I) Approving the Disclosure Statement, etc.

Affidavit of Service dated November 10, 2000

Certification of Publication, Wall Street Journal, November 10, 2000

Certification of Publication, New York Times, November 14, 2000

Certification of Publication, New York Times, September 14, 2000

Certification of Publication, Wall Street Journal, September 19, 2000

Objection of the Official Committee of Unsecured Creditors in the Matter of Coram Resource Network, Inc. and Coram Independent Practice Association, Inc. to Debtors' Application to Approve Disclosure Statement Relating to Chapter 11 Plan of Reorganization

Objections of the Official Committee of Equity Security Holders of Coram Healthcare Corp. to the Joint Plan of Reorganization Proposed by Debtors Coram Healthcare Corp. and Coram, Inc.

Objection of TBOB Enterprises, Inc. to Confirmation of Plan Reorganization

Affidavit of Meade Monger Certifying the Ballots Accepting or Rejecting Debtors' Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code

Debtors' Second Joint Plan Pursuant to Chapter 11 of the United States Bankruptcy Code

Excerpt from docket of Bankruptcy No. 00-03299 from United States Bankruptcy Court for the District of Delaware

Notes of testimony of confirmation hearings on Plans of Reorganization

# SCHEDULE B





## Coram Healthcare Corp. Valuations

# SCHEDULE C

## MICHAEL L. TEMIN

| | | |
|---|---|---|
| Education: | Yale University, B.A. *magna cum laude* | 1954 |
| | University of Pennsylvania Law School, LL.B. *cum laude* | 1957 |
| | Editor University of Pennsylvania Law Review | |

| | | |
|---|---|---|
| Employment: | Wolf, Block, Schorr & Solis-Cohen LLP, Of Counsel | 2/06 – |
| | Wolf, Block, Schorr & Solis-Cohen LLP, Partner | 2/66 – 1/06 |
| | Professional Responsibility Partner | 1/95 – 4th Qtr. 2002 |
| | Member Office of General Counsel | 4th Qtr. 2002 – |
| | Wolf, Block, Schorr & Solis-Cohen, Associate | 11/59 – 1/66 |
| | Assistant United States Attorney, Eastern District of PA | 5/58 – 11/59 |

| | | | |
|---|---|---|---|
| Admissions: | Pennsylvania | | 1958 |
| | Delaware | | 2000 |
| | U.S. Court of Appeals | – 3d Cir. | 1958 |
| | | – 2d Cir. | 1986 |
| | | – 9th Cir. | 1992 |
| | | – 11th Cir. | 2002 |
| | U.S. Supreme Court | | 1969 |

| | | |
|---|---|---|
| Teaching: | University of Pennsylvania Law School | Lecturer – 1982-90, Adjunct Professor – 1990-93, 1994-95, 2002 – |

| | | |
|---|---|---|
| CLE Presentations: | | **2002** |
| | January 2002 | National CLE Conference |
| | | Law Education Institute |
| | | Steamboat, Colorado |
| | | Mootness: Is It the Ultimate Defense? |
| | | |
| | | Eastern District of Pennsylvania Bankruptcy Conference |
| | | Thirteenth Annual Forum |
| | | Lafayette Hill, PA |
| | | Third Circuit Review – Moderate and Present |
| | | |
| | February 2002 | 22nd Annual Debtor-Creditor Law Conference |
| | | University of Wisconsin Law School |
| | | Madison, WI |
| | | Mootness: Is It the Ultimate Defense? |
| | | |
| | March 2002 | Washington College of Law at American University |
| | | Washington, DC |
| | | Talk to Corporate Reorganization Class |

| | |
|---|---|
| April 2002 | PBI – Ethics Potpourri, Philadelphia, PA |
| | PBA – Legal Ethics and Professional Responsibility Committee Update |
| | ABA – Business Law Section, Boston Creditors' Committees as Plaintiffs |
| June 2002 | Employee Benefits in the Post-Enron World PBI – Philadelphia Bankruptcy Perspective: Protecting Benefits |
| August 2002 | Seventh Annual Bankruptcy Institute: Arbitration and Mediation in Bankruptcy PBI – Philadelphia |
| September 2002 | Lorman Education Services Legal Ethics in Pennsylvania Philadelphia |
| October, 2002 | Commercial Mortgage Foreclosures: Bankruptcy Issues PBI – Philadelphia, Mechanicsburg |
| November, 2002 | PBA House of Delegates Ethics 2000 Rules 1.7-1-12 |

