IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM INC., a Delaware Corporation,<br><br>        Plaintiffs,<br><br>v.<br><br>DANIEL D. CROWLEY, DONALD J. AMARAL, WILLIAM J. CASEY, L. PETER SMITH, and SANDRA L. SMOLEY,<br><br>        Defendants. | Case No. 04-1565 (SLR) |

**DEFENDANT'S MOTION *IN LIMINE* NO. 5 TO EXCLUDE PRIVILEGED DRAFTS OF UNSENT MAY 2002 LETTERS**

August 20, 2007

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
Marc J. Phillips - #4445
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

*Attorneys for Defendant DANIEL D. CROWLEY*

## I.    INTRODUCTION

Defendant Daniel D. Crowley moves *in limine* to exclude the Trustee Arlin M. Adams from introducing any privileged communications between Crowley and his former counsel Scott Schreiber, including May 2002 drafts of a never-sent letter to Stephen Feinberg and an insert to that letter drafted by Schreiber.  *First*, Delaware law protects privileged attorney-client communications, and the Crowley-Schreiber exchanges of drafts are clearly privileged.  *Second*, the contents of those draft documents are not relevant to the present claims against Crowley, and any probative value they possess is outweighed by the risk of unfair prejudice to Crowley.

## II.    BACKGROUND

In the weeks after Arlin Adams was appointed the Chapter 11 Trustee of Coram on March 7, 2002, Adams gave his assent to Crowley's continued effort to be fully compensated for the non-Coram work Crowley had previously performed for Cerberus.  (Ex. A, March 3, 2003 Hearing Tr. at 14:19-15:7)  Crowley and Cerberus were engaged in an increasingly bitter dispute over Crowley's unpaid compensation.  On or about May 6, 2002, Crowley drafted a letter to Stephen Feinberg, Cerberus's chairman and the individual who had personally hired Crowley as a Cerberus consultant.  Crowley forwarded this draft for legal advice to his attorney, Scott Schreiber, then a partner at the Much Shelist firm in Chicago.  Schreiber marked up the draft and discussed his suggestions with Crowley.  Schreiber also drafted an "insert" – an entirely new third page – that Crowley had not requested and that Schreiber never discussed or shared with Crowley.  Crowley then prepared a May 8, 2002 version of the letter, which he again forwarded to Schreiber for legal counsel.  Schreiber again marked up the copy and made handwritten notes to himself as he did so.  Crowley and Schreiber discussed Schreiber's comments and, soon thereafter, Crowley decided not to send the letter to Feinberg.  (Ex. B, Feb. 21, 2003 ltr. from Ward to Cook)

When the Equity Committee served Crowley in early 2003 with a subpoena in connection with the Trustee's Motion to extend Crowley's employment at Coram, pending Coram's bankruptcy proceedings Much Shelist handled Crowley's responsive production of documents. At the time, Schreiber was heavily engaged in other cases and asked two of his partners,

Anthony Valiulis and John Ward, to oversee the Crowley production. Confused about the history of the draft letters, Valiulis and Ward produced them, along with the "insert" Crowley had never seen and did not even know existed. In Schreiber's own words:

> [W]hen I found out that they were produced I was shocked, floored, humiliated, embarrassed, angry, and I asked my partners how it was that these were produced, and they told me that they produced them by mistake. . . . It should not have happened.

(Ex. C, Schreiber depo. at 166:11-21) The production was undoubtedly inadvertent and caused by a misunderstanding or mistake on the part of Schreiber's team at Much Shelist.

