IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM INC., a Delaware Corporation,<br><br>                      Plaintiffs,<br><br>  v.<br><br>DANIEL D. CROWLEY, DONALD J. AMARAL, WILLIAM J. CASEY, L. PETER SMITH, and SANDRA L. SMOLEY,<br><br>                      Defendants. | Case No. 04-1565 (SLR) |

**DEFENDANT'S MOTION *IN LIMINE* NO. 6 TO EXCLUDE EVIDENCE CONCERNING SUBSEQUENT SALE OF CPS**

August 20, 2007

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
Marc J. Phillips - #4445
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

*Attorneys for Defendant DANIEL D. CROWLEY*

## I.   INTRODUCTION

Defendant Daniel D. Crowley moves in limine to exclude the Trustee Arlin M. Adams from introducing any evidence pertaining to the sale of the CPS business in 2004. Evidence of a later sale is wholly irrelevant under Delaware law to whether the initial sale in 2000 was a reasonable exercise of business judgment.[1] Moreover, this evidence is highly likely to confuse the issues and mislead the jury in its task of evaluating whether Crowley's behavior in 1999 and 2000 constituted a breach of fiduciary duty.

## II.   BACKGROUND

When Crowley took over as the CEO of Coram, Inc. in 1999, Coram had previously engaged the investment banking firm Deutsche Bank Alex. Brown ("Deutsche Bank") to conduct an auction of the company's Coram Prescription Services (CPS) unit. The decision to sell CPS had been made by Coram's then-CEO Rick Smith, its CFO Wendi Simpson, and its Chairman Donald Amaral; the engagement of Deutsche Bank had been approved by Coram's Board—all before Crowley joined Coram. After examining the merits of the proposed sale, new CEO Crowley concluded that CPS was draining money from Coram and was distracting management attention, and he allowed the auction to proceed as planned. Crowley had no financial interest in CPS and did not stand to gain in any way from its sale.

The CPS business, however, was underdeveloped and initially attracted only one bid, a $32 million bid from CVS ProCare. With Crowley's encouragement, the investment firm GTCR made a second bid, which Crowley negotiated up to $41.5 million. Deutsche Bank reviewed both the sale process and the financial terms and concluded, in a formal Fairness Opinion and in a presentation to the Board, that the deal was fair to Coram's shareholders. (Ex. A) Relying on the Deutsche Bank opinion and its own internal financial analysis, Coram's Board, in a meeting attended by Coram's outside bankruptcy counsel, unanimously approved the CPS sale. (Ex B, June 9, 2000 board minutes).

---

[1] Even were the Court to conclude that, for some reason, the business judgment rule did not apply, this evidence would not be relevant to an analysis of entire fairness either.

1

Recognizing that Crowley's behavior in approving the CPS sale unmistakably falls within the boundaries of Delaware's business judgment rule, the Trustee aims to confuse the jury and inflate his own damages figures by introducing evidence that GTCR re-sold the CPS unit three years later for substantially more than $41.5 million. The Trustee indicated his intent to raise the issue of the future sale both in written Interrogatory Responses and in his deposition. (*See* Ex. C (Trustee Interrogatory responses at 14) and Ex. D (Adams depo. at 202:5-204:2)). He would do so despite the fact that the Trustee himself argued before the Bankruptcy Court that the 2004 sale price was not an appropriate measure of damages. (Ex. E, Trustee's Post-Confirmation Hearing Reply Brief, p. 10)[2]

### III.    ARGUMENT

**A.    Evidence of the Subsequent CPS Sale is Not Relevant to Whether Crowley Breached His Fiduciary Duty to Coram**

Evidence is relevant only if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is not admissible." Fed. R. Evid. 402.

With respect to a corporate transaction like the sale of CPS, the jury will be asked to decide whether Crowley's approval of the sale constituted a reasonable exercise of business judgment.[3] *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (holding that business judgment rule protects the business decisions of directors who "acted on an informed basis, in

---

[2] The apparent reasoning of the Trustee's CPS claim against Crowley is that Crowley engineered the sale of a highly promising unit of Coram, at a deflated price, for the benefit of Cerberus, which, as a debtholder, stood to receive some portion of the proceeds as a payment on debt. The argument is bereft of logic. Cerberus, the other noteholders, and the shareholders shared an interest to see CPS sold for the best possible price. That is what Deutsche Bank, Coram's Board, and Crowley sought to accomplish. The Deutsche Bank fairness opinion is ironclad proof of this.

[3] The decision to sell CPS was undoubtedly a reasonable exercise of business judgment. (*See* D.I. 123 at 27-30) Similarly, the Board's and Crowley's decision to use the net proceeds of the CPS sale to pay off a portion of its revolving loan and a portion of the Series A notes was a reasonable exercise of business judgment. Indeed, the Trustee concedes in interrogatory responses that Coram was obligated to make the payments. Moreover, Crowley discussed with the Board that the proceeds of the sale would be used to pay down debt, and the Board unanimously approved the decision.

