| | ($ Thousands) | |
| --- | --- | --- |
| | 2003[22] | 2000 |
| Cash flow from operations before bankruptcy-related expenses, as reported in annual SEC Form 10-K for year-end 2003 and 2000. | $28,960 | $44,144[23] |
| Adjustment for sale of CPS segment's impact on working capital.[24] | | (9,694) |
| Adjustment to normalize capital expenditures and depreciation. In the long run, capital expenditures will equal depreciation expense. This adjustment normalizes any single-period timing differences.[25] | (6,953) | (23,227) |
| Add back interest expense, net of the tax shield. This is done to reflect debt-free cash flows to all capital (debt & equity) investors.[26] | 1,015 | 16,073 |
| Normalized annual free cash flow. | $23,022 | $27,295 |

*Table 1—Normalized Annual Free Cash Flow*

16.    In Table 2, we show the value of these two normalized annual free cash flow levels, given the actual bankruptcy exit date ("2004 Exit") and the but for bankruptcy exit date ("2000 Exit"). We applied the single-period capitalization method to estimate present value:

---

[22] We use year-end 2003 as a starting point to estimate year-end 2004 free cash flow because 2003 is the most current audited financial statements available for Coram.

[23] Based on CPS's negative $1.9MM in earnings before interest expense, taxes, and depreciation (EBITDA), reported by Coram in its 2000 10-K (page F-30), we assume that none of the 2000 reported cash flow from operations are attributed to CPS, which was sold in July of 2000 for $41.3MM. Thus, we do not need to adjust this figure downward to make a fair comparison to the 2003 figures.

[24] In 2000, Coram reported significant decreases in working capital (inventories and accounts receivable less accounts payable) that increased cash flow from operations as a result of the sale of CPS. Since we do not expect these cash flows to recur we reduce cash flows to reflect this one-time windfall. See calculation on **Exhibit 4**.

[25] Normalized free cash flow should account for both long-term capital investment and long-term depreciation. When normalizing cash flows, depreciation expense should be set equal to capital expenditures. Since Coram charged approximately $23MM in depreciation expense in 2000 and because we are assuming it normally spends about $8MM on capital, we must adjust the depreciation add-back down to $8MM by reducing it an additional $15MM

[26] Cash flow from operations as reported by Coram includes a reduction in cash flows resulting from interest expense (net of tax). In order to determine cash flows before any impact of financing activities we must add back this after-tax interest deduction.

13

| $ amounts in thousands (except capitalization factor) | 2004 Exit | 2000 Exit |
|---|---|---|
| Normalized annual free cash flow | $23,022 | $27,295 |
| Annual free cash flow at year-end, 2005 (c)[27] | 24,591 | 34,440 |
| Single-Period Capitalization Factor (1/(r-g)) | 10.2 | 10.2 |
| Value of Coram as of year-end 2004 (c/(r-g)) | $251,384 | $352,078 |

*Table 2—Comparative Values of Coram Based on 2003 vs. 2000 Bankruptcy Exit*

17.     In Table 3, we compare the present value of future Coram free cash flows as of year-end 2004 assuming exit from bankruptcy at year-end 2000 relative to the actual bankruptcy exit in year-end 2004. The difference in values under these two scenarios, $100.7 million, is the loss or damages resulting from the four-year delay in exiting bankruptcy. These calculations are presented on **Exhibit 5**.

| | Value as of Year-End 2004 ($ thousands) |
|---|---|
| Value of Coram had it exited bankruptcy at year-end 2000 | $352,078 |
| Value of Coram given its actual year-end 2004 bankruptcy exit | $251,384 |
| Difference in value of Coram resulting from extended bankruptcy | $100,694 |

*Table 3—Damages Resulting from Extended Bankruptcy*

18.     In determining the capitalization rate, we applied the Capital Asset Pricing Model ("CAPM") to calculate an appropriate cost of equity capital at a risk level consistent with a similar alternative investment in this industry. CAPM states that the expected return of an investment, $r_e$, equals the rate on a risk-free security, $r_f$, plus a market risk premium, $r_m - r_f$. The market risk premium is adjusted by a systematic risk coefficient, beta or $\beta_e$, which represents the particular industry's systematic risk; that is, a measure of the volatility of a particular industry relative to the market as a whole. The CAPM formula is, therefore,

$$r_e = r_f + \beta_e (r_m - r_f)$$

19.     For $r_f$ we use the yield on the 30-year Treasury Bond (5.0 percent) as of December 1, 2004, as reported by Bloomberg LP. To measure $(r_m - r_f)$, we use the historical return on the market index relative to the return on US government securities.[28]  Finally, to derive Coram's beta $(\beta_e)$ we examine the historical movement (or correlation) of the peer group return-on-total-capital relative to the market as a whole.[29]

20.     Using the CAPM formula and adjusting for Coram's size, we derive an expected return of approximately 12.6 percent for Coram capital as of year-end 2004 (that is, from January 2005 onward). We use this rate net of the expected inflationary growth of approximately 2.9 percent to capitalize Coram's terminal cash flows under the two scenarios depicted above. See calculations on **Exhibit 6**.

## V.   MARKET ANALYSIS

21.     To corroborate this analysis, we utilized the various valuation analyses prepared at various points in time to estimate any diminution in business value occurring from December 2000 through December 2004. We were provided the following valuations from 2000:

---

[27] We rolled the year-end 2003 and year-end 2000 annual debt-free cash flow amounts forward at the risk-free rate of return available at each period. In other words, we added 2 years of interest to year-end 2003 cash flow and 5 years of interest to year-end 2000 cash flow.

[28] We also incorporate a small firm premium of 4.0 percent as reported by Ibbotson Associates SBBI Valuation Edition 2005 Yearbook, Appendix C, table C-1. The long-horizon expected equity risk premium and micro-cap size premium are based on the differences of historical arithmetic mean returns from 1926 - 2004 using the S&P 500 as the market benchmark. pp.70-71, 127-37.

[29] Our peer index includes Apria Healthcare Group, Gentiva Health Services Inc., American Homepatient Inc., and Option Care, Inc. The daily equity returns for the peer index is regressed against the returns of the S&P500 index. We then adjust the beta to remove the effects of financing so that our risk factor is indicative of Coram's underlying asset return risk and not its method of financing these assets.

15

| Valuation Firm | Valuation Date | Value Estimate ($ thousands) |
|---|---|---|
| UBS Warburg | September 30, 2000 | $195,773 |
| Deloitte & Touche | November 15, 2000 | $292,000 |
| Chanin Capital Partners[30] | December 31, 2000 | $189,391 |
| 2000 10-K Value estimate[31] | December 31, 2000 | $215,500 |

22.　　The average of these values is $223.166 million. Excluding the much higher Deloitte value reduces the average value estimate of Coram to about $200 million at December 31, 2000.

23.　　A report prepared by SSG Capital Advisors, L.P. and Ewing Bemiss & Co. estimates the actual value of Coram 2½ years later at $219.8 million as of June 30, 2003. This supports an annual compound growth rate of about 4 percent.[32]

24.　　Our analyses of comparable companies operating in this industry show that, in general, this industry enjoyed significant growth in revenues and returns on equity during the 2001-to-2004 period. While the value of Coram increased during this period, the increase it enjoyed was appreciably below general industry levels. Additionally, actual returns to Coram debt and equity holders during this period on average were below expected rates of return as measured by the Company's weighted average cost of capital.

25.　　Over the period January 2001 to December 2004, one measure of the market conditions facing Coram is the performance of its peers. Coram identifies its peers on its proxy statement for the period ending August 5, 1999, as Apria Healthcare Group, American Homepatient, Gentiva Health Services, and Option Care.[33] These companies are also used as comparables in the various valuations performed on Coram. The performance of these

---

[30] Chanin Capital Partners had issued a previous report, dated July 31, 2000, valuing Coram at $207 million.

