IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ARLIN M. ADAMS, Chapter 11 Trustee of the Post-Confirmation Bankruptcy Estates of CORAM HEALTHCARE CORPORATION, a Delaware Corporation, and of CORAM INC., a Delaware Corporation,<br><br>                    Plaintiffs,<br><br>v.<br><br>DANIEL D. CROWLEY, DONALD J. AMARAL, WILLIAM J. CASEY, L. PETER SMITH, and SANDRA L. SMOLEY,<br><br>                    Defendants. | Case No. 04-1565 (SLR) |

---

**DEFENDANT'S MOTION *IN LIMINE* NO. 10 TO EXCLUDE EVIDENCE OF DAMAGES TO CORAM**

---

August 20, 2007

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
Marc J. Phillips - #4445
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

*Attorneys for Defendant DANIEL D. CROWLEY*

## I.   INTRODUCTION

By this motion, Defendant Daniel D. Crowley moves to exclude all evidence of damage to Coram. The Trustee alleges that Crowley's conflict of interest caused the Bankruptcy Court to deny Coram's first reorganization plan in December 2000, which caused Coram to remain in bankruptcy until the Trustee's own reorganization plan was confirmed in December 2004. The Trustee seeks to recover the costs to Coram allegedly attributable to this delay in Coram's emergence from bankruptcy, which the Trustee's damages expert projects at approximately $136 million.

The court should exclude all evidence of these alleged damages. According to the Trustee's expert Jeffrey L. Baliban, harm to Coram is properly understood as harm to Coram's investors—its shareholders and noteholders. However, contrary to the Trustee's claim, the denial of the first reorganization plan *benefited* the shareholders of Coram. Under the first reorganization plan, the shareholders of Coram would have received *nothing* for their shares. Under the reorganization plan that was ultimately confirmed in December 2004, the shareholders of Coram received *$40 million*. Thus, the denial of the first reorganization plan, which, under the Trustee's theory, was the cause of $136 million in harm to Coram's shareholders, actually resulted in a gain of $40 million for Coram's shareholders. Because there is no injury to Coram, the Trustee should not be permitted to put on evidence of Coram's damages.

## II.   BACKGROUND

On August 8, 2000, Coram Healthcare Corp. and Coram, Inc. ("Coram") petitioned for Chapter 11 bankruptcy. Under the terms of Coram's Proposed Plan of Reorganization, filed with its petition, Coram would have converted its debt to equity and eliminated the financial interests of Coram's shareholders without compensation. On December 21, 2000, however, the United States Bankruptcy Court for the District of Delaware, Judge Mary F. Walrath, denied Coram's Proposed Plan of Reorganization.

After a second reorganization plan was submitted by Coram and again denied by the Bankruptcy Court, a third reorganization plan, proposed by the Trustee, was approved in December 2004. *See generally In re Coram Healthcare Corp.*, 315 B.R. 321 (Bankr. D. Del.

1

2004). Under the terms of the Trustee's reorganization plan, Coram's noteholders paid $56 million into the Coram Bankruptcy Estate in exchange for ownership of the company and a release of any liability. *Id.* at 328. Coram's shareholders received approximately $40 million, roughly 80 cents per share, and the right to any proceeds from any lawsuit filed by the Trustee against Coram's directors or against Crowley. *Id.* Thus, in addition to the $40 million Coram's former shareholders got in the noteholders settlement, they will receive the proceeds of this lawsuit against Crowley.

The Trustee now claims that the delay in Coram's emergence from bankruptcy harmed Coram. The Trustee is seeking damages for the alleged losses to Coram over the period December 2000, when, the Trustee alleges, Coram should have emerged from bankruptcy, to December 2004, when Coram did, in fact, exit bankruptcy.

### III.   ARGUMENT

The court should exclude evidence of damages to Coram because Coram's shareholders—the actual individuals whom the Trustee alleges suffered the harm—were not injured by Crowley's alleged breach of fiduciary duty. "The object and purpose of an award of compensatory damages in a civil case is to impose satisfaction for an injury done." *Jardel Co., Inc. v. Hughes*, 523 A.2d 518, 528 (Del. 1987); *see also* 22 Am.Jur.2d *Damages* § 1, at 13 (1965). "[T]he goal in fixing damages is just and full compensation, with the focus upon the plaintiff's injury or loss." *Id.* Because there was no injury, there can be no damages.

**A.    Harm to Coram Is Properly Understood as Harm to its Investors.**

The Trustee seeks to recover damages for the injuries to Coram caused by the fact that the company did not emerge from bankruptcy in December 2000 but only emerged in December 2004. According to the Trustee, "[t]hat delay caused Coram to incur tens of millions of dollars in reorganization costs and to suffer substantial business losses as well." D.I. 137 at 3-4. The Trustee has designated Jeffrey L. Baliban, an economist at National Economic Research Associates, as his damages expert. Baliban prepared a report that claims that the damage to Coram was approximately $136 million. *See* Ex. A (Report of Jeffrey L. Baliban, June 8, 2007).