<u>2003</u>

| | |
|---|---|
| January, 2003 | Eastern District of Pennsylvania Bankruptcy Conference Fourteenth Annual Forum Princeton, NJ Third Circuit Review – Moderate and Present |
| February, 2003 | 23rd Annual Debtor-Creditor Law Conference University of Wisconsin Law School Madison, WI Can a Creditors' Committee Bring Avoidance Actions? |
| April, 2003 | PBI – Ethics Potpourri , Philadelphia, PA |
| | PBA – Legal Ethics and Professional Responsibility Committee Update |
| | PBA – Board of Governors, House of Delegates Ethics 2000 Rules 2.1-3.10, 1.18 |

## 2004

January, 2004
Eastern District of Pennsylvania Bankruptcy Conference
Princeton, NJ
Panel – Moderate and Present

February, 2004
24th Annual Debtor-Creditor Law Conference
University of Wisconsin Law School
Madison, WI
Deepening Insolvency: Another Risk for Lenders

April, 2004
PBI – Ethics Potpourri, Philadelphia, PA
Legal Ethics and Professional Responsibility Update

June, 2004
PBI – Managing Your Legal Workforce Without Running
Afoul of Employment and Ethical Duties
Pittsburgh
Mechanicsburg
Philadelphia
Norristown

July, 2004
PBI – Asset Protection Planning for the Less Wealthy Client
Philadelphia

December, 2004
PBI – Pennsylvania Rules of Professional Conduct
Satellite

## 2005

January, 2005
Eastern District of Pennsylvania Bankruptcy Conference
Princeton, NJ
Third Circuit Review – Moderate and Present

February, 2005
25th Annual Debtor-Creditor Law Conference
Madison, WI – Sales

PBI – Rules of Professional Conduct
Philadelphia

August, 2005
PBI – Issues in Commercial Mortgage Foreclosures
Philadelphia

November, 2005          American College of Bankruptcy
                        Moderate Panel: How Will 2005 Amendments to the
                        Bankruptcy Code Affect Chapter 11 Advice and Practice.
                        San Antonio, TX

                        Delaware Bankruptcy Committee
                        Disclosure Requirements
                        Wilmington, Delaware

## 2006

January, 2006           Eastern District of Pennsylvania Bankruptcy Conference
                        Princeton, NJ
                        Third Circuit Review – Moderate and Present

March, 2006             American College of Bankruptcy
                        Moderate Panel
                        Washington, DC

April, 2006             American College of Bankruptcy First Circuit Fellows:
                        Reorganization: Then and Now
                        Boston College Law School

June, 2006              26th Annual Debtor-Creditor Law Conference
                        Madison, WI – Substantive Consolidation

                        PBI – Rules of Professional Conduct
                        Philadelphia

---

Publications:    Contributing editor:    Bankruptcy Litigation Manual
                                         Pennsylvania Ethics Handbook
                                         Collier Bankruptcy Practice Guide

                 Author of materials for various CLE programs

---

| Bar Associations: | American Bar Association |
|---|---|

**American Bar Association**
Business Bankruptcy Committee, Section of Corporation, Banking and Business Law
- Rules Subcommittee     (Chairman – 1985-92)
- Chapter 11 Subcommittee    (Vice Chairman – 1992-96)

**Pennsylvania Bar Association**
- House of Delegates, Member    1985-89, 1990 –
- Legal Ethics & Professional Responsibility Committee (Co-Chair – 2004 -)
- Bankruptcy Committee, Section of Corporation, Banking and Business Law (Chairman 1979)

**Philadelphia Bar Association**
- Professional Guidance Committee   (Chairman – 1985)
- Member Board of Governors    1988
- Section of Corporation, Banking – Business Law
  - Executive Committee :    (Chairman – 1988)
  - (Vice Chairman– 1987)
  - (Treasurer – 1986)
  - (Secretary – 1985)
  - Bankruptcy Committee   (Chairman – 1979-86)

**Eastern District of Pennsylvania Bankruptcy Conference**
- Steering Committee    (Chairman – 1995-96)
- (Vice Chairman– 1994-95)

**Association of Professional Responsibility Lawyers**

**Honors:**
Fellow American College of Bankruptcy (Regent – 1997-2003; Scholar in Residence – 2005 -)
Grant Irey Lecturer    1988, 2003-04
Order of the Coif
Pennsylvania Bar Association Special Achievement Award for work on Legal Ethics and Professional Responsibility Committee
Thomas H. O'Boyle Visiting Distinguished Practitioner – 1985

**Listings:**
Best Lawyers in America
Best Lawyers in Philadelphia
Chambers USA
Who's Who in America
Who's Who in American Law
Who's Who in the East
Who's Who in the World