As soon as Crowley and his counsel realized the inadvertent production, Mr. Ward of the Much Shelist firm contacted the Trustee's counsel and counsel for the Equity Committee, clarifying that the unsent drafts were privileged and demanding their return. The Trustee agreed to return the documents; the Equity Committee did not. Over the next few days, lawyers at Much Shelist prepared a motion demanding return of the documents and had Crowley execute a declaration stating that the letters were never sent and that he had never seen the "insert" until it was inadvertently produced. (Exs. D, E [Schreiber Depo Exs. 27, 28]). After consulting with lawyers for the Trustee, with whom Crowley's counsel was working "in lockstep" at the time, whose opinion on that decision "influenced our ultimate decision" Crowley's counsel made a decision not to file the motion. (Ex. C, Schreiber depo. at 173:5-175:1)

At the Equity Committee's February 25, 2003 deposition of the Trustee, at which Crowley was neither present nor represented, the Equity Committee's lawyer Richard Levy marked the draft letters and the "insert" as exhibits and asked questions about them. A week later, at the March 3, 2003, bankruptcy hearing, Levy again introduced the documents and questioned Adams and Crowley about them. Schreiber, Levy, and the Trustee's counsel Wilbur Kipnes all acknowledged on the record that the insert was written by Schreiber; indeed, Mr. Kipnes elicited from Crowley on re-direct that Crowley saw the insert for the first time only a week before the hearing and that the language of the insert was "absolutely wrong." (Ex. A, March 3, 2003 Hearing Tr. at 109:8 – 110:10) The Trustee's counsel Barry Bressler explicitly elicited from the Trustee that the unsent drafts had no impact on the Trustee's understanding of

the case:

> Q: Have you seen anything in the documents and unsent drafts that Mr. Levy has shown you that is not consistent with Mr. Crowley's representation to you that he's no longer getting paid by Cerberus?
>
> A: I have seen nothing. If I did, I would be upset about it and probably take steps.

(Ex. A, March 3, 2003 Hearing Tr. at 70:10-15)

The issue of the draft documents and "insert" then disappeared from view. The Trustee made no mention of them in the Complaint he filed against Crowley and the Directors in December 2004. (D.I. 1) And with good reason: all of the facts upon which his single cause of action is based necessarily occurred prior to the denial of Coram's bankruptcy plans. Then, in his answers to Crowley's First Set of Interrogatories, served on December 20, 2006, the Trustee reversed his earlier position, cited the draft documents as demonstrating Crowley's culpability, and even quoted the "insert" in an effort to attribute its contents to Crowley, rather than Schreiber.[1] (Ex. F at 12) After investigating the issue, Crowley's current counsel sent a letter to the Trustee on March 8, 2007, asserting that the drafts were privileged and demanding their return. (Ex. G, Ltr. from Slaughter to Kipnes, Mar. 8, 2007). The Trustee refused. (Ex. H, Ltr. from Kipnes to Slaughter, Mar. 16, 2007) At his deposition, the Trustee repeatedly referenced the draft letters, but he has never identified (nor can he identify) how Crowley's unsent communications to Feinberg, which were authored by Schreiber and never seen by Crowley, evidence a breach of fiduciary duty or caused harm to Coram.

### III.   ARGUMENT

**A.    Because the Privilege Has Not Been Waived with Respect to the May 2002 Drafts and Insert, the Trustee May Not Introduce Them At Trial**

The Trustee should be prohibited from introducing evidence in violation of Delaware's attorney-client privilege. *See Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 861 (3d Cir. 1994) (where the claims and defenses before it arise under state law, a federal court should apply the state law of attorney-client privilege). The attorney-client privilege protects

---

[1] The Trustee has also included the draft letters on his exhibit list and designated portions of Mr. Schreiber's deposition discussing the letters for use at trial.

3

"confidential communications made for the purpose of facilitating the rendition of professional legal services to the client [ ] between himself or his representative and his lawyer or his lawyer's representative." Del. R. Evid. 502(b); *see also Interfaith Housing Del., Inc. v. Town of Georgetown*, 841 F. Supp. 1393, 1396-97 (D. Del. 1994) (interpreting Delaware law). It is clear that the draft letters are privileged documents. Crowley communicated them directly to Schreiber, his counsel of record, for legal advice regarding the ongoing dispute between Crowley and Cerberus over payment for Crowley's non-Coram work. The drafts were sent only to counsel and were not shared with anyone outside the attorney-client sphere until they were inadvertently produced.