2

good faith and in the honest belief that the action was taken in the best interests of the company"). Should the Trustee demonstrate that Crowley is not entitled to the business judgment presumption, then the burden shifts to Crowley to prove that the challenged transaction was "entirely fair," *see Orman v. Cullman*, 794 A.2d 5, 22 (Del. Ch. 2002), *i.e.*, that Coram received "the highest value reasonably available under the circumstances." *Cinerama, Inc. v. Technicolor, Inc.*, 663 A.2d 1156, 1163 (Del. 1995).

Under either test, however, the jury's evaluation will extend only to those facts and circumstances as of the 2000 decision to sell CPS and not to later events or conditions. *See Gagliardi v. TriFoods Int'l*, 683 A.2d 1049, 1052 (Del. Ch. 1996) (noting that a fiduciary "*acting in a good faith pursuit of corporate purposes*" cannot be held liable for the corporation's loss "no matter how foolish the investment may appear in retrospect") (emphasis in original); *Del Noce v. Delyar Corp.*, 78 F.R.D. 325, 328 (S.D.N.Y. 1978) ("It is not a breach of fiduciary duty to act in a fashion which tested by hindsight now appears to be improvident."); *Cinerama*, 663 A.2d at 1162-63 (describing factors to be considered in "entire fairness" review).

If, as Delaware courts have held, the hindsight view of a transaction is not relevant to determining whether or not a fiduciary exercised his fiduciary duties or business judgment, it follows that evidence of future transactions involving the divested unit is irrelevant and should be inadmissible at trial. *See* 2 Jack B. Weinstein, Weinstein's Federal Evidence, § 401.04[2][a] (Joseph M. McLaughlin, ed., Matthew Bender 2d ed. 1997), at 401-15 ("Relevance . . . exists only as a relation between an item of evidence and a matter *properly provable in the case*." (emphasis added)).That is especially the case where, as here, the parties did not create a record relating to the subsequent transaction in discovery. The Trustee has presented no admissible evidence with respect to the later sale of CPS, and allowing him to do so at trial would both unfairly prejudice Crowley and create a distracting mini-trial involving events wholly unrelated to Crowley or Coram and involving parties not before this Court.

**B.  Evidence of the Subsequent CPS Sale Risks Confusing the Issues and Misleading the Jury**

Evidence also may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. The presentation of evidence about the subsequent sale of the CPS unit <u>four years after Coram sold it to GTCR</u> is very likely to confuse the issues and mislead the jury. To prove its liability case, the Trustee must demonstrate that Crowley breached his fiduciary duty in 2000, when Coram's sale of CPS was consummated. Allowing testimony and evidence concerning the four years of ongoing business activities after Coram and Crowley severed their connections with CPS will require both the Trustee and Crowley to put on extensive evidence about GTCR's management of CPS, its acquisition and cash infusion strategies, and the shifting business climate for specialty pharmaceuticals companies in the middle part of this decade. Where "evidence of marginal probative worth necessitates lengthy rebuttal, it imparts disproportionate weight to the issue" and warrants exclusion. *See Magnivision, Inc. v. Bonneau Co.*, 115 F.3d 956, 961 (Fed. Cir. 1997) (citing 22 Wright & Graham, Fed. Practice & Proc.: Evidence, § 5217 (1978)). Because so much attention would be focused on the post-Coram CPS, the jury would not only be distracted from the central issue of Crowley's perfectly legitimate behavior in 2000; it would also be left with the mistaken impression that a breach of fiduciary duty can be established whenever a company, in hindsight, came out on the short end of an arm's length transaction.

Moreover, allowing evidence of the future sale price could confuse the jury into abandoning the requirement of causation and assessing damages based on the difference in the two sale prices. *Cf. Zoll v. Ruder Finn, Inc.*, 2004 WL 527056, at * 4 (S.D.N.Y. Mar. 16, 2004) (excluding evidence of Jordache's worldwide sales figures in suit for privacy violations because doing so "carrie[d] the unacceptable risk of misleading the jury into thinking that such impressive dollar amounts have some connection to the amount" sought by the plaintiff). The Trustee previously stated in pleadings that "[d]amages cannot be calculated" by comparing the 2004 sale price with the 2000 sale price "because the nature of the company changed

dramatically after Coram sold it;" yet this subtract-the-difference logic is precisely what he now advocates for the purpose of establishing liability. (*Compare* Ex. E (Trustee's post confirmation hearing reply brief, p. 10) *with* Ex. C (Trustee's interrogatory responses, at 14) *and* Ex. D (Adams depo. at 202:5-204:2)) Such an "unrealistic" and preposterous theory can serve only to confuse the issues before the jury. The tangential and irrelevant issue of CPS's subsequent 2004 sale has no place in this trial.

## IV.   CONCLUSION

For the reasons set forth above, the Court should grant this motion *in limine* and exclude any evidence regarding GTCR's later sale of the CPS business.

Dated: August 20, 2007                              CONNOLLY BOVE LODGE & HUTZ LLP

 

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
Marc J. Phillips - #4445
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA  94111
(415) 391-5400

Attorneys for Defendant
DANIEL D. CROWLEY

#559479v1