[31] The value of Coram at December 31, 2000 can also be estimated by adding to the year-end market value of equity all book values of long-term debt and future payments on operating leases.

[32] December 2000 value of $200 million × $1.04^{2.5}$ = $220 million.

[33] According to the March 13, 2000 SEC Form 8-K for Olsten Corporation, Olsten Corporation split off its health services business as an independent public company – Gentiva Health Services.

companies can be measured by the cumulative return of the companies' equity (*i.e.*, cumulative appreciation of each company's stock price), where each return is weighted by its relative market capitalization. During this period, the market capitalization return grew at compound annual rates of 18 percent. See **Exhibit 7**.[34]

26.    Another metric for the growth of the industry is change in the peers' enterprise value. As shown in **Exhibit 8**, the average enterprise value compound annual growth rate for the peers over the period is approximately 13.7 percent. Therefore, if Coram's enterprise value grew at the same rate over that time period and we assume its value at December 2000 was $200 million, its value at the end of 2004 should have been about $334.1 million.[35] Further, if Coram had enjoyed a compound annual growth rate in value of 13 percent from December 2000 through June 30, 2003, its value would have been $275.6 million.[36] This compares to the $219.8 million in value measured by SSG Capital Advisors and Ewing Bemis at June 30, 2003, for a difference of $55.8 million through June 30, 2003.

## VI.    OTHER CORAM MATTERS

27.    Coram's December 31, 2001 10-K discusses the reduction of average wholesale price reimbursement rates on the antibiotic drug Vancomycin as well as four other anti-infective drugs. We analyzed the extent to which this could meaningfully explain Coram's below-market growth rates. We noted the following from Coram's 10-Ks:

*From the December 31, 2001 10-K, p. 34.*

> Effective July 1, 2001, the AWP for a certain brand of the antibiotic drug Vancomycin and four other anti-infective drugs were permanently reduced. Net revenue related to these drugs decreased $2.4 million or 21.4% to $8.8 million in 2001 from $11.2 million in 2000. The components of the net revenue reduction were an unfavorable pricing variance of $3.1 million related to the adverse AWP change offset by a favorable variance in volume, resulting in a net revenue increase of $0.7 million.

---

[34] Our preliminary estimates of infusion-weighted return grew at an even higher rate.

[35] For the purpose of this analysis, this value compares favorably to the value estimate at December 2004, reflected in Table 1 above based on the capitalization of free cash flows, had Coram exited bankruptcy in 2000.

[36] December 2000 value of $200 million $\times$ $1.1368^{2.5}$ = $275.6 million.

17

*From the December 31, 2002 10-K, p. 40*

Effective July 1, 2001, the AWP reimbursement rates for a certain brand of the antibiotic drug Vancomycin and four other anti-infective drugs were permanently reduced. Net revenue related to these drugs decreased $3.9 million or 33.3% to $7.8 million during the year ended December 31, 2002, from $11.7 million during the year ended December 31, 2001. The net revenue reduction included an unfavorable pricing variance of $6.5 million related to the adverse AWP reimbursement rate changes, which was offset by an increase in volume relating to such drugs.

28.    The most this seems to have affected revenues is by about $3.9 million for the year ended 2002. Assuming an EBITDA margin of 10 percent, the cash flow impact would be limited to about $400,000. Further, this reduction in AWP is explained in Coram's 10-Ks as being due to reimbursement rates as prescribed by Medicare, Medicaid, investigations performed by the Government Accounting Office as well as recommendations by the Department of Health & Human Services. To the extent Coram's peers were similarly affected by these events, our analysis of the peers already takes these issues into account.

## VII.   CONCLUSION

29.    Indirect costs of bankruptcy include a range of unobservable opportunity costs. The testimony and evidence provided to me indicates the existence of these losses was recognized by Coram management at the time and by Mr. Crowley himself. The July 2001 Goldin report confirms the existence of business losses due to protracted bankruptcy, even as of that early date. We measured the damages to Coram based on the value associated with a protracted bankruptcy that lasted an additional four years as a result of the Crowley conflict. By examining Coram's reported cash flows and adjusting for non-recurring events as well as bankruptcy and financing related costs, we find that Coram lost approximately $100.7 million in value as a result of exiting from bankruptcy at year-end 2004 as opposed to year-end 2000. This reduction in value does not appear to be explained by any other market, industry or Coram-specific factors.

30.    We understand discovery is continuing in this matter. As such, we reserve the right to amend, change or update these comments as necessary. We also understand that, to the extent other experts opine on these issues, counsel may request our input or rebuttal.

Respectfully submitted,

June 11, 2007
Date

Jeffrey L. Baliban

Exhibit 1

# NERA
Economic Consulting

National Economic Research Associates, Inc.
1166 Avenue of the Americas
New York, New York 10036
+1 212 345 3000 Fax +1 212 345 4650
jeffrey.baliban@nera.com
www.nera.com

## Jeffrey L. Baliban
### Senior Vice President

Mr. Baliban is a Senior Vice President in the Securities and Financial Economics practice. Prior to joining NERA, he was a senior partner in the Disputes Advisory Services practice at KPMG, LLP. Mr. Baliban has devoted the majority of his 30 years of professional practice to the study of how internal operations and external market factors affect business results, and to the process of resolving complex commercial disputes. Mr. Baliban began his career in audit at Ernst & Ernst (now Ernst & Young) in 1977. He became a Certified Public Accountant in 1981. In the mid-1980s, his practice moved from audit to forensic accounting and economic valuation. In addition to his CPA, Mr. Baliban successfully completed the American Institute of Certified Public Accountants' business valuation accreditation (ABV) program, successfully completed all four exam levels of the American Society of Appraisers' business valuation program, and earned an M.A. in Economics at the University of Texas in 1995, concentrating in business and economic forecasting, statistical analysis and finance modeling.

Mr. Baliban has significant national and international experience, and has testified in various federal, state and municipal jurisdictions, in business valuation matters, measurement of economic value and/or damages in commercial disputes and business litigation matters, business interruption and lost profits, contract and tort damage claims, bankruptcy related matters, fraudulent conveyance and other insolvency matters, long-term construction contract issues, lender liability issues, intellectual property matters, antitrust and class certification matters, fraud, embezzlement and other forensic accounting investigations. His clients include corporations, law firms and commercial property and casualty insurance companies. Industries include, among others, banking and financial institutions, P&C insurance and reinsurance, petrochemical and energy, extraction and mining, healthcare, distribution, telecommunications, manufacturing, retail, real estate, technology, restaurants and food distribution, automobile dealerships, hotel and hospitality, insurance brokerage, professional practices, clothing and fashion. Mr. Baliban has significant experience in the litigation, discovery and testimony process. He has also written and spoken widely on accounting, economics, valuation and damages measurement issues.