According to Baliban, "damage to Coram" should properly be understood as "damage to Coram's investors." At his deposition, Baliban testified that the persons who were damaged by the alleged costs to Coram were its investors:

> Q. So the persons who were damaged according to your analysis are the investors, both debt and equity?
>
> A. A combination.
>
> ….
>
> Q. Some combination of the investors in Coram including debt and equity were damaged to the tune of 100 and whatever million dollars you come up with in your report, is that what you are telling us?
>
> A. The entity itself was damaged and if you are looking at the entity as some combination of debt and equity investors, that would be correct.

Ex. B (Baliban Deposition, July 17, 2007) at 219:16-20; 219:23-220:6. Baliban further testified that "the harm was to the investors." *Id.* at 221:14-16.

Baliban also testified that there is no distinction between the harm to Coram and harm to its investors.

> Q. [Y]ou're not able to express an opinion on which of the broad class of Coram investors was harmed, is that right?
>
> A. That's correct. I haven't reached an opinion on that -- I am expressing no opinion on any -- on the harm caused to any specific class of investor, just on the harm caused to the entity or the sum total of all the investors as a whole.
>
> Q. But you're not drawing a distinction between the entity and the sum total of the investors as a whole. They are -- that's the same thing, right?
>
> A. I think that's correct.

*Id.* at 222:7-21. Thus, according to the Trustee's expert, the damages the Trustee seeks to recover are to compensate Coram's investors.

As a practical matter too, the Trustee is seeking to compensate Coram's shareholders. Any damages that are recovered by the Trustee from Crowley in this litigation will go to Coram's former shareholders. As explained in an October 2003 letter from counsel for the Trustee, under the Trustee's reorganization plan—the plan that was ultimately approved by the Bankruptcy Court—"the shareholders will receive the net proceeds of all of Coram's remaining

3

litigation claims, including the proposed derivative claims against Daniel Crowley." Ex. C (Letter from Barkasy to Schepacarter, dated October 28, 2003) at 1-2. Thus, in both theory and practice, when the Trustee seeks damages from Crowley, he is seeking payment to Coram's shareholders.

**B.    Coram's Shareholders Were Not Harmed.**

The court should not permit the Trustee to put on evidence of harm to Coram's shareholders because they were not injured by Crowley's allegedly wrongful conduct.

### 1.    Under the First Reorganization Plan, Coram's Shareholders Would Have Received $0.

Under Coram's first proposed reorganization plan, filed in 2000, Coram's shareholders would have received nothing. Not only that, but the Trustee contends that they were entitled to nothing. Michael Temin, a witness designated by the Trustee as an expert on bankruptcy law, testified that **"the Coram shareholders in 2000 were legally entitled to zero out of the Coram bankruptcy estate."** Ex. D (Temin Depo) at 54:3-6. J. Scott Victor, another witness designated as an expert by the Trustee, testified that the shareholders "would have been treated fairly and reasonably if [the first reorganization] plan had been approved." Ex. E (Victor Depo.) at 62:16-21.

### 2.    Under the Third Reorganization Plan, Coram's Shareholders Received Approximately $40 Million.

The Trustee does not dispute that the denial of the first reorganization plan and the subsequent confirmation of the third plan benefited the shareholders. Under the terms of the Trustee's reorganization plan, which was confirmed in December 2004, Coram's shareholders received approximately $40 million, roughly 80 cents per share. According to Victor, this was "a very nice recovery." Ex. E (Victor Depo) at 62:24-25.

> Q.    Now, under the Trustee's plan, the shareholders got what?
>
> A.    **The shareholders got a very nice recovery.** They got approximately $40 million.
>
> ...
>
> Q.    So the shareholders made out pretty well in the Coram bankruptcy, right?

4

A.   The shareholders got a $40 million recovery.

Q.   When they were really entitled to nothing?

...

A.   If the company had been sold, they wouldn't have had any proceeds from the sale.

Q.   And if the first bankruptcy plan had been approved, which you've just told us was fair and reasonable, they would have got nothing, too, right?

A.   But for that conflict.

Q.   Okay. But -- but from the perspective of the shareholders, it turned out pretty well for them?

A.   $40 million.

Ex. E (Victor Depo) at 62:22-25; 66:13-18; 66:21-67:9. Thus, in sum, the denial of Coram's first reorganization plan benefited Coram's shareholders by $40 million. Because there is no evidence of any harm to the shareholders—the parties allegedly insured here—the Trustee should be precluded from putting on evidence of damages.

## IV.   CONCLUSION

For the foregoing reasons, the court should exclude all evidence of damages incurred by Coram.

Dated: August 20, 2007

CONNOLLY BOVE LODGE & HUTZ LLP

Jeffrey C. Wisler - #2795
Christina M. Thompson - #3976
Marc J. Phillips - #4445
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19801
(302) 658-9141

-and-

John W. Keker
Elliot R. Peters
R. James Slaughter
KEKER & VAN NEST, LLP
710 Sansome Street
San Francisco, CA 94111
(415) 391-5400

Attorneys for Defendant
DANIEL D. CROWLEY

#559486v1

5