Nor can there be any doubt that the production of the drafts and "insert" was inadvertent. The documents at issue were produced on February 16-17, 2003. On February 17, Mr. Crowley was informed of the error and, that day, his counsel contacted attorneys for the Trustee and the Equity Committee to seek their return. (Ex. E ¶¶ 7-9) Mr. Schreiber testified that the production was a "mistake" by other lawyers at his firm that left him "shocked" and "angry." (Ex. C, Schreiber depo. at 164:23 – 166:17) While the voluntary disclosure of privileged communications constitutes a waiver, Del. R. Evid. 510, Delaware case law provides that an inadvertent disclosure will only be treated as a waiver if, under a balance of factors, the Court deems that the privilege has been waived. *Monsanto Co. v. Aetna Casualty & Surety Co.*, 1994 WL 315238, at * 6 (Del. Super. May 31, 1994). Those factors are: "(1) the reasonableness of the precautions taken to prevent inadvertent disclosure, (2) the time taken to rectify the error, (3) the scope of discovery and extent of disclosure, and (4) overall fairness judged against the care or negligence with which the privilege is guarded." *Id.* (citing *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 104 F.R.D. 103, 105 (S.D.N.Y. 1985)).

The *Monsanto* balancing test cuts strongly in favor of finding that there was no waiver and that the documents should be excluded from evidence. *First*, the Much Shelist firm performed a thorough review of the documents for privilege, redacting or withholding a number of privileged notes and communications. (Ex. E ¶¶ 2-6) Indeed, attorney notes were redacted from the specific privileged documents that were inadvertently produced. (*Id.* ¶ 6) The

4

reviewing attorneys, however, appear to have been confused about the documents, believing that Schreiber had been cc'd on a letter actually sent. (*Id.* ¶ 4)

*Second*, Crowley's counsel reviewed thousands of pages of documents, ultimately producing 1635 pages of material. (*Id.* ¶ 3) Only 5 of those pages, representing two drafts and one insert, were privileged and inadvertently produced. "Certainly, the smaller the number of privileged documents in relation to the overall production, the greater the likelihood that the producers did not make a knowing, voluntary waiver of privilege." *Monsanto*, 1994 WL 315238, at *6 (only seven papers inadvertently produced from review of thirty-nine boxes); *Lois Sportswear*, 104 F.R.D. at 105 (22 documents out of 16,000 pages inspected and 3,000 produced); *In re Wyoming Tight Sands Antitrust Cases*, 1987 WL 93812, at * 4 (D. Kan. Sept. 11, 1987) (145 documents out of 1.5 million pages produced).

*Third*, Crowley attempted to rectify the disclosure promptly by giving notice of the inadvertent disclosure and seeking return of the privileged documents; indeed, the Trustee agreed to return the documents. (Ex. E, ¶ 9; Ex C, Schreiber depo. at 168:3-11) While Crowley's counsel did not object to the admission of the documents at the March 3, 2003 bankruptcy hearing, that fact is hardly dispositive. *See, e.g., Int'l Bus. Machines Corp. v. Comdisco, Inc.*, 1992 WL 149502, at *1 (Del. Super. Ct. June 22, 1992) (holding privilege not waived even though "the document was produced 14 months before the privilege was asserted, it was introduced and discussed at five depositions, including [the author's],... and plaintiffs provided the names of [the responsible IBM employees] as the authors of the memo in answer to an interrogatory months before asserting the privilege"). Once the March 3 hearing was completed, Crowley had no reason to move for the return of the document. The drafts had no further consequence to Crowley until four years later, when the Trustee named the drafts as evidence supporting the Trustee's claim of Crowley's breach of fiduciary duty.