# NERA
Economic Consulting

Page 2

## EDUCATION

M.A., Economics, 1995
UNIVERSITY OF TEXAS

B.S., Accounting, 1977
FAIRLEIGH DICKINSON UNIVERSITY

CPA/ABV

## PROFESSIONAL EXPERIENCE

| | |
|---|---|
| 2003- | NATIONAL ECONOMIC RESEARCH ASSOCIATES, INC. <br> *Senior Vice President.* Securities and Finance. |
| 1999-2003 | KPMG LLP <br> *Partner.* Dispute Advisory Services Leader.  Regional Partner-in-charge, southwest and western regions.  Insurance Services Group Leader. |
| 1980-1999 | CAMPOS & STRATIS LLP <br> *Partner, Vice Chairman, Southwest Region Managing Partner.*  Heavy commercial and industrial business interruption insurance disputes, forensic accounting and economic damages analysis. |
| 1977-1980 | ERNST & ERNST (now Ernst & Young) <br> *Auditor.*  Member of audit staff, concentrating in manufacturing, financial services and not-for-profit clients. |

## CERTIFICATIONS AND AFFILIATIONS

- Certified Public Accountant in Pennsylvania, Texas, and New York
- Member of the American Institute of Certified Public Accountants
- Member of the Pennsylvania Institute of Certified Public Accountants
- Member of the Texas Society of Certified Public Accountants (previously served on the Litigation Services and Management Services Committees)

# NERA
Economic Consulting

Page 3

- Accredited by the American Institute of Certified Public Accountants in Business Valuation
- Member of the American Society of Appraisers
- Certified Fraud Examiner
- Who's Who in the World; Who's Who in America in Finance and Industry
- Adjunct Professor of Economics at the University of Texas (formerly)

## TYPICAL CONSULTING PROJECTS

- Mr. Baliban's focus has been on resolving complex commercial and business disputes by analyzing, measuring and clarifying the often equally complex economic, accounting and valuation issues they engender. He has been the designated economic and financial damages expert in a broad range of contract and tort damage claims, representing both plaintiffs and defendants in a variety of industries. He typically provides economic analysis, economic valuation, forensic accounting and/or statistical studies in order to provide an independent analysis of the financial impact related to the issues at hand.

- Analysis of financial condition, solvency analysis and valuation studies in matters relating to fraudulent conveyance, misrepresentation in reporting and deepening insolvency, bankruptcy preference defense issues typically related to statistical analysis of transactions in determining subjective and objective tests related to ordinary course of business and other preference defenses, and a variety of other forensic accounting investigations.

- Consultant and analyst in various P&C insurance related issues including risk analysis in underwriting, measurement of risk transfer, ART modeling using probability models and Monte Carlo game theory on risk transfer, administration of claims run-off, insurer/reinsurer disputes, insurance agency valuation and other damages issues. Heavy commercial and industrial property damage insurance claims measurement, including property damage and cost accounting analyses, business interruption, contingent business interruption and extra expense claims, third-party liability matters, fidelity bond claims audits and subrogation actions.

- Economic analysis in intellectual property matters including measurement of lost profits damages/unjust enrichment, reasonable royalty and hypothetical negotiation estimation, market definition and elasticity of demand analysis. Application of audit and other investigative techniques to royalty reviews, including accuracy and completeness of licensee reporting, investigation of underreporting (intentional or unintentional), and objective analysis of systems and supporting information.

# NERA
Economic Consulting

Page 4

- Damages analysis in class action matters to identify financial impact on class members and the extent to which they meet typicality and commonality standards.
- Accredited business valuation analyst, providing independent measurement of ongoing business value in both dispute and non-dispute circumstances.
- Independent arbitrator in a variety of accounting matters including post-acquisition and purchase price disputes.

## REPRESENTATIVE LITIGATION PROJECTS

Analysis relating to allegations of deepening insolvency in the offshore drilling rig construction industry. Analyses pertain to cash flow models and identification of zone of insolvency.

Rebuttal testimony on the value of the Gas Fractionation Plant presented by owner in the form of a discounted future earnings model. Discussed model methodologies and appropriate techniques for reasonably estimating risk-adjusted discount rates.

Solvency analysis pertaining to claims of breach of fiduciary duty, misrepresentation and fraudulent conveyance relating to pre-bankruptcy leverage buyout.

Affidavit regarding business valuation methodologies and Uniform Standards of Professional Appraisal Practice, 2003.

Provided damages analysis in a matter arising between a managing general agent and two insurance carriers with whom it had previous agreements. Issues dealt with alleged wrongful termination of agreements. Provided valuation of lost profits, diminution of business value, and an overall economic analysis of relevant market forces driving the workers compensation line of business along with associated pricing forecasts.

Provided analysis of financial condition where the claim was that, due to accounting firm's alleged malpractice, the true financial condition of the plaintiff was not known by the directors. Analyzed Board of Directors reports, minutes and information provided.

Class certification hearing testimony on impact of alleged damages on class members.

Provided analysis of ability to pay in punitive damages matter involving a large Korean commercial contractor. Performed overall analysis of financial condition, availability and quality of net worth, liquidity and solvency issues.

**NERA**
Economic Consulting

Page 5

Provided damages analysis in a dispute between a major gasoline refiner and a corporation regarding co-branding of quick service restaurants and retail gasoline outlets. Performed economic analysis of long-term co-branding opportunities and valuation of existing locations.

Provided damages and valuation analysis in a dispute arising between two surety bond agencies. Allegations included breach of contract and tortious interference. Economic analysis of relevant market and forecast of commercial construction.

Provided damages analysis in a claim brought by a mid-western refiner arising from partial refinery destruction allegedly due to a negligent contractor. Performed economic analysis related to production, costing, demand and product pricing. Forecasted earnings based on historic and index trends and reconciled results to plant linear model governing production.

Provided damages analysis in dispute between two scaffolding manufacturers. Issues arose regarding patent infringement and alleged wrongful seizure of inventory. Performed economic analysis defining relevant market and forecast of retail and commercial construction.

Provided damages and valuation analysis in large construction defect matter related to a major Las Vegas resort. Economic analysis performed relating to gaming issues, hospitality issues, impact of 9/11 on the market, competition and resort life-cycle and other salient matters.

Provided damages in alleged patent infringement and false advertising claims arising between two competing manufacturers of gas refinery plant filtration systems for in-line live carbon feeds.

Performed accounting analysis of working capital issues and potential loss of earnings arising from a post-acquisition dispute between competitors in medical services and supplies. Performed economic analysis of relevant market and damages quantification.

Provided economic analysis between two states Utilities Commissions with regard to an agreement to swap power seasonally. This matter arose from lack of available supply connected with various impacts from energy deregulation. Economic analysis performed to outline and describe such economic impact.

**NERA**
Economic Consulting

Page 6

## PUBLICATIONS & CONTINUING EDUCATION COURSES

"Valuation of Out-of-Sight Inventory Losses," *Texas Insurance Law Reporter*, June 1984.

"Accounting for Economic Loss," *Texas Insurance Law Reporter* and *Texas Bar Journal*, July 1991.

"Loss Measurement—The Investigative Accountant's Initial Concerns," *Claims Magazine*, May 1992.

"NAFTA: New Concept or Inevitable Theory," *Dallas Business Journal*, April 1993.

"Economic Damages—The Time Element," *Dallas Business Journal*, September 1993.

"Mexico—Lessons for Us All," *Professional Review*, Spring 1995.

"Business Damages in Commercial Cases," *CPA Litigation Services Counselor*, August and September 1996.

"Economic Analysis of Environmental Damages," *The National Law Journal*, October 1996.

"FAQs About Y2K," *Texas Lawyer*, February 1999.

"Calculating Fines for Environmental Infractions," *Environmental Protection*, March 1999.