*Fourth*, and most importantly, "overall fairness" demands that the privilege not be deemed waived. Crowley's then-counsel Much Shelist was following the guidance of the Trustee's counsel at Schnader Harrison when Much Shelist decided not to file a motion seeking return of the documents. (Ex. C, Schreiber depo. at 173:4 – 175: 1) Those very same counsel

5

would now hold Crowley's failure to file a motion against him. But, in situations like this, where "both parties had a hand in the delay," the lapse of time in rectifying an inadvertent disclosure should not be held against the disclosing party. *See Maldonado v. New Jersey*, 225 F.R.D. 120, 130 (D.N.J. 2004). Furthermore, the Trustee recognized the privileged nature of the documents—in fact, his counsel agreed to return them to Crowley—and elicited testimony at the March 3, 2003 hearing to demonstrate both that the documents were in fact privileged and that they were not meaningful in the eyes of the Trustee. If Crowley was fooled into believing that the draft documents would not be used against him by a Trustee who had disclaimed the importance of those documents, one can hardly blame him. The Trustee's late effort to rely on the documents, referenced for the first time two full years after the filing of the Complaint, and his subtle effort in his Interrogatory Responses to imply that Crowley was the author of the insert (when the Trustee's own counsel stated otherwise before the Bankruptcy Court) only highlight the unfairness of his turning these privileged documents against Crowley.

**B.     The Draft Documents Should be Excluded Pursuant to FRE 403**

Independent grounds exist for excluding the Trustee from introducing the draft documents and Schreiber's insert. Evidence may be excluded when its probative value is outweighed by the risk of unfair prejudice. Fed. R. Evid. 403. The Complaint against Crowley makes no mention of the draft documents and turns entirely on Crowley's behavior between November 1999, when he was hired by Coram, and December 2001, when Coram's second restructuring plan was denied. Likewise, the Trustee's damages expert Jeffrey Baliban only calculates damages based on the Bankruptcy Court's refusal to confirm Coram's restructuring plan, which the Trustee alleges caused Coram to remain in bankruptcy another three years. While the Trustee may have been personally upset by the contents of the privileged draft letters and, especially, the Schreiber insert—which, of course, Crowley never saw—the Trustee has never articulated how Crowley's state of mind or actions in May 2002 are relevant to the claims he has brought in this lawsuit.

6

More critically though, the fact that Crowley never saw the Schreiber insert until eight months after it was written, and never sent Feinberg the draft letters he had forwarded to Schreiber for legal guidance, demonstrates the very minimal probative value of these documents. By contrast, the privileged drafts would unfairly prejudice Crowley because they portray him as frustrated and angry at Coram's bankruptcy counsel and about the disintegration of his relationship with Cerberus. The Trustee's use of the Schreiber insert, in particular, would be an inflammatory appeal to class prejudice because its request for millions of dollars in payments from Cerberus would serve only one purpose: to make Crowley appear wealthy. That is not a valid basis for admitting evidence. *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 239 (1940); *United States v. Mitchell*, 172 F.3d 1104, 1108-09 (9th Cir. 1999). Moreover, neither of the drafts are in the least bit relevant to the Trustee's claim that Crowley caused the failure of Coram's bankruptcy plans. These privileged documents, drafted five months after the second confirmation hearing, cannot impact the Trustee's proof of either his liability or damages case. But they will cause Crowley unfair prejudice and confuse the jury. They should be excluded.

## IV.   CONCLUSION

For the reasons set forth above, the Court should grant this motion *in limine* and exclude any evidence pertaining to the May 2002 draft letters and insert.

Dated: August 20, 2007                          CONNOLLY BOVE LODGE & HUTZ LLP

*[signature]*

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
Marc J. Phillips - #4445
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
(302) 658-9141

   -and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

Attorneys for Defendant
DANIEL D. CROWLEY

#559457v1