CLE Course-Financial Statements—What They Are and How to Read Them

CLE Course-Analyzing Financial Condition

CLE Course-Basics of Business Damages

CLE Course-Basics of Business Valuation

CLE Course-Damages in Commercial Litigation

CLE Course-An Economic Approach to Punitive Damages

CLE Course-First and Third Party Property Insurance Claims Financial Services

CLE Course-Accounting for Insurance Claims

CLE Course-Business and Economic Forecasting Basics—Statistical and Regression Models

# NERA
Economic Consulting

Page 7

## DEPOSITION AND TRIAL TESTIMONY (PREVIOUS FOUR YEARS)

*John Crane, Inc. v. Admiral Insurance Company, et al.,* 04 CH 08266, In the Circuit Court of Cook County, Illinois County Department, Chancery Division. (Deposition)

*Celebrity Cruises, Inc., et al. v. Essef Corporation, et al.,* 96 Civ 3135 (JCF), In the United States District Court for the Southern District of New York. (Deposition & Trial)

*James P. Stephenson, as Trustee for the estate of MJK Clearing, Inc., v. Deutsche Bank AG, et al.,* Civil No. 02-4845 RHK/AJB, and *Stockwalk Group, Inc., v. Deutsche Bank AG, et al.,* Civil No. 04-4164 RHK/AJB, United States District Court, District of Minnesota. (Deposition)

*Michael Vogt, Paul Beaumont, and Fred Breu on their own behalf and as representative plaintiffs on behalf of all similarly situated employees of Outboard Marine Corporation v. Greenmarine Holdings, LLC; Quantum Industrial Partners; and Quantum Industrial Holdings, LTD.,* Case No. 1:02-CV-02059-GEL., In The United States District Court for The Southern District of New York. (Deposition)

*Forrest W. Garvin and E-Netec, Corp. v. McGuire Woods, LLP, et al.,* County, File No. 02-CVS-19813, In the General Court of Justice, Superior Court Division for the State of North Carolina, Mecklenburg. (Deposition)

*Paceholder High Yield Fund, Inc., et al. v. Ranko Cucuz,* Civil Action No. 02-71778, In the United States District Court for the Eastern District of Michigan. (Deposition)

*Nassau County PBA v. Nassau County,* Interest Arbitration, 2002. (Hearing)

*Interline Energy Services, Inc., and Interline Resources Corporation v. Basin Western,* Eighth Judicial District, State of Wyoming, County of Converse, Civil Action No. 13629. (Deposition & Trial)

*Grinnell Fire Protection v. Road Sprinkler Fitters Union No. 669, U.A., United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the U.S. and Canada, AFL-CIO,* Case No. 5-CA-24521, Before the National Labor Relations Board. (Trial)

# NERA
Economic Consulting

Page 8

## TESTIMONY (CONT.)

*Teachers' Retirement System of Louisiana v. M. Bernard Aidinoff, et al., and American International Group, Inc.*, C.A. No. 20106-NC, In the Court of Chancery of the State of Delaware In and for New Castle County. (Deposition)

*CISI v. MemberWorks*, Case CV99-0362655 S, State of Connecticut, Judicial District of Fairfield at Bridgeport. (Deposition)

*Deep South Surplus of Texas, Arkansas, Tennessee and Georgia, Inc. v. Great American Insurance Company and The Ohio Casualty Insurance Company*, Case 00-03955, 134th Judicial District, Dallas County, Texas. (Deposition)

*Koch Petroleum Group LP, et al. v. Truck Crane Service Co, et al.*, C7-00-7606, District Court, State of Minnesota. (Deposition)

*State of Washington, Ex Rel., Public Disclosure Commission v. Washington Education Association*, 00-2-01837, In the Superior Court of the State of Washington, In and for the County of Thurston. (Deposition & Trial)

*Jordan B. Fishman, Ph.D. v. BioSource International, Inc., et al.*, CV 00-06426 ER (RNBx), United States District Court, Central District of California, Western Division. (Deposition)

*Willis of New York, Inc., et al v. Lockton Companies, Inc., et al.*, 00 Civ. 6476 (JSR), New York Southern District Court.

*Landmark Organization, Inc., et al. v. Monex Credit Company, et al.*, 00CC10279, Superior Court of the State of California. For the County of Orange. (Deposition)

*Michael Leonard and Michael Sawyer v. Farmers' Insurance Exchange, et al.*, GN-001634, In the District Court, Travis County, Texas, 98th Judicial District. (Deposition & Class Certification Hearing)

*Waco v. KHK*, H-98-1309, United States District Court for Southern District of Texas Houston Division. (Deposition & Trial)

*MCI Telecommunication v. Gilbert Texas Construction Corp.*, 3:97-CV-1180-G, District Court of the Northern District of Texas, Dallas Division. (Deposition & Trial)

**NERA**
Economic Consulting

Page 9

## TESTIMONY (CONT.)

*Main Street v. Shell Oil*, 97-10741-L, District Court, 193rd Judicial District, Dallas County, Texas.  (Deposition)

*Trinity Industries v. American Energy*, 97-06498, District Court, 191st Judicial District, Dallas County, Texas.  (Deposition & Trial)

*Antonia M. Igelsias v. Kawasho International (Guam) Inc., et al*, CV-1497-93, In the Superior Court of Guam.  (Deposition & Trial)

Exhibit 2

# Coram Health Care Corporation
## Documents Considered

### Bates Stamped Materials

| Start | End | Description |
|---|---|---|
| 1109010003007 | 1109010003040 | Report of Daniel R. Fischel Concerning Expert Testimony to be Given on Behalf of the Equity Committee (November 13, 2001). |
| CH-11 TRUSTEE 000345 | CH-11 TRUSTEE 000422 | Adams 3/25/02 Agenda with attached Crowley Presentation (March 25, 2002) |
| CH-11 TRUSTEE 003115 | CH-11 TRUSTEE 003162 | 3/25/02 Senior Management Presentation (March 25, 2002) |
| CH-11 TRUSTEE | CH-11 TRUSTEE | 1/9/03 Crowley Presentation (January 9, 2003) |
| /CrowleyAdmin006198 | /CrowleyAdmin006244 | Jerome Shestack, Esquire in the Matter of Coram Healthcare – Chapter 11 (November 14, 2003) (Exhibit 27) |
| CrowleyAdmin 006382 | CrowleyAdmin 006419 | Adams 2/6/03 Agenda, Coram Key Dates, Summary of Capital Expenditures, and  presentation (February 6, 2003) |
| CROWLEYKVN 006751 | CROWLEYKVN 006801 | 1/27/03 Crowley Presentation (January 27, 2003) |
| CROWLEYKVN 006697 | CROWLEYKVN 006750 | 1/9/03 Crowley Presentation (January 9, 2003) |
| CROWLEYKVN 006802 | CROWLEYKVN 006849 | 10/7/02 Crowley Presentation (October 7, 2002) |
| CROWLEYKVN 006903 | CROWLEYKVN 006946 | 3/25/02 Crowley Presentation (March 25, 2002) |
| CROWLEYKVN 006998 | CROWLEYKVN 007112 | Presentation "Turnaround at Coram Healthcare 1999-2001" |
| CROWLEYKVN 007113 | CROWLEYKVN 007175 | Presentation "Turnaround at Coram Healthcare Infusion (August 13, 2002) |
| CROWLEYKVN 007267 | CROWLEYKVN 007268 | Letter to Adams from Crowley with Daily Net Revenue Infusion (August 13, 2002) |
| CROWLEYKVN 007279 | CROWLEYKVN 007288 | Letter to Adams from Crowley with financial report for week ending 8/9/02 and addendum (August 12, 2002) |
| CROWLEYKVN 007289 | CROWLEYKVN 007303 | Letter to Adams from Crowley with financial report for week ending 8/2/02 and month of June (August 5, 2002) |
| CROWLEYKVN 007321 | CROWLEYKVN 007329 | Letter to Adams from Crowley with attached financial report for week ending 7/12/02 (July 15, 2002) |
| CROWLEYKVN 007366 | CROWLEYKVN 007374 | Letter to Adams from Crowley with financial report for week ending 6/21/02 (June 24, 2002) |
| CROWLEYKVN 007375 | CROWLEYKVN 007414 | Letter to Adams from Crowley with May 02 financial reports. (June 20, 2002) |
| CROWLEYKVN 007434 | CROWLEYKVN 007437 | Letter to Adams from Crowley with performance indicators late '99 – Apr. '02 (June 14, 2002) |
| CROWLEYKVN 007430 | CROWLEYKVN 007444 | Letter to Adams from Crowley with May 02 financial reports (June 3, 2002) |
| CROWLEYKVN 007455 | CROWLEYKVN 007466 | Letter to Adams from Crowley with May 02 financial report (June 3, 2002) |
| CROWLEYKVN 007487 | CROWLEYKVN 007490 | Letter to Adams from Crowley with financials and Daily Cash Report. (May 30, 2002) |
| CROWLEYKVN 007491 | CROWLEYKVN 007500 | Letter to Adams from Crowley with Daily Cash Report. (May 14, 2002) |
| CROWLEYKVN 007508 | CROWLEYKVN 007516 | Letter to Adams from Crowley with financial reports including charts. (May 13, 2002) |
| CROWLEYKVN 007522 | CROWLEYKVN 007529 | Letter to Adams from Crowley with financial report. (May 6, 2002) |
| CROWLEYKVN 007530 | CROWLEYKVN 007537 | Letter to Adams from Crowley with financial report. (April 29, 2002) |
| CROWLEYKVN 007538 | CROWLEYKVN 007544 | Letter to Adams from Crowley with financial report. (April 24, 2002) |
| CROWLEYKVN 007637 | CROWLEYKVN 007653 | Letter to Adams from Crowley with financial report. (April 22, 2002) |
| CROWLEYKVN 007847 | CROWLEYKVN 007861 | Letter to Adams from Crowley with recent letters from Crowley to the Board of Directors attached (March 11, 2002) |
| CROWLEYKVN 007944 | CROWLEYKVN 007952 | Letter to Adams from Crowley with financial report. (March 31, 2003) |
| CROWLEYKVN 007953 | CROWLEYKVN 007957 | Letter to Adams from Crowley with financial report. (February 17, 2003) |
| CROWLEYKVN 007977 | CROWLEYKVN 007991 | Letter to Adams from Crowley with Financial report. (February 3, 2020) |
| CROWLEYKVN 008009 | CROWLEYKVN 008022 | Letter to Adams from Crowley with financial report. (January 13, 2003) |
| CROWLEYKVN 008039 | CROWLEYKVN 008042 | Letter to Adams from Crowley with financial reports. (December 23, 2002) |
| CROWLEYKVN 008045 | CROWLEYKVN 008052 | Letter to Adams from Crowley with financial statement and Health Care Daily report. (December 4, 2002) |
| CROWLEYKVN 008090 | CROWLEYKVN 008099 | Letter to Adams from Crowley with financial statements. (December 2, 2002) |
| CROWLEYKVN 008100 | CROWLEYKVN 008100 | Letter to Adams from Crowley with financial report and press release. (November 4, 2002) |
| CROWLEYKVN 008109 | CROWLEYKVN 008117 | Letter to Adams from Crowley with financial statements. (October 30, 2002) |
| | | Letter to Adams from Crowley with financial report. (October 21, 2002) |

Exhibit 2

# Coram Health Care Corporation
## Documents Considered

### Bates Stamped Materials

| Start | End | Description |
|---|---|---|
| CROWLEYKVN 008118 | CROWLEYKVN 008120 | Letter to Adams from Crowley with Accredo Announcement. (October 17, 2002) |
| CROWLEYKVN 008121 | CROWLEYKVN 008147 | Letter to Adams from Crowley with financial report and testimonies. (October 14, 2002) |
| CROWLEYKVN 008158 | CROWLEYKVN 008178 | Letter to Adams from Crowley with financial report and newsletter. (September 30, 2002) |
| CROWLEYKVN 008179 | CROWLEYKVN 008191 | Letter to Adams from Crowley with financial report and statements. (September 23, 2002) |
| CROWLEYKVN 008203 | CROWLEYKVN 008212 | Letter to Adams from Crowley with financial report. (September 9, 2002) |
| CROWLEYKVN 008217 | CROWLEYKVN 008231 | Letter to Adams from Crowley with financial report and Synapis pamphlet (September 4, 2002) |
| CROWLEYKVN 008487 | CROWLEYKVN 008494 | Letter from Board from Crowley, financial statement, letter from Stanitz (CFO), letter from Sen. Campbell with attached letter from Dept. of Health and Human Services (January 22, 2001) |
| CROWLEYKVN 008495 | CROWLEYKVN 008498 | Letter from Crowley to Board of Directors (February 5, 2001) |
| CROWLEYKVN 008504 | CROWLEYKVN 008510 | Letter from Crowley to Board of Directors with financial reports. (March 9, 2001) |
| CROWLEYKVN 008532 | CROWLEYKVN 008547 | Letter from Crowley to Board of Directors with New '01 Financial Statements and consulting correspondence attached (June 20, 2001) |
| CROWLEYKVN 008551 | CROWLEYKVN 008553 | Letter from Crowley to Board of Directors (July 16, 2001) |
| CROWLEYKVN 008573 | CROWLEYKVN 008578 | Letter from Crowley to Board of Directors with signed contracts and personal note (October 11, 2001) |
| CROWLEYKVN 008583 | CROWLEYKVN 008583 | Letter to Board of Directors from Crowley (December 19, 2001) |
| CROWLEYKVN 008584 | CROWLEYKVN 008591 | Letter to Board of Directors from Crowley with financial reports, Email from Eric Hill, Press releases, Suspension Agreement (January 2, 2002) |
| CROWLEYKVN 008592 | CROWLEYKVN 008593 | Letter from Crowley to Board of Directors with financial report. (January 8, 2002) |
| CROWLEYKVN 008620 | CROWLEYKVN 008622 | Letter from Crowley to Board of Directors with program proposal (KERP) (January 15, 2002) |
| CROWLEYKVN 008623 | CROWLEYKVN 008627 | Letter from Crowley to Board of Directors with financial statements (February 28, 2002) |
| CROWLEYKVN 008629 | CROWLEYKVN 008637 | Letter from Crowley to Board of Directors with Bankruptcy Court decision on KERP (March 5, 2002) |
| CROWLEYKVN 008638 | CROWLEYKVN 008643 | Letter from Crowley to Board of Directors with preliminary award letters from Amgen and a copy of an ad (March 12, 2002) |
| CROWLEYKVN 009677 | CROWLEYKVN 009682 | Letter to Board of Directors from Crowley with Bankruptcy Court first day orders and Nestle response to bankruptcy (August 10, 2001) |
| CROWLEYKVN 009948 | CROWLEYKVN 009972 | Letter from Crowley to Board of Directors with attached memo and article. (January 14, 2002) |
| CROWLEYKVN 013255 | CROWLEYKVN 013259 | Letter to all employees from Crowley with audited financial statements (May 2, 2002) |
| CROWLEYKVN 013408 | CROWLEYKVN 013423 | Letter to Board from Crowley, letter from Department of Health & Human Services, Letter from Senator Ben Campbell, |
| CROWLEYKVN 013495 | CROWLEYKVN 013505 | Letter from Robert Sullivan (lawyer), letter from Crowley with survey (December 20, 2000) October '00 letter from Crowley to Board with Aetna Settlement, letter from SEC, financial reports, and article (October 5, 2000) |
| CROWLEYKVN 013506 | CROWLEYKVN 013521 | 9/22/00 letter to Board from Crowley,12/7/99 letter to Kahn from Crowley, New Operating Guidelines, 12/2/99 letter to Kahn from Elliot (September 22, 2000) |
| CROWLEYKVN 013665 | CROWLEYKVN 013673 | Letter from Crowley to Board of Directors with article, letter from shareholder's attorney, and response, bi-weekly payroll, and accounts payable table (June 7, 2000) |
| CROWLEYKVN 013678 | CROWLEYKVN 013681 | Letter from Crowley to Board of Directors with financial reports. (November 27, 2001) |
| CROWLEYKVN 013682 | CROWLEYKVN 013687 | Letter from Crowley to Board of Directors with financial reports. (October 11, 2001) |
| CROWLEYKVN 013690 | CROWLEYKVN 013692 | Letter from Crowley to Board of Directors (October 4, 2001) |
| CROWLEYKVN 013692 | CROWLEYKVN 013695 | Letter from Crowley to Board of Directors with financial reports. (September 21, 2001) |
| CROWLEYKVN 013696 | CROWLEYKVN 013699 | Letter from Crowley to Board of Directors with attached letter (September 14, 2001) |

Exhibit 2

# Coram Health Care Corporation
## Documents Considered

### Bates Stamped Materials

| Start | End | Description |
|---|---|---|
| CROWLEYKVN 013706 | CROWLEYKVN 013711 | Letter from Crowley to Board of Directors with Vancomycin charts and Relocation Announcement Card (September 6, 2001) |
| CROWLEYKVN 013763 | CROWLEYKVN 013766 | Letter from Crowley to Board of Directors, article, and payroll (May 23, 2001) |
| CROWLEYKVN 013769 | CROWLEYKVN 013773 | Letter from Crowley to Board of Directors with financial reports. (May 17, 2001) |
| CROWLEYKVN 013778 | CROWLEYKVN 013780 | Letter from Crowley to Board of Directors (May 1, 2001) |
| CROWLEYKVN 013781 | CROWLEYKVN 013781 | Letter from Crowley to Board of Directors (April 10, 2001) |
| CROWLEYKVN 013793 | CROWLEYKVN 013797 | Letter from Crowley, Letter to Levy from Friedman (lawyers), email from Friedman to Levy (March 14, 2001) |
| CROWLEYKVN 014188 | CROWLEYKVN 014191 | Letter to Board of Directors from Crowley (January 26, 2000) |
| CROWLEYKVN 014787 | CROWLEYKVN 014797 | Letter to Adams from Crowley with 2 financial forms. (March 26, 2002) |
| CROWLEYKVN 014814 | CROWLEYKVN 014820 | Letter to Adams from Crowley with financial report (April 10, 2002) |
| CROWLEYKVN 015347 | CROWLEYKVN 015400 | Adams 2/6/03 Agenda, Coram Key Dates, Summary of Capital Expenditures, and presentation (February 6, 2003) |
| CROWLEYKVN 015592 | CROWLEYKVN 015594 | Letter to Adams from Crowley with financial statements. (August 13, 2002) |
| CROWLEYKVN 015595 | CROWLEYKVN 015604 | Letter to Adams from Crowley with financial report. (August 12, 2002) |
| CROWLEYKVN 015911 | CROWLEYKVN 015914 | Letter from Crowley to Board of Directors (February 6, 2001) |
| CROWLEYKVN 017825 | CROWLEYKVN 017825 | Email to Executive Planning from Kurt Davis (February 16, 2001) |
| CROWLEYKVN 017827 | CROWLEYKVN 017827 | Email to Kurt Davis from Michael Saracco (February 12, 2001) |
| EC 08583 | EC 08854 | Backup to Fischel's Preliminary Report: Estimated Loss to Equity holders Caused by Crowley's Conflict of Interest. |
| EC 08723 | EC 08725 | Fischel Management Projections Valuation as of October 1999 |
| EC 08744 | EC 08744 | |
| EMB 001697 | EMB 001743 | 1/9/03 Crowley Presentation (January 9, 2003) |
| GTCR 2 | GTCR 68 | CuraScript Confidential Descriptive Memorandum by JP Morgan regarding acquiring CPS Holdings, LLC. (September 24, 2003). |
| GTCR 245 | GTCR 356 | Stock Exchange and Purchase Agreement (November 13, 2000). |
| GTCR 357 | GTCR 433 | Asset Purchase Agreement between RxPartners, Inc. and CuraScript Pharmacy Inc (April 1, 2002). |
| GTCR 434 | GTCR 435 | CPS Holdings, LLC Capitalization Chart (January 1, 2004) |
| GTCR 436 | GTCR 448 | Email to Jason Lichtenstein, Stephen Jensen from Christine Cregar including Loan balances (January 27, 2004) |
| GTCR 449 | GTCR 449 | GTCR Capital Partners Investment Dates Reflecting total loans from CuraScript's Subordinated debt lender 7/31/2000 - 9/21/2001 |
| GTCR 450 | GTCR 613 | Stock Purchase Agreement (December 19, 2003) |
| GTCR 69 | GTCR 244 | Asset Purchase Agreement (June 9, 2000). |
| Lex 0122 | Lex 0123 | Fischel Peer ROR Calculations 9/30/99 through 9/30/03 |
| Lex 0481 | Lex 0493 | Fischel Coram Damage Calculations as of March 31, 2002 |
| Lex 1060 | Lex 1066 | Fischel Peer ROR on Firm Value for Coram and Comparables Calculations October 1999 through September 2003 |
| Lex 1067 | Lex 1067 | Fischel Index Values October 1999 through September 2003 |

Exhibit 2

# Coram Health Care Corporation
## Documents Considered

### Legal Documents

- Complaint Arlin M. Adams, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of Coram Healthcare Corporation v. Daniel D. Crowley; Donald J. Amaral; William J. Casey; L. Peter Smith; and Sandra L. Smoley (December 29, 2004).
- Complaint for Declaratory Judgment, Genesis Insurance Company vs. Daniel D. Crowley; Donald. J. Amaral; William J. Casey; L. Peter Smith; and Sandra L. Smoley (February 23, 2005).
- Coram Healthcare Corp and Coram, Inc (Exhibit 24)
- Debtor's Second Joint Plan Pursuant to Chapter 11 of the United States Bankruptcy Code July 31, 2001 (Exhibit 26)
- Hearing, December 21, 2000 in the Matter of Coram Healthcare Corp. (Exhibit 25)
- Objections of the Official Committee of Equity Security Holders of Coram Healthcare Corp. to the Joint Plan of Reorganization Proposed by Debtors
- Opinion of US Bankruptcy Judge Mary F. Walrath (October 5, 2004)
- Order Confirming the Chapter 11 Trustee's Second Amended Joint Plan of Reorganization (October 27, 2004)
- Order Denying the Trustee's Second Amended Joint Plan of Reorganization and the Equity Committee's Third Amended Joint Plan of Reorganization (October 5, 2004)
- Stipulation and Order Entering Judgment Against Outside Directors (June 1, 2006)
- Transcript of Confirmation Hearing Before Honorable Mary F. Walrath March 4, 2004 (Exhibit 28)

### Academic Literature

- Altman, Edward, A Further Empirical Investigation of the Bankruptcy Cost Question, *The Journal of Finance*
- Cays, Stephen E., A Study on the Measurement and Prediction of The Indirect Costs of Bankruptcy, The Leonard N. Stern School of Business, April 2001
- Corporate Finance (6th ed.), Ross, Westfield and Jaffe, (McGraw-Hill Irwin: 2002), p. 484.
- Ibbotson Associates SBBI Valuation Edition 2004 Yearbook, Appendix C.
- Pratt, Shannon P., Valuing a Business, The Analysis and Appraisal of Closely Held Companies, Second Edition, Business One Irwin, Homewood, IL
- Warner, Jerold B., Bankruptcy costs: Some evidence. *The Journal of Finance*
- Weiss, Lawrence, Bankruptcy Resolution: Direct Costs and Violation of Priority of Claims, *Journal of Financial Economics*

### SEC Filings

- Coram Healthcare Corporation 10K and 10Q for years ended December 31, 1999 through 2004.
- American HomePatient, Inc. 10K and 10Q for years ended December 31, 1999 through 2004.
- Apria Healthcare Group 10K and 10Q for years ended December 31, 1999 through 2004.
- Gentiva Health Services, Inc. 10K and 10Q for years ended December 31, 1999 through 2004.
- Option Care, Inc. 10K and 10Q for years ended December 31, 1999 through 2004.

Exhibit 2

# Coram Health Care Corporation
## Documents Considered

### Reports

- Chanin Capital Partners. "Presentation to the Board of Directors of Coram Healthcare Corporation." July 31, 2000.
- Chanin Capital Partners. "Presentation to the Board of Directors of Coram Healthcare Corporation." December 4, 2000.
- Chanin Capital Partners. "Presentation to the Board of Directors of Coram Healthcare Corporation." October 2001.
- Deloitte & Touche. "Coram Healthcare Corporation Valuation Analysis Prepared on Behalf of Committee of Equity Holders In Connection with Chapter 11 Bankruptcy Proceedings." November 15, 2000.
- Deloitte & Touche. "Coram Healthcare Corporation Valuation Analysis Prepared on Behalf of Committee of Equity Holders In Connection with Chapter 11 Bankruptcy Proceedings." March 31, 2003.
- Fischel Demonstrative Exhibit Calculation of the Economic Impact of Crowley's Conflict of Interest
- Goldin Associates, LLC. "Report of Independent Restructuring Advisor In re: Coram Healthcare Corp. and Coram, Inc." August 31, 2001.
- Goldin Associates, LLC. "Report of Independent Restructuring Advisor In re: Coram Healthcare Corp. and Coram, Inc." June 15, 2001.
- Mercer Expert Report Exhibits 1 - 2 (August 4, 2006)
- Report of Daniel R. Fischel (September 11, 2003)
- Report of Mercer Capital Management, Inc Genesis Insurance Company vs. Daniel D. Crowley, Arlin M. Adams, and National Union Fire Insurance Company of Pittsburgh, PA.
- SSG Capital Advisors, L.P. "Coram Conformation Valuation Analysis." June 30, 2003.
- UBS Warburg. "Plan of Reorganization: Valuation Analysis Presentation to the Official Committee of Unsecured Creditors of Coram Healthcare Corp. and Coram Inc." September 30, 2000.
- Updated Report of Independent Restructuring Advisor Goldin Associates In re Coram Healthcare Corp. and Coram, Inc.

### Depositions

- Deposition of Allen J. Marabito. (April 5, 2007)
- Deposition of Arlin M. Adams, Volumes I and II. (March 27, 2007 and March 28, 2007)
- Deposition of Kurt Davis. (April 5, 2007)
- Deposition of Michael A. Saracco. (March 30, 2007)
- Deposition of Scott R. Danitz. (April 6, 2007)

### Other Sources

- Bloomberg LP, Merrill Lynch Index, 30-year yield to maturity of US Treasuries at 12/31/03.
- Factset S&P 500 total return, equity and debt values (2000-2004).
- Letter to Barry Bressler from Tral Hooker regarding Coram Healthcare documents GTCR 1 - GTCR 449 produced in response to the Equity Committee's subpoena to Goldman Thomas (February 4, 2004).
- Merrill Lynch Index, 30-year yield to maturity of US Treasuries at 12/31/04, Bloomberg LP.

Exhibit 3

Selected Reorganization Expenses[1]

| Professional | Time Period | Representing | Amount Paid | Comment |
|---|---|---|---|---|
| Abhainn & Gray | February 1, 2001 - March 31, 2002 | Equity Committee | $ 2,283,027.73 | Represents fees accrued and expenses incurred from first complete billing period beginning after first failed Plan. Fees accrued and expenses incurred in January, 2001 to be added. Trustee reserves the right to seek additional damages based on fees accrued and expenses incurred from October 1, 2000 through December 31, 2000 as a result of the conflict. |
| Citadel Capital Partners, LLC | January 1, 2001-March 7, 2002 | Debtors-in-Possession | $ 1,676,268.88 | |
| Chapter 11 Trustee, Arlin. M. Adams | March 7, 2002 - November 30, 2004 | Trustee | 628,427.02 | |
| Deloitte & Touche LLP | November 8, 2000 - November 30, 2004 | Equity Committee | $ 4,309,431.59 | Represents fees accrued and expenses incurred from first complete billing period beginning after first failed Plan. Fees accrued and expenses incurred in January, 2001 to be added. Trustee reserves the right to seek additional damages based on fees accrued and expenses incurred from October 1, 2000 through December 31, 2000 as a result of the conflict. |
| Ernst & Young LLP | December 22, 2000 - Jul 31, 2004 | Debtor-in-Possession/Trustee | $ 3,965,111.00 | |
| Ewing Bemiss & Co. | October 1, 2002 - July 31, 2004 | Trustee | 719,038.00 | |
| Goldin Associates, L.L.C. | February 28, 2001 - December 31, 2001 | Debtors-in-Possession | 1,716,991.14 | |
| Jenner & Block | March 16, 2002 - November 30, 2004 | Equity Committee | 6,642,033.32 | |
| Kasowitz, Benson, Torres, & Friedman, LLP | January 1, 2001-March 8, 2002 | Debtors-in-Possession | $ 1,813,919.42 | A substantial portion of the fees accrued and expenses incurred prior to January 1, 2001 directly result from the conflict. The Trustee reserves the right to seek additional damages based on such fees and expenses. |
| Kramer Levin Naftalis & Frankel LLP | March 29, 2001 - August 29, 2002 | Debtors-in-Possession | $ 757,868.78 | A portion of the fees accrued and expenses incurred prior to January 1, 2001 may directly result from the conflict. The Trustee reserves the right to seek additional damages based on such fees and expenses. |
| Official Committee of Equity Security Holders | | Equity Committee | 166,197.23 | |
| Pachulski, Stang, Ziehl, Young & Jones, P.C. | January 1, 2001 - August 31, 2002 | Debtors-in-Possession | $ 412,889.89 | A portion of the fees accrued and expenses incurred prior to January 1, 2001 may directly result from the conflict. The Trustee reserves the right to seek additional damages based on such fees and expenses. |
| Richards, Layton & Finger, P.A. | January 1, 2001 - November 30, 2004 | Creditors Committee | $ 169,423.62 | A portion of the fees accrued and expenses incurred prior to January 1, 2001 may directly result from the conflict. The Trustee reserves the right to seek additional damages based on such fees and expenses. |
| Saul Ewing LLP | March 1, 2001 - November 30, 2004 | Equity Committee | $ 517,840.30 | Represents fees accrued and expenses incurred from first complete billing period beginning after first failed Plan. Fees accrued and expenses incurred in January, 2001 to be added. Trustee reserves the right to seek additional damages based on fees accrued and expenses incurred from October 1, 2000 through December 31, 2000 as a result of the conflict. |
| Schnader Harrison Segal & Lewis LLP | March 8, 2002 - December 1, 2004 | Trustee | $ 7,801,658.34 | Excluded (i) $209,847 for regulatory matters (non-Stark), (ii) $239,454 for the PWC litigation, (iii) $102,392.50 for general litigation matters, (iv) $220,054 for tax matters, and (v) $339,933.50 for R-Nat. Trustee reserves the right to add back some or all of the above fees to the extent attributable to the pre/treated bankruptcy. |
| SSG Capital Advisors, L.P. | October 1, 2002 - July 31, 2004 | Trustee | $ 909,456.65 | |
| UBS Securities LLC | April 1, 2001 - October 2, 2003 | Creditors Committee | 490,000.00 | |
| Wachtell, Lipton, Rosen & Katz | January 1, 2001 - November 1, 2004 | Creditors Committee | 619,875.43 | A portion of the fees accrued and expenses incurred prior to January 1, 2001 may directly result from the conflict. The Trustee reserves the right to seek additional damages based on such fees and expenses. |
| Weil & Partners LLP | March 1, 2002 - November 30, 2004 | Trustee | 650,089.51 | |
| Young Conaway Stargatt & Taylor LLP | October 29, 2004 - December 1, 2004 | Trustee | 35,032.57 | |
| | | TOTAL: | $ 30,439,049.13 | |

[1] This selected list of fees and expenses of professionals employed under 11 U.S.C. 327(a). The Trustee reserves the right to include fees accrued and expenses incurred by all professionals, including "327(e)" professionals, for purposes of bankruptcy schedule and compliance (i.e., Reed Smith, Michael J. Kaniguchi & Assoc., Epstein Backer & Green, P.C., and Gardner Carton & Douglas).

[*] Subject to change. Nothing herein shall be construed as a waiver of the Trustee's right to assert any or all of the above, or other, damages in connection with the R-Nat litigation or any other actions.

EXHIBIT
Dantz
2-6-07

## Exhibit 4

## Coram Healthcare Corporation

### Working Capital Reduction Attributed to the Sale of Coram Prescription Services[1]

*(Dollars in 000's)*

| | | |
|---|---|---:|
| Book Value of CPS Assets | (a) | $ 24,003 [2] |
| Historical Ratio of [(Inventory + AR) / Total Tangible Assets | (b) | 60% [3] |
| Estimated Value of Inventory and AR Attributed to the Sale of CPS | (c) = (a)*(b) | 14,283 |
| Historical Ratio of AP/(Inventory + AR) | (d) | 32% [3] |
| Estimated Value of AP Attributed to the Sale of CPS | (e) = (d)*(c) | 4,589 |
| Working Capital reduction resulting from the sale of CPS | (f) = (c)-(e) | $ 9,694 |

Notes and Sources:

[1] On July 31, 2000, the company completed the sale of Coram Prescription Services ("CPS") to Curascript Pharmacy Services, Inc. and Curascript PBM Services, Inc.; Coram 2001 10-K, p. 3.

[2] Book value of CPS assets as of December 31, 1999 was $24,003,000; Coram 2000 10-K, p. F-30.

[3] AR = Accounts Receivable; AP = Accounts Payable. Historical ratios are averaged over the five-year period prior to the sale of CPS (1995-1999), per Coram 1996-2000 10-Ks.

1 of 1

Exhibit 5

**Coram Healthcare Corporation**

**Loss in Coram Value Resulting from Protracted Bankruptcy**

As of Year-End 2004

| *(Dollars in 000's)* | | Actual Exit | Exit Dec-2000 |
|---|---|---|---|
| | *As of Year-End* | **2003** | **2000** |
| Cash Flow From Operations (as reported) | | $ 28,960 [1] | $ 44,144 [2] |
| Adjustment for Sale of CPS in 2000 | | | (9,694) [3] |
| Adjustment to Match Depreciation to Capital Expenditures | | 978 [4] | (15,296) [5] |
| Normalized Capital Expenditures | | (7,931) [6] | (7,931) [6] |
| Interest Expense Add Back | | 1,015 [7] | 16,073 [8] |
| Normalized Free Cash Flow | | $ 23,022 | $ 27,295 |
| | *As of Year-End* | **2005** | **2005** |
| Expected Terminal Free Cash Flow (C) | | $ 24,591 [9] | $ 34,440 [10] |
| Expected Inflation | | 2.85% [11] | 2.85% [11] |
| Capitalization Factor (1/(r-g)) | | 10.2 [12] | 10.2 [12] |
| | *As of Year-End* | **2004** | **2004** |
| Coram Value (C/(r-g)) | | $ 251,384 | $ 352,078 |
| **Value Lost (Damages) as a Result of Protracted Bankruptcy** | | | **$100,694** |

**Notes and Sources:**

[1] Cash flow from operations before bankruptcy-related expenses reported for 2003 from Coram 2003 10-K, F-6.

[2] Cash flow from operations before bankruptcy-related expenses reported for 2000 from Coram 2001 10-K, F-6.

[3] See Exhibit 4 for derivation and sources.

[4] Depreciation expense add-back is normalized by adjusting the actual add-back so that depreciation is equal to normalized capital expenditures. The depreciation add-back is as reported for 2003 per Coram 2003 10-K, F-6.

[5] Depreciation expense add-back is normalized by adjusting the actual add-back so that depreciation is equal to normalized capital expenditures. The depreciation add-back is for 2000 per Coram 2001 10-K, F-6.

[6] Capital expenditures are normalized using the forecast average level of capital expenditures from 2001 to 2004 per management's October 1999 forecast; EC 08744.

[7] Interest expense net of tax at 40%. Coram 2003 10-K, F-49.

[8] Interest expense net of tax at 40%. Coram 2001 10-K, F-39.

[9] 2003 cash flows are invested for 2 years in 5-year maturity US treasuries up to the end of 2005, yielding 3.35 percent, Merrill Lynch Index, 5-year yield to maturity of US treasuries, Bloomberg LP, 1/2/04.

[10] 2000 cash flows are invested for 5 years in 5-year US treasuries up to the end of 2005, yielding 4.76 percent, Merrill Lynch Index, 5-year yield to maturity of US treasuries, Bloomberg LP, 1/2/01.

[11] Expected inflation rate calculated as the difference between the nominal rate on 20-year US treasuries (5.32 percent) and the high-yield rate on Treasury Inflation Protected Securities (TIPS) (2.47 percent) at 7/27/04. Merrill Lynch Index, 20-year yield to maturity of US treasuries, Bloomberg LP; Treasury Security Auction Results, Department of the Treasury, Bureau of the Public Debt, Washington DC, 7/27/04.

[12] Capitalization factor calculated as one (1) divided by CAPM minus expected inflation at 12/01/04. CAPM calculation shown in Exhibit 6.

**Exhibit 6**
**Coram Healthcare Corporation**
**CAPM Based On Peer Index[1]**
**December 3, 2001 - December 1, 2004**

| | |
|---|---|
| Risk-Free Rate [2] | 5.03% |
| Long-Horizon Equity Risk Premium --ERP[3] | 7.2% |
| Beta$_{(levered)}$ [4] | 0.60 |
| B$_{(unlevered)}$= B$_{(levered)}$ / (1+ (((1-t) × Debt)/Equity)) | 0.50 |
| Debt / Value -- (D/V)[5] | 24.62% |
| Equity / Value -- (E/V)[5] | 75.38% |
| Tax Rate | 40.00% |
| Micro-Cap Adj.[3] | 4.02% |
| R$_e$= R$_f$ + B$_{(unlevered)}$ × ( ERP ) + Micro-Cap Adj. | 12.63% |

**Notes and Sources:**

[1] Peer index consists of Apria Healthcare Group, Gentiva Health Services Inc., American Homepatient Inc., and Option Care, Inc.

[2] Merrill Lynch Index, 30-year yield to maturity of US Treasuries at 12/1/04, Bloomberg LP.

[3] Ibbotson Associates SBBI Valuation Edition 2005 Yearbook, Appendix C, table C-1. The long-horizon expected equity risk premium and micro-cap size premium are based on the differences of historical arithmetic mean returns from 1926 - 2004 using the S&P 500 as the market benchmark, pp.70-71, 127-37.

[4] Beta taken from the regression of peer index daily total returns against the S&P 500 total return (December 3, 2001 - December 1, 2004). Data gathered from Factset.

[5] Share price data taken from Factset. Debt and shares outstanding taken from Apria Healthcare Group 2004 10-K, American Homepatient Inc. 2004 10-K, Option Care, Inc. 2004 10-K, and Gentiva 2005 10-K (its fiscal year end is 1/2/05).

1